*A*

# 𝔏𝔞𝔰𝔱 𝔚𝔦𝔩𝔩 𝔞𝔫𝔡 𝔗𝔢𝔰𝔱𝔞𝔪𝔢𝔫𝔱

OF

_____

**SAM SHAW**

_____

DATED_____

HOLTZMANN, WISE & SHEPARD

A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

1271 AVENUE OF THE AMERICAS

NEW YORK, N.Y. 10020

I, SAM SHAW, residing in Tappan, New York, do make, publish and declare this to be my Last Will and Testament, hereby revoking all my prior Wills and Codicils.

FIRST:    I give all my tangible personal property other than my collection of photographs, negatives, and transparencies, including, without limitation, jewelry, clothing and other articles of personal use or adornment, household furniture, furnishings and other articles of household use or ornament, automobiles and books, together with all insurance policies thereon, if any, to my daughters, META STEVENS and EDITH MARCUS, if they survive me, in shares of approximately equal value as they shall agree, or if only one of my said daughters survives me, I give such property to her. If neither of my said daughters survives me, I direct my Executor to add such property to my residuary estate to be disposed of pursuant to Article THIRD of this Will.

SECOND:    I have deliberately excluded my son from participation in my estate and The Sam Shaw Family Trust. His conduct has demonstrated a willful disregard for me and his sisters. He has benefited without my consent from his unauthorized and illegal taking of my property and money. It will be a long time, if ever, before I and the rest of my family will recover from his exploitation.

**THIRD:**    The balance of my estate, whether real or personal which shall include, but not be limited to my collection of photographs, negatives, transparencies and any rights related to same, and wherever situate (hereinafter referred to as my "residuary estate"), I give to the Trustees of The Sam Shaw Family Trust dated _October 4, 1994_ to be held pursuant to Article FOURTH of such Agreement.

**FOURTH:**    (A)  All references herein to this Will shall be construed as referring to this Will and any Codicil or Codicils hereto which I may hereafter execute.

(B)  All references to the "Internal Revenue Code" shall mean the Internal Revenue Code of 1986, as amended, and as the same may thereafter be amended from time to time.

**FIFTH:**    (A)  If any beneficiary under this Will and I shall die under such circumstances as to render it impossible or difficult to determine which of us died first, then and in such event I direct that for purposes of this Will, it shall be deemed that such beneficiary has predeceased me.

(B)  Any beneficiary whose entitlement to property depends on him or her surviving me or some other person shall be deemed not have done so unless the beneficiary survives me or that other person, as the case may be, by at least fourteen (14) days.

**SIXTH:**    (A)  I appoint my daughters, META STEVENS and EDITH MARCUS, as Executrixes of this Will.  If either of

-2-

S. S.

them, for any reason, shall fail to qualify or having qualified ceases to act as Executrix, I direct that the other shall serve as sole Executrix. If neither of my said daughters is serving as Executrix I appoint my friend, ALAN S. LIEBMAN, as Executor of this Will. I direct that the last acting Executor shall designate her or his successor by an instrument in writing duly acknowledged and filed in the Court having jurisdiction of my estate, which instrument may be revoked or amended at any time before it takes effect.

(B) I direct that no bond or other security shall be required of any Executrix whether named herein or designated hereunder, any law to the contrary notwithstanding.

(C) Wherever necessary or appropriate, the use in this Will of any gender shall be deemed to include the other gender and the use of either the singular or the plural shall be deemed to include the other.

SEVENTH: I direct that any Death Taxes shall be apportioned against and paid from The Sam Shaw Family Trust under Article SEVENTH of the Trust Agreement dated ____ October 4, 1994 . I hereby direct my Executrixes to submit a written request to the Trustees of the foregoing trust setting forth the amount to be paid by said Trustees to my Executrixes for the purpose of paying "Death Taxes". The term "Death Taxes", as used in this Article, shall mean all estate, inheritance, transfer, succession, legacy or other death taxes

-3-

(excluding, however, generation-skipping transfer taxes), together with all interest and penalties thereon, if any, levied or assessed by reason of my death by any governmental authority, domestic or foreign, with respect to any property, whether that property passes under or apart from this Will.

EIGHTH: In administering my estate, my Executrixes, or their successors, are authorized to exercise all powers with respect to the property in my estate, real and personal, which I could exercise if living, including retaining all assets owned by me at my death; investing and reinvesting in any property selected by them without regard to any rule limiting investments by executors or requiring diversification; selling at public or private sale, for cash or upon credit, with or without security for any term, all or any part of the property in their hands; making distribution hereunder either in cash or kind, or partly in cash and partly in kind; holding property in the name of a nominee or in such form that title will pass by delivery; retaining attorneys, accountants, investment counsel and other advisors, and paying the fees and disbursements thereby incurred; opening and maintaining custody accounts; and generally doing and performing all things which they deem advisable or necessary economically to administer my estate. All of the foregoing powers may be exercised from time to time without approval from any court, and the exercise thereof shall be binding upon and conclusive against all persons interested

in or claiming an interest in my estate.  My Executrixes may delegate such ministerial duties in connection with the administration of my estate as they may deem advisable.  No Executrix shall be liable or responsible for any act or omission in connection with the administration of my estate except for such Executrix's own actual fraud or willful misconduct.

IN WITNESS WHEREOF, I have signed this Will this 4 day of *October*, 1994.

*Sam Shaw*
SAM SHAW

The foregoing instrument, consisting of five (5) pages, including this page, was on the above date subscribed, published and declared by the Testator above-named, as and for his Last Will and Testament, in the presence of us, and each of us, who, at his request, in his presence and in the presence of each other, have hereunto subscribed our names as witnesses thereto.

_____ residing at _2263 Edsall Avenue_

_____ residing at _86-05 Northern Blvd #3K_
_Jackson Hts, NY 11372_

_____ residing at _35 Parkway St_
_Dutch NJ_

STATE OF NEW YORK )
                  : ss.:
COUNTY OF NEW YORK )

The deponents, DEBRA Q MILONE ,
Rosemary Alexander , and STEVEN Brown-Inz ,
being severally duly sworn, depose and say: that the within
Testator, SAM SHAW, in the presence of the deponents, all of
them together, subscribed the within Will at the end thereof,
on the 4 day of October , 1994 at 1271 Avenue of
the Americas, NY, NY , and at the same time declared the
same to be his Last Will and Testament, that thereupon the
deponents, at the request of the said Testator and in his
presence, and in the presence of each other, signed the said
Will at the end thereof as witnesses thereto; that at the time
of execution of the said Will, the said Testator was over the
age of eighteen (18) years, and in the opinion of each of the
deponents, was of sound mind, memory and understanding, under
no restraint, and in all respects competent to make a Will,
that the deponents make this affidavit to establish the
genuineness of the said Will and the validity of its execution,
at the request of the said Testator. The execution of the Will
was supervised by Steven Brown-Inz , an attorney-at-law

-6-

admitted to practice in the State of New York, in accordance
with the New York Estates, Powers and Trusts Law.

Severally subscribed and sworn to before
me this 4th day of October , 1994.

**NOTARY PUBLIC**

THERESA S. TARLOWE
Notary Public, State of New York
No. 41-4764466
Qualified in Queens County
Term Expires March 30, 1996

0096N

-7-

*B*

TRUST AGREEMENT made the 4 day of October 1994, between SAM SHAW, of Tappan, New York (hereinafter referred to as the "Settlor" or as "SAM"), and SAM SHAW, META STEVENS and EDITH MARCUS (hereinafter referred to as the "Trustees").

W I T N E S S E T H:

FIRST:    The Settlor hereby assigns, transfers and delivers to the Trustees the property described in Schedule "(A)" annexed, which the Trustees agree to hold in trust and to manage and to dispose of in accordance with the provisions of this Trust Agreement.  This trust is created for the benefit of SAM SHAW, his daughters, META STEVENS and EDITH MARCUS, their husbands, and SAM SHAW'S grandchildren and more remote descendants, and may be referred to as "The Sam Shaw Family Trust".  The Settlor agrees to execute such further instruments as shall be necessary to vest the Trustees with full title to the property described in Schedule "(A)".

SECOND:    The Settlor shall have the right during his lifetime, to alter, amend, revoke or terminate the trust created hereby, or any of the terms of this Trust Agreement, in whole or in part.

THIRD:    During SAM's lifetime, the Trustees shall pay to him or apply for his benefit so much or all (or none) of the net income and/or principal as SAM shall direct, or as the

Trustees shall determine in their discretion. At the end of each trust year, any undistributed net income shall be added to, and treated as principal of the trust.

FOURTH: Upon SAM's death, the Trustees shall reserve an amount sufficient to pay the "Death Taxes" set forth in Article SEVENTH "(A)" of this Trust Agreement, and shall retain the then remaining principal, together with all accrued and undistributed net income, to be held in a trust as follows:

(A) The Trustees shall distribute the net income of the trust in quarter-annual or more frequent installments as the Trustees, in their sole discretion, shall determine, as follows:

(1) Five (5%) percent thereof, to HAROLD SHAW, if he is living at the date of such distribution;

(2) One-third (1/3) of the balance thereof, to SAM's daughter META, or if she is not then living to her husband, if he is then living, or if he also is not then living, in equal shares to her then living children, provided that, the Trustees may distribute to any such child who is at least eighteen (18) years of age or apply for his or her benefit as much of that income as the Trustees determine for any emergency and/or educational expense of such child;

(3) One-third (1/3) of the balance thereof, to SAM's daughter EDITH, or if she is not then living to her husband, if he is then living, or if he also is not then

- 2 -

0092N

living, in equal shares to her then living children provided that, the Trustees may distribute to any such child who is at least eighteen (18) years of age or apply for his or her benefit as much of that income as the Trustees determine for any emergency and/or educational expense of such child; and

(4)     One-third (1/3) of the balance thereof, in equal shares to those of SAM's grandchildren, CYNTHIA CONTI, ROBERT CONTI, MELISSA STEVENS, DAVID MARCUS, REBEKA MARCUS, JAKOB SHAW, and AUSTIN SHAW, who are at least eighteen (18) years of age.  If any other person other than those named above asserts that he or she is one of SAM's grandchildren that person shall not be entitled to any distribution.  Any undistributed net income shall be accumulated and added to principal of this trust.

(B)  The Trustees may make discretionary distributions of principal to or for the benefit of any member of a class consisting of META, her husband, EDITH, her husband and any of SAM's grandchildren who are named in Paragraph (A)(4) of this Article or their descendants for his or her health, education, maintenance and/or support.

(C)  This trust shall terminate upon the date which is twenty-one (21) years after the date of the death of the survivor of META, her husband, EDITH, her husband and SAM's grandchildren, CYNTHIA CONTI, ROBERT CONTI, MELISSA STEVENS, DAVID MARCUS, REBEKA MARKUS, JAKOB SHAW, and AUSTIN SHAW.

- 3 -

0092N

(D)  Upon the termination of this trust, the Trustees shall distribute the remaining trust principal, together with any undistributed net income, in equal shares per capita to those of SAM's great-grandchildren who are living at the date of the termination of this trust who are descended from SAM's grandchildren named in paragraph (A)(4) of this Article.

(E)  No Trustee having a beneficial interest in this trust shall participate in making a discretionary distribution either for his or her benefit, to himself or herself, or to a person that he or she is legally obligated to support.  Such discretionary distributions shall be made only by the other Trustees.

(F)  The Settlor has deliberately excluded his son LARRY SHAW from participation in The Sam Shaw Family Trust.  His conduct has demonstrated a willful disregard for the Settlor, and the Settlor's daughters, META and EDITH.  He has benefited without the Settlor's consent from his unauthorized and illegal taking of the Settlor's property and money.  It will be a long time, if ever, before the Settlor and the rest of his family will recover from his exploitation.

**FIFTH**:    (A)  If, upon the occurrence of any contingency any share of any trust under this Trust Agreement shall not be completely disposed of, then such undisposed of property shall be paid to those persons and in the same proportions in which they would have inherited it from the Settlor had he then died intestate, the absolute owner of it

and a resident of the State of New York.  The Settlor's son LARRY SHAW shall be deemed to have died prior to the occurrence of such contingency for purposes of this disposition.

(B)  Whenever income or principal is to be used for the benefit of a person under the age of eighteen (18) years or a person who in the sole judgment of the Trustees is incapable of managing his or her own affairs, the Trustees may make payment of such property in any or all of the following ways:

(1)  By paying such property to the guardian, committee, conservator or other person having the care and control of such person under the age of eighteen (18) years for his or her benefit or to any authorized person as custodian for him or her under any applicable Gifts to Minors Act.

(2)  By paying such property to the guardian, committee, conservator or other person having the care and control of such incapable person.

(3)  By paying directly to any such beneficiary such sums as the Trustees may deem advisable as an allowance.

(4)  By expending such property in such other manner as the Trustees in their discretion determine will benefit any beneficiary.

(C)  If the principal becomes vested and payable to a person under the age of eighteen (18) years, whether upon the Settlor's death or upon the termination of any trust hereunder, the Trustees may make payment thereof in any of the ways set forth in the preceding subparagraphs or may defer payment of any part or all thereof, meanwhile applying to the use of such beneficiary so much or all of such principal and of the income therefrom, as the Trustees in their discretion deem advisable.  Any income not expended by the Trustees shall be added to principal.  The Trustees shall pay any remaining principal to such beneficiary upon his or her attaining the age of eighteen (18) years or to his or her estate upon death prior to such payment in full.

(D)  Any payment or distribution authorized in this Article shall be a full discharge to the Trustees with respect thereto.

SIXTH:  The Settlor hereby confers upon the Trustees all powers and discretion conferred generally upon fiduciaries by Section 11-1.1 of the Estates, Powers and Trusts Law of the State of New York, and other provisions of law and this Trust Agreement.  In addition, without limiting the foregoing, the Trustees shall have the following powers and discretion with respect to all property of whatever kind at any time held by them until its distribution, which they may exercise as they deem advisable:

0092N

- 6 -

(A)  To retain the Settlor's collection of photographs, negatives and transparencies ("the Collection") for such time as the Trustees shall determine in their discretion; to take any actions that the Trustees shall determine in their discretion to enhance the Collection; and to sell the Collection as a collection upon such terms and conditions as the Trustees shall determine in their discretion;

(B)  To sell, purchase, exchange, invest and reinvest in bonds, preferred or common stocks, mortgages, interests in any kind of investment trust, or other evidences of rights, interests or obligations, secured or unsecured, foreign or domestic, or any other property, real or personal and whether or not in the nature of a wasting asset, all without any duty to diversify investments, and fully free of any and all restrictions imposed by law upon the investment of funds held by a fiduciary; and to retain the same for any period of time without liability therefor, provided that during SAM's lifetime he shall make all investment decisions;

(C)  To employ and to pay the compensation of such agents, accountants, custodians, experts and counsel, legal and investment (including any firm with which a Trustee hereunder may be associated), and to delegate discretionary powers to, and rely upon information or advice furnished by, such agents, accountants, custodians, experts or counsel;

- 7 -

0092N

(D)  To improve, lease (for any term, whether or not beyond the term of the separate trust or the term fixed by any law), partition or otherwise deal with or dispose of any real or personal property or any interest therein; to make alterations in and extraordinary improvements to any building now or hereafter located on any such property; to construct new buildings; and to enter into contracts or grant options (for any period) with respect to any of the foregoing;

(E)  To consent to the modification, renewal or extension of any note, whether or not secured, or any bond or mortgage, or any term or provision thereof, or any guarantee thereof, or to the release of such guarantee; to release obligors on bonds secured by mortgages or to refrain from instituting suits or actions against such obligors for deficiencies; to use property held under this Trust Agreement for the protection of any investment in real property or in any mortgage on real property;

(F)  To abandon any property, real or personal, that they deem to be worthless or not of enough value to warrant keeping or protecting; to abstain from the payment of taxes, water rents, assessments, repairs, maintenance and upkeep of it; to permit such property to be lost by tax sale or other proceeding, or to convey it for nominal or no consideration;

0092N

- 8 -

(G)  To exercise or dispose of any or all options, privileges or rights appurtenant or incident to the ownership of any property, whether to vote, assent, subscribe, convert or of any other nature; to become a party to, or deposit securities or other property under, or accept securities issued under, any voting trust agreement;

(H)  To assent to or participate in any reorganization, readjustment, recapitalization, liquidation, partial liquidation, consolidation, merger, dissolution, sale or purchase of assets, lease, mortgage, contract or other action or proceeding by any corporation and, in that connection, to subscribe to new securities, to exchange any property for any other property, and to pay any assessments or other expenses; to delegate discretionary powers to any reorganization, protective or similar committee;

(I)  To borrow money from any party, including any Trustee hereunder, whether for the purpose of raising funds to pay taxes, to buy property, to refinance any debt, or without specific purpose, and to give or not to give security for the loan;

(J)  To hold property in the name of a nominee or unregistered or in such form that the ownership thereof will pass by delivery; and

(K)  To open and maintain bank accounts and brokerage accounts.

0092N

SEVENTH:   (A)   After the Settlor's death, the Trustees shall pay to the Executors of the Settlor's estate an amount as they shall request in writing for the payment of "Death Taxes".  The term "Death Taxes" as used in this Article shall mean all estate, inheritance, transfer, succession, legacy or other death taxes (excluding, however, generation-skipping transfer taxes), together with interest and penalties thereon, if any, levied or assessed by reason of the Settlor's death by any governmental authority, domestic or foreign, with respect to any property, whether that property passes under or apart from this Trust Agreement.

(B)   The Trustees of this Trust Agreement shall rely upon the foregoing written request to pay Death Taxes by the Executors of the Settlor's estate, and such payment by the Trustees of this Trust Agreement to said Executors shall be binding and conclusive upon anyone interested in this trust.

EIGHTH:   (A)   The Trustees may from time to time settle their accounts with respect to the trust by agreement with the beneficiary of the trust, and if such beneficiary is an adjudicated incompetent, with such beneficiary's legally appointed Guardian of his or her property.  Such agreement shall bind all persons, whether or not then in being, then or thereafter entitled to any property of such trust, whether principal or income, and shall constitute a complete release

- 10 -

0092N

and discharge of the Trustees for the acts and proceedings so accounted for.

(B)  Nothing contained in this Article shall preclude the Trustees from seeking a judicial settlement of their accounts.

NINTH:   (A)  The Settlor directs that there shall be three Trustees serving at any time.  If at any time there are fewer than three Trustees, the Settlor directs that the remaining Trustees or Trustee shall appoint an additional Co-Trustee or Co-Trustees in the manner provided in Paragraph "(B)" of this Article.  The Settlor directs that under no circumstances shall his son LARRY or any of LARRY's descendants be appointed to serve as a Trustee.

(B)  Any instrument effecting the revocation or appointment of a Trustee pursuant to this Article shall be made by instrument in writing and shall specify the time at which, or the event or contingency upon which, each revocation is to occur and each appointee is to take office.

No appointee may take office without first signing an instrument by which the appointee accepts his or her position and agrees to carry out the terms of this Trust Agreement.  The appointee shall be deemed to take office upon signing the instrument of acceptance.

Any instrument effecting the appointment of a Trustee pursuant to this Article may be amended or revoked,

as to any appointee who has not taken office as Trustee, by instrument in writing signed by the person who at the time of such amendment or revocation is empowered by this Article to effect a new appointment.

TENTH:    Any Trustee at any time in office hereunder may resign, provided that a Co-Trustee is then serving or a successor Trustee has been appointed and accepted his or her appointment pursuant to Article NINTH, by mailing or delivering a written notice of resignation, signed and acknowledged, to the Settlor, or if he is not living or if he is lacking legal capacity, to each other Trustee then in office or to such successor Trustee.  Such resignation shall take effect upon the date specified in such notice, whereupon all duties of the Trustee so resigning shall cease, other than the duty to account.

Any Trustee so resigning shall take all steps necessary to effect and perfect the delivery and transfer of all property then held under this Trust Agreement to each remaining Trustee, if any, and/or each successor to the resigning Trustee.  No successor Trustee shall be obliged to examine the accounts, records, and acts of any previous Trustee or any allocations of receipts or disbursements as between principal and income made by any previous Trustee.

ELEVENTH: (A)  If the Settlor and any beneficiary, or any prior beneficiary and any subsequent beneficiary designated

0092N

- 12 -

in the Agreement, shall die under circumstances making it difficult or impossible to determine who predeceased the other, then, without regard to who survived the other, it shall be deemed for purposes of the Agreement that the Settlor or such prior beneficiary, as the case may be, survived and the Trustees shall continue to hold or dispose of the trust property accordingly.

(B)  Any beneficiary whose entitlement to property (whether income or principal and whether outright or in trust) depends under this Trust Agreement upon his or her surviving the occurrence of some contingency, shall be deemed not to have done so unless the beneficiary survives such contingency by at least fourteen (14) days.

TWELFTH:  (A)  All questions pertaining to the validity and construction of this Trust Agreement and to the administration of the trust, shall be determined in accordance with the laws of the State of New York in effect from time to time.

(B)  Notwithstanding the application of New York law, the actual administration of the trust may be conducted in such location, and the location of its assets may be changed, as the Trustees in their discretion may determine from time to time.

(C)  No bond or other security shall be required of any Trustee serving hereunder at any time, including any successor, any provision of law to the contrary notwithstanding.

0092N

- 13 -

(D)   In addition to and not in limitation of any law authorizing Trustees to act by a majority, the Settlor directs that ministerial duties of the Trustees (such as signing of checks, execution of brokerage transactions relating to securities or commodities, and the like) may be executed by any one Trustee.

(E)   All references to the "Internal Revenue Code" shall mean the Internal Revenue Code of 1986, as amended, and as the same may hereafter be amended from time to time.

(F)   The Settlor hereby requests that the Trustees shall retain ALAN S. LIEBMAN and the firm of Holtzmann, Wise & Shepard (or any firm with which he is associated) as attorney for "The Sam Shaw Family Trust".

(G)   No Trustee of this Trust Agreement shall be entitled to any trustee's commission.

THIRTEENTH:   To the same effect as if it were the original, anyone may rely upon a copy certified by a notary public to be a counterpart of this instrument (and of the writings, if any, endorsed thereon or attached thereto). Anyone may rely upon any statement of fact certified by any one who appears from the original document or a certified copy to be a Trustee hereunder.

0092N

IN WITNESS WHEREOF, the Settlor and the Trustees have signed this Trust Agreement on the date stated on page one.

_____
SAM SHAW, Settlor and Trustee

_____
META STEVENS, Trustee

_____
EDITH MARCUS, Trustee

0092N

– 15 –

STATE OF *New York* )

                 :   ss.:

COUNTY OF *New York* )

        On this *4th* day of *October*, 1994, before me person-
ally came SAM SHAW, to me known and known to me to be the
person described in and who executed the foregoing instrument
and who acknowledged that he executed the same.

_____
Notary Public

THERESA S. TARLOWE
Notary Public, State of New York
No. 41-4764466
Qualified in Queens County
Term Expires March 30, 19*96*

STATE OF *New York* )

COUNTY OF *New York* ) :   ss.:

        On this *4th* day of *October*, 1994, before me
personally came META STEVENS, to me known and known to me to be
the person described in and who executed the foregoing
instrument and who acknowledged that she executed the same.

_____
Notary Public

THERESA S. TARLOWE
Notary Public, State of New York
No. 41-4764466
Qualified in Queens County
Term Expires March 30, 19*96*

0092N

STATE OF *New York* )
COUNTY OF *New York* ) ss.:

On this 4th day of *October*, 1994, before me person-
ally came EDITH MARCUS, to me known and known to me to be the
person described in and who executed the foregoing instrument
and who acknowledged that she executed the same.

_____
Notary Public

THERESA S. TARLOWE
Notary Public, State of New York
No. 41-4764466
Qualified in Queens County
Term Expires March 30, 1976

0092N

SCHEDULE A

    The following photographs, negatives and transparencies constitutes the original principal of the Trust Fund:

## INVENTORY OF PHOTOGRAPHS

### MEN

WOODY ALLEN

FRED ASTAIRE

WARREN BEATTY

IRVING BERLIN (COMPOSER)

HUMPHREY BOGART

MARLON BRANDO

RICHARD BURTON

JOHN CASSAVETTES

MARC CHAGALL

MONTGOMERY CLIFT

GARY COOPER

ARRON COPELAND (COMPOSER)

MARCEL DUCHAMP (WITH DUKE ELLINTON ON THE SET
                RECORDING "PARIS BLUES"), etc.

PETER FALK

CLARK GABLE    (DANCING WITH MARILYN MONROE/SELECTED AS ONE
               OF THE BEST HOLLYWOOD PHOTOS 50 YEAR EDITIONS
               "LIFE MAGAZINE" AND BOOK), etc.

CARY GRANT

FERNAND LEGER

PAUL NEWMAN

GREGORY PECK

OMAR SHARIFF

LOUIS ARMSTRONG

0092N

0092N

SEAN CONNERY

TONY CURTIS

MILES DAVIS

VITTORIO DE SICA

DUKE ELLINGTON

JOHN FORD

BEN GAZZARA

DIZZY GILLESPIE

IRA GERSHWIN

REX HARRISON

SESSU HAYAKAWA

WOODY HERMAN

ALFRED HITCHCOCK (DIRECTOR)

WILLIAM HOLDEN

JOHN HUSTON (DIRECTOR / ACTOR / WRITER)

BURT LANCASTER

FRANK LOESSER (COMPOSER - GUYS AND DOLLS)

ARTHUR MILLER (WRITER, PLAYWRITE)

GERRY MULLIGAN

DUDLEY NICHOLS

JACK PALANCE

OTTO PREMINGER (DIRECTOR)

ANTHONY QUINN

SIR CAROL REED

JEAN RENOIR (DIRECTOR)

ROBERTO ROSSELLINI

PETER SELLERS

IGOR STRAVINSKY

LUCHINO VISCONTI (DIRECTOR)

JOHN WAYNE

ORSON WELLES

D.F. ZANUCK (LONGEST DAY)

GROVER CLEVELAND ALEXANDER

PAUL ANKA

ROMARE BEARDENR

CHARLES BRONSON

JAMES COBURN

JOE DIMAGGIO

KIRK DOUGLAS

JAMES GARDNER

PAUL GONZALVEZ

BUDDY GUY

LAWRENCE HARVEY

JOHNNY HODGES

TAB HUNTER

PAUL JENKINS

PAPPA JOHN

GENE KELLY

LEE MARVIN

FRED MCMURRY

WYNTON MARSALIS

MARCELLO MASTROIANNI

JAY MCSHAN

ZERO MOSTEL

DAVID NIVEN

PETER O'TOOLE

SATCHEL PAGE

ANTHONY PERKINS

PINETOP PERKINS

SIDNEY POITIER

RYUICHI SAKAMOTO

DAVID SANDHORN

FRANK SINATRA

JACK TEAGARDEN

ROBERT WAGNER

CAT ANDERSON

JAMES BALDWIN

COUNT BASIE

THE BEATLES

BRANDON BEHAN

JEAN PAUL BELMONDO

YUL BRYNER

OSCAR COHEN

EDDIE CONSTANTINE

POPS FOSTER

BENNY GOODMAN

ROBERT GRAVES

FRED HOYLE

JACK LESBERG

STEVE MCQUEEN

MEZZ MEZZROW

MOUSTACHE

PABLO NERUDA

JACQUES PERVERT

BUD POWELL

SERGE REGGIANI

PEEWEE RUSSEL

LUCKY THOMPSON

WEEGEE

ELI WEISEL

THOMMY YOUNG

TED ALLAN

ALLAN ARKIN

SIDNEY BECHET

MILTON BERLE

SEYMOUR CASSEL

JEAN COCTEAU

SAMMY DAVIS JR.

MOISHE DAYAN

PHILIPPE DE BROCCA

MARCEL DUCHAMPS

EDDIE FISHER

LEWIS GILBERT

BEN HECHT

IRVING KIRSHNER

MAX LERNER

STANLEY MANN

HUGUES PANASSIE

GREGORY RATOFF

DON RICKLES

MARTIN RITT

ROBERT ROSSEN

AL RUBAN

JONAS SALK

ARTIE SHAW

PHIL SILVERS

JOE STEIN

ED SULLIVAN

BILLY WILDER

MAX YOUNGSTEIN

ROME

PARIS

JAPAN

VIENNA

SPAIN

PORTUGAL

0092N

<u>WOMEN</u>

URSULA ANDRESS

LAUREN BACALL

CAROLE BAKER (LIFE COVER)

INA BALIN (LIFE COVER)

ANNE BAXTER WITH ALFRED HITCHCOCK

INGRID BERGMAN - THE VISIT IN DEPTH

CLAIRE BLOOM

CAPUCCINE

CLAUDIA CARDINALE

LESLIE CARON (AND CHILD)

DIAHANN CARROLL

GERALDINE CHAPLIN

BRITT ECKLUND

MIA FARROW

JANE FONDA

JUDY GARLAND

FRANCOISE GILLOT (PICASSO, MOTHER OF PALOMA)

LILLIAN GISH WITH CAROLE LYNLEY

JULIE HARRIS

DEBRA HARRY "BLONDIE" (ROCK STAR)

DOLORES HART

RITA HAYWORTH

AUDREY HEPBURN

ISABELLA ALBONICO (ITALY)

ELENI ANNOUSAKIS (ZORBA)

FRANCOISE ARNOU (FRANCE)

DIANE BAKER

BARBARA TAYLOR BRADFORD (WRITER)

FRANCOISE BRION

ELLEN BURSTYN

MADAME CACCACYONIS (105 YEARS OLD) (ZORBA)

JULIE CARMEN

DIAHANN CARROLL AND BILLY STRAYHORN "ON" PIANO

"CRAZY HORSE WEST" GIRLS BACKSTAGE AND ON STAGE

AFDERA FRANCINA (MRS. HENRY FONDA)

LEILA KEDROVA (FRANCE)

KAY KENDALL (ENGLAND)

AZIZI JOHARI (KILLING OF A CHINESE BOOKIE)

SOPHIA LOREN

MARGARET LEIGHTON (ENGLAND)

PIA LINDSTROM

GINA LOLLABRIGIDA

GINA LOLLABRIGIDA (AS A CLOWN)

ANNA MAGNANI

SYLVANA MANGANO

DOROTHY MCGUIRE

MELINA MERCOURI

DINA MERRILL

MARILYN MONROE

FRANCE NUYEN (CHINESE)

GERALDINE PAGE

IRENE PAPPAS (GREECE)

PAULA PRENTIS WITH WOODY ALLEN

LEE REMICK (LIFE COVER)

DEBBIE REYNOLDS

ENGLISH BEAUTIES (SHIRLY MC FIELDS)

XAN CASSAVETES

VALENTINA CORTESE (ITALY)

CRETE WOMEN

LINDA CRISTOL

MIRIAM DAVIES, CECIL B. DEMILLE AND IRVING HOFFMAN

YAEL DAYAN

IRENE DEMICH

CHANA EDEN (ISRAELI)

NANNETTE FABRAY

SHIRLEY ANNE FIELDS

MEG FOSTER

MADAME GILLES

ZSA ZSA GABOR

SAMANTHA JONES (CANADA)

MARY LEATHERBEE (LIFE MOVIE ENTERTAINMENT EDITOR)

DORIAN LEIGH

TINA LOUISE

LISA LU (OPPOSITE MARLON BRANDO)

CAROLE LYNLEY

KATHY MARTIN

HAYLEY MILLS

JANET MUNRO

JULIE NEWMAR

BARBARA PARKINS (PEYTON PLACE (CANADA)

PINA PELLICER (MEXICO - OPPOSITE MARLON BRANDO)

JOANNA PETIT

DEBORAH RAFFIN

GENA ROWLANDS

ELIZABETH TAYLOR

PAOLA FRANCIA (MRS ORSON WELLES)

LILLIAN GISH

KATHY JURADO

ANNA MAGNANI

EDNA O'BRIEN

MRS BUDD POWELL

JEAN SEBERG

ROMY SHNEIDER

SIMONE SIGNORET

MARINA VLADY

MOLLY WALLACE (IRISH HORSEWOMEN)

NATALIE WOOD

JOANNE WOODWARD

_____

SAM SHAW, Settlor