UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SHAW FAMILY ARCHIVES, LTD., EDITH
MARCUS and META STEVENS,

               Plaintiffs,

      v.

CMG WORLDWIDE, INC., an Indiana
Corporation and MARILYN MONROE, LLC, a
Delaware Limited Liability Company,

             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

05 CV 3939 (CM)

# DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS, STAY OR TRANSFER

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
47th Floor
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

Attorneys for Defendants CMG Worldwide, Inc.
and Marilyn Monroe LLC

# TABLE OF CONTENTS

Page

Preliminary Statement ............................................................................................... 1

Procedural And Factual Background ......................................................................... 3

    A.    Parties .................................................................................................. 3

    B.    The First-Filed Indiana Action .......................................................... 3

    C.    The Second-Filed New York Action ................................................. 6

    D.    The Second-Filed California Actions ................................................ 7

Argument ................................................................................................................... 8

I.  This Action Must Be Dismissed In Light Of The Virtually Identical First-Filed Indiana Action ......................................................................................................... 8

    A.    The Indiana Action Was Filed First ................................................. 9

    B.    Because Both Actions Involve Substantially Similar Parties and Embrace the Same Issues, the First Suit Should Have Priority ................................................. 10

    C.    The Equities Also Weigh In Favor of the First-Filed Action ............................. 13

II.  This Case Should Alternatively Be Stayed ......................................................... 16

III.  Alternatively, This Case Should Be Transferred To The Southern District Indiana ........... 16

    A.    Plaintiff Could Have Brought This  Action In The Southern District of Indiana 17

    B.    The Interests of Justice And The Convenience Of  Parties And Witnesses Mandate That This Action  Be Transferred To The Southern District Of Indiana ....................................................................... 17

Conclusion    ...............................................................................**Error! Bookmark not defined.**

i

# TABLE OF AUTHORITIES

Page(s)

## Cases

*800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128 (S.D.N.Y. 1994) ....... passim

*Adam v. Jacobs*, 950 F.2d 89 (2d Cir. 1991) .................................................................... 8, 12, 13

*Alden Corp. v. Eazypower Corp.*, 294 F. Supp. 2d 233 (D. Conn. 2003).................................... 21

*Everest Capital Ltd. v. Everest Finds Mgt., LLC*, 178 F.Supp.2d 459 (S.D.N.Y. 2002).. 15, 18, 21

*Firestone v. Galbreath*, 722 F. Supp. 1020 (S.D.N.Y. 1989) ...................................................... 21

*First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76 (2d Cir. 1989).............................. 8, 9

*GT Plus, Ltd. v. JA-RU, Inc.*, 41 F. Supp. 2d 421 (S.D.N.Y. 1998) ................................ 11, 14, 22

*Herbert Ltd. P'ship. v. Elec. Arts, Inc.*, 325 F. Supp. 2d 282 (S.D.N.Y. 2004)........................... 19

*Hoffman v. Blaski*, 363 U.S. 335 (1960) ....................................................................................... 17

*J. Lyons & Co. Ltd. v. Republic of Tea, Inc.*, 892 F. Supp. 486 (S.D.N.Y. 1995)........ 9, 12, 14, 23

*Kramer v. Time Warner, Inc.*, 937 F.2d 767 (2d Cir. 1991) ........................................................... 4

*MasterCard Int'l Inc. v. Lexcel Solutions, Inc.*, 03 Civ. 7157, 2004 U.S. Dist. LEXIS 10906
    (S.D.N.Y. June 18, 2004)........................................................................................................ 22

*Meeropol v. Nizer*, 505 F.2d 232 (2d Cir. 1974).......................................................................... 10

*MK Sys., Inc. v. Schmidt*, 04 Civ. 8106, 2005 U.S. Dist. LEXIS 3877
    (S.D.N.Y. Mar. 16, 2005) ....................................................................................................... 10

*Regions Bank v. Wieder & Mastroianni*, 170 F. Supp. 2d 436 (S.D.N.Y. 2001) ................. 10, 16

*Reliance Ins. Co.v. Six Star, Inc.*, 155 F. Supp. 2d 49 (S.D.N.Y. 2001)...................................... 18

*Rico Records Distrib., Inc. v. Ithier*, 04 Civ. 9782, 2005 U.S. Dist. LEXIS 5966
    (S.D.N.Y. April 11, 2005) ....................................................................................................... 15

*Rivera Trading Corp. v. Oakley, Inc.*, 944 F. Supp. 1150 (S.D.N.Y. 1996)................................ 14

*Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505 (S.D.N.Y. 2004) ............. 16, 20

*Sequa Capital Corp. v. Miller & Miller Auctioneers, Inc*, 92 Civ. 3761, 1992 U.S. Dist.
    LEXIS 12281 (S.D.N.Y. Aug. 11, 1992)...................................................................... 10, 13, 16

*Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328 (S.D.N.Y. 1998) ...................................... passim

*Vassallo v. Niedermeyer*, 495 F. Supp. 757 (S.D.N.Y. 1980) ..................................................... 22

*Wallace Computer Serv., Inc. v. Moore Corp., Ltd.,* 95 Civ. 6379, 1995 U.S. Dist.
    LEXIS 14034 (S.D.N.Y. Sept. 27, 1995) ................................................................................. 9

*Wyndham Assoc. v. Bintliff*, 398 F.2d 614 (2d Cir.), *cert. denied*, 393 U.S. 977 (1968)............. 22

## Statutes

28 U.S.C. § 1391............................................................................................................................. 17

28 U.S.C. § 1400............................................................................................................................. 17

28 U.S.C. § 1404 ............................................................................................... 2, 16, 22

**Rules**

Fed. R. Civ. P. 13 .............................................................................................. 12, 13

**<u>Preliminary Statement</u>**

This action should be dismissed because it is virtually identical to an action that is currently pending in the Southern District of Indiana and which was commenced one month before plaintiffs filed this suit.  The law is clear: where, as here, two separate federal actions are virtual mirror images and no special circumstances exist, both judicial economy and the likelihood of inconsisent judgments require dismissal of the second-filed action in deference to the first-filed action.  Plaintiffs' transparent effort to secure some perceived benefit in this forum by filing this redundant action should not be countenanced, and this action should be dismissed under the Second Circuit's first-filed rule.

The facts and procedural background are straightforward.  Defendants in this action are the exclusive owners and licensors of the name, image, persona and likeness of Marilyn Monroe. Plaintiffs are the owners and licensors of alleged copyrights in and to certain photographic images of Marilyn Monroe.  On March 23, 2005, Defendants filed their Indiana action against Plaintiff Shaw Family Archives, Ltd., seeking damages and injunctive relief for Plaintiff's violation of Defendants' exclusive rights, on the grounds that it (i) had stated to third parties that Defendants have no rights regarding Marilyn Monroe; (ii) had attempted to use Plaintiffs' photographic images of Marilyn Monroe for commercial purposes, without Defendants' consent; and (iii) did not possess valid copyrights in the Marilyn Monroe images.

Although Plaintiffs were aware of the first-filed Indiana action, they nevertheless filed this lawsuit approximately four weeks after that action was commenced.  It is undeniable that the claims in this action are ***the exact same issues upon which the first-filed Indiana action is founded***.  When courts are faced with a complaint that is substantially similar to a first-filed suit in another federal district court, a first-to-file plaintiff's choice of forum is accorded a strong presumption of deference and, absent special circumstances, the second-filed case is dismissed.

Here, no special circumstances exist warranting a departure from this doctrine. Accordingly, this is a paradigmatic case for application of the first-filed rule.

Pursuant to the first-filed rule, Defendants respectfully submit that the Court should dismiss this action for the following reasons:

First, this action involves substantially similar parties and embraces the same issues as those that are involved in the first-filed action. Indeed, both lawsuits raise the same two central questions: (1) whether Marilyn Monroe LLC and CMG Worldwide, Inc. hold exclusive proprietary rights in the name, image, persona, and likeness of Marilyn Monroe and (2) whether Plaintiffs possess valid and enforceable copyrights in certain photographs of Marilyn Monroe.

Second, this case was filed almost four weeks after the filing of the action in the Southern District of Indiana.

Third, Indiana is the most convenient and proper jurisdiction for the adjudication of these claims.

Fourth, Defendants did not engage in improper forum shopping or anticipatory filing in instituting the Indiana action.

Fifth, New York is not the most convenient or proper jurisdiction for the adjudication of these claims.

Based on these facts, dismissal of this action is appropriate. Alternatively, this case should be stayed pending resolution of the first-filed action in the Southern District of Indiana or transferred to that forum pursuant to 28 U.S.C. § 1404(a).

## Procedural And Factual Background

### A.    Parties

Marilyn Monroe LLC is the proprietor of various intellectual property rights in the name, image and persona of Marilyn Monroe (hereinafter, the "Marilyn Monroe Intellectual Property Rights").  Marilyn Monroe LLC is a business entity organized under the laws of the State of Delaware.  *See* Declaration of Orin Snyder, executed on May 9, 2005, ("Snyder Dec."), Ex. A, Plaintiffs' Complaint ("Shaw Complaint") at ¶ 5.

CMG Worldwide, Inc. ("CMG") represents Marilyn Monroe LLC (among other celebrities both deceased and living) for the purpose of licensing the Marilyn Monroe Intellectual Property Rights to third persons.  CMG is an Indiana corporation, organized and existing pursuant to the laws of the State of Indiana for nearly two decades and has its principal place of business in Indianapolis.  *See* Declaration of Cristina Piquinela, executed on May 9, 2005 ("Piquinela Dec.") at ¶ 8.

Plaintiffs Edith Marcus and Meta Stevens are the alleged copyright owners of certain photographs of Marilyn Monroe taken by their father, Sam Shaw, and are shareholders in the Shaw Family Archives (collectively the "Shaw Archives").  *See* Snyder Dec., Ex. A., Shaw Complaint at ¶¶ 4, 12.  Plaintiff Shaw Archives is a New York Corporation, allegedly authorized to market and license a collection of Shaw photographs.  *See id.* at ¶¶ 3, 13

### B.    The First-Filed Indiana Action

For years, Marilyn Monroe LLC, CMG and the Shaw Archives have been engaged in commercial activities with common third parties regarding the sale of products containing images of Marilyn Monroe.  Thus, in past years, whenever a party sought to use for commercial purposes the photographic images taken of Marilyn Monroe by Sam Shaw, that party would

secure one license from the Shaw Archives to use such image and another license from CMG to use the Marilyn Monroe Intellectual Property Rights. *See* Piquinela Dec. at ¶ 6.

In direct contravention of this well-established practice, Shaw Archives, through its licensing agent, Bradford Licensing Associates ("Bradford"), began soliciting a number of existing licensees of Marilyn Monroe LLC and CMG to enter into unlawful and unauthorized licenses for the use of the Marilyn Monroe Intellectual Property Rights. *See id.* at ¶ 7. Specifically, Defendants here are informed that Bradford was telling third parties that neither Marilyn Monroe LLC nor CMG had the rights to utilize the Monroe Intellectual Property Rights and that these third parties did not need to obtain permission from Marilyn Monroe LLC or CMG to use Marilyn Monroe images taken by Shaw (and others) for commercial use. *See id.*

On March 23, 2005, to remedy the Shaw Archives' unlawful conduct, Plaintiffs Marilyn Monroe LLC and CMG filed a complaint against the Shaw Archives and its agent Bradford in the Southern District of Indiana ("Indiana Action"). *See* Synder Dec., Ex. B, CMG Complaint.[1]

In the first-filed Indiana Action, Marilyn Monroe LLC and CMG contend that they have "Intellectual Property rights" in the "Marilyn Monroe name, image, and persona." Snyder Dec., Ex. B, CMG Complaint at ¶ 7. Marilyn Monroe LLC and CMG further contend that despite

---

[1] The Indiana complaint also asserted claims against a third defendant, James Dougherty, the purported owner of other images of Marilyn Monroe. *See* Snyder Dec., Ex. B, CMG Complaint at ¶¶ 45-48. In addition to the Indiana Action filed against Shaw Archives, Marilyn Monroe LLC and CMG filed three related actions in the Southern District of Indiana against other defendants concerning the Monroe Intellectual Property Rights. *See* Snyder Dec., Exhs. C-E. It is appropriate for this Court to take judicial notice of each of these filings for this motion. *See, e.g., Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("Courts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings."). Marilyn Monroe LLC and CMG will be seeking to consolidate all of the Indiana actions as related cases. *See* Snyder Dec. at ¶ 5.

their rights, the Shaw Archives (itself or through its agent Bradford) has "intentionally solicited a number of existing licensees of [Marilyn Monroe LLC and CMG] to enter into . . . unlawful and unauthorized [licenses] for the use of the Monroe Intellectual Property Rights." *Id*. at ¶ 17. Moreover, defendant Bradford, as an agent of the Shaw Archives, "owns and operates a website through which it communicates the false impression to the public that it has the full authority to license the use of the Monroe Intellectual Property Rights for commercial purposes." *Id*. at ¶ 15. Defendant Bradford also has communicated to third-parties that CMG and Marilyn Monroe LLC "do not have enforceable interests in the Monroe Intellectual Property Rights." *Id*. at ¶ 16.

The Indiana Action seeks the following damages and injunctive relief against the Shaw Archives and its agent regarding the Marilyn Monroe Intellectual Property Rights:  (1) an award of damages for violation of these rights based on (a) rights of publicity, (b) the Indiana Crime Victims Act, (c) unfair competition, (d) trade/libel/disparagement, and (e) interference with a business advantage and potential business advantage; and (2) declaratory relief affirming CMG's exclusive interest in these rights and injunctive relief restraining defendants from engaging in activities that interfere with such rights.  *See id.* at ¶¶ 24-53.

The Indiana Action also seeks a declaration that Shaw Archives "does not possess a valid and enforceable copyright in one or more photographs that comprise the Shaw Collection," and that such "photographs become part of the public domain. . . ."  *Id.* at ¶¶ 51, 52.

The first-filed Indiana Action further requests that Shaw Archives be permanently enjoined from "conducting further activities inconsistent with [the] declared interests and rights [of Marilyn Monroe, LLC and CMG] in the Monroe Intellectual Property Rights" and "from engaging in any activities which interfere with Plaintiffs' business activities with respect to their

legal and proprietary interests and rights in the Monroe Intellectual Property Rights" *Id.* at Prayer for Relief (D).

Shaw Archives was sent a copy of the Indiana complaint by certified mail on or about March 28, 2005. A response to the Indiana complaint was due on April 20, 2005. On April 19, 2005, however, Shaw Archives filed a notice of enlargement of time pursuant to Indiana Local Rule 6.1, and its time to respond was extended to May 20, 2005. *See* Snyder Dec. at ¶ 10, Ex. F.

**C.    The Second-Filed New York Action**

On April 19, 2005, nearly four weeks after the Indiana Action was filed, the Plaintiffs here brought suit against CMG and Marilyn Monroe LLC in this Court. Plaintiffs allege two causes of action, declaratory relief and copyright infringement. *See* Snyder Dec., Ex. A, Shaw Complaint at ¶¶ 15-38. Both these claims are directly related and fundamental to the core issues in the Indiana Action: whether Marilyn Monroe LLC and CMG possess property rights in Marilyn Monroe's name, image and persona and whether plaintiffs own valid copyrights in certain photographs of Marilyn Monroe. Of course, these are *the exact same issues upon which the first-filed Indiana Action is founded.*

Thus, in this action, Shaw Archives seeks declaratory relief based on the allegation that "CMG and [Marilyn Monroe LLC] have no rights of publicity in the name, likeness and image Marilyn Monroe, and their claims to the contrary have interfered with and prevented the licensing of the Shaw Collection by the plaintiffs." *Id.* at ¶ 37. As a result, Shaw Archives alleges that "defendants cannot . . . lawfully place any restrictions or impediments on the right of plaintiffs to license the use of the Marilyn Monroe photographs as to which Plaintiffs owns the copyrights." *Id.* The Shaw Archives thus seeks a judgment declaring that "defendants own no

rights of publicity, association, sponsorship and/or endorsement, in and to the name and likeness of the late actress Marilyn Monroe."  *Id*. at ¶ 39.

The Shaw Archives also contend that Plaintiffs Marcus and Stevens "have been and are the owner of all rights, title, and interest in the subject photographs in the Shaw Collection" and that Marilyn Monroe LLC and CMG have infringed the Shaw Archives' copyrights by using or exploiting certain of these photographs.  *See id*. at ¶¶ 17, 19, 22.  Accordingly, the Shaw Archives seeks a judgment declaring "that plaintiffs have rights to the photographs contained within the Shaw Collection, including the right to publish and issue licenses for the publication and use of those photographs" and seeks damages and injunctive relief for Defendants' alleged violation of these rights.  *Id*. at ¶ 39.

**D.**    **The Second-Filed California Actions**

As previously noted, Marilyn Monroe LLC and CMG filed three related actions in Indiana against other defendants concerning both the Monroe Intellectual Property Rights and the validity of copyrights in and to photographic images of Marilyn Monroe purportedly owned by such defendants.  *See* supra, at p. 4, fn 1; Snyder Dec., Exhs. C-E.  Just as Plaintiffs here have done, the defendants in those related actions each instituted their own second-filed action in a different court, although those defendants chose to file actions in the Central District of California.  *See* Snyder Dec. at ¶ 9.  Just as with this action, the California actions involve the same rights of publicity and copyright issues that are at issue in the first-filed Indiana actions – ownership of the Marilyn Monroe Intellectual Property Rights and the copyrights to various Marilyn Monroe photographs.  *See id.*  While these suits are now scattered throughout the country (four suits in the Southern District of Indiana, three suits in the Central District of California and one suit in the Southern District of New York), there is one common denominator

– all suits involving all the parties and issues were *first* filed in Indiana, the State in which CMG and the administration of the Marilyn Monroe Intellectual Property Rights are centered.  Marilyn Monroe LLC and CMG have moved to have the California actions dismissed, stayed or transferred to Indiana.  *See id.*

**Argument**

**I.**
**This Action Must Be Dismissed In Light Of**
**The Virtually Identical First-Filed Indiana Action**

When two actions involving substantially the same issues and parties are pending concurrently, courts in the Second Circuit follow the "'first filed' rule whereby the court which first has possession of the action decides it."  *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 131 (S.D.N.Y. 1994).  It is well-settled that "where there are two competing lawsuits the first suit should have priority, absent the showing of a balance of conveniences . . . or special circumstances giving priority to the second."  *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989) (citations omitted).  Deference to the first filing "embodies considerations of judicial administration and conservation of resources."  *Id.* at 80.

There is a "strong presumption in favor of the forum of the first-filed suit."  *800-Flowers, Inc.,* 860 F. Supp. at 131 (dismissing second-filed suit and noting that the first filed rule "should not be disregarded lightly").  In fact, a district court may abuse its discretion "when it refuses to stay or dismiss a duplicative suit."  *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991).  As such "[t]he propriety of a forum is a threshold matter that the Court must consider before addressing the merits of an action."  *800-Flowers, Inc.*, 860 F. Supp. at 131; *see also Adam*, 950 F.2d at 94 (finding that the district court "should have considered whether it was the proper forum before reaching the merits" and "erred by failing to transfer or dismiss [second-filed] action").

As set forth below, because this case embraces the same issues and involves the same parties as the first-filed action, this case should be dismissed, thereby permitting the first-filed action to be fully litigated in the Southern District of Indiana.

**A.    The Indiana Action Was Filed First**

There can be no dispute that the Indiana action was filed approximately four weeks before the Shaw Complaint was filed in this Court.  *Compare* Snyder Dec., Ex. B, CMG Complaint, *with* Snyder Dec., Ex. A., Shaw Complaint.  In these circumstances, courts regularly dismiss the second-filed action.

*First City Nat'l Bank & Trust Co.* and *800-Flowers, Inc.* are on point and foreclose this action.  In *First City Nat'l Bank & Trust Co.,* the Second Circuit affirmed the district court's dismissal of two consolidated second-filed actions that were filed in the Southern District of New York approximately four and six weeks after a first-filed action in the Western District of Oklahoma.  878 F.2d at 80. The Second Circuit dismissed the actions, reasoning that the lower court's "decision to defer to the Oklahoma court . . . gives proper weight to the necessity of avoiding duplicative litigations, thereby conserving judicial resources."  *Id*. (citations omitted). Similarly, in *800-Flowers, Inc.*, Judge Leisure dismissed a second-filed action for trademark infringement and unfair competition in light of a first-filed action for declaratory relief that was proceeding in the District of Florida and which was filed 20 days earlier.  *See id*. at 136.  *See also J. Lyons & Co. Ltd. v. Republic of Tea, Inc.*, 892 F. Supp. 486, 493 (S.D.N.Y. 1995) (dismissing trademark infringement action filed just over four weeks after first-filed declaratory action).  Indeed, courts in this district regularly dismiss subsequent actions filed even closer in time to a first-filed action.  *See, e.g., Wallace Computer Serv., Inc. v. Moore Corp., Ltd.,* 95 Civ. 6379, 1995 U.S. Dist. LEXIS 14034, *11 (S.D.N.Y. Sept. 27, 1995) (dismissing New York

action filed two weeks after first-filed Delaware action); *Sequa Capital Corp. v. Miller & Miller Auctioneers, Inc*, 92 Civ. 3761, 1992 U.S. Dist. LEXIS 12281, *14 (S.D.N.Y. Aug. 11, 1992) (dismissing New York action filed 13 days after a declaratory action in Texas).

Because the Complaint in this action was filed almost a full month after the Indiana Action, this action constitutes the second-filed action for purposes of the first-filed rule and should be dismissed.

**B.     Because Both Actions Involve Substantially Similar Parties and Embrace the Same Issues, the First Suit Should Have Priority**

The captions of the complaints filed in the Indiana Action and this action confirm that the parties in both suits are virtually identical.  CMG and Marilyn Monroe LLC are plaintiffs in the Indiana Action, *see* Snyder Dec., Ex. B, CMG Complaint at ¶¶ 1-2, and are defendants in the Complaint in this action.  *See* Snyder Dec., Ex. A, Shaw Complaint at ¶ 5.  Shaw Archives is a defendant in the Indiana Action, *see* Snyder Dec., Ex. B, CMG Complaint at ¶ 9, and is a plaintiff in the Complaint in this action.  *See* Snyder Dec., Ex. A, Shaw Complaint at ¶ 3.[2]  This substantial overlap in parties is more than sufficient to invoke application of the first-filed rule, as the "rule applies even where the two actions do not involve all of the same parties." *MK Sys., Inc. v. Schmidt*, 04 Civ. 8106, 2005 U.S. Dist. LEXIS 3877, *8 n.1 (S.D.N.Y. Mar. 16, 2005), *citing Meeropol v. Nizer*, 505 F.2d 232, 235 (2d Cir. 1974); *Regions Bank v. Wieder & Mastroianni*, 170 F. Supp. 2d 436, 441 (S.D.N.Y. 2001) ("we note that the first-filed rule may apply even if the two actions at issue involve different parties").

_____

[2] Although Plaintiffs Marcus and Stevens were not named as parties in the Indiana Action, it is undisputed that they own and control the Shaw Archives.  *See* Snyder Dec., Ex. A, Shaw Complaint at ¶ 4.

The two actions also involve the same core issues. For the first-filed rule to apply, the two actions need not be exactly parallel to one another; it is sufficient that the actions "embrace[] the same issues." *Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328, 332 (S.D.N.Y. 1998); *see also GT Plus, Ltd. v. JA-RU, Inc.*, 41 F. Supp. 2d 421, 424 n.2 (S.D.N.Y. 1998) ("The first-filed rule can be triggered even when the competing claims do not present the exact same issues.").

As set forth above, the central issues in these two cases overlap entirely. Each case concerns whether Marilyn Monroe LLC and CMG possess certain rights and interests in the name, image and persona of Marilyn Monroe and whether Shaw Archives possesses valid and enforceable copyrights in photographs of Marilyn Monroe. *See supra* pp. 3-7.

For example, Marilyn Monroe LLC's and CMG's request for declaratory relief in the Indiana Action that Marilyn Monroe LLC "possesses the exclusive rights to publicity and privacy in the name, image, likeness, persona, and other identifying elements of Marilyn Monroe" and that CMG "possesses the exclusive right to license the Monroe Intellectual Property Rights" is the flip-side of the declaratory relief sought in Count 2 in this action, that "defendants own no rights of publicity, association, sponsorship and/or endorsement, in and to the name and likeness of the late actress Marilyn Monroe." *Compare* Synder Dec., Ex. B, CMG Complaint at Prayer for Relief (D), *with* Snyder Dec., Ex. A, Shaw Complaint at ¶ 38. Similarly, Marilyn Monroe LLC's and CMG's request for a declaration in the Indiana Action that "Shaw does not possess valid and enforceable copyrights in one or more photographs in the Shaw Collection" raises the same central issue raised by Count 1 in this action, namely whether Shaw Archives possess enforceable copyrights in these photographs, such that they can sue for purported "infringement" of those rights. *Compare* Snyder Dec., Ex. B, CMG Complaint at Prayer for Relief (D), *with* Snyder Dec., Ex. A, Shaw Complaint at ¶ 17.

Under settled authority, the similarity between the issues involved here is more than sufficient for application of the first-filed rule. For example, in *Toy Biz, Inc.,* plaintiff in the first-filed case commenced an action for antitrust violations, copyright infringement, trademark infringement and unfair competition. 990 F. Supp. at 329-330. Several months later, the defendant in the first-filed action brought suit in another court, alleging claims of patent infringement and tortious interference with a contract against the plaintiff in the first-filed action. *Id.* at 330. Although the cases were not exactly identical, the court ruled that "[b]oth cases involve the sale of certain small hobby model flying rockets" and held that "complete identity of parties and issues is not required for the first-filed rule to apply; the test is whether the second action embraces the issues in the first action." *Id.* at 332.

Moreover, even if both cases did not embrace the same issues (and they do), Plaintiffs are free to file their claims either as counterclaims or defenses in the Indiana Action. In fact, Plaintiffs' claims are compulsory counterclaims to the complaint in the Indiana Action. *See* Fed. R. Civ. P. 13(a) (a counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."); *Adam,* 950 F.2d at 92 (a claim is compulsory if "a logical relationship exists between the claim and the counterclaim and [if] the essential facts of the claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit") (citations omitted).

"While the filing of the compulsory counterclaims in a separate action is not a violation of Rule 13(a), it does contravene the purpose of the Rule in that it creates a multiplicity of actions, wastes judicial resources, and unduly burdens the litigation process." *J. Lyons & Co. Ltd.*, 892 F. Supp. at 490 (dismissing second filed action involving claims that were compulsory

counter-claims in first-filed action).  Indeed, the Second Circuit has held that application of the

first-filed rule is particularly appropriate, where, as here, the second action involves claims

which could have been filed as compulsory counterclaims in the first-filed action.  *See Adam*,

950 F.2d 93 (noting that Rule 13(a) "plays a unique role in conserving judicial resources and . . .

a court's failure to stay its hand unduly burdens the litigation process); *see also Sequa Capital*

*Corp.*, 1992 U.S. Dist. LEXIS 12281, at *14 (dismissing second-filed case involving claims that

could have been filed as compulsory counterclaims in first-filed action).[3]  Accordingly, both the

law and common sense dictate that Shaw Archives' claims should be dismissed and brought as

defenses or counterclaims in the first-filed action.  This result ensures that judicial resources are

conserved and that the risk of inconsistent judgments is avoided.

## C.    The Equities Also Weigh In Favor of the First-Filed Action

The equities in this case mandate dismissal under the first-filed rule.  In rare cases, courts

may choose to maintain a second-filed action where evidence of "special circumstances" exists

warranting an exception to the first-filed rule.  *See, e.g., Toy Biz, Inc.*, 990 F. Supp. at 332

(noting that special circumstances justifying an exception to the rule have been found "where the

first suit constitutes an 'improper anticipatory filing'. . .or where the litigant's filing of the first

action was motivated solely by forum-shopping.").  A "party asserting exceptions to the first-

---

[3]  Indeed, even if Shaw Archives' claims were deemed merely permissive counterclaims in the Indiana
Action, dismissal would still be appropriate.  *See Sequa Capital Corp*, 1992 U.S. Dist. LEXIS 12281,
at *14:  "The Second Circuit has not yet held that a district court should refrain from hearing a second
case involving claims that could be brought as permissive rather than compulsory counterclaims in
the first-filed action.  But given the Court's expression of concern regarding duplicative litigation and
judicial efficiency in *Adam*, it appears that even under those circumstances, a district court should
decline to act in the second case, and allow all claims to be resolved in one action."

filed rule bears the burden to show that equitable considerations recommend the later action, and must overcome the strong presumption in favor of the forum of the first-filed suit."  *GT Plus, Ltd.*, 41 F. Supp. 2d at 424 (citations omitted).  Because it is clear that no "special circumstances" exist here to overcome the strong presumption in favor of the first-filed action, this action should be dismissed.

First, Defendants did not engage in "forum shopping" by filing suit in Indiana.  "Forum shopping occurs when a litigant selects a forum with only a slight connection to the factual circumstances of his action, or where forum shopping alone motivated his choice."  *Rivera Trading Corp. v. Oakley, Inc.*, 944 F. Supp. 1150, 1158 (S.D.N.Y. 1996) (citations omitted). Here, Marilyn Monroe LLC and CMG properly filed suit in Indiana, the jurisdiction in which for the last 17 years CMG – Marilyn Monroe LLC's exclusive licensing and business representative – has been incorporated and has maintained its headquarters.  *See* Piquinela Dec. at ¶ 8.  That Defendants filed the Indiana Action in the forum most convenient to them in no way suggests improper forum shopping.  *See J. Lyons & Co. Ltd.*, 892 F. Supp. at 491 (finding no evidence of forum shopping where the "defendants appropriately filed their actions in the forum most convenient to them").

Second, jurisdiction in Indiana is particularly appropriate because it has the strongest nexus to the parties, witnesses and issues because:  (1) CMG conducts all of its business related to the administration of the Monroe Intellectual Property Rights, which lie at the heart of the two central issues in this matter, in Indiana and (2) the material witnesses reside and the relevant

documentation is maintained there.[4]  *See* Piquinela Dec. at ¶¶ 9-10, 12-15.  As such, Defendants

cannot be deemed to have forum shopped by filing suit in Indiana, the jurisdiction with which it

has the strongest nexus.  *See, e.g., Everest Capital Ltd. v. Everest Funds Mgt., LLC*, 178 F. Supp.

2d 459, 470 (S.D.N.Y. 2002) (finding no indication that defendants engaged in forum shopping

by initiating suit in Nebraska as "the locus of Defendants' business is in Nebraska, as are

anticipated witnesses and documents"); *Toy Biz, Inc.*, 990 F. Supp. at 331 (trademark

infringement action had "significant connection to the first-filed forum because it was the

principal place of plaintiff's business and a place where the allegedly infringing products were

sold).

      <u>Third</u>, the Indiana Action plainly was not an improper anticipatory filing.  It was not

prompted by a threat of litigation made to Defendants by the Shaw Archives, nor were the parties

involved in negotiations that had broken down.  *See, e.g.*, *800-Flowers, Inc.*, 860 F. Supp. at 132

(granting motion to dismiss in favor of first-filed declaratory relief action where there was no

evidence of a threat of litigation).[5]  The Shaw Archives cannot demonstrate that they had "an

immediate and firm intention to commence an action" against Defendants, a fact needed to show

that Defendants' action was improperly anticipatory.  *Rico Records Distrib., Inc. v. Ithier*, 04

---

[4]  Courts may also choose not to follow the first-filed rule where the "balance of  convenience" weighs
in favor of the later-filed action.  *See, e.g., 800-Flowers, Inc.*, 860 F. Supp. at 134.  As indicated here
and illustrated in further detail below, the balance of convenience in this case also weighs in favor of
the first-filed Indiana Action.  *See supra* pp. 17-22.

[5]  Of course, the first-filed Indiana Action seeks more than just declaratory relief.  To remedy serious
infringements, it seeks money damages for violations of numerous statutes and common laws.  *See*
Snyder Dec., Ex. B, CMG Complaint at Prayer for Relief at ¶¶ 53.

Civ. 9782, 2005 U.S. Dist. LEXIS 5966, *5 (S.D.N.Y. April 11, 2005).  To the contrary, the fact

that the Shaw Archives waited almost one full month before filing the instant action negates such

an intention.  *See Toy Biz, Inc.*, 990 F. Supp. at 332 n.5 (case did not "involve a race to the

courthouse as the New York action was filed almost three weeks before the Colorado action").

    Because the equities further favor adherence to the first-filed rule and no "special

circumstances" exist warranting departure from rule, this Court should dismiss this action so that

all the issues may be appropriately and efficiently resolved in the proper jurisdiction – Indiana.

## II.
## This Case Should Alternatively Be Stayed

    Although courts often dismiss second-filed actions pursuant to the first-to-file rule, *see*,

*e.g.*, *800-Flowers, Inc.*, 860 F. Supp. at 136; *Sequa Capital Corp*, 1992 U.S. Dist. LEXIS 12281,

at *14, a court also has discretion to stay the second-filed suit, rather than dismiss.  *See, e.g.,*

*Regions Bank*, 170 F. Supp. 2d at 441.  As such, should this Court wish to await the outcome of

the Indiana Action before dismissing this action, a stay of this action would be appropriate.

## III.
## Alternatively, This Case Should Be
## Transferred To The Southern District Indiana

    Alternatively, this case should be transferred to the Southern District of Indiana pursuant

to 28 U.S.C. § 1404(a).  That statute provides that, "[f]or the convenience of the parties and

witnesses, in the interest of justice, a district court may transfer any civil action to any other

district or division where it might have been brought."  28 U.S.C. § 1404(a).  The moving party

must demonstrate: (1) "the plaintiff could have brought the case initially in the proposed

transferee forum; and (2) the transfer would promote the convenience of parties and witnesses

and would be in the interest of justice."  *Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp.

2d 505, 514 (S.D.N.Y. 2004) (citations omitted).  Both factors exist here.

A.      **Plaintiff Could Have Brought This
        <u>Action In The Southern District of Indiana</u>**

An action "could have been brought" in a jurisdiction where:  (1) subject matter

jurisdiction exists (2) the defendants are subject to personal jurisdiction in that court and (3)

venue is proper.  *See Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960).  Those three requirements

are easily satisfied here; this action "might have been brought" in the Southern District of

Indiana.

Subject matter jurisdiction exists in Indiana in light of the federal copyright question at

issue, as well as complete diversity between the parties.  Defendants are also subject to personal

jurisdiction in Indiana as CMG – Marilyn Monroe LLC's exclusive licensing agent – is

incorporated in and has its principal place of business in Indiana.  *See* Piquinela Dec. at ¶ 8.

Venue is also proper in the Southern District of Indiana given that CMG, Marilyn

Monroe LLC's exclusive licensing and business representative, is incorporated and principally

operates its business in that district and purportedly engaged in "infringing" activity there.  28

U.S.C. 1391(b) (venue is proper, in federal question cases, in "a judicial district in which a

substantial part of the events or omissions giving rise to the claim occurred, or a substantial part

of property that is the subject of the action is situated"); 28 U.S.C. 1400(a) (civil actions "arising

under . . . copyrights . . . may be instituted in the district in which the defendant or his agent

resides or may be found.").

B.      **The Interests of Justice And The Convenience Of
        Parties And Witnesses Mandate That This Action
        <u>Be Transferred To The Southern District Of Indiana</u>**

When evaluating whether a transfer is appropriate, courts consider:  (1) the convenience

of the witnesses; (2) the location of relevant documents and the relative ease of access to sources

of proof, (3) the convenience of the parties, (4) the locus of the operative facts, (5) the

availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum, and (9) trial efficiency and the interests of justice based on the totality of the circumstances. *See, e.g., Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 56-57 (S.D.N.Y. 2001). These factors, however, are not weighted equally, nor must all tip in favor of one forum. *See id.* In fact, "the most significant factor to be decided on a motion to transfer venue is the convenience of party and non-party witnesses." *Everest Capital Ltd.*, 178 F.Supp.2d at 465. An evaluation of the foregoing factors compels the conclusion that this action belongs in Indiana and nowhere else.

The first three factors – convenience of the party and non-party witnesses and location of documents – all favor Indiana. First, in addition to being incorporated in Indiana, CMG maintains its headquarters in Indianapolis, and thus virtually all of its relevant documents and records concerning Marilyn Monroe LLC and its proprietary rights in the name, image, likeness and persona of Marilyn Monroe, and any alleged use of the Shaw photographs, are located there. *See* Piquinela Dec. at ¶¶ 8-9, 12-15. CMG's Indianapolis headquarters are a hub for all of CMG's business administration, and all contracts, monthly reports, and other financial records are maintained there. *Id.* at ¶ 12. Moreover, CMG's Vice President of Marketing and Licensing and the Marilyn Monroe LLC Account Executive, Cristina Piquinela, maintains a complete set of records for the account on the local hard drive of her non-portable desktop computer and in a hard copy file in her Indianapolis office. *Id.* at ¶ 13. CMG also stores all Marilyn Monroe LLC-related artwork, proposed and produced prototypes and other product samples in Indianapolis. *Id.*

Perhaps even more significant, the individuals responsible for handling virtually all of the Marilyn Monroe LLC-related business are in Indiana. *See id.* at ¶ 15. For example, nearly all CMG employees who work on the Marilyn Monroe LLC licensing business are in Indianapolis. *Id.* They include: Ms. Piquinela; Ms. Jamie Maslanka, Ms. Samira Ali, and Mr. Kunal Due, who negotiate and obtain licenses on behalf on Marilyn Monroe LLC; Mr. Jeff Bear, the Vice President of Contracts Administration; Ms. Maria Gejdosova, who ensures that Marilyn Monroe LLC receives its licensing payments; Ms. Sarah Small, who prepares the monthly reports that are submitted to Marilyn Monroe LLC; and Mr. Dominic Lizama, who designs and manages CMG's website and the images displayed on that website. *Id.*

Moreover, "[w]hen assessing the convenience of witnesses, a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide." *Herbert Ltd. P'ship. v. Elec. Arts, Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004). Because Shaw Archives' claims relate to both Marilyn Monroe LLC's rights of publicity and CMG's alleged infringement of its purportedly copyrighted photographs, CMG's primary account executive on the Marilyn Monroe LLC account, Ms. Cristina Piquinela (the individual who is responsible for negotiating all the related license agreements, coordinating art work submissions and obtaining all art work approvals) will undoubtedly be one of, if not the most, material witnesses. *See* Piquinela Dec. at ¶ 4. Given, however, various aspects of her position, it is inconvenient for her to travel to New York to appear as a witness. *See id.* at ¶ 16. For example, she is required to track time-sensitive art work approval requests for Marilyn Monroe LLC which flood into her Indiana office on a frequent and regular basis. *See id.* Pursuant to standard terms in each and every licensing agreement, she is

19

required to seek approval from Marilyn Monroe LLC and respond to the licensees' requests within several days. *Id.* Because these requests are not always made through digital media and instead are often sent in hard copy form to Indianapolis, it is imperative that Ms. Piquinela be in Indianapolis to carry out her duties. Moreover, she and other CMG employees are also responsible for work on numerous other accounts and their absence would present serious obstacles to their ability to effectively serve their other clients. *Id.* at ¶ 17.

In contrast, it appears that no Plaintiff here is personally involved in the actual licensing and exploitation of the Shaw photographs at issue. Rather, like Marilyn Monroe LLC, the Plaintiffs operate through their agent, Bradford, which is located in New Jersey. *See* Snyder Dec., Ex. B, CMG Complaint at ¶ 8. Thus, while Plaintiffs may reside in New York, it is likely that they will not be significant witnesses themselves and do not possess significant documents relevant to this suit.[6] Shaw Archives is therefore incapable of establishing the requisite connection between the claims and this district necessary to attempt to oppose a motion to transfer.

The fourth factor, the location of the operative facts, also favors Indiana. Because all of Marilyn Monroe LLC's operations are conducted from Indiana, the "operative" facts regarding the licensing of the Marilyn Monroe Intellectual Property Rights and the purported copyright infringement alleged by Shaw Archives took place in Indiana, and not New York. Although the

---

[6] To the extent that Plaintiffs claim that any third party witnesses would be inconvenienced by a transfer of this action to Indiana, this factor is clearly not dipositive of the issue of whether transfer is proper. *See Schnabel*, 322 F. Supp. 2d at 518 n.12 (recognizing that "the ability to videotape depositions makes the non-party witness availability factor less compelling than in pre-videotape days").

Complaint here includes conclusory allegations that "a substantial part of the property, events, acts or omissions giving rise to the asserted claim are located or took place" in New York, *see* Snyder Dec., Ex. A, Shaw Complaint at ¶ 6, Shaw Archives fails to identify any specific acts of Defendants' allegedly infringing conduct that occurred in New York, an omission that weighs in favor of a transfer.  Indeed, they are unable to do so because virtually all of CMG's Marilyn Monroe LLC-related business is conducted in Indiana.  *See* Piquinela Dec. at ¶ 10.  Moreover, in their Complaint, Shaw Archives alleges that Defendants engaged in a "campaign" to induce third-parties to pay for the use of Marilyn Monroe's image by threatening to and commencing lawsuits in Indiana.  *See* Snyder Dec., Ex. A., Shaw Complaint at ¶ 28-29.  Clearly, any "locus" of facts in this case is at the Defendants' place of business in Indiana, where the actions allegedly infringing on Shaw Archives' rights took place.  *See 800-Flowers, Inc.*, 860 F. Supp. at 133 (finding that case had little connection with New York where the events supporting a trademark infringement claim all occurred in Florida); *Alden Corp. v. Eazypower Corp.*, 294 F.Supp.2d 233, 238 (D. Conn. 2003) (granting motion to transfer patent infringement action where any "locus" of operative facts were at "defendants place of business in Illinois, where the actions creating Eazypower's alleged liability took place).

The eighth factor, the plaintiff's choice of forum, also favors Defendants because the Indiana Action was not initiated by an improper anticipatory filing and ***Defendants*** are thus the true plaintiffs in interest between the parties.  *See Everest Capital Ltd.*, 178 F.Supp.2d at 478 (recognizing that "Defendants are entitled to the benefit of choosing their own forum because, although they are named as defendants in this action, for purposes of this analysis they are the true plaintiffs in interest because . . . the suit commenced in Nebraska was not initiated by an improper anticipatory filing").  Additionally, Shaw Archives' choice of forum should be given

less weight because, as demonstrated above, the operative facts have little connection with New York. *See Firestone v. Galbreath*, 722 F.Supp. 1020, 1028 (S.D.N.Y. 1989) ("The plaintiff's choice of forum is given less weight where the case's operative facts have little connection with the transferor forum.").

Finally, the ninth factor favors Indiana because transfer of this action would serve the interests of justice and judicial economy. The goal of Section 1404(a) "is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *MasterCard Int'l Inc. v. Lexcel Solutions, Inc.*, 03 Civ. 7157, 2004 U.S. Dist. LEXIS 10906, *25-26 (S.D.N.Y. June 18, 2004) (citations omitted). Simply put, this case is about an Indiana company which has endeavored to have its rights and interests clarified and confirmed by the Indiana District Court. Shaw Archives' subsequent attempt to redirect what should constitute its defenses and counterclaims in the first-filed Indiana Action into another jurisdiction disregards the Second Circuit's "strong policy favoring the litigation of related claims in the same tribunal." *Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 619 (2d Cir.), *cert. denied*, 393 U.S. 977 (1968). "Rather than allow two parallel suits to go forward, it is more appropriate for one court to adjudicate the claims in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *GT Plus, Ltd.,*

41 F. Supp. 2d at 425 (citations omitted).  Indeed, it would be a waste of time and energy for this Court and its jurors to adjudicate what is an Indiana dispute.[7]

Because Defendants have more than sufficiently established that Indiana is the most logical and proper forum, they respectfully request that this Court transfer the action to Indiana if it does not dismiss the action.

### Conclusion

For all the foregoing reasons, Defendants Marilyn Monroe LLC and CMG respectfully request that this Court grant their Motion to Dismiss, or in the alternative to Stay or Transfer this action to the Southern District of Indiana.

---

[7]  None of the remaining factors support maintenance of this case here.  Even if Shaw Archives were to assert that this action will involve issues of New York state law (the seventh factor), "choice of law is only one of many factors and is accorded little weight on a motion to transfer." *Toy Biz, Inc.*, 990 F. Supp. at 331; *see also Vassallo v. Niedermeyer*, 495 F. Supp. 757, 760 (S.D.N.Y. 1980) ("The fact that the law of another jurisdiction governs the outcome of the case is a factor accorded little weight on a motion to transfer").  Additionally, the availability of process to compel attendance of unwilling witnesses "is not determinative since each district will be faced with this dilemma and none has a significant advantage over the other." *J. Lyons & Co. Ltd.*, 892 F. Supp. at 492.  Finally, the comparative means of the parties appears to be a push.  Both are represented by a licensing agent and both claim to generate income from their licensing activities.  In any event, this factor alone would not outweigh the other factors that fall in favor of a transfer.

DATED: May 9, 2005

Respectfully submitted,

By:    /s/  Orin Snyder
    Orin Snyder (OS-3122)
    Cynthia Arato (CA-8350)
    Alison Gooding (AG -0770)

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
47th Floor
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

Attorneys for Defendants CMG Worldwide, Inc.
and Marilyn Monroe, LLC

80327638_6.DOC