UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

SHAW FAMILY ARCHIVES, LTD., EDITH MARCUS
and META STEVENS,

    *Judge McMahon*

                              Plaintiffs,                    **COMPLAINT**

            -against-

CMG WORLDWIDE, INC., an Indiana Corporation,
and MARILYN MONROE, LLC, a Delaware Limited
Liability Company,

                                                   **05 CV 3939**

                              Defendants.
------------------------------------------------------------------x

    SHAW FAMILY ARCHIVES, LTD., EDITH MARCUS and META STEVENS, by and

through its undersigned counsel, for its complaint for damages and declaratory relief, alleges as

follows:

RECEIVED
APR 19 2005
U.S.D.C. S.D. N.Y.
CASHIERS

                          **INTRODUCTION**

    1.    Plaintiffs EDITH MARCUS ("Marcus"), META STEVENS ("Stevens") and

SHAW FAMILY ARCHIVES, LTD. ("the Archives") seek an award of damages, including

attorney's fees and any and all gains, profits and advantages obtained by defendants CMG

WORLDWIDE, INC., ("CMG") and MARILYN MONROE, LLC, ("MM"), as a result of

defendants' acts of copyright infringement as alleged in paragraphs 15 through 26 below, or, in

the alternative, statutory damages as provided for in 17 U.S.C. § 504(c). Plaintiffs further seek a

declaration, pursuant to 28 U.S.C. §§2201-2202, that CMG and MM have no authority or right to

copy or publish, or the right to prohibit the commercial publication by plaintiffs or any parties

designated by plaintiffs as licensees, of those works that are the subject of the aforementioned

claim of copyright infringement. Plaintiffs further seek the granting of an injunction restraining

defendants, their officers, agents, and employees, and all persons acting in concert with them, from engaging in any further acts in violation of the copyright laws.

2.    An actual, justiciable controversy exists among the parties as to which a declaratory judgment setting forth their respective rights and obligations is necessary and appropriate.

## THE PARTIES, JURISDICTION AND VENUE

3.    Plaintiff the Archives is a New York Corporation whose principal place of business is in the County of Rockland, State of New York.

4.    Plaintiff Edith Marcus is an individual residing in the County of Rockland and the State of New York.  Plaintiff Meta Stevens is an individual residing in the County of New York and the State of New York.  Edith Marcus and Meta Stevens are shareholders of the Archives, and are the daughters of Sam Shaw, the photographer whose works are at issue herein.

5.    Defendant CMG is a corporation organized and existing pursuant to the laws of the State of Indiana, maintaining its principal place of business in Hamilton County, Indiana. Defendant MM is a business entity organized and existing pursuant to the laws of the State of Delaware, maintaining its principal place of business in Indiana through CMG.

6.    This court has original jurisdiction over this civil action under 28 U.S.C. §1332(a).  Although the plaintiffs are residents of New York, none of the defendants reside within New York.  The Archives and defendants are, therefore, citizens of different states. Venue in this district is proper, pursuant to 28 U.S.C. §1391(a)(2), because a substantial part of the property, events, acts or omissions giving rise to the asserted claim are located or took place in this district.  Moreover, the amount in controversy in the claims described in this Complaint exceeds the sum or value of $75,000, exclusive of interest and costs.

2

7.      This Court has jurisdiction over defendants because, upon information and belief, defendants conduct business in New York.  In addition, this action arises from tortious conduct committed by defendants in New York or causing injury in New York.  Moreover, the works at issue in this action are located within the State of New York and the legal questions at issue in this action revolve around New York law, specifically New York's law regarding the right of publicity.  *See* NY CLS Civ. R. §§ 50 and 51;  *Pirone v. MacMillan*. 894 F.2d 579 (2d Cir. 1990).

8.      Furthermore, this Court has jurisdiction over defendants because this action arises under the Copyright Act, 17 U.S.C. §101, *et seq.*, as well as 28 U.S.C. §2201.  This action therefore involves a federal question, and invokes jurisdiction pursuant to 28 U.S.C. §§1331, 1338(a) and 1338(b).

## BACKGROUND

9.      Sam Shaw ("Shaw") was one of the foremost photographers of his time.  Although initially renowned for his career as a photojournalist for Colliers Magazine, it is his remarkable portraits of artists, musicians, film, television and theatrical celebrities, and his unique photographs of Marilyn Monroe and the ensuing friendship between Mr. Shaw and Ms. Monroe, for which he is most notably remembered.

10.      During their work together, Mr. Shaw and Ms. Monroe formed a lifelong friendship.  Given his close personal relationship with Ms. Monroe, he was able to photograph Marilyn at her most intimate, relaxed and open self.  Indeed, Mr. Shaw designed, staged and took the famous flying skirt series of photographs of Ms. Monroe that are known throughout the world.

3

11.    Sam Shaw was the author and owner of all copyrights to the photographs he took. He passed away in 1999 with his copyrights in a Trust.  The sole trustees and interest holders were his daughters Edith Marcus and Meta Stevens.  See the Last Will and Testament of Sam Shaw, annexed hereto as Exhibit "A," and the trust agreements of October 4, 1994, November 3, 1995, and April 22, 1998, annexed hereto as Exhibits "B," "C" and "D," respectively.  When Sam Shaw died in 1999, his shares in the aforementioned Trust passed to Marcus and Stevens, *per stirpes*.  Pursuant to a settlement reached in the Supreme Court of the State of New York, County of New York, on June 5, 2002, it was agreed that Shaw Family Archives, Ltd. had the right to market, and offer for commercial exploitation, the Shaw Collection.  Sam Shaw's children Larry Shaw, Marcus and Stevens jointly own the Archives .  See the transcript of the June 5, 2002 settlement, annexed hereto as Exhibit "E."

12.    Plaintiffs Marcus and Stevens own and control the copyrights of photographs of Marilyn Monroe contained within the Shaw Collection, many of which have never been seen by the public.

13.    Shaw Family Archives, Ltd. is duly authorized to market and license the Shaw Collection by virtue of the agreement set forth in Exhibit "E" herein.

14.    Only a select few Marilyn Monroe photographs have been licensed by plaintiffs thus far.  Those photographs have been used for, among other things, exhibitions, advertising, magazines, calendars, and on wine bottles.  Plaintiff the Archives also sells high-quality prints of Marilyn Monroe from the Shaw Collection.

4

# FIRST CAUSE OF ACTION

## COPYRIGHT INFRINGEMENT
### (17 U.S.C. SECTION 101, *et seq.*)

15.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 14 as if fully set forth herein.

16.    In or about 1957, Sam Shaw created a group of original photographs of Marilyn Monroe taken at the beach at Amagansett, New York.  One of these photographs was depicted in the book "Marilyn Among Friends."  The registered photographic image is annexed hereto as Exhibit "F."  The Register of Copyrights issued certificate of registration number TX 2-400-879 for one of these images, among others, depicted in "Marilyn Among Friends."  The effective date of his registration is June 18, 1998.  A true and correct copy of the foregoing certificate of registration is annexed hereto as Exhibit "G."

17.    During all relevant times, plaintiffs Marcus and Stevens have been and are the owner of all rights, title, and interest in the subject photographs in the Shaw Collection, including the right to sue for infringement thereof.  Plaintiff the Archives has the right to market the Shaw Collection.

18.    Neither plaintiffs, nor anyone authorized by plaintiffs or their predecessors in interest, authorized defendants to exercise any of the exclusive rights of a copyright owner, as defined by 17 U.S.C. § 106, with respect to any of the photographs protected by the Certificates of Registration identified above, or any other photograph in the Shaw Collection that have either been registered with the Copyright Office or have not been registered but are otherwise not in the public domain..

19.    Defendants did in fact wrongly display on a web site or web sites affiliated with the defendants images owned and controlled by plaintiffs that are protected by United States

5

Copyright Law, as part of Defendants' advertising activities and for commercial advantage.

20.    Defendants have licensed and caused to be copied three copyright protected images on a coffee mug depicted herein as Exhibit "H."  Plaintiffs Marcus and Stevens own the copyright to all three images and a copyright registration, pertaining to at least one of these images, as aforesaid, was filed and accepted by the Copyright Office.  Defendants never obtained approval from plaintiffs to market, license and/or copy any photographs in the Shaw Collection.

21.    The aforesaid infringements are of a continuing nature and are therefore not time-barred by the applicable statute of limitations.

22.    Moreover, defendants have also made, distributed and/or displayed other copies of plaintiffs' copyright protected photographic works as part of defendants' advertising activities, or have otherwise offered to or have licensed others to make copies of the Shaw Collection as if defendants owned the rights to photographs as to which said plaintiffs own and control the copyrights.

23.    Furthermore, plaintiffs have been informed that defendants may be advertising, offering for sale, and are selling other copyright protected works of the Shaw Collection in addition to those set forth above.  Plaintiffs will seek leave to amend this action once these other acts of infringement can be specifically identified.

24.    The activities of defendants complained of herein are continuing, constitute willful infringement of plaintiff's registered copyrights, and were and are in blatant disregard of plaintiffs' rights.

25.    Plaintiffs are entitled to an injunction restraining defendants, their officers, agents, and employees, and all persons acting in concert with them, from engaging in any further acts in violation of the copyright laws.

6

26.     Plaintiffs are further entitled to recover from defendants the damages, including attorney's fees and any and all gains, profits and advantages obtained by defendants, as a result of defendants' acts of infringement alleged above, or, in the alternative, statutory damages as provided for in 17 U.S.C. § 504(c). At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by Plaintiffs.

## SECOND CAUSE OF ACTION

### DECLARATION AS TO PLAINTIFF'S EXCLUSIVE RIGHT TO THE PHOTOGRAPHS CONTAINED WITHIN THE SHAW COLLECTION AND DEFENDANTS' LACK OF RIGHTS REGARDING THE COPYRIGHTS, THE ALLEGED RIGHT TO PUBLICITY, OR THE ALLEGED RIGHT TO PUBLISH

27.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 26 as if fully set forth herein.

28.     Defendants have pursued an aggressive campaign of threats and intimidation to force third-parties to obtain defendants' permission for any use of Marilyn Monroe's name or likeness. By threatening to and actually filing lawsuits, defendants have been successful in forcing compliance with their improper demands. Defendants have accomplished this not by actually having any rights, but by forcing third-parties to give in to defendants' demands in order to avoid costly litigation.

29.     Defendants' campaign to force third-parties to pay defendants for the use of Marilyn Monroe's image, despite the fact that defendants lack the right to control the commercial use of Ms. Monroe's image, involves initially threatening to commence litigation in Indiana. If the third-party in question fails to acquiesce to defendants' improper demands, defendants commence groundless, spurious lawsuits in Indiana. These lawsuits are very expensive and difficult for the third-parties to defend, as most of the third-parties are located in other parts of the country.

30.    In keeping with their usual tactics, CMG and MM have filed, but not yet served, a Summons and Complaint in Indiana Federal Court ("the Indiana action"), bearing Docket Number 5-cv-0423 (DFW) (WTL), against the within plaintiffs. A copy of the complaint in the Indiana action is annexed hereto as Exhibit "I." The Indiana action contains causes of action based on the allegations that the Archives do not own the copyrights to the Shaw Collection, that CMG and MM own the right of publicity of Marilyn Monroe, that the Archives has criminally converted their property and caused deception and that the Archives has interfered with their business.

31.    The complaint in the Indiana action fails to state a viable cause of action against the plaintiffs. Moreover, the summons in the Indiana action erroneously suggests that Shaw Family Archives, Ltd., may be served "c/o David Marcus, Esq." Ex. I. It should be noted that David Marcus, Esq. is one of Shaw Family Archives, Ltd.'s attorneys, and is *not* one of their designated agents upon which process may be served.

32.    In the Indiana action defendant MM falsely claims to exclusively own all of Marilyn Monroe's posthumous rights of personality, publicity and association. Defendant CMG falsely claims to be the exclusive licensee of the rights of publicity of Marilyn Monroe by virtue of CMG's license with MM. Ex. I, ¶¶ 4, 5, 7.

33.    Defendants have falsely claimed and insisted that no use of any image of Marilyn Monroe may be made without defendants' consent. Defendants wrongly and improperly license the right to Marilyn Monroe's name, and likeness to generate substantial income.

34.    Despite their claims to the contrary, defendants do not possess any rights to the image of Marilyn Monroe given that Ms. Monroe was a domiciliary of New York at the time of her death. Although Ms. Monroe died in Los Angeles on August 8, 1962, she was a New York

domiciliary at that time, and under New York law, there is no posthumous right of privacy or publicity. Accordingly, even if, hypothetically, someone other than Marilyn Monroe had the right to control her name, likeness and image up to the time of her death, that right terminated with Marilyn Monroe's passing.

35.     CMG and MM assert ownership and control of the rights of publicity of Marilyn Monroe based on Indiana Right of Publicity Statute I.C.32-36-1-1, *et seq*, enacted in 1994. Ex. I, ¶26.  However, this statute only applies to Indiana and likely does not apply to Marilyn Monroe at all as she died prior to the enactment of said statute.  Moreover, this Indiana Statute, and the publicity rights created therein, is preempted by 17 U.S.C. § 101, *et seq*.

36.     CMG and MM have no rights of publicity in the name, likeness and image Marilyn Monroe, and their claims to the contrary have interfered with and prevented the licensing of the Shaw Collection by the plaintiffs.

37     Accordingly, defendants cannot, and in fact never could, lawfully place any restrictions or impediments on the right of plaintiffs to license the use of the Marilyn Monroe photographs as to which plaintiff owns the copyrights, and on any photographs which may be in the public domain.  Nonetheless, defendants have falsely represented and traded on their claim that a right of publicity does exist as to Marilyn Monroe, and that defendants are the exclusive holders of those rights.

38.     Plaintiffs request that this Court issue a judgment declaring that defendants own no rights of publicity, association, sponsorship and/or endorsement, in and to the name and likeness of the late actress Marilyn Monroe; that plaintiffs have rights to the photographs contained within the Shaw Collection, including the right to publish and issue licenses for the publication and use of those photographs; that plaintiffs Marcus and Stevens are the exclusive

9

copyright holder regarding the photographs covered under the copyright registrations described in the first cause of action in the instant complaint; and that statements plaintiff the Archives have made or issued to this effect are not defamatory or disparaging of defendants, defendants' rights or products.

Wednesday, April 20, 2005 (56).max

**JURY DEMAND**

39.     Plaintiffs request a trial by jury.

WHEREFORE, EDITH MARCUS, META STEVENS and SHAW FAMILY ARCHIVES, LTD., respectfully requests that the court enter judgment providing the following relief:

A.      A Declaratory Judgment, pursuant to 28 U.S.C. §2201, declaring that defendants own no rights of publicity, association, sponsorship and/or endorsement, in and to the name and likeness of the late actress Marilyn Monroe; that plaintiffs have rights to the photographs contained within the Shaw Collection, including the right to publish and issue licenses for the publication and use of those photographs; that plaintiffs Marcus and Stevens are the exclusive copyright holder regarding the photographs covered under the copyright registrations described in the first cause of action in the instant complaint; and that statements plaintiff the Archives has made to this effect are not defamatory or disparaging of defendants or defendants' products.

B.      An award of damages, including treble, statutory and punitive damages against defendants, and each of them, and costs and attorneys' fees, including pre- and post- Judgment interest, as permitted under the applicable laws and authorities.

C.      The granting of an injunction restraining defendants, their officers, agents, and employees, and all persons acting in concert with them, from engaging in any further acts in violation of the copyright laws.

11

D.      An award of damages, including attorney's fees and any and all gains, profits
and advantages obtained by defendants, as a result of defendants' acts of
copyright infringement as alleged above, or, in the alternative, statutory
damages as provided for in 17 U.S.C. § 504(c).

E.      Such other and further relief as to this Court may seem just and proper.

Dated: Tappan, New York
       April 19, 2005

Brian L. Greben (BG 1572)
David M. Marcus
Attorneys for Plaintiff
SHAW FAMILY ARCHIVES, LTD.
143 Independence Avenue
Tappan, New York 10983
(917) 686-9465

12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

SHAW FAMILY ARCHIVES, LTD., EDITH MARCUS
and META STEVENS,                                                    Case No.

                                        Plaintiffs,                  **Rule 7.1 Statement**

            -against-

CMG WORLDWIDE, INC., an Indiana Corporation,
and MARILYN MONROE, LLC, a Delaware Limited
Liability Company,

                                        Defendants.
-------------------------------------------------------------------x

        Pursuant to Federal Rule of Civil Procedure 7.1 [formerly Local General Rule
1.9] and to enable District Judges and Magistrate Judges of the Court to evaluate possible
disqualification or recusal, the undersigned counsel for SHAW FAMILY ARCHIVES,
LTD. (a private non-governmental party) certifies that the following are no corporate
parents, affiliates and/or subsidiaries of said party, which are publicly held.

Dated: Tappan, New York
       April 19, 2005

                                        _____
                                        Brian L. Greben (BG 1572)
                                        David M. Marcus
                                        Attorneys for Plaintiff
                                        SHAW FAMILY ARCHIVES, LTD.
                                        143 Independence Avenue
                                        Tappan, New York 10983
                                        (917) 686-9465

**Exhibit A**

# Last Will and Testament

### OF

_____

SAM SHAW

_____


DATED_____

HOLTZMANN. WISE & SHEPARD

A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

1271 AVENUE OF THE AMERICAS

NEW YORK. N.Y. 10020

I, SAM SHAW, residing in Tappan, New York, do make, publish and declare this to be my Last Will and Testament, hereby revoking all my prior Wills and Codicils.

FIRST:    I give all my tangible personal property other than my collection of photographs, negatives, and transparencies, including, without limitation, jewelry, clothing and other articles of personal use or adornment, household furniture, furnishings and other articles of household use or ornament, automobiles and books, together with all insurance policies thereon, if any, to my daughters, META STEVENS and EDITH MARCUS, if they survive me, in shares of approximately equal value as they shall agree, or if only one of my said daughters survives me, I give such property to her. If neither of my said daughters survives me, I direct my Executor to add such property to my residuary estate to be disposed of pursuant to Article THIRD of this Will.

SECOND:    I have deliberately excluded my son from participation in my estate and The Sam Shaw Family Trust. His conduct has demonstrated a willful disregard for me and his sisters. He has benefited without my consent from his unauthorized and illegal taking of my property and money. It will be a long time, if ever, before I and the rest of my family will recover from his exploitation.

**THIRD:**    The balance of my estate, whether real or personal which shall include, but not be limited to my collection of photographs, negatives, transparencies and any rights related to same, and wherever situate (hereinafter referred to as my "residuary estate"), I give to the Trustees of The Sam Shaw Family Trust dated ~~October 4, 1994~~ to be held pursuant to Article FOURTH of such Agreement.

**FOURTH:**    (A)    All references herein to this Will shall be construed as referring to this Will and any Codicil or Codicils hereto which I may hereafter execute.

(B)    All references to the "Internal Revenue Code" shall mean the Internal Revenue Code of 1986, as amended, and as the same may thereafter be amended from time to time.

**FIFTH:**    (A)    If any beneficiary under this Will and I shall die under such circumstances as to render it impossible or difficult to determine which of us died first, then and in such event I direct that for purposes of this Will, it shall be deemed that such beneficiary has predeceased me.

(B)    Any beneficiary whose entitlement to property depends on him or her surviving me or some other person shall be deemed not have done so unless the beneficiary survives me or that other person, as the case may be, by at least fourteen (14) days.

**SIXTH:**    (A)    I appoint my daughters, META STEVENS and EDITH MARCUS, as Executrixes of this Will. If either of

-2-

S. S.

them, for any reason, shall fail to qualify or having qualified ceases to act as Executrix, I direct that the other shall serve as sole Executrix. If neither of my said daughters is serving as Executrix I appoint my friend, ALAN S. LIEBMAN, as Executor of this Will. I direct that the last acting Executor shall designate her or his successor by an instrument in writing duly acknowledged and filed in the Court having jurisdiction of my estate, which instrument may be revoked or amended at any time before it takes effect.

(B) I direct that no bond or other security shall be required of any Executrix whether named herein or designated hereunder, any law to the contrary notwithstanding.

(C) Wherever necessary or appropriate, the use in this Will of any gender shall be deemed to include the other gender and the use of either the singular or the plural shall be deemed to include the other.

SEVENTH: I direct that any Death Taxes shall be apportioned against and paid from The Sam Shaw Family Trust under Article SEVENTH of the Trust Agreement dated ____ October 4, 1994. I hereby direct my Executrixes to submit a written request to the Trustees of the foregoing trust setting forth the amount to be paid by said Trustees to my Executrixes for the purpose of paying "Death Taxes". The term "Death Taxes", as used in this Article, shall mean all estate, inheritance, transfer, succession, legacy or other death taxes

-3-

(excluding, however, generation-skipping transfer taxes), together with all interest and penalties thereon, if any, levied or assessed by reason of my death by any governmental authority, domestic or foreign, with respect to any property, whether that property passes under or apart from this Will.

EIGHTH:    In administering my estate, my Executrixes, or their successors, are authorized to exercise all powers with respect to the property in my estate, real and personal, which I could exercise if living, including retaining all assets owned by me at my death; investing and reinvesting in any property selected by them without regard to any rule limiting investments by executors or requiring diversification; selling at public or private sale, for cash or upon credit, with or without security for any term, all or any part of the property in their hands; making distribution hereunder either in cash or kind, or partly in cash and partly in kind; holding property in the name of a nominee or in such form that title will pass by delivery; retaining attorneys, accountants, investment counsel and other advisors, and paying the fees and disbursements thereby incurred; opening and maintaining custody accounts; and generally doing and performing all things which they deem advisable or necessary economically to administer my estate. All of the foregoing powers may be exercised from time to time without approval from any court, and the exercise thereof shall be binding upon and conclusive against all persons interested

-4-

in or claiming an interest in my estate. My Executrixes may delegate such ministerial duties in connection with the administration of my estate as they may deem advisable. No Executrix shall be liable or responsible for any act or omission in connection with the administration of my estate except for such Executrix's own actual fraud or willful misconduct.

IN WITNESS WHEREOF, I have signed this Will this 4 day of *October*, 1994.

_SAM SHAW_

SAM SHAW

The foregoing instrument, consisting of five (5) pages, including this page, was on the above date subscribed, published and declared by the Testator above-named, as and for his Last Will and Testament, in the presence of us, and each of us, who, at his request, in his presence and in the presence of each other, have hereunto subscribed our names as witnesses thereto.

_____ residing at 2263 Edsall Avenue
Merrick, N Y 10403
_____ residing at 56-65 Katherin Blvd #3K
Flushing, NY 11372
_____ residing at _____

STATE OF NEW YORK )
: ss.:
COUNTY OF NEW YORK )

The deponents, DEBRa Q MiLoNE ,
Rosemary Alexander , and STEVEN Brown-INz .

being severally duly sworn, depose and say: that the within
Testator, SAM SHAW, in the presence of the deponents, all of
them together, subscribed the within Will at the end thereof,
on the 4 day of October , 1994 at 1271 AVenue of
the Americas, NY, NY , and at the same time declared the
same to be his Last Will and Testament, that thereupon the
deponents, at the request of the said Testator and in his
presence, and in the presence of each other, signed the said
Will at the end thereof as witnesses thereto; that at the time
of execution of the said Will, the said Testator was over the
age of eighteen (18) years, and in the opinion of each of the
deponents, was of sound mind, memory and understanding, under
no restraint, and in all respects competent to make a Will,
that the deponents make this affidavit to establish the
genuineness of the said Will and the validity of its execution,
at the request of the said Testator.  The execution of the Will
was supervised by Steven Brown-INt , an attorney-at-law

-6-

admitted to practice in the State of New York, in accordance with the New York Estates, Powers and Trusts Law.

Severally subscribed and sworn to before me this 7th day of October , 1994.

_____
NOTARY PUBLIC

THERESA S. TARLOWE
Notary Public, State of New York
No. 41-4764466
Qualified in Queens County
Term Expires March 30, 1996

0096N

–7–

**Exhibit B**

TRUST AGREEMENT made the 4 day of October 1994, between SAM SHAW, of Tappan, New York (hereinafter referred to as the "Settlor" or as "SAM"), and SAM SHAW, META STEVENS and EDITH MARCUS (hereinafter referred to as the "Trustees").

W I T N E S S E T H:

FIRST: The Settlor hereby assigns, transfers and delivers to the Trustees the property described in Schedule "(A)" annexed, which the Trustees agree to hold in trust and to manage and to dispose of in accordance with the provisions of this Trust Agreement. This trust is created for the benefit of SAM SHAW, his daughters, META STEVENS and EDITH MARCUS, their husbands, and SAM SHAW'S grandchildren and more remote descendants, and may be referred to as "The Sam Shaw Family Trust". The Settlor agrees to execute such further instruments as shall be necessary to vest the Trustees with full title to the property described in Schedule "(A)".

SECOND: The Settlor shall have the right during his lifetime, to alter, amend, revoke or terminate the trust created hereby, or any of the terms of this Trust Agreement, in whole or in part.

THIRD: During SAM's lifetime, the Trustees shall pay to him or apply for his benefit so much or all (or none) of the net income and/or principal as SAM shall direct, or as the

Trustees shall determine in their discretion.  At the end of each trust year, any undistributed net income shall be added to, and treated as principal of the trust.

FOURTH:  Upon SAM's death, the Trustees shall reserve an amount sufficient to pay the "Death Taxes" set forth in Article SEVENTH "(A)" of this Trust Agreement, and shall retain the then remaining principal, together with all accrued and undistributed net income, to be held in a trust as follows:

(A)  The Trustees shall distribute the net income of the trust in quarter-annual or more frequent installments as the Trustees, in their sole discretion, shall determine, as follows:

(1)  Five (5%) percent thereof, to HAROLD SHAW, if he is living at the date of such distribution;

(2)  One-third (1/3) of the balance thereof, to SAM's daughter META, or if she is not then living to her husband, if he is then living, or if he also is not then living, in equal shares to her then living children, provided that, the Trustees may distribute to any such child who is at least eighteen (18) years of age or apply for his or her benefit as much of that income as the Trustees determine for any emergency and/or educational expense of such child;

(3)  One-third (1/3) of the balance thereof, to SAM's daughter EDITH, or if she is not then living to her husband, if he is then living, or if he also is not then

0092N

- 2 -

living, in equal shares to her then living children provided that, the Trustees may distribute to any such child who is at least eighteen (18) years of age or apply for his or her benefit as much of that income as the Trustees determine for any emergency and/or educational expense of such child; and

(4)    One-third (1/3) of the balance thereof, in equal shares to those of SAM's grandchildren, CYNTHIA CONTI, ROBERT CONTI, MELISSA STEVENS, DAVID MARCUS, REBEKA MARCUS, JAKOB SHAW, and AUSTIN SHAW, who are at least eighteen (18) years of age. If any other person other than those named above asserts that he or she is one of SAM's grandchildren that person shall not be entitled to any distribution. Any undistributed net income shall be accumulated and added to principal of this trust.

(B)    The Trustees may make discretionary distributions of principal to or for the benefit of any member of a class consisting of META, her husband, EDITH, her husband and any of SAM's grandchildren who are named in Paragraph (A)(4) of this Article or their descendants for his or her health, education, maintenance and/or support.

(C)    This trust shall terminate upon the date which is twenty-one (21) years after the date of the death of the survivor of META, her husband, EDITH, her husband and SAM's grandchildren, CYNTHIA CONTI, ROBERT CONTI, MELISSA STEVENS, DAVID MARCUS, REBEKA MARKUS, JAKOB SHAW, and AUSTIN SHAW.

0092N

- 3 -

(D)  Upon the termination of this trust, the Trustees shall distribute the remaining trust principal, together with any undistributed net income, in equal shares per capita to those of SAM's great-grandchildren who are living at the date of the termination of this trust who are descended from SAM's grandchildren named in paragraph (A)(4) of this Article.

(E)  No Trustee having a beneficial interest in this trust shall participate in making a discretionary distribution either for his or her benefit, to himself or herself, or to a person that he or she is legally obligated to support.  Such discretionary distributions shall be made only by the other Trustees.

(F)  The Settlor has deliberately excluded his son LARRY SHAW from participation in The Sam Shaw Family Trust.  His conduct has demonstrated a willful disregard for the Settlor, and the Settlor's daughters, META and EDITH.  He has benefited without the Settlor's consent from his unauthorized and illegal taking of the Settlor's property and money.  It will be a long time, if ever, before the Settlor and the rest of his family will recover from his exploitation.

**FIFTH:**   (A)  If, upon the occurrence of any contingency any share of any trust under this Trust Agreement shall not be completely disposed of, then such undisposed of property shall be paid to those persons and in the same proportions in which they would have inherited it from the Settlor had he then died intestate, the absolute owner of it

0092N                          - 4 -

and a resident of the State of New York.  The Settlor's son
LARRY SHAW shall be deemed to have died prior to the occurrence
of such contingency for purposes of this disposition.

(B)  Whenever income or principal is to be
used for the benefit of a person under the age of eighteen (18)
years or a person who in the sole judgment of the Trustees is
incapable of managing his or her own affairs, the Trustees may
make payment of such property in any or all of the following
ways:

(1)  By paying such property to the
guardian, committee, conservator or other person having the
care and control of such person under the age of eighteen (18)
years for his or her benefit or to any authorized person as
custodian for him or her under any applicable Gifts to Minors
Act.

(2)  By paying such property to the
guardian, committee, conservator or other person having the
care and control of such incapable person.

(3)  By paying directly to any such
beneficiary such sums as the Trustees may deem advisable as an
allowance.

(4)  By expending such property in
such other manner as the Trustees in their discretion determine
will benefit any beneficiary.

0092N

- 5 -

(C)   If the principal becomes vested and payable to a person under the age of eighteen (18) years, whether upon the Settlor's death or upon the termination of any trust hereunder, the Trustees may make payment thereof in any of the ways set forth in the preceding subparagraphs or may defer payment of any part or all thereof, meanwhile applying to the use of such beneficiary so much or all of such principal and of the income therefrom, as the Trustees in their discretion deem advisable.  Any income not expended by the Trustees shall be added to principal.  The Trustees shall pay any remaining principal to such beneficiary upon his or her attaining the age of eighteen (18) years or to his or her estate upon death prior to such payment in full.

(D)   Any payment or distribution authorized in this Article shall be a full discharge to the Trustees with respect thereto.

SIXTH:    The Settlor hereby confers upon the Trustees all powers and discretion conferred generally upon fiduciaries by Section 11-1.1 of the Estates, Powers and Trusts Law of the State of New York, and other provisions of law and this Trust Agreement.  In addition, without limiting the foregoing, the Trustees shall have the following powers and discretion with respect to all property of whatever kind at any time held by them until its distribution, which they may exercise as they deem advisable:

0092N

- 6 -

(A)  To retain the Settlor's collection of photographs, negatives and transparencies ("the Collection") for such time as the Trustees shall determine in their discretion; to take any actions that the Trustees shall determine in their discretion to enhance the Collection; and to sell the Collection as a collection upon such terms and conditions as the Trustees shall determine in their discretion;

(B)  To sell, purchase, exchange, invest and reinvest in bonds, preferred or common stocks, mortgages, interests in any kind of investment trust, or other evidences of rights, interests or obligations, secured or unsecured, foreign or domestic, or any other property, real or personal and whether or not in the nature of a wasting asset, all without any duty to diversify investments, and fully free of any and all restrictions imposed by law upon the investment of funds held by a fiduciary; and to retain the same for any period of time without liability therefor, provided that during SAM's lifetime he shall make all investment decisions;

(C)  To employ and to pay the compensation of such agents, accountants, custodians, experts and counsel, legal and investment (including any firm with which a Trustee hereunder may be associated), and to delegate discretionary powers to, and rely upon information or advice furnished by, such agents, accountants, custodians, experts or counsel;

0092N

Wednesday, April 20, 2005 (56).max

(D)  To improve, lease (for any term, whether or not beyond the term of the separate trust or the term fixed by any law), partition or otherwise deal with or dispose of any real or personal property or any interest therein; to make alterations in and extraordinary improvements to any building now or hereafter located on any such property; to construct new buildings; and to enter into contracts or grant options (for any period) with respect to any of the foregoing;

(E)  To consent to the modification, renewal or extension of any note, whether or not secured, or any bond or mortgage, or any term or provision thereof, or any guarantee thereof, or to the release of such guarantee; to release obligors on bonds secured by mortgages or to refrain from instituting suits or actions against such obligors for deficiencies; to use property held under this Trust Agreement for the protection of any investment in real property or in any mortgage on real property;

(F)  To abandon any property, real or personal, that they deem to be worthless or not of enough value to warrant keeping or protecting; to abstain from the payment of taxes, water rents, assessments, repairs, maintenance and upkeep of it; to permit such property to be lost by tax sale or other proceeding, or to convey it for nominal or no consideration;

(G)    To exercise or dispose of any or all options, privileges or rights appurtenant or incident to the ownership of any property, whether to vote, assent, subscribe, convert or of any other nature; to become a party to, or deposit securities or other property under, or accept securities issued under, any voting trust agreement;

(H)    To assent to or participate in any reorganization, readjustment, recapitalization, liquidation, partial liquidation, consolidation, merger, dissolution, sale or purchase of assets, lease, mortgage, contract or other action or proceeding by any corporation and, in that connection, to subscribe to new securities, to exchange any property for any other property, and to pay any assessments or other expenses; to delegate discretionary powers to any reorganization, protective or similar committee;

(I)    To borrow money from any party, including any Trustee hereunder, whether for the purpose of raising funds to pay taxes, to buy property, to refinance any debt, or without specific purpose, and to give or not to give security for the loan;

(J)    To hold property in the name of a nominee or unregistered or in such form that the ownership thereof will pass by delivery; and

(K)    To open and maintain bank accounts and brokerage accounts.

0092N

- 9 -

SEVENTH:   (A)   After the Settlor's death, the Trustees shall pay to the Executors of the Settlor's estate an amount as they shall request in writing for the payment of "Death Taxes".  The term "Death Taxes" as used in this Article shall mean all estate, inheritance, transfer, succession, legacy or other death taxes (excluding, however, generation-skipping transfer taxes), together with interest and penalties thereon, if any, levied or assessed by reason of the Settlor's death by any governmental authority, domestic or foreign, with respect to any property, whether that property passes under or apart from this Trust Agreement.

(B)   The Trustees of this Trust Agreement shall rely upon the foregoing written request to pay Death Taxes by the Executors of the Settlor's estate, and such payment by the Trustees of this Trust Agreement to said Executors shall be binding and conclusive upon anyone interested in this trust.

EIGHTH:   (A)   The Trustees may from time to time settle their accounts with respect to the trust by agreement with the beneficiary of the trust, and if such beneficiary is an adjudicated incompetent, with such beneficiary's legally appointed Guardian of his or her property.  Such agreement shall bind all persons, whether or not then in being, then or thereafter entitled to any property of such trust, whether principal or income, and shall constitute a complete release

- 10 -

0092N

and discharge of the Trustees for the acts and proceedings so accounted for.

(B) Nothing contained in this Article shall preclude the Trustees from seeking a judicial settlement of their accounts.

NINTH:    (A) The Settlor directs that there shall be three Trustees serving at any time. If at any time there are fewer than three Trustees, the Settlor directs that the remaining Trustees or Trustee shall appoint an additional Co-Trustee or Co-Trustees in the manner provided in Paragraph "(B)" of this Article. The Settlor directs that under no circumstances shall his son LARRY or any of LARRY's descendants be appointed to serve as a Trustee.

(B) Any instrument effecting the revocation or appointment of a Trustee pursuant to this Article shall be made by instrument in writing and shall specify the time at which, or the event or contingency upon which, each revocation is to occur and each appointee is to take office.

No appointee may take office without first signing an instrument by which the appointee accepts his or her position and agrees to carry out the terms of this Trust Agreement. The appointee shall be deemed to take office upon signing the instrument of acceptance.

Any instrument effecting the appointment of a Trustee pursuant to this Article may be amended or revoked,

0092N

- 11 -

as to any appointee who has not taken office as Trustee, by instrument in writing signed by the person who at the time of such amendment or revocation is empowered by this Article to effect a new appointment.

TENTH:     Any Trustee at any time in office hereunder may resign, provided that a Co-Trustee is then serving or a successor Trustee has been appointed and accepted his or her appointment pursuant to Article NINTH, by mailing or delivering a written notice of resignation, signed and acknowledged, to the Settlor, or if he is not living or if he is lacking legal capacity, to each other Trustee then in office or to such successor Trustee.  Such resignation shall take effect upon the date specified in such notice, whereupon all duties of the Trustee so resigning shall cease, other than the duty to account.

Any Trustee so resigning shall take all steps necessary to effect and perfect the delivery and transfer of all property then held under this Trust Agreement to each remaining Trustee, if any, and/or each successor to the resigning Trustee.  No successor Trustee shall be obliged to examine the accounts, records, and acts of any previous Trustee or any allocations of receipts or disbursements as between principal and income made by any previous Trustee.

ELEVENTH: (A)  If the Settlor and any beneficiary, or any prior beneficiary and any subsequent beneficiary designated

0092N

- 12 -

Wednesday, April 20, 2005 (56).max

in the Agreement, shall die under circumstances making it difficult or impossible to determine who predeceased the other, then, without regard to who survived the other, it shall be deemed for purposes of the Agreement that the Settlor or such prior beneficiary, as the case may be, survived and the Trustees shall continue to hold or dispose of the trust property accordingly.

(B)  Any beneficiary whose entitlement to property (whether income or principal and whether outright or in trust) depends under this Trust Agreement upon his or her surviving the occurrence of some contingency, shall be deemed not to have done so unless the beneficiary survives such contingency by at least fourteen (14) days.

TWELFTH:  (A)  All questions pertaining to the validity and construction of this Trust Agreement and to the administration of the trust, shall be determined in accordance with the laws of the State of New York in effect from time to time.

(B)  Notwithstanding the application of New York law, the actual administration of the trust may be conducted in such location, and the location of its assets may be changed, as the Trustees in their discretion may determine from time to time.

(C)  No bond or other security shall be required of any Trustee serving hereunder at any time, including any successor, any provision of law to the contrary notwithstanding.

0092N                          - 13 -

(D)   In addition to and not in limitation of any law authorizing Trustees to act by a majority, the Settlor directs that ministerial duties of the Trustees (such as signing of checks, execution of brokerage transactions relating to securities or commodities, and the like) may be executed by any one Trustee.

(E)   All references to the "Internal Revenue Code" shall mean the Internal Revenue Code of 1986, as amended, and as the same may hereafter be amended from time to time.

(F)   The Settlor hereby requests that the Trustees shall retain ALAN S. LIEBMAN and the firm of Holtzmann, Wise & Shepard (or any firm with which he is associated) as attorney for "The Sam Shaw Family Trust".

(G)   No Trustee of this Trust Agreement shall be entitled to any trustee's commission.

THIRTEENTH:   To the same effect as if it were the original, anyone may rely upon a copy certified by a notary public to be a counterpart of this instrument (and of the writings, if any, endorsed thereon or attached thereto). Anyone may rely upon any statement of fact certified by any one who appears from the original document or a certified copy to be a Trustee hereunder.

0092N

- 14 -

IN WITNESS WHEREOF, the Settlor and the Trustees have signed this Trust Agreement on the date stated on page one.

_____
SAM SHAW, Settlor and Trustee

_____
META STEVENS, Trustee

_____
EDITH MARCUS, Trustee

- 15 -

0092N

STATE OF *New York* )

                    : ss.:

COUNTY OF *New York* )

On this *4th* day of *October*, 1994, before me person-
ally came SAM SHAW, to me known and known to me to be the
person described in and who executed the foregoing instrument
and who acknowledged that he executed the same.

_____
                Notary Public

                    THERESA S. TARLOWE
                Notary Public, State of New York
                    No. 41-4764466
                 Qualified in Queens County
                Term Expires March 30, 1996

STATE OF *New York* )

                    : ss.:

COUNTY OF *New York* )

On this *4th* day of *October*, 1994, before me
personally came META STEVENS, to me known and known to me to be
the person described in and who executed the foregoing
instrument and who acknowledged that she executed the same.

_____
                Notary Public

                 THERESA S. TARLOWE
               Notary Public, State of New York
                    No. 41-4764466
                 Qualified in Queens County
                Term Expires March 30, 1996

0092N                         - 16 -

STATE OF *New York* )

COUNTY OF *New York* ; **ss.:**

On this 4th day of *October* , 1994, before me person-
ally came EDITH MARCUS, to me known and known to me to be the
person described in and who executed the foregoing instrument
and who acknowledged that she executed the same.

_____
Notary Public

THERESA S. TARLOWE
Notary Public, State of New York
No. 41-4764466
Qualified in Queens County
Term Expires March 30, 1976

0092N

Wednesday, April 20, 2005 (56).max

## SCHEDULE A

The following photographs, negatives and transparencies constitutes the original principal of the Trust Fund:

## INVENTORY OF PHOTOGRAPHS

### MEN

WOODY ALLEN

FRED ASTAIRE

WARREN BEATTY

IRVING BERLIN (COMPOSER)

HUMPHREY BOGART

MARLON BRANDO

RICHARD BURTON

JOHN CASSAVETZES

MARC CHAGALL

MONTGOMERY CLIFT

GARY COOPER

ARRON COPELAND (COMPOSER)

MARCEL DUCHAMP (WITH DUKE ELLINTON ON THE SET
              RECORDING "PARIS BLUES"), etc.

PETER FALK

CLARK GABLE   (DANCING WITH MARILYN MONROE/SELECTED AS ONE
              OF THE BEST HOLLYWOOD PHOTOS 50 YEAR EDITIONS
              "LIFE MAGAZINE" AND BOOK), etc.

CARY GRANT

FERNAND LEGER

PAUL NEWMAN

GREGORY PECK

OMAR SHARIFF

LOUIS ARMSTRONG

0092N

0092N                          - 19 -

SEAN CONNERY

TONY CURTIS

MILES DAVIS

VITTORIO DE SICA

DUKE ELLINGTON

JOHN FORD

BEN GAZZARA

DIZZY GILLESPIE

IRA GERSHWIN

REX HARRISON

SESSU HAYAKAWA

WOODY HERMAN

ALFRED HITCHCOCK (DIRECTOR)

WILLIAM HOLDEN

JOHN HUSTON (DIRECTOR / ACTOR / WRITER)

BURT LANCASTER

FRANK LOESSER (COMPOSER - GUYS AND DOLLS)

ARTHUR MILLER (WRITER, PLAYWRITE)

GERRY MULLIGAN

DUDLEY NICHOLS

JACK PALANCE

OTTO PREMINGER (DIRECTOR)

ANTHONY QUINN

SIR CAROL REED

JEAN RENOIR (DIRECTOR)

ROBERTO ROSSELLINI

PETER SELLERS

IGOR STRAVINSKY

LUCHINO VISCONTI (DIRECTOR)

JOHN WAYNE

ORSON WELLES

D.F. ZANUCK (LONGEST DAY)

GROVER CLEVELAND ALEXANDER

PAUL ANKA

ROMARE BEARDEN

CHARLES BRONSON

JAMES COBURN

JOE DIMAGGIO

KIRK DOUGLAS

JAMES GARDNER

PAUL GONZALVEZ

BUDDY GUY

LAWRENCE HARVEY

JOHNNY HODGES

TAB HUNTER

PAUL JENKINS

PAPPA JOHN

GENE KELLY

LEE MARVIN

FRED MCMURRY

WYNTON MARSALIS

MARCELLO MASTROIANNI

0092N

JAY MCSHAN

ZERO MOSTEL

DAVID NIVEN

PETER O'TOOLE

SATCHEL PAGE

ANTHONY PERKINS

PINETOP PERKINS

SIDNEY POITIER

RYUICHI SAKAMOTO

DAVID SANDHORN

FRANK SINATRA

JACK TEAGARDEN

ROBERT WAGNER

CAT ANDERSON

JAMES BALDWIN

COUNT BASIE

THE BEATLES

BRANDON BEHAN

JEAN PAUL BELMONDO

YUL BRYNER

OSCAR COHEN

EDDIE CONSTANTINE

POPS FOSTER

BENNY GOODMAN

ROBERT GRAVES

FRED HOYLE

JACK LESBERG

STEVE MCQUEEN

MEZZ MEZZROW

MOUSTACHE

PABLO NERUDA

JACQUES PERVERT

BUD POWELL

SERGE REGGIANI

PEEWEE RUSSEL

LUCKY THOMPSON

WEEGEE

ELI WEISEL

THOMMY YOUNG

TED ALLAN

ALLAN ARKIN

SIDNEY BECHET

MILTON BERLE

SEYMOUR CASSEL

JEAN COCTEAU

SAMMY DAVIS JR.

MOISHE DAYAN

PHILIPPE DE BROCCA

MARCEL DUCHAMPS

EDDIE FISHER

LEWIS GILBERT

BEN HECHT

IRVING KIRSHNER

MAX LERNER

STANLEY MANN

HUGUES PANASSIE

GREGORY RATOFF

DON RICKLES

MARTIN RITT

ROBERT ROSSEN

AL RUBAN

JONAS SALK

ARTIE SHAW

PHIL SILVERS

JOE STEIN

ED SULLIVAN

BILLY WILDER

MAX YOUNGSTEIN

ROME

PARIS

JAPAN

VIENNA

SPAIN

PORTUGAL

## WOMEN

URSULA ANDRESS

LAUREN BACALL

CAROLE BAKER (LIFE COVER)

INA BALIN (LIFE COVER)

ANNE BAXTER WITH ALFRED HITCHCOCK

INGRID BERGMAN - THE VISIT IN DEPTH

CLAIRE BLOOM

CAPUCCINE

CLAUDIA CARDINALE

LESLIE CARON (AND CHILD)

DIAHANN CARROLL

GERALDINE CHAPLIN

BRITT ECKLUND

MIA FARROW

JANE FONDA

JUDY GARLAND

FRANCOISE GILLOT (PICASSO, MOTHER OF PALOMA)

LILLIAN GISH WITH CAROLE LYNLEY

JULIE HARRIS

DEBRA HARRY "BLONDIE" (ROCK STAR)

DOLORES HART

RITA HAYWORTH

AUDREY HEPBURN

ISABELLA ALBONICO (ITALY)

0092N

- 25 -

ELENI ANNOUSAKIS (ZORBA)

FRANCOISE ARNOU (FRANCE)

DIANE BAKER

BARBARA TAYLOR BRADFORD (WRITER)

FRANCOISE BRION

ELLEN BURSTYN

MADAME CACCACYONIS (105 YEARS OLD) (ZORBA)

JULIE CARMEN

DIAHANN CARROLL AND BILLY STRAYHORN "ON" PIANO

"CRAZY HORSE WEST" GIRLS BACKSTAGE AND ON STAGE

AFDERA FRANCINA (MRS. HENRY FONDA)

LEILA KEDROVA (FRANCE)

KAY KENDALL (ENGLAND)

AZIZI JOHARI (KILLING OF A CHINESE BOOKIE)

SOPHIA LOREN

MARGARET LEIGHTON (ENGLAND)

PIA LINDSTROM

GINA LOLLABRIGIDA

GINA LOLLABRIGIDA (AS A CLOWN)

ANNA MAGNANI

SYLVANA MANGANO

DOROTHY MCGUIRE

MELINA MERCOURI

DINA MERRILL

MARILYN MONROE

FRANCE NUYEN (CHINESE)

GERALDINE PAGE

IRENE PAPPAS (GREECE)

PAULA PRENTIS WITH WOODY ALLEN

LEE REMICK (LIFE COVER)

DEBBIE REYNOLDS

ENGLISH BEAUTIES (SHIRLY MC FIELDS)

XAN CASSAVETES

VALENTINA CORTESE (ITALY)

CRETE WOMEN

LINDA CRISTOL

MIRIAM DAVIES, CECIL B. DEMILLE AND IRVING HOFFMAN

YAEL DAYAN

IRENE DEMICH

CHANA EDEN (ISRAELI)

NANNETTE FABRAY

SHIRLEY ANNE FIELDS

MEG FOSTER

MADAME GILLES

ZSA ZSA GABOR

SAMANTHA JONES (CANADA)

MARY LEATHERBEE (LIFE MOVIE ENTERTAINMENT EDITOR)

DORIAN LEIGH

TINA LOUISE

LISA LU (OPPOSITE MARLON BRANDO)

CAROLE LYNLEY

KATHY MARTIN

0092N

HAYLEY MILLS

JANET MUNRO

JULIE NEWMAR

BARBARA PARKINS (PEYTON PLACE (CANADA)

PINA PELLICER (MEXICO - OPPOSITE MARLON BRANDO)

JOANNA PETIT

DEBORAH RAFFIN

GENA ROWLANDS

ELIZABETH TAYLOR

PAOLA FRANCIA (MRS ORSON WELLES)

LILLIAN GISH

KATHY JURADO

ANNA MAGNANI

EDNA O'BRIEN

MRS BUDD POWELL

JEAN SEBERG

ROMY SHNEIDER

SIMONE SIGNORET

MARINA VLADY

MOLLY WALLACE (IRISH HORSEWOMEN)

NATALIE WOOD

JOANNE WOODWARD

_____

SAM SHAW, Settlor