UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SHAW FAMILY ARCHIVES, LTD., EDITH
MARCUS and META STEVENS,

        Plaintiffs,

        v.

CMG WORLDWIDE, INC., an Indiana
Corporation and MARILYN MONROE, LLC, a
Delaware Limited Liability Company,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

05 CV 3939 (CM)

**DECLARATION OF CRISTINA PIQUINELA IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, STAY, OR TRANSFER**

I, CRISTINA PIQUINELA, declare as follows:

1. I am over eighteen years of age and am fully competent to make this Declaration. The facts contained herein are stated upon my personal knowledge.

2. I am the Vice President of Marketing and Licensing for CMG. I have been employed with CMG since September of 1996 and have been the Account Executive for Marilyn Monroe LLC since 1999. I have held my current position since January 2004.

3. As Vice President of Marketing and Licensing, I am actively involved in the marketing and licensing of nearly 200 entertainment, sports, historical and music celebrities, as well as trademarks belonging to various corporate entities (our clients). I serve as a link between licensees and our clients with regards to negotiations, permissions, artwork submissions and product approvals.

4. I also serve as the primary Account Executive for Marilyn Monroe LLC. In this capacity, I have the primary responsibility of negotiating a large number of all the incoming license agreements for Marilyn Monroe LLC and for communicating with licensees. Moreover, I coordinate deal submissions and artwork approvals for every Marilyn Monroe LLC licensing or

promotional program, whether I or another CMG employee originated that program. I review Marilyn Monroe LLC monthly reports, including royalty reports.

5. As a result of my employment with CMG, I am familiar with the images, signatures, trademarks, copyrights, and rights of publicity owned and utilized by Marilyn Monroe LLC and licensed by various licensees throughout the world.

6. Both defendants Marilyn Monroe LLC and CMG and plaintiff Shaw Family Archives, Inc. ("Shaw Archives") have engaged in commercial activities with common third parties – whereby an entity seeking to use the photographic images taken of Marilyn Monroe by Sam Shaw would secure licenses from both CMG and the Shaw Archives in relation to the Marilyn Monroe Intellectual Property Rights and rights in the Shaw photographs, respectively.

7. Beginning in the spring of 2004, I was told by existing licensees that Bradford Licensing Associates, the licensing agent of Shaw Archives, was soliciting licensees of CMG and Marilyn Monroe LLC to enter into unlawful and unauthorized licenses for the use of the Marilyn Monroe Intellectual Property Rights. I was further informed that Bradford was telling licensees that neither CMG nor Marilyn Monroe LLC had the rights to utilize the Monroe Intellectual Property Rights, and that licensees did not need to obtain permission from CMG or Marilyn Monroe LLC to use the Marilyn Monroe images.

8. Throughout my employment with CMG (which is incorporated in Indiana), I have consistently and exclusively worked out of CMG Corporate Headquarters, which is located at 10500 Crosspoint Boulevard, Indianapolis, Indiana.

9. While CMG has two satellite offices - one in Los Angeles, California and the other in Rio de Janeiro, Brazil - neither of these offices is the usual or customary location for

business related to Marilyn Monroe LLC. Indeed, the vast majority of business related to Marilyn Monroe LLC is conducted in Indianapolis.

10. To my knowledge, virtually all Marilyn Monroe LLC activities with respect to Sam Shaw photographs have taken place at CMG's Indianapolis Headquarters.

11. To my knowledge, Shaw Archives has primarily dealt with representatives of CMG who were located at CMG's Indianapolis Office.

12. Generally, CMG's Indianapolis headquarters are a hub for all of CMG's business administration, and every single deal passes through and is maintained in Indianapolis. For example, the contracts administration department which tracks and processes every single contract is located in Indianapolis. The departments responsible for cutting the checks and preparing the monthly reports sent to clients are located in Indianapolis.

13. All documents and materials relating to Marilyn Monroe LLC, and more specifically, to the rights at issue in this case, are located in Indianapolis, Indiana. For example, I maintain on my local hard drive and in my personal hard copy files a complete set of records for Marilyn Monroe LLC, which I must consult on a frequent and regular basis to carry out my routine duties. Because I have a non-portable desktop computer, my filing system is not accessible outside my Indianapolis office. CMG also stores Marilyn Monroe LLC-related artwork and proposed and produced product prototypes and samples in its Indianapolis office.

14. Additionally, defendants CMG and Marilyn Monroe LLC have retained the law firm of Dann Pecar Newman & Kleiman, P.C. as their lead counsel in this dispute. Dann Pecar Newman & Kleiman, P.C., and all of its files and papers related to this matter, are located in Indianapolis, Indiana.

15. Virtually all employees of CMG who regularly work on the Marilyn Monroe LLC account are located in Indianapolis, Indiana. In addition to myself, the following employees regularly work on the Marilyn Monroe account and reside and work in Indiana: (1) Jamie Maslanka, (2) Samira Ali, (3) Kunal Dua, (4) Jeff Bear, (5) Maria Gejdosova, (6) Sarah Small, and (7) Dominic Lizama. Ms. Maslanka, Ms. Ali, and Mr. Dua are all involved with negotiating licensing deals on behalf of Marilyn Monroe LLC. Mr. Bear is the Vice President of Contracts Administration; in that capacity, he processes all the Marilyn Monroe LLC agreements and tracks royalty reports, among other things. Ms. Gejdosova is responsible for overseeing that Marilyn Monroe LLC receives its payments due under the agreements, and Ms. Small prepares all the monthly reports that are submitted to Marilyn Monroe LLC. Mr. Lizama, designs and manages CMG's website and any images of Marilyn Monroe displayed on the website.

16. Given that my ability to get my day-to-day work completed depends on my actual presence in my office, it would be incredibly inconvenient were CMG required to litigate this action in California. For example, I receive -- virtually on a daily basis -- artwork from existing licensees seeking approval to develop, produce and market a new product. Pursuant to standard terms in each and every licensing agreement, I am required to seek approval from Marilyn Monroe LLC and respond to the licensee's request within a short specified period of time, often just a few days. While some licensees transmit this artwork electronically, others cannot readily do so and only send hard copies of artwork. Therefore, each day I am out of my Indianapolis office hinders my ability to perform my job effectively and efficiently.

17. Moreover, I -- as well as the above-mentioned CMG employees -- am also responsible for work on many other accounts. Therefore, our absence from the office presents serious obstacles to our ability to effectively serve our other clients.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on the 9th day of May, 2005, at Indianapolis, Indiana.

_____
CRISTINA PIQUINELA

80327977_1.DOC