instead of serving NYDS. There are no authorities on record holding that process may be directly served upon an individual listed as the person to whom the NYDS will forward complaints that it receives on behalf of a corporation in the absence of evidence that the individual has been authorized to accept process on behalf of the corporation.

Furthermore, defendants' mailing of the Indiana complaint did not satisfy CPLR 312-a even if, hypothetically, David Marcus was the Archives agent for process (which he was not). CPLR 312-a (a) requires that any process served by mail must contain two copies of a statement of service by mail and acknowledgement of receipt with a return envelope, postage prepaid, addressed to the sender. Defendants did not mail the requisite statement of service to Mr. Marcus. David Marcus Dec, ¶5. Defendants' attempted service by certified mail was therefore defective, regardless of the individual upon whom it was served. *Strong v. Bi-Lo Wholesalers*, 265 A.D.2d 745, 698 N.Y.S.2d 738 (3d Dep't 1999).

Finally, plaintiffs are aware of no authority under the laws of the State of Indiana that would recognize service of process upon a corporation in the manner that was attempted by defendants, as described above. Accordingly, the instant action was served upon defendants long before service of the Indiana action was made upon plaintiffs. Plaintiffs respectfully submit that the first-filed rule is therefore not applicable to the instant action.

### B.    The balance of conveniences favors allowing the instant action to proceed in the Southern District of New York.

It is well established that "[e]xceptions to the 'first-filed rule' apply when the balance of conveniences weighs in favor of the second action." *Winterthur Int'l America Ins., supra*, 2002 U.S. Dist. LEXIS 21838 at \*8. *See also Transatlantic Reinsurance Co., supra*, 2003 U.S. Dist. LEXIS 20933 at \*9 (holding that "departure from [the first-filed rule] may…be warranted if the balance of

convenience militates in favor of proceeding in [the 'second-filed' jurisdiction]."). Moreover, "[i]n deciding between competing jurisdictions...the balancing of convenience should be left to the sound discretion of the district courts." *Gluckin & Co., Inc., supra*, 407 F.2d at 178. *See also Winterthur Int'l America Ins., supra*, 2002 U.S. Dist. LEXIS 21838 at *9. Several factors that are generally considered when a court determines whether the balance of conveniences favors application of the first-filed rule:

> In considering a departure form the first-filed rule based on a balance of conveniences, a court evaluates the same factors considered on a motion to transfer pursuant to 28 U.S.C. § 1404(a). Those factors include (1) the convenience of the witnesses; (2) the location of the relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interest of justice, based on the totality of circumstances.

*Winterthur Int'l America Ins., supra*, 2002 U.S. Dist. LEXIS 21838 at *8-9 (citations and quotation mark omitted). *See also Transatlantic Reinsurance Co., supra*, 2003 U.S. Dist. LEXIS 20933 at *10.

In the instant action, a review of the above-described factors overwhelming demonstrates that the balance of conveniences weighs heavily in favor of allowing this action to proceed in the Southern District of New York. These factors are examined as follows:

### i.    The convenience of the witnesses.

The convenience of the witnesses strongly favors New York over Indiana. This factor is considered one of the most significant. *Transatlantic Reinsurance Co., supra*, 2003 U.S. Dist. LEXIS 20933 at *11. The allegations of the Amended Complaint show that the core of this case will primarily require the testimony of the plaintiffs, all of whom are located in New York, as well as the individuals and entities with whom the plaintiffs' contracted or attempted to contract. Many of these individuals

13

and entities, are located, or at least do business, on the East Coast. Larry Shaw Dec, ¶3. Moreover, *none of these individuals and entities are located in Indiana.* Larry Shaw Dec, ¶¶4, 9, 11; Edith Marcus Dec, ¶¶4, 9, 11. Furthermore, Anna Strasburg, the executor of the estate of Marilyn Monroe and the creator of Marilyn Monroe, LLC also resides in New York City. It is thus very clear that remaining in New York would force far less inconvenience upon the witnesses than would proceeding in Indiana.

The critical questions at issue herein revolve around certain intellectual property rights in photographs and images located in New York and of contracts entered into in New Jersey, New York and/or other East Coast locales, as well as defendants' interference with plaintiffs' East Coast business relations. Furthermore, the relevant non-party witnesses — the individuals with whom defendants interfered, causing injury to plaintiffs — are more amenable to discovery proceedings and trial in New York than they would be in Indiana. While many of the critical witnesses are located in or near New York, none are located in or near Indiana. Accordingly, the first factor to be examined when determining the balance of conveniences strongly favors allowing this action to proceed in the Southern District of New York.

ii.    **The location of the relevant documents and the locus of the operative facts.**

There can be no question that the second and fourth factors analyzed in determining whether the first-filed rule should be applied – the location of the relevant documents and operative facts – overwhelming supports allowing this action to proceed in the Southern District of New York. The documents at issue herein are entirely located in or near New York. The photographs contained within the Shaw collection are clearly the most critical documents, and they are all located in New York. None of these photographs are located in or near Indiana. Similarly, the documentation pertaining to

14

the copyrights of these photographs is also located in New York. Moreover, the contracts with which defendants interfered were executed in or near New York. Finally, because the individuals and entities that were the subject of defendants' tortious interference are located in or near New York, any relevant documentation or facts pertaining to them are located or took place in the Northeast. It is therefore clear that the second and forth factors of the analysis described in *Winterthur* strongly favors allowing the instant action to proceed in New York.

### iii.    The convenience of the parties.

The convenience of the parties is clearly served by allowing this action to proceed in the Southern District of New York. While CMG is an Indiana corporation, it has an international presence.    CMG maintains offices in Los Angeles and Rio de Janeiro.    *See* http://www.cmgworldwide.com/corporate/overview.htm ("CMG's Webpage"), Ex. G.   CMG is "the premier company for representing the families and estates of deceased celebrities. Today, CMG Worldwide represents over 400 diverse personalities and corporate clients in the sports, entertainment, and music fields." Ex. G. CMG states further that it does not need to be based in New York because "our market is international, and advances in technology have enabled us to efficiently market and protect our clients around the world." Ex. G. According to the Complaint in the Indiana action, MM is a Delaware limited liability company with its principal place of business in Indiana. Ex. E. CMG is the agent for MM, however, and MM has CMG's resources available at its disposal. Thus, CMG and MM are capable, without inconvenience, of litigating the issues presented in this matter before the New York Court.

15

In stark contrast, the plaintiffs in this matter are a small New York company and two individuals with no demonstrated presence or business activities in Indiana.[4]   The Archives, Edith Shaw and Meta Stevens have such limited contacts with Indiana that the exercise of jurisdiction over them would violate standards of fair play and substantial justice, and the dismissal of this action, or the defense and prosecution of this action in Indiana, would be extremely inconvenient.  Plaintiffs' age and medical issues that would make prosecuting this action in Indiana extraordinarily difficult, if not impossible.  Larry Shaw, one of the Archives' shareholders, is 68 years old, suffers from diabetes, and is receiving treatment for chronic back pain.  Larry Shaw Dec, ¶13.  Plaintiff Edith Shaw continues to suffer from the residual effects of Lyme disease, has high blood pressure, and must care for her husband who is permanently disabled after sustaining a fractured neck and a brain injury in an automobile accident.  Edith Marcus Dec, ¶14.  Accordingly, the inconvenience plaintiffs would face from a dismissal or from being forced to prosecute this action in Indiana would be much greater than the inconvenience defendants will face in defending this action in New York.

### iv.    The relative means of the parties.

This action involves a tiny, "Mom and Pop" company, entirely owned by three individuals of modest means, and two individual copyright holders attempting to assert their rights against a giant multi-national, multi-million dollar corporation.  The disparity between the means of the litigants in this action could hardly be any greater.  Indeed, the means of plaintiffs are negligible, largely because of the tortious activities of the defendants.  Larry Shaw Dec, ¶14; Edith Marcus Dec, ¶14.  The relative means of the parties herein is an important factor heavily weighing in favor of allowing this matter to proceed in the Southern District of New York:

---

[4]  See Point II of this memorandum.

16

> Where a disparity exists between the means of the parties, such as the case of an
> individual suing a large corporation, the court may consider the relative means of the
> parties in determining were a case should proceed. Here, while [defendant] is not an
> individual, there is a disparity between the relative means of the two corporations. As
> plaintiff has conceded, [plaintiff] has far greater economic resources than [defendant].
> [Defendant] has been in business for less than a year with only a single place of business
> in Orlando, Florida. Accordingly, litigation in a distant forum could pose a significant
> financial burden on [defendant]. Thus, [defendants'] ability to effectively litigate could
> potentially be impaired if forced to litigate in New York. On the other hand, plaintiff has
> offices nationwide, with far greater capital at its disposal. While the Court is mindful that
> since both parties are corporations and thus this factor is not as significant as if the
> litigation were between an individual and a corporation, this factor, nevertheless, supports
> this Court's adherence to the first filed rule.

*800-Flowers, Inc., supra*, 860 F.Supp. at 135 (citations omitted). In *800-Flowers, Inc.*, the plaintiff

was a wealthy, large corporation, and the defendant was a far smaller company attempting to assert its

rights. Moreover, in *800-Flowers, Inc.*, unlike the instant action, the rich plaintiff corporation argued

against the application of the first-filed rule, and the small, disadvantaged defendant company argued

in favor of the first-filed rule's application. *800-Flowers, Inc.* was decided in the defendant's favor,

largely due to the disparity between the parties' means. *Id.*, 860 F.Supp. at 135. In the instant action,

the logic employed in *800-Flowers, Inc.* demands the opposite result: here, the instant action should be

allowed to proceed in the Southern District of New York so that the relatively poor plaintiffs may have

a fair chance against the rich, huge defendant companies. *Everest Capital, supra*, 178 F.Supp.2d at

467 ("Where a disparity exists between the means of the parties, a court may consider the relative

means of the parties in determining venue.") (citations omitted); *Goldstein, supra*, 351 F.Supp. 1314

(rejecting application of the first-filed rule because of the disparity between the litigants' means).

As noted in the Amended Complaint, the defendants' *modus operandi* is to overwhelm smaller

entities and individuals who assert rights regarding images of celebrities by commencing spurious

litigation in Indiana. The smaller entities and individuals are usually unable to afford an adequate

17

defense in these actions, and are therefore prevented from fairly litigating against CMG and its unlimited resources. Amend Compl., ¶¶28-30. Indeed, in the instant matter, plaintiffs Edith Marcus and Meta Stevens cannot afford to retain counsel on their behalf in Indiana. Edith Marcus Dec, ¶14. It is respectfully submitted that this strategy is fundamentally unfair, and that the granting of the instant motion would be tantamount to and endorsement of that strategy. Because of this, the instant motion should be denied.

v.    **The forums' familiarity with the governing law.**

The claims and defenses of the parties in both the instant action and the Indiana action require interpretation of New York Civil Rights Law §§ 50 and 51, which govern the rights of privacy and publicity. Defendants claim that they maintain exclusive control over the right of publicity of images of Marilyn Monroe. Moreover, defendants have used this claim to intimidate plaintiffs' clients and potential clients into backing away from conducting business with the Archives. Defendants claim in this regard is erroneous for the simple reason that at the time of Monroe's death, she was a resident and domiciliary of New York. That Monroe was a resident and domiciliary of New York is demonstrated by the fact that her will was probated in New York; that the Petition for Designation of Appraiser that was prepared for the Surrogate's Court in connection with the probating of Monroe's estate states that she was a resident of 444 East 57th Street, New York, New York, at the time of her passing; and that the documentation prepared in connection with the probating of Monroe's will is replete with references to Monroe having been a New York City residence at the time of her death. Ex. H. Because Monroe was a New York resident and domiciliary at the time of her passing, New York law governs the right to publish her images and photographs. *Groucho Marx Productions, Inc. v. Day and Night Co.*, 689 F.2d 317, 320 (2d Cir. 1981) (noting, in holding that California law governed the right

18

of publicity at issue in that action, that "[t]he three Marx Brothers, with whom we are here concerned, were California residents at the time of their deaths…Plaintiff Susan Marx is a California resident, purporting to assert Harpo's right of publicity as the trustee of the residuary trust under Harpo's will, which was probated in California."); *Jim Henson Prods. v. John T. Brady & Assocs.*, 867 F.Supp. 175, 188 (S.D.N.Y. 1994) ("The parties agree that Connecticut law governs any postmortem right of publicity [the deceased] might have, since he died a citizen and resident of that state."); *Mathews v. ABC Television, Inc.*, 1989 U.S. Dist. LEXIS 10694 (S.D.N.Y. 1989) (noting, in holding that New York law governs the right of publicity at issue in that action, that the relevant "[d]efendants…all reside in New York and are, or were, principal officers of…[New York] corporate defendants.").

Pursuant to NY Civ. R. § 50, *ownership of the rights of privacy and publicity are extinguished at the time of the subject's death.* [5] *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 585 (2d Cir. 1990) (holding that a publisher's marketing of a calendar containing photographs of the late Babe Ruth could not have violated Ruth's right of publicity because, pursuant to NY Civ. R. § 50, "[t]he right of privacy protection…is clearly limited to 'any living person,'" and that a "right to privacy claim is personal to the individual and is extinguished upon [the individual's] death.") (citations omitted); *James v. Delilah Films, Inc.*, 144 Misc.2d 374, 378-79, 544 N.Y.S.2d 447, 451 (Sup. Ct., N.Y. Cty., 1989) (holding, in action involving publication of images and performances of deceased musicians, that "those plaintiffs who are successors in interest [to the deceased musicians] have no cause of action under Civil Rights Law §§ 50, 51, as the statutory rights created by said law do not survive death. Whatever rights belonged to [the deceased musicians] were extinguished at their deaths.") (citations omitted).

---

[5] NY Civ. R. § 50 states that:

> A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture *of any living person* without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor [emphasis provided].

Moreover, defendants may not assert a common-law right to publicity regarding images of Marilyn Monroe: "Since the 'right of publicity' is encompassed under the Civil rights Law as an aspect of the right of publicity, which…is exclusively statutory in this state, the plaintiff cannot claim an independent common-law right of publicity." *Stephano v. News Group Publications*, 64 N.Y.2d 174, 183, 485 N.Y.S.2d 220, 224 (1994). *See also Pirone, supra*, 894 F.2d at 585. It must be noted that Appellate Division, First Department, *has already held that any right of publicity regarding images of Marilyn Monroe terminated at the time of Monroe's death. Frosch v. Grosset & Dunlap, Inc.*, 75 A.D.2d 768, 427 N.Y.S.2d 828 (1st Dep't 1980).

Defendants are no doubt hoping that Indiana law will govern this dispute – despite the fact that Marilyn Monroe was indisputably not an Indiana resident or domiciliary at the time of her death – because Indiana law maintains a post-mortem right of publicity lasting for 100 years after death. Ind. Code Ann. § 32-36-1-8. Plaintiffs respectfully submit that because the right of publicity is at the heart of this action, and because New York law governs the right of publicity of images of Marilyn Monroe, this action should be decided in New York. This is especially true considering defendants' transparent attempt to force a decision on this issue in a state that had no connection to Ms. Monroe, but happens to have an unusual law that apparently favors defendants' position.

      vi.    **The weight accorded a plaintiff's choice of forum, trial efficiency and the interest of justice.**

Plaintiffs' choice of forum in this matter should be respected. Plaintiffs chose to commence this action in New York and, ultimately, the Southern District of New York was the first court to obtain jurisdiction over the parties. Moreover, transfer of this action to the New York Court would be in the best interest of the parties to this litigation, would facilitate the participation of non-party witnesses in this litigation and would create judicial economies. As noted above, the plaintiffs and all

20

of the significant non-party witnesses are either in New York or are nearby. Defendants are huge, multi-million dollar corporations that would be far less burdened by having to travel to New York than the plaintiffs or the non-party witnesses would be if they were forced to travel to Indiana. Plaintiffs submit that if CMG can maintain offices in Rio de Janeiro and Los Angeles, it can handle litigating an action on the East Coast. Furthermore, as is noted in the next point of this brief, Indiana does not have jurisdiction over the plaintiffs. Indeed, plaintiffs have moved to dismiss the Indiana action. Ex. I. Dismissing this action pursuant to the first-filed rule or transferring it to Indiana cannot be viewed as being in the interest of justice when Indiana cannot assert jurisdiction over plaintiffs.

C.    **Defendants have engaged in forum shopping.**

It is well established that the first-filed rule should not be applied in cases where the party claiming to have been the first to commence suit engaged in "forum shopping." *Gluckin, supra*, 407 F.2d at 178; *800-Flowers, supra*, 860 F.Supp. at 132. The Indianapolis action is clearly the result of defendants' forum shopping. Instead of establishing a home office in New York, Los Angeles, or a similar media/entertainment center, defendants chose Indianapolis, Indiana, in order to take advantage of the more favorable Indiana law, as described above. Indiana has the broadest protection for the right to publicity of famous personalities, both living and dead, in the country. CMG's President, Mark Roesler, was the driving force behind the Indiana right of publicity statute. Mr. Roseler's website features a "timeline" which claims:

> 1994: Roesler became the force behind the instatement of Indiana's Right of Publicity Statute, now regarded as the most progressive and celebrity-friendly worldwide.

Ex. J. See also http://markroesler.com/about/timeline.htm#.

Defendants have clearly forum shopped. They created the law upon which they rely and now seek to impose that law upon non-residents who have little or no contact with the State of Indiana.

21

*Columbia Pictures, supra*, 435 F.Supp. at 746 ("[A] litigant is open to the charge of forum shopping…[when] he chooses a forum with slight connection to the factual circumstances surrounding his suit, or where "forum shopping" alone motivated the choice of situs.") (citations and emphasis omitted). Defendants' forum shopping should not be permitted.

**D.     The amount of time that elapsed between the filing of the instant action and the Indiana action was minimal, and discovery has not commenced in either the instant action or the Indiana action.**

As noted above, the instant action was filed less than one month prior to the filing of the Indiana action (and served *prior* to the service of the Indiana action). Accordingly, the amount of time that elapsed between the filing of the two actions was minimal. It is well established that the first-filing rule is of little consequence where, as is the case herein, only a small amount of time transpired between the filing dates of the two actions at issue. *Winterthur Int'l America Ins., supra*, 2002 U.S. Dist. LEXIS 21838 at *12 ("The weight of the [first-filing party's] choice of forum is mitigated…by the fact that there was a minimal time difference between the filing of the two competing action, and neither action has made substantial progress."); *Ivy-Mar Co., Inc. v. Weber-Stephen Products Co.*, 1993 U.S. Dist. LEXIS 17965, *6 (S.D.N.Y. 1993) ("[G]reat significance should not be placed upon the dates the actions were filed given the short period of time between these filings. Thus, if the interests of justice were clearly served by permitting the later filed action to proceed, the Court would disregard the filing dates.") (citations omitted); *Columbia Pictures, supra*, 435 F.Supp. at 748. Moreover, no progress has been made on either action other than the service of motions to dismiss. Discovery has not commenced in either the instant action or the Indiana action. The lack of progress in the actions is another factor heavily weighing in favor of disregarding the first-filed rule. *Winterthur Int'l America Ins., supra*, 2002 U.S. Dist. LEXIS 21838 at *12; *Columbia Pictures, supra*,

435 F.Supp. at 748 (noting, in disregarding the first-filed rule, that "no discovery or other pretrial proceedings have occurred in either district. Thus, no judicial inefficiency or duplication of efforts will result from requiring the parties to litigate their dispute in [the second-filed jurisdiction].") (footnote omitted). Accordingly, because the two actions were filed within a short time of one another, and because no discovery has been exchanged or progress made in either action, the first filed rule should be disregarded. Plaintiffs therefore respectfully request that defendants' motion be denied in its entirety.

## POINT II.

## THE SOUTHERN DISTRICT OF INDIANA DOES NOT HAVE PERSONAL JURISDICTION OVER PLAINTIFFS

In deciding motions that argue that an action pending in the Southern District of New York was commenced after the filing of a similar action in another jurisdiction, and is therefore improper under the "first-filed" rule, courts consider whether the court in which the allegedly first-filed action is pending has jurisdiction over the parties. *Bronx Legal Services v. Legal Services Corp.*, 2000 U.S. Dist. LEXIS 10952 (S.D.N.Y. 2000). Courts that conclude that the competing jurisdiction does not have personal jurisdiction over the parties hold that the first-filed rule is inapplicable, and that the action pending in the Southern District of New York should be allowed to proceed:

> [W]e are reluctant to transfer this action to a forum where personal jurisdiction over one of the parties is in doubt. There are grounds to doubt whether the Eastern District of Pennsylvania would have personal jurisdiction over [the plaintiff Estate]. The claims between [the parties] do not arise out of any conduct by [the deceased plaintiff] in Philadelphia. All of the contracting activity between [the parties] occurred elsewhere. It also appears that [the plaintiff Executor] intends to move to dismiss [defendant's] action in Pennsylvania for lack of jurisdiction.

*Muller, supra*, 822 F.Supp. at 1039.

23

Plaintiffs' contacts with Indiana, considered as a whole, are insubstantial, limited and unsystematic. Shaw Family Archives is a New York limited liability company formed under New York law with its primary place of business in New York. Edith Marcus Dec, ¶3; Larry Shaw Dec, ¶3. Shaw Family Archives only came into existence in June of 2002. Edith Marcus Dec, ¶12. Moreover, Shaw Family Archives has, since its creation, purposefully refused to conduct business in Indiana as part of its business strategy. Edith Marcus Dec, ¶9; Larry Shaw Dec, ¶9. Plaintiffs never advertised or solicited business in Indiana through visits, telephone calls, and written communications or otherwise. Edith Marcus Dec, ¶4. Plaintiffs have no office, employees or agents located in the State of Indiana. Edith Marcus Dec, ¶4. There are no known records or incidents of any of plaintiffs' employees ever being in Indiana on Archives-related business. Edith Marcus Dec, ¶4; Larry Shaw Dec, ¶4. Plaintiffs have never appeared in court in Indiana or invoked the protection or authority of Indiana's government for any purpose other than to defend itself in the Indiana action, and Shaw Family Archives has no governmental licenses in Indiana. Edith Marcus Dec, ¶5; Larry Shaw Dec, ¶5.

Moreover, plaintiffs did not have continuous or systematic communications with defendants prior to the commencement of the instant action, and the few communications that did transpire between the parties did not relate to the transactions at issue herein. Edith Marcus Dec, ¶¶11, 12. No contractual relationship developed from these communications, and they were not conducted on behalf of Shaw Family Archives, which did not even exist as a legal entity at that time. Edith Marcus Dec, ¶11. Though Meta Stevens conversed with Mr. Roesler following the creation of the Archives in early 2002, these conversations did not directly pertain to Archives business and did not lead to any business and/or contractual relationship between the parties. Edith Marcus Dec, ¶¶11, 12. None of these conversations related to the transactions at issue in this lawsuit. Edith Marcus Dec, ¶¶11, 12. In short,

24

even if these contacts could be imputed to plaintiffs, which they cannot, they have never been substantial, continuous, extensive, and systematic so as to create general jurisdiction.[6] Accordingly, plaintiffs' limited contacts with Indiana, if any, are insufficient to create jurisdiction.

Like the plaintiff in *Muller*, the Archives has moved to dismiss the Indiana action. Ex. I. In support of the motion to dismiss the Indiana action, the Archives argues that the Southern District of Indiana does not have personal jurisdiction over the Archives. Ex. I, pages 9 to 20. These arguments involve Indiana law. In the interest of brevity, they will not be reproduced herein, but are included within the memorandum of law annexed as Exhibit "I." Plaintiffs submit that defendants' motion is relying upon the existence of an action in a jurisdiction that cannot exercise jurisdiction over plaintiff. Moreover, the Indiana action will very likely be dismissed for that very lack of jurisdiction over the coming weeks. Plaintiffs' thus respectfully request that the instant motion be denied in its entirety.

## CONCLUSION

Based upon the foregoing, it is respectfully requested that defendants' motion to dismiss, stay or transfer be denied in its entirety, together with such other and further relief as the Court deems just

---

6 Any argument that defendants might make that jurisdiction is proper because of the Archives' Internet site is untenable. It is well established that in New York, "[c]ourts assessing whether Internet activity permits the exercise of personal jurisdiction have identified and array of fact patterns. At one end of the spectrum are 'passive' websites, which display, but do not permit exchange of, information. *Passive websites do not confer personal jurisdiction.*" *In re Ski Train Fire in Kaprun, Aus.*, 2003 U.S. Dist. LEXIS 22139, *17-18 (S.D.N.Y. 2003) (citations omitted) (emphasis added). *See also Girl Scouts of the United States v. Steir*, 2003 U.S. Dist. LEXIS, *12 (S.D.N.Y. 2003), *affirmed*, 2004 U.S. App. LEXIS 12515 (2d Cir. 2004); *Realuyo v. Villa Abrille*, 2003 U.S. Dist. LEXIS 11529, *19 (S.D.N.Y. 2003), *aff'd*, 2004 U.S. App. LEXIS 5771 (2d Cir. 2004). The law in the State of Indiana on this issue is virtually identical. Jennings v. AC Hydraulic, *383 F.3d 546, 549 (7th Cir. 2004); see also* Conseco, Inc. v. Hickerson, *698 N.E.2d 815* (Ind. Ct. App. 1998). Shaw Family Archives' Internet site is passive. Edith Marcus Dec, ¶10; Larry Shaw Dec. ¶10. Shaw Family Archives does not accept orders or conduct business directly through its Internet site. Instead, the Internet site merely makes available information about Shaw Family Archives and its images. Edith Marcus Dec, ¶10; Larry Shaw Dec. ¶10. Accordingly, the Archives' Internet site does not support the exercise of personal jurisdiction in this matter.

and proper.

Dated: June 27, 2005

Respectfully submitted,

By: _____

Brian L. Greben (BG 1572)
David C. Marcus