UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CMG WORLDWIDE, INC., and ) <br> MARILYN MONROE, LLC, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> BRADFORD LICENSING ASSOCIATES, ) <br> THE SHAW FAMILY ARCHIVES, LTD., ) <br> and JAMES E. DOUGHERTY, ) <br> ) <br> Defendants. ) | CASE NO. 1:05-cv-0423-DFH-WTL |

### DEFENDANT BRADFORD'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant Bradford Licensing Associates' ("Bradford"), by counsel, submits this Memorandum of Law in support of its Motion to Dismiss for lack of *in personam* jurisdiction pursuant to Rule 12(B)(2) of the Federal Rules of Civil Procedure.

### I. INTRODUCTION

Plaintiffs, CMG Worldwide, Inc. ("CMG") and Marilyn Monroe, LLC ("MMLLC")(collectively, the "plaintiffs") filed their Complaint for Damages and Injunctive Relief on or about March 23, 2005. This document has been amended twice—most recently by the Second Amended Complaint (the "Complaint") filed June 21, 2005. CMG is an Indiana corporation with its principal place of business in Hamilton County, Indiana. (Complaint, ¶ 1). MMLLC is a Delaware business entity, maintaining its principal place of business in Indiana through CMG. (Complaint, ¶ 2).

The Complaint alleges, correctly, that Bradford is a business entity organized and existing pursuant to the laws of New Jersey. (Complaint, ¶ 8). Bradford's principal place of business is located at 209 Cooper Avenue, Upper Montclair, New Jersey. The Complaint relates to allegations by the plaintiffs that Bradford and the other defendants have violated the plaintiffs right of publicity relating to the famous movie actress Marilyn Monroe, resulting in a spate of alleged injuries under Indiana law. *See* Complaint, *passim*.

Bradford, however, has specifically structured its business activities so as to avoid being subject to jurisdiction in Indiana. Bradford has never advertised or solicited business in Indiana, and it has no office, employees or agents in Indiana. Generally, Bradford's contacts with Indiana, if any, are insubstantial, infrequent and unsystematic as Bradford will not conduct business in Indiana directly and insists, generally, that its clients and their licensees also refuse to conduct business in Indiana. In regards to the intellectual property at issue in this litigation, Bradford explicitly required that its client and their licensees preclude any and all sales in Indiana. Bradford has not purposefully availed itself of the privilege of doing business in Indiana in regards to the Marilyn's Man property, or generally, with one limited and isolated instance. In fact it has purposefully avoided doing any business in Indiana relating to this lawsuit.

Bradford, therefore, has not had sufficient contacts with Indiana such that the exercise of jurisdiction over it by this Court comports with due process. Therefore, this Court lacks personal jurisdiction over Bradford. Accordingly, the Complaint should be dismissed as against Bradford for lack of *in personam* jurisdiction.

## II. F<span style="font-variant:small-caps">ACTS</span>

Although it is the plaintiffs' burden to present evidence necessary to demonstrate that personal jurisdiction over a defendant exists, Bradford nonetheless states the relevant facts. *See Blubaugh v. American Contract Bridge League*, 2002 WL 31040339 (S.D.Ind. 2002)(the party opposing a motion to dismiss for lack of personal jurisdiction carries the burden of presenting evidence of specific facts that, when taken as true, are sufficient to support a finding of personal jurisdiction).

Bradford is a New Jersey business entity with its primary place of business located at 209 Cooper Avenue Upper Montclair, New Jersey. (Affidavit of Len Reiter ("Reiter Aff."), ¶ 3).[1] A copy of the Reiter Aff. is attached hereto as Exhibit 1. Bradford is a full service licensing agency that assists entities that own intellectual properties and earns licensing fees from the goodwill associated with those properties, *i.e.*, it facilitates contractually–based agreements through which an individual or entity pays licensing fees to use images owned by its clients. (Reiter Aff., ¶ 3). Bradford's responsibilities are assigned contractually by the property rights owner rather than any licensee. (Reiter Aff., ¶ 3). Accordingly, Bradford's responsibilities and duties are specified in the representation agreements its signs with the property rights holder. (Reiter Aff., ¶ 3).

Bradford has never advertised or solicited business in Indiana through visits, telephone calls, written communications or otherwise, and there are no known records of any Bradford representative and/or agent having ever made any trip to Indiana on any Bradford-related business. (Reiter Aff., ¶ 4). Bradford has no office, employees or agents located in the State of Indiana. (Reiter Aff., ¶ 5). There are no known records or incidents of any Bradford employee

---

[1] Mr. Reiter is currently Bradford's president, a position he has held since 1984. (Reiter, Aff., ¶ 2).

3

ever being in Indiana on Bradford related business. (Reiter Aff., ¶ 5). Bradford has never appeared in court in Indiana or invoked the protection or authority of Indiana's government for any purpose other than in the present action. (Reiter Aff., ¶ 6). Bradford has no governmental licenses in Indiana. (Reiter Aff., ¶ 7). Bradford has never entered into any contractual relationship with any resident or citizen of Indiana or any business entity with its primary place of business in Indiana. (Reiter Aff., ¶ 8). Bradford maintains a passive worldwide web Internet site located at http://www.bradfordlicensing.com (the "Internet site"), and Bradford does not accept orders or conduct business directly through this Internet site. (Reiter Aff., ¶ 9; Internet site, *passim*).

On or about February 1, 2004, Bradford entered into a Licensing Representation Agreement with Valhalla Productions ("Valhalla"), a New Hampshire Company with its principal place of business in New Hampshire (the "Representation Agreement"). (Reiter Aff., ¶ 10). Pursuant to the Representation Agreement, Valhalla employed Bradford to market its intellectual property rights relating to photographs owned by the Jim Dougherty and Norma Jeane Limited Collection and the Shaw Family Archives relating to a documentary movie entitled Marilyn's Man (the "Marilyn's Man property") on a worldwide basis. (Reiter Aff., ¶ 11; Representation Agreement, 1-2). The Representation Agreement was expressly made subject to the parties' understanding and agreement that Bradford does not do business in the State of Indiana. (Reiter Aff., ¶ 11).

Pursuant to the Representation Agreement, Bradford has facilitated some licensing agreements between Valhalla and other business entities relating to the Marilyn Man's property (the "Agreements"). (Reiter Aff., ¶ 12). Most of these Agreements involve European and/or Australian business entities. (Reiter Aff., ¶ 12). Regardless, at Bradford's insistence, the

4

Agreements specifically provide language in Section 1.1 governing the grant of license that "LICENSEE understands that advertising and distribution of said Licensed Products through retail, mail order catalogs, the internet and any other form of commerce **must preclude sales in the state of Indiana, USA**." (Reiter Aff., ¶ 12; Agreement, § 1.1) (emphasis added). Bradford insists that this is standard language in the agreements it facilitates. (Reiter Aff., ¶ 12). To the extent that any entity marketed or sold Marilyn's Man products in Indiana, it did so in violation of its representations to Bradford and the terms and conditions of its Agreement with Valhalla. (Reiter Aff., ¶ 12).

Further, Bradford was not actually a party to any of the Agreements—its only contractual relationship relating to the Marilyn's Man property is with Valhalla. (Reiter Aff., ¶ 13). Additionally, none of the Agreements involve entities located in or primarily doing business in Indiana. (Reiter Aff., ¶ 13). Instead, as set forth above, Bradford insisted and the Agreements specifically command that any and all of the entities with whom Bradford assisted Valhalla in reaching Agreements were to not advertise, sell and/or conduct business relating to the Marilyn Man's products in Indiana. (Reiter Aff., ¶ 13).

Additionally, though Bradford has done no business directly with any Indiana entity, in 1997, Bradford entered into a contractual relationship with Pez Candy, Inc. ("Pez"). (Reiter Aff., ¶ 14). Pez is a New York Corporation with its primary place of business located in Connecticut. (Reiter Aff., ¶ 14). Pez wanted Bradford's assistance in licensing its famous brand name for use by others. (Reiter Aff., ¶ 14). Pursuant to this relationship, Bradford assisted Pez with the facilitation of a License Agreement between Pez and Playing Mantis, Inc. ("Playing Mantis"). (Reiter Aff., ¶ 14). Playing Mantis is an Indiana Corporation with its primary place of business in Indiana. (Reiter Aff., ¶ 14). Pez and Playing Mantis thereafter entered into a Licensing

5

Agreement, which was renewed by Pez and Playing Mantis from 1997 until its termination in 2004. (Reiter Aff., ¶ 14). The subject of the License Agreement was the authorization of Playing Mantis to manufacture die cast miniature trucks displaying the Pez brand. (Reiter Aff., ¶ 14; License Agreement, *passim*). At no time did the License Agreement and/or the relationship between Pez and Bradford involve or relate to Marilyn Monroe or any images of Marilyn Monroe. (Reiter Aff., ¶ 14; License Agreement, *passim*).

Bradford has never contracted with Playing Mantis. Its only contract was with Pez. (Reiter Aff., ¶ 15). Pursuant to the License Agreement, Playing Mantis sent quarterly sales reports to Pez, which were then carbon copied to Bradford. (Reiter Aff., ¶ 16). Based on the figures and pursuant to the License Agreement, Playing Mantis paid Pez approximately $50,000 in licensing fees from 1997 through 2004. (Reiter Aff., ¶ 16). Playing Mantis never paid any money to Bradford. (Reiter Aff., ¶ 16). During this same period, Pez paid approximately $15,000 to Bradford pursuant to its contract with Bradford. Again, Bradford received no fees directly from Playing Mantis. (Reiter Aff., ¶ 16).

Finally, on or about December 16, 2004, Bradford received unsolicited emails from The Time Factory, a business entity with its principal place of business in Indianapolis, Indiana inquiring into the possibility of obtaining a license in the Marilyn's Man property. (Reiter Aff., ¶ 17; December 16, 2004 Email, *passim*). Bradford refused to enter into any contractual arrangement with The Time Factory on the grounds that Bradford does not do business in Indiana. (Reiter Aff., ¶ 17).

In sum, Bradford has made no efforts to serve, directly or indirectly, the Indiana market for its services. In fact, Bradford has specifically structured its business activities to avoid the privilege of conducting business in Indiana. (Reiter Aff., ¶ 18).

### III. LEGAL ANALYSIS

A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction. *See Hyatt International Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Because Bradford has challenged personal jurisdiction, the plaintiffs' carry the burden of demonstrating that jurisdiction exists. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997); *Fanimation Design & Manufacturing, Inc. v. Aloha House Wares, Inc.*, 2003 WL 1903353 *2 (S.D.Ind. 2003). Though factual disputes will be resolved in favor of the non-moving party, vague generalizations or conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss. *Search Force, Inc. v. Dataforce International, Inc.*, 112 F.Supp.2d 771, 774 (S.D. Ind. 2000).

**A. Personal Jurisdiction Generally**

"Personal jurisdiction is 'a court's power to bring a person into its adjudicative process' and render a valid judgment over a person." Any discussion of personal jurisdiction in Indiana must begin with Trial Rule 4.4(A), which contains Indiana's "long arm" provisions[2].

---

[2] Trial Rule 4.4(A) states in full: "Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or her or his or her agent: (1) doing any business in this state; (2) causing personal injury or property damage by an act or omission done within this state; (3) causing personal injury or property damage in this state by an occurrence, act or omission done outside this state if he regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue or benefit from goods, materials, or services used, consumed, or rendered in this state; (4) having supplied or contracted to supply services rendered or to be rendered or goods or materials furnished or to be furnished in this state; (5) owning, using, or possessing any real property or an interest in real property within this state; (6) contracting to insure or act as surety for or on behalf of any person, property or risk located within this state at the time the contract was made; (7) living in the marital relationship within the state notwithstanding subsequent departure from the state, as to all obligations for alimony, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in the state; or (8) abusing, harassing, or disturbing the peace of, or violating a protective or restraining order for the protection of, any person within the state by an act or omission done in this state, or outside this state if the act or omission is part of a continuing course of conduct having an effect in this state. In addition, a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States."

Notwithstanding the fact that Bradford has not, within a relevant time period, taken actions in Indiana that fall within one of Trial Rule 4.4(A)'s enumerated categories, Trial Rule 4.4(A) arguably allows an Indiana court to assert jurisdiction to the limits established by due process: "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." Ind.Trial.R. 4.4(A).[3] Accordingly, the question presented is whether due process permits the exercise of jurisdiction over Bradford. It does not.

**B.     The Exercise Of Jurisdiction Over Bradford Does Not Comport With Due Process**

The due process test for personal jurisdiction has two related components: the "minimum contacts" inquiry and the "reasonableness" inquiry. A court must first determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

**1.     The Minimum Contacts Inquiry Generally**

Due process requires that a defendant have sufficient "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co,*. 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "Minimum contacts are required to assure that a defendant has purposefully availed himself of the jurisdiction of the forum state." *Baseball Card World, Inc. v. Pannette*, 583 N.E.2d 753 (Ind. Ct. App. 1991). "At a minimum, the court must find 'some act by which the defendant purposefully avails itself of the privilege of its law.'" *Rowosky v. University of Colorado*, 653 N.E.2d 146, 148 (Ind. Ct. App. 1995) (quoting *Hansen v. Denckla*, 357 U.S. 234, 253 (1958)). As such, the exercise of jurisdiction over a defendant will comply with due process only if the defendant "reasonably should have anticipated 'being haled into

---

[3] *See Fanimation Design*, 2003 WL 1903353 * 4; William F. Harvey, *Dept. Rules & Rulings*, Res. Gestae, Apr. 2003, at 37 (noting that 2003 Amendment to Trial Rule 4.4(A) moots provisions in Indiana Trial Rule 4.4(A)(1) through (8)).

8

court' in Indiana" and "purposefully…availed itself of the 'privilege of conducting activities' in Indiana." *Wilson v. Humphries (Cayman) Ltd.*, 916 F.2d 1239, 1244 (7th Cir. 1990)(quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

"There are two types of contacts that may be sufficient to establish jurisdiction: (1) defendant's contacts with the forum state that are unrelated to the basis of the lawsuit, and (2) defendant's contacts that are related to the subject matter of the lawsuit. *Anthem Ins. Cos., Inc. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1234 (Ind. 2002). These contacts are known, respectively, as providing a basis for a court's assertion of "general" and "specific" personal jurisdiction over a defendant. *Id*. (*referring to Helicopteros Nationales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8-9 (1984)). In this matter, neither general nor specific jurisdiction exists.

### 2. This Court May Not Exercise General Jurisdiction Over Bradford

A court's general jurisdiction is based on the defendant's general business contacts with the forum state and it permits a court to exercise its jurisdictional power in a case even where the subject matter of that case is unrelated to those contacts. *Helicopteros*, 466 U.S. at 414-16 & nn. 8-9. Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more rigorous test than that associated with specific personal jurisdiction, requiring the party claiming jurisdiction to demonstrate the defendant's "continuous and systematic general business contacts." *Id*. at 416. "If the defendant's contacts with a forum state [are] unrelated to the lawsuit, they 'must be fairly extensive to confer jurisdiction.'" *Anthem*, 730 N.E.2d at 1235 (quoting *Brokemond v. Marshall Field & Co.*, 612 N.E.2d 143, 145 (Ind. Ct. App. 1993)). "In sum, an Indiana court has general jurisdiction over a defendant if the defendant's contacts with Indiana are substantial, continuous, extensive, and systematic." *Anthem*, 730 N.E.2d at 1235.

Bradford's contacts with Indiana, considered as a whole, are insubstantial, limited and unsystematic. Bradford does no business directly in Indiana, and in fact, Bradford has taken purposeful steps to avoid doing business in Indiana whatsoever. Bradford has no office, employees or agents in Indiana and there are no known records or incidents of any Bradford employee ever visiting Indiana on any Bradford-related business. (Reiter Aff., ¶ 5). Further, Bradford has never appeared in court in Indiana (in any other matter), and it carries no governmental licenses in Indiana. (Reiter Aff., ¶¶ 6, 7).

Bradford's only contacts with Indiana related to its contractual relationship with Pez, a New York company doing business in Connecticut, through which it assisted Pez license its intellectual property to Playing Mantis, an Indiana company in 1997. (Reiter, Aff., ¶ 14). As a preliminary matter, these remarkably limited contacts, which were initiated eight years ago, are not jurisdictionally relevant even to a general jurisdiction analysis because they are too sparse and too removed in time.

As set forth above, while the specific jurisdiction analysis is limited to contacts out of which the lawsuit arises, a general jurisdiction analysis requires an examination of whether a party has maintained "continuous and systematic contacts." *Anthem*, 730 N.E.2d at 1235. There appears to be little case law explicitly discussing the precise time period for assessing whether a defendant's contacts with a state are sufficiently "continuous and systematic" for the purposes of general jurisdiction. *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir. 1996). As set forth by the *Metropolitan Life* Court, the existing case law demonstrates that while general jurisdiction contacts are normally reviewed over a period of years, that period is normally capped at a "reasonable" three to seven year limit. *Id*. (referring to *Helicopteros Nationales de Columbia, S.A. v. Hall*, 466 U.S. 408, 409-11 (1984) (examining defendant's

general jurisdictional contacts over a seven-year period); *Wilson v. Belin*, 20 F.3d 644, 650-51 (5th Cir. 1994) (examining defendant's contacts over a five-year period); *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1329, 1330-31 (9th Cir. 1984) (examining defendant's contacts over a three-year period in connection with a general jurisdiction inquiry)); *see also Fanimation Design & Mfg., Inc. v. Aloha Housewares, Inc.*, 2003 WL 1903353, at *3 (S.D.Ind. 2003) (refusing to consider contacts that occurred two years to eighteen months prior to the filing of plaintiff's lawsuit in making a general jurisdiction analysis). Most of Bradford's limited contacts with Playing Mantis on behalf of Pez occurred in 1997 when the License Agreement was put into place. Even at the upper end of the jurisdictional time limit, these limited contacts are not jurisdictionally relevant.

Regardless, Bradford's relationship with Pez involved the authorization of Playing Mantis to manufacture die-cast miniature trucks displaying the Pez logo. (Reiter Aff., ¶ 14). At no time did the License Agreement and/or relationship between Pez and Bradford involve or relate to Marilyn Monroe or any images of Marilyn Monroe. (Reiter Aff., ¶ 14). Bradford never contracted with Playing Mantis. (Reiter, Aff., ¶ 15). Pursuant to the License Agreement, Playing Mantis did send quarterly sales reports to Pez, which were then carbon copied to Bradford, but Playing Mantis never paid any money to Bradford. (Reiter, Aff., ¶ 16). Bradford received its fees directly from Pez (from Connecticut) pursuant to its contractual relationship with Pez only. (Reiter, Aff., ¶ 16). Accordingly, even if the Playing Mantis contacts are considered jurisdictionally relevant, they are insufficient to create general jurisdiction, as they were never substantial, systematic, or continuous.

Finally, plaintiffs may contend that general jurisdiction is proper because of Bradford's Internet site. While the operation of an "interactive" website such as one where consumers can

order a defendant's goods or services, "may subject a defendant to the exercise of personal jurisdiction," this logic "certainly does not extend to the operation of a 'passive' website… which merely makes available information about the company and its products." *Jennings v. AC Hydraulic*, 383 F.3d 546, 549 (7th Cir. 2004); *see also Conseco, Inc. v. Hickerson*, 698 N.E.2d 815 (Ind. Ct. App. 1998). As the *Jennings* Court noted, "[w]ith the omnipresence of the Internet today, it is unusual to find a company that does not maintain at least a passive website." *Id*. at 550. Accordingly, "[p]remising personal jurisdiction on the maintenance of a website, without requiring some level of 'interactivity' between the defendant and consumers in the forum state, would create almost universal personal jurisdiction because of the virtually unlimited accessibility of websites across the country." *Id*. The *Jennings* Court concluded "a defendant's maintenance of a passive website does not support the exercise of personal jurisdiction over that defendant in a particular forum just because the website can be accessed there." *Id*.

Bradford's Internet site is passive. (Reiter, Aff. ¶ 9). Bradford does not accept orders or conduct business directly through its Internet site. (Reiter, Aff. ¶ 9). Instead, the Internet site merely makes available information about Bradford and its services. (Internet Site, *passim*). Accordingly, the Internet site does not support the exercise of personal jurisdiction in this matter.

In sum, Bradford's contacts with Indiana have not been substantial, continuous, extensive, and systematic. If anything, they have been substantially—and purposefully—non-existent. Bradford has not actively advertised, solicited business, or conducted business in Indiana and it does not maintain an office, agent, employee or property in the state. *See*, *North Texas Steel Co. Inc. v. R.R. Donnelley & Sons, Co.*, 679 N.E.2d 513, 519 (Ind. Ct. App. 1997)(*cert. denied*. 118 S.Ct. 1676 (1998)). Rather, Bradford's Indiana contacts, if any, have been, at most, sporadic indirect contacts made many years ago pursuant to a contract with a

12

separate business entity not located in Indiana. These limited contacts are insufficient to create general jurisdiction.

### 3. Specific Jurisdiction Does Not Exist

Specific jurisdiction "exists only when a defendant has purposefully established contacts with the forum state and the basis of the lawsuit arises out of those contacts." *Richards & O'Neil,LLP v. Conk*, 774 N.E.2d, 540, 546 (Ind.Ct.App. 2002) (*referring to Anthem*, 730 N.E.2d at 1235). "In other words, the defendant's isolated contacts with a state that are not enough to establish general personal jurisdiction may be sufficient to allow jurisdiction over any incidents related to those contacts." *Anthem*, 730 N.E.2d at 1235. "In order to establish specific personal jurisdiction over a defendant, the defendant must have purposefully established contact with the forum state and the basis of the lawsuit must arise out of these contacts." *Id*.

The analysis of contacts for specific personal jurisdiction is conducted on a case-by-case basis. *Id*. In conducting this analysis, courts consider the following: (1) whether the claim arises from the defendant's forum contacts; (2) the overall contacts of the defendant or its agent with the forum state; (3) the foreseeability of being haled into court in that state; (4) who initiated the contacts; and (5) whether the defendant expected or encouraged contacts with the state. *Id*. at 1236. Finally, "[a] single contact with a forum state may be enough to establish specific personal jurisdiction; however, the defendant's conduct must create a substantial connection with the forum state and the acts must be purposeful, not a random, fortuitous, or attenuated contact or the unilateral conduct of a third party." *Richards & O'Neil*, 774 N.E.2d at 546 (*referring to Sohacki v. Amateur Hockey Assoc. of Illinois*, 739 N.E.2d 185, 189 (Ind. Ct. App. 2000)).

Plaintiffs do not allege, nor can they, that Bradford had any direct "contacts" with Indiana, which relate to this matter or that Bradford "purposefully established contacts" with

13

Indiana which are the basis for this lawsuit. In fact, Bradford's sole contractual relationship relating to the subject matter of this lawsuit is its relationship with Valhalla in New Hampshire. (Reiter, Aff., ¶ 10). Pursuant to their agreement, Vlahalla employed Bradford to market the Marilyn's Man property subject expressly to the parties' understanding and agreement that **Bradford does not do business in Indiana**. (Reiter, Aff., ¶ 11). Subject to this understanding, Bradford facilitated Agreements between Valhalla and other business entities—mostly in Europe and Australia. (Reiter, Aff., ¶ 12). At Bradford's insistence, every Agreement with such third parties specifically provided in Section 1.1 governing the grant of license that "LICENSEE understands that advertising and distribution of said Licensed Products through retail, mail order catalogs, the internet and any other form of commerce **must preclude sales in the state of Indiana, USA**." (Reiter, Aff. ¶ 12; Agreement, § 1.1) (emphasis added). Accordingly, to the extent that any entity marketed or sold Marilyn's Man products in Indiana, it did so in violation of its representations to Bradford and the terms and conditions of its Agreement and thus contrary to Bradford's intentions. (Reiter, Aff. ¶12).

Plaintiffs allege, however, that jurisdiction is proper "through the various damages caused to Plaintiffs in Indiana as a result of Defendants' conduct" and because "Defendants' wrongful conduct both within and without Indiana have [sic] been felt primarily in Indiana as that is CMG's home state." (Complaint, ¶ 28). In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court created the "effects test" which recognized that under certain circumstances a court "may exercise personal jurisdiction over a nonresident defendant who commits an intentional tort by certain acts outside the forum which have a particular type of effect upon the plaintiff within the forum." *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 261 (3rd Cir.

14

1998). Accordingly, the "state in which the victim of a tort suffers the injury may entertain a suit against the accused tortfeasor." *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997).

Injury alone, however, is insufficient to create jurisdiction. In all cases in which jurisdiction over a suit involvilng intellectual property was predicated on the "effects test" "the defendant had done more than brought about an injury to an interest located in a particular state. The defendant had also 'entered' the state in some fashion." *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club*, 34 F.3d 410, 412 (7th Cir. 1994). Accordingly, the Seventh Circuit has "explicitly refrained from holding [in *Janmark*] that injury to intellectual property … was enough - in itself - to confer jurisdiction over an out-of-state defendant." *Softee Manufacturing, LLC v. Mazner*, 2003 WL 23521295 at *4 (N.D.Ill. 2003); *Caterpillar Inc. v. Miskin Scraper Works, Inc.*, 256 F.Supp.2d 849, 851 (C.D.Ill. 2003); *see also IMO Industries*, 155 F.3d at 265.

In this instance, Bradford has not "entered" Indiana in relation to the subject matter of this litigation. It is well established that Bradford was free to structure its business activites so as to purposefully avoid interaction with Indiana, thereby avoiding any possible jurisdictional ties. *See Purdue Research Found. v. Sanofi-Syntheloabo, S.A.*, 338 F.3d 773, 781 (7th Cir. 1985) (noting that even "contracting [directly] with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum"); *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549 (7th Cir. 2004). ("[P]otential defendants [may] structure their contacts with different forums so as to plan where their business activities will and will not render them liable to suit."). Bradford did precisely that by refusing to facilitate any Agreements involving the licensing and/or sale of products in Indiana. By doing so, Bradford avoided entering Indiana for jurisdictional purposes. Accordingly, even if the plaintiffs could come forth

with evidence of some injury suffered by them in Indiana due to an intentional tort committed by Bradford (such allegations would be and are expressly denied) this would be insufficient to create jurisdiction under even the effects test, because Bradford still has not "entered" Indiana.

Ultimately, an application of the *Anthem* factors demonstrates that specific jurisdiction does not exist here. First, and most importantly, the plaintiffs claims do not arise out of any action by Bradford relating to the State of Indiana, because Bradford intentionally avoided any and all such actions. Second, as set forth *supra*, Bradford's other contacts with Indiana are remarkably limited and so far removed in time so as to be jurisdictionally irrelevant. Third, given Bradford's limited interaction with Indiana and the fact that Bradford only contracted with Valhalla, a New Hampshire corporation, under the terms and conditions that any and all of the entities with whom Bradford assisted Valhalla in reaching Agreements were not to advertise, sell and/or conduct business relating to the Marilyn Man's products in Indiana, Bradford could not reasonably have foreseen being haled into Court in Indiana. Fourth, Bradford's contacts relating to this matter were conducted solely outside of Indiana. Fifth, the Agreements did not arise through any action by Bradford to encourage and develop contacts in Indiana. Accordingly, an Indiana Court cannot exercise specific personal jurisdiction over Bradford in this matter.

The transactions at issue in this case did not arise from any purposeful development of contacts in Indiana by Bradford. In fact, no such contacts exist. Bradford's limited contacts with Indiana are stale, random, fortuitous and attenuated and entirely unrelated to the plaintiff's claims in the Complaint relating to Marilyn Monroe. These contacts are insufficient to establish specific *in personam* jurisdiction over Bradford.

4.   **The Exercise of Jurisdiction Over Bradford Is Not Reasonable**

16

The second prong of the due process inquiry asks whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice," *i.e.*, whether it is reasonable under the circumstances of the particular case. *International Shoe*, 326 U.S. at 316. While the exercise of jurisdiction is favored where a threshold showing of minimum contacts has been made, it may be defeated where the defendant presents "a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). In determining whether the exercise of jurisdiction is reasonable, a court evaluates the following factors: (a) the burden that the exercise of jurisdiction will impose upon the defendant; (b) the interests of the forum state in adjudicating the case; (c) the plaintiff's interest in obtaining convenient and effective relief; (d) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (e) the shared interest of the states in furthering substantive social policies. *See Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 113-14 (1987). Given these factors, the exercise of jurisdiction by this Court over Bradford in this matter would not be reasonable.

The relevant jurisdictional factors all cut against this Court's exercise of Jurisdiction. First, the exercise of jurisdiction by this Court will force Bradford, a small New Jersey business entity, to litigate a matter that has little if any meaningful connection to this jurisdiction hundreds of miles away from its place of business at great cost and inconvenience. Second, Indiana has little cognizable interest in this litigation. None of the events at the heart of this litigation occurred in Indiana.

In addition, the exercise of this Court's jurisdiction will not further the efficient administration of justice. Generally, the fact witnesses and documentary evidence relevant to

this matter are located in outside of Indiana. Finally, the prosecution of this matter in Indiana does nothing to further the common interests of the several states in promoting substantive social policies in that this litigation does not involve agreements entered into or performed in Indiana. Indiana has virtually no substantive ties to this litigation other than the fact that CMG resides here.

The application of the *Asahi* factors demonstrates that the exercise of this Court's jurisdiction over Bradford is not reasonable. As Bradford has not maintained the requisite minimum contacts with Indiana, the exercise of this Court's jurisdiction over Bradford would not be appropriate or reasonable.

## IV. CONCLUSION

For the foregoing reasons, defendant Bradford Licensing Associates respectfully requests that CMG Worldwide Inc. and Marilyn Monroe LLC's Complaint be dismissed pursuant to Federal Rule of Civil Procedure 12(B)(2) as this Court may not exercise *in personam* jurisdiction over Bradford, and for all other relief as is just and proper.

Respectfully submitted,

*/S/Hamish S. Cohen*
James M. Hinshaw
Hamish S. Cohen
BINGHAM MCHALE LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN 46204-4900
(317) 635-8900

*Attorneys for Defendants, Bradford Licensing Associates and Shaw Family Archives, Ltd.*

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing document has been served on the following via the Court's electronic filing system this 5th day of July 2005:

J. Lee McNeely
McNEELY STEPHENSON THOPY & HARROLD
30 E. Washington Street
Suite 400
Shelbyville, IN 46176

James Braden Chapman, II
Jonathan G. Polak
DANN PECAR NEWMAN & KLEIMAN
One American Square
Suite 2300
PPO Box 82008
Indianapolis, IN 46282

　　　　　　　　　　　　　　　　　　　　/S/Hamish S. Cohen

958789.2