# GIBSON, DUNN & CRUTCHER LLP

LAWYERS

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

200 Park Avenue  New York, New York 10166-0193
(212) 351-4000
www.gibsondunn.com
OSnyder@gibsondunn.com

May 1, 2006

Direct Dial
(212) 351-2400
Fax No.
(212) 351-6335

Client No.
P 88497-00016

Honorable Colleen McMahon
United States District Court
300 Quarropas Street
White Plains, NY  10601

Re:  *Shaw Family Archives, Ltd. et al. v. CMG Worldwide, Inc. et al, 05 cv. 3939; CMG Worldwide, Inc. et al. v. Bradford Licensing Assocs., et al. (transfer from the Southern District of Indiana pending, 1:05-cv-0423)*

Dear Judge McMahon:

We represent Plaintiff Marilyn Monroe, LLC ("MM"). Pursuant to the Court's April 24, 2006 Order, we respectfully submit this letter and accompanying exhibits to demonstrate that the Southern District of Indiana could and should properly have asserted personal jurisdiction over Defendants Bradford Licensing Associates ("Bradford") and the Shaw Family Archives, Ltd. ("Shaw Archives") (collectively "Defendants").[1] Because the Indiana court has jurisdiction over Defendants in Plaintiffs' first-filed action[2] transferred to this Court under 28 U.S.C. 1404(a), Indiana law applies.[3]

Under controlling Seventh Circuit law, personal jurisdiction lies over a non-resident defendant whose actions caused plaintiff harm in the forum state – <u>even where the defendant's</u>

---

[1] The briefs and supporting papers submitted by Plaintiffs in Indiana are attached as Exs. A and B.

[2] For a more detailed discussion, MM respectfully directs the Court to Ex. C, Plaintiffs' June 3, 2005 motion to dismiss the Shaw Archives' complaint in this action. That motion was never fully briefed because Your Honor issued a stay on July 6, 2005, pending a determination of personal jurisdiction in Indiana.

[3] Where, as here, a case is transferred pursuant to 28 U.S.C. §1404(a), only one circumstance changes: the forum in which the case is adjudicated. All else, including the applicable law, remains the same. *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) ("Although as a matter of federal policy a case may be transferred to a more convenient part of the system, whatever rights the parties have acquired under state law should be unaffected. The case <u>should remain as it was in all respects but location</u>.") (internal quotation marks omitted) (emphasis added).

**GIBSON, DUNN & CRUTCHER LLP**

conduct occurred entirely out-of-state and the defendant has no other contacts with the forum state. See *Janmark v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997) (phone call placed by California defendants in California to New Jersey that involved false claim of copyright infringement and interfered with Illinois plaintiff's prospective economic advantage subjects California defendants to personal jurisdiction in Illinois; because defendants' actions outside Illinois caused plaintiff economic injury in Illinois, personal jurisdiction existed over California defendants in Illinois, as "the injury and thus the tort occurred in Illinois").[4] In the months since the parties here submitted their papers in Indiana, courts in the Seventh Circuit have reaffirmed *Janmark's* expansive jurisdictional effects test. See *BAB Systems, Inc. v. Pilatus Investment Group, Inc.*, No. 05-C-3038, 2005 WL 2850119 (N.D. Ill. Oct. 27, 2005); *FAIP North America, Inc. v. Sistema s.r.l.*, No. 05-C-4002, 2005 WL 3436398 (N.D. Ill. Dec. 14, 2005). In *BAB Systems*, for example, plaintiffs (Illinois corporations) sued defendants (a California corporation and an individual) in Illinois federal court, alleging that defendants had by tortious means induced plaintiffs' California-based franchisee to breach a contract. 2005 WL 2850119 at *1, 3. Although the California defendants had no other contact with Illinois, the court held that jurisdiction was proper, because the "Seventh Circuit has stated that, when tortious behavior is alleged, specific jurisdiction can lie in the place of the injury, even if the wrongdoer's behavior occurs wholly outside the borders of the forum state." *Id.* at *3 (citing *Janmark*) (emphasis added). The Illinois court thus denied defendants' motion to dismiss, ruling that plaintiffs' allegation "carrie[d] with it a reasonable inference that Defendants knew and appreciated that the effects of their actions would be felt in Illinois by the Plaintiffs[.]" *Id.* at *4; see also *FAIP North America* ("The Seventh Circuit has held that specific jurisdiction lies in the place of injury, even despite the fact that the wrongdoer's actions may have occurred in another state."); Ex. A at 6-10; Ex. B at 6-10.

As we advised Your Honor at the April 24, 2006 conference, two different Indiana federal judges in related cases already have applied *Janmark* and ruled in Plaintiffs' favor on the very issue presented here, finding personal jurisdiction in Indiana over out-of-state photographers who, like Defendants here, exploited the Marilyn Monroe Intellectual Property Rights outside of Indiana without authorization. See *CMG & MM v. Tom Kelley Studios, Inc.* ("Kelley Studios Case"); *CMG & MM v. The Milton H. Greene Archives, LLC* ("Greene Archives Case") (orders are attached hereto as Exs. D and E, respectively). Both Chief Judge Larry J. McKinney and Judge Richard L. Young found jurisdiction in Indiana over out-of-state photographers which, like Shaw Archives and Bradford here, caused injury to Plaintiffs in Indiana. As discussed below and set forth more fully in Exhibits A and B, the same result is warranted here.

Defendants' tortious conduct easily satisfies the jurisdictional test set forth in *Janmark*. By way of example only, Larry Shaw (a Shaw Archives principal) sent a letter to CMZ Handbags and Jewelry (a California company)("CMZ"), stating that MM and CMG have no right or interest in the Monroe Intellectual Property Rights. Ex. A at 3 (Ex. C-10 therein). Based upon this tortious representation, Shaw Archives entered into a licensing agreement with CMZ to

---

[4] *Janmark* is binding, despite criticisms by other Circuits about the breadth of its holding. *See, e.g.*, *divine/Whittman-Hart, Inc. v. King*, No. 02-C-2486, 2002 WL 1611585, at * 4 n.3 (N.D. Ill. July 22, 2002) ("[T]he decision [in Janmark] is still binding on this court and we must follow it.")

2

**GIBSON, DUNN & CRUTCHER LLP**

place Marilyn Monroe's image upon handbags and distribute them "throughout the world," thereby directly interfering with MM and CMG's business interests. *Id.* (Ex. C-11 therein). Shaw and Bradford also caused other unauthorized Marilyn Monroe products to be advertised and sold in catalogues and on the Internet to Plaintiffs' harm in Indiana. *See* Ex. A at 4 (Exs. D, F, G, H, and I therein). As in *Janmark*, Defendants knew their tortious activity outside of Indiana would cause economic injury inside Indiana. CMG is a well-known Indiana corporation and widely known to be MM's exclusive licensing agent. *See* www.cmgworldwide.com. In fact, Defendants' own conduct and admissions confirm their awareness that they would cause harm primarily in Indiana.[5] Because the site of the economic harm was Indiana, the location of the tort was Indiana. Therefore, this Court "need look no further than the allegations . . . alleging tortious interference with contract" to conclude that Bradford and Shaw Archives are subject to personal jurisdiction in Indiana. *BAB Systems*, 2005 WL 2850119, at *2.

Accordingly, the Indiana federal court possessed personal jurisdiction over Shaw and Bradford.[6]

Respectfully submitted,

Orin Snyder

cc:   Brian Greben, Esq. (via facsimile)

---

[5] Bradford is, by its own admission, "a global licensing firm[,]" that "maintains a network of agents in all major foreign countries" and whose clients include such well-known national and multi-national corporations such as PEZ Candy and Pepsi-Cola Company. See http://bradfordlicensing.com/about company.html & http://bradfordlicensing.com/client overview/index.html. Also, Defendants' multiple websites advertising unauthorized Marilyn Monroe products can be a vehicle for selling in Indiana even if the consumer makes a purchase outside Indiana after learning about the product on the Internet in Indiana. Tellingly, Bradford modified its website to include an Indiana disclaimer after the Plaintiffs filed this action. Compare disclaimer at Ex. B (Exs. D-3 to D-4 therein) to Bradford's prior website without the disclaimer at Ex. B (Ex. C therein).

Similarly, Shaw confirmed its awareness that CMG and MM are located in Indiana by "purposely refus[ing] to conduct business in Indiana." Ex. A (Ex. B ¶ 10 therein). Shaw also admitted that Meta Shaw Stevens and Edith Shaw Marcus (Shaw Archives principals) directly communicated with and met Indiana-based CMG's founder and CEO Mark Roesler regarding Marilyn Monroe photos. *See* Ex. A (Ex. B ¶¶ 15-16 therein). Despite Shaw's self-serving declaration that "none of these conversations related to the transactions at issue in this lawsuit," *id.*, any conversation between CMG's Indiana-based principal and Shaw Archives' principals regarding Marilyn Monroe photos related precisely to the issue in this lawsuit, the Marilyn Monroe Intellectual Property Rights that are licensed out of Indiana. The case law thus makes clear that personal jurisdiction exists over Shaw Archives and Bradford in Indiana. In the event the Court has any doubt, Plaintiffs are prepared to conduct limited and targeted jurisdictional discovery, which would only further confirm more than sufficient contacts under *Janmark*.

[6] Shaw and Bradford have submitted a letter, dated April 30, 2006, which ignores *Janmark* and, instead, contains an entirely irrelevant discussion of the merits, arguing that Marilyn Monroe was a domiciliary of New York and that MM and CMG somehow do not have the right to avail themselves of the protections of Indiana law. Although Ms. Monroe died in Los Angeles on August 5, 1962, as a California domiciliary, Your Honor has not requested briefing on this issue, and we will not respond to the many inaccuracies in this letter. Moreover, Defendants' forum-shopping argument is without merit; indeed, the same argument was flatly rejected by the federal court in the Consolidated California Action. *See The Milton H. Greene Archives, Inc. v. CMG, et al.*, no. CV 05-2200 (C.D.Cal. May 16, 2005) (order denying motion to dismiss) (attached hereto as Ex. F).