# EXHIBIT F

```
                                              FILED
                                    CLERK, U.S. DISTRICT COURT

                                       MAY 18 2005

                                   CENTRAL DISTRICT OF CALIFORNIA
                                   BY                    DEP
```

```
                                            ENTERED
                                   CLERK, U.S. DISTRICT COURT

                                       MAY 19 2005

                                   CENTRAL DISTRICT OF CALIFORNIA
                                   BY                    DEPUTY
```

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE MILTON H. GREENE ARCHIVES, INC., | ) CASE NO. CV 05-2200 MMM (Mcx) |
| Plaintiff, | ) |
| v. | ) ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING DEFENDANTS' MOTION TO STAY ACTIONS PENDING THE OUTCOME OF COMPETING CASES IN THE SOUTHERN DISTRICT OF INDIANA |
| CMG WORLDWIDE, INC., an Indiana Corporation, and MARILYN MONROE, LLC, a Delaware Limited Liability Company, ANNA STRASBERG, an individual, | ) |
| Defendants. | ) |
| TOM KELLEY STUDIOS, INC., a California corporation, | ) |
| Plaintiff, | ) |
| v. | ) |
| CMG WORLDWIDE, INC., an Indiana Corporation, and MARILYN MONROE, LLC, a Delaware Limited Liability Company, ANNA STRASBERG, an individual, | ) |
| Defendants. | ) |

47

SCANNED

1
2
3
4
5
6
7
8
9
10

SHIRLEY DE DIENES, an individual; )
ONEWEST PUBLISHING, INC., a )
California Corporation, )
                                  )
          Plaintiff, )
                                  )
     v. )
                                  )
CMG WORLDWIDE, INC., an Indiana )
Corporation, and MARILYN MONROE, )
LLC, a Delaware Limited Liability )
Company, ANNA STRASBERG, an )
individual, )
                                  )
          Defendants. )
                                  )
                                  )

11    Before the court are defendants' motions to dismiss, stay, or transfer the consolidated

12 actions to the Southern District of Indiana under the first-to-file rule. The motions involve three

13 suits filed against defendants CMG Wordwide, Inc. ("CMG"), Marilyn Monroe, LLC, and Anna

14 Strasberg, which have been consolidated for all purposes. Plaintiffs Milton H. Greene Archives

15 ("MHG"), Tom Kelley Studios, Inc. ("TKS"), and Shirley de Dienes and Onewest Publishing,

16 Inc. ("the de Dienes plaintiffs"), all of whom purport to hold copyrights in certain photographs

17 of the legendary film and cultural icon, Marilyn Monroe, filed separate actions against defendants

18 in the Central District of California. Plaintiffs seek, *inter alia*, a declaratory judgment that

19 defendants do not own any rights of publicity, association, sponsorship, and/or endorsement in

20 the name and likeness of Marilyn Monroe. CMG is an Indiana corporation in the business of

21 marketing and licensing the publicity rights of approximately 200 entertainment, sports, historical

22 and music celebrities, including Marilyn Monroe. Marilyn Monroe, LLC is a Delaware limited

23 liability company that purports to own rights of publicity in the name, image and persona of

24 Marilyn Monroe. Anna Strasberg is a New York resident who allegedly controls Marilyn

25 Monroe, LCC.

26    MHG first filed its complaint in the Central District of California on March 25, 2005. The

27 de Dienes plaintiffs filed on April 5, 2005, and TKS followed two days later on April 7, 2005.

28

1   Prior to the initiation of these actions, both CMG and Marilyn Monroe, LLC sued plaintiffs in

2   the Southern District of Indiana.  They filed a complaint against MHG on March 22, 2005;

3   against Shirley de Dienes and the Estate of Andre de Dienes on March 23, 2005; and against TKS

4   on March 27, 2005.  Because their Indiana actions were filed before the California cases,

5   defendants have moved to dismiss, stay or transfer the California actions under the first-to-file

6   rule.

## I. FACTUAL BACKGROUND

### A.   The Milton H. Greene Archives, Inc. Action

Milton H. Greene Archives, Inc. is an Oregon corporation formed to commercialize photographs taken by Milton H. Greene.[1]  Greene was allegedly one of the foremost photographers of his time, known for his portraits of such celebrities as Frank Sinatra, Grace Kelly, Sammy Davis Jr., Elizabeth Taylor, and Paul Newman.[2]  Greene died in 1985, leaving the copyrights in his photographs to his sons, Joshua and Anthony Greene.[3]  The complaint alleges that MHG, which is operated by Joshua Greene, is now the sole copyright owner, and source for all limited edition and vintage prints of photographs that were taken and owned by Milton H. Greene.[4]

MHG owns and controls copyrights in what is likely the largest single collection of Marilyn Monroe photographs; all were taken by Greene.[5]  Greene met Monroe while on assignment for *Look* magazine, and the two allegedly became close friends.[6]  Greene and Monroe ultimately formed their own film production company, which produced the movies *Bus Stop* and

---

[1]MHG Complaint, ¶ 18.

[2]*Id.*, ¶ 12.

[3]*Id.*, ¶ 17.

[4]*Id.*

[5]*Id.*, ¶ 18.

[6]*Id.*, ¶ 13.

*The Prince and the Showgirl.*[7]  Monroe lived with Greene and his family in their Connecticut farmhouse prior to her marriage to playwright Arthur Miller.[8]  During the course of a personal and business relationship that lasted more than ten years, Greene was allegedly able to photograph Monroe more than any other person.[9]

MHG alleges that Marilyn Monroe, LLC claims to be the exclusive owner of Monroe's posthumous rights of personality, publicity and association, and that CMG acts as its exclusive representative.[10]  In the past, MHG allegedly referred all third parties seeking to license any of MHG's images of Monroe for commercial purposes to CMG in order to "clear the use."[11]  More recently, however, defendants have allegedly refused to grant licenses for the use of Monroe's image, and have purportedly advised third parties that they would not issue licenses for photographs taken by Greene.[12]  Instead, defendants have allegedly told third parties that they would only issue licenses for photographs to which they control the rights.[13]

MHG asserts that defendants do not possess any rights to Marilyn Monroe's name or likeness because Monroe was a domiciliary of New York when she died in 1962, and New York does not recognize a posthumous right of publicity.[14]  It contends defendants have falsely represented that they are the exclusive holder of Monroe's right of publicity, and have forced third parties to obtain their permission before using Monroe's name and likeness through threats and

---

[7]*Id.,* ¶ 13.

[8]*Id.*

[9]*Id.*

[10]*Id.* ¶ 19.

[11]*Id.* ¶ 21.

[12]*Id.* ¶ 22.

[13]*Id.*

[14]*Id.* ¶ 23.

4

1  intimidation.[15]  Defendants have also allegedly used photographs taken by Greene on their web

2  sites without MHG's consent, and without compensating MHG for such use.[16]

3     Based on these facts, MHG pleads claims for copyright infringement, fraud, conversion,

4  common law unfair competition, unfair trade practices and false advertising in violation of

5  California Business and Professions Code §§ 17200 and 17500, and interference with actual and

6  prospective economic advantage.  MHG also seeks a declaratory judgment that defendants own

7  no rights of publicity, association, sponsorship, and/or endorsement in the name and likeness of

8  Marilyn Monroe, as well as the imposition of constructive trust pursuant to California Civil Code

9  § 2224.  In the Indiana action, CMG and Marilyn Monroe, LLC seek a declaration that they own

10  the rights to Monroe's name, image, persona and likeness, and that MHG does not possess a valid

11  and enforceable copyright in one or more of the Monroe photographs.[17]

12     **B.    The Tom Kelley Studios, Inc. Action**

13     Tom Kelley Studios is a California corporation with its principal place of business in

14  Ventura.  The company was formed by photographer Tom Kelley, Sr. in 1957.[18]  During the

15  1940s and 1950s, Kelley photographed many famous actors and actresses, including Gary Cooper,

16  Greta Garbo, Clark Gable, Joan Crawford and Marilyn Monroe.[19]  Kelley first met Monroe in

17  1948 after witnessing a minor car accident in which she was involved.[20]  Kelley gave Monroe his

18  card and money for cab fare; following the chance encounter, Monroe posed for a 1949 pinup

19  calendar photographed by Kelley.[21]  Monroe, who posed for other images taken by Kelley,

20

---

21     [15]*Id.* ¶ 26.

22     [16]*Id.*, ¶ 28.

23     [17]Defendants' Request to Take Judicial Notice, Exh. A.

24     [18]TKS Complaint, ¶¶ 3, 15.

25     [19]*Id.*, ¶ 12.

26     [20]*Id.*, ¶ 13.

27     [21]*Id.*

28

5

1    allegedly executed three model releases for the photographs.[22]

2    The "Red Velvet" series, as the photographs came to be known, sold millions of calendars

3    worldwide, and also produced a photograph of Monroe that became the first centerfold in *Playboy*

4    magazine.    When Kelley formed TKS, he assigned his copyrights in the photographs to the

5    corporation, which he continued to operate until his death in 1984.[23]   TKS is now operated by

6    Tom Kelley, Jr.; it works to preserve and enhance the legacy of, and to commercialize, the

7    photographs taken by Kelley, including the Red Velvet series of Marilyn Monroe.[24]

8    Like MHG, TKS alleges that defendants possess no rights in Marilyn Monroe's name or

9    image because she was domiciled in New York at the time of her death.[25]   It further alleges that

10   defendants have falsely and unfairly claimed that TKS has no right to license the commercial use

11   of its Monroe photographs, and that they have threatened and intimidated third parties to force

12   them to obtain defendants' permission before using Monroe's name or likeness.[26]   TKS asserts

13   claim for false designation of origin and false advertising in violation of the Lanham Act, common

14   law unfair competition, unfair trade practices and false advertising in violation of California

15   Business & Professions Code §§ 17200 and 17500, and interference with actual and prospective

16   economic advantage.    TKS also seeks a declaratory judgment that defendants own no rights of

17   publicity, association, sponsorship, and/or endorsement in the name and likeness of Marilyn

18   Monroe, and imposition of a constructive trust pursuant to California Civil Code § 2224.

19   In their competing Indiana action, CMG and Marilyn Monroe, LLC plead claims for

20   violation of rights of publicity, violation of the Lanham Act, unfair competition; trade

21   libel/disparagement, violation of the Indiana Crime Victims Act, and interference with actual and

22

23   _____

24   [22]*Id.*

25   [23]*Id.*, ¶ 15.

26   [24]*Id.*, ¶ 16.

27   [25]*Id.*, ¶ 19.

28   [26]*Id.*, ¶ 26.

1  prospective business advantage.  They also seek a declaration that defendants do not possess a

2  valid and enforceable copyright in one or more of the photographs of Monroe taken by Kelley.[27]

3          **C.**     **The Shirley de Dienes And Onewest Publishing, Inc. Action**

4        Shirley de Dienes is a California resident and widow of photographer Andre de Dienes.[28]

5  Mr. de Dienes died in 1985.[29]  During his lifetime, he allegedly took numerous photographs of

6  various motion picture stars, including Marilyn Monroe.[30]  Most of Mr. de Dienes' photographs,

7  for which Monroe allegedly signed a release, were never published and remain unpublished to this

8  day.[31]  On or about December 6, 2003, Ms. de Dienes entered into an exclusive license agreement

9  with Onewest Publishing, Inc., a California corporation, for the purpose of commercially

10  exploiting de Dienes' photographs, including those of Monroe.[32]  Between 1993 and 2003, Ms.

11  de Dienes allegedly filed copyright registrations for more than 600 photographs of Monroe.[33]

12        The de Dienes plaintiffs allege that defendants CMG and Marilyn Monroe, LLC have

13  asserted that no one can use an image of Monroe without first obtaining their consent.[34]  They also

14  allege that CMG has displayed one or more of de Dienes' Monroe photographs on its website

15  without obtaining Ms. de Dienes' permission.[35]  CMG has allegedly sent correspondence to third

16  parties with whom Ms. de Dienes and Onewest have entered into licensing agreements,

17  threatening legal action if the third parties do not first secure a license from CMG to use

18  _____

19    [27]Defendants' Request to Take Judicial Notice, Exh. C.

20    [28]de Dienes Complaint, ¶ 1.

21    [29]*Id.*, ¶ 8.

22    [30]*Id.*

23    [31]*Id.*, ¶¶ 8-9.

24    [32]*Id.*, ¶ 10.

25    [33]*Id.*, ¶¶ 11-16.

26    [34]*Id.*, ¶ 23.

27    [35]*Id.*, ¶ 24.

28

1   Monroe's image.[36]

2       Like MHG and TKS, the de Dienes plaintiffs allege that defendants do not own or possess

3   any rights of publicity in the name or likeness of Marilyn Monroe because she was domiciled in

4   New York at the time of her death.[37] As a consequence, they assert, defendants cannot restrict

5   their right to license and sell the photographs of Monroe that are owned by Ms. de Dienes.[38] The

6   de Dienes plaintiffs allege that defendants have dissuaded third parties from entering into business

7   relationships with the de Dienes plaintiffs by filing, or threatening to file, lawsuits against the

8   third parties.[39]

9       The de Dienes plaintiffs seek a declaration that defendants own no rights of publicity,

10  association, sponsorship and/or endorsement in and to the name and likeness of Monroe.  They

11  also allege claims for copyright infringement, common law unfair competition, unfair trade

12  practices, false advertising, and interference with actual and prospective economic advantage.

13  In their Indiana action against the de Dienes plaintiffs, CMG and Marilyn LLC allege violation

14  of their rights of publicity, violation of the Indiana Crime Victims Act, unfair competition, trade

15  libel and disparagement, and interference with actual and prospective business advantage.  They

16  seek a declaratory judgment that the de Dienes plaintiffs do not own copyrights in one or more

17  of de Dienes' Monroe photographs.[40]

18

19                   **II. DISCUSSION**

20  **A.**    **Legal Standard Governing Application Of The First-To-File Rule**

21  Citing the first-to-file rule, defendants argue that the court should dismiss or stay the

22

23  _____

24  [36]*Id.,* ¶ 26.

25  [37]*Id.,* ¶ 27.

26  [38]*Id.,* ¶ 28.

27  [39]*Id.,* ¶ 29.

28  [40]Defendants' Request to Take Judicial Notice, Exh. B.

1   actions filed in this district.  Alternatively, defendants request that the court transfer the actions

2   to the Southern District of Indiana.  The first-to-file rule is a doctrine of federal comity "which

3   allows a district court to transfer, stay or dismiss an action when a similar complaint has already

4   been filed in another federal court." *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 623

5   (9th Cir. 1991).  "The doctrine is designed to avoid placing an unnecessary burden on the federal

6   judiciary, and to avoid the embarrassment of conflicting judgments." *Church of Scientology of*

7   *California v. United States Department of the Army*, 611 F.2d 738, 750 (9th Cir. 1979).  "[T]he

8   'first to file' rule normally serves the purpose of promoting efficiency well and should not be

9   disregarded lightly." *Id.*  Three factors should be considered in deciding whether to apply the

10  rule: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity

11  of the issues.  See *Alltrade, supra,* 946 F.3d at 625-26; *Guthy-Renker Fitness, L.L.C. v. Icon*

12  *Health & Fitness, Inc.,* 179 F.R.D. 264, 270 (C.D. Cal. 1998).

13      **B.      Applicability Of The First-To-File Rule To The Milton H. Greene Archives,**

14              **Inc. Action**

15      MHG does not dispute that CMG's Indiana action against it was filed first or that it

16  involves substantially similar parties and issues.  It advances, however, four arguments as to why

17  the first-to-file rule should not be applied to its case.

18      **1.      Priority Of Suit**

19      MHG contends first that CMG's service of its complaint was defective, and thus that the

20  Central District of California was the first court to acquire jurisdiction over the parties when

21  MHG served its complaint in this action on defendants.  As a result, MHG asserts, the California

22  action should receive priority under the first-to-file rule.  The Ninth Circuit considered this

23  argument in *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93 (9th Cir. 1982).  There,

24  plaintiff filed an action in the Central District of California, seeking a declaration that defendants'

25  patents were invalid and had not been infringed.  Defendants had filed a patent infringement

26  action in the Southern District of Florida three days earlier.  *Id.* at 94.  The district court granted

27  defendants' motion to dismiss under the first-to-file rule.  On appeal, plaintiff argued that

28  although the Florida action had been filed first, the first-to-file rule did not apply because it had

9

1    not been served with the Florida complaint until after the California action was filed. *Id.* at 96,

2    n. 3. The Ninth Circuit rejected this argument, noting that "[a] federal action is commenced by

3    the filing of the complaint, not by service of process. *Id.* (citing FED.R.CIV.P. 3). As a

4    consequence, the court instructed, "[i]t is . . . the filing of actions in coordinate jurisdictions that

5    invokes considerations of comity." *Id.*; see also *Williston Basin Interstate Pipeline Co. v.*

6    *Sheehan Pipe Line Const. Co.*, 316 F.Supp.2d 864, 867 (D.N.D. 2004) ("Most courts consider

7    the filing of an action to be the event that determines priority under the 'first-to-file' rule").

8    Here, even if CMG's service of its complaint was defective, it is undisputed that CMG filed in

9    Indiana before MHG filed this action. The Indiana action thus has priority under the first-to-file

10   rule.

11              **2.     Anticipatory Suit**

12              MHG next argues that the court should not apply first-to-file rule because CMG filed the

13   Indiana action in anticipation of MHG's suit in California. Courts have discretion to disregard

14   the first-to-file rule under certain circumstances, including situations where a plaintiff files an

15   action in bad faith, for purposes of forum shopping, or in anticipation of a lawsuit being filed

16   against it. See *Alltrade*, *supra*, 946 F.2d at 628; see also *British Telecommunications v.*

17   *McDonnell Douglas Corp.*, No. C-93-0677, 1993 WL 149860, * 2-3 (N.D. Cal. May 3, 1993)

18   (identifying bad faith, anticipatory suit, and forum shopping as three circumstances in which an

19   exception to the first-to-file rule may be warranted). "The exception for anticipatory suits is

20   founded on a concern that the plaintiff should not be deprived of its traditional choice of forum

21   because a defendant with notice of an impending suit files a declaratory relief action over the same

22   issue in another forum." *British Telecommunications*, *supra*, 1993 WL 149860 at * 2.

23   Anticipatory suits are disfavored because they are a form of forum-shopping. See *Mission Ins.*

24   *Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602, n. 3 (5th Cir. 1983). An anticipatory filing

25   does not mandate that a court disregard the "first-to-file" rule, however; rather, it is one factor

26   the court should consider in determining whether to apply the rule. *British Telecommunications*,

27   *supra*, 1993 WL 149860 at * 2.

28              On March 15, 2005, Joshua Greene sent Anna Strasberg a letter, the stated purpose of

1    which was to ensure that Strasberg was "fully aware and [had] authorized CMG to take the

2    aggressive, unreasonable and unfair position that [was] limit[ing] [MHG] Archives['] ability to

3    do business with its Monroe Collection.[41]  Copies of the letter were sent to Mark Roesler, CMG's

4    Chairman and Chief Executive Officer, Cris Piquinela, CMG's Vice President of Marketing and

5    Licensing, and Surjit Soni, MHG's counsel.[42]  Greene noted that if Strasberg had approved

6    various decisions by CMG regarding MHG's right to use images of Marilyn Monroe, he would

7    have no alternative but to "take action" against Strasberg, CMG and Monroe's estate:

8        "[CMG] claim[s] that you are aware of these decisions and that you are the final

9        word.

10

11        I need to inform you that if that is true it leaves me no alternative with my back

12        against the wall and the inability to use the content we represent [except] to take

13        action against CMG yourself and the E[s]tate. . . .

14

15        So be aware that we choose to move forward and celebrate the Milton and Marilyn

16        images fully with no reservation or need to seek permissions of any kind.  You

17        cannot prove to us that the Marilyn Monroe Estate is a legitimate entity that

18        controls the rights of privacy and publicity of Ms. Monroe and we both know it.

19

20        This is a last attempt to contact you directly after being warned by Ms. Piquinela

21    ――――――――――――――

22      [41]See Declaration of Mark Roesler ("Roesler Decl."), Exh. A.

23      [42]The letter bears facsimile transmission information indicating that it was faxed from the

24    "Lee Strasberg Residence" on March 21, 2005.  MHG argues that this shows CMG did not receive the letter until March 21, the day before it filed its complaint in the Southern District of

25    Indiana.  The Indiana complaint, however, alleges that MHG sent the letter to both Marilyn Monroe, LLC and CMG on March 15, 2004.  (See Defendant's Request to Take Judicial Notice,

26    Exh. A).  Putting aside the reference to 2004, which is presumably a typographical error, this

27    allegation is consistent with the fact that the letter reflects copies were sent to Roesler and Piquinela.  Absent evidence that this did not occur, the court presumes that the letter was sent to

28    CMG on March 15, 2005.

1    that you are fully aware of the decisions that [CMG] ha[s] been making and [after

2    [she] specifically requested that I not contact you.   The turn of events on the

3    Japanese deal is the final straw.

4

5    Mr. Roesler and Ms. Pinquinela have gone too far in extorting unreasonable money

6    from The Archives.  You have everything to lose and I have only to gain.

7

8    Please give this your most serious consideration.  I certainly have."[43]

9    MHG argues that the fact CMG and Marilyn Monroe LLC filed the Indiana action shortly

10   after receiving Greene's letter indicates that they "anticipated a lawsuit by [MHG] Archives and

11   rushed straight to the courthouse to file [their] declaratory relief action."[44]  The court cannot

12   agree.  In general, a suit is considered anticipatory if the plaintiff files suit "upon receipt of

13   specific, concrete indications that a suit by the defendant [is] imminent."  *Ward v. Follett Corp.*,

14   158 F.R.D. 645, 648 (N.D. Cal. 1994); see also *Z-Line Designs, Inc. v. Bell'O International*,

15   *LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003) (same); *Guthy-Renker Fitness*, *supra*, 179 F.R.D.

16   at 270 (same).  Here, however, the March 15 letter from MHG contained no specific, concrete

17   indication that a lawsuit was imminent.  It is true that the letter stated that MHG would "take

18   action" against Strasberg, CMG and Marilyn Monroe, LLC.  Assuming the reference to "taking

19   action" can be interpreted as a threat of litigation, the letter gave no indication that suit was

20   imminent, or that MHG "was doing anything more than blowing smoke about a potential

21   lawsuit." *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1007 (8th Cir.

22   1993).  Courts have held that such general or vague threats of litigation are insufficient to show

23   that a lawsuit is imminent.  See *Bryant v. Oxxford Express, Inc.*, 181 F.Supp.2d 1045, 1048

24   (C.D. Cal. 2000) (holding that a marketer's letter to professional basketball player Kobe Byrant

25

26   _____

     [43]*Id.*

27
     [44]Plaintiff MHG Archives' Opposition to Defendants' Motion to Dismiss ("MHG Opp.")
28   at 8.

1  stating that it would "declare a breach" and "seek indemnification" if Bryant did not honor a

2  license agreement gave no indication that a lawsuit was imminent); *Guthy-Renker Fitness, supra*,

3  179 F.R.D. at 271 (holding that a letter from a patent holder's attorney to a competitor, which

4  gave notice of potential patent infringement, and detailed the patent holder's substantial patent

5  litigation experience, constituted a "veiled threat[ ] of legal action" that did not warrant

6  disregarding the first-to-file rule); see also *Royal Queentex Enterprises v. Sara Lee Corp.*, No.

7  C-99-4787, 2000 WL 246599, * 5 (N.D. Cal. Mar. 1, 2000) (holding that a letter from a

8  trademark owner stating that it would forego legal action only if it received prompt written

9  assurance from the alleged infringer that it would discontinue its use of the trademark "constituted

10 [a] specific, concrete indication[ ] of a legal dispute, but not [a] specific, concrete indication[ ]

11 that suit was imminent").

12    Moreover, Mark Roesler states that CMG began preparing to file a lawsuit against MHG

13 in the Southern District of Indiana prior to its receipt of the March 15 letter from Joshua Green.

14 He contends that CMG concluded a "couple of months ago" that it "would need to . . .

15 resolve[ ]" the parties' dispute regarding the scope of CMG's and Marilyn Monroe, LLC's

16 intellectual property rights in the name, image, persona and likeness of Marilyn Monroe "in the

17 court in Indiana."[45]  The fact CMG and Marilyn Monroe LLC filed three actions against different

18 defendants within days of suing MHG strengthens the conclusion that their suit against MHG was

19 not filed solely to win a race to the courthouse.[46]

20

21    [45]Roesler Decl., ¶ 5. MHG objects to this portion of Roesler's declaration on the ground

22 that it is irrelevant. The objection is overruled. Whether CMG was planning to file a lawsuit in
    the Southern District of Indiana prior to receiving the March 15 letter is clearly relevant in

23 assessing whether the suit was anticipatory. MHG's further assertion that Roesler's claim is

24 "plainly fabricated" is without evidentiary support, and the court declines to consider it as a
    result.

25

26    [46]In addition to the complaints filed against MHG, TKS and Shirely de Dienes, CMG and
    Marilyn Monroe, LLC also filed a fourth action against Bradford Licensing Associates, The Shaw

27 Family Archives, Ltd. and James E. Dougherty on March 23, 2005. (See Defendants' Request
    To Take Judicial Notice, Exh. D). On April 19, 2005, the Shaw Family Archives, Ltd., Edith

28 Marcus and Meta Stevens filed a complaint against CMG and Marilyn Monroe, LLC in the

1    In sum, there is insufficient evidence that CMG and Marilyn Monroe, LLC filed the

2  Indiana action in response to Greene's March 15, 2005 letter.  The anticipatory suit exception

3  therefore does not preclude application of the first-to-file rule.

4         **3.    Forum Shopping**

5    MHG next argues that the first-to-file rule should not be applied because CMG's and

6  Marilyn Monroe, LLC's decision to file suit in Indiana – the state in which CMG is incorporated

7  and headquartered – constitutes forum shopping.  See *Alltrade, supra,* 946 F.2d at 628 (stating

8  that an exception to the first-to-file rule will typically be made when a party engaged in forum

9  shopping).  Specifically, MHG argues that, "rather than locat[ing] its principal offices in the

10  centers of media and entertainment industry such as New York or Los Angeles, [CMG] . . . chose

11  Indianapolis, Indiana, in order to maximize the chances of applying the more favorable Indiana

12  law."[47]  In support, MHG cites the fact that CMG's CEO, Mark Roesler, is an attorney who was

13  purportedly the author of Indiana's right of publicity statute.  MHG contends the statute is the

14  "most liberal and favorable to the estates of the deceased" of those enacted in the various states.[48]

15    The court does not agree that CMG's decision to file suit in the Southern District of

16  Indiana constitutes forum shopping.  CMG incorporated in Indiana in 1988.  It maintains its

17  headquarters in Indianapolis, with offices in Los Angeles and Rio de Janeiro.[49]  CMG represents

18

19  _____

20  Southern District of New York, which purportedly asserts the same claims as those involved in
    the Indiana action.  Defendants represent that they are moving to have the New York action

21  dismissed, stayed, or transferred to Indiana.  (See Declaration of Douglas B. Miner In Support
    Of Defendants' Reply, ¶ 2).

22

23    [47]MHG Opp. at 11.

24    [48]*Id.* at 11-12.  MHG bases this assertion on CMG's website, which states that Indiana's
    right of publicity statute is "the most progressive and celebrity friendly worldwide."  (See

25  Declaration of Surjit P. Soni in Support of Plaintiff's Opposition to Motion to Dismiss, Transfer
    or Stay ("Soni Decl."), Exh. D).

26

27    [49]See Declaration of Jonathan Faber ("Faber Decl.), ¶ 3; Soni Decl., Exh. D.  CMG
    originally incorporated as Curtis Management Group on April 5, 1988.  It changed its name to

28  CMG Worldwide Inc. in 1995.  (Faber Decl., ¶ 3.)

1   that it incorporated in Indiana because Roesler, its sole shareholder, resides in the state.[50] Roesler

2   appears to have significant ties to Indiana. The website printout submitted by MHG indicates that

3   Roesler earned a bachelor's degree from DePauw University in Greencastle, Indiana, and a joint

4   J.D./M.B.A. from Indiana University School of Law and Graduate School of Business in

5   Bloomington, Indiana in 1981.[51] Although CMG's website represents that Roesler was a driving

6   force behind the adoption of the Indiana Rights of Publicity Act (see IND. CODE §§ 32-36-1-1 et

7   seq. (2005), previously codified at IND. CODE §§ 32-13-1 et seq.), the statute was not adopted

8   until 2002, long after CMG established its business headquarters there. MHG's argument that

9   CMG's filing in the Southern District of Indiana constitutes forum shopping is thus without merit.

10          **4.   Personal Jurisdiction**

11          MHG argues finally that the first-to-file rule should not be applied because it is not subject

12   to personal jurisdiction in Indiana. Defendants counter that the court in the Southern District of

13   Indiana should determine whether it may properly exercise personal jurisdiction over MHG. The

14   court agrees. MHG's motion to dismiss for lack of personal jurisdiction, or alternatively, to

15   transfer the action to the Central District of California, is presently before the court in the

16   Southern District of Indiana.[52] As Judge Patel concluded in *British Telecommications*, "it would

17   be presumptuous for this court to decline to apply the first-to-file rule when the court whose

18   jurisdiction is being challenged has not had an opportunity to fully consider the issue." *British*

19   *Telecommunications*, *supra*, 1993 WL 149860 at * 4; see *Alibaba.com, Inc. v. Litecubes, Inc.*,

20   No. C03-5574, 2004 WL 443712, * 3 (N.D. Cal. Mar. 8, 2004) (invoking the first-to-file rule,

21   and granting defendant's motion to stay a second-filed action in the Northern District of

22   California, where plaintiff's motion to dismiss for lack of personal jurisdiction was before the

23   court in the first-filed action in the Eastern District of Missouri); *Ed Tobergte Associates, Inc. v.*

---

25          [50]Faber Decl., ¶ 4.

26          [51]Soni. Decl, Exh. D.

27          [52]MHG's Request for Judicial Notice in Opposition to Defendants' Motion to Dismiss,

28   Transfer or Stay, Exh. A.

1    *Zide Sport Shop of Ohio, Inc.*, 83 F.Supp.2d 1197, 1199 (D. Kan. 1999) (stating that under the

2    first-to-file rule, judicial economy requires that the court in the first filed action determine

3    jurisdictional issues). Accordingly, the court will defer to the court hearing the Indiana action

4    whether it may properly exercise personal jurisdiction over MHG.

5                   **5.     Whether A Dismissal Or A Stay Is Appropriate**

6           Having determined that the first-to-file rule is applicable, the court must next decide

7    whether a dismissal or stay is appropriate. While, as noted, it defers to the court in the Southern

8    District of Indiana whether it may exercise personal jurisdiction over MHG, uncertainty regarding

9    the jurisdictional issue indicates that the court should stay this action rather than dismiss it. See

10   *Alltrade*, *supra*, 946 F.2d at 622 ("where the first filed action presents a likelihood of dismissal,

11   the second-filed suit should be stayed, rather than dismissed"); *British Telecommunications*,

12   *supra*, 1993 WL 149860 at * 5 ("Because some uncertainty exists as to the ultimate outcome of

13   these [jurisdictional] issues in the Missouri action, a dismissal of this action would be

14   inappropriate. Instead the more prudent course is to STAY this suit pending further action by the

15   Eastern District of Missouri"). The court will therefore stay the action pending the outcome of

16   MHG's challenge to jurisdiction in the Indiana action. Should the court in the Southern District

17   of Indiana determine that it lacks jurisdiction to hear the matter or that venue is appropriate in the

18   Central District of California, the court will lift the stay and proceed with the action.

19          **C.     Applicability Of The First-To-File Rule To The Tom Kelley Studios, Inc.**

20                 **Action**

21                   **1.     Priority Of Suit And Personal Jurisdiction**

22          In its opposition to defendants' motion dismiss, stay, or transfer, TKS makes many of the

23   same arguments advanced by MHG. Specifically, it asserts that, for purposes of the first-to-file

24   rule, the Central District of California was the first court to acquire jurisdiction, and that CMG's

25   filing in Indiana constitutes blatant forum shopping.[53] For the reasons earlier stated, the court

26   rejects these arguments. TKS also contends that it is not subject to personal jurisdiction in

27   _____

28          [53]Both MHG Archives and TKS are represented by the Soni Law Firm.

                                        16

1    Indiana.  Like MHG, however, TKS has filed a motion to dismiss the Indiana action for lack of

2    personal jurisdiction, or alternatively, to transfer the action to the Central District of California.[54]

3    Accordingly, TKS' argument in this regard is best addressed by the court in the Southern District

4    of Indiana.

###    2.    Similarity of Parties And Issues

6        TKS next argues that the first-to-file rule should not be applied because the parties and

7    issues in the California and Indiana actions are not similar.  Relying on the Ninth Circuit's

8    decision in *Alltrade, supra,* 946 F.2d 946, TKS asserts that the first-to-file rule does not apply

9    unless the parties and the issues are the same.  TKS' reliance on *Alltrade* is misplaced.

10   Notwithstanding the court's statement that "if the issues or parties involved in the two suits [are]

11   not the same, adherence to the first-to-file rule would be reversible error" (*id.* at 628, n. 13),

12   *Alltrade* does not stand for the proposition that the issues and parties in two cases must be

13   identical.  To the contrary, in *Alltrade,* the Ninth Circuit held that the district court did not abuse

14   its discretion by applying the first-to-file rule even though the claims asserted in the two actions

15   were not identical and the first-filed action included a defendant who was not named in the second

16   action. *Id.* at 624, n. 3; see *British Telecommunications, supra,* 1993 WL 149860 at * 4 (holding

17   that *Alltrade* "does not stand for the blanket rule that there must be strict identity of parties for

18   the first-to-file rule to apply").

19       Indeed, courts have recognized that the first-to-file rule does not require identical issues

20   or parties so long as the actions are substantially similar or involve substantial overlap. *Save*

21   *Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) ("Syntek argues that the

22   'first-to-file' rule does not apply in this case because neither the issues nor the parties are identical

23   to those in the Original Action.  The rule does not, however, require that cases be identical.  The

24   crucial inquiry is one of 'substantial overlap'"); *Walker v. Progressive Casualty Ins. Co.*, No.

25   C03-656R, 2003 WL 21056704, * 2 (W.D. Wash. May 9, 2003) ("Exact parallelism between the

---

27       [54]TKS Plaintiffs' Request for Judicial Notice in Opposition to Defendants' Motion to

28   Dismiss, Transfer or Stay, Exh. G.

1    two actions need not exist; it is enough if the parties and issues in the two actions are

2    'substantially similar,'" quoting *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989));

3    *Centocor, Inc. v. MedImmune, Inc.*, No. C 02-03252, 2002 WL 31465299 (N.D. Cal. Oct. 22,

4    2002) ("The first-to-file rule does not require identical issues or parties "so long as the actions

5    involve closely related questions or common subject matter"); *Ed Tobergte Associates*, *supra*, 83

6    F.Supp.2d at 1198 ("The principle underlying the [first-to-file] rule is to avoid duplicative

7    litigation, but it is not a hard and fast rule.  Substantial similarity in the parties and issues is

8    sufficient to invoke application of the rule" (internal citation omitted)); *Excel Music, Inc. v.*

9    *Simone*, No. 95-3626, 1996 WL 5708, * 5 (E.D. La. Jan. 5, 1996) ("The issues need not be

10   identical to allow one court to decide the action, but there must be 'substantial overlap between

11   the two suits'"); *Ward*, *supra*, 158 F.R.D. at 649 ("While Follet's original and amended

12   complaints do not assert identical grounds for Follett's denial of royalty payments, that fact does

13   not destroy the ultimate similarity between the Illinois action and the California action"); *Texas*

14   *Instruments Inc. v. Micron Semiconductor, Inc.*, 815 F.Supp. 994, 997 (E.D. Tex. 1993) ("As

15   to the first inquiry, all that need be present [for the first-to-file rule to apply] is that the two

16   actions involve closely related questions or common subject matter, or that the core issues

17   substantially overlap.  The cases need not be identical to be duplicative").

18        Here, the parties to the two actions are substantially similar.  TKS, CMG and Marilyn

19   Monroe, LLC are parties to both the California and Indiana actions.  Although Anna Strasberg

20   is not named in the Indiana action, TKS sued Strasberg in her individual capacity as a

21   representative of Marilyn Monroe, LLC, which is a party in Indiana.  See *Centocor, Inc.*, *supra*,

22   2002 WL 31465299 at * 4 (dismissing a second-filed action even though two defendants were not

23   parties to the first-filed action).  Accordingly, Strasberg's failure to join the Indiana action as a

24   plaintiff does not render the first-to-file rule inapplicable.

25        There is also substantial overlap of issues between the two actions.  While, as TKS argues,

26   the claims are not identical, the first-to-file rule does not require that exactly parallel causes of

27   action be alleged.  See *Pacesetter Systems*, *supra*, 678 F.2d at 95 (comparing the issues raised in

28   the two actions rather than the claims asserted).  Here, a review of the Indiana and California

complaints shows that the central question in both actions is whether defendants hold valid rights in the name and likeness of Marilyn Monroe, and whether TKS holds valid copyrights in Kelley's photographs of Monroe.   These issues are at the center of nearly all the claims.   The court therefore concludes that the first-to-file rule is applicable.

### 3.   Whether A Dismissal Or A Stay Is Appropriate

Like MHG, TKS has asserted that it is not subject to personal jurisdiction in Indiana. Because it is uncertain whether the Indiana court will ultimately find that it may exercise personal jurisdiction over TKS, the court finds that it should stay, rather than dismiss, this action.   See *Alltrade, supra*, 946 F.2d at 622; *British Telecommunications, supra*, 1993 WL 149860 at * 5.

### D.   Applicability Of The First-To-File Rule To The Shirley de Dienes And Onewest Publishing, Inc. Action

### 1.   Similarity Of Parties And Issues

Like TKS, the de Dienes plaintiffs argue that the first-to-file rule should not be applied because the parties and claims in the two actions are not identical.   Specifically, they note that the Indiana complaint names the Estate of Andre de Dienes as a defendant, and that it is not a party to this action.   They also note that Onewest Publishing, Inc. is a plaintiff in the California action, while Strasberg is a defendant.   Neither is a party to the Indiana action.

As noted, the first-to-file rule does not require identical issues or parties so long as the actions are substantially similar or involve substantial overlap.   *Save Power Ltd.*, *supra*, 121 F.3d at 950.   Given Shirley de Dienes' representation that the Estate of Andre de Dienes was closed in 1987, the claim against it in the Indiana action may well be dismissed.[55]   Moreover, although Strasberg is not a named in the Indiana action, the de Dienes plaintiffs sued her individually in this action as a representative of Marilyn Monroe, LLC, which is a party to the Indiana case. Onewest has a direct relationship with Shirley de Dienes, in that she has licensed it exclusively to exploit her late husband's Monroe photographs; Onewest's rights, therefore, are equivalent to

---

[55]Declaration of Shirley de Dienes in Opposition to Motion to Dismiss under the First-to-file Doctrine ("de Dienes Decl."), ¶ 9.

19

1   de Dienes.'[56]  Accordingly, for purposes of the first-to-file rule, the parties in the Indiana and

2   California actions are substantially similar.

3           The de Dienes plaintiffs also argue that the issues presented in the Indiana and California

4   actions are not the same, and offer a claim-by-claim comparison of the causes of action asserted

5   in the two cases.  A review of the respective complaints, however, indicates that the central issues

6   in both actions are the validity of de Dienes' copyrights in the Monroe photographs and whether

7   CMG and Marilyn Monroe, LLC own rights of publicity, association or sponsorship in Monroe's

8   name and likeness.

9           The de Dienes plaintiffs' arguments to the contrary are unavailing.  First, they assert that

10  the Indiana action makes no mention of Monroe's posthumous right of publicity.  The court agrees

11  with defendants, however, that the Indiana action necessarily concerns Monroe's posthumous right

12  of publicity, as it is undisputed that Monroe has been deceased for more than forty years.  The

13  de Dienes plaintiffs next contend that the California action deals not only with publicity rights,

14  but also "rights of association and sponsorship, privacy rights and the use of the name and persona

15  of Monroe."  This argument ignores the fact that the right of publicity necessarily encompasses

16  the rights of sponsorship, privacy and association.  See, e.g., *DeClemente v. Columbia Pictures*

17  *Industries, Inc.*, 860 F.Supp. 30, 52 (E.D.N.Y. 1994) (stating that a New York statute that

18  permits a person whose "name, portrait or picture" has been used for advertising or trade

19  purposes without their consent to sue "not only encompasses a right to privacy which minimizes

20  the intrusion or publication of damaging material to a person by use of their name or picture, but

21  also encompasses a right to publicity, which protects the proprietary nature of the persons public

22  personality"); *Winterland Concessions Co. v. Sileo*, 528 F.Supp. 1201, 1213 (N.D. Ill. 1981)

23  ("One of the species of the right of privacy recognized by the cases and the commentators is the

24  right of publicity.  Violation of this right constitutes the tort of appropriation of a plaintiff's name

25  or likeness for defendant's benefit.  In the context of this case, the right of publicity encompasses

26  the right of each of the plaintiff entertainers and musical groups to have the sole right to

27

28      [56]*Id.*, ¶ 24.

                                        20

1   commercially exploit their name and likeness").

2       For all of these reasons, the court finds that the issues and parties in the California and

3   Indiana actions involving the de Dienes plaintiffs are substantially similar, and that the first-to-file

4   rule applies as a consequence.

5           **2.    Priority Of Suit And Personal Jurisdiction**

6       Like MHG and TKS, the de Dienes plaintiffs assert that the first-to-file rule does not apply

7   because the Central District of California was the first court to acquire jurisdiction over the

8   parties, and because the de Dienes parties are not subject to personal jurisdiction in Indiana. As

9   noted earlier, priority for purposes of the first-to-file rule is determined on the basis of the date

10  an action was filed, not the date when service of process was effected. Moreover, although there

11  is no indication that Shirley de Dienes has filed a motion to dismiss challenging personal

12  jurisdiction in Indiana, based on her arguments in this court, she will presumably do so in the near

13  future. In any event, this court must defer to the court in the Southern District of Indiana, whose

14  jurisdiction is being challenged, and afford it an opportunity to consider the issue. See *British*

15  *Telecommunications, supra*, 1993 WL 149860 at * 4.

16          **3.    Anticipatory Suit**

17      The de Dienes plaintiffs next argue that CMG filed the Indiana action in anticipation that

18  they would commence suit in California. On January 11, 2005, de Dienes' counsel, Andrew

19  Stern, sent CMG a letter in which he threatened to take legal action if CMG took further steps to

20  restrict de Dienes' right to exploit her late husband's Marilyn Monroe photographs.[57] Stern

21  wrote:

22          "[I]f CMG takes or attempts to take any further action [in] seeking to restrict the

23          de Dienes Estate's right to exploitation of photographs of Ms. Monroe, taken by

24          Mr. De Dienes, this office has been instructed to proceed with the appropriate legal

25          action to enjoin any such actions and have a court of competent jurisdiction

26          determine, once and for all, the limitations of CMG's rights concerning

27  _____

28      [57]*Id.*, Exh. E.

21

1    photographs of Marilyn Monroe taken by photographers with the permission of Ms.

2    Monroe, and to seek financial recovery for such interference."[58]

3    Like Greene's March 15 letter, Stern's January 11 letter did not communicate in a specific,

4    concrete way that litigation was imminent.    It merely stated that Ms. de Dienes would take

5    appropriate legal action if CMG interfered with her right to exploit the Monroe photographs in

6    the future. This does not adequately communicate that a lawsuit is imminent. See *Bryant, supra,*

7    181 F.Supp.2d at 1048; *Guthy-Renker Fitness, supra,* 179 F.R.D. at 271. Moreover, the fact that

8    CMG and Marilyn Monroe, LLC did not file the complaint in the Indiana action until March 28,

9    2005, more than two and one-half months after Stern's letter, weighs against any finding that suit

10    was anticipatory. Accordingly, the anticipatory suit exception does not preclude application of

11    the first-to-file rule.[59]

### 4.    Whether A Dismissal Or A Stay Is Appropriate

13    Like MHG and TKS, Shirley de Dienes argues that she is not subject to personal

14    jurisdiction in Indiana. Because arguments regarding the jurisdiction of the Indiana court must

15    be addressed to it in the first instance, and because it appears such a challenge will be made, the

16    court will stay this action rather than dismiss it. See *Alltrade, supra,* 946 F.2d at 622; *British*

17    *Telecommunications, supra,* 1993 WL 149860 at * 4.

## III. CONCLUSION

20    For the foregoing reasons, defendants' motions to stay the actions pending the outcome of

21    competing cases in the Southern District of Indiana are granted. Defendants' motions to dismiss

22    the actions are denied. Defendants' motions to transfer the actions to the Southern District of

23    Indiana pursuant to the first-to-file rule are denied as moot. The parties are directed to advise the

---

25    [58]*Id.,* Exh. E at 2.

26    [59]The de Dienes plaintiffs also appear to argue that CMG and Marilyn Monroe, LLC
27    waived whatever rights they have to control de Dienes' use of her late husband's Monroe
      photographs by failing to object to the de Dienes plaintiffs' use of the photographs. However
28    meritorious this argument may be, it has no bearing on application of the first-to-file rule.

1  court within ten days of any ruling by the court in the Southern District of Indiana on motions

2  raising personal jurisdiction or venue objections to the cases proceeding in that forum.[60]

3

4  DATED: May 16, 2005                          _____

5                                               MARGARET M. MORROW
                                                 UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  _____

27      [60]Once the court in the Southern District of Indiana rules on the issues of personal
    jurisdiction and venue, the parties may file any motions to transfer under 28 U.S.C. § 1404(a) that
28  are appropriate.