**EXHIBIT A**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| CMG WORLDWIDE, INC., an Indiana Corporation and MARILYN MONROE, LLC, a Delaware Limited Liability Company, | ) )  ) ) |
| Plaintiffs, | ) ) |
| v | ) Cause No.:1:05-cv-0423-DFH-WTL ) |
| | ) |
| BRADFORD LICENSING ASSOCIATES, THE SHAW FAMILY ARCHIVES, Ltd., a New York Corporation, JAMES E. DOUGHERTY, and VALHALLA PRODUCTIONS, LLC, a Maine Limited Liability Company, | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

### SECOND AMENDED COMPLAINT

Plaintiffs CMG Worldwide, Inc. ("CMG"), and Marilyn Monroe, LLC, by counsel, and

for their Complaint for Damages and Injunctive Relief allege as follows:

1. Plaintiff CMG is a corporation organized and existing pursuant to the laws of the

State of Indiana, maintaining its principal place of business in Hamilton County, Indiana

2. Plaintiff Marilyn Monroe, LLC, is a business entity organized and existing

pursuant to the laws of the State of Delaware, maintaining its principal place of business in

Indiana through CMG, its exclusive licensing and business representative.

3. Over the last twenty-five years, CMG has been in the business of representing

certain famous individuals or the heirs, families, estates or business enterprises of deceased

famous individuals ("CMG Clients") for the purpose of licensing to third parties the limited

permission to commercially utilize the Intellectual Property rights belonging to said famous

907771_1



individuals or his or her heirs, families, estate, or business enterprise. These Intellectual Property

rights, both common law and statutory, typically include, but are not limited to, the name, image,

likeness, voice, persona, and other identifying elements of a famous individual, commonly

known as the Right of Publicity, as well as all common law and Federally registered trademarks

and other Intellectual Property interests which may be associated with the persona of a famous

personality

      4.    CMG has secured the right to manage and exploit the Intellectual Property

interests of many of the properties and personalities considered to be among the most prestigious

and valuable in the celebrity licensing industry, including, but not limited to, Marilyn Monroe,

James Dean, Sophia Loren, Babe Ruth, Jackie Robinson, Buddy Holly, Ella Fitzgerald, Chuck

Berry, and many others   As part of its enumerated duties on behalf of its clients, CMG

advertises, markets, and promotes the availability of its clients for licensing on a worldwide

basis.

      5    CMG typically requires, as a material component to providing these services for

its clients, that its clients grant CMG the exclusive, worldwide right to protect and promote a

given client for purposes of licensing, commercial campaigns, and other opportunities  Because

of this prerequisite, there can be no entity other than CMG with the authority to represent in a

licensing context the Intellectual Property rights of a CMG client

      6.    Through CMG's efforts to manage and exploit the intellectual property rights of

its clients, CMG generates income for its clients and operating revenue for itself. CMG has

various methods for promoting and pursuing commercial opportunities on behalf of its clients,

which have been developed, honed, stylized, and refined by experience and success in the

industry  As such, CMG, as well as its clients, have developed considerable goodwill within the

907771_1

industry with companies such as leading advertising agencies and manufacturers throughout the world with whom CMG conducts regular and ongoing business

7      Marilyn Monroe, LLC, is the proprietor of various Intellectual Property rights, including certain trademarks, copyrights, and the rights of association and sponsorship and Right of Publicity and Privacy in and to the Marilyn Monroe name, image, and persona (hereinafter "Monroe Intellectual Property Rights"). Marilyn Monroe, LLC, and CMG have systematically and continuously invested considerable time, energy, and financial resources over the span of many years in developing critical and lucrative business relationships with licensees through the strategic management of the Monroe Intellectual Property Rights.

8.     Upon information and belief, Defendant Bradford Licensing Associates ("Bradford") is a business entity organized and existing pursuant to the laws of the State of New Jersey

9      Upon information and belief, Defendant Shaw Family Archives, Ltd. ("Shaw"), is a business entity organized and existing pursuant to the laws of the State of New York

10      Upon information and belief, Defendant James E Dougherty is an individual and a citizen of the State of Maine.

11      Upon information and belief, Defendant Valhalla Productions, LLC, ("Valhalla") is a business entity organized and existing pursuant to the laws of the State of Maine.

12.     Upon information and belief, Shaw has within its possession certain original photographs of Marilyn Monroe taken by Sam Shaw (hereinafter "Monroe/Shaw photographs").

13.     Shaw, either directly or through its agents or representatives, is in the business of offering, marketing, and advertising to the public, on a worldwide basis, products and services featuring the Monroe Intellectual Property Rights.

907771_1

14    Even if a copyright interest in the Monroe/Shaw photographs can be established as valid and enforceable, such an interest does not confer an unfettered right to use an aspect of a person's personality rights of publicity in connection with a product, merchandise, goods, services, commercial activity, advertisement, and/or solicitation. I.C. § 32-36-1-1 *et seq.*

15    Shaw has engaged, and continues to engage, in unlawful and unauthorized use of the Monroe Intellectual Property Rights directly and through its various agents or representatives, including but not limited to Bradford and Valhalla.

16    Upon information and belief, Bradford's business and commercial endeavors include activities conducted on behalf of Shaw, Valhalla, and Dougherty.

17    Bradford is in the business of offering, marketing, and advertising to the public, on a worldwide basis, licensing services featuring various consumer brands and properties.

18    Upon information and belief, Bradford represents certain third parties, including Shaw and Dougherty, who allegedly own certain copyright interests in photographs of Marilyn Monroe, including the Monroe/Shaw photographs, and who, in connection with Valhalla, have produced an unauthorized film documentary of Marilyn Monroe entitled "Marilyn's Man."

19    Bradford has engaged, and continues to engage, in unlawful and unauthorized use of the Monroe Intellectual Property Rights. See Exhibit A.

20    Bradford owns and operates a website through which it communicates the false impression to the public that it has the full authority to license the use of the Monroe Intellectual Property Rights for commercial purposes. In addition, Bradford's website contains intentionally misleading and false demonstrations which directly undermine CMG's business and business methodology. See Exhibit B.

907771_1

4

21.    Upon information and belief, Bradford and Shaw have also engaged in communications with existing and potential business partners of Plaintiffs, advising those entities that Plaintiffs do not have enforceable rights and interests in the Monroe Intellectual Property Rights or otherwise informing third parties that they possess all of the rights necessary for use of the Monroe/Shaw photographs.

22.    Upon information and belief, Bradford and Shaw have intentionally solicited a number of existing licensees of Plaintiffs to enter into the unlawful and unauthorized use of the Monroe Intellectual Property Rights. In each case, upon information and belief Bradford, and/or Shaw falsely represented that they possess the authority to license the use of the Monroe Intellectual Property Rights and falsely represented that permission from Plaintiffs was an unnecessary burden to current and potential licensees. As such, Bradford's and Shaw's solicitations contain intentionally misleading and false representations which directly undermine Plaintiffs' commercial activities, well-established goodwill, and reputation in the celebrity licensing industry. These actions have caused confusion in the marketplace concerning Plaintiffs' legitimate rights.

23.    Upon information and belief, Bradford is contacting Plaintiffs' licensees and potential licensees and is making representations similar to the following:

> *The Jim Dougherty and Norma Jeane Limited Edition Collection* and *The Shaw Limited Edition Marilyn/Norma Jeane Collection* licensing programs provide licensees **with a world known brand that will feature merchandise drawn upon the beauty and timelessness of Marilyn.**

(emphasis added). In so doing, Bradford, Shaw, and Dougherty are not just attempting to capitalize on Shaw's alleged copyrights, but also to trade illegally and without authority on the Marilyn Monroe brand and on the Monroe Intellectual Property Rights.

24.    Upon information and belief, Bradford, individually and as agent for Shaw, Valhalla, and/or Dougherty, has been appearing at tradeshows at which it has prominently displayed Marilyn Monroe's name, identity, persona, and image without permission, consent, or license from Plaintiffs and which has generated press coverage concerning its ability to license the Monroe Intellectual Property Rights. As a result, Defendants have caused and are causing extensive confusion in the marketplace, are usurping valuable business opportunities belonging to Plaintiffs, and are further explicitly advising existing or potential business partners of Plaintiffs that a license from Plaintiffs is not required when those existing or potential business partners secure a license from one or more Defendants

25.    Defendants have been seeking out and securing various licensing arrangements concerning the Monroe Intellectual Property Rights on a systematic and extensive basis which directly implicates and undermines the rights of publicity owned and administered by Plaintiffs.

26    Upon information and belief, Valhalla and Bradford have and are currently contracting to manufacture, produce, market, advertise, and sell, both individually and in connection to and relationship with Bradford, Shaw, and/or others, products and services which use and infringe upon the Monroe Intellectual Property Rights without Plaintiffs' authorization or permission.

## JURISDICTION AND VENUE

27.    This Court has subject matter jurisdiction because this suit involves a federal question. 28 U.S.C. § 1331; 28 U.S.C. § 1338; 17 U.S.C. § 101 *et seq* The Defendants are also completely diverse and the amount in controversy exceeds $75,000 00 28 U.S.C. § 1332

28.    This Court has personal jurisdiction based on Defendants' systematic contacts with Indiana and through the various damages caused to Plaintiffs in Indiana as a result of

6

Defendants' conduct.  Defendants have conducted business in Indiana through catalogue solicitations to retail establishments and through the availability of their products in the State of Indiana. See Exhibit A  In conducting this business in Indiana, Defendants have caused injury by an act and series of acts performed in Indiana.  In addition, Defendants have caused injury in Indiana resulting from acts done outside of Indiana through Defendants' conducting and soliciting business in Indiana and by deriving substantial benefit from goods, services, and information rendered in Indiana, including transporting or causing to be transported into Indiana goods, merchandise, or other materials created or used in violation of Plaintiffs' interest in the Monroe Intellectual Property Rights.  Defendants have caused advertising or promotional material to be created or used in violation of Plaintiffs' interest in the Monroe Intellectual Property Rights to be published, distributed, exhibited, or disseminated within Indiana  The effects of Defendants' wrongful conduct both within and without Indiana have been felt, primarily, in Indiana as that is CMG's home state, and it is from Indiana that the Monroe Intellectual Property Rights are marketed, promoted, licensed, and from where both CMG and Marilyn Monroe, LLC, generate all income based upon those rights.

29    Venue in this judicial district is proper pursuant to 28 U.S.C. §§ 1391(b) and 28 U.S.C § 1400.

## COUNT I:

## DECLARATION OF PLAINTIFFS' INTEREST IN THE MONROE INTELLECTUAL PROPERTY RIGHTS

30    Plaintiffs reassert and re-allege the allegations set forth in paragraphs one (1) through twenty-nine (29) as if fully re-stated herein.

31.    As a consequence of Marilyn Monroe's widely recognized and acclaimed career and the attendant fame and prominence, various commercial rights of substantial value have

7

attached to the name, image, persona, and likeness of Marilyn Monroe. These rights are proprietary rights recognized and protected by the common law, state-based statutory authority, federal statutes, and by certain trademarks registered in the United States and in various foreign countries.

32.    Upon information and belief, Defendants have communicated with potential business licensees that Plaintiffs possess no enforceable rights and that such licensee may lawfully secure from them all of the Intellectual Property interests necessary for the commercial use of Marilyn Monroe manifested in the Monroe/Shaw photographs without regard to Plaintiffs' interest in the Monroe Intellectual Property Rights.

33.    Because it is the exclusive licensing agent representing Marilyn Monroe, LLC, CMG possesses a valid and existing business expectancy that anyone wishing to acquire the rights to use the Monroe Intellectual Property Rights will pay a licensing fee to CMG for the use of those rights.

34.    Despite this knowledge, Defendants, upon information and belief, have informed interested third parties that Plaintiffs do not have the rights to utilize the Monroe Intellectual Property Rights as part of Plaintiffs' normal and customary business endeavors or that they possess all of the rights necessary for a commercial use of the Monroe Intellectual Property Rights.

35    Upon information and belief, were it not for Defendants' actions as described above, entities which may have worked with and obtained the permission of Plaintiffs for the use of the Monroe Intellectual Property rights may have licensed these rights from Plaintiffs.

36.    Upon information and belief, by engaging in the conduct as described above, Defendants may have impaired the ability of Plaintiffs to license legitimate and authorized

8

commercial uses of the Monroe Intellectual Property Rights. Further, upon information and belief, Defendants may have damaged the value, status, and reputation of these intellectual property rights by denying Plaintiffs their obligation to monitor the integrity of these rights by approving content and credit lines. Upon information and belief, as a result of Defendants' actions as described above and the resulting impairment of the ability to license the Monroe Intellectual Property Rights as alleged herein, Plaintiffs may have lost income and opportunities to license these rights.

## COUNT II:

## VIOLATION OF RIGHT OF PUBLICITY

37.    Plaintiffs reassert and re-allege the allegations set forth in paragraphs one (1) through thirty-six (36) as if fully re-stated herein.

38.    Defendants are using and have used the Monroe Intellectual Property Rights without authorization or prior consent from Plaintiffs for a commercial purpose, in that Defendants are using and have used the Monroe Intellectual Property Rights on or in connection with the sale, solicitation, promotion, and advertisement of products, merchandise, goods, and services which infringe upon and illegally make use of Marilyn Monroe, LLC's Right of Publicity in the Monroe Intellectual Property Rights and CMG's derivative contractual right to be the exclusive licensor of the Monroe Intellectual Property Rights. In other words, Defendants have used and are using Marilyn Monroe's Right of Publicity for a commercial purpose without Plaintiffs' consent or authorization, and Defendants' conduct in this regard has been intentional.

39.    As a result of Defendants' unauthorized use of the Monroe Intellectual Property Rights for a commercial purpose, Defendants have violated and are violating the Plaintiffs' rights

907771_1

to and interest in the Monroe Intellectual Property Rights protected by the Indiana Right of Publicity statute. I.C. 32-36-1-1 *et seq*, and other applicable right of publicity laws.

40.    As a result of Defendants' past and continued violations of Plaintiffs' rights to and interest in the Monroe Intellectual Property Rights, Plaintiffs have suffered damages, including actual damages (including profits which Defendants have derived from the unauthorized use), treble or punitive damages, attorneys' fees, and costs of suit. Moreover, Plaintiffs are entitled to a turnover of all infringing goods and merchandise currently possessed by Defendants.

### COUNT III:

### CONVERSION

41.    Plaintiffs reassert and re-allege the allegations set forth in paragraphs one (1) through forty (40) as if fully re-stated herein.

42.    Marilyn Monroe, LLC, is the owner and proprietor of the Right of Publicity in the Monroe Intellectual Property Rights, and CMG is the exclusive licensor and business representative of Marilyn Monroe, LLC, with regard to the Monroe Intellectual Property Rights.

43.    Despite their knowledge of Marilyn Monroe, LLC's ownership in the Monroe Intellectual Property Rights, Defendants have and continue to exercise control over the Monroe Intellectual Property Rights without Plaintiffs' authorization, consent, or permission.

44.    Defendants' unauthorized actions constitute conversion under I.C. § 35-43-4-3.

45.    Accordingly, Plaintiffs are entitled to recover damages suffered as a result of Defendants' conversion and are further entitled to recover treble damages, punitive damages, costs, and attorneys' fees.

907771_1

## COUNT IV:

## VIOLATIONS OF THE INDIANA CRIME VICTIMS ACT

46.    Plaintiffs reassert and re-allege the allegations set forth in paragraphs one (1) through forty-five (45) as if fully re-stated herein.

47    Pursuant to the Indiana Crime Victims Act, Indiana Code § 34-24-3-1, a person who suffers pecuniary loss as a result of a violation of I.C. 1 35-43 *et seq.* may bring a civil action against a person who caused the loss for treble damages, costs of the action and reasonable attorney fees.

48    Defendants' unlawful acts complained of herein constitute violations of the Indiana Crime Victims Act. I.C. § 34-24-3-1.

49.    Defendants have violated I.C § 35-43 in the following particulars:

   a.   For "Criminal Mischief" as expressed in I C § 35-43-1-2;

   b.   For "Conversion" as expressed in I.C. § 35-43-4-3;

   c.   For "Deception" as expressed in I.C. § 35-43-5-3(a) (6) and (9);

   d.   For "Forgery" as expressed in I C § 35-43-5-2;

   e.   For "Theft" as expressed in I.C. § 35-43-4-2

50.    As a result of this violation(s), Plaintiffs have suffered damages.

51    Accordingly, Plaintiffs seek such damages, attorneys' fees, costs, treble and/or punitive damages for same as permitted by statute or otherwise at law.

## COUNT V:

## UNFAIR COMPETITION

52.    Plaintiffs reassert and re-allege the allegations set forth in paragraphs one (1) through fifty-one (51) as if fully re-stated herein.

907771_1

53     Defendants' unlawful and unauthorized acts, as set forth above, constitute a violation of Plaintiffs' interest in and rights to the Monroe Intellectual Property Rights, at common law, and further constitute unfair competition.

54     As a result of Defendants' unfair competition, Plaintiffs have suffered damages.

55.     Plaintiffs seek such damages, attorneys' fees, costs, treble and/or punitive damages for same as permitted by statute or otherwise at law.

## COUNT VI:

## TRADE LIBEL/DISPARAGEMENT

56     Plaintiffs reassert and re-allege the allegations set forth in paragraphs one (1) through fifty-five (55) as if fully re-stated herein.

57.     CMG is established as the premier company for representing celebrities and for marketing and licensing intellectual property rights for clients throughout the United States and worldwide.

58     CMG has generated substantial goodwill with its clients, with advertisers, and within the industry.

59.     Upon information and belief, by representing, promoting, and informing CMG's licensees and potential licensees that Plaintiffs have no rights in the Monroe Intellectual Property Rights before marketing, promoting, and selling goods and services which infringe upon the Monroe Intellectual Property Rights, or, alternatively, representing, promoting, and informing CMG's licensees and/or potential licensees that they possess all of the rights necessary for the use of the Monroe/Shaw photographs, Defendants have libeled, slandered, and otherwise disparaged and defamed Plaintiffs for their own commercial advantage and have caused them to

907771_1

lose reputation, goodwill and standing in the marketplace. Further, such statements have been defamatory *per se* and have been made with malice.

60.     Accordingly, Plaintiffs seek such damages, attorneys' fees, costs, and/or punitive damages for same as permitted by statute or otherwise at law.

## COUNT VII:

## INTERFERENCE WITH BUSINESS ADVANTAGE AND POTENTIAL BUSINESS ADVANTAGE

61.     Plaintiffs reassert and re-allege the allegations set forth in paragraphs (1) through sixty (60) as if fully re-stated herein.

62.     Plaintiffs enjoy an existing business relationship with various licensees.

63.     Defendants are aware and otherwise have knowledge of Plaintiffs' business relationship with Plaintiffs' licensees, potential licensees, and other third parties.

64.     By marketing, promoting, and selling goods and services which infringe upon the Monroe Intellectual Property Rights and otherwise engaging in various unlawful acts (including the criminal violations alleged as part of the violations of the Indiana Crime Victims Act), Defendants have intentionally and illegally interfered with Plaintiffs' business relationships with their licensees, potential licensees, and other third parties.

65.     Defendants' actions in interfering with Plaintiffs' business relationships and potential business relationships are without justification.

66.     As a result of Defendants' unjustified and illegal interference with Plaintiffs' business relationships and potential business relationships, Plaintiffs have suffered damages.

67.     Accordingly, Plaintiffs seek such damages, attorneys' fees, costs, and/or punitive damages for same as permitted by statute or otherwise at law.

907771_1

## COUNT VIII:

## INTERFERENCE WITH A CONTRACT

68    Plaintiffs reassert and re-allege the allegations set forth in paragraphs (1) through sixty-seven (67) as if fully re-stated herein.

69.    Marilyn Monroe, LLC, and CMG have entered into a contractual agreement whereby CMG is the exclusive licensor of the Monroe Intellectual Property Rights for Marilyn Monroe LLC.

70    At all relevant times, Defendants were aware of and knowledgeable about the existence of this licensing contract.

71    Defendants' tortious and infringing activities as set forth *supra* have been without justification and have interfered with Marilyn Monroe, LLC's and CMG's contractual relationship

72.    As a result of Defendants' tortious interference with the aforementioned contractual relationship with Marilyn Monroe, LLC, CMG has suffered damages.

73.    Accordingly, Plaintiffs seek such damages, attorneys' fees, costs, and/or punitive damages for same as permitted by statute or otherwise at law.

## COUNT IX:

## DECLARATION AS TO SHAW'S
## COPYRIGHTS IN SHAW COLLECTION

74.    Plaintiffs reassert and re-allege the allegations set forth in paragraphs (1) through seventy-three (73) as if fully re-stated herein.

75    Shaw has asserted, either by itself or through Bradford and/or Valhalla, that it possesses valid and enforceable copyrights, pursuant to the Copyright Act, 17 U S.C. § 101, *et*

*seq*, in each and every photograph that constitutes the Monroe/Shaw photographs and *The Shaw Limited Edition Marilyn/Norma Jeane Collection* (hereinafter the "Shaw Collection")

76. Upon information and belief, Shaw does not possess a valid and enforceable copyright in one or more photographs that comprises the Monroe/Shaw photographs and/or the Shaw Collection.

77. Without possessing a valid and enforceable copyright in one or more photographs included the Monroe/Shaw photographs and/or the Shaw Collection, Shaw, individually and through Bradford and/or Valhalla, possesses no interest and/or right in any photograph in the Shaw Collection photographs that is otherwise unprotected by copyright, those photographs become part of the public domain, and Shaw, Bradford, Valhalla, and all other persons would need the prior permission and consent from Plaintiffs to use those photographs for a commercial purpose.

## COUNT X:

## DECLARATION AS TO DOUGHERTY'S
## COPYRIGHTS IN THE DOUGHERTY COLLECTION

78. Plaintiffs reassert and re-allege the allegations set forth in paragraphs one (1) through seventy-seven (77) as if fully restated herein.

79. Dougherty has asserted, either by himself or through Bradford, that he possesses valid and enforceable copyrights, pursuant to the Copyright Act, 17 U.S.C. § 101 *et seq.*, in each and every photograph that constitutes *The Jim Dougherty and Norma Jean Limited Edition Collection* (hereinafter the "Dougherty Collection").

80. Upon information and belief, Dougherty does not possess a valid and enforceable copyright in one or more photographs that comprises the Dougherty Collection.

907771_1

81.    Without possessing a valid and enforceable copyright in or more photographs included in the Dougherty Collection, Dougherty, individually and through Bradford, possesses no interest and/or rights in those unprotected photographs in the Dougherty Collection, those photographs become part of the public domain, and Dougherty, Bradford, and other persons would need the prior permission and consent from Plaintiffs to use those photographs for a commercial purpose

**JURY DEMAND**

82    Plaintiffs request a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief in the following particulars:

A.    An award of damages, including treble, statutory and punitive damages against Defendants, and each of them, costs and attorneys' fees, including pre- and post-Judgment interest, as permitted under the applicable laws and authorities;

B.    A permanent injunction enjoining and restraining Defendants, and each of them, from conducting further commercial endeavors directly or indirectly utilizing the name, image, likeness, of Marilyn Monroe or any other of the Monroe Intellectual Property Rights, without consent from Plaintiffs;

C.    A permanent injunction enjoining and restraining Defendants, and each of them, from engaging in any conduct or communication that is inconsistent with Plaintiffs' rights in the Monroe Intellectual Property Rights, or otherwise operates to libel, slander, defame or disparage Plaintiffs or the Monroe Intellectual Property Rights;

907771_1

D     Enter a Declaratory Judgment, pursuant to 28 U.S.C. § 2201, and to declare therein:

1.     That CMG Worldwide, Inc. possesses the exclusive right to license the Monroe Intellectual Property Rights;

2.     That Shaw does not possess valid and enforceable copyrights in one or more photographs in the Shaw Collection;

3.     That Dougherty does not posses valid and enforceable copyrights in one or more photographs in the Dougherty Collection.

4.     That none of Bradford, Shaw, Valhalla, and/or Dougherty, jointly or severally, can sell, market, promote, and/or advertise the Dougherty Collection, the Monroe/Shaw photographs and/or the Shaw Collection in connection with any product, merchandise, goods, services, commercial activity, advertisement, and/or solicitation, without Plaintiffs' permission and consent;

5.     That Defendants are and shall be permanently enjoined and restrained from conducting further activities inconsistent with Plaintiffs' declared interests and rights in the Monroe Intellectual Property Rights; and

6.     That Defendants are and shall be permanently enjoined and restrained from engaging in any activities which interfere with Plaintiffs' business activities with respect to their legal and proprietary interests and rights in the Monroe Intellectual Property Rights; and

E.     Such other relief as may be just and proper in the premises.

Respectfully submitted,

DANN PECAR NEWMAN & KLEIMAN, P.C.


By:   s/ Jonathan G. Polak
          Jonathan G. Polak, No. 21954-49
          Eric M. Hylton, No. 20178-32
          Amy L. Wright, No. 22241-49
          James B. Chapman II, No. 25214-32
          One American Square, Suite 2300
          Box 82008
          Indianapolis, IN 46282
          (317) 632-3232 – Telephone
          (317) 632-2962 – Facsimile


McNEELY STEPHENSON THOPY & HARROLD

          J. Lee McNeely, No. 9542-73
          30 E. Washington Street, Suite 400
          Shelbyville, IN 46176
          (317) 392-3619 – Telephone
          (317) 835-7777 – Facsimile

## CERTIFICATE OF SERVICE

I also hereby certify that a true and correct copy of the foregoing has been served upon the following by electronic means *via* the Court's digital document delivery system this 16th day of June, 2005:

James M. Hinshaw
Hamish S. Cohen
BINGHAM MCHALE LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN 46204-4900


                                        s/     Jonathan G. Polak
                                             Jonathan G. Polak

907771_1







**Bradford Licensing Associates**
209 Cooper Avenue
Upper Montclair, NJ 07043
Tel: 973.509.0200   Fax: 973.509.7419

] E-mail Contacts [

Bradford Licensing Associates, a global licensing firm partners with some of the world's best known logos and trademarks. Established in 1984, Bradford is a full service licensing agency with worldwide brand extension capabilities. We develop licensing programs based on the leading corporate brands, television series and characters, fashion brands, sporting events and non-profit organizations. Bradford is based in Northern New Jersey with offices in New York and Los Angeles. The company maintains a network of agents in all major foreign countries, including Europe, the Asia Pacific Rim, and South America.

Designed by ApolloWebDesign.com



http://www.bradfordlicensing.com/

Untitled (56).max

Bradford Licensing Associates: Client Overview: Norma Jeane - Licensing Agency     Page 1 of 2



## Marilyn's Man



Bradford Licensing is pleased to announce that it has partnered with Valhalla Productions to develop a line of merchandise based on the upcoming 92-minute documentary titled Marilyn's Man, The Movie, a film by Schani Krug. In this film, there are images of the early years of Marilyn Monroe's life, appropriately titled The Jim Dougherty and Norma Jeane Limited Edition Collection. In addition, there are images from throughout her career, with famed photographer Sam Shaw, titled Shaw Family Archives.

Through the eyes of Jim Dougherty, Marilyn's first husband, the truth about Marilyn's life is revealed from her days as Norma Jeane to the forever loved Marilyn Monroe. Over 500 never before seen photos and clips make up the film, and these images are now available for license.

Marilyn's Man, The Movie merchandise will draw upon the beauty and timelessness of Marilyn. Products will range

Bradford Licensing Associates: Client Overview: Norma Jeane – Licensing Agency

from collectibles to publishing, gift items and more forever capturing Norma Jeane and Marilyn.

For more information regarding Marilyn's Man, The Movie, please contact Michelle Minieri, Director of Marketing & Licensing, Bradford Licensing Associates at MichelleM@bradfordlicensing.com.

Home | About Our Company | Client Overview | Bradford Productions | Press Releases
Contact Bradford | Industry Websites | E-Mail