UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
SHAW FAMILY ARCHIVES, LTD., BRADFORD
LICENSING, INC., JAMES E. DOUGHERTY,
And VALHALLA PRODUCTIONS, LLC.

                                                                           05 CV 3939 (CM)

      Plaintiffs/Consolidated Defendants,

                                                                           **Honorable Colleen
                                                                            McMahon**

    -against-

CMG WORLDWIDE, INC.,
and MARILYN MONROE, LLC,,

      Defendants/Consolidated Plaintiffs.
-------------------------------------------------------------------x

**SHAW FAMILIY ARCHIVE, LTD'S AND BRADFORD LICENSING, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT DISMISSING COUNT II OF CONSOLIDATED DEFENDANTS'
COMPLAINT AND IN OPPOSITION TO MARILYN MONROE LLC'S MOTION
FOR SUMMARY JUDGMENT ON COUNT II AGAINST SFA**

                                                                        Respectfully submitted,

                                                                        By: _____
                                                                        David Marcus (DM-0960)
                                                                        Marcus & Greben
                                                                        1650 Broadway
                                                                        Suite 707
                                                                        New York, NY 10019
                                                                        Tel: 646-536-7602
                                                                        Fax: 212-765-2210

                                                                        Attorneys for plaintiff/consolidated
                                                                        defendant SFA, plaintiff Edith
                                                                        Marcus and Meta Stevens and
                                                                        Consolidated Defendant Bradford
                                                                        Licensing, Inc.

# TABLE OF CONTENTS

Page

I.   INTRODUCTION..................................................................................1

II.  PROCEDURAL HISTORY....................................................................3

III. STATEMENT OF FACTS/COUNTER STATEMENT OF FACT ...........4

IV.  SUMARY JUDGMENT STANDARD....................................................4

V.   ARGUMENT.........................................................................................5

    A.  MMLLC's Motion for Partial Summary Judgment Should be Denied as it Failed to Set Forth a Claim..................................................6

        1.  The Indiana Statute Did Not Create a Right of Publicity for All Persons "Regardless of Domicile".......................7

        2.  MMLLC Owns No Right of Publicity With Respect to Marilyn Monroe...........................................................9

            a)  Marilyn Monroe's Last Will and Testament was Probated in New York Under New York Law.........9

            b)  Choice of Law Principles Do Not Mandate Adherence to Indiana Statutory Law....................12

            c)  This Court Should Follow the Principles of Full Faith and Credit and Comity and Deny Plaintiffs' Claims Brought Under Indiana Law....................12

        3.  Based Upon Indiana Common Law, New York Statutory and Common Law, Constitutional Law, and Conflict of Law Principles this Court Should Deny Plaintiffs' Claims Brought Under The Indiana Right of Publicity Statute........13

        4.  Even if the Court Determines That Marilyn Monroe's Will Devised Her Right of Privacy/Publicity, MMLLC Failed to Show That it Owns This Right........................14

5. Even if the Court Finds MMLLC Owns a Right of Publicity Regarding Marilyn Monroe, SFA Has Not Violated the Indiana ROP Statute..................14

6. If MMLLC's Motion for Summary Judgment is Granted, Punitive Damages and Attorneys Fees Are Not Warranted ..................17

B  Plaintiffs' Motion for Partial Summary Judgment, dismissing defendants MMLLC's and CMG's Count II Should be Granted as a Matter of Law..................18

1. Plaintiffs' Claims for Alleged Violations of a Right of Publicity Regarding Marilyn Monroe are Barred by Collateral and Judicial Estoppels..................18

a.) Plaintiffs are Collaterally Estopped from Claiming a Right of publicity Exists after Marilyn Monroe's Death..................18

i.) The Probate Court Orders..................19

ii.) The Board of Equalization Proceedings..................21

iii) *Frosch Case*..................22

b) Plaintiffs are Judicially Estopped from Claiming Ms. Monroe was not a Domiciliary of New York at the Time of Her Death..................24

2. Marilyn Monroe Was a Domiciliary of New York at the Time of Her Death and Under New York Law No Right of Publicity Survived her Death..................26

3. The Indiana ROP Statute Does Not Create a Right of Publicity With Respect to Marilyn Monroe..................29

4. Laches Apply Herein to Prevent CMG and MMLLC to Now Assert a Right of Publicity in Marilyn Monroe..................29

VI  CONLUSION..................30

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Allen v. Great Am. Reserve Ins. Co.*,
   766 N.E.2d 1157, 1162 (Ind. 2002)............................................................24

*Anderson v. Liberty Lobby*,
   477 U.S. 242, 106 S.Ct. 2505 (1986)...........................................................4

*Alvarez v. May Dept. Sores Co.*,
   49 Cal.Rptr.3d, 897 (2006)..........................................................................19

*Bates v. Long Island R.R. Co.*,,
   997 R.R. Co., 997 F.2d 1028 (2nd Cir. 1993)............................................25

*Bowen v. Georgetown University Hospital*,
   108 S.Ct. 1073, 485 U.S. 903 (1988).........................................................13

*Brinkley v. Casablancas*,
   80 A.D.2d 428; 438 N.Y.S2d 1004 (1981)...............................................23

*Carter v. Estate of Davis*,
   813 N.E.2d 1209 (Ind.App. 2005)........................................................6, 7, 8

*Celotex Corp. v. Catrett*,
   477 U.S., 317,106 S.Ct. 2548(1986)............................................................4

*Chesnut v. Roof*,
   65 N.E.2d 7,9 (Ind.Ct.App. 1996).............................................................13

*Cicatello v. Brewery Workers Pension Fund*,
   434 F.Supp. 950, 956 (W.D.N.Y. 1977)...................................................22

*Cler v. Ill. Educ. Ass'n*,
   23 F.3d 726 (7th Cir. 2005)..........................................................................9

*DiLauria v. Town of Harrison*, 820 N.Y.S.2d 140,
   (N.Y.A.D.2 Dept. 2006).............................................................................19

*Eastern Enterprises v. Apfel*,
   524 U.S. 498 (1998)....................................................................................13

*Edgar v. MITE Corp.*,

    457 U.S. 624, 640 (1982)..................................................................................17

*Factors, Etc., Inc. v. Pro Arts, Inc.,*
    652 F.2d 278, 281 (2d Cir.1981).....................................................................10

*Franchise Tax Bd. of California v. Hyatt,*
    538 U.S. 488, 495............................................................................................13

*Frosch v. Grosset & Dunlap,*
    75 A.D.2d 768 (N.Y.App.Div. 1980).........................................6, 8, 9, 22, 23

*GEICO Ins. Co. v. Rowell,*
    705 N.E.2d 476, 481 (Ind.Ct.App. 1999)........................................................24

*In re Gernon's Estate,*
    226 N.Y.S.2d 940 (1962).................................................................................11

*Groucho Marx Productions v. Day & Night Co.,*
    689 F.2d 317 (2d Cir.1982)..............................................................................10

*Hamilton v. State Farm Fire & Casualty Company,*
    270 F.3d 778, 782 (2001).................................................................................

*Hydranautics v. Filmtec Corporation,*
    204 F.3d 880, 886 (9th Cir. 2000)...................................................................19

*Jakubiec v. Cities Service Co.,*
    844 F.2d 470 (7th Cir.1988)...............................................................................4

*James v. Delilah Films,*
    544 NYS 2d 447, 451 (1989)..........................................................................23

*Jarrow Formulas,*
    304 F.3d at 838 (9th Cir. 2002).......................................................................30

*Langraf v. USI Film Products,*
    511 U.S. 24, 266 (1944)..................................................................................13

*Laws v. Sony Music Entertainment, Inc.*
    448 F.3d 1134, 1141 (9th Cir. 2006)...............................................................17

*Lord Simon Cairns v. Franklin Mint Co.,*
    292 F.3d 1139 (9th Cir. 2002)............................................................................8

*Maurice F. Jones Trust v. Barnett Banks Trust Co., N.A.*
    637 N.E.2d, 1301 (1994).................................................................................11

*Miller v. Glenn Miller Productions, Inc.*,
    454 F.3d 975, 997 (9th Cir, 2006)..................................................................29

*New Hampshire v. Maine*,
    532 U.S. 742 (2001)...........................................................................................25

*Operating Co. v. Kuperstock*,
    711 F.2d 1538 (11th Cir. 1983)..........................................................................10

*Oxman v. WLS-TV*, 8
    46 F.2d 448, 452 (7th Cir.1988).........................................................................4

*Philips v. Scalf*,
    778 N.E.2d 480 (Ind.App. 2002).........................................................................7

*Pirone v. MacMillan*
    894 F.2d 597, 585 (S.D.N.Y. 1990................................................................9, 22

*Riley v. New York Trust Co.*,
    315 U.S. 343 (1942)..........................................................................................10

*Risotto v. Plumbers and Steamfitters Local 343*,
    94 F.3d 597, 605 (9th Cir. 1996).......................................................................24

*Search Force, Inc. v. Dataforce Intern, Inc.*,
    112 F.Supp.2d 771, 779 (S.D.Ind. 2000)..........................................................17

*In Re Slade's Estate*,
    154 Misc. 275, 276 N.Y.S. 956, (N.Y. Sur. 1935)............................................25

*Simon v. United States*,
    805 N.E.2d 798, 805 (Ind. 2004).......................................................................24

*Stephano v. News Group Publications, Inc.*
    64 N.Y.2d 174; 474 N.E.2d 580; 485 N.Y.S2d 220 (Ct. App. 1984)...............22

*Strasberg v. Odyssey Group, Inc.*
    51 cal. App 4th 906, 59 Cal.Rptr. 2d 474 (Cal.App. 2 Dist.,1996)...................25

*Thomas v. Washington Gas Light Co.*
    448 U.S. 261, 272; 100 S.Ct. 2647 (U.S.,1980).........................................12, 13

*In re White*,
    174 B.K. 775, 778 (Bkcy S.D. Ill. 1994)...........................................................11

*Van Dusen v. Barrack,*
    376 U.S. 612, 639 (1964)..................................................................12

## Statutes

See 17 U.S.C. Section 301(a)..............................................................17

Cal. Civ. Code § 3344.1.......................................................................8

Fed. R. Civ. P. 56(a)............................................................................4

Indiana Code §32-36-1, *et seq*........................................................5,6, 17, 29, 30

Indiana Code §32-36-1-1.....................................................................7

Indiana Code §32-36-1-7.....................................................................8

Indiana Code §32-36-1-8.................................................................8, 9, 14

Indiana Code §32-36-1-9...................................................................14

Indiana Code §32-36-1-10...................................................................7

Indiana Code §32-36-1-16..................................................................8, 9

Indiana Code §32-36-1-17..................................................................7, 9

New York Civil Law §§ 50, 51............................................................9, 22

U.S.C.A. Const. art. IV, § 1...............................................................12

## Miscellaneous

*Internal Revenue Service, Publication 555* (Rev. June 2002))..............26, 27

New York State Department of Tax and Finance Publication 80.................28

# I.
# INTRODUCTION

Although initially renowned for his career as a photojournalist for Colliers Magazine, Sam Shaw is most notably remembered for his unique photographs of Marilyn Monroe and the lifelong friendship that existed between them. Because of his close personal relationship with Ms. Monroe, he was able to photograph Marilyn in private moments when she was relaxed and vulnerable, thereby capturing some of the most beloved images of her. (See Declaration of Edith Marcus, ¶ 2)

MMLLC's action against Shaw Family Archives, Ltd. ("SFA") and Bradford Licensing, Inc. ("Bradford") was one of four actions filed by CMG Worldwide, Inc. ("CMG") and Marilyn Monroe, LLC ("MMLLC") (collectively referred to as the "Indiana Actions"). This action was transferred and consolidated with an action commenced by SFA against CMG and MMLLC. The remaining Indiana Actions were transferred to California and consolidated with actions commenced by Milton Greene Archives, LLC. and Tom Kelly Studios, Inc. against CMG and MMLLC.[1] Although MMLLC has made repeated claims that SFA and Bradford have been forum shopping in this matter, it clearly MMLLC, an entity with absolutely no ties to Indiana (except for having a right of publicity statute drafted to be the most dead celebrity friendly in the nation), was forum shopping when it initially chose that State as the forum to hear the Indiana Actions. None of the defendants in the Indiana Actions did business in Indiana, the transactions

---

[1] It is believed that CMG and MMLLC's action against Shirley DeDienis, wife of photographer Andre DeDienes, settled with CMG and MMLLC and Shirley DeDienes has withdrawn her action. With the exception of CMG and MMLLC's action against SFA and Bradford, the defendants in the remaining Indiana Actions were merely served with actions seeking declaratory judgments on the copyrights of their photographs and the validity of MMLLC's claim of a right of publicity regarding Marilyn Monroe.

1

which occurred in MMLLC's complaint occurred in New York and Marilyn Monroe never resided in Indiana and MMLLC is not domiciled in Indiana.

Defendants MMLLC and CMG's action against Shaw Family Archives, Ltd., Bradford Licensing, Inc., James E. Dougherty and Vallhalla Productions, LLC. seeks to enforce a right that ceased to exist when Marilyn Monroe passed away in 1962. A court in any state determining whether there has been an alleged violation of a person's postmortem right of publicity must first look to the law of the deceased's domiciliary state to determine if such a right exists.

It is well settled that New York's right of Privacy Statute bars any transfer or devise of one's right of privacy/publicity. Marilyn Monroe was domiciled in the State of New York at the time of her death in 1962. She executed her will in New York, it was probated in New York State and her Estate paid taxes on the corpus of the Estate to New York State. Further, in 1972, the executor and trustee of the Estate of Marilyn Monroe made a judicial admission that her Estate did not own and did not claim any right of privacy in Marilyn Monroe's name likeness and image. Moreover, the New York State Appellate Division, First Department, has already held that Marilyn Monroe's Estate did not own a right of privacy/publicity in Marilyn's name, likeness and images. Finally, the Board of Equalization of the State of California (hereinafter referred to as the "BOE") has already determined that Marilyn Monroe died a non-resident of the State of California, and her estate taxes were adjusted accordingly. As such, MMLLC's instant motion is without merit.[2] Conversely, as MMLLC does not own any right of publicity regarding

---

[2] The instant Motion for partial Summary Judgment is against SFA only. However, as any negative decision by this Court will also adversely affect Bradford, and as it is presumed that the instant motion was also intended to be against defendant Bradford, Bradford also opposes the instant motion.

2

Marilyn Monroe, SFA and Bradford's motion for partial summary judgment dismissing Count II should be granted.

## II.
## PROCEDURAL HISTORY

SFA and Bradford agree with MMLLC's statement regarding the procedural history of the instant proceedings with the following exceptions (See page 4 of MMLLC's Memorandum in Support). Plaintiff's action is not a mirror image action, because in addition to seeking a declaratory judgment on whether there is any posthumous right of privacy/property in the name, likeness and image of Marilyn Monroe, the action also seeks damages pursuant to certain copyright violations, tortuous interference with contractual relations and tortuous interference with prospective economic advantage. Further, although this Court decided to apply Indiana Choice-of-Law Principals to these combined actions, the Court specifically did not make holdings about the applicable substantive law without a more developed factual record. (See Declaration of Michelle M. Craven Declaration, at ¶ 3 and Exh..B, to the instant Motion).

On April 19, 2005, SFA commenced an action against defendants CMG and MMLLC. On May 20, 2005, SFA amended its complaint and served same upon defendants CMG and MMLLC. The instant Cross-Motion for partial Summary Judgment is brought on behalf of SFA and Bradford against CMG and MMLLC and for a declaratory judgment on MMLLC's alleged right of publicity claims as set forth in SFA's Second Cause of Action in its complaint..[3]

---

[3] It is also important to note that although Valhalla Productions, LLC. (hereinafter referred to as "Valhalla") was added as a defendant to the Indiana Action, we still have not been advised if service was ever effectuated on defendant "Valhalla." In a letter dated August 2, 2006 to this Court, Brian L. Greben, of Marcus & Greben, requested permission of the Court to add Valhalla as a third party defendant in the event CMG and Marilyn Monroe, LLC. failed to serve same with a copy of the Second Amended Summons and Complaint. (See Marcus Decl. at ¶5, Exhibit E.)

### III.
### STATEMENT OF FACTS/COUNTER STATEMENT OF FACT

The undisputed facts and alleged genuine issues of material fact set forth in the accompanying Statement of Fact and Counter-Statement of Fact are incorporated by reference herein. As such, they will not be repeated here.

### IV.
### SUMARY JUDGMENT STANDARD

Summary judgment should be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-50, 106 S.Ct. 2505, 2509-12 (1986). A disputed fact is material only if a reasonable jury could find in favor of the non-moving party. *Anderson* at 248; 2510.

When determining a motion for summary judgment, the moving party has the burden of establishing a lack of any genuine issue of material fact. (*Jakubiec v. Cities Service Co.*, 844 F.2d 470, 471 (7th Cir.1988)). The party seeking summary judgment bears the initial burden of identifying "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S., 317, 323, 106 S.Ct. 2548, 2552 (1986). When hearing a motion for summary judgment, the court considers the entire record and all reasonable inferences are drawn in favor of the non-moving party and all factual disputes are resolved in favor of the non-moving party. *Oxman v. WLS-TV*, 846 F.2d 448, 452 (7th Cir.1988); *Jakubiec at* 471. Defendant MMLLC failed to satisfy their initial burden. Even if one assumes, *arguendo*, that defendants satisfied their initial burden, plaintiffs have shown that genuine issues of material fact exist. Further, discovery must be completed as movants' motion

relies on facts that SFA and Bradford have no knowledge. Conversely, SFA and Bradford are entitled to Summary Judgment as a matter of law.

## V
## ARGUMENT

MMLLC's motion is predicated upon the alleged purchase of a t-shirt bearing the image of Marilyn Monroe. (See pages 14-16 of MMLLC's Memorandum in Support of its Motion for Summary Judgment). Further, MMLLC purports that this t-shirt contains a label bearing the words "SFA." (See pages 15 of MMLLC's Memorandum in Support of its Motion for Summary Judgment).[4] However, MMLLC merely asserts that SFA caused said t-shirt to be sold in Indiana, without the slightest evidence to prove that theory. Besides the fact that MMLLC failed to set forth that actions of plaintiffs caused said t-shirt to be sold in the State of Indiana, MMLLC has not shown that they are entitled to bring suit pursuant to Indiana Code §32-36-1, *et seq*. (the "Indiana ROP Statute"), and has failed to show that it owns a postmortem right of publicity in the name, likeness and image of Marilyn Monroe. MMLLC merely asserts that Indiana ROP Statute creates an independent post-mortem right of publicity. However, the Indiana ROP Statute only provides the right holder of a celebrity's right of publicity, or the assignee of that right, the ability to sue for infringements of that right in Indiana. Despite the fact that this Court has already decided that the law pertaining to whether or not a posthumous right of publicity in Marilyn Monroe's name, likeness and image exists will depend on the law of the domicile where

---

[4] This alleged purchase and sale was never previously alleged in any prior pleading, nor was the individual who purchased the shirt set forth in MMLLC's and CMG's Rule 26(a)(1) Initial Disclosures (See SFA and Bradford's Statement of Fact ("SOF") at ¶ 4 and Exh. E,). There has been absolutely no discovery to determine how and if said t-shirt became available for sale at a Target store in Indiana.

the property right existed,[5] MMLLC fatally failed to even allege the state in which Marilyn Monroe was domiciled when she died. Further, MMLLC has not proven that SFA knowingly or willfully sold any item bearing Marilyn Monroe's image in the State of Indiana. Finally, MMLLC's alleged right of publicity claims is barred by the United States Copyright Act.

Plaintiffs SFA and Bradford's motion for partial Summary Judgment, dismissing Count II of defendants' Second Amended should be granted. MMLLC and CMG fail to state a claim to bring suit as no descendible right of publicity existed at the time of her death. Furthermore, MMLLC and CMG are collaterally and judicially estopped from asserting any post mortem right of publicity to the name, likeness or signature of Marilyn Monroe. Marilyn Monroe died a domiciliary of the State of New York and her will was probated there. Even if the Court were to determine that Marilyn Monroe, LLC. has a viable right of publicity in this instance, its delay in asserting this claim for more than 22 years bars any such right under the theory of laches.

### A. MMLLC's Motion for Partial Summary Judgment Should be Denied as it Failed to Set Forth a Claim

MMLLC failed to that it had the rights necessary to bring the instant claim. In order to assert a viable claim, MMLLC must prove that it owns Marilyn Monroe's post-mortem right of publicity. MMLLC merely asserts that the Indiana ROP Statute created a posthumous right of publicity which lasts for 70 years after the death of an individual, regardless of domicile, and that this right was transferred to MMLLC by virtue of a convoluted series of inheritances and ownership transfers. (See Strasberg Decl ¶¶6-8).

---

[5] See *Frosch v. Grosset & Dunlap*, 75 A.D.2d 768 (N.Y.App.Div. 1980); *Carter v. Estate of Davis*, 813 N.E.2d 1209 (Ind.App. 2005).

1. The Indiana Statute Did Not Create a Right of Publicity for All Persons "Regardless of Domicile"

Defendant MMLLC incorrectly argues that a personality's domicile is wholly immaterial to claim a right of publicity under Indiana law. Their argument necessarily extends an enforceable right of publicity in Indiana whether or not a person, or her estate, owns the same right in her domiciliary state or country. Further, MMLLC seeks to wield Indiana law to bring actions for uses made anywhere in the world of indicia of persona of personalities. Neither Indiana, any sister State, nor Federal court has construed the Indiana statute to have the breadth MMLLC contends.

Proper construction of Indiana's ROP Statue evidences that MMLLC is not entitled to a right of publicity in Marilyn Monroe. Indiana Code §32-36-1-1 provides that the Chapter applies to "an act or event which occurs in Indiana." Plaintiffs contend that the Indiana legislatures' inclusion of the phrase "regardless of the personality's domicile, residence, or citizenship" specifically created a property right, irrespective of whether that personality's domiciliary state recognizes such a right. To the contrary, the Indiana courts uniformly hold that the situs of intangible property, including the right of publicity, is the domicile state of the decent under the doctrine of *mobilia sequuntur personam*. *Philips v. Scalf*, 778 N.E.2d 480 (Ind.App. 2002); *Carter, Supra*. Furthermore, the addition of this phrase merely ensured that the statute applied to acts which occurred in Indiana, regardless of the domicile of the property right holder, but did not grant a right of publicity under Indiana Law.

The Indiana right of publicity statute grants to a "personality" or her transferees the right to enforce the rights and remedies provided by the Chapter. (§32-36-1-17). The "rights" granted by the Chapter are the *rights to recover damages (§32-36-1-10) for use of the "personality's"*

"*right of publicity*" in Indiana for a "commercial purpose" without written consent. (§32-36-1-8). The Statute distinguishes between the "written consent" required by Subsection 8 and the "rights and remedies set forth in the Chapter." (§32-36-1-16) Only the "rights" are deemed "property rights." (§32-36-1-16)  A "right of publicity" is defined as "*a personality's 'property interest' in* the personality's name, voice, likeness, ...etc." (§32-36-1-7) *There is no provision of the Chapter creating or granting to personalities a property right in their indicia or persona in gross if one does not already exist.* Whether a personality owns a right of publicity depends on the laws of their state of domicile when living and when that personality died. This is true under the law of all states, including Indiana. *Carter, Supra; Frosch, Supra.*

The Indiana ROP Statute's construction is similar to that of California's post-mortem right of publicity Statute.  Cal. Civ. Code § 3344.1 provides that a right holder may sue in California for any infringement of a posthumous right of publicity in California regardless of domicile.  However, the Courts will apply the law of the decedent's domicile to determine if posthumous rights of publicity are recognized.[6]

Ms. Monroe was never an Indiana domicile. Therefore, Indiana law is inapplicable to determine any property rights Marilyn Monroe or her estate possessed. As such, the Indiana ROP Statute merely gives a person/entity the right to sue based upon the infringement of a right of publicity it already owns and provides for the transfer and devise of this right, either by transfer, will or intestacy.

---

[6] See *Lord Simon Cairns v. Franklin Mint Co.*, 292 F.3d 1139 (9th Cir. 2002)(where the Court applied the law of Princess Diana's domicile, England, in finding that her estate did not own a descendible right of publicity).