UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

SHAW FAMILY ARCHIVES, LTD., BRADFORD
LICENSING, INC., JAMES E. DOUGHERTY,
And VALHALLA PRODUCTIONS, LLC.

                  05 CV 3939 (CM)

       Plaintiffs/Consolidated Deendants,

                  **Honorable Colleen**
                  **McMahon**

    -against-

CMG WORLDWIDE, INC.,
and MARILYN MONROE, LLC,,

       Defendants/Consolidated Plaintiffs
-----------------------------------------------------------------x

**DECLARATION OF LEN REITER IN SUPPORT SFA AND BRADFORD'S
CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
MMLLC'S MOTION FOR SUMMARY JUDGMENT.**

                                     Marcus & Greben
                                     1650 Broadway
                                     Suite 707
                                     New York, NY 10019
                                     Tel: 646-536-7602
                                     Fax: 212-765-2210

                                     Attorneys for Plaintiff/Consolidated Defendant SFA, Plaintiff Edith Marcus and Meta Stevens and Consolidated Defendant Bradford Licensing, Inc.

## DECLARATION OF LEN REITER

After having been duly sworn, Len Reiter states:

1. I am an adult over the age of eighteen (18), have personal knowledge of the matters stated herein, and am competent to attest to such matters.

2. I am currently the president of Bradford Licensing Associates ("Bradford"). I have held this position since 1984.

3. Bradford is a New Jersey business entity with its primary place of business located at 209 Cooper Avenue Upper Montclair, New Jersey. Bradford is a full service licensing agency that assists entities that own intellectual properties and earns licensing fees from the goodwill associated with those properties, *i.e.*, it facilitates contractually-based agreements through which an individual or entity pays licensing fees to use trademarks and/or copyrighted images owned by its clients. Bradford's responsibilities are assigned contractually by the property rights owner rather than any licensee. Accordingly, Bradford's responsibilities and duties are specified in the representation agreements it signs with the property rights holder.

4. Bradford has never advertised or solicited business in Indiana through visits, telephone calls, written communications or otherwise, and I am unaware of any Bradford representatives and/or agent having ever made any trip Indiana on any Bradford-related business. We had one PEZ licensee based in Indiana from 12/1/1999 – 12/31/2002; however no trips were ever made there on Bradford-related business. Since that one licensee Bradford has never had any future business with Indiana based companies. Under Shaw Family, Bradford has never advertised or solicited business in Indiana.

5. Bradford has no office, employees or agents located in the State of Indiana. There are no known records or incidents of any Bradford employee ever being in Indiana on Bradford related business.

6. Bradford has never appeared in court in Indiana or invoked the protection or authority of Indiana's government for any purpose other than this action.

7. Bradford has no governmental licenses in Indiana.

8. Bradford has never entered into any contractual relationship with any resident or citizen of Indiana or any business entity with its primary place of business in Indiana. Under PEZ, we had one licensee based in Indiana: Playing Mantis, 3618 Grape Road, Mishawaki, Indiana 46545, www.playingmantis.com. This license was granted in 1999 and ended in 2002, producing PEZ themed die cast products.

9. Bradford has made no efforts to serve, directly or indirectly, the Indiana market for its services. In fact, Bradford has specifically structured its business activities to avoid the privilege of conducting business in Indiana.

10. Bradford maintains a passive worldwide web Internet site located at http://www.bradfordlicensing.com (the "Internet site"), and Bradford does not accept orders or conduct business directly through this Internet site.

11. Bradford presently represents Shaw Family Archives, Ltd. ("SFA") as its non-exclusive agent in licensing the photographic images it owns and controls. Neither Bradford nor SFA hold themselves out as the owner of Marilyn Monroe's right of publicity, nor does Bradford or SFA hold themselves out to be affiliated or associated with MMLLC or CMG.

12. Bradford does not create or sell any product whatsoever; our business is to put companies, like SFA, into contact with licensees who wish to license the right to reproduce photographic or artistic images onto merchandise. If there are any other rights necessary to sell this merchandise, it is the obligation of the licensee to secure those rights, not Bradford or SFA.

13. Under our arrangement with SFA, all agreements entered into between SFA and the applicable licensee strictly forbids any advertising, sale or manufacture of product within the State of Indiana, and the applicable contracts contain an indemnification provision wherein SFA will be indemnified (including but not limited to attorneys fees) in the event these prohibitions are violated..

14. I have read MMLLC's Memorandum in support of its motion for summary judgment against SFA, the annexed Statement of Undisputed Facts and accompanying declarations. I recognize the t-shirt which MMLLC claims to have been purchased in Indiana. However, the licensee, a company called Freeze, in that transaction has advised me that they took every measure necessary to prevent the sale of the shirt in the State of Indiana. Without the completion of discovery, it would be impossible to determine how and when that shirt entered into Indiana (whether it was purchased in Indiana, or purchased outside of Indiana and returned at a Target store in Indiana and re-sold there). If this t-shirt was sold in Indiana, it was done without the knowledge and consent of Bradford or SFA. Further, the indemnification provision in the applicable agreement would most likely force the applicable licensee to cover attorneys' fees and damages, if any.

15. Additionally, we maintain that MMLLC does not own any publicity right in the name, likeness or image of Marilyn Monroe. It has been well established in the business of licensing that Marilyn Monroe died domiciled in New York State. Furthermore, it is well known that since New York State does not recognize a descendible right of privacy/publicity and that New York law would be controlling on the rest of the country, and the world. I have spoken to numerous attorneys about this fact prior to entering into business transactions with Valhalla Productions, Inc. and SFA. Furthermore, I was advised that neither the Estate of Marilyn Monroe, MMLLC or CMG had ever previously commenced a suit claiming any time of infringement of a right of publicity regarding Marilyn Monroe

16. Despite the fact I felt assured that MMLLC did not own any right of publicity regarding Marilyn Monroe, I made it a strict part of my company's business strategy not to conduct any business in Indiana, not to advertise in Indiana and not to allow any of my client's licensees to conduct any business or advertise in Indiana. I had met with Larry Shaw and several attorneys in 2004, prior to the commencement of these actions, wherein we discussed retaining an attorney to file a declaratory judgment action seeking to determine that there is no right of publicity regarding Marilyn Monroe. However, before that action could be filed, we were served with the instant action by CMG and MMLLC.

17. My company has spent and invested tens of thousands of dollars, in salary to my employees, direct costs for marketing, shipping costs and advertising, with respect to our representation of the Sam Shaw Marilyn Monroe photographic images. My company would be irreparably prejudiced if MMLLC is awarded a right of publicity regarding Marilyn Monroe at this late date. The thousands of dollars we have invested in marketing

and licensing the Sam Shaw images would be lost and my company would be subject to thousands of dollars of penalties.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on the 27th day of November, 2006, at Montclair, New Jersey.

_____
LEN REITER      11/29/06