[illegible] (picture on book cover); [illegible] Hillman Periodicals, [illegible] App. Div. [illegible] (1st Dep't 1953) (picture on magazine back cover); Sarat Lahiri v. Daily Mirror, 162 Misc. 776 (Sup. Ct. N.Y. Cty. 1937) (picture illustrating newspaper article).

[illegible]

... See also [illegible] v. [illegible], Inc., [illegible] Misc. [illegible] (Sup. Ct. Kings Co. [illegible]), aff'd [illegible] App. Div. [illegible] (2d Dep't 1951), aff'd [illegible] N.Y. [illegible] (1952). The present case is plainly a fortiori to [illegible]. There can be no question that photographs of Miss Monroe have a legitimate and important place in her biography.

Indeed, even if there were little or no textual matter, the book would still not violate any rights of plaintiffs. It is entirely permissible to portray a public

[illegible]

[illegible] Columbia Broadcasting [illegible] ([illegible] photographs) (Murray v. New York Magazine Co., 27 [illegible] 2d 406 (197[illegible]) (magazine cover); [illegible] Publications, Inc., 21 App. Div. 2d 6[illegible] ([illegible] Dept. 1964) (pictorial story); Pagan v. New York Herald Tribune, 32 App. Div. 2d 341 (1st Dept. 1969) (fashion photographs in magazine supplement); Paulsen v. Personality Posters, 59 Misc. 2d 444 (Sup. Ct. N.Y. Cty 1968) (poster)).

Equally irrelevant are plaintiff's allegations that Marilyn, in addition to containing photographs, "...was not intended to, and did not dispassionately disseminate news and information of public interest..." (Complaint ¶21) and was designed to create "a nostalgic media-image of the

[illegible]

The [illegible] Supreme Court has observed, in a libel context, cases such as this one must be considered "...against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open. . . ." New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964). "[D]ebate on public issues will not be uninhibited if the speaker must run the risk that it will be proved in court that he spoke out of hatred. . . ." Garrison v. Louisiana, 379 U.S. 64, 73 (1964).

[illegible]

... whether the [illegible] significant [illegible] presidential [illegible] presentation [illegible] to a matter [illegible] expression which is constitutionally protected and deserving of substantial freedom [illegible] University of Notre Dame v. 20th Century Fox [illegible] supra.) [illegible] (Sup. Ct. N.Y. [illegible] 1969) [illegible]



[illegible]

[illegible] as follows:

> "Rather than [illegible] accurate biographical portrayal [illegible], the said book was intentionally designed and executed by the defendants to [illegible] media-image of the decedent having the potential for maximum commercial exploitation of the exclusive property right in the decedent's publicity possessed by the decedent and her estate."

It will be noted that the paragraph involves a complete non sequitur. There is no inconsistency between factual accuracy and commercial goals. Moreover, this vague and half-hearted suggestion that the book might be totally accurate --

---

*By pointing out this distinction, we do not of course concede that even the right of publicity survives death. The question has been much debated and we believe that, at least on the facts of this case, no right of publicity survived Marilyn Monroe's death. However, it is unnecessary to reach that question since for the reasons set forth above, this action must be dismissed even if a right of publicity did survive Miss Monroe's death.

[illegible] those inaccuracies, might be [illegible] substantial fictionalization. See Rosemont Enterprises v. Random House, [illegible] (Sup. Ct. N.Y. Co. [illegible]), aff'd without opinion, [illegible] 2d 943 (1st Dept. [illegible] 196[illegible]); [illegible] v. Random House, Inc., [illegible] (196[illegible]).

Nor would a mere allegation of such publication be sufficient. As noted above, [illegible] (and Marilyn Monroe was certainly a public figure, see paragraph [illegible] of the Complaint), can recover only if it is proved that defendants acted with knowledge of the book's falsity or with reckless disregard of its truth or falsity. Time v. Hill, 385 U.S. 374 (1967). There is no such allegation here and, in the absence of such allegation, the Complaint is insufficient to the extent it purports to rest upon fictionalization. Cahn v. Community Newspapers, [illegible] Misc. 2d 574 (Sup. Ct. Nass. Cty.), aff'd 27 App. Div. 2d 543 (2d Dept. 1966).

Moreover, if the Complaint suggests that plaintiff was considering a claim that Miss Monroe's life had been fictionalized, he plainly abandoned that claim in the course of this litigation. Plaintiff has conceded that he cannot show such fictionalization and admitted that such fictionalization,

[illegible] particulars [illegible]

[illegible] portrayal [illegible]

[illegible] answer (Exhibit [illegible]

[illegible] inaccuracies [illegible]

[illegible] statement [illegible]

[illegible] as follows:

> [illegible] feature writer who has [illegible] work of other feature writers [illegible] a book with [illegible] (to join the hungry ranks of those who coin a word), that is, facts which have no existence [illegible] magazine or newspaper [illegible] which are not [illegible] manipulate emotion in the Silent Majority.

[illegible] of page [illegible]

[illegible] the book contains instead the following:

> [illegible] published show [illegible] conventional approach. The first, a biography, Marilyn Monroe, written while she was still alive, is filled with interesting psychoanalytical insights of the sort one can hear at a New York dinner table when two intelligent people are analyzing a third, but his material is reamed with overpraised and hollow anecdotes, untrustworthy by the very style of their prose, a feature writer heating up the old dishes of other feature writers, and so a book which has fewer facts than factoids (to join the hungry ranks of those who coin a word), that is, facts which have no existence before appearing in a magazine or newspaper, creations which are not so much lies as a product to manipulate emotion in the Silent Majority." (emphasis added)

[illegible]

MR. K[illegible] ([illegible] counsel): [illegible] every statement [illegible]

Q. Contents?

A. Contents is [illegible] MARILYN.

MR. BARRY SINGER (plaintiff's counsel): I would object [illegible]

MR. CURTIS (Kaiser's counsel): May we ask the basis [illegible]

MR. BARRY SINGER: The basis of my objection is that it is irrelevant. It is the same basis for the objection that I made to an interrogatory which asks substantially the same thing.

Following further discussion among counsel, the point was repeated (transcript page 25):

MR. CURTIS: I think you (referring to plaintiff's counsel, Barry Singer) said it was irrelevant. Are you

[illegible] inaccuracies [illegible] that any such [illegible]

[illegible] complaint [illegible] discovery process, the [illegible] is quite distinct from [illegible] against [illegible] may have [illegible] her death [illegible] cannot [illegible] twenty years later.

CONCLUSION

For all of the foregoing reasons, defendant Norman Mailer's motion to dismiss and/or for summary judgment should be granted. This action is plainly without merit and should not further burden the parties and this Court.

Dated: New York, New York
October [illegible], 197[illegible]

Respectfully submitted,
Rembar & Curtis
Attorneys for defendant
Norman Mailer
19 West 44th Street
New York, New York
(212) 575-2500

State of [illegible]
County of [illegible] York

[illegible]

[illegible]

[illegible]

[illegible]

Sworn to before me this
[illegible] day of October [illegible]

[illegible]

Commission Expires March 30, 1980