# Exhibit 7

To be argued by
DAVID Z. ROSENSWEIG

N.Y. Co. Clerk's Index No. 01527/75

# New York Supreme Court

## APPELLATE DIVISION – FIRST DEPARTMENT

DO NOT CIRCULATE

JUN 3 1980

N.Y.S. LAW LIBRARY

AARON FROSCH, Executor of the Estate
of Marilyn Monroe,

                Plaintiff-Appellant,

       -against-

GROSSET & DUNLAP, INC., ALSKOG, INC.,
NORMAN MAILER, LAWRENCE SCHILLER and
ALLEN HURLBURT,

             Defendants-Respondents.

## BRIEF FOR DEFENDANT-RESPONDENT
## GROSSET & DUNLAP, INC.

KATZ, LEAVY, ROSENSWEIG AND SINDLE
Attorneys for Defendant-Respondent
GROSSET AND DUNLAP, INC.
1211 Avenue of the Americas
New York, N.Y. 10036
(212) 730-0808

Printinghouse Press    Bar Ass'n Steno Serv. (Appeals Section) 212 687-0384



TABLE OF CONTENTS

|  | Page |
|---|---|
| Introductory Statement | 1 |
| Counterstatement of Question Presented | 3 |
| Argument | 4 |
| A biography of a public figure is protected by the First Amendment to the United States Constitution and is not an invasion of the rights of such public figure. | |
| Conclusion | 12 |



SUPREME COURT OF THE STATE OF NEW YORK

APPELLATE DIVISION: FIRST DEPARTMENT

- - - - - - - - - - - - - - - - - - - - - - X
                                              :
AARON FROSCH, Executor of the Estate          :
of Marilyn Monroe,                            :
                                              :
                    Plaintiff-Appellant,      :
                                              :
         -against-                            :    New York County
                                              :    Index No. 01527/75
GROSSET & DUNLAP, INC., ALSKOG, INC.,         :
NORMAN MAILER, LAWRENCE SCHILLER and          :
ALAN HURLBURT,                                :
                                              :
                    Defendants-Respondents.   :
- - - - - - - - - - - - - - - - - - - - - - X

BRIEF OF DEFENDANT-RESPONDENT
GROSSET & DUNLAP, INC.

INTRODUCTORY STATEMENT

This is an action brought by Aaron Frosch, executor of
the estate of Marilyn Monroe (hereinafter "Appellant"), against
Norman Mailer (hereinafter "Mailer"), the publisher Grosset &
Dunlap, Inc. (hereinafter "Grosset), and several others who
were involved in the publication of a biography of Marilyn Monroe.
This biography entitled "MARILYN" was published in 1973, some
ten years after the death of Miss Monroe.  During her lifetime,
Marilyn Monroe was a well known and well publicized movie
actress and photographic model, whose private and professional
life was, during her life, and is, at the present time, a matter
of great public interest.  Consequently, she was and is a

(1)

figure.

The present action was commenced in 1975 approximately three years after the first publication of MARILYN. The gravamen of Appellant's claim is that MARILYN is not a biography, but rather a product put together in book form for sale and profit "to effect a conversion and wrongful commercial exploitation and appropriation of the property right of publicity" possessed by the decedent and her estate. (A19) At the same time Appellant acknowledges that MARILYN was an account of the life of the public figure, Marilyn Monroe. (A33)   Three years after the institution of this suit, and after discovery was conducted, (2)   Mailer moved for summary judgment and Grosset cross-moved to dismiss the complaint for failure to state a cause of action and/or for summary judgment.   The court below granted the summary judgment motions and Appellant has appealed therefrom.

Appellant's brief (pages 2-6, inclusive) is entitled "Statement of Facts."   However, it is not a statement of "Facts" but rather a legal argument containing bare conclusory statements without legal support.

_____

(1)   The decision of Judge Greenfield in the Court below held:

"There is no question that during her lifetime Marilyn Monroe was a public person, . . .".

(2)   Appellant's allegations at p. 15 of its brief to the contrary are inaccurate.

-2-

2660

In its "Statement of Facts" Appellant's brief
defectively and artfully quotes portions of the book.
These few scant pieces of imaginary dialogue, which are
comments and observations by the author of Marilyn Monroe's
life, do not transform MARILYN from what it is, a biograpy
of a real person.  It remains a biography.  Indeed, Appellant
does not so much as offer a single affidavit in support
of its contentions. We suggest that the best statement of
the facts in this case is the book itself.(A9)  As the Court
below held, "other than a few fictionalized conversations,
the book is clearly an account of Marilyn Monroe's life and
the author's observations thereon are privileged as fair
comment."(A15)

### COUNTERSTATEMENT OF QUESTION INVOLVED

Did the Court below err as a matter of law in holding
that a biography of a public figure is protected by the
First Amendment to the United States Constitution and is not
an invasion of such public figure's rights?

-3-



## ARGUMENT

A BIOGRAPHY OF A PUBLIC FIGURE
IS PROTECTED BY THE FIRST
AMENDMENT OF THE UNITED STATES
CONSTITUTION AND IS NOT AN
INVASION OF SUCH PUBLIC FIGURE'S
RIGHTS.

During her lifetime, Marilyn Monroe was a well-known and well publicized movie actress and photographic model whose private and professional life was and continues to the present time to be a matter of great public interest. The Court below so found (A-12) and, indeed, Appellant in its Complaint has so emphasized (A18).

The book MARILYN is a 271-page biography and account of the life of Miss Monroe, an actual and real person. As courts have uniformly held, " . . . a public figure can have no exclusive rights to his own life story, and others need no consent or permission of the subject to write a biography of a celebrity." (see Rosemont Enterprises, Inc. v. Random House, Inc., 294 NYS 2d 122 (Sup. Ct. NY City 1968), aff'd 301 NYS 2d 948 (1st Dept. 1969)). The biography of a public figure (living persons) is beyond the ambit of the right of privacy as enunciated in Sections 50 and 51 of the Civil Rights Law of the State of New York. See: Sidis v. F-R Publishing Corp., 113 F. 2d 806 (2nd Cir. 1940); Koussevitsky v. Allen, Towne And Heath, 188 Misc. 479

-4-

2662

(Sup. Ct. NY Cty, 1947), aff'd 272 App. Div. 759 (1st
Dept. ____).

      Indeed, in <u>Spahn</u> v. <u>Julian Messner, Inc.</u>, 18 NY 2d
324 (1966) relied upon by Appellant, the Court held that a
public personality is substantially without a right of
privacy in matters of public interest.  To hold to the
contrary would be violative of the First Amendment of the
United States Constitution.  As set forth in <u>Thornhill</u> v.
<u>Alabama</u>, 310 U.S. 88, cited by the Court below:

> "Freedom of discussion, if it would
> fulfill its historic function in this
> nation, must embrace all issues about
> which information is needed or appropriate
> to enable the members of society to cope
> with the exigencies of their period." (at p. 102)

      The statutory right of privacy in New York State
is purely personal to the named or depicted individual,
cannot be assigned (<u>Rosemont Enterprises, Inc.</u> v. <u>Urban
Systems, Inc.</u>, 72 Misc. 2d 788 (Sup. Ct. NY Cty 1973))
and does not survive such individual's death.  There may be
no recovery against a third party where the invasion takes
place after the death of the individual.  <u>Price</u> v. <u>Hal Roach
Studios, Inc.</u>, 400 F. Supp. 836 (S.D.N.Y., 1975), <u>Rome Sentinel
Company</u> v. <u>Boustedt</u>, 43 Misc. 2d 598 (Sup. Ct. Oneida Cty
1964); <u>Schumann</u> v. <u>Loew's Inc.</u>, 129 Misc. 38, 135 N.Y.S. 2d
361 (Sup. Ct. N.Y. Cty, 1954).

      Being aware of the non-survivability after death of
the right to privacy, Appellant has sought to have its

-5-

2663

████████ fall within the ambit of the so-called "right of

publicity" which has been characterized as essentially a

████ ██████ ████ ████████ the "pec████ val██ which attaches

to the names and pictures of public figures, particularly

athletes and entertainers, and the right of such people to

this financial benefit." (See Rosemont Enterprises, Inc. v.

Random House, Inc., supra, p. 129.)

But even this "right" must yield to the First Amendment

and its fostering of free expression, and moreover doesn't

even encompass within it the publication of biography.  The

right is one related esentially to advertising and merchandis-

ing.  As succinctly and aptly stated in Rosemont, supra at

page 129:

> "It is not, however, every public use of a
> prominent person's name that he has a right
> to exploit financially.  It is the unautho-
> rized use in connection with the sale of a
> commodity for advertising [emphasis in
> original] purposes which is recognized as
> an actionable wrong under New York law.
> The same requirement of commerical use
> which limits the New York right of privacy
> inheres in the 'right of publicity' (Chapin
> v. National Broadcasting Co., D.C. 15 F.R.D.
> 134; cf. Haelan Laboratories v. Topps Chewing
> Gum, 202 F. 2d 866).

> "The publication of a biography is clearly
> outside the ambit of 'commerical use'
> contemplated by the 'right of publicity'
> and such right can have no application to
> the publication of factual material which
> is constitutionally protected.  Just as a
> public figure's 'right of privacy' must
> yield to the public interest, so too must
> the 'right of publicity' bow where such
> conflicts with the free dissemination of
> thoughts, ideas, newsworthy events and
> matters of public interest."

> "Because of such considerations, a public
> figure can have no exclusive rights to his
> own life story, and others need no consent
> or permission of the subject to write a
> biography of a celebrity."

2664

See also <u>Hicks</u> v. <u>Casablanca Records</u>, 464 F. Supp.
426 (S.D.N.Y. 1978) at page 430 where the " . . . Court finds
that the same privileges and exemptions 'engrafted' upon the
privacy statute are engrafted upon the right of publicity."

Aware that it cannot otherwise hope to succeed,
Appellant by some alchemy has sought to transform what is
a life story, a biography, into "a novel about an imaginary
person or purposefully confused combination of fact and
fiction present (ed) [sic.] for entertainment purposes to
thrill the reading public." This is much the same position
taken by the Appellant below where they maintained that the
biography was a fictionalized text covering an imaginary
person (A14, A87), a position which the Court aptly noted
was contradicted by its bill of particulars which expressly
stated that the book was an account of Marilyn Monroe's life
(A14, A33) (3)

The best evidence of the nature of the work is the
book itself, which is part of the record in this appeal.
It is 271 pages in length, about a real person, her torments,
her relationships with others, her professional life, her
strengths and weaknesses, and the author's observations
and comments, provocative in certain instances, on the life
of this very public person and figure. The few quotations

_____

(3)  Interestingly enough, the Complaint does not allege
there are any fictionalized passages in MARILYN.

-7-

Appellant's brief from the book were made in an attempt
to cast doubt on the nature of the book. But the mere
allegation by the Appellant and the mere characterization
by the Appellant of the nature of the book does not by some
magic transform a biography and a life story into pure imaginery
fiction. And like the legendary alchemist, the Appellant
must fail in its attempt. In essence, again as heretofore
noted, the imaginary dialogue was scant, clearly apparent
as such, and was created to set forth comments, observations,
perceptions and judgments on the life of this personality.
A mere reading indicates the serious nature of the work,
that it is a portrayal of the real life of a real person
as perceived by a recognized author and that no issue of
fact has been presented.

Appellant is relying heavily on Spahn v. Julian
Messner, Inc., 43 Misc. 2d 219, 250 N.Y.S 2d 529, aff'd 23
App. Div. 2d 216, 260 N.Y.S. 2d 451, aff'd 18 N.Y. 2d 324,
274 N.Y.S. 2d 877, reargued in 21 N.Y. 2d 124, 286 N.Y.S.
2d 832 (1966,1967). But the facts presented in the instant
case are distinctly different from the fact pattern in
Spahn. As the Court in Hicks noted, the lower court in
Spahn found "deliberate falsifications of the circumstances
surrounding the life of the plaintiff . . . ." and that the Spahn
holding "should be and was intended to be limited to its
facts . . . "

Indeed the lower court in Spahn noted that "the breach

-8-

and depth of the offending characteristics of the book are
so all-pervasive as to render impracticable their complete
recitation without inordinately extending the length of
this opinion" and that as such they were all-pervasive
distortions of Spahn's life.

The Court of Appeals on reargument succinctly set
forth the <u>Spahn</u> doctrine:

> ". . . before recovery by a public figure may
> be had for an unauthorized presentation of
> his life, it must be shown, in addition to
> the other requirements of the Statute, that
> the presentation is infected with material
> and substantial falsification and that the
> work was published with knowledge of such
> falsification or with a reckless disregard
> from the truth."

and, as the Court below summarizes <u>Spahn</u> ". . . a few scant
biographical facts were appendages for an essentially
fictional account." (A15)

This is clearly not the situation here where as the
Court below stated, this is a serious, thought-provoking
life story about a real person containing "a few fictionalized
characterizations . . ." (A15). And in any event <u>Spahn</u>
pertains to a right of privacy, a right which expires with
death, as the Court below again so aptly noted, stating:

> "Although, as plaintiff contends, when
> biography departs from facts and becomes

-9-

2667

a work of fiction exploiting the name of
a well-known person there is an actionable
breach of privacy, (See Spahn v. Julian
Messner, Inc., supra) an such claim does
not survive death, as it is based on
injuries to feeling, emotion, and personal
pride, as to which 'death is a logical
conclusion.' Factors, etc., Inc., v. Pro
Arts, Inc., 579 F.2d 215, 221-222 (2d Cir.
1978)." (A 14)

Even Appellant, whom we must assume searched the book
carefully, was only able to find the isolated and incidental
few alleged fictionalizations which are set forth in its
brief. The book is what it purports to be, a biography
setting forth an account of the life story of a public
personality. As such, it is a work privileged under the
First Amendment and no substantial issue of fact, is presented.
The order granting the motion for summary judgment was clearly
correct and should be sustained.

The foregoing assumes the existence of a descendible
"right of publicity" in the State of New York although as
noted, even this right is not applicable to biography. In
any event we suggest there is a serious question whether in
this State, (a) there is such a right or, (b) assuming such a

-10-

right, whether it is descendible without first having met certain conditions precedent.

We respectfully refer the Court to Wojtowicz v. Delacorte Press, 43 N.Y. 2d 858 (1978) where the Court of Appeals appears to question and cast doubt upon the recognition of the existence of such common law right in New York.

Further, even assuming the existence of such right in New York, its descendibility is not unrestricted but clearly limited. Price v. Hal Roach Studios, Inc., 400 F. Supp. 836, 844 (S.D.N.Y. 1975) cited by Appellant in support of its position conditioned the descendibility of the right on the exploitation of same during the lifetime of the deceased. Such exploitation prior to death was also deemed a condition to descendibility in Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215 (2d Cir. 1978).

Thus, even if such right were otherwise available to Appellant, Marilyn Monroe's failure to exploit same during her lifetime (admitted by Appellant at A70-71) would pre-clude any descendibility.

Further, the clear trend of the law has been against the recognition of any descendible right of publicity whether or not there is exploitation during lifetime. See Lugosi v. Universal Pictures, 25 Cal 3rd 813, 603 P.2d 425, 5 Media Law Reporter 2185 (1979), where the Court held that the right "is embraced in the law of privacy and is protectible during one's lifetime but it does not survive the death of Lugosi"; Memphis

-11-

2669

pment Foundation v. Factor Etc., Inc., ____ F.2d ____

(Sixth Cir. 1980), where the Court held that "the right is

not inheritable. After death, the opportunity for gain

shifts to the public domain where it is equally open for all";

and Guglielmi v. Spelling-Goldberg Productions, 25 Cal. 3d

860, 603 P.2d 454, 5 Media Law Reporter 2208 (1979).


                              CONCLUSION

        The Decision and Order of Special Term should be

affirmed.


Dated:   April 2, 1980


                         Respectfully submitted,

                         KATZ, LEAVY, ROSENSWEIG & SINDLE
                          Attorneys for Defendant Respondent
                          GROSSET & DUNLAP, INC.
                         1211 Avenue of the Americas
                         New York, New York 10036
                         (212) 730-0808


Of Counsel:

David Z. Rosensweig
Stephen R. Stern


                              -12-