# Exhibit 10

1  WILLIAM E. WEGNER, SBN 101486
   Email: wwegner@gibsondunn.com
2  AMNON Z. SIEGEL, SBN 234981
   Email: asiegel@gibsondunn.com
3  GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
4  Los Angeles, California 90071-3197
   Telephone: (213) 229-7000
5  Facsimile: (213) 229-7520

6  Attorneys for Plaintiffs,
   MARILYN MONROE LLC and
7  ANNA STRASBERG

8  PETER T. HAVEN, SBN 175048
   Email: p.haven@mpglaw.com
9  MUSICK, PEELER & GARRETT LLP
   One Wilshire Boulevard
10 Los Angeles, CA 90017-3321
   Telephone: (213) 629-7765
11 Facsimile:  (213) 624-1376

12 JONATHAN G. POLAK (admitted *pro hac vice*)
   Email: jpolak@sommerbarnard.com
13 SOMMER BARNARD PC
   One Indiana Square, Suite 3500
14 211 N. Pennsylvania
   Indianapolis, IN  46204
15 (317) 713-3500 Phone
   (317) 713-3699 Fax
16
17 Attorneys for Plaintiff,
   CMG WORLDWIDE, INC.

18

19                 UNITED STATES DISTRICT COURT

20                 CENTRAL DISTRICT OF CALIFORNIA

21                        WESTERN DIVISION

22 CMG WORLDWIDE, INC., an Indiana      CASE NO.
   Corporation, and MARILYN MONROE     CV-05-02200-MMM (Ex)
23 LLC, a Delaware Limited Liability
   Company,                            SUPPLEMENTAL DECLARATION OF
24                                      AMNON Z. SIEGEL IN SUPPORT OF
                 Plaintiffs,            PLAINTIFFS' SUPPLEMENTAL BRIEF
25                                      IN SUPPORT OF PLAINTIFFS'
           v.                           OPPOSITION TO DEFENDANTS'
26                                      MOTION FOR SUMMARY
   TOM KELLEY STUDIOS, INC., a          JUDGMENT
27 California Corporation,
                                        [Plaintiffs' Supplemental Brief in Support of
28                 Defendant.           Plaintiffs' Opposition to Defendants'
                                        Motion for Summary Judgment;

Gibson, Dunn &
Crutcher LLP

Supplemental Declaration of Anna Strasberg and exhibits attached thereto; Declaration of Daniel Siegel and exhibits attached thereto, filed concurrently herewith]

Honorable Margaret M. Morrow

CMG WORLDWIDE, INC., an Indiana Corporation, and MARILYN MONROE, LLC, a Delaware Limited Liability Company,

        Plaintiffs,

        v.

THE MILTON H. GREENE ARCHIVES, INC.,

        Defendant.

THE MILTON H. GREENE ARCHIVES, INC.,

        Plaintiff,

        v.

CMG WORLDWIDE, INC., an Indiana Corporation, and MARILYN MONROE, LLC, a Delaware Limited Liability Company, ANNA STRASBERG, an individual,

        Defendants.

TOM KELLEY STUDIOS, INC., a California Corporation,

        Plaintiff,

        v.

CMG WORLDWIDE, INC., an Indiana Corporation, and MARILYN MONROE, LLC, a Delaware Limited Liability Company, ANNA STRASBERG, an individual,

        Defendants.

Gibson, Dunn & Crutcher LLP

2

## SUPPLMENTAL DECLARATION OF AMNON Z. SIEGEL

I, AMNON Z. SIEGEL, declare as follows:

1.     I am an attorney at law, duly licensed to practice before all of the Courts of the State of California.  I am an associate at Gibson, Dunn, and Crutcher LLP in Los Angeles, California, and I represent Plaintiff Marilyn Monroe, LLC ("MMLLC") and cross-defendant Anna Strasberg ("Strasberg") in this consolidated action.  I have personal knowledge of the matters stated herein and could, and would, testify competently thereto if necessary.

2.     Attached hereto as Exhibit A is a true and correct copy of an advertisement featuring Marilyn Monroe for Lustre-Crème Shampoo printed from the webpage: http://www.allposters.com/-sp/Luster-Creme-Posters_i1113509_.htm.

3.     Attached hereto as Exhibit B is a true and correct copy of an advertisement featuring Marilyn Monroe for a make-up product called "New-U" printed from the webpage: http://www.allposters.com/-sp/Marilyn-Monroe-New-U-Posters_i995037_.htm.

4.     Attached hereto as Exhibit C is a true and correct copy of an advertisement featuring Marilyn Monroe for LAH Jewelers printed from the webpage: http://www.allposters.com/-sp/LAH-Jewelers-Posters_i1113628_.htm.

5.     Attached hereto as Exhibit D is a true and correct copy of excerpts from the Legislative Intent Service's History Report and Analysis regarding California Civil Code Section 990 (now Cal. Civ. Code § 3344.1).  Specifically, attached hereto as Exhibit D is a true and correct copy of a letter, dated March 5, 1984, from the sponsor of the bill in the Senate, Senator William Campbell, to the Motion Picture Association of America and a memorandum in support of the bill.  The memorandum in support of the bill circulated by Senator Campbell described the state of the law in California on the issue of whether a post-mortem right of publicity existed as follows:

In summary, the law in California with respect to the descendability of the right of publicity is one of the following:  (1) the right does not

descend, whether or not exploited during the person's lifetime; (2) the

right descends in gross if it is exploited during the person's lifetime; or

(3) the right descends if it is exploited during the person's lifetime, but

only with respect to the types of exploitation engaged in by the person

during his or her lifetime.

(memo attached to March 5, 1984 letter from Sen. William Campbell to Motion

Picture Association of America). The letter from Senator Campbell further

states, "California law regarding the descendability of the right of publicity is in

a confused state" because of the ambiguity of the Lugosi decision and "[i]t is

this ambiguity that [the amended statute] seeks to eliminate." The bill's sponsor

also indicates in the letter that the amended statute "adopts of the philosophy"

of the dissent of Chief Justice Bird in the *Lugosi* case.

6.      Attached hereto as Exhibit E is a true and correct copy of web

pages printed from: http://www.ss.ca.gov/cgi-bin/sii_search.cgi on the

California Secretary of State's California Business Portal relating to Successor-

in-Interest concerning Albert Einstein. The webpage shows that the claimant of

Mr. Einstein's posthumous right of publicity, the Hebrew University of

Jerusalem, was apparently transferred this right by will. The webpage also

states that Mr. Einstein died on April 18, 1955.

7.      Attached hereto as Exhibit F is a true and correct copy of a web

page printed from: http://www.albert-einstein.org/history5.html concerning the

"History of the Estate of Albert Einstein."

8.      Attached hereto as Exhibit G is a true and correct copy of a web

page printed from: http://www.forbes.com/2006/10/20/tech-

media_06deadcelebs_cx_pf_top-earning-dead-celebrities_5.html. The web

page states: "Rights to Einstein's name belong to the Hebrew University of

Jerusalem . . . ." This web page is from an article by Forbes magazine regarding

the top-earning dead celebrities, which can be obtained from:

http://www.forbes.com/2006/10/23/tech-media_06deadcelebs_cx_pk_top-earning-dead-celebrities_land.html.  Mr. Einstein was ranked fifth in Forbes's list.

9.      Attached hereto as Exhibit H is a true and correct copy of a web page printed from:  http://www.ss.ca.gov/cgi-bin/sii_search.cgi on the California Secretary of State's California Business Portal relating to Successor-in-Interest concerning Truman Capote.

10.      Attached hereto as Exhibit I is a true and correct copy of a web page printed from the New York Times online: http://topics.nytimes.com/top/reference/timestopics/people/c/truman_capote/index.html?query=SCHWARTZ,%20ALAN%20U&field=per&match=exact that claims that Alan U. Schwartz was a longtime friend of Mr. Capote's and his literary executor.

11.      Attached hereto as Exhibit J is a true and correct copy of web pages printed from:  http://www.ss.ca.gov/cgi-bin/sii_search.cgi on the California Secretary of State's California Business Portal relating to Successor-in-Interest concerning Al Jolson.  There are eighteen different claimants (charities, universities, and civic organizations) each claiming to have received a 5.555% interest in Mr. Jolson's statutory posthumous right of publicity by will.  According to the web page, Mr. Jolson's date of death was October 23, 1950.

//

//

//

//

//

Gibson, Dunn &
Crutcher LLP

3

1    I declare under the penalty of perjury under the laws of the United States that

2   the foregoing is true and correct and that this declaration was executed on the 18th day

3   of December, 2006, at Los Angeles, California.

4

5

6                                   AMNON Z. SIEGEL

7

100134318_1.DOC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

4

# Exhibit A



# Exhibit B



# Exhibit C



# Exhibit D

LEGISLATIVE
INTENT SERVICE

712 Main Street, Woodland, CA 95695
(916) 666-1917 • (916) 441-7959 • Cable: Deadcat

October 19, 1989

Ms. Kelli L. Sager
GIBSON, DUNN & CRUTCHER
333 South Grand Avenue
Los Angeles, California   90071

Re:  Civil Code Section 990
        as added by Chapter 1704, Statutes of 1984; and
     Civil Code Section 3344
        as added by Chapter 1595, Statutes of 1971 and
        as amended by Chapter 1704, Statutes of 1984

Dear Ms. Sager:

Pursuant to your request for the legislative history of the
above-referenced code sections, please find enclosed the
following:

1.  All versions of Assembly Bill 826
    (Vasconcellos-1971);
2.  Excerpt regarding Assembly Bill 826 from the 1971
    Assembly Final History;
3.  Two analyses of Assembly Bill 826 prepared for the
    Assembly Committee on Judiciary;
4.  Analysis of Assembly Bill 826 prepared for the
    Senate Committee on Judiciary;
5.  Document regarding Assembly Bill 826 from the
    legislative bill file of the Senate Committee on
    Judiciary;
6.  Material regarding Assembly Bill 826 from the
    legislative bill file of Assemblyman John
    Vasconcellos;
7.  Post-enrollment documents regarding Assembly
    Bill 826;
8.  Material regarding Assembly Bill 826 from the file
    of the Legislative Representative of the State Bar
    of California;
9.  "Commercial Appropriation of an Individual's Name,
    Photograph or Likeness:  A New Remedy for
    Californians," excerpted from the Pacific Law
    Journal, Volume 3, 1972;

Ms. Kelli L. Sager
October 19, 1989
Page - 2 -

    10.  All versions of Senate Bill 613  (Campbell-1984);
    11.  Excerpt regarding Senate Bill 613 from the 1983-84
         Senate Final History;
    12.  Analysis of Senate Bill 613 prepared for the Senate
         Committee on Judiciary;
    13.  Material regarding Senate Bill 613 from the
         legislative bill file of the Senate Committee on
         Judiciary;
    14.  Analysis of Senate Bill 613 prepared by the
         Legislative Analyst;
    15.  Two Consent analyses of Senate Bill 613 prepared by
         the Senate Democratic Caucus;
    16.  Material regarding Senate Bill 613 from the
         legislative bill file of the Senate Democratic
         Caucus;
    17.  Third Reading analysis of Senate Bill 613 prepared
         by the Senate Republican Caucus;
    18.  Analysis of Senate Bill 613 prepared for the
         Assembly Committee on Judiciary;
    19.  Analysis of Senate Bill 613 prepared for the
         Assembly Committee on Ways and Means;
    20.  Third Reading analysis of Senate Bill 613 prepared
         by the Assembly Office of Research;
    21.  Legislative Counsel's Rule 26.5 analysis of Senate
         Bill 613;
    22.  Material regarding Senate Bill 613 from the
         legislative bill file of Senator William Campbell;
    23.  Post-enrollment documents regarding Senate Bill 613
         - (Governor Deukmejian's legislative bill files are
         under restricted access and are not available to the
         public).

Civil Code Section 3344 was added in 1971 following legislative
passage of Assembly Bill 826.  (See Exhibit #1)  Assemblyman John
Vasconcellos authored this legislation, apparently at the request
of individuals whose names were used in connection with a
magazine advertising scheme.  (See Exhibit #5)  Assembly Bill 826
was heard by the Assembly and Senate Committees on Judiciary
before being passed by both Houses receiving only one "No" vote.
(See Exhibits #3, #4, and #7, document PE-1)  Former Governor
Ronald Reagan signed the measure afterwhich it was sent to the
Secretary of State where it became Chapter 1595 of the Statutes
of 1971.  (See Exhibits #1f and #2)

Prior to the addition of Civil Code Section 3344, manufacturers
and retailers would use an individual's name or likeness for
commercial purposes without their consent.  Unless their name had
an ascertainable commercial value, they were without an effective
legal remedy.  The purpose of Assembly Bill 826 was to provide a

Ms. Kelli L. Sager
October 19, 1989
Page - 3 -


remedy to these individuals by establishing minimum civil damages
in suits commenced by them for usage of their name, photograph,
or likeness for such purposes without their consent. (See
Exhibits #3, #4, page 3, #6, documents A-2 and A-4, and #7,
document PE-4) The evidence suggests that the California statute
was modeled after comparable statutes of other states,
particularly New York, Virginia, Oklahoma, and Utah. (See
Exhibits #3a, #6, documents A-4 and A-5, and #9)

Civil Code Section 3344 was amended and Civil Code Section 990
added in 1984 by the legislative passage of Senate Bill 613.
(See Exhibit #10) Senate Bill 613 was introduced by Senator
William Campbell and supported by the Screen Actors Guild and the
heirs of certain celebrities. (See Exhibits #10 and #15) In the
Senate, the bill was heard in the Judiciary Committee. (See
Exhibit #12) While before the Assembly, Senate Bill 613 was
heard in the Assembly Committee on Judiciary and the Assembly
Committee on Ways and Means. (See Exhibits #18 and #19) After
passage in both Houses, the measure was approved by Governor
Deukmejian on September 30, 1984, and chaptered on that date by
the Secretary of State as Chapter 1704 of the Statutes of 1984.
(See Exhibits #10j and #11)

Senate Bill 613 extended the law regarding the unauthorized use
of a person's name, photograph, and likeness to include a
person's voice or signature and prohibited unauthorized use for
the purpose of selling goods or providing services. Damages were
increased from $300.00 per prohibited use to the greater of
$750.00 or the actual damages, and included in the recovery any
profits from the unauthorized use that were attributable to the
use and not considered in computing the actual damages. Punitive
damages and the recovery of attorney's fees and costs were also
provided for in the bill.

I direct your attention to a letter dated November 8, 1977, from
the Legislative Counsel to the Honorable John Vasconcellos
wherein the question "Does Section 3344 of the Civil Code
authorize a person to receive a minimum recovery of $300 per
prohibited use of another person's likeness without consent?" is
addressed. (See Exhibit #6, documents A-12 through A-14) It
seems that this analysis may be of assistance to you with respect
to understanding how damages are computed under the section.

Any analysis provided is based upon the nature and extent of your
request to us, as well as our brief review of the enclosed
documents. As such, it must be considered tentative in nature.
A more conclusive statement of the impact of the legislative
history in your case would be dependent upon a complete
understanding of all of the factual issues involved and the

Ms. Kelli L. Sager
October 19, 1989
Page - 4 -

applicable legal principles.  You may wish to involve us to this
greater extent in order to utilize our skills as expert witnesses
in your case.  We have had extensive experience in presenting
legislative documents to the courts in this role.  (Please see
Follow-up Services.)

If you do desire to retain our firm in this capacity, a retainer
will be required.  The size of the fee will depend upon the
complexity of the matter and length of time the additional work
is estimated to require.  Please note that your decision to
retain us should be made at the earliest possible opportunity as
our present policy is to continue to furnish materials such as
those enclosed to all attorneys requesting them, regardless of
whether or not another attorney may be involved in the same or a
similar case as yours.  Once a retainer commitment is made,
however, none of the enclosed materials will be voluntarily
released to a competing party without first checking with you and
determining your position.  (Please see our policies statement at
the front of this package and the follow-up services indicated
which follow.)

Evidence of legislative intent is relied upon in both federal and
state courts.  For example, in California authority for
submission of the enclosed documents to the court as evidence may
be found in California Code of Civil Procedure Section 1859.
Furthermore, California courts are authorized to take judicial
notice of evidence of legislative intent pursuant to California
Evidence Code Section 452(c).  (See Post v. Prati, 90 Cal. App.
3d 626)  In addition to the materials already mentioned, points
and authorities on statutory and case law authority for the use
of legislative documents are included in the package.

I appreciate the opportunity to provide this assistance and hope
that these efforts will be of value to you.

Very truly yours,

LEGISLATIVE INTENT SERVICE

JAN S. RAYMOND
Director

JSR:sas
Enclosures
981472:JSR/DB
CC 990 & 3344
CC33

DISTRICT OFFICE
1661 HANOVER ROAD, SUITE 203
CITY OF INDUSTRY, CA 91748
PHONE: (818) 964-1443

23161 LAKE CENTER DRIVE
SUITE 205
EL TORO, CA 92630
PHONE: (714) 770-5533

JERRY M. HALEVA
CHIEF OF STAFF

# California Legislature



HEALTH AND WELFARE

VICE CHAIRMAN
CHAIRMAN, JOINT COMMITTEE ON
FIRE, POLICE, EMERGENCY AND
DISASTER SERVICES

JOINT LEGISLATIVE BUDGET COMMITTEE
CHAIRMAN, SELECT COMMITTEE
ON BUSINESS DEVELOPMENT

KAREN L. SMITH
DISTRICT COORDINATOR

## SENATOR
## WILLIAM CAMPBELL

March 5, 1984

Anne R. Grupp, Esq.
Motion Picture Association of America
14144 Ventura Boulevard
Sherman Oaks, California 91423

     Re:  Senate Bill 613

Dear Ms. Grupp:

I am writing in response to your memorandum dated July 22, 1983,
to the Assembly Judiciary Committee regarding my proposed right
of publicity legislation.  We have considered your comments in
revising Senate Bill 613, and I would like to take this
opportunity to address the specific concerns raised in your
memorandum.  A copy of the revised bill and a supporting
memorandum are enclosed for your information.

     1.  The vague language you referred to ("any other commercial
purpose for which consent is required under the common law") has
been deleted from SB 613.  The revised bill more closely conforms
to the language enacted as Civil Code §3344.

Senate Bill 613 has taken great care to provide protection to
dead persons to the same extent provided for living persons.
Therefore, a biographical drama regarding a deceased person could
be produced under the same circumstances as with respect to a
living person.  In fact, SB 613 adopts the philosophy of the
concurrence by Chief Justice Bird in a case directly on point
regarding a fictionalized version of Rudolph Valentino's life,
Guglielmi v. Spelling-Goldberg Productions, 25 Cal. 3d 860, 603
P. 2d 454, 160 Cal. Rptr. 352 (1979), and the dissent in the

A-14

Anne R. Grupp, Esq.
Page two
March 5, 1984

related case, Lugosi v. Universal Pictures, 25 Cal. 3d 813, 603
P. 2d 425, 160 Cal. Rptr. 323 (1970). In the Valentino case, the
concurrence noted that other courts had balanced the right of
publicity with expressive activities (as distinguished from more
purely commercial activities such as the use of a likeness on an
item of merchandise) and stated: "Whether the publication
involved was factual and biographical or fictional, the right of
publicity has not been held to outweigh the value of free
expression". §3344 cannot, and is not intended to, supersede the
First Amendment.

   2. Subsection (d) of §3344 remains unchanged from the
enacted language except as required to conform to the new
subsection (a). Presumably, §3344(d) has not caused problems.

   3. One of the important clarifications of the law that SB
613 provides is the express recognition of the transferability of
the right of publicity by contract. Therefore, SB 613 would
cause the rights of publicity exclusively granted to any motion
picture producer during an actor's lifetime to remain enforceable
for 50 years after the actor's death as against any unauthorized
third parties. Thus, SB 613 promotes, and does not restrict, the
business of legitimate holders of rights in motion picture
posters.

   4. Rather than rely on the laws of intestate succession in
cases where a person does not transfer his or her right of
publicity during life by contract, will or trust, the revised SB
613 establishes a residuary class of limited number. A majority
of the class can exercise the deceased person's right, obviating
the need for unanimity. The revised version of the bill also
shortens the term of protection to life plus 50 years (rather
than life plus 100 years as passed by the Senate). Also, an
exculpatory clause has been added that excuses innocent
infringers who make reasonable efforts to locate owners of
decedents' rights.

   5. California law regarding the descendibility of the right
of publicity is currently in a confused state. Although in the
Valentino case, the California Supreme Court cited its ruling in
Lugosi for the proposition that the right of publicity is not
descendible, the Lugosi case is susceptible of being interpreted
to mean that the right of publicity is descendible if the person
exercised the right during his or her lifetime. Indeed, other
courts and commentators have interpreted California law under the
Valentino and Lugosi cases and have been unable to decide [in

A-15

Anne R. Grupp, Esq.
Page three
March 5, 1984


Groucho Marx Productions v. Day and Night Co., 689 F.2d 317 (2d
Cir. 1981)] or have decided for descendibility in spite of the
Valentino case [in Acme Circus Operating Co., Inc. v. Kuperstock,
711 F.2d 1538 (11th Cir. 1983)].   It is this ambiguity that SB
613 seeks to eliminate.

I hope and trust that you will no longer perceive a need to
oppose the passage of SB 613.  Other states have statutes and
case law recognizing perpetual descendibility for the right of
publicity.  The balanced approach of SB 613 could serve as a
model for the rest of the country in clarifying a confusing area
of law, if the bill is enacted.

I would be happy to arrange a meeting between you and me, or our
respective representatives, if you are still concerned.

Sincerely,


WILLIAM CAMPBELL

WC:cjr

cc:  Assembly Judiciary Committee Members

A-16

## RIGHT OF PUBLICITY - SENATE BILL 613

In general, the right of publicity is the exclusive right of a person to authorize the use of his or her name or likeness in connection with commercial undertakings. The California legislature enacted Civil Code § 3344 in 1971, codifying the right of publicity and according statutory recognition to the previous common law evolution of that right.

### California case law

In two recent decisions, the Lugosi and Valentino cases [Lugosi v. Universal Pictures, 25 Cal.3d 813, 603 P.2d 425, 160 Cal. Rptr. 323 (1979), and Guglielmi v. Spelling-Goldberg Productions, 25 Cal.3d 860, 603 P.2d 454, 160 Cal. Rptr. 352 (1979), respectively], the California Supreme Court considered the extent to which the right of publicity is descendible in California. These cases were among the first in the nation to address this question. Unfortunately, the result of these two cases is complete confusion as to the descendibility of the right in California.

The decision in the Valentino case was a very brief opinion stating that "the right of publicity protects against the unauthorized use of one man's name, likeness or person-ality, but that the right is not descendible and expires upon the death of the person so protected." The quoted language purported to be a synopsis of the Lugosi decision; however, a reading of the Lugosi opinion demonstrates that the holding in that case was much narrower than the Valentino opinion indicates.

The Court certainly held in Lugosi that if a person does not exploit his or her right of publicity during his or her lifetime, then the right terminates upon death. The infer-ence can be drawn from the holding and the extensive discus-sion in the opinion that the right of publicity is descendible if someone exploits it during his or her lifetime. A contrary conclusion would make most of the opinion irrelevant. But the Lugosi opinion is not clear with respect to the breadth of descendibility if the right has been exploited during life. For example, under Lugosi, if a football player licenses the right to use his likeness on posters, it is unclear if the right descends for all merchandise, all artwork, only posters, or some other category of goods.

A-17

In summary, the law in California with respect to the descendibility of the right of publicity is one of the following:  (1) the right does not descend, whether or not exploited during the person's lifetime; (2) the right descends in gross if it is exploited during the person's lifetime; or (3) the right descends if it is exploited during the person's lifetime, but only with respect to the types of exploitation engaged in by the person during his or her lifetime.

Two courts outside California subsequently have had the occasion to construe California law on this matter.  In Groucho Marx Productions v. Day and Night Co., 689 F.2d 317 (2d Cir. 1982), the Second Circuit could not decide under California law whether the right of publicity terminates upon the death of the person or descends with respect to the types of exploitation exercised during the person's life.  In Acme Circus Operating Co., Inc. v. Kuperstock, 711 F.2d 1538 (11th Cir. 1983) the Eleventh Circuit interpreted Lugosi to mean that "where the right of publicity of a name has been exercised in conjunction with a specific product or business during a lifetime sufficiently to create a secondary meaning in that name and the right to use that name in conjunction with the same product or business has been validly assigned to another, the rights flowing therefrom survive the death of the assignor."  The court reasoned:  "We reject the possibility that the publicity interest never survives because such a strict interpretation would mean that much of the Lugosi majority opinion is pure dicta and surplusage ... [and] undermines the logical framework of the majority opinion."  However, this interpretation is not binding in California, and no California court has settled the confusion.

The law in other states

The question of the descendibility of the right of publicity has been addressed in other jurisdictions judicially and legislatively.  The overwhelming trend is for the right to descend.  Of the states with right of publicity statutes that expressly address descendibility (namely, Florida, Nebraska, Oklahoma, Utah and Virginia) all provide for descendibility.  Other states, most notably New York, Georgia and New Jersey, have case law supporting descendibility [Price v. Hal Roach Studios, Inc., 400 F.Supp. 836 (S.D.N.Y. 1975), Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215 (2d Cir. 1978), Hicks v. Casablanca Records, 464 F.Supp. 426 (S.D.N.Y. 1978), Groucho Marx Productions v. Day and Night Co., 523 F.Supp. 487 (S.D.N.Y. 1981), rev'd on other grounds 689 F.2d 317 (2d Cir. 1982); Martin Luther King, Jr., Center for Social Change, Inc. v. American Heri-

A-18

tage Products, Inc., 694 F.2d 674 (11th Cir. 1983), incor-
porating opinion of Georgia Supreme Court, 250 Ga. 135, 296
S.E.2d 697 (1982); Estate of Presley v. Russen, 513 F.Supp.
1339 (D.N.J. 1981)]. Virtually all legal scholars, such
as the distinguished copyright expert Melville Nimmer at
U.C.L.A., advocate descendibility. However, some states may
deny descendibility or have confusing case law [interpreting
Illinios law, the Seventh Circuit denied descendibility in
Maritote v.Desilu Productions, Inc., 345 F.2d 418 (1965);
interpreting Ohio law, the District Court held the right
not descendible in Reeves v. United Artists, 572 F.Supp.
1231 (N.D. Ohio 1983); with respect to Tennessee law, com-
pare the following cases: Memphis Development Foundation v.
Factors Etc., Inc., 616 F.2d 956 (6th Cir. 1980) (not
descendible), Commerce Union Bank v.Coors of the Cumber
land, Inc., 7 Med.L.Rptr. 2204 (No. 81-1252-III, Tenn. Ch.
1981) (descendible), Lancaster v.Factors Etc., Inc., 9
Med.L.Rptr. 1109 (No. 88927-2, Tenn. Ch. 1982) (not descend-
ible)].

## What law governs?

        What makes the confusion in California even more
disturbing is that, under choice of law rulings, California
law may be applied throughout the country when the right of
publicity of a California resident is at issue. The Groucho
Marx case cited above is an example. In that case, the Dis-
trict Court had ruled that under New York law the right of
publicity is descendible. The Second Circuit reversed, how-
ever, on the basis that California law, not New York law,
governs, principally because the Marx Brothers were Cali-
fornia residents, despite the fact that the alleged infringe-
ment had occurred in New York. In addition, the court noted
that some of the brothers had entered into contractual
arrangements relating to their publicity rights in California.

## Reasons for descendibility

        Because recent case law, such as the Marx Brothers
case, suggests that the governing law in right of publicity
cases will generally be that of the domicile of the individual
whose name or likeness is involved, the confusion over des-
cendibility under California law will have consequences beyond
its borders. California has traditionally encouraged the
entertainment industry and other areas of personal achievement.
The promotion of such industries has resulted in California's
status as the principal location of the entertainment industry
in the United States and the state of residence of many promi-
nent entertainers. Because of this, California has derived

A-19