# Exhibit D

1  GIBSON, DUNN & CRUTCHER LLP
   Randy M. Mastro, Esq.
2  200 Park Avenue
   New York, New York   10166
3  Telephone: (212) 351-4000

4  Attorneys for Anna Strasberg, Administratrix C.T.A.

5

6  SURROGATE'S COURT

7  COUNTY OF NEW YORK

8

9  ACCOUNTING BY                    | FILE NO. P2781/1962

10 ANNA STRASBERG                   | PETITION FOR JUDICIAL SETTLEMENT
                                    | OF FINAL ACCOUNT OF
11 AS ADMINISTRATRIX C.T.A.         | ADMINISTRATRIX C.T.A. AND FOR AN
                                    | ORDER AUTHORIZING PETITIONER TO
12 of the ESTATE OF MARILYN MONROE, | 1) EXECUTE LIMITED LIABILITY
                                    | AGREEMENT;
13                 Deceased         | 2) ESTABLISH AND OPERATE LIMITED
                                    | LIABILITY COMPANY;
14                                  | 3) USE ESTATE ASSETS TO ESTABLISH
                                    | LIMITED LIABILITY COMPANY;
15                                  | 4) DISTRIBUTE INTERESTS TO
                                    | RESIDUARY BENEFICIARIES;
16                                  | 5) FOR ORDER VACATING ORDER TO
                                    | COMPEL FIDUCIARIES TO ACCOUNT;
17                                  | AND, 6) DISCHARGE OF PRIOR
                                    | EXECUTOR
18

19

20

21     TO THE SURROGATE'S COURT OF THE COUNTY OF NEW YORK:

22     1.   The petition ("Petition") of Anna Strasberg

23 ("Petitioner"), residing at 135 Central Park West, New York, New

24 York respectfully states:

25     2.   The decedent, Marilyn Monroe, ("Decedent") died on

26 August 5, 1962, and at the time of her death was a resident of the

27 Borough of Manhattan, City, County and State of New York.  A copy of

28 the decedent's Will is attached hereto as Exhibit 1.

Gibson, Dunn &
Crutcher LLP

3.    Decedent's Will dated January 14, 1961 was admitted to probate and Letters Testamentary were issued to Aaron R. Frosch by the Surrogate's Court of New York County, New York on October 30, 1962.  Aaron R. Frosch having died, Letters of Administration C.T.A. were issued to Petitioner by the Surrogate's Court of New York County, New York on July 21, 1989.

5.    The Petitioner presents and renders herewith, a verified account of Petitioner's proceedings in this estate, for the period from July 20, 1989 to October 3, 2000, showing the gross value of assets, including principal and income, to be the sum of $1,470.44. The prior executor's account ending April 29, 1989 showed an ending property on hand figure of $33,904.18 in cash and Miscellaneous Royalty Interests (Intellectual Property Rights) in an undetermined value.  Petitioner is informed and believes that the only account activity which occurred from April 29, 1989 until her appointment as Successor Administratrix C.T.A. on July 21, 1989 was interest earned on the estate's cash assets in the sum of $469.48, which is reflected in Schedule A in the Accounting filed herein.

5.    An order was entered in this Court on January 20, 1970 fixing and assessing the estate tax due.  Petitioner believes the estate taxes with respect to this estate were paid in full.  The statutory period for payment of estate taxes has expired.

6.    The rendering of such account at this time is proper because seven months have elapsed since letters were issued to Petitioner.

7.  Marjorie M. Frosch, in her capacity as Executor of the Estate of Aaron R. Frosch, stated in her Petition for An Intermediate Voluntary Accounting, filed in this proceeding and

1  approved by decree issued January 17, 1991, that Aaron R. Frosch

2  satisfied in full, as verified in Schedule J of the accounting filed

3  with her Petition, the specific pecuniary bequests and the bequest

4  of personalty under Clause FOURTH of Decedent' Will, the sum of

5  $40,000.00 to May Reis under Clause SIXTH of Decedent's Will, and

6  further satisfied in full the bequest under Clause FIFTH of the

7  Decedent's Will, as amended by agreement and settlement among the

8  concerned parties.  All other bequests having been satisfied in

9  these proceedings, the only parties now entitled to a share of the

10  remaining residue of the estate are the Estate of Lee Strasberg, as

11  to 75%, and the Anna Freud Centre (as beneficiary under the Will of

12  Dr. Marianne Kris), as to 25%.

13      8.    The names and addresses of all persons and parties

14  interested in this proceeding who are required to be cited under the

15  provisions of Surrogate's Court Procedure Act §2210, or otherwise,

16  or concerning whom or which the Court is required to have

17  information, are set forth below.  Also see Schedule G of Accounting

18  filed herein.

19 | Name | Interest | Address |
20
21 | Anna Strasberg | 75% Residue | 135 Central Park |
   | Executrix, Estate of | | West |
22 | Lee Strasberg, Deceased | | New York, NY  10023 |
   | (Beneficiary, Adult) | | |
23
24 | The Anna Freud Centre | 25 % Residue | 21 Maresfield |
   | (Beneficiary, Organization) | | Gardens |
25 | | | Hampstead, London |
   | | | NW3 5SD England |
26
27 | Anton O. Kris, MD | None | 37 Philbrick Road |
   | Co-Executor, Estate of Dr. | | Brookline, Mass |
   | Marianne Kris | | 02146 |
28 | (Interested party, Adult) | | |

| | | |
|---|---|---|
| Anna K. Wolff, MD<br>Co-Executor, Estate of Dr.<br>Marianne Kris<br>(Interested party, Adult) | None | 10 Channing Street<br>Cambridge, Mass.<br>02138 |
| The Attorney General of the<br>State of New York<br>(Government Agency) | On behalf of<br>The Anna Freud<br>Centre | 120 Broadway<br>New York, NY |
| Continental Insurance Co.<br>(Surety bond holder) | None | Surety Dept.<br>39 Broadway #620<br>New York, NY  10006 |
| Stroock, Stroock & Lavan | None, Attorneys<br>for Marjorie M.<br>Frosch,<br>Executrix of<br>the Estate of<br>Aaron R. Frosch | 180 Maiden Lane<br>New York, NY 10038 |

9. There are no persons interested in this proceeding other than those herein above mentioned, all of said above mentioned persons are of sound mind; and all are of full age.

10. No prior application has been made to this or any other court for the relief requested in this Petition.

11. During the period of this account Petitioner has received income receipts, as set forth in Schedule A-2 of the Accounting filed herein, from the decedent's participation rights in motion pictures and royalties from the licensing of the decedent's name, likeness and signature ("Intellectual Property Rights"). Petitioner has made periodic distributions, as set forth in Schedule E of the Accounting, of the balance of the estate funds after payment of expenses, as set forth in Schedule C of the Accounting, in shares of 75% to the Estate of Lee Strasberg and 25% to the Anna Freud Centre.

12. The Petitioner also requests the Court to authorize her to establish a limited liability company to hold the Intellectual Property Rights and to distribute pro rata interests in the limited liability company to the residuary beneficiaries of the estate.

Gibson, Dunn &
Crutcher LLP

4

13.   Section 11-1.1(c) of the Estates, Powers and Trusts Law states that "the court having jurisdiction of the estate... may authorize the fiduciary to exercise any other power which in the judgment of the court is necessary for the proper administration of the estate or trust."  Thus, the powers enumerated by EPTL Section 11-1.1(b) are not exclusive, and the court has the authority to grant the Petitioner the power to establish such a company to hold estate property.  Distribution in kind of interests in the limited liability company is permissible under Section 2216 of the Surrogate's Court Procedure Act.

14.   There are several reasons why it would be appropriate and in the best interests of the estate and beneficiaries to authorize the Petitioner to form a limited liability company and distribute interests in the limited liability company to the residuary beneficiaries.  First, coordinated management of the Intellectual Property Rights would be maintained.  It would not be practical, and perhaps would not even be possible, to divide the Intellectual Property Rights between the beneficiaries, and it certainly would not be efficient or to the benefit of the beneficiaries to do so. Second, after distribution of the limited liability company interests it would be possible to close the estate, which has now been open for almost 40 years.  In addition to the obvious benefits resulting from distributing the assets and closing the estate, there are also clear disadvantages resulting from keeping the estate open: additional, unnecessary costs would be imposed on the beneficiaries; the court's docket would be burdened with a case that could be closed; and the estate and the beneficiaries would remain vulnerable to unmeritorious, "crank" claims, because of the unique celebrity

Gibson, Dunn &
Crutcher LLP

1  status of the Decedent.  Third, unless the Petitioner is authorized

2  to exercise the powers requested herein, there is every reason to

3  believe that the estate will not be closed in the foreseeable

4  future.  Distribution of the Intellectual Property Rights would

5  continue to remain impractical and the estate would remain open to

6  more crank claims.  Fourth, utilizing a limited liability company

7  structure will afford the beneficiaries some measure of protection

8  from crank claims.

9      15.  On December 31, 1990, this court entered a decree which,

10 among other things, ordered that administration of the estate was to

11 continue as long as the estate maintained an agency agreement with

12 terms and conditions substantially similar to the agency agreement

13 then in effect.  The agency agreement now in effect with CMG

14 Worldwide is substantially similar to the agency agreement in effect

15 on December 31, 1990.  However, as set forth above, Petitioner

16 believes that it would be in the best interest of the estate and

17 beneficiaries to close the estate proceedings and distribute the

18 remaining assets as set forth herein.

19     16.  The consents of the residuary beneficiaries are attached

20 hereto as Exhibits 2 and 3 and are incorporated herein by this

21 reference.

22     17.  Attached hereto as Exhibit 4 and incorporated herein by

23 this reference, is a form of limited liability company agreement

24 that Petitioner proposes to use as the governing agreement for the

25 limited liability company.  Under the proposed limited liability

26 company agreement, Petitioner would be the sole initial member.

27 Subsequently, the Petitioner and the residuary beneficiaries would

28 execute a supplement to the agreement (a copy of the proposed

Gibson, Dunn &
Crutcher LLP

1   supplement is attached hereto as Exhibit 5 and incorporated herein

2   by this reference), which would make the residuary beneficiaries

3   75%/25% owners of the entire company.  A proposed form of assignment

4   from the Petitioner to the residuary beneficiaries is attached

5   hereto as Exhibit 6 and incorporated herein by this reference.  In

6   order properly to establish and operate the company, it will also be

7   necessary, among other things, to obtain a taxpayer identification

8   number, file a certificate of formation, a proposed form is attached

9   hereto as Exhibit 7, and file appropriate documents in states other

10  than Delaware in which the company does business.  Petitioner

11  requests authorization to execute such documents.

12      18.   The Petitioner also requests the Court to authorize her to

13  use funds of the estate to establish the limited liability company,

14  and to register and qualify it in appropriate jurisdictions.  After

15  distribution of the limited liability company interests to the

16  residuary beneficiaries, the costs of maintaining the company will

17  be borne on a pro rata basis by the residuary beneficiaries.

18      19.   Pursuant to this court's Decree Approving Attorney's fees

19  and Other Related Matters filed October 31, 1990, Petitioner is to

20  receive no commissions as Administratrix C.T.A.

21      20.   On June 25, 1990 this court issued an Order to Compel

22  Fiduciaries to Account, attached hereto as Exhibit 8, directing that

23  Marjorie M. Frosh, as Executrix of the Estate of Aaron R. Frosh,

24  file and judicially settle a final accounting with respect to the

25  Estate of Marilyn Monroe; and further ordered that Anna Strasberg,

26  Administratrix C.T.A. file and judicially settle an intermediate

27  accounting for the period from July 20, 1989 through May 31, 1990.

28  On August 2, 1990, attorneys for Marjorie M. Frosch, Anna Strasberg,

Gibson, Dunn &
Crutcher LLP

7

1  The Anna Freud Center, and for Anton O. Kris and Anna Kris Wolff as

2  Executors of the Estate of Marianne Kris executed a Stipulation on

3  behalf of their clients, a copy of which is attached hereto as

4  Exhibit 9, wherein the parties requested that the Court vacate the

5  Order to Compel Fiduciaries to Account of June 25, 1990.

6      Petitioner, after a search of the court records, can find no

7  evidence that an order vacating the Order to Compel Fiduciaries to

8  Account has been executed by this court.  Schedule A of Petitioner's

9  account filed in these proceedings details the only transactions,

10  consisting solely of interest earned on estate assets Marjorie M.

11  Frosch transferred to Petitioner immediately following her

12  appointment as Administratrix C.T.A. on July 21, 1989, that occurred

13  after the end of Marjorie M. Frosch's intermediate account on April

14  29, 1989 through July 20, 1989.  Petitioner's account further

15  includes all transactions that occurred from July 20, 1989 to

16  October 3, 2000.  Because all estate account activity between April

17  29, 1989 and October 3, 2000 has been reported in the account filed

18  herein, Petitioner requests that this court vacate the Order to

19  Compel Fiduciaries to Account of June 25, 1990.  Petitioner's

20  Receipt and Release as Administratrix C.T.A. acknowledging receipt

21  of estate assets from Marjorie M. Frosch, is attached hereto as

22  Exhibit 10.

23      After a search of the court's records, and having found no

24  order discharging the deceased prior Executor Aaron R. Frosch, and a

25  receipt having been filed in these proceedings for all assets

26  transferred from Marjorie M. Frosch, as Executrix of the Estate of

27  Aaron R. Frosch, to petitioner as successor Administratrix C.T.A.,

28

Gibson, Dunn &
Crutcher LLP

8

1  petitioner requests that Aaron R. Frosch be discharge as Executor
2  without further account.

3      WHEREFORE, Petitioner prays for an Order of this Court as
4  follows:

5      1.    The account of proceedings be judicially settled;

6      2.    Authorizing the Petitioner to execute the Limited
7  Liability Company Agreement attached as Exhibit 4, the Supplement
8  thereto attached as Exhibit 5, the Assignment attached as Exhibit 6,
9  the Certificate of Formation attached as Exhibit 7, and any and all
10 other documents necessary to establish the limited liability company
11 and register and/or qualify it in other jurisdictions, as the
12 Petitioner deems appropriate;

13     3.    Authorizing the Petitioner to take all other necessary
14 steps to establish and operate the limited liability company,
15 including registering and qualifying the limited liability company
16 in one or more other jurisdictions, as the Petitioner deems
17 appropriate;

18     4.    Authorizing the Petitioner to use estate assets for the
19 purposes of establishing the limited liability company and
20 registering and qualifying it in one or more other jurisdictions, as
21 the Petitioner deems appropriate;

22     5.    Authorizing the Petitioner to transfer all assets of the
23 estate to the limited liability company and distribute membership
24 interests in the limited liability company pro rata to the residuary
25 beneficiaries as follows:  75% to Anna Strasberg, as Executor of the
26 Estate of Lee Strasberg, and 25% to the Anna Freud Centre;

27     6.    That the Order to Compel Fiduciaries to Account of June
28 25, 1990 be vacated;

Gibson, Dunn &
Crutcher LLP

9

1      7.    That Aaron R. Frosch be discharged as Executor;

2      8.    That these estate proceedings be closed; and

3      9.    That the persons above mentioned and all necessary and

4   proper persons be cited to show cause why such settlement should not

5   be had and for such other and further relief as the Court may deem

6   just and proper.

7

8   DATED:    Oct. 18 2000, 2000

9

10                          ANNA STRASBERG

11

Gibson, Dunn &
Crutcher LLP

1

2                                    VERIFICATION

3
     STATE OF NEW YORK        )
4
     COUNTY OF NEW YORK       )
5

6
         The undersigned, the petitioner named in the foregoing
7    petition, being duly sworn, says: I have read the foregoing petition
     subscribed by me and know the contents thereof, and the same is true
8    of my own knowledge, except as to the matters therein stated to be
     alleged upon information and belief, and as to those matter I
9    believe it to be true.

10

11

12                                      Anna Strasberg

13

14   Sworn to before me on              PATRICIA ROSADO
                                    Notary Public, State of New York
15       10/18      , 2000               No. 01RO5014712
                                    Qualified in New York County
16                                  Commission Expires July 6, 2001

17   Notary Public
     Commission Expires: 7/6/2001
18   (Affix Notary Stamp or Seal)

19

20   Signature of Attorney: _____

21   Print Name of Attorney: _____

22   Gibson, Dunn & Crutcher, LLP
23   200 Park Avenue
     New York, New York  10166
24   Telephone: (212) 351-4000

25

26   20084469_1.DOC

27

28

Gibson, Dunn &
Crutcher LLP
                                        11

# Exhibit 1

I, MARILYN MONROE, do make, publish and declare this to be my Last Will and Testament.

FIRST: I hereby revoke all former Wills and Codicils by me made.

SECOND: I direct my Executor, hereinafter named, to pay all of my just debts, funeral expenses and testamentary charges as soon after my death as can conveniently be done.

THIRD: I direct that all succession, estate or inheritance taxes which may be levied against my estate and/or against any legacies and/or devises hereinafter set forth shall be paid out of my residuary estate.

FOURTH: (a) I give and bequeath to BERNICE MIRACLE, should she survive me, the sum of $10,000.00.

(b) I give and bequeath to MAY REIS, should she survive me, the sum of $10,000.00.

(c) I give and bequeath to NORMAN and HEDDA ROSTEN, or to the survivor of them, or if they should both predecease me, then to their daughter, PATRICIA ROSTEN, the sum of $5,000.00, it being my wish that such sum be used for the education of PATRICIA ROSTEN.

(d) I give and bequeath all of my personal effects and clothing to LEE STRASBERG, or if he should predecease me, then to my Executor hereinafter named, it being my desire that he distribute these, in his sole discretion, among my friends, colleagues and those to whom I am devoted.

FIFTH: I give and bequeath to my Trustee, hereinafter

Exhibit 1

... .... .. ..... ..... . .....

... ... in equal ... terly ....

named, the sum of $100,000.00, in Trust, for the following uses
and purposes:

    (a) To hold, manage, invest and reinvest the
said property and to receive and collect the income therefrom.

    (b) To pay the net income therefrom, together
with such amounts of principal as shall be necessary to provide
$5,000.00 per annum, in equal quarterly installments, for the
maintenance and support of my mother, GLADYS BAKER, during her
lifetime.

    (c) To pay the net income therefrom, together
with such amounts of principal as shall be necessary to provide
$2,500.00 per annum, in equal quarterly installments, for the
maintenance and support of MRS. MICHAEL CHEKHOV during her life-
time.

    (d) Upon the death of the survivor between my
mother, GLADYS BAKER, and MRS. MICHAEL CHEKHOV to pay over the
principal remaining in the Trust, together with any accumulated
income, to DR. MARIANNE KRIS to be used by her for the furtherance
of the work of such psychiatric institutions or groups as she
shall elect.

    SIXTH: All the rest, residue and remainder of my
estate, both real and personal, of whatsoever nature and whereso-
ever situate, of which I shall die seized or possessed or to which
I shall be in any way entitled, or over which I shall possess any
power of appointment by Will at the time of my death, including
any lapsed legacies, I give, devise and bequeath as follows:

    (a) to MAY REIS the sum of $40,000.00 or 25%
of the total remainder of my estate, whichever shall be the lesser.

-2-

~~this Will under this my Last Will and Test~~
~~of the estate of testa... or profits, es...~~
~~... the entire re...~~

(b)  To DR. MARIANNE KRIS 25% of the balance thereof, to be used by her as set forth in ARTICLE FIFTH (d) of this my Last Will and Testament.

(c)  To LEE STRASBERG the entire remaining balance.

SEVENTH:  I nominate, constitute and appoint AARON R. FROSCH Executor of this my Last Will and Testament.  In the event that he should die or fail to qualify, or resign or for any other reason be unable to act, I nominate, constitute and appoint L. ARNOLD WEISSBERGER in his place and stead.

EIGHTH:  I nominate, constitute and appoint AARON R. FROSCH Trustee under this my Last Will and Testament.  In the event he should die or fail to qualify, or resign or for any other reason be unable to act, I nominate, constitute and appoint L. ARNOLD WEISSBERGER in his place and stead.

_____ Marilyn Monroe _____ (L.S.)

SIGNED, SEALED, PUBLISHED and DECLARED by MARILYN MONROE, the Testatrix above named, as and for her Last Will and Testament, in our presence and we, at her request and in her presence and in the presence of each other, have hereunto subscribed our names as witnesses this 14 day of January, One Thousand Nine Hundred Sixty-One.

Aaron R. Frosch residing at 10 West 86th St. N.Y.

Louise H. White residing at 209 E 56 St. N.Y.29

_____ residing at _____

-3-

# Exhibit 2

1  GIBSON, DUNN & CRUTCHER LLP
   Randy M. Mastro, Esq.
2  200 Park Avenue
   New York, New York  10166
3  Telephone: (212) 351-4000

4  Attorneys for Anna Strasberg, Administrator C.T.A.

5

6  SURROGATE'S COURT

7  COUNTY OF NEW YORK

8

9  ACCOUNTING BY                      FILE NO. P2781/1962

10 ANNA STRASBERG                     CONSENT TO EXECUTION OF LIMITED
                                      LIABILITY COMPANY AGREEMENT AND
11 AS ADMINISTRATOR C.T.A.            RELATED MATTERS

12 of the ESTATE OF MARILYN MONROE,

13                 Deceased

14

15

16       The undersigned, Anna Strasberg, Executrix of the Estate of Lee

17 Strasberg. being of full age, and sound mind, having an interest in

18 this proceeding, consents to Anna Strasberg's, Administrator C.T.A,

19 proposal to execute a limited liability agreement and all other

20 documents and proposals related thereto, as set forth in the

21 Petition for Judicial Settlement of Final Account of Administrator

22 C.T.A. and For An Order Authorizing Petitioner to 1) Execute Limited

23 Liability Agreement; 2) Establish and Operate Limited Liability

24 Company; 3) Use Estate Assets to Establish Limited Liability

25 Company; 4) Distribute Interests to Residuary Beneficiaries; 5) For

26 Order Vacating Order To Compel Fiduciaries to Account; and, 6)

27 Discharge of Prior Executor, a full copy of which I have received.

28

Gibson, Dunn &
Cruicher LLP

Exhibit 2

Date: 10-18-00

_____
Anna Strasberg, Executrix of the
Estate of Lee Strasberg

STATE OF NEW YORK          )
COUNTY OF New York         )  ss.:

On 10·1 8_____, 2000, before me personally appeared

ANNA Strasberg_____ to me known and known to me to
be the person described in and who executed the foregoing Consent to
Execution of Limited Liability Company Agreement and Related Matters
and duly acknowledged the execution thereof.

_____
Notary Public
Commission Expires: 7/6/2001
(Affix Notary Stamp of Seal)

PATRICIA ROSADO
Notary Public, State of New York
No. 01RO5014712
Qualified in New York County
Commission Expires July 6, 2001

Name of Attorney: Randy M. Mastro, Esq. Tel. No. 212-351-4000

Address of Attorney: Gibson, Dunn & Crutcher LLP, 200 Park Avenue,
New York, NY 10166

20088173_1.DOC

Gibson, Dunn &
Crutcher LLP

2

# Exhibit 3

1 | GIBSON, DUNN & CRUTCHER LLP
Randy M. Mastro, Esq.
2 | 200 Park Avenue
New York, New York  10166
3 | Telephone: (212) 351-4000

4 | Attorneys for Anna Strasberg, Administrator C.T.A.

5

6 | SURROGATE'S COURT

7 | COUNTY OF NEW YORK

8

9 | ACCOUNTING BY                FILE NO. P2781/1962

10 | ANNA STRASBERG              CONSENT TO EXECUTION OF LIMITED
                              LIABILITY COMPANY AGREEMENT AND
11 | AS ADMINISTRATOR C.T.A.      RELATED MATTERS

12 | of the ESTATE OF MARILYN MONROE,

13 |              Deceased

14

15

16    The undersigned, as an authorized representative of The Anna

17 Freud Centre, being of full age, and sound mind, having an interest

18 in this proceeding, consents to Anna Strasberg's, Administrator

19 C.T.A, proposal to execute a limited liability agreement and all

20 other documents and proposals related thereto, as set forth in the

21 Petition for Judicial Settlement of Final Account of Administrator

22 C.T.A. and For An Order Authorizing Petitioner to 1) Execute Limited

23 Liability Agreement; 2) Establish and Operate Limited Liability

24 Company; 3) Use Estate Assets to Establish Limited Liability

25 Company; 4) Distribute Interests to Residuary Beneficiaries; 5) For

26 Order Vacating Order to Compel Fiduciaries to Account; and 6)

27 Discharge of Prior Executor, a full copy of which I have received.

28

Exhibit 3

Date: _November 15, 2000_       _Steven B. Rosenfeld_
On behalf of the Anna Freud
Centre

STATE OF NEW YORK     )
COUNTY OF _NEW YORK_    )   ss.:

On _NOVEMBER 15_ , 2000, before me personally appeared

_STEVEN B. ROSENFELD_ to me known who duly swore to the foregoing instrument and who did say that he/~~she~~ resides at _1070 PARK AVENUE, NEW YORK, NY 10128_ and that he/~~she~~ is a _ATTORNEY-IN-FACT_ of The Anna Freud Centre; and that he/she signed his/her name thereto by order of the Board of Directors of said organization.

_Amy Auerbach_
Notary Public
Commission Expires:
(Affix Notary Stamp of Seal)

AMY AUERBACH
Notary Public, State of New York
No. 01AU4721548
Qualified in New York County
Commission Expires March 30, 2002

Name of Attorney: Randy M. Mastro, Esq. Tel. No. 212-351-4000

Address of Attorney: Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166

20088171_1.DOC

Gibson, Dunn &
Crutcher LLP

2

# Exhibit 4

## LIMITED LIABILITY COMPANY AGREEMENT

### MARILYN MONROE LLC

### a Delaware Limited Liability Company

THIS LIMITED LIABILITY COMPANY AGREEMENT (this "Agreement") is effective as of _____, 2000, by Anna Strasberg, Administrator C.T.A. of the Estate of Marilyn Monroe (the "Initial Member", and together with any persons who may hereafter be admitted as such in accordance with the terms of this Agreement, may be known individually as a "Member" and collectively as the "Members"), for the purpose of providing for the organization and operation of MARILYN MONROE LLC (the "Company"), a limited liability company formed pursuant to the Delaware Limited Liability Company Act, Title 6, Sections 18-101 *et seq* of the Delaware Code (the "Delaware Act"). The Initial Member was authorized to enter into this Agreement by Order of the Surrogate's Court of the County of New York, State of New York entered on _____, 2000 (File No. P2781/1962).

NOW, THEREFORE, for good and valuable consideration, the parties, intending to be legally bound, agree as follows:

### ARTICLE I

### GENERAL PROVISIONS

Section 1.1 **Name of the Company.** The name of the Company shall be MARILYN MONROE LLC. The business of the Company may be conducted upon compliance with all applicable laws under any other name designated by the Manager.

Section 1.2 **Purpose.** The Company is formed for the object and purpose of, and the nature of the business to be conducted and promoted by the Company is, licensing the name and likeness of Marilyn Monroe, providing for the use of other assets and goodwill associated with Marilyn Monroe and engaging in any and all activities necessary, convenient, desirable or incidental to the foregoing.

Section 1.3 **Registered Agent.** The name of the Company's registered agent in the State of Delaware shall be National Registered Agents, Inc. The registered office of the registered agent shall be located at 9 East Loockerman Street, Dover, Kent County, DE 19901. At any time, the Manager may designate another registered agent and/or registered office.

Section 1.4 **Principal Place of Business.** The principal place of business of the Company shall be located at 7936 Santa Monica Boulevard, Hollywood, California 90046. At any time, the Manager may change the location of the Company's principal place of business.

Section 1.5 **Qualification in Other Jurisdictions.** The Manager shall cause the Company to be qualified, formed or registered under assumed or fictitious name statutes or similar laws in any jurisdiction in which the Company transacts business in which such qualification, formation or registration is required or desirable. The Manager, as an authorized person within the meaning of the Delaware Act, shall execute, deliver and file any certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in a jurisdiction in which the Company may wish to conduct business.

Exhibit 4

Section 1.6 **Initial Members.** The name and address of the Initial Member is:

> Anna Strasberg, as Administrator C.T.A. Estate of Marilyn Monroe
> 135 Central Park West
> New York, NY 10023.

The name and mailing address of each Member and the amount contributed to the capital of the Company shall be listed on Schedule A attached hereto. The Manager shall be required to update Schedule A from time to time as necessary to accurately reflect the information therein. Any amendment or revision to Schedule A made in accordance with this Agreement shall not be deemed an amendment to this Agreement. Any reference in this Agreement to Schedule A shall be deemed to be a reference to Schedule A as amended and in effect from time to time.

Section 1.7. **Term.** The term of the Company shall commence on the date of the filing of the Certificate in the office of the Secretary of State of the State of Delaware and shall continue until dissolved in accordance with the provisions of this Agreement.

Section 1.8 **Powers of the Company.**

(a)     The Company shall have the power and authority to take any and all actions necessary, appropriate, proper, advisable, convenient or incidental to or for the furtherance of the purpose set forth in Section 1.2

(b)     The Manager may authorize any person (including, without limitation, any other Member) to enter into and perform any document on behalf of the Company.

(c)     The Company may merge with, or consolidate into, another Delaware limited liability company or other business entity (as defined in Section 18-209(a) of the Delaware Act) upon the approval of the Manager in the Manager's sole discretion.

Section 1.9 **Limitation on Company Powers.** Notwithstanding any provision in this Agreement to the contrary, the Company shall not do business in any jurisdiction that would jeopardize the limitation on liability afforded to the Members under the Delaware Act or this Agreement.

Section 1.10 **Agreement; Effect of Inconsistencies With the Act.** It is the express intent of the Members that this Agreement shall be the sole source of agreement of the parties and, except to the extent a provision of this Agreement expressly incorporates federal income tax rules by reference to sections of the Internal Revenue Code or 1986, as amended (the "Code") or the Treasury Regulations or is expressly prohibited or ineffective under the Delaware Act, this Agreement shall govern, even when inconsistent with, or different than, the provisions of the Delaware Act or any other law or rule. To the extent that any provision of this Agreement is prohibited or ineffective under the Delaware Act, this Agreement shall be deemed to be amended to the smallest degree possible in order to make this Agreement effective under the Delaware Act in accordance with the intent of the parties. In the event that the Delaware Act is subsequently amended or interpreted in such a way to make any provision of this Agreement that was formerly invalid valid, such provision shall be considered to be valid from the effective date of such interpretation or amendment. The Members hereby agree that each Member shall be entitled to rely on the provisions of this Agreement, and no Member shall be liable to the Company or to any Member for any action or refusal to act taken in good faith reliance on the

2

terms of this Agreement. The Members hereby agree that the duties and obligations imposed on the Members as such shall be those set forth in this Agreement, which is intended to govern the relationship among and between the Company and the Members, notwithstanding any provision of the Act or common law to the contrary.

## ARTICLE II

## MEMBERS

**Section 2.1 Powers of Members.** Each Member shall have the power to exercise, or to appoint, by written notice to each of the other Members, an attorney-in-fact to exercise on its behalf, any and all rights or powers granted to that Member pursuant to the express terms of this Agreement. Except as otherwise specifically provided by this Agreement or required by the Delaware Act, no Member shall have the power to act for or on behalf of, or to bind, the Company without the prior written approval of the Manager.

**Section 2.2 Admission of Additional Members.** No person shall have any right as a Member of this Company unless and until such person is admitted as a Member after such approval as is required by, and compliance with the other conditions set forth in, this Agreement. Any transferee not admitted as a Member shall be merely an assignee of an Interest, shall have only the right to receive such distributions when, as and if directed by the Manager, and to receive such allocations, with respect to the Transferred Interest, as are provided for in this Agreement, and no voting, consent, inspection or other rights whatsoever, except as otherwise provided by the Delaware Act, and the Member whose Interest or portion thereof is transferred shall continue as a Member.

(a)      Except as provided in Section 2.5(a), a new Member may be admitted to the Company only with the consent of a majority in interest of the Members, which approval may be granted or withheld in the sole and absolute discretion of Members for any reason or for no reason at all.

(b)      Any person may be admitted as a new Member only if such person shall have executed a counterpart of this Agreement or an appropriate supplement to it, in which such person agrees to be bound by the terms and provisions of this Agreement as they may be modified by that supplement. Any person so admitted shall have all the rights and obligations of a Member hereunder effective on and after the date of admission as a Member of the Company.

**Section 2.3 Interest of A New Member.** Upon receipt of any required Capital Contribution from any newly admitted Member, such Member's Capital Contribution and Sharing Percentage in the Company shall be set forth on an amended Schedule A to this Agreement by the Manager.

**Section 2.4 Partition.** Each Member waives any and all rights that it may have to maintain an action for partition of the Company's property.

**Section 2.5 Assignments by and Withdrawal of Members.**

(a)      Permitted Dispositions. A Transferee of an Interest in the Company that is a Transferee pursuant to a Permitted Disposition may become a Member as provided in this Section 2.5.

3

(b)    Certain Prohibitions.  Except as set forth in this Section 2.5, no Member may resign or withdraw from the Company.  No Member shall sell, transfer, assign, convey, pledge, mortgage, encumber, hypothecate or otherwise dispose of or suffer the creation of an interest in or lien on (a "Transfer") all or any part of its Interest without the consent of the remaining Member or Members.  Such consent shall not be necessary with respect to any proposed Transfer which constitutes a Permitted Disposition.

(c)    Conditions to Transfer.  Any purported Transfer by a Member, except a proposed Transfer constituting a Permitted Disposition, shall satisfy the following additional conditions (any one or more of which may be waived by the Manager in its sole discretion):

(i)    the Transferor or Transferee shall undertake to pay all expenses incurred by the Company in connection therewith;

(ii)    the Company shall receive from the proposed Transferor and Transferee such documents, opinions, instruments and certificates as the Manager may reasonably request;

(iii)    prior to making any such Transfer to a Transferee proposed by such Member, such proposed Transferor shall have delivered to the Company the opinion of counsel described in Section 2.5(d);

(iv)    the Company shall have received an opinion of counsel to the Company reasonably satisfactory to the Manager (or other assurances reasonably satisfactory to the Manager) substantially to the effect that consummating such Transfer:

(A)    will not cause the Company to be terminated pursuant to Section 708 of the Code, to lose its status as a partnership for United States federal income tax purposes, or to be considered a publicly traded partnership under Section 7704(b) of the Code;

(B)    will not require the Company to register as an investment company under the Investment Company Act or under any similar state securities laws; and

(v)    such Member is Transferring the Transferred Interest in the Company in such transaction to one or more Transferees, each of which is an "accredited investor" within the meaning of Regulation D promulgated under the Securities Act.

(d)    Required Opinion of Counsel.  The opinion of counsel referred to in Section 2.5(c)(iv) shall be in form and substance satisfactory to the Manager, shall be from independent counsel satisfactory to the Manager and (unless specified otherwise by the Manager) shall be substantially to the effect that:

(i)    the Transfer contemplated by the opinion is being made in a manner that is exempt from the registration requirements of the Securities Act and the registration or qualification requirements of applicable state securities laws; and

(ii)    such Transfer will not increase the number of "beneficial owners" (as defined in Section 3(c)(1) of the Investment Company Act) of the Interest originally

issued to the original Member from which the Interest to be Transferred derives to more than five (5) beneficial owners after giving effect to such proposed Transfer.

If the foregoing opinion is to be provided by counsel for a proposed Transferor, the Manager shall furnish to such Member and its counsel such factual information, certified by the Manager as being accurate and complete, as is within the knowledge of the Manager and is reasonably necessary for such counsel to render the foregoing opinion.

(e)    Nonconforming Transfers Void.  Any actual or purported Transfer of the Interest of any Member that does not comply with the provisions of this Section 2.5 shall be void and shall not bind the Company.  The Company shall incur no liability for distributions made to any Transferor prior to compliance with this Section 2.5 with respect to the Interest that is the subject of any such actual or purported Transfer.

## ARTICLE III

### CAPITAL CONTRIBUTIONS, ACCOUNTS AND WITHDRAWALS

Section 3.1  **Capital Contributions.**  The Members shall make contributions to the Company as set forth on Schedule A.

Section 3.2  **No Additions.**  No Member shall be required to make any additional capital contributions to the Company.  However, a Member may make additional capital contributions to the Company with the written consent of the Manger.

Section 3.3  **Loans.**  Any Member may, with the Manager's consent, make a loan or advance money or property to or on behalf of the Company, on such terms as the lending Member and the Manager may agree.  Such loan or advance shall not increase the lending Member's capital account, entitle the lending Member to any greater share of Company distributions, or subject the lending Member to any greater proportion of Company losses.  The amount of such loans or advances shall be a debt owed by the Company to the lending Member; any interest paid to the lending Member shall be charged as any other expense against income of the Company.

Section 3.4  **Member's Interest.**  A Member's Interest shall for all purposes be personal property.  A Member has no interest in specific Company property.

Section 3.5  **Status of Capital Contributions.**

(a)    No Member shall receive any interest, salary or draw with respect to its Capital Contributions or its Capital Account or for services rendered on behalf of the Company or otherwise in its capacity as a Member (including as a Manager), except as otherwise specifically provided in this Agreement or as may be approved by the Members unanimously.

(b)    Except as otherwise provided herein and by applicable state law, the Members shall be liable only to make their Capital Contributions pursuant to Section 3.1 hereof, and no Member shall be required to lend any funds to the Company or, after a Member's Capital Contributions have been fully contributed pursuant to Section 3.1 hereof, to make any additional capital contributions to the Company. No Member shall have any personal liability for the repayment of any Capital Contribution of any other Member.

5

**Section 3.6.  Capital Accounts.**

(a)     A separate Capital Account will be maintained for each Member.

(b)     Each Member's Capital Account will be increased by:

(i)     The amount of cash contributed by the Member to the Company;

(ii)     The Gross Asset Value of real, personal, tangible and intangible property contributed by the Member to the Company pursuant to Section 3.1 (net of liabilities secured by such contributed property that the Company is considered to assume or take subject to under Code Section 752);

(iii)     Allocations to the Member of Profits; and

(iv)     Allocations to the Member of income described in Code Section 705(a)(1)(B).

(c)     Each Member's Capital Account will be decreased by:

(i)     The amount of cash distributed to the Member by the Company;

(ii)     The Gross Asset Value of property distributed to the Member by the Company (net of liabilities secured by such distributed property that such Member is considered to assume or take subject to under Code Section 752);

(iii)     Allocations to the Member of Losses; and

(iv)     Allocations to the Member of expenditures described in Code Section 705(a)(2)(B).

(d)     In the event of a sale or exchange of a Membership Interest, the Capital Account of the transferor shall become the Capital Account of the transferee to the extent it relates to the transferred Membership Interest in accordance with Treasury Regulation Section 1.704-1(b)(2)(iv).

(e)     The manner in which Capital Accounts are to be maintained pursuant to this Section 3.6 is intended to comply with the requirements of Code Section 704(b) and the Treasury Regulations promulgated thereunder.  If in the opinion of the Company's accountants the manner in which Capital Accounts are to be maintained pursuant to the preceding provisions of this Section 3.6 should be modified to comply with Code Section 704(b) and the Treasury Regulations thereunder, then, notwithstanding anything to the contrary contained in the preceding provisions of this Section 3.6, the method in which Capital Accounts are maintained shall be so modified; provided, however, that any change in the manner of maintaining Capital Accounts shall not materially alter the economic agreement between or among the Members without the consent of all Members.

**Section 3.7.  Withdrawals.**  No Member may withdraw any portion of his interest in the Company without the prior written consent of a majority in interest of the Members, which consent may be withheld in the absolute discretion of each Member.  If withdrawal of part or all of a Company interest is thereby permitted, the Manager shall have the

6

power to deliver cash or other property, in the Manager's absolute discretion, in satisfaction of the obligation to the Member effecting a withdrawal.

## ARTICLE IV

### FINANCIAL ACCOUNTING, ALLOCATION OF PROFITS AND LOSSES AND DISTRIBUTIONS

**Section 4.1  Books and Records.**  All books of the Company shall be maintained at the principal office of the Company.  Such books shall be open to inspection by any Member at any reasonable time during business hours.  The books of the Company shall be kept on the basis of the tax year adopted for federal income tax purposes using such generally accepted accounting methods and procedures as the Manager deems appropriate.

**Section 4.2  Profits and Losses.**  For federal income tax purposes, income, gain, loss and deduction with respect to property contributed to the Company by a Member shall be shared among the Members so as to take account of the variation between the basis of the property to the Company and its fair market value at the time of contribution in accordance with Section 704(c) of the Code and the Treasury Regulations prescribed thereunder.  Except as thus provided, the net profits, each item of income and gain, each allowable credit, the net losses and each item of deduction or loss of the Company during any tax year shall be allocated as of the close of such year to the respective accounts of the Members pursuant to the Sharing Percentages set forth in Schedule A.  The Manager shall have the authority to adjust the allocation of items of income, gain, loss and deductions among the parties to ensure that the allocations have substantial economic effect within the meaning of Section 704(b) of the Code and the accompanying Treasury Regulations.

**Section 4.3  Distributions.**

(a)  All distributions hereof shall be at such times and in such amounts as shall be determined by the Manager; provided, however, that the Manager shall use its best efforts to cause the Company to distribute to the Members an amount equal to Net Cash Flow.

(b)  All amounts withheld pursuant to the Code or any provision of any state or local tax law with respect to any payment, or distribution to the Company or the Members shall be treated as amounts distributed to the Members pursuant to this Section 4.3 for all purposes of this Agreement. The Manager is authorized to withhold from distributions and to pay over to any federal, state or local government any amounts required to be so withheld pursuant to the Code or any provision of any other federal, state or local law.

**Section 4.4  Limitations on Distributions.**  Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not make a distribution to any Member with respect to such Member's Interest if such distribution would violate Section 18-607 of the Delaware Act or other applicable law.

7

## ARTICLE V

## MANAGEMENT

**Section 5.1 <u>Manager</u>.** The Company shall be managed by one or more Managers who may or may not be a Member. Anna Strasberg is hereby designated to be the initial Manager. All references hereinafter to the "Manager" shall include all Co-Managers at any time that Co-Managers are acting hereunder. At any time that there are Co-Managers acting hereunder, all decisions of the Co-Managers shall be by majority vote, or, if there are only two Co-Managers, all decisions of the Co-Managers shall be unanimous.

**Section 5.2 <u>Time Devoted to Company Affairs</u>.** The management and control of the Company shall rest exclusively with the Manager. The Manager shall devote such time as the Manager in the Manager's sole discretion shall deem necessary to the affairs of the Company. Subject to the provisions of Section 5.10 of this Agreement, the Manager shall be entitled to such reasonable compensation as the Manager shall determine.

**Section 5.3 <u>Powers of the Manager</u>.** The exclusive right, power and authority to manage and operate the business and affairs of the Company shall be vested in the Manager until the Manager is unable or unwilling to act as Manager. Thereafter, a majority in interest of the Members may select one or more new Managers or, if they fail to do so, Company actions shall be taken by a majority in interest of the Members except as otherwise provided herein. Subject to all other provisions of this Agreement, the Manager shall have all powers necessary, advisable or convenient to manage and operate the business and affairs of the Company, including, without limitation, the power to acquire and hold for investment any property, real, personal or mixed, on behalf of the Company and to sell, exchange, convey title to or otherwise dispose of such property and to grant options for such purposes; to bind the Company in making contracts and incurring obligations in its name and on its credit; to fulfill any contractual obligations to which property which is transferred to the Company is subject; to borrow money and, as security for the borrowing, to encumber all or any part of the Company property; to modify, consolidate or extend any deed of trust or other security device encumbering any Company property; to employ from time to time, at the expense of the Company, accountants, attorneys, brokers, agents and other assistants on such terms and for such compensation as the Manager shall determine; to contract with other firms or entities to provide general managerial services to the Company; to expend Company funds for any ordinary and necessary secretarial, office, or general administrative expenses; to institute or defend any actions on behalf of the Company to enforce its rights against Members and third parties; to execute, acknowledge and deliver any and all instruments necessary to effectuate the foregoing; to prepare or cause to be prepared and filed on behalf of the Company all Federal, State and other tax returns required to be filed and to make or determine not to make (in the Manager's absolute discretion) all elections which the Company is entitled to make under federal, state and other tax laws, including elections under Section 754 of the Code. Notwithstanding anything to the contrary in this Agreement, the Manager shall be deemed to stand in the same fiduciary relationship to Members of the Company as corporate directors and officers stand in relation to stockholders of a corporation under the General Corporation Law of the State of Delaware.

**Section 5.4 <u>Officers</u>.**

(a)    The Manager may appoint individuals with such titles as the Manager may elect, including the titles of President, Vice President, Treasurer and Secretary, to

8

act on behalf of the Company with such power and authority as the Manager may delegate in writing to any such person.

(b)    Any officer may resign as such at any time. Such resignation shall be made in writing and shall take effect at the time specified therein, or if no time be specified, at the time of its receipt by the Manager. The acceptance of a resignation shall not be necessary to make it effective, unless expressly so provided in the resignation. Any officer may be removed as such, either with or without cause, by the Manager whenever in the Manager's judgment the best interests of the Company will be served thereby; provided, however, that such removal shall be without prejudice to the contract rights, if any, of the person so removed. Designation of an officer shall not of itself create contract rights. Any vacancy occurring in any office of the Company (other than Manager) may be filled by the Manager.

**Section 5.5  Actions by Manager.**  In managing the business and affairs of the Company and exercising its powers, the Manager shall have authority to act for or in the name of the Company, and, while more than one person is acting as the Manager, any such person shall have authority to act for or in the name of the Company; provided, however, that actions by the Manager in appointing a new licensing agent, or additional licensing agents, authorized to enter into licensing agreements on behalf of the Company, or materially changing the terms of compensation of any such licensing agent shall be subject to the provisions of Section 5.11 of this Agreement.

**Section 5.6  Limitation on Manager's Authority.**  The Manager shall not, except with the prior written consent of all Members, take any of the following actions:

(a)    Do any act in contravention of this Agreement;

(b)    Do any act which would make it impossible to carry on the business of the Company;

(c)    Confess a judgment against the Company;

(d)    Sell, assign, transfer or hypothecate all or substantially all of the business, assets or property of the Company.

**Section 5.7  No Management by Members.**  Except as otherwise expressly provided herein, no Member shall take part in the day-to-day management or in the operation or control of the business and affairs of the Company. Except and only to the extent expressly delegated by the Manager, no Member or other person other than the Manager shall be an agent of the Company or have any right, power or authority to transact any business in the name of the Company or to act for or on behalf of or to bind the Company.

**Section 5.8  Reliance by Third Parties.**  Any person or entity dealing with the Company or the Manager may rely upon a certificate signed by the Manager as to:

(a)    the identity of the Manager or any other Member hereof;

(b)    the existence or non-existence of any fact or facts which constitute a condition precedent to acts by the Manager or in any other manner germane to the affairs of the Company;

9

(c)     the persons who are authorized to execute and deliver any instrument or document of or on behalf of the Company; or

(d)     any act or failure to act by the Company or as to any other matter whatsoever involving the Company or any Member.

**Section 5.9  Reimbursements.**  The Company shall reimburse the Members, including the Manager, for all ordinary and necessary out-of-pocket expenses incurred by the Members on behalf of the Company. The Manager's determination of which expenses may be reimbursed to a Member, including the Manager, and the amount of such expenses shall be conclusive. Such reimbursement shall be treated as an expense of the Company that shall be deducted in computing the Net Cash Flow and shall not be deemed to constitute a distributive share of Profits or a distribution or return of capital to any Member.

**Section 5.10  Procedure for Contesting Certain Expenditures.**  The Manager or a majority in interest of the Members may (1) set the compensation of the Manager or of any officer of the Company, or (2) increase the compensation of the Manager or of any officer of the Company, only after the Manager has first provided written notice to the Members of the Company, setting forth the proposed compensation or increase, at least ten (10) business days prior to taking such action (a "Notice of Company Expense"). The Members of the Company shall have ten (10) business days beginning on and including the date on which all of the Members have received a Notice of Company Expense to deliver written notice to the Company that such Member is contesting such compensation, as an impermissible expense of the Company (a "Notice of Objection"). If a Member does not deliver a Notice of Objection to the Company within such ten-day period, then such Member shall be deemed to consent to such action, in all respects. If a Member timely delivers a Notice of Objection within such ten-day period, then the Manager shall contact such contesting Member and attempt to resolve the issues raised in the Notice of Objection regarding such action. In the event that the parties shall fail to reach a mutually agreeable resolution of the issue or issues presented in the Notice of Objection within sixty (60) calendar days from the date of receipt by all Members of the Notice of Company Expense, then the parties shall submit the issue to an arbitrator for final resolution pursuant to the terms of Section 10.8 below. Nothing in this Section 5.10 nor in Section 10.8 nor in the Notice of Objection shall prevent the Manager from implementing the Manager's decision pending resolution by mutual agreement or arbitration. The arbitrator shall have the power to award reimbursement to the Company of any compensation that the arbitrator determines was an impermissible expense.

**Section 5.11  Procedure re Licensing Agent.**  The Manager or a majority in interest of the Members may not appoint a new licensing agent, or additional licensing agents, authorized to enter into licensing agreements on behalf of the Company, or materially change the terms of the compensation of any such licensing agent, unless and until the procedures of this Section 5.11 have been followed. At least ten (10) business days prior to taking any of the aforesaid actions, the Manager shall provide written notice to the Members of the Company, setting forth the action proposed to be taken by the Manager (a "Notice of Proposed Action"). The Members of the Company shall have ten (10) business days beginning on and including the date on which all of the Members have received a Notice of Proposed Action in which to deliver written notice to the Company that such Member objects to such action and the grounds for such objection (a "Notice of Objection"). If a Member does not deliver a Notice of Objection to the Company within such ten-day period, then such Member shall be deemed to consent to such action, in all respects. If a Member timely delivers a Notice of Objection within such ten-day

10

period, then the Manager shall contact such contesting Member and attempt to resolve the issues raised in the Notice of Objection regarding such action prior to taking such action; provided, however, that in the event that the parties shall fail to reach a mutually agreeable resolution of the issue or issues presented in the Notice of Objection within sixty (60) calendar days from the date of receipt by all Members of the Notice of Proposed Action, then the parties shall submit the issue to an arbitrator for final resolution pursuant to the terms of Section 10.8 of this Agreement, and the proposed action shall go into effect only if authorized by, and upon such terms as may be determined by, the arbitrator.

## ARTICLE VI

## AMENDMENTS AND MEETINGS

**Section 6.1  Amendments.**  This Agreement shall not be amended without the unanimous written consent of the Members.  No waiver of any rights under this Agreement shall be binding unless it is in writing signed by the party waiving such rights.  Any amendment to this Agreement shall be adopted and be effective as an amendment hereto if approved by the Members; provided, however, that no amendment shall be made, and any such purported amendment shall be void and ineffective, to the extent the result thereof would be to cause the Company to be treated as anything other than a partnership for purposes of United States income taxation.

**Section 6.2  Call of Meetings.**  Meetings of the Members may be called at any time by the Manager and shall be called within ten (10) days after written notice to the Manager from any other Member requesting a meeting.

**Section 6.3  Place of Meetings; Participation by Telephone.**  All meetings of the Members of the Company shall be held at such places, within or without the State of Delaware, as may from time to time be designated by the person or persons calling the meeting, and specified in the respective notices or waivers of notice thereof.  The Manager may permit participation in any meeting by means of conference telephone or similar communications equipment pursuant to which all persons participating in the meeting can hear each other, and such participation shall constitute presence in person at such meeting.

**Section 6.4  Notice of Meetings.**  Except as otherwise required by law, notice of each meeting of the Members of the Company shall be given not less than ten (10) nor more than sixty (60) days before the date of the meeting to each Member of record entitled to vote at such meeting by delivering a typewritten or printed notice thereof to such Member personally, or by depositing such notice in the United States mail, in a postage prepaid envelope, directed to such Member at such Member's post office address furnished by such Member to the Manager for such purpose or, if such Member shall not have furnished to the Manager an address for such purpose, then at such Member's post office address last known to the Manager, or by transmitting a notice thereof to such Member at such address by mail, personal delivery, facsimile, telegraph, cable or wireless.  Every notice of a meeting of the Members shall state the place, date and hour of the meeting, and the purpose or purposes for which the meeting is called.  Notice of any meeting of Members shall not be required to be given to any Member who shall have waived such notice, and such notice shall be deemed waived by any Member who shall attend such meeting in person or by proxy, except as a Member who shall attend such meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.  Except as otherwise expressly required

11