------------------------------------------------------------------x
SHAW FAMILY ARCHIVES, LTD., EDITH MARCUS
and META STEVENS,

                         05 CV 3939 (CM)

               Plaintiffs,

                        **Honorable Colleen McMahon**

   -against-

CMG WORLDWIDE, INC., an Indiana Corporation,
and MARILYN MONROE, LLC, a Delaware Limited
Liability Company,

               Defendants.
------------------------------------------------------------------x

## RESPONSE TO MMLLC'S STATEMENT OF FACTS

Plaintiff's Shaw Family Archives, Ltd., Edith Marcus, Meta Stevens and Bradford Licensing, Inc., pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Southern District of New York, respectfully submits the following Response to the Additional Undisputed Statement of Facts of Marilyn Monroe LLC: ("MMLLC").

MMLLC failed to cite evidence that supports its contentions, as required by Rule 56.1(d). Moreover, certain statements of MMLLC contain faulty legal arguments or improper characterizations, and other statements require additional facts, information or testimony. Additionally, some of MMLLC's Rule 56.1 Statement contains inadmissible evidence, and some statements do not contain relevant facts. Judgment and its opposition to SFA and Bradford's Cross-Motion for Summary Judgment.

SFA and Bradford respectfully request that the Court strike or disregard MMLLC's unsupported, inaccurate, inadmissible or argumentative and compulsory statements. See *Hotz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2nd Cir. 2001); *Epstein v. Kemper Ins. Co.*, 210 F.Supp.2d 308 (S.D.N.Y 2002).

**SFA/Bradford Response to MMLLC Additional Statements No. 1**

1. SFA and Bradford lack sufficient information to either deny or admit the statement set forth by MMMLC herein. Even if true, this statement is irrelevant to any of the claims set forth by any party herein.

**SFA/Bradford Response to MMLLC Additional Statements No. 2**

2. SFA and Bradford lack sufficient information to either deny or admit the statement set forth by MMMLC herein. Even if true, this statement is irrelevant to any of the claims set forth by any party herein.

**SFA/Bradford Response to MMLLC Additional Statements No. 3**

3. SFA and Bradford admit MMLLC's statement herein. Even if true, this statement is irrelevant to any of the claims set forth by any party herein.

**SFA/Bradford Response to MMLLC Additional Statements No. 4**

4. SFA and Bradford lack sufficient information to either deny or admit the statements set forth by MMMLC herein, but admit that Marilyn Monroe married Joe DiMaggio and divorced him in 1954 just prior to her moving to New York. Even if true, this statement is irrelevant to any of the claims set forth by any party herein.

**SFA/Bradford Response to MMLLC Additional Statements No. 5**

5. Marilyn Monroe moved to New York City at the end of 1954 and remained her residence/domicile in New York City until she died on August 5, 1962. (See Marcus Supp. Decl. Exhibits G, H and L).

**SFA/Bradford Response to MMLLC Additional Statements No. 6**

6.  Upon information and belief, Marilyn Monroe studied acting at the Actors' Studio in New York with Lee and Paula Strasberg from 1955 until her death on August 5, 1962. (See Marcus Supp. Decl ¶¶ 13-16 and 27 and Exh.. L).

### SFA/Bradford Response to MMLLC Additional Statements No. 7

7.  In 1962, Marilyn Monroe purchased a bungalow in Brentwood California. Neither SFA nor Bradford are aware of any inscription on the front steps stating "Cursum Perficio." No proof of this inscription has been provided. However, if such an inscription existed, there is no evidence that was inscribed by Marilyn Monroe, and it is not relevant to the issue of which State was Monroe's residence or domicile.

### SFA/Bradford Response to MMLLC Additional Statements No. 8

8.  SFA and Bradford object to MMLLC's characterization of the manner in which Ms. Monroe renovated and decorated her home. This account comes from second hand sources and is unsubstantiated hearsay. In actuality, Ms. Monroe's house was simple and sparsely decorated. According to Richard Meryman of Life Magazine, the rooms in Marilyn's California home were bare and makeshift, as though someone lived there only temporarily…" (See Craven Supplemental Declaration Exhibit 1 at Exhibit J.)

### SFA/Bradford Response to MMLLC Additional Statements No. 9

9.  SFA and Bradford admit that in 1962 Marilyn Monroe prepared for her role in the film "Something's Got to Give" and treated with Dr. Greenson. In fact, Twentieth Century Fox arranged for Dr. Greenson to counsel Ms. Monroe to ensure her timely participation in shooting. (See Marcus Supp. Decl. ¶23).

### SFA/Bradford Response to MMLLC Additional Statements No. 10

10. SFA and Bradford admit that on August 5, 1962, Marilyn Monroe was found dead.

**SFA/Bradford Response to MMLLC Additional Statements No. 11**

11. SFA and Bradford admit that Joe DiMaggio made Marilyn Monroe's funeral arrangements and hat she was buried at Westwood Memorial Cemetery.

**SFA/Bradford Response to MMLLC Additional Statements No. 12**

12. The Connecticut License submitted by MMLLC is unsigned. In any event, the license is not a California license.

**SFA/Bradford Response to MMLLC Additional Statements No. 13**

13. SFA and Bradford admit that Marilyn Monroe's will bequeathed 25% of the residuary of her estate to Marianne Kris and the remainder to Lee Strasberg. SFA and Bradford maintain that Marilyn Monroe only intended her residuary clause to include property she owned or was entitled to at death, and in any event, as a matter of law, she was unable to bequeath property which she did not own at the time of her death. (See Larry Shaw Supplemental Declaration ("Shaw Supp. Decl.") at ¶15).

**SFA/Bradford Response to MMLLC Additional Statements No. 14**

14. SFA and Bradford admit that Marilyn Monroe's will bequeathed 25% of the residuary of her estate to Marianne Kris and the remainder to Lee Strasberg. SFA and Bradford maintain that Marilyn Monroe only intended her residuary clause to include property she owned or was entitled to at death, and in any event, as a matter of law, was unable to bequeath property which she did not own at the time of her death. (Shaw Supp. Decl. at ¶15).

**SFA/Bradford Response to MMLLC Additional Statements No. 15**

15. SFA and Bradford admit to this statement, but object to any inference that a right of publicity in Marilyn Monroe's persona was owned and transferred. (Shaw Supp. Decl. at ¶¶ 6, 7 and 11).

**SFA/Bradford Response to MMLLC Additional Statements No. 16**

16. SFA and Bradford admit the accuracy of this statement, but note that Aaron Frosch was also the trustee of the Estate of Marilyn Monroe, until his death in 1989.

**SFA/Bradford Response to MMLLC Additional Statements No. 17**

17. SFA and Bradford the accuracy of this statement, but note that Mr. Frosch, as executor and trustee, claimed that the defendants in that action violated New York Civil Law §§ 50 and 51 (New York's right of privacy statute). (See Marcus Supplemental Declaration ("Marcus Supp. Decl") Exh. E).

**SFA/Bradford Response to MMLLC Additional Statements No. 18**

18. SFA and Bradford admit that the defendants in *Frosch v. Grossett & Dunlap, Inc.* filed separate Motions to Dismiss and/or Summary Judgment with the trial court and asserted that the First Amendment protected the offending book. Additionally, said defendants asserted that New York State law did not permit a transfer of a personality's right of publicity. The Exhibit of MMLLC (see Craven Supp. Decl, Exh. 4) is illegible. However, even if it is true that one of the defendants conceded for the purpose of the motion the existence of a separate right of publicity, that defendant did not concede the existence of a right of privacy. At the time *Frosch* was being decided, it was unclear if New York would recognize a separate right of publicity, apart from a right of privacy. (*Brinkley v. Casablancas*, 80 A.D.2d 428; 438 N.Y.S.2d 1004 (1981)). The Appellate Division conclusively held that New York State does not recognize a separate right of publicity.

**SFA/Bradford Response to MMLLC Additional Statements No. 19**

19. SFA and Bradford admit that defendants' motion for summary judgment was granted on first amendment grounds.

**SFA/Bradford Response to MMLLC Additional Statements No. 20**

20. SFA and Bradford admit that the Appellate Division, 1st Department, denied the Estate of Marilyn Monroe's appeal. The Appellate Division, First Department previously ruled that the Estate of Marilyn does not own a right of publicity and/or right of privacy in the name, likeness and image of Marilyn Monroe. See *Frosch v. Grosset & Dunlap*, 75 A.D.2d 768 (N.Y.App.Div. 1980). See Marcus Declaration dated November 29, 2006 ("Marcus Decl.") at ¶ 25.

**SFA/Bradford Response to MMLLC Additional Statements No. 21**

21. SFA and Bradford lack sufficient knowledge of the facts and document set forth herein to make an admission or denial. Notwithstanding the foregoing, any inclusion of licensing income submitted in an Account of Executors and Administrators merely indicates that monies were collected by the estate; it has no bearing on whether a right of privacy/publicity was recognized.

**SFA/Bradford Response to MMLLC Additional Statements No. 22**

22. SFA and Bradford admit that Anna Strasberg was named the executor of the Estate of Marilyn Monroe in 1989.

**SFA/Bradford Response to MMLLC Additional Statements No. 23**

23. SFA and Bradford reject to the term "infringing licensing activities" as MMLLC does not own any right of publicity in Marilyn Monroe's persona. (See Shaw Supp. Decl. ¶¶ 3, 6, 7 and 11). Further, the Estate of Marilyn Monroe, the Roger Richman Agency and CMG were

aware of Larry Shaw's licensing of Sam Shaw's Marilyn Monroe photographs since the 1980's. (Larry Shaw Decl. ¶12).

**SFA/Bradford Response to MMLLC Additional Statements No. 24**

24.   SFA and Bradford lack sufficient knowledge of the facts and document set forth herein to make an admission or denial. Notwithstanding the foregoing SFA and Bradford object to any reference or inference that the Estate of Marilyn Monroe owned any publicity rights. (See (See Shaw Supp. Decl. ¶¶3, 6, 7 and 11).

**SFA/Bradford Response to MMLLC Additional Statements No. 25**

25.   SFA and Bradford lack sufficient knowledge of the facts and document set forth herein to make an admission or denial. Notwithstanding the foregoing SFA and Bradford object to any reference or inference that the Estate of Marilyn Monroe owned any publicity rights. (See (See Shaw Supp. Decl. ¶¶3, 6, 7 and 11).

**SFA/Bradford Response to MMLLC Additional Statements No. 26**

26.   SFA and Bradford lack sufficient knowledge of the facts and document set forth herein to make an admission or denial. Notwithstanding the foregoing SFA and Bradford object to any reference or inference that the Estate of Marilyn Monroe owned any publicity rights. (See (See Shaw Supp. Decl. ¶¶3, 6, 7 and 11).

**SFA/Bradford Response to MMLLC Additional Statements No. 27**

27.   SFA and Bradford lack sufficient knowledge of the facts and documents set forth herein to make an admission or denial. Notwithstanding the foregoing, SFA and Bradford object to any allegation that the Estate of Marilyn Monroe, or any of the beneficiaries thereof, transferred any ownership interests in said estate to MMLLC on the basis that no documentary proof has been provided.

**SFA/Bradford Response to MMLLC Additional Statements No. 28**

28. SFA and Bradford lack sufficient knowledge of the facts and documents set forth herein to make an admission or denial. Notwithstanding the foregoing, SFA and Bradford object to any allegation that the Estate of Marilyn Monroe, or any of the beneficiaries thereof, transferred any ownership interests in said estate to MMLLC on the basis that no documentary proof has been provided.

**SFA/Bradford Response to MMLLC Additional Statements No. 29**

29. SFA and Bradford lack sufficient knowledge of the facts and documents set forth herein to make an admission or denial. Notwithstanding the foregoing SFA and Bradford object to any reference or inference that the Estate of Marilyn Monroe and/or MMLLC owned any publicity rights. (See Shaw Supp. Decl. ¶¶3, 6, 7 and 11). It is noted that most of the income set forth therein was the result of the sale of Marilyn Monroe's personal effects.

**SFA/Bradford Response to MMLLC Additional Statements No. 30**

30. SFA and Bradford lack sufficient knowledge of the facts and documents set forth herein to make a determination as to the relationship of CMG and MMLLC, but deny any claim made by CMG and MMLLC that MMLLC owns any right of publicity in the persona of Marilyn Monroe and/or that CMG represents these rights. (See Shaw Supp. Decl. ¶¶3, 6, 7 and 11).

**SFA/Bradford Response to MMLLC Additional Statements No. 31**

31. SFA and Bradford deny that that Edith Marcus and Meta Stevens acknowledge that the Estate of Marilyn Monroe owned numerous trademark rights and the right of publicity. (See Supp. Meta Stevens Supplemental Declaration ("Stevens Supp. Decl." and Edith Marcus Supplemental Declaration ("Marcus Supp. Decl.") at ¶3). SFA and Bradford admit that Edith Marcus and Meta Stevens had communications with Mark Roesler beginning in 1999 and admit

that Larry Shaw refuted Mark Roesler's claim that MMLLC owned a right of publicity in Marilyn Monroe's persona. (See Shaw Supp. Decl.) (See Shaw Supp. Decl. ¶¶2 and 11)

### SFA/Bradford Response to MMLLC Additional Statements No. 32

32. SFA and Bradford admit that Larry Shaw, Edith Marcus and Meta Stevens had communications with Mark Roesler beginning in 1999. Larry Shaw admits that Mark Roesler claimed that MMLLC was the owner of a right of publicity in Marilyn Monroe's persona but that Larry Shaw refuted these claims. (See Shaw Supp. Decl ¶¶3 and 11). Further, SFA's conduct was consistent with their belief that MMLLC did not own any right of publicity. (See Shaw Supp. Decl. ¶¶3, 6, 7, 11 and 12)

### SFA/Bradford Response to MMLLC Additional Statements No. 33

33. SFA and Bradford deny the statements herein. Prior to 2004, Larry Shaw and SFA refuted the Estate of Marilyn Monroe and MMLLC's claim to ownership of Ms. Monroe's right of publicity. (See Shaw Supp. Decl. ¶¶3, 6, 7, 11 and 12) Further, CMG knew, or should have known, of its licensing activities. (See Shaw Supp. Decl. ¶¶3, 12 and 13)

### SFA/Bradford Response to MMLLC Additional Statements No. 34

34. SFA and Bradford lack any information about Mr. Roesler's intent, but maintain that SFA never acknowledged any right of publicity claim made by MMLLC. (See Shaw Supp. Decl. ¶¶3, 6, 7, 11 and 12). SFA admits that some deals did involve CMG and MMLLC, however, at no time did SFA acknowledge any right of publicity. (See Shaw Supp. Decl. ¶¶3, 6, 7, 11 and 12)

### SFA/Bradford Response to MMLLC Additional Statements No. 35

35. SFA and Bradford lack sufficient knowledge of the facts and documents set forth herein to make an admission or denial. CMG and MMLLC failed to provide a copy of any such email communication from Bradford.

**SFA/Bradford Response to MMLLC Additional Statements No. 36**

36. Bradford denies having received a letter from CMG dated March 4, 2004. (See Reiter Supp. Decl. ¶5).

**SFA/Bradford Response to MMLLC Additional Statements No. 37**

37. SFA and Bradford deny this statement. (See Shaw Supp. Decl. ¶5).

**SFA/Bradford Response to MMLLC Additional Statements No. 38**

38. SFA and Bradford lack sufficient knowledge of the facts and documents set forth herein to make an admission or denial.

**SFA/Bradford Response to MMLLC Additional Statements No. 39**

39. SFA and Bradford deny that the instant action was the result of any of the activities of SFA and Bradford. (See Reiter Supp. Decl. ¶4 and Shaw Supp. Decl. ¶4). Rather, it is believed that CMG and MMLLC made a business decision to file declaratory judgment actions against the families of numerous Marilyn Monroe photographers and only sought an infringement action against SFA and Bradford in order to obtain attorneys fees. (Reiter Supp. Decl. ¶4 and Shaw Supp. Decl. ¶4) Moreover, the acts that CMG and MMLLC initially resulted in this action against them was due to the actions of Valhalla Productions, LLC., not SFA or Bradford. (Reiter Supp. Decl. ¶4 and Shaw Supp. Decl. ¶4).

Dated: New York, New York
January 15, 2007

By: David Marcus (DM 0960)
Marcus & Greben