UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
SHAW FAMILY ARCHIVES, LTD., BRADFORD
LICENSING, INC., JAMES E. DOUGHERTY,
and VALHALLA PRODUCTIONS, LLC.

          05 CV 3939 (CM)

    Plaintiffs/Consolidated Deendants,

          **Honorable Colleen
          McMahon**

    -against-

CMG WORLDWIDE, INC.,
and MARILYN MONROE, LLC,,

    Defendants/Consolidated Plaintiffs
-----------------------------------------------------------------x

## SUPPLEMENTAL DECLARATION OF LARRY SHAW

                        Marcus & Greben
                        1650 Broadway
                        Suite 707
                        New York, NY 10019
                        Tel: 646-536-7602
                        Fax: 212-765-2210

                        Attorneys for Plaintiff/Consolidated
                        Defendant SFA, Plaintiffs Edith
                        Marcus and Meta Stevens and
                        Consolidated Defendant Bradford
                        Licensing, Inc.

I, LARRY SHAW, declare as follows:

1. I am over the eighteen years of age and am fully competent to make this Declaration. The facts contained herein are stated upon my personal knowledge.

2. I have read the Memorandum in Opposition of Marilyn Monroe, LLC ("MMLLC") to the Motion for Summary Judgment of Shaw Family Archives, Ltd. ("SFA") and Bradford Licensing, Inc. ("Bradford"), and the supporting declarations thereto.

3. With respect to the Supplemental Declaration of Mark Roesler, I dispute his allegation that I, or any other member of SFA, acknowledged, his company's (CMG's) status as exclusive agent to MMLLC and that we acknowledged MMLLC's ownership rights of any right of publicity in Marilyn Monroe's persona. In fact, as I previously set forth in my prior declaration hereto, I have always rejected any such claim or assertion. Annexed hereto as Exhibit A is a copy of an email exchange with Atsuko Kinukawa of Artpix, a Japanese licensee, dated July 19, 2004, where I inform her that we, SFA, do not acknowledge MMLLC's claim of ownership of a right of publicity and that I could not allow SFA's images to be associated with the statement "the name, image, and likeness of Marilyn Monroe are the exclusive property of Marilyn Monroe, LLC."

4. Further, Mr. Roesler could not have used the alleged communication by Len Reiter as his basis for commencing a suit against SFA. Firstly, SFA is not mentioned in the correspondence provided, only Bradford and Valhalla Productions, LLC. are named. Valhalla Productions, LLC. was not even named as a defendant until CMG and MMLLC filed their Second Amended Complaint. Rather, I believe that CMG and

MMLLC intended to serve SFA with a declaratory judgment action and instead half-heartedly converted the action into one for damages. I believe that this was/is being done as a means of intimidation and in order to get attorneys fees. It is also important to note that, despite the fact SFA and Bradford do not create or sell any items bearing Marilyn Monroe's image, we were sued herein and not the actual party who created and sold the products.

5. In paragraph 10 of Mark Roesler's Supplemental Declaration, Mr. Roesler alleges that Bradford's website announced "[o]ver 500 never before seen photos and clips....are now available for license." Mr. Roesler annexes a copy of part of Bradford's website as Exhibit B thereto. Nowhere does Exhibit B indicate 500 images are available. Further, the site only refers to a new line of merchandise available from Valhalla Productions featuring rare and unseen photos from Marilyn's early years with her first husband, Jim Dougherty. These images have nothing to do with SFA, as Sam Shaw only first met Marilyn Monroe long after she left Jim Dougherty. Furthermore, the image of Marilyn Monroe depicted is not a SFA image.

6. SFA, at times, has no alternative but to enter deals in which CMG is already involved, although that does not mean we acknowledge any rights claimed by CMG and MMLLC with respect to Marilyn Monroe. Many licensees have been intimidated or tricked into believing that MMLLC actually owns a right of publicity and SFA has no alternative but to participate in these deals or not make any money. Although, SFA sometimes participates in some of these deals, SFA deals directly with the licensee (who seeks CMG approval separately), not with CMG. In the Artpix deal mentioned above, CMG was involved in the licensing of a Marilyn Monroe calendar in

Japan before SFA was involved. Artpix wanted to use some of my father's shots of Marilyn Monroe standing above the subway grating from his "Flying Skirt Series." However, CMG refused to permit Artpix from using our skirt blowing photographs, instead advising Artpix to go to www.legendsarchive.com and select from the "approved" photographs. Annexed collectively hereto as Exhibit B are emails to and from Atsuko Kinukowa of Artpix to Kunal Dua of CMG, dated June 21, 2004 and June 22, 2004 regarding CMG's refusal to allow Artpix to use Sam Shaw images.

7. This Artpix deal is just one of many where CMG prevented licensees from using SFA's images. Now, despite the fact MMLLC does not own a right of publicity in Marilyn Monroe, CMG has virtually dominated the domestic market place, and are now claiming the international marketplace, using bully tactics and threats. (See the Supplemental Declaration of Len Reiter). Further, they can carry out on their threats because, over the years, they have amassed millions of dollars from the sale of Marilyn Monroe's personal items and licensing. On July 8, 2005, Martin Illmer, of the law firm Allen & Overy LLC wrote a very detailed letter, on behalf of its German client, responding to CMG's notification of infringement of MMLLC's right of publicity in Marilyn Monroe. In response, CMG sent two letters, dated July 19, 2005 and July 22, 2005 advising Mr. Illmer that "[w]e have litigated this issue successfully, that is we have proven that Marilyn Monroe's domicile was not in New York at the time of her death..."and threatens suit unless payment is made. If MMLLC and CMG had in fact already proven that Marilyn Monroe was not domiciled in New York, they would have relied upon that legal authority in this case. The fact that they have not strongly indicates that no such legal authority exists and CMG and MMLLC used bullying tactics to enforce

a right that does not exist. Collectively annexed hereto as Exhibit D are the aforementioned letters, in order by date.

8. CMG's tactics are similar to those previously used by the Roger Richman Agency, the prior representative of the Estate of Marilyn Monroe. Annexed hereto as Exhibit C is a copy of a letter written by Joe Robison of Starpool Inc., dated May 18, 1983, outlining the illegal actions and threats carried out by the Roger Richman Agency, representing the Estate of Marilyn Monroe, in enforcing a non-existent right of publicity.

9. If MMLLC's claim to own a right of publicity herein is upheld, then CMG and MMLLC will control the entire marketplace relating to Marilyn Monroe to such an extent, that SFA will not be able to license any of its images. As shown above, CMG allows the licensing of images on an approved list and SFA's images appear not to be on that list. Although where CMG initiates a deal, or is part of a deal before SFA is involved, SFA is sometimes "allowed" to license its images, SFA is only given a small flat fee, while CMG and MMLLC get a percentage of the profits. In five separate deals, involving Marilyn Merlot, SFA licensed 5 images to be used on wine bottles and was paid only a nominal flat fee for each image. In contrast, CMG and MMLLC received a percentage on each wine bottle sold. Neither SFA, nor any of the heirs of Milton Greene and Tom Kelley, can operate under this type of oppressive control.

10. Additionally, I have been informed by licensees[1] that they have been advised by CMG that if they refuse to license Marilyn Monroe images from them, they would stop licensing images to them that CMG does control. In effect, CMG is

---

[1] These licensees refused to give me written confirmation of CMG's tactics as they feared retaliation from CMG.

unlawfully interfering with SFA and Bradford's right to contract and is using its influence in the marketplace to create a right in practice that does not legally exist.

11. In the meetings and discussions with Mr. Roesler in which I was involved, the issue discussed was his company's representation of SFA's photographic archives. I do recall him claiming that MMLLC was the exclusive owner of Marilyn Monroe's right of publicity. I refused to acknowledge this and he never told me in writing or verbally not to license SFA's Marilyn Monroe photographs.

12. Further, CMG and the Roger Richman Agency were both aware of my licensing activities, on behalf of my father, Sam Shaw, and SFA. (See my prior Declaration). In addition to all of the licensing deals I arranged in the 1980's, in 1993 I sent a copy of a letter written by Martin Bressler, Esq. (see Exhibit D to my prior Declaration) to countless licensees, including, but not limited to, Pomegranate, Classico, Devon Publishing Company, Mirage, Tri-Ex Corp. (Japan), Sunrise Corporation (Japan), Artpix (Japan), Zippo lighters (France), VIP (Germany), ASaP and Questions S.L. (Spain). As a result of these letters, some of these licensees informed me that Roger Richman was very upset that I sent them. In fact, Mr. Richman spoke to me several times about these letters and his claims that the Estate of Marilyn Monroe owned a right of publicity in Marilyn Monroe. I rejected this claim and told him that he had no authority to license any deal involving Marilyn Monroe as his client, the Estate of Marilyn Monroe, did not own a right of publicity. Mr. Richman never commenced suit against me and CMG/MMLLC never commenced suit against me or SFA until the instant action was commenced in 2005, almost 20 years since I have been licensing Sam Shaw's Marilyn Monroe photographs. Additionally, CMG is a sophisticated international company. It is

unbelievable and impossible for CMG not to know that SFA, Greene and Kelley have been licensing their images of Marilyn Monroe without MMLLC approval. Moreover, as previously set forth, Mr. Roesler previously knew of SFA's intention to market its Marilyn Monroe photographs.

13. Despite the fact that Mr. Roesler knew, since 1999, that there was ongoing litigation in New York County Supreme Court regarding the ownership of the Marilyn Monroe photographic images created by my father, Mr. Roesler never advised the Court that CMG, on MMLLC's behalf, controlled Marilyn Monroe's right of publicity and that any licensing deal using the photographs would have to be approved by CMG. In fact, a court appointed receiver, Myron Beldock, with court approval, licensed Sam Shaw's photographs in 2000. It is apparent that at all times, CMG, MMLLC, the Roger Richman Agency and the Estate of Marilyn Monroe chose not to enforce any alleged right of publicity until only recently.

14. Solely as a means to see if settlement with CMG and MMLLC would be viable, SFA allowed CMG to try to find licensing deals. However, nothing came of this arrangement and SFA has not conceded any claim by MMLLC and CMG that MMLLC owns Marilyn Monroe's right of publicity.

15. With respect to Ms. Monroe's will, my attorneys have advised me that, upon reading her will, it was not Marilyn Monroe's intent to bequeath property she did not own at the time of her death, nor was she able to, as a matter of law, bequeath property she did not own or was not entitled to at the time of her death.

-03939-CM    Document 88    Filed 01/17/2007

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on the 15th day of January 2006, at Piermont, New York.

*[signature]*
LARRY SHAW