EXHIBIT A

Surjit P. Soni (State Bar No. 127419)
M. Danton Richardson (State Bar No. 141709)
Leo E. Lundberg, Jr. (State Bar No. 125951)
THE SONI LAW FIRM
55 South Lake Ave., Suite 720
Pasadena, California 91101
(626) 683-7600 Telephone
(626) 683-1199 Fax

Attorneys for Defendant/Cross-Complainants,
The Milton H. Greene Archives, Inc., and
Tom Kelley Studios, Inc.

Lydia Bouzaglou-Newcomb, SBN 134241
LAW OFFICES OF LYDIA BOUZAGLOU-NEWCOMB
5000 East Spring Street, Suite 600
Long Beach, California 90815
Tel: (562) 420-4000; Facsimile: (800) 495-4019

R. Lawrence Bragg, State Bar No.: 119194
LAW OFFICES OF DONALD J. DeSHAW
2730 Gateway Oaks Drive, Suite 210
Sacramento, California 95833
Tel: (916) 923-9505; Facsimile (888) 813-3351

John P. Cogger (State Bar No. 172808)
LAW OFFICES OF BRUCE P. AUSTIN
1455 Frazee Road, Suite 802
San Diego, California 92108
Tel: (619) 209-4000; Facsimile: (866) 724-0742

Attorneys for Defendant
THE MILTON H. GREENE ARCHIVES, INC.

Robin A. Webb, SBN 160494
Email: raw@ggb-law.com
GRANT, GENOVESE ET AL
2030 Main Street, #1600
Irvine, California 92614
Telephone: (949) 660-1600
Facsimile: (949) 660-6060

Attorneys for Defendant,
TOM KELLEY STUDIOS, INC.

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE MILTON H. GREENE ARCHIVES, INC., | CASE NO.: CV05-2200-MMM(MCx) [CONSOLIDATED ACTION] |
| Plaintiff, | |

SUPPLEMENTAL REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
FILED PURSUANT TO COURT ORDER
CASE NO.:CV05-2200-MM(MCx)



vs.

**SUPPLEMENTAL REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FILED PURSUANT TO COURT ORDER**

CMG WORLDWIDE, INC., an Indiana Corporation, and MARILYN MONROE, LLC, a Delaware Limited Liability Company, ANNA STRASBERG, an individual,

Date: UNDER SUBMISSION
Time: TBA
Place: Courtroom of the Honorable
         Margaret M. Morrow

Defendants.

[[Proposed] Order Lodged Concurrently Herewith]

And Consolidated Actions

S:\Susi_Law\Greene\Greene v. CMG\PMgs\MSJ\Combined MSJ Reply\Supplemental.122106.wpd

Defendants/Counter-claimants, The Milton H. Green Archives, Inc., and Tom ____ Studios, Inc. ("Defendants") hereby submit their supplemental reply in support of their Motion for Summary Judgment pursuant to this Court's December 11, 2006 Tentative Order.

## I.    SUMMARY OF ARGUMENT

Plaintiffs[1] have chosen to ignore the Court's directive to address the single issue the Court framed, namely:

> Whether Marilyn Monroe could transfer through her will a posthumous right of publicity which she did not own at the time of her death?

Instead, they launch into a re-argument of their statutory construction of Cal.Civ.Code §3344.1 and the effectiveness of the residuary clause to transfer "after-acquired" property, not the question of Marilyn Monroe's capacity to transfer assets she did not own at death.[2]

The proper response to the Court's permitted briefing necessarily begins with a construction of Ms. Monroe's will. If Ms. Monroe's will reflects an intent to bequeath only what she owned *at the time of her death*, the inquiry is complete since she did not own any post-mortem RoP at her death.

A secondary inquiry would analyze the laws of New York or California, the only two (2) states where she was possibly domiciled at the time of her death, to

---

[1] "Plaintiffs" refers to Marilyn Monroe, LLC ("MMLLC") and CMG Worldwide, Inc.

[2] Plaintiffs try to introduce 17 new exhibits they failed to produce in response to Defendants' Requests for Production of Documents. The new evidence does not bear on the Court's question and is largely inadmissible and incompetent to establish Plaintiffs' ownership of in Marilyn Monroe's right of publicity (" RoP"). See Objections to the Newly Submitted Evidence, submitted herewith. The Court did not authorize submission of new evidence; all evidence in opposition was required to have been filed by the date Plaintiffs' opposition was due. *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 519-520 (9th Cir. 1990). The Court should not consider any of this untimely evidence.

determine whether those states permit testators to bequeath property they do not own at the time of death. This inquiry resolves what "after-acquired" property may be disposed by will.

Only if Ms. Monroe died a domiciliary of California and California permits testamentary dispositions of assets not owned at time of death, would a construction of Cal. Civ. Code §3344.1 be necessary. The Court must determine whether the statute has retroactive effect to vest, in persons long dead, a capacity to convey property not owned, known, anticipated or expected by them at the time of their death. If Ms. Monroe was domiciled in New York when she died, Cal.Civ.Code §3344.1 is irrelevant. California does not extend post-mortem RoP to persons whose domiciliary state at time of death, such as New York, does not extend such rights. *Lord Simon Cairns v. Franklin Mint Co.*, 292 F.3d 1139 (9th Cir. 2002).

As shown more fully hereafter, summary judgment should be granted to Defendants because Marilyn Monroe's will disposes only of property she owned "at the time of death." Moreover, Marilyn Monroe, could not have conveyed by will, under New York or California law, rights she did not own.[3] After-acquired property provisions of California and New York law address only property acquired after the making of the will and owned at death, not after death of the testator.[4] Summary

---

[3] It is undisputed that the laws of New York, Indiana or California did not extend a RoP to deceased persons in 1962, when Ms. Monroe died, and New York does not to this day. *Frosh, supra; Lugosi v. Universal Pictures*, 25 Cal.3d 813, 160 Cal.Rptr. 323, 603 P.2d 425, 10 A.L.R.4th 1150(1979). California Civil Code section 3344.1 was not in effect at the time of Ms. Monroe's death, having first been enacted in 1984. Indiana law Section 32-36-1 was enacted in 1994.

[4] Indiana, New York and California look to the domicile of a person to determine what property rights exist. The evidence of record overwhelmingly establishes that Ms. Monroe remained domiciled in New York at the time of her death. Whether a RoP survived her passing must be decided applying New York law. New York has the most significant interest in the determination, Ms. Monroe having lived there, paid taxes there and having passed her probate through its courts.

judgment is also appropriate because Plaintiffs have not established that Marilyn

Monroe was a domiciliary of California when she died, so Cal.Civ.Code §3344.1 has no application.[5]

Finally, even if Ms. Monroe was a California domiciliary at the time of her death, Cal. Civ. Code §3344.1 has no retroactive effect, does not vest any rights in estates of deceased persons, and did not change well-established rules of probate law which do not allow decedents to transfer property in which they had no expectancy at the time of their death.[6] Consequently, Plaintiffs could not have received any post-mortem RoP by a transfer effective 22 years before the rights came into existence.

---

[5] Plaintiffs have produced no evidence of any change in Ms. Monroe's intended domicile. In addition to Plaintiffs' judicial admissions that have been shown, Defendants have produced statements by Ms. Monroe which reflect her intent to make New York her permanent home, including through retirement. The locus of Ms. Monroe's life remained in New York until the time she died. It is uncontroverted that Ms. Monroe paid state taxes in New York and in California as a non-resident, and that her lawyer, trustee and executor of the estate, accountant, checking accounts, business, acting coach and beneficiary of the residuary clause were all in New York.

[6] Plaintiffs also improperly seek to have the Indiana RoP law have retroactive effect, when no such provision was included in the statute. Plaintiffs construction of the Indiana statute would interfere with the dormant Copyright clause, the Commerce clause, the right to contract and effect an unlawful taking form persons who enjoyed free right to use the indicia of Ms. Monroe's persona which was unprotected for 32 years before implementation of Indiana's statute.

Plaintiffs rely upon the unpublished interlocutory trial court decision in *Scalf v. Lake County Convention and Visitors Bureau, Inc.*, Cause No. 45D10-0406-PI-00093 (Lake County Superior Ct. Indiana, filed Jan. 9, 2005) as authority for the proposition that the Indiana RoP statute should be applied retroactively, (See Opposition at 6, n.4) despite conceding that "it is an interlocutory order and therefore not binding authority here." *Id.* Under Indiana law, a conclusion of law by a Circuit Court from which no appeal was taken is not binding precedent and it is improper for counsel to cite to such authority. *Harford Accident & Indemnity Co. v. Dana Corp.*, 690 N.E.2d 285, 294 n.10. Moreover, *Scalf v. Lake County* does not cite or discuss the rule against retroactive applications of statutes in Indiana or attempt to distinguish *Chestnut, supra. Scalf* should not be considered.

---

Plaintiffs therefore have no standing to assert any such claims.[7] Just as clearly as there was no RoP in 1962 for Ms. Monroe to convey, Ms. Monroe was not alive in 1985 to receive any right of alienation under the consent provisions created by Ca.Civ.Code §3344.1.

To survive summary judgment Plaintiffs must show that: (1) Ms. Monroe intended to covey by will all property she owned, including after-acquired property rather than just property she owned at death; (2) the laws of her domicile state at death (New York or California) permit disposition by will of property a testator may be entitled to after death; (3) Ms. Monroe was a domicile of California when she died; (4) Cal.Civ.Code §3344.1 retroactively granted Ms. Monroe a RoP and the right to transfer it by will; (5) Ms. Monroe's will did in fact legally convey an unforseeable future interest to residuary beneficiaries; (6) the residuary beneficiaries have lawfully transferred the RoP they received to Plaintiffs. As shown herein, Plaintiffs fail to meet this burden.

## II. MS. MONROE'S WILL REFLECTS AN INTENT TO BEQUEATH ONLY WHAT SHE OWNED AT THE TIME OF HER DEATH

The relevant provision of Ms. Monroe's will provided:

SIXTH, All the rest, residue and remainder of my estate, both real and personal, of whatever nature and wheresoever situate, *of which I shall die seized or possessed or to which I shall in any way be entitled, or over which I shall possess any power of appointment by will at the time of my death,* including any lapsed legacies, I give, devise and bequeath as follows:...

Plaintiffs improperly construe the *"to which I shall in any way be entitled"* phrase of the *"of which I shall die seized or possessed or to which I shall in any way be entitled"* clause, as not being limited by the *"of which I shall die"* limitation within that clause. Plaintiffs' argument depends on this construction because they

---

[7] Plaintiffs' claims also fail because they have not established a chain of title vesting any rights, which may exist, in Plaintiffs.

---

SUPPLEMENTAL REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FILED PURSUANT TO COURT ORDER CASE NO. : CV05-2200-MM (MCx)

4

1   hope to sweep into that *"shall in any way be entitled"* phrase the RoP they claim was
2   granted to the Estate of Ms. Monroe, by Cal.Civ.Code §3344.1, 22 years after her
3   death. Such a construction is improper.

4        First, the entire clause must construed together and every part of it, including
5   its punctuation must be given effect.[8] The *"to which I shall in any way be entitled"*
6   phrase must be read together with the *"of which I shall die seized or possessed or"*
7   phrase because there is no comma between them. The phrase *"to which I shall in any*
8   *way be"* is clearly an adverb to the term *"entitled"* since it is merely prepositional to
9   *"entitled."* Eliminating adverbs, the residuary clause conveys only all property *"of*
10  *which I [Marilyn Monroe] shall die seized or possessed or ...entitled."*
11  Consequently, the property which Ms. Monroe sought to transfer by the residuary
12  clause is that *"of which I shall die entitled"* at the time of her death.[9]

---

13      [8] *The People ex Rel. Casey Gwinn,* 83 Cal.App.4th 759 (2000) ("Commas are
14  used to separate items in a list. (Random House, Dict. of the English Usage,
    Unabridged Ed. (1966) p. 295.) Their presence or absence in a statute is a factor to be
15  considered in its interpretation." citing *Board of Trustees v. Judge,* 50 Cal.App.3d
16  920, 928, fn. 4 (1975); see also *Duncanson-Harrelson Co. v. Travelers Indemnity*
17  *Co.,* 209 Cal.App.2d 62, 66 (1962).)

18      [9] In this case the qualifying limitation *"of which I shall die"* applies to and
19  modifies all following verbs, *seized, possessed and entitled* because the modifier and
    the verbs it modifies are set apart from the rest of the residuary clause by commas.
20  *See Board of Trustees v. Judge, supra.; Wholesale Tobacco Dealers Bureau, etc. v.*
21  *National etc.Co.,* 11 Cal.2d 634, 659 (1938), 82 P.2d 3. ("When several words are
22  followed by a clause which is applicable as much to the first and other words as to the
    last, the natural construction of the language demands that that clause be read as
23  applicable to all."); 2A Singer, Sutherland Statutes and Statutory Construction (6th
    ed. 2000) Intrinsic Aids § 47.33, p. 373); *U.S. v. Mottolo,* 605 F.Supp. 898 (D.C.N.H.
24  1985)("The Court reads the two "claims" and "damages" phrases as independent
25  clauses which are separated by the conjunctive "nor", set off by commas, and
26  modified by the limiting, dependent clause "more than three years...." Thus, the first
27  portion of § 9612(d) should be read as follows:
        (d) No claim may be presented,/ nor may an action be commenced for
28      damages under this title,/ unless that claim is presented or action

Second, the doctrines of *Noscitur a sociis* (literally, "it is known from its associates") and *ejusdem generis* (literally, "of the same kind") provide rules for construction to provisions with listed words and phrases. *Noscitur a sociis* means that a word may be defined by its accompanying words and phrases, since "ordinarily the coupling of words denotes an intention that they should be understood in the same general sense." (2A Sutherland, Statutory Construction (6th ed.2000) § 47.16, pp. 268-269, fn. omitted.) *Ejusdem generis* means that where general words follow specific words, or specific words follow general words in an enumeration, the general words are construed to embrace only things similar in nature to those enumerated by the specific words. *Harris v. Capital Growth Investors XIV*, 52 Cal.3d 1142, 1160 & fn. 7(1991); *Engelmann v. State Bd. of Education*, 2 Cal.App.4th 47, 57, fn. 11(1991). A court should determine the meaning of each by reference to the others, giving preference to an interpretation that uniformly treats items similar in nature and scope.[10]

---

> commenced within three years from the date of the discovery of the loss
> or the date of enactment of this Act, whichever is later.... [Stops
> emphasized.]
>
> The phrase "for damages" is contained wholly within the second independent clause
> and therefore modifies only its direct antecedent within the independent clause, the
> phrase "an action".)

[10] *Kelly v. Methodist Hospital of So. California*, 22 Cal.4th 1108, 1121(2000); *In the Matter of the Estate Nielsen, Dunn v. Nielsen*, 204 Cal.App.2d 357 (1962)(citing *Estate of Marin*, 69 Cal.App.2d 147, 150-151. "In referring to the use of the expression, personal property, in a will it is stated in 3 Page on Wills 3rd Ed.1941, sec. 964, p. 45: 'A gift of personal property in general terms together with an enumeration of certain classes of personal property is generally held to be limited to articles of the classes which are enumerated specifically.'"); *In re Welsh's Estate*, 89 Cal.App.2d 43(1949)("Under the maxim '*ejusdem generis*' the whole of the following portions of the paragraph, not specifically pointed to something else, would refer back to the burdens to be lifted from the bequest of paragraph Nine. Especially is this true because the paragraph (Ten) is all in one sentence. *Gist v. Craig*, 142 S.C. 407; *Noble v. Kisker*, 134 Fla. 233.")

---

Applying these rules of construction, the residuary clause of Ms. Monroe's will must be read to limit the property *"to which I shall in any way be entitled,"* to such property as she died entitled. This is also consistent with the next clause conveying property over which she had a power of appointment *"at the time of [her] death."*

Third, in construing the intent of a testator one must look to the entire document. Nothing in Ms. Monroe's will indicates any intent to convey any property she did not own at death. To the contrary, apart from the specific bequeaths in clauses Fourth and Fifth, the only clause which addresses disposition of property is the Sixth clause, the residuary clause. In that clause, Ms. Monroe repeatedly uses possessive terms such as *"my estate,"* *"of which I shall die seized or possessed or ... entitled,"* and *"over which I possess any power of appointment by will at the time of my death".* These terms establish her intent to transfer by will only that which she owned at time of her death.[11] "[A] will ordinarily speaks from the time of the death of the testator." 40 Cyc. 1424; *Voorhis v. Otterson,* 66 N. J. Eq., 172, 57 A. 428.

There is no reference or suggestion that she sought to include any future interest or expectancy which would not mature into either actual ownership, seizure, possession, entitlement or a power of appointment by the time of her death.[12] Since

---

[11] Ca. Probate Code § 6101 identifies Property which may be disposed of by will and limits such dispositions to property actually owned by the testator:
   A will may dispose of the following property:
   (a) The testator's separate property; (b) The one-half of the community property that belongs to the testator under Section 100; (c) The one-half of the testator's quasi-community property that belongs to the testator under Section 101.

[12] The testator must clearly intend to make a devise specific. *In re Loescher's Estate,* 133 Cal. App. 2d 589(4th Dist. 1955) Words specifically identifying the property and indicative of possession are necessary in the making of a specific devise. *In re Jones' Estate,* 60 Cal. App. 2d 795(1st Dist. 1943). The words "my," "in my name," or similar qualifying words indicate an intention to make a specific devise. *Id.* Marilyn Monroe could not have intended to make a bequest of a right she did not own

the asserted RoP did not exist until long after her death, and as is shown hereafter was

never granted her. Ms. Monroe never had any expectancy, let alone any future
interest, in them. "Property acquired by a testator's estate after her death may not

4 pass under the residuary clause of the will. 80 AM.JUR.2d WILLS §1168; 96 C.J.S.

5 WILLS §1088. Marilyn Monroe lacked the legal capacity to convey what she did not

6 own, did not forsee or expect to own.

7    Fourth, "[t]estamentary disposition...is controlled by the law in effect as of the

8 date of death." *Dept. Of Health Services v Fontes*, 169 Cal.App.3d 301, 305 (1985).

9 Prior to repeal, former Cal. Probate Code § 126, provided:

10    Except as provided by Sections 1386.1 and 1386.2 of the Civil Code
     relating to powers of appointment, a devise of the residue of the testator's
11    real property, or *a bequest of the residue of the testator's personal
     property, passes all of the* real or *personal property*, as the case may be,
12    *which he was entitled to devise or bequeath at the time of his death*,
     not otherwise effectually devised or bequeathed by his will.[Emphasis
13    added]

14 As held in *In re Smith*, 14 Misc.2d 205 (1958), 177 N.Y.S .2d 280, where this testator

15 declared his intent "to dispose of all property, which I am entitled to dispose of by

16 will," as did Ms. Monroe, the will could not include the piece of real property the

17 testator did not yet own at the time of the drafting of the will.

18    Fifth, in will constructions, it is presumed the deceased knew as a matter of law

19 that he had no power to dispose of property he did not own and over which he had no

20 power of disposition. *In re Resler's Estate*, 43 Cal.2d 726, 732-733(1955). As

21 explained in *In re Estate of Moore*, 62 Cal.App. 265:

22    The last sentence of the third paragraph of the will recites 'It is my
     intention to dispose of all property over which I have the power of
23    testamentary disposition.' When read in the light of the constructional

24 _____
   and did not even have any expectancy of owning at the time of her death.

25   [13] A future estate is created when the disposition creating it becomes legally
26 effective. See N.Y. EPTL 7-1.14 through 7-1.18. Upon death, any mere expectancy or
27 inchoate interest ceases and is terminated. *McKay v. Laurinson*, 204 Cal. 557, 569-70
   (1928).
28

preference stated in the *Moore* case, this sentence supports the conclusion that the testator did not intend to dispose of any property over which he did not have the power of testamentary disposition.

property," or "all of my estate," he will be presumed to have intended to dispose of only that interest which was subject to his power of testamentary disposition. *In re Wolfe's Estate*, 48 Cal.2d 570 (1957).

In her residuary clause, Ms. Monroe used the terms "all the rest, residue and remainder of my estate" "of which I shall be seized, possessed or...entitled" and "over which I shall possess any power of appointment at the time of my death." She intended thereby to transfer all which she had power to transfer at the time of her death, and no more.

Cal. Prob. Code § 21117 titled "At Death Transfers," subsection (f) defines a residuary gift as "a transfer of property that remains after all specific and general gifts have been satisfied." Any RoP created in 1985 could not have "remained" "after all specific and general gifts have been satisfied" in 1962. "An estate must be distributed among heirs and distributees according to the law as it exists at the time of death of the decedent." *Ware v. Beach*, 322 P.2d 635, 639 (Okla. 1958).[14]

In sum, Ms. Monroe's will conveyed only property she owned at death.

## III. MS. MONROE DID NOT HAVE THE LEGAL CAPACITY TO BEQUEATH PROPERTY SHE DID NOT OWN AT THE TIME OF HER DEATH UNDER THE LAWS OF NEW YORK OR CALIFORNIA

Cal. Civ. Code §671 defines the "Capacity to Own" as:

Any person, whether citizen or alien, may take, hold, and dispose of property, real or personal within this state.

A deceased person is not a natural person capable of taking or holding property.

---

[14] Plaintiffs' attempt to distinguish *Ware* are unavailing; Cal.Civ.Code §3344.1 cannot retroactively grant rights to Ms. Monroe any more than the 1950 congressional statute in *Ware* could retroactively grant statutory election rights to American Indians.

1 | Gifts, grants, bequests and devises to predeceased persons lapse or, if subject to anti-

2 | lapse statutes, pass to the devisee's familial heirs. Cal. Probate Code § 21114

3 | So clear and well established is the principle that dead people cannot receive or

4 | own property that "civil death" was a phrase used to describe the state of a person

5 | who, though possessing natural life, has lost all his civil rights, and as to them is

6 | considered dead. Black's Law Dictionary, Fourth Edition, 1951.[15]

7 | "No matter what the provisions of the will are when probated, it confers no

8 | rights in property not owned by the testator at the time of her death." *Conlee v.*

9 | *Conlee,* 269 N.W. 259, 263 (Iowa 1936). A person cannot "make a post-mortem

10 | distribution of property which at the time of his death he does not own or in which he

11 | has no right, legal or equitable." *In re estate of Braman,* 258 A.2d 492, 494 (Pa.

12 | 1969). A testator may not "validly dispose of non-existent property." *In re Buzza's*

13 | *Estate,* 194 Cal.App.2d 598 (1961)

14 | It is beyond debate that Ms. Monroe had no capacity to "take or hold property"

15 | in 1985, 22 years after she ceased to enjoy natural life; she was not just "civilly

16 | dead," she was also naturally dead. Any property which she would have been entitled

17 | to in 1985, assuming Cal. Civ. Code §3344.1 granted her a right (and as is shown

18 | hereafter, it does not), would have fallen to her familial heirs according to statutory

19 | schemes of disposition and not according to any residuary clause in her will.

20 | Ms. Monroe lacked the legal capacity to bequeath property she did not own at

21 |

22 |

23 | [15] Black's goes on to explain:

24 | The "civil death" spoken of in the books, is of two kinds: (1) Where
there is a total extinction of the civil rights and relations of the party, so

25 | that he can neither take nor hold property, and his heirs succeed to his

26 | estate in the same manner as if he were really dead, or the estate is
forfeited to the crown. (2) Where there is an incapacity to hold property,

27 | or to sue in the king's courts, attended with forfeiture of the estate to the

28 | crown. *Id.*

the time of her death.[16]

A.    **Ms. Monroe Did Not Own or Forsee, and Thus Could Not Convey, a Future Interest Created by §3344.1, Created 22 Years after Her Death**

A gift or devise to a person or of a right not then in existence creates a future estate. *Rasquin v. Hamersley* (2 Dept. 1912) 152 A.D. 522, *aff'd* 208 N.Y. 630. A future estate is created when the disposition creating it becomes legally effective. "A future interest is contingent, whilst the person in whom, or the event upon which, it is limited to take effect remains uncertain." Ca. Civ. Code § 695. An interest created by will becomes effective upon death of the testator. See EPTL 7-1.14 through 7-1.18. The principle applies equally to personal property. *Tallman v. Tallman*, 3 Misc. 465 (1893).

Mere anticipations and hopes, however, when not coupled with a legal interest, are not deemed to be "expectant estates." *Robinson v. New York Life Ins. & Trust Co.*,75 Misc. 361(1911); *See, also, Edwards v. Varick*, 5 Denio 664 (1846); *Ward v. Ward*,131 F. 946 (C.C.N.Y. 1904), affirmed 145 F. 1023, *cert. den.* 27 S.Ct. 796.

Cal. Civ. Code. §700 provides that a "a mere possibility... is not deemed an interest of any kind."

[A] General residuary clause carries every interest, known or unknown,
immediate or remote, unless such interest is clearly excluded.  However,
these principles do not apply until it has been demonstrated that the

---

[16] As a throw away argument, Plaintiffs claim that Ms. Monroe might have had a limited post-mortem right of publicity based on her lifetime commercial exploitation with respect to specific products or services and suggesting it might be descendible, referring to *Lugosi v. Universal Pictures*, 25 Cal.3d 813 (1979). Plaintiffs Supplemental Brief 15:fn 8. Prior to 1985, RoP were recognized as drawing their source from rights of privacy and were personal rights which, unlike property rights, did not survive the death of the person involved. If any limited rights survived the death of the personality based on lifetime commercial exploitation with respect to specific products or services, they would have been in the nature of trademark rights, not a survivable, descendible or alienable property rights. J. Thomas McCarthy, The Rights of Publicity and Privacy (2d.ed.2006)

SUPPLEMENTAL REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
FILED PURSUANT TO COURT ORDER
CASE NO. : CV05-2200-MM (MCx)

Y:\Shari\_Law\Grosso\Grosso v. CMG Pldgs\MSJ Combined MSJ Reply\Supplemental 122106.wpd    11

testator at the time of death actually had an interest, recognized in law or in equity, as opposed to an expectancy in property; absent such an interest, post-mortem disposition of the property cannot be exercised. *Estate of Braman*, 258 A.2d at 494-495.

As to after-acquired property, "intention" to convey means that the testator foresaw "the possibility of his becoming possessed of other property." 1 Davids, New York Law of Wills s 566, p. 924.

Since Ms. Monroe could not have "foreseen" the possibility of being possessed of a post mortem RoP 22 years after she died, she could not have had the requisite intention to convey such a property right.[17]

**B.    After-acquired Property Refers to Property Acquired after Execution of the Will and Before Death and Not to Property Ostensibly Acquired after Death**

A will is an instrument in which a qualified person legally and intentionally directs the disposition of his or her property, to become effective only at his or her death. It is ambulatory, i.e., ineffective during the testator's life. *See Tennant v. John Tennant Memorial Home*, 167 C. 570, 577 (1914); *In re Grogg Bkrtcy.*, 295 B.R. 297 (C.D.Ill. 1973)("While the will was probated after the commencement of this suit, it, when probated, spoke as of the death of the testator ... [T]he property, in the eyes of the law, vested in her at the time of the testator's death.")

In the absence of a contrary intent, the will must be interpreted as applying to all property, including after-acquired property owned by him at the date of his death. *Matter of Gernon*, 35 Misc.2d 12 (1962)("Even though title to the after-acquired property had not passed prior to decedent's death, he had an equitable title in said land

---

[17] Even if viewed as a future interest, Ms. Monroe's conveyance of a RoP, which came into existence 22 years after her death, would fail under the Rule against Perpetuities. The Rule against Perpetuities measures validity from the time of creation of the future interest, which in this case is the date of her death. *Tallman, supra*. Since the future interest allegedly created by §3344.1 did not come into being within a life in being and 21 years, such an conveyance would violate the Rule.

SUPPLEMENTAL REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FILED PURSUANT TO COURT ORDER CASE NO. : CV05-2200-MM (MCx)

S:\Roni_Law\Greene\Greene v. CMG\Pldgs\MSJ Combined\MSJ Reply\Supplemental.122106.wpd 12

1  which is equivalent to an interest in real property (Citation omitted) and can be

2  devised."; *In re Chickerell's Estate*, 43 A.D.2d 609 (1973) (After-acquired property is
3  acquired after execution of the will and *before death*.)

4      New York law provides: "Unless the will provides otherwise, a disposition by
5  the testator of all his property passes all of the property he was entitled to dispose of
6  at the time of his death." N.Y.E.P.T.L. § 3-3.1. California law was similar in repealed
7  Ca. Probate Code § 121: "Any estate, right, or interest in lands acquired by the
8  testator after the making of his will, passes thereby and in like manner as if title
9  thereto was vested in him at the time of making the will, unless the contrary
10  manifestly appears by the will to have been the intention of the testator."[18]

11      Plaintiffs contend, without citation to any authority, that property can be
12  lawfully acquired by a testator after death. They try to distinguish and discredit the
13  case cited by the Court, *In re Estate of Braman, supra*. However, even Plaintiffs'
14  admit that, *Braman* correctly construed means that Ms. Monroe did not have even an
15  expectancy of a 1985 created RoP in 1962. Plaintiffs argue that "there is no logical,
16  statutory, or policy reason here why Marilyn Monroe's publicity rights should fall to
17  intestacy, rather than passing through her will during probate." Plaintiffs'
18  Supplemental Brief 7:27-8:2. Plaintiffs are wrong; Cal.Civ.Code §3344.1 was
19  explicitly passed to benefit the families of deceased personalities where those
20  personalities have predeceased the statute's enactment not the legatees of a deceased
21  personality. Applying the rule of *Braman* effects the objectives of Cal.Civ.Code
22  §3344.1. Even under the cases cited by Plaintiffs, *In re Albert*, 445 N.Y.S.2d 359

23

24      [18] The statutes governing wills, Cal. Prob. C. §6100 et seq., apply to cases
25  where the testator died on or after January 1, 1985; prior law applies where the
    testator died before January 1, 1985. Cal. Prob. C. §6103. Current Cal. Prob. C. §
26  21105. Transfer of property by will; after-acquired property "Except as otherwise
27  provided in Sections 641 and 642, a will passes all property the testator owns at
    death, including property acquired after execution of the will."
28

SUPPLEMENTAL REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
FILED PURSUANT TO COURT ORDER
CASE NO. : CV05-2200-MM (MCx)

S:\Sinti_Law\Greene\Greene v. CMG\Pldgs\MSJ Combined\MSJ Reply\Supplemental122100.xipd  13

(Sup.Ct. 1981) and *in re Brunet*, 34 ca.2d 105 (1949), the RoP would go to Ms. Monroe's familial heirs, not the heirs of the residuary beneficiaries. Ms. Monroe predeceased the enactment of §3344.1 and if any rights were conveyed to her by that statute, they would have run to her heirs, not the heirs of her legatees under her will.

Plaintiffs claim that their submissions in New York probate proceedings reflected and confirm their ownership of valid RoP in Marilyn Monroe's likeness and name, and their earnings therefrom. Nothing could be further from the truth. Plaintiffs never disclosed, or had assessed for tax purposes, their claimed RoP. No asset statement filed with the court reflects Ms. Monroe's RoP asset and the Tax Assessor's final accounting does not show either the asset of any associated tax. One would think that an asset generating over $16 million dollars during the period of probate would have triggered a probate tax that the State of New York and the Federal Government would have been interested in; instead, Plaintiffs led the authorities to believe that the income was from licensing associated with Ms. Monroe's movie projects.

Similarly Plaintiffs' argument their historical licensing income from RoP shows that they own the RoP as an "after-acquired" property during probate. Rents, royalties, profits, interest, dividends and even license fees paid into an estate after the testator's death are not "after-acquired" property; they are simply accumulations from assets already owned by the testator at time of death. Revenues from Ms. Monroe's movie projects are incident to her property owned at death but Marilyn Monroe did *not own a post-mortem right of publicity when she died and any license fees extracted from third parties through threats of suit asserting such non-existent rights are not lawfully acquired by the estate.* Plaintiffs' suggestion that the New York Surrogate's Court's orders permitting distribution of unlawfully extorted license fees somehow legitimizes them and the rights asserted to obtain them is without legal, factual or common sense support. There is no evidence the New York Surrogate Court ever

### C. Even If Ms. Monroe Is Deemed to Have Been Granted a RoP by California, It Is Subject to the Antilapse Statute, Vests in Her Predeceased, Intestate Heirs, and Fails as to the Plaintiffs Who Were Not Her Familial Heirs

Under the rule of Lapse, if a devisee predeceased the testator, the bequest fails. *In re Sullivan's Estate*, 31 Cal. App. 2d 527 (1939); *Bassett V. Salter*, 25 N.Y.S.2d 176 (1940)(Devising to predeceased persons was "a futile thing, for the fact that the devisees were already dead would have caused the devise to lapse.") California and New York anti-lapse statutes provide that if a bequest is made to a person who predeceases the testator, the bequest does not lapse but returns to the testator's residuary estate if so specified; otherwise the bequest passes to the devisee's heirs at law. *Estate of Haskell J. Dye*, 92 Cal.App.4th 966 (2001); *In the Matter of the Estate of Ida Goldberg*, 36 A.D.2d 631 (1971).

If the grant of a property right by Cal. Civ. Code §3344.1 is viewed as a bequest, it fails in conveying such a right to Ms. Monroe, who died 22 years earlier, it would pass under the Anti-lapse statute to her heirs at law, if any survived her. None did, and so the bequest lapses altogether.[19]

If the grant of a property right by Cal.Civ.Code §3344.1 is viewed as a statutory grant, Cal.Probate Code § 21114 provides that statutory transfers to designated persons, including a transferor, vest in the heirs of that person if she predeceases the grant.

Cal. Civ. Code §3344.1 includes a vesting provision, similar to the anti-lapse statute and Cal.Probate Code § 21114, setting forth that only familial heirs of deceased persons receive the RoP. Plaintiffs are not among the class of heirs who

---

[19] Marilyn Monroe was survived by her mother and a half sister; she had no children. However, both her mother and half sister died before the effective date of Cal. Civ. Code §3344.1, and neither left any known heirs.

---

benefit from the statutory grant under Cal. Civ. Code §3344.1.[20]

Plaintiffs are not kindred to Ms. Monroe and she did not provide that her bequests to the residuary beneficiaries would run to their estates.

## IV. EVEN IF MS. MONROE DIED A CALIFORNIA DOMICILIARY, CAL. CIV. CODE §3344.1 DID NOT VEST ANY RIGHTS IN HER AND THE STATUTE HAS NO RETROACTIVE EFFECT

### A. The Structure of California's Statute 3344.1 Shows That No Rights Were Conveyed to Persons Already Deceased as of the Implementation Date of That Section

California's Civ. Code §3344.1 grants, to any person injured as a result thereof, a "right" to recover for uses of a deceased persons' indicia of persona, made in California without consent of persons identified by subdivision (c). Cal. Civ. Code 3344.1(a), (n). Being deceased, Ms. Monroe could never be the "person injured" by use of her persona and she cannot sue to recover for uses under §3344.1(a); she thus was not granted any rights under subdivision (a).

Subdivision (c) identifies the persons from whom permission is required. They are the persons to whom a transfer was made *before death* by the deceased person (subdivision (b)- by transfer) or the deceased person's transferees (subdivision (b)- by transfer or testamentary act), or *after death of the deceased person* by the familial heirs of the deceased person identified in subdivision (d), if no transfer was made by the deceased person while living.

A testamentary transfer has no effect until death and so a deceased person can never make a transfer *before death* by testamentary transfer. *Tennant v. John Tennant Memorial Home*, 167 Cal. 570, 577 (1914). Subdivision (b) allows a deceased

---

[20] The "right" recognized by the Indiana RoP statute, the right to sue, if received by her estate, and not lapsed by her predeceased status, then it would have been transferred by the laws of intestate succession of New York, the state which administered her property. (§32-36-1-16) Plaintiffs are not among the class of persons entitled to participate in intestate succession from Ms. Monroe.

1 personality to transfer (e.g. by contract) the right *before death*, but not *on death*.[21]

2 Since Plaintiffs claim their rights through Ms. Monroe's residuary clause, and the will

3 took effect *on her death* and *not before her death*, the residuary clause could not

4 include any RoP granted by §3344.1(b). That subdivision unequivocally provides that

5 the right vests in the person identified in subdivision (d) *"after the death of the*

6 *deceased personality."* Cal.Civ.Code.§3344.1(b)[22]

7 Subdivision (e) provides that "the rights set forth in subdivision (a) shall

8 terminate" if not transferred by the deceased person and the deceased person is

9 predeceased by all familial heirs.

10 Subdivision (h) defines deceased personalities as those who died after January

11 1, 1915, but as shown herein, such predeceased persons obtained no rights to sue or

12 transfer any right of publicity; their heirs under subdivision (d) were vested with such

---

13 [21] The Court mistakenly suggested in the Tentative Order of December 11, 2006 that a deceased personality could transfer the RoP "on or before death." Order at pg. 16. §3344.1(b) provides in its first clause that the RoP recognized are property rights. The second clause indicates they are transferable; the third clause indicates the rights are divisible; the fourth clause identifies permissible means of transfer; the fifth clause identifies who may make a transfer *before death* of the deceased personality; and the penultimate clause of §3344.1(b) identifies who may transfer the RoP *after the death* of the deceased personality. No provision of §3344.1(b) provides for transfer by the deceased personality *on death* by testamentary documents.

[22] Plaintiffs' contention that the RoP only pass by Subdivision (d) if the deceased personality "did not otherwise provide for their transfer by contract, trust or testamentary documents before death" is incorrect. As shown above, the deceased personality could not transfer by testamentary documents because such transfer would not take effect *before death* of the deceased personality, and no transfer by contract or trust could have been made by personalities who predeceased the effective date of the statute because *they would have had no legal or equitable interest to transfer*. Moreover, the statute recognizes that the right is divisible; if only a portion were contracted away by a deceased personality who acquired such right before dying and after the effective date of the statute, the untransferred balance would pass by Subdivision (d).

SUPPLEMENTAL REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
FILED PURSUANT TO COURT ORDER
CASE NO.: CV05-2200-MN (MCx)

17

rights. As the legislatively history unequivocally establishes, the statute was drafted to benefit the heirs of predeceased persons.

No part of §3344.1 vests any right in a deceased person, other than the right of alienability by contract provided by §3344.1(b).[23] No claim is made that Ms. Monroe contracted away her post-mortem RoP while she was alive. Certainly, Plaintiffs do not claim they acquired her post-mortem RoP by contract.

Testamentary disposition was available only to contractual transferees of deceased personalities alive on January 1, 1985 or thereafter, and the heirs of predeceased personalities who took under subdivision (d).[24]

The Legislative History of §3344.1 confirms that the statute was passed *for the benefit of the heirs of deceased personalities*, not for the deceased personalities themselves.[25] A letter dated August 31, 1984 to Governor Deukmejian from the author of the bill, Senator William Campbell requesting his signature on the bill stated:

> Senate Bill 613 will take existing rights of publicity enjoyed by living celebrities under current law, and *extend them to their heirs for a period of 50 years beyond the death of the celebrity. I think it is very important that this right is given to heirs*.... I believe that the heirs of a celebrity should be entitled to protect against offensive merchandising of their relatives' likeness or name. [Emphasis added]

---

[23] Defendants have previously shown that the Indiana ROP statute does not have a provision granting or vesting a property right in all "personalities"; it merely creates a right of action (a chose-in-action) for violations of such a right, if it exists. By contrast, § 201 of the Copyright Act establishes that "Copyright in a work protected under this title vests initially in the author or authors of the work..."; 35 U.S.C. 102 provides: "A person shall be entitled to a patent unless..." and California's RoP Statute includes such a vesting provision in 3344.1(b) to heirs of a deceased personality.

[24] California's legislature was aware of the fact that extending retroactive application to its RoP statute would violate due process and expressly avoided that pitfall. See. Decl. of Surjit P. Soni, Exh. 34.

[25] The Legislative History of Cal.Civ.Code §3344.1 was previously submitted by Defendants as Exhibit 34 to the Declaration of Surjit P. Soni.

The June 18, 1984 Assembly Committee on the Judiciary minutes confirm the intent to confer these rights upon heirs of the deceased personality and that the deceased personality *can only transfer the right inter vivos* and not by testamentary act, vesting automatically in specified familial heirs. The August 15, 1983 minutes include Staff Comments which also confirm that legislative intent:

> Under his bill, a person's right of publicity would be transferred to his surviving spouse and children or grandchildren upon his death, *absent a contract entered into during his lifetime.*

Consequently, any right created by Cal. Civ. Code §3344.1 would have vested in any of Ms. Monroe's familial heirs who survived her. Ms. Monroe had no children and her mother died of congestive heart failure on March 11, 1984, at a nursing home, before the California statute invested the rights to sue and recover damages for use of Ms. Monroe's persona upon her. The rights therefore terminated. §3344.1(e).

## B. California's Statute 3344.1 Has No Retroactive Effect

The estate of an testator vests in the heirs or devisees at the time of the testator's death (Cal.Prob.Code. §7000), and the Legislature cannot divest it by retroactive application of any subsequent law. *Estate of Wellings*, 197 C. 189, 195 (1925); *In re Moynahan's Estate*, 158 Misc. 821 (1936)("It is also beyond the province of the Legislature where property is vested by intestacy in one class of persons to attempt to divest their property rights and to substitute a different class.")

It is an accepted rule of statutory construction that, absent a clear indication to the contrary, a statute operates prospectively only. See *People v. Hayes*, 49 Cal.3d 1260, 1274 (1989)(New statutes are "presumed to operate prospectively absent an express declaration of retroactivity or a clear and compelling implication that the Legislature intended otherwise.") Moreover, statutes that are substantive in nature, rather than procedural, may not be applied retroactively. *Wright v. City of Morro Bay*, 144 Cal.App.4th 767 (2006).

The language of Cal.Civ.Code §3344.1(b) supports the prospective-only effect

SUPPLEMENTAL REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
FILED PURSUANT TO COURT ORDER
CASE NO. : CV05-2200-MM (MCx)

19

of that subsection. *Chapman v. City of Garden Grove*, 165 Ca.l. App. 2d 794, 804-805 (1958). The verbs used in subsection (b), namely, "are," "occurs," and "vest," are in the present tense. The verbs of the other subsections of §3344.1 are also in the present tense except in subsection (c) which verbs in the present perfect tense (namely, "has been transferred" and "has occurred"). Even statutory verbs in the present perfect tense are ambiguous regarding retroactivity or prospectivity and thus support prosepective-only application due to the presumption against retroactivity. *DiGenova v. State Board of Education*, 57 Cal. 2d 167, 175 (1962) (the statutory words "has been convicted" "can as readily be understood either as 'has been convicted after the effective date of the act' or as 'has been convicted before or after the effective date of the act.'"); *accord Gutierrez v. De Lara*, 188 Cal. App. 3d 1575, 1580 (1987).

Plaintiffs argue in Section III of their supplemental brief against the Court's ruling in the December 11 Order, that §3344.1 (b) grants to persons who died before January 1, 1985, the right to pass the post-mortem RoP by testamentary disposition. Plaintiffs' argument completely ignores the "long ... established" rule of statutory construction in California that "[a] statute may be applied retroactively only if it contains **express language of retroactivity** *or* if other sources provide a **clear and unavoidable implication** that the Legislature **intended** retroactive application." (italics in original, emphasis in bold added) *McClung v. Employment Development Dept.*, 34 Cal.4th 467, 475 (2004) As explained in *McClung*:

> A statute has retrospective effect when it substantially changes the legal consequences of past events." [Citation.] In this case, applying the amendment to impose liability that did not otherwise exist would be a retroactive application because it would "attach[ ] new legal consequences to events completed before its enactment.

*Accord, Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 231 (2006) (A statute is applied retroactively when the construction sought "change[s] the legal consequences of past conduct by imposing new or different liabilities based

1  upon such conduct"). Plaintiff's statutory construction would be a retroactive

2  application of subdivision (b) because the "legal consequences" of Marilyn Monroe's

3  1962 residuary clause would be "changed." Moreover, the "past conduct" governed

4  by subdivision (b) is the alienability of Marilyn Monroe's post-mortem right of

5  publicity in 1962, the very issue in controversy here. *Tapia v Superior Court*, 53 Cal.

6  3d 282, 291 (1991) (explaining the holding of *People v. Hayes, supra*). As the

7  *McClung* court so aptly stated: "The amended statute defines the law for the future,

8  but it cannot define the law for the past." *McClung*, 34 Cal.4th 473-474; see, also

9  *Armijo v. Miles*, 127 Cal.App.4th 1405, 1411-1412 (2005)("Our state's high court has

10  long held that the retroactive application of a statute may be unconstitutional if it

11  deprives an individual of a vested right without due process of law.") There is thus

12  no application in subdivision (b) to testamentary dispositions to deceased persons

13  who died before the effective date, January 1, 1985.

14      The Court in *Wright, supra*, held that the conclusive presumption (that a

15  proposal to dedicate real property for public improvement was not accepted if certain

16  conditions were satisfied) provided by statute which could not be applied to a

17  dedication formally accepted by the City 20 years before its enactment. *Wright*, 144

18  Cal.App.4th at 770-772. So to, the enactment of §3344.1, 22 years after Ms.

19  Monroe's death, could not restrospectively grant her substantive rights to alienate

20  property that had no legal existence for over 2 decades.

21      In *In re Cooper's Estate*, 73 Misc.2d 904 (1973), the New York Surrogate's

22  Court considered the applicability of a new statute addressing the disposition of

23  renounced bequests. The bequests passed after execution of the will and before the

24  death of the testator but were renounced after his death. The Court held that the new

25  statute could apply retroactively to wills executed before the effective date of the

26  statute but not if the testator had died before the statute's effective date. Quoting

27  *Estate of Miriam S. Schloessinger, Deceased*, 70 Misc.2d 206 (1972), it held:

28

The text of the statute contains no specification as to its applicability to wills drawn before or after the statute's effective date and neither does the statute make reference to the date of death of the testator. *Were the statute to apply to those estates* [where the testator] *died prior to the statute's effective date, a question of unconstitutional deprivation of property rights could arise inasmuch as upon the death of a testator persons benefiting under his will acquire property rights which are immune from legislative attack even though such rights be merely contingent in character.* [Emphasis added]

*In re Cooper's Estate*, 73 Misc.2d at 905-906. The rights of persons having an interest in an estate are fixed as of the date of death, and statutes "governing decedents' estates generally are not given a retrospective operation." *In re Estate of Uhl*, 33 A.D.3d 181 (2006)(citing, *Matter of Best*, 66 N.Y.2d 151, 157); *See also, Smith*, 118 Misc.2d at 170-172); *Dodin v. Dodin et al.*, 17 Misc. 35 (1896)(A law which changed the laws of succession to personal or real property would be applicable to persons living at the time of its enactment, as well as to those who came into being thereafter only.)

*Kudelko v. Dalessio*,--- N.Y.S.2d ----, 2006 WL 3490969(2006) held, in considering the applicability of a new statute creating a cause of action for Identity Theft that:

> In general, when a statute creates a right of action where one did not previously exist, such a statute has only a prospective application; likewise, a law that attempts to retroactively create a liability in relation to a transaction where no liability previously existed is often found unconstitutional.

*See also, Logan v. Salvation Army*, 10 Misc.3d 756 (2005)("Where a new right of action is created, as here [to add the sexual orientation discrimination provision], the presumption is that it is prospective, not retroactive, unless there is clearly a contrary legislative intent.")

Plaintiffs argue that "this Court and devisees of deceased personalities who died before January 1, 1985 have applied the California statute [retroactively] in practice." Plaintiffs' Supplemental Brief at 3:2-15. Unlawful actions by others do not legitimize Plaintiffs' claims in this case.

Plaintiffs cite to *Miller v. Glenn Miller Productions, Inc.* 318 F.Supp.2d 923 (C.D.Cal 2004), *aff'd* 454 F.3d 975, (9th Cir 2006), as proof that §3344.1 should be applied retroactively. That case however never considered, mentioned nor discussed §3344.1, as even Plaintiffs admit, or whether Glenn Miller had an extant right of publicity capable of being licensed when it held the "1956 agreement is susceptible to only one reasonable interpretation-that it conveys both a trademark license and a license of Glenn Miller's publicity rights." That case turned on its own unique facts and its result is sustainable even without a valid right of publicity at the time of license because, as the 9th Circuit noted, rights to use trademarks, copyrights and orchestral materials was sufficiently conveyed by the license. Furthermore, even under a right of publicity analysis, while no right of publicity existed in 1944 when Glenn Miller died, or in 1956 when the license was issued, the right to object to uses by defendants in that case vested in the familial heirs of Glenn Miller effective January 1, 1985, which were his wife and children. However, those very heirs had ratified defendants' right to use Glenn Miller's name and likeness in 1970, as apart of a settlement. Ultimately, the District Court's ruling, affirmed on appeal, turned on Plaintiffs' laches in asserting their claims.

Finally, even if Plaintiffs are correct and §3344.1 conferred a right of alienability upon Ms. Monroe 22 years after her death, Plaintiffs cannot take under the residuary clause of her will. Cal. Prob. C. §21114 provides:

> If a statute or an instrument provides for transfer of a present or future interest to, or creates a present or future interest in, a designated person's "heirs," "heirs at law," "next of kin," "relatives," or "family," or words of similar import, the transfer is to the persons who would succeed to the designated person's intestate estate if the designated person died when the transfer is to take effect in enjoyment. For this purpose, the intestate estate is determined by the intestate succession law of the transferor's domicile.

The section requires that statutory interests created and granted to a "designated person" must pass that person's intestate heirs if the "designated person" is dead when the interest is to take effect in enjoyment. By Plaintiffs' construction of

1  §3344.1, Ms. Monroe was to receive the benefits of the section's statutory right of

2  alienability on January 1, 1985. Since she was dead on that date, the date of

3  enjoyment of the right created, §2114 requires that the right pass to her intestate

4  estate. Plaintiffs are not entitled to take any interest by testacy or intestacy.

5

6  **V.    PLAINTIFFS' RoP CLAIMS ALSO FAIL BECAUSE THEY HAVE NOT
7        PRODUCED ANY EVIDENCE TO ESTABLISH A CHAIN OF TITLE
      RUNNING TO THEM**

8        As the Court noted in Footnote 24 of its Tentative Order dated December 11,

9  2006, Plaintiffs have not adduced sufficient evidence to raise a triable issue

10 respecting Anna Strasberg's transfer of her purported interest in Marilyn Monroe's

11 right of publicity to MMLLC.[26] That failure persists even with the additional

12 declarations and documents submitted by Plaintiffs.[27]

13       As the Court noted in its Tentative Order, the Assignment of Member's

14 Interest-Ms. Monroe LLC (Exh. B to the Decl. of Anna Strasberg), reveals that it is an

15 assignment *to the Members*, Anna Strasberg and the Anna Freud Centre, of an

16 interest in the LLC, i.e. establishing ownership shares of MMLLC, *not an*

17 *assignment from the Members* to MMLLC of any RoP in the persona of Ms.

18 Monroe. There is no documentary evidence of any transfer by Anna Strasberg and the

19

20

21      [26] Plaintiffs' claim that MMLLC has title to the RoP in Ms. Monroe and
22 standing by virtue of 3 separate transfers: (1) the rights which allegedly passed to Lee
   Strasberg from the Will of Ms. Monroe; (2) the rights which allegedly passed to Anna
23 Strasberg after the death of Lee Strasberg; and (3) the assignment of rights to
24 MMLLC from Anna Strasberg and the Anna Freud Centre in 2001. See Opposition at
   36:1-17.
25
      [27] The Supplemental Decl. of Anna Strasberg and the documents she seeks to
26 introduce are untimely and still do not meet the requirements of admissible evidence
27 under Fed.R.Civ.P. Rule 56(e). See, Objections to Supplemental Decl. of Anna
   Strasberg filed concurrently.
28

1  Anna Freud Centre to MMLLC.[28]

2      There is also no documentary evidence provided of any actual transfer by the
3  Estate of Ms. Monroe of the RoP to Lee Strasberg, or his estate as substitute
4  beneficiary, or to Anna strasberg as beneficiary of Lee Strasberg's estate.[29] There is
5  no evidence of any transfer of the interests of Marianne Kris to the Anna Freud
6  Centre or from the Anna Freud Centre to MMLLC. Ms. Strasberg's declaration is
7  incompetent to establish these facts.

8      Plaintiffs have failed to meet their evidentiary burden of establishing that
9  MMLLC has standing to assert a ROP claim.[30] Plaintiffs have failed to produce any
10  admissible evidence to convince a reasonable juror that they own RoP. Summary
11  judgment must be granted to Defendants. *In re Brazier Forest Products, Inc.*, 921
12  F.2d 221, 223 (9th Cir. 1990); *Tokio Marine & Fire Inc. Co., Ltd. v. Kaisha*, 25 F.
13  Supp. 2d 1071, 1077 (C.D. Cal. 1997). Fed.R.Civ.P. 56(e); *Anderson v. Liberty*
14  *Lobby*, 477 U.S. 242, 252 (1986).

15

16  **VI. CONCLUSION**

17      Defendants motion for summary judgment should be granted in its entirety.

18

19

20

21      [28] Even if Ms. Strasberg could testify to a parol assignment of her interests to
22  MMLLC, she is not competent to testify to a parol assignment of rights from the
   Anna Freud Centre. F.R.E. 602, 701, 702.

23      [29] Although Mrs. Strasberg has now belatedly produced a Surrogate Court
24  Order permitting transfer of the Estate's Intellectual Property Rights, such as they
   may be, to the LLC, no evidence is provided that any such transfer ever took place.

25      [30] The California's Secretary of State Successor-in-interest database
26  shows competing and conflicting claims to ownership of the persona of Ms. Monroe which
27  have neither been removed, nor extinguished. See, Decl. of Surjit P. Soni, Exh. 33
   and Request for Judicial Notice.

28

| | |
|---|---|
| Dated: November 10, 2006 | Respectfully submitted,<br><br>THE SONI LAW FIRM<br><br>By:_____<br>    Surjit P. Soni<br>    M. Danton Richardson<br>    Leo E. Lundberg, Jr<br>    Mark L. Sutton<br>Attorneys for Defendants/Cross Complainants<br>The Milton H. Greene Archives, Inc., and Tom<br>Kelley Studios, Inc.<br><br>Lydia Bouzaglou-Newcomb<br>LAW OFFICES OF LYDIA BOUZAGLOU-<br>NEWCOMB<br>&<br>R. Lawrence Bragg,<br>LAW OFFICES OF DONALD J. DeSHAW<br>&<br>John P. Cogger<br>LAW OFFICES OF BRUCE P. AUSTIN<br><br>Attorneys for Defendant<br>THE MILTON H. GREENE ARCHIVES, INC.<br><br>Robin A. Webb,<br>GRANT, GENOVESE ET AL<br>Attorneys for Defendant,<br>TOM KELLEY STUDIOS, INC. |

SUPPLEMENTAL REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
FILED PURSUANT TO COURT ORDER
CASE NO.:CV05-2200-MM(MCx)