EXHIBIT N

SB 613 (Campbell) As amended 05/12/84 Sen. Floor 37-0

PRIOR ACTION

Sen Jud. Com. 8-0

SUBJECT

This bill would make several changes in the law governing the right of publicity.

DIGEST

Existing statute prohibits the knowing use of another person's name, photograph, or likeness, in any manner, for purposes of advertising (or soliciting purchases of) products, merchandise, goods, or services without that person's prior consent. Individuals who violate this statute are liable to the injured party for actual damages in an amount no less than $300. The use of a name, photograph, or likeness in connection with news, public affairs, or sports broadcasts or accounts, or political campaigns, does not constitute a use for purposes of advertising or solicitation. Owners and employees of advertising media who are unaware of the unauthorized use of a person's name, photograph, or likeness in their publication of an advertisement are immune from liability for that use.

This bill would make the following changes regarding the unauthorized use of a person's name, photograph or likeness:

1. Extend the prohibition to include the knowing use of another person's voice or signature.

2. Specify that the prohibition would also apply to use on or in products, merchandise, or goods.

3. Raise the amount of recoverable damages to $750 or the actual damages resulting from the unauthorized use, whichever is greater.

Include in the recovery any profits from the unauthorized use that are attributable to the use and not considered in computing the actual damages.

In establishing such profits, the injured party would be required to present proof only of the gross revenue

(CONTINUED)

Conliant L. Young
06/29/84

LIS-8a

257

LEGISLATIVE INTENT SERVICE (800) 666-1917

attributable to the use, and the defendant would be required to prove his deductible expenses.

03939-CM    Document 90-15    Filed 01/17/2007

5. ~~Authorize an award of punitive damages.~~

6. Award attorneys' fees and costs to the prevailing party in an action based on unauthorized use.

7. Extend the conditional immunity conferred on owners and employees of advertising media specifically to television networks and cable television systems.

<u>The bill</u> would establish a similar prohibition against the unauthorized use of a <u>deceased personality's name, voice, signature, photograph, or likeness</u> on or in products or for advertising purposes. Under this measure,

1. "Deceased personality" would mean a natural person whose name, voice, etc. has commercial value at the time of his death, whether or not, during his lifetime, the person used his name, voice, etc. on or in products or for advertising purposes.

    A "deceased personality" would include any natural person who died after January 1, 1935.

2. Prior consent to use the deceased personality's name, voice, etc. must be obtained from the person to or in whom the rights of consent were transferred or vested.

3. No action could be brought for the unauthorized use of a deceased personality's name, voice, etc. occurring after 50 years from the deceased personality's death.

4. A person who innocently infringes the rights of a deceased personality's successor-in-interest after making a reasonable inquiry to determine the holder of such rights would not be liable for acts committed prior to actual notice of the rights.

Existing case law provides that a person's right of publicity (i.e., the right to exploit his name or likeness) is personal and does not survive his death. [<u>Lugosi</u> v. <u>Universal Pictures</u>, 25 Cal.3d 813 (1979); <u>Guglielmi</u> v. <u>Spelling-Goldberg Productions</u>, 25 Cal.3d 860 (1979)]

<u>This bill</u> would provide that the rights of consent to use a deceased personality's name, voice, etc. are <u>property rights</u> which are wholly or partially transferable by contract, trust, or will. The rights would exist for a period of 50 years after the

(CONTINUED)

LEGISLATIVE INTENT SERVICE    (800) 666-1917

Consultant L. Young  
06/18/84

SB 613  
Page 2

258

personality's death. The rights may be transferred by the personality or his transferees during the personality's lifetime, or by the persons in whom the personality's rights vest or their transferees. Absent an inter vivos transfer, the rights of consent upon the personality's death would belong to the following persons and may be exercisable by those persons who together own more than a one-half interest in the rights, as follows:

1. The entire interest in the rights would belong to the deceased personality's surviving spouse unless the deceased personality also left surviving children or grandchildren.

2. The entire interest in the rights would belong to the deceased personality's surviving children and the surviving children of any deceased child unless the deceased personality also left a surviving spouse.

3. If there are a surviving spouse <u>and</u> surviving children or grandchildren, one-half interest in the rights would belong to the surviving spouse and one-half would belong to the children or grandchildren.

4. Rights held by surviving children and grandchildren would be divided among them and exercisable on a per stirpes basis (i.e., by right of representation according to the number of children). The share of children of a deceased child may be exercised only by the action of a majority of the surviving children of a deceased child.

5. If there are no surviving spouse, children, or grandchildren, the entire interest in the rights would belong to the deceased personality's surviving parent or parents.

6. If there are no inter vivos transfers and no surviving persons as specified under this measure, the rights of consent would terminate.

STAFF COMMENTS

1. According to proponents of SB 613, the bill is intended to address circumstances in which (a) commercial gain is had through the exploitation of the name, voice, signature, photograph, or likeness of a celebrity or public figure in the marketing of goods or services or (b) a celebrity or public figure is subjected to abuse or ridicule in the form of a marketed product. Such goods or services typically

(CONTINUED)

(800) 666-1917

LEGISLATIVE INTENT SERVICE



Case 1:05-cv-03939-CM   Document 90-15   Filed 01/17/2007   Page 5
Consent L. Young
06/84

current Civil Code Section 3344, which governs liability for the misappropriation of a person's name, photograph, or likeness for commercial purposes, permits the recovery of damages for unauthorized use. However, the statute is silent as to whether the right to collect damages survives the person's death. The California Supreme Court in Lugosi v. Universal Pictures, 25 Cal.3d 813 (1979), examined this latter issue and held that under existing law the right to exploit one's name and likeness is personal to the artist and must be exercised, if at all, by him during his lifetime. Upon death, a person's name, likeness, and personality fall into the public domain.

2.  Proponents claim that California case law is confusing as to the descendibility of the right of publicity in California. They note that the Lugosi decision, in particular, "is not commercially exploiting the name and likeness of the deceased without their permission. Under existing law, the exploiters with respect to the breadth of descendibility if the right has been exploited during life. For example, under Lugosi, if a football player licenses the right to use his likeness on posters, it is unclear if the right descends to his heirs, or if a person's likeness is personal to the artist and must be exercised, if at all, by him during his lifetime. Upon death, a person's name, likeness, and personality fall into the public domain.

    Proponents claim that California case law is confusing as to the descendibility of the right of publicity in California. They note that the Lugosi decision, in particular, "is not dispositively." The following states have enacted statutes which provide for descendibility: Florida, Nebraska, Oklahoma, Utah, and Virginia. New York, Georgia, and New Jersey have case law supporting descendibility.

    Proponents believe that the confusion in California law will have an impact, as a result of choice of law rulings, on cases decided throughout the country. Recent case law suggests that the governing law in right of publicity cases generally will be that of the domicile of the individual whose name or likeness is involved. SB 613, proponents argue, would address this predicament by clarifying the law protecting the rights of deceased personalities.

(CONTINUED)

Proponents add that "[b]ecause of [the entertainment industry], California has derived substantial economic ———— and prestige, which ——————— all ——————— . T— ———— to en———————————— the en——————————— industry in California, this state should continue to be a leader in protecting the rights of individuals, including the publicity rights of its residents. Prominent law firms in this state currently advise clients concerned with the right of publicity to incorporate in, or even move to, states with more favorable laws. There is no reason for California to lag behind the pace-setting jurisdictions in this matter."

3. Under this bill, a deceased personality's right of publicity would be transferred to his surviving spouse and children or grandchildren, or parents, absent an inter vivos transfer. The proposed provision is based on the provision for termination of transfers and licenses under the Federal Copyright Act of 1976 [17 USC Section 304(c)]. The right would therefore vest in a relatively small group of individuals who could then control the use of the decedent's name, voice, signature, photograph, or likeness for commercial purposes. [See Price v. Hal Roach Studios, Inc., 400 F.Supp. 836 (S.D.N.Y. 1975); Factors Etc., Inc. v. Creative Card Co., 444 F.Supp. 279 (S.D.N.Y. 1977); Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215 (2d Cir. 1978), cert. denied 440 U.S. 908 (1979).]

In Lugosi, the Court found that the decedent Bela Lugosi had not used his name or likeness as Dracula or otherwise in connection with a business, product, or service so as to give it a secondary meaning. The right of publicity was held to be personal and, as to Lugosi, expired upon his death. The Court also stated that, even if Lugosi had exploited his personality commercially during his lifetime, the interest of his heirs would depend entirely on how he managed the right before he died. For example, he could have arranged to have installment payments or royalties paid posthumously, thereby making such payments a part of his estate.

This bill would overturn the Lugosi ruling and provide instead that, absent an inter vivos transfer, a deceased personality's right of publicity would be descendible to his immediate family and grandchildren, or parents, whether or not the right was exercised during his lifetime. It would make the right of publicity freely descendible.

Should the right of publicity remain purely personal? Should the right be descendible only if it was exercised by the decedent during his lifetime and/or if it was exercised only with respect to particular products or services endorsed by

(CONTINUED)

4.  right of publicity necessarily involves First Amendment considerations of freedom of speech and the public's right to newsworthy information. Courts tend to be extremely liberal in interpreting the scope of information about celebrities and public figures. [But see Zacchini v. Scripps-Howard Broadcasting Co., 433 US 562 (1977), in which the United States Supreme Court held that an entertainer's "human cannonball" act could not be broadcast without his consent. The Court concluded that his right of publicity had been infringed so as to pose a substantial threat to the economic value of his performance and ability to earn a living as an entertainer.] Generally, noncommercial works in which the medium's purpose is informational, literary and artistic are protected under the First Amendment. [Ricks v. Casablanca Productions, 464 F.Supp. 426 (S.D.N.Y. 1978); Frosch v. Grosset and Dunlap, 75 A.D.2d 768 (1980).] Where there is no original or creative component but merely an imitation of the artist's persona, the presentation is not protected activity. [Estate of Elvis Presley v. Russen, 513 F.Supp. 1339 (D.N.J. 1981); Groucho Marx Productions Inc. v. Day & Night Co., 523 F.Supp. 485 (S.D.N.Y 1981), reversed on other grounds 689 F.2d 317 (2d Cir. 1982).]

  - s bill would recognize property rights as to the use of a deceased personality's name, voice, etc. on or in products or services and advertising goods or services. The bill would state, however, that it shall not be construed to derogate from constitutional rights of free speech and press, "such as the right to use a deceased personality's name, voice, signature, photograph, or likeness in a play, book, magazine, newspaper, musical composition, film, radio or television program or similar medium of expression," to the extent the use is constitutionally protected. Does this constitute intent a defendant who has used the respective of this stated intent, a defendant who has used the person's name, voice, etc. without authorization may assert First Amendment privilege.

  - Is the phrase "similar medium of expression" as used in the bill intended to include other tangible art works, namely paintings, drawings, sculpture, and related art forms, as opposed to products? For example, under the bill: Would a painting or sculpture in the likeness of a deceased personality be a protected item? Would the artist be immune from liability if he sells the artwork? Would such a protection apply to multiples or reproductions of the person's artwork when they are marketed?

onsent L. Young 6/1/04

(CONTINUED)

SB 613
Page 6

262

LEGISLATIVE INTENT SERVICE   (800) 666-1917

tical speech in particular gives rise to First Amendment
ramifications. As one writer has stated:

> The first amendment value in free exchange of
> ideas, posters, and even plastic busts increases
> when the subject of the commercial activity is a
> political figure. When a defendant exploits the
> persona of a political personality, it may be
> impossible to separate the commercial motive
> from the political message. Rather than inhibit
> political speech, the right of publicity should
> always bow to the more significant interest in
> unfettered discussion, evaluation, and use of a
> political individual's contribution to history.
> The name and likeness of a political figure is
> part of our 'national heritage and should be
> protected as part of the public domain.'"
>
> Boston University Law Review 965 at 989-990
> (1982).

[Note:] The facts in Martin Luther King, Jr. Center for
Social Change, Inc. v. American Heritage Products, Inc., 508
F.Supp. 854 (N.D. Ga. 1981) reversed 694 F.2d 674 (11th Cir.
1983) involved the unauthorized use of a deceased civil
rights leader's likeness for the commercial benefit of the
user. The federal district court refused to enjoin the
defendant's sale of the plastic busts on the grounds that the
decedent was part of the public domain and our national
heritage. However, the Eleventh Circuit Court of Appeal
reversed and remanded for further proceedings based on
responses to questions it had certified to the Georgia Supreme
Court regarding the right of publicity. The Georgia Supreme
Court held that (1) the appropriation of another person's
name or likeness without consent for financial gain is a tort
where the person is a private citizen, entertainer, or
public figure who is not a public official and (2) the right
of publicity is descendible. The Georgia majority opinion
contained that defendants had made no claims based on freedom of
speech and press and therefore no violation of those freedoms
was acknowledged. The concurring opinion, on the other hand,
acknowledged the existence of many First Amendment issues
left unanswered by the majority. See 296 S.E.2d 697 (1982).]

At this point would a work cease to be considered artistic or
political and instead become commercial in nature? Would
this discourage the free dissemination of political,
literary, or artistic ideas which may be expressed even in
the commercial context? Should the bill make a clear
distinction between product endorsement or tie-in and
artistic activity?

(CONTINUED)

ulie L. Young
8/8

SB 613
Page 7

263

LEGISLATIVE INTENT SERVICE   (800) 666-1917

Consultant L. Young
06/14

1:05-cv-03939-CM     Document 90-15     Filed 01/17/2007     Page 9

5. In opposition, the American Civil Liberties Union claims that this bill would create ambiguities and requirements that will restrict speech and expression protected by the First Amendment. The ACLU argues that, even if a court ultimately concludes that a product is protected speech, the threat of lawsuits alone would have a chilling effect. In attempting to comply with the requirements of this bill, the ACLU points out, would have to overcome significant hurdles, such as determining whether the deceased personality executed a will searching for heirs and other transferees who may hold publicity rights. Additionally, the bill would require a person to decide ahead of time whether the attributes of the deceased personality had "commercial value" at the time of death. The ACLU argues that it is impossible to imagine how this fact is to be determined some 30 years after death.

6. SB bill would cover deceased personalities who died after January 1, 1935 and would provide that the right of publicity would be exercisable and enforceable for a period of 50 years after the personality's death. This time frame is based on the Copyright Act of 1976, which provides a specific duration for copyrights: the life of the author plus 50 years after author's death. Is this duration a reasonable length of time? Should the general public have earlier access, e.g., after 20 years, to the names and likenesses of figures of public interest?

The right of publicity is a comparatively new legal concept that stems from the law of privacy. The common law of privacy recognizes four distinct kinds of "invasion":

1. An intrusion into one's private life or solitude;
2. Public disclosure of embarrassing private facts;
3. Publicity placing one in a false light; and
4. Appropriation of name or likeness (right of publicity).

7. Opponents express concern that the proposed extension of the right of publicity to 50 years after death may lead to a similar extension of the other areas of privacy law.

Opponents claim that this bill, since it does not specifically provide otherwise, would expose them to liability for goods made and marketed before the bill would become operative. Although retroactive application of the bill would arguably be a prohibited impairment of contractual right, should not the bill specify that it would have no retroactive effect?

(CONTINUED)

8. Opponents claim that SB 613 may impose a substantial financial burden on advertisers, producers, publishers and broadcasters. First, they contend that the bill would greatly restrict the public domain material now available for advertising uses. In addition, the cost of legal review, errors and omissions insurance, and defense of lawsuits brought by heirs could be substantial. Opponents argue next that the heirs' ability to recover profits attributable to an unauthorized use besides damages is excessive, particularly since the profits would be measured only by gross revenues less deductible expenses. Finally, they believe that these potential burdens are multiplied by the addition of a punitive damages clause which would tend to encourage groundless litigation.

9. Recognition and protection of the right of publicity is, in part, based on the policy of encouraging individuals to make the investments in time, effort, and money that are needed to produce a unique performance of interest to the public. The right of publicity terminates upon a person's death, and his name, likeness, and persona fall into the public domain. This bill would restrict the ability of individuals to establish and engage in a business that manufactures and sells, for example, movie star memorabilia and other art and nostalgia collectibles. Does this restriction on free enterprise represent sound public policy? Would the restriction deter so-called "nostalgia companies" from doing business in California?

Constance L. Young
06/06/84

SB 613
Page 9

265

LEGISLATIVE INTENT SERVICE   (800) 666-1917

| SUPPORT | OPPOSITION |
|---|---|
| Screen Actors Guild | American Civil Liberties Union |
| Numerous celebrities | Private business persons |
| Heirs of celebrities | CBS, Inc. |
| Private individuals | National Broadcasting Company, Inc. |
| | American Broadcasting Companies, Inc. |
| | California Broadcasters Association |
| | Writers Guild of America, West, Inc. |
| | Alliance of Motion Picture and Television Producers |
| | Ron Smith's Celebrity Look-Alikes |
| | Northern California Committee for the Protection of the Arts |

Consultant L. Young
06/84

SB 613

266
 LEGISLATIVE INTENT SERVICE (800) 666-1917