EXHIBIT O

ASSEMBLY COMMITTEE ON JUDICIARY
ELIHU M. HARRIS, Chairman

SB 613

SB 613 (Campbell) As amended 08/15/83

PRIOR ACTION

Sen. Jud. Com. 8-0    Sen. Floor 37-0

SUBJECT

This bill would make several changes in the law governing the right of publicity.

DIGEST

Existing statute prohibits the knowing use of another person's name, photograph, or likeness in any manner, for purposes of advertising (or soliciting purchases of) products, merchandise, goods, or services without that person's prior consent. Individuals who violate this statute are liable to the injured party for actual damages in an amount no less than $300. The use of a name, photograph, or likeness in connection with news, public affairs, or sports broadcasts or accounts or political campaigns does not constitute a use for purposes of advertising or solicitation.

This bill would make the following changes regarding the unauthorized use of a person's name, photograph or likeness:

1. Raise the amount of damages to $750 or the actual damages resulting from the unauthorized use, whichever is greater.

2. Include in the recovery any profits from the unauthorized use that are attributable to the use and not considered in computing the actual damages.

3. Authorize an award of punitive damages.

4. Authorize the recovery of attorneys' fees and costs by the injured party.

Existing case law provides that a person's right of publicity (i.e., the right to exploit his name or likeness) is personal and does not survive his death. [Lugosi v Universal Pictures, 25 Cal.3d 813 (1979); Guglielmi v Spelling-Goldberg Productions, 25 Cal.3d 860 (1979)]

(CONTINUED)

Consultant L. Young
08/15/83

LIS-8b

SB 613
---- 1

267

LEGISLATIVE INTENT SERVICE  (800) 666-1917

this bill would provide that a person's rights to prohibit, authorize, and recover damages for the commercial use of his name, photograph, or likeness may be exercised or enforced for a period of 100 years after his death coextensive with the rights that person had during his lifetime. Upon that person's death, such rights would belong to the following persons and may be exercised by those entitled to more than one-half of the rights, as follows:

All the rights would belong to the person's surviving spouse unless the person also left surviving children or grandchildren.

All the rights would belong to the person's surviving children and the surviving children of any deceased child of that person unless the person also left a surviving spouse.

If there are a surviving spouse and surviving children or grandchildren, one-half the rights would belong to the surviving spouse and one-half would belong to the children or grandchildren.

Rights held by surviving children and grandchildren would be divided among them and exercised on a per stirpes basis (i.e., by right of representation according to the number of children). The share of children of a deceased child may be exercised only by an action of a majority of the surviving children of a deceased child.

If there are no surviving spouse, children, or grandchildren, the rights would terminate.

Such rights would be subject to valid contracts entered into by the person during his lifetime.

STAFF COMMENTS

1. According to the author's staff, SB 613 is intended to address circumstances in which (a) commercial gain is had through the exploitation of the name, photograph, or likeness of a celebrity or public figure in the marketing of goods or services or (b) a celebrity or public figure is subjected to parody or ridicule in the form of a marketed product. Such goods or services typically involve the use of a deceased celebrity's name or likeness, e.g., on posters, T-shirts, ceramic plates, in toys, gadgets, and other merchandise; in cartoon-alike services.

Consultant L. Young
5B/1503

LEGISLATIVE INTENT SERVICE    (800) 666-1917



Consent L. Young
08/1973

3.

right of publicity necessarily involves First Amendment considerations of freedom of speech and the public's right to newsworthy information. Courts tend to be extremely liberal in interpreting the scope of the public's legitimate interest in the dissemination of information about celebrities and public figures. [but see Zacchini v Scripps-Howard Broadcasting Co., 433 US 562 (1977) in which the United States Supreme Court held that an entertainer's "human cannonball" act could not be broadcast without his consent. The Court concluded that his right of publicity had been infringed upon so as to pose a substantial threat to the economic value of his performance and ability to earn a living as an entertainer.] Generally literary and artistic works in which the medium's purpose is noncommercial are protected under the First Amendment. Hicks v Casablanca Records, 464 F. Supp. 426 (S.D.N.Y. 1978); Frosch v Grossett Dunlap Inc., 75 A.D. 2d 768 (1980)]. Where there is no original creative component but merely an imitation of the artist's persona, the presentation is not protected activity. See likeness of Elvis Presley Russen v Russell, 513 F. Supp. 1339 (D.N.J. 1981) Groucho Marx Productions, Inc. v Day & Night Co., 523 F. Supp. 485 (S.D.N.Y. 1981), reversed on other grounds 689 F.2d 317 (2d Cir. 1982).

Should the right of publicity remain purely personal? Should the right be descendible only if it was exercised by the decedent during his lifetime?

How about publicity by a will? Should the persons of those who leave neither a surviving spouse nor children or grandchildren enjoy the same status as that of individuals protected under the bill? Should the bill in such case also give standing to a person's parents and siblings?

This bill contains legislative intent language that the bill shall not be construed to impair rights protected by the constitutional guarantee of freedom of speech or freedom of the press and it shall not impair any use of a person's name, photograph, or likeness in a play, book, film, television program, or any other medium of expression which is protected by the constitutional guarantee of expression irrespective of such language, a defendant who has used a person's name, photograph, or likeness without authorization may assert a First Amendment privilege. Is not Section 1 of the bill superfluous?

Although the bill intends to exclude certain speech and activities from its purview, the advertisement and solicitation for purchase of multiple reproductions of original art appropriating the likeness of a deceased person should not be protected. For example, an artist may render a

LEGISLATIVE INTENT SERVICE  (800) 666-1917

trait of a deceased celebrity on a porcelain plate without first having to obtain permission. Producing and marketing reproductions of that same plate, however, would require proper authorization from the heirs of the celebrity.

Political speech in particular gives rise to First Amendment ramifications. As one writer has stated:

> "The first amendment value in free exchange of ideas, posters, and even plastic busts increases when the subject of the commercial activity is a political figure. When a defendant exploits the persona of a political personality, it may be impossible to separate the commercial motive from the political message. Rather than inhibit political speech, the right of publicity should always show how the more significant interest in unfettered discussion, evaluation, and that of a political individual's contribution to history. The name and likeness of a political figure is protected as part of the 'national heritage' and should be part of the public domain."
>
> Martin Luther King, Jr. Center for Social Change, Inc. v American Heritage Products Inc., 508 F.Supp. 854 (N.D. Ga. 1981) 62 Boston University Law Review 965, at 989-990 (1982).

what point would a work case to be considered artistic or political and instead become commercial in nature? Would this bill discourage the free dissemination of political, literary, or artistic ideas which may be expressed even in a commercial context? Should the bill make a distinction between product endorsement and artistic activity?

SB's bill in proposed Civil Code Section 3344.5 refers to the likeness of a person to prohibit "use" of his name, photograph, or images for "commercial use" of his name. Specifically, what is meant by the term "commercial use"? Does the author intend that the term be confined to the prohibited purposes set forth in existing Civil Code Section 3344?

SB's bill would provide that the right of publicity would be exercisable and enforceable for a period of 100 years after a person's death. Is this duration a reasonable length of time? Should the general public have earlier access to the names and likenesses of figures of public interest?

The right of publicity is a comparatively new legal concept that stems from the law of privacy. The common law of privacy recognizes four distinct kinds of "invasion":

LEGISLATIVE INTENT SERVICE   (800) 666-1917

1. An intrusion into one's private life or solitude;
2. Public disclosure of embarrassing private facts;
3. Publicity placing one in a false light; and
4. Appropriation of name or likeness (right of publicity).

6. Opponents express concern that the proposed extension of the right of publicity to 100 years after death may lead to a similar extension in the other areas of privacy law.

7. Opponents claim that this bill, since it does not specifically provide otherwise, would expose them to liability for goods marketed before the bill would become operative. Although retroactive application of the bill would be arguably a prohibited impairment of contractual rights, should not the bill specify that it would have no retroactive effect?

8. Opponents claim that SB 613 may impose a substantial financial burden on advertisers, producers, publishers and broadcasters. First, they contend that the bill would greatly restrict the public domain material now available for advertising uses. In addition, the cost of legal review, errors and omissions insurance, and defense of lawsuits brought by heirs could be substantial. Finally, they argue that these potential burdens are multiplied by the addition of a punitive damage clause which, together with the attorneys' fees provision, would tend to encourage groundless litigation.

9. In recognition and protection of the right of publicity is, in part, based on the policy of encouraging individuals to make the investments in time, effort and money that are needed to produce a unique performance of interest to the public. The right of publicity terminates upon a person's death and his name, likeness, and persona fall into the public domain. Absent an arrangement made by the person during his lifetime, this bill would restrict the ability of individuals to establish and engage in business that manufactures and sells, for example, movie star memorabilia and other art and nostalgia collectibles. Does this restriction on free enterprise represent sound public policy?

Contant L. Young
08/15/83

SB 613
Page 6

272

LEGISLATIVE INTENT SERVICE   (800) 666-1917

| SOURCE | SUPPORT | OPPOSITION (In response to May 15, 1983 version of the bill) |
|---|---|---|
| | Screen Actors Guild | |
| | Heirs of celebrities | |
| | Private individuals | American Civil Liberties Union |
| | | Private business persons |
| | | CBS Inc. |
| | | National Broadcasting Company, Inc. |
| | | California Broadcasters Association |
| | | Writers Guild of America, West, Inc. |
| | | Motion Picture Association of America, Inc. |

Constant L. Young
08/83

SB 613
273

LEGISLATIVE INTENT SERVICE    (800) 666-1917