EXHIBIT "J"

GANG, TYRE, RUDIN & BROWN
ATTORNEYS AT LAW

ROBERT E. KOPP (1912-1953)

MARTIN GANG
NORMAN R. TYRE
HERMIONE K. BROWN
MILTON A. RUDIN
PAYSON WOLFF
FRANK G. WELLS
BRUCE M. RAMER

6400 SUNSET BUILDING
HOLLYWOOD, CALIFORNIA 90028
463-4863
CABLE: GANKOT

March 4, 1966

Mr. James M. Hall
Inheritance Tax Appraiser
417 South Hill Street
Los Angeles, California 90013

Re:   Estate of Marilyn Monroe
      Date of Death: August 5, 1962

Dear Mr. Hall:

Enclosed herewith are original and copy of Inheritance Tax Affidavit in connection with the above estate. Since Miss Monroe was a non-resident of the State of California at the time of her death, enclosed also are original and copy of Affidavit Concerning Residence, together with supporting affidavits of Ralph L. Roberts, Hattie Stephenson Amos, May Reis and Patricia Newcomb attached.

Also enclosed herewith are copies of supplementary documents requested to be furnished in connection with the Inheritance Tax Affidavit, as follows:

(1)   Decedent's will.

(2)   Schedule and inventory with respect to furniture, furnishings and personal effects located in decedent's New York apartment.

(3)   Declaration of Trust for Gladys Baker.

(4)   Marilyn Monroe Productions, Inc. Employees' Profit-Sharing Retirement Plan.

(5)   Inventory and Appraisement filed in the California ancillary proceedings.

Since the estate in California is clearly insolvent and the estate in New York is probably insolvent also, we trust you will be in a position to furnish a no tax certificate so that a

CONFIDENTIAL CMG v. Shaw Family Archives
Subject to Protective Order

MM-0009297

GANG, TYRE, RUDIN & BROWN

-2-

petition may be filed for termination of the California proceedings
in accordance with the requirements of law.

                                Very truly yours,

                                GANG, TYRE, RUDIN & BROWN

                                By
                                    Hermione K. Brown

hkb/b
encs.
bc:  Elliot J. Lefkowitz

CONFIDENTIAL CMG v. Shaw Family Archives
Subject to Protective Order

MM-0009298

FORM NO. I.T. 2

# Affidavit Concerning Residence

Marilyn Monroe _____ August 5, 1962
Name of decedent                              Date of death

STATE OF __New York__ ⎫
COUNTY OF __New York__ ⎬ ss.

Aaron R. Frosch _____, being first duly sworn, says:

That your affiant is __Executor__
                          Give relationship or representative capacity
of the estate of __Marilyn Monroe_____, who died __testate on or about
the __5th__ day of __August_____, 19 62.

Decedent was a resident of __the City of New York__ County of __New York__,
State of __New York__, Country __U.S.A.__, at the time of __her__ death.

The last place the decedent voted prior to __her__ death was __unknown__,
on the _____ day of _____, 19 ____.

Did decedent ever vote in California, and if so when and where? __unknown__

In what place did decedent file __her__ last income tax return prior to death? __New York City, New York__

When was the return filed? __April, 1962__

What address was given by decedent in the said return? __% Gang, Tyre, Rudin, & Brown, Attorneys at Law, 6400 Sunset Building, Hollywood California.__

Did decedent own a home, and if so in what place? __Purchased house in Los Angeles to live at while engaged in performing services in a motion picture film.__

Where was decedent actually living at the time of death? __Residing temporarily in Los Angeles while performing as aforesaid. Decedent had fully furnished apartment in New York City, which was her permanent residence.__

Did decedent belong to a church or lodge in California, and if so give name and location?
__unknown__

How much time did decedent spend in California during the five year period immediately prior to his death; where and for what purpose? __Only for purpose of performing as an actress in Motion Picture Films and not for purpose of residing therein.__

What next of kin to decedent, if any, reside in California, and for how long? __Gladys Eley, also known as Gladys Baker, Mother - Approximately 10 years. Institutionalized at Rockhaven Sanitarium, Verdugo City, Cal.__

MM-0009350

Was decedent engaged in business in California, and if so for how long a period prior to death? Yes

Decedent was temporarily in California performing services as a

motion picture actress. Performing such services for approximately

six months prior to death.

What was the name of the business? Motion Picture Actress

Was decedent engaged in business in any State other than California prior to death, and if so

give name of business and state whether decedent was active in the said business? Yes. Active as

principal, sole shareholder and officer and director in Marilyn Monroe

Productions, Inc., A New York Corporation, with offices in New York City.

Was decedent a director or officer in any California corporation, and if so give names and

principal places of business? No

Did decedent make any statements or declarations as to her residence? If so, give time, place,

circumstances and persons present Yes - On number of occasions during conversations

with Mr. Ralph Roberts and with Mae Reis.

See Affidavits of Ralph L. Roberts, Hattie Stephenson Amos, May Reis,
and Patricia Newcomb attached.

State the declaration That Decedent was returning to New York after

completing motion picture commitment - that she considered N.Y. her

residence Did decedent by any other acts indicate of what place she intended to be a resident up to the

time of her death? yes If so, state time, place and circumstances and persons present.

Decedent in all respects retained her New York Residence. Said Residence

was not sublet. It remained fully furnished and contained Decedent's

Premises personal effects, clothing, and substantially all

of its contents. Furthermore Decedent's maid continued to look after

and maintain said residence and its contents.

Use the following lines for any other information you desire to give bearing on the question

of residence. Decedent filed New York State Residence Income Tax Returns for

1962/ and prior years. She filed her U.S. Income Tax in 1962 at the Internal Revenue Office,

Borough of Manhattan, City - State of New York.

Subscribed and sworn to before me this 3-EB

day of July , 19 65.

Notary Public in and for the County of State of California

My commission expires

ELLIOT J. LEFKOWITZ
Notary Public, State of New York
No. 03-7474775
Qualified in Bronx County
Certificate filed in New York County
Commission Expires March 30, 1966

MM-0009351

STATE OF CALIFORNIA    )
                       )  SS.:
COUNTY OF              )

RALPH L. ROBERTS, being duly sworn deposes and says:

That I reside at 931 No. Palm, Los Angeles 69, California.

That decedent and I were close personal friends having known each other since 1955. That throughout the period of time that I knew the decedent I had occasion to frequently visit her in her permanent New York City residence at 444 East 57th Street in New York City, and frequently visited with her when she was in California and in her other travels elsewhere.

During the period of April 1962 until her death I spoke to the decedent on an average of at least once each day and had personal meetings with her on an average of at least three times a week.

Decedent frequently told me that she considered her trips to California merely as visits for the purpose of appearing in various motion picture films and for the conduct of business interests in relation thereto. Decedent purchased a house in California while she was in California for the purpose of appearing in a motion picture film entitled "SOMETHINGS GOT TO GIVE". She advise me that she purchased said house primarily for the reason that she disliked living in hotels and preferred both the comfort and privacy of a private home. She indicated that her California house would

MM-0009352

be used only on such occasions when she was in California performing in a motion picture film or otherwise engaged in similar activities.

On many frequent occasions, both in California and in New York, decedent advised me that she considered her New York apartment as her permanent home and permanent residence. I know that even after she departed from New York to appear in the aforementioned motion picture film, she continued to retain her permanent New York apartment on a full time basis. She retained her personal maid and housekeepper to look after and maintain said New York apartment. She left all of her furniture in the said apartment and substantially all of her valuables, personal furnishings and personal effects. She specifically advised me that she never intended to relinquish the said apartment and that the same was her permanent home.

Shortly prior to her death during several conversations, decedent specifically told me that she intended vacating her California house and was going to return to her New York apartment which she considered her permanent home and residence and to reside permanently thereat.

My understanding based on numerous discussions and conversations with the decedent was that the decedent always considered her New York apartment as her permanent and official residence.

*Ralph Roberts* (signature)

Sworn to before me this

31st day of January, 1966.

*Alvina M. Snyder* (signature)

NOTARY PUBLIC
In and For the County of Los Angeles, State of California

```
ALVINA M. SNYDER
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY
```

MM-0009353

STATE OF NEW YORK    )
                     ) SS.:
COUNTY OF NEW YORK   )

   HATTIE STEPHENSON AMOS being duly sworn deposes and says:

   I was decedent's personal housekeeper for approximately four years prior to her death.  Among my duties, I was required to clean, maintain and take care of decedent's New York residence at premises 444 East 57th Street, New York City, New York.

   In or about September 1961 Miss Monroe departed from her said New York City apartment and went temporarily to California to appear in a motion picture film.  Prior to leaving for California, she instructed me to  be at her said New York City apartment every day while she was temporarily away, and to clean said apartment and perform all of the same functions that I had been performing while she had been in residence thereat.  Pursuant to her said instructions, I was at the apartment every working day and did, in fact, clean and maintain the said apartment throughout the entire period of time that she was in California up to the date of her death. Throughout said period of time, I remained on her payroll and received my regular weekly salary.

   When decedent departed for California she left at her said apartment all of her furniture and furnishings and kept a substantial portion of her clothes, treasured possessions and personal effects thereat.  She never indicated to me that she intended to move any of her said treasured possessions, furnishings and furniture out of the said New York residence to her California house.

MM-0009354

Decedent had told me on several occasions that she considered her said New York apartment as her permanent residence and told me that her said New York apartment was her permanent home.

I know for a fact that decedent intended returning to her permanent residence in New York. Approximately two days prior to decedent's death, decedent requested that I proceed to her California house to stay with her for approximately one month and then that I return back to New York with decedent. I was then told that decedent intended to return to her permanent residence in New York City.

Based on all of the aforesaid and on my conversations with the decedent, I believe that decedent considered her New York apartment as her permanent home and residence.

*Hattie Stephenson Amos*

Hattie Stephenson Amos

Sworn to before me this

26th day of January, 1966.

ELLIOT
Notary Public
No. 6...

State of New York, } ss.:
County of New York, }                                          No. 32394                    Form 1

I, J A M E S McG U R R I N, County Clerk and Clerk of the Supreme Court,
New York County—a Court of Record having by law a seal, DO HEREBY CERTIFY that
*Elliot L. Lefkowitz*
whose name is subscribed to the annexed affidavit, deposition, certificate of acknowledgment
or proof, was at the time of taking the same a NOTARY PUBLIC in and for the State of
New York, duly commissioned and sworn and qualified to act as such throughout the State
of New York; that pursuant to law a commission, or a certificate of his official character,
and his autograph signature, have been filed in my office; that as such Notary Public he
was duly authorized by the laws of the State of New York to administer oaths and affirmations,
to receive and certify the acknowledgment or proof of deeds, mortgages, powers of attorney and
other written instruments for lands, tenements and hereditaments to be read in evidence or
recorded in this State, to protest notes and to take and certify affidavits and depositions; and
that I am well acquainted with the handwriting of such Notary Public, or have compared the
signature on the annexed instrument with his autograph signature deposited in my office, and
believe that the signature is genuine.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal
this JAN 27 1966

FEE PAID 50¢

*James McGurrin*
County Clerk and Clerk of the Supreme Court, New York County

MM-0009355

STATE OF NEW YORK    )
                     ) SS.:
COUNTY OF NEW YORK   )

MAY REIS being duly sworn deposes and says:

I was employed as decedent's private secretary from February 1958 to September 1961. During said period of employment I had occasion to be at decedent's New York residence at 444 East 57th Street, New York City on a daily basis, except for such periods when I was away from New York with decedent for business reasons.

I am therefore fully familiar with the facts and circumstances relating to the said residence.

Decedent and her husband Arthur Miller maintained the said apartment residence for approximately five years. They were divorced in or about January, 1961, at which time decedent's husband relinquished any and all interest in the said apartment, and decedent became the sole occupant thereof and retained her permanent residence therein.

Decedent maintained her permanent residence in her New York apartment except for such occasions when she was required to be away from New York for business purposes. When decedent was required to leave New York for the purpose of appearing in a motion picture film, it was generally her practice and custom to temporarily depart from her New York apartment approximately two to three weeks prior to the commencement of the motion picture film. Said period of time was generally utilized for various pre-production consultations, make-up tests, wardrobe preparations, etc. Generally she would remain away from her New York residence until after the completion of the film and any consultations thereafter required. She would

MM-0009356

then return to her permanent residence in New York.

When she left for California in or about September, 1961 for the purposes of appearing in a film, she left all of her furnishings and furniture and a substantial amount of her personal effects and clothing in her New York apartment.

Furthermore, I understand, that throughout the entire period of time when the decedent was in California, she retained her maid Hattie Stephenson for the purpose of cleaning and maintaining her permanent New York apartment residence.

It was always my understanding that subsequent to decedent's divorce and while I was employed by decedent, she considered her said New York apartment as her official and permanent residence.

*May Reis*

May Reis

Sworn to before me this

11th day of January, 1966.

*Bertha Riley*

BERTHA RILEY
Notary Public, State of New York
Qual. in Kings Co. No. 24-5283468
Commission Expires March 30, 1967

State of New York
County of Kings } ss.:                    NO. 19598                    Form 1

I, ROBERT J. CREWS, Clerk of the County of Kings, and also Clerk of the Supreme Court for the said County, the same being a Court of Record, having a seal, DO HEREBY CERTIFY, That

*Bertha Riley*

whose name is subscribed to the deposition, certificate of acknowledgment or proof of the annexed instrument, was at the time of taking the same a NOTARY PUBLIC in and for the State of New York, duly commissioned and sworn and qualified to act as such throughout the State of New York; that pursuant to law a commission, or a certificate of his appointment and qualifications, and his autograph signature, have been filed in my office; that as such Notary Public he was duly authorized by the laws of the State of New York to administer oaths and affirmations, to receive and certify the acknowledgment or proof of deeds, mortgages, powers of attorney and other written instruments for lands, tenements and hereditaments to be read in evidence or recorded in this State, to protest notes and to take and certify affidavits and depositions; and that I am well acquainted with the handwriting of such Notary Public, or have compared the signature on the annexed instrument with his autograph signature deposited in my office, and believe that the signature is genuine.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of the said Court and County this JAN 27 1966 day of _____ 19

*Robert J. Crews*

Clerk

MM-0009357

STATE OF NEW YORK    )
                     )  SS:
COUNTY OF NEW YORK   )

   PATRICIA NEWCOMB, being duly sworn, deposes and says:

   That I reside at 220 East 57th Street, New York City.

   I knew the decedent, MARILYN MONROE, for approximately seven years during which period of time I was associated with her as her Public Relation Counsel and was her close personal friend.

   Decedent maintained her residence in the State of New York at apartment premises 444 East 57th Street, New York City. She always conveyed the impression to me that she considered her said apartment premises in New York City as her permanent residence. Despite the fact that she travelled extensively and occasionally was away from said residence on business matters for prolonged periods of time, she always returned to her permanent New York City residence.

   She frequently travelled to California, which trips were primarily for the purpose of appearing in motion picture films. When she was so engaged, she generally resided at the Beverly Hills Hotel or other similar hotels in and about Los Angeles, California, however, she always left California to return to her New York apartment residence shortly after the completion of her said business activities. When she was not engaged in performing in motion picture films, she resided and maintained her home in her aforesaid New York

MM-0009358

City residence.

Shortly prior to her death, decedent went to
California to appear in a motion picture film entitled
"SOMETHINGS GOT TO GIVE". When she left for California
to perform in said film, she took with her only those articles
of clothing and personal effects that she required for her
temporary stay in California.  She left a substantial amount
of clothing and personal effects, and all of her furniture and
other personal property at her New York residence.

While she was in California for the purpose of
performing in the aforesaid film, she purchased a house in
West Los Angeles, California.  Decedent advised me at the time
she purchased the said premises, that she acquired same solely
for the reason that she disliked living in hotels, and that
she desired and preferred the privacy of living in a private
home, even though it was a temporary residence.  She specifi-
cally indicated to me that she had no intention of making her
permanent residence in her said California house, but intended
leaving California and returning to her New York residence
upon the completion of her assignment in said motion picture
film.

At the time of her death, she was still living
in California because the said film had not as yet been
completed, and she was awaiting resolution of certain contro-
versies relating thereto.

Decedent further advised me that she intended
to return to her New York residence for the reasons, among
others, that her closest personal friends resided in New York,
and that she wished to continue her permanent activities at the

-2-

MM-0009359

Actors Studio, which activities she considered most important

to her, and with which project she was closely affiliated with

her close personal friends, Mr. and Mrs. Lee Strasberg.

I know from my close association with the

decedent that she considered New York as her permanent

residence and that she intended to return to her permanent

New York residence apartment after the completion of her

business activities in California.

Patricia Newcomb

Sworn to before me this

24th day of January, 1966.

Louise H. White

LOUISE H. WHITE

State of New York, } ss.:
County of New York, }

No. 32357     Form 1

I, J A M E S  M c G U R R I N, County Clerk and Clerk of the Supreme Court, New York County, a Court of Record having by law a seal, DO HEREBY CERTIFY that Louise M. White whose name is subscribed to the annexed affidavit, deposition, certificate of acknowledgment or proof, was at the time of taking the same a NOTARY PUBLIC in and for the State of New York, duly commissioned and sworn and qualified to act as such throughout the State of New York; that pursuant to law a commission, or a certificate of his official character, and his autograph signature, have been filed in my office; that as such Notary Public he was duly authorized by the laws of the State of New York to administer oaths and affirmations, to receive and certify the acknowledgment or proof of deeds, mortgages, powers of attorney and other written instruments for lands, tenements and hereditaments to be read in evidence or recorded in this State, to protest notes and to take and certify affidavits and depositions; and that I am well acquainted with the handwriting of such Notary Public, or have compared the signature on the annexed instrument with his autograph signature deposited in my office, and believe that the signature is genuine.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal this.....

FEE PAID 50¢

County Clerk and Clerk of the Supreme Court, New York County

-3-

MM-0009360

EXHIBIT "K"

SURROGATE'S COURT : COUNTY OF NEW YORK

-------------------------------------------

                                           :    P2781-1962

Probate Proceeding, Will of                :

         MARILYN MONROE                     :    PETITION

                              Deceased.     :

                                           :

-------------------------------------------

TO THE SURROGATE'S COURT, COUNTY OF NEW YORK:

      The petition of AARON R. FROSCH, respectfully

shows:

      1.  That your petitioner is a person interested in
the estate of MARILYN MONROE, late of New York, deceased,
being the Executor and Trustee.

      2.  That Letters Testamentary were issued by the
Surrogate of the County of New York to petitioner on the 30th
day of October, 1962, and that Letters of Trusteeship were
similarly issued on said date.

      3.  That on 30th day of October, 1962 an Executor's
Bond in the amount of $100,000.00 was approved by the Surrogate
of the County of New York and petitioner then executed said
bond and filed same as required.

      4.  That the Letters Testamentary issued to
petitioner contained an endorsement thereon restraining
petitioner from the receipt of assets exceeding the aggregate
value of $100,000.00 until further order of the Surrogate.

      5.  That on the 31st day of January, 1963 an order
was issued by the Hon. Samuel Di Falco authorizing petitioner
to file an additional executor's bond in the amount of $50,000.

day of                    19

MM-0004802

and further ordering that the Letters Testamentary shall contain
an endorsement restraining petitioner from receipt of assets
exceeding the aggregate of $150,000.00 until further order of
the Surrogate.

6. That on or about the 6th day of February, 1963
such Letters Testamentary were issued containing an endorsement
thereon as follows: "The Executor is hereby restrained from
the receipt of assets exceeding the aggregate value of $150,000.
until the further order of the court".

7. On or about the 23rd day of January, 1964, an
order was issued by the Hon. Joseph A. Cox authorizing the
petitioner to file an additional executor's bond in the amount
of $180,000.00, and further ordered that the letters
testamentary shall contain an endorsement restraining the
executor from the receipt of assets exceeding the aggregate
value of $330,000.00 until further order of the court.

8. That the said bond is now insufficient inasmuch
as petitioner has now been advised by United Artists Corporation
that the sum of approximately $160,000.00 is available to be
turned over to your petitioner as executor. The said money is
available by reason of decedent's contracts to perform services
in two motion pictures one of which was "SOME LIKE IT HOT" and
the other "THE MISFITS". The sum of $150,000.00 is due
from the film "SOME LIKE IT HOT" and the approximate sum of
$10,000.00 is due from the film "THE MISFITS".

9. In order to receive the aforesaid sum of
approximately $160,000.00 it is necessary that an additional

-2-

19

day of

MM-0004803

executor's bond be issued for $160,000.00.  Said additional

executor's bond for $160,000.00 when issued will increase

the aggregate executor's bond to the amount of $490,000.00

and will enable petitioner as executor to receive the aforesaid

monies.

WHEREFORE your petitioner prays that an order be

entered approving an additional executor's bond in the amount

of $160,000.00, and for such other and further relief as to

this Court may seem just and proper.

_Aaron R. Frosch_
Aaron R. Frosch

STATE OF NEW YORK )
                  ) SS.:
COUNTY OF NEW YORK}

I, AARON R. FROSCH, the petitioner named in the

foregoing petition being duly sworn depose and say:

That I have read the foregoing petition subscribed

to by me and know the contents thereof and that the same is

true of my own knowledge except as to those matter therein

stated to be alleged on information and belief and as to those

matters I believe it to be true.

_Aaron R. Frosch_
Aaron R. Frosch

Sworn to before me this

19th day of February, 1965.

ELLIOT J. LEFKOWITZ
Notary Public, State of New York
No. 03-74747-0
Qualified in Bronx County
Certificate filed in New York County
Commission Expires March 30, 1966

-3-

day of          19

MM-0004804



sr.:

, being sworn deposes and sa—

the attorney    for the above named
he served the within

herein. That on the                day                the attorney    for the above-named

upon

by depositing a true copy of the                enclosed in a post-paid wrapper in the Post-Office — a Branch Post-Office — a Post Office Box regularly

maintained by the In—    Government at                in said County of

directed to said attorney    for the                at No.                N. Y.,

that being the address within the state designated by    h    for that purpose upon the preceding papers in this action, or the place where    h

then kept an office, between which places there then was and now is a regular communication by mail.

Sworn to before me, this

day of                19

AFFIRMATION BY ATTORNEY

STATE OF NEW YORK, COUNTY OF

The undersigned, an attorney admitted to practice in the courts of New York State, states that deponent is

the attorney(s) of record for

in the within action; that deponent has read the foregoing

and knows the contents thereof; that the same is true to deponent's own knowledge, except as to the matters stated to be alleged on information and

belief, and that as to those matters deponent believes them to be true. Deponent further states that the reason this verification is made by deponent

and not by

The grounds of deponent's belief as to all matters not stated upon deponent's own knowledge are:

The undersigned affirms that the foregoing statements are true, under the penalties of perjury.

Dated:

SURROGATE'S COURT LAW DIVISION    FEB 17 1965    RECEIVED

File No. P2781                19 62
SURROGATE'S COURT :
COUNTY OF NEW YORK

Probate Proceeding, Will of

MARILYN MONROE
                    Deceased.

ORDER AND PETITION

WEISSBERGER & FROSCH
Attorneys for Petitioner
Office and Post Office Address
120 East 56th Street
Borough of Manhattan    New York, N. Y. 10022
PLAZA 8-0802

To                        Esq.

Attorney    for

Service of a copy of the within
is hereby admitted.

Dated, N. Y.,                19

Attorney    for

ATTORNEY'S CERTIFICATION
State of New York, County of
The undersigned attorney certifies that the within

has been compared by the undersigned with the origi-
nal and that it is a true and complete copy.

Dated:

NOTICE OF ENTRY

Sir :
Please take notice that the within is a certified true
copy of a

duly entered in the within named court on

Dated,                19
                    Yours, etc.,

WEISSBERGER & FROSCH
Attorneys for
Office and Post Office Address
120 East 56th Street
Borough of Manhattan    New York, N. Y. 10022
To

Attorney    for

NOTICE OF SETTLEMENT

Sir :
Please take notice that an order

of which the within is a true copy will be presented
for settlement to the Hon.

one of the judges of the within named court, at

on the                day of                19

at                M.

Dated,
                    Yours, etc.,

WEISSBERGER & FROSCH
Attorneys for
(Office and Post Office Address)
120 East 56th Street
Borough of Manhattan    New York, N. Y. 10022
To

Attorney    for

MM-0004805

EXHIBIT "L"

At Chambers of the Surrogate's
Court, held in and for the
County of New York, Surrogate's
Office, in the Hall of Records
in said County on the 2 5 day
of February, 1965.

P R E S E N T :

      HON.     *Joseph A Cox*

                   SURROGATE

----------------------------------------

|  |  |
|---|---|
| Probate Proceeding, Will of | :   P2781-1962 |
| MARILYN MONROE | :   ORDER FOR LEAVE TO |
| | :   FILE AN ADDITIONAL |
| Deceased. | :   EXECUTOR'S BOND |

----------------------------------------

      UPON reading and filing the petition of AARON R.

FROSCH, Executor and Trustee under the Last Will and Testament

of MARILYN MONROE, deceased, and upon all the papers and

proceedings heretofore had herein, it is

      ORDERED that AARON R. FROSCH be permitted to file

an Executor's bond in the *additional* amount of $160,000.00, and it is

      FURTHER ORDERED that the Letters Testamentary

shall contain an endorsement restraining the executor from

the receipt of assets exceeding the aggregate value of

$490,000.00 until further order of the Surrogate.

                         ~~Surrogate~~

                         *Surrogate*

*Bond approved March 8. 1965*

day of          19

MM-0004801

EXHIBIT "M"

FRANCHISE TAX BOARD
1025 P STREET
SACRAMENTO, CALIFORNIA 95814

IN THE ~~SUPERIOR~~ SURROGATE'S COURT OF THE STATE OF ~~CALIFORNIA~~ NEW YORK

IN AND FOR THE COUNTY OF New York

IN THE MATTER OF THE ESTATE OF

Marilyn Monroe

............................................................

............................................................

............................................................ *Deceased*

Social Security Number.............. 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

**CREDITOR'S CLAIM**

Probate number. P-2781-1962

*The undersigned hereby certifies:*

1. That he is one of the authorized and acting agents of the Franchise Tax Board of the State of California, and as such he is qualified and empowered to make this claim on behalf of the said Board;

2. That the consideration of the debt is a tax duly levied and assessed under the provisions of Parts 10 and 11 of Division 2 of the Revenue and Taxation Code of the State of California;

3. That the above-named decedent is now justly and truly indebted to the State of California computed as follows:

| Type of Assessment | Taxable Year | Tax | Interest at 6% per year | | Total |
| | | | Amount | Computed to | |
|---|---|---|---|---|---|
| Self-assessed | 1962 | $2614.24 | $657.44 | 8/31/66 | $3271.68 |

Total tax principal and accrued interest to date herein $ 3271.68
(Additional interest accrues on the unpaid tax at the rate of 6% per annum from the "computed to" date shown above to the date of payment.)

4. That the due date for the said tax is past; that no part of the said tax has been paid except as above stated; that there are no set-offs or counterclaims to the same; that no note or judgment has been recovered therefor; that the undersigned has not, nor has any person, to his knowledge or belief, for the use or benefit of the State of California, had or received any manner of security for the said tax or interest or penalty whatever, EXCEPT as follows:

*I declare under penalty of perjury that the foregoing is true and correct.*

Dated at Sacramento, California, on August 1, 1966

*W. C. Hall*

W. C. Hall, Tax Compliance Supervisor

MAKE ALL CHECKS PAYABLE TO THE FRANCHISE TAX BOARD AND
MAIL TO 1025 P STREET, SACRAMENTO, CALIFORNIA 95814

FTB 2961 (9-45)

MM-0000021

No. _____ Dept. _____

## SUPERIOR COURT

CITY AND
COUNTY OF
STATE OF CALIFORNIA

IN THE MATTER OF THE ESTATE OF

_____ Deceased

## CLAIM OF
## Franchise Tax Board

for $ _____

Filed _____, 19___

_____ Clerk

By _____ Deputy Clerk

Presented to the Judge of said Court this _____ day of _____ 19___ together with written allowance thereof for $ _____

_____ Clerk

By _____ Deputy Clerk

Allowed and approved for $ _____

this _____ day of _____, 19___

_____ Judge of the Superior Court

Registered _____, 19___

_____ Clerk

By _____ Deputy Clerk

---

The within claim having been presented _____ day of _____ 19___ to _____

_____ of said deceased, is allowed and approved _____ this _____ 19___

$ _____

of _____

Allowed and approved for $ _____

this _____ day of _____

_____ Judge of the Supreme Court

The within claim is rejected this _____ day of _____

MM-0000022

Index No. P-2781

SURROGATE'S COURT

Year 19 62

COUNTY OF NEW YORK

In the Matter

of the

Appraisal of the Estate of

MARILYN MONROE

Deceased

ORDER FIXING TAX ON REPORT

GREENBAUM, WOLFF & ERNST

Attorney for    Petitioner

Office and Post Office Address, Telephone

437 Madison Avenue
New York, N. Y. 10022

To

Attorney for

Service of a certified copy of the within

is hereby admitted.

Dated,

Attorney for

GREENBAUM, WOLFF & ERNST

Office and Post Office Address

437 Madison Avenue
New York, N. Y. 10022

Sir:—Please take notice that

within is a true copy will be presented

to the Hon.

Judges of the within named Court, at

day of

19

M.

Yours, etc.

GREENBAUM, WOLFF & ERNST

Office and Post Office Address

437 Madison Avenue
New York, N. Y. 10022

MM-0000023

EXHIBIT "N"

# Report of Inheritance Tax Appraiser

IN THE SUPERIOR COURT, STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

    In the matter of the Estate of   MARILYN MONROE     , deceased

No.   P 456 935         Date of Death August 5, 1962

Dept.                   Amount of Tax, $

    Additional Tax, Sec. 13441-2 Rev. and Tax. Code, $

                    <u>Total Tax Due State</u>, $ 777.63

To the Honorable, the Superior Court above named:

    JAMES H. HALL     , the duly appointed, qualified and acting Inheritance Tax Appraiser in the county and proceedings above named, after due and regular hearing had and appraisement made, hereby reports:

    That decedent above named died   testate on or about  August 5, 1962, a resident of the County New York, State of New York and left property taxable under the inheritance tax laws of the State of California in the above-entitled proceedings; which property is more particularly described in the inventory and appraisement on file herein, which said inventory and appraisement is hereby referred to and made a part hereof.

    That at the date of death of said decedent the fair market value of the property of said estate was the sum of $ 99,375.00

    The following are the items of said property and the valuations thereof:

           As per Inventory and Appraisement  $ 92,761.60

Less  Item 3 per Inventory, erroneously included being not taxable herein, con-
clothing of:
                Cash in bank account         2,203.60
                Cash                         605.00

                                  $ 99,376.00

MM-0009206

Brought forward                          $ _____

DEDUCTIONS should be made therefrom as follows:

Expenses of funeral and of last illness . $ _____
Debts of deceased (being allowed-claims). $ _____
Taxes due at decedent's death . . . . . $ 6236.74
Executor's or administrator's commissions $ 2424.22
Fees of attorney for same . . . . . . $ 2424.22
Expenses of administration, being clerk's,
    notary's, appraisers' fees, etc. . . . $ 1435.10
Other deductions. . . . . . . . . $ 43577.62

                         Total deductions $ 56,032.__

The CLEAR MARKET VALUE of said property is therefore $ 23,144.22

   That said property passed to the following named persons, whose
relationship to decedent, the character and clear market value of whose
respective interests at the time of the death of decedent and the
inheritance or transfer tax due thereon, are as hereinafter shown:

| Name. Relationship to deceased.<br>Character and value of interest. | | Exemption and rates. | Tax |
|---|---|---|---|
| ___ _____, _____<br>_____ _____ | 600.00 | 50.00 Exempt<br>tax on balance | 64.63 |
| _____ ____, _____<br>(__ ____ __ _____ _____)<br>____ _____ (_____)<br>(_____) | 22,454.22 | 2000.00 Exempt<br>tax on balance | 713.62 |
| | $ 23,144.22 | | $ 777.63 |

Dated: _____ 5, 2007

EXECUTOR
  or
ADMINISTRATOR _____ _____
   ___ _____ ____ ____
   _____ ___ ____
Attorney _____ ____ _____ _ _____
   ____ _____ _____
   _____ _ _____ _____
   address

_____ __ ____
Inheritance Tax Appraiser.

MM-0009205

EXHIBIT "O"

SURROGATE'S COURT, NEW YORK COUNTY

In the Matter of the Application to
Determine the Estate Tax under
Article 26 of the Tax Law upon the
Estate of  Marilyn Monroe

                        Deceased.

File No. P 2781  1962

PETITION

To the Surrogate's Court of the County of   New York

    The petition of   Aaron R. Frosch

residing at   300 Central Park West,    New York,  New York

respectfully shows:

FIRST:  That he    is    the    Executor    of the
estate of   Marilyn Monroe   , deceased; that said decedent died a resident
of   444 East 57th Street,  New York    in the county
of   New York   , State of New York, on the    5th    day
of   August   , 196 2.

SECOND: That decedent died intestate (testate leaving a will, copy of which is
annexed, which was duly admitted to probate by an order of this court dated
October 30   , 1962 ) and letters of administration/Letters Testa-
mentary were duly issued by this court on the    30th    day of
October   , 196 2 to your petitioner.

THIRD:  That no order has been made herein appointing an appraiser.

FOURTH:  That attached hereto and made a part hereof by reference are the
following schedules:

|  |  | Check Schedule Attached |
|---|---|:---:|
| I. | Real Property situated in New York State | ☐ |
| II. | All limited powers of appointment created prior to September 1, 1930 | ☐ |
| III. | Real and tangible personal property having an actual situs outside New York State | ☒ |
| IV. | Expenses specifically attributable to property described in Schedule III | ☐ |
| V. | Property in Schedule III included in Federal marital deduction | ☐ |
| VI. | Property in Schedule III included in Federal deduction for public, charitable and religious uses | ☐ |
| VII. | Credit for personal and insurance exemptions | ☐ |
| VIII. | Credit for tax on prior transfers | ☐ |

FIFTH:  That the Reconciliation Schedule, annexed hereto and made a part
hereof by reference, sets forth the Federal gross estate, the New York gross
estate, the total New York estate tax deductions, and the New York Taxable Estate.
(Reconciliation Sheet Items 1, 5, 17, 18.)

MM-0000392

SIXTH: that the New York gross estate as set forth in the Reconciliation Schedule includes the value of all property required to be included in the decedent's gross estate under Article 26 of the Tax Law, and the total New York estate tax deductions as set forth in said schedule include no item which is not allowable as a deduction under the provisions of said Article 26.

SEVENTH: That the Tax Computation Schedule, annexed hereto and made a part hereof by reference, sets forth the New York gross estate tax, the credit for personal and insurance exemptions, the credit for tax on prior transfers and the net New York estate tax.

EIGHTH: That the New York net estate tax is $ 16,072.05

NINTH: That your petitioner has     filed a Federal estate tax return.

TENTH: That a final Federal determination of the estate tax liability of this estate has (not) been made.
(If the Federal estate tax has been finally determined, a copy of the Federal determination, audit or statement from the Internal Revenue Service must be attached. If the Federal estate tax proceeding is still pending, any changes made therein may provide the basis for a supplementary taxing order to conform with such changes.)

ELEVENTH: That the names and post office addresses of all persons interested in this proceeding who are required to be notified of this application, or concerning whom the court is required to have information, are:

State Tax Commission, Estate Tax Section, Albany, N.Y. 12226

There are no persons other than those mentioned interested in this application or proceeding.

WHEREFORE, your petitioner prays that an order be made determining the tax, if any, upon the estate of   **Marilyn Monroe**                    , deceased, imposed pursuant to Article 26 of the Tax Law.
Dated,      May 29th         , 196 9.

Petitioner

State of New York    )
                     ) ss :
County of New York   )

Aaron R. Frosch

being duly sworn deposes and says that he is the petitioner in this proceeding; that he has read the foregoing Petition and the annexed schedules and knows the contents thereof; that the same are true to his own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters he believes it to be true.

Sworn to before me this 29

day of May           196 9)

ELLIOT LEFKOWITZ
Notary Public or Commissioner of Deeds
No. 31-74-7525
Qualified in New York County
Commission Expires March 30, 1970

Petitioner

If decedent is described as a non-resident, attach Form TT-141A.

Instructions for preparation of schedules are contained in New York State Estate Tax Procedure Pamphlet (Form TT-861).

MM-0000393

*(If more space is needed, furnish details in supplemental schedules)*

**SCHEDULE II**
Limited Powers of Appointment Created Prior to September 1, 1930

TOTAL  $

---

**SCHEDULE III**
Real and Tangible Personal Property having an actual Situs Outside New York State

| | | |
|---|---|---:|
| 1. | House in Los Angeles, California | $ 87,000.00 |
| 2. | Furniture and furnishings in California house | 2,955.00 |

TOTAL  $ 89,955.00

---

**SCHEDULE IV**
Expenses Specifically Attributable to Property Described in Schedule III

TOTAL  $

---

**SCHEDULE V**
Property Described in Schedule III Included in Federal Marital Deduction

TOTAL  $

---

**SCHEDULE VI**
Property in Schedule III Included in Federal Deduction for Public, Charitable and Religious Uses

TOTAL  $

MM-0000394

## RECONCILIATION SCHEDULE

Item

1. FEDERAL TOTAL GROSS ESTATE (From Federal Schedule O)          $ 926,476.31

2. Less: Real or tangible personal property
   having an actual situs outside
   New York                                            $ 89,955.00

3. Item 1 less item 2                                              $ 836,521.31

4. Plus: Limited Powers of Appointment (Schedule 11)   $ _____

5. NEW YORK GROSS ESTATE
   (Item 3 plus item 4)                                            $ 836,521.31

6. Total of deductions allowed under Federal
   Schedules J, K and L
   (Item 8 of Federal Schedule O)                      $ 415,080.19

7. Less: Expenses, etc., specifically
   attributable to property
   described in item 2                                 $ -0-

8. Item 6 less item 7                                             $ 415,080.19

9. New York adjusted gross estate
   (Item 5 less item 8)                    $ 421,441.12

10. Bequests, etc., to surviving spouse
    (Item 9 of Federal Schedule O)                     $ -0-

11. Less: Property in item 2 included in
    amount in item 10                                  $ -0-

12. Item 10 less item 11                               $ -0-

13. New York marital deduction
    (Item 12 or ½ of item 9
    whichever is smaller)                                         $ -0-

14. Federal charitable, public, and similar
    gifts and bequests
    (Item 12 of Federal Schedule O)                    $ -0-

15. Less: Property in item 2 included in
    amount in item 14                                  $ -0-

16. New York charitable deduction
    (Item 14 less item 15)                                        $ -0-

17. TOTAL NEW YORK ESTATE TAX DEDUCTIONS
    (Totals of items 8, 13 and 16)                               $ 415,080.19

18. NEW YORK TAXABLE ESTATE
    (Item 5 less item 17)                                        $ 421,441.12

MM-0000395

## TAX COMPUTATION SCHEDULE

1. NEW YORK TAXABLE ESTATE *(Item 18 of Reconciliation Schedule)* $ 421,441.12

2. New York gross estate tax computed
   from table .......................................................................... $ 16,072.05

3. Credit for personal and insurance
   exemptions if any *(Schedule VII)*

   a. 2% of first $50,000 exempt,
      if any .......................................... $ —0—
   b. 3% of next $100,000 exempt,
      if any .......................................... $ —0—

4. Total credit for personal and insurance
   exemptions *(Item 3a plus item 3b)*........................... $ —0—

5. Credit for tax on prior transfers, if
   any *(Schedule VIII)* ....................................... $ —0—

6. Total credits *(Sum of items 4 and 5)* ....................... $ —0—

7. NEW YORK NET ESTATE TAX
   *(Item 2 less item 6)* ........................................... $ 16,072.05

NOTE: If the difference between the amounts at item 2 and item 4 is $40 or less, the estate
is exempt from tax under Section 952 (b) of the Tax Law.

### NEW YORK TAXABLE ESTATE

| Over | Not Over | Tax | |
|---|---|---|---|
| $0 | $50,000 | | 2% of New York taxable estate |
| 50,000 | 150,000 | $1,000 + | 3% of excess over $50,000 |
| 150,000 | 300,000 | 4,000 + | 4% of excess over 150,000 |
| 300,000 | 500,000 | 10,000 + | 5% of excess over 300,000 |
| 500,000 | 700,000 | 20,000 + | 6% of excess over 500,000 |
| 700,000 | 900,000 | 32,000 + | 7% of excess over 700,000 |
| 900,000 | 1,100,000 | 46,000 + | 8% of excess over 900,000 |
| 1,100,000 | 1,600,000 | 62,000 + | 9% of excess over 1,100,000 |
| 1,600,000 | 2,100,000 | 107,000 + | 10% of excess over 1,600,000 |
| 2,100,000 | 2,600,000 | 157,000 + | 11% of excess over 2,100,000 |
| 2,600,000 | 3,100,000 | 212,000 + | 12% of excess over 2,600,000 |
| 3,100,000 | 3,600,000 | 272,000 + | 13% of excess over 3,100,000 |
| 3,600,000 | 4,100,000 | 337,000 + | 14% of excess over 3,600,000 |
| 4,100,000 | 5,100,000 | 407,000 + | 15% of excess over 4,100,000 |
| 5,100,000 | 6,100,000 | 557,000 + | 16% of excess over 5,100,000 |
| 6,100,000 | 7,100,000 | 717,000 + | 17% of excess over 6,100,000 |
| 7,100,000 | 8,100,000 | 887,000 + | 18% of excess over 7,100,000 |
| 8,100,000 | 9,100,000 | 1,067,000 + | 19% of excess over 8,100,000 |
| 9,100,000 | 10,100,000 | 1,257,000 + | 20% of excess over 9,100,000 |
| 10,100,000 | | 1,457,000 + | 21% of excess over 10,100,000 |

MM-0000396

# SCHEDULE O
## RECAPITULATION

| Schedule | Gross estate | Alternate value | Value at date of death |
|---|---|---|---|
| A | Real estate | $ | $87,000.00 |
| B | Stocks and bonds | | 61,250.19 |
| C | Mortgages, notes, and cash | | 6,809.67 |
| D | Insurance | | 3,000.00 |
| E | Jointly owned property | | |
| F | Other miscellaneous property | | 767,416.45 |
| G | Transfers during decedent's life | | 1,000.00 |
| H | Powers of appointment | | |
| I | Annuities | | |
| | TOTAL GROSS ESTATE | $ | 926,476.31 |

| Schedule | Deductions | Amount |
|---|---|---|
| J | 1. Funeral expenses and expenses incurred in administering property subject to claims | $ 19,132.8_ |
| K | 2. Debts of decedent | 359,423.5_ |
| K | 3. Mortgages and liens | 36,523.7_ |
| | 4. Total of items 1 thru 3 | $415,080.19 |
| | 5. Allowable amount of deductions from item 4 (see note') | $415,080.19 |
| L | 6. Net losses during administration | |
| L | 7. Expenses incurred in administering property not subject to claims | |
| | 8. Total of items 5 through 7 | $ 415,080.19 |
| M | 9. Bequests, etc., to surviving spouse | $ |
| | 10. Adjusted gross estate (see note") | |
| | 11. Net amount deductible for bequests, etc., to surviving spouse (item 9 or one-half of item 10, whichever is smaller) | |
| N | 12. Charitable, public, and similar gifts and bequests | |
| | TOTAL ALLOWABLE DEDUCTIONS, except exemption (totals of lines 8, 11, and 12) | $ |

'Note.—See paragraph 1 of the instructions.
"Note.—Enter at item 10 the excess of "TOTAL GROSS ESTATE" over item 8, if the decedent and his surviving spouse at no time held property as community property. If property was ever held as community property, compute the "Adjusted gross estate" (item 10) in accordance with the instructions and example on page 32, and attach an additional sheet showing such computation.

ESTATE OF ................ MARILYN MONROE ................    Schedule O—Page 33

MM-0000397

## SCHEDULE P

### TAXABLE ESTATE—RESIDENT OR CITIZEN

Instructions.—This Schedule Should be Used only for the Estate of a Resident or Citizen of the United States

| | | |
|---|---|---|
| 1. Total gross estate | | $ 926,476.31 |
| 2. Total allowable deductions | $ 415,080.19 | |
| 3. Exemption | 60,000.00 | |
| 4. Total deductions plus exemption | | 475,080.19 |
| 5. Taxable estate (item 1 minus item 4) | | $ 451,396.12 |

## SCHEDULE Q

### TAXABLE ESTATE—NONRESIDENT NOT A CITIZEN OF THE UNITED STATES

Instructions.—This schedule should be used only for the estate of a nonresident not a citizen of the United States. See instructions under "Deduction of administration expenses, claims, etc." on page 39. See also instructions under "Exemption" on page 39 for amount of exemption and names of countries, the estates of whose residents qualify for the "prorated exemption." If decedent was domiciled in Canada and died after December 31, 1958, see "Convention with Canada" on page 39 regarding special exemption and tax computation. Use Form 706g (Schedule Q (2)) instead of Schedule Q in case of decedent who at the time of his death was domiciled in France or Greece and was not a citizen of the United States. (If the "prorated exemption" is claimed under the Japanese convention, the numerator of the fraction set forth in item 7 is the value of the property situated in the United States and subjected to tax by both Japan and the United States.) The value to be entered for item 2 includes real property situated outside of the United States if required to be included in the gross estate by General Instruction 1, page 4.

| | | |
|---|---|---|
| 1. Value of gross estate in the United States (Schedules A, B, C, D, E, F, G, H, and I) | | $ |
| 2. Value of gross estate outside the United States (must be supported by proof described in instructions under "Deduction of administration expenses, claims, etc." on page 39) | | $ |
| 3. Value of total gross estate wherever situated (item 1 plus item 2) | | $ |
| 4. Gross deductions under Schedules J, K, and L | | $ |
| 5. Net deductions under Schedules J, K, and L (portion of item 4 that item 1 bears to item 3) | | $ |
| 6. Charitable, public, and similar gifts and bequests (Schedule N) | | $ |
| 7. Exemption of $2,000 (in estates qualifying for "prorated exemption," use $2,000 $\times \frac{\text{Item 1}}{\text{Item 3}}$ or $60,000, whichever is the greater) | | $ |
| 8. Total deductions plus exemption (item 5 plus items 6 and 7) | | $ |
| 9. Taxable estate (item 1 minus item 8) | | $ |

## SCHEDULE R

### CREDIT FOR TAX ON PRIOR TRANSFERS

| Name of transferor | | Date of transferor's death | |
|---|---|---|---|
| | | | |
| Transferor's residence at time of death | | | |

### COMPUTATION OF THE CREDIT

**PART I—TRANSFEROR'S TAX ON PRIOR TRANSFERS**

| | | |
|---|---|---|
| 1. Net value of transfers | | $ |
| 2. Value of transferor's estate (adjusted in accordance with instructions for item 2) | | $ |
| 3. Tax on transferor's estate (adjusted in accordance with instructions for item 3) | | $ |
| 4. Transferor's tax on prior transfers (proportion of item 3 which item 1 bears to item 2) | | $ |

**PART II—TRANSFEREE'S TAX ON PRIOR TRANSFERS**

| | | |
|---|---|---|
| 5. Transferee's tax computed without regard to credit allowed under this schedule | | $ |
| 6. Transferee's reduced gross estate | | $ |
| 7. Transferee's deductions (adjusted in accordance with instructions for item 7) | | $ |
| 8. Transferee's reduced taxable estate (item 6 minus item 7) | | $ |
| 9. Tax on reduced taxable estate | | $ |
| 10. Transferee's tax on prior transfers (item 5 minus item 9) | | $ |

**PART III—CREDIT ALLOWABLE**

| | | |
|---|---|---|
| 11. Maximum amount before application of percentage requirement (item 4 or item 10, whichever is smaller) | | $ |
| 12. Percent allowable is | | % |
| 13. Credit allowable (item 12 × item 11) | | $ |

ESTATE OF      MARILYN MONROE      Schedule P, Q, and R—Page 35