EXHIBIT "T"

At a Surrogate's Court, held in
and for the County of New York
at 31 Chambers Street in said
County on the 11th day of
December, 1972

P R E S E N T :

       Hon.    Millard L. Midonick
                  Surrogate

- - - - - - - - - - - - - - -- - - - - - - - X

Proceeding to Compel Delivery
of Property by Fiduciary of

                                  File No. P 2781-1962

       Estate of

    MARILYN MONROE,

                            ORDER TO SHOW

                  Deceased          CAUSE

- - - - - - - - - - - - - - - - - - - - - X

        On the reading and filing the petition of Tom Kelley
verified on the 27th day of November, 1972, the Affirmation
of Barry Berkman, Esq. dated the 5th day of December, 1972
and the exhibit attached thereto, let the respondent,
Aaron R. Frosch, Esq., the executor herein show cause before
the Surrogate's Court of New York County, 31 Chambers Street,
Room 509, on the 26th day of December, 1972 at 10:00 o'clock
in the forenoon of that day, or as soon thereafter as counsel
can be heard why the petitioner herein should not be adjudged
the owner of the specific color transparencies described in
paragraph 2 of the petition herein, and why said petitioner
should not recover possession thereof and have such other
and further relief as may be just and proper in the premises.

        SUFFICIENT reason appearing therefore, let
personal service of a copy of this order together with the
papers upon which it was granted upon the respondent,
Aaron R. Frosch, Esq. on or before the 19th day of December
1972 be deemed good and sufficient service.

                          Surrogate

MM-0007628

STATE OF NEW YORK
SURROGATE'S COURT, COUNTY OF NEW YORK

---

Proceeding to Compel Delivery
of Property by Fiduciary of

Estate of

MARILYN MONROE,

Deceased

File No. P 2781-1962

Petition to Compel
Delivery of Property
by Fiduciary,
SCPA 2105

---

TO THE SURROGATE'S COURT OF THE STATE OF NEW YORK:

The petition of Tom Kelley respectfully shows:

1) That your petitioner is domiciled at 3821 Bowsprit Circle, Westlake Village, California, 91360.

2) That your petitioner is a professional photographer and has claim to specific personal property as follows:

Five color transparencies of decedent, each transparency being 2½" x 2¼" and encased on a cardboard frame 3¼" x 4".
Each frame reads:

"Processed by Tricolor Laboratories, Hollywood, California"

"Ansco Color"

"Specify album color prints for accurate color reproduction"

3) That the said decedent at the time of her death was domiciled at 444 East 57th Street, City and County and State of New York.

4) That the Last Will of Marilyn Monroe, the decedent above named, was duly admitted to Probate by the Surrogate's Court of the County of New York on the 30th day of October, 1962 and Letters Testamentary of the Estate of Marilyn Monroe, the decedent above named, were duly issued to Aaron R. Frosch, Esq. by the Surrogate's Court, City of New York on the 30th day of October, 1962. Said Aaron R. Frosch duly qualified, and has ever since acted as such Executor.

MM-0007625

5)    That the photographs which are the subject of the within proceeding were taken of the decedent by your petitioner in May of 1949, at which time decedent executed a release of all rights to said photographs to your petitioner.

6)    That at the time of the decedent's death the aforesaid color transparencies were in the possession of decedent, having been loaned to her by your petitioner and not having been returned.

7)    That in October, 1972 your petitioner learned through the Executor, Aaron R. Frosch, Esq., that the said color transparencies are presently in his possession and control.

8)    That petitioner has demanded the delivery of said color transparencies, but the said Executor, Aaron R. Frosch, Esq., has stated that he is unable to deliver the same to your petitioner unless directed to do so by this Court.

9)    No previous application for the within relief has been made.

WHEREFORE Petitioner prays that the said Aaron R. Frosch, Esq., the Executor of the above named Estate, be cited to show cause why he should not be required to deliver the said color transparencies to petitioner, and why petitioner should not have such further relief which may be just and proper in the premises.



STATE OF CALIFORNIA
County of Los Angeles
I, WILLIAM G. SHARP, County Clerk and Clerk of the Superior Court of the State of California, in and for the County of Los Angeles, which Court is a Court of Record, ............ (General)
having by law a seal, do hereby certify that ........................
whose name is subscribed to the attached acknowledgment, proof or affidavit, was at the time of taking said acknowledgment, proof or affidavit a JAMES C. PIPPIN Notary Public IN AND FOR LOS ANGELES COUNTY, duly commissioned and sworn, with the principal place of business or employment in said County, and was, as such, an officer of said State, duly authorized by the laws thereof, to take and certify the same, as well as to take and certify the proof and acknowledgment of deeds and other instruments of writing to be recorded in said State, to take depositions and/or affidavits, and to administer oaths or affirmations, in any County in this State; and that full faith and credit are and ought to be given to his official acts; that the certificate of such officer is required to be under seal, that the impression of his official seal is not required by law, to be on file in the office of the County Clerk; I further certify that I am well acquainted with his handwriting and verify I believe that the signature to the attached document is his genuine signature; and further that the annexed instrument is executed and acknowledged according to the laws of the State of California.
Executed and the Seal of said Superior Court affixed at Los Angeles, California, NOV 27 19 72.
WILLIAM G. SHARP,
County Clerk and Clerk of the Superior Court of California, County of Los Angeles.

MM-0007626

STATE OF CALIFORNIA    )
                                          SS:
COUNTY OF LOS ANGELES )


TOM KELLEY, being duly sworn, deposes and says:
that he is the petitioner in the within proceeding; that
he has read the foregoing petition and knows the contents
thereof; that the same is true to his own knowledge, except
as to the matters therein stated to be alleged on information
and belief, and that as to those matters he believes it
to be true

TOM KELLEY

Sworn to before me this
2 7 day of May 1972

NOTARY PUBLIC



OFFICIAL SEAL
JAMES C. PIPPIN
NOTARY PUBLIC CALIFORNIA
LOS ANGELES COUNTY
My Commission Expires ...

STATE OF CALIFORNIA
County of Los Angeles
I, WILLIAM G. SHARP, County Clerk and Clerk of the Superior Court of the State of California, for the County of Los Angeles, which Court is a Court of Record,
                                                                                                                    (General)
having by law a seal, do hereby certify that ......................................................................................................
whose name is subscribed to the attached acknowledgment, proof or affidavit, was at the time of taking said acknowledgment,
proof or affidavit, a Notary Public IN AND FOR LOS ANGELES COUNTY, duly commissioned and sworn, with the principal
place of business or employment in said County, and was, as such, an officer of said State, duly authorized by the laws thereof
to take and certify the same, as well as to take and certify the proof and acknowledgment of deeds and other instruments of
writing to be recorded in said State, to take depositions and/or affidavits, and to administer oaths or affirmations, in any County
in this State, and that full faith and credit are and ought to be given to his official acts; that the certificate of such office is re-
quired to be under seal; that the impression of his official seal is not required by law to be on file in the office of the County
Clerk; I further certify that I am well acquainted with his handwriting and verily believe that the signature to the attached
document is his genuine signature, and further that the annexed instrument is executed and/or acknowledged according to the
laws of the State of California.

                                                                Executed and the seal of said Superior Court affixed at
                                Los Angeles, California, NOV 27 19 72
                                                                        WILLIAM G. SHARP
                                                                County Clerk and Clerk of the Superior Court

MM-0007627

EXHIBIT "U"

Proceeding to Compel Delivery          :
of Property by Fiduciary of            :    File No. P 2781-1962
                                       :
                                       :
        Estate of                      :         AFFIDAVIT
                                       :
    MARILYN  MONROE,                   :
                                       :
                    Deceased           :
                                       :

        AARON R. FROSCH, being duly sworn deposes and says,

        I make this Affidavit in connection with proceeding

in the above captioned Estate, brought on by Order to Show Cause
                        Order
toward obtaining/of this Court for the delivery of certain photo-

graphs and certain color transparencies of MARILYN MONROE to

TOM KELLEY based on his claim that he is the owner thereof.

        Said transparencies came to my attention, as Executor

of the Estate of MARILYN MONROE, within the last year.  Subse-

quently, there was an international press notice that these trans-

parencies existed and I had possession thereof.  Since that time,

claim has been made by LEE STRASBERG, beneficiary of her personal

effects, under the Last Will and Testament of MARILYN MONROE, that

these transparencies represent personal effects of the Decedent

and accordingly, he is entitled to them.  Also, the claim of

MR. KELLEY to the effect that he was the owner of the said trans-

parencies and that he had loaned these to MISS MONROE prior to

her death.

therein

MM-0000240

has been made.

I have examined the "model release" attached to Mr. Kelley's moving papers herein and believe the signature thereon to be that of MARILYN MONROE.

I have no basis of believing the said transparencies are not owned by MR. TOM KELLEY and that they were loaned to the Decedent prior to her death.

Although the transparencies physically may represent personal affects of the Decedent, I questioned whether reproduction or any other rights thereto are personal affects of the Decedent.

I recognize that the Decedent has no rights of privacy and her Estate has no exclusive right to her image.

Accordingly, I take no position in relation to the ownership of the said transparencies but pray the Court to reach a decision in regard to the ownership thereof, so they may be distributed by the Estate to their rightful owner.

_____
AARON R. FROSCH

Sworn to before me this

8 day of Dec. , 1972.

RICHARD M. ROSENTHAL
Notary Public, State of New York
No. 31-___
Qualified in New York County
Commission Expires March 30, 1973

MM-0000239

EXHIBIT "V"

Marilyn Monroe resident of N[ ] [ ]

'75-SBE-032'

BEFORE THE STATE BOARD OF EQUALIZATION

OF THE STATE OF CALIFORNIA

In the Matter of the Appeal of      )
                                     )
ESTATE OF MARILYN MONROE,            )
DECEASED                             )

Appearances:

    For Appellant:    Payson Wolff
                    Attorney at Law

    For Respondent:  Paul J. Petrozzi
                    Counsel

## O P I N I O N

       This appeal is made pursuant to section 18594 of the Revenue and Taxation Code from the action of the Franchise Tax Board on the protest of the Estate of Marilyn Monroe, Deceased, against proposed assessments of additional personal income tax and penalties in the amounts and for the years as follows:

- 178 -

A-2

MM-0000087

Appeal of Estate of Marilyn Monroe, Deceased

| Year | Proposed<br>Assessment | Penalty |
|------|------------------------|---------|
| 1963 | $ 1,894.86 | $ 473.72 |
| 1964 | 10,107.58 | 2,526.89 |
| 1965 | 10,020.61 | 2,505.15 |
| 1966 | 10,115.92 | 2,528.98 |
| 1967 | 13,830.05 | 3,457.51 |
| 1968 | 3,240.91 | 810.23 |
| 1969 | 140.48 | 35.12 |
| 1970 | 1,892.71 | 473.18 |

At the time of her death in 1962, Marilyn Monroe was a resident of the State of New York. Her will was admitted to probate in New York on January 14, 1963, and Aaron R. Frosch, a New York resident, was named executor. Since Miss Monroe owned real and personal property located in California when she died, her will was also admitted to probate in California on January 21, 1963, and Mr. Frosch was named ancillary executor.

Among the better known motion pictures in which Miss Monroe appeared were "Some Like It Hot" and "The Misfits." "Some Like It Hot" was filmed entirely in California, and ten percent of the filming of "The Misfits" took place in this state. With respect to each motion picture, Miss Monroe had a contract with United Artists Corporation under which the corporation agreed to pay her (1) fixed compensation contemporaneously with the principal photography and (2) contingent compensation (hereinafter referred to as the "percentage payments") based upon a percentage of the film's earnings, as and when accruing. In each of the appeal years, United Artists' New York offices paid the percentage payments to Mr. Frosch as executor of Miss Monroe's estate under the New York probate. Each payment, when received, was included in the New York estate's current income for New York income tax purposes, and the applicable income taxes were timely paid to the State of New York.

Because Mr. Frosch believed that the percentage payments were not taxable in California, no income tax was paid to the State of California on any portion of those payments, and no California personal income tax return was filed on behalf of the ancillary estate for any of

– 179 –

A-3

MM-0000088

<u>Appeal of Estate of Marilyn Monroe, Deceased</u>

the years in question.  When Mr. Frosch requested a tax clearance certificate (Rev. & Tax. Code, § 19262) from respondent in order to submit his final account to the probate court, however, the request was denied.  Subsequently, respondent determined that the percentage payments constituted "income in respect of a decedent, " and that all of the payments received in connection with "Some Like It Hot" and ten percent of those arising from "The Misfits" were income attributable to a California source, viz. , Miss Monroe's performance of her personal, artistic services within California.  Based on that allocation of the income from the percentage payments, respondent assessed additional personal income tax against the California estate for each year and added to each assessment a 25 percent penalty for failure to file a return.

-1

### Applicability of the Personal Income Tax to the Percentage Payments

The initial question presented by this appeal is whether the percentage payments are taxable under California law.  There is no question that these payments would have been subject to tax in California had Miss Monroe lived to receive them.  This is so because the personal income tax is imposed on "the entire taxable income of every nonresident which is derived from sources within this state, " (Rev. & Tax. Code, § 17041, subd. (a)), and it is settled that the source of income from personal services is the place where the services were performed.  (Appeal of Robert C. and Marian Thomas, Cal. St. Bd. of Equal., April 20, 1955; see also Cal. Admin. Code, tit. 18, reg. 17951-17954(c). ) What we must decide, therefore, is whether the death of Miss Monroe deprives the State of California of income taxes that would otherwise have been due it.  We hold that it does not.

Respondent based its assessments against appellant on Revenue and Taxation Code sections 17831-17838, which provide for the taxation of "income in respect of a decedent. " Section 17831 sets forth the general rule:

- 180 -

*A-4*

MM-0000089

Appeal of Estate of Marilyn Monroe, Deceased

The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period. .. shall be included in the gross income, for the taxable year when received, of:

(a) The estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent;

(b) The person who,' by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent;    or

(c) The person who acquires from the decedent the right to receive the amount by bequest, devise, or inheritance, if the amount is received after distribution by the decedent's estate, of such right.

Section 17833 further provides:

The right, described in Section 17831, to receive an amount shall be treated, in the hands of the estate of the decedent, or any person who acquired such right by reason of the death of the decedent, or by bequest, devise, or inheritance from the decedent, as if it had been acquired by the estate or such person in the transaction in which the right to receive the income was originally derived and the amount includible in gross income under Section 17831.. . shall be con-sidered in the hands of the estate or such person to have the character which it would have had in the hands of the decedent if the decedent had lived and received such amount..

– 181 –

A-5

MM-0000090

Appeal of Estate of Marilyn Monroe, Deceased

Sections 17831 and 17833, and their companion sections, are based on and are substantially identical to the provisions of section 691 of the Internal Revenue Code. Enactment of section 691 was the result of congressional efforts to see to it that income which would have been taxable had the decedent lived to receive it should not escape income tax simply by reason of the decedent's death. (Commissioner v. Linde, 213 F. 2d 1, cert. denied, 348 U. S. 871 [99 L. Ed. 686].) Prior to 1934, income accrued but not yet received by a cash basis decedent as of the date of his death escaped income tax altogether because the decedent's accounting method did not require such amounts to be reported on his return and the courts had held that they also were not income to the decedent's estate. To remedy this situation, Congress enacted section 42 of the Revenue Act of 1934, which provided that amounts accrued up to the date of the taxpayer's death should be included in computing his net income for the taxable year of his death, even though such amounts had not been received and regardless of whether the taxpayer had reported his income on the cash basis or otherwise. When the courts were called on to construe this provision, the word "accrued" was given a broader meaning than it had in the context of the accrual method of reporting income, in order to effectuate the congressional purpose to bring "into income the assets of decedents, earned during their life and unreported as income. " (Helvering v. Estate of Enright, 312 U. S. 636, 644 [85 L. Ed. 1093]. ) The result of the Enright decision, however, was to "bunch" into the decedent's final return items of income that would have been reported over several years, if the decedent had lived to receive them.  Section 126 of the Internal Revenue Code of 1939, the forerunner of the present section 691, was enacted in 1942 to relieve this unfair bunching effect.  But as the Court of Appeals said in the Linde case:

> [W]hile Sec. 126 was designed to relieve this bunching, there is nothing in the legislative history or in the text of Sec. 126 to indicate that it was intended to be any - thing other than an improved device to accomplish the general purpose of the internal revenue code that all income should pay a tax and that death should not rob the United States of the revenue which otherwise it would have had. ... (Commissioner v. Linde, supra, 213 F. 2d at 5. )

- 182 -

A-6

Monday, March 28, 2005.max

MM-0000091

Appeal of Estate of Marilyn Monroe, Deceased

       We have no doubt that our Legislature intended the comparable California provisions to fulfill the same general purpose. As we indicated above, the Personal Income Tax Law imposes a tax on all the income of a nonresident that is derived from a source within California. If Miss Monroe had lived to receive the percentage payments, they would have been taxable in California because they were derived from a California source. Therefore, in order to effectuate the legislative purpose behind Revenue and Taxation Code section 17831, appellant must be required to pay tax on the percentage payments so that the death of Miss Monroe does not deprive the state of revenue it otherwise would have had.

       Appellant concedes that the percentage payments it received are the sort of income normally characterized as income in respect of a decedent. It contends, however, that even assuming those payments are personal service income from a California source, they are not taxable to the estate because California has elected not to tax nonresident estates on personal service income. In support of this argument, appellant relies on respondent's regulation 17742-17745(a), which deals with the taxability of estates, trusts, and beneficiaries. Paragraph (2) of this regulation provides, in part:

      If the settlor, the fiduciary and the beneficiaries are all nonresidents of this State, only income from real or personal property located in this State (see Reg. 17951-54(c)), business carried on within this State (see Reg. 17951-54(d)), and intangible personal property having a business or taxable situs in this State (see Reg. 17951-54(f)) is taxable. (Cal. Admin. Code, tit. 18, reg. 17742-17745(a)(2).)

Despite being couched in trust terminology, this paragraph apparently is intended also to apply to the estate of a decedent who was a nonresident when he died. After noting the absence of any reference to personal service income in the above quoted passage, appellant argues that this was a deliberate omission designed to implement a policy that nonresident estates be taxed only on California source income generated by the estate's assets or activities, and not on income (such as the

A-7

MM-0000092

Appeal of Estate of Marilyn Monroe, Deceased

decedent's personal service income) which was created prior to the time the estate was in existence and which is passively received by the estate outside California.

We think appellant's reliance on the regulation is misplaced. The purpose of paragraph (2) clearly is to specify what types of income arising from a nonresident estate's assets or activities are income from a California source and thus taxable in California. But the omission of any reference to personal service income is merely a reflection of an estate's inability to render personal services, not the result of some policy that nonresident estates are never to be taxed on the receipt of income derived from the personal services of their decedents. Appellant has not suggested any reason why the state would have such a policy, and we cannot conceive of any. If, by reason of Miss Monroe's death, a nonresident individual had acquired the right to receive the percentage payments in a manner specified in either subdivision (b) or (c) of section 17831, it would appear that such individual would be obliged to pay California tax on his receipt of the payments. We cannot see, therefore, why a nonresident estate should be allowed to escape tax when it is the recipient, and we cannot believe that paragraph (2) of regulation 17742-17745(a) was deliberately designed to give nonresident estates any such windfall tax break;

Appellant also contends that California's failure to impose an inheritance tax on the percentage payments indicates that they should not be taxed to a nonresident estate as income in respect of a decedent. Appellant's reasoning is that historically the federal scheme of taxing such income contemplates both income and estate taxation, (see Riegelman's Estate v. Commissioner, 253 F. 2d 315), and allows an income tax deduction for estate taxes paid with respect to such income. (Int. Rev. Code of 1954, § 691(c). ) For California income tax purposes, however, the similar deduction is limited to the California inheritance taxes paid. (Rev. & Tax. Code, §§ 17836, 17837. ) Consequently, since California inheritance tax was not imposed on the percentage payments. appellant will have to bear the income tax on those payments without receiving the benefit of a deduction that is allowed for federal income tax purposes. Under these circumstances, appellant argues, it would be unfair to make it pay tax on the percentage payments.

– 184 –

A-8

MM-0000093

Appeal of Estate of Marilyn Monroe, Deceased

If there is any unfairness here, it is undiscernible. It is appropriate for the federal government to allow an income tax deduction because it imposes another tax (the estate tax) on the same item of income. By the same token, it seems entirely appropriate for the State of California to deny such a deduction when, as in this case, it does not impose another tax on the same item of income. If, as appellant claims, the state would allow the deduction if the decedent were a California resident, that would be so only because California inheritance taxes would have to be paid for the privilege of succeeding to the property of such a decedent. In sum, we fail to see how a nonresident estate like appellant bears an undue income tax burden because the law denies it a deduction for unimposed and unpaid inheritance taxes.

Finally, appellant argues that the percentage payments are not taxable in California because they were not derived from California sources. The true source of this income, according to appellant, was in New York, because the income was derived through appellant's ownership of an intangible contract right whose situs, under the doctrine of mobilia sequunter personam, was in the state of appellant's domicile or residence. In support of this position, appellant relies on the cases of Miller v. McColgan, 17 Cal. 2d 432 [110 P. 2d 419], and Robinson v. McColgan, 17 Cal. 2d 423 [110 P. 2d 426], both of which discussed the source of dividend income from corporate stock, and on our decision in the Appeal of Hallie L. Bills, Cal. St. Bd. of Equal., April 5, 1965, which discussed the source of interest income derived from promissory notes. Appellant correctly states that these authorities stand for the proposition that a distinction must be made between the "immediate" source of income from intangibles (which is the intangibles themselves) and the "ultimate" source of the same income (which in the above cases would be the activities of the corporations or the sale of property.) Applying that principle to the present situation, appellant argues that the immediate source of the income in question was its intangible contract right to receive the percentage payments, and that Miss Monroe's services were merely the ultimate source of that income. It concludes, therefore, that under the mobilia rule the source of the income was in appellant's domiciliary state, New York.

- 185 -

A-9

MM-0000094

Appeal of Estate of Marilyn Monroe, Deceased

Although appellant's analogy is artfully drawn, we do not find it persuasive. Neither the decisions cited above nor any others we are aware of suggest that a contract right to receive payment for personal services is an intangible subject to the mobilia doctrine. During her lifetime Miss Monroe owned the same contract right, and appellant does not contend that the mobilia rule would have applied to her receipt of the income. To be sure, appellant is a different taxpayer, but for this purpose, as for many others, it stands in the shoes of its decedent. Support for this view is found, we believe, in Revenue and Taxation Code section 17833, which states that:

> The right, described in Section 17831, to receive an amount shall be treated, in the hands of the estate. .. as if it had been acquired by the estate. .. in the transaction in which the right to receive the income was originally derived. ...

We hold, therefore, that whether received by Miss Monroe or her estate, the percentage-payments have a California source to the extent that they are attributable to personal services she performed in this state. That California source, in turn, supplies the jurisdictional foundation for this state's taxation of the percentage-payments as income in respect of a decedent.

II

Does California Allow a Tax Credit for Income Taxes Paid to New York on the Percentage Payments?

Even if California imposes a tax on a portion of the percentage payments, appellant contends that it is entitled to a credit for the income taxes it paid to the State of New York on the same income. The credit appellant seeks is the one allowed by Revenue and Taxation Code section 18004, which provides in part:

– 186 –

A-10

Monday, March 28, 2005.max

MM-0000095

Appeal of Estate of Marilyn Monroe, Deceased

> If an estate or trust is a resident of this State and also, a resident of another state, it shall, notwithstanding the limitations contained in Sections 18001 and 18002, be allowed a credit against the taxes imposed by this part for net income taxes imposed by and paid to the other state, ...

For the purposes of sections 18001-18011, section 18003 states that "an estate or trust is considered a resident of the state which taxes the income of the estate of trust irrespective of whether the income is derived from sources within that state." As the regulations make clear, this language means that an estate is a resident of California only if, this state taxes its income from sources both within and without the state. (Cal. Admin. Code: tit. 18, reg. 18003-18004.) Since California taxes an estate's income from all sources only when the decedent was a resident of this state, (Rev. & Tax. Code, § 17742; Cal. Admin. Code, tit. 18, reg. 17742-17745(a)), only estates of resident decedents are residents of California for purposes of the tax credit provisions of sections 18001-18011. Consequently, Miss Monroe having been a New York resident at the time of her death, appellant is not a resident of California and is not entitled to the tax credit authorized by se&ion 18004.

As appellant reads section 18003, however, it means that in determining the residence of an estate it is unimportant whether the income, taxed is from sources within or without the state. Thus, if any portion of an estate's income, regardless of its source, is taxed by a state, the estate will be a resident of that state under section 18003 and will be entitled to a credit under section 18004. We disagree. Residency, as defined in section 18003, contemplates taxation of an estate's income from all sources, and section 18004 is clearly designed to grant a tax credit only when two states tax all of an estate's income. Where, as in this case, one state taxes only a part of that income, section 18004 does not apply. In this latter situation, a tax credit would be available only under either section 18001 or section 18002, subject to the limitations therein specified. As a nonresident, appellant must look to section 18002 for any credit for taxes paid to New York, but it has not contended that it qualifies for the credit described in that section.

A-11

Monday, March 28, 2005.max

MM-0000096

Appeal of Estate of Marilyn Monroe, Deceased

III

Should Appellant Be Held Liable for the Penalties for Failure
to File Returns?

Since appellant failed to file a return for any of the years
in issue, respondent assessed for each year the maximum 25 percent
penalty for such failure to file. (Rev. &Tax. Code, § 18681. ) Under
the statute, the penalties must be sustained unless the taxpayer shows
that the failures to file were "due to reasonable cause and not due to
willful neglect." Appellant here contends that such reasonable cause
existed because of uncertainty in the law regarding both the taxability
of the percentage payments and the availability of a tax credit for
each year. It also emphasizes that the executor at all times believed
in good faith that no tax was due to California, and that the failures to
file returns were based on that understanding.

We do not doubt that the executor honestly believed no
returns were required, but the record is barren of any evidence
showing that he had a reasonable cause for his belief. There is no
indication that he even investigated the possibility of tax liability
in the states where Miss Monroe performed the services giving rise
to the percentage payments, or that he sought the advice of counsel
on such matters. His mere uninformed and unsupported belief, no
matter how sincere, that the estate was not required to file returns,
is insufficient to constitute reasonable cause for the failures to file.
(Robert A. Henningsen, 26 T. C. 528, aff'd, 243 F. 2d 954. ) Appellant
says that a reasonably prudent businessman would have concluded that
no returns were due since the California inheritance tax authorities
did not impose an inheritance tax on the percentage payments. We
believe, however, that a reasonably prudent businessman would have
sought professional advice in California before he drew such a
conclusion. There is no evidence that this was done. Under the
circumstances, therefore, we conclude that appellant did not have
reasonable cause for its failure to file California returns, and that
the penalties were properly imposed.

- 188 -

A - 12

MM-0000097

Appeal of Estate of Marilyn Monroe, Deceased

O R D E R

Pursuant to the views expressed in the opinion of the board on file in this proceeding, and good cause appearing therefor,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, pursuant to section 18595 of the Revenue and Taxation Code, that the action of the Franchise Tax Board on the protest of the Estate of Marilyn Monroe, Deceased, against proposed assessments of additional personal income tax and penalties in the amounts and for the years as follows:

| Year | Proposed Assessment | Penalty |
|------|------|------|
| 1963 | $ 1,894.86 | $   473.72 |
| 1964 | 10,107.58 | 2,526.89 |
| 1965 | 10,020.61 | 2,505.15 |
| 1966 | 10,115.92 | 2,528.98 |
| 1967 | 13,830.05 | 3,457.51 |
| 1968 | 3,240.91 | 810.23 |
| 1969 | 140.48 | 35.12 |
| 1970 | 1,892.71 | 473.18 |

be and the same is hereby sustained.

Done at Sacramento, California, this 22nd day of April, 1975, by the State Board of Equalization.

_____, Chairman

_____, Member

_____, Member

_____, Member

_____, Member

ATTEST: _____, Executive Secretary

– 189 –

A-13

Monday, March 28, 2005.max

MM-0000098