EXHIBIT "W"

GANG, TYRE & BROWN
6400 Sunset Building
Hollywood, California 90028
(213) 463-4863

Attorneys for Ancillary Executor

FILED
MAY 21 1976

DATE OF HEARING

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| IN THE MATTER OF THE ESTATE | ) | NO. 458,935 |
| OF | ) | FIRST AND FINAL ACCOUNT OF ANCILLARY |
| | ) | EXECUTOR; REPORT; PETITION FOR ALLOW- |
| MARILYN MONROE, | ) | ANCE OF STATUTORY AND EXTRAORDINARY |
| | ) | EXECUTOR'S COMMISSIONS AND ATTORNEYS' |
| | ) | FEES, INCLUDING ALLOWANCE FOR FEES OF |
| | ) | SPECIAL ADMINISTRATOR AND HER ATTOR- |
| Deceased. | ) | NEYS; PETITION FOR ORDER DIRECTING |
| | ) | DEPOSIT OF MONEYS DUE UNLOCATED |
| | ) | CLAIMANT; AND PETITION FOR FINAL |
| | ) | DISTRIBUTION TO DOMICILIARY EXECUTOR |

TO THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, FOR THE

COUNTY OF LOS ANGELES:

The petition of AARON R. FROSCH, Ancillary Executor of

the Estate of Marilyn Monroe, Deceased, respectfully shows:

DATE OF DEATH:

Decedent herein died on or about August 5, 1962, at

Los Angeles, California, leaving estate therein.

ANCILLARY LETTERS TESTAMENTARY:

At the time of her death, decedent was a resident of the

County of New York, State of New York. Ancillary Letters

-1-

1  Testamentary were issued on February 26, 1964, to petitioner

2  herein, who, ever since said date, has been and now is the duly

3  qualified and acting ancillary executor of the above estate.

4

5  SPECIAL NOTICES:

6

7       Requests for Special Notice have been filed herein by

8  the Director of Employment, 800 Capitol Avenue, Sacramento,

9  California; Inez C. Melson, c/o Marcus, Kohn & Epstein (now

10  known as Marcus & Ezor), 9250 Wilshire Boulevard, Beverly Hills,

11  California 90212; District Director of Internal Revenue, P.O.

12  Box 1431, Los Angeles, California, attention Special Procedures,

13  Room 1355, Probate Unit; and Berniece Miracle, c/o Dixon, Howell &

14  Westmoreland (now known as Dixon, Howell, Westmoreland & Newman),

15  924 Westwood Boulevard, Suite 705, Los Angeles, California 90024,

16  and also c/o James Stuart Wershow, 212 South East First Street,

17  Gainesville, Florida 32601.  The Request for Special Notice filed

18  on behalf of the District Director of Internal Revenue has been

19  withdrawn per Proof of Claim, Special Notice Withdrawal Request,

20  heretofore filed in the above estate.  The Request for Special

21  Notice heretofore filed by the Department of Employment has been

22  withdrawn per the Withdrawal of Request of Special Notice from

23  the Director of the Department of Human Resources Development

24  (formerly known as Department  of Employment and now known as

25  Employment Development Department), on file in the above estate.

26  Special Notice of the hearing on the within petition will be

27  ...

28  ...

1  given to the other parties listed above, as required by law.

2  No other  Requests for Special Notice are on file herein.

3

4  INVENTORY AND APPRAISEMENT:

5

6          An Inventory and Appraisement of the assets of said

7  estate located within the State of California was returned

8  and filed on or about April 16, 1963, showing the appraised

9  value of decedent's estate in California to be $92,781.09.

10

11  NOTICE TO CREDITORS:

12

13          Notice to creditors of decedent has been duly published,

14  the first publication thereof being on March 4, 1963.  A

15  printed copy of said notice accompanied by a declaration

16  setting forth the date of first publication thereof and the

17  name of the newspaper in which the same was printed was duly

18  filed herein on March 25, 1963, at which time the Declaration

19  of Publication showing the due publication of notice to

20  creditors of said decedent was duly filed.

21

22  CREDITORS' CLAIMS:

23

24          The following is a schedule of all creditor's claims

25  filed or presented against the above estate:

26  ...

27  ...

28  ...

| Claimant | Amount |
|---|---|
| Department of Employment | $ 99.18 (plus interest) |
| Vicente Pharmacy | 58.57 |
| C & J Howard, Inc., dba Landon Pool Service | 37.90 |
| B. B. Thompson (Thompson Electric Co.) | 111.45 |
| Santa Monica Dairy, dba Edgemar Farms | 6.06 |
| Saks Fifth Avenue | 388.32 |
| Raese Period Furniture | 313.92 |
| The Arthur P. Jacobs Co. | 797.95 |
| Agnes M. Flanagan | 840.00 |
| James M. Attley, dba The Adair Co. | 29.85 |
| Robert K. Goka, dba Frank's Nurseries | 59.64 |
| Pacific Telephone | 14.66 |
| A. Ray Tolman | 150.00 |
| City National Bank | 35,244.68 (plus interest) |
| Allan Snyder | 1,800.00 |
| Dr. Hyman Engeleberg | 478.00 |
| Malone Studio Service, Inc. | 111.50 |
| Magnetic Springs Water Co. | 3.60 |
| Drs. Conti and Steinberg | 25.00 |
| General Telephone | 274.61 |
| Don J. Briggs, Inc. | 215.41 |
| Sam S. Tateishi | 40.00 |
| Rand-Fields, Inc. | 205.59 |
| Austin A. Innes | 44.17 |
| Buzin News Co. | 94.90 |

-4-

| Claimant | Amount |
|---|---|
| 1 | |
| 2  MCA Artists, Ltd. | $ 27,273.61 (plus contingency) |
| 3 | |
| 4  Dr. Ralph R. Greenson | 1,400.00 |
| 5  Jose Paraco | 60.00 |
| 6  Norman Jeffries | 190.00 |
| 7  Jack M. Ostrow | 2,500.00 |
| 8  Cherie Redmond | 200.00 |
| 9  Francis-Orr Stationery Co. | 5.55 |
| 10  Mura Bright | 1,132.27 |
| 11  Edward P. Halavaty | 17.28 |
| 12  U. S. Treasury Department, Internal Revenue Service | 21,724.72 |

13

14          All of said claims were approved and allowed as presented,

15  and paid herein, as shown by receipts on file, except as follows:

16

17          (1)  The claim of Edward P. Halavaty in the original

18          amount of $59.33 was approved for the amount of

19  $17.28, following Partial Withdrawal of Claim by claimant of

20  the sum of $42.05; and, as so approved, was paid.

21

22          (2)  The claim of Mura Bright was allowed in part only

23          and rejected in part.  Notice of Partial Rejection

24  of Claim: Partial Approval of Claim was duly given to said

25  claimant on June 23, 1965, and was filed herein on July 1, 1965.

26  No action was taken by said claimant within the time allowed by

27  ...

28  ...

-5-

1  law, and the claim, as partially approved, has been paid.

2          (3)  The claim of the U. S. Treasury Department in

3          the amount approved and allowed herein was paid

4  by the domiciliary executer in New York; a Proof of Claim

5  Special Notice Withdrawal Request, signed by the District

6  Director of Internal Revenue, reciting payment, was filed

7  herein on or about March 4, 1971.

8          (4)  The claim of MCA Artists, Ltd., has been paid

9          or satisfied through the domiciliary probate

10 of decedent's estate in New York, and Receipt and Consent To

11 Distribution of MCA Artists is on file herein.

12         (5)  The claim of Jose Paraco in the amount of $66.00

13         was approved and allowed but payment has not yet

14 been made because petitioner has been unable to locate Mr.

15 Paraco.  Said claim is the subject of the petition for order

16 directing deposit of moneys, set forth below.

17

18         The time for filing creditors' claims against the

19 within estate has long since expired.

20

21 ACCOUNTING AND RECAPITULATION:

22

23         Petitioner herein renders to the Court his First and

24 Final Account with reference to his administration of the

25 above estate, covering the period February 26, 1963, through

26 March 15, 1976.

27 ...

28 ...

1    Attached hereto, marked Exhibit I, and by this reference

2  made a part hereof, is an accounting in detail for the period

3  of this account.  Schedule A thereof sets forth receipts during

4  said period; Schedule B thereof sets forth disbursements during

5  said period; Schedule C thereof shows gains on sales during

6  said period; and Schedule D thereof sets forth assets on hand

7  at the end of said accounting period.

8      The face page of Exhibit I is a summary of account,

9  showing assets on hand at March 16, 1976, of $26,375.89, of

10  which $24,788.89 constitutes cash on hand or in savings accounts,

11  and the balance consists of assets other than cash at their

12  appraised values.

13

14  REPORT:

15

16      Petitioner herein renders to the Court this Report on

17  his administration of the above estate:

18      (1)  At the time of decedent's death in August,

19      1962, decedent left no relatives or other

20  close personal associates in California.  Petitioner herein,

21  having been designated as executor in decedent's will, arranged

22  immediately for the appointment of INEZ C. NELSON, as Special

23  Administrator, in order that decedent's effects and property

24  could be preserved and protected from the curious onlookers

25  and mourners who descended on the estate.  Petitioner then

26  arranged in due course for Ancillary Letters Testamentary

27  ...

28  ...

1  to be issued to him in California and undertook the detailed

2  administration of decedent's estate.

3        (2)  Because of the large number of creditors' claims

4              filed against the decedent's estate, the large

5  tax liens and the difficulty of assembling assets, petitioner

6  was unable to pay the creditors' claims or to assemble enough

7  assets in order to satisfy the decedent's obligations in

8  California until the end of 1970.

9        (3)  During this period, petitioner negotiated and

10             arranged for the sale of decedent's house and

11  a portion of decedent's personal belongings which were sold

12  as a unit to the highest bidder in accordance with the Order

13  Confirming Sale of Real and Personal Property Sold as a Unit

14  on file herein.  Petitioner also sold certain items of personal

15  property belonging to decedent's estate as set forth in the

16  Return and Petition for Order Approving Sale of Personal Property

17  Likely to Depreciate in Value, and Order Approving Such Sale

18  on file.  Said sales resulted in a net gain to decedent's estate

19  of $5,119.00, as more specifically set forth on Schedule "C" of

20  Exhibit "1" attached.

21        (4)  Petitioner caused to be filed the California

22             Inheritance Tax Affidavit and filed an

23  Affidavit of Non-Residence and supporting affidavits of other

24  individuals, and obtained a determination that decedent was a

25  non-resident of California at the time of her death for inheri-

26  tance tax purposes.  The California Inheritance Tax for said

27  estate has been determined and paid in full as shown by the

28  ...

1  Report and Receipt on file in the within proceedings.

2      (5)  The Federal Estate Tax Return for decedent's

3          entire gross estate, including the assets

4  constituting the gross estate in California subject to adminis-

5  tration herein, has been filed and audited and all tax due in

6  connection therewith have been paid.

7      (6)  The California fiduciary income tax liability

8          of the estate for the years 1962 through 1970

9  was the subject of dispute and litigation between petitioner

10  herein and the Franchise Tax Board.  Said litigation has now

11  been settled and compromised; and tax assessed by reason thereof

12  has been paid as set forth in the Petition for Order Approving

13  Compromise (Claim Against Estate), and Order Approving Compro-

14  mise (Claim Against Estate) on file herein, and Satisfaction of

15  Judgment heretofore filed.  California fiduciary income tax

16  returns for the years 1971 through 1975 have been filed and

17  all tax shown due thereon have been paid.  Petitioner will

18  cause the final California fiduciary tax return for the year

19  1976 to be filed upon final distribution of decedent's estate

20  and any tax shown due thereon to be duly paid.

21      (7)  All personal property taxes, if any, due and

22          payable by said estate have been paid.

23  PETITION FOR ORDER DIRECTING DEPOSIT OF MONEYS DUE

24  UNLOCATED CLAIMANT:

25          In June, 1963, one Jose Paraco (or Cararoo -- the inter-

26  pretation of his surname being unclear) filed a creditor's

27  claim against the estate in the sum of $66.00 for tile-laying

28  services rendered to the decedent.  Said claim was approved and

1    allowed but was not paid at that time because there were not

2    sufficient funds then available for payment of all claims.

3    During the year 1971, petitioner endeavored to make payment

4    of said claim but was unable to locate the claimant. Said

5    attempts were as follows:  (1)  Petitioner sent the check to

6    the last known address of said claimant on two different occa-

7    sions, using both names referred to above; on both occasions

8    the letter was returned, marked in one case "Moved, not forward-

9    able" and in the second case "Addressee unknown."  (2)  Peti-

10   tioner searched the telephone directories in the Los Angeles

11   area for all listings under the name of Paraco or of Cararco

12   and phoned them all.  None of them was the claimant and none of

13   them was able to give any leads as to any other person who

14   might be the claimant.  (3)  Petitioner then successively

15   contacted Mrs. Melson, the former Special Administrator of

16   the within estate, who had supervised matters at the time of

17   decedent's death; Mura Bright, the interior decorator; and Mrs.

18   Murray, who had been decedent's housekeeper.  None of them had

19   any information with respect to the claimant or his whereabouts.

20       Petitioner believes, from the indication of Mrs. Murray,

21   that the claimant may have been a Mexican citizen who was in

22   this country only temporarily due to the work involved.

23       Petitioner therefore requests that pursuant to Probate Code

24   § 738, the Court fix the amount owing to Jose Paraco (or Cararco)

25   at $66.00 and direct him to deposit the said sum of $66.00 with

26   the County Treasurer, Los Angeles, California, who shall give

27   ...

28   ...

-10-

1  a receipt for the same, such sum to be received, accounted

2  for and disposed of as provided in said § 33".

3

4  FEES AND COMMISSIONS:

5

6           Petitioner alleges that he is entitled to statutory

7  ancillary executor's commissions in the sum of $2,969.15, based

8  upon an estate accounted for as shown on Exhibit II hereto

9  attached.  The Special Administrator of the above estate makes

10  no claim to any share of said statutory fees but, instead,

11  requests only the extraordinary fees set forth below.

12           Petitioner further alleges that he is entitled to extra-

13  ordinary executor's commissions in the sum of $6,000.00 for

14  services rendered during the period of administration of this

15  estate, as set forth in Exhibit III, Section A, hereto attached.

16           In addition, petitioner alleges that Inez C. Melson, as

17  Special Administratrix of the above estate, is entitled to

18  extraordinary commissions in the sum of $3,500.00, based on

19  the facts set forth in Exhibit III, Section B, hereto attached,

20  being the statement of Inez C. Melson with respect to the

21  services rendered by her in connection with the above estate,

22  which involved more than 574 hours of time on her part.

23           Petitioner further declares that the attorneys for the

24  estate are entitled to statutory attorneys' fees in the sum

25  of $2,969.15, based upon an estate accounted for as set forth

26  in Exhibit II hereto attached.  Petitioner's said attorneys

27  are Gang, Tyre & Brown (formerly Gang, Tyre, Rudin & Brown).

28  . . .

1    The attorney representing Inez C. Melson as Special Adminis-
2    tratrix is Abraham Marcus.  Said attorneys have agreed upon a
3    division of the statutory fees between them so that Abraham
4    Marcus will receive 25% and Gang, Tyre & Brown will receive
5    75% of said statutory attorneys' fees.

6         In addition to the foregoing, petitioner's attorneys,
7    Gang, Tyre & Brown, have requested extraordinary attorneys'
8    fees in the sum of $12,000.00 for extraordinary services
9    rendered by them in connection with the above estate during
10   the period of almost fourteen years during which this estate
11   has been in the process of administration.  A statement of
12   the services rendered by Gang, Tyre & Brown or their predecessor
13   in interest, Gang, Tyre, Rudin & Brown, is set forth in Exhibit
14   III, Section C, hereto attached.

15        Petitioner believes and therefore alleges that the
16   extraordinary executor's commissions and attorneys' fees as
17   prayed for herein are fair and reasonable and should be
18   allowed.

19        In the event that the fees herein requested and allowed
20   and expenses incidental to distribution exceed the amount of
21   cash available in this ancillary administration, the executor
22   in New York will provide the necessary funds.

23

24   BENEFICIARIES:

25

26        Decedent died testate.  She left no spouse or issue her
27   surviving.  Her mother, Gladys Eley, also known as Gladys
28   Baker, and her half-sister, Berniece Miracle, reside outside

-12-



1  the State of California.  The names and last known addresses

2  of the beneficiaries designated in decedent's will, so far

3  as is known to petitioner, are as follows:

4  Name                          Address

5  Gladys Eley, aka              c/o Berniece Miracle
   Gladys Baker                  330 South West 27th Street
6                                Gainesville, Florida

7  Berniece Miracle             c/o Dixon, Howell, Westmoreland &
                                    Newman
8                                 924 Westwood Blvd.
                                  Los Angeles, Calif. 90024

9                               c/o James Stuart Wershow, Esq.
10                                212 South East First Street
                                  Gainesville, Florida 32601

11                               (Residence: 330 South West 27th St.
12                                Gainesville, Florida)

13 Lee Strassburg               135 Central Park West
                                New York, New York
14
   May Reis                     299 West 12th Street
15                              New York, New York 10014

16 Estate of Mrs. Xenia Julia   c/o Belcher, Henzie & Biegenzahn
   Chekhov (Mrs. Michael           333 So. Hope St., Suite 3650
17 Chekhov)                        Los Angeles, Calif. 90017

18 Norman Rosten                84 Remsen Street
                                Brooklyn, New York 11201
19
   Hedda Rosten                 94 Remsen Street
20                              Brooklyn, New York 11201

21 Dr. Mariane Kris             135 Central Park West
                                New York, New York
22

23      All of the beneficiaries named in decedent's will

24 are living except for Mrs. Michael Chekhov, who died in 1970.

25  ...

26  ...

27  ...

28  ...

1   Notice of hearing of the within petition will be given to all

2   beneficiaries and to the Estate of Mrs. Michael Chekhov.   Since

3   the executor in New York is the same individual as the ancillary

4   executor in California, no notice will be given to the estate

5   in New York.

6

7   DISTRIBUTION:

8

9         Petitioner herein alleges:  that except for fees allowed

10  herein and expenses incidental to distribution, all obligations

11  and liabilities of decedent's estate in the State of California

12  have been determined and paid; that all creditors' claims

13  filed against decedent's estate have been paid or appropriately

14  disposed of, except for the claim of Jose Paraco, as to which

15  a request for deposit with the County Clerk will be made as

16  requested above, and the time for filing creditors' claims has

17  expired; that all known tax liabilities of decedent's estate

18  in this jurisdiction have been determined and paid; and that

19  said estate is now in a position to be finally closed and

20  distributed.

21        The Last Will and Testament of decedent has been duly

22  admitted to probate in the Surrogate's Court of the County of

23  New York, State of New York, where decedent was domiciled at

24  the time of her death, and Aaron R. Frosch has been duly

25  appointed as executor by said Court and qualified therein.  It

26  is necessary, in order that decedent's estate in California may

27  be distributed according to decedent's will, that all of the

28  assets herein be delivered to Aaron R. Frosch, as executor

-16-

1   of decedent's will under the laws of the State of New York.

2            Accordingly, subject to payment of fees allowed

3   herein and expenses of distribution, petitioner herein seeks

4   distribution of all of the assets of decedent's estate lo-

5   cated in the State of California, whether or not described

6   herein or hereafter discovered, and consisting, so far as

7   is known to petitioner, of the following:

8

9            (1)  Clothing and personal effects

10           (2)  Balance of furniture and furnishings

11           (3)  Balance of cash on hand or in

12                savings accounts

13

14   to Aaron R. Frosch, as executor of decedent's will, appointed

15   by the Surrogate's Court, County of New York, State of New

16   York.

17

18           WHEREFORE, petitioner prays:

19

20           1.  That the First and Final Account and Report of

21               petitioner herein be settled, allowed and approved,

22   showing a balance of assets on hand of $26,375.89, of which

23   $24,788.89 constitutes cash on hand or in savings accounts

24   and the balance consists of assets other than cash at the

25   appraised values thereof.

26           2.  That petitioner be directed to deposit the sum

27               of $66.00, which is hereby fixed as the amount

28   ...

-15-

1  of the claim of Jose Parado (or Jose Carareo), with the
2  County Treasurer of the County of Los Angeles, California,
3  to be receipted, accounted for and disposed of in the manner
4  provided in Probate Code § 733.
5

6      3.  That there be allowed to petitioner herein
7          statutory executor's commissions in the sum
8  of $2,969.15; that, in addition, there be allowed to said
9  Aaron R. Frosch extraordinary executor's commissions in
10 the sum of $ 6,000.00  , and that, in addition, there
11 be allowed, as extraordinary commissions, to Inez C. Melson
12 for her services as Special Administratrix the sum of
13 $3,500.00.
14

15     4.  That there be allowed to petitioner's attorneys,
16         Gang, Tyre & Brown, and the attorney for the
17 Special Administrator, Abraham Marcus, the sum of $2,969.15
18 statutory legal fees, allocated $2,226.86 to Gang, Tyre &
19 Brown and $742.29 to Abraham Marcus; that, in addition,
20 there be allowed to Gang, Tyre & Brown extraordinary legal
21 fees in the sum of $12,000.00      .
22

23     5.  That, after payment of fees and commissions
24         allowed herein and expenses incidental to
25 distribution, all of the balance of decedent's estate in
26 California, whether or not described herein or hereafter
27 ...
28 ...

-16-

1  discovered, and consisting, so far as is known, of the assets

2  set forth under the section above captioned "DISTRIBUTION,"

3  be delivered to Aaron R. Frosch, the domiciliary executor of

4  decedent's will appointed by the Surrogate's Court of the

5  County of New York, State of New York; and

6

7     6.  For such other and further order as to the Court

8         may appear proper.

9

10

11  DATED: _April 21_____, 1976.

12

13

14                                    Aaron R. Frosch

15                              Aaron R. Frosch
                                Ancillary Executor

16                                              Petitioner

17

18

19  GANG, TYRE & BROWN

20

21  By Hermione K. Brown

22     Attorneys for Ancillary Executor

23

24

25

26

27

28

1   Estate of Marilyn Monroe;   CASE No. 458,345

2                           DISBURSEMENTS

3

4               Disbursements by Special Adminis-
                tratrix per First and Final Account
5               and Report of Special Administratrix
                and Order Settling First and Final
6               Account, etc., on file in the              $  1,370,731
                above estate
7

8               City National Bank charge against
                decedent's bank account re overdue
9               note payments (August, 1962)                  950.00

10   7/17/63    Del Air Patrol Co., guard services          1,962.75

11   7/17/63    City National Bank creditor's claim
                plus interest and charges                  ,38,516.57

12
     7/17/63    Broker's commission, $4,607.50, and
13              $1,801.79 for taxes, closing charges
                and escrow fees re sale of Helena
14              Drive property                               6,409.29

15   7/23/63    Harold J. Ostly, personal property tax          8.02

16   7/23/63    Appraisal Bureau, Inc., appraisal
                services                                      200.00
17
     7/23/63    Norman Jeffries, labor                        360.00
18
19   7/24/63    Cherie Redmond, wages plus $129.30
                withholding due July, 1962                    689.30
20
     7/24/63    Cherie Redmond, creditor's claim
21              for wages                                     200.00

22   7/25/63    West Los Angeles Patrol, guard service       950.00

23   7/26/63    Gang, Tyre & Brown, reimbursement for
                costs advanced to estate.  (For
24              itemization, see Schedule (1)
                attached.)                                    544.67

25   8/16/63    General Telephone Co.                          77.49
26
27   8/16/63    Southern Counties Gas Co.                     115.11

28   8/16/63    Department Water & Power                       46.49


                        SCHEDULE B
                           (1)

| | | | |
|---|---|---|---|
| 1 | Estate of Marilyn Monroe: | LASC No. 408,935 | |
| 2 | | | |
| 3 | 8/16/63 | Appraisal Bureau, Inc., appraisal services | $ 20.00 |
| 4 | | | |
| 5 | 8/16/63 | Sam S. Tateishi, gardening services | 566.33 |
| 6 | 9/15/63 | Landon Pool Service | 406.52 |
| 7 | 10/3/63 | Edward P. Halavaty, locksmith | 71.55 |
| 8 | 11/20/63 | Department of Employment | 36.00 |
| 9 | 12/10/63 | Bekins Van and Storage | 54.10 |
| 10 | 2/5/64 | Behrendt-Levy Insurance Agency, renewal executor's $5,500 bond | 27.50 |
| 11 | 8/10/64 | Gang, Tyre & Brown, reimbursement for costs advanced to estate (For itemization, see Schedule (1) attached.) | 601.75 |
| 12 | | | |
| 13 | | | |
| 14 | 10/15/64 | Gang, Tyre & Brown, reimbursement for costs advanced to the estate (For itemization, see Schedule (1) attached.) | 1,028.49 |
| 15 | | | |
| 16 | | | |
| 17 | 1/28/65 | Behrendt-Levy Ins. Agency, renewal executor's $5,500 bond | 27.50 |
| 18 | 3/4/65 | Gang, Tyre & Brown, reimbursement for costs advanced to the estate (For itemization, see Schedule (1) attached.) | 23.50 |
| 19 | | | |
| 20 | 5/10/65 | Behrendt-Levy Ins. Agency, premium on executor's $50,000 bond | 201.75 |
| 21 | | | |
| 22 | 8/4/65 | Fidelity Van and Storage | 102.00 |
| 23 | 2/9/66 | Behrendt-Levy Ins. Agency, renewal executor's $5,500 bond | 27.50 |
| 24 | 5/9/66 | Behrendt-Levy Ins. Agency, renewal executor's $50,000 bond | 201.75 |
| 25 | | | |
| 26 | 2/15/68 | Behrendt-Levy Ins. Agency, renewal executor's $5,500 bond | 28.00 |
| 27 | 3/4/68 | United California Bank, bank service charge | 9.00 |
| 28 | | | |

SCHEDULE B

(2)

| | | | | |
|---|---|---|---|---|
| 1 | | Estate of Marilyn Monroe: | LASC No. 458,935 | |
| 2 | | | | |
| 3 | 5/3/68 | Behrendt-Levy Ins. Agency, renewal executor's $50,000 bond | $ | 202.00 |
| 4 | | | | |
| 5 | 3/10/69 | Behrendt-Levy Ins. Agency, renewal executor's $5,500 bond | | 28.00 |
| 6 | | | | |
| 7 | 5/28/69 | Behrendt-Levy Ins. Agency, renewal executor's $50,000 bond | | 202.00 |
| 8 | 1/26/70 | Franchise Tax Board, principal and interest to 2/1/70 | | 2,891.00 |
| 9 | | | | |
| 10 | 3/5/70 | Behrendt-Levy Ins. Agency, renewal of executor's $5,500 bond | | 28.60 |
| 11 | 5/15/70 | Behrendt-Levy Ins. Agency, renewal of executor's $50,000 bond | | 202.00 |
| 12 | | | | |
| 13 | 7/24/70 | Gang, Tyre & Brown, reimbursement of costs advanced to the estate (For itemization, see Schedule (1) attached.) | | 39.65 |
| 14 | | | | |
| 15 | 12/70 | Department of Employment, principal amount of creditor's claim | | 99.18 |
| 16 | 12/70 | Department of Employment, interest on creditor's claim - advanced by Gang, Tyre & Brown and reimbursed by estate | | 49.92 |
| 17 | | | | |
| 18 | | | | |
| 19 | 12/70 | H. B. Thompson (Thompson Electric Co.), creditor's claim | | 111.45 |
| 20 | 12/70 | C & J Howard, Inc., dba Landon Pool Service, creditor's claim | | 37.00 |
| 21 | | | | |
| 22 | 12/70 | Santa Monica Dairy, dba Edgemar Farms, creditor's claim | | 6.06 |
| 23 | 12/70 | Robert K. Goka, dba Frank's Nurseries, creditor's claim | | 59.64 |
| 24 | | | | |
| 25 | 12/70 | Saks Fifth Avenue, creditor's claim | | 389.32 |
| 26 | 12/70 | Raese Period Furniture, creditor's claim | | 313.92 |
| 27 | 12/70 | Vicente Pharmacy, creditor's claim | | 59.57 |
| 28 | ... | | | |

SCHEDULE B

| 1 | Estate of Marilyn Monroe: | LASC No. 458,935 | |
|---|---|---|---|
| 2 | | | |
| 3 | 12/70 | Pacific Telephone, creditor's claim | $ 14.66 |
| 4 | 12/70 | Agnes M. Flanagan, creditor's claim | 849.99 |
| 5 | 12/70 | Dr. Hyman Engelberg, creditor's claim | 470.00 |
| 6 | 12/70 | Malone Studio Service, Inc., creditor's claim | 111.59 |
| 7 | | | |
| 8 | 12/70 | Magnetic Springs Water Co., creditor's claim | 3.60 |
| 9 | 12/70 | Drs. Conti & Steinberg, creditor's claim | 25.00 |
| 10 | | | |
| 11 | 12/70 | General Telephone, creditor's claim | 274.61 |
| 12 | 12/70 | Sam S. Tateishi, creditor's claim | 40.00 |
| 13 | 12/70 | Rand-Fields, Inc., creditor's claim | 205.59 |
| 14 | 12/70 | Don J. Briggs, Inc., creditor's claim | 215.41 |
| 15 | 12/70 | James M. Attley, dba The Adair Co., creditor's claim | 29.85 |
| 16 | 12/70 | A. Ray Tolman, creditor's claim | 150.00 |
| 17 | 12/70 | Allan Snyder, creditor's claim | 1,800.00 |
| 18 | 12/70 | Buzin News Co., creditor's claim | 94.00 |
| 19 | 12/70 | Austin A. Innes, creditor's claim | 44.17 |
| 20 | 12/70 | Dr. Ralph R. Greenson, creditor's claim | 1,400.00 |
| 21 | 12/70 | Francis-Orr Stationery Co., creditor's claim | 5.55 |
| 22 | | | |
| 23 | 12/70 | Jack M. Ostrow, creditor's claim | 2,500.00 |
| 24 | 12/70 | Edward F. Halavaty (A-1 Lock & Safe Co.), creditor's claim | 17.28 |
| 25 | | | |
| 26 | 12/70 | The Arthur P. Jacobs Co., creditor's claim | 797.85 |
| 27 | 12/70 | Mura Bright, creditor's claim | 1,050.67 |
| 28 | ... | | |

1  Estate of Marilyn Monroe:   LASC No. 495,235

2

3  12/70        Norman Jeffries, creditor's claim              $    120.00

4  6/7/72       Fidelity Van & Storage Co. Inc. -
               storage charges 5/23-6/23/72                        76.50

5

6  7/24/72      Allied Van Lines - storage
               charges 6/23-8/23/72                                51.00

7
   7/27/72      Bank service charges                               .60
8
   9/1/72       Behrendt-Levy Ins. Agency -
9               executor's bond                                   202.00

10  8/25/72     Bank checks                                          6.32

11  8/25/72     Bank service charges                                .80

12  9/12/72     Allied Van Lines -
               storage charges 8/23-9/23/72                        25.50

13
   10/12/72     Bank service charges                                .60
14
   10/12/72     Allied Van Lines - storage charges
15             9/23-10/23/72                                        25.50

16  10/27/72    Allied Van Lines - storage charges
               10/23-11/23/72                                       25.50

17
   10/27/72     Bank service charges                                .60
18
   11/29/72     Allied Van Lines - storage charges
19             11/23-12/23/72                                       25.50

20  11/29/72    Gang, Tyre & Brown - costs                          27.01
               (see Schedule (1) attached)
21
   11/29/72     Bank service charges                                .60
22
   12/31/72     Bank service charges                                .70
23
   1/3/73       Allied Van Lines - storage charges
24             12/23/72-1/23/73                                     25.50

25  1/27/73     Bank service charges                                .60

26  1/27/73     Allied Van Lines - storage charges                 25.50
               1/23-2/23/73
27  ...

28  ...

1  Estate of Marilyn Monroe:   LASC No. 458,935

2

| 3 | 2/16/73 | Behrendt-Levy Ins. Agency,<br>executor's bond | 29.00 |
| 4 | 2/27/73 | Bank service charges | .70 |
| 5 | | | |
| 6 | 3/7/73 | Allied Van Lines - storage charges<br>2/23-3/23/73 | 25.50 |
| 7 | 3/30/73 | Bank service charges | .60 |
| 8 | 4/30/73 | Bank service charges | .90 |
| 9 | 5/25/73 | Bank service charges | .90 |
| 10 | 6/4/73 | Bank charge for bounced check | 3.00 |
| 11 | 6/30/73 | Bank service charges | .60 |
| 12 | 7/29/73 | Bank service charges | .60 |
| 13 | 8/30/73 | Bank service charges | .60 |
| 14 | 9/27/73 | Bank service charges | .60 |
| 15 | 10/28/73 | Bank service charges | .60 |
| 16 | 11/28/73 | Bank service charges | .60 |
| 17 | 12/28/73 | Bank service charges | .60 |
| 18 | 1/27/74 | Bank service charges | .60 |
| 19 | 2/27/74 | Bank service charges | .60 |
| 20 | 3/24/74 | Bank service charges | .60 |
| 21 | 4/30/74 | Bank service charges | .60 |
| 22 | 5/30/74 | Bank service charges | .60 |
| 23 | 6/30/74 | Bank service charges | .60 |
| 24 | 7/18/74 | Gang, Tyre & Brown - costs<br>(see Schedule (1) attached) | 45.35 |
| 25 | 7/30/74 | Bank service charge | .60 |
| 26 | 8/30/74 | Bank service charge | .70 |

27

28  . . .

1  Estate of Marilyn Monroe:    LASC No. 458,935

2

| | | | |
|---|---|---|---|
| 3 | 9/30/74 | Bank service charges | .60 |
| 4 | 10/30/74 | Bank service charges | .60 |
| 5 | 11/30/74 | Bank service charges | .60 |
| 6 | 12/30/74 | Bank service charges | .60 |
| 7 | 1/30/75 | Bank service charges | .60 |
| 8 | 2/30/75 | Bank service charges | .60 |
| 9 | 3/30/75 | Bank service charges | .60 |
| 10 | 4/21/75 | Frank B. Hall & Co. - executor's bond | 202.00 |
| 11 | 4/30/75 | Bank service charges | .60 |
| 12 | 5/30/75 | Bank service charges | .70 |
| 13 | 6/30/75 | Bank service charges | .60 |
| 14 | 7/30/75 | Bank service charges | .60 |
| 15 | 8/30/75 | Bank service charges | .60 |
| 16 | 9/9/75 | Franchise Tax Board - partial payment - California Income Tax | 20,000.00 |
| 17 | 9/30/75 | Bank service charges | .70 |
| 18 | 10/30/75 | Bank service charges | .60 |
| 19 | 11/30/75 | Bank service charges | .60 |
| 20 | 12/30/75 | Bank service charges | .60 |
| 21 | 1/30/76 | Bank service charges | .60 |
| 22 | 2/9/76 | Franchise Tax Board - balance of payment for California Income Tax | 32,139.73 |
| 23 | 3/15/76 | Bank service charges | .60 |
| | | Total Disbursements | $ 124,921.18 |

26  . . .

27  . . .

28  . . .

SCHEDULE B
(7)

COSTS ADVANCED BY GANG, TYRE & BROWN

Statement - July 26, 1963:

| | |
|---|---|
| Los Angeles City Health Department for Death Certificates | $ 16.90 |
| Telegram 8/15/62 - New York | 9.53 |
| Telephone - New York - Eight Calls | 71.29 |
| Los Angeles County Clerk - Filing Ancillary Letters | 15.50 |
| Metropolitan News - Publishing fees | 33.00 |
| Metropolitan News - Publishing re: Sale of House | 49.09 |
| Messengers | 16.10 |
| Certified Order Admitting Foreign Will | 1.00 |
| Letters Testamentary | 5.00 |
| Bond - Behrendt-Levy Insurance Agency | 27.50 |
| James M. Hall - Appraiser | 96.72 |
| Additional Bond - Behrendt-Levy Insurance Agency | 204.50 |
| Copy of MCA claim | 2.00 |
| Copy of Order Confirming Sale | 2.09 |
| | $ 544.67 |

Statement - August 10, 1964:

| | |
|---|---|
| Behrendt-Levy Insurance Agency - Bond renewal | 201.75 |
| Eunice Murray - Salary - housekeeping services August 5, 1962 to August 18, 1962 | 400.00 |
| | 601.75 |

Statement - October 15, 1964:

| | | |
|---|---|---|
| Fidelity Van & Storage - Furniture moving and storage | 1,028.45 | 1,028.45 |

...

SCHEDULE (1)

(1)

1   COSTS ADVANCED BY GANG, TYRE & BROWN

2   Statement - March 4, 1965:

3          Copies of exhibit re:  MCA Claim        $   23.50     $   23.50

4   Statement - July 1, 1970:

5          Order Fixing Inheritance Tax                .50

6          Photostatic copy of Court Register          3.00

7          REA Express - shipping personal effects    27.15

8                                                                          30.65

9   Statement - November 29, 1972:

10          Telephone charges - 1972                  27.01           27.01

11   Statement - July 8, 1974:

12          Telephone, telegraph & messenger
             charges - 1973-74                        17.35

13
             Frank B. Hall Insurance Agency -
14           bond renewal                             28.00

                                                                       45.35

15

16

17

18

19

20

21

22

23

24

25

26

27

1  Estate of Marilyn Monroe:       LASC No. 458,935

2

3                        GAINS ON SALES

4

5  Sale of Helena Drive property, real and
6  personal property sold as a unit:

7     Gross sale price as a unit                              $ 92,150.00

8     Appraised value:  real property    $ 87,000.00
9                       personal property      500.00          87,500.00

10                       Gain on Sale                          $  4,650.00

11

12  Sale price additional personal property:

13     Sale price                          $  1,558.00

14     Appraised value                        1,089.00

15                       Gain on Sale                             469.00

16

17

18                    TOTAL GAINS ON SALES                     $  5,119.00

19

20

21

22

23

24

25

26

27

1  Estate of Marilyn Monroe:    LASC No. 458,935

2

3              ASSETS ON HAND AT MARCH 15, 1976

4                                                        ―

5  Clothing and personal effects              $    690.00

6  Balance of furniture and furnishings            897.00

7  Gibraltar Savings and Loan savings account    4,682.23

8  Brentwood Savings and Loan savings account   20,081.16

9  Cash on hand                                     25.50

10            Total Assets on Hand              $ 26,375.89

11

12

13

14

15

16

17

18

19

20

21

22

23

25

26

27

28

                    SCHEDULE  D

1  Estate of Marilyn Monroe:  LASC No. 459,935

2

3                  ESTATE ACCOUNTED FOR

4

5  Inventory and Appraisement                     $ 92,781.00

6  Income receipts (interest on savings
7                  accounts)                        19,057.39

   Gains on sales                                    5,119.00
8

9                  TOTAL ESTATE ACCOUNTED FOR     $116,957.39

10

11

12

13

14                Computation of Statutory Fees

15

16  2t x 116,957.39 = 2,339.15

17         plus   630.00

18         $ 2,969.15

19

20

21

22

23

25

26

27

28

                        EXHIBIT II

1  Estate of Marilyn Monroe:          LASC No. 458,935

2

3                    STATEMENTS RE ADDITIONAL FEES

4

5          In order to assist the Court in understanding the extent,

6  detail and urgency of the services rendered by the ancillary

7  executor, the special administratrix and the attorneys for

8  the ancillary executor, in connection with the requests for

9  fees set forth below, petitioner points out the following:

10         Decedent was a world-famous motion picture actress.

11  She died suddenly and unexpectedly.  At the time of her

12  death, she was in the process of remodeling a house at

13  12305 5th Helena Drive, Los Angeles, California, which she

14  had recently acquired.  There was a substantial trust deed

15  encumbrance on the property.  There was no cash available in

16  California.  There was not sufficient cash available at her

17  domicile in New York to meet all of her obligations.  There

18  were 35 creditors' claims filed in the ancillary administra-

19  tion in California alone.  There were mobs of curiosity

20  seekers who came to the house, many of whom sought to buy

21  or remove curios and memorabilia.  There was no family member

22  who could supply any assistance in the supervision of the

23  decedent's affairs or in taking over any of her responsi-

24  bilities.

25         It is against this background that the requests for fees

26  in this estate must be viewed.

27

28



1 Estate of Marilyn Monroe:      LASC No. 458,935

2

3    A.   EXTRAORDINARY SERVICES OF ANCILLARY EXECUTOR

4

5           The ancillary executor advised and consulted with

6 respect to all the matters set forth in the statement regard-

7 ing extraordinary attorneys' fees set forth below.  In this

8 connection, further, said attorneys consulted with the

9 ancillary executor with respect to all decisions throughout

10 the entire period of almost fourteen years that this estate

11 has been in the process of administration.  The ancillary

12 executor made four trips to California during said period of

13 time to supervise the handling of decedent's affairs in this

14 state.

15

16           Without limiting the generality of the foregoing,

17 the ancillary executor's extraordinary services with respect

18 to California administration specifically included:  (1) advice,

19 consultation and decision-making with respect to the sale of

20 the real and personal property, as set forth above in the Petition

21 to which this Exhibit is attached; (2) assistance in determina-

22 tion of all matters relative to the California Inheritance Tax

23 Affidavit, including location of witnesses and procuring

24 their affidavits as to decedent's intention with regard to her

25 residence in California; and (3) consultation, review, fact-

26 finding and decision-making with respect to the claims and

27 litigation in respect of the California fiduciary income tax

28 ...

EXHIBIT ...

 

1   Estate of Marilyn Monroe:                CASC No. 458,925

2

3   liability of the estate more particularly described in

4   Section C of this Exhibit III.

5          Petitioner estimates that his said extraordinary

6   services, over the period of almost fourteen years, required

7   more than one hundred forty (140) hours.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT III
(3)

1    Estate of Marilyn Monroe:          LASC No. 458,935

2

3          C.    EXTRAORDINARY SERVICES OF GANG, TYRE &

4                BROWN, ATTORNEYS FOR ANCILLARY EXECUTOR

5

6          1.    Extraordinary services in connection with

7                the preservation of assets:

8                Upon the death of decedent, petitioner's attorneys

9    immediately examined decedent's property; cooperated in

10   supplying information in connection with the coroner's inquest;

11   handled conferences with the press and media with reference

12   to the decedent and her affairs; negotiated and supervised

13   the disposition of decedent's pet dog; arranged for continuing

14   housekeeping services during the period immediately following

15   decedent's death and for secretarial services to be rendered in

16   replying to the thousands of letters (literally) received fol-

17   lowing decedent's death; arranged to have private detectives

18   guard decedent's home day and night; arranged for the bank

19   which held the encumbrance on the property to advance funds

20   and take no steps to declare a default until such time as

21   moneys could be provided through a sale of the property; and

22   arranged for the Special Administratrix to be appointed so

23   that any loss or waste to the estate could be minimized.

24                Petitioner's attorneys allege that they expended

25   more than 25 hours in connection with the above services, all

26   of which were of an emergency nature.

27   ...

28   ...

EXHIBIT III
(18)

1  Estate of Marilyn Monroe:    LASC No. 466,215

2

3       2.  Sale of Real Property:

4            After the appointment of the ancillary executor,

5  petitioner's said attorneys supervised the sale of decedent's

6  home and some of the personal property located therein.  This

7  involved the preparation and publication of a Notice of Sale

8  of Real and Personal Property As a Unit for Private Sale;

9  preparation of a bid form with respect to the property, copies

10  of which were circulated among a number of real estate broker-

11  age houses; conferences with Mrs. Nelson, who was actually

12  showing the premises to prospective purchasers; negotiations

13  with the ultimate bidder to obtain the best possible purchase

14  price; preparation of Return of Sale of Real and Personal

15  Property as a Unit; attendance at the court hearing thereon;

16  preparation of the Order Confirming Sale and the Executor's

17  Deed, and following through with respect to all of the details

18  of the escrow until the transaction was finally complete.

19            Petitioner's attorneys estimate that they expended

20  not less than twenty (20) hours in connection with the foregoing.

21       3.  Disposition of furniture and furnishings

22            Since there were no special provisions made for

23  the furniture and furnishings of the decedent and since it

24  was believed that many of them would have a substantial

25  value, either intrinsically or because of association with

26  the decedent, it was necessary to specifically inventory and

27  ...

28  ...

EXHIBIT III
(19)

1  Estate of Marilyn Monroe:    LASC No. 498,935

2

3  arrange for storage of all of the items involved. However,

4  before the furniture and furnishings were removed, the pur-

5  chaser of the real property requested the opportunity of

6  buying certain of the items that were specifically designed

7  for use in the house. Petitioner's attorneys, therefore,

8  met with the buyer, so that the latter could designate which

9  items he desired. Thereafter, petitioner's attorneys had

10  these items separately appraised so that they could be sold

11  at not less than the appraised value, and prepared the

12  Return of Sale of Personal Property and the Order based

13  thereon, and drew the necessary documents to complete the

14  transaction. Said attorneys then arranged with the Special

15  Administratrix so that prior to delivery of possession of the

16  house to the buyer, all the remaining items of furniture and

17  furnishings could be boxed and stored with a warehouse.

18          Petitioner's said attorneys estimate that they

19  expended ten (10) hours in connection with the foregoing ser-

20  vices.

21          4.  Extraordinary Services Re Creditors' Claims:

22          Following decedent's death, there were thirty-five

23  creditors' claims filed against the estate in California.

24  While petitioner's attorneys recognize that the processing

25  of creditors' claims is part of the normal duties of admin-

26  istration, for which statutory fees are allowed, said

27  ...

28  ...

1   Estate of Marilyn Monroe:        LASC No. 459,935

2

3   attorneys point out that, in this estate, a portion of the

4   services were extraordinary in that there was no one alive in

5   a position to advise as to the accuracy of the various claims

6   or the extent of decedent's outstanding obligations.  As a

7   consequence, said attorneys had to make independent investiga-

8   tions with respect to said claims, which involved, among

9   other things, separate meetings with many of the claimants

10  to examine into the nature of the claim.

11          Furthermore, in connection with the claim of Mara

12  Bright, the interior decorator, it was necessary to analyze

13  a large number of items to determine whether there was a

14  firm commitment or merely a proposed estimate which could

15  be canceled.  In this connection, petitioner's attorneys

16  arranged to cancel an order for a rug from Mexico, which had

17  been ordered and woven to size in Mexico and was at that time

18  being held for delivery.  In addition, there were demands

19  from the Los Angeles Bureau of Customs regarding a carton

20  containing a specifically constructed chest, which the Bureau

21  of Customs was holding for transportation and storage charges.

22  Upon investigation, it appeared that the decedent had paid

23  $360.00 for the chest and that the total charges to redeem

24  amounted to approximately $300.00.  After several consulta-

25  tions with the interior decorator, petitioner's attorneys

26  recommended to the ancillary executor that the chest not be

27  ...

28  ...

EXHIBIT III
(33)

1  Estate of Marilyn Monroe;    LASC No. 458,915

2

3  redeemed but that the Bureau of Customs be allowed to sell

4  it for the charges.

5        In connection with the creditor's claim of MCA

6  Artists, Ltd., said attorneys were required to review

7  extensive agency contracts in order to advise the ancillary

8  executor as to the basis for the claim and its propriety.

9  Subsequently, when the time came to pay the claims, said

10  attorneys suggested to the ancillary executor the arrangement

11  whereby the creditor's claim of MCA Artists, Ltd. could be

12  paid out of the domiciliary probate estate in New York, so

13  that the claim, including the contingent portion thereof,

14  could be released in California, the ancillary administration

15  be released in California and the administration settled.

16  Said attorneys, further, handled the negotiations with respect

17  thereto, insofar as the California representatives of the

18  claimant were involved.

19        Petitioner's said attorneys estimate that their services

20  in connection with the handling of those aspects of the

21  creditors' claims set forth above, over and apart from the

22  normal services of handling creditors' claims, involved ap-

23  proximately twenty-five (25) hours of time.

24  ...

25  ...

26  ...

27  ...

28  ...

EXHIBIT III
(22)