UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

SHAW FAMILY ARCHIVES, LTD., BRADFORD
LICENSING, INC., JAMES E. DOUGHERTY,
VALHALLA PRODUCTIONS, LLC., EDITH
MARCUS, and META STEVENS,

          Plaintiffs/Consolidated Defendants,

          -against-

CMG WORLDWIDE, INC., an Indiana Corporation
and MARILYN MONROE, LLC, a Delaware
Limited Liability Company,

          Defendants/Consolidated Plaintiffs.

-------------------------------------------------------------------X

: Index No. 05 CV 3939 (CM)

: Honorable Colleen McMahon

# PLAINTIFFS' SUPPLEMENTAL STATEMENT OF FACTS IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiffs Shaw Family Archives, Ltd., Edith Marcus, Meta Stevens, and Bradford Licensing, Inc. (the "Shaw Family"), pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Southern District of New York, respectfully submit the following Supplemental Statement of Undisputed Facts:

### Aaron Frosch's Statements That Ms. Monroe Died a New York Resident and New York Domiciliary and Judicial Reliance Thereon

1.      On August 5, 1962, Ms. Marilyn Monroe died in the State of California, where she was <u>temporarily</u> staying while she worked on the film "Something's Got to Give." Serbagi Decl. ¶ 2, Ex. A.

2.      On October 26, 1962, Mr. Aaron Frosch, who was the Executor and Trustee of the Estate of Marilyn Monroe, filed a Notice of Probate and Will with the New York Surrogate's

Court. Serbagi Decl. ¶ 3, Ex. B. This document refers to Ms. Monroe as "late of the City of New York, County of New York, and State of New York." Id.

3.      Mr. Frosch drafted Ms. Monroe's will in New York and, on January 14, 1961, Ms. Monroe executed the Will in New York. Serbagi Decl. at ¶ 4, Ex. C, MM 0009361-9364.

4.      The New York Surrogate's Court admitted the Will to probate on October 30, 1962. Serbagi Decl. ¶ 5, Ex. D, MM 0001543-1544.

5.      On December 17, 1962, Mr. Frosch filed a Petition for Probate of Foreign Will and Ancillary Letters Testamentary in California Superior Court. Serbagi Decl. ¶ 6, Ex. E, MM 0009381-9389. In that document, Mr. Frosch stated to the Court that "[t]he Will was executed in conformity with the laws of the State of New York, the place where the Testatrix was domiciled at the time of her death . . ." Id. at MM 0009382. Mr. Frosch made this statement to the Surrogate's Court, not only as Executor and Trustee of the Estate, but also based on his longstanding professional relationship with Ms. Monroe.

6.      By petition dated February 19, 1963, Mr. Frosh represented to the New York Surrogate's Court "that prior to the decedent's death, the claimant, Weissberger & Frosch, represented the decedent in all her legal matters of every kind or nature." Serbagi Decl. ¶ 7, Ex. F, MM 0009337.

7.      Mr. Frosch's firm represented Ms. Monroe in her divorce with her ex-husband, Arthur Miller. Serbagi Decl. ¶ 8, Ex. G, MM 0009437.

8.      On March 14, 1963, Mr. Frosh filed an Inventory and Appraisement with the California Superior Court. Serbagi Decl. ¶ 9, Ex. H, MM 0009344-9346. The only property listed by the appraiser that conducted the inventory was Ms. Monroe's real property in

California, cash, clothing, and furniture, for a total of $92,781. Id. at MM0009345-9346. The appraiser did not list any intangible property such as stocks and movie royalties.

9.      On July 27, 1964, Mr. Frosch filed a Petition for Designation of Appraiser with the New York Surrogate's Court. Serbagi Decl. ¶ 10, Ex. I. In that document, Mr. Frosch repeatedly stated that that while Ms. Monroe died in California, she died a "resident of New York." Id. at 1. Mr. Frosch valued the approximate value of the Estate at $846,150.00. Id.

10.     By letter dated March 4, 1966, Mr. Frosch filed with the California Inheritance Tax Appraiser an affidavit by Mr. Frosch and numerous other friends and employees of Ms. Monroe, all of whom detailed numerous facts in support of the Estate's position that Ms. Monroe died a New York domiciliary, including testimony that Ms. Monroe intended to make New York her permanent home after the completion of the film "Somethings Got to Give." Serbagi Decl. ¶ 11, Ex. J MM 0009297-9298; MM 0009350-60. Mr. Frosch filed these affidavits in order to demonstrate that Ms. Monroe was a New York resident so as to avoid paying "inheritance taxes or taxes on the corpus of the estate" Id. While all Mr. Frosch needed to prove was that Ms. Monroe died a non-resident of California, he submitted numerous affidavits, including his own, that demonstrated that Ms. Monroe died a New York domiciliary. Id.

11.     On February 18, 1965, Mr. Frosh filed a Petition with the New York Surrogate's Court to increase the bond for the Estate, in which he again represented to the court that Ms. Monroe died "late of New York." Serbagi Decl. ¶ 12, Ex. K, MM 0004802-4805.

12.     On February 25, 1965, the New York Surrogate's Court granted Mr. Frosch's Petition. Serbagi Decl. ¶ 13, Ex. L, MM 0004801.

13.    On August 1, 1966, California Franchise Tax Board filed a Creditor's Claim of $3,271.68 with the New York Surrogate's Court against the Estate's assets in New York. Serbagi Decl. ¶ 14 Ex. M, MM 0000021-23.

14.    By Order dated April 5, 1967, the California Inheritance Tax Appraiser accepted Mr. Frosch's argument that Ms. Monroe died a New York resident and determined the tax on the Estate property in California to be only $777.63.   Serbagi Decl. ¶ 15, Ex. N, MM 0009206-0009205.

15.    On May 29, 1969, Mr. Frosh filed another Petition with the New York Surrogate's Court, requesting that New York State (not California) impose taxes on the gross estate of Marilyn Monroe, including tangible and intangible property.   Serbagi Decl. ¶ 16, Ex. O, MM 0000392-398.  Unlike California, the New York gross estate included stocks, insurance policies and royalty payments.  Id. at MM0000397.  Mr. Frosch again represented to the court that Ms. Monroe died a resident of New York.  Id. at MM 0000392.

16.    Based on Mr. Frosch's representations that Ms. Monroe died a New York resident, the Surrogates Court sent notifications to Estate creditors on October 14, 1969, that Ms. Monroe died "late of the County of New York."  Serbagi Decl. ¶ 17, Ex. P, MM 0000408.

17.    On December 30, 1969, the New York Estate Tax Appraiser sent to the Surrogate's Court of New York a report that detailed the value of the gross estate and stated that Ms. Monroe "died a resident of the State of New York."  Serbagi Decl. ¶ 18, Ex. Q.  The assets of the New York gross estate consisted, in part, of stocks and bonds valued at $61,250.19 and royalties from films valued at $764,461.  Id. at 2.

18.     By Order dated January 20, 1970, the New York Surrogates Court, relying on the Tax Appraiser's report, filed an Order identifying the total tax due on the gross estate.  Serbagi Decl. ¶ 19, Ex. R, MM 0000386.

19.     On or before December 7, 1972, the California Franchise Tax Board found that the estate of Marilyn Monroe owed back taxes on royalty income it received on the films "Some Like it Hot" and the "Misfits" ("Percentage Payments").  Serbagi Decl. ¶ 20, Ex. S, MM 0009213.  On December 7, 1972, Mr. Frosch appealed to the California Board of Equalization. Id. at MM 0009211-9252.  The issue before the court was whether the Estate would have to pay taxes on the Percentage Payments.  Id. at MM 0009212-9213.  Mr. Frosch argued that the Estate should not have to pay California taxes on these payments because Ms. Monroe died a New York resident.  As stated by Mr. Frosch:

> Because Miss Monroe died a resident of New York, the value at the date of death of her contractual rights to Percentage Payments under the UA agreements was included in the New York estate for purposes of New York estate taxes, and estate taxes were paid to New York based on this valuation . . . Because the FTB has conceded the estate is a non-resident of California, it is only entitled to tax specific income from sources within this State.

Id. at MM 0009213-9214.  Mr. Frosh argued that because Ms. Monroe died a New York resident and the California Franchise Tax Board accepted that argument, the Estate should not have to pay taxes of the Percentage Payments in California.  In the alternative, Ms. Frosch argued that even if California is entitled to tax the Percentage Payments, the Estate should be entitled to a credit for taxes paid to New York on grounds that the California tax code granted a credit under circumstances where an individual is a resident of California and another state.  Id. at MM 0009221.  Mr. Frosch also stated that New York tax rates exceeded California rates for all relevant years.  Id.

5

20.    Prior to the resolution of Mr. Frosch's appeal to the California Board of Equalization, photographer Mr. Tom Kelly moved against the Estate by Order to Show Cause before the New York County Surrogate's Court, demanding that Mr. Frosch return certain color transparencies of the decedent. Serbagi Decl. ¶ 21, Ex. T at MM0007628-7627. Mr. Kelly characterized Ms. Monroe as domiciled in New York at the time of her death. Id. at MM 0007625.

21.    Mr. Frosch never contested Ms. Kelly's representation that Ms. Monroe died a New York domiciliary. In fact, he implicitly recognized that it was true by stating to the court that (i) Mr. Kelly is entitled to the return of the transparencies and (i) "that Decedent has no rights of privacy and her Estate has no exclusive rights to her image." Serbagi Decl. ¶ 22, Ex. U at MM 0000240-241.

22.    On or about April 22, 1975, the California Board of Equalization ("BOE") rendered its decision on Mr. Frosch's December 7, 1972 appeal on the issue of whether the Estate would have to pay California taxes of the Percentage Payments of "Some Like it Hot" and "The Misfits." Serbagi Decl. ¶ 23, Ex. V at MM 0000087-98. The BOE denied Mr. Frosch's appeal and held that the Estate owed taxes on the Percentage Payments because Ms. Monroe performed those services in California. Id. at MM 0000089. The BOE repeatedly held that Ms. Monroe was not a California resident and that the set off would only apply if Ms. Monroe has also been a California resident. Id. at MM 0000096. In particular, the BOE characterized Mr. Frosh as making the argument that Ms. Monroe died a New York domiciliary. Id. at MM 0000096. The BOE characterized Mr. Frosch as arguing that the Estate should not have to pay California taxes on the Percentage Payments because it is an intangible contract right whose "situs . . . was in the state of appellant's domicile or residence," and "the income was in

6

appellant's domiciliary state, New York." Id. at MM 0000094.  The BOE rejected Mr. Frosch's argument and stated that, although it is true that the Estate is a different taxpayer than Ms. Monroe, "for this purpose, as for many other, it stands in the shoes of its decedent."  Id. at MM 0000095.  The BOE also rejected Mr. Frosch's argument that the Estate is entitled to a credit against taxes if paid in New York because "Ms. Monroe having been a [New York] resident at the time of her death, appellant is not a resident of California and is not entitled to the tax credit authorized by section 18004."  Id. at MM 0000096.

23.     On May 21, 1976, Mr. Frosch filed a First and Final Account of Ancillary Executor with the Superior Court of the Sate of California, County of Los Angeles.  Serbagi Decl. at ¶ 24, Ex. W.  In this filing, Frosch sought, among other things, statutory and extraordinary executor's commissions and attorney's fees.  Id. at 1.  Throughout this document, Mr. Frosch refers to Ms. Monroe as being a New York resident.  Mr. Frosch also referred to the affidavits of non-residence he filed in California and asserted he obtained a determination that Ms. Monroe was a non-resident of California at the time of her death.  Id. at 8.  In this document, Mr. Frosch stated that since all creditors to the Estate of Marilyn Monroe were to be paid after the final accounting, and because Ms. Monroe's Will was probated in New York, "where decedent was domiciled at her death," that all of the assets be delivered to him, as executor, so that her assets could be distributed pursuant to the decedent's will "under the laws of the State of New York."  Id. at 14.

24.     On or about August 14, 1980, Mr. Frosch filed a Petition for Final Accounting in the New York Surrogate's Court.  Serbagi Decl. ¶ 25, Ex. X, MM 0001310-1319.  Mr. Frosch told the court that Ms. Monroe died a New York domiciliary.  Id. at MM 0001310.  He also referred to a State of California proceeding, in which he argued that Ms. Monroe died a

California resident.  Id. at MM0001315.   Again, Frosch stated that he successfully convinced the State that Ms. Monroe died a New York resident, which he needed to do in order to avoid paying California taxes on the corpus of the estate.  Id. at MM0001315.

**Anna Strasberg's Judicial Representations That Ms. Monroe Died a New York Resident and Domiciliary and Judicial Reliance Thereon**

Ms. Strasberg's Representations to the New York County Surrogate's Court

25.    Aaron Frosch died on April 29, 1989.  On or about July 7, 1989, Ms. Anna Strasberg filed a "Petition for Letters of Administration" with the Will Annexed with the New York Surrogate's Court.  Serbagi Decl. ¶ 26, Ex. Y, at MM 0000025-27.  Ms. Strasberg represented that Ms. Monroe died a New York resident.  Id. at MM 0000026.

26.    On July 21, 1989, the New York Surrogate's Court granted Ms. Strasberg's Petition.  Serbagi Decl. ¶ 27, Ex. Z, MM 0000423-424.

27.    On July 28, 1989, by Order to Show Cause, Ms. Strasberg filed a Petition for the Construction of Wills with the New York Surrogate's Court.  Serbagi Decl. ¶ 28, Ex. AA, MM 0000241-0250.  Ms. Strasberg owned seventy-five percent of the residuary Estate.   She filed the Petition to obtain a ruling as to the remaining twenty-five percent that Ms. Monroe left Ms. Marianne Kris to be "used by her for the furtherance of he work of such psychiatric institutions or groups as she shall select." Id. at MM 0000246.   Ms. Strasberg argued for a construction of the Kris will that would have precluded twenty-five percent of the Estate to be assigned to further Kris' work in the area of psychiatry, as Ms. Monroe intended.  Additionally, Ms. Strasberg request that the Court determine whether the Anna Freud Centre was the same entity which Dr. Kris had devised her rights in Ms. Monroe's Estate.  Id. at 0000248-249.  In support of Ms. Strasberg's position, she argued that Ms. Monroe died a New York domiciliary.  Id. at MM 0000243.  Ms. Strasberg stated:

> The Decedent died on August 5, 1962, <u>domiciled in the City and State of New York</u>, leaving a last Will and Testament dated January 14, 1961 which was admitted to probate in this Court on October 30, 1962, and Letters Testamentary were issued to Aaron R. Frosch, the Executor named in the Will, on October 30, 1962.

<u>Id</u>. at MM 0000243-44 (emphasis added).

28.    In an undated decision and decree dated April 30, 1990, the New York Surrogate's Court declined to construe the Monroe and Kris Wills in the manner Ms. Strasberg would have preferred, and awarded the remaining twenty-five percent of the Estate to the Anna Freud Centre. Serbagi Decl. ¶29, Ex. BB  Significantly, the court cited and applied New York statutory and case law to construe both wills. <u>Id</u>. at 2-4. By applying New York law to the construction of Ms. Monroe's will, it adopted and relied on Ms. Strasberg's representation that Ms. Monroe died a New York domiciliary.

<u>The Hawaii Federal District Court Action</u>

29.    On September 16, 1992, an individual by the name of Nancy Miracle a/k/a Nancy Mariscalo Green ("Ms. Miracle"), sued Ms. Strasberg in her capacity as Administratrix of the Estate, in the United States District Court for the District of Hawaii. Serbagi Decl. ¶ 30, Ex. CC, MM 0001525-1528. Ms. Miracle claimed that she was entitled to a fifty percent share of Ms. Monroe's estate as a pretermitted heir. <u>Id</u>. at MM 0001527.

30.    In her memorandum in support of her motion to dismiss the Complaint, Ms. Strasberg repeatedly argued that Ms. Monroe died a <u>New York domiciliary</u>. Serbagi Decl. ¶ 31 Ex. DD, MM 0001510-1544. In particular, in support of Ms. Strasberg's position that choice of law principles require the application of New York law, Ms. Strasberg stated:

> Under common law and the Hawaii Uniform Probate Code, then, the decedent's domicile at the time of her death determines what law will be applied. Plaintiff has not disputed the Surrogates determination that Marilyn Monroe was a New York Domiciliary

> at the time of her death. This Court is asked to take judicial notice
> of the decision of New York County Surrogate's Court dated
> March 5, 1990 and the finding contained therein that Marilyn
> Monroe executed her Last Will and Testament on January 14,
> 1961.

Id. at MM 0001514 (emphasis added).

31.    Ms. Strasberg strenuously argued in her motion papers that the court should

dismiss Ms. Miracle's case because the New York State Decedent Estate Law did not permit

recovery for children born before a testator executed her will. Id. at MM 0001515-16. Ms.

Miracle was born in 1946 and Ms. Monroe executed her will on January 14, 1961. Thus,

whether or not the Court applied New York law was central to the motion.

32.    Ms. Strasberg also argued that the Hawaii District Court lacked personal

jurisdiction over her because she had lacked sufficient contacts with the forum. Again, Ms.

Strasberg relied, at least in part, on her position that Ms. Monroe died a New York domiciliary.

Ms. Strasberg stated to the Court:

> The claim is to a share of the decedent's estate, allegedly as a
> pretermintted heir. Yet plaintiff concedes that that she herself was
> born in New York, the decedent's will was admitted to probate in
> New York (based upon at least one finding that the decedent was
> domiciled in New York at her death) and there is no claim that the
> decedent possessed any property in Hawaii at her death.

Id. at MM 0001522.

33.    Ms. Miracle argued that California law should apply to her claims. Serbagi Decl.

¶ 32, Ex. EE at MM 0001417. Ms. Strasberg argued against that position.

34.    On or about November 24, 1992, Ms. Strasberg filed a motion in opposition to

Ms. Miracle's motion to conduct limited discovery prior to the Court's determination of the

motion to dismiss. Serbagi Decl. ¶ 32, Ex. FF, MM 0001469-1473. Ms. Miracle stated that she

needed to conduct discovery on the issue of Ms. Monroe's domicile at the time of her death. In opposition to that request, Ms. Strasberg stated:

> The first non-issue – decedent's domicile at death – was not raised as an issue in plaintiff's pleading; counsel's speculation that the decedent 'may not have been domiciled in New York at the time of her death . . .' is unsupported, is not an issue in plaintiff's pleading, and, in fact, is implicitly contrary to the New York Surrogate's Court Decree admitting the will to probate in New York. Even if judged to be of some relevance, plaintiff may not put the "domicile at death" issue into play by mere speculation in his affidavit . . . the request for a continuance in order to do discovery should also be denied because the discovery cannot possible defeat the motion to dismiss.

Id. at MM 0001472-73.

The Order of the Hawaii District Court

35.    By Order dated December 23, 1992, the Court granted Ms. Strasberg's motion to dismiss the Complaint. Serbagi Decl. ¶ 34, Ex. GG MM 0000268-0000282. The court not only adopted Ms. Strasberg's representation that Ms. Monroe died a New York domiciliary, it played a significant role in the basis of the ruling. Turning to Ms. Strasberg's motion for failure to state a claim, the court held that the choice of the applicable law is "critical" because while New York law would bar Ms. Miracle's claims, California law would not. Id. at MM 0000279-281. In support of its position that New York law applied to the substantive claims, the court specifically adopted Ms. Strasberg's position that Ms. Monroe died a New York domiciliary. As stated by the court:

> Plaintiff's cause of action arose because of her alleged birth to the decedent in New York and the decedent's subsequent death (while domiciled in New York) with a will executed in New York that failed to provide for Plaintiff. The will was admitted to probate in New York, and the estate was administered in New York under the supervision of courts of that state.

11

Id. at MM 0000280.  In further support of its position that New York law applied, the court

stated:

> The result is the same under the Hawaii Uniform Probate Code,
> which provides that the decedent's domicile at the time of death
> determines the law that will be applied.  Here, the New York
> Surrogate Court determined that Marilyn Monroe was a New York
> domiciliary at the time of her death.

Id. at MM 0000281, n.3 (emphasis added).  The court also concluding that it lacked personal

jurisdiction over Ms. Strasberg and stated that "New York was where decedent was domiciled at

her death." Id. at  MM 0000275.

36.     On or about February 26, 2002, Ms. Miracle filed a petition with New York

County Surrogate's Court.  Serbagi Decl. ¶ 35, Ex. HH, MM 0007507-7512.  Ms. Miracle

claimed  that she was Marilyn Monroe's child and requested that the original Letters

Testamentary to Aaron Frosch and the Letters of Administration of Anna Strasberg be set aside

and significant money damages.  Id. at 0007511-7512.  Furthermore, Ms. Miracle changed her

legal position and asserted that Ms. Monroe "died domiciled  a domiciliary of New York

County." Id. at MM 0007508.

37.     In response, Ms. Strasberg filed a motion to dismiss Ms. Miracle's petition.

Serbagi Decl. ¶ 36 Ex. II, MM 0003084-0003095.

38.     By Order dated June 13, 2002, the New York Surrogate's Court, dismissed Ms.

Miracle's petition.  Serbagi Decl. ¶ 37, Ex. JJ, MM 0007507-7512,  MM 0000234-MM 0000238.

The New York Surrogate's court held, inter alia, that because the Hawaii district court did not

have jurisdiction over Ms. Strasberg, Ms. Miracle was not barred from bringing her substantive

claim here.  Id. at MM 0000236-237.  The court dismissed her petition for failure to provide evidence of maternity.  Id. at MM 0000237.

Dated: New York, New York
     March 26, 2007

                                                                    By: Christopher Serbagi (CS 7746)
                                                       David Marcus (DM 0960)
                                Law Offices of Christopher Serbagi
                                488 Madison Avenue, Ste. 1120
                                New York, New York 10022
                                Tel:  212-593-2112
                                Fax:  212-308-8582

                                Attorneys for Plaintiffs/Consolidated
                                Defendants Shaw Family Archives,
                                Bradford Licensing, Inc., Edith Marcus and
                                Meta Stevens