**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SHAW FAMILY ARCHIVES, LTD.,        :
BRADFORD LICENSING, INC., JAMES E.    :
DOUGHERTY, and VALHALLA          :
PRODUCTIONS, LLC               :    05 CV 3939 (CM)
                               :
     Plaintiffs/Consolidated Defendants,  :
                               :    Honorable Colleen McMahon
     v.                           :
                               :
CMG WORLDWIDE, INC. and MARILYN  :
MONROE, LLC,                 :
                               :
     Defendants/Consolidated Plaintiffs.  :
                               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MARILYN MONROE, LLC'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**



GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

Attorneys for Defendant/Consolidated Plaintiff
Marilyn Monroe, LLC

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ............................................................................................1

II.    THE DISTINCT LEGAL ENTITIES INVOLVED IN THIS CASE .....................................3

III.   THE DOCTRINE OF JUDICIAL ESTOPPEL ...................................................5

IV.    JUDICIAL ESTOPPEL CANNOT BE APPLIED TO MMLLC BASED ON
       ANY OF THE STATEMENTS IDENTIFIED BY PLAINTIFFS .......................11

       A.   AARON FROSCH'S STATEMENTS CANNOT GIVE RISE TO
            JUDICIAL ESTOPPEL AGAINST MMLLC ...........................................11

            1.   The Tax Appraiser Did Not Render a Favorable Decision for
                 the Monroe Estate............................................................12

            2.   Even if Mr. Frosch Were Judicially Estopped, MMLLC Would
                 Not Be ..............................................................................13

            3.   Representations as to Domicile Do Not Qualify as "Purely
                 Factual" Statements and Thus Cannot Give Rise to Judicial
                 Estoppel............................................................................14

       B.   TOM KELLEY'S STATEMENTS CANNOT POSSIBLY GIVE RISE
            TO JUDICIAL ESTOPPEL AGAINST MMLLC .......................................15

       C.   THE STATEMENTS MADE BY ANNA STRASBERG AS
            ADMINISTRATRIX C.T.A. OF THE MONROE ESTATE CANNOT
            GIVE RISE TO JUDICIAL ESTOPPEL AGAINST MMLLC.................17

            1.   The Surrogate's Court Will Construction Proceedings..................17

            2.   Proceedings in the U.S. District Court for the District of
                 Hawaii ..............................................................................19

V.     MMLLC IS NOT COLLATERALLY ESTOPPED FROM PROVING
       THAT MARILYN MONROE DIED A CALIFORNIA DOMICILIARY .........................23

VI.    CONCLUSION..................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arrowsmith v. United Press Int'l,*
  320 F.2d 219 (2d Cir. 1963) ...................................................................................21

*Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.,*
  910 F.2d 1540 (7th Cir. 1990) ............................................................................7, 18

*AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc.,*
  84 F.3d 622 (2d Cir. 1996) .....................................................................................6

*Bates v. Long Island R.R. Co.,*
  997 F.2d 1028 (2d Cir. 1993), *cert. denied* 510 U.S. 992, 114 S. Ct. 550 (1993) .........8

*Boston & Maine R.R. v. Delaware & Hudson Co.,*
  197 N.E. 321, 268 N.Y. 382 (1935) .......................................................................21

*Buecher v. Bain,*
  766 N.E.2d 914, 97 N.Y.2d 295 (2001), *cert. denied* 535 U.S. 1096, 122 S. Ct.
  2293 (2002) ........................................................................................................23

*Calvert v. Firstar Finance, Inc.,*
  409 F.3d 286 (6th Cir. 2005) ..................................................................................9

*City of White Plains v. Hadermann,*
  272 A.D. 507, 72 N.Y.S.2d 155 (1947) ..................................................................21

*Cleveland v. Policy Mgmt. Sys. Corp.,*
  526 U.S. 795, 119 S. Ct. 1597 (1999) ...............................................................2, 10

*Creaciones Con Idea, S.A. de C.V. v. Mashreqbank PSC,*
  232 F.3d 79 (2d Cir. 2000) ...................................................................................15

*Gravitt v. Southwestern Bell Tel. Co.,*
  430 U.S. 723, 97 S. Ct. 1439 (1977) ......................................................................15

*Hackett v. Xerox Corp.,*
  177 F. Supp. 2d 803 (N.D. Ill. 2001), *rev'd on other grounds* 315 F.3d 771 (7th
  Cir. 2003) ............................................................................................................9

*In re Estate of Connally,*
  34 Misc.2d 132, 226 N.Y.S.2d 125 (Sur. Ct. 1962) ..................................................14

*In re Estate of Herm,*
  284 N.W.2d 191 (Iowa 1979) .................................................................................14

*In re Southwestern Bell Tel. Co.,*
  535 F.2d 859 (5th Cir.) (same), *aff'd en banc,* 542 F.2d 297 (5th Cir. 1976) ..............15

*In re Will of Shailer,*
  9 Misc. 2d 62, 172 N.Y.S.2d 724 (Sur. Ct. 1957) .....................................................4

*Jackson v. Kessner,*
  206 A.D.2d 123, 618 N.Y.S.2d 635 (N.Y. App. Div. 1994) ......................................18

*Ladd v. ITT Corp.,*
  148 F.3d 753 (7th Cir. 1998) ...................................................................................9

*Maharaj v. BankAmerica Corp.,*
  128 F.3d 94 (2d Cir. 1997) .....................................................................................9

*Matter of Juan C. v. Cortines,*
  679 N.E.2d 1061, 89 N.Y.2d 659 (1997) ............................................................23, 24

*Migra v. Warren City School Dist. Bd. of Ed.*,
    465 U.S. 75, 104 S. Ct. 892 (1984) ..............................................................23
*Mississippi Band of Choctaw Indians v. Holyfield*,
    490 U.S. 30, 109 S. Ct. 1597 (1989) ............................................................11
*Montrose Med. Group Participating Sav. Plan v. Bulger*,
    243 F.3d 773 (3d Cir. 2001) ..............................................................6, 10
*New Hampshire v. Maine*,
    532 U.S. 742, 121 S. Ct. 1808 (2001) ..................................................passim
*Pecarovich v. Allstate Ins. Co.*,
    309 F.3d 652 (9th Cir. 2002), *amended on denial of reh'g en banc*, 2002 U.S.
    App. LEXIS 27854 (9th Cir. 2003) ..............................................................10
*Providence & Worchester R.R. Co. v. Chevron USA, Inc.*,
    CIV. A. No. 88-1162-WF, 1990 WL 85506 (D. Mass. June 15, 1990) ....................15
*Simon v. Safelite Glass Corp.*,
    128 F.3d 68 (2d Cir. 1997) ..............................................................15
*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
    127 S. Ct. 1184 (2007) ..............................................................21
*Spruance v. Comm'r*,
    60 T.C. 141 (1973) ..............................................................18
*Steel Co. v. Citizens for Better Environment*,
    523 U.S. 83, 118 S. Ct. 1003 (1998) ............................................................21
*Steele v. Anderson*,
    No. 03-CV-1251, 2004 WL 45527 (N.D.N.Y. Jan. 8, 2004) ....................15
*Thore v. Howe*,
    466 F.3d 173 (1st Cir. 2006) ..............................................................10
*Uzdavines v. Weeks Marine, Inc.*,
    418 F.3d 138 (2d Cir. 2005) ..............................................................6
*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ..............................................7, 12, 16, 18
*Wight v. BankAmerica Corp.*,
    219 F.3d 79 (2d Cir. 2000) ..............................................................8
*Ziegler v. Indian River County*,
    64 F.3d 470 (9th Cir. 1995) ..............................................................21

**Statutes**
28 U.S.C. § 1738 ..............................................................23
N.Y. Est. Powers & Trusts Law § 11-1.1 ..............................................................5
N.Y. Est. Powers & Trusts Law § 3-5.1(e) ..............................................19, 24
N.Y. Sur. Ct. Proc. Act § 206 (1967) (formerly NY Sur. Ct. Act § 45) ..............................4

**Other Authorities**
18 James Wm. Moore et al., *Moore's Federal Practice* ¶ 134.30 (3d ed. 2006)..............8
18B Charles Alan Wright & Arthur Miller et al., *Federal Practice and Procedure*
    § 4477 (2d ed. 2002) ..............................................................9
28 Am. Jur. 2d *Estoppel and Waiver* § 137 ..............................................14, 18
33 C.J.S. *Executors and Administrators* § 164 ..............................................................14
34 C.J.S. *Executors and Administrators* § 730 ..............................................................18
Black's Law Dictionary (8th ed. 2004)..............................................................5

## I.     INTRODUCTION

This Court should reject Plaintiffs' attempt to invoke the extraordinary remedy of judicial estoppel to prevent Defendant Marilyn Monroe, LLC ("MMLLC") from ever presenting any evidence to the trier of fact proving that Marilyn Monroe died a California domiciliary, based upon statements that various individuals or entities – but never MMLLC – may have made at some point in the past to the effect that Marilyn Monroe died a domiciliary of New York. These statements do not satisfy the essential prerequisites that must be met before this Court may even exercise its discretion to apply judicial estoppel against MMLLC. Holding MMLLC judicially estopped to prove that Marilyn Monroe died a California domiciliary would be legally erroneous for three straightforward, independent reasons.

*First*, neither MMLLC nor anyone associated with the Estate of Marilyn Monroe ("Monroe Estate") ever *prevailed* in any prior action or proceeding based upon any representation that Marilyn Monroe died a New York domiciliary. Yet as the Supreme Court has consistently held, "[t]h[e] rule [of] judicial estoppel . . . generally prevents a party from *prevailing* in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 1814 (2001) (emphasis added) (citations omitted). "Absent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations,' . . . and thus poses little threat to judicial integrity." *Id.* at 750-51, 121 S. Ct. at 1815 (citation omitted). Plaintiffs have yet to proffer a single instance within the past forty-plus years of anyone *prevailing* or winning anything from a court or other adjudicative body based on the representation that Marilyn Monroe died a New York domiciliary. For this reason alone, this Court should reject Plaintiffs' legally flawed premise that this Court even has discretion to hold MMLLC judicially estopped from proving what Marilyn Monroe's true domicile at death was.

1

*Second*, Plaintiffs have not identified a single instance in which MMLLC itself took the position that Marilyn Monroe – the consummate Hollywood icon – died a New York domiciliary, or any other position "clearly inconsistent" with its position in this case that Marilyn Monroe died a California domiciliary. *Id.* at 750, 121 S. Ct. at 1815 (citations omitted). It is thus difficult to see how MMLLC "would derive an unfair advantage," or how "an unfair detriment" would be "impose[d]" on Plaintiffs, if they were simply required to prove to the fact-finder that Marilyn Monroe did not die a domiciliary of the State where she was born, raised, lived most of her life, derived her stardom, owned her only home, died, and is buried. *Id.* at 751, 121 S. Ct. at 1815 (citations omitted). Nor have Plaintiffs identified any clearly inconsistent statement by anyone who could be said to be in privity with MMLLC, assuming privity even applies to the doctrine of judicial estoppel, which it does not.

*Third*, any representations concerning Marilyn Monroe's domicile at her death cannot give rise to judicial estoppel because they cannot be said to constitute "*purely factual* statement[s]," "such as 'The light was red/green.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 802, 119 S. Ct. 1597, 1601 (1999) (emphasis added). "[C]ontext-related legal conclusion[s]," such as the State of a person's domicile at death, are not provably false in the same way that "purely factual statements" are, and can change over time and depending upon the particular context or purpose in or for which they are made. *Id.*

Each of these foregoing reasons is alone sufficient to preclude, as a matter of law, any use of the doctrine of judicial estoppel by this Court to deprive MMLLC of the opportunity to prove to the trier of fact that Marilyn Monroe died a domiciliary of the State from which she developed and derived her iconic celebrity and rights of publicity. Likewise, Plaintiffs' collateral estoppel arguments are inapplicable, seek improperly to evade the fact-finding process, and should be rejected by this Court.

2

## II.    THE DISTINCT LEGAL ENTITIES INVOLVED IN THIS CASE

Throughout their Supplemental Brief, Plaintiffs repeatedly conflate MMLLC, its

shareholders, Aaron Frosch, and Anna Strasberg (in her different individual and representative

capacities), treating each of these distinct entities and individuals as if they were one

undifferentiated whole that transcends time and space.  To correct the record we provide directly

below a brief description of the individuals, entities, and events related to the probate of Marilyn

Monroe's estate and the formation of MMLLC nearly forty years after that probate was opened.

MMLLC is not Marilyn Monroe, Marilyn Monroe's estate, or a representative or direct

beneficiary of the estate.  Rather, MMLLC is a recently-formed company that manages certain

intellectual property rights that were formerly a portion of the assets originally contained in the

Monroe Estate.  (MMLLC's Resp. to Pls.' Supp. Statement of Facts, Supp. Material Undisputed

Facts ("SMUF") ¶ 1.)

Marilyn Monroe died on August 5, 1962.  (*Id.* ¶ 3.)  The residuary clause of Marilyn

Monroe's will provided that the residue of her estate was to be distributed 25 percent to

Dr. Marianne Kris (one of her psychiatrists), and 75 percent to Lee Strasberg, her close friend and

acting teacher.  (*Id.* ¶ 4.)  The will also named Aaron Frosch, Marilyn Monroe's New York-based

attorney, as the executor.  (*Id.* ¶ 5.)

The decision to probate Marilyn Monroe's will in New York was a matter of convenience

for Mr. Frosch.  (*Id.* ¶ 6.)  Living in New York at the time of Marilyn Monroe's death, Mr. Frosch

suffered from multiple sclerosis and did not like to travel.  (*Id.*)  Accordingly, he chose New York

for original probate, rather than California, where Marilyn Monroe owned her only home, made her

living as an actress, and died.  (*Id.*)  Mr. Frosch's notice of probate filed with the New York

Surrogate's Court on October 26, 1962, stated that Marilyn Monroe was "late of the City of New

York."  (*Id.* ¶ 7.)  Mr. Frosch did not assert that Marilyn Monroe was a New York domiciliary, nor

3

was such an assertion necessary to admit the will to probate in New York.  (*Id.*)[1]  The New York

Surrogate's Court, finding probate of Marilyn Monroe's will "not having been contested," admitted

her will to probate and issued letters testamentary to Mr. Frosch on October 30, 1962.  (*Id.* ¶ 8.)

Mr. Frosch was also appointed executor of the Monroe Estate in ancillary probate proceedings in

California, where the Los Angeles Superior Court admitted Marilyn Monroe's will on January 21,

1963.  (*Id.* ¶ 9.)  Mr. Frosch served as executor of the Monroe Estate for over 26 years, until his

death on April 9, 1989.  (*Id.* ¶ 10.)

    In 1968, six years after probate of the Monroe Estate commenced, Lee Strasberg married

Anna Strasberg.  (*Id.* ¶ 11.)  Anna Strasberg had no involvement with the Monroe Estate until 1982,

when Lee Strasberg died and Anna Strasberg was named Executor of the Estate of Lee Strasberg

("Strasberg Executor").  (*Id.*)  Anna Strasberg was also the sole beneficiary under Mr. Strasberg's

will, thus entitling her to receive Mr. Strasberg's interest in the Monroe Estate.  (*Id.* ¶ 12.)  Anna

Strasberg continued to serve as Strasberg Executor through the creation of MMLLC in 2001.  (*Id.*

¶ 13.)

    Dr. Marianne Kris died on November 23, 1980.  (*Id.* ¶ 14.)  Dr. Kris's 25 percent interest in

the residue of the Monroe Estate passed to The Anna Freud Centre for Psychoanalytic Study and

Treatment of Children (the "Freud Centre").  (*Id.* ¶ 15.)  Based in London, England, the Freud

Centre is a world-renowned facility, dedicated to improving the mental health of children through

research and treatment.  (*Id.* ¶ 16.)  Approximately 20 percent of the Freud Centre's operating

expenses are funded by income received from MMLLC, resulting from the commercialization of

---

[1]    All that was required for Marilyn Monroe's will to be admitted to probate in New York was
    that Marilyn Monroe have personal property in New York, which she indisputably did.
    N.Y. Sur. Ct. Proc. Act § 206 (1967) (formerly NY Sur. Ct. Act § 45); *see also In re Will of
    Shailer*, 9 Misc. 2d 62, 63, 172 N.Y.S.2d 724, 725 (Sur. Ct. 1957).  (SMUF ¶ 23.)

Marilyn Monroe's publicity rights and other intellectual property associated with Marilyn Monroe. (*Id.* ¶ 17.)

In 1989, following Mr. Frosch's death, the New York Surrogate's Court appointed Anna Strasberg as Administratrix, c.t.a. of the Monroe Estate ("Administratrix").  (*Id.* ¶ 19.)[2]  The Monroe Estate remained open until June 19, 2001, when the Surrogate's Court authorized the Administratrix to close the estate and transfer the residuary assets to MMLLC, a Delaware company formed to hold and manage the intellectual property assets of the residuary beneficiaries of Marilyn Monroe's will.  (*Id.* ¶ 20.)  MMLLC was formed on July 5, 2001, and interests in the company were assigned as follows:  (1) 25% to the Freud Centre, and (2) 75% to Anna Strasberg, as Strasberg Executor (and sole beneficiary of Lee Strasberg's estate).  (*Id.* ¶ 21.)

## III.    THE DOCTRINE OF JUDICIAL ESTOPPEL

Judicial estoppel is a harsh tool that a court may, but need not, use to "'preven[t] a party from *prevailing* in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase'" of the case or in a subsequent proceeding.  *New Hampshire*, 532 U.S. at 749, 121 S. Ct. at 1814 (emphasis added).  The Supreme Court has articulated at least three "factors" that "typically inform the decision whether to apply the doctrine" to bar a party from proving the truth of a matter that it asserts: (1) "First, a party's later position must be 'clearly inconsistent' with its earlier position"; (2) "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the

---

[2]    An administrator/administratrix *cum testamento annexo*, or administrator "with the will annexed," is an administrator appointed by the court to carry out the provision of a will when an executor has died.  Black's Law Dictionary (8th ed. 2004).  Under New York probate law, an administrator c.t.a. is a fiduciary of the estate with the same powers, duties, and obligations of an executor.  N.Y. Est. Powers & Trusts Law § 11-1.1.

second court was misled,' . . . .  Absent *success* in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations,' . . . , and thus poses little threat to judicial integrity"; and (3) "A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."  *Id.* at 750-51, 121 S. Ct. at 1814 (citations omitted).

The purpose of this doctrine is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."  *Id.* at 749-50, 121 S. Ct. at 1814 (quotation marks and citations omitted).  Because the consequences of applying the doctrine are harsh – precluding a litigant from even having a chance to prove the truth of something that may be essential to its case – the burden of demonstrating the doctrine's applicability rests squarely on the party relying on it to avoid the usual process of arriving at the truth in litigation.  *AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc.*, 84 F.3d 622, 628 (2d Cir. 1996).  The burden is a heavy one, given the "extraordinary" nature of judicial estoppel as a remedy that may be invoked by a court only when absolutely necessary to protect the integrity of the judicial process or prevent a miscarriage of justice.  *Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 784 (3d Cir. 2001); *see also Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 148 (2d Cir. 2005).

Although it is an equitable doctrine, the Supreme Court has characterized judicial estoppel as a "rule," *New Hampshire*, 532 U.S. at 749, 121 S. Ct. at 1814, and in keeping with the Supreme Court's teaching and the three factors delineated above, courts have generally articulated three essential legal prerequisites that must be satisfied before courts even have discretion to invoke judicial estoppel, just as several legal prerequisites must first be satisfied before a court even has discretion to issue an injunction, *see eBay Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837, 1839 (2006).  These preconditions exist in order to cabin the reach of this extraordinary remedy and to

6

prevent an undue intrusion on a litigant's right to prove its case to the trier of fact. Plaintiffs have failed to satisfy any of these three clear rules of law.

First and foremost, the party against whom estoppel is sought must have actually "prevailed" in – *i.e.*, *won* something from – a prior proceeding based on a position or statement that is clearly inconsistent with the position the party is taking in the instant litigation. *New Hampshire*, 532 U.S. at 749, 121 S. Ct. at 1814; *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 120 (2d Cir. 2005). It is essential that the prior tribunal's favorable ruling or decision actually turned on the allegedly inconsistent statement or position; otherwise basic principles of pleading could be undermined and the extreme remedy of judicial estoppel could be imposed despite the absence of any affront to the integrity of the judicial process. As Judge Easterbrook has cogently explained, "[t]he offense is not taking inconsistent positions so much as it is *winning,* twice, on the basis of incompatible positions":

> The principle is that if you prevail in Suit #1 by representing that A is true, you are stuck with A in all later litigation growing out of the same events. . . . Sometimes courts justify the doctrine on the ground that it is an offense against the judicial system to take inconsistent positions. . . . Yet Fed. R. Civ. P. 8(e)(2) allows a party to take inconsistent positions in a single suit. Often a pleader cannot tell what the facts will show. Courts allow a pleading of the sort "I never borrowed the lawn mower, it was broken when I borrowed it, and I returned it in perfect condition" because pleadings precede discovery and trial. . . . Inconsistency is acceptable because, at the end of the day, only one of these positions can obtain, and the pleader is limited to a single recovery no matter how many different (and conflicting) theories it offers. . . . Applying judicial estoppel only if a party *prevails* in Suit #1 on the basis of a position inconsistent with that latterly taken allows alternative pleadings, and permits a party to change position to conform with the evidence. We agree with those courts that limit judicial estoppel to taking a position inconsistent with one underlying a prior judgment.

*Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.*, 910 F.2d 1540, 1547-48 (7th Cir. 1990) (emphases in original) (citations omitted). Ensuring that the party actually *won* the prior proceeding based on the now-allegedly inconsistent statement or position is inherent in the Supreme Court's basic definition of judicial estoppel and the evil that it is meant to remedy; otherwise, a party cannot

be said to have "derive[d] an unfair advantage" from that "inconsistent position" or "impose[d] an unfair detriment on" her adversary.  *New Hampshire*, 532 U.S. at 751, 121 S. Ct. at 1815; *see also* 18 James Wm. Moore et al., *Moore's Federal Practice* ¶ 134.30 (3d ed. 2006) (endorsing Judge Easterbrook's opinion in *Astor Chauffeured Limousine* as "[a] common sense explanation of the doctrine").[3]  Here, no one could be said to have *prevailed* in – *i.e.*, won anything from – a prior lawsuit (or any other kind of adjudicative proceeding) based on any prior representations that have been made in the past forty-plus years regarding Marilyn Monroe's domicile at her death, let alone the particular ones on which Plaintiffs focus in their Supplemental Brief.  As explained more fully below, all the examples proffered by Plaintiffs involve instances in which whatever references may have been made to Marilyn Monroe's supposed New York domicile at her death were either completely gratuitous, irrelevant or immaterial to the tribunal's resolution of the case before it, or resulted in an outright loss for the party to whom those references could be attributed.

Second, judicial estoppel applies only to statements or positions made or taken by the *party to be estopped,* and not those who could be said to be in "privity" with the party.  Although privity does obviously apply to the distinct concepts of collateral estoppel and res judicata, notably neither the Supreme Court nor the Second Circuit has ever suggested that privity would apply to the harsh remedy of judicial estoppel, a personal doctrine directed at preventing a particular *party* – rather than those who happen to inherit property from the party or to have some other close relation to it –

---

[3]    It is against this backdrop of guidance from the Supreme Court and other Circuits that the statement in certain Second Circuit cases to the effect that "the prior inconsistent position must have been adopted by the [first] court in some manner" must be construed.  *E.g.*, *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1038 (2d Cir. 1993); *Wight v. BankAmerica Corp.*, 219 F.3d 79, 90 (2d Cir. 2000).  In those cases, and in every other Second Circuit opinion that undersigned counsel is aware of, the party-to-be-estopped actually won a favorable judgment or ruling (or some concrete portion thereof) that *necessarily depended or turned on* the party's allegedly inconsistent statement.

from attempting to win twice based on inconsistent positions.  As a leading treatise on civil procedure has explained, "[t]here can be few circumstances that would justify binding a nonparty to the judicial estoppel consequences of another litigant's behavior.  The purposes of the 'privity' rules that can bind a nonparty by the res judicata effects of a judgment ordinarily are exhausted by recognizing res judicata."  18B Charles Alan Wright & Arthur Miller et al., *Federal Practice and Procedure* § 4477 (2d ed. 2002).  *Cf. New Hampshire*, 532 U.S. at 749, 121 S. Ct. at 1814 (stating judicial estoppel applies to "a party"); *Maharaj v. BankAmerica Corp.*, 128 F.3d 94, 97-98 (2d Cir. 1997) (stating that res judicata applies to parties in privity, but not stating the same as to judicial estoppel).  This is fatal to Plaintiffs' judicial estoppel argument.  Plaintiffs have never pointed to a single statement or position ever made or taken by *MMLLC* – the only party-sought-to-be-estopped – that is inconsistent in any way with what MMLLC now hopes to prove to a jury (namely, that Marilyn Monroe died a California domiciliary).  Even if the reach of judicial estoppel should be extended by some limited notion of privity, that privity would not extend so far as to cover statements made by certain individuals or entities long before MMLLC came into existence or its shareholders came to have anything to do with these entities or individuals.[4]

---

[4]  Plaintiffs' reliance on *Ladd v. ITT Corp.*, 148 F.3d 753 (7th Cir. 1998), is completely unavailing.  (Pls.' Supp. Memo. 11-13.)  In that case, the court held that judicial estoppel did *not* apply, and the sole question was whether defendant MetLife's decision to deny disability benefits to an employee was arbitrary.  *Id.* at 754, 756.  The court noted that judicial estoppel did not technically apply because MetLife was not a party to the employee's previous representation to the Social Security Administration that she was disabled.  *Id.* at 756.  Thus, the court did not judicially estop MetLife based on the employee's prior representations.  *Id.*  Rather, the court held that MetLife's involvement with the employee's prior representations lent additional support for its conclusion that MetLife's subsequent denial of disability benefits under the company's employee benefits plan was arbitrary.  *Id.*  A number of courts have recognized that *Ladd* was not decided on the grounds of judicial estoppel.  *See Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 295 (6th Cir. 2005); *Hackett v. Xerox Corp.*, 177 F. Supp. 2d 803, 808 (N.D. Ill. 2001), *rev'd on other grounds* 315 F.3d 771 (7th Cir. 2003).

Third, only "purely factual" statements or positions can give rise to judicial estoppel. *Cleveland*, 526 U.S. at 802, 119 S. Ct. at 1601.  In *Cleveland,* the Supreme Court gave, as examples of "directly conflicting statements about purely factual matters," statements "such as 'The light was red/green,' or 'I can/cannot raise my arm above my head,'" in rejecting the Court of Appeal's conclusion that "an ADA plaintiff's 'representation to the SSA that she was totally disabled'" "'judicially estop[ped]' her later representation that, 'for the time in question,' with reasonable accommodation, she could perform the essential functions of her job."  *Id.*  And although it is dependent on the facts, a "context-related legal conclusion" such as domicile is not provably false in the same way that "purely factual statements" are, and can change over time and depending upon the particular legal context or purpose in or for which they are made.  *Id.*  Accordingly, under the logic of the Supreme Court's decision in *Cleveland,* representations as to domicile (and in this particular case, what State a person died a domiciliary of) cannot give rise to judicial estoppel.[5]

Plaintiffs' failure to satisfy any one of these three essential prerequisites or preconditions for judicial estoppel to even come into play is alone sufficient to render legally erroneous any exercise of this Court's discretion to judicially estop MMLLC from proving to the trier of fact that Marilyn Monroe died a California domiciliary.

---

[5]    Nothing in the Supreme Court's decision in *Cleveland* suggests that its reasoning is limited to claims of judicial estoppel in the disability context, and courts have not suggested otherwise.  *See, e.g., Thore v. Howe,* 466 F.3d 173, 185-86 (1st Cir. 2006) (applying *Cleveland* to section 1983 civil rights context); *Montrose Med. Group Participating Savings Plan,* 243 F.3d at 783 (applying *Cleveland* to ERISA context); *Pecarovich v. Allstate Ins. Co.*, 309 F.3d 652, 659 n.11 (9th Cir. 2002), *amended on denial of reh'g en banc*, 2002 U.S. App. LEXIS 27854 (9th Cir. 2003) (applying logic of *Cleveland* to "sham affidavit" claim in insurance-coverage dispute).

## IV.    JUDICIAL ESTOPPEL CANNOT BE APPLIED TO MMLLC BASED ON ANY OF THE STATEMENTS IDENTIFIED BY PLAINTIFFS

Plaintiffs have identified statements made by the following three individuals that they claim now judicially estop MMLLC from proving that Marilyn Monroe died a California domiciliary:  (1) Aaron Frosch, the Executor of the Monroe Estate; (2) Tom Kelley, an independent third party; and (3) Anna Strasberg, in her capacity as Administratrix c.t.a. of the Monroe Estate.  None of these statements satisfies the essential preconditions that must exist before this Court may even exercise its discretion to apply judicial estoppel to deprive MMLLC of the opportunity to prove that Marilyn Monroe died a California domiciliary.

### A.    AARON FROSCH'S STATEMENTS CANNOT GIVE RISE TO JUDICIAL ESTOPPEL AGAINST MMLLC

The earliest statement Plaintiffs cite in asking this Court to judicially estop MMLLC is an "Affidavit Concerning Residence" submitted by Mr. Frosch to a California Inheritance Tax Appraiser in 1965.  (Pls.' Supp. Memo. 2, 14-15.)  This affidavit, which stated that Marilyn Monroe died a New York "*resident*," was submitted in support of a letter sent by Marilyn Monroe's attorneys to the California Inheritance Tax Appraiser responsible for Marilyn Monroe's estate, requesting that the appraiser issue a "no tax certificate" with respect to property in California that Marilyn Monroe had devised by will.  (SMUF ¶ 24.)  Of course, this statement regarding Marilyn Monroe's *residence* at death is not even necessarily inconsistent, let alone "clearly" so, *see New Hampshire,* 532 U.S. at 750, 121 S. Ct. at 1815, with MMLLC's statements in this litigation concerning Marilyn Monroe's *domicile* at death.  *See, e.g., Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S. Ct. 1597, 1608 (1989) ("'Domicile' is not necessarily synonymous with 'residence,' and one can reside in one place but be domiciled in another.") (citations omitted).  In a report filed with the Los Angeles Superior Court, the appraiser ***turned down this request and assessed*** inheritance taxes of $777.  (SMUF ¶ 25.)  Although the appraiser in

11

his report repeated Mr. Frosch's statement that Marilyn Monroe died a New York resident (*id.*), neither this nor anything else having to do with the California Inheritance Tax Appraiser could give rise to judicial estoppel.

### 1. The Tax Appraiser Did Not Render a Favorable Decision for the Monroe Estate

Neither the Monroe Estate nor Mr. Frosch could possibly be said to have prevailed on or won anything from the California Inheritance Tax Appraiser, let alone anything based on Mr. Frosch's statement that Marilyn Monroe died a New York resident. This fact alone precludes judicial estoppel. *See supra* Section III; *see also Wal-Mart Stores, Inc.*, 396 F.3d at 120 ("'judicial estoppel applies only when a tribunal in a prior separate proceeding has relied on a party's inconsistent factual representations and rendered a favorable decision'") (citations omitted). In fact, Mr. Frosch and the Monroe Estate *lost* and failed to prevail on their request for a no-tax certificate from the appraiser, ending up with a bill for California inheritance taxes instead. (SMUF ¶ 25.)[6]

Mr. Frosch's statements to the appraiser also cannot give rise to judicial estoppel because Plaintiffs have failed to show that MMLLC would derive some "unfair advantage" or that Plaintiffs would suffer some "unfair detriment" from these statements if MMLLC were allowed to prove that Marilyn Monroe died a California domiciliary in this action. *New Hampshire*, 532 U.S. at 751, 121 S. Ct. at 1815. The Monroe Estate did not "win" in the tax appraiser proceeding, and there is nothing unfair about allowing MMLLC to now assert its claims in this action. Although Plaintiffs

---

[6] This is true despite the fact that years later and in the context of another proceeding, Mr. Frosch may have stated that the Monroe Estate was "successful" in front of the tax appraiser. (SMUF ¶ 27.) This statement was mere puffery, and is belied by the actual record facts. (*Id.* ¶¶ 25, 27.) Furthermore, Plaintiffs offer no evidence in support of their allegation that in submitting the letter and accompanying affidavits to the tax appraiser, the Monroe Estate sought to "avoid paying 'inheritance taxes on the corpus of the estate.'" (Pls.' Supp. Statement of Facts ¶ 10.) In fact, the "quote" they attribute to the Monroe Estate is not even found in either the letter or Mr. Frosch's affidavit.

assert that the Monroe Estate did obtain some sort of advantage from the tax appraiser because it "did not pay California taxes on the gross value of the Estate" (Pls.' Supp. Memo. 15), they ignore the fact that the Monroe Estate *did* pay taxes on all of its non-California property in New York and that any other decision by the appraiser would have resulted in double taxation (SMUF ¶ 26).  At any rate, Plaintiffs offer nothing to show that *MMLLC* would somehow receive an "unfair advantage" because of the manner in which the Monroe Estate was taxed forty years earlier or that Plaintiffs would suffer an "unfair detriment" if MMLLC is given the opportunity to prove to the fact-finder that Marilyn Monroe died a California domiciliary, particularly given that the holders of Marilyn Monroe's posthumous rights of publicity have exercised those rights for many years with Plaintiffs' full knowledge and acquiescence.

### 2.    Even if Mr. Frosch Were Judicially Estopped, MMLLC Would Not Be

MMLLC cannot be judicially estopped by *Mr. Frosch*'s "Affidavit Concerning Residence" for another reason: MMLLC and Mr. Frosch are not the same party.  No U.S. Supreme Court or Second Circuit decision has ever suggested that judicial estoppel applies to a party's "privies" (no matter how privity is defined), and the better-reasoned view is that privity should not apply to judicial estoppel.  *See supra* Section III.

Even were some narrow version of privity applicable to judicial estoppel, Plaintiffs have failed to show that MMLLC and Mr. Frosch are privies.  The most that could be said about the relationship between MMLLC and Mr. Frosch is that many decades ago, Mr. Frosch served as Executor of the Monroe Estate, and MMLLC's shareholders (the Freud Center and Anna Strasberg) became beneficiaries of that estate more than 15 years after Mr. Frosch submitted the "Affidavit Concerning Residence."  *See supra* Section II.  This, however, clearly does not suffice to establish privity – even as between Mr. Frosch and MMLLC's shareholders – let alone between Mr. Frosch and MMLLC, which did not even come into existence until more than three decades after Mr.

13

Frosch submitted his affidavit.  *See, e.g.*, *In re Estate of Herm*, 284 N.W.2d 191, 196 (Iowa 1979)

("[T]he relation of privity ordinarily does not exist between an administrator and the distributees

from an estate . . . ."); *see also* 28 Am. Jur. 2d *Estoppel and Waiver* § 137 (2006) (same); 33 C.J.S.

*Executors and Administrators* § 164.  This is especially true where, as here, the executor and the

beneficiaries have disagreed with each other about the distribution of the estate's assets and the

construction of the will.  (SMUF ¶ 28) (Frosch initially claimed that he had no reason to believe

certain transparencies were not owned by Tom Kelley; Lee Strasberg later asserted that Marilyn

Monroe had purchased them from Kelley, thus entitling Strasberg to them under Monroe's will).

Accordingly, even were privity applicable to judicial estoppel, MMLLC cannot properly be bound

by statements made by Executor Frosch because MMLLC is not in privity with Mr. Frosch.[7]

> **3.     Representations as to Domicile Do Not Qualify as "Purely Factual"
> Statements and Thus Cannot Give Rise to Judicial Estoppel**

Even if Mr. Frosch's representations as to Marilyn Monroe's *residence* at death could be

treated as representations as to her *domicile, but see supra* Section IV.A, and even if this Court were

to disregard the fact that neither Mr. Frosch nor the Monroe Estate prevailed on anything in the

proceedings before the California Inheritance Tax Appraiser[8] and that MMLLC could not be said to

---

[7]     Plaintiffs do not cite a single case to support their claim that MMLLC is in privity with
former representatives of the Monroe Estate, such as Executor Frosch.  Instead, they cite *In
re Estate of Connally,* 34 Misc.2d 132, 226 N.Y.S.2d 125 (Sur. Ct. 1962), but only for the
different proposition that *Anna Strasberg – not MMLLC –* should be estopped based upon
Mr. Frosch's statements because she failed to object to them at the time they were made.
(Pls.' Supp. Memo. 23.)  But *Connally* does not even support this contention because there,
the legatee was found to be bound to things that she explicitly consented to, such as where
probate would occur.  *Id.* at 137, 226 N.Y.S.2d at 131.  Here, Anna Strasberg was not a
beneficiary at the time Mr. Frosch submitted the affidavit to the tax appraiser and would not
have any interest in the Monroe Estate for another 15 years.  *See supra* Section II.

[8]     It is far from clear that proceedings before the California Inheritance Tax Appraiser could
properly be characterized as the kind of quasi-judicial or adjudicatory proceeding that could

[Footnote continued on next page]

14

be in privity with Mr. Frosch or the Monroe Estate, there still would be no basis to apply judicial estoppel against MMLLC because representations as to domicile cannot fairly be characterized as provably false "purely factual statements" of the sort needed to give rise to judicial estoppel. *See supra* Section III.[9]

For each of these reasons, Mr. Frosch's affidavit cannot give rise to judicial estoppel.[10]

### B.     TOM KELLEY'S STATEMENTS CANNOT POSSIBLY GIVE RISE TO JUDICIAL ESTOPPEL AGAINST MMLLC

Plaintiffs also argue that MMLLC should be judicially estopped from proving that Marilyn Monroe died a New York domiciliary because *third-party* photographer Tom Kelley represented to the New York Surrogate's Court in 1972 that Marilyn Monroe died a New York domiciliary in connection with his claim to ownership of certain photographic transparencies allegedly possessed

---

[Footnote continued from previous page]

give rise to judicial estoppel. *Compare, e.g., Simon v. Safelite Glass Corp.,* 128 F.3d 68, 72 (2d Cir. 1997) (holding that statements made to Social Security Administration in adjudicative administrative proceedings can provide basis for judicial estoppel because Social Security Administration is "quasi-judicial" and social security determinations are "in essence, adjudicative").

[9]     The only contrary authority that Plaintiffs have been able to muster for the proposition that judicial estoppel can apply to mixed questions of fact and law or "context-based legal conclusions" such as domicile are two unpublished, distinguishable district court decisions from the Northern District of New York and the District of Massachusetts, neither of which even addresses, let alone provides, any reasoning or authority in support of applying judicial estoppel to such mixed questions. (Pls.' Supp. Memo. 10-11) (*citing Steele v. Anderson*, No. 03-CV-1251, 2004 WL 45527 (N.D.N.Y. Jan. 8, 2004), and *Providence & Worchester R.R. Co. v. Chevron USA, Inc.*, CIV. A. No. 88-1162-WF, 1990 WL 85506 (D. Mass. June 15, 1990)). These cases also run counter to circuit-court authority holding that a court may not employ judicial estoppel in deciding questions of its own jurisdiction. *See, e.g., Creaciones Con Idea, S.A. de C.V. v. Mashreqbank PSC*, 232 F.3d 79, 82 (2d Cir. 2000); *In re Southwestern Bell Tel. Co.*, 535 F.2d 859, 860-61 (5th Cir.) (same), *aff'd en banc*, 542 F.2d 297 (5th Cir. 1976), *rev'd on other grounds, Gravitt v. Southwestern Bell Tel. Co.*, 430 U.S. 723, 97 S. Ct. 1439 (1977).

[10]     All of the reasons why Mr. Frosch's affidavit cannot give rise to judicial estoppel against MMLLC also apply to the independent third-party affidavits filed in conjunction with Mr. Frosch's affidavit. (*See* Pls.' Supp. Memo. 2, 14-15.)

by the Monroe Estate.  (Pls.' Supp. Memo. 2; *cf.* SMUF ¶¶ 29-30.)  This Court should reject Plaintiffs' baseless suggestion that this representation by an independent third party can give rise to judicial estoppel against MMLLC.

First, Plaintiffs fail to show that Mr. Kelley's representation was ever "relied upon" by the Surrogate's Court, or that the court rendered a "favorable" decision for the Monroe Estate as a result.  The record is devoid of any court order adopting any of the statements in the affidavits of Mr. Kelley, or the responsive affidavits filed by Mr. Frosch.  For this reason alone, judicial estoppel is inapplicable.  *Wal-Mart Stores*, 396 F.3d at 120.

Second, Plaintiffs provide no support – legal or factual – for the fanciful notion that MMLLC could be bound by the statements of Mr. Kelley, an entirely independent third party.  Mr. Kelley was not a beneficiary or administrator of the Monroe Estate and he has no relationship whatsoever with MMLLC.  (SMUF ¶ 30.)  In fact, in the proceedings before the Surrogate's Court, Mr. Kelley was adverse to one of the Monroe Estate's beneficiaries, Lee Strasberg, by contesting the rights to property (transparencies of photographs of Marilyn Monroe) lawfully belonging to the estate.  (*Id.*)[11]

Third, insofar as anything Mr. Kelley said qualifies as a representation concerning Marilyn Monroe's domicile at death, those representations as to "domicile" do not qualify as "purely factual" statements and thus cannot give rise to judicial estoppel.  *See supra* Section III.

---

[11]     Nor can Mr. Frosch's statement in an affidavit that the "Estate has no exclusive right to her image" possibly have any binding effect on MMLLC's right to assert that Marilyn Monroe died a California domiciliary.  (*See* Pls.' Supp. Statement of Facts ¶ 21; *see also* Pls.' Supp. Memo. 2.)  Mr. Frosch's statement is a legal conclusion to which judicial estoppel does not apply.  *See supra* Section III.  Moreover, Plaintiffs have failed to show that this statement in Mr. Frosch's affidavit was ever relied on by any court or adjudicative body.

C.      THE STATEMENTS MADE BY ANNA STRASBERG AS
        ADMINISTRATRIX C.T.A. OF THE MONROE ESTATE CANNOT GIVE
        RISE TO JUDICIAL ESTOPPEL AGAINST MMLLC

Finally, Plaintiffs latch onto statements made by Anna Strasberg in her capacity as
Administratrix c.t.a. of the Monroe Estate to try and shore up their judicial estoppel argument.
(Pls.' Supp. Memo. 2-3, 7-14, 17.)  But these statements, like those made by Aaron Frosch and Tom
Kelley, fail to support the application of judicial estoppel against MMLLC.  No judicial or other
adjudicative decision or ruling (favorable or otherwise) has ever turned upon any representation by
the Administratrix that Marilyn Monroe died a New York domiciliary.  Thus, Anna Strasberg, as
Administratrix, cannot be said to have *prevailed* on any such representation, as would be required
for her to be judicially estopped.  Of course, even if *she* were estopped, it does not follow that
*MMLLC* would be as well, particularly given that Anna Strasberg's interests were previously
adverse to the interests of the Anna Freud Centre, the other shareholder in MMLLC.  (SMUF ¶¶ 31-
32.)

1.      The Surrogate's Court Will Construction Proceedings

Plaintiffs first point to statements made by Anna Strasberg in will construction proceedings
in the Surrogate's Court of New York.  (Pls.' Supp. Memo. 2, 17.)  As mentioned earlier, Anna
Strasberg was appointed Administratrix c.t.a. of the Monroe Estate in July 1989, shortly after Mr.
Frosch passed away.  *See supra* Section II.  Later that year, as Administratrix, Anna Strasberg filed
a petition with the Surrogate's Court challenging the Freud Centre's entitlement to a share of the
residuary estate.  (SMUF ¶ 32.)  For no apparent reason, the petition also recited in rote form that
Marilyn Monroe "died on August 5, 1962, domiciled in the City and State of New York."  (*Id.*)  The
Surrogate's Court, after receiving briefing from various interested parties, issued an order *denying*
the Administratrix's challenge and finding that the Freud Centre was entitled to a share of the

17

Monroe Estate.  (*Id.* ¶ 33.)  The Surrogate's Court *never* once mentioned, and certainly did not base

its ruling on, the issue of Marilyn Monroe's domicile in its opinion.  (*Id.*)

 Because Anna Strasberg, as Administratrix, did not prevail on—*i.e.,* win anything from—

these will construction proceedings – let alone anything based on the stray representation as to

Marilyn Monroe's domicile at death – these proceedings can hardly be said to satisfy the prevails-

in-a-prior-suit requirement for judicial estoppel to even come into play.  Again, judicial estoppel

only arises if the tribunal in the prior proceeding "relied on [the] party's inconsistent factual

representations and rendered a favorable decision" for that party as a result.  *Wal-Mart Stores, Inc.*,

396 F.3d at 120; *see supra* Section III.  Otherwise, there is no threat to the integrity of the judicial

process that would warrant the harsh remedy of judicial estoppel.  *See, e.g., Astor Chauffeured*

*Limousine Co.*, 910 F.2d at 1548; *see supra* Section III.[12]

 Plaintiffs attempt to evade this essential precondition for judicial estoppel by falsely

suggesting that the Administratrix was actually "'successful[]'" in the Surrogate's Court proceeding

because her statement regarding Marilyn Monroe's domicile at death caused the court to apply New

York law in interpreting Marilyn Monroe's will.  (Pls.' Supp. Memo. 17; *see id.* at 2.)  Yet Plaintiffs

do not cite any authority for the counter-intuitive proposition that a tribunal's decision to choose a

certain body of law in ruling against a party could possibly be said to constitute the party having

"prevailed" in the proceeding before that tribunal.  *See Astor Chauffeured Limousine,* 910 F.2d at

---

[12] Additionally, Plaintiffs have failed to show that MMLLC and the Administratrix are the same party or in privity.  *See supra* Sections III, IV.A.2.  That Anna Strasberg was now the Monroe Estate's legal representative as Administratrix (rather than Mr. Frosch), as well as a beneficiary of the estate (and, later, a shareholder of MMLLC) does not change this result, because "[a]cts done in a representative capacity may not estop one in an individual capacity and vice versa."  *Spruance v. Comm'r*, 60 T.C. 141, 156 (1973) (internal quotation marks omitted).  *See also Jackson v. Kessner*, 206 A.D.2d 123, 127, 618 N.Y.S.2d 635, 637 (N.Y. App. Div. 1994) (same); 34 C.J.S. *Executors and Administrators* § 730 (same); 28 Am. Jur. 2d *Estoppel and Waiver* § 137 (same).

1548 ("The offense is not taking inconsistent positions so much as it is *winning,* twice, on the basis of incompatible positions.").  In any event, the record is clear that, in applying New York law to construe Marilyn Monroe's will, the Surrogate's Court did not adopt the Administratrix's statement regarding Marilyn Monroe's domicile at death.  The choice-of-law statute provided that "[i]nterpretation . . . shall be made in accordance with the local law of the jurisdiction in which the testator was domiciled *at the time the will was **executed**.*"  N.Y. Est. Powers & Trusts Law § 3-5.1(e) (enacted 1966) (emphasis added).  Marilyn Monroe's will was executed in New York in January 1961.  (SMUF ¶ 2.)  But even assuming *arguendo* that Marilyn Monroe *was* domiciled in New York in 1961, Marilyn Monroe's domicile at the time her will was *executed* is not the same as her domicile at the time she died in 1962 – and the latter is what Plaintiffs are trying to prevent MMLLC from proving, by improperly invoking judicial estoppel.  Therefore, the Surrogate's Court cannot be said to have adopted, in the course of the 1989 will construction proceedings, any representation by Anna Strasberg as to Marilyn Monroe's domicile at death.

### 2.    Proceedings in the U.S. District Court for the District of Hawaii

Lastly, Plaintiffs claim that MMLLC should be judicially estopped from proving that Marilyn Monroe died a California domiciliary because of statements made by the Administratrix in a motion to dismiss filed in the U.S. District Court for the District of Hawaii in 1992.  (Pls.' Supp. Memo. 2, 7-14.)  In that action, "Nancy Miracle" sued the Administratrix, claiming she was the long-lost daughter of Marilyn Monroe and was entitled to a share of the Monroe Estate.  (SMUF ¶ 34.)  The Administratrix's motion was based on lack of jurisdiction, failure to state a claim, and the statute of limitations, and contained three bare assertions to the effect that Marilyn Monroe died a New York domiciliary.  (*Id.* ¶ 35.)  As with the earlier statements cited by Plaintiffs, these statements do not satisfy the legal predicates for judicial estoppel against MMLLC.

The District of Hawaii granted the Administratrix's motion to dismiss, holding that it lacked personal jurisdiction over the Administratrix, given the lack of sufficient minimum contacts between the Administratrix or Marilyn Monroe and the State of Hawaii.  (*Id.* ¶ 36.)  The court also stated in dicta, in the second half of its opinion, that Ms. Miracle failed to state a claim for relief as a pretermitted heir under New York law.  (*Id.*)

Plaintiffs' effort to ground their argument for judicial estoppel in either half of the District of Hawaii's opinion cannot succeed, because even though the District of Hawaii repeated the Administratrix's statements that Marilyn Monroe was a New York domiciliary at her death, the Administratrix cannot be said to have *prevailed* on this representation in the District of Hawaii.  (*Id.* ¶¶ 36-38.)  The District of Hawaii's favorable ruling that it lacked personal jurisdiction obviously did not depend in any way on Marilyn Monroe having allegedly been domiciled in New York at her death: all that it depended upon was the indisputable fact that neither Marilyn Monroe nor the Administratrix had sufficient minimum contacts with the State of Hawaii to satisfy due process.  (*Id.* ¶ 37) (District of Hawaii stating:  "Thus, the relevant actions [for purposes of personal jurisdiction] include the actions of Anna Strasberg *in Hawaii* as a personal representative, and the actions of decedent Marilyn Monroe *in Hawaii* immediately prior to her death.") (emphasis added).  It simply did not matter whether Marilyn Monroe died a California or New York domiciliary.  The question of domicile was irrelevant to the District of Hawaii's decision.

The failure-to-state-a-claim portion of the District of Hawaii's opinion also cannot give rise to judicial estoppel.  Not only was it the purest dicta for the court to have addressed this ground, given that it had already concluded that it lacked personal jurisdiction to proceed any further (*id.* ¶ 38), but it was also legally erroneous for the court to have done so.  Thus, the Administratrix cannot properly be said to have prevailed on her representations as to Marilyn Monroe's domicile with respect to this portion of the court's opinion.  The Supreme Court recently reaffirmed "that a

20

federal court generally may not rule on the merits of a case without first determining that it has

jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal

jurisdiction.)"  *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184, 1193

(2007) (citing *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 118 S. Ct. 1003 (1998)).

"'Without jurisdiction the court cannot proceed at all in any cause'; it may not assume jurisdiction

for the purpose of deciding the merits of the case."  *Id.* (citations omitted).  Thus, once the District

of Hawaii determined that it lacked personal jurisdiction, it had no authority to proceed to

adjudicate whether Ms. Miracle failed to state a claim under New York law, and that portion of its

opinion was not only "dicta" but also "of no force or effect because [it was] made after a finding of

no jurisdiction."  *Ziegler v. Indian River County*, 64 F.3d 470, 476 (9th Cir. 1995); *see also*

*Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963) (en banc) (Friendly, J.) ("We all

agree it was error for the district court to proceed as it did" to reach the merits before first

considering "the issue of jurisdiction over the defendant").  Indeed, the New York Surrogate's

Court concluded as much, in declining to accord any estoppel effect to the failure-to-state-a-claim

portion of the District of Hawaii's ruling, when Ms. Miracle filed a subsequent, copycat lawsuit

against the Administratrix in New York.  (SMUF ¶ 39) (Surrogate's Court order citing *Boston &*

*Maine R.R. v. Delaware & Hudson Co.*, 197 N.E. 321, 268 N.Y. 382 (1935), and *City of White*

*Plains v. Hadermann*, 272 A.D. 507, 72 N.Y.S.2d 155 (1947)).

   Consequently, the Administratrix did not *prevail* in the District of Hawaii based on any

representation as to Marilyn Monroe's New York domicile at death.[13]  Moreover, even if she did,

---------------------------

[13]    Plaintiffs also incorrectly assert that the Administratrix requested that the District of Hawaii
take judicial notice that Marilyn Monroe died a New York domiciliary, and that the
Administratrix argued to the District of Hawaii that Ms. Miracle was not entitled to
discovery on the issue of Marilyn Monroe's domicile because it was "undisputed" that she

[Footnote continued on next page]

21

there is no privity between her and MMLLC, assuming privity even applies to judicial estoppel, which it does not. *See supra* Section III; note 12.

Furthermore, although the District of Hawaii may have mentioned Marilyn Monroe's domicile in the portion of its opinion discussing personal jurisdiction, the Administratrix did not receive any benefit or "unfair advantage" as a result thereof. In fact, the Hawaii court would have reached the *exact same decision* if the Administratrix had represented that Marilyn Monroe died a California domiciliary. Nor can Plaintiffs claim any "unfair detriment" as a result of the Hawaii proceedings. Plaintiffs were not a party to those proceedings, and the only conceivable "detriment" they may face is having to prove their case – something that due process generally requires and that litigants should be expected to do.[14]

---

[Footnote continued from previous page]

died a New York domiciliary. (Pls.' Supp. Memo. 3, 8.) The Administratrix requested judicial notice of a Surrogate's Court order regarding the date upon which Marilyn Monroe executed her will, not the State of her domicile at death. (SMUF ¶ 40.) As for the discovery issue, the Administratrix's attorneys argued that Ms. Miracle's request for discovery on the issue of Marilyn Monroe's domicile was inappropriate on a number of grounds, including that it was procedurally improper, that Ms. Miracle had failed to meet *her* burden in demonstrating that there was an issue as to Marilyn Monroe's domicile, and that Ms. Miracle had failed to show that any of the discovery she sought would have affected the outcome of the then-pending motion to dismiss. (*Id.*) At any rate, Plaintiffs have failed to provide any evidence, such as a court order relying upon the Administratrix's statements during this discovery dispute, sufficient to provide a basis for judicial estoppel.

[14] At any rate, the arguments set forth above demonstrating that MMLLC cannot be judicially estopped by the Administratrix's statements and that representations as to "domicile" do not give rise to judicial estoppel apply here as well. *See supra* Sections III, IV.A.2, IV.A.3, IV.C.1, and note 12.

Moreover, were this Court to conclude that the legal prerequisites for judicial estoppel to even come into play have been satisfied, it should nonetheless conclude, as a matter of its equitable discretion, that judicial estoppel would not be appropriate in this case. Here, for example, Anna Strasberg is not the only shareholder in MMLLC, and many of the statements relied upon by Plaintiffs as providing the basis for judicial estoppel against MMLLC were made by her without the knowledge or approval of the Freud Centre, the other shareholder in MMLLC. (SMUF ¶¶ 21-22, 31-32) (noting the prior adversity of

[Footnote continued on next page]

## V.     MMLLC IS NOT COLLATERALLY ESTOPPED FROM PROVING THAT MARILYN MONROE DIED A CALIFORNIA DOMICILIARY

In their Supplemental Brief, Plaintiffs also contend that collateral estoppel should apply to the statements made by Anna Strasberg as Administratrix in the 1989 will construction proceedings before the Surrogate's Court.  (Pls.' Supp. Memo. 15-17, 24-25.)  This argument can and should be swiftly rejected.

Collateral estoppel in diversity cases is governed by the law of the State in which the prior decision was rendered – in this case, New York.  *Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 81, 104 S. Ct. 892, 896 (1984); 28 U.S.C. § 1738.  Under New York law, there are two requirements for collateral estoppel to apply:  "'[f]irst, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination.'"  *Matter of Juan C. v. Cortines*, 679 N.E.2d 1061, 1065, 89 N.Y.2d 659, 667 (1997) (citations omitted).  *See also Buecher v. Bain*, 766 N.E.2d 914, 919, 97 N.Y.2d 295, 303 (2001) (collateral estoppel applies to parties in privity).  Collateral estoppel "'is grounded on concepts of fairness and should not be rigidly or mechanically applied.'"  *Id.* (citation omitted).  Plaintiffs have not satisfied either of these essential requirements.

First, there is no indication that the Surrogate's Court relied on Anna Strasberg's representations that Marilyn Monroe died a New York domiciliary.  *See supra* Section IV.C.1. Even were Plaintiffs correct in asserting that the Surrogate's Court had to decide Marilyn Monroe's

---

[Footnote continued from previous page]

interests between Anna Strasberg and the Centre).  Given the extent to which the Freud Centre depends on its income from MMLLC to carry out its mission (*id.* ¶¶ 17-18), it would be unjust and inequitable for this Court to invoke judicial estoppel to make a determination that could effectively extinguish this important source of income to the Centre.  That is particularly so because the predicate statements cannot be attributed to the Centre, which never authorized anybody to speak on its behalf concerning these issues.  (*Id.* ¶ 22.)

domicile in order to determine which law to apply in construing Marilyn Monroe's will, the court would have had to only decide Marilyn Monroe's domicile *at the time her will was executed*, not at the time of her death, which is the issue in this litigation. *See* N.Y. Est. Powers & Trusts Law § 3-5.1(e). Marilyn Monroe's will was executed in January 1961, at the same time as her divorce from Arthur Miller and three months before she returned to California permanently. (SMUF ¶ 2.) Consequently, even were it the case that MMLLC is collaterally estopped from proving that Marilyn Monroe was domiciled in New York in 1961 (the truth of which is far from clear), MMLLC could not be collaterally estopped from proving that Marilyn Monroe died a California domiciliary a year later.

Second, as discussed above, there is no privity between Anna Strasberg, in her role as Administratrix c.t.a. of the Monroe Estate, and MMLLC. *See supra* note 12; *see also Juan C.*, 679 N.E.2d at 1068, 657 N.Y.S.2d at 590 (declining to apply collateral estoppel against party who appeared in two different actions in different capacities). As a result, MMLLC cannot be collaterally estopped from litigating the issue of Marilyn Monroe's domicile in this action.

Finally, the issue of Marilyn Monroe's domicile was never fully litigated in the Surrogate's Court. No one contested Anna Strasberg's statements regarding domicile, and the court made no reference to Marilyn Monroe's domicile in its opinion. *See supra* Section IV.C.1. Because the issue of Marilyn Monroe's domicile was never fully litigated, collateral estoppel cannot apply.[15]

---

[15] Plaintiffs also argue in their Supplemental Brief that the Court should grant summary judgment on other grounds, in violation of the Court's order that this round of supplemental briefing be limited to issues of judicial and collateral estoppel. (Pls.' Supp. Memo. 18-21.) MMLLC respectfully requests that if the Court is inclined to grant summary judgment on these other grounds, MMLLC be afforded an opportunity to submit a short brief explaining why these points do not support granting Plaintiffs summary judgment. MMLLC also incorporates by reference and directs this Court's attention to the numerous undisputed facts substantiating its assertion that Marilyn Monroe died a California domiciliary. (*See*

[Footnote continued on next page]

## VI.    CONCLUSION

The legal prerequisites for applying judicial or collateral estoppel against MMLLC have not been satisfied.  No one has ever prevailed in a prior proceeding based on the assertion that Marilyn Monroe died a New York domiciliary, nor has this point ever actually been litigated or been necessary to the decision of any court or adjudicative body.  MMLLC – the party-sought-to-be-estopped – has never asserted that Marilyn Monroe was a New York domiciliary.  And representations as to domicile simply do not qualify as the kind of purely factual statements to which judicial estoppel can apply.  Consequently, MMLLC should not be deprived of its day in court to prove to the trier of fact that Marilyn Monroe died a California domiciliary.  This Court should therefore deny Plaintiffs' Motion for Summary Judgment.

Dated: New York, New York
       April 13, 2007

Respectfully submitted,

By:      _____/s/  Orin Snyder_____
        Orin Snyder (OS-3122)
        Michelle Craven (MC-8556)

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, New York 10166-0193
Telephone: (212) 351-2400
Facsimile: (212) 351-4335

Attorneys for Defendant/Consolidated Plaintiff
Marilyn Monroe, LLC

Of Counsel:

William E. Wegner
Rod J. Stone
Miguel A. Estrada (ME-4227)
Julian W. Poon
James L. Zelenay, Jr.
Wyatt E. Bloomfield

_____

[Footnote continued from previous page]
    MMLLC's Additional Material Undisputed Facts in Opp'n to Pls.' Mot. for Summ. J. ¶¶ 1-12, Dec. 22, 2006.)