**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SHAW FAMILY ARCHIVES, LTD.,            :
BRADFORD LICENSING, INC., JAMES E.     :
DOUGHERTY, and VALHALLA                :
PRODUCTIONS, LLC                       :    05 CV 3939 (CM)
                                       :
    Plaintiffs/Consolidated Defendants,    :
                                       :    Honorable Colleen McMahon
    v.                                     :
                                       :
CMG WORLDWIDE, INC. and MARILYN        :
MONROE, LLC,                           :
                                       :
    Defendants/Consolidated Plaintiffs.    :
                                       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**RESPONSE TO PLAINTIFFS/CONSOLIDATED DEFENDANTS'**
**SUPPLEMENTAL STATEMENT OF FACTS**

        Defendant/Consolidated Plaintiff Marilyn Monroe, LLC ("MMLLC"), pursuant to Rule

56.1 of the Local Rules of the United States District Court for the Southern District of New

York, respectfully submits the following response to the Supplemental Statement of Facts in

Support of the Cross-Motion of Shaw Family Archives, Ltd. ("SFA") and Bradford Licensing,

Inc. ("Bradford") (collectively, "Plaintiffs") for Summary Judgment, as well as Supplemental

Material Undisputed Facts ("SMUF") in opposition to Plaintiffs' cross-motion for summary

judgment.

**MMLLC'S RESPONSE TO PLAINTIFFS' RULE 56.1  STATEMENT**

        As indicated in MMLLC's individual responses, Plaintiffs have cited evidence that does

not support – or failed to cite evidence that supports – certain of the statements made by them as

required by Rule 56.1(d); certain statements of Plaintiffs' Rule 56.1 Statement contain legal

arguments or improper characterizations; and certain statements need additional facts, information or testimony to make the statements Plaintiffs have made accurate or not misleading. In addition, some statements of Plaintiffs' Rule 56.1 Statement contain inadmissible evidence, and some statements do not contain facts material to Plaintiffs' cross-motion for summary judgment.

MMLLC respectfully requests that the Court strike or disregard Plaintiffs' unsupported, inaccurate, inadmissible or argumentative and conclusory statements. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("[W]here the cited materials do not support the factual assertions in the statements, the Court is free to disregard the assertion." (internal quotations omitted)); *Epstein v. Kemper Ins. Co.*, 210 F.Supp.2d 308, 314 (S.D.N.Y. 2002) ("Statements in a . . . Rule 56.1 statement are inappropriate if they . . . are conclusory or argumentative, or do not cite to supporting evidence.").

With respect to the underlying evidence in purported support of their Supplemental Memorandum of Law in Support their Cross-Motion for Summary Judgment (Pl.'s Supp. Memo.), Plaintiffs submit the Declaration of Chris Serbagi ("Serbagi Decl."), attaching as exhibits thereto various pleadings and other documents that Plaintiffs contend support the imposition of judicial and collateral estoppel in this case.  MMLLC objects to Exhibits B, E, H, I, J, K, O, S, U, W, X, Y, AA, DD, FF, HH, and II of the Serbagi Decl. on the grounds that they contain inadmissible hearsay and inadmissible legal conclusions, lack foundation, are irrelevant and, to the extent they may have minimal, if any, probative value, it is greatly outweighed by their prejudicial effect.

Because the Court explicitly limited the scope of this supplemental briefing to whether judicial or collateral estoppel should apply in this case, MMLLC has not fully addressed

Plaintiffs' purported statements below, or the evidence cited in alleged support of them, to the

extent that they relate to whether the Court should grant summary judgment on the underlying

issues.  By contrast, Plaintiffs improperly raised arguments regarding summary judgment in their

Supplemental Memorandum and in their accompanying papers.  (See Pl.'s Supp. Memo. 18-21.)

Should the Court be inclined to grant summary judgment on these grounds, MMLLC respectfully

requests that it be afforded the opportunity to submit a short brief, and the relevant evidence in

support thereof, explaining why these points do not support granting Plaintiffs summary

judgment.  MMLLC also incorporates by reference and directs this Court's attention to the

numerous undisputed facts substantiating its assertion that Marily Monroe died a California

domiciliary.  (*See* MMLLC's Additional Material Undisputed Facts in Opp'n to Pls.' Mot. for

Summ. J. ¶¶ 1-12 (filed December 22, 2006).)

### Plaintiffs' Statement No. 1:

On August 5, 1962, Ms. Marilyn Monroe died in the State of California, where she was
temporarily staying while she worked on the film "Something's Got to Give."  Serbagi Decl.
¶ 2, Ex. A.

### MMLLC's Response to Plaintiffs' Statement No. 1:

MMLLC disputes Plaintiffs' assertions in this statement.  MMLLC contends that Marilyn

Monroe's stay in California was not temporary, but indefinite.   Nothing in the evidence

Plaintiffs cited suggests that Marilyn Monroe's stay in California was temporary; to the contrary,

the cited evidence repeatedly indicates that Marilyn Monroe's residence in California was her

"home."  *See* Serbagi Decl. Ex. A.  In addition, the evidence cited by Plaintiffs states that

Marilyn Monroe had been dismissed from the film *Something's Got to Give* on June 8, 1962.

*See id.*  MMLLC does not dispute that Marilyn Monroe died on August 5, 1962.

### Plaintiffs' Statement No. 2:

On October 26, 1962, Mr. Aaron Frosch, who was the Executor and Trustee of the Estate of

Marilyn Monroe, filed a Notice of Probate and Will with the New York Surrogate's Court. Serbagi Decl. ¶ 3, Ex. B. This document refers to Ms. Monroe as "late of the City of New York, County of New York, and State of New York." Id.

**MMLLC's Response to Plaintiffs' Statement No. 2:**

MMLLC does not dispute that Aaron Frosch was the Executor and Trustee of the Estate of

Marilyn Monroe and that he filed a Notice of Probate and Will with the New York Surrogate's

Court on October 26, 1962. The Notice of Probate and Will speaks for itself, and MMLLC

respectfully refers the Court to that notice, attached as Exhibit B to the Serbagi Decl., for its

contents.

**Plaintiffs' Statement No. 3:**

Mr. Frosch drafted Ms. Monroe's will in New York and, on January 14, 1961, Ms. Monroe executed the Will in New York. Serbagi Decl. at ¶ 4, Ex. C. MM 0009361-9364.

**MMLLC's Response to Plaintiffs' Statement No. 3:**

MMLLC does not dispute that Ms. Monroe's will was executed in New York on January

14, 1961. MMLLC disputes the assertion that Mr. Frosch drafted Ms. Monroe's will in New

York. Plaintiffs have failed to offer any admissible evidence in support of this assertion and so

the Court should not consider it. *See Epstein v. Kemper Ins. Co.*, 210 F.Supp.2d 308, 314

(S.D.N.Y. 2002) ("Statements in a . . . Rule 56.1 statement are inappropriate if they . . . are

conclusory or argumentative, or do not cite to supporting evidence.").

**Plaintiffs' Statement No. 4:**

The New York Surrogate's Court admitted the Will to probate on October 30, 1962. Serbagi Decl. ¶ 5. Ex. D, MM 0001543-1544.

**MMLLC's Response to Plaintiffs' Statement No. 4:**

MMLLC does not dispute this statement.

**Plaintiffs' Statement No. 5:**

On December 17, 1962, Mr. Frosch filed a Petition for Probate of Foreign Will and Ancillary

Letters Testamentary in California Superior Court.  Serbagi Decl. ¶ 6. Ex. E, MM 0009381-9389.  In that document, Mr. Frosch stated to the Court that "[t]he Will was executed in conformity with the laws of the State of New York, the place where the Testatrix was domiciled at the time of her death . . ." Id. at MM 0009382.  Mr. Frosch made this statement to the Surrogate's Court not only as Executor and Trustee of the Estate, but also based on his longstanding professional relationship with Ms. Monroe.

## MMLLC's Response to Plaintiffs' Statement No. 5:

MMLLC does not dispute that Mr. Frosch filed a Petition for Probate of Foreign Will and for Ancillary Letters Testamentary in California Superior Court.  The petition speaks for itself, and MMLLC respectfully refers the Court to that petition, attached as Exhibit E to the Serbagi Decl., for its full contents.  MMLLC disputes the rest of this so-called "statement," which is nothing more than unsupported assertion.  Plaintiffs have failed to offer any admissible evidence in support of this assertion and so the Court should not consider it.  *See Epstein v. Kemper Ins. Co.*, 210 F.Supp.2d 308, 314 (S.D.N.Y. 2002) ("Statements in a . . . Rule 56.1 statement are inappropriate if they . . . are conclusory or argumentative, or do not cite to supporting evidence.").

## Plaintiffs' Statement No. 6:

By petition dated February 19, 1963, Mr. Frosch represented to the New York Surrogate's Court "that prior to the decedent's death, the claimant, Weissberger & Frosch, represented the decedent in all her legal matters of every kind or nature."  Serbagi Decl. ¶ 7, Ex. F, MM 0009337.

## MMLLC's Response to Plaintiffs' Statement No. 6:

MMLLC does not dispute that Mr. Frosch filed a petition with the New York Surrogate's Court on February 19, 1963.  The petition speaks for itself, and MMLLC respectfully refers the Court to that petition, attached as Exhibit F to the Serbagi Decl., for its full contents.

## Plaintiffs' Statement No. 7:

Mr. Frosch's firm represented Ms. Monroe in her divorce with her ex-husband, Arthur Miller.  Serbagi Decl. ¶ 8, Ex. G, MM 0009437.

**MMLLC's Response to Plaintiffs' Statement No. 7:**

MMLLC does not dispute this statement.

**Plaintiffs' Statement No. 8:**

On March 14, 1963, Mr. Frosch filed an Inventory and Appraisement with the California Superior Court. Serbagi Decl. ¶ 9, Ex. H, MM 0009344-9346. The only property listed by the appraiser that conducted the inventory was Ms. Monroe's real property in California, cash, clothing, and furniture, for a total of $92,781. Id. at MM 0009345-9346. The appraiser did not list any intangible property such as stocks and movie royalties.

**MMLLC's Response to Plaintiffs' Statement No. 8:**

MMLLC does not dispute that Mr. Frosch filed an Inventory and Appraisement with the

California Superior Court on March 14, 1963. The Inventory and Appraisement speaks for itself,

and MMLLC respectfully refers the Court to that Inventory and Appraisement, attached as

Exhibit H to the Serbagi Decl., for its full contents.

**Plaintiffs' Statement No. 9:**

On July 27, 1964, Mr. Frosch filed a Petition for Designation of Appraiser with the New York Surrogate's Court. Serbagi Decl. ¶ 10, Ex. I. In that document, Mr. Frosch repeatedly stated that while Ms. Monroe died in California, she died a "resident of New York." Id. at 1. Mr. Frosch valued the approximate value of the Estate at $846,150.00. Id.

**MMLLC's Response to Plaintiffs' Statement No. 9:**

MMLLC does not dispute that Mr. Frosch filed a petition for Designation of Appraiser

with the New York Surrogate's Court. MMLLC disputes the assertion that this petition

"repeatedly" states that Marilyn Monroe died a "resident of New York." The petition speaks for

itself, and MMLLC respectfully refers the Court to that petition, attached as Exhibit I to the

Serbagi Decl., for its full contents.

**Plaintiffs' Statement No. 10:**

By letter dated March 4, 1966, Mr. Frosch filed with the California Inheritance Tax Appraiser an affidavit by Mr. Frosch and numerous other friends and employees of Ms. Monroe, all of whom detailed numerous facts in support of the Estate's position that Ms. Monroe died a New York domiciliary, including testimony that Ms. Monroe intended to make New York her

permanent home after the completion of the film "Somethings Got to Give."  Serbagi Decl. ¶
11, Ex. J MM 0009297-9298; MM 0009350-60.  Mr. Frosch filed these affidavits in order to
demonstrate that Ms. Monroe was a New York resident so as to avoid paying "inheritance
taxes or taxes on the corpus of the estate" Id.  While all Mr. Frosch needed to prove was that
Ms. Monroe died a non-resident of California, he submitted numerous affidavits, including
his own, that demonstrated that Ms. Monroe died a New York domiciliary. Id.

### MMLLC's Response to Plaintiffs' Statement No. 10:

MMLLC disputes the assertions in this statement because Plaintiffs have failed to offer

any admissible evidence to support these assertions.  The Court cannot consider "facts" on

summary judgment that have absolutely no evidentiary foundation.  Nothing in the evidence

cited by Plaintiffs suggests that Mr. Frosch filed affidavits with the California Inheritance Tax

Appraiser.

Moreover, the affidavits cited by Plaintiffs are inadmissible hearsay and should be

disregarded.  Fed. R. Evid. 802.  First, the affidavits cannot be admitted as party-opponent

admissions pursuant to Fed. R. Evid. 801(d)(2) because MMLLC is not in privity with Mr.

Frosch or Hermione Brown, the attorney who submitted the affidavits, nor did MMLLC adopt

the statements.   30B Graham, *Federal Practice & Procedure: Evidence* § 7019, pp.182-83

(Interim ed. 2000) ("Rule 801(d)(2) alters prior law by omitting any provision declaring either a

statement by a person in privity with another or by one of persons jointly interested to be an

admission by the other or others.").  Second, these affidavits cannot be admitted under the

residual hearsay objection because they are more prejudicial than they are probative.  *See* Fed. R.

Evid. 807.  *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991) ("Congress intended

that the residual hearsay exceptions will be used very rarely, and only in exceptional

circumstances[.]" (internal quotations and citation omitted)).  Third, they are not admissible

pursuant to Fed. R. Evid. 804(b)(1), which governs the admission of testimony given in a former

proceeding, because that rule applies solely to live testimony in court and deposition testimony

involving "direct, cross, or redirect examination," not to written affidavits.  *See Greiner v. Wells*, 417 F.3d 305, 325 (2d Cir. 2005) (affidavits do not fall under the 804(b)(1) hearsay exception because affiants were not subject to prior cross examination).  Additionally, despite Plaintiffs' contention that these affidavits are admissible to show what others believed to be Marilyn Monroe's permanent residence, those beliefs are irrelevant to this proceeding.  It is Marilyn's conduct—not statements made by others after her death—that is ultimately determinative of her domicile.  *See Texas v. Florida*, 306 U.S. 398, 414, 425 (1939) ("[w]hile one's statements may supply evidence of the intention requisite to establish domicile at a given place of residence, they cannot supply the fact of residence there … and they are of slight weight when they conflict with the fact.").  Therefore, the affidavits are inadmissible.  Fed. R. Evid. 402.  Finally, MMLLC objects to these affidavits because they contain inadmissible hearsay and inadmissible legal conclusions, lack foundation, are irrelevant and, to the extent they may have minimal, if any, probative value, it is greatly outweighed by their prejudicial effect.

    MMLLC also disputes that the evidence Plaintiffs cite in favor of this statement establishes that Mr. Frosch or any of the affiants stated that Marilyn Monroe died a New York ***domiciliary*** – the affidavits only state that Marilyn Monroe died a ***resident*** of New York.  MMLLC also disputes that the evidence Plaintiffs cite in favor of this statement establish that Frosch sought to "avoid paying 'inheritance taxes or taxes on the corpus of the estate.'"  Furthermore, MMLLC objects to this statement to the extent that it is nothing more than conclusory, argumentative and factually unsupported assertion.  *See Epstein v. Kemper Ins. Co.*, 210 F.Supp.2d 308, 314 (S.D.N.Y. 2002) ("Statements in a . . . Rule 56.1 statement are inappropriate if they . . . are conclusory or argumentative, or do not cite to supporting evidence.").

---

**Plaintiffs' Statement No. 11:**

On February 18, 1965, Mr. Frosch filed a Petition with the New York Surrogate's Court to increase the bond for the Estate, in which he again represented to the court that Ms. Monroe died "late of New York." Serbagi Decl. ¶ 12, Ex. K. MM 0004802-4805.

**MMLLC's Response to Plaintiffs' Statement No. 11:**

MMLLC does not dispute that Mr. Frosch filed a petition with the New York Surrogate's Court on February 18, 1965.  The petition speaks for itself, and MMLLC respectfully refers the Court to that petition, attached as Exhibit K to the Serbagi Decl., for its full contents.

**Plaintiffs' Statement No. 12:**

On February 25, 1965, the New York Surrogate's Court granted Mr. Frosch's Petition. Serbagi Decl. ¶ 13, Ex. L, MM 0004801.

**MMLLC's Response to Plaintiffs' Statement No. 12:**

MMLLC does not dispute this statement.

**Plaintiffs' Statement No. 13:**

On August 1, 1966, California Franchise Tax Board filed a Creditor's Claim of $3,271.68 with the New York Surrogate's Court against the Estate's assets in New York.  Serbagi Decl. ¶ 14 Ex. M, MM 0000021-23.

**MMLLC's Response to Plaintiffs' Statement No. 13:**

MMLLC does not dispute this statement.

**Plaintiffs' Statement No. 14:**

By Order dated April 5, 1967, the California Inheritance Tax Appraiser accepted Mr. Frosch's argument that Ms. Monroe died a New York resident and determined the tax on the Estate property in California to be only $777.63.  Serbagi Decl. ¶ 15, Ex. N, MM 0009206-0009205.

**MMLLC's Response to Plaintiffs' Statement No. 14:**

MMLLC does not dispute that, on April 5, 1967, the California Inheritance Tax Appraiser issued a report determining taxes in the amount of $777.63.  MMLLC objects to the remainder of this "statement" because it is nothing more than conclusory, argumentative and

factually unsupported assertion. *See Epstein v. Kemper Ins. Co.*, 210 F.Supp.2d 308, 314

(S.D.N.Y. 2002) ("Statements in a . . . Rule 56.1 statement are inappropriate if they . . . are

conclusory or argumentative, or do not cite to supporting evidence."). The report speaks for

itself, and MMLLC respectfully refers the Court to that report, attached as Exhibit N to the

Serbagi Decl., for its full contents.

## Plaintiffs' Statement No. 15:

On May 29, 1969, Mr. Frosch filed another Petition with the New York Surrogate's Court,
requesting that New York State (not California) impose taxes on the gross estate of Marilyn
Monroe, including tangible and intangible property. Serbagi Decl. ¶ 16, Ex. O, MM
0000392-398. Unlike California, the New York gross estate included stocks, insurance
policies and royalty payments. Id. at MM 0000397. Mr. Frosch again represented to the
court that Ms. Monroe died a resident of New York. Id. at MM 0000392.

## MMLLC's Response to Plaintiffs' Statement No. 15:

MMLLC does not dispute that Mr. Frosch filed a petition with the New York Surrogate's

Court on May 29, 1969. MMLLC disputes that this petition requested the imposition of taxes on

the Estate of Marilyn Monroe by the State of California or the State of New York. MMLLC

further disputes that this petition, the only evidence cited by Plaintiffs in support of this

statement, establishes that the New York gross estate calculation is different than California's or

that the New York gross estate includes royalty payments. The petition speaks for itself, and

MMLLC respectfully refers the Court to that petition, attached as Exhibit O to the Serbagi Decl.,

for its full contents.

## Plaintiffs' Statement No. 16:

Based on Mr. Frosch's representations that Ms. Monroe died a New York resident, the
Surrogates Court sent notifications to Estate creditors on October 14, 1969, that Ms. Monroe
died "late of the County of New York." Serbagi Decl. ¶ 17, Ex. P, MM 0000408.

## MMLLC's Response to Plaintiffs' Statement No. 16:

MMLLC disputes that the evidence cited by Plaintiffs in support of this statement does,

in fact, in any way support this statement. Among other things, there is nothing to suggest that

the notification was sent "based on Mr. Frosch's representations." On this basis, MMLLC

disputes this statement. MMLLC objects to this statement to the extent that it is nothing more

than conclusory, argumentative and factually unsupported assertion. *See Epstein v. Kemper Ins.*

*Co.*, 210 F.Supp.2d 308, 314 (S.D.N.Y. 2002) ("Statements in a . . . Rule 56.1 statement are

inappropriate if they . . . are conclusory or argumentative, or do not cite to supporting

evidence."). The notification speaks for itself, and MMLLC respectfully refers the Court to that

notification, attached as Exhibit P to the Serbagi Decl., for its full contents.

### Plaintiffs' Statement No. 17:

On December 30, 1969, the New York Estate Tax Appraiser sent to the Surrogate's Court of
New York a report that detailed the value of the gross estate and stated that Ms. Monroe "died
a resident of the State of New York." Serbagi Decl. ¶ 18, Ex. Q. The assets of the New York
gross estate consisted. in part, of stocks and bonds valued at $61,250.19 and royalties from
films valued at $764,461. Id. at 2.

### MMLLC's Response to Plaintiffs' Statement No. 17:

MMLLC does not dispute that the New York Estate Tax Appraiser sent a report to the

Surrogate's Court of New York on December 30, 1969. MMLLC disputes that this report, the

only evidence cited by Plaintiffs in support of this statement, establishes that the assets of the

New York gross estate consisted, in part, of film royalties or that those royalties were in the

amount of $764,461. The report speaks for itself, and MMLLC respectfully refers the Court to

that report, attached as Exhibit Q to the Serbagi Decl., for its full contents.

### Plaintiffs' Statement No. 18:

By Order dated January 20, 1970, the New York Surrogates Court, relying on the Tax
Appraiser's report, filed an Order identifying the total tax due on the gross estate. Serbagi
Decl. ¶ 19, Ex. R, MM 0000386.

### MMLLC's Response to Plaintiffs' Statement No. 18:

MMLLC does not dispute this statement.

**Plaintiffs' Statement No. 19:**

On or before December 7, 1972, the California Franchise Tax Board found that the estate of Marilyn Monroe owed back taxes on royalty income it received on the films "Some Like it Hot" and the "Misfits" ("Percentage Payments"). Serbagi Decl. ¶ 20, Ex. S, MM 0009213. On December 7, 1972, Mr. Frosch appealed to the California Board of Equalization. Id. at MM 0009211-9252. The issue before the court was whether the Estate would have to pay taxes on the Percentage Payments. Id. at MM 0009212-9213. Mr. Frosch argued that the Estate should not have to pay California taxes on these payments because Ms. Monroe died a New York resident. As stated by Mr. Frosch:

> Because Miss Monroe died a resident of New York, the value at the date of death of her contractual rights to Percentage Payments under the UA agreements was included in the New York estate for purposes of New York estate taxes, and estate taxes were paid to New York based on this valuation . . . Because the FTB has conceded the estate is a non-resident of California, it is only entitled to tax specific income from sources within this State.

Id. at MM 0009213-9214. Mr. Frosch argued that because Ms. Monroe died a New York resident and the California Franchise Tax Board accepted that argument, the Estate should not have to pay taxes of the Percentage Payments in California. In the alternative, Ms. Frosch argued that even if California is entitled to tax the Percentage Payments, the Estate should be entitled to a credit for taxes paid to New York on grounds that the California tax code granted a credit under circumstances where an individual is a resident of California and another state. Id. at MM 0009221. Mr. Frosch also stated that New York tax rates exceeded California rates for all relevant years. Id.

**MMLLC's Response to Plaintiffs' Statement No. 19:**

Based on the evidence cited by Plaintiffs in support of this statement, MMLLC does not dispute that on December 7, 1972, Mr. Frosch appealed the decision of the California Franchise Tax Board to the California Board of Equalization. Otherwise, MMLLC objects to this statement to the extent that it is nothing more than conclusory, argumentative and factually unsupported assertion. See Epstein v. Kemper Ins. Co., 210 F.Supp.2d 308, 314 (S.D.N.Y. 2002) ("Statements in a . . . Rule 56.1 statement are inappropriate if they . . . are conclusory or argumentative, or do not cite to supporting evidence."). The memorandum of law speaks for itself, and MMLLC respectfully refers the Court to that memorandum, attached as Exhibit S to the Serbagi Decl., for its full contents.

**Plaintiffs' Statement No. 20:**

Prior to the resolution of Mr. Frosch's appeal to the California Board of Equalization, photographer Mr. Tom Kelley moved against the Estate by Order to Show Cause before the New York County Surrogate's Court, demanding that Mr. Frosch return certain color transparencies of the decedent. Serbagi Decl. ¶ 21, Ex. T at MM 0007628-7627. Mr. Kelley characterized Ms. Monroe as domiciled in New York at the time of her death. Id. at MM 0007625.

**MMLLC's Response to Plaintiffs' Statement No. 20:**

MMLLC does not dispute that Tom Kelley filed documents against the Estate in New York County Surrogate's Court or that said documents include the allegation that Marilyn Monroe was domiciled in the State of New York at the time of her death. Otherwise, MMLLC objects to this statement to the extent that it is nothing more than conclusory and argumentative assertion. *See Epstein v. Kemper Ins. Co.*, 210 F.Supp.2d 308, 314 (S.D.N.Y. 2002) ("Statements in a . . . Rule 56.1 statement are inappropriate if they . . . are conclusory or argumentative, or do not cite to supporting evidence."). The documents speaks for themselves, and MMLLC respectfully refers the Court to that order, attached as Exhibit T to the Serbagi Decl., for its full contents.

**Plaintiffs' Statement No. 21:**

Mr. Frosch never contested Mr. Kelley's representation that Ms. Monroe died a New York domiciliary. In fact, he implicitly recognized that it was true by stating to the court that (i) Mr. Kelley is entitled to the return of the transparencies and (ii) "that Decedent has no rights of privacy and her Estate has no exclusive rights to her image." Serbagi Decl. ¶ 22, Ex. U at MM 0000240-241.

**MMLLC's Response to Plaintiffs' Statement No. 21:**

MMLLC objects to this statement because it is nothing more than conclusory, argumentative and factually unsupported assertion. *See Epstein v. Kemper Ins. Co.*, 210 F.Supp.2d 308, 314 (S.D.N.Y. 2002) ("Statements in a . . . Rule 56.1 statement are inappropriate if they . . . are conclusory or argumentative, or do not cite to supporting evidence.").

**Plaintiffs' Statement No. 22:**

On or about April 22, 1975, the California Board of Equalization ("'BOE") rendered its decision on Mr. Frosch's December 7, 1972 appeal on the issue of whether the Estate would have to pay California taxes of the Percentage Payments of "Some Like it Hot" and "The Misfits." Serbagi Decl. ¶ 23, Ex. V at MM 0000087-98.  The BOE denied Mr. Frosch's appeal and held that the Estate owed taxes on the Percentage Payments because Ms. Monroe performed those services in California. Id. at MM 0000089.  The BOE repeatedly held that Ms. Monroe was not a California resident and that the set off would only apply if Ms. Monroe has also been a California resident. Id. at MM 0000090.  In particular, the BOE characterized Mr. Frosh as making the argument that Ms. Monroe died a New York domiciliary. Id. at MM 0000096.  The BOE characterized Mr. Frosch as arguing that the Estate should not have to pay California taxes on the Percentage Payments because it is an intangible contract right whose "situs . . . was in the state of appellant's domicile or residence," and "the income was in appellant's domiciliary state, New York." Id. at MM 0000094.  The BOE rejected Mr. Frosch's argument and stated that, although it is true that the Estate is a different taxpayer than Ms. Monroe, "for this purpose. as for many other, it stands in the shoes of its decedent." Id. at MM 0000095.  The BOE also rejected Mr. Frosch's argument that the Estate is entitled to a credit against taxes if paid in New York because "Ms. Monroe having been a [New York] resident at the time of her death, appellant is not a resident of California and is not entitled to the tax credit authorized by section 18004." Id. at MM 0000096.

**MMLLC's Response to Plaintiffs' Statement No. 22:**

MMLLC does not dispute that, on April 22, 1975, the California Board of Equalization ("BOE") rendered its decision on Mr. Frosch's December 7, 1972 appeal, that the BOE rejected all of Mr. Frosch's arguments and that the appeal was denied.  Otherwise, MMLLC objects to this statement to the extent that it is a conclusory and argumentative assertion. *See Epstein v. Kemper Ins. Co.*, 210 F.Supp.2d 308, 314 (S.D.N.Y. 2002) ("Statements in a . . . Rule 56.1 statement are inappropriate if they . . . are conclusory or argumentative, or do not cite to supporting evidence.").  The decision of the BOE speaks for itself, and MMLLC respectfully refers the Court to this decision, attached as Exhibit V to the Serbagi Decl., for its full contents.

**Plaintiffs' Statement No. 23:**

On May 21, 1976, Mr. Frosch filed a First and Final Account of Ancillary Executor with the Superior Court of the State of California, County of Los Angeles.  Serbagi Decl. ¶ 24, Ex. W. In this filing, Frosch sought, among other things, statutory and extraordinary executor's commissions and attorney's fees. Id. at 1.  Throughout this document, Mr. Frosch refers to Ms. Monroe as being a New York resident.  Mr. Frosch also referred to the affidavits of non-

residence he filed in California and asserted he obtained a determination that Ms. Monroe was a non-resident of California at the time of her death. Id. at 8. In this document, Mr. Frosch stated that since all creditors to the Estate of Marilyn Monroe were to be paid after the final accounting, and because Ms. Monroe's Will was probated in New York, "where decedent was domiciled at her death," that all of the assets be delivered to him. as executor, so that her assets could be distributed pursuant to the decedent's will "under the laws of the State of New York." Id. at 14.

**MMLLC's Response to Plaintiffs' Statement No. 23:**

MMLLC does not dispute that, on May 21, 1976, Mr. Frosch filed a First and Final Account of Ancillary Executor with the Superior Court of the State of California. Otherwise, MMLLC objects to this statement to the extent that it is a conclusory and argumentative assertion. *See Epstein v. Kemper Ins. Co.*, 210 F.Supp.2d 308, 314 (S.D.N.Y. 2002) ("Statements in a . . . Rule 56.1 statement are inappropriate if they . . . are conclusory or argumentative, or do not cite to supporting evidence."). Mr. Frosch's Account speaks for itself, and MMLLC respectfully refers the Court to this filing, attached as Exhibit W to the Serbagi Decl., for its full contents.

**Plaintiffs' Statement No. 24:**

On or about August 14, 1980, Mr. Frosch filed a Petition for Final Accounting in the New York Surrogate's Court. Serbagi Decl. ¶ 25, Ex. X, MM 0001310-1319. Mr. Frosch told the court that Ms. Monroe died a New York domiciliary. Id. at MM 0001310. He also referred to a State of California proceeding, in which he argued that Ms. Monroe died a California resident. Id. at MM 0001315. Again, Frosch stated that he successfully convinced the State that Ms. Monroe died a New York resident, which he needed to do in order to avoid paying California taxes on the corpus of the estate. Id. at MM 0001315.

**MMLLC's Response to Plaintiffs' Statement No. 24:**

MMLLC does not dispute that, on or about August 14, 1980, Mr. Frosch filed a Petition for Final Accounting in the New York Surrogate's Court. MMLLC disputes that the evidence Plaintiffs cite in favor of this statement establishes that Mr. Frosch told the court that Marilyn Monroe died a New York *domiciliary* – it establishes only that Mr. Frosch told the court that she died a *resident* of New York. Furthermore, MMLLC objects to this statement to the extent that

it is a conclusory, argumentative and factually unsupported assertion. *See Epstein v. Kemper Ins. Co.*, 210 F.Supp.2d 308, 314 (S.D.N.Y. 2002) ("Statements in a . . . Rule 56.1 statement are inappropriate if they . . . are conclusory or argumentative, or do not cite to supporting evidence."). Mr. Frosch's Petition speaks for itself, and MMLLC respectfully refers the Court to this filing, attached as Exhibit X to the Serbagi Decl., for its full contents.

**Plaintiffs' Statement No. 25:**

Aaron Frosch died on April 29, 1989. On or about July 7, 1989, Ms. Anna Strasberg filed a "'Petition for Letters of Administration" with the Will Annexed with the New York Surrogate's Court. Serbagi Decl. ¶ 26, Ex. Y, at MM 0000025-27. Ms. Strasberg represented that Ms. Monroe died a New York resident. Id. at MM 0000026.

**MMLLC's Response to Plaintiffs' Statement No. 25:**

MMLLC does not dispute that Aaron Frosch died on April 29, 1989, and that, on or about July 17, 1989, Ms. Anna Strasberg filed a Petition for Letters of Administration with the Will Annexed with the New York Surrogate's Court. Ms. Strasberg's Petition speaks for itself, and MMLLC respectfully refers the Court to this filing, attached as Exhibit Y to the Serbagi Decl., for its full contents.

**Plaintiffs' Statement No. 26:**

On July 21, 1989, the New York Surrogate's Court granted Ms. Strasberg's Petition. Serbagi Decl. ¶ 27, Ex. Z, MM 0000423-424.

**MMLLC's Response to Plaintiffs' Statement No. 26:**

MMLLC does not dispute this statement.

**Plaintiffs' Statement No. 27:**

On July 28, 1989, by Order to Show Cause, Ms. Strasberg filed a Petition for the Construction of Wills with the New York Surrogate's Court. Serbagi Decl. ¶ 28, Ex. AA, MM 0000241-0250. Ms. Strasberg owned seventy-five percent of the residuary Estate. She filed the Petition to obtain a ruling as to the remaining twenty-five percent that Ms. Monroe left Ms. Marianne Kris to be "used by her for the furtherance of he work of such psychiatric institutions or groups as she shall select." Id. at MM 0000246. Ms. Strasberg argued for a construction of the Kris will that would have precluded twenty-five percent of the Estate to be

16

assigned to further Kris' work in the area of psychiatry, as Ms. Monroe intended. Additionally, Ms. Strasberg request that the Court determine whether the Anna Freud Centre was the same entity which Dr. Kris had devised her rights in Ms. Monroe's Estate. Id. at 0000248-249. In support of Ms. Strasberg's position, she argued that Ms. Monroe died a New York domiciliary. Id. at MM 0000243. Ms. Strasberg stated:

> The Decedent died on August 5, 1962, <u>domiciled in the City and State of New York</u>, leaving a last Will and Testament dated January 14, 1961 which was admitted to probate in this Court on October 30, 1962, and Letters Testamentary were issued to Aaron R. Frosch, the Executor named in the Will, on October 30, 1962.

Id. at MM 0000243-44 (emphasis added).

## MMLLC's Response to Plaintiffs' Statement No. 27:

MMLLC does not dispute that Ms. Strasberg, in her role as Adminstratrix c.t.a. of the Estate, filed a Petition for Construction of Wills with the New York Surrogate's Court on July 28, 1989, and that Ms. Strasberg owned 75% of the residuary Estate. Otherwise, MMLLC objects to this statement to the extent that it is a conclusory and argumentative assertion. *See Epstein v. Kemper Ins. Co.*, 210 F.Supp.2d 308, 314 (S.D.N.Y. 2002) ("Statements in a . . . Rule 56.1 statement are inappropriate if they . . . are conclusory or argumentative, or do not cite to supporting evidence."). The Petition speaks for itself, and MMLLC respectfully refers the Court to this filing, attached as Exhibit AA to the Serbagi Decl., for its full contents.

## Plaintiffs' Statement No. 28:

In an undated decision and decree dated April 30, 1990, the New York Surrogate's Court declined to construe the Monroe and Kris Wills in the manner Ms. Strasberg would have preferred, and awarded the remaining twenty-five percent of the Estate to the Anna Freud Centre. Serbagi Decl. ¶ 29, Ex. BB. Significantly, the court cited and applied New York statutory and case law to construe both wills. Id. at 2-4. By applying New York law to the construction of Ms. Monroe's will, it adopted and relied on Ms. Strasberg's representation that Ms. Monroe died a New York domiciliary.

## MMLLC's Response to Plaintiffs' Statement No. 28:

MMLLC does not dispute that the New York Surrogate's Court issued a decree dated

17

April 30, 1990, or that it issued a previous, undated opinion regarding Ms. Strasberg's July 28,

1989 Petition for Construction of Wills.  MMLLC disputes Plaintiffs' conclusory and factually

unsupported assertion that the New York Surrogate's Court's application of New York law to the

construction of Marilyn Monroe's will meant that it adopted and relied on Ms. Strasberg's

representation that Ms. Monroe died a New York domiciliary.  This assertion is not supported in

the evidence Plaintiffs cite and it is flatly rejected by the law.  MMLLC also disputes that the

evidence Plaintiffs cite in favor of this statement establishes that Ms. Strasberg "would have

preferred" the New York Surrogate's Court to construe the Monroe and Kris Wills in a different

manner.  Furthermore, MMLLC objects to this statement to the extent that it is a conclusory,

argumentative and factually unsupported assertion.  *See Epstein v. Kemper Ins. Co.*, 210

F.Supp.2d 308, 314 (S.D.N.Y. 2002) ("Statements in a . . . Rule 56.1 statement are inappropriate

if they . . . are conclusory or argumentative, or do not cite to supporting evidence.").  The decree

and decision speaks for themselves and MMLLC respectfully refers the Court to them, attached

as Exhibit BB to the Serbagi Decl., for their full contents.

## Plaintiffs' Statement No. 29:

On September 16, 1992, an individual by the name of Nancy Miracle a/k/a Nancy Mariscalo Green ("Ms. Miracle"), sued Ms. Strasberg in her capacity as Administratrix of the Estate, in the United States District Court for the District of Hawaii.  Serbagi Decl. ¶ 30, Ex. CC, MM 0001525-1528.  Ms. Miracle claimed that she was entitled to a fifty percent share of Ms. Monroe's estate as a pretermitted heir.  Id. at MM 0001527.

## MMLLC's Response to Plaintiffs' Statement No. 29:

MMLLC does not dispute that, on September 16, 1992, an individual calling herself

Nancy Miracle a/k/a Nancy Mariscalo ("Ms. Miracle") filed a complaint against Ms. Strasberg,

in her capacity as Administratrix of the Estate, in the United States District Court for the District

of Hawaii.  Ms. Miracle's Complaint speaks for itself, and MMLLC respectfully refers the Court

to this filing, attached as Exhibit CC to the Serbagi Decl., for its full contents.

**Plaintiffs' Statement No. 30:**

In her memorandum in support of her motion to dismiss the Complaint, Ms. Strasberg repeatedly argued that Ms. Monroe died a <u>New York domiciliary</u>. Serbagi Decl. ¶ 31 Ex. DD, MM 0001510-1544. In particular, in support of Ms. Strasberg's position that choice of law principles require the application of New York law, Ms. Strasberg stated:

> Under common law and the Hawaii Uniform Probate Code, then, the decedent's domicile at the time of her death determines what law will be applied. Plaintiff has not disputed the Surrogates determination that Marilyn Monroe was a New York Domiciliary at the time of her death. This Court is asked to take judicial notice of the decision of New York County Surrogate's Court dated March 5, 1990 and the finding contained therein that Marilyn Monroe executed her Last Will and Testament on January 14. 1961.

<u>Id</u>. at MM 0001514 (emphasis added).

**MMLLC's Response to Plaintiffs' Statement No. 30:**

MMLLC does not dispute that Ms. Strasberg, in her capacity as Administratrix c.t.a. of the Estate, filed a motion to dismiss Ms. Miracle's Complaint and a memorandum of law in support thereof. Ms. Strasberg's memorandum speaks for itself, and MMLLC respectfully refers the Court to this filing, attached as Exhibit DD to the Serbagi Decl., for its full contents.

**Plaintiffs' Statement No. 31:**

Ms. Strasberg strenuously argued in her motion papers that the court should dismiss Ms. Miracle's case because the New York State Decedent Estate Law did not permit recovery for children born before a testator executed her will. <u>Id</u>. at MM 0001515-16. Ms. Miracle was born in 1946 and Ms. Monroe executed her will on January 14, 1961. Thus, whether or not the Court applied New York law was central to the motion.

**MMLLC's Response to Plaintiffs' Statement No. 31:**

MMLLC does not dispute that Ms. Strasberg, in her capacity as Administratrix c.t.a. of the Estate, filed a motion to dismiss Ms. Miracle's Complaint and filed a memorandum of law in support thereof. MMLLC also does not dispute that Marilyn Monroe's will was executed on January 14, 1961, or that Ms. Miracle claimed to have been born in 1946. Otherwise, MMLLC objects to this statement to the extent that it is a conclusory, argumentative and factually

unsupportable assertion. *See Epstein v. Kemper Ins. Co.*, 210 F.Supp.2d 308, 314 (S.D.N.Y. 2002) ("Statements in a . . . Rule 56.1 statement are inappropriate if they . . . are conclusory or argumentative, or do not cite to supporting evidence."). MMLLC also disputes Plaintiffs' characterization of Ms. Strasberg's arguments as "strenuous[]." Ms. Strasberg's memorandum speaks for itself, and MMLLC respectfully refers the Court to this filing, attached as Exhibit DD to the Serbagi Decl., for its full contents.

## Plaintiffs' Statement No. 32:

Ms. Strasberg also argued that the Hawaii District Court lacked personal jurisdiction over her because she had lacked sufficient contacts with the forum. Again, Ms. Strasberg relied, at least in part, on her position that Ms. Monroe died a New York domiciliary. Ms. Strasberg stated to the Court:

> The claim is to a share of the decedent's estate, allegedly as a pretermitted heir. Yet plaintiff concedes that that she herself was born in New York, the decedent's will was admitted to probate in New York (based upon at least one finding that the decedent was domiciled in New York at her death) and there is no claim that the decedent possessed any property in Hawaii at her death.

Id. at MM 0001522.

## MMLLC's Response to Plaintiffs' Statement No. 32:

MMLLC does not dispute that Ms. Strasberg, in her capacity as Administratrix c.t.a. of the Estate, filed a motion to dismiss Ms. Miracle's Complaint and a memorandum of law in support thereof. MMLLC also does not dispute that this motion was based, in part, on the argument that the Hawaii District Court lacked personal jurisdiction over Ms. Strasberg, in her capacity as Administratrix c.t.a. of the Estate. Otherwise, MMLLC objects to this statement to the extent that it is a conclusory, argumentative and factually unsupportable assertion. *See Epstein v. Kemper Ins. Co.*, 210 F.Supp.2d 308, 314 (S.D.N.Y. 2002) ("Statements in a . . . Rule 56.1 statement are inappropriate if they . . . are conclusory or argumentative, or do not cite to supporting evidence."). Ms. Strasberg's memorandum speaks for itself, and MMLLC

respectfully refers the Court to this filing, attached as Exhibit DD to the Serbagi Decl., for its full

contents.

**Plaintiffs' Statement No. 33:**

Ms. Miracle argued that California law should apply to her claims.  Serbagi Decl. ¶ 32, Ex.
EE at MM 0001417.  Ms. Strasberg argued against that position.

**MMLLC's Response to Plaintiffs' Statement No. 33:**

MMLLC does not dispute that Ms. Miracle opposed the motion to dismiss her complaint,

filed by Ms. Strasberg, in her capacity as Administratrix c.t.a. of the Estate.  Otherwise, MMLLC

objects to this statement to the extent that it is a conclusory, argumentative and factually

unsupportable assertion.  *See Epstein v. Kemper Ins. Co.*, 210 F.Supp.2d 308, 314 (S.D.N.Y.

2002) ("Statements in a . . . Rule 56.1 statement are inappropriate if they . . . are conclusory or

argumentative, or do not cite to supporting evidence.").  Ms. Miracles's opposition brief speaks

for itself and MMLLC respectfully refers the Court to this filing, attached as Exhibit EE to the

Serbagi Decl., for its full contents.

**Plaintiffs' Statement No. 34:**

On or about November 24. 1992, Ms. Strasberg filed a motion in opposition to Ms. Miracle's
motion to conduct limited discovery prior to the Court's determination of the motion to
dismiss.  Serbagi Decl. ¶ 32, Ex. FF, MM 0001469-1473.  Ms. Miracle stated that she needed
to conduct discovery on the issue of Ms. Monroe's domicile at the time of her death. In
opposition to that request, Ms. Strasberg stated:

> The first non issue - decedent's domicile at death - was not raised as
> an issue in plaintiff's pleading; counsel's speculation that the
> decedent 'may not have been domiciled in New York at the time of
> her death . . .' is unsupported, is not an issue in plaintiff's pleading,
> and, in fact, is implicitly contrary to the New York Surrogate's Court
> Decree admitting the will to probate in New York. Even if judged to
> be of some relevance, plaintiff may not put the "domicile at death"
> issue into play by mere speculation in his affidavit . . . the request for
> a continuance in order to do discovery should also be denied because
> the discovery cannot possible defeat the motion to dismiss.

Id. at MM 0001472-73.

**MMLLC's Response to Plaintiffs' Statement No. 34:**

MMLLC does not dispute that Anna Strasberg, in her capacity as Administratrix c.t.a. of the Estate, filed a memorandum in opposition to Ms. Miracle's motion to shorten time to compel discovery. MMLLC disputes that the evidence cited by Plaintiffs supports their assertion that Ms. Miracle stated that she needed to conduct discovery on the issue of Ms. Monroe's domicile at the time of her death. Ms. Strasberg's memorandum speaks for itself and MMLLC respectfully refers the Court to this filing, attached as Exhibit FF to the Serbagi Decl., for its full contents.

**Plaintiffs' Statement No. 35:**

By Order dated December 23, 1992, the Court granted Ms. Strasberg's motion to dismiss the Complaint. Serbagi Decl. ¶ 34, Ex. GG MM 0000268-0000282. The court not only adopted Ms. Strasberg's representation that Ms. Monroe died a New York domiciliary, it played a significant role in the basis of the ruling. Turning to Ms. Strasberg's motion for failure to state a claim, the court held that the choice of the applicable law is "critical" because while New York law would bar Ms. Miracle's claims, California law would not. Id. at MM 0000279-281. In support of its position that New York law applied to the substantive claims, the court specifically adopted Ms. Strasberg' s position that Ms. Monroe died a New York domiciliary. As stated by the court:

> Plaintiff's cause of action arose because of her alleged birth to the decedent in New York and the decedent's subsequent death (while domiciled in New York) with a will executed in New York that failed to provide for Plaintiff. The will was admitted to probate in New York, and the estate was administered in New York under the supervision of courts of that state.

Id. at MM 0000280. In further support of its position that New York law applied, the court stated:

> The result is the same under the Hawaii Uniform Probate Code, which provides that the decedent's domicile at the time of death determines the law that will be applied. Here, the New York Surrogate Court determined that Marilyn Monroe was a New York domiciliary at the time of her death.

Id. at MM 0000281, n.3 (emphasis added). The court also concluding that it lacked personal jurisdiction over Ms. Strasberg and stated that "New York was where decedent was domiciled at her death." Id. at MM 0000275.

## MMLLC's Response to Plaintiffs' Statement No. 35:

MMLLC does not dispute that the United States District Court for the District of Hawaii issued an Order Granting Defendant's Motion to Dismiss, which included the finding that the District Court lacked personal jurisdiction over Anna Strasberg in her capacity as Adminstratrix c.t.a. of the Estate.  Otherwise, MMLLC objects to this statement to the extent that it is a conclusory, argumentative and factually unsupportable assertion.  *See Epstein v. Kemper Ins. Co.*, 210 F.Supp.2d 308, 314 (S.D.N.Y. 2002) ("Statements in a . . . Rule 56.1 statement are inappropriate if they . . . are conclusory or argumentative, or do not cite to supporting evidence.").  In particular, MMLLC disputes Plaintiffs' assertions that the District Court adopted Ms. Strasberg's representation and that the representation played a significant role in the basis of the ruling, when that court decided the motion on personal jurisdiction grounds.  *See* Serbagi Decl. Ex. GG at MM 0000277.  The District Court's Order speaks for itself and MMLLC respectfully refers the Court to this order, attached as Exhibit GG to the Serbagi Decl., for its full contents.

## Plaintiffs' Statement No. 36:

On or about February 26, 2002, Ms. Miracle filed a petition with New York County Surrogate's Court.  Serbagi Decl. ¶ 35, Ex. HH, MM 0007507-7512.  Ms. Miracle claimed that she was Marilyn Monroe's child and requested that the original Letters Testamentary to Aaron Frosch and the Letters of Administration of Anna Strasberg be set aside and significant money damages. Id. at 0007511-7512. Furthermore, Ms. Miracle changed her legal position and asserted that Ms. Monroe "died domiciled a domiciliary of New York County."  Id. at MM 0007508.

## MMLLC's Response to Plaintiffs' Statement No. 36:

MMLLC does not dispute that Ms. Miracle filed a petition with the New York County Surrogate's Court on or about February 26, 2002.  Otherwise, MMLLC objects to this statement to the extent that it is a conclusory and argumentative assertion.  *See Epstein v. Kemper Ins. Co.*, 210 F.Supp.2d 308, 314 (S.D.N.Y. 2002) ("Statements in a . . . Rule 56.1 statement are

inappropriate if they . . . are conclusory or argumentative, or do not cite to supporting

evidence."). Ms. Miracle's Petition speaks for itself and MMLLC respectfully refers the Court

to this order, attached as Exhibit HH to the Serbagi Decl., for its full contents.

**Plaintiffs' Statement No. 37:**

In response, Ms. Strasberg filed a motion to dismiss Ms. Miracle's petition. Serbagi Decl. ¶ 36 Ex. II, MM 0003084-0003095.

**MMLLC's Response to Plaintiffs' Statement No. 37:**

MMLLC does not dispute this statement.

**Plaintiffs' Statement No. 38:**

By Order dated June 13,2002, the New York Surrogate's Court, dismissed Ms. Miracle's petition. Serbagi Decl. ¶ 37, Ex. JJ, MM 0007507-7512, MM 0000234-MM 0000238. The New York Surrogate's court held, inter alia, that because the Hawaii district court did not have jurisdiction over Ms. Strasberg, Ms. Miracle was not barred from bringing her substantive claim here. Id. at MM 0000236-237. The court dismissed her petition for failure to provide evidence of maternity. Id. at MM 0000237.

**MMLLC's Response to Plaintiffs' Statement No. 38:**

MMLLC disputes this statement. On June 13, 2002, the New York Surrogate's Court

issued an order dismissing one defendant and converting Ms. Miracle's petition to a motion

for summary judgment. This order speaks for itself and MMLLC respectfully refers the

Court to this order, attached as Exhibit JJ to the Serbagi Decl., for its full contents.

## SUPPLEMENTAL MATERIAL UNDISPUTED FACTS

In addition, MMLLC submits these additional facts in opposition to Plaintiff' cross-motion for summary judgment:

1.    MMLLC is a recently-formed company that manages certain intellectual property rights that were formerly a portion of the assets originally contained in the Monroe Estate. (Declaration of Anna Strasberg, dated Apr. 13, 2007 ("Strasberg Decl.") ¶¶ 8-9.)

2.    Marilyn Monroe's will was executed in New York in January 1961, at the same time as her divorce from Arthur Miller and three months before she returned to California permanently.  (Serbagi Decl. Ex. C.)

3.    Marilyn Monroe died on August 5, 1962.  (Strasberg Decl. ¶ 2.)

4.    The residuary clause of Marilyn Monroe's will provided that the residue of her estate, after distribution of several specific devises to her mother and others, was to be distributed 25 percent to Dr. Marianne Kris (one of her psychiatrists), and 75 percent to Lee Strasberg, her close friend and acting coach.  (Serbagi Decl. Ex. C at 2-3.)

5.    The will also named Aaron Frosch, Marilyn Monroe's New York-based attorney, as the executor.  (Strasberg Decl. Ex. C at 3.)

6.    The decision to generally probate Marilyn Monroe's will in New York was a matter of convenience for Mr. Frosch.  (Strasberg Decl. ¶ 6.)  Living in New York at the time of Marilyn Monroe's death, Mr. Frosch suffered from multiple sclerosis and did not like to travel. (*Id.*)  Accordingly, he chose New York for original probate, rather than California, where Marilyn Monroe owned her only home, made her living as an actress, and died.  (*Id.*)

7.    Mr. Frosch's notice of probate filed with the New York Surrogate's Court on October 26, 1962, stated that Marilyn Monroe was "late of the City of New York."  (Serbagi

Decl. Ex. B.)  Mr. Frosch did not assert that Marilyn Monroe was a New York domiciliary, nor

was such an assertion necessary to admit the will to probate in New York.  (*Id.*)

8.    The New York Surrogate's Court, finding probate of Marilyn Monroe's will "not

having been contested," admitted her will to probate and issued letters testamentary to Mr.

Frosch on October 30, 1962.  (Serbagi Decl. Ex. D at 1.)

9.    Mr. Frosch was also appointed executor of the Monroe Estate in ancillary probate

proceedings in California, where the Los Angeles Superior Court admitted Marilyn Monroe's

will on January 21, 1963.  (Serbagi Decl. Ex. S at 2.)

10.    Mr. Frosch served as executor of the Monroe Estate for over 26 years, until his

death on April 9, 1989.  (Strasberg Decl. ¶ 8.)

11.    In 1968, six years after probate of the Monroe Estate commenced, Lee Strasberg

married Anna Strasberg.  (Strasberg Decl. ¶ 4.)  Anna Strasberg had no involvement with the

Monroe Estate until 1982, when Lee Strasberg died and Anna Strasberg was named Executor of

the Estate of Lee Strasberg ("Strasberg Executor").  (*Id.* ¶ 7.)

12.    Anna Strasberg was also the sole beneficiary under Mr. Strasberg's will, thus

entitling her to receive Mr. Strasberg's interest in the Monroe Estate.  (Strasberg Decl. ¶ 7.)

13.    Anna Strasberg continued to serve as Strasberg Executor through the creation of

MMLLC in 2001.  (Strasberg Decl. ¶ 7.)

14.    Dr. Kris died on November 23, 1980.  (Declaration of Ros Bidmead, dated Apr.

11, 2007 ("Bidmead Decl.") ¶ 11.)

15.    Dr. Kris's 25 percent interest in the residuary of the Monroe Estate passed to The

Anna Freud Centre for Psychoanalytic Study and Treatment of Children (the "Freud Centre").

(Serbagi Decl. Ex. BB at 2-6.)

16.     Based in London, England, the Freud Centre is a world-renowned facility, dedicated to improving the mental health of children through research and treatment.  (Bidmead Decl. ¶ 2.)

17.     Approximately 20% of the Freud Centre's operating expenses are funded by income received from MMLLC, resulting from the commercialization of Marilyn Monroe's publicity rights and other intellectual property associated with Marilyn Monroe.  (Bidmead Decl. ¶ 16.)

18.     The loss of these earnings would have a significant impact upon the range of services that the Freud Centre could provide to the children and families it assists.  (Bidmead Decl. ¶ 16.)

19.     In 1989, following Mr. Frosch's death, the New York Surrogate's Court appointed Anna Strasberg as Administratrix, c.t.a of the Monroe Estate ("Administratrix"). (Serbagi Decl. Exs. Y-Z.)

20.     The Monroe Estate remained open until June 19, 2001, on which date the Surrogate's Court authorized the Administratrix to close the estate and transfer the residuary assets to MMLLC, a Delaware company formed to hold and manage the intellectual property assets of the residuary beneficiaries of Marilyn Monroe's will.  (Strasberg Decl. ¶ 8, Ex. C.)

21.     MMLLC was formed on July 5, 2001, and interests in the company were assigned as follows:  (1) 25% to the Freud Centre, and (2) 75% to Anna Strasberg, as Strasberg Executor (and sole beneficiary of the Lee Strasberg Estate).  (Strasberg Decl. ¶¶ 9, Ex. F.)

22.     The Freud Centre has never taken the position or asserted that Marilyn Monroe was a New York domiciliary.  (Bidmead Decl. ¶ 19).  The Freud Centre has never authorized

anyone to speak on its behalf – or bind its interests as an owner of MMLLC – regarding Marilyn Monroe's domicile, residence, or Right of Publicity.  (*Id.*)

23.    Marilyn Monroe owned personal property in her apartment in New York, New York, at the time of her death.  (Declaration of Michelle Craven, dated Apr. 13, 2007 ("Craven Decl.") ¶ 3, Ex. B).

**California Tax Appraiser**

24.    On March 4, 1966, Marilyn Monroe's attorneys sent a letter to the California Inheritance Tax Appraiser responsible for Marilyn Monroe's estate, requesting that the appraiser issue a "no tax certificate" with respect to property in California that Marilyn Monroe had devised by will.  (Serbagi Decl. Ex. J at 1-2.)  Mr. Frosch submitted an affidavit in support of that letter.  (*Id.*, Affidavit Concerning Residence.)

25.    In a report filed with the Los Angeles Superior Court, the appraiser ***turned down this request and assessed*** inheritance taxes of $777.  (Serbagi Decl. Ex. N at 1-2.)  Although the appraiser in his report repeated Mr. Frosch's statement that Marilyn Monroe died a New York resident (*id.* at 1), Mr. Frosch and the Monroe Estate lost and failed to prevail on their request for a no-tax certificate from the appraiser, ending up with a bill for California inheritance taxes instead.  (Serbagi Decl. Exs. J and N.)

26.    The Monroe Estate paid taxes on all non-California property in New York, and any other decision by the appraiser would have resulted in double taxation.  (Serbagi Decl. Ex. O.)

27.    Years later, in the context of another proceeding, Mr. Frosch may have stated that the Monroe Estate was "successful."  (Serbagi Decl. Ex. X at 6.)  This statement was mere puffery, however, and is belied by the actual record facts.  (Serbagi Decl. Ex. N.)

**Tom Kelley's Representations to the New York Surrogate's Court**

28.     Over the years, the executor and beneficiaries of the Monroe Estate have disagreed with each other about the distribution of the estate's assets and the construction of Marilyn Monroe's will.  Frosch initially claimed that he had no reason to believe certain transparencies were not owned by Tom Kelley; Lee Strasberg later asserted that Marilyn Monroe had purchased them from Kelley, thus entitling Strasberg to them under Monroe's will.  (Craven Decl. Ex. A.)

29.     Third-party photographer Tom Kelley represented to the New York Surrogate's Court in 1972 that Marilyn Monroe died a New York domiciliary in connection with his claim to ownership of certain photographic transparencies allegedly possessed by the Monroe Estate. (Serbagi Decl. Ex. T.)

30.      Mr. Kelley was not a beneficiary or administrator of the Monroe Estate and he has no relationship whatsoever with MMLLC.  In fact, in the proceedings before the Surrogate's Court, Mr. Kelley was adverse to one of the Monroe Estate's beneficiaries, Lee Strasberg, by contesting the rights to property (transparencies of photographs of Marilyn Monroe) lawfully belonging to the estate.  (Serbagi Decl. Ex. T.)

**Anna Strasberg's Role as Administratrix in the New York Surrogate's Court**

31.     Anna Strasberg's interests were previously adverse to the interests of the Freud Centre, the other shareholder in MMLLC.  In 1989, the Freud Centre filed a petition in the New York Surrogate's Court to appoint a successor fiduciary of the Estate of Marilyn Monroe. (Serbagi Decl. Ex. Z at 1-2.)  Anna Strasberg, in her capacity as Strasberg Executor, filed a cross-petition to be appointed Administratrix c.t.a. of the Estate of Marilyn Monroe.  (*Id.*)  The Court granted Anna Strasberg's cross-petition and denied the Freud Centre's petition.  (*Id.*)

32.     Later in 1989, Anna Strasberg, in her capacity as Administratrix, filed a petition with the Surrogate's Court challenging the Freud Centre's entitlement to a share of the residuary estate.  (Serbagi Decl. Ex. AA, Petition For Construction of Wills.)  The petition cited that Marilyn Monroe "died on August 5, 1962, domiciled in the City and State of New York."  (*Id.* ¶ 3)

33.     The Surrogate's Court, after receiving briefing from various interested parties, issued an order denying the Administratrix's challenge and finding that the Freud Centre was entitled to a share of the Monroe Estate.  (Serbagi Decl. Ex. BB.)  The Surrogate's Court never once mentioned, and certainly did not base its ruling on, the issue of Marilyn Monroe's domicile in its opinion.  (*Id.*)

**The Nancy Miracle Lawsuit**

34.     A woman calling herself "Nancy Miracle" sued the Administratrix in the United States District Court for the District of Hawaii in 1992, claiming she was the long-lost daughter of Marilyn Monroe and was entitled to a share of the Monroe Estate.  (Serbagi Decl. Ex. CC.)

35.     The Administratrix filed a motion to dismiss Ms. Miracle's lawsuit, based on lack of jurisdiction, failure to state a claim, and the statute of limitations (Serbagi Decl. Ex. DD.)  The motion contained three bare assertions to the effect that Marilyn Monroe died a New York domiciliary.  (*Id.* at 4, 5, 13.)

36.     The District of Hawaii granted the Administratrix's motion to dismiss, holding that it lacked personal jurisdiction over the Administratrix, given the lack of sufficient minimum contacts between the Administratrix or Marilyn Monroe and the State of Hawaii.  (Serbagi Decl. Ex. GG at 2-10.)  The court also stated in dicta, in the second half of its opinion, that Ms.

Miracle failed to state a claim for relief as a pretermitted heir under New York law.  (*Id.* at 10-14.)

37.     The District of Hawaii's favorable ruling that it lacked personal jurisdiction did not depend in any way on Marilyn Monroe having allegedly been domiciled in New York at her death:  it depended upon the fact that neither Marilyn Monroe nor the Administratrix had sufficient minimum contacts with the State of Hawaii to satisfy due process.  (Serbagi Decl. Ex. GG.) In its opinion, the District of Hawaii stated:  "Thus, the relevant actions [for purposes of personal jurisdiction] include the actions of Anna Strasberg in Hawaii as a personal representative, and the actions of decedent Marilyn Monroe in Hawaii immediately prior to her death." (*Id.*)

38.     The District of Hawaii's discussion of the failure-to-state-a-claim portion of the motion to dismiss was pure dicta, given that it had already concluded that it lacked personal jurisdiction to proceed any further.  (Serbagi Decl. Ex. GG.)

39.     Ms. Miracle filed a subsequent, copycat lawsuit against the Administratrix in New York.  (Serbagi Decl. Ex. HH.)  The New York Surrogate's Court declined to accord any estoppel effect to the failure-to-state-a-claim portion of the District of Hawaii's ruling.  (Serbagi Decl. Ex. JJ at 2.)

40.     The Administratrix requested that the District of Hawaii take judicial notice of a Surrogate's Court order regarding the date upon which Marilyn Monroe executed her will, not the State of her domicile at death.  (Serbagi Decl. Ex. DD at 2-3.)  The Administratrix's attorneys also argued that Ms. Miracle's request for discovery on the issue of Marilyn Monroe's domicile was inappropriate on a number of grounds, including that it was procedurally improper, that Ms. Miracle had failed to meet *her* burden in demonstrating that there was an issue as to

Marilyn Monroe's domicile, and that Ms. Miracle had failed to show that any of the discovery she sought would have affected the outcome of the then-pending motion to dismiss. (Serbagi Decl. Ex. FF at 1-5.)

Dated: New York, New York
        April 13, 2007

                                          /s/ Orin Snyder
                                          Orin Snyder (OS-3122)
                                          Michelle Craven (MC-8556)
                                          **GIBSON, DUNN & CRUTCHER LLP**
                                          200 Park Avenue, 47th Floor
                                          New York, New York 10166
                                          T: (212) 351-4000
                                          F: (212) 351-4035

                                          Attorneys for Defendant/Consolidated Plaintiff
                                          Marilyn Monroe LLC