# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

| | |
|---|---|
| CMG WORLDWIDE, INC., an Indiana Corporation and MARILYN MONROE, LLC, a Delaware Limited Liability Company,<br><br>     Plaintiffs,<br><br> -against-<br><br>BRADFORD LICENSING ASSOCIATES and THE SHAW FAMILY ARCHIVES, Ltd., a New York Corporation,<br><br>     Defendants. | 05 Civ. 3939 (CM)<br>06 Civ. 2619 (CM)<br>(formerly No. 1:05-cv-0423-DFH-WTL)<br><br>**THIRD AMENDED COMPLAINT** |

------------------------------------------------------------------x

Plaintiffs CMG Worldwide, Inc. ("CMG"), and Marilyn Monroe, LLC ("MMLLC"), by counsel, and for their Complaint for declaratory relief against defendants Bradford Licensing Associates ("Bradford") and Shaw Family Archives, Ltd. ("Shaw" and, together with Bradford, "Defendants"), allege as follows:

## NATURE OF THE ACTION

1. Plaintiffs brought this action on or about March 23, 2005 to halt Defendants' unauthorized exploitation of Plaintiffs' valuable intellectual property rights related to the iconic Marilyn Monroe, one of the most popular, glamorous, and attractive public personalities in the world.

2. Plaintiffs' prior complaints in this action alleged, among other things, that Defendants were violating the Plaintiffs' rights in and to Marilyn Monroe's rights of publicity

(Count 2 of Second Amended Complaint), and Plaintiffs sought a declaration of Plaintiffs' rights of publicity related to Marilyn Monroe (Count 1 of Second Amended Complaint).

3.  On or about May 2, 2007, this Court issued an order (the "May 2 Order") granting Defendants' motion for summary judgment on Count 2 of Plaintiffs' Second Amended Complaint. The May 2 Order dismissed Plaintiffs' right of publicity claim and implicitly rendered moot Plaintiffs' claim for a declaration regarding Plaintiffs' right of publicity. Defendants intend to appeal the May 2 Order and Plaintiffs incorporate by reference, as if fully set forth herein, Counts 1 and 2 of the Second Amended Complaint to the extent such incorporation is necessary to preserve the appeal and to try Counts 1 and 2 should the May 2 Order be reversed.

4.  On information and belief, both prior to and since the issuance of the May 2 Order, Defendants have granted to third-parties licenses to exploit photographs allegedly owned by Defendants bearing Marilyn Monroe's image. On information and belief, however, certain of the photographs that Defendants purport to license to third parties are in the public domain and can be freely used by such licensees without Defendants' consent. Defendants have refused to recognize that certain photographs of Marilyn Monroe allegedly owned and controlled by Defendants are in the public domain and Defendants have asserted that Plaintiffs are prohibited from using such photographs without Defendants' consent. But for Defendants' false claims of ownership of copyrights in and to photographs of Marilyn Monroe that have, on information and belief, entered the public domain, Plaintiffs would seek to utilize such public domain photographs commercially in connection with goods and services that are officially authorized and/or licensed by Plaintiffs.

1

5. On information and belief, Defendants' licensing of and attempts to license images of Marilyn Monroe that are in the public domain injure Plaintiffs by causing confusion in the marketplace for licenses to utilize photographs of Marilyn Monroe, and by affecting the overall demand for licenses to create and market products that incorporate Marilyn Monroe's image.

6. Accordingly, Plaintiffs respectfully request that this Court award declaratory relief to establish that Defendants have no right to license or interfere with the use of photographs of Marilyn Monroe that have entered the public domain.

## PARTIES

7. Plaintiff CMG is a corporation organized and existing pursuant to the laws of the State of Indiana, maintaining its principal place of business in Hamilton County, Indiana.

8. Plaintiff MMLLC is a business entity organized and existing pursuant to the laws of the State of Delaware, maintaining its principal place of business through CMG, its exclusive licensing and business representative.

9. Upon information and belief, Defendant Bradford is a business entity organized and existing pursuant to the laws of the State of New Jersey.

10. Upon information and belief, Defendant Shaw is a business entity organized and existing pursuant to the laws of the State of New York.

## JURISDICTION AND VENUE

11. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

2

12. This Court has personal jurisdiction over Defendants based on Defendants' decision to move the United States District Court for the Southern District of Indiana to transfer this action to this Court, and because Defendants reside in the State of New York.

13. Venue in the United States District Court for the Southern District of Indiana was proper pursuant to 28 U.S.C. §§ 1391(b) and 28 U.S.C. § 1400. Venue has been placed in this judicial district pursuant to the Order of the United States District Court for the Southern District of Indiana in this matter dated March 23, 2005.

## PLAINTIFFS' BUSINESS AND RIGHTS

14. For the past several decades, MMLLC has exercised various statutory and common law rights of publicity and other rights related to Marilyn Monroe. Until the issuance of this Court's May 2 Order, MMLLC has always understood and believed that it was the lawful owner of these publicity rights.

15. CMG has been granted the exclusive right to exploit the rights of publicity owned and controlled by MMLLC.

16. Over the last twenty-five (25) years, CMG has been in the business of representing certain famous individuals or the heirs, families, estates, or business enterprises of famous individuals ("CMG Clients") for the purpose of licensing to third parties the right to commercially utilize the intellectual property rights belonging to these famous individuals and/or their heirs, families, estates, or business enterprises. Typically, CMG represents such individuals or entities exclusively and, accordingly, there can be no entity other than CMG with the authority to represent, in a licensing context, the intellectual property rights of the CMG Clients. Through CMG's various efforts to manage and exploit the intellectual property

3

rights of its clients, CMG generates income for its clients and operating revenue for itself. CMG's various methods for promoting and pursuing commercial opportunities on behalf of the CMG Clients have been honed, stylized, and refined by experience and success in the industry over the past two and a half decades. As such, CMG, as well as its clients, have developed considerable goodwill with companies such as well-known advertising agencies and prestigious manufacturers throughout the world with whom CMG maintains close contact and conducts regular and ongoing business.

17.     MMLLC and CMG have invested considerable time, energy, and financial resources over the span of many years in pursuing opportunities that will promote the popularity of Ms. Monroe with the consuming public, and in developing critical and lucrative business relationships with licensees and business partners.

## DEFENDANTS' ACTIVITIES

18.     Upon information and belief, Shaw has within its possession certain photographs of Marilyn Monroe taken by Sam Shaw (hereinafter "Monroe/Shaw Photographs").

19.     Shaw, either directly or through its agents or representatives, is in the business of licensing the Monroe/Shaw Photographs for use on or in connection with products or services that are offered, marketed, and advertised to the public.

20.     Bradford is in the business of offering, marketing, and advertising to the public, licensing services featuring various consumer brands and properties. Upon information and belief, Bradford's business and commercial endeavors include activities conducted on behalf of Shaw.

4

21. Upon information and belief, Bradford represents certain third parties, including Shaw, who allegedly own certain copyright interests in photographs of Marilyn Monroe, including the Monroe/Shaw Photographs.

22. Shaw has asserted, either by itself or through Bradford, that it possesses valid and enforceable copyrights, pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq*, in each and every photograph that constitutes the Monroe/Shaw Photographs and *The Shaw Limited Edition Marilyn/Norma Jeane Collection* (hereinafter the "Shaw Collection").

23. In 1999, the United States District Court for the Southern District of New York ruled, in the case of *Shaw v. Rizzoli Int'l Publ'ns, Inc.*, No. 96 Civ. 4259 (JFK) (S.D.N.Y.), that certain photographs that comprise the Monroe/Shaw Photographs and/or the Shaw Collection and that were published in a book entitled *Marilyn Monroe. The Life. The Myth.* (the "*Rizzoli* Works") have entered the public domain. In that case, the Honorable John G. Koeltl ruled that the copyrights in the *Rizzoli* Works "expired," and such photographs entered the public domain when "no renewals were obtained with respect to" them.

24. Upon information and belief, there exist photographs other than the *Rizzoli* Works that comprise the Monroe/Shaw Photographs and/or the Shaw Collection that were published prior to January 1, 1964, and for which copyright renewals were not obtained during the final year of the initial 28-year copyright term for such works. Accordingly, upon information and belief, such other photographs have similarly entered the public domain.

25. For example, in 1955, Ballantine Books published a book entitled *Marilyn Monroe as The Girl*, featuring over 100 photographs of Marilyn Monroe that were taken by Sam Shaw. Upon information and belief, Mr. Shaw registered his copyright in this work with

5

the Library of Congress in 1955, under registration number A193450, but failed to renew such copyright during the final year of the initial 28-year copyright term for such work or at any time. As a result, the copyright for this work expired in 1983, and photographs contained in this work fell into the public domain.

26. Further, on information and belief, other photographs that comprise the Monroe/Shaw Photographs and/or the Shaw Collection were initially published without copyright notice prior to March 1, 1989, when notice was required under the United States Copyright Act, and these photographs also have entered the public domain.

27. As a result, many of the photographs that comprise the Monroe/Shaw Photographs and/or the Shaw Collection have entered the public domain (collectively, the "Public Domain Monroe/Shaw Photographs").

## COUNT I:
(DECLARATION AS TO SHAW'S COPYRIGHTS IN SHAW COLLECTION)

28. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

29. Defendants have refused to acknowledge that any of the works that comprise the Monroe/Shaw Photographs and/or the Shaw Collection have entered the public domain.

30. On information and belief, Shaw and/or Bradford have communicated to licensees, potential licensees, business partners, and/or potential business partners that such licensees, potential licensees, business partners, and/or potential business partners require the prior permission and consent from Shaw and/or Bradford prior to utilizing the Public Domain Monroe/Shaw Photographs.

31.  On information and belief, Defendants have actively discouraged licensees, potential licensees, business partners, and/or potential business partners from entering into any relationship with Plaintiffs in connection with products or services that feature certain Public Domain Monroe/Shaw Photographs.

32.  On information and belief, Plaintiffs have been and continue to be injured by Defendants' conduct in inducing or attempting to induce Plaintiffs' licensees, potential licensees, business partners, and potential business partners to forgo entering into any relationship with Plaintiffs and to instead obtain unnecessary licenses from Defendants to use Public Domain Monroe/Shaw Photographs.

33.  Were it not for Defendants' false claims to ownership in the Public Domain Monroe/Shaw Photographs, Plaintiffs would seek to make use of the Public Domain Monroe/Shaw Photographs either by themselves or through licensees and/or business partners.

34.  As a result of Defendants' conduct as alleged herein, Defendants have created a case of actual controversy within the jurisdiction of this Court such that this Court may declare the status of the rights and other legal relations of the parties to this litigation pursuant to 28 U.S.C. § 2201 that, in addition to the *Rizzoli* Works which already have been found to be in the public domain, Shaw does not possess valid and enforceable copyrights in those photographs that comprise the Monroe/Shaw Photographs and/or the Shaw Collection that were either: (a) published prior to January 1, 1964, where no copyright renewals were obtained during the final year of the initial 28-year copyright term for such photographs; or (b) published prior to March 1, 1989, without the requisite copyright notice.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief in the following particulars:

A.  Enter a Declaratory Judgment, pursuant to 28 U.S.C. § 2201, and to declare therein:

    i.    That, in addition to the *Rizzoli* Works, Defendants do not possess valid and enforceable copyrights in those photographs that comprise the Monroe/Shaw Photographs and/or the Shaw Collection that were either: (a) published prior to January 1, 1964, where no copyright renewals were obtained during the final year of the initial 28-year copyright term for such photographs; or (b) published prior to March 1, 1989, without the requisite copyright notice;

    ii.    That Defendants are and shall be permanently enjoined and restrained from conducting further activities inconsistent with the rights of their licensees, potential licensees, business partners, and/or potential business partners to make use of the Public Domain Monroe/Shaw Photographs without any authorization, permission, or license from Defendants; and

    iii.    That Defendants are and shall be permanently enjoined and restrained from engaging in any activities which interfere with Plaintiffs' business activities with respect to the rights of Plaintiffs, their licensees and business partners, and the general public to make commercial use of the Public Domain Monroe/Shaw Photographs; and

B.   Award Plaintiffs their costs, including attorneys' fees, pursuant to the Untied States Copyright Act.

C.   Award Plaintiffs such other relief as may be just and proper.

Dated: New York, New York
       August 9, 2007

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: /s/
Orin Snyder (OS-3122)
Cynthia Arato (CA-8350)
Howard S. Hogan (HH-7995)
Michelle Craven (MC-8556)

200 Park Avenue, 47th Floor
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Attorneys for Plaintiff Marilyn Monroe, LLC*

and

SOVICH MINCH LLP

By: _____
Theodore J. Minch (*Pro Hac Vice* application forthcoming)

10099 Chesapeake Drive, Suite 100
McCordsville, Indiana 46055
Telephone: (317) 335-3601
Facsimile: (317) 335-3602

*Attorneys for Plaintiff CMG Worldwide, Inc.*

9

B.  Award Plaintiffs their costs, including attorneys' fees, pursuant to the Untied States Copyright Act.

C.  Award Plaintiffs such other relief as may be just and proper.

Dated: New York, New York
August 9, 2007

>Respectfully submitted,
>
>GIBSON, DUNN & CRUTCHER LLP
>
>By:_____
>  Orin Snyder (OS-3122)
>  Cynthia Arato (CA-8350)
>  Howard S. Hogan (HH-7995)
>  Michelle Craven (MC-8556)
>
>200 Park Avenue, 47th Floor
>New York, New York 10166-0193
>Telephone: (212) 351-4000
>Facsimile: (212) 351-4035
>
>*Attorneys for Plaintiff Marilyn Monroe, LLC*
>
>and
>
>SOVICH MINCH LLP
>
>By:_____
>  Theodore J. Minch (*Pro Hac Vice* application forthcoming)
>
>10099 Chesapeake Drive, Suite 100
>McCordsville, Indiana 46055
>Telephone: (317) 335-3601
>Facsimile: (317) 335-3602
>
>*Attorneys for Plaintiff CMG Worldwide, Inc.*