# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

SHAW FAMILY ARCHIVES, LTD., EDITH MARCUS     :
and META STEVENS,

                                 Plaintiffs,     : SECOND AMENDED
                                            : COMPLAINT

        -against-

CMG WORLDWIDE, INC., an Indiana Corporation,     : JURY TRIAL DEMANDED
and MARILYN MONROE, LLC, a Delaware Limited     :
Liability Company,

                            Defendants.     :

-------------------------------------------------------------------------x

05 cv 3939 (cm)

RECEIVED
AUG 0 8 2007
U.S.D.C. S.D. N.Y.
CASHIERS

        Plaintiffs Shaw Family Archives, Ltd., Edith Marcus, and Meta Stevens, for its Second Amended Complaint against the above-named Defendants, allege as follows:

## NATURE OF ACTION

      1.      This is an action for federal copyright infringement, violation of the Lanham Act, and various other federal and state causes of action.

      2.      An actual, justiciable controversy exists among the parties as to which a declaratory judgment setting forth their respective rights and obligations is necessary and appropriate.

## THE PARTIES

      3.      Plaintiff Shaw Family Archives ("Archives") is a New York Corporation whose principal place of business is in the County of Rockland, State of New York.

      4.      Plaintiff Edith Marcus ("Marcus") is an individual residing in the County of Rockland and the State of New York.

      5.      Plaintiff Meta Stevens ("Stevens") is an individual residing in the County of New York and the State of New York.

6.    Defendant CMG Worldwide, Inc. ("CMG") is a corporation organized and existing pursuant to the laws of the State of Indiana, maintaining its principal place of business in Hamilton County, Indiana.

7.    Defendant Marilyn Monroe, LLC ("MM") is a business entity organized and existing pursuant to the laws of the State of Delaware.

## JURISDICTION AND VENUE

8.    This court has original jurisdiction over this civil action under 28 U.S.C. §1331 and 28 U.S.C. §1332(a).

9.    Venue in this district is proper, pursuant to 28 U.S.C. §1391(a)(2).

10.    This Court has personal jurisdiction over defendants because, upon information and belief, defendants conduct business in New York.  In addition, this action arises from tortious conduct committed by defendants in New York or causing injury in New York.

## BACKGROUND

11.    Sam Shaw ("Shaw") was one of the foremost photographers of his time. Although initially renowned for his career as a photojournalist for Colliers Magazine, it is his remarkable portraits of artists, musicians, film, television and theatrical celebrities, and his unique photographs of Marilyn Monroe and the ensuing friendship between Mr. Shaw and Ms. Monroe, for which he is most notably remembered.

12.    During their work together, Mr. Shaw and Ms. Monroe formed a lifelong friendship.  Given his close personal relationship with Ms. Monroe, he was able to photograph Marilyn at her most intimate, relaxed and open moments.  Indeed, Mr. Shaw designed, staged and took the famous flying skirt series of photographs of Ms. Monroe that are known throughout the world.

13.    Sam Shaw was the author and owner of all copyrights to the photographs he took. He passed away in 1999 with his copyrights in a Trust. The sole trustees and interest holders were his daughters and present Plaintiffs Edith Marcus and Meta Stevens. When Sam Shaw died in 1999, his shares in the aforementioned Trust passed to Marcus and Stevens, per stirpes. Shaw Archives has the right to market, and offer for commercial exploitation, the Shaw Collection.

14.    Plaintiffs Marcus and Stevens own and control the copyrights of photographs of Marilyn Monroe contained within the Shaw Collection, many of which have never been seen by the public.

## ALLEGATIONS COMMON TO ALL COUNTS

**Allegations Concerning Defendants' Repeated and Willful Copyright Infringement and Contributory Copyright Infringement**

15.    In or about 1957, Sam Shaw created a group of original photographs of Marilyn Monroe taken at the beach at Amagansett, New York. Three of these photographs were depicted on pages 176, 180, and 182 (top right) in the book "Marilyn Among Friends" and are protected by U.S. Copyright Registration No. TX 2-400-879. A true and correct copy of U.S. Copyright Registration No. TX 2-400-879 is attached hereto as Exhibit A.

16.    Without proper authorization, Defendants have violated Plaintiffs' exclusive rights in the image of Marilyn Monroe protected by U.S. Copyright Registration No. TX 2-400-879 by causing to be copied, published, and offered for sale on their web site the foregoing three copyright protected images on a coffee mug.

17.    Plaintiffs Marcus and Stevens own Shaw photographs of Marilyn Monroe depicted on pages 128 (center), 130, and 134-35 in the book "Marilyn Among Friends." These photographs are protected by U.S. Copyright Registration No. TX 2-400-879. A true and correct copy of U.S. Copyright Registration No. TX 2-400-879 is attached hereto as Exhibit A.

18.    Without proper authorization, Defendants have violated Plaintiffs' exclusive rights in the image of Marilyn Monroe protected by U.S. Copyright Registration No. TX 2-400-879 by causing to be copied, published and offered for sale on their web site the foregoing three copyright protected images on a purse.

19.    On information and belief, knowing that they had no authorization to do so, and that their acts constituted copyright infringement, Defendants have authorized the Centric Corporation to publish, display, and sell numerous images of Marilyn Monroe on the Centric Corporation web site. These images are displayed on alarm clocks, coffee mugs, mini clocks, and wall clocks are contained on pages 46 of the book "Marilyn and Friends." These photographs of Marilyn Monroe, including the famous skirt flying photograph most prominently displayed, are protected by U.S. Copyright Registration No. TX 2-400-879, attached hereto as Exhibit A. Defendants have violated Plaintiffs' exclusive rights in the image of Marilyn Monroe protected by U.S. Copyright Registration No. TX 2-400-879 by causing to be copied, published and offered for sale on the Centric Corporation web site the foregoing protected images of Marilyn Monroe. Defendants knew of Centric's illegal activity and induced and materially contributed to the infringement.

20.    Plaintiffs Marcus and Stevens own two Shaw photographs of Marilyn Monroe depicted on pages 20-21 in the book "In the Camera Eye." These photographs are protected by U.S. Copyright Registration No. TX 5-342-425. A true and correct copy of U.S. Copyright Registration No. TX 5-342-425 is attached hereto as Exhibit B.

21.    Without proper authorization, Defendants have violated Plaintiffs' exclusive rights in the image of Marilyn Monroe protected by U.S. Copyright Registration No. TX 5-342-

425 by causing to be copied, published, and offered for sale on their web site the foregoing images on a purse.

22.    In their written responses to Plaintiffs' first set of interrogatories, Defendant CMG admitted to displaying in 2004 "no more than 5 Monroe/Shaw Photographs on its corporate website for no more than 6 to 9 months."    Despite Plaintiffs' written requests, the Defendants have refused to identify the photographs at issue.

**Defendants' False Commercial Representations and Wrongful Interference With Plaintiffs' Contractual Relations**

23.    Defendants have pursued an aggressive and improper campaign of threats and intimidation to force third-parties to obtain Defendants' permission for the use of Marilyn Monroe's name, likeness or image.  Defendants have also improperly demanded and obtained payments from these parties by wrongfully representing to Plaintiffs' licensees and potential licensees that Defendants had a right of publicity in Marilyn Monroe (or right to the image and likeness of Marilyn Monroe), which Defendants knew or should have know was false.

24.    Defendants' intentionally false statements to Plaintiffs' licensees and potential licensees has caused Plaintiffs substantial damage because it has caused Plaintiffs' licensees to cease licensing images of Marilyn Monroe from Plaintiffs and caused other potential licensees to forgo licensing images of Marilyn Monroe from Plaintiffs when they otherwise would have done so.

**The Defendants' Flouting of The Court Orders in California and New York**

25.    On or about May 2, 2007, The Honorable Colleen McMahon of the Southern District of New York (the "New York Order") ruled that the Defendant MM does not own a right of publicity in Marilyn Monroe because she died a domiciliary in a state that did not recognize a post-mortem right of publicity.

26.    On or about May 14, 2007, the Honorable Margaret M. Morrow of the Central District of California made essentially the same ruling as the New York Order (the "California Order").

27.    The Defendants have frequently expressed contempt for the legal reasoning and basis set forth in the New York and California Orders in the media and in commerce.

28.    Despite the New York and California Orders, Defendants continue to represent that they have rights to the image of Marilyn Monroe.

29.    Despite the New York and California Orders, Defendants continue to make false representations of fact to Plaintiffs' licensees and potential licensees concerning Defendants' alleged rights in the image of Marilyn Monroe.

30.    Despite the New York and California Orders, the Defendants continue to assert rights to the image of Marilyn Monroe which they do not have, including recent such representations to, among others, New Media Inc. and Pyramid Posters Limited.

31.    Defendants' continued false representations and wrongful interference are causing Plaintiffs substantial damage.

**The Defendants' Efforts to Circumvent The New York And California Orders Through Misrepresentations to the Legislature**

32.    The Defendants' have lobbied the New York and California legislature for laws that would eviscerate the New York and California Orders.

33.    The Defendants have achieved success in New York and California by (i) misrepresenting and omitting numerous material facts concerning the import of the respective rulings and (ii) failing to provide full disclosure on the nature and extent of their wrongful acts as set forth herein.

34.    The Defendants misrepresentations are continuing to cause Plaintiffs damage because their actual and prospective licensees continue to suffer anxiety that their existing contractual relations and expectations will be nullified by new legislation.

## FIRST CAUSE OF ACTION

### (FEDERAL COPYRIGHT INFRINGEMENT)
### (17 U.S.C. § 101, et seq.)

35.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in paragraphs 1 through 34 as if fully set forth herein.

36.    As a result of the foregoing acts, the Defendants have willfully infringed the Plaintiffs' federal copyrights, all in violation of 15 U.S.C. § 501.

## SECOND CAUSE OF ACTION

### (FEDERAL CONTRIBUTORY COPYRIGHT INFRINGEMENT)
### (17 U.S.C. § 101, et seq.)

37.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in paragraphs 1 through 36 as if fully set forth herein.

38.    As a result of the foregoing acts, the Defendants have willfully infringed the Plaintiffs' federal copyrights, all in violation of 15 U.S.C. § 501.

## THIRD CAUSE OF ACTION

### (DECLARATION THAT THE DEFENDANTS DO NOT OWN ANY INTELLECTUAL PROPERTY RIGHTS IN THE IMAGE OR LIKENESS OF MARILYN MONROE)

39.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 38 as if fully set forth herein.

40.    Based on the foregoing acts, there is an actual controversy and Plaintiffs will continue to be damaged unless the Court specifically holds that the Defendants do not own any rights in the image of Marilyn Monroe.

## FOURTH CAUSE OF ACTION

### (TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS)

41.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 40 as if fully set forth herein.

42.    As a result of the foregoing acts, the Defendants have tortiously interfered with Plaintiffs' contractual relations thereby causing Plaintiffs damage.

## FIFTH CAUSE OF ACTION

### (TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)

43.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 42 as if fully set forth herein.

44.    As a result of the foregoing acts, the Defendants tortiously interfered with Plaintiff's prospective economic advantage, thereby causing Plaintiffs damage.

## SIXTH CAUSE OF ACTION

### (FALSE DESIGNATION OF ORIGIN, FALSE DESCRIPTION, AND UNFAIR COMPETITION UNDER 15 U.S.C. § 43(a))

45.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 44 as if fully set forth herein.

46.    The false representations of origin and the false and misleading descriptions and representations of fact alleged herein have caused Plaintiffs significant monetary damage, loss and injury to Plaintiffs, in an amount currently undetermined, all in violation of Section 43(a) of the Lanham Act of the Trademark Act of 1946, as amended, 15 U.S.C. § 43(a).

47.    As a result of the foregoing acts, Defendants have caused consumer confusion in the marketplace.

48.    Upon information and belief, Defendants undertook the aforesaid acts willfully and with the intention of causing confusion, mistake or deception.

## SEVENTH CAUSE OF ACTION

### (COMMON LAW UNFAIR COMPETITION)

49.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 48 as if fully set forth herein.

50.    By its acts alleged herein, Defendants have engaged in, and continue to engage in, a course of unfair competition in violation of the common law of the State of New York.

51.    Plaintiffs have been damaged as a result of the Defendants activities in an amount currently undetermined.

## EIGHTH CAUSE OF ACTION

### (UNFAIR TRADE PRACTICES UNDER N.Y. GEN BUS. LAW §§ 349-50)

52.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 51 as if fully set forth herein.

53.    By virtue of the foregoing, Defendants have violated N.Y. Gen. Bus. Law §§ 349-50 and have suffered damages in an amount presently unknown.

## NINTH CAUSE OF ACTION

### (DECLARATION THAT MARILYN MONROE DIED A DOMICILIARY OF THE STATE OF NEW YORK)

54.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 53 as if fully set forth herein.

55.    By virtue of the foregoing legislative efforts and ongoing factual misrepresentations concerning their rights to the image of Marilyn Monroe, Plaintiffs are entitled to a ruling that Marilyn Monroe died a New York domiciliary.

WHEREFORE, Plaintiffs demand:

A.    For a Declaratory Judgment, pursuant to 28 U.S.C. §2201 as set forth herein.

B.    For copyright damages increased to the statutory maximum due to willful infringement.

C.    For treble damages, punitive damages and attorney's fees.

D.    For compensatory damages and consequential damages as provided by law.

E.    For an injunction restraining defendants, their officers, agents, and employees, and all persons acting in concert with them, from engaging in any further unlawful acts as set forth herein.

F.    Such other and further relief as to this Court may deem just and proper.

Dated:  New York, New York
        August 8, 2007

Respectfully Submitted,

By: _____
Christopher Serbagi (CS 7746)
David Marcus (DM 0960)
Law Offices of Christopher Serbagi
488 Madison Avenue, Suite 1120
New York, New York  10022
(212) 593-2112

Attorneys for Plaintiffs/Consolidated Defendants
Shaw Family Archives, Bradford Licensing, Inc.,
Edith Marcus and Meta Stevens

10