# EX. K

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - )

SHAW FAMILY ARCHIVES, LTD., EDITH : 
MARCUS and META STEVENS, :                    05 CV 3939 (CM)
                                    :
                   Plaintiffs,      :           Honorable Colleen McMahon
        v.                          :
                                    :
CMG WORLDWIDE, INC., an Indiana Corporation :
and MARILYN MONROE, LLC, a Delaware Limited :
Liability Company,                 :
                                    :
                   Defendants.      :
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - )

### DEFENDANTS/CONSOLIDATED PLAINTIFFS RESPONSE TO PLAINTIFFS/ CONSOLIDATED DEFENDANTS' SECOND SET OF DOCUMENT REQUESTS

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendant/Consolidated

Plaintiffs Marilyn Monroe, LLC ("MMLLC") and CMG Worldwide, Inc. ("CMG") (collectively,

"Defendants") hereby respond and object to Plaintiffs/Consolidated Defendants' Second Set of

Document Requests as follows:

### GENERAL OBJECTIONS

1.      Defendants object to Plaintiffs' demands for production to the extent that they are

vague, ambiguous, overbroad, unduly burdensome, and/or not reasonably calculated to lead to

the discovery of relevant and admissible evidence.

2.      Defendants object to Plaintiffs' demands for production to the extent that they

seek trade secrets, proprietary information and/or confidential commercial information not

relevant to, or necessary for, the adjudication of the issues raised in the Parties' amended

complaints as filed in this action.

100271543 5.DOC

3.     Defendants object to Plaintiffs' demands for production to the extent that they purport to require the production of documents that are already in Plaintiffs' possession, are public or are otherwise readily available from sources to which Plaintiffs also have access.

4.     Defendants object to Plaintiffs' demands for production to the extent that they purport to require production of documents not in the Defendants' possession, custody, or control.

5.     Defendants object to the instructions and definitions in Plaintiffs' demands for production to the extent they in any way deviate from or expand upon obligations, duties, or requirements set forth in the Federal Rules of Civil Procedure (the "Federal Rules") or the Local Civil Rules for the United States District Court for the Southern District of New York (the "Local Rules").

6.     Defendants object to the definitions in Plaintiffs' demands for production to the extent that they are used in such a way as to otherwise render Plaintiffs' demands vague, ambiguous, overbroad and/or not reasonably calculated to lead to the discovery of relevant and / or admissible evidence.

7.     Defendants object to Plaintiffs' demands for production to the extent they purport to require production of documents relating to allegations or matters that are not included in the Parties' operative complaints, as amended and filed in this Case.

8.     Defendants object to Plaintiffs' demands for production to the extent that they purport to require documents that are protected by the joint defense or common interest privilege, the attorney-client privilege, the attorney work product doctrine, and / or any other applicable law, rule, privilege or immunity.

9.    Defendants object to Plaintiffs' demands for production to the extent that they violate, infringe, or interfere with Defendants' rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution and other state and federal protections of the rights to freedom of speech and to petition the government.

10.    In furnishing the objections herein, Defendants do not concede that any of Plaintiffs' demands for production, or any subpart thereof, is relevant to the claims or defenses as raised by the Parties in their amended complaints filed in this action.

11.    Any documents inadvertently disclosed to Plaintiffs shall not constitute a waiver of any privilege, any other doctrine against disclosure, or the right of Defendants to object to the use of any document inadvertently disclosed. Defendants reserve the right to demand that Plaintiffs return to them any information inadvertently disclosed without further recourse.

12.    Any documents disclosed to Plaintiffs shall not constitute a waiver of any right of Defendants to object to the use and/or ultimate admissibility of any such document duly produced to Plaintiffs by Defendants.  As such, Defendants hereby expressly reserve the right to object, on whatever basis, to the use and/or ultimate admissibility of any document produced to Plaintiffs in this Case.

13.    Defendants reserve the right at any time to supplement and/or amend any of the objections herein on the basis of information that comes to its attention or the attention of its attorneys.

14.    In furnishing the responses herein, Defendants do not concede the truth of any factual assertion or implication contained in any of Plaintiffs' requests for production. Moreover, Defendants' responses and objections shall not be construed as representations

3

regarding the existence or non-existence of specific documents in its possession, custody or control.

## DOCUMENT REQUESTS

### Document Request No. 1:

All documents in which Defendants explicitly or implicitly referred to (i) the Federal Court Decisions or (ii) the rights that either Defendant purportedly has in the image, name, or likeness of Marilyn Monroe subsequent to the date of the Federal Court Decisions. This document request includes, but is not limited to, letters and/or electronic communications to Plaintiffs' licensees, Defendants' licensees, the press, or any other party.

### Response to Document Request No. 1:

Defendants object to this request to the extent that it seeks documents subject to any applicable privilege or immunity including, but not limited to, the joint defense or common interest privilege, the attorney-client privilege and/or the attorney work product doctrine. Defendants object to this request to the extent that it seeks to violate, infringe, or interfere with Defendants' rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution and other state and federal protections of the rights to freedom of speech and to petition the government. Defendants further object to this request on the basis that the request is overbroad. Defendants further object to this request as vague and ambiguous with respect to the term "implicitly." Defendants also object to this request to the extent that it seeks information that is not related to alleged licensees or potential licensees of Shaw because it seeks information that is not relevant to the claims or defenses of any party as raised in the amended complaints and/or not reasonably calculated to lead to the discovery of relevant and admissible evidence. In addition, Defendants object to this request on the basis that the request seeks information that is not relevant to the claims or defenses of any party other than claims that are subject to

4

Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint and Defendants' Motion to Stay discovery, both of which will be filed shortly.

Subject to and without waiving these objections and the foregoing general objections, which Defendants specifically preserve, Defendants respond as follows: Defendants will produce non-privileged documents responsive to this request in their possession, custody, or control, to the extent they exist, other than documents related to Defendants' constitutional right of freedom of speech and to petition the government.

**Document Request No. 2:**

The Monroe/Shaw Photographs that CMG admits to displaying on its website for 6-9 months and documents concerning your statement that "[w]hen CMG displayed those images, it had a reasonable belief that those images were in the public domain."

**Response to Document Request No. 2:**

Defendants object to this request to the extent that it seeks documents subject to any applicable privilege or immunity including, but not limited to, the joint defense or common interest privilege, the attorney-client privilege and/or the attorney work product doctrine. Defendants further object to this request on the grounds that it seeks information that is not relevant to the claims or defenses of any party in that CMG previously informed Plaintiffs that the photos which were the subject of the noted interrogatory response were contained in the book entitled *Marilyn Monroe. The Life. The Myth.*, all of which previously were found to be in the public domain by the United States District Court for the Southern District of New York and none of which are the subject of Plaintiffs' Second Amended Complaint.

**Document Request No. 3:**

All documents relating to the prosecution of the MM Marks in the PTO, including but not limited to, documents received and submitted to the PTO, documents provided to and received from licensees and third parties.

**Response to Document Request No. 3:**

Defendants object to this request to the extent that it seeks documents subject to any applicable privilege or immunity including, but not limited to, the joint defense privilege, the attorney-client privilege and/or the attorney work product doctrine. Defendants further object to this request on the basis that the request is vague and ambiguous, with respect to the phrase "documents provided to and received from licensees and third parties." Defendants further object to this request on the basis that it is overbroad, unduly burdensome, and seeks information that is not relevant to the claims or defenses of any party as raised by the Parties in their respective amended complaints filed in this action and/or not reasonably calculated to lead to the discovery or relevant and admissible evidence.

**Document Request No. 4:**

All documents relating to your responses to Plaintiffs' first and second set of interrogatories.

**Response to Document Request No. 4:**

Defendants object to this request to the extent that it seeks documents subject to any applicable privilege or immunity including, but not limited to, the joint defense privilege, the attorney-client privilege and/or the attorney work product doctrine. Defendants further object to this request on the basis that the request is vague, ambiguous, overbroad and unduly burdensome with respect to the phrase "relating to." In addition, Defendants object to this request to the extent it seeks information concerning Plaintiffs' second set of interrogatories and/or interrogatories 4, 10, 13, 14, 18, 19, and 20 of Plaintiffs' first set of interrogatories on the basis that the request seeks information that is not relevant to the claims or defenses of any party as raised by the Parties in their amended complaints and filed in this Case and/or not reasonably calculated to lead to the discovery or relevant and admissible evidence.

6

**Document Request No. 5:**

All documents relating to your allegation that the Plaintiffs have infringed Defendants' trademarks.

**Response to Document Request No. 5:**

Defendants object to this request to the extent that it seeks documents subject to any applicable privilege or immunity including, but not limited to, the joint defense privilege, the attorney-client privilege and/or the attorney work product doctrine. Defendants further object to this request as on the basis that the request seeks information that is not relevant to the claims or defenses of any party as raised by the Parties in their amended complaints filed in this action and/or not reasonably calculated to lead to the discovery or relevant and admissible evidence.

**Document Request No. 6:**

Copies of all pleadings and correspondence concerning your Answer to Interrogatory No. 3 in Plaintiffs' first set of document requests.

**Response to Document Request No. 6:**

Defendants object to this request to the extent that it seeks documents subject to any applicable privilege or immunity including, but not limited to, the joint defense or common interest privilege, the attorney-client privilege and/or the attorney work product doctrine. Defendants further object to this request to the extent it seeks correspondence on the basis that the request is vague and ambiguous, overbroad and unduly burdensome, and seeks information that is not relevant to the claims or defenses of any party as raised by the Parties in their amended complaints filed in this action and/or not reasonably calculated to lead to the discovery or relevant and admissible evidence.

Subject to and without waiving these objections and the foregoing general objections, which Defendants specifically preserve, Defendants respond as follows: Defendants will

7

produce responsive pleadings, as defined in Fed. R. Civ. P. 7(a), concerning the actions

identified in their response to Interrogatory No. 3 in Plaintiffs' First Set of Interrogatories in their

possession, custody, or control, to the extent they exist.

**Document Request No. 7:**

Copies of all photographs or images of Marilyn Monroe you have ever licensed to anyone.

**Response to Document Request No. 7:**

Defendants object to this request to the extent that it seeks documents subject to any

applicable privilege or immunity including, but not limited to, the joint defense or common

interest privilege, the attorney-client privilege and/or the attorney work product doctrine.

Defendants further object to this request to the extent that it purports to request photographs or

images of Marilyn Monroe unlimited in time and that are not Monroe/Shaw Photographs on the

basis that the request is overbroad and unduly burdensome. Defendants also object to this

request to the extent that it seeks information that is not relevant to the claims or defenses of any

party and/or not reasonably calculated to lead to the discovery or relevant and admissible

evidence because the Court has already ruled on Defendants' right of publicity claim.

**Document Request No. 8:**

All documents relating to the efforts of Defendants or others to amend the New York
Civil Rights Law, including but not limited to, the proposed Bill known as A.8836(Weinstein)/
S.6005(Golden). Defendants' response to this document request should include, but is not
limited to, all internal drafts, letters to any member of the New York legislature, position papers,
letters to lobbyists and their agents, press releases, notes, etc.

**Response to Document Request No. 8:**

Defendants object to this request to the extent that it seeks documents subject to any

applicable privilege or immunity including, but not limited to, the joint defense or common

interest privilege, the attorney-client privilege and/or the attorney work product doctrine.

8

Defendants object to this request to the extent that it seeks to violate, infringe, or interfere with Defendants' rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution and other state and federal protections of the rights to freedom of speech and to petition the government. Defendants also object to this request on the basis that the request seeks information that is not relevant to the claims or defenses of any party other than claims that are subject to Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint and Defendants' Motion to Stay discovery, both of which will be filed shortly.

**Document Request No. 9:**

All documents relating to the efforts of Defendants or others to promote a right of publicity in any State in the United States, including but not limited to California and Indiana. Defendants' response to this document request should include internal drafts, letters to any member of the New York legislature, position papers, letters to lobbyists and their agents, or any other document in any way pertaining to Defendants' efforts to institute, change or amend a right of publicity law or privacy law.

**Response to Document Request No. 9:**

Defendants object to this request to the extent that it seeks documents subject to any applicable privilege or immunity including, but not limited to, the joint defense or common interest privilege, the attorney-client privilege and/or the attorney work product doctrine. Defendants object to this request to the extent that it seeks to violate, infringe, or interfere with Defendants' rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution and other state and federal protections of the rights to freedom of speech and to petition the government. Defendants also object to this request on the basis that the request seeks information that is not relevant to the claims or defenses of any party other than claims that are subject to Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint and Defendants' Motion to Stay discovery, both of which will be filed shortly.

9

**Document Request No. 10:**

All attorney opinion letters that Defendants' intend to use as a defense in any manner in this litigation.

**Response to Document Request No. 10:**

Subject to and without waiving the foregoing general objections, which Defendants

specifically preserve, Defendants respond as follows:  Defendants will produce any attorney

opinion letters on which they intend to rely.

DATED:        New York, New York
              August 27, 2007

                              **GIBSON, DUNN & CRUTCHER LLP**


                              Orin Snyder (OS-3122)
                              Cynthia Arato (CA-8350)
                              Howard Hogan (HH-7995)
                              Michelle Craven (MC-8556)
                              200 Park Avenue, 47th Floor
                              New York, New York 10166
                              T: (212) 351-2400
                              F: (212) 351-6288
                              *Counsel for Defendant/Consolidated Plaintiff
                              Marilyn Monroe, LLC*


                              **SOVICH MINCH LLP**


                              Theodore J. Minch (Admitted *Pro Hac Vice*)
                              10099 Chesapeake Drive, Suite 100
                              McCordsville, IN 46055
                              T: (317) 335-3601
                              F: (317) 335-3602

10

# EX. L

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

SHAW FAMILY ARCHIVES, LTD., EDITH MARCUS
and META STEVENS,

                             Plaintiffs,

          -against-

CMG WORLDWIDE, INC., an Indiana Corporation,
and MARILYN MONROE, LLC, a Delaware Limited
Liability Company,

                          Defendants.

------------------------------------------------------------------x

: 05CV3939
: ECF CASE    JUDGE: CM
:
: SECOND AMENDED
: <u>COMPLAINT</u>
:
: <u>JURY TRIAL DEMANDED</u>
:
:
:
:
:
:
:

RECEIVED
APR [ ] 9 2007
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiffs Shaw Family Archives, Ltd., Edith Marcus, and Meta Stevens, for its Second

Amended Complaint against the above-named Defendants, allege as follows:

## <u>NATURE OF ACTION</u>

1.    This is an action for federal copyright infringement, violation of the Lanham Act,

and various other federal and state causes of action.

2.    An actual, justiciable controversy exists among the parties as to which a

declaratory judgment setting forth their respective rights and obligations is necessary and

appropriate.

## <u>THE PARTIES</u>

3.    Plaintiff Shaw Family Archives ("Archives") is a New York Corporation whose

principal place of business is in the County of Rockland, State of New York.

4.    Plaintiff Edith Marcus ("Marcus") is an individual residing in the County of

Rockland and the State of New York.

5.    Plaintiff Meta Stevens ("Stevens") is an individual residing in the County of New

York and the State of New York.

6.     Defendant CMG Worldwide, Inc. ("CMG") is a corporation organized and existing pursuant to the laws of the State of Indiana, maintaining its principal place of business in Hamilton County, Indiana.

7.     Defendant Marilyn Monroe, LLC ("MM") is a business entity organized and existing pursuant to the laws of the State of Delaware.

## JURISDICTION AND VENUE

8.     This court has original jurisdiction over this civil action under 28 U.S.C. §1331 and 28 U.S.C. §1332(a).

9.     Venue in this district is proper, pursuant to 28 U.S.C. §1391(a)(2).

10.     This Court has personal jurisdiction over defendants because, upon information and belief, defendants conduct business in New York. In addition, this action arises from tortious conduct committed by defendants in New York or causing injury in New York.

## BACKGROUND

11.     Sam Shaw ("Shaw") was one of the foremost photographers of his time. Although initially renowned for his career as a photojournalist for Colliers Magazine, it is his remarkable portraits of artists, musicians, film, television and theatrical celebrities, and his unique photographs of Marilyn Monroe and the ensuing friendship between Mr. Shaw and Ms. Monroe, for which he is most notably remembered.

12.     During their work together, Mr. Shaw and Ms. Monroe formed a lifelong friendship. Given his close personal relationship with Ms. Monroe, he was able to photograph Marilyn at her most intimate, relaxed and open moments. Indeed, Mr. Shaw designed, staged and took the famous flying skirt series of photographs of Ms. Monroe that are known throughout the world.

2

13.     Sam Shaw was the author and owner of all copyrights to the photographs he took. He passed away in 1999 with his copyrights in a Trust. The sole trustees and interest holders were his daughters and present Plaintiffs Edith Marcus and Meta Stevens. When Sam Shaw died in 1999, his shares in the aforementioned Trust passed to Marcus and Stevens, per stirpes. Shaw Archives has the right to market, and offer for commercial exploitation, the Shaw Collection.

14.     Plaintiffs Marcus and Stevens own and control the copyrights of photographs of Marilyn Monroe contained within the Shaw Collection, many of which have never been seen by the public.

## ALLEGATIONS COMMON TO ALL COUNTS

**Allegations Concerning Defendants' Repeated and Willful Copyright Infringement and Contributory Copyright Infringement**

15.     In or about 1957, Sam Shaw created a group of original photographs of Marilyn Monroe taken at the beach at Amagansett, New York. Three of these photographs were depicted on pages 176, 180, and 182 (top right) in the book "Marilyn Among Friends" and are protected by U.S. Copyright Registration No. TX 2-400-879. A true and correct copy of U.S. Copyright Registration No. TX 2-400-879 is attached hereto as Exhibit A.

16.     Without proper authorization, Defendants have violated Plaintiffs' exclusive rights in the image of Marilyn Monroe protected by U.S. Copyright Registration No. TX 2-400-879 by causing to be copied, published, and offered for sale on their web site the foregoing three copyright protected images on a coffee mug.

17.     Plaintiffs Marcus and Stevens own Shaw photographs of Marilyn Monroe depicted on pages 128 (center), 130, and 134-35 in the book "Marilyn Among Friends." These photographs are protected by U.S. Copyright Registration No. TX 2-400-879. A true and correct copy of U.S. Copyright Registration No. TX 2-400-879 is attached hereto as Exhibit A.

18.     Without proper authorization, Defendants have violated Plaintiffs' exclusive rights in the image of Marilyn Monroe protected by U.S. Copyright Registration No. TX 2-400-879 by causing to be copied, published and offered for sale on their web site the foregoing three copyright protected images on a purse.

19.     On information and belief, knowing that they had no authorization to do so, and that their acts constituted copyright infringement, Defendants have authorized the Centric Corporation to publish, display, and sell numerous images of Marilyn Monroe on the Centric Corporation web site.  These images are displayed on alarm clocks, coffee mugs, mini clocks, and wall clocks are contained on pages 46 of the book "Marilyn and Friends."  These photographs of Marilyn Monroe, including the famous skirt flying photograph most prominently displayed, are protected by U.S. Copyright Registration No. TX 2-400-879, attached hereto as Exhibit A.  Defendants have violated Plaintiffs' exclusive rights in the image of Marilyn Monroe protected by U.S. Copyright Registration No. TX 2-400-879 by causing to be copied, published and offered for sale on the Centric Corporation web site the foregoing protected images of Marilyn Monroe.  Defendants knew of Centric's illegal activity and induced and materially contributed to the infringement.

20.     Plaintiffs Marcus and Stevens own two Shaw photographs of Marilyn Monroe depicted on pages 20-21 in the book "In the Camera Eye."  These photographs are protected by U.S. Copyright Registration No. TX 5-342-425.  A true and correct copy of U.S. Copyright Registration No. TX 5-342-425 is attached hereto as Exhibit B.

21.     Without proper authorization, Defendants have violated Plaintiffs' exclusive rights in the image of Marilyn Monroe protected by U.S. Copyright Registration No. TX 5-342-

4

425 by causing to be copied, published, and offered for sale on their web site the foregoing images on a purse.

22.     In their written responses to Plaintiffs' first set of interrogatories, Defendant CMG admitted to displaying in 2004 "no more than 5 Monroe/Shaw Photographs on its corporate website for no more than 6 to 9 months."   Despite Plaintiffs' written requests, the Defendants have refused to identify the photographs at issue.

**Defendants' False Commercial Representations and Wrongful Interference With Plaintiffs' Contractual Relations**

23.     Defendants have pursued an aggressive and improper campaign of threats and intimidation to force third-parties to obtain Defendants' permission for the use of Marilyn Monroe's name, likeness or image.   Defendants have also improperly demanded and obtained payments from these parties by wrongfully representing to Plaintiffs' licensees and potential licensees that Defendants had a right of publicity in Marilyn Monroe (or right to the image and likeness of Marilyn Monroe), which Defendants knew or should have know was false.

24.     Defendants' intentionally false statements to Plaintiffs' licensees and potential licensees has caused Plaintiffs substantial damage because it has caused Plaintiffs' licensees to cease licensing images of Marilyn Monroe from Plaintiffs and caused other potential licensees to forgo licensing images of Marilyn Monroe from Plaintiffs when they otherwise would have done so.

**The Defendants' Flouting of The Court Orders in California and New York**

25.     On or about May 2, 2007, The Honorable Colleen McMahon of the Southern District of New York (the "New York Order") ruled that the Defendant MM does not own a right of publicity in Marilyn Monroe because she died a domiciliary in a state that did not recognize a post-mortem right of publicity.

5

26.     On or about May 14, 2007, the Honorable Margaret M. Morrow of the Central District of California made essentially the same ruling as the New York Order (the "California Order").

27.     The Defendants have frequently expressed contempt for the legal reasoning and basis set forth in the New York and California Orders in the media and in commerce.

28.     Despite the New York and California Orders, Defendants continue to represent that they have rights to the image of Marilyn Monroe.

29.     Despite the New York and California Orders, Defendants continue to make false representations of fact to Plaintiffs' licensees and potential licensees concerning Defendants' alleged rights in the image of Marilyn Monroe.

30.     Despite the New York and California Orders, the Defendants continue to assert rights to the image of Marilyn Monroe which they do not have, including recent such representations to, among others, New Media Inc. and Pyramid Posters Limited.

31.     Defendants' continued false representations and wrongful interference are causing Plaintiffs substantial damage.

**The Defendants' Efforts to Circumvent The New York And California Orders Through Misrepresentations to the Legislature**

32.     The Defendants' have lobbied the New York and California legislature for laws that would eviscerate the New York and California Orders.

33.     The Defendants have achieved success in New York and California by (i) misrepresenting and omitting numerous material facts concerning the import of the respective rulings and (ii) failing to provide full disclosure on the nature and extent of their wrongful acts as set forth herein.

34. The Defendants misrepresentations are continuing to cause Plaintiffs damage because their actual and prospective licensees continue to suffer anxiety that their existing contractual relations and expectations will be nullified by new legislation.

## FIRST CAUSE OF ACTION

### (FEDERAL COPYRIGHT INFRINGEMENT)
### (17 U.S.C. § 101, et seq.)

35. Plaintiffs repeat, reiterate and re-allege each and every allegation contained in paragraphs 1 through 34 as if fully set forth herein.

36. As a result of the foregoing acts, the Defendants have willfully infringed the Plaintiffs' federal copyrights, all in violation of 15 U.S.C. § 501.

## SECOND CAUSE OF ACTION

### (FEDERAL CONTRIBUTORY COPYRIGHT INFRINGEMENT)
### (17 U.S.C. § 101, et seq.)

37. Plaintiffs repeat, reiterate and re-allege each and every allegation contained in paragraphs 1 through 36 as if fully set forth herein.

38. As a result of the foregoing acts, the Defendants have willfully infringed the Plaintiffs' federal copyrights, all in violation of 15 U.S.C. § 501.

## THIRD CAUSE OF ACTION

### (DECLARATION THAT THE DEFENDANTS DO NOT OWN ANY INTELLECTUAL PROPERTY RIGHTS IN THE IMAGE OR LIKENESS OF MARILYN MONROE)

39. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 38 as if fully set forth herein.

40. Based on the foregoing acts, there is an actual controversy and Plaintiffs will continue to be damaged unless the Court specifically holds that the Defendants do not own any rights in the image of Marilyn Monroe.

## FOURTH CAUSE OF ACTION

### (TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS)

41.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 40 as if fully set forth herein.

42.     As a result of the foregoing acts, the Defendants have tortiously interfered with Plaintiffs' contractual relations thereby causing Plaintiffs damage.

## FIFTH CAUSE OF ACTION

### (TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)

43.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 42 as if fully set forth herein.

44.     As a result of the foregoing acts, the Defendants tortiously interfered with Plaintiff's prospective economic advantage, thereby causing Plaintiffs damage.

## SIXTH CAUSE OF ACTION

### (FALSE DESIGNATION OF ORIGIN, FALSE DESCRIPTION, AND UNFAIR COMPETITION UNDER 15 U.S.C. § 43(a))

45.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 44 as if fully set forth herein.

46.     The false representations of origin and the false and misleading descriptions and representations of fact alleged herein have caused Plaintiffs significant monetary damage, loss and injury to Plaintiffs, in an amount currently undetermined, all in violation of Section 43(a) of the Lanham Act of the Trademark Act of 1946, as amended, 15 U.S.C. § 43(a).

47.     As a result of the foregoing acts, Defendants have caused consumer confusion in the marketplace.

48.     Upon information and belief, Defendants undertook the aforesaid acts willfully and with the intention of causing confusion, mistake or deception.

## SEVENTH CAUSE OF ACTION

### (COMMON LAW UNFAIR COMPETITION)

49.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 48 as if fully set forth herein.

50.     By its acts alleged herein, Defendants have engaged in, and continue to engage in, a course of unfair competition in violation of the common law of the State of New York.

51.     Plaintiffs have been damaged as a result of the Defendants activities in an amount currently undetermined.

## EIGHTH CAUSE OF ACTION

### (UNFAIR TRADE PRACTICES UNDER N.Y. GEN BUS. LAW §§ 349-50)

52.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 51 as if fully set forth herein.

53.     By virtue of the foregoing, Defendants have violated N.Y. Gen. Bus. Law §§ 349-50 and have suffered damages in an amount presently unknown.

## NINTH CAUSE OF ACTION

### (DECLARATION THAT MARILYN MONROE DIED A DOMICILIARY OF THE STATE OF NEW YORK)

54.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 53 as if fully set forth herein.

9

55.     By virtue of the foregoing legislative efforts and ongoing factual misrepresentations concerning their rights to the image of Marilyn Monroe, Plaintiffs are entitled to a ruling that Marilyn Monroe died a New York domiciliary.

WHEREFORE, Plaintiffs demand:

A.      For a Declaratory Judgment, pursuant to 28 U.S.C. §2201 as set forth herein.

B.      For copyright damages increased to the statutory maximum due to willful infringement.

C.      For treble damages, punitive damages and attorney's fees.

D.      For compensatory damages and consequential damages as provided by law.

E.      For an injunction restraining defendants, their officers, agents, and employees, and all persons acting in concert with them, from engaging in any further unlawful acts as set forth herein.

F.      Such other and further relief as to this Court may deem just and proper.


Dated:  New York, New York
        August 8, 2007

                                Respectfully Submitted,


                        By: _____
                            Christopher Serbagi (CS 7746)
                            David Marcus (DM 0960)
                            Law Offices of Christopher Serbagi
                            488 Madison Avenue, Suite 1120
                            New York, New York 10022
                            (212) 593-2112

                            Attorneys for Plaintiffs/Consolidated Defendants
                            Shaw Family Archives, Bradford Licensing, Inc.,
                            Edith Marcus and Meta Stevens

10

EXHIBIT A

# CERTIFICATE OF REGISTRATION



OFFICIAL SEAL

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

REGISTER OF COPYRIGHTS
United States of America

## FORM TX
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

TX 2-400-379

| TX | TXU |

EFFECTIVE DATE OF REGISTRATION

Sep 6 88

Month    Day    Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1**

TITLE OF THIS WORK ▼

MARILYN AMONG FRIENDS by Sam Shaw and Norman Rosten

PREVIOUS OR ALTERNATIVE TITLES ▼

PUBLICATION AS A CONTRIBUTION If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give: Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

---

**2**

NAME OF AUTHOR ▼

Norman Rosten

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ U.S.
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by this author in which copyright is claimed. ▼
entire text

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by this author in which copyright is claimed. ▼

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by this author in which copyright is claimed. ▼

---

**3**

YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED This information must be given in all cases.
1987 ◀ Year

DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information ONLY if this work has been published. Month ▶ May    Day ▶ 5    Year ▶ 1987
Great Britain ◀ Nation

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Norman Rosten
c/o Henry Holt and Company, Inc., 115 West 18th St.
New York, NY 10011

APPLICATION RECEIVED
SEP 01 1988
ONE DEPOSIT RECEIVED
SEP 01 1988
TWO DEPOSITS RECEIVED
REMITTANCE NUMBER AND DATE

TRANSFER If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

---

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-11) on the reverse side of this page.
• See detailed instructions. • Sign the form at line 10.

DO NOT WRITE HERE

PAGE 05

EXAMINED BY  ✓ ✓

CHECKED BY

☐ CORRESPONDENCE
  Yes

☐ DEPOSIT ACCOUNT
  FUNDS USED

FORM TX

FOR
COPYRIGHT
OFFICE
USE
ONLY

TX  2-400-679

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes  ☒ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼

☐ This is the first published edition of a work previously registered in unpublished form.

☐ This is the first application submitted by this author as copyright claimant.

☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number ▼**        **Year of Registration ▼**

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a & 6b for a derivative work; complete only 6b for a compilation.
a. **Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

b. **Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

See instructions
before completing
this space.

**6**

**MANUFACTURERS AND LOCATIONS** If this is a published work consisting preponderantly of nondramatic literary material in English, the law may require that the copies be manufactured in the United States or Canada for full protection. If so, the names of the manufacturers who performed certain processes, and the places where these processes were performed must be given. See instructions for details.
**Names of Manufacturers ▼**                    **Places of Manufacture ▼**

**7**

**REPRODUCTION FOR USE OF BLIND OR PHYSICALLY HANDICAPPED INDIVIDUALS**    A signature on this form at space 10, and a check in one of the boxes here in space 8, constitutes a non-exclusive grant of permission to the Library of Congress to reproduce and distribute solely for the blind and physically handicapped and under the conditions and limitations prescribed by the regulations of the Copyright Office: (1) copies of the work identified in space 1 of this application in Braille (or similar tactile symbols); or (2) phonorecords embodying a fixation of a reading of that work; or (3) both.

a ☐ Copies and Phonorecords        b ☐ Copies Only        c ☐ Phonorecords Only

See instructions.

**8**

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
**Name ▼**                              **Account Number ▼**
Henry Holt and Company, Inc.            058009

**9**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.  Name/Address/Apt/City/State/Zip ▼

Be sure to
give your
daytime phone
◄ number.

Area Code & Telephone Number ▶

**CERTIFICATION*** I, the undersigned, hereby certify that I am the
Check one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of  Norman Rosten

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

**10**

Typed or printed name and date ▼ If this is a published work, this date must be the same as or later than the date of publication given in space 3.

Joanne Vallas                                        date ▶  September 2, 1988

Handwritten signature (X) ▼

**MAIL
CERTIFI-
CATE TO**

**Name ▼**
Joanne Vallas

**Number/Street/Apartment Number ▼**
Henry Holt and Company, Inc., 115 West 18th Street

**City/State/Zip ▼**
New York, NY 10011

Certificate
will be
mailed in
window
envelope

Have you:
• Completed all necessary spaces?
• Signed your application in space 10?
• Enclosed check or money order for $10 payable to Register of Copyrights?
• Enclosed your deposit material with the application and fee?

MAIL TO: Register of Copyrights, Library of Congress, Washington, D.C. 20559.

**11**

* 17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

* U.S. GOVERNMENT PRINTING OFFICE: 1986:461-584/20,006                                    AUGUST 1986—200,00

# EXHIBIT B

# CERTIFICATE OF REGISTRATION



OFFICIAL SEAL

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

REGISTER OF COPYRIGHTS
United States of America

## FORM TX
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

REGISTR

**TX 5 – 342 – 425**

EFFECTIVE DATE OF REGISTRATION

**JUL 2 0 2001**

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**1**

TITLE OF THIS WORK ▼

Marilyn Monroe: In the Camera Eye

PREVIOUS OR ALTERNATIVE TITLES ▼

N/A

PUBLICATION AS A CONTRIBUTION If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

N/A

If published in a periodical or serial give: Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

N/A

**2**

**a**

NAME OF AUTHOR ▼

Sam Shaw

DATES OF BIRTH AND DEATH
Year Born ▼ 1912    Year Died ▼ 1999

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ► U.S.A.
{ Domiciled in ►

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?    ☐ Yes ☐ No
Pseudonymous?   ☐ Yes ☐ No

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼
Photographs and Text

NOTE
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of the work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b**

NAME OF AUTHOR ▼

N/A

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ►
{ Domiciled in ►

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?    ☐ Yes ☐ No
Pseudonymous?   ☐ Yes ☐ No

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c**

NAME OF AUTHOR ▼

N/A

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ►
{ Domiciled in ►

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?    ☐ Yes ☐ No
Pseudonymous?   ☐ Yes ☐ No

NATURE OF AUTHORSHIP Briefly describe the nature of material created by this author in which copyright is claimed. ▼

**3**

**a**

YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED This information must be given in all cases.
1979 ◄ Year

**b**

DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK Complete this information ONLY if this work has been published.
Month May   Day    Year

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Edith Shaw Marcus, 143 Independence Avenue, Tappan, NY 10983
Meta Shaw Stevens, 838 West End Avenue, #4D, New York, NY 10025

APPLICATION RECEIVED
JUL 2 0 2001
ONE DEPOSIT RECEIVED
JUL 2 0 2001
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

Ownership of of Copyright passed through Trust to the ~~daughters of the Author.~~

MORE ON BACK ► • Complete all applicable spaces (numbers 5-9) on the reverse side of this page. • See detailed instructions. • Sign the form at line 8.

Special Relief granted under
Sec. 202.20(b) of the C.O. regs.

EXAMINED BY

CHECKED BY

☑ CORRESPONDENCE
☐ Yes

FORM PA

FOR
COPYRIGHT
OFFICE
USE
ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**5** PREVIOUS REGISTRATION Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☑ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: **Previous Registration Number** ▶                    **Year of Registration** ▶

**6** DERIVATIVE WORK OR COMPILATION
Preexisting Material  Identify any preexisting work or works that this work is based on or incorporates. ▼    a

N/A

Material Added to This Work  Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼    b

N/A

**7** DEPOSIT ACCOUNT  If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.    a
Name ▼                              Account Number ▼

CORRESPONDENCE  Give name and address to which correspondence about this application should be sent.  Name/Address/Apt/City/State/Zip ▼    b
Edith Shaw Marcus, 143 Independence Avenue, Tappan, NY 10983

Area code and daytime telephone number ▶ 845-359-8231                    Fax ▶ 845-359-3704
Email ▶    edieshaw@earthdawn.net

**8** CERTIFICATION*  I, the undersigned, hereby certify that I am the
Check only one ▼
☐ author
☑ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of
of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.          Name of author or other copyright claimant, or owner of exclusive right(s) ▲

Typed or printed name and date ▼  If this application gives a date of publication in space 3, do not sign and submit it before that date.
Edith Shaw Marcus                                                      Date ▶ 7-14-2001

Handwritten signature (X) ▼
X _____ Edith Shaw Marcus _____

**9** Certificate
will be
mailed in
window
envelope
to this
address:

Name ▼
Edith Shaw Marcus

Number/Street/Apt ▼
143 Independence Avenue

City/State/Zip ▼
Tappan, NY 10983

*17 U.S.C. §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of August, 2007, I caused a true and correct copy of Plaintiffs/Consolidated Defendants Second Amended Complaint to be served by overnight mail to:

Orin Snyder, Esq.
Gibson Dunn & Crutcher LLP
200 Park Avenue, 47th Floor
New York, New York 10166
Tele: 212-351-4000
Fax: 212-351-6288
Attorneys for Marilyn Monroe, LLC


Ted J. Minch, Esq.
Sovich Minch, LLP
10099 Chesapeake Drive
Suite 100
McCordsville, Indiana 46055

Attorneys for CMG Worldwide, Inc.


LAW OFFICES OF CHRISTOPHER SERBAGI

By: _Christopher Serbagi_
Christopher Serbagi (CS 7746)
488 Madison Avenue, Suite 1120
New York, New York 10022
Tele: (212) 593-2112
Fax: (212) 308-8582

Attorney for the Plaintiffs/Consolidated Defendants

EX. M

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
                                      :

CMG WORLDWIDE, INC., an Indiana       :
Corporation and MARILYN MONROE, LLC,  :
a Delaware Limited Liability Company,    :
                                        :

            Plaintiffs,                  :            05 Civ. 3939 (CM)
                                        :            06 Civ. 2619 (CM)
      -against-                   :   (formerly No. 1:05-cv-0423-DFH-WTL)
                                        :          **THIRD AMENDED**
BRADFORD LICENSING ASSOCIATES and THE :          **COMPLAINT**
SHAW FAMILY ARCHIVES, Ltd., a New York  :
Corporation,                        :
                                        :
           Defendants.                 :
                                        :
--------------------------------------------------------------x

      Plaintiffs CMG Worldwide, Inc. ("CMG"), and Marilyn Monroe, LLC ("MMLLC"),

by counsel, and for their Complaint for declaratory relief against defendants Bradford

Licensing Associates ("Bradford") and Shaw Family Archives, Ltd. ("Shaw" and, together

with Bradford, "Defendants"), allege as follows:

## NATURE OF THE ACTION

      1.    Plaintiffs brought this action on or about March 23, 2005 to halt Defendants'

unauthorized exploitation of Plaintiffs' valuable intellectual property rights related to the

iconic Marilyn Monroe, one of the most popular, glamorous, and attractive public

personalities in the world.

      2.    Plaintiffs' prior complaints in this action alleged, among other things, that

Defendants were violating the Plaintiffs' rights in and to Marilyn Monroe's rights of publicity

(Count 2 of Second Amended Complaint), and Plaintiffs sought a declaration of Plaintiffs' rights of publicity related to Marilyn Monroe (Count 1 of Second Amended Complaint).

3.    On or about May 2, 2007, this Court issued an order (the "May 2 Order") granting Defendants' motion for summary judgment on Count 2 of Plaintiffs' Second Amended Complaint. The May 2 Order dismissed Plaintiffs' right of publicity claim and implicitly rendered moot Plaintiffs' claim for a declaration regarding Plaintiffs' right of publicity. Defendants intend to appeal the May 2 Order and Plaintiffs incorporate by reference, as if fully set forth herein, Counts 1 and 2 of the Second Amended Complaint to the extent such incorporation is necessary to preserve the appeal and to try Counts 1 and 2 should the May 2 Order be reversed.

4.    On information and belief, both prior to and since the issuance of the May 2 Order, Defendants have granted to third-parties licenses to exploit photographs allegedly owned by Defendants bearing Marilyn Monroe's image. On information and belief, however, certain of the photographs that Defendants purport to license to third parties are in the public domain and can be freely used by such licensees without Defendants' consent. Defendants have refused to recognize that certain photographs of Marilyn Monroe allegedly owned and controlled by Defendants are in the public domain and Defendants have asserted that Plaintiffs are prohibited from using such photographs without Defendants' consent. But for Defendants' false claims of ownership of copyrights in and to photographs of Marilyn Monroe that have, on information and belief, entered the public domain, Plaintiffs would seek to utilize such public domain photographs commercially in connection with goods and services that are officially authorized and/or licensed by Plaintiffs.

1

5.    On information and belief, Defendants' licensing of and attempts to license images of Marilyn Monroe that are in the public domain injure Plaintiffs by causing confusion in the marketplace for licenses to utilize photographs of Marilyn Monroe, and by affecting the overall demand for licenses to create and market products that incorporate Marilyn Monroe's image.

6.    Accordingly, Plaintiffs respectfully request that this Court award declaratory relief to establish that Defendants have no right to license or interfere with the use of photographs of Marilyn Monroe that have entered the public domain.

## PARTIES

7.    Plaintiff CMG is a corporation organized and existing pursuant to the laws of the State of Indiana, maintaining its principal place of business in Hamilton County, Indiana.

8.    Plaintiff MMLLC is a business entity organized and existing pursuant to the laws of the State of Delaware, maintaining its principal place of business through CMG, its exclusive licensing and business representative.

9.    Upon information and belief, Defendant Bradford is a business entity organized and existing pursuant to the laws of the State of New Jersey.

10.    Upon information and belief, Defendant Shaw is a business entity organized and existing pursuant to the laws of the State of New York.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

2

12.     This Court has personal jurisdiction over Defendants based on Defendants' decision to move the United States District Court for the Southern District of Indiana to transfer this action to this Court, and because Defendants reside in the State of New York.

13.     Venue in the United States District Court for the Southern District of Indiana was proper pursuant to 28 U.S.C. §§ 1391(b) and 28 U.S.C. § 1400. Venue has been placed in this judicial district pursuant to the Order of the United States District Court for the Southern District of Indiana in this matter dated March 23, 2005.

## PLAINTIFFS' BUSINESS AND RIGHTS

14.     For the past several decades, MMLLC has exercised various statutory and common law rights of publicity and other rights related to Marilyn Monroe. Until the issuance of this Court's May 2 Order, MMLLC has always understood and believed that it was the lawful owner of these publicity rights.

15.     CMG has been granted the exclusive right to exploit the rights of publicity owned and controlled by MMLLC.

16.     Over the last twenty-five (25) years, CMG has been in the business of representing certain famous individuals or the heirs, families, estates, or business enterprises of famous individuals ("CMG Clients") for the purpose of licensing to third parties the right to commercially utilize the intellectual property rights belonging to these famous individuals and/or their heirs, families, estates, or business enterprises. Typically, CMG represents such individuals or entities exclusively and, accordingly, there can be no entity other than CMG with the authority to represent, in a licensing context, the intellectual property rights of the CMG Clients. Through CMG's various efforts to manage and exploit the intellectual property

3

rights of its clients, CMG generates income for its clients and operating revenue for itself. CMG's various methods for promoting and pursuing commercial opportunities on behalf of the CMG Clients have been honed, stylized, and refined by experience and success in the industry over the past two and a half decades. As such, CMG, as well as its clients, have developed considerable goodwill with companies such as well-known advertising agencies and prestigious manufacturers throughout the world with whom CMG maintains close contact and conducts regular and ongoing business.

17.    MMLLC and CMG have invested considerable time, energy, and financial resources over the span of many years in pursuing opportunities that will promote the popularity of Ms. Monroe with the consuming public, and in developing critical and lucrative business relationships with licensees and business partners.

## DEFENDANTS' ACTIVITIES

18.    Upon information and belief, Shaw has within its possession certain photographs of Marilyn Monroe taken by Sam Shaw (hereinafter "Monroe/Shaw Photographs").

19.    Shaw, either directly or through its agents or representatives, is in the business of licensing the Monroe/Shaw Photographs for use on or in connection with products or services that are offered, marketed, and advertised to the public.

20.    Bradford is in the business of offering, marketing, and advertising to the public, licensing services featuring various consumer brands and properties. Upon information and belief, Bradford's business and commercial endeavors include activities conducted on behalf of Shaw.

4

21.     Upon information and belief, Bradford represents certain third parties,
including Shaw, who allegedly own certain copyright interests in photographs of Marilyn
Monroe, including the Monroe/Shaw Photographs.

22.     Shaw has asserted, either by itself or through Bradford, that it possesses valid
and enforceable copyrights, pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq*, in each
and every photograph that constitutes the Monroe/Shaw Photographs and *The Shaw Limited
Edition Marilyn/Norma Jeane Collection* (hereinafter the "Shaw Collection").

23.     In 1999, the United States District Court for the Southern District of New York
ruled, in the case of *Shaw v. Rizzoli Int'l Publ'ns, Inc.*, No. 96 Civ. 4259 (JFK) (S.D.N.Y.),
that certain photographs that comprise the Monroe/Shaw Photographs and/or the Shaw
Collection and that were published in a book entitled *Marilyn Monroe. The Life. The Myth.*
(the "*Rizzoli* Works") have entered the public domain.  In that case, the Honorable John G.
Koeltl ruled that the copyrights in the *Rizzoli* Works "expired," and such photographs entered
the public domain when "no renewals were obtained with respect to" them.

24.     Upon information and belief, there exist photographs other than the *Rizzoli*
Works that comprise the Monroe/Shaw Photographs and/or the Shaw Collection that were
published prior to January 1, 1964, and for which copyright renewals were not obtained
during the final year of the initial 28-year copyright term for such works.  Accordingly, upon
information and belief, such other photographs have similarly entered the public domain.

25.     For example, in 1955, Ballantine Books published a book entitled *Marilyn
Monroe as The Girl*, featuring over 100 photographs of Marilyn Monroe that were taken by
Sam Shaw.  Upon information and belief, Mr. Shaw registered his copyright in this work with

5

the Library of Congress in 1955, under registration number A193450, but failed to renew such copyright during the final year of the initial 28-year copyright term for such work or at any time. As a result, the copyright for this work expired in 1983, and photographs contained in this work fell into the public domain.

26.     Further, on information and belief, other photographs that comprise the Monroe/Shaw Photographs and/or the Shaw Collection were initially published without copyright notice prior to March 1, 1989, when notice was required under the United States Copyright Act, and these photographs also have entered the public domain.

27.     As a result, many of the photographs that comprise the Monroe/Shaw Photographs and/or the Shaw Collection have entered the public domain (collectively, the "Public Domain Monroe/Shaw Photographs").

## COUNT I:

### (DECLARATION AS TO SHAW'S COPYRIGHTS IN SHAW COLLECTION)

28.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

29.     Defendants have refused to acknowledge that any of the works that comprise the Monroe/Shaw Photographs and/or the Shaw Collection have entered the public domain.

30.     On information and belief, Shaw and/or Bradford have communicated to licensees, potential licensees, business partners, and/or potential business partners that such licensees, potential licensees, business partners, and/or potential business partners require the prior permission and consent from Shaw and/or Bradford prior to utilizing the Public Domain Monroe/Shaw Photographs.

6

31.    On information and belief, Defendants have actively discouraged licensees, potential licensees, business partners, and/or potential business partners from entering into any relationship with Plaintiffs in connection with products or services that feature certain Public Domain Monroe/Shaw Photographs.

32.    On information and belief, Plaintiffs have been and continue to be injured by Defendants' conduct in inducing or attempting to induce Plaintiffs' licensees, potential licensees, business partners, and potential business partners to forgo entering into any relationship with Plaintiffs and to instead obtain unnecessary licenses from Defendants to use Public Domain Monroe/Shaw Photographs.

33.    Were it not for Defendants' false claims to ownership in the Public Domain Monroe/Shaw Photographs, Plaintiffs would seek to make use of the Public Domain Monroe/Shaw Photographs either by themselves or through licensees and/or business partners.

34.    As a result of Defendants' conduct as alleged herein, Defendants have created a case of actual controversy within the jurisdiction of this Court such that this Court may declare the status of the rights and other legal relations of the parties to this litigation pursuant to 28 U.S.C. § 2201 that, in addition to the *Rizzoli* Works which already have been found to be in the public domain, Shaw does not possess valid and enforceable copyrights in those photographs that comprise the Monroe/Shaw Photographs and/or the Shaw Collection that were either:  (a) published prior to January 1, 1964, where no copyright renewals were obtained during the final year of the initial 28-year copyright term for such photographs; or (b) published prior to March 1, 1989, without the requisite copyright notice.

7

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief in the following particulars:

A.      Enter a Declaratory Judgment, pursuant to 28 U S.C. § 2201, and to declare therein:

      i.      That, in addition to the *Rizzoli* Works, Defendants do not possess valid and enforceable copyrights in those photographs that comprise the Monroe/Shaw Photographs and/or the Shaw Collection that were either: (a) published prior to January 1, 1964, where no copyright renewals were obtained during the final year of the initial 28-year copyright term for such photographs; or (b) published prior to March 1, 1989, without the requisite copyright notice;

      ii.      That Defendants are and shall be permanently enjoined and restrained from conducting further activities inconsistent with the rights of their licensees, potential licensees, business partners, and/or potential business partners to make use of the Public Domain Monroe/Shaw Photographs without any authorization, permission, or license from Defendants; and

      iii.      That Defendants are and shall be permanently enjoined and restrained from engaging in any activities which interfere with Plaintiffs' business activities with respect to the rights of Plaintiffs, their licensees and business partners, and the general public to make commercial use of the Public Domain Monroe/Shaw Photographs; and

8

B.    Award Plaintiffs their costs, including attorneys' fees, pursuant to the Untied

States Copyright Act.

C.    Award Plaintiffs such other relief as may be just and proper.

Dated: New York, New York
       August 9, 2007

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: _____
    Orin Snyder (OS-3122)
    Cynthia Arato (CA-8750)
    Howard S. Hogan (HH-7995)
    Michelle Craven (MC-8556)

200 Park Avenue, 47th Floor
New York, New York 10166-0193
Telephone:  (212) 351-4000
Facsimile:  (212) 351-4035

*Attorneys for Plaintiff Marilyn Monroe, LLC*

        and

SOVICH MINCH LLP

By: _____
    Theodore J. Minch (*Pro Hac Vice* application forthcoming)

10099 Chesapeake Drive, Suite 100
McCordsville, Indiana 46055
Telephone:  (317) 335-3601
Facsimile:  (317) 335-3602

*Attorneys for Plaintiff CMG Worldwide, Inc.*

9

B.    Award Plaintiffs their costs, including attorneys' fees, pursuant to the Untied

States Copyright Act.

C.    Award Plaintiffs such other relief as may be just and proper.

Dated: New York, New York
       August 9, 2007

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:_____
        Orin Snyder (OS-3122)
        Cynthia Arato (CA-8350)
        Howard S. Hogan (HH-7995)
        Michelle Craven (MC-8556)

200 Park Avenue, 47th Floor
New York, New York 10166-0193
Telephone:  (212) 351-4000
Facsimile:  (212) 351-4035

*Attorneys for Plaintiff Marilyn Monroe, LLC*

and

SOVICH MINCH LLP

By:_____
        Theodore J. Minch (*Pro Hac Vice* application forthcoming)

10099 Chesapeake Drive, Suite 100
McCordsville, Indiana 46055
Telephone:  (317) 335-3601
Facsimile:  (317) 335-3602

*Attorneys for Plaintiff CMG Worldwide, Inc.*

9