UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

SHAW FAMILY ARCHIVES, LTD., EDITH     :
MARCUS and META STEVENS,            :
                                        :
                                        :
                    Plaintiffs,       :   Index No. O5 CV 3939 (CM)
                                        :
          -against-               :   ECF CASE
                                        :

CMG WORLDWIDE, INC., an Indiana Corporation:
and MARILYN MONROE, LLC, a Delaware      :
Limited Liability Company,                 :
                                        :
                  Defendants.       :
                                        :

------------------------------------------------------------X

MEMORANDUM IN SUPPORT OF THE MOTION OF SHAW FAMILY ARCHIVES
LTD. AND BRADFORD LICENSING ASSOCIATES FOR SUMMARY JUDGMENT
ON COUNT I OF DEFENDANTS/CONSOLIDATED PLAINTIFFS' THIRD
AMENDED COMPLAINT AND FOR ATTORNEY'S FEES PURSUANT TO
<u>THE UNITED STATES COPYRIGHT ACT</u>

LAW OFFICES OF CHRISTPHER SERBAGI
488 Madison Avenue, Suite 1120
New York, New York 10022
Tele: (212) 593-2112
Fax: (212) 308-8582

Attorneys for the Plaintiffs

On the Brief:
Christopher Serbagi, Esq.
David Marcus, Esq.

<u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES.................................................................................ii

PRELIMINARY STATEMENT....................................................................................1

STATEMENT OF FACTS....................................................................................4

ARGUMENT....................................................................................4

I.    THE DEFENDANTS LACK ARTICLE III STANDING TO REQUEST A DECLARATION THAT THE RIZZOLI AND BALLANTINE PHOTOGTAPHS OF MARILYN MONROE ARE IN THE PUBLIC DOMAIN...........................................................................5

    A.    The Defendants Have Not Suffered A Distinct And Palpable Injury As A Result Of The Shaw Family's Representations or Actions....................................................6

    B.    A Decision That Rizzoli and Ballantine Are In The Public Domain Would Not Redress Defendants' Purported Injury.....................................................................7

    C.    There Is No Case or Controversy Between The Parties Because the Defendants Have No Immediate Plans to License the Rizzoli and Ballantine Images.......................8

II.    THE COURT SHOULD ALSO EXERCISE ITS BROAD DISCRETION TO DECLINE DECLARATORY JUDGMENT JURISDICTION.........................................................10

III.    THE DEFENDANTS HAVE FAILED TO SUE INDISPENSIBLE PARTIES TO COUNT I BY FAILING TO SUE THE COPYRIGHT OWNERS ...............................11.

    A.    There is No Satisfactory Explanation For Defendants' Undue Delay.....................12

    B.    The Parties Would Be Unduly Prejudiced By the Defendants' Amendment At This Late Date.....................................................................................13

IV.    THE SHAW FAMILY IS ENTITLED TO ITS ATTORNEY'S FEES UNDER THE COPYRIGHT ACT BECAUSE DISCOVERY HAS REVEALED THAT DEFENDANTS' CLIAMS WERE KNOWINGLY FALSE AND SUBMITTED FOR AN IMPROPER PURPOSE.....................................................................................14

    A.    The Defendants Claims Are Frivolous and Objectively Unreasonable.....................15

    B.    The Defendants' Claim Was Improperly Motivated.........................................16

    C.    Defendants Bad Faith is Further Evidenced By The Defendants' Inability To Support The Allegations In the Third Amended Complaint At Their 30(b)(6) Depositions.......17

D.    The Defendants' Bad Faith Is Further Evidenced By Their Refusal To Answer a Contention Interrogatory That Requested The Basis For Their Declaratory Judgment Action.................................................................................................20

E.    The Defendants' Decision Not To Take the Declaration of Bradford Licensing Further Evidences Their Bad Faith..........................................................20

F.    The Defendants' Bad Faith Is Further Evidenced By Their Frivolous and Vexatious Vendetta To Attack All The Shaw Family Copyrights....................................21

G.    The Defendants Repeatedly Threatened The Shaw Family With Attorney's Fees Under the Copyright Act ....................................................................23

H.    Defendant MMLLC's Attorney Ordered MMLLC's Witness Not To Answer Highly Relevant Questions Pertaining To The Injury The Defendants' Purportedly Suffered.............................................................................23

CONCLUSION................................................................................................24

TABLE OF AUTHORITIES

Page

CASES:

Adsani v. Miller,
    No. 04 Civ. 9131, 1996 WL 531858, (1996)......................................................15
Alco Industries, Inc. v. National Center for Health Education, Inc.,
    812 F. Supp. 387 (S.D.N.Y. 1993)...............................................................9
Allen v. Wright,
    468 U.S. 737, 104 S.Ct 3315, 82 L.Ed. 2d 556 (1984)...............................................5
Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242, 91 L. E.d 2d 202, 106 S.Ct. 2505 (1986)............................................4
Earth Flag Ltd. v. Alamo Flag Co.,
    154 F. Supp.2d 663 (S.D.N.Y. 2001)..............................................................15
Browning Debenture Holders' Comm. v. DASA Corp.,
    524 F.2d 811 (2d Cir. 1975)......................................................................11
Burns v. Warwick Valley Central School District,
    166 F. Supp. 2d 881 (S.D.N.Y. 2001) (CM).......................................................5
Carruthers v. Flaum,
    450 F. Supp.2d 288 (S.D.N.Y. Sept. 6, 2006)....................................................17
Dow Jones & Co., Inc. v. Harrods, Ltd.,
    237 F. Supp.2d 394 (S.D.N.Y. 2002)..............................................................10
First Financial Mktg. Servs. Group, Inc. v. Field Promotions, Inc.
    286 F. Supp. 295  (S.D.N.Y. 1968)................................................................11
Fogarty v. Fantasy,
    510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994)..........................................14
Forman v. Davis,
    371 U.S. 178, 83 S.Ct. 227, 9 L.Ed. 2d 222 (1962).............................................12
Golden v. Zwickler,
    394 U.S. 103, 89 S.Ct. 956, 22 L.Ed2d 113 (1969)..............................................9
Little v. Twentieth Century Fox Film Corp.,
    89 Civ. 8526, 1996 WL 18819 (S.D.N.Y. Jan. 18, 1996).........................................15
Lujan v. Defenders of Wildlife,
    504 U.S. 555, 112 S.Ct.2130, 119 L.E.2d 351 (1992)........................................4-5, 7
Marnell v. Carbo,
    499 F. Supp.2d 202 (N.D.N.Y. 2007)..............................................................9
Maryland Casualty Co. v. Pacific Coal & Oil Co.,
    312 U.S. 270, 61 S. Ct. 510, 85 L. Ed. 826 (1941)..............................................5
Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574, 89 L.Ed. 2d 538, 106 S.Ct. 1348 (1986).).......................................4
MacDraw, Inc. v. CIT Group Equipment Financing, Inc.,
    157 F.3d 956 (2d Cir. 1998)......................................................................12
McCormick ex rel. McCormick v. School Dist. Of Mamaroneck,
    370 F.3d 275 (2d Cir. 2004)......................................................................9

Medimmune, Inc. V. Genentech, Inc.,
    127 S. Ct. 764, 166 L. Ed. 2d 604 (2007)................................................................5
M.M. and D.M. v. Board of Education of the Waterville Central School District,
    963 F. Supp. 185 (N.D.N.Y. 1997)................................................................8
Monahan v. New York Dep't of Corrections,
    214 F.3d 275 (2d Cir. 2000)................................................................ 13
Pocketmedicine.Com, Inc. v. John Wiley & Sons, Inc.,
    2006 U.S. Dist. LEXIS 13617 (S.D.N.Y. Mr. 23, 2006)................................8, 11
Republic of the Philippines v. Marcus et al.,
    888 F.2d 954 (2d Cir. 1989)................................................................17
Sabre v. First Dominion Capital, LLC,
    01 Civ. 2145, 2001 U.S. Dist. LEXIS 20637 (S.D.N.Y. Dec. 10, 2001)............................17
Screenlife Establishment v. Tower Video, Inc.,
    868 F. Supp. 47 (S.D.N.Y. 1994)................................................................15
Stiftung v. Sumitomo Corp.,
    99 Civ. 1108 (BSK), 2001 U.S. Dist. LEXIS 20746 (S.D.N.Y. Dec. 12, 2001)....................17
Tamplenizza v. Josephthal & Co., Inc.,
    32 F. Supp.2d 702 (S.D.N.Y. 1999)................................................................10-11
The Bank of New York et al. v. Meriden Biao Bank Tanzania Ltd.,
    171 F.R.D. 135 (S.D.N.Y. 1997)................................................................17
The Randolph Foundation v. Duncan, 00 Civ. 6445(AKH)(THK),
    2002 U.S. Dist. LEXIS 362 (S.D.N.Y. January 9, 2002)................................................11-12
Wilton v. Stevens Falls Co.,
    515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995)................................................................10
Zappia Middle East Construction Co., Ltd. v. The Emirate of Abu Dhabi,
    94 Civ. 1942 (DC), 1995 U.S. Dist. LEXIS 17187 (S.D.N.Y. Nov. 17, 1995)....................17

<u>STATUTES</u>

U.S. Const. art. III................................................................1, 2, 5

17 U.S.C. § 505 (1976)................................................................14

Plaintiff/Consolidated Defendant Shaw Family Archives, Ltd. and Consolidated Defendant Bradford Licensing Associates (the "Shaw Family") respectfully submit this memorandum of law in support of their motion for summary judgment on Count I of the Defendants/Consolidated Plaintiffs Marilyn Monroe, LLC's and CMG Worldwide, Inc.'s ("Defendants") Third Amended Complaint and for attorney's fees under the United States Copyright Act, and for such other relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

The Defendants lack Article III standing to request that the Court declare Shaw Family books known as Rizzoli and Ballantine to be in the public domain because there is no justiciable controversy between the parties. The Defendants lack the injury necessary to request a declaratory judgment because they lack any intellectual property rights in public domain images of Marilyn Monroe (or any images of Marilyn Monroe for that matter), Rizzoli and Ballantine were not part of the Shaw Family's withdrawn copyright infringement claim, and the Shaw Family never represented to the Defendants or their actual or potential licensees that they had to pay a licensee fee for Rizzoli and Ballantine images. What is most clear is that a declaratory judgment order would be improper because a favorable decision here would not provide Defendants any redress, and that is because if the Rizzoli and Ballantine images are truly public domain, no one would license them from the Defendants anyway. They would simply copy them from the books at issue. Finally, the Defendants testified that they have no immediate plans to license Rizzoli and Ballantine images, which the applicable law requires in order for a declaratory judgment action to be proper.

To avoid a motion to dismiss their declaratory judgment action, the Third Amended Complaint contains a detailed recitation of how the Shaw Family told the Defendants' actual and

potential licensees that they could not use Rizzoli, Ballantine, and other purportedly unidentified public domain photographs and that the Defendants were injured thereby. Not surprisingly, Defendants recent 30(b)(6) witnesses were unable to provide <u>any testimony</u> to substantiate those absolutely false allegations. The Defendants 30(b)(6) testimony is so bereft of any substance that the only conceivable conclusion is that the Defendants had no basis to bring this claim except to further punish the Shaw Family for competitive advantage. Even worse, while discovery closed on December 31, 2007, the Defendants have actually <u>refused</u> to provide any substantive response to the Shaw Family's contention interrogatory that requested that Defendants substantiate the allegations in Count I, lending further credence to the bad faith nature of the Defendants' claim.

The Shaw Family is entitled to attorney's fees under the United States Copyright Act because Defendants' 30(b)(6) witnesses revealed that the Defendants had no basis whatsoever to allege any of the statements in the Third Amended Complaint regarding Article III standing. Even worse, the Defendants engaged in a repeated and vexatious mission to obtain discovery on the entire Shaw Family collection, even though the Third Amended Complaint identifies <u>only Rizzoli and Ballantine</u> as public domain. Defendants' fishing expedition resulted in six letters to Judge Fox, a trip to White Plains, and almost two days of deposition of the same Shaw Family 30(b)(6) deponent. The briefing of this motion alone was tremendously time consuming and expensive and a huge burden on the Shaw Family. Defendants repeatedly propounded incredible arguments before Judge Fox in their vexatious effort to attack the entire Shaw Family collection. Moreover, this is one of many instances that these powerful Defendants have threatened the Shaw Family with attorney's fees, first under the Indiana right of publicity statute and now under the Copyright Act. Most recently, Defendants' counsel again threatened the Shaw Family with

2

attorney's fees during the deposition of MMLLC's 30(b)(6) witness and <u>on the record</u>. Certainly, if these Defendants believe they were entitled to attorney's fees under the Copyright Act, they should have no objection to paying the same attorney's fees to the Shaw Family. If fees are ever appropriate under the Copyright Act, they are appropriate here.

Finally, the Defendants brought this claim against the incorrect party. The Defendants sued only Shaw Family Archives, Ltd. and Bradford Licensing Associates alleging that those parties do not own valid and enforceable copyrights, but as the Defendants well know those parties do not own a single copyright in a Marilyn Monroe image. Since April 19, 2005, the Shaw Family has repeatedly informed the Defendants in three separate Complaints that it is Edith Shaw and Meta Stevens that own the copyrights in Marilyn Monroe photographs, so there can be no conceivable reason why the Defendants failed to name the true copyright owners in any of their four complaints. This case is almost three years old. Discovery is now closed. It would be unjust to permit the Defendants to amend to name the true owners of the copyrights and to subject them to litigation in their individual capacities at this late date. For this reason alone, the Court should dismiss the Defendants' claim.

There are no material facts for trial. The Defendants had no basis to request that the Court exercise its declaratory judgment power. Discovery has revealed that the Defendants concocted the facts pertaining to injury in their Third Amended Complaint to avoid a motion to dismiss and to prolong the litigation while they lobby the New York legislature to radically alter existing right of publicity law. For all the foregoing reasons, the Court should dismiss Count I of the Third Amended Complaint with costs and attorney's fees to the Shaw Family under the United States Copyright Act.

3

## STATEMENT OF FACTS

The undisputed facts are set forth in the accompanying Statement of Undisputed Facts and are used in the argument section herein. The Shaw Family will not, therefore, repeat those facts here.

## ARGUMENT

Summary judgment is proper because there are no genuine issues of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50, 91 L. E.d 2d 202, 106 S.Ct. 2505 (1986). To defeat summary judgment, the Defendants must go beyond the pleadings and "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 249-250. Defendants must produce evidence, in admissible form, that is more than surmise and speculation based on their own subjective belief. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L.Ed. 2d 538, 106 S.Ct. 1348 (1986).

The United States Supreme Court has held that a party must set forth by affidavit or other evidence specific facts of injury to overcome a summary judgment motion in the context of a declaratory judgment action. In particular, the Lujan court stated:

> At the pleading stage, general factual allegations of injury stemming from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim. **In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, F.R.C.P. 56(e), which for purposes of the summary judgment motion will be taken as true.**

Lujan v. Defenders of Wildlife, 504 U.S. 555, 594, 112 S.Ct. 2130, 119 L.E.2d 351 (1992) (citations and quotations omitted) (emphasis added).

4

I.    **THE DEFENDANTS LACK ARTICLE III STANDING TO REQUEST A
DECLARATION THAT THE RIZZOLI AND BALLANTINE PHOTOGTAPHS
OF MARILYN MONROE ARE IN THE PUBLIC DOMAIN**

Article III of the U.S. Constitution requires a "case" or "controversy" be present in order

to confer jurisdiction on federal courts for a particular claim; standing to sue is an essential

component of that requirement. Allen v. Wright, 468 U.S. 737, 750, 104 S.Ct 3315, 3324, 82

L.Ed. 2d 556 (1984). The Supreme Court has repeatedly stated that "the question in each case is

whether the facts alleged, under all the circumstances, show that there is a substantial

controversy, between the parties, having adverse legal interests, of sufficient immediacy and

reality to warrant the issuance of a declaratory judgment." Medimmune, Inc. V. Genentech, Inc.,

127 S. Ct. 764, 771, 166 L. Ed. 2d 604, 615 (2007) (quoting Maryland Casualty Co. v. Pacific

Coal & Oil Co., 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941)).

To establish standing under Article III, the plaintiff must satisfy three elements. First, the

plaintiff must allege that it is has suffered an "'injury in fact'" – an invasion of a legally

protected interest." Lujan, 504 U.S. at 561, 112 S.Ct., 119. Second, "there must be a causal

connection between the injury and the conduct complained of." And third, "it must be 'likely,'

as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." Id.

at 561. The plaintiffs bear the burden of establishing the constitutional requirements of

standing. Id.

As this Court has recognized, "[a]t an irreducible minimum, Article III requires the party

who invokes the court's authority to 'show that he personally has suffered some actual or

threatened injury as a result of the putatively illegal conduct of the defendant . . .'" Burns v.

Warwick Valley Central School District, 166 F. Supp. 2d 881, 888 (S.D.N.Y. 2001) (CM). The

keystone for determining injury in fact is "the requirement that it be district and palpable --- and,

conversely, that it not be abstract or conjectural or hypothetical. Id. (citations and internal

quotations omitted). The injury must also be "fairly . . . traceable to the challenged action of the

defendant . . ." Lujan, 504 U.S. at 560-61. (citations and internal quotations omitted). As set

forth below, the Defendants fail to satisfy any of the elements necessary for a declaratory

judgment action.

### A.    The Defendants Have Not Suffered A Distinct And Palpable Injury As A Result Of The Shaw Family's Representations Or Actions

First, the Defendants are in the business only of licensing purported intellectual property.

Statement of Undisputed Facts ("SUF"), at ¶ 15. Because the Defendants do not have any

intellectual property in the Rizzoli and Ballantine books or in any public domain image of

Marilyn Monroe for that matter, they cannot possibly have been injured by the Shaw Family's

purported statements to Defendants' actual and potential licensees.

Second, the Defendants cannot demonstrate injury because the Shaw Family has never

asserted rights against the Defendants or their licensees with respect to the Rizzoli or Ballantine

books. SUF at ¶¶ 8, 23-24. The Defendants' 30(b)(6) witnesses confirmed that the Defendants

had no basis to allege that they were injured by the Shaw Family's conduct. In particular,

CMG's 30(b)(6) witness, Mr. Roesler, testified that the only representations by the Shaw Family

he could identify were statements Shaw Family members purportedly made to Dolce & Gabana

and a company called Freeze. SUF at ¶ 20-21; Serbagi Decl., Ex. O, pp. 82, 99-100. However,

putting aside the shear hearsay aspect of his testimony, Mr. Roesler could provide no details

whatsoever concerning who made the purposed representations, whether they were in writing or

verbally, to whom the purported statements were made, or any other details surrounding the

alleged communication. Id. Moreover, when pressed, Mr. Roesler admitted that Dolce &

Gabana went ahead with a licensing program with Defendants anyway, which means there could

6

have been no possible harm. Id. Under cross examination, Mr. Roesler also admitted that the Shaw Family's purported representations to Freeze pertained only to trademark issues, not images of Marilyn Monroe. SUF at ¶ 21; Serbagi Decl., Ex. O, pp. 101-02. He later, quite suspiciously, stated that the representations related to right of publicity as well, but he could provide no details at all concerning the supposed representations. SUF at pp. 106-20. Thus, Defendants' 30(b)(6) testimony confirmed that the Defendants' allegations in the Third Amended Complaint concerning representations made by the Shaw Family to the Defendants' licensees or potential licensees concerning Rizzoli and Ballantine and other alleged unnamed public domain images of Marilyn Monroe were absolutely fabricated. Indeed, when shown the Third Amended Complaint and asked to explain the basis for allegations concerning the Shaw Family's representations, the Defendants were unable to provide any basis whatsoever. SUF at ¶¶ 11-14, 16, 18-21, 23-24; Serbagi Decl., Ex. N, pp. 161-69; Ex. O, pp. 47-59, 80-133, 158-87.

Without any evidence that the Shaw Family has asserted rights in Rizzoli or Ballantine against the Defendants or their licensees, there is no case or controversy between the parties. None of the works that are the subject of Rizzoli or Ballantine were the subject of the Shaw Family's withdrawn copyright infringement claim. Marcus Decl., at ¶ 8. Because Rizzoli and Ballantine are the only works the Defendants have identified as being in the public domain, the Court should dismiss Count I.

**B.    A Decision That Rizzoli and Ballantine Are In The Public Domain Would Not Redress Defendants' Purported Injury**

The Defendants claim is defective for the additional reason that it is not "likely" (or even possible) that Defendants would benefit from a declaration that the Rizzoli or Ballantine works are in the public domain. See Lujan, 504 U.S. at 560 (holding that "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." Id. at

561. See M.M. and D.M. v. Board of Education of the Waterville Central School District, 963 F. Supp. 185, 190 (N.D.N.Y. 1997) (denying on redressability grounds plaintiff's request for a declaratory judgment that the Waterville Board deprived their minor son of a preschool education because the child was no longer entitled to a pre-school education).

Here, a favorable decision that Rizzoli and Ballantine are in the public domain would provide the Defendants no redress whatsoever because, if those images are public domain, none of their current or potential "licensees" would pay Defendants anything for the use of public domain photographs. If the Court were to grant Defendants the relief they seek, Defendants' licensees could simply copy any image they want from the books at issue. Thus, a declaratory judgment is improper because the decision Defendants' seek would not redress their purported injury.

### C. There Is No Case Or Controversy Between The Parties Because The Defendants Have No Immediate Plans To License The Rizzoli And Ballantine Images

There cannot possibly be a case and controversy between the parties because the Defendants 30(b)(6) witnesses confirmed that the Defendants lack immediate plans to license the images from the Rizzoli or Ballantine books.

In order to declare a copyright invalid, the moving party must demonstrate that it has engaged in a course of conduct evidencing a definite intent and apparent ability to commence use of the Book. Pocketmedicine.Com, Inc. v. John Wiley & Sons, Inc., 2006 U.S. Dist. LEXIS 13617, *8 (S.D.N.Y. Mr. 23, 2006). "Major stress should be placed on the definite intention of plaintiff to take immediate action to utilize [a product's] potential and this intention should be evident from the preparatory steps outlined in its complaint." Id. at *8-*9 (citations and internal quotations omitted). A declaratory judgment action is not a vehicle for obtaining an advisory opinion that the Book, or parts of it, are in the public domain. Id. at *10.

8

In the <u>Pocketmedicine.Com</u> case, the court granted the Defendant's motion to dismiss a claim that its copyrighted book was in the public domain because, while the Plaintiff alleged an intention to publish some portion of the Plaintiff's book, it did not allege that Plaintiff "has engaged in a course of conduct evidencing a "definite intent and apparent ability to commence use" of the Book. <u>Id.</u> at *8 (citations and quotations omitted). <u>Re-Alco Industries, Inc. v. National Center for Health Education, Inc.</u>, 812 F. Supp. 387, 395 (S.D.N.Y. 1993) (holding that the plaintiff failed to allege a justiciable controversy because he failed to plead that he would immediately begin production of the educational manuals it claimed were in the public domain).

The present Defendants have not even alleged, much less demonstrated through specific facts, that they have imminent plans to produce products bearing the Rizzoli and Ballantine images. SUF at ¶ 11, 24; Serbagi Decl., Ex. N, pp. 161-69; Ex. O, pp. 130-33. In fact, both of Defendants' 30(b)(6) deponents stated that they had no information about whether Defendants had any plans to license any Shaw Family images in the Rizzoli and Ballantine books. <u>Id</u>. These Defendants do not manufacture any products. The create nothing. They contribute nothing whatsoever to the artistic societal good.[1] Because the Defendants have no imminent plans to make use of the Rizzoli and Ballantine works, they cannot demonstrate that they have "adverse legal interests of sufficient immediacy and reality" to justify judicial intervention." <u>Marnell v. Carbo</u>, 499 F. Supp.2d 202, 206 (N.D.N.Y. 2007) (<u>citing</u> <u>Golden v. Zwickler</u>, 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed2d 113 (1969)). A case does not meet the requirement of immediacy when there is little chance that the plaintiff will suffer an injury in the future. <u>Id.</u> at 109, 89 S.Ct. 956. <u>McCormick ex rel. McCormick v. School Dist. Of Mamaroneck</u>, 370 F.3d 275 (2d Cir. 2004) ("A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the

---

[1] As directly contrasted to the significant artistic contribution of Sam Shaw, who captured many iconic images of Marilyn Monroe.

injury requirement but must show a likelihood that he or she will be injured in the future")
(internal quotations omitted). Because the Defendants have testified that they had no immediate
plans to make use of Rizzoli and Ballantine, there can be no case or controversy between the
parties.

Finally, a declaratory judgment here would not further the purposes of the Declaratory
Judgment Act. "The DJA remedy was designed as a means to facilitate early and effective
adjudication of disputes at a time when a controversy, though actual, may still be incipient, but
before it expands into a larger conflict." Dow Jones & Co., Inc. v. Harrods, Ltd., 237 F. Supp.2d
394, 405 (S.D.N.Y. 2002). For all the reasons set forth herein, there is no controversy between
the parties that would warrant a declaratory judgment.

## II.    THE COURT SHOULD ALSO EXERCISE ITS BROAD DISCRETION TO DECLINE DECLARATORY JUDGMENT JURISDICTION

The Court should also exercise its broad discretion to dismiss the Defendants' request for
a declaratory judgment. "[D]istrict courts possess discretion in determining whether and when to
entertain an action under the Declaratory Judgment Act even when the suit otherwise satisfies
subject matter jurisdiction prerequisites." Wilton v. Stevens Falls Co., 515 U.S. 277, 282, 115
S.Ct. 2137, 132 L.Ed.2d 214 (1995). The "unique breath of this discretion lies within the district
courts because facts bearing on the usefulness of the declaratory judgment remedy, and the
fitness of the case for resolution, are particularly within their grasp." Tamplenizza v. Josephthal
& Co., Inc., 32 F. Supp.2d 702, 704 (S.D.N.Y. 1999) (citations and internal quotations omitted)

There is no good reason for this Court to exercise its declaratory judgment powers. The
Defendants have never licensed the Rizzoli images. The Shaw Family has not sued these
Defendants for infringing the Rizzoli or Ballantine books. They have not sent any letters
threatening the Defendants or their licensees with a lawsuit for using Rizzoli and Ballantine. The

10

Defendants have asserted no facts to the contrary.  Accordingly, the remedy the Defendants' seek

is purely advisory,[2] a "mere declaration of law without implications for practical enforcement

upon the parties."  Tamplenizza, 32 F. Supp.2d at 704 (citing Browning Debenture Holders'

Comm. v. DASA Corp., 524 F.2d 811, 817 (2d Cir. 1975)).  The Court should exercise its broad

discretion to not rule on the Defendants' claim.

## III.   THE DEFENDANTS HAVE FAILED TO SUE INDISPENSIBLE PARTIES TO COUNT I BY FAILING TO SUE THE COPYRIGHT OWNERS

The Defendants failed to name indispensable parties Edith Marcus and Meta Stevens.

SUF at ¶ 25; Serbagi Decl. ¶¶ 2-4, 12, Exs. A-C, I.  Edith Marcus and Meta Stevens are the

owners of the copyrights at issue pursuant to a 1998 trust created by Sam Shaw.  SUF at ¶ 25;

Marcus Decl., Ex. A; Serbagi Decl., ¶¶ 5-7, Exs. D-F.  Complete relief cannot be afforded

without their presence.

It is black letter law that a copyright owner is an indispensable party to a suit where the

validity of the copyright is at issue.  Pocketmedicine.Com, 2006 U.S. Dist. LEXIS 13617, at *

11-12 (citing First Financial Mktg. Servs. Group, Inc. v. Field Promotions, Inc. 286 F. Supp.

295, 298 (S.D.N.Y. 1968)).  See Fed. R. Civ. P. 19.  The Court should exercise its discretion to

deny the Defendants leave to amend because there has been an inexplicable and inordinate delay,

and any amendment of the pleadings at this late date would severely prejudice not only Edith

Marcus and Meta Stevens, but also Shaw Family Archives and Bradford Licensing.

The Supreme Court and Second Circuit have repeatedly held that leave to amend should

be denied when there has been undue delay, bad faith, futility of the amendment, or resulting

prejudice to the opposing party.  See The Randolph Foundation v. Duncan, 00 Civ.

---

[2] The Third Amended Complaint actually requests that the Court declare works that the
Defendants have not even specified to be in the public domain.  SUF at ¶ 5; Serbagi Decl., Ex. I,
¶¶ 24, 26-27.

6445(AKH)(THK), 2002 U.S. Dist. LEXIS 362, *3 (S.D.N.Y. January 9, 2002) (citing Forman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed. 2d 222 (1962)).

### A.    There is No Satisfactory Explanation For Defendants' Undue Delay

While it is true that delay alone is insufficient to deny leave to amend, "[a] district court plainly has discretion to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is made for the delay, and the amendment would prejudice the defendant. MacDraw, Inc. v. CIT Group Equipment Financing, Inc., 157 F.3d 956, 962 (2d Cir. 1998) (citations and internal quotation marks omitted). The burden to explain a delay is on the party that seeks to leave to amend. Id.

The Defendants filed their Indiana Complaint back in March 2005. SUF at ¶ 1; Serbagi Decl., ¶ 2, Ex. A. They sought a declaratory judgment that unspecified Shaw Family photographs are in the public domain, but they failed to name Edith Marcus and Meta Stevens. SUF at ¶¶ 1, 25; Serbagi Decl., ¶ 2, Ex, A. When the Shaw Family filed its Complaint on April 19, 2007, they prominently stated:

12.    Plaintiffs Marcus and Stevens own and control the copyrights of photographs of Marilyn Monroe within the Shaw Collection, many of which have never been seen by the public.

13.    Shaw Family Archives, Ltd. is duly authorized to market and license the Shaw Collection by virtue of the agreement set forth in Exhibit "E" herein.

SUF at ¶¶ 2, 25; Serbagi Decl., ¶ 5, Ex. D  If this were not enough, the Shaw Family repeated this information in its First Amended Complaint, dated May 9, 2005 (SUF at ¶¶ 2, 25; Serbagi Decl., ¶ 6, Ex. E), and in its Second Amended Complaint, which was filed on August 8, 2007. SUF at ¶¶ 2, 25; Serbagi Decl., at ¶¶ 7, Ex. F.  Given that the Defendants knew that Edith Marcus and Meta Stevens were necessary parties since at least as early as April 19, 2005, there is

no reasonable explanation for the Defendants to have failed to name those necessary parties in an action to cancel the copyrights they own.

**B.    The Parties Would Be Unduly Prejudiced By the Defendants' Amendment At This Late Date**

The Shaw Family and Bradford, as well as Edith Marcus and Meta Stevens, would be severely prejudiced if the Court permits the Defendants to amend the Complaint at this late date.

To determine what constitutes undue prejudice, courts "generally consider whether the assertion of the new claim or defense would (i) require the opponent to expend significant resources to conduct discovery to prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Monahan v. New York Dep't of Corrections, 214 F.3d 275, 284 (2d Cir. 2000), cert. denied, 531 U.S. 1035, 121 S. Ct. 623, 148 L.Ed. 2d 533 (2000) (internal quotations and citations omitted).

The addition of Edith Marcus and Meta Stevens as Defendants would clearly cause all the parties, including Bradford and Shaw Family Archives to spend significant additional time and resources they simply do not have. The amendment would surely necessitate an extension of the discovery deadline. They would have to hire new counsel, who would likely want to take the necessary additional depositions and paper discovery to protect their interests. However, discovery has been extended twice in this case. Defendants replaced former counsel at the last minute with Loeb & Loeb (the firm that successfully advocated the California legislature for the abrogation of this Court's May 2, 2007 Decision and Order), who then requested yet a third request to extend the discovery deadline for an additional three months. By letter dated November 1, 2007, the Shaw Family objected because, *inter alia*, the extension would increase the cost of this case to the Shaw Family and would permit the Defendants more time to push the New York legislature to abrogate this Court's May 2, 2007 Decision and Order. By a Memo

Endorsed Order dated November 5, 2007, the Court granted the Defendants one final month to conduct discovery and Ordered that a trial would take place in March 2008. SUF at ¶ 26; Serbagi Decl., Ex. L. The Shaw Family planned accordingly and any disruption in the current scheduled would work further hardship on them.

Finally, the Shaw Family has spent considerable time and resources preparing to brief the issue of why the new California legislation is unconstitutional. The Defendants have attempted to delay resolution of this case while they simultaneously push for similar unconstitutional legislation in New York. They would then request a motion for reconsideration of this Court's May 2, 2007 decision, just as they did in California. Delay is in the Defendants' interest but potentially subjects the Shaw Family to significant liability. Finally, the Court has set a schedule for the completion of all pending matters by March 2007. We respectfully request that the Court not interfere with this schedule to accommodate the Defendants' failure to name the owners of the copyrights.

## IV.    THE SHAW FAMILY IS ENTITLED TO ITS ATTORNEY'S FEES UNDER THE COPYRIGHT ACT BECAUSE DISCOVERY HAS REVEALED THAT DEFENDANTS' CLAIMS WERE KNOWLINGLY FALSE AND SUBMITTED FOR AN IMPROPER PURPOSE

For the reasons discussed below, the Shaw Family respectfully requests that the Court award the Shaw Family its attorney's fees under the United States Copyright Act. In the alternative, the Shaw Family requests that the Court award it attorney's fees under its inherent authority.[3]

17 U.S.C. § 505 of the Copyright Act provides that the district court may award attorney's fees to the prevailing party in a Copyright Act action. In <u>Fogarty v. Fantasy</u>, 510 U.S.

---

[3] If the Court grants this aspect of the Shaw Family's motion, the Shaw Family will quickly provide an accounting of the time it has spent and the attorney's fees associated with defending against Count I of the Third Amended Complaint.

517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), the Supreme Court explained that there is no precise formula for determining whether attorney's fees are appropriate but instead equitable discretion should be exercised," and then proceeded to list several nonexclusive factors courts should consider when exercising this discretion, namely, "frivolousness, motivation, objective unreasonableness (both in factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Id. at 534 n. 19, 114 S.Ct. 1023.  Several courts in this Circuit have awarded attorney's fees upon a showing that a party's position was objectively unreasonable, even without a showing of bad faith or frivolousness. Earth Flag Ltd. v. Alamo Flag Co., 154 F. Supp.2d 663, 666 (S.D.N.Y. 2001) (citing Adsani v. Miller, No. 04 Civ. 9131, 1996 WL 531858, at *13 (1996) (collecting cases holding that objective unreasonableness is sufficient to support a fee award)); Little v. Twentieth Century Fox Film Corp., 89 Civ. 8526, 1996 WL 18819, at *3-4 (S.D.N.Y. Jan. 18, 1996), aff'd, DeStefano v. Twentieth Century Fox. Film Corp., 100 F.3d 943 (2d Cir. 1996)(awarding prevailing defendants attorney's fees based on objective unreasonableness of plaintiff's claims); Screenlife Establishment v. Tower Video, Inc., 868 F. Supp. 47, 52 (S.D.N.Y. 1994) (same)).

## A.    The Defendants Claims Are Frivolous and Objectively Unreasonable

The Defendants' claim that that it is entitled to a declaratory judgment that the Rizzoli and Ballantine works are in the public domain is frivolous and objectively unreasonable.

In order to avoid a motion to dismiss, the Defendants asserted a number of factual allegations in the Complaint to meet the elements of a declaratory judgment action. SUF at ¶ 6; Serbagi Decl., Ex. 1, ¶¶ 4, 12, 30, 32-33.  In particular, Defendants asserted in the Complaint that (i) the Shaw Family actively discouraged licensees from entering into any relationship with

15

Defendants for products or services that feature public domain photographs and (ii) Defendants have been harmed by the Shaw Family's supposed efforts to force Defendants' licensees to obtain unnecessary licenses from Plaintiffs for supposed public domain photographs. SUF at ¶ 6; Serbagi Decl., ¶ 12, Ex. I, ¶¶ 30, 32-33. As set forth in the attached Declarations of Edith Shaw and Michelle Minieri, the Defendants' allegations are completely false. The Shaw Family never discouraged any of the Defendants' licensees from using Rizzoli or Ballantine or asserted rights to those books in a manner that caused the Defendants any harm. SUF at ¶ 8.

The Defendants 30(b)(6) witnesses transcripts plainly demonstrate that both Defendants were unable to support any of the allegations in the Third Amended Complaint. MMLLC's witness knew virtually nothing about Rizzoli and Ballantine and MMLLC's licensing activities and repeatedly stated that CMG's Mark Roesler would know about those topics. SUF at ¶¶ 11, 13; Serbagi Decl. Ex. N, pp. 161-69. Additionally, even though MMLLC's 30(b)(6) witness made the incredible assertion that every single photograph of the Shaw Family was in the public domain, under questioning his testimony revealed that he had no basis to make that statement because he had never seen most of the copyrights at issue. SUF at ¶ 16; Serbagi Decl., Ex. N, pp. 28-41. Similarly, CMG's Mark Roesler was surprisingly ignorant about all the pertinent allegations in the Third Amended Complaint and could not provide any testimony that would support the allegations that the Defendants were injured by the Shaw Family's conduct. SUF at ¶ 18-20, 23-24; Serbagi Decl., Ex. O, pp. 47-59, 80-133, 158-87.

**B.**     **The Defendants' Claim Was Improperly Motivated**

Every fact leads to the conclusion that Defendants asserted their declaratory judgment action with improper motivations. The Defendants have always used this Court not as a means to resolve a legitimate dispute, but as part of their continued and longstanding effort to

16

monopolize images of Marilyn Monroe to which they have no legal right. Defendants' clear intent was to so pressure the Shaw Family so that it would not be able to effectively compete in the marketplace. Discovery has revealed that threats of litigation and actual litigation have been the only manner in which the Defendants have improperly profited from Marilyn Monroe images.

The Third Amended Complaint is a rank fishing expedition. In the <u>Carruthers</u> case, this Court characterized plaintiffs' complaint as a "fishing expedition" and stated that plaintiffs and their counsel left themselves open to sanction if the alleged agency relationship between Flaum and other defendants proved illusory. <u>Carruthers v. Flaum</u>, 450 F. Supp.2d 288, 305 (S.D.N.Y. Sept. 6, 2006). Here, the Defendants allegations concerning the representations the Shaw Family purportedly made and the harm they allegedly suffered are entirely illusory. The Shaw Family is therefore entitled to its attorney's fees for having to contest these entirely illusory allegations.

**C.  Defendants Bad Faith is Further Evidenced By The Defendants' Inability To Support The Allegations In The Third Amended Complaint At Their 30(b)(6) Depositions**

A 30(b)(6) witness testifies as a representative of the entity, his answers bind the entity and he is responsible for providing all the relevant information known or reasonably available to the entity. <u>Sabre v. First Dominion Capital, LLC</u>, 01 Civ. 2145, 2001 U.S. Dist. LEXIS 20637, *2 (S.D.N.Y. Dec. 10, 2001). While a 30(b)(6) deposition "is not designed to be a memory contest, the deponents must be both knowledgeable about a given area and prepared to give complete and binding answers on behalf of the corporation. <u>Zappia Middle East Construction Co., Ltd. v. The Emirate of Abu Dhabi</u>, 94 Civ. 1942 (DC), 1995 U.S. Dist. LEXIS 17187, *10 (S.D.N.Y. Nov. 17, 1995) (citations and internal quotations omitted). "Producing an unprepared witness is tantamount to a failure to appear. <u>The Bank of New York et al. v. Meriden Biao Bank</u>

<u>Tanzania Ltd.</u>, 171 F.R.D. 135, 151 (S.D.N.Y. 1997). Failure to appear for a deposition warrants the imposition of sanctions. <u>Republic of the Philippines v. Marcus et al.</u>, 888 F.2d 954, 956-57 (2d Cir. 1989) (affirming district courts order of dismissal for failure to appear at a 30(b)(6) deposition); <u>Stiftung v. Sumitomo Corp.</u>, 99 Civ. 1108 (BSK), 2001 U.S. Dist. LEXIS 20746, *18-*19. (S.D.N.Y. Dec. 12, 2001) (awarding sanction of total fees and costs in defending the action for failure to appear for a 30(b)(6) deposition).

The Defendants' 30(b)(6) transcripts plainly demonstrate that both Defendants were unable to support any of the allegations in the Third Amended Complaint that pertained to alleged injury and standing. In particular, MMLLC's witness knew virtually nothing about Rizzoli and Ballantine and MMLLC's licensing activities and repeatedly stated that CMG's Mark Roesler would know about those topics. SUF at ¶ 12; Serbagi Decl. ¶ 17, Ex. N, pp. 161-169. Yet, Mark Roesler was equally unable to provide any information that would substantiate any of the Defendants' allegations. SUF, at ¶ 18-24. For example, the Shaw Family asked Mr. Roesler the basis for paragraph 4 of the Third Amended Complaint, which alleged that the certain photographs the defendants purport to license to third parties are in the public domain and can be used by licensees without the Shaw Family's consent. <u>Id.</u> at ¶ 5; Serbagi Decl. at ¶ 18, Ex. O, pp. 167-68. When Shaw Family counsel asked Mr. Roesler what photographs Defendants were referring to, Mr. Roesler stated "[t]hat I can't identify at this moment." <u>Id.</u>

Paragraph four of the Third Amended Complaint alleges that the Shaw Family "have refused to recognize that certain photographs of Marilyn Monroe allegedly owned and controlled by the [Shaw Family] are in the public domain, and the [Shaw Family] have asserted that plaintiffs are prohibited from using such photographs without the [Shaw Family's] consent." SUF at ¶ 19; Serbagi Decl. at ¶ 18, Ex. O, pp. 168-70. When Shaw Family counsel asked Mr.

Roesler the basis for that statement, he again stated "I can't – I can't give you those specifics." Id. at pp. 172-73.

Paragraph four of the Third Amended Complaint states that "[b]ut for the Shaw Family's false claims of ownership of copyrights . . . plaintiffs would seek to utilize such public domain photographs commercially in connection with goods and services . . ." Id. at pp. 172-73.  When Shaw Family counsel asked Mr. Roesler if he could name one copyright registration that the Shaw Family falsely claimed ownership rights to, Mr. Roesler stated: "Not sitting here today." Id. at pp. 173-75.

Paragraph twenty-two of the Third Amended Complaint alleges that the Shaw Family and Bradford Licensing asserted that they have enforceable copyrights in all the photographs that constitute the Shaw Family collection.  SUF at ¶ 5, 18.  When asked the pointed question about the basis for paragraph twenty-two, Mr. Roesler stated "I don't have specific information." Id. SUF at ¶ 18; Serbagi Decl. at ¶ 18, Ex. O, pp. 158-160.  In many other instances, Mr. Roesler stated only that he relied on his attorneys for the information in a paragraph, but was unable to provide any substantive discussion on the topic himself, which rendered his 30(b)(6) deposition completely useless.  SUF at ¶ 18, Serbagi Decl., Ex. O, pp. 160-67.

Again and again, the Defendants' 30(b)(6) witnesses were unable to identify the substantive basis for any of the allegations in the Third Amended Complaint pertaining to injury and standing.  See generally SUF at ¶ 18, Serbagi Decl., Ex. O, pp. 47-57; 80-133; 158-187. This is not a case of large corporations failing to properly choose the correct witness.  Mr. Roesler is CMG, and there is no one at that company more involved or knowledgeable about the licensing of Marilyn Monroe images than him.  The documents produced in this action demonstrate his intimate involvement and familiarity on a daily basis in the lucrative business of

licensing Marilyn Monroe images. The reason he was unable to provide any meaningful testimony is not that he was not properly prepared, it was because the allegations in the Third Amended Complaint pertaining to the Shaw Family's purported representations to the Defendants' licensees are factually false and incapable of defense by any witness. This is exactly why asking for another 30(b)(6) witness would have been fruitless.

### D. The Defendants' Bad Faith Is Further Evidenced By Their Refusal To Answer a Contention Interrogatory That Requested The Basis For Their Declaratory Judgment Action

Over the span of this case, the Shaw Family has repeatedly served a contention interrogatory that requests the Defendants to explain the basis for their assertion that the Shaw Family copyrights are in the public domain. SUF at ¶¶ 3, 9-10. The Defendants initially refused this request on grounds that the contention was premature and for other baseless reasons. SUF at ¶ 10. Even now that discovery has closed, the Defendants have refused to provide their contentions. The Defendants provided some frivolous objections for their most recent refusal, but the obvious reason it declined to provide its contentions is because they know the allegations they asserted in the Third Amended Complaint to support their request for a declaratory judgment action were frivolous.

### E. The Defendants' Decision Not To Take the Declaration of Bradford Licensing Further Evidences Their Bad Faith

Bradford is the Shaw Family's licensing agent and is the party that is wholly responsible for the licensing of Shaw Family images of Marilyn Monroe. The Third Amended Complaint repeatedly states that Bradford and Shaw Family Archives discouraged the Defendants and their actual and potential licensees from entering into licensing relationships with Defendants in connection with purportedly public domain works. In particular, Mr. Roesler testified that it was Bradford's purportedly aggressive marketing activities that compelled CMG to recommend that

the Defendants file this lawsuit.  SUF at ¶ 22; Serbagi Decl., Ex. Q, pp. 81-82; 99; 101-02; 113-116; 122; 134-35; 158-59; 170-71; 177-79; 183-84.  The Defendants had no basis to make those statements and never had any intention in fleshing out those generalized claims with facts because they knew those claims were absolutely false.  That is exactly why the Defendants declined to take the 30(b)(6) deposition of Bradford Licensing on December 18, 2007.  SUF at ¶ 28.  Had Defendants had any reason to expect that Bradford would provide Defendants any helpful testimony, they certainly would have taken that deposition.  Instead, and as set forth below, Defendants vexatiously set out to inflict maximum damage on the Shaw Family by repeatedly arguing before Judge Fox that they were entitled to review and examine the entire Shaw collection of Marilyn Monroe images.

> **F.    The Defendants' Bad Faith Is Further Evidenced By Their Frivolous And Vexatious Vendetta To Attack All The Shaw Family Copyrights**

The Third Amended Complaint identifies only Rizzoli and Ballantine as public domain works.  Nevertheless, the Defendants engaged in a vexatious fishing expedition to obtain access to and attack every single photograph and registration of Marilyn Monroe in the Shaw Family collection.  SUF at ¶ 29.  The Defendants significantly ran up attorney's fees by requesting Judge Fox to order the production of documents that had absolutely nothing to do with Rizzoli and Ballantine.  Id.  Judge Fox repeatedly declined the Defendants' request.  Id.  After one trip to White Plains, six letters, and several telephone conferences, Judge Fox ordered only that the Defendants could take an additional four hours of testimony of the Shaw Family 30(b)(6) witness, Ms. Melissa Stevens, concerning the Shaw Family copyright binders only because Ms. Stevens testified that she had reviewed those binders prior to her deposition.  SUF at ¶¶ 28-29.  Although Judge Fox declined the Defendants' request for the production of that binder, the Defendants persisted in that frivolous endeavor in yet another letter,  SUF at ¶ 33, which

necessitated yet another response and another telephone conference. Again, Judge Fox declined that Defendants request for documents outside the scope of the Third Amended Complaint. <u>Id.</u>

By way of another example of one of Defendants most frivolous arguments to date, the Defendants argued before Judge Fox and in a letter that they were entitled to <u>all</u> documents relating to every Shaw Family copyright relating to Marilyn Monroe because they were purportedly relevant to the Shaw Family's standing for its request that the Court declare that Ms. Monroe died a New York domiciliary. SUF at ¶ 29-32. In particular, without rights to images of Marilyn Monroe, the Defendants argued, the Shaw Family would have no standing to request a ruling on domicile. SUF at ¶ 32. Defendants representation to Judge Fox was <u>knowingly false</u> and they were relying on his lack of direct involvement with the domicile issue currently pending before the Court. Defendants knew full well that this Court had already ruled that the Shaw Family had standing to request a ruling on domicile because California recently passed legislation that purportedly abrogated this Court's May 2, 2007 Decision and Order. SUF at ¶ 27. For these Defendants to argue otherwise exceeds the bounds of permissible advocacy.

Finally, the Defendants wasted everyone's time through their negligent actions during their baseless mission to obtain access and attack the entire Shaw Family collection. For example, the Defendants argued that the Shaw Family 30(b)(6) witness, Ms. Melissa Stevens, was unprepared and that the Court should order that Edith Marcus appear for deposition instead. However, most incredibly, Defendants failed to bring to court the 30(b)(6) notice they served upon Ms. Stevens so that Judge Fox was unable to ascertain whether her testimony adequately addressed the noticed topics or not. SUF at ¶ 30. Of course, Ms. Stevens was totally prepared to testify on Rizzoli and Ballantine and every other noticed topic, which was why Defendants could

not point Judge Fox to <u>any instance</u> where Ms. Stevens was unable to provide relevant testimony.

### G.    The Defendants Repeatedly Threatened The Shaw Family With Attorney's Fees Under the Copyright Act

All the Defendants' four complaints threatened the Shaw Family with attorney's fees. Most recently, MMLLC's counsel, Ms. Paula Colbath, recently reiterated Defendants' longstanding threat during MMLLC's 30(b)(6) deposition, where she stated:

> On the public domain --- we are going to seek fees. When we went on the public domain we're entitled to damages, copyright damages and **attorney's fees** if we prevail on that claim." The claim seeks a declaration that certain of your images are in the public domain.

SUF at ¶ 17; Serbagi Decl., Ex. N, p.179. As Defendants well know, an award of attorney's fees against them on the public domain issue alone would cause the Shaw Family significant financial hardship. The Defendants, who are multimillion enterprises, should have no compunction against absorbing the very same fees they have so aggressively and consistently wielded against the Shaw Family.

### H.    Defendant MMLLC's Attorney Ordered MMLLC's Witness Not To Answer Highly Relevant Questions Pertaining To The Injury The Defendants Purportedly Suffered

Defendants' counsel, Ms. Colbath, directed MMLLC's 30(b)(6) witness not to answer questions concerning MMLLC's annual revenues. SUF at ¶ 14; Serbagi Decl., Ex. N, pp. 177-80. Although the Shaw Family counsel explained that revenues were relevant to the damages MMLLC purportedly suffered as a result of the Shaw Family's purported representations. Ms. Colbath persisted in her direction to the witness not to answer. <u>Id</u>. MMLLC's 30(b)(6) witness complied with Ms. Colbath's direction, which rendered additional questions about revenues

fruitless. <u>Id.</u> A direction not to answer a question about revenues in a case where the Defendants are alleging injury from the Shaw Family's representations was highly improper and further evidences the Defendants' bad faith in the prosecution of Count I.

## **CONCLUSION**

For all the foregoing reasons, the Shaw Family respectfully requests that the Court grant the Shaw Family's motion for summary judgment and an award of attorney's fees under the United States Copyright Act. There is no evidence of Defendants' purported injury or that Defendants will be injured in the future. There is no evidence of a controversy between the parties on Rizzoli or Ballantine, which are the only works that Defendants identify in the Third Amended Complaint as being in the public domain. There is no evidence that Defendants' supposed injury would be redressed by a favorable decision because Defendants testified that they have no immediate plans to market any goods bearing the Rizzoli and Ballantine photographs, and if those images are truly in the public domain, then anyone could copy them from the books at issue anyway. The Court should also dismiss Count I because Defendants failed to join indispensable parties. Finally, the Defendants allegations in the Third Amended Complaint concerning alleged Shaw Family representations to the Defendants' licensees were knowingly false and unnecessarily and vexatiously multiplied these proceedings with frivolous

and knowingly false arguments before Judge Fox.

Dated:  New York, New York
        January 9, 2008

                              Respectfully Submitted,

                        By: _____
                              Christopher Serbagi, Esq.
                              David Marcus, Esq.
                              488 Madison Avenue, Suite 1120
                              New York, New York  10022
                              (212) 593-2112

                              Attorneys for Plaintiff/Consolidated Defendant
                              Shaw Family Archives and Consolidated Defendant
                              Bradford Licensing, Inc.