# EX. E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



------------------------------------------------------------x

SHAW FAMILY ARCHIVES, LTD., EDITH MARCUS
and META STEVENS,

                         Plaintiffs,

        -against-

CMG WORLDWIDE, INC., an Indiana Corporation,
and MARILYN MONROE, LLC, a Delaware Limited
Liability Company,

                    Defendants.

------------------------------------------------------------x

**AMENDED COMPLAINT**

05 CV 3939(CM)

SHAW FAMILY ARCHIVES, LTD., EDITH MARCUS and META STEVENS, by and through its undersigned counsel, for its complaint for damages and declaratory relief, alleges as follows:

## INTRODUCTION

1.    Plaintiffs EDITH MARCUS ("Marcus"), META STEVENS ("Stevens") and SHAW FAMILY ARCHIVES, LTD. ("the Archives") seek an award of damages, including attorney's fees and any and all gains, profits and advantages obtained by defendants CMG WORLDWIDE, INC., ("CMG") and MARILYN MONROE, LLC, ("MM"), as a result of defendants' acts of copyright infringement as alleged in paragraphs 15 through 26 below, or, in the alternative, statutory damages as provided for in 17 U.S.C. § 504(c). Plaintiffs further seek a declaration, pursuant to 28 U.S.C. §§2201-2202, that CMG and MM have no authority or right to copy or publish, or the right to prohibit the commercial publication by plaintiffs or any parties designated by plaintiffs as licensees, of those works that are the subject of the aforementioned claim of copyright infringement. Plaintiffs further seek the granting of an injunction restraining defendants, their officers, agents, and employees, and all persons acting in concert with them,

from engaging in any further acts in violation of the copyright laws. Plaintiffs further seek an award of damages, including attorney's fees and any and all gains, profits and advantages obtained by defendants, as a result of defendants' acts of tortious interference with contractual relations. Plaintiffs further seek an award of damages, including attorney's fees and any and all gains, profits and advantages obtained by defendants, as a result of defendants' acts of tortious interference with contractual relations. Plaintiffs further seek an award of damages, including attorney's fees and any and all gains, profits and advantages obtained by defendants, as a result of defendants' acts of tortious interference with prospective economic advantage.

2.    An actual, justiciable controversy exists among the parties as to which a declaratory judgment setting forth their respective rights and obligations is necessary and appropriate.

## THE PARTIES, JURISDICTION AND VENUE

3.    Plaintiff the Archives is a New York Corporation whose principal place of business is in the County of Rockland, State of New York.

4.    Plaintiff Edith Marcus is an individual residing in the County of Rockland and the State of New York. Plaintiff Meta Stevens is an individual residing in the County of New York and the State of New York. Edith Marcus and Meta Stevens are shareholders of the Archives, and are the daughters of Sam Shaw, the photographer whose works are at issue herein.

5.    Defendant CMG is a corporation organized and existing pursuant to the laws of the State of Indiana, maintaining its principal place of business in Hamilton County, Indiana. Defendant MM is a business entity organized and existing pursuant to the laws of the State of Delaware, maintaining its principal place of business in Indiana through CMG.

6.    This court has original jurisdiction over this civil action under 28 U.S.C. §1332(a). Although the plaintiffs are residents of New York, none of the defendants reside within New York. The Archives and defendants are, therefore, citizens of different states. Venue in this district is proper, pursuant to 28 U.S.C. §1391(a)(2), because a substantial part of the property, events, acts or omissions giving rise to the asserted claim are located or took place in this district. Moreover, the amount in controversy in the claims described in this Complaint exceeds the sum or value of $75,000, exclusive of interest and costs.

7.    This Court has jurisdiction over defendants because, upon information and belief, defendants conduct business in New York. In addition, this action arises from tortious conduct committed by defendants in New York or causing injury in New York. Moreover, the works at issue in this action are located within the State of New York and the legal questions at issue in this action revolve around New York law, specifically New York's law regarding the right of publicity. *See* NY CLS Civ. R. §§ 50 and 51; *Pirone v. MacMillan.* 894 F.2d 579 (2d Cir. 1990).

8.    Furthermore, this Court has jurisdiction over defendants because this action arises under the Copyright Act, 17 U.S.C. §101, *et seq.*, as well as 28 U.S.C. §2201. This action therefore involves a federal question, and invokes jurisdiction pursuant to 28 U.S.C. §§1331, 1338(a) and 1338(b).

## BACKGROUND

9.    Sam Shaw ("Shaw") was one of the foremost photographers of his time. Although initially renowned for his career as a photojournalist for Colliers Magazine, it is his remarkable portraits of artists, musicians, film, television and theatrical celebrities, and his

unique photographs of Marilyn Monroe and the ensuing friendship between Mr. Shaw and Ms. Monroe, for which he is most notably remembered.

10.    During their work together, Mr. Shaw and Ms. Monroe formed a lifelong friendship.  Given his close personal relationship with Ms. Monroe, he was able to photograph Marilyn at her most intimate, relaxed and open self.  Indeed, Mr. Shaw designed, staged and took the famous flying skirt series of photographs of Ms. Monroe that are known throughout the world.

11.    Sam Shaw was the author and owner of all copyrights to the photographs he took. He passed away in 1999 with his copyrights in a Trust.  The sole trustees and interest holders were his daughters Edith Marcus and Meta Stevens.  See the Last Will and Testament of Sam Shaw, annexed hereto as Exhibit "A," and the trust agreements of October 4, 1994, November 3, 1995, and April 22, 1998, annexed hereto as Exhibits "B," "C" and "D," respectively.  When Sam Shaw died in 1999, his shares in the aforementioned Trust passed to Marcus and Stevens, *per stirpes*.  Pursuant to a settlement reached in the Supreme Court of the State of New York, County of New York, on June 5, 2002, it was agreed that Shaw Family Archives, Ltd. had the right to market, and offer for commercial exploitation, the Shaw Collection.  Sam Shaw's children Larry Shaw, Marcus and Stevens jointly own the Archives.  See the transcript of the June 5, 2002 settlement, annexed hereto as Exhibit "E."

12.    Plaintiffs Marcus and Stevens own and control the copyrights of photographs of Marilyn Monroe contained within the Shaw Collection, many of which have never been seen by the public.

13.    Shaw Family Archives, Ltd. is duly authorized to market and license the Shaw Collection by virtue of the agreement set forth in Exhibit "E" herein.

4

14.    Only a select few Marilyn Monroe photographs have been licensed by plaintiffs thus far.  Those photographs have been used for, among other things, exhibitions, advertising, magazines, calendars, and on wine bottles.  Plaintiff the Archives also sells high-quality prints of Marilyn Monroe from the Shaw Collection.

## FIRST CAUSE OF ACTION

## COPYRIGHT INFRINGEMENT
### (17 U.S.C. SECTION 101, *et seq.*)

15.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 14 as if fully set forth herein.

16.     In or about 1957, Sam Shaw created a group of original photographs of Marilyn Monroe taken at the beach at Amagansett, New York.  One of these photographs was depicted in the book "Marilyn Among Friends."  The registered photographic image is annexed hereto as Exhibit "F."  The Register of Copyrights issued certificate of registration number TX 2-400-879 for one of these images, among others, depicted in "Marilyn Among Friends."  The effective date of his registration is June 18, 1998.  A true and correct copy of the foregoing certificate of registration is annexed hereto as Exhibit "G."

17.     During all relevant times, plaintiffs Marcus and Stevens have been and are the owner of all rights, title, and interest in the subject photographs in the Shaw Collection, including the right to sue for infringement thereof.  Plaintiff the Archives has the right to market the Shaw Collection.

18.     Neither plaintiffs, nor anyone authorized by plaintiffs or their predecessors in interest, authorized defendants to exercise any of the exclusive rights of a copyright owner, as defined by 17 U.S.C. § 106, with respect to any of the photographs protected by the Certificates of Registration identified above, or any other photograph in the Shaw Collection that have either been registered with the Copyright Office or have not been registered but are otherwise not in the public domain.

19.     Defendants did in fact wrongly display on a web site or web sites affiliated with the defendants images owned and controlled by plaintiffs that are protected by United States

Copyright Law, as part of Defendants' advertising activities and for commercial advantage.

20.    Defendants have licensed and caused to be copied three copyright protected images on a coffee mug depicted herein as Exhibit "H."   Plaintiffs Marcus and Stevens own the copyright to all three images and a copyright registration, pertaining to at least one of these images, as aforesaid, was filed and accepted by the Copyright Office.  Defendants never obtained approval from plaintiffs to market, license and/or copy any photographs in the Shaw Collection.

21.    The aforesaid infringements are of a continuing nature and are therefore not time-barred by the applicable statute of limitations.

22.    Moreover, defendants have also made, distributed and/or displayed other copies of plaintiffs' copyright protected photographic works as part of defendants' advertising activities, or have otherwise offered to or have licensed others to make copies of the Shaw Collection as if defendants owned the rights to photographs as to which said plaintiffs own and control the copyrights.

23.    Furthermore, plaintiffs have been informed that defendants may be advertising, offering for sale, and are selling other copyright protected works of the Shaw Collection in addition to those set forth above.  Plaintiffs will seek leave to amend this action once these other acts of infringement can be specifically identified.

24.    The activities of defendants complained of herein are continuing, constitute willful infringement of plaintiff's registered copyrights, and were and are in blatant disregard of plaintiffs' rights.

25.    Plaintiffs are entitled to an injunction restraining defendants, their officers, agents, and employees, and all persons acting in concert with them, from engaging in any further acts in violation of the copyright laws.

7

26.    Plaintiffs are further entitled to recover from defendants the damages, including attorney's fees and any and all gains, profits and advantages obtained by defendants, as a result of defendants' acts of infringement alleged above, or, in the alternative, statutory damages as provided for in 17 U.S.C. § 504(c). At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by Plaintiffs.

**SECOND CAUSE OF ACTION**

**DECLARATION AS TO PLAINTIFF'S EXCLUSIVE RIGHT TO THE PHOTOGRAPHS CONTAINED WITHIN THE SHAW COLLECTION AND DEFENDANTS' LACK OF RIGHTS REGARDING THE COPYRIGHTS, THE ALLEGED RIGHT TO PUBLICITY, OR THE ALLEGED RIGHT TO PUBLISH**

27.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 26 as if fully set forth herein.

28.    Defendants have pursued an aggressive campaign of threats and intimidation to force third-parties to obtain defendants' permission for any use of Marilyn Monroe's name or likeness. By threatening to and actually filing lawsuits, defendants have been successful in forcing compliance with their improper demands. Defendants have accomplished this not by actually having any rights, but by forcing third-parties to give in to defendants' demands in order to avoid costly litigation.

29.    Defendants' campaign to force third-parties to pay defendants for the use of Marilyn Monroe's image, despite the fact that defendants lack the right to control the commercial use of Ms. Monroe's image, involves initially threatening to commence litigation in Indiana. If the third-party in question fails to acquiesce to defendants' improper demands, defendants commence groundless, spurious lawsuits in Indiana. These lawsuits are very expensive and difficult for the third-parties to defend, as most of the third-parties are located in other parts of the country.

30.    In keeping with their usual tactics, CMG and MM have filed, but not yet served, a Summons and Complaint in Indiana Federal Court ("the Indiana action"), bearing Docket Number 5-cv-0423 (DFW) (WTL), against the within plaintiffs.  A copy of the complaint in the Indiana action is annexed hereto as Exhibit "I."  The Indiana action contains causes of action based on the allegations that the Archives do not own the copyrights to the Shaw Collection, that CMG and MM own the right of publicity of Marilyn Monroe, that the Archives has criminally converted their property and caused deception and that the Archives has interfered with their business.

31.    The complaint in the Indiana action fails to state a viable cause of action against the plaintiffs.  Moreover, the summons in the Indiana action erroneously suggests that Shaw Family Archives, Ltd., may be served "c/o David Marcus, Esq."  Ex. I.  It should be noted that David Marcus, Esq. is one of Shaw Family Archives, Ltd.'s attorneys, and is *not* one of their designated agents upon which process may be served.

32.    In the Indiana action defendant MM falsely claims to exclusively own all of Marilyn Monroe's posthumous rights of personality, publicity and association.  Defendant CMG falsely claims to be the exclusive licensee of the rights of publicity of Marilyn Monroe by virtue of CMG's license with MM.  Ex. I, ¶¶ 4, 5, 7.

33.    Defendants have falsely claimed and insisted that no use of any image of Marilyn Monroe may be made without defendants' consent.  Defendants wrongly and improperly license the right to Marilyn Monroe's name, and likeness to generate substantial income.

34.    Despite their claims to the contrary, defendants do not possess any rights to the image of Marilyn Monroe given that Ms. Monroe was a domiciliary of New York at the time of her death.  Although Ms. Monroe died in Los Angeles on August 8, 1962, she was a New York

9

domiciliary at that time, and under New York law, there is no posthumous right of privacy or publicity. Accordingly, even if, hypothetically, someone other than Marilyn Monroe had the right to control her name, likeness and image up to the time of her death, that right terminated with Marilyn Monroe's passing.

35.    CMG and MM assert ownership and control of the rights of publicity of Marilyn Monroe based on Indiana Right of Publicity Statute I.C.32-36-1-1, *et seq*, enacted in 1994. Ex. I, ¶26.  However, this statute only applies to Indiana and likely does not apply to Marilyn Monroe at all as she died prior to the enactment of said statute.  Moreover, this Indiana Statute, and the publicity rights created therein, is preempted by 17 U.S.C. § 101, *et seq*.

36.    CMG and MM have no rights of publicity in the name, likeness and image Marilyn Monroe, and their claims to the contrary have interfered with and prevented the licensing of the Shaw Collection by the plaintiffs.

37    Accordingly, defendants cannot, and in fact never could, lawfully place any restrictions or impediments on the right of plaintiffs to license the use of the Marilyn Monroe photographs as to which plaintiff owns the copyrights, and on any photographs which may be in the public domain.  Nonetheless, defendants have falsely represented and traded on their claim that a right of publicity does exist as to Marilyn Monroe, and that defendants are the exclusive holders of those rights.

38.    Plaintiffs request that this Court issue a judgment declaring that defendants own no rights of publicity, association, sponsorship and/or endorsement, in and to the name and likeness of the late actress Marilyn Monroe; that plaintiffs have rights to the photographs contained within the Shaw Collection, including the right to publish and issue licenses for the publication and use of those photographs; that plaintiffs Marcus and Stevens are the exclusive

10

copyright holder regarding the photographs covered under the copyright registrations described in the first cause of action in the instant complaint; and that statements plaintiff the Archives have made or issued to this effect are not defamatory or disparaging of defendants, defendants' rights or products.

### THIRD CAUSE OF ACTION

### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

39.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 38 as if fully set forth herein.

40.    Plaintiffs had, and continue to have, contractual relationships with third-parties regarding the licensing of photographs of Marilyn Monroe for which plaintiffs own the copyrights and which were and are advantageous to plaintiffs in their business

41.    Defendants, at all relevant times, were aware of the aforementioned contractual relationships between plaintiffs and third-parties regarding the licensing of photographs of Marilyn Monroe for which plaintiffs own the copyrights.

42.    Defendants deliberately contacted the aforementioned third-parties with whom plaintiffs had contractual relationships and induced the third-parties to breach the terms of their contracts with plaintiffs. Defendants have so induced the aforementioned third-parties to breach the terms of their contracts with plaintiffs through various means. These means include, but are not limited to, misrepresentations made by defendants to the third-parties in which defendants wrongly claimed to own the rights of publicity, association, sponsorship and/or endorsement, in and to the name and likeness of the late actress Marilyn Monroe. Defendants further misrepresented to third-parties that defendants' alleged rights of publicity, association, sponsorship and/or endorsement prevented plaintiffs from legally licensing the use of the Shaw

11

Collection. Defendants further misrepresented to third-parties that defendants' alleged rights of publicity, association, sponsorship and/or endorsement prevented the third-parties' use of photographs of Marilyn Monroe without defendants' permission.

43.    As a direct and proximate result of defendants' misrepresentations, the aforementioned third-parties were induced to believe that their contracts with plaintiffs were flawed and/or invalid. Moreover, the third-parties were induced to believe that defendants own the rights of publicity, association, sponsorship and/or endorsement, in and to the name and likeness of the late actress Marilyn Monroe, and that the third-parties were required to pay defendants for permission to use images of Marilyn Monroe. Accordingly, plaintiff lost existing business and incurred damages in an amount presently unknown, subject to proof at trial.

## FOURTH CAUSE OF ACTION

### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

44.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 43 as if fully set forth herein.

45.    Plaintiffs had, and continue to have, business relationships with third-parties regarding the licensing of photographs of Marilyn Monroe for which plaintiffs own the copyrights and which were and are advantageous to plaintiffs in their business. Plaintiffs have conducted negotiations with many of these third-parties that would have led to the formation of contractual relationships with the third parties but-for the unlawful actions of defendants.

46.    Defendants, at all relevant times, were aware of the aforementioned negotiations between plaintiffs and third-parties regarding the licensing of photographs of Marilyn Monroe for which plaintiffs own the copyrights.

47.     Defendants deliberately contacted the aforementioned third-parties with whom plaintiffs had negotiations and persuaded the third-parties to discontinue these negotiations, and to forego entering into contractual relationships with plaintiffs.  Defendants have so persuaded the aforementioned third-parties to discontinue the negotiations, and to forego entering into contractual relationships with plaintiffs, through various means.  These means include, but are not limited to, misrepresentations made by defendants to the third-parties in which defendants wrongly claimed to own the rights of publicity, association, sponsorship and/or endorsement, in and to the name and likeness of the late actress Marilyn Monroe.  Defendants further misrepresented to third-parties that defendants' alleged rights of publicity, association, sponsorship and/or endorsement prevented plaintiffs from legally licensing the use of the Shaw Collection.  Defendants further misrepresented to third-parties that defendants' alleged rights of publicity, association, sponsorship and/or endorsement prevented the third-parties' use of photographs of Marilyn Monroe without defendants' permission.

48.     As a direct and proximate result of defendants' misrepresentations, the aforementioned third-parties were induced to believe that any contracts with plaintiffs would be flawed and/or invalid.  Moreover, the third-parties were induced to believe that defendants own the rights of publicity, association, sponsorship and/or endorsement, in and to the name and likeness of the late actress Marilyn Monroe, and that the third-parties were required to pay defendants for permission to use images of Marilyn Monroe.  Accordingly, plaintiff lost prospective business and incurred damages in an amount presently unknown, subject to proof at trial.

<u>**JURY DEMAND**</u>

49.     Plaintiffs request a trial by jury.

13

WHEREFORE, EDITH MARCUS, META STEVENS and SHAW FAMILY ARCHIVES, LTD., respectfully requests that the court enter judgment providing the following relief:

A.  A Declaratory Judgment, pursuant to 28 U.S.C. §2201, declaring that defendants own no rights of publicity, association, sponsorship and/or endorsement, in and to the name and likeness of the late actress Marilyn Monroe; that plaintiffs have rights to the photographs contained within the Shaw Collection, including the right to publish and issue licenses for the publication and use of those photographs; that plaintiffs Marcus and Stevens are the exclusive copyright holder regarding the photographs covered under the copyright registrations described in the first cause of action in the instant complaint; and that statements plaintiff the Archives has made to this effect are not defamatory or disparaging of defendants or defendants' products.

B.  An award of damages, including treble, statutory and punitive damages against defendants, and each of them, and costs and attorneys' fees, including pre- and post- Judgment interest, as permitted under the applicable laws and authorities.

C.  The granting of an injunction restraining defendants, their officers, agents, and employees, and all persons acting in concert with them, from engaging in any further acts in violation of the copyright laws.

D.  An award of damages, including attorney's fees and any and all gains, profits and advantages obtained by defendants, as a result of defendants' acts of copyright infringement as alleged above, or, in the alternative, statutory damages as provided for in 17 U.S.C. § 504(c).

E.      An award of damages, including attorney's fees and any and all gains, profits and advantages obtained by defendants, as a result of defendants' acts of tortious interference with contractual relations as alleged above.

F.      An award of damages, including attorney's fees and any and all gains, profits and advantages obtained by defendants, as a result of defendants' acts of tortious interference with prospective economic advantage as alleged above.

G.      Such other and further relief as to this Court may seem just and proper.

Dated: New York, New York
      May 9, 2005

Brian L. Greben (BG 1572)
David M. Marcus
Attorneys for Plaintiff
SHAW FAMILY ARCHIVES, LTD.
1650 Broadway, Suite 707
New York, New York  10019
(917) 612-0486

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

SHAW FAMILY ARCHIVES, LTD., EDITH MARCUS
and META STEVENS,                                                    Case No.

                                  Plaintiffs,        Rule 7.1 Statement

       -against-

CMG WORLDWIDE, INC., an Indiana Corporation,
and MARILYN MONROE, LLC, a Delaware Limited
Liability Company,

                                  Defendants.

-------------------------------------------------------------x

       Pursuant to Federal Rule of Civil Procedure 7.1 [formerly Local General Rule
1.9] and to enable District Judges and Magistrate Judges of the Court to evaluate possible
disqualification or recusal, the undersigned counsel for SHAW FAMILY ARCHIVES,
LTD. (a private non-governmental party) certifies that the following are no corporate
parents, affiliates and/or subsidiaries of said party, which are publicly held.

Dated: Tappan, New York
            April 19, 2005

                                      Brian L. Greben (BG 1572)
                                      David M. Marcus
                                      Attorneys for Plaintiff
                                      SHAW FAMILY ARCHIVES, LTD.
                                      143 Independence Avenue
                                      Tappan, New York 10983
                                      (917) 686-9465

# EX. F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

SHAW FAMILY ARCHIVES, LTD., EDITH MARCUS   :
and META STEVENS,                                        :  05CV3939

                                                :                      JUDGE: CM

                                                :  ECF CASE

                          Plaintiffs,      :  SECOND AMENDED

                                                :  COMPLAINT

        -against-                           :

CMG WORLDWIDE, INC., an Indiana Corporation,  :  JURY TRIAL DEMANDED
and MARILYN MONROE, LLC, a Delaware Limited  :
Liability Company,                                :

                         Defendants.     :

------------------------------------------------------------------x

RECEIVED
AUG 0 8 2007
U.S.D.C. S.D.N.Y
CASHIERS

Plaintiffs Shaw Family Archives, Ltd., Edith Marcus, and Meta Stevens, for its Second

Amended Complaint against the above-named Defendants, allege as follows:

## NATURE OF ACTION

1.     This is an action for federal copyright infringement, violation of the Lanham Act,

and various other federal and state causes of action.

2.     An actual, justiciable controversy exists among the parties as to which a

declaratory judgment setting forth their respective rights and obligations is necessary and

appropriate.

## THE PARTIES

3.     Plaintiff Shaw Family Archives ("Archives") is a New York Corporation whose

principal place of business is in the County of Rockland, State of New York.

4.     Plaintiff Edith Marcus ("Marcus") is an individual residing in the County of

Rockland and the State of New York.

5.     Plaintiff Meta Stevens ("Stevens") is an individual residing in the County of New

York and the State of New York.

6.    Defendant CMG Worldwide, Inc. ("CMG") is a corporation organized and existing pursuant to the laws of the State of Indiana, maintaining its principal place of business in Hamilton County, Indiana.

7.    Defendant Marilyn Monroe, LLC ("MM") is a business entity organized and existing pursuant to the laws of the State of Delaware.

## JURISDICTION AND VENUE

8.    This court has original jurisdiction over this civil action under 28 U.S.C. §1331 and 28 U.S.C. §1332(a).

9.    Venue in this district is proper, pursuant to 28 U.S.C. §1391(a)(2).

10.    This Court has personal jurisdiction over defendants because, upon information and belief, defendants conduct business in New York. In addition, this action arises from tortious conduct committed by defendants in New York or causing injury in New York.

## BACKGROUND

11.    Sam Shaw ("Shaw") was one of the foremost photographers of his time. Although initially renowned for his career as a photojournalist for Colliers Magazine, it is his remarkable portraits of artists, musicians, film, television and theatrical celebrities, and his unique photographs of Marilyn Monroe and the ensuing friendship between Mr. Shaw and Ms. Monroe, for which he is most notably remembered.

12.    During their work together, Mr. Shaw and Ms. Monroe formed a lifelong friendship. Given his close personal relationship with Ms. Monroe, he was able to photograph Marilyn at her most intimate, relaxed and open moments. Indeed, Mr. Shaw designed, staged and took the famous flying skirt series of photographs of Ms. Monroe that are known throughout the world.

2

13.     Sam Shaw was the author and owner of all copyrights to the photographs he took. He passed away in 1999 with his copyrights in a Trust. The sole trustees and interest holders were his daughters and present Plaintiffs Edith Marcus and Meta Stevens. When Sam Shaw died in 1999, his shares in the aforementioned Trust passed to Marcus and Stevens, per stirpes. Shaw Archives has the right to market, and offer for commercial exploitation, the Shaw Collection.

14.     Plaintiffs Marcus and Stevens own and control the copyrights of photographs of Marilyn Monroe contained within the Shaw Collection, many of which have never been seen by the public.

## ALLEGATIONS COMMON TO ALL COUNTS

**Allegations Concerning Defendants' Repeated and Willful Copyright Infringement and Contributory Copyright Infringement**

15.     In or about 1957, Sam Shaw created a group of original photographs of Marilyn Monroe taken at the beach at Amagansett, New York. Three of these photographs were depicted on pages 176, 180, and 182 (top right) in the book "Marilyn Among Friends" and are protected by U.S. Copyright Registration No. TX 2-400-879. A true and correct copy of U.S. Copyright Registration No. TX 2-400-879 is attached hereto as Exhibit A.

16.     Without proper authorization, Defendants have violated Plaintiffs' exclusive rights in the image of Marilyn Monroe protected by U.S. Copyright Registration No. TX 2-400-879 by causing to be copied, published, and offered for sale on their web site the foregoing three copyright protected images on a coffee mug.

17.     Plaintiffs Marcus and Stevens own Shaw photographs of Marilyn Monroe depicted on pages 128 (center), 130, and 134-35 in the book "Marilyn Among Friends." These photographs are protected by U.S. Copyright Registration No. TX 2-400-879. A true and correct copy of U.S. Copyright Registration No. TX 2-400-879 is attached hereto as Exhibit A.

3

18.     Without proper authorization, Defendants have violated Plaintiffs' exclusive rights in the image of Marilyn Monroe protected by U.S. Copyright Registration No. TX 2-400-879 by causing to be copied, published and offered for sale on their web site the foregoing three copyright protected images on a purse.

19.     On information and belief, knowing that they had no authorization to do so, and that their acts constituted copyright infringement, Defendants have authorized the Centric Corporation to publish, display, and sell numerous images of Marilyn Monroe on the Centric Corporation web site.  These images are displayed on alarm clocks, coffee mugs, mini clocks, and wall clocks are contained on pages 46 of the book "Marilyn and Friends."  These photographs of Marilyn Monroe, including the famous skirt flying photograph most prominently displayed, are protected by U.S. Copyright Registration No. TX 2-400-879, attached hereto as Exhibit A.  Defendants have violated Plaintiffs' exclusive rights in the image of Marilyn Monroe protected by U.S. Copyright Registration No. TX 2-400-879 by causing to be copied, published and offered for sale on the Centric Corporation web site the foregoing protected images of Marilyn Monroe.  Defendants knew of Centric's illegal activity and induced and materially contributed to the infringement.

20.     Plaintiffs Marcus and Stevens own two Shaw photographs of Marilyn Monroe depicted on pages 20-21 in the book "In the Camera Eye."  These photographs are protected by U.S. Copyright Registration No. TX 5-342-425.  A true and correct copy of U.S. Copyright Registration No. TX 5-342-425 is attached hereto as Exhibit B.

21.     Without proper authorization, Defendants have violated Plaintiffs' exclusive rights in the image of Marilyn Monroe protected by U.S. Copyright Registration No. TX 5-342-

4

425 by causing to be copied, published, and offered for sale on their web site the foregoing images on a purse.

22.     In their written responses to Plaintiffs' first set of interrogatories, Defendant CMG admitted to displaying in 2004 "no more than 5 Monroe/Shaw Photographs on its corporate website for no more than 6 to 9 months." Despite Plaintiffs' written requests, the Defendants have refused to identify the photographs at issue.

**Defendants' False Commercial Representations and Wrongful Interference With Plaintiffs' Contractual Relations**

23.     Defendants have pursued an aggressive and improper campaign of threats and intimidation to force third-parties to obtain Defendants' permission for the use of Marilyn Monroe's name, likeness or image. Defendants have also improperly demanded and obtained payments from these parties by wrongfully representing to Plaintiffs' licensees and potential licensees that Defendants had a right of publicity in Marilyn Monroe (or right to the image and likeness of Marilyn Monroe), which Defendants knew or should have know was false.

24.     Defendants' intentionally false statements to Plaintiffs' licensees and potential licensees has caused Plaintiffs substantial damage because it has caused Plaintiffs' licensees to cease licensing images of Marilyn Monroe from Plaintiffs and caused other potential licensees to forgo licensing images of Marilyn Monroe from Plaintiffs when they otherwise would have done so.

**The Defendants' Flouting of The Court Orders in California and New York**

25.     On or about May 2, 2007, The Honorable Colleen McMahon of the Southern District of New York (the "New York Order") ruled that the Defendant MM does not own a right of publicity in Marilyn Monroe because she died a domiciliary in a state that did not recognize a post-mortem right of publicity.

5

26.     On or about May 14, 2007, the Honorable Margaret M. Morrow of the Central District of California made essentially the same ruling as the New York Order (the "California Order").

27.     The Defendants have frequently expressed contempt for the legal reasoning and basis set forth in the New York and California Orders in the media and in commerce.

28.     Despite the New York and California Orders, Defendants continue to represent that they have rights to the image of Marilyn Monroe.

29.     Despite the New York and California Orders, Defendants continue to make false representations of fact to Plaintiffs' licensees and potential licensees concerning Defendants' alleged rights in the image of Marilyn Monroe.

30.     Despite the New York and California Orders, the Defendants continue to assert rights to the image of Marilyn Monroe which they do not have, including recent such representations to, among others, New Media Inc. and Pyramid Posters Limited.

31.     Defendants' continued false representations and wrongful interference are causing Plaintiffs substantial damage.

**The Defendants' Efforts to Circumvent The New York And California Orders Through Misrepresentations to the Legislature**

32.     The Defendants' have lobbied the New York and California legislature for laws that would eviscerate the New York and California Orders.

33.     The Defendants have achieved success in New York and California by (i) misrepresenting and omitting numerous material facts concerning the import of the respective rulings and (ii) failing to provide full disclosure on the nature and extent of their wrongful acts as set forth herein.

34.    The Defendants misrepresentations are continuing to cause Plaintiffs damage because their actual and prospective licensees continue to suffer anxiety that their existing contractual relations and expectations will be nullified by new legislation.

## FIRST CAUSE OF ACTION

### (FEDERAL COPYRIGHT INFRINGEMENT)
### (17 U.S.C. § 101, et seq.)

35.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in paragraphs 1 through 34 as if fully set forth herein.

36.    As a result of the foregoing acts, the Defendants have willfully infringed the Plaintiffs' federal copyrights, all in violation of 15 U.S.C. § 501.

## SECOND CAUSE OF ACTION

### (FEDERAL CONTRIBUTORY COPYRIGHT INFRINGEMENT)
### (17 U.S.C. § 101, et seq.)

37.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in paragraphs 1 through 36 as if fully set forth herein.

38.    As a result of the foregoing acts, the Defendants have willfully infringed the Plaintiffs' federal copyrights, all in violation of 15 U.S.C. § 501.

## THIRD CAUSE OF ACTION

### (DECLARATION THAT THE DEFENDANTS DO NOT OWN ANY INTELLECTUAL PROPERTY RIGHTS IN THE IMAGE OR LIKENESS OF MARILYN MONROE)

39.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 38 as if fully set forth herein.

40.    Based on the foregoing acts, there is an actual controversy and Plaintiffs will continue to be damaged unless the Court specifically holds that the Defendants do not own any rights in the image of Marilyn Monroe.

7

## FOURTH CAUSE OF ACTION

### (TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS)

41.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 40 as if fully set forth herein.

42.     As a result of the foregoing acts, the Defendants have tortiously interfered with Plaintiffs' contractual relations thereby causing Plaintiffs damage.

## FIFTH CAUSE OF ACTION

### (TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)

43.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 42 as if fully set forth herein.

44.     As a result of the foregoing acts, the Defendants tortiously interfered with Plaintiff's prospective economic advantage, thereby causing Plaintiffs damage.

## SIXTH CAUSE OF ACTION

### (FALSE DESIGNATION OF ORIGIN, FALSE DESCRIPTION, AND UNFAIR COMPETITION UNDER 15 U.S.C. § 43(a))

45.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 44 as if fully set forth herein.

46.     The false representations of origin and the false and misleading descriptions and representations of fact alleged herein have caused Plaintiffs significant monetary damage, loss and injury to Plaintiffs, in an amount currently undetermined, all in violation of Section 43(a) of the Lanham Act of the Trademark Act of 1946, as amended, 15 U.S.C. § 43(a).

47.     As a result of the foregoing acts, Defendants have caused consumer confusion in the marketplace.

48.     Upon information and belief, Defendants undertook the aforesaid acts willfully and with the intention of causing confusion, mistake or deception.

## SEVENTH CAUSE OF ACTION

### (COMMON LAW UNFAIR COMPETITION)

49.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 48 as if fully set forth herein.

50.     By its acts alleged herein, Defendants have engaged in, and continue to engage in, a course of unfair competition in violation of the common law of the State of New York.

51.     Plaintiffs have been damaged as a result of the Defendants activities in an amount currently undetermined.

## EIGHTH CAUSE OF ACTION

### (UNFAIR TRADE PRACTICES UNDER
### N.Y. GEN BUS. LAW §§ 349-50)

52.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 51 as if fully set forth herein.

53.     By virtue of the foregoing, Defendants have violated N.Y. Gen. Bus. Law §§ 349-50 and have suffered damages in an amount presently unknown.

## NINTH CAUSE OF ACTION

### (DECLARATION THAT MARILYN MONROE DIED A
### DOMICILIARY OF THE STATE OF NEW YORK)

54.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 53 as if fully set forth herein.

55.   By virtue of the foregoing legislative efforts and ongoing factual misrepresentations concerning their rights to the image of Marilyn Monroe, Plaintiffs are entitled to a ruling that Marilyn Monroe died a New York domiciliary.

WHEREFORE, Plaintiffs demand:

A.   For a Declaratory Judgment, pursuant to 28 U.S.C. §2201 as set forth herein.

B.   For copyright damages increased to the statutory maximum due to willful infringement.

C.   For treble damages, punitive damages and attorney's fees.

D.   For compensatory damages and consequential damages as provided by law.

E.   For an injunction restraining defendants, their officers, agents, and employees, and all persons acting in concert with them, from engaging in any further unlawful acts as set forth herein.

F.   Such other and further relief as to this Court may deem just and proper.

Dated: New York, New York
       August 8, 2007

Respectfully Submitted,

By: _Christopher Serbagi_
Christopher Serbagi (CS 7746)
David Marcus (DM 0960)
Law Offices of Christopher Serbagi
488 Madison Avenue, Suite 1120
New York, New York 10022
(212) 593-2112

Attorneys for Plaintiffs/Consolidated Defendants
Shaw Family Archives, Bradford Licensing, Inc.,
Edith Marcus and Meta Stevens

EXHIBIT A

# CERTIFICATE OF REGISTRATION



UNITED STATES COPYRIGHT OFFICE

★ THE LIBRARY OF CONGRESS ★

OFFICIAL SEAL

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

REGISTER OF COPYRIGHTS
United States of America

## FORM TX
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

TX 2-400-879

| TX | TXU |

EFFECTIVE DATE OF REGISTRATION

| Sep | 6 | 88 |
|-----|---|-----|
| Month | Day | Year |

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1**

**TITLE OF THIS WORK ▼**
MARILYN AMONG FRIENDS by Sam Shaw and Norman Rosten

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.    Title of Collective Work ▼

If published in a periodical or serial give: Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

**2**

**NAME OF AUTHOR ▼**
a  Norman Rosten

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ U.S.
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?  ☐ Yes ☒ No
Pseudonymous?  ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼
entire text

**NAME OF AUTHOR ▼**
b

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?  ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**NAME OF AUTHOR ▼**
c

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?  ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**3**

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given ONLY if this work has been published.
1987 ◀ Year

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Complete this information ONLY if this work has been published.
Month ▶ May  Day ▶ 5  Year ▶ 1987
Great Britain ◀ Nation

**4**

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼
Norman Rosten
c/o Henry Holt and Company, Inc., 115 West 18th St.
New York, NY 10011

APPLICATION RECEIVED
SEP 01 1988
ONE DEPOSIT RECEIVED
SEP 01 1988
TWO DEPOSITS RECEIVED

**TRANSFER** If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

REMITTANCE NUMBER AND DATE

DO NOT WRITE HERE OFFICE USE ONLY

---

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-11) on the reverse side of this page.
• See detailed instructions.   • Sign the form at line 10.

DO NOT WRITE HERE

05/15/2007 17:18 9143593704 EDITH SHAW MARCUS PAGE 08
Case 1:05-cv-03939-CM-MDF Document 118 Filed 08/09/2007 Page 13 of 17
Case 1:05-cv-03939-CM Document 115-18 Filed 01/09/2008 Page 13 of 17

EXAMINED BY

CHECKED BY

FORM TX

☐ CORRESPONDENCE
Yes

☐ DEPOSIT ACCOUNT
FUNDS USED

FOR
COPYRIGHT
OFFICE
USE
ONLY

TX 2-400-679

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☒ No If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼

☐ This is the first published edition of a work previously registered in unpublished form.
☐ This is the first application submitted by this author as copyright claimant.
☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▼      **Year of Registration** ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a & 6b for a derivative work; complete only 6b for a compilation.
a. **Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

b. **Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

See instructions
before completing
this space.

**6**

**MANUFACTURERS AND LOCATIONS** If this is a published work consisting preponderantly of nondramatic literary material in English, the law may require that the copies be manufactured in the United States or Canada for full protection. If so, the names of the manufacturers who performed certain processes, and the places where these processes were performed must be given. See instructions for details.
**Names of Manufacturers** ▼                **Places of Manufacture** ▼

**7**

**REPRODUCTION FOR USE OF BLIND OR PHYSICALLY HANDICAPPED INDIVIDUALS** A signature on this form at space 10, and a check in one of the boxes here in space 8, constitutes a non-exclusive grant of permission to the Library of Congress to reproduce and distribute solely for the blind and physically handicapped and under the conditions and limitations prescribed by the regulations of the Copyright Office: (1) copies of the work identified in space 1 of this application in Braille (or similar tactile symbols); or (2) phonorecords embodying a fixation of a reading of that work; or (3) both.
a ☐ Copies and Phonorecords      b ☒ Copies Only      c ☐ Phonorecords Only

See instructions.

**8**

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼   Henry Holt and Company, Inc.        Account Number ▼   058009

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/Zip ▼

Be sure to
give your
daytime phone
number.

Area Code & Telephone Number ▶

**9**

**CERTIFICATION*** I, the undersigned, hereby certify that I am the     Check one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of   Norman Rosten
   Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this is a published work, this date must be the same as or later than the date of publication given in space 3.
Joanne Vallas                                            date ▶   September 2, 1988

✎ Handwritten signature (X) ▼

**10**

**MAIL CERTIFICATE TO**
Name ▼   Joanne Vallas
Number/Street/Apartment Number ▼   Henry Holt and Company, Inc., 115 West 18th Street
City/State/ZIP ▼   New York, NY 10011

**Certificate will be mailed in window envelope**

Have you:
• Completed all necessary spaces?
• Signed your application in space 10?
• Enclosed check or money order for $10 payable to Register of Copyrights?
• Enclosed your deposit material with the application and fee?
MAIL TO: Register of Copyrights, Library of Congress, Washington, D.C. 20559.

**11**

* 17 U.S.C § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

☆ U.S. GOVERNMENT PRINTING OFFICE: 1988:461-584/20,005

AUGUST 1986—200,000

EXHIBIT B

05/15/2007 17:18 9143593704 EDITH SHAW MARCUS PAGE 09
Case 1:05-cv-09389-GM-MDF Document 118 Filed 08/08/2007 Page 15 of 17
Case 1:05-cv-09389-GM-MDF Document 15-14 Filed 01/09/2008 Page 33 of 35

# CERTIFICATE OF REGISTRATION



OFFICIAL SEAL

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

REGISTER OF COPYRIGHTS
United States of America

**FORM TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE
REGISTR

**TX 5-342-425**

EFFECTIVE DATE OF REGISTRATION

**JUL 20 2001**

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**1**

TITLE OF THIS WORK ▼
Marilyn Monroe: In the Camera Eye

PREVIOUS OR ALTERNATIVE TITLES ▼
N/A

PUBLICATION AS A CONTRIBUTION: If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼
N/A

If published in a periodical or serial give: Volume ▼    Number ▼    Issue Date ▼    On Pages ▼
N/A

**2**
**a**

NAME OF AUTHOR ▼
Sam Shaw

DATES OF BIRTH AND DEATH
Year Born ▼ 1912    Year Died ▼ 1999

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ U.S.A.
{ Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No

**NOTE**

Under the law the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼
Photographs and Text

**b**

NAME OF AUTHOR ▼
N/A

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
{ Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c**

NAME OF AUTHOR ▼
N/A

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
{ Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**3**
**a**

YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED This information must be given in all cases.
1979

**b**

DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information Month ▶ May    Day ▶    Year ▶
ONLY if this work has been published.

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼
Edith Shaw Marcus, 143 Independence Avenue, Tappan, NY 10983
Meta Shaw Stevens, 838 West End Avenue, #4D, New York, NY 10025

See instructions before completing this space.

APPLICATION RECEIVED
JUL 20 2001
ONE DEPOSIT RECEIVED
JUL 20 2001
TWO DEPOSITS RECEIVED
FUNDS RECEIVED

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼
Ownership of of Copyright passed through Trust to the daughters of the Author.

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions. • Sign the form at line 8

Special Relief granted under
Sec. 202.20(1) of the C.O. reg.

EXAMINED BY

CHECKED BY

☑ CORRESPONDENCE
☑ Yes

FOR
COPYRIGHT
OFFICE
USE
ONLY

FORM TX

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes ☑ No If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▶           **Year of Registration** ▶

**5**

**DERIVATIVE WORK OR COMPILATION**

**Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

N/A

**Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

N/A

**6**
a
b

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

**Name** ▼           **Account Number** ▼

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼

Edith Shaw Marcus, 143 Independence Avenue, Tappan, NY 10983

**7**
a
b

Area code and daytime telephone number ▶ 845-359-8231           Fax ▶ 845-359-3704

Email ▶ edieshaw@earthdawn.net

**CERTIFICATION** I, the undersigned, hereby certify that I am the

check only one ▶

☐ author
☑ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

**8**

**Typed or printed name and date** ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Edith Shaw Marcus           Date ▶ 7-14-2001

Handwritten signature (X) ▼

X _____ Edith Shaw Marcus _____

**Certificate will be mailed in window envelope to this address:**

**Name** ▼
Edith Shaw Marcus

**Number/Street/Apt** ▼
143 Independence Avenue

**City/State/ZIP** ▼
Tappan, NY 10983

**9**

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

No. 1999—300,000

☆ REV: June 1999

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of August, 2007, I caused a true and correct copy of Plaintiffs/Consolidated Defendants Second Amended Complaint to be served by overnight mail to:

Orin Snyder, Esq.
Gibson Dunn & Crutcher LLP
200 Park Avenue, 47th Floor
New York, New York 10166
Tele: 212-351-4000
Fax: 212-351-6288
Attorneys for Marilyn Monroe, LLC

Ted J. Minch, Esq.
Sovich Minch, LLP
10099 Chesapeake Drive
Suite 100
McCordsville, Indiana 46055

Attorneys for CMG Worldwide, Inc.

LAW OFFICES OF CHRISTOPHER SERBAGI

By: _____
Christopher Serbagi (CS 7746)
488 Madison Avenue, Suite 1120
New York, New York 10022
Tele: (212) 593-2112
Fax: (212) 308-8582

Attorney for the Plaintiffs/Consolidated Defendants