ROESLER

"On information and belief,
however, certain of the photographs the
defendants purport to license to third parties
are in the public domain and can freely be used
by such licensees without defendants' consent."

What photographs are you talking
about?

MR. MINCH:  Objection.

Q.    That are owned by my clients.

A.    The photographs that were published
without notice.

Q.    What are they?

MR. MINCH:  Objection.

A.    The same photographs that we keep
talking about.

Q.    The ones that you can't identify?

MS. COLBATH:  Objection.

MR. MINCH:  Objection.

A.    That I can't identify at this
moment.

Q.    If we read on, "Defendants have
refused to recognize that certain photographs
of Marilyn Monroe allegedly owned and
controlled by defendants are in the public

169

ROESLER

1
2  domain and defendants have asserted that

3  plaintiffs are prohibited from using such

4  photographs without defendants' consent."  Do

5  you see that?

6      A.    Yes.

7      Q.    So we're clear, "defendants" is

8  referred to as my clients here; is that right?

9      A.    That's correct.

10     Q.    Because this is the Indiana action

11 where we were the defendants?

12     A.    That's correct.

13         MS. COLBATH:  Objection.

14         MR. MINCH:  Objection.

15     Q.    What is the basis for that

16 statement?

17         MS. COLBATH:  Are you asking what

18     is the basis?  Caption of Southern

19     District.

20         MR. MINCH:  This isn't Indiana.  I

21     think that's a mischaracterization.

22     Q.    You know what I meant, don't you?

23         MR. MINCH:  How do you know?

24         MR. SERBAGI:  I'm talking to --

25     Q.    You know what I meant, don't you,

170

ROESLER

1
2  when I said this is derived from the Indiana

3  action?

4       A.    Okay.  Why don't you redo your

5  question.

6       Q.    Well, I think we have it on the

7  record.  All I'm really getting at here is

8  defendants -- the word "defendants" in this

9  paragraph refers to my clients; is that right?

10      A.    That's correct.

11      Q.    Now, again, what I want to know is

12 the basis for the following statement:

13 "Defendants have refused to recognize that

14 certain photographs of Marilyn Monroe allegedly

15 owned and controlled by the defendants are in

16 the public domain, and defendants have asserted

17 that plaintiffs are prohibited from using such

18 photographs without defendants' consent."  What

19 is the basis for that statement?

20            MR. MINCH:  Objection.

21            MS. COLBATH:  Objection.

22      A.    The basis is the activities of the

23 licensing representative for the Shaw Family

24 that asserts that they have the right to give

25 out licenses independent of any rights to the

1               ROESLER

2    Marilyn Monroe LLC.

3         Q.    When you say the activities of the

4    licensing representatives for the Shaw Family,

5    when you refer to licensing representative, I

6    assume you're referring to Bradford; is that

7    correct?

8         A.    That's correct.

9         Q.    And when you say the basis is the

10   activities of Bradford, what do you mean?  What

11   activities are you referring to?

12        A.    Their representations to other

13   parties.

14        Q.    Who made the representations at

15   Bradford?

16             MR. MINCH:  Objection.

17        A.    Various promotions.  Just their

18   daily activities of holding themselves out as

19   possessing these rights to -- to be able to

20   license out Marilyn Monroe, completely

21   independent of Marilyn Monroe LLC.

22        Q.    Who made the representations you're

23   referring to?

24        A.    All I can say is the company of

25   Bradford.  I mean, whether it's their presence

172

ROESLER

1

2     at a trade show or their various promotional

3     pieces or communications with licensees.  All

4     of that, collectively, would be their

5     representations.

6          Q.    I guess I'm trying to get -- maybe

7     this is something that you can't recall,

8     either, but I'm trying to get to the

9     particulars of the representations that were

10    made.  Can you tell me what exactly the

11    representation is?  When it was made?

12         A.    I can't --

13               MR. MINCH:  Objection.

14               MS. COLBATH:   Objection.

15         A.    I can't give you those specifics.

16         Q.    So the record is clear, when you

17    say, in the -- when CMG says, in the Second

18    Amended Complaint, "Defendants have refused to

19    recognize that certain photographs of Marilyn

20    Monroe allegedly owned and controlled by

21    defendants are in the public domain and

22    defendants have asserted that plaintiffs are

23    prohibited from using any such photographs

24    without defendants' consent," you can't give me

25    any particulars about the basis for that

173

```
 1                    ROESLER
 2   statement; is that right?
 3             MR. MINCH:  Objection.
 4             MS. COLBATH:  Objection.
 5        A.    Beyond what I gave you, that's
 6   correct.
 7        Q.    You can't identify the particular
 8   photographs that my clients have refused to
 9   recognize -- rephrase.  You can't identify the
10   particular photographs of Marilyn Monroe that
11   my clients have refused to recognize are owned
12   and controlled by defendants; correct?
13             MR. MINCH:  Objection.
14             MS. COLBATH:  Objection.
15        A.    Not at this moment in this
16   deposition.
17        Q.    Let's go on.  The rest of paragraph
18   4 says, "But for defendants' false claims of
19   ownership of copyrights in and to photographs
20   of Marilyn Monroe that have, on information and
21   belief, entered the public domain, plaintiffs
22   would seek to utilize such public domain
23   photographs commercially in connection with
24   goods and services that are officially
25   authorized and/or licensed by plaintiffs."
```

174

1                           ROESLER

2                   What is the basis for that

3      statement?

4                   MR. MINCH:  Objection.

5          A.      I believe what that would mean is,

6      except for the claim of the defendants in this

7      case, that they have valid copyrights.  If they

8      acknowledged they were in the public domain, we

9      would encourage licensees to use those photos.

10         Q.      Let's get into the details of that.

11     You say, "but for defendants' false claim of

12     ownership of copyrights in and to photographs

13     of Marilyn Monroe."  Start with that.  What are

14     the false claims of ownership of copyrights in

15     and to photographs of Marilyn Monroe that

16     you're referring to?  When I say "you," I mean

17     CMG.

18         A.      The licensing activities of the

19     Shaw Family and the licensing representative.

20         Q.      What particular copyrights are you

21     referring to in this sentence that I just read

22     that you say we falsely claim ownership to?

23         A.      The various photographs that have

24     been previously published.

25         Q.      Can you name, sitting here today,

175

1                           ROESLER
2    the title of one copyright registration that we
3    have falsely claimed ownership rights to?
4                   MS. COLBATH:   Objection.
5                   MR. MINCH:   Objection.
6         A.     Not sitting here today.
7         Q.     And would the same answer apply to
8    the rest of the sentence, that sitting here
9    today, you can't provide me any information
10   regarding the part of the sentence that reads,
11   "Plaintiffs would seek to utilize such public
12   domain photographs commercially in connection
13   with goods and services that are officially
14   authorized or licensed by plaintiffs"?
15                  MR. MINCH:   Objection.
16                  MS. COLBATH:   Objection.
17        Q.     Let me strike the question and
18   reask it.  With respect to that portion I just
19   read into the record, what photographs of
20   Marilyn Monroe would CMG and MMLLC seek to
21   utilize that they haven't utilized because the
22   Shaw Family has asserted rights to them?
23                  MR. MINCH:   Objection.
24        Q.     Sitting here today, can you name
25   one?

1                        ROESLER

2        A.    Any that would be clearly

3   recognized or acknowledged to be in the public

4   domain.

5        Q.    Sitting here today, can you

6   identify one of those registrations or images

7   of Marilyn Monroe?

8                  MS. COLBATH:  Objection.

9                  MR. MINCH:  Objection.

10       A.    Not sitting here at this moment.

11       Q.    Turning to page 6, please, under

12  the heading "Count 1."  Looking at paragraph

13  29, would you read that into the record,

14  please, sir.

15       A.    "Defendants have refused to

16  acknowledge that any of the works that comprise

17  the Monroe/Shaw photographs and/or the Shaw

18  collection have entered the public domain."

19       Q.    What's the basis for that

20  statement, sir?

21                  MR. MINCH:  Objection.

22       A.    The basis would be that they claim

23  valid copyright ownership to photographs that

24  have been published without notice.

25       Q.    Which photographs are you talking

1                          ROESLER

2     about?  Again, you don't recall?

3                    MR. MINCH:  Objection.

4          A.    Again, the various photographs that

5     appear in the various publications of

6     Photoplay.

7          Q.    But just for the record, so it's

8     clear, you can't identify them, can you?

9          A.    At this moment --

10                   MS. COLBATH:  Objection.

11                   MR. MINCH:  Objection.

12         Q.    At this point.

13         A.    At this point in the deposition,

14    that's correct.

15         Q.    If you read paragraph 30 into the

16    record and tell me the basis for that

17    statement.

18         A.    "On information and belief, Shaw

19    and/or Bradford communicated to licensees,

20    potential licensees, business partners, and/or

21    potential business partners that such

22    licensees, potential licensees, business

23    partners, and/or potential business partners

24    require the prior permission and consent from

25    Shaw and/or Bradford prior to utilizing the

178

ROESLER

2   public domain Monroe/Shaw photographs."

3          Q.     What's the basis?

4                 MR. MINCH:  Objection.

5          A.     Again, the licensing activities of

6   Bradford.

7          Q.     Can you give me any particulars

8   other than just saying the licensing activities

9   of Bradford?

10                MS. COLBATH:  Objection.

11                MR. MINCH:  Objection.

12         A.     Just the fact they're holding

13  theirselves out to represent these photographs.

14         Q.     When you say "these photographs,"

15  can you, sitting here today, identify what you

16  mean by "these photographs" other than what

17  you've already stated?

18                MR. MINCH:  Objection.

19         A.     Not other than what I've already

20  stated.

21         Q.     You say here that Shaw, under

22  Bradford, have communicated to CMG business

23  partners -- let me strike that.

24                (Discussion off the record.)

25         Q.     So we're clear, other than the

179

ROESLER

1

2   generalized testimony you've provided already

3   with respect to paragraph 30, you can't provide

4   me any other basis for the statements that are

5   contained in there?

6               MR. MINCH:  Objection.

7       A.    That is correct.

8       Q.    Turn to paragraph 31.  Please read

9   that into the record.

10      A.     "On information and belief,

11  defendants have actively discouraged licensees,

12  potential licensees, business partners, and/or

13  potential business partners from entering into

14  any relationship with plaintiffs in connection

15  with products or services that feature certain

16  public domain Monroe/Shaw photographs."

17      Q.    What's the basis for that

18  statement?

19              MR. MINCH:  Objection.

20      A.    The basis is the reality of what

21  was happening in the marketplace in terms of

22  Bradford discouraging in the various actions of

23  the Shaw Family with respect to various deals

24  that we were working on.

25      Q.    Okay.  Well, you say that

180

1                      ROESLER
2     defendants -- again, defendants here and
3     throughout refers to my clients; is that
4     correct?
5          A.    Correct.
6          Q.    "Defendants have actively
7     discouraged licensees," and it goes on, "from
8     entering into relationships with purchasers."
9     Do you see that?
10         A.    That's correct.
11         Q.    What particular licensees did my
12    clients actively discourage from entering into
13    relationships with plaintiffs?
14         A.    We talked earlier about Dolce &
15    Gabbana.
16         Q.    And Frieze.
17         A.    Right.
18         Q.    Any others?
19              MR. MINCH:   Objection.
20         A.    There are a number of others, yes.
21         Q.    Can you name some today?
22              MR. MINCH:   Objection.
23         A.    I can't name any at this moment.
24         Q.    It goes on, just for the sake of
25    time, business partners, potential business

181

ROESLER

2     partners, so on and so forth.  Do you see that?

3          A.    Yes.

4              (Discussion off the record.)

5          A.    I'm sorry.  I was distracted.

6          Q.    You see the rest of 31?  I had

7     narrowed the last question to licensees.

8          A.    Right.  Right.

9          Q.    It goes on to talk about potential

10    licensees, business partners, potential

11    business partners that we purportedly

12    discourage from entering into relationships.

13         A.    Right.

14         Q.    Other than Frieze and Dolce &

15    Gabbana, can you, sitting here today, identify

16    any for us?

17         MR. MINCH:  Objection.

18         A.    No, I can't identify their names at

19    this moment.

20         Q.    And other than what you've

21    testified to already, can you identify the

22    particulars of any representations my clients

23    have purportedly made to all the entities that

24    are identified in 31 concerning rights to

25    images of Marilyn Monroe?

182

ROESLER

1

2      A.    None other than what I've testified

3      to.

4      Q.    And if you look at paragraph 32,

5      please.  If you could read that to yourself.

6      A.    Read it to myself?

7      Q.    Yes.  You can read 32 to yourself,

8      please.

9      A.    Okay.

10     Q.    It says, "Plaintiffs have been and

11     continue to be injured by defendants' conduct

12     in inducing or attempting to induce plaintiffs'

13     licensees, potential licensees" -- and it goes

14     on.  Do you see that?

15     A.    I do.

16     Q.    Other than what you've already

17     testified to, do you have any more information

18     to provide for us that would provide a basis

19     for the allegations in paragraph 32?

20     A.    Nothing other than what I've

21     already discussed.

22     Q.    How has CMG been injured by the

23     plaintiffs' conduct?

24     A.    There are many --

25           MR. MINCH:  Objection.

183

1                          ROESLER

2          A.     There are many --

3          Q.     Let me rephrase it for the record.

4     How has CMG been injured, as referred to in

5     paragraph 32, by my clients' conduct?

6          A.     There are many programs that have

7     not happened because of the conflict with

8     Bradford and Shaw.

9          Q.     Let's talk about that.  What

10    programs are you referring to?

11               MR. MINCH:  Objection.

12         A.     There are many of them.  I can't

13    tell you, off the top of my head, all of them.

14    I mean, but they're --

15         Q.     Let's talk about one.

16         A.     Frieze would be one.

17         Q.     Other than Frieze and Dolce.

18               MR. MINCH:  Objection.

19         Q.     Let me rephrase the question to

20    make it easy.

21         A.     You're right on Dolce.

22         Q.     Dolce went ahead.

23         A.     That's correct.

24         Q.     So that wasn't a relationship that

25    was terminated; correct?

184

ROESLER

1
2        A.      That's correct.  They'd have to
3    be -- someone else would have to testify as to
4    those specifics.
5        Q.      What specifics?
6        A.      On the specific companies that
7    haven't entered into arrangements because of
8    the situation with Bradford and --
9        Q.      So the record is clear, sitting
10   here today, you can't name any, can you?
11               MR. MINCH:  Objection.
12       Q.      Other than Frieze.
13       A.      You said the record is clear I
14   can't name any, and then you said other than
15   Frieze.  You've got Frieze.  You've got --
16   there's a party good company.  I mean, no, I
17   don't have specific names other than Frieze.
18       Q.      Since you can't name the companies
19   other than Frieze, sitting here today, you
20   don't know whether MMLLC has any relationships
21   with those companies, do you?
22               MR. MINCH:  Objection.
23       A.      You mean if they didn't proceed?
24       Q.      Right.  Let me rephrase the
25   question.  I want to get back to a question I

ROESLER

1
2  asked earlier.  I said, "How has CMG been
3  injured as referenced to paragraph 32 by my
4  clients' conduct?"
5           You answered, "There are many of
6  them.  I can't tell you, off the top of my
7  head, all of them," and we went on from there.
8           I want to make clear for the record
9  that, sitting here today, you can't name any
10  particular companies that did not enter a
11  relationship with MMLLC pertaining to the
12  licensing of images of Marilyn Monroe because
13  of the conduct of my clients.
14          MS. COLBATH:  Objection.
15          MR. MINCH:  Objection.
16    A.   Well, I think that we just answered
17  that with respect to we said other than Frieze.
18  So --
19    Q.   Other than Frieze, there are no
20  others that you can think of, sitting here
21  today?
22    A.   That I can name, sitting here
23  today.
24          MR. SERBAGI:  We have to go off the
25        record.  The tape has run out.

 1                           ROESLER

 2                   THE VIDEOGRAPHER:  We are now off

 3            the record at approximately 4:09.

 4                   (A brief recess was taken.)

 5                   THE VIDEOGRAPHER:  This is tape 4

 6            of the deposition of Mark Roesler.  We

 7            are now on the record at approximately

 8            4:19 p.m.

 9            Q.     Turning to paragraph 31 again, Mr.

10    Roesler, where it says that my clients "have

11    actively discouraged licensees, potential

12    licensees," and it goes on, "from entering into

13    relationships with plaintiffs."  Do you see

14    that?

15            A.     Yes.

16            Q.     Sitting here today, you can't

17    identify the particular photographs that we

18    purportedly discouraged these entities from

19    using, can you?

20                   MR. MINCH:  Objection.

21            A.     That's correct.

22            Q.     Or the particular books at issue.

23                   MR. MINCH:  Objection.

24            A.     Or the particular -- what?

25            Q.     Or the titles of the books that we

187

ROESLER

1

2    purportedly discouraged those entities,

3    licensees, potential licensees of CMG and MMLLC

4    from using.

5        MS. COLBATH:  Objection.

6        A.    I'm not sure I understand your

7    question on the books.

8        Q.    I'll rephrase it.  I want to read

9    back my prior question and answer so we have a

10    context.  I asked you, "Sitting here today, you

11    can't identify the particular photographs that

12    we purportedly discouraged these entities from

13    using, can you?"  And you said, "That's

14    correct."

15        I want to make it clear on the

16    record that looking at paragraph 31, can you

17    identify the title of any Marilyn Monroe --

18    let me rephrase.  Can you identify any specific

19    image of Marilyn Monroe that my clients

20    actively discouraged CMG or MMLLC's licensees

21    from using pertaining to Marilyn Monroe?

22        MR. MINCH:  Objection.

23        MS. COLBATH:  Objection.

24        A.    I cannot.

25        Q.    Let's turn to topic 2 on Schedule A

188

ROESLER

2  of what is identified as Roesler 1, namely the

3  30(b)(6) notice.  Do you see that, sir?

4       A.    Yes, sir.

5       Q.    Topic 2 states, "The factual basis

6  for defendants' contention that Marilyn Monroe

7  died a domiciliary of California and not New

8  York."  What is CMG's factual basis for

9  contending -- well, let me stop.  What is CMG's

10  contention as to where Marilyn Monroe was

11  domiciled when she died?

12      A.    It was our -- it was our belief

13  when we researched the issue that she was

14  probably domiciled in California at the time of

15  her death.  That was our belief.

16      Q.    And sitting here today, is that

17  your belief?  When I say "you," meaning CMG.

18      A.    I would say that's our belief, yes.

19      Q.    And what is that belief based upon?

20      A.    Just the knowledge that we know in

21  general about Marilyn Monroe and the knowledge

22  we know about her business affairs.

23      Q.    Tell me everything that you know

24  that would provide a basis for your belief,

25  sitting here today, that Marilyn Monroe died a