# EX. P



PAULA K. COLBATH
Partner

345 Park Avenue          **Direct**  212.407.4905
New York, NY 10154       **Main**   212.497.4000
                         **Fax**    212.937.3189
                         pcolbath@loeb.com

December 7, 2007

Magistrate Judge Mark D. Fox
United States Courthouse
300 Quarropas Street, Room 434
White Plains, New York 10601

Re:   Shaw Family Archives, Ltd., et al. v. CMG Worldwide, Inc., et ano.
      Case No. 05 CV - 3939 (CM)

Dear Judge Fox:

We represent Defendant/Consolidated Plaintiff Marilyn Monroe, LLC ("MMLLC") in the above action, and write to inform the Court of a discovery dispute which we have been unable to amicably resolve.

MMLLC's sole remaining claim against Plaintiff/ Consolidated Defendant Shaw Family Archives, Ltd. ("Shaw") seeks a declaration that a number of photographs purportedly owned by Shaw have entered the public domain. MMLLC's Third Amended Complaint specifically alleges, as examples, that photographs contained in two books, "Marilyn Monroe. The Life. The Myth." and "Marilyn Monroe as The Girl" (collectively, the "Books") are in the public domain, as the Books were published prior to 1964 and no copyright renewal was obtained in a timely fashion. The Books include, *inter alia*, photographs from what Shaw calls the "Flying Skirt" series, taken on the set of the film "The Seven Year Itch."

MMLLC further alleges that additional Shaw photographs of Marilyn Monroe have entered into the public domain because they were published without copyright notice, with the wrong copyright notice, or because timely renewal was never obtained. As such, MMLLC's document requests (dated October 30, 2007), seek, *inter alia*, production of documents falling into two categories:   *first*, documents relating to photographs from four (4) specific Sam Shaw/Marilyn Monroe photo shoots (including the "Flying Skirt" shoot), including all photographs

A limited liability partnership including professional corporations

taken at the shoots, copyright registration certificates and applications relating to such photographs, all deposit copies or documents filed with the Copyright Office, documents concerning publication of or copyright notices for such photographs, and all agreements relating to these specific photographs. <u>Second</u>, Defendants also requested documents relating to Sam Shaw's purported copyrights in other photographs of Marilyn Monroe, namely documents identifying copyright registration certificates and copyright applications, any deposit copies or documents filed with the Copyright Office, and any assignments which give Shaw ownership over copyrights in photographs of Marilyn Monroe.

The foregoing information is obviously highly relevant to MMLLC's "public domain" claim. Shaw cannot claim the request is burdensome – surely Shaw has a discrete file containing all of its copyright registration material. Nor is MMLLC's request a "fishing expedition," as Shaw's counsel has claimed. Rather, MMLLC has requested specific information, tied to specific photo shoots and Shaw's copyright filings, which are directly relevant to the copyright claims in issue. The information requested is particularly important as many photographs from the same shoot (including the "Flying Skirt" shoot) are virtually indistinguishable from each other, and thus without the requested discovery it is impossible to tell which photographs are in the public domain and which are not. Plaintiffs has also refused to produce, *inter alia*, any communications with Marilyn Monroe herself relating to the photographs, or any correspondence or agreements with the producers of the film "The Seven Year Itch" regarding the Flying Skirt photographs. Accordingly, we request that the Court direct Shaw to produce the documents called for in MMLLC's Document Requests 1-10 and 15, annexed as Exhibit A hereto.



Respectfully submitted,

Paula K. Colbath

cc:     Theodore J. Minch, Esq. (via telefax and email)
        Christopher Serbagi, Esq. (via email)
        David Marcus, Esq. (via email)
        Barry I. Slotnick, Esq.

NY690927.1

# EX. Q

## LAW OFFICES OF CHRISTOPHER SERBAGI

### ATTORNEYS AT LAW

### 488 MADISON AVENUE

### SUITE 1120

### NEW YORK, NEW YORK 10022

### (212) 593-2112

### FACSIMILE: (212) 308-8582

### c.serbagi@att.net

December 10, 2007

Via Hand Delivery
Magistrate Judge Mark D. Fox
United States Courthouse
300 Quarropas Street, Room 434
White Plains, New York 10601

Re:  Shaw Family Archives, Ltd. et al. v. CMG Worldwide, Inc. et al.,
Index. No. 05 CV 3939 (CM)(MF)

Dear Judge Fox:

We represent Plaintiffs/Consolidated Defendants (collectively the "Shaw Family").  The Court

should (i) deny the Defendants' December 7, 2007 request for documents because they are irrelevant to

either of the books that Defendants have requested the Court to declare are in the public domain and (ii)

limit the scope of Plaintiffs' depositions to the issues before the Court, namely whether the specific books

identified in the Complaint are in the public domain and the location of Ms. Monroe's domicile when she

died.

The Court should limit the universe of documents that the Defendants must produce to documents

relevant to *Marilyn Monroe. The Life. The Myth* (the "Rizzoli Works") and *Marilyn Monroe as the Girl*

(the "Ballantine Book") because those are the only works that the Defendants request the Court to declare

are in the public domain. Ex. A. at ¶¶ 23-27.[1]  The Defendants have produced all relevant documents

pertaining to the Rizzoli and Ballantine books.  The Defendants argue that they think "additional

photographs have fallen into the public domain," but they cannot use shear speculation as a basis to seek

documents that have nothing to do with an outstanding claim or defense.  Discovery is not a vehicle to

---

[1] The "Prayer for Relief" in the Third Amended Complaint requests that the Court declare only that the Rizzoli
Works are in the public domain.  The Shaw Family has produced documents pertaining to the Ballantine book
because it is mentioned in the Complaint, but the Shaw Family reserves its right to argue that the Defendants are
limited to requesting the Court to declare only that the Rizzoli Works are public domain.

CHRISTOPHER SERBAGI, ESQ.

determine whether a new and unspecified claim exists. Tottenham v. Trans World Gaming Corp., No. 00

Civ. 7697(WK), 2002 WL 1967023 (S.D.N.Y. June 21, 2002) (denying discovery into additional

instances of wrongdoing other than those already alleged in the answer and holding "[w]e will not

condone such a fishing expedition on the mere speculation that the Plaintiff may well have used company

money to pay other personal expenses.") (internal quotations omitted); United States v. Consolidated

Edison Co. of New York, 1998 WL 138275, *1-*2 (E.D.N.Y. Dec. 15, 1988) (denying motion to compel

where the requested discovery constituted no more than a fishing expedition by the plaintiff to discover

additional violations beyond those alleged in the complaint). Thus, it does not matter how specific the

Defendants' discovery is tailored; it is improper because it seeks documents irrelevant to the specific

works that the Defendants have asked the Court to declare are in the public domain.

As for communications with Marilyn Monroe pertaining to the photographs, it is inconceivable

how those documents could be relevant to whether copyright notice was provided or a registration was

properly renewed. In any event, we already told Defendants that we have no such documents. The rest of

Defendants' requests seek photographs and documents that have nothing whatsoever to do with the

Rizzoli and Ballantine books, like agreements with the producers of the Seven Year Itch. The Rizzoli and

Ballantine works are at issue. They are in the pubic domain or they are not. To the extent photographs

are not in these books, they are irrelevant to this litigation.

Defendants strenuously argued that documents they submitted to legislatures about Marilyn

Monroe were irrelevant because they had no direct bearing on an existing claim. The Defendants now

significantly expand their theory of permissible discovery because it suits their present needs, but they

cite no authority in support of their position. The Shaw Family also respectfully requests that the Court

Order that the Defendants' limit their inquiry of the Plaintiffs' deposition witnesses to the issues before

the Court, namely the Rizzoli/ Ballantine works and the location of Ms. Monroe's domicile when she

died.

CHRISTOPHER SERBAGI, ESQ.

Respectfully Submitted,

Christopher Serbagi

cc: Paula K. Colbath, Esq. (via email)
    Theodore J. Minch, Esq. (via email)

3

# EX. R

JONATHAN NEIL STRAUSS
Attorney At Law

345 Park Avenue
New York, NY  10154

Direct  212.407.4089
Main   212.407.4000
Fax    646.514.2887
jstrauss@loeb.com

Via Messenger

December 20, 2007

Magistrate Judge Mark D. Fox
United States Courthouse
300 Quarropas Street, Room 434
White Plains, New York 10601

Re:  Shaw Family Archives, Ltd., et al. v. CMG Worldwide, Inc., et ano.
     Case No. 05 CV - 3939 (CM)

Dear Judge Fox:

    We represent Defendant/Consolidated Plaintiff Marilyn Monroe, LLC ("MMLLC") in the above action.  We write to inform you of the improper, and regrettable, conduct of opposing counsel, Christopher Serbagi, Esq., at the recent Rule 30(b)(6) deposition of Plaintiff/Consolidated Defendant Shaw Family Archives, Ltd. ("Shaw"), which took place on Tuesday, December 18, 2007.

    First, the individual that Mr. Serbagi designated as Shaw's 30(b)(6) witness has only been a Shaw employee for two-weeks, and, unsurprisingly, was wholly unprepared regarding the issues in this litigation.  For over a month, Mr. Serbagi represented to us that Shaw's 30(b)(6) witness would be Edith Marcus (one of the parties to this action).  However, on the afternoon of Friday, December 14, Mr. Serbagi switched course and stated, for the first time, that his witness would be Melissa Stevens. We had never even heard Ms. Steven's name before, but Mr. Serbagi claimed that she was Shaw's "head of operations."  However, at the deposition we learned that Ms. Stevens was only hired by Shaw two weeks ago, as, in her words, "an operations manager."  (See Stevens Tr., at 5-6).[1]  Ms. Stevens was wholly unfamiliar with key areas of Shaw's operations, including the copyright issues paramount to our claim.

_____

    [1] Relevant excerpts from Ms. Stevens' deposition transcript are annexed as Exhibit A hereto.

Los Angeles   New York   Chicago   Nashville   www.loeb.com

A limited liability partnership including professional corporations

<u>Second</u>, Mr. Serbagi unilaterally limited the scope of the deposition, refusing to allow Ms.

Stevens to answer questions relating to any matters that we did not already know the answers to.

As Your Honor is aware, by letter dated December 7, 2007 we requested that Shaw be

compelled to produce certain documents highly relevant to our "public domain" claim.  In response, on

December 10, 2007, Mr. Serbagi requested that the Court limit discovery on our "public domain" claim

to information regarding just <u>two books</u>, both of which we already <u>know</u> to be in the public domain.[2]

Your Honor never granted Mr. Serbagi's request to so limit discovery.  Yet, at the Stevens deposition,

Mr. Serbagi repeatedly instructed Ms. Stevens not to answer <u>any</u> questions except those pertaining to

the two books that we already know to be in the public domain.  (*See, e.g.*, Stevens Tr. at 37-39, 41-

42, 76, 112-13, 117-18, 122-23, 127, 129, 143, 147, 149).  Moreover, it is clear that, in preparing for

the deposition, Ms. Stevens only reviewed documents pertaining to the two books.  (*Id.* at 42-43, 76).

Accordingly, we respectfully request that the Court direct Shaw to produce Edith Marcus to

testify as its new 30(b)(6) witness, and to compel Ms. Marcus to testify fully as to all issues relevant to

our declaratory judgment claim (and to reject Mr. Serbagi's baseless efforts to so drastically limit the

scope of discovery).

Very truly yours,

Jonathan Neil Strauss

cc:    Theodore J. Minch, Esq. (via email)
       Christopher Serbagi, Esq. (via email)
       David Marcus, Esq. (via email)

---

[2] Mr. Serbagi claimed in his December 10 letter that these books "are the <u>only works</u> that the Defendants request the Court to declare are in the public domain."  This is indisputably false – a cursory review of MMLLC's Third Amended Complaint, a copy of which was attached to Shaw's December 10 letter, reveals that we identified these two books as <u>examples</u> of works already known to be in the public domain (indeed, one of the books has already been <u>ruled</u> to be in the public domain by Judge Koeltl), and that our declaratory judgment claim was expressly <u>not</u> limited to those works.

# EX. S

## LAW OFFICES OF CHRISTOPHER SERBAGI

ATTORNEYS AT LAW

488 MADISON AVENUE

SUITE 1120

NEW YORK, NEW YORK 10022

(212) 593-2112

FACSIMILE: (212) 308-8582

c.serbagi@att.net

December 25, 2007

Via Hand Delivery
Hon. Mark D. Fox
United States Courthouse
300 Quarropas St., Room 434
White Plains, NY 10601

      Re: Shaw Family Archives, Ltd. et al. v. CMG Worldwide, Inc. et al., Index. No. 05 CV 3939

Dear Judge Fox:

      I am counsel for the Shaw Family.  I respectfully write in response to Defendants' December 20, 2007 letter.  Defendants' request for a new 30(b)(6) witness is baseless.

      First, Defendants are not entitled to discovery (deposition testimony or documents) into the entire Shaw Family collection.  Their declaratory judgment claim states that only Rizzoli and Ballantine are public domain.  Defendants admit that they have all they need on Rizzoli and Ballantine, so they have no need for additional deposition testimony.  If the Court permits this rank fishing expedition, it would open up this case to an investigation of thousands of Shaw Family images of Marilyn Monroe, require a significant extension of the discovery deadline, and dramatically impinge upon Judge McMahon's desire to quickly conclude this case.  Ex. A.

      Second, even if Defendants were entitled to the unlimited discovery they seek, there is no evidence that Ms. Stevens was an unprepared 30(b)(6) witness or that Ms. Marcus would be more informative.  Defendants do not point to a single instance where Ms. Stevens was unable to answer a relevant question concerning Rizzoli, Ballantine, or any other work for that matter.  A review of the entire transcript, which Defendants conveniently did not provide, reveals that Ms. Stevens was well prepared.  Ex. B.  Defendants argue only that the Shaw Family recently hired Ms. Stevens.[1]  What Defendants fail to tell the Court is that it was Larry Shaw who ran the entire business since the inception of Shaw Family

---

[1] Defendant MMLLC's 30(b)(6) deponent testified on December 20, 2007 that he was not even employed by MMLLC and had only infrequent involvement in the business over the years.  Ex. C.  So for Defendants to now represent that Ms. Stevens' recent employment with the Shaw Family means she is an improper witness is disingenuous.

CHRISTOPHER SERBAGI, ESQ.

Archives in 2002. When he passed on October 19, 2007, all the other family members struggled to get up to speed, including Ms. Stevens, who has been involved in Shaw Family matters virtually her entire adult life. Defendants' counsel, Barry Slotnick, did not ask the proper questions to elicit this information. Had he done so, Ms. Stevens would have testified that she was as involved in the family business as any of the remaining Shaw Family members. Mr. Strauss' statement that I mischaracterized her position as "head of operations" rather than "operations manager" is silly given that, as he well knows, the Shaw Family is comprised of three elderly ladies and Ms. Stevens who are now responsible for running the entire business and there is no distinction between these titles. The accompanying declarations provide all the testimony that Barry Slotnick failed to ask. Ex. D.

Third, Defendants argue that I improperly directed Ms. Stevens not to answer questions pertaining to non-Rizzoli and non-Ballantine books. Prior to the deposition, I made a request on December 10, 2007 for a protective order with the Court to limit the deposition testimony to those works. Ex. E. On December 15, 2007, I informed Defendants' attorney that I would not permit inquiry into works not at issue in the case. Ex. F. I requested legal authority supporting Defendants' position; they declined to provide any. Id. On December 13, 2007, I wrote to Ms. Colbath and suggested we call Your Honor to clear up the issue prior to the deposition. She declined. Ex. G. During the deposition, Defendants' counsel could have called the Court for a ruling, but it declined to do so. All of these measures could have avoided the present conflict. Rather, with only a few days of discovery left, the Defendants put everyone to the time and expense of this entirely baseless motion.

Finally, Defendants attribute a nefarious motive to changing the Shaw Family 30(b)(6) witness. There is nothing in the Federal Rules that requires the Shaw Family to identify its 30(b)(6) witness. We did so out of a courtesy only. During deposition preparation, it because apparent that Ms. Stevens, who has been part of the family business her entire adult life, was far more knowledgeable and alert than Ms. Marcus, whose health is now very poor. In any event, additional testimony would be wasteful because Defendants admit to having the information they need on Rizzoli and Ballantine and no other works are identified in their complaint as public domain.

2

CHRISTOPHER SERBAGI, ESQ.

Very truly yours,

Christopher Serbagi

cc:   Paula Colbath, Esq. (via electronic mail)
      Ted Minch, Esq. (via electronic mail)

3

# EX. T



**JONATHAN NEIL STRAUSS**
Associate

345 Park Avenue
New York, NY 10154

Direct  212.407.4089
Main   212.497.4000
Fax    646.514.2887
jstrauss@loeb.com

January 2, 2008

Magistrate Judge Mark D. Fox
United States Courthouse
300 Quarropas Street, Room 434
White Plains, New York 10601

Re:  Shaw Family Archives, Ltd., et al. v. CMG Worldwide, Inc., et ano.
     Case No. 05 CV - 3939 (CM)

Dear Judge Fox:

        We represent Defendant/Consolidated Plaintiff Marilyn Monroe, LLC ("MMLLC") in the above

action.  As you know, on December 26, 2007, the parties in this action appeared before you in order

to attempt to resolve a discovery dispute relating to Plaintiff/Consolidated Defendant Shaw Family

Archives, Ltd.'s ("Shaw's") refusal to produce documents pertaining to MMLLC's "public domain"

claim, as well as Shaw's directing its Rule 30(b)(6) witness not to answer numerous questions

relevant to MMLLC's claim.  Your Honor resolved the dispute, in part, by ordering Shaw to make

available for inspection (but not copying) certain "binders" that Shaw's Rule 30(b)(6) witness reviewed

in preparation for her deposition.  (In order to expedite resolution of this matter, at the December 26

conference we did not push for production of numerous other documents that MMLLC had requested

relating to its public domain claim).   Having now reviewed the (single) "binder" in question, we

respectfully request that the Court compel its production.

        The binder in question is a single loose-leaf binder, containing materials pertaining to Shaw's

Marilyn Monroe-related copyright registrations.  The binder is highly relevant to MMLLC's "public

domain" claim, as it purportedly contains Shaw's only records of when and where its photographs of

Marilyn Monroe were published.  (In fact, we are aware of publications of Shaw's photographs, in

newspapers and magazines, that are not reflected in the binder).  In addition, the binder is relevant to

Shaw's own declaratory judgment claim regarding domicile because, absent proof that Shaw actually



has a legitimate ownership interest in any Marilyn Monroe images, Shaw has no standing to pursue a declaratory judgment against MMLLC.

During the continued deposition of Melissa Stevens, Shaw's Rule 30(b)(6) witness, we marked numerous documents from the binder as exhibits. Taking the Court's Order to its literal extreme, Shaw has refused to even provide us with copies of the exhibits that were marked at the deposition.

Producing one, single binder imposes no undue burden on Shaw. This is particularly true given that Shaw has thus far produced virtually no documents relating to MMLLC's public domain claim (as mentioned previously, in an effort to finally resolve discovery disputes, we have not continued to push for the production of numerous other documents that MMLLC had requested – there is no basis for Shaw to continue to refuse to produce the single binder in issue). Nor are the documents contained in the binder commercially sensitive. Whether or not the materials contained in the binder are ultimately deemed admissible, Shaw will simply suffer no prejudice in producing a copy of the binder at this time. Accordingly, we respectfully request that the Court compel production of the single binder that MMLLC was permitted to inspect on December 27, including but not limited to those excerpts from the binder that MMLLC marked as exhibits to the deposition of Melissa Stevens.

Very truly yours,

Jonathan Neil Strauss

cc:    Theodore J. Minch, Esq. (via telefax and email)
       Christopher Serbagi, Esq. (via email)
       David Marcus, Esq. (via email)
       Barry I. Slotnick, Esq.

NY694797.1

# EX. U

# LAW OFFICES OF CHRISTOPHER SERBAGI

### ATTORNEYS AT LAW

### 488 MADISON AVENUE

### SUITE 1120

### NEW YORK, NEW YORK 10022

### (212) 593-2112

### FACSIMILE: (212) 308-8582

c.serbagi@att.net                    January 3, 2008

<u>Via Hand Delivery</u>
Hon. Mark D. Fox
United States Courthouse
300 Quarropas St. Room 434
White Plains, New York 10601

   Re: <u>Shaw Family Archives, Ltd. et al v. CMG Worldwide, Inc. et al, Index No. CV 3939</u>

Dear Judge Fox:

   I am counsel for the Plaintiffs in the above-entitled action as well as Bradford Licensing

(together "the Shaw Family"). I respectfully write in response to Defendants' January 2, 2008 letter.

Defendants' repeated request for the production of documents outside the scope of the two works they have

identified in the Third Amended Complaint as being in the public domain (Rizzoli and Ballantine) is

improper, absolutely meritless, and a fishing expedition of the most extreme kind.

   First, discovery is <u>now closed,</u> so the Defendants' motion to compel is improper. Defendants'

request is also directly contrary to Judge McMahon's stated rulings for <u>no additional discovery extensions</u>

and to resolve this case in the next ninety days. (Ex. A). After almost three years of discovery, the

Defendants' last minute request to open up this case to <u>works they have not identified in any of their four</u>

<u>complaints</u> is highly prejudicial to the Shaw Family.

   Second, the Defendants' motion is a request for <u>reconsideration</u> (although they do not

acknowledge it as such) because the Court has already declined to Order the production of the exact

documents the Defendants now request. By letters dated December 7, 2007 and December 20, 2007, the

Defendants requested that the Court order the production of a number of documents having nothing to do

with the Rizzoli and Ballantine works. Ex. B. On December 26, 2007, the Court declined the Defendants'

request and Ordered that the Defendants be permitted to depose Ms. Melissa Stevens about the copyright

binder <u>only</u> because she had reviewed those documents prior to her deposition (Ms. Stevens never testified

that she relied on the copyright binder for any specific testimony). The Court expressly declined the

CHRISTOPHER SERBAGI, ESQ.

Defendants request for a copy of the binder. Thus, the Defendants now belatedly seek the very documents this Court has previously Ordered the Shaw Family need not produce.

Third, Defendants' request is absolutely baseless because the Third Amended Complaint asserts only that the Rizzoli and Ballantine works are in the public domain. To request the complete production of the Shaw Family's files just because the Defendants allege that they <u>believe</u> other works are in the public domain is frivolous. By way of analogy, if a plaintiff alleged that a company infringed product A and "believe" other unnamed products also infringe, they would never be entitled to the production of documents relevant to products B-Z. If Defendants' argument had merit, there would be no limit to discovery. Additionally, Defendants' 30(b)(6) witnesses both recently testified that they are unable to identify <u>any work</u> other than Rizzoli and Ballantine that they believe are in the public domain, which confirms what the Shaw Family has repeatedly argued, i.e. that the Defendants' are fishing, without basis, merely to harass the Shaw Family. Incidentally, the 30(b)(6) testimony of both Defendants revealed that they had <u>no basis</u> to assert most of the allegations in the Third Amended Complaint.

Fourth, although the Court permitted the Defendants to depose Ms. Stevens for four additional hours regarding the copyright binder, the Defendants are unable to point to <u>any testimony</u> that would warrant the production of the copyright binder. That is because they know that the copyright binder has no bearing on either the Rizzoli or Ballantine works and they are unable to tie it to any outstanding claim.

Finally, and most regrettably, the Defendants severely mislead when they tell this Court that the Shaw Family has no standing to assert a declaratory judgment claim regarding domicile absent proof of a legitimate ownership interest in Marilyn Monroe images. In particular, Defendants did not disclose to this Court Judge McMahon's November 29, 2007 Order, where she expressly ruled that "Plaintiffs' Ninth Cause of Action remains in the case because the State of California recently passed a statute that purports to confer property rights on a dead person that were not possessed by that dead person at the time of her death." Ex. C. Thus, Judge McMahon expressly ruled that the Defendants have standing because of the California right of publicity statute, which means that the Shaw Family's copyrights are of no moment to the issue of domicile. Defendants repeated attempt to mislead this Court and failure to disclose that Order is deplorable.

2

CHRISTOPHER SERBAGI, ESQ.

Very truly yours,

Christopher Serbagi

cc:     Paula Colbath, Esq.
        Theodore Minch, Esq.

3