UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
SHAW FAMILY ARCHIVES, LTD., EDITH     :
MARCUS, and META STEVENS,
                                      :
                    Plaintiffs,              05 Civ. 3939 (CM)
                                      :
                                             
              -against-                      Honorable Colleen McMahon
                                      :
CMG WORLDWIDE, INC. and MARILYN       :
MONROE LLC,
                                      :
                    Defendants.       :
------------------------------------------------------------ X


**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION TO WITHDRAW COUNTS 1-8 OF PLAINTIFFS' SECOND AMENDED
COMPLAINT WITHOUT PREJUDICE AND IN SUPPORT OF DEFENDANTS'
CROSS-MOTION TO DISMISS COUNTS 1 AND 2 WITH PREJUDICE**

LOEB & LOEB LLP
345 Park Avenue
New York, New York, 10154
Tel: (212) 407-4000
Fax: (212) 308-8582
*Attorneys for Defendant Marilyn
Monroe LLC*


SOVICH MINCH LLP
10099 Chesapeake Drive
Suite 100
McCordsville, Indiana 46055
Tel: (317) 335-3601
Fax: (317) 335-3602
*Attorneys for Defendant CMG Worldwide,
Inc.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 2

    A.    The Indiana and New York Actions .................................................. 2

    B.    Plaintiffs' Second Amended Complaint ............................................. 3

    C.    Defendants' Motion to Dismiss Counts 3-8 of the SAC and the
        November 29, 2007 Order .................................................................. 5

    D.    Plaintiffs Agree to Dismissal of their Copyright Claims With Prejudice
        and Seek Reconsideration of The November 29, 2007 Order .............. 6

    E.    Discovery ........................................................................................ 7

ARGUMENT ............................................................................................................ 9

I.    PLAINTIFFS' MOTION TO WITHDRAW COUNTS 1-8 OF THEIR
    SECOND AMENDED COMPLAINT WITHOUT PREJUDICE SHOULD BE
    DENIED ......................................................................................................... 9

    A.    Plaintiffs' Motion Seeks Reconsideration of the November 29, 2007
        Order and is Therefore Untimely and Improperly Asserts New
        Arguments ....................................................................................... 9

    B.    All Relevant Considerations Weigh Against Dismissal of Counts 1-8
        Without Prejudice ............................................................................ 11

        1.    Plaintiffs Did Not Act Diligently in Bringing Their Motion ............... 11

        2.    Plaintiffs Acted Vexatiously in Bringing Their Motion ....................... 13

        3.    The Extensive Discovery Precludes Dismissal Without
                Prejudice ............................................................................... 15

        4.    Defendants Would Have to Duplicate the Expense of this
                Litigation .............................................................................. 18

        5.    Plaintiffs' Explanation Does Not Justify Dismissal Without
                Prejudice ............................................................................... 20

    C.    Counts 1 and 2 are the Equivalent of Compulsory Counterclaims and
        Cannot be Withdrawn Without Prejudice ............................................ 20

II.    COUNTS 1 AND 2 OF THE SAC SHOULD BE DISMISSED WITH
       PREJUDICE BECAUSE PLAINTIFFS' COUNSEL AGREED TO
       WITHDRAW THEM WITH PREJUDICE ...................................................................22

III.   CONCLUSION....................................................................................................23

# TABLE OF AUTHORITIES

CASES

*Arthur the Dog v. U.S. Merchandise Inc.*,
    No. 05 Civ. 0958 (JFB), 2007 WL 2493427 (E.D.N.Y. Aug. 29, 2007) ..................................22

*Atlas v. Wood*,
    33 Misc. 2d 543, 226 N.Y.S.2d 43 (Sup. Ct. Nassau County) ................................................22

*Banco Central de Paraguay v. Paraguay Humanitarian Found., Inc.*,
    No. 01 Civ. 9649 (JFK), 2006 U.S. Dist. LEXIS 87093 (S.D.N.Y. Nov. 29, 2006) .........13, 17

*BD ex. rel. Jean Doe v. DeBuono*,
    193 F.R.D. 123 (S.D.N.Y. 2000) ...................................................................................15, 19

*Bosteve Ltd. v. Murauszwki*,
    110 F.R.D. 257 (E.D.N.Y. 1986) ..............................................................................12, 16, 21

*Catanzano v. Wing*,
    277 F.3d 99 (2d Cir. 2001) ..............................................................................................17

*Comunidad Autonoma del Pais Vasco v. Am. Bureau of Shipping, Inc.*,
    No. 04 Civ. 671 (LTS), 2006 U.S. Dist. LEXIS 55822 (S.D.N.Y. Aug. 4, 2006) .............15, 18

*D'Alto v. Dahon California, Inc.*
    100 F.3d 281 (2d Cir. 1996) ............................................................................................13

*Deere & Co. v. MTD Holdings, Inc.*,
    No. 00 Civ. 5936 (LMM), 2004 U.S. Dist. LEXIS 11707 (S.D.N.Y. June 23, 2004) .............19

*Del Greco v. CVS Corp.*,
    354 F. Supp. 2d 381 (S.D.N.Y. 2005) ..............................................................................11

*Galasso v. Eisman, Zucker, Klein & Ruttenberg*,
    310 F. Supp. 2d 572 (S.D.N.Y. 2004) ...............................................................11, 13, 16, 20

*Guzman v. Hazemag U.S.A., Inc.*,
    145 F.R.D. 308 (E.D.N.Y. 1993) ......................................................................................12

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
    241 F.R.D. 182 (S.D.N.Y. 2007) ......................................................................................10

*In re Health Mgmt. Svs. Inc. Secs. Litg.*,
    113 F. Supp. 2d 613 (S.D.N.Y. 2000) ...............................................................................9

*Maderia v. Affordable Housing Found. Inc.*,
    No. 01 Civ. 8779 (CM) (GAY), 2007 WL 4116580 (S.D.N.Y. Nov. 16, 2007) ..................10

*Manti Transp., Inc. v. Assoc. Commercial Corp.*,
　No. 00 Civ. 6807 (FB), 2002 WL 369807 (E.D.N.Y. March 8, 2002) ..................................13

*Minn. Mining & Mfg. Co. v. Barr Labs., Inc.*,
　289 F.3d 775 (Fed. Cir. 2002) ..........................................................................................13

*National Union Fire Ins. Co. of Pittsburgh, PA v. Stroh Cos., Inc.*,
　265 F.3d 97 (2d Cir. 2001) ................................................................................................10

*On Line Power Techs., Inc. v. Square D Co.*,
　No. 03 Civ. 4860 (CM), 2004 U.S. Dist. LEXIS 9655 (S.D.N.Y. Apr. 30, 2004) .................22

*Pac. Elec. Wire & Cable Co. v. Set Top Int'l Inc.*,
　No. 03 Civ. 9623 (JFK), 2005 WL 578916 (S.D.N.Y. March 11, 2005) ......................... 17-19

*Phillips USA, Inc., v. Allflex USA, Inc.*,
　77 F.3d 354 (10th Cir. 1996) ............................................................................................13

*Pizzuli v. The Northwestern Mut. Life Ins. Co.*,
　No. 05 Civ. 1889 (LAP), 2006 WL 490097 (S.D.N.Y. Feb. 28, 2006) ..................................21

*Smith v. Empire of Am. Realty Credit Corp.*,
　No. 94 Civ. 0786 (JTE), 1999 U.S. Dist. LEXIS 1444 (W.D.N.Y. Jan. 11, 1999) .................17

*Thomas v. New York State Dep't of Correctional Servs.*,
　No. 00 Civ. 7163 (NRB), 2004 WL 1871060 (S.D.N.Y. Aug. 20, 2004) .........................17, 19

*United States v. Aquavella*,
　615 F.2d 12 (2d Cir. 1979)............................................................................................. 20-21

*Viada v. Osaka Health Spa, Inc.*,
　458 F. Supp. 2d 100 (S.D.N.Y. 2005).................................................................................17

*Vlassis v. Corines*,
　247 A.D.2d 609, 669 N.Y.S.2d 361 (2d Dep't 1998) ...........................................................22

*Zagano v. Fordham University*,
　900 F.2d 12 (2d Cir. 1990)......................................................................................... Passim

## STATUTES

C.P.L.R. § 2104..................................................................................................................22

Cal. Civ. Code § 3344.1 .....................................................................................................10

N.Y. Gen. Bus. Law §§ 349-50 ........................................................................................ 4-5

**OTHER AUTHORITIES**

4 Richard A. Lord, *Williston on Contracts* § 8:43 (4th ed. 2007) ...................................................22

Fed. R. Civ. P. 13(a) ...........................................................................................................................20

Fed. R. Civ. P. 41(a)(2).................................................................................................................7, 11

Fed. R. Civ. P. 26(a)(1).........................................................................................................................7

Local Rule 6.3 ............................................................................................................................9-10, 14

Defendants Marilyn Monroe LLC ("MMLLC") and CMG Worldwide, Inc. ("CMG") respectfully submit this memorandum of law in opposition to Plaintiffs' Motion to Withdraw Counts 1-8 of Their Second Amended Complaint Without Prejudice and in support of Defendants' Cross-Motion to Dismiss Counts 1 and 2 of Plaintiffs' Second Amended Complaint With Prejudice.

## PRELIMINARY STATEMENT

Defendants have spent hundreds of thousands of dollars and countless attorney and paralegal hours preparing and responding to dozens of document requests and interrogatories, reviewing and producing over sixty-five thousand pages of documents, reviewing over a thousand pages of documents produced by Plaintiffs, preparing for depositions, appearing at numerous pretrial conferences, and briefing a lengthy motion to dismiss. Now, after two-and-a-half years of litigation, Plaintiffs seek to withdraw eight of their nine causes of action *without prejudice*, so they can be reasserted in some future litigation, thereby forcing Defendants to duplicate their efforts spent in this action.

Moreover, after Defendants' September 2007 motion to dismiss demonstrated that Plaintiffs' Counts 3-8 failed to state a claim or were otherwise barred by black-letter law, and after Defendants agreed to withdraw that motion only if Plaintiffs dismissed those claims *with prejudice*, the Court dismissed Counts 3-8 *with prejudice*. Plaintiffs' present motion therefore seeks reconsideration of that order, but woefully fails to meet the heightened standard required to overturn a prior court order. It is also clearly untimely under this Court's Local Rules.

Counts 1 and 2 should be dismissed with prejudice because Plaintiffs' counsel agreed in writing to withdraw them *with prejudice*, and because they have been pending far too long, and

have been the subject of far too much discovery for Plaintiffs to withdraw them as if they were never part of this case.

## STATEMENT OF FACTS

### A.  The Indiana and New York Actions

Defendants initiated this action on March 23, 2005 by filing a complaint in the Southern District of Indiana (the "Indiana Action") against Plaintiff Shaw Family Archives, Ltd. ("SFA"), SFA's licensing agent Bradford Licensing Associates ("Bradford"), and others.  In the Indiana Action, MMLLC and CMG asserted claims for, among other things, violation of their right of publicity in the name, image and likeness of the late actress Marilyn Monroe, and for a declaratory judgment that Plaintiff SFA does not possess valid and enforceable copyrights to photographs of Marilyn Monroe taken by Sam Shaw.  (Declaration of Christopher Serbagi, Esq. dated Dec. 16, 2007 ("Serbagi Decl.") Ex. A, ¶¶ 24-27, 49-52; Ex. B, ¶¶ 37-40, 74-77.)

Shortly after Defendants commenced the Indiana Action, on April 19, 2005 Plaintiffs filed a complaint in this Court (the "New York Action").  (Serbagi Decl., Ex. C)  The Complaint asserted a claim for copyright infringement based on Defendants' display of photographs of Marilyn Monroe taken by Sam Shaw on a website and coffee mug, as well as other unspecified infringements.  (*Id.* at ¶¶ 15-26.)  The Complaint also sought a judgment declaring that Defendants own no right of publicity in Monroe's name and likeness and that Plaintiffs hold valid copyrights to the Shaw photographs (*id.* at ¶¶ 27-38).

Plaintiffs filed an Amended Complaint dated May 9, 2005, which repeated the copyright infringement claim and warned that Defendants displayed "other copies of plaintiffs' copyright protected photographic works as part of defendants' advertising activities, or have otherwise offered to or have licensed others to make copies of the Shaw Collection" and that "defendants may be advertising, offering for sale, and are selling other copyright protected works of the Shaw

Collection in addition to those set forth above." (Serbagi Decl., Ex. D at ¶¶ 15-26.)  The

Amended Complaint also added claims for tortious interference with contractual relations and

tortious interference with prospective economic advantage ("Tortious Interference Claims")

based on Defendants' alleged representations to Plaintiffs' licensees and potential licensees that

Defendants owned the right of publicity in Marilyn Monroe's name and likeness and that

Plaintiffs could not license Shaw's photographs of Monroe without Defendants' permission.  (*Id.*

at ¶¶ 39-48.)

On July 5, 2005 Plaintiff SFA moved to dismiss the Indiana Action or, in the alternative,

to transfer it to this Court, and the next day this Court stayed the New York Action pending a

determination of that motion (Order dated July 6, 2005, Dkt. No. 24).  In March 2006, the

Indiana Action was transferred to this Court, and the New York Action was removed from the

suspense calendar (Order dated March 37, 2006 Dkt. No. 25).  In May 2006, the Indiana Action

and the New York Action were consolidated for all purposes.  (Order dated May 2, 2006, Dkt.

No. 30.)

A year later, on May 2, 2007, the Court granted summary judgment dismissing

Defendants' claim for violation of Marilyn Monroe's right of publicity ("May 2, 2007 Order").

That decision did not address any of the parties' other claims, nor was discovery stayed while the

motion was being briefed.[1]

## B.  Plaintiffs' Second Amended Complaint

More than *two years* after the May 9, 2005 Amended Complaint, Plaintiffs filed a Second

Amended Complaint ("SAC") dated August 8, 2007.  (Serbagi Decl., Ex. L.)  Count 1 of the

---

[1] On May 14, 2007, in a parallel litigation between Defendants and another entity claiming interests in photographs of Monroe, Judge Morrow in the Central District of California ruled that Defendants had no standing to assert Monroe's right of publicity. *The Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, No. 05 Civ. 2200 (MMM), (C.D. Cal. May 15, 2007) ("California Order").

SAC repeats Plaintiffs' copyright infringement claim based on the alleged sale of a coffee mug and a purse bearing Shaw's photographs of Marilyn Monroe. (*Id.* at ¶¶ 15-22, 36.) Count 2 of the SAC alleges contributory copyright infringement based on Defendants' alleged authorization of the display and sale of other consumer items bearing Shaw photos of Monroe. (*Id.* at ¶¶ 15-22, 38.) (Counts 1 and 2 are referred to as the "Copyright Claims").

Count 3 repeats the claim for a declaration that Defendants own no intellectual property rights in Monroe's image or likeness. (*Id.* at ¶ 40.)

Counts 4 and 5 repeat the Tortious Interference Claims from the May 9, 2005 Amended Complaint (*id.* at ¶¶ 41-44), and are based on the same allegations, *i.e.,* that Defendants represented to Plaintiffs' licensees and potential licensees that Defendants own Marilyn Monroe's right of publicity (*id.* at ¶¶ 23-31).

Counts 6-8 purport to assert claims for false designation of origin, false description and unfair competition under Section 43(a) of the Lanham Act, for unfair competition under New York common law, and for unfair trade practices under N.Y. Gen. Bus. Law §§ 349-50, respectively. (*Id.* at ¶¶ 45-53) (Counts 6-8 are referred to as the "Unfair Competition Claims"). In support of the Unfair Competition Claims, Plaintiffs allege that Defendants continued to represent that they have rights to Marilyn Monroe's image despite the May 2, 2007 Order and the California Order. (*Id.* at ¶¶ 25-34.)[2] The Unfair Competition Claims are therefore a mere

---

[2] The SAC also alleged that Defendants lobbied the New York and California legislatures for laws that would "eviscerate the New York and California Orders" and that Defendants' representations have caused Plaintiffs' licenses and prospective licensees "anxiety" that their present and expected contracts would be nullified by new legislation. (Serbagi Decl., Ex. L ¶¶ 32, 34.) However, Plaintiffs later acknowledged in their opposition to Defendants' September 2007 motion to dismiss that "Not a single cause of action (including the ones recently withdrawn) is based on Defendants' legitimate lobbying efforts, which are obviously constitutionally protected." (Dickstein Decl., Ex. B, pp. 2-3.) Moreover, on November 28,

slight expansion of the Tortious Interference Claims alleged in the May 9, 2005 Amended
Complaint.

Count 9 seeks a declaration that Monroe died a New York domiciliary (*id.* at ¶ 55) and
plays no part in the present motions.

### C. Defendants' Motion to Dismiss Counts 3-8 of the SAC and the November 29, 2007 Order

On September 4, 2007, Defendants moved to dismiss Counts 3-8 of the SAC.
(Defendants' Memorandum of Law in Support of Motion to Dismiss Plaintiffs' SAC and for a
Limited Stay of Discovery, Declaration of Tal Dickstein dated January 16, 2008 ("Dickstein
Decl."), Ex. A.)  The motion established that (i) the Tortious Interference Claims and the Unfair
Competition Claims are barred by the *Noerr-Pennington* Doctrine to the extent they are based on
Defendants' constitutionally protected lobbying and pre-litigation activities, (ii) the Tortious
Interference Claims fail to allege elements necessary to state a claim, (iii) the Unfair Competition
Claims fail to allege enough facts to state a claim, and (iv) Count 8 (for unfair trade practices
under N.Y. Gen. Bus. Law §§ 349-50) fails because Plaintiffs do not allege any impact on
consumers.  (*Id.* at 1-22.)

Plaintiffs requested and obtained three extensions of time to respond to Defendants'
motion to dismiss.  (Memorandum Endorsements dated September 14, 2007, September 28, 2007
and October 22, 2007, Dkt. Nos. 128, 130, 131.)  On November 6, 2007, when they finally
responded, Plaintiffs chose not to oppose the motion, instead stating "we have stipulated with the
Defendants to withdraw the third through eight causes of action in the Second Amended
Complaint."  (Memorandum in Support of Plaintiffs' Opposition to Defendants' Motion to

---

2007, Magistrate Judge Fox denied Plaintiffs' requests for documents related to Defendants'
lobbying activities.  (Minute Order dated November 28, 2007.)

Dismiss, Dickstein Decl., Ex. B p. 1.)[3]  MMLLC later confirmed that "Defendants have agreed

to stipulate to such withdrawal so long as it is <u>with prejudice</u> since, as established in MMLLC's

moving papers, black letter law requires the dismissal of the subject claims and further Plaintiffs

have received ample discovery in this matter and should be prepared to go forward with the

subject claims if there is any merit to them."  (November 28, 2007 Letter from Paula Colbath to

Court, Dickstein Decl., Ex. C.)

      The Court then ordered that "The Third through Eighth Causes of Action in the complaint

are dismissed with prejudice."  ("November 29, 2007 Order") (Dickstein Decl., Ex. D.)

### D.  Plaintiffs Agree to Dismissal of their Copyright Claims With Prejudice and Seek Reconsideration of The November 29, 2007 Order

      On December 3, 2007, Plaintiffs' counsel wrote to MMLLC's counsel that "Plaintiffs are

withdrawing their copyright infringement claim and we will stipulate with prejudice."  (Serbagi

Decl., Ex. bb p. 1)  Plaintiffs later reversed course, however, and sought to withdraw their

Copyright Claims without prejudice in a letter dated December 6, 2007.  (Serbagi Decl., Ex. cc p.

2.)

      Plaintiffs' December 6 letter also noted that Plaintiffs would submit a letter brief asking

the Court to "reconsider" its decision to dismiss Counts 3-8 with prejudice.  (*Id.*)  On December

10, 2007, Plaintiffs submitted their letter brief, which was rejected by the Court,[4] and, along with

Plaintiffs' December 6 letter, was considered a nullity.  (December 12, 2007 Memorandum

Endorsement, Dickstein Decl., Ex. E.)

---

   [3] Plaintiffs did oppose dismissal of Count 9, which seeks a declaratory judgment that
Monroe died a New York domiciliary.  That claim plays no part in the pending motions.

   [4] The Court's Individual Practices § 2.D. state that "The Court does not accept 'letter
motions' unless that procedure has been authorized in advance."

Finally, on December 17, 2007, Plaintiffs served a Notice of Motion to Withdraw Counts 1-8 of the Plaintiffs' Second Amended Complaint Pursuant to Fed. R. Civ. P. 41(a)(2), (Dickstein Decl. ¶ 7, Ex. BB), yet made no mention of the November 29, 2007 Order.

### E. Discovery

Beginning in the summer of 2006 with the initial Rule 26(a)(1) disclosures (Dickstein Decl., Exs. F, G), and continuing through the end of 2007, Defendants actively pursued, and responded to, discovery regarding Counts 1-8 of Plaintiffs' SAC.

MMLLC propounded three sets of document requests, which included seventy-nine separate requests. (MMLLC's First Set of Document Requests to Plaintiffs dated December 28, 2006, Dickstein Decl., Ex. H; MMLLC's Second Set of Document Requests to Plaintiffs dated July 17, 2007, Dickstein Decl., Ex. I; MMLLC's Third Set of Document Requests to Plaintiffs dated October 30, 2007, Dickstein Decl., Ex. J.) Plaintiffs indicated that they would produce documents responsive to many of those requests that are relevant to Counts 1-8. (Plaintiffs' Responses and Objections to MMLLC's First Set of Document Requests dated February 19, 2007, Dickstein Decl., Ex. K, Nos. 19-22; Plaintiffs' Responses and Objections to MMLLC's Second Set of Document Requests dated August 24, 2007, Dickstein Decl., Ex. L, Nos. 1, 2, 8, 10, 11; Plaintiffs' Responses and Objections to MMLLC's Third Set of Document Requests dated November 29, 2007, Dickstein Decl., Ex. M, Nos. 11-22.) Many other requests in MMLLC's Third Set of Document Requests were also relevant to Counts 1-8, although Plaintiffs refused to produce documents responsive to those requests. (Dickstein Decl., Ex. M, Nos. 23-32.)

As Plaintiffs' acknowledge, in response to Plaintiffs' document requests, Defendants produced approximately 65,000 pages of documents. (Serbagi Decl. ¶ 12.) Many of those documents were responsive to Plaintiffs' document requests targeted at Counts 1-8. (Plaintiffs'

First Demand for Production of Documents dated October 8, 2006, Dickstein Decl., Ex. N, and

MMLLC's Responses and Objections dated December 26, 2006, Dickstein Decl., Ex. O, No. 21;

Plaintiffs' Second Set of Document Requests to Defendants dated July 16, 2007, Dickstein Decl.,

Ex. P, and Defendants' Responses and Objections dated August 27, 2007, Dickstein Decl., Ex.

Q, Nos. 1, 2, 6, 7.)

     MMLLC also propounded two sets of interrogatories, which included twenty five

separate questions, many of which are relevant to Counts 1-8. (MMLLC's First Set of

Interrogatories to Plaintiffs dated January 11, 2007, Dickstein Decl., Ex. R, Nos. 4, 9, 11, 12, 14;

MMLLC's Second Set of Interrogatories to Plaintiffs dated October 30, 2007, Dickstein Decl.,

Ex. S, Nos. 1-11.). Plaintiffs identified hundreds of pages of documents as being responsive to

those interrogatories. (Plaintiffs' Responses and Objections to MMLLC's First Set of

Interrogatories dated March 2, 2007, Dickstein Decl., Ex. T; Plaintiffs' Responses and

Objections to MMLLC's Second Set of Interrogatories dated November 30, 2007, Dickstein

Decl., Ex. U.)

     MMLLC responded to several interrogatories propounded by Plaintiffs targeted at Counts

1-8. (Plaintiffs' First Set of Interrogatories to Defendants dated February 1, 2007, Dickstein

Decl., Ex. V, and Defendants' Responses and Objections to Plaintiffs' First Set of Interrogatories

dated March 19, 2007, Dickstein Decl., Ex. W, Nos. 1-3, 6-8, 16-17).

     All of the above discovery was conducted under Court-ordered discovery deadlines,[5] and

the parties appeared for seventeen separate pretrial conferences before Magistrate Judge Fox

(Dickstein Decl. ¶ 30.)

---

    [5] On May 29, 2006, the Court issued a Case Management Plan, which ordered that all
discovery be completed by October 27, 2006 and that the Joint Pre-Trial Order be submitted by
November 30, 2006. (Dickstein Decl., Ex. X.). Those dates were extended to February 27, 2007

In the relatively short period of time that MMLLC's present counsel has been involved in the case, MMLLC has spent hundreds of thousands of dollars, and hundreds of attorney and paralegal hours, preparing and responding to discovery, much of which concerned Counts 1-8 of the SAC. (Dickstein Decl. ¶ 31.)

## ARGUMENT

I. **PLAINTIFFS' MOTION TO WITHDRAW COUNTS 1-8 OF THEIR SECOND AMENDED COMPLAINT WITHOUT PREJUDICE SHOULD BE DENIED**

### A. Plaintiffs' Motion Seeks Reconsideration of the November 29, 2007 Order and is Therefore Untimely and Improperly Asserts New Arguments

Following Plaintiffs' November 6, 2007 response to Defendants' motion to dismiss, in which Plaintiffs expressly withdrew Counts 3-8 (Dickstein Decl., Ex. B p. 1), the November 29, 2007 Order dismissed those claims *with prejudice* (Dickstein Decl., Ex. D). Therefore, to the extent it seeks withdrawal of Counts 3-8 *without prejudice*, Plaintiffs' present motion is plainly a motion for reconsideration of the November 29, 2007 Order. Indeed, Plaintiffs recognized that fact when they wrote that they would "ask the Court to *reconsider* its decision to dismiss Counts three through eight 'with prejudice.'" (Serbagi Decl., Ex. cc p. 2) (emphasis added).

Reconsideration of a previous court order is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Svs. Inc. Secs. Litg.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citations and quotation omitted). Local Rule 6.3 therefore requires that "[a] notice of motion for reconsideration or reargument of a court order determining a motion shall be served within ten (10) days after the entry of the court's determination of the original motion[.]"

and March 30, 2007, respectively, by Memo Endorsement dated August 3, 2006, (Dickstein Decl., Ex. Y), and again to November 30, 2007 and January 15, 2008, respectively, by Magistrate Judge Fox's June 15, 2007 Scheduling Order (Dickstein Decl., Ex. Z). On November 5, 2007, the Court ordered that all discovery be completed by December 31, 2007, and set a trial date of March 2008. (Dickstein Decl., Ex. AA.)

Local Rule 6.3 further requires that "[t]here shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." Hence, on a Local Rule 6.3 motion, "a party may not advance new facts, issues, or arguments not previously presented to the Court." *National Union Fire Ins. Co. of Pittsburgh, PA v. Stroh Cos., Inc.*, 265 F.3d 97, 115 (2d Cir. 2001) (quoting *Polsby v. St. Martin's Press*, No. 97 Civ. 690 (MBM), 2000 U.S. Dist. LEXIS 596, at *2 (S.D.N.Y. Jan.18, 2000)); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 241 F.R.D. 182, 183 (S.D.N.Y. 2007) (on a motion for reconsideration, "[t]he court's review 'is narrow and applies only to already-considered issues; new arguments and issues are not to be considered'") (quoting *Morales v. Quintiles Transnat'l Corp.*, 25 F. Supp. 2d 369, 372 (S.D.N.Y. 1998)).

Plaintiffs' Notice of Motion was not served until December 17, 2007 (Dickstein Decl. ¶ 7),[6] more than ten business days after entry of the November 29, 2007 Order. Plaintiffs' motion should therefore be denied. *See Maderia v. Affordable Housing Found. Inc.*, No. 01 Civ. 8779 (CM) (GAY), 2007 WL 4116580, at *2 (S.D.N.Y. Nov. 16, 2007) (denying a motion for reconsideration as "clearly untimely").

Furthermore, *all* of the arguments presented in Plaintiffs' present motion could have been raised prior to the November 29, 2007 Order in Plaintiffs' opposition to Defendants' motion to dismiss. All three events which supposedly compel Plaintiffs to seek withdrawal without prejudice – the August 2, 2007 death of Bradford's principal, the October 10, 2007 enactment of Cal. Civ. Code § 3344.1, and the October 19, 2007 death of Larry Shaw – occurred at least two weeks before Plaintiffs submitted their November 6, 2007 opposition papers, which expressly

---

[6] Plaintiffs cannot argue that their December 6, 2007 letter to the Court constitutes a timely Notice of Motion because the Court considered that letter a nullity. (Dickstein Decl., Ex. E.)

withdrew Counts 3-8 with no mention of withdrawal without prejudice.[7] If Plaintiffs truly

desired dismissal without prejudice, they would have argued for it in their November 6, 2007

opposition papers. Plaintiffs' motion for reconsideration of the November 29, 2007 Order's

dismissal of Counts 3-8 with prejudice should therefore be denied. *See Del Greco v. CVS Corp.*,

354 F. Supp. 2d 381, 385 (S.D.N.Y. 2005) ("[T]his is a *new* argument advanced only in the

Motion for Reconsideration. The new argument can provide no basis for review of my prior

decision."), *aff'd*, 164 Fed. Appx. 75 (2d Cir. 2006).

### B.    All Relevant Considerations Weigh Against Dismissal of Counts 1-8 Without Prejudice

Rule 41(a)(2) provides that "an action may be dismissed at the plaintiff's request only by

court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). "Voluntary

dismissal without prejudice is thus not a matter of right" *Zagano v. Fordham University*, 900

F.2d 12, 14 (2d Cir. 1990), and "will be allowed only if the defendant will not be prejudiced

thereby" *Galasso v. Eisman, Zucker, Klein & Ruttenberg*, 310 F. Supp. 2d 572 (S.D.N.Y. 2004)

(citing *D'Alto v. Dahon California, Inc.* 100 F.3d 281, 283 (2d Cir. 1996)). Here, all five factors

identified in *Zagano*, 900 F.2d at 14, weigh against dismissal without prejudice.

### 1.    Plaintiffs Did Not Act Diligently in Bringing Their Motion

Although Plaintiffs are *technically* correct that only three of the eight claims they seek to

withdraw were included in their prior complaint, *all* eight of the claims have either been pending

in substantially the same form since at least May 2005, or are based on the same facts as claims

that have been pending that long.

---

[7] Plaintiffs' September 27, 2007 letter did not, as Plaintiffs claim, request permission to amend the SAC "to withdraw counts three and four." (Pls. Br. at 4.) It stated only vaguely that "Plaintiffs intent to amend their Second Amended Complaint in a manner that will clarify the issues that remain for trial" and that Plaintiffs intended to "drop certain causes of action, add one cause of action, and to clarify the existing causes of action." (Serbagi Decl., Ex. N.)

The Copyright Claims, the Tortious Interference Claims, and the claim for a declaration that Defendants own no Marilyn Monroe intellectual property rights, have all been pending at least since the May 9, 2005 Amended Complaint. (Serbagi Decl., Ex. D ¶¶ 15-48.) Although the Copyright Claims were expanded slightly in the SAC to include contributory infringement and reference to other consumer goods bearing Monroe's image, the prior 2005 complaints alleged that Defendants had infringed Plaintiffs' copyrights in other ways. (Serbagi Decl., Exs. C, D ¶¶ 22-23.) Thus, Defendants' supposed infringements of Plaintiffs' copyrights have been front and center in this litigation since day one. The Unfair Competition Claims are based on the same allegations as the Tortious Interference Claims, *i.e.*, Defendants' alleged representations to Plaintiffs' licensees and potential licensees that they owned Monroe's right of publicity. (Serbagi Decl, Ex. D. ¶¶ 39-48, L ¶¶ 23-31.) Therefore, the facts underlying the Unfair Competition Claims have also been at issue since May 2005.

As a result, Plaintiffs have had more than two-and-a-half years to investigate and take discovery as to Counts 1-8. If there were any merit to them, Plaintiffs would not have sought their dismissal just prior to the close of discovery. Plaintiffs' eleventh-hour attempt to withdraw eight out of their nine causes of action without prejudice cannot be considered diligent. *See Guzman v. Hazemag U.S.A., Inc.*, 145 F.R.D. 308 (E.D.N.Y. 1993) (denying motion to dismiss without prejudice even though the case had been pending for only one year, plaintiff did not wait until the eve of trial to move to dismiss, and the parties appeared for only three discovery conferences); *Bosteve Ltd. v. Murauszwki*, 110 F.R.D. 257, 259 (E.D.N.Y. 1986) (Scheindlin, M.J.) (denying motion to dismiss without prejudice although action had been pending for less than two years) (cited in *Zagano*, 900 F.2d at 14).

### 2.    Plaintiffs Acted Vexatiously in Bringing Their Motion

In *Galasso*, 310 F. Supp. 2d at 572, this Court denied a motion for voluntary dismissal without prejudice where "defendant has brought on a motion for summary judgment, to which plaintiff has made a patently inadequate response and which is sub judice." The Court observed that "[i]t is quite clear that plaintiff's motive in bringing on this belated motion is to avoid an adverse decision that will forever bind him. But a party should not be permitted to avoid the prospect of an adverse decision on a dispositive motion by dismissing a claim without prejudice." *Id.* (citing *Zagano*, 900 F.2d at 14).

Numerous other courts have also recognized that a party cannot withdraw claims without prejudice in the face of a dispositive motion. *See, e.g.*, *Minn. Mining & Mfg. Co. v. Barr Labs., Inc.*, 289 F.3d 775, 783-84 (Fed. Cir. 2002) (avoidance of an adverse judgment is not a legitimate justification for dismissal without prejudice); *Phillips USA, Inc., v. Allflex USA, Inc.*, 77 F.3d 354, 358 (10th Cir. 1996) ("We agree with the district court that a party should not be permitted to avoid an adverse decision on a dispositive motion by dismissing a claim without prejudice."); *Manti Transp., Inc. v. Assoc. Commercial Corp.*, No. 00 Civ. 6807 (FB), 2002 WL 369807, at *5 (E.D.N.Y. March 8, 2002) ("The principle announced in *Phillips* is particularly applicable here, where the issue before the Court on the dispositive motion is a clear matter of law."); *cf. D'Alto*, 100 F.3d at 283 ("[W]hen the cause has proceeded so far that the defendant is in a position to demand on the pleadings an opportunity to seek affirmative relief he would be prejudiced by being remitted to a separate action."); *Banco Central de Paraguay v. Paraguay Humanitarian Found., Inc.*, No. 01 Civ. 9649 (JFK), 2006 U.S. Dist. LEXIS 87093, at *20 (S.D.N.Y. Nov. 29, 2006) (quoting *Galasso*, 310 F. Supp. 2d at 572).

As in *Galasso*, the Plaintiffs here seek voluntary dismissal to avoid the effect of a decision on Defendants' dispositive motion. Defendants' September 4, 2007 Motion to Dismiss

demonstrated that Counts 3-8 completely failed to state a claim or were otherwise barred by controlling black letter law (Dickstein Decl., Ex. A. pp.1-22),[8] and Defendants later agreed to withdrawal of Counts 3-8 "so long as it is <u>with prejudice</u>" (November 28, 2007 letter from Paula Colbath to Court, Dickstein Decl., Ex. C) (emphasis in original).

Plaintiffs' had over two months in which to prepare a meritorious response to Defendants' September 2007 motion. However, recognizing that Counts 3-8 were unsupported by law or fact, on November 6, 2007 Plaintiffs chose to withdraw those claims. (Dickstein Decl., Ex. B.) Plaintiffs should not now be allowed to withdraw them without prejudice so as to avoid a decision on their merits and to threaten Defendants with re-litigation in the future.

The Court should also consider Plaintiffs' attempt to circumvent Local Rule 6.3's requirement that motions for reconsideration be served within 10 days after entry of the prior order. Plaintiffs' December 6, 2007 letter acknowledged that their motion to withdraw Counts 3-8 would ask the court to "*reconsider* its decision to dismiss Counts three through eight 'with prejudice'" (Serbagi Decl., Ex. cc p. 2) (emphasis added), and MMLLC's December 11, 2007 letter called attention to the fact that Plaintiffs sought "*reconsideration* of Your Honor's November 29, 2007 Order" (Serbagi Decl., Ex. dd p. 2) (emphasis added). Nevertheless, Plaintiffs chose to disguise the fact that their present motion seeks reconsideration of a prior court order. Indeed, there is not a *single* reference to the November 29, 2007 Order or to Local Rule 6.3 anywhere in Plaintiffs' brief. Omission of such a recent, and obviously controlling Court Order cannot be attributed to mere inadvertence.

---

[8] Defendants hereby reassert and incorporate by reference their arguments as to why Counts 3-8 should be dismissed with prejudice. (Dickstein Decl., Ex. A. pp.1-22.)

### 3.     The Extensive Discovery Precludes Dismissal Without Prejudice

"Courts in the Second Circuit have placed primary importance on this factor, noting that

the primary purpose of a *Zagano* analysis is to 'determin[e] whether a case has proceeded so far

that dismissing it in order for the plaintiff to start a separate action would prejudice the

defendant.'" *Comunidad Autonoma del Pais Vasco v. Am. Bureau of Shipping, Inc.*, No. 04 Civ.

671 (LTS), 2006 U.S. Dist. LEXIS 55822, at *3 (S.D.N.Y. Aug. 4, 2006) (quoting *D'Alto*, 100

F.3d at 238)).  "Thus, the focus of the analysis on a motion for voluntary dismissal is the

prejudice to the defendant."  *BD ex. rel. Jean Doe v. DeBuono*, 193 F.R.D. 123 (S.D.N.Y. 2000).

Despite Plaintiffs' attempt to identify isolated time periods during the two-and-a-half

year history of this case where no discovery was exchanged, Defendants have, in fact, expended

substantial time, money and effort litigating and conducting discovery targeted at Counts 1-8.

Those efforts include the following:

- Briefing a comprehensive motion to dismiss Counts 3-9.  (Dickstein Decl., Ex. A.)

- Responding to three sets of document requests, including requests that are directly relevant to Counts 1-8 of the SAC.  (Dickstein Decl., Ex. O, No. 21; Ex. Q, Nos. 1, 2, 6, 7.)

- Producing approximately 65,000 documents in response to Plaintiffs' document requests. (Serbagi Decl. ¶ 12.)

- Propounding three sets of document requests, including at least thirty-one separate requests for documents that are directly relevant to Counts 1-8.  (Dickstein Decl., Ex. H, Nos. 19-22; Ex. I, Nos. 1, 2, 8, 10, 11; Ex. J, Nos. 11-32.)

- Responding to three sets of interrogatories, including eight interrogatories that are directly relevant to Counts 1-8.  (Dickstein Decl., Ex. W, Nos. 1-3, 6-8, 16, 17.)

- Propounding two sets of interrogatories, including sixteen interrogatories that are directly relevant to Counts 1-8, (Dickstein Decl., Ex. R, Nos. 4, 9, 11, 12, 14; Ex. S, Nos. 1-11), and reviewing hundreds of pages of documents Plaintiffs identified in response to those interrogatories (Dickstein Decl., Exs. T, U.)

- Conducting discovery and preparing to defend Counts 1-8 while a discovery deadline and a date for the submission of the Pre-Trial Order have been set since May 29,

2006, and a trial date has been set since November 5, 2007. (Dickstein Decl., Exs. X, Y, Z, AA.)

- Appearing for seventeen pretrial status conferences before Magistrate Judge Fox. (Dickstein Decl. ¶ 30.)

In sum, although there may have been certain periods of time when no discovery took place and some of the discovery that did take place was focused on Count 9 of the SAC, over the course of this litigation Defendants have engaged in substantial discovery and motion practice as to Counts 1-8. *See Zagano*, 900 F.2d at 14 ("Under any test, the motion was made far too late. The action had been pending for over four years, during which it was contested vigorously, *if sporadically*, and extensive discovery had taken place.") (emphasis added); *Comunidad Automoma del Pais Vasco*, 2006 WL 2254958, at * 4 (S.D.N.Y. Aug. 4, 2006) (substantial prejudice found where defendants engaged in motion practice and prepared a summary judgment motion and "very substantial (*albeit largely overlapping*) discovery has progressed in these consolidated actions") (emphasis added).

Indeed, during just the past few months that MMLLC's present counsel has been involved in the case, it has spent hundreds of thousands of dollars, and hundreds of attorney and paralegal hours, preparing and responding to discovery. (Dickstein Decl., ¶ 31.) *See Galasso*, 310 F. Supp. 2d at 572 (denying motion to dismiss without prejudice where "Defendant has expended considerable time, money ($20,000 in legal fees to date) and effort litigating this action."); *Bosteve Ltd.*, 110 F.R.D. at 259 (Scheindlin, M.J.) (stating that "defendant has expended substantial sums on pretrial discovery and counsel fees" where defendant asserted that it incurred approximately $12,000 in legal fees) (cited in *Zagano*, 900 F.2d at 14).

"Furthermore, it is not necessary for a case to be on at the eve of the trial for this factor to be found prejudicial, and courts have determined that completion of substantial discovery is sufficient." *Comunidad Automoma del Pais Vasco*, 2006 WL 2254958, at * 4 (S.D.N.Y. Aug. 4,

2006) (quotations omitted). Given all the resources MMLLC has spent litigating Counts 1-8, it would be seriously prejudiced by withdrawal of those claims without prejudice now that they have been pending for over two-and-a-half years, discovery is all but completed, and a trial date has been set. *See Pac. Elec. Wire & Cable Co. v. Set Top Int'l Inc.*, No. 03 Civ. 9623 (JFK), 2005 WL 578916, at *6 (S.D.N.Y. March 11, 2005) (prejudice factor favored defendants where the parties were only one-and-one-half weeks away from completing discovery, even though no trial date had been set and the matter had been pending for less than a year and-a-half).

This case stands in stark contrast to those cited by Plaintiffs where the action had not progressed significantly, and where little or no discovery took place. *See Catanzano v. Wing*, 277 F.3d 99, 110 (2d Cir. 2001) (dismissing without prejudice where the claim at issue "has thus far not been litigated and only halting discovery has taken place"); *Viada v. Osaka Health Spa, Inc.*, 458 F. Supp. 2d 100, 103 (S.D.N.Y. 2005) (permitting voluntary withdrawal where "the action is not near that point at which a date for trial might be fixed"); *Thomas v. New York State Dep't of Correctional Servs.*, No. 00 Civ. 7163 (NRB), 2004 WL 1871060, at *3 (S.D.N.Y. Aug. 20, 2004) (*pro se* plaintiff's motion to dismiss without prejudice granted where the length of discovery "represents but a minor fraction of time this action has been pending"); *Smith v. Empire of Am. Realty Credit Corp.*, No. 94 Civ. 0786 (JTE), 1999 U.S. Dist. LEXIS 1444, at *5 (W.D.N.Y. Jan. 11, 1999) (granting *pro se* plaintiff dismissal without prejudice where "only one document request and one deposition notice are referenced by the defendants"); *cf. Banco Central De Paraguay*, 2006 U.S. Dist LEXIS 87093, at *17-18 (S.D.N.Y. Nov. 29, 2006) ("Defendants have made no attempt to show that they have spent significant resources in discovery and preparing for trial").

In fact, this case is more like those cited in *Comunidad Autonoma del Pais Vasco* where courts dismissed claims *with prejudice*: "Those courts that have granted dismissal only with prejudice have done so in large part because the motion to dismiss was brought, if not at the eve of trial, at a point after substantial discovery had been completed and trial was near certain." 2006 WL 2254958, at *3 (S.D.N.Y. Aug. 4, 2006) (collecting cases).

### 4.    Defendants Would Have to Duplicate the Expense of this Litigation

If Counts 1-8 were dismissed without prejudice and later reasserted in a subsequent action, Plaintiffs could force Defendants to duplicate much of the discovery they have already provided in this action. *See Pac. Elec. Wire & Cable Co.,* 2005 WL 578916, at *6 (S.D.N.Y. Mar. 11, 2005) ("While some of the material discovered in this case might be usable, some might not. . . . . It would be extremely prejudicial for the Court to saddle Defendants with the risk of duplicative expenses now that Plaintiffs wish to discontinue with the option of re-filing either in this jurisdiction or elsewhere."). Defendants would also be forced to duplicate their efforts spent briefing the motion to dismiss, in order to adjust for any changes in the law or in Plaintiffs' allegations.

In addition, Plaintiffs are not the only parties with elderly principals. (Declaration of Edith Marcus dated December 14, 2007 ("Marcus Decl.") ¶ 3) ("SFA is owned by myself, my sister Meta Stevens and my sister-in-law Susan Shaw; all senior citizens.") MMLLC's principal, Anna Strasberg, is also a senior citizen. (Dickstein Decl. ¶ 32.) If Plaintiffs reasserted their claims in the future, it would be that much more difficult for her to effectively participate in the litigation. *See Zagano*, 900 F.2d at 14 (defendants would be prejudiced by dismissal without prejudice where, after two witnesses died and two others encountered poor health during the litigation, "the likelihood of additional substantial delays . . . might result in further loss of pertinent testimony through illness or death.").

Furthermore, depending on the outcome of the claims remaining in this action, Defendants may engage in much of the conduct at issue in Counts 1-8 of the SAC, *i.e.*, displaying photographs of Marilyn Monroe on websites or merchandise, notifying third parties of their rights in Marilyn Monroe's persona, and lobbying for legislative recognition of a postmortem Right of Publicity. Allowing Plaintiffs to threaten reassertion of Counts 1-8 would unreasonably chill those legitimate activities. *See Deere & Co. v. MTD Holdings Inc.*, No. 00 Civ. 5936 (LMM), 2004 U.S. Dist. LEXIS 11707, at *8-9 (S.D.N.Y. June 23, 2004) ("It is clear that MTD would be prejudiced if every time it manufactured a new product using green and yellow it was threatened with the revival of this litigation after defending its use of these colors for four years."); *Pac. Elec. Wire & Cable Co.,* 2005 WL 578916, at *6 (S.D.N.Y. Mar. 11, 2005) ("While 'the prospect of starting litigation all over again does not constitute legal prejudice,' there is no reason at this point to keep the threat of litigation hanging over Defendants' heads.") (quoting *D'Alto*, 100 F.3d at 283). Indeed, there is even more danger of prejudice here than in *Deere & Co.*, because Defendants' activities are constitutionally protected. (Dickstein Decl., Ex. A. pp. 8-16)

This is not the usual case where courts discount the prejudice a defendant would incur from re-litigation where claims are dropped by one plaintiff, but still asserted by others. *See, e.g.*, *Thomas*, 2004 WL 1871060, at *3 (S.D.N.Y. Aug. 20, 2004) ("assuming defendants continue to expend resources defending against the remaining plaintiff's claim, any additional expense resulting from Santos's refiling will be minimized if Santos can simply 'rejoin' the action."); *BD ex. rel. Jean Doe*, 193 F.R.D. at 124 (granting dismissal without prejudice as to one plaintiff and concluding that the resources defendants expended would not be wasted where "discovery and pre-trial activity in this case has been more or less identical for all of the six

plaintiffs in this case") (citing *Allen v. Indeck Corinth Ltd. Partnership*, 161 F.R.D. 233, 236 (N.D.N.Y. 1995) for the proposition that "defendants' effort and expense in trial preparation would not be wasted where several plaintiffs remained in action.").

### 5.    Plaintiffs' Explanation Does Not Justify Dismissal Without Prejudice

The recent deaths of Larry Shaw and Bradford's principal cannot justify withdrawal of Plaintiffs claims without prejudice in light of the substantial resources Defendants have spent litigating those claims over more than two-and-a-half years. Indeed, the fact that Larry Shaw had unique knowledge of the facts supporting Counts 1-8, and the possibility of death or illness to other parties and witnesses, weighs in favor of dismissal *with prejudice*, not without. *See Zagano*, 900 F.2d at 14; (Marcus Decl. ¶ 3); (Dickstein Decl ¶ 31.)

In addition, Plaintiffs did not even mention the October 10, 2007 enactment of the California legislation as a reason for withdrawal of their claims without prejudice in their November 6, 2007 opposition papers. Defendants' ownership of Marilyn Monroe's right of publicity was very much at issue in this case along with Counts 1-8 before the May 2, 2007 Order. Now that it may be in dispute again, Plaintiffs should not be allowed to use it as a red-herring to win dismissal of Counts 1-8 without prejudice. In sum, Plaintiffs' stated reasons for dismissal without prejudice should be disregarded as mere pretexts for avoiding a decision on Defendants' motion to dismiss. *See Galasso*, 310 F. Supp. 2d at 572.

### C.    Counts 1 and 2 are the Equivalent of Compulsory Counterclaims and Cannot be Withdrawn Without Prejudice

Counterclaims are compulsory if they "arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim[.]" Fed. R. Civ. P. 13(a); *see United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979) (two claims arise from the same transaction and occurrence, where "essential facts of the various claims are so logically connected that

consideration of judicial economy and fairness dictate that all the issues be resolved in one lawsuit."). Such determination does not require "an absolute identity of factual backgrounds . . . but only a logical relationship between them." *Id.* (quoting *United Artists Corp. v. Masterpiece Productions, Inc.*, 221 F.2d 213, 216 (2d Cir. 1955)).

Defendants' sole remaining claim seeks a declaration that Plaintiffs do not possess valid and enforceable copyrights in Shaw's photographs of Marilyn Monroe. (Serbagi Decl., Ex. M ¶¶ 28-34.) Plaintiffs' Copyright Claims allege that Defendants infringed certain of Plaintiffs' copyrights in Shaw's photographs of Marilyn Monroe. (Serbagi Decl., Ex. L ¶¶ 15-22) In order to prevail, Plaintiffs must prove that they possess valid and enforceable copyrights – precisely what Defendants seek to *dis*prove in their declaratory judgment claim. Plaintiffs' Copyright Claims are therefore the equivalent of compulsory counterclaims, which cannot be withdrawn without prejudice. *See Pizzulli v. The Northwestern Mut. Life Ins. Co.*, No. 05 Civ. 1889 (LAP), 2006 WL 490097, at *2 (S.D.N.Y. Feb. 28, 2006) ("Northwestern's counterclaim for rescission cannot be dismissed without prejudice, for the simple reason that rescission is a compulsory counterclaim in this case."); *Bosteve Ltd.*, 110 F.R.D. at 259 (denying motion to dismiss plaintiff's claims without prejudice where the court "must retain jurisdiction over defendant's compulsory counterclaims" and stating "it would be an inefficient use of the court's resources to adjudicate the defendant's claims only, when they are inextricably linked to plaintiffs'.") (cited in *Zagano*, 900 F.2d at 14). Here, as in *Bosteve*, judicial resources would be wasted if Plaintiffs were allowed to withdraw their Copyright Claims without prejudice and reassert them in a subsequent litigation after this court adjudicates Defendants' declaratory judgment claim.

## II.    COUNTS 1 AND 2 OF THE SAC SHOULD BE DISMISSED WITH PREJUDICE BECAUSE PLAINTIFFS' COUNSEL AGREED TO WITHDRAW THEM WITH PREJUDICE

On December 3, 2007, Plaintiffs' lead counsel wrote to Defendants' counsel: "Plaintiffs are withdrawing their copyright infringement claim and we will stipulate *with prejudice*." (Serbagi Decl., Ex. bb p.1) (emphasis added). That promise was in writing, and was manually subscribed by Plaintiffs' attorney. It is therefore binding on the Plaintiffs. *See Vlassis v. Corines*, 247 A.D.2d 609, 610, 669 N.Y.S.2d 361, 361 (2d Dep't 1998) ("CPLR 2104 provides, *inter alia*, that a stipulation is binding upon a party if it is in a writing subscribed by him or her or his or her attorney. . . . . 'Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation.'") (quoting *Hallock v. State of New York*, 485 N.Y.S.2d 510 (1984)).[9]

The fact that Plaintiffs' attorney's signature was electronic does not alter that conclusion. *See On Line Power Techs., Inc. v. Square D Co.*, No. 03 Civ. 4860 (CM), 2004 U.S. Dist. LEXIS 9655, at *27 (S.D.N.Y. Apr. 30, 2004) ("Both New York and federal statutes governing electronic signature recognize the validity and enforceability of electronic signatures.").[10]

Plaintiffs' Copyright Claims should therefore be dismissed with prejudice.

---

[9] In deciding whether a stipulation is binding, federal courts in New York apply New York law, including C.P.L.R. § 2104. *See Arthur the Dog v. U.S. Merchandise Inc.*, No. 05 Civ. 0958 (JFB), 2007 WL 2493427, at *4 (E.D.N.Y. Aug. 29, 2007).

[10] Furthermore, no consideration is needed for a stipulation to be binding. *See Atlas v. Wood*, 33 Misc. 2d 543, 545, 226 N.Y.S.2d 43, 46 (Sup. Ct. Nassau County), *aff'd*, 17 A.D.2d 821, 232 N.Y.S.2d 743 (2d Dep't 1962); 4 Richard A. Lord, *Williston on Contracts* § 8:43 (4th ed. 2007) ("There is a class of agreements, known as stipulations, made by adverse parties or their authorized attorneys with reference to legal proceedings pending before a court, which are generally upheld and enforced even in the absence of consideration.") (citing Restatement (Second) of Contracts § 94 (1981) ("A promise or agreement with reference to a pending judicial proceeding, made by a party to the proceeding or his attorney, is binding without consideration.")).

## III.  CONCLUSION

For all of the above reasons, Defendants respectfully ask the court to deny Plaintiffs'

Motion to Withdraw Counts 1-8 of the SAC Without Prejudice, and to grant Defendants' Cross-

Motion to Dismiss Counts 1 and 2 With Prejudice.

Dated: New York, New York
       January 16, 2008

LOEB & LOEB LLP

By: _____
    Paula K. Colbath (PC 9895)
    345 Park Avenue
    New York, New York 10154-1895
    (212) 407-4000

*Attorneys for Defendant
Marilyn Monroe LLC*

SOVICH MINCH, LLP

By: _____
    Theodore J. Minch
    10099 Chesapeake Drive
    Suite 100
    McCordsville, Indiana 46055

*Attorneys for Defendant CMG Worldwide,
Inc.*