UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
SHAW FAMILY ARCHIVES, LTD., EDITH MARCUS, :
and META STEVENS, :
: 
: 
: 
                                Plaintiffs, : Index No. 05 CV 3939 (CM)
:
      -against- :
:
:
:
CMG WORLDWIDE, INC., an Indiana Corporation :
and MARILYN MONROE, LLC, a Delaware :
Limited Liability Company, :
:
                                Defendants. :
:
--------------------------------------------------------------------X

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNT NINE OF THE SECOND AMENDED COMPLAINT AND FOR A LIMITED STAY OF DISCOVERY**

                                          LAW OFFICES OF CHRISTOPHER SERBAGI
                                          LAW OFFICES OF DAVID MARCUS
                                          488 Madison Avenue, Suite 1120
                                          New York, New York 10022
                                          (212) 593-2112

                                          Attorneys for the Plainiffs

On the Brief:
Christopher Serbagi, Esq.
David Marcus, Esq.

## **TABLE OF CONTENTS**

                                                                                                                              **Page**

PRELIMINARY STATEMENT..................................................................................................1

ARGUMENT.............................................................................................................................3

I.      THE SHAW FAMILY HAS ALLEGED SUFFICIENT HARM TO SURVIVE A MOTION TO DISMISS ITS REQUEST FOR A DECLARATORY JUDGMENT ON THE ISSUE OF MARILYN MONROE'S DOMICILE..........................................................................3

II.     THE COURT SHOULD ORDER THAT THE DEFENDANTS IMMEDIATELY PRODUCE ALL DOCUMENTS RELATING TO THEIR LOBBYING EFFORTS............7

CONCLUSION........................................................................................................................12

## TABLE OF AUTHORITIES

Page

CASES:

Apex Oil Company v. The Belcher Co. of New York,
    855 F.2d 1009 (2d Cir. 1988).................................................................10

Chesney v. Valley Stream Union Free Sch. Dist.,
    236 F.R.D. 113 (E.D.N.Y. 2006)..............................................................8

Kolenc v. Bellizzi, No. Civ.
    4494 (LMM KNF) 1999 WL 92604 (S.D.N.Y. Feb. 22, 1999)..................9

Lujan v. Defenders of Wildlife,
    504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed2d 351 (1992).....................4, 5, 6

Moran v. Flaherty,
    1992 U.S. Dist. LEXIS 14568, No. 92 Civ. 3200 (S.D.N.Y. Sept. 25, 1992)..........8

Spencer Trask Software & Information Servs., LLC v. RPost Int'l Ltd.,
    206 F.R.D. 367 (S.D.N.Y. 2002)..............................................................8

See Tri-Star Pictures, Inc. v. Unger,
    171 F.R.D. 94 (S.D.N.Y. 1998)................................................................9

United States of America v. Kross,
    14 F.3d 751 (2d Cir. 1994).....................................................................10

White v. United States,
    511 F. Supp. 570 (S.D. Ind. 1981)............................................................5

Zohar, NIV v. Hilton Hotels Corp.,
    No. 06 Civ. 7839 (PKL), 2007 WL 510113 (S.D.N.Y. Feb. 15, 2007).........8

STATUTES

28 U.S.C.A. § 2201..................................................................................4

Fed. R. Civ. P. 26(c)................................................................................8

Rule 37.2 of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York................................................................9

Plaintiffs Shaw Family Archives, Ltd., Bradford Licensing, Inc., Meta Stevens, and Edith Marcus (the "Shaw Family"), respectfully submit this memorandum of law in opposition to Defendants' motion to (i) dismiss Count Nine of the Second Amended Complaint and (ii) stay discovery as to documents pertaining to Defendants' lobbying activities, and for such other relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

For internal business reasons having to do with the recent passing of the Shaw Family principal and a desire to end this litigation as soon as possible, we have stipulated with the Defendants to withdraw the third through eighth causes of action in the Second Amended Complaint. The only remaining cause of action that the Defendants seek to dismiss is the Ninth cause of action, which requests that this Court declare that Marilyn Monroe died a New York domiciliary. Defendants' Ninth cause of action is ripe for adjudication, especially in light of the new California right of publicity legislation that passed on October 10, 2007.

The Defendants assert that the Shaw Family lacks standing because it has failed to demonstrate that it has been harmed. The Defendants also state that there is no actual controversy because "legislative remedies are under consideration in both states and there is no way of predicting whether one state, or both, or neither will implement a relevant statute." At the time of the Court's May 2, 2007 Order, the Court held that it did not need to resolve the issue of domicile because neither California nor New York (the only states where Ms. Monroe could possible have been domiciled) recognized a postmortem right of publicity when Ms. Monroe passed. The situation has dramatically changed. On October 10, 2007, California amended its right of publicity statute, which now states that a right of publicity shall be deemed to have existed at the time of death of any person who died prior to January 1, 1985, e.g. Marilyn

Monroe (the "California Legislation"). Thus, according to the Court's prior ruling and Defendants' statements and arguments, if Ms. Monroe is deemed to be a California domiciliary, the Defendants would have a right of publicity to assert against the Shaw Family.

The Complaint alleges that the Shaw Family is currently suffering significant harm caused by the Defendants' (i) continued false assertions that those who want to use an image of Marilyn Monroe must pay a license fee to Defendants and (ii) wrongful representations to the Shaw Family's licensees and potential licensees that Defendants own a right of publicity in Marilyn Monroe. Some of the Shaw Family licensees have expressed a reluctance to do business with the Shaw Family because the issue of Ms. Monroe's domicile is still unsettled. Finally, Defendants are harmed because their former attorneys have represented to the Shaw Family's attorneys that Ms. Anna Strasberg intends to continue this litigation because she is "emboldened" by the new California legislation. This Court's declaration that Ms. Monroe died a New York domiciliary will significantly relieve the foregoing injuries to the Shaw Family by making it more difficult for Defendants to assert that they have a right of publicity in Marilyn Monroe and by providing more certainty to the Shaw Family's actual and prospective licensees. Perhaps Ms. Strasberg will also be less "emboldened" by the Court's declaration, which will hopefully contribute to an earlier settlement of this wasteful litigation.

Defendants have no legitimate basis to withhold documents relevant to their efforts to pass new right of publicity legislation in California, New York, Indiana, and other states. The Defendants false characterization of the Second Amended Complaint as an attack on their right to lobby for new legislation and an abuse of judicial process is a <u>regrettable strategic ploy</u> designed to provide a justification for their failure to produce highly relevant documents. Not a single cause of action (including the ones recently withdrawn) is based on Defendants' legitimate

2

lobbying efforts, which are obviously constitutionally protected. The Shaw Family is not contesting the Defendants' right to lobby, it simply wants the documents that it submitted and received during that process.

The Defendants' lobbying documents are relevant because they (i) pertain to their repeated representations that they have rights to the images of Marilyn Monroe; (ii) are likely to contain information that relate to the issue of Ms. Monroe's domicile when she died or statements that may lead the Shaw Family to information pertinent to those issues; (iii) may support the Shaw Family's claim that they are entitled to their attorney's fees at the conclusion of this case based on false representations to this Court; and (iv) are relevant to their promise to appeal this Court's May 2, 2007 Order. In particular, Defendants stated in their Third Amended Complaint that they "intend to appeal the Court's May 2, 2007 Order." The Defendants' representations to the New York legislature (and other legislatures) regarding this Court's Order and about their purported right of publicity in Marilyn Monroe likely contain a treasure trove of relevant information. It is improper for the Defendants to have withheld relevant and potentially admissible evidence, especially because they have not even alleged that the documents are too burdensome to produce. The Defendants also failed to confer with the Shaw Family prior to filing this motion or to request a pre-motion conference with Judge Fox, which violated the Federal and Local Rules of this District as well as this Court's Individual Rules, unnecessarily multiplied these proceedings and burdened the Court and the Shaw Family.

## ARGUMENT

I. **THE SHAW FAMILY HAS ALLEGED SUFFICIENT HARM TO SURVIVE A MOTION TO DISMISS ITS REQUEST FOR A DECLARATORY JUDGMENT ON THE ISSUE OF MARILYN MONROE'S DOMICILE**

28 U.S.C.A. § 2201 provides the Court a basis to declare that Marilyn Monroe died a domiciliary of the State of New York. It states in relevant part:

> [i]n a case of actual case or controversy within its jurisdiction . . . and Court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . .

28 U.S.C.A. § 2201. Without setting forth any of the relevant law that the Court should consider on a motion to dismiss a declaratory judgment, the Defendants argue that the Shaw Family lacks standing to assert this claim because it cannot show that it has been injured. The United States Supreme Court has set forth three criteria for standing. First, a plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical and (2) there is a casual connection between the injury and the conduct complained of. Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 2136, 119 L.Ed2d 351 (1992) (citations and quotations omitted).

The United States Supreme Court has held that a plaintiff only need to plead general factual allegations of harm to survive a motion to dismiss. The Lujan court stated:

> At the pleading stage, general factual allegations of injury stemming from the defendant's conduct may suffice, for on a motion to dismiss we "**presum[e] that general allegations embrace those specific facts that are necessary to support the claim.** In response to a summary judgment motion, however, the

4

> plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, F.R.C.P. 56(e), which for purposes of the summary judgment motion will be taken as true.

Lujan, 594 U.S. at 561 (citations and quotations omitted) (emphasis added). As set forth below, the Shaw Family has pled far more than is necessary to survive a motion to dismiss its declaratory judgment action.

The Shaw Family is harmed because the California Legislation would purportedly provide Defendants a right of publicity in Marilyn Monroe unless this Court declares that she died a New York domiciliary. As this Court recognized in its May 2, 2007 Order, Indiana follows the majority rule that the law of the domicile of the testator at his or her death applies to all questions of a will's construction. Serbagi Decl, Ex. A, at 9 (citing White v. United States, 511 F. Supp. 570 (S.D. Ind. 1981)). At the time of the Court's May 2, 2007 Order, the Court held that it did not need to resolve the issue of domicile because "neither California nor New York – the only states in which Ms. Monroe could conceivably have been domiciled – permitted a testator to dispose by will or property she does not own at the time of her death." Id. at 10. On October 10, 2007, California amended its right of publicity statute so that a right of publicity shall be deemed to have existed at the time of death of any person who died prior to January 1, 1985, e.g. Marilyn Monroe. Serbagi Decl., Ex. B. The Statute states:

> The rights recognized under this section are property rights, freely transferable or descendible, in whole or in part, by contract or by means of any trust or any other testamentary instrument, executed before or after January 1, 1985. The rights recognized under this section shall be deemed to have existed at the time of death of any deceased personality who died prior to January 1, 1985, and ... shall vest in the persons entitled to these property rights under the testamentary instrument of the deceased personality effective as of the date of his or her death.

Id. Those who lobbied for the California Legislation (including Defendants) successfully convinced the legislature to specifically abrogate this Court's May 2, 2007 Order. In particular, the Statute states:

> It is the intent of the Legislature to abrogate the summary judgment orders entered in The Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc., United States District Court, Central District of California, Case No. CV 05-2200 MMM (MCx), filed May 14, 2007, and in the Shaw Family Archives Ltd. v. CMG Worldwide, Inc., United States District Court, Southern District of New York, Case No. 05 Civ. 3939, dated May 2, 2007.

Id.

Now that California has purportedly provided those with a right of publicity they never had, the issue of domicile is front and center. If Ms. Monroe died a New York domiciliary, then the Defendants have no basis to rely on the California legislation enacted on their behalf. Likewise, if Ms. Monroe died a California domiciliary as the Defendants claim, then they would argue that they have a basis to allege that the Shaw Family is liable under the California legislation.

Defendants' primary basis for their motion to dismiss Count Nine (which was filed prior to the enactment of the California legislation) is that there is no actual controversy because "legislative remedies are under consideration in both states and there is no way of predicting whether one state, or both, or neither will implement a relevant statute." Defs' Memo, at 23. Thus, say the Defendants, a Court Order that Marilyn Monroe died a New York domiciliary would be (i) duplicative of its May 2, 2007 ruling and theoretical because California had not yet passed new right of publicity legislation. Id. at 21-24. Both of Defendants' objections are nullified by the new California Legislation. Serbagi Decl., Ex. B.

6

Aside from the obvious harm the Defendants suffer by being subject to liability pursuant to the California Legislation, the Second Amended Complaint contains a number of statements all of which independently suffice to constitute the generalized harm that is necessary to survive a motion to dismiss. See Lujan, 504 U.S. at 561. First, the Defendants have repeatedly promised to appeal the Court's May 2, 2007 Order. The Defendants' Third Amended Complaint states that the Defendants "intend to appeal" the May 2 Order." Serbagi Decl. Ex. C, at ¶ 3. MMLLC's web site also state that the steps it will take to control rights to the image of Marilyn Monroe "include an immediately appeal of the judge's decision to finally put to rest any argument about Marilyn's rights to control her image." Id. at Ex. D. Defendants' express promises to seek a reversal of the Court's well reasoned May 2 Decision and Order contributed to the harm suffered by the Shaw Family's inability to license their copyrights unimpeded in commerce. Given that the Defendants are likely to rely on the California Legislation (at least in part) as the basis for their appeal, a judicial declaration that Ms. Monroe died a New York domiciliary is particularly important.

Second, the Second Amended Complaint alleges that the Defendants have ignored the Court's May 2 Order by continuing to intimidate the Shaw Family's licensees and potential licensees into believing that Defendants' have a right of publicity in Marilyn Monroe. Serbagi Decl, Ex. E, ¶¶ 23-31; Minieri Decl. The issue of domicile is particularly relevant to those allegations of harm because if the Court declares that Marilyn Monroe died a New York domiciliary, then the Defendants will have no basis to argue that the California legislation has any relevance.

For all the foregoing reasons, the Shaw Family respectfully requests that the Court permit the Shaw Family to proceed with its claim that Marilyn Monroe died a New York domiciliary.

## II. THE COURT SHOULD ORDER THAT THE DEFENDANTS IMMEDIATELY PRODUCE ALL DOCUMENTS RELATING TO THEIR LOBBYING EFFORTS

Rule 26(c) provides provides, in pertinent part, that:

> [u]pon motion by a party . . . from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action . . . for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> 2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time of place[.]

Fed. R. Civ. P. 26(c).

When exercising the discretion conferred under Rule 26(c) in response to a motion to stay discovery during the pendency of a dismissal motion, a court must determine whether the party seeking the stay has established the existence of "good cause" for the requested delay. Fed. R. Civ. P. 26(c); Spencer Trask Software & Information Servs., LLC v. RPost Int'l Ltd., 206 F.R.D. 367, 368 (S.D.N.Y. 2002); Chesney v. Valley Stream Union Free Sch. Dist., 236 F.R.D. 113, 115 (E.D.N.Y. 2006). The mere filing of a dismissal motion, without more, does not guaranty entitlement to such a stay. See Moran v. Flaherty, 1992 U.S. Dist. LEXIS 14568, No. 92 Civ. 3200 (S.D.N.Y. Sept. 25, 1992) ("[D]iscovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed."). Two related factors a court may consider in deciding a motion for a restriction or stay of discovery are the breadth of discovery sought and the burden of responding to it. Finally, a court should consider the strength of the dispositive motion that is the basis of the application. Zohar, NIV v. Hilton Hotels Corp., No. 06 Civ. 7839 (PKL), 2007 WL 510113, *1 (S.D.N.Y. Feb. 15, 2007).

8

On July 16, 2007, the Shaw Family served its second set of document requests, which contains requests for documents pertaining to Defendants' efforts to lobby various state legislatures for new right of publicity legislation. Serbagi Decl., Ex. F, Nos. 8-9. Defendants have flatly refused to produce those documents and have provided no legitimate basis for its position. Defendants also served discovery requests on October 8, 2006 which included a number of requests to which the legislative documents would be responsive. Serbagi Dec., Ex. G, e.g. Nos. 4, 12.

Rule 26(c) requires that the Defendants (i) meet and confer before making the present motion and (ii) provide a certification so stating. Fed. R. Civ. P 26(c). Moreover, Local Rule 37.2 states:

> No motion under Rules 26 and 37 inclusive of the Federal Rules of Civil Procedure shall be heard unless counsel for the moving party has first requested an informal conference with the court and such request has either been denied or the discovery dispute had not been resolved as a consequence of such a conference.

Rule 37.2 of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York. Rule 37.2 requires parties to "make a genuine effort to resolve the dispute" before resorting to a court's involvement. See Tri-Star Pictures, Inc. v. Unger, 171 F.R.D. 94, 99 (S.D.N.Y. 1998). The meet and confer requirement "embodies a policy of encouraging voluntary resolution of pretrial disputes in the interest of judicial and client economy and effective processing of cases." Kolenc v. Bellizzi, No. Civ. 4494 (LMM KNF) 1999 WL 92604, *2 (S.D.N.Y. Feb. 22, 1999) (citations omitted).

The Defendants failed to either meet and confer with the Shaw Family prior to making this motion, failed to provide the requisite Rule 26(c) certification, and failed to request a conference with this Court or Magistrate Judge Mark Fox, as required by Local Rule 37.2.

Moreover, the Court's November 7, 2006 "Memorandum" to "All Litigants" states that the "White Plains magistrate judges will supervise discovery in Judge McMahon's White Plains cases. The Defendants did not even notify Judge Fox of its surprise request to seek a stay on discovery. These failures were material because it could have alleviated the additional cost to the Shaw Family associated with opposing this motion and the burden on the Court associated with deciding this issue. Despite Defendants' failures, the Shaw family's attorney attempted to meet and confer with Defendant MMLLC's attorney on November 2, 2007. MMLLC's attorney has failed to provide a final response as to whether MMLLC would produce the applicable documents, despite her promise to do so. Serbagi Decl., at ¶3. The Court should sanction the Defendants for their failure to follow the Local Rules and the Federal Rules. See Apex Oil Company v. The Belcher Co. of New York, 855 F.2d 1009, 1019-20 (2d Cir. 1988) (holding that "[t]he failure to confer in good faith over discovery disputes in violation of a local rule clearly 'multiplies the proceedings . . . unreasonably and vexatiously,' and Section 1927 thus provides ample authority for sanctions").

Defendants improperly characterized the Second Amended Complaint as an attack on their right to lobby for new legislation and an abuse of judicial process. As the Defendants well know, not a single cause of action (including the ones the Shaw Family recently withdrew) is based on Defendants' lobbying efforts, which the Shaw Family concedes are constitutionally protected. By raising this straw man, the Defendants are clearly trying to conceal additional documents that they fear do not support their litigation driven arguments.[1]

---

[1] As the Court may recall, the Defendants represented in its summary judgment brief to this Court that Marilyn Monroe died a California domiciliary at a time when it had documents in its exclusive possession wherein it represented to courts throughout the Country that Marilyn Monroe died a New York domiciliary. This critical and disturbing lack of disclosure

The legislative right of publicity documents are reasonably calculated to lead to the discovery of admissible evidence. Because discovery serves an investigative purpose, it is not for the Defendants to parse out documents that do not want to produce. United States of America v. Kross, 14 F.3d 751, 754 (2d Cir. 1994) (recognizing that "[t]he purpose of civil discovery is also investigative, and the scope of discovery includes any information that 'appears reasonably calculated to lead to the discovery of admissible evidence'"), cert denied, 513 U.S. 828, 115 S.Ct. 99, 130 L.E.d.2d 48 (1994).

First, the Defendants should produce the legislative documents because they pertain to their assertion that they have a right of publicity in Marilyn Monroe. Because both the Defendants and the Shaw Family's remaining claim also pertain to Marilyn Monroe and the parties respective rights to those images, the Defendants must produce those documents.

Second, Defendants have expressly incorporated by reference their dismissed Right of Publicity claim and have stated that they will appeal the Court's May 2, 2007 Order. Serbagi Decl., Ex. C, at ¶ 3. The Defendants unequivocal representation that it will appeal the Court's May 2, 2007 Decision and Order entitles the Shaw Family to all documents that may bear on that appeal. The Defendants representations to the New York legislature (and other legislatures) regarding this Court's May 2 Order and about their purported right of publicity in Marilyn Monroe likely contain a treasure trove of relevant information that would assist the Shaw Family on appeal.

Third, the Shaw Family will likely assert a claim for attorney's fees at the conclusion of this case for the Defendants' vexatious litigation conduct. The legislative documents may bear on Defendants' lack of good faith in bringing this litigation in the first instance because they may

---

necessitated expensive and time consuming additional briefing. The Court stated that it would refer any possible discovery abuse by Defendants to Magistrate Judge Fox at a later date.

11

reveal the Defendants' conflicting positions and lack of candor with this Court, which they have already demonstrated.[2] In this regard, the Defendants' prior bad faith in failing to disclose at the critical juncture documents where it represented that Ms. Monroe died a New York domiciliary should cause the Court to Order the production of any documents in the Defendants' possession that in any way relate to Marilyn Monroe.

## CONCLUSION

For all the foregoing reasons, the Shaw Family respectfully request that the Court (i) deny the Defendants' motion to dismiss the Ninth cause of action in the Shaw Family's Second Amended Complaint and (ii) Order the Defendants to immediately produce all of the legislative documents they have improperly withheld and, sanction them for failing to do so, and Order Defendants to pay the attorney's fees the Shaw Family incurred in opposing their motion pursuant to F.R.C.P. 26(c).

Dated: New York, New York
November 6, 2007

Respectfully Submitted,

By: _____
Christopher Serbagi (CS 7746)
David Marcus (DM 0960)
488 Madison Avenue, Suite 1120
New York, New York 10022
(212) 593-2112

Attorneys for Plaintiffs/Consolidated Defendants
Shaw Family Archives, Bradford Licensing, Inc.,
Edith Marcus and Meta Stevens

---

[2] The Defendants have already displayed a disturbing lack of candor by withholding documents that revealed that they asserted that Ms. Monroe died a New York domiciliary.

12