UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

SHAW FAMILY ARCHIVES, LTD. EDITH     :
MARCUS and META STEVENS,

                                     :

              Plaintiffs,        :    Case No. 05 Civ. 3939 (CM)

      -against-          :    Hon. Colleen McMahon

CMG WORLDWIDE, INC., an Indiana    :
Corporation, and MARILYN MONROE, LLC, :
a Delaware Limited Liability Company,

                                       :

             Defendants.

-------------------------------------------------------- X

## **DEFENDANTS / CONSOLIDATED PLAINTIFFS' PROPOSED JURY INSTRUCTIONS**

TABLE OF CONTENTS

Page

I.    INSTRUCTIONS AT THE BEGINNING OF THE TRIAL..............................................1

    A.    Opening Instructions........................................................................................1

    B.    Order of the Trial .............................................................................................3

    C.    Claims and Defenses........................................................................................4

    D.    Province of the Judge and Jury .......................................................................4

    E.    Jury Conduct....................................................................................................5

    F.    Notetaking—Permitted ....................................................................................6

    G.    Judge's Questions to Witnesses ......................................................................7

    H.    Bench Conferences...........................................................................................7

    I.    Evidence in the Case........................................................................................7

    J.    Burden of Proof – "Preponderance of the Evidence" and "Clear and Convincing"
       ..............................................................................................................................8

    K.    Direct and Circumstantial Evidence ...............................................................9

    L.    Credibility of Witnesses..................................................................................9

    M.    Ruling on Objections .....................................................................................10

II.    INSTRUCTIONS AT THE CONCLUSION OF EVIDENCE......................................10

    A.    General Instruction.........................................................................................10

    B.    Use of Notes..................................................................................................11

    C.    All Persons Equal Before the Law—Organizations ......................................11

    D.    Evidence in the Case......................................................................................11

    E.    Election of Foreperson; Duty to Deliberate; Communications with Court;
       Cautionary; Unanimous Verdict; Verdict Form ...........................................12

    F.    Preponderance of the Evidence......................................................................13

G.    "Clear and Convincing Evidence" – Defined ...................................................14

H.    "Direct" and "Circumstantial" Evidence—Defined ...........................................14

I.     "Inferences" Defined .........................................................................................15

J.     Charts and Summaries .......................................................................................15

K.    Number of Witnesses ........................................................................................15

L.     Discrepancies in Testimony ..............................................................................16

M.    All Available Witnesses or Evidence Need Not be Produced ............................17

N.    Duty to Deliberate ............................................................................................17

O.    Election of Foreperson—Special Verdict .........................................................18

P.     Verdict Forms—Jury's Responsibility .............................................................18

Q.    Communications Between Court and Jury During Jury's Deliberations............19

III.    INSTRUCTIONS AS TO SUBSTANTIVE LAW.......................................................19

    A.    Domicile Instructions........................................................................................19

    B.    Public Domain Instructions................................................................................27

         1.    Copyright in General..............................................................................27

         2.    Copyright Notice Requirement ...............................................................28

         3.    Work for Hire .........................................................................................31

         4.    Duration of Copyright............................................................................32

         5.    Registration within Five Years of Publication as Prima Facie Evidence of Copyright ...........................................................34

         6.    Assignment of Copyright Interest...........................................................34

         7.    Copyrights to Individual Photographs in a Larger Collection................35

I.     **INSTRUCTIONS AT THE BEGINNING OF THE TRIAL**

    A.  **Opening Instructions[1]**

    We are about to begin the trial of the case you heard about during the jury selection.

Before the trial begins, I am going to give you instructions that will help you to understand what

will be presented to you and how you should conduct yourself during the trial.

    During the trial you will hear me use a few terms that you may not have heard before. Let

me briefly explain some of the most common to you.  The parties who sue are called the

plaintiffs.  The parties being sued are called the defendants.  [This lawsuit is a combination of

two actions, each brought by one group of parties against another.  So, each group of parties are

both plaintiffs and defendants.  Therefore, I will simply refer to the parties by their names, rather

than plaintiffs or defendants.  On one side are the Shaw Family Archives Limited, Edith Marcus

and Meta Stevens.  I will refer to them as the "Shaw Parties."  On the other side are Marilyn

Monroe LLC and CMG Worldwide, Inc.  I will therefore refer to Marilyn Monroe LLC and

CMG Worldwide as the "Marilyn Monroe Parties"]

    You will sometimes hear me refer to "counsel." "Counsel" is another way of saying

"lawyer" or "attorney." I will sometimes refer to myself as the "Court."

    When I "sustain" an objection, I am excluding that evidence from this trial for a good

reason. When you hear that I have "overruled" an objection, I am permitting that evidence to be

admitted.

    When I say "admitted into evidence" or "received into evidence," I mean that this

particular statement or the particular exhibit may be considered by you in making the decisions

you must make at the end of the case.

---

    [1] 3 Fed. Jury Prac. & Instr. § 101.01 (5th ed. 2001 & 2007 Supp.) (alterations in brackets).

By your verdict, you will decide disputed issues of fact. I will decide all questions of law that arise during the trial. Before you begin your deliberation at the close of the case, I will instruct you in more detail on the law that you must follow and apply.

Because you will be asked to decide the facts of this case, you should give careful attention to the testimony and evidence presented. Keep in mind that I will instruct you at the end of the trial about determining the credibility or "believability" of the witnesses. During the trial you should keep an open mind and should not form or express any opinion about the case until you have heard all of the testimony and evidence, the lawyers' closing arguments, and my instructions to you on the law.

While the trial is in progress, you must not discuss the case in any manner among yourselves or with anyone else. In addition, you should not permit anyone to discuss the case in your presence. You should avoid reading any news articles that might be published about the case. You should also avoid watching or listening to any television or radio comments about the trial.

From time-to-time during the trial, I may make rulings on objections or motions made by the lawyers. It is a lawyer's duty to object when the other side offers testimony or other evidence that the lawyer believes is not admissible. You should not be unfair or partial against a lawyer or the lawyer's client because the lawyer has made objections. If I sustain or uphold an objection to a question that goes unanswered by the witness, you should not draw any inferences or conclusions from the question. You should not infer or conclude from any ruling or other comment I may make that I have any opinions on the merits of the case favoring one side or the other. I do not favor one side or the other.

The trial lawyers are not allowed to speak with you during this case.  When you see them at a recess or pass them in the halls and they do not speak to you, they are not being rude or unfriendly; they are simply following the law.

During the trial, it may be necessary for me to talk with the lawyers out of your hearing about questions of law or procedure.  Sometimes, you may be excused from the courtroom during these discussions.  I will try to limit these interruptions as much as possible, but you should remember the importance of the matter you are here to determine and should be patient even though the case may seem to go slowly.

**B.   Order of the Trial[2]**

The case will proceed as follows:

First, the lawyers for each side may make opening statements.  What is said in the opening statements is not evidence, but is simply an outline to help you understand what each party expects the evidence to show.  A party is not required to make an opening statement.

After the opening statements, the [Shaw Parties] will present evidence in support of their claims and the [Marilyn Monroe Parties'] lawyer may cross-examine the witnesses.  At the conclusion of the [Shaw Parties] case, the [Marilyn Monroe Parties] may introduce evidence and the [Shaw Parties'] lawyer may cross-examine the witnesses.  [The Marilyn Monroe Parties] are not required to introduce any evidence or to call any witnesses.  If [the Marilyn Monroe Parties] introduce evidence, the [Shaw Parties] may then present rebuttal evidence.

After the evidence is presented, the parties' lawyers make closing arguments explaining what they believe the evidence has shown.  What is said in the closing arguments is not evidence.

---

[2] 3 Fed. Jury Prac. & Instr. § 101.02 (5th ed. 2001 & 2007 Supp.) (alterations in brackets).

3

Finally, I will instruct you on the law that you are to apply in reaching your verdict. You will then decide the case.

### C. Claims and Defenses

You will hear more about the disputes involved in this case from the attorneys, but I will give you a brief explanation. The first dispute you will be hearing is the one brought by the Shaw Parties. The Shaw Parties want a ruling from you that Marilyn Monroe was domiciled in the State of New York when she died. The Marilyn Monroe Parties dispute that claim and believe that Marilyn Monroe was domiciled in California at the time of her death. At the conclusion of the evidence, I will explain more about what it means to be "domiciled" in a state.

The second dispute is brought by the Marilyn Monroe Parties. They claim that some photographs of the Shaw Parties' photographs are in the public domain. When a photograph is in the public domain, that means the photograph is not entitled to copyright protection, and its owner cannot prevent other people from using it. The Shaw Parties claim that their photographs are not in the public domain and are protected by copyright law, and that they can therefore prevent other people from using the photographs. At the conclusion of the evidence, I will explain how a photograph comes to be in the public domain.

### D. Province of the Judge and Jury[3]

After all the evidence has been heard and arguments and instructions are finished, you will meet to make your decision. You will determine the facts from all the testimony and other evidence that is presented. You are the sole and exclusive judge of the facts. I must stress that you are required to accept the rules of law that I give you, whether or not you agree with them.

---

[3] 3 Fed. Jury Prac. & Instr. § 101.10 (5th ed. 2001 & 2007 Supp.).

4

The law permits me to comment on the evidence in the case during the trial or while instructing the jury. Such comments are only expressions of my opinion as to the facts. You may disregard these comments entirely, because you are to determine for yourself the weight of the evidence and the credibility of each of the witnesses.

### E. Jury Conduct[4]

To insure fairness, you must obey the following rules [I mentioned some of these already, but they are important, so I will mention them again]:

1. Do not talk to each other about this case or about anyone involved with this case until the end of the trial when you go to the jury room to decide on your verdict.

2. Do not talk with anyone else about this case or about anyone involved with this case until the trial has ended and you have been discharged as jurors. "Anyone else" includes members of your family and your friends. You may tell people you are a juror, but do not tell them anything else about the case.

3. Outside the courtroom, do not let anyone tell you anything about the case, or about anyone involved with it until the trial has ended. If someone should try to talk to you about the case during the trial, please report it to me immediately.

4. During the trial you should not talk with or speak to any of the parties, lawyers or witnesses involved in this case—you should not even pass the time of day with any of them. It is important not only that you do justice in this case, but that you also give the appearance of doing justice.

5. Do not read any news stories or articles about the case, or about anyone involved with it, or listen to any radio or television reports about the case or about anyone involved with it.

---

[4] 3 Fed. Jury Prac. & Instr. § 101.11 (alterations in brackets).

6. Do not do any research [about the case], such as checking dictionaries, [books, or the Internet,] or make any investigation about the case on your own.

7. Do not make up your mind during the trial about what the verdict should be. Keep an open mind until after you have gone to the jury room to decide the case and you and the other jurors have discussed all the evidence.

8. If you need to tell me something, simply give a signed note to the [deputy clerk] to give to me.

**F.    Notetaking—Permitted[5]**

During this trial, I will permit you to take notes. Of course, you are not obliged to take notes. If you do not take notes, you should not be influenced by the notes of another juror, but should rely upon your own recollection of the evidence.

Because many courts do not permit notetaking by jurors, a word of caution is in order. You must not allow your notetaking to distract you from the proceedings.

Frequently, there is a tendency to attach too much importance to what a person writes down. Some testimony that is considered unimportant at the time presented, and thus not written down, may take on greater importance later in the trial in light of all the evidence presented, the final arguments, and my instructions on the law.

Accordingly, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Your memory should be your greatest asset when it comes to deciding this case.

---

[5] 3 Fed. Jury Prac. & Instr. § 101.13.

6

### G.  Judge's Questions to Witnesses[6]

During the trial, I may sometimes ask a witness questions.  Please do not assume that I have any opinion about the subject matter of my questions.

### H.  Bench Conferences[7]

From time to time it may be necessary for me to talk to the lawyers out of your hearing. The purpose of these conferences is to decide how certain matters are to be treated under the rules of evidence.  The lawyers and I will do what we can to limit the number and length of these conferences.

### I.  Evidence in the Case[8]

The evidence in the case will consist of the following:

1. The sworn [live] testimony of the witnesses, no matter who called a witness.

2. All exhibits received in evidence, regardless of who may have produced the exhibits.

3. All facts that may have been judicially noticed and that you must take as true for purposes of this case.

Depositions may also be received in evidence. Depositions contain sworn testimony, with the lawyers for each party being entitled to ask questions.  In some cases, a deposition may be played for you on videotape.  Deposition testimony may be accepted by you, subject to the same instructions that apply to witnesses testifying in open court.

Statements[, questions] and arguments of the lawyers are not evidence in the case, unless made as an admission or stipulation of fact.  A "stipulation" is an agreement between both sides that certain facts are true.  When the lawyers on both sides stipulate or agree to the existence of a

---

[6] 3 Fed. Jury Prac. & Instr. § 101.30.

[7] 3 Fed. Jury Prac. & Instr. § 101.31.

[8] 3 Fed. Jury Prac. & Instr. § 101.40 (alterations in brackets).

fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard that fact as proved.

I may take judicial notice of certain facts or events. When I declare that I will take judicial notice of some fact or event, you must accept that fact as true.

If I sustain an objection to any evidence or if I order evidence stricken, that evidence must be entirely ignored.

Some evidence is admitted for a limited purpose only. When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other purpose.

You are to consider only the evidence in the case. But in your consideration of the evidence you are not limited to the statements of the witness. In other words, you are not limited solely to what you see and hear as the witnesses testified. You may draw from the facts that you find have been proved, such reasonable inferences or conclusions as you feel are justified in light of your experience.

At the end of the trial you will have to make your decision based on what you recall of the evidence. You will not have a written transcript to consult, and it is difficult and time consuming for the reporter to read back lengthy testimony. I urge you to pay close attention to the testimony as it is given.

### J.    Burden of Proof – "Preponderance of the Evidence" and "Clear and Convincing"[9]

When a party has the burden to prove any matter by a preponderance of the evidence, it means that you must be persuaded by the testimony and exhibits that the matter sought to be

---

[9] 3 Fed. Jury Prac. & Instr. § 101.41 (alterations in brackets); 3 Fed. Jury Prac. & Instr. § 104.05 (alterations in brackets)..

proved is more probably true that not true. [If you are not persuaded that the matter sought to be proved is more probably true than not, you must find against the party that has the burden of proof.] You should base your decision on all of the evidence, regardless of which party presented it.

"Clear and convincing evidence" is evidence that produces in your mind a firm belief or conviction as to the matter at issue. Clear and convincing evidence involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard. This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

### K. Direct and Circumstantial Evidence[10]

[Generally speaking, there are two forms of evidence.] "Direct evidence" is direct proof of a fact, such as testimony by a witness about what the witness said or heard or did. "Circumstantial evidence" is proof of one or more facts from which you could find another fact. [For example, if someone walked into the courtroom with a wet umbrella, that would be circumstantial evidence that it is raining outside.] You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.

### L. Credibility of Witnesses[11]

In deciding the facts, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. In considering the testimony of any witness, you may take into account many factors, including the witness' opportunity and ability to see or hear or know the things the witness testified about; the

---

[10] 3 Fed. Jury Prac. & Instr. § 101.42 (alterations in brackets).

[11] 3 Fed. Jury Prac. & Instr. § 101.43.

quality of the witness' memory; the witness' appearance and manner while testifying; the witness' interest in the outcome of the case; any bias or prejudice the witness may have; other evidence that may have contradicted the witness' testimony; and the reasonableness of the witness' testimony in light of all the evidence. The weight of the evidence does not necessarily depend upon the number of witnesses who testify.

### M.  Ruling on Objections[12]

When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received into evidence. If I sustain the objection, the question cannot be answered and the exhibit cannot be received into evidence.

If I sustain an objection to a question or the admission of an exhibit, you must ignore the question and must not guess what the answer to the question might have been. In addition, you must not consider evidence that I have ordered stricken from the record.

## II.    INSTRUCTIONS AT THE CONCLUSION OF EVIDENCE

### A.  General Instruction[13]

Now that you have heard the evidence and the argument, it is my duty to instruct you about the applicable law. It is your duty to follow the law as I will state it and to apply it to the facts as you find them from the evidence in the case. Do not single out one instruction as stating the law, but consider the instructions as a whole. You are not to be concerned about the wisdom of any rule of law stated by me. You must follow and apply the law.

---

[12] 3 Fed. Jury Prac. & Instr. § 101.49.

[13] 3 Fed. Jury Prac. & Instr. § 103.01.

10

The lawyers have properly referred to some of the governing rules of law in their arguments. If there is any difference between the law stated by the lawyers and as stated in these instructions, you are governed by my instructions.

Nothing I say in these instructions indicates that I have any opinion about the facts. You, not I, have the duty to determine the facts.

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

### B.  Use of Notes[14]

You may use the notes taken by you during the trial. However, the notes should not be substituted for your memory. Remember, notes are not evidence. If your memory should differ from your notes, then you should rely on your memory and not on your notes.

### C.  All Persons Equal Before the Law—Organizations[15]

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. A [business organization] is entitled to the same fair trial as a private individual. All persons, including corporations and other organizations stand equal before the law, and are to be treated as equals.

### D.  Evidence in the Case[16]

Unless you are otherwise instructed, the evidence in the case consists of the sworn testimony of the witnesses regardless of who called the witness, all exhibits received in evidence

---

[14] 3 Fed. Jury Prac. & Instr. § 103.02.

[15] 3 Fed. Jury Prac. & Instr. § 103.12.

[16] 3 Fed. Jury Prac. & Instr. § 103.30 (alterations in brackets).

11

regardless of who may have produced them, and all facts and events that may have been admitted or stipulated to and all facts and events that may have been judicially noticed.

Statements[, questions] and arguments by the lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statement, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. However, when the lawyers on both sides stipulate or agree on the existence of a fact, you must, unless otherwise instructed, accept the stipulation and regard that fact as proved.

I may take judicial notice of certain facts or events. When I declare that I will take judicial notice of some fact or event, you must, unless otherwise instructed, accept my declaration as evidence and regard as proved the fact or event which has been judicially noticed.

Any evidence to which I have sustained an objection and evidence that I have ordered stricken must be entirely disregarded.

### E. Election of Foreperson; Duty to Deliberate; Communications with Court; Cautionary; Unanimous Verdict; Verdict Form[17]

You must follow the following rules while deliberating and returning your verdict:

First, when you go to the jury room, you must select a foreperson. The foreperson will preside over your discussions and speak for you here in court.

Second, it is your duty, as jurors, to discuss this case with one another in the jury and try to reach agreement.

Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of the other jurors.

_____

[17] 3 Fed. Jury Prac. & Instr. § 103.50.

Do not be afraid to change your opinions if the discussion persuades you that you should. But do not make a decision simply because other jurors think it is right, or simply to reach a verdict. Remember at all times that you are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

Third, if you need to communicate with me during your deliberations, you may send a note to me through the marshal or bailiff, signed by one or more jurors. I will respond as soon as possible either in writing or orally in open court. Remember that you should not tell anyone— including me—how your votes stand numerically.

Fourth, your verdict must be based solely on the evidence and on the law that I have given to you in my instructions. The verdict must be unanimous. Nothing I have said or done is intended to suggest what your verdict should be—that is entirely for you to decide.

Finally, the verdict form is simply the written notice of the decision that you reach in this case. You will take this form to the jury room, and when each of you has agreed on the verdicts, your foreperson will fill in the form, sign and date it, and advise the marshal or bailiff that you are ready to return to the courtroom.

## F. Preponderance of the Evidence[18]

"Establish by a preponderance of the evidence" means to prove that something is more likely so than not so. In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true. This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

---

[18] 3 Fed. Jury Prac. & Instr. § 104.01 (alterations in brackets).

13

In determining whether any fact in issue has been proved by a preponderance of the evidence you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard that applies in criminal cases. It does not apply in civil cases such as this. You should, therefore, put it out of your minds.

### G.  "Clear and Convincing Evidence" – Defined[19]

"Clear and convincing evidence" is evidence that produces in your mind a firm belief or conviction as to the matter at issue. Clear and convincing evidence involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard. This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

### H.  "Direct" and "Circumstantial" Evidence—Defined[20]

[As I explained at the beginning of the trial, g]enerally speaking, there are two types of evidence that are generally presented during a trial—direct evidence and circumstantial evidence. "Direct evidence" is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness. "Indirect or circumstantial" evidence is proof of a chain of facts and circumstances indicating the existence or nonexistence of a fact.

As a general rule, the law makes no distinction between the weight or value to be given to either direct or circumstantial evidence. Nor is a greater degree of certainty required of

---

[19] 3 Fed. Jury Prac. & Instr. § 104.02.

[20] 3 Fed. Jury Prac. & Instr. § 104.05 (alterations in brackets).

circumstantial evidence.  You are simply required to find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.

### I.    "Inferences" Defined[21]

You are to consider only the evidence in the case.  However, you are not limited to the statements of the witnesses.  In other words, you are not limited to what you see and hear as the witnesses testify.  You may draw from the facts that you find have been proved such reasonable inferences as seem justified in light of your experience.

"Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.

### J.    Charts and Summaries[22]

Certain charts and summaries have been shown to you in order to help explain facts disclosed by books, records, and other documents that are in evidence in the case.  These charts or summaries are not themselves evidence or proof of any facts. If the charts or summaries do not correctly reflect facts or figures shown by the evidence in the case, you should disregard them.

In other words, the charts or summaries are used only as a matter of convenience. To the extent that you find they are not truthful summaries of facts or figures shown by the evidence in the case, you are to disregard them entirely.

### K.  Number of Witnesses[23]

The weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small

---

[21] 3 Fed. Jury Prac. & Instr. § 104.20.

[22] 3 Fed. Jury Prac. & Instr. § 104.50.

[23] 3 Fed. Jury Prac. & Instr. § 104.54.

number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

You are not bound to decide any issue of fact in accordance with the testimony of any number of witnesses that does not produce in your minds belief in the likelihood of truth, as against the testimony of a lesser number of witnesses or other evidence producing such belief in your minds.

The test is not which side brings the greater number of witnesses or takes the most time to present its evidence, but which witnesses and which evidence appeal to your minds as being most accurate and otherwise trustworthy.

## L.  Discrepancies in Testimony[24]

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves.  You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief.  Consider each witness' intelligence, motive and state of mind, and demeanor or manner while testifying.

[. . . . ]

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony. Two or more persons seeing an event may see or hear it differently.

---

[24] 3 Fed. Jury Prac. & Instr. § 105.01 (alterations in brackets).

16

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of any witness, in whole or in part.

In addition, [as I have already told you,] the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

### M.  All Available Witnesses or Evidence Need Not be Produced[25]

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial. Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.

### N.  Duty to Deliberate[26]

The verdict must represent the considered judgment of each of you. In order to return a verdict, it is necessary that each juror agree. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without disregard of individual judgment. You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine

---

[25] 3 Fed. Jury Prac. & Instr. § 105.11.

[26] 3 Fed. Jury Prac. & Instr. § 106.01.

17

your own views, and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

### O.  Election of Foreperson—Special Verdict[27]

[As I mentioned a moment ago, u]pon retiring to the jury room, you will select one of your number to act as your foreperson. The foreperson will preside over your deliberations, and will be your spokesperson here in court. A form of special verdict has been prepared for your convenience. You will take this form to the jury room. [*Read special verdict form.*]

You will note that each of the three interrogatories or questions calls for a "Yes" or "No" answer[, or requires you to choose between one of two answers]. The answer to each question must be the unanimous answer of the jury. Your foreperson will write the unanimous answer of the jury in the space provided opposite each question. [. . . . ]

[ . . . ] The foreperson will then date and sign the special verdict as so completed; and you will then return with it to the courtroom.

### P.  Verdict Forms—Jury's Responsibility[28]

Nothing said in these instructions and nothing in any form of verdict prepared for your convenience is meant to suggest or convey in any way or manner any suggestion or hint as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

---

[27] 3 Fed. Jury Prac. & Instr. § 106.05 (alterations in brackets).

[28] 3 Fed. Jury Prac. & Instr. § 106.07.

18

**Q.  Communications Between Court and Jury During Jury's Deliberations[29]**

If it becomes necessary during your deliberations to communicate with me, you may send a note by [the clerk], signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me by any means other than a signed writing, and I will never communicate with any member of the jury on any subject touching the merits of the case otherwise than in writing, or orally here in open court.

[. . . . ]

Bear in mind also that you are never to reveal to any person—not even to me—how the jury stands, numerically or otherwise, on the questions before you, until after you have reached a unanimous verdict.

## III.  INSTRUCTIONS AS TO SUBSTANTIVE LAW

Now I will instruct you as to the substantive law that you will apply to deciding the claims in the case.

### A.  Domicile Instructions

The first claim in this case is brought by the Shaw Parties seeking a declaration that Marilyn Monroe was domiciled in New York when she died in August 1962.  I will now explain the legal concept of domicile.[30]

A person's domicile is the place where that person has his or her true, fixed home and principal establishment, and is the place to which a person intends to return when away.[31]

---

[29] 3 Fed. Jury Prac. & Instr. § 106.08.

[30] The Court has ruled that Indiana choice of law rules apply to these consolidated actions. (Order dated May 19, 2006, p. 12.)  Thus, Indiana law of domicile applies.  *See* Restatement (Second) Conflict of Laws § 13, comment b ("The forum applies its own rules of domicil except when it is applying the Conflict of Laws rules of another state.").

[31] *Matter of Adoption of T.R.M.*, 525 N.E.2d 298, 305-306 (Ind. 1988) ("Domicile means the place where a person has his true, fixed, permanent home, and principal establishment, and to which place

When Ms. Monroe was born, she acquired the domicile of her parent or guardian.[32]  You should presume that that domicile continued unless you find evidence that it changed.[33]  You should not find that her domicile changed unless it was proven by clear and convincing evidence.[34]  Similarly, if you find that her domicile changed after birth, you should presume that her new domicile continued unless you find that it changed again.[35]  Remember, the issue that you must decide is where Monroe was domiciled when she died.  The ultimate burden of proving that she was a New York domiciliary at the time she died is on the Shaw Parties because they have affirmatively come to court seeking a declaration of her domicile.[36]

A person's domicile changes if two things happen:  (1) the person is physically present in a new state, and (2) the person intends to remain in the state, thereby making it his or her home.[37]  Of course, if a person's domicile changes, it can change again depending on those same factors:

---

he has, whenever he is absent, the intention of returning."); *State Election Bd. v. Bayh*, 521 N.E.2d 1313, 1317 (Ind. 1988) (same); 15 James W.M. Moore, *Federal Practice* § 102.34[2], p.102-66 (3rd ed. 2007).

[32] *Bayh*, 521 N.E.2d at 1317 ("The domicile of an unemancipated minor is determined by the domicile of his parents."); *In re Adoption of T.R.M.*, 525 N.E.2d at 306.

[33] *Bayh*, 521 N.E.2d at 1317 ("Once acquired, domicile is presumed to continue"); *In re Adoption of T.R.M.*, 525 N.E.2d at 306.

[34] *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) ("A party alleging that there has been a change of domicile has the burden of proving the 'require[d] . . . intent to give up the old and take up the new [domicile], coupled with an actual acquisition of a residence in the new locality,' and must prove those facts 'by clear and convincing evidence.'") (quoting *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 243-44 (2d Cir. 1984)).

[35] *Bayh*, 521 N.E.2d at 1317; *Croop v. Walton*, 199 Ind. 262, 278, 157 N.E. 275 (Ind. 1927) (an "established domicile . . . is presumed to continue in the absence of proof of another domicile having been acquired").

[36] *Person v. Person*, 563 N.E.2d 161, 164 (Ind. App. 3 Dist. 1990) ("The burden of proving domicile rests upon the party asserting it.") (citing *State ex rel. Flaugher v. Rogers*, 226 Ind. 32, 77 N.E.2d 594, 596 (1948)).

[37] *State of Texas v. Florida*, 306 U.S. 398, 424, 59 S. Ct. 563, 576 (1939) ("Residence in fact, coupled with the purpose to make the place of residence one's home, are the essential elements of domicile."); *Bayh*, 521 N.E.2d at 1317 ("A change of domicile requires an actual moving with an intent to go to a given place and remain there."); *State ex rel. Flaugher*, 226 Ind. 32, 35, 77 N.E.2d 594, 595 (Ind. 1948) ("To change or effect a change in domicil there must be an actual moving with the intent to go to the given place and there to remain.").

(1) physical presence in a new state, and (2) intention to make the new state his or her home. Remember, a party claiming a change of domicile must prove those factors by clear and convincing evidence.[38]

The first factor, physical presence, is straightforward. In order to be domiciled in a state, a person must live in that state for some period of time. There is no minimum amount of time that a person must be physically present in a state to make it his or her domicile; any amount of time in the state will do,[39] so long as the second factor is also met.

The second factor is whether a person intends to make a place his or her home. When I say make a place her home, I do not mean an intention to live there permanently, I mean merely an absence of a definite intention to make another state her home at the time of her death.[40] How can you determine whether Marilyn Monroe intended to make a certain state her home? By examining her actions that would be consistent with making someplace her home.[41] Some actions that you may consider include:

---

[38] *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000).

[39] *Person*, 563 N.E.2d at 164 (wife was considered domiciliary of Illinois even though she lived there only a few months during the relevant time period, and had an intent to stay there for only one week); *National Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1227 (S.D.N.Y. 1991) ("There is no minimum period of residence necessary to establish domicile."); 15 James W.M. Moore, *Federal Practice* § 102.34[10], p.102-73 (3d ed. 2007); 25 Am. Jur. 2d Domicil § 15 ("As long as a physical presence in the locality and an intention to acquire a domicil there occur concurrently, the length of residence is not a factor in the establishment of domicil."); 28 C.J.S. Domicile § 13 (2007) ("no particular period of residence is required to establish domicile, and any residence, however short, will suffice when coupled with intent").

[40] *National Artists Mgmt. Co.*, 769 F. Supp. at 1227 ("The second element does not require that the person have an affirmative intent to remain permanently in the state, merely that she has no present intent to move to another state."); 15 James W.M. Moore, *Moore's Federal Practice* § 102.35[3], p. 102-77 ("there is no requirement that a person state an intention to live in a particular state permanently. It is the absence of an intention to go elsewhere that is controlling.").

[41] *Skiles v. Skiles*, 646 N.E.2d 353, 355 (Ind. App. 1995) ("The issue of domicile is a contextual determination to be made by the trial court upon a consideration of the individual facts on a case-by-case basis."); *National Artists Mgmt. Co.*, 769 F. Supp. at 1227 ("To ascertain intent, a court must examine the entire course of a person's conduct in order to draw the necessary inferences as to the relevant intent.")

- Where she actually lived at the time of her death;[42]

- Where she owned a home,[43] as opposed to merely renting;[44]

- Where she worked;[45]

- Where she paid taxes;[46]

- Where she voted;[47]

- Where her family lived;[48]

- Where her family history was centered;[49]

- Where she was born and raised;[50]

- Where she maintained memberships in social organizations;[51]

- Where she was married;[52]

- Where her personal property was located;[53]

---

(internal quotations omitted); 15 James W.M. Moore, *Federal Practice* § 102.34[9], p.102-73 (3d ed. 2007).

[42] *State of Texas*, 306 U.S. at 426, 59 S. Ct. at 576; *State ex rel. Flaugher*, 226 Ind. 32, 35, 77 N.E.2d 594, 595 (Ind. 1948) ("Actual residence, that is, personal presence in a place, is one circumstance to determine the domicil[.]"); 28 C.J.S. Domicile § 47 (2007) ("A person's residence or that of his family is a circumstance tending to prove domicile, and may be strong evidence, or prima facie evidence of domicile.").

[43] 25 Am. Jur. 2d Domicil § 66 ("Ownership of the house where one lives is evidence that one's domicil is the place where the house is located") (citing *Gilbert v. David*, 235 U.S. 561, 35 S. Ct. 164, 59 L. Ed. 360 (1915)).

[44] *National Artists Mgmt. Co.*, 769 F. Supp. at 1228.

[45] *State of Texas*, 306 U.S. at 426, 59 S. Ct. at 576; *Croop*, 199 Ind. At 278-79, 157 N.E. 275; *National Artists Mgmt. Co.*, 769 F. Supp. at 1228.

[46] *Croop*, 199 Ind. at 278-79, 157 N.E. 275; *National Artists Mgmt. Co.*, 769 F. Supp. at 1228.

[47] *Croop*, 199 Ind. at 278-79, 157 N.E. 275.

[48] *State of Texas*, 306 U.S. at 426, 59 S. Ct. at 576; 28 C.J.S. Domicile § 47 (2007).

[49] *State of Texas*, 306 U.S. at 426, 59 S. Ct. at 576.

[50] *Carter v. Estate of Davis*, 813 N.E.2d 1209, 1214 (Ind. App. 2004).

[51] *Croop*, 199 Ind. at 278-79, 157 N.E. 275; *National Artists Mgmt. Co.*, 769 F. Supp. at 1228.

[52] *Carter*, 813 N.E.2d at 1214.

- Where she had the most extensive home furnishings;[54]

- Where she held bank accounts, and how substantial they were;[55]

- Where she had insurance policies, mortgages and leases;[56]

- Where her cars were registered;[57]

- Where she had a driver's license,[58] and other types of licenses;[59]

- What address she listed on hotel registers;[60]

- Where her doctor, lawyer, accountant, and other agents were located;[61]

- Where she chose to be buried;[62]

Those are some pieces of evidence that are relevant to deciding where Ms. Monroe intended to make her home at the time she died in August 1962. However, no single consideration is determinative.[63]

Statements about Monroe's intent to make one place or another her home carry less weight than her actions.[64] As we all know, actions speak louder than words.[65] Moreover, when

---

[53] *National Artists Mgmt. Co.*, 769 F. Supp. at 1228.

[54] *State of Texas*, 306 U.S. at 426, 59 S. Ct. at 576; *In re Benjamin's Estate*, 176 Misc. 518, 531, 27 N.Y.S.2d 948, 961 (N.Y. Sur.1941).

[55] *National Artists Mgmt. Co.*, 769 F. Supp. at 1228; *Kaskel v. New York State Tax Com'n*, 111 A.D.2d 431, 433, 488 N.Y.S.2d 322, 324 (N.Y. A.D. 3 Dept. 1985).

[56] *Croop*, 199 Ind. at 278-79, 157 N.E. 275.

[57] *Croop*, 199 Ind. at 278-79, 157 N.E. 275.

[58] *National Artists Mgmt. Co.*, 769 F. Supp. at 1228; 25 Am. Jur. 2d Domicil § 64 ("securing a license or permit in a state or registering a vehicle there is evidence of an intent to establish domicil").

[59] *National Artists Mgmt. Co.*, 769 F. Supp. at 1228.

[60] *Croop*, 199 Ind. at 278-79, 157 N.E. 275.

[61] *Kaskel v. New York State Tax Com'n*, 111 A.D.2d 431, 433, 488 N.Y.S.2d 322, 324 (3d Dep't 1985); *National Artists Mgmt. Co.*, 769 F. Supp. at 1228.

[62] *Croop*, 199 Ind. at 278-79, 157 N.E. 275.

[63] *National Artists Mgmt. Co.*, 769 F Supp. at 1228 ("A 'totality of the evidence' approach is called for, and no single factor is conclusive").

you consider what weight, if any, to give to statements regarding Monroe's domicile, you may take into account whether the person making the statement had a motive to make a those statements,[66] such as a motive to avoid taxes.[67]

---

[64] *State of Texas*, 306 U.S. at 425, 59 S. Ct. at 576 ("While one's statements may supply evidence of the intention requisite to establish domicile at a given place of residence, they cannot supply the fact of residence there; and are of slight weight when they conflict with the fact.") (internal citations omitted); *Person*, 563 N.E.2d at 164 ("A self-serving statement of intent is not sufficient to establish that a new domicile has been acquired. A definite intention is required, which should be shown by evidence of acts undertaken in furtherance of the definite intention which make it manifest and believable.") (citing *Bayh*, 521 N.E.2d at 1317); *National Artists Mgmt. Co.*, 769 F. Supp. at 1228; *Willis v. Westin Hotel Co.*, 651 F. Supp. 598, 601 (S.D.N.Y. 1986) ("Although intent is crucial to domicile, mere subjective statements of affiliation with a particular state or of intent to make it one's home, of course, cannot suffice for a finding of state of citizenship if such statements are belied by objective indicia of actual residence and intent."); *In re Benjamin's Estate* 176 Misc. at 534, 27 N.Y.S.2d at 963 ("Whatever expressions of intent were made by him to change his domicile were prospective and lacking in finality. His contemporaneous and subsequent acts and declarations from December 16, 1936, to his death nullify the definiteness and fixity of any attempt to effect a change.").

[65] Restatement (Second) Conflict of Laws, Special Note On Evidence For Establishment Of A Domicil Of Choice (in determining domicile, "[a]ctions speak louder than words, and the courts rely most heavily upon them. . . . . [I]n final analysis, the courts place primary emphasis upon a person's home life and upon what he does rather than on what he says."); 28 C.J.S. Domicile § 46 (2007) ("Intent regarding domicile may be more satisfactorily shown by what is done than by what is said. It is said in this connection that actions speak louder than words[.]"); *In re Bourne's Estate*, 181 Misc. 238, 247, 41 N.Y.S.2d 336, 344 (Sur. Westchester County 1943), *aff'd*, 267 A.D. 876, 47 N.Y.S.2d 134 (2d Dep't 1944) ("this court has repeatedly disregarded declarations, when they conflict with acts, which are more persuasive in showing intent. . . . . The trend has been away from the former policy of attributing controlling weight to the formal declarations of a decedent as indicating his choice. More regard is now given to the test of whether the place of habitation is the permanent home of a person, with the range of sentiment, feeling and permanent association with it.") (citing *Gilbert v. David*, 235 U.S. 561, 35 S. Ct. 164; *State of Texas*, 306 U.S. 398, 59 S. Ct. 563)).

[66] *Bayh*, 521 N.E.2d at 1318 (Ind. 1988) ("A self-serving statement of intent is not sufficient to find that a new residence has been established. Intent and conduct must converge to establish a new domicile."); *Shanklin v. Shireman*, 659 N.E.2d 640, 643 (Ind. App. 1995) ("A self-serving statement of intent is not sufficient to find that a new residence has been established."); *State ex rel. Flaugher*, 226 Ind. at 36-37, 77 N.E.2d at 596 (in determining domicile for purposes of assigning children to a public school, the court discounted as "somewhat self-serving" parent's "declaration of intention to become a resident of Walkerton while the tuition matter was under discussion"; "declared intention of becoming a resident voter of Walkerton, done after the commencement of the difficulties in regard to the question of the school tuition of his children, was not such as to force the conclusion that he thereby lost his domicil in Marshall County and acquired one in St. Joseph County."); *In re Benjamin's Estate*, 176 Misc. at 528, 27 N.Y.S.2d at 958 (statements regarding domicile must be "tested by the motives of the persons who induced their making" and such statements "wills or other formal documents, inconsistent with the facts in the case, have been frequently disregarded by the courts."); *Kaskel v. New York State Tax Com'n*, 111 A.D.2d 431, 433, 488 N.Y.S.2d 322, 324 (N.Y. A.D. 3 Dept. 1985) (upholding decision that petitioner was a New York domiciliary where "[t]he only positive indications of petitioner's intent to become

You should also bear in mind that the two factors in determining domicile (physical presence in a state and evidence of an intent to make that state her home), must occur at the same time.[68] Hence, Monroe's domicile in a particular state is not established if you find that she was physically present in the state but did not, at the same time, demonstrate an intention to make that state her home. Domicile is similarly not established if you find that she intended to make a state her home but was not physically present in that state at the same time. Thus, once you decide where Monroe was domiciled during the time leading up to her death in August 1962, you should not decide that her domicile changed merely because she may have temporarily traveled

---

domiciled in the State of Florida were documentary statements made after this controversy arose."); 28 C.J.S. Domicile § 46 (2007) ("Declarations are of no avail . . . when they are evidently made for the purpose of creating evidence in favor of declarant, after he has become appreciative of the consequences of a change of domicile.").

[67] *State of Texas*, 306 U.S. at 425, 59 S. Ct. at 576 (statements of intention to establish domicile "are of slight weight when they conflict with the fact. This is the more so where, as here, decedent's declarations are shown to have been inspired by the desire to establish a nominal residence for tax purposes, different from his actual residence of fact. In such circumstances the actual fact as to the place of residence and decedent's real attitude and intention with respect to it as disclosed by his entire course of conduct are the controlling factors in ascertaining his domicile.") (internal citations omitted); *In re Bourne's Estate*, 181 Misc. 238, 246, 41 N.Y.S.2d 336, 343 (N.Y. Sur. 1943) ("That mere formal declarations to tax authorities and others, unaccompanied by facts consisted therewith, are insufficient to sustain a contention of change of domicile is now well settled."); *In re Michelsohn's Will*, 136 N.J. Eq. 387, 37 A.2d 118 (N.J. Prerog. Ct. 1944) (declarations as to place of domicil are not controlling where they are prompted by a desire to avoid taxation); *Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730-31 (7th Cir. 1991) (Posner, J.) (actions taken for purpose of avoiding taxes may be disregarded in determining domicile for diversity purposes); Restatement (Second) Conflict of Laws, Special Note on Evidence for Establishment of a Domicil of Choice (the accuracy of statements regarding a person's domicile "may be suspect because of their self-serving nature, particularly when they are made to achieve some legal objective, as the avoidance of taxation or the securing of a divorce.").

[68] *Bayh*, 521 N.E.2d at 1318 ("Intent and conduct must converge to establish a new domicile."); *State ex rel. Flaugher*, 226 Ind. at 35, 77 N.E.2d at 595 ("It must be an intention coupled with acts evidencing that intention to make the new domicil a home in fact."); 28 C.J.S. Domicile § 11 (2007) ("as frequently stated, the fact of residence or physical presence and the intent to remain must concur, or be coupled, or be found together").

to another state, unless you also find that at the same time she intended to make that state her home.[69]

Lastly, Monroe may have had different domiciles for different purposes.[70]  For example, she may have been considered a domiciliary of one state for purposes of probating her will or for paying taxes, but a domiciliary of another state for purposes of her right to publicity.  Thus, the fact that Marilyn Monroe's will was probated in a certain state is not conclusive when determining her domicile for purposes of whether she can pass a right of publicity.[71]  Similarly,

---

[69] *Bayh* 521 N.E.2d at 1317 ("A person who leaves his place of residence temporarily, but with the intention of returning, has not lost his original residence."); *Person*, 563 N.E.2d at 164 ("A person who temporarily leaves his place of residence with the intention of returning has not lost his original residence."); *Spanos v. Skouras Theatres Corp.*, 364 F.2d 161, 164 (2d Cir. 1966) (attorney's domicile not changed because he moved to another state to practice law for specific case for limited time); 15 James W.M. Moore, *Federal Practice* § 102.35[2], p. 102-75 (3rd ed. 2007) ("a domicile is not lost by mere absence from the domicile state"); 25 Am. Jur. 2d Domicil § 25 ("A person does not abandon his or her established domicil by leaving it for a period, if he or she genuinely intends to return and not to acquire a domicil elsewhere."); 28 C.J.S. Domicile § 17 (2007) ("Temporary residence, even if long, merely for the purpose of transacting business or of engaging in employment, or participating in a training program, or acquiring an education or some art or skill, or for the sake of health or pleasure, with the intention of returning to the original home, is not sufficient for the acquisition or change of domicile.").

[70] *Wit v. Berman*, 306 F.3d 1256, 1260 (2d Cir. 2002) ("one may be legally domiciled in different places for different legal purposes"); *Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730 (7th Cir. 1991) (Posner, J.) (in drawing legal conclusions about domicile "it is always helpful to have in mind the purpose for which the conclusion is being drawn"); *Acridge v. Evangelical Lutheran Good Samaritan Soc.*, 334 F.3d 444, 451-52 (5th Cir. 2003) ("while the fact that Medicaid law makes someone a Texas domiciliary for Medicaid purposes could be a factor to be considered in determining domicile for diversity purposes, it is not conclusive on that question"; defendant not collaterally estopped by fact that decedent's will was probated in New Mexico from arguing that he was domiciliary of another state for diversity purposes); *Gladwin v. Power*, 21 A.D.2d 665, 665, 249 N.Y.S.2d 980, 982 (1st Dep't), *aff'd*, 250 N.Y.S.2d 807 (1964) ("While there may only be one domicile for any particular purpose in the law it does not necessarily follow that the same concept of domicile will inevitably be the same in different areas of law."); Restatement (Second) Conflict of Laws § 11 ("Every person has a domicil at all times and, *at least for the same purpose*, no person has more than one domicil at a time.") (emphasis added); *id.* comment *o* ("Domicil serves a large number of purposes, and undoubtedly somewhat different reasons and motivations underlie its use for certain of these purposes.  It may therefore be expected that the courts will on occasion be either more or less inclined to find a person domiciled in a state for one purpose (as to give him a divorce) than for another purpose (as to subject him to substituted service or to certain forms of taxation). . . . . To reiterate, the core of domicil is everywhere the same.  But in close cases, decision of a question of domicil may sometimes depend upon the purpose for which the domicil concept is used in the particular case.").

[71] Restatement (Second) Conflict of Laws § 11.

even though another court might have determined Monroe was domiciled in a certain, that in no way prevents you from finding that she was domiciled in another state.[72] You are free to decide Monroe's state of domicile for purposes of her right of publicity at the time she died based on all the relevant facts that have been presented in light of law as I have instructed you.

### B.  Public Domain Instructions

The second claim is brought by the Marilyn Monroe Parties for a declaration that certain of the Shaw Parties' photographs are in the public domain and are therefore not entitled to copyright protection.

### 1.    Copyright in General

First, let me explain a little bit about copyright protection.  Under the United States Copyright Act, if an author, or creator, of a original work, such as music, a movie, a painting, or a photograph, complies with certain requirements to obtain a copyright, the author generally has the right to prevent others from copying, displaying or distributing the work for a specific period of time.[73]  That period of time is known as the copyright term.  However, if the copyright term expires, or if the author does not comply with the requirements for obtaining a valid copyright,

---

[72] *In re Nye's Estate*, 157 Ind. App. 236, 299 N.E.2d 854, 861 (1973) (affirming Indiana trial court's conclusion that decedent was domiciled in Indiana, even though a Florida court had decided differently); Restatement (Second) Conflict of Laws § 11, comment n. ("The issue as to the location of a person's domicil may arise in independent proceedings with different parties in two or more states. In such instances, conflicting conclusions are sometimes reached either because (1) the states involved have different rules on the subject of domicil or (2) even though the rules of domicil are the same, different inferences are drawn by the courts from the facts presented. Unless there is a common reviewing tribunal, each decision stands.").

[73] *Stewart v. Abend*, 495 U.S. 207, 219, 110 S. Ct. 1750, 1760 (1990); 17 U.S.C. § 1 (1909 Act). The 1909 Act applies to works created before 1978. *See Martha Graham School and Dance Foundation, Inc. v. Martha Graham Center of Contemporary Dance, Inc.*, 380 F.3d 624, 632 (2d Cir. 2004).  It is undisputed that all photographs of Marilyn Monroe were created before 1978.

the work is no longer subject to copyright protection, and is in what is known as the "public domain." A work that is in the public domain may generally be used by anyone.[74]

The reason copyright protection only lasts for a specific period of time is to balance two competing interests. On the one hand, the creator of a work has the right to reap the benefit of the his or her creativity and effort. On the other hand, progress in art and science requires that everyone have the right to create new works using works created by others. It is not for you to question the length of copyright protection or the laws for acquiring copyright protection in the first place. You are simply to apply laws, as I explain them, to the facts as you find them.

It is also important to understand that ownership of a copyright is different from ownership of a material object in which the work is embodied.[75] Thus, a person who owns a photograph does not necessarily own a copyright in that photograph. Copyright is separate from ownership of a physical thing.

### 2.    Copyright Notice Requirement

The first issue is whether the Shaw Parties complied with the requirement of giving proper notice in order to obtain copyright protection. The law applicable to the photographs at issue in this case requires that a copyright owner place a notice of copyright on all published copies of the work in order to give reasonable notice of the owner's contention that this is a copyrighted work.

---

[74] 17 U.S.C. § 8 (1909 Act, as amended, Aug. 12, 1970) ("No copyright shall subsist in the original text of any work which is in the public domain[.]").

[75] 17 U.S.C. § 27 (1909 Act, as amended, July 30, 1947) ("The copyright is distinct from the property in the material object copyrighted, and the sale or conveyance, but gift or otherwise, of the material object shall not of itself constitute a transfer of the copyright, nor shall the assignment of the copyright constitute a transfer of the title to the material object[.]").

A proper copyright notice includes: (1) the letter C in a circle, or the word "copyright," or a proper abbreviation like "copr.;" (2) the year of first publication; and (3) the name of the copyright owner.[76]

If you find that any of the photographs at issue in this case were published before 1978 without a proper copyright notice, the photograph automatically passed into the public domain.[77] Similarly, if you find that any photographs were published as part of a group of photographs or as part of a collective work, such as a newspaper or magazine, without a copyright notice on the

_____

[76] 17 U.S.C. § 19 (1909 Act, as amended, Oct. 15, 1971):

> The notice of copyright required by section 10 of this title shall consist either of the word "Copyright", the abbreviation "Copr.", or the symbol ©, accompanied by the name of the copyright proprietor, and if the work be a printed literary, musical, or dramatic work, the notice shall include also the year in which the copyright was secured by publication. In the case, however, of copies of works specified in subsections (f) to (k), inclusive, of section 5 of this title [including photographs], the notice may consist of the letter C enclosed within a circle, thus ©, accompanied by the initials, monogram, mark or symbol of the copyright proprietor: *Provided,* That on some accessible portion of such copies or of the margin, back, permanent base, or pedestal, or of the substance on which such copies shall be mounted, his name shall appear.

[77] 17 U.S.C. § 10 (1909 Act, as amended, July 30, 1947) ("Any person entitled thereto by this title may secure copyright for his work by publication thereof with the notice of copyright required by this title; and such notice shall be affixed to each copy thereof published or offered for sale in the United States by authority of the copyright proprietor[.]"); *see Martha Graham School and Dance Found., Inc. v. Martha Graham Center of Contemporary Dance, Inc.*, 380 F.3d 624, 633 (2d Cir. 2004) ("In the absence of adequate statutory notice at publication, the work was injected into the public domain."); *Milton H. Greene Archives, Inc. v. BPI Comms., Inc.*, 378 F. Supp. 2d 1189, 1195 (C.D. Cal. 2005) ("Upon general publication of a work, the copyright owner could obtain federal protection for the published work by complying with the requirements of the 1909 Act. 'If the owner failed to satisfy the [1909] Act's requirements, the published work was injected irrevocably into the public domain.'") (quoting *La Cienega Music Co. v. ZZ Top*, 53 F.3d 950, 952-53 (9th Cir. 1995)); 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* ("*Nimmer*") § 702[C][1], at 7-15 (2007) ("Under the 1909 Act, a work had to bear a valid copyright protection in order to secure copyright protection. Works with defective notice were injected into the public domain immediately upon publication, from which neither the current Act nor the [Berne Convention Implementation Act of 1988] furnished any possibility of rescue. Thus, as to all works published anywhere in the world prior to January 1, 1978, protection is gauged initially under the strictures of the 1909 Act.").

individual photograph, it automatically passed into the public domain.[78] Publishing occurs

when, with the consent of the copyright owner, copies of a photograph are sold, leased, loaned,

given away, or in any way made available to the general public.[79]

You should also keep in mind that once a photograph enters the public domain, copyright

protection cannot be revived by later publication of the photograph with a copyright notice, even

as part of a larger collection of photographs.[80] Similarly, once a photograph enters the public

domain, the filing of a certification of registration cannot revive copyright protection. Making a

public domain photograph smaller or larger will also not establish protection for any part of the

photograph that was already in the public domain. In other words, once a photograph enters the

public domain, it stays there forever.

---

[78] *Milton H. Greene Archives, Inc. v. BPI Communications, Inc.*, 378 F. Supp. 2d at 1196-97 (C.D. Cal. 2005) ("When a work is published in a larger copyrighted collective work, the failure to place a copyright notice on the individual work forfeits the individual's copyright. . . . . Publication of a derivative work publishes whatever portion of the original work is incorporated into the derivative work.").

[79] 17 U.S.C. § 26 (1909 Act, as amended, October 15, 1971) ("In the interpretation and construction of this title "the date of publication" shall in the case of a work of which copies are reproduced for sale or distribution be held to be the earliest date when copies of the first authorized edition were placed on sale, sold, or publicly distributed by the proprietor of the copyright or under his authority, and the word "author" shall include an employer in the case of works made for hire.").

[80] 17 U.S.C. § 7 (1909 Act, as amended, July 30, 1947):

> Compilations or abridgements, adaptations, arrangements, dramatizations, translations, or other versions of works in the public domain or of copyrighted works when produced with the consent of the proprietor of the copyright in such works, or works republished with new matter, shall be regarded as new works subject to copyright under the provisions of this title; but the publication of any such new works shall not effect the force or validity of any subsisting copyright upon the matter employed or any part thereof, or be construed to imply an exclusive right to such use of the original works, or to secure or extend copyright in such original works.

### 3.     Work for Hire

Another instance where an author of a work does not own the copyright to that work is when the work was made for hire.  In that case, the copyright is owned by the hiring party, not the author, unless there was an agreement giving the copyright ownership to the author.[81]

An author need not be a formal employee, in the way that word is ordinarily used, to make a work for hire under the Copyright Act.[82]  A work is considered to have been made for hire when an author's "work is produced at the instance and expense" of the hiring party,[83] and when the hiring party has the right "to direct and supervise the manner in which the [author] performs his work."[84]  The hiring party need not actually exercise its right to direct and supervise the manner in which the work is created for the work to be considered made for hire.[85]  For example,

> where a photographer takes photographs of a person who goes or is sent to him in the usual course, and is paid for the photographs and for his services in taking them, the [] copyright is [owned by] the [person who is being photographed] or [] the person [who arranged for that person to be photographed], and not [by] the photographer; but the photographer [owns the] copyright where he solicits the [person who is being photographed] to come to his studio and takes the photographs gratuitously for his own purposes and at his own expense.[86]

---

[81] 17 U.S.C. § 26 (1909 Act) ("In the interpretation and construction of this title . . . the word 'author' shall include an employer in the case of works made for hire."); *see Martha Graham School and Dance Foundation, Inc.*, 380 F.3d at 634 ("[Under the 1909 Act,] with respect to works for hire, the employer is legally regarded as the 'author,' . . . .  If a work is a work for hire under the 1909 Act, the employer as statutory 'author' owns the original term, and the renewal term vests in the employer if the employer makes an application for renewal within the last year of the original term.").

[82] *Playboy Enterprises, Inc. v. Dumas*, 53 F.3d 549, 554 (2d Cir. 1995) (work for hire under 1909 Act may extend beyond "traditional employer/employee relationship" to include independent contractors).

[83] *Siegel v. Nat'l Periodical Pubs., Inc.*, 508 F.2d 909, 914 (2d Cir. 1974).

[84] *Playboy Enter., Inc.*, 53 F.3d at 554.

[85] *Martha Graham School and Dance Foundation, Inc.*, 380 F.3d at 635.

[86] *Yardley v. Houghton Mifflin Co.*, 108 F.2d 28, 30-31 (2d Cir. 1939).

31

Again, if you find, applying the principles I have just explained to you, that Shaw created any photograph as a work for hire, the hiring party, not Shaw, is presumed to be the author of the work unless there was an agreement to the contrary.[87]

### 4.    Duration of Copyright

Assuming that the photographs at issue were not published before 1978 without notice, and that they were not works made for hire, the next issue is whether the photographs' copyright term is still in effect, or whether the copyright term has expired and the photographs have therefore entered the public domain.

For photographs at issue in this case that were published with a copyright notice before 1978 or registered with the United States Copyright Office before 1978, or both, the copyright term began on the date the photographs were first published or registered.[88] From that date of

---

[87] *Playboy Enter., Inc.*, 53 F.3d at 554.

[88] 17 U.S.C. § 24 (1909 Act, as amended, July 30, 1947):

> The copyright secured by this title shall endure for twenty-eight years from the date of first publication . . . . *Provided*, That in the case of any posthumous work or of any periodical, cyclopedic, or other composite work upon which the copyright was originally secured by the proprietor thereof, or any work copyrighted by a corporate body (otherwise than as assignee or licensee of the individual author) or by an employer for whom such work is made for hire, the proprietor of such copyright shall be entitled to a renewal and extension of the copyright shall be entitled to a renewal and extension of the copyright in such work for the further term of twenty-eight years when application for such renewal and extension shall have been made to the copyright office and duly registered therein within one year prior to the expiration of the original term of copyright: *And provided further*, That in the case of any other copyrighted work, including a contribution by an individual author to a periodical or to a cyclopedic or other composite work, the author of such work, if still living, or the widow, widower, or children of the author, if the author be not living, or if such author, widow, widower, or children be not living, then the author's executors, or in the absence of a will, his next of kin shall be entitled to a renewal and extension of the copyright in such work for a further term of twenty-eight years when

first publication or registration, the copyright protection lasted for a term of 28 years, plus a second term of 28 years if the author filed a renewal registration with the United States Copyright Office in the last year of the first 28 year term.[89]  If the author did not file a renewal registration in the last year of the first 28 year term, the photograph is not subject to copyright protection and is in the public domain.[90]

For the photographs at issue in this case that were published with a copyright notice before 1978 or registered with the United States Copyright Office before 1978, or both, and that were not already in the public domain before 1978, the original copyright term is still 28 years from the date of publication with notice or registration, but the second copyright term is 67 years, rather than 28 years.[91]  Again, though, the author is only entitled to a second copyright term if he filed a renewal registration with the Copyright Office during the last year of the original 28 year term.[92]  If the photograph *was* already in the public domain before 1978, the copyright protection cannot be revived, and the work remains in the public domain.

---

application for such renewal and extension shall have been made to the copyright office and duly registered therein within one year prior to the expiration of the original term of copyright: *And provided further*, That in default of the registration of such application for renewal and extension, the copyright in any work shall determine at the expiration of twenty-eight years from first publication.

[89] *Id.*

[90] *Id.*; *see Faulkner v. Nat'l Geographic Soc.*, 211 F. Supp. 2d 450, 463 (S.D.N.Y. 2002) ("Failure to make a renewal application during the twenty-eight year resulted in the work entering the public domain.  The rule was (and for our purposes is) undeniably strict."), *aff'd*, 409 F.3d 26 (2d cir. 2005); 3 *Nimmer* 9.05[A][1], at 9-42 ("Under the 1909 Act, t]her formality of renewal was hence an absolute condition to copyright subsistence past the 28th year.").

[91] 17 U.S.C. § 304(a) (1976 Act, as amended).

[92] 3 *Nimmer* 9.05[A][1], at 9-42 ("even under the 1976 Act, the third *proviso* of Section 304(a) provided at enactment that failure to comply with the formality of renewal registration doomed the copyright in the work after expiration of the initial term of 28 years.").

For photographs that were *not* published with a notice of copyright before 1978, and *not* registered with the Copyright Office before 1978, the copyright term began on January 1, 1978 and lasts for a period of the life of the author plus 70 years.[93]

### 5.    Registration within Five Years of Publication as *Prima Facie* Evidence of Copyright

I will mention one other rule about copyright registration. A copyright certificate, which can be obtained by registering a work with the Copyright Office, creates a presumption that the work is subject to valid copyright protection. Of course, that presumption of validity is rebutted if, under the law as I have instructed you, the evidence shows that the photograph is not actually entitled to copyright protection.[94] In addition, a certificate of registration obtained more than five years after a work is first published does not raise a presumption of validity.[95]

### 6.    Assignment of Copyright Interest

An owner of a valid copyright may transfer, sell, convey to another person all or part of the copyright owner's interest in the copyright. Of course, such a transfer does not shorten or enlarge the copyright term; it merely transfers whatever copyright interest the author had to the

---

[93] 17 U.S.C. § 302(a), 303(a); 3 *Nimmer* § 9.09[A], at 9-132 ("Thus, for the most part, the term of protection for works the subject of common law copyright until the effective date of the current [1976] Act becomes the life of the author plus 70 years.").

[94] 17 U.S.C. § 209 (1909 Act, as amended, July 30, 1947) ("Said certificate [of registration] shall be admitted in any court as prima facie evidence of the facts stated therein."); *Gaste v. Kaiserman*, 863 F.2d 1061, 1065 (2d Cir. 1988) ("we follow the majority rule and hold that under section 209 of the 1909 Act, a valid certificate of registration creates a rebuttable presumption of compliance with the requirements for validity, including the statutory requirement of initial publication with notice.").

[95] 17 U.S.C.A. § 410(c) ( 1976 Act, as amended) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court."); 1 *Nimmer* § 4.01[A], at 4-4 ("registration in the Copyright Office must occur within five years of first publication in order for the registration certificate to constitute *prima facie* evidence of the validity of the copyright.").

other person. To be valid, however, the transfer must be in writing and signed by the copyright owner.[96]

### 7. Copyrights to Individual Photographs in a Larger Collection

Lastly, you should also bear in mind that copyrights may attach to individual photographs, even if they are published as part of a collection of other works.[97] Thus, you should apply the law as I have explained it to you to each photograph that is in dispute.

Dated: New York, New York
    February 1, 2008

LOEB & LOEB LLP

By: _____
    Barry I. Slotnick
    345 Park Avenue
    New York, New York 10154-1895
    (212) 407-4000

    *Attorneys for Defendant/Consolidated Plaintiff*
    *Marilyn Monroe LLC*

SOVICH MINCH LLP

By: _____
    Theodore J. Minch (Admitted *Pro Hac Vice*)
    10099 Chesapeake Drive, Suite 100
    McCordsville, IN 46055
    (317) 335-3601

    *Attorneys for Defendant/Consolidated Plaintiff*
    *CMG Worldwide, Inc.*

---

[96] 17 U.S.C. § 28 (1909 Act, as amended, July 30, 1947) ("Copyright secured under this title or previous copyright laws of the United States may be assigned, granted, or mortgaged by an instrument in writing signed by the proprietor of the copyright, or may be bequeathed by will.").

[97] 17 U.S.C. § 3 (1909 Act, as amended, Oct. 31, 1951) ("The copyright upon composite works or periodicals shall give to the proprietor thereof all the rights in respect thereto which he would have if each part were individually copyrighted under this title.").