UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————x

SHAW FAMILY ARCHIVES, LTD.,
EDITH MARCUS, META STEVENS, and
BRADFORD LICENSING ASSOCIATES,

         Plaintiffs/Consolidated Defendants,

-against-                           05 Civ. 3939 (CM)

CMG WORLDWIDE, INC. and
MARILYN MONROE, LLC,

         Defendants/Consolidated Plaintiffs.

———————————————————————x

## PLAINTIFFS' PROPOSED JURY INSTRUCTIONS

Plaintiffs/Consolidated Defendants Shaw Family Archives, Ltd., Edith Marcus, and Meta Stevens (hereinafter, collectively, the "Shaw Family") submit their proposed jury instructions set forth below.  In addition, Consolidated Defendant, Bradford Licensing Associates, hereby joins in these proposed jury instructions, and, although not a plaintiff in this action, shall be deemed to be included in any reference to the "Shaw Family" herein.

[To be read after the jury is empanelled but before opening statements.]

## PROPOSED OPENING REMARKS OF THE COURT

Before we begin the trial, I'd like to describe how the trial will be conducted.  At the end of the trial, I will give you more detailed guidance on how you will go about reaching your decision.

Let's turn now to this specific case.  The plaintiffs are the Shaw Family Archives, Ltd., Edith Marcus, and Meta Stevens.  The Plaintiffs allege that Edith Marcus and Meta Stevens are the joint owners of the copyrights in photographs taken of Marilyn Monroe by their father Sam Shaw.  It is their position that the copyrights in Sam Shaw's photographs were placed in a trust that named Ms. Marcus and Ms. Stevens as the beneficiaries.  Ms. Marcus and Ms. Stevens,

license the copyrights to Plaintiff Shaw Family Archives, Ltd.  Defendant Bradford Licensing Associates is the licensing agent for the Shaw Family Archives, Ltd.

The defendants are CMG Worldwide, Inc. and Marilyn Monroe, LLC, referred to together as MMLLC.  It is not disputed that MMLLC is the current owner of Marilyn Monroe's testimentary residuary estate, which includes whatever property was not specifically given away in Marilyn Monroe's will to named individuals.  The parties do, however, dispute exactly what property was included in the residuary estate.  It is also undisputed that Marilyn Monroe's will bequeathed her residuary estate to Lee Strasburg, her acting coach in New York.  Mr. Strasberg later married Anna Strasburg, who, after he died, inherited the residuary of Mr. Strasburg's estate which included whatever he received from Marilyn Monroe's estate.  MMLLC claims in July 2001, Ms. Strasberg transferred ownership of whatever remained of Marilyn Monroe's residuary estate to MMLLC.

The Shaw Family alleges that in 1955, Marilyn Monroe moved from California to New York and thereafter at some time between the mid to late 1950's established herself as a legal domicile of the State of New York.  MMLLC alleges that at the time of her death in August of 1962, Marilyn Monroe had moved back to California and legally changed her domicile from New York to California.

MMLLC denies that Marilyn Monroe was a domiciliary of New York State at any time in the mid to late 1950's and early 1960's.  The Shaw Family denies that Marilyn Monroe had legally abandoned her domicile in New York and legally established a new domicile in California at the time of her death in August of 1962.

The first step in the trial will be the opening statements.  The Shaw Family in its opening statement will tell you about the evidence that it intends to put before you, so that you will have a preview of what its case is going to be about.  After the Shaw Family's opening statement, the attorney for MMLLC will make his opening statements.  At this point in the trial, neither side will have offered evidence.  The opening statements by counsel for the parties is not evidence. Their purpose is simply to help you, the jury, understand what the case will be about, what the evidence will be, and what facts in dispute that either side will attempt to prove during the trial.

Next the Shaw Family will offer evidence that it says supports its claim against MMLLC that Marilyn Monroe died a domiciliary of New York State. The Shaw Family's evidence in this regard will consist of the testimony of witnesses as well as documents.

Some of you have probably heard the terms "circumstantial evidence" and "direct evidence." Do not be concerned with these terms at this time. You are to consider all the evidence given in this trial.

After the Shaw Family's evidence, MMLLC will present evidence on its behalf that will consist of the testimony of witnesses as well as documents. The Shaw Family has the burden of proving that Marilyn Monroe was a domiciliary of New York beginning at some time in the mid to late 1950's, and you may not find so unless you unanimously find that the Shaw Family has proven this fact by clear and convincing evidence.

If you find that the Shaw Family proved that Marilyn Monroe was a New York domiciliary prior to her death, MMLLC then has the burden of proving that Marilyn Monroe had, at the time of her death on August 5, 1962, legally changed her domicile to California. You may not find so unless you unanimously find that MMLLC has proven this fact by clear and convincing evidence.

After you have heard all the evidence on both sides, the Shaw Family and MMLLC will each be given time for their closing arguments. I just told you that the opening statements are not evidence. This same rule applies to the parties' counsels' closing arguments. They are not evidence either. In their closing arguments, the lawyers for the Shaw Family and MMLLC will attempt to summarize their cases by referring to the evidence presented and arguing what conclusions should be drawn from the evidence that was presented.

The final part of the trial occurs when I instruct you about the rules of law that you are to use in reaching your verdict. After hearing my instructions, you will leave the courtroom together to make your decision. Your deliberations will be secret. You will never have to explain your verdict to anyone if you choose not to.

Now that I have described the trial itself, let me explain the jobs that you and I are to perform during the trial. I will decide which rules of law apply to this case. I will make those

decisions in response to questions raised by the parties as we go along and also in the final instructions given to you after the evidence and arguments are completed. You will decide whether the Shaw Family has proved, by clear and convincing evidence, that Marilyn Monroe established herself as a domiciliary of New York beginning at some time in the mid to late 1950's. If the Shaw Family has met its burden of proof, you will then decide whether MMLLC has proved, by clear and convincing evidence, that Marilyn Monroe had legally changed her domicile to California at the time she died on August 5, 1962.

During the course of the trial, you should not talk with any witness, or with the Plaintiffs or Defendants, or their families, or with any of the lawyers in the case. Please don't talk with them about any subject at all that may pertain to this case or the trial. As you enter or leave the Court — in the halls or the elevator, for example — you may see one of the lawyers for the Plaintiffs or the Defendants. If you see them, please do not in any way acknowledge them or speak with them. I am advising the Plaintiffs, Defendants, and the lawyers not to acknowledge you in any way or speak with you if they see you.

In addition, during the course of the trial you should not talk about the trial with anyone else — not your family, nor your friends, nor the people you work with. Also, you should not discuss this case amongst yourselves until I have instructed you on the law and you have gone to the jury room to make your decision at the end of the trial. It is important that you wait until all the evidence is received and you have heard my instructions on the rules of law before you deliberate among yourselves.

Let me add that during the course of the trial you will receive all the evidence you properly may consider to decide the case. Because of this, you should not attempt to gather any information on your own which you think might be helpful. Do not engage in any outside reading on this case, do not attempt to visit any places mentioned in the case, and do not in any other way try to learn about the case or matters pertaining to the case outside the courtroom.

Now that the trial has begun you must not read about it in the newspapers, on the Internet, or watch or listen to television or radio reports of what is happening here.

The reason for these rules, as I am certain you will understand, is that your decision in this case must be made solely on the evidence presented at the trial.

At times during the trial, a party may make an objection to a question asked by another party, or to an answer by a witness. This simply means that a lawyer for the Shaw Family or MMLLC has requested that I make a decision on a particular rule of law. Do not draw any conclusion from such objections or from my rulings on the objections. These only relate to the legal questions that I must determine and should not influence your deliberations or thinking about the case. If I sustain an objection to a question, the witness may not answer it. Do not attempt to guess what answer might have been given had I allowed the question to be answered or draw any adverse inference from this. Similarly, if I tell you not to consider a particular statement, you should not refer to that statement in your later deliberations.

During the course of the trial I may ask a question of a witness. If I do, that does not indicate I have any opinion about the facts in this case or that the question pertains to any particularly material issue in the case.

Finally, let me clarify something you may wonder about later. During the course of the trial I may have to interrupt the proceedings to confer with the attorneys about the rules of law that should apply here. Sometimes we will talk here, at the bench. But some of these conferences may take time. So, as a convenience to you, I will excuse you from the courtroom. I will try to avoid such interruptions as much as possible, but please be patient even if the trial seems to be moving slowly because conferences often save time for all of us.

I will give you a much fuller explanation of the law concerning domicile at issue here after all the witnesses have testified and the documentary evidence has been considered and the case is ready to be submitted to you for your verdict. This was just an introduction.

## PRELIMINARY INSTRUCTIONS[1]
## PRELIMINARY INSTRUCTION NO. 1:  DUTY OF JURY

Ladies and gentlemen:  I want to take a few minutes to tell you something about your duties as jurors and to give you some instructions.  At the end of the trial I will give you more detailed instructions.  Those instructions will control your deliberations.

It will be your duty to decide from the evidence what the facts are.  You, and you alone, are the judges of the facts.  You will hear the evidence, decide what the facts are, and then apply the law, which I will give to you, to those facts.  That is how you will reach your verdict.  In doing so, you must follow that law whether you agree with it or not.  The evidence will consist of the testimony of witnesses, documents, and other things received into evidence as exhibits and any facts on which the parties agree or which I may instruct you to accept.

You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be.

**SOURCE:**   Ninth Circuit Model Civil Jury Instructions, Instruction 1.1.

---

[1] "Preliminary instructions are desirable for a number of reasons:  substantive instructions provide a framework which will help the jury understand the issues in the case and organize and recall the evidence; procedural instructions will help jurors deal with questions of credibility and inference as they come up, rather than retrospectively."  William Schwarzer, *Reforming Jury Trials*, 1990 U. CHI. LEGAL F. 119, *reprinted in* 132 F.R.D. 575, 583 (1991).

## PRELIMINARY INSTRUCTION NO. 2:  CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, you are not to discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else, nor are you allowed to permit others to discuss the case with you.  If anyone approaches you and tries to talk to you about the case please let me know about it immediately;

Second, do not read any news stories or articles or listen to any radio or television reports about the case or about anyone who has anything to do with it;

Third, do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me simply give a signed note to the [clerk] [law clerk] to give to me; and

Fifth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence.  Keep an open mind until then.

**SOURCE**:   Ninth Circuit Model Jury Instruction 1.12.

## PRELIMINARY INSTRUCTION NO. 3:
## NO TRANSCRIPT AVAILABLE TO JURY

At the end of the trial, you will have to make your decision based on what you recall of the evidence.  You will not have a transcript of the trial.  I urge you to pay close attention to the testimony as it is given.

**SOURCE**:  Ninth Circuit Model Jury Instruction 1.13.

**PRELIMINARY INSTRUCTION NO. 4:  TAKING NOTES**

If you wish, you may take notes to help you remember what witnesses said.  If you do take notes, please keep them to yourself.  Do not let note-taking distract you so that you do not hear other answers by witnesses.  When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room].

Whether or not you take notes, you should rely on your own memory of what was said. Notes are only to assist your memory.  You should not be overly influenced by the notes.

**SOURCE:**    Ninth Circuit Model Jury Instruction 1.11; 1 O'Malley, Grenig, & Lee, Federal Jury Practice and Instructions (Civil) ("O'Malley"), Chapter 4, Appendix E (6th Ed. 2007).

**PRELIMINARY INSTRUCTION NO. 5:**
**BURDEN OF PROOF-DOMICILE-CLEAR AND CONVINCING EVIDENCE**

The claim at issue is a civil claim regarding the domicile of Marilyn Monroe at the time of her death on August 5, 1962. The parties have the burden of proving Ms. Monroe's domicile by what is called clear and convincing evidence.[2] When I say that a particular party must prove something by "clear and convincing evidence," this is what I mean: When you have considered all of the evidence, you are convinced that it is highly probable that it is true. This is a higher burden of proof than "more probably true than not true." Clear and convincing evidence must persuade you that it is "highly probably true."[3]

If the Shaw Family meets their burden on the issue of domicile and establishes Ms. Monroe was domiciled in New York, your verdict must be for the Shaw Family unless MMLLC meets their burden and establishes that Ms. Monroe's domicile was California at the time of her death on August 5, 1962. If MMLLC fails to meet this burden, your verdict must be for the Shaw Family.

In evaluating whether the Shaw Family and MMLLC have met their burdens on their claims, you should also know that the law does not require parties to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matter in issue at this trial. Nor does the law require parties to produce as exhibits all papers or other things mentioned in the evidence in the case.

You should base your decision on all of the evidence, regardless of which party presented it.

Some of you may have heard of proof beyond a reasonable doubt, which is a proper standard in a criminal trial. This is a civil trial, *not* a criminal trial. Because this is a civil case, the reasonable doubt standard does *not* apply to this case, and you should put it out of your mind.

---

[2] *See Bank of India v. Subramanian*, 2007 U.S. Dist. LEXIS 35148, at *8 (S.D.N.Y. May 15, 2007) (quoting *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 243–44 (2d Cir. 1984)).
[3] Seventh Circuit Model Jury Instruction 1.28.

**SOURCE:**    Ninth Circuit Model Jury Instruction 1.13; Third Circuit Model Jury Instruction 1.10 (2006); Stock jury instructions in a civil case received from the chambers of the Honorable John L. Kane (D. Col.); 4 Sand, J. Siffert, W. Loughlin, S. Reiss, N. Batterman, Modern Federal Jury Instructions (Civil) ("Sand"), Instruction No. 73-2.

## PRELIMINARY INSTRUCTION NO. 6:  WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

(1)      the sworn testimony of any witness;

(2)      the exhibits which are received into evidence; and

(3)      any facts or exhibits to which the parties stipulate.

**SOURCE:**   Ninth Circuit Model Jury Instruction 1.3.

## **PRELIMINARY INSTRUCTION NO. 7:  WHAT IS NOT EVIDENCE**

The following things are not evidence, and you must not consider them as evidence in deciding the facts of this case:

(1)      statements and arguments by the lawyers;

(2)      questions and objections by the lawyers;

(3)      testimony that I instruct you to disregard;

(4)      anything you may see or hear when the trial is not in session even if what you see or hear is done or said by one of the parties or by one of the witnesses, and

(5)      anything you might have inadvertently learned about this case, the parties, or lawyers when the trial is not in session.

**SOURCE:**  Ninth Circuit Model Jury Instruction 1.4.

## PRELIMINARY INSTRUCTION NO. 8:
## CIRCUMSTANTIAL EVIDENCE

There are two types of evidence from which a jury may find the truth as to the facts of a case. One is direct evidence, such as the testimony of an eyewitness, and the other is indirect or circumstantial evidence, which is the proof of a chain of circumstances pointing to the existence or non-existence of certain facts.

Here is a simple example of circumstantial evidence that is often used in court. Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom has no windows and you could not look outside. As you were sitting here, someone walked in with an umbrella that was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining. That is all there is to circumstantial evidence. You infer, based on reason, experience and common sense from one established fact the existence or non-existence of some other fact. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that the jury find the facts in accordance with the standard of proof in the case.

You are to consider only the evidence in the case. But in your consideration of the evidence you are not limited solely to what you see and hear as the witnesses testify. You are permitted to draw, from facts that you find have been proved, such reasonable common sense inferences that you believe are justified.

**SOURCE:** 2 Freedman § 6 at 744; *United States v. Libera*, 989 F.2d 596, 601 (2d Cir. 1993), *cert. denied*, 510 U.S. 976 (1993); *SEC v. Geon Industries, Inc.*, 531 F.2d 39, 46 (2d Cir. 1976); *SEC v. Singer*, 786 F. Supp. 1158, 1164–65 (S.D.N.Y. 1992); *SEC v. Musella*, 748 F. Supp. 1028, 1038 (S.D.N.Y. 1989), *aff'd*, 898 F.2d 138 (2d Cir. 1990), *cert. denied*, 498 U.S. 816 (1990).

## PRELIMINARY INSTRUCTION NO. 9:
## ABSENCE OF EVIDENCE

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial.  Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

**SOURCE:**   Seventh Circuit Model Jury Instruction 1.18.

## PRELIMINARY INSTRUCTION NO. 10:  STIPULATIONS OF FACT

The parties have agreed to certain facts relevant to this case.  You will also receive a written list of those agreed-upon facts, called "stipulations." Because the parties have agreed to these facts, neither the Shaw Family or MMLLC need to prove them, and you should treat these facts as having been proved.

The Shaw Family and MMLLC have agreed to the following stipulations of fact:


[INSERT STIPULATIONS OF FACT]


**SOURCE:**   Ninth Circuit Model Jury Instruction 2.4 (modified).

**Comment:**   When parties enter into stipulations as to material facts, those facts will be deemed to have been conclusively proved, and the jury may be so instructed. 3 O'Malley, § 102.11 (5th Ed.); *Suchowitz v. U.S.*, 140 F.3d 381, 382 (2d Cir. 1998).

### CAUTIONARY INSTRUCTION FIRST RECESS

We are about to take our first break during the trial, and I want to remind you of the instruction I gave you earlier.  Until the trial is over, you are not to discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else, nor are you allowed to permit others to discuss the case with you.  If anyone approaches you and tries to talk to you about the case, please let me know about it immediately.  Do not read or listen to any news reports of the trial.  Finally, you are reminded to keep an open mind until all the evidence has been received and you have heard the arguments of counsel, the instructions of the court, and the views of your fellow jurors.

If you need to speak with me about anything, simply give a signed note to the [courtroom deputy] [law clerk] to give to me.

I will not repeat these admonitions each time we recess or adjourn, but I may remind you of them occasionally.

**SOURCE:**   Ninth Circuit Model Jury Instruction 2.1.

[To be read after closing arguments.]

## INSTRUCTION NO. 1.  FUNCTION OF THE JUDGE

Now that you have heard the evidence and the parties' closing statements, it is my duty to instruct you on the law that governs this case.  It has been clear to me and counsel that you have faithfully discharged your duty to listen carefully and observe each witness who testified and carefully consider the documentary evidence.  Please pay the same close attention to these instructions as I read them.

To help you understand and remember my instructions on the law, I will divide them into three main parts:  First, I will provide general instructions defining your duties as jurors; second, I will instruct you on the claims and defenses asserted in this case and about the law you must apply in considering those claims and defenses; and third, I will provide additional general instructions about procedures during your deliberations.

SOURCE:  1 F. Freedman, N. Gorton, K. Neiman, M. Ponsor, C. Swartwood, W. Young, From Voir Dire to Verdict:  Judges, Juries And You, § 1 at 51 (charge by the Hon. Charles B. Swartwood III in *Diaz v. City of Fitchburg*, Civ. No. 94-40157-CBS (D. Mass. April 23, 1998)); 2 Freedman § 6 at 741 (charge by the Hon. Michael A. Ponsor in *Embriano v. Grosnick*, Civ. No. 90-30186-MAP (D. Mass.)); 4 Sand, Instruction No. 71-1 (2006).

## INSTRUCTION NO. 2.  FUNCTION OF THE JURY

You were chosen and sworn as jurors in this case to decide the issues of fact presented by the allegations of the complaint of the Shaw Family against MMLLC, and of MMLLC against the Shaw Family.  When you go into the jury room to deliberate, you are to perform your duty without bias or prejudice against any party.  Our system of law does not permit jurors to be governed by sympathy, prejudice or public opinion.  The parties and the public expect that when you deliberate you will carefully and impartially consider all the evidence in this case, follow the law as I state it to you, and reach a just verdict, regardless of the consequences.  It is your duty as jurors to seek the truth as to the facts from the evidence presented to you and to apply the law to the facts as you find them.

In their closing statements, the parties may have referred to some rules of law.  If you find any difference between the law as stated by the parties and that stated by me in these instructions, you should follow my instructions.  Do not single out one instruction alone as stating the law, but consider the instructions as a whole.

You are not to be concerned with the wisdom of any rule of law that I state to you. Regardless of any opinion you might have about what the law ought to be, it would be a violation of your sworn duty to base a verdict on any view of the law other than what I give you in these instructions.  Likewise, it would be a violation of your sworn duty, as judges of the facts, to base a verdict on anything but the evidence in the case.  You should not take anything I say in these instructions to be an indication that I have any opinion about the facts of the case, or what that opinion might be.  It is not my function to determine the facts, but yours.

During the trial, I occasionally asked witnesses questions in order to bring out facts not fully explained by the testimony—for example, to clarify a point in time or some other detail. Do not assume that I hold any opinion on the matters about which I asked questions.  Also, in allowing testimony or other evidence to be introduced over the objection of a party, I did not intend to indicate any opinion as to the weight or effect of such evidence.  That is for you to decide.

**SOURCE:  2 Freedman § 6 at 741-42; 4 Sand, Instruction No. 71-2 (2006).**

## <u>INSTRUCTION NO. 3.  SYMPATHY</u>

Under your oath as jurors you are not to be swayed by sympathy.  You should be guided solely by the evidence presented during the trial and the instructions on the law that I give you, without regard to the consequences of your decision.

You have been chosen to try the issues of fact and reach a verdict on the basis of the evidence or lack of evidence.  If you let sympathy interfere with your clear thinking there is a risk that you will not arrive at a just verdict.  All parties to a civil lawsuit are entitled to a fair trial.  You must make a fair and impartial decision so that you will arrive at the just verdict.

**SOURCE:**  4 Sand, Instruction No. 71-10 (2006).

## INSTRUCTION NO. 4.  WHAT IS EVIDENCE

The evidence from which you are to decide what the facts are consists of:

1.    The sworn testimony of witnesses, on both direct and cross-examination, regardless of who called the witness;

2.    The exhibits which have been received into evidence; and

3.    Any facts or exhibits to which all the parties have agreed or stipulated.

**SOURCE:**  Ninth Circuit Model Civil Jury Instructions, Instruction 1.3 (modified).

## INSTRUCTION NO. 5.  WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1.      What the lawyers have said in their opening statements, closing arguments, and at other times, is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.      Questions and objections by the lawyers are not evidence.  You should not be influenced by the objection or by the court's ruling on it.

3.      Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, some testimony and exhibits have been received only for a limited purpose; where I have given a limiting instruction, you must follow it.

4.      Anything you may have seen or heard when the trial was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

5.      Anything you might have inadvertently learned about this case, the parties, or lawyers when the trial is not in session.

**SOURCE:**  Ninth Circuit Model Civil Jury Instructions, Instruction 1.4.

## INSTRUCTION NO. 6.  STIPULATED FACTS

The parties have agreed, or stipulated, to certain facts.  This means that you should treat these facts as true.  You should consider these in addition to those facts that were proved to you at trial.  The parties have stipulated to the following:

The Shaw Family and MMLLC have agreed to the following stipulations of fact:

[INSERT STIPULATIONS OF FACT]

**SOURCE:**  4 Sand § 74.02, Instruction No. 74-4 (2006) (modified).

## INSTRUCTION NO. 7.  ADMISSIONS

The evidence you have been presented with may have included various statements that a party made, including statements a party made in various documents, statements a party made in various conversations with other people, statements a party made during depositions in this litigation, and testimony by a party during the trial.  When one party offers such a statement as evidence against the other party who made it, the statement is called an admission.  Admissions by a party are among the strongest types of evidence and may constitute the most compelling proof against a party concerning the facts admitted.  Accordingly, you are entitled to give great weight to any admission by any of parties in this case.

**SOURCE:**  Adopted from Judge Haight's charge in *U.S. v. Newman*, 82 Crim. 166 (S.D.N.Y. 1982), Tr. 3502, *aff'd*, 722 F.2d 729 (2d Cir.), *cert. denied*, 464 U.S. 863 (1983); *Wilson v. U.S.*, 162 U.S. 613, 622 (1896); Fed. R. Evid. 801 (d)(2).

The following is a list of some admissions the parties have made.  In addition to this list, you may also take into account any admission by any of the parties that was part of the evidence at the trial, if you find that there were any.

[INSERT LIST OF ADMISSIONS]

24

## INSTRUCTION NO. 8.  USE OF DEPOSITIONS

Some testimony has been presented to you by means of depositions, instead of testimony of witnesses in this courtroom.  Some of this deposition testimony has been read to you from transcripts or has been shown to you by video or has been played for you in audio form.

A deposition is a document, audiotape or videotape containing sworn testimony given by a witness outside of court in the presence of a person authorized to administer an oath and in the presence of lawyers for each party who may, in turn, ask questions.

A witness whose deposition was taken may not be available to provide live testimony during trial.  As such, a witness's deposition testimony is entitled to the same consideration and is to be judged as to credibility and weighed, and otherwise considered by you insofar as possible, in the same way as if each witness were present and testifying from the witness stand.

**SOURCE:**  Adopted in part from Judge Bramwell's charge cited in *In re Air Crash Disaster at John F. Kennedy Int'l Airport*, 635 F.2d 67, 73 (2d Cir. 1980); F.R.C.P. 32 (a).

### <u>INSTRUCTION NO. 9.  CREDIBILITY OF WITNESSES</u>

The law does not require you to accept all of the evidence as true simply because it was admitted at trial for your consideration.  However, in deciding what the facts are, you must consider all the evidence.  In doing this, you must decide which testimony to believe and which testimony not to believe.  You must determine the weight you choose to give to each testimony.  You may disbelieve all, none, or any part of any witness's testimony.  Sometimes it may appear that the testimony of a witness fails to conform to the facts as they occurred.  This may be because the witness is intentionally telling a falsehood, because the witness did not accurately see or hear that about which he or she testified, because the witness's recollection of the event is faulty, or because he or she has not expressed himself or herself very clearly.  There is no magical formula for evaluating testimony.  You bring with you to this courtroom all of the experience and background of your lives.  In your everyday affairs, you determine for yourselves the reliability or unreliability of statements made to you by others.

In determining reliability here, you may be guided by the appearance and conduct of a witness, or by the witness's manner in giving testimony, or by the character of the witness's testimony, or by evidence that contradicts the testimony. You should scrutinize the circumstances under which each witness testified and every matter in evidence that tends to show whether a witness is worthy of belief.

In making that decision, you may take into account a number of factors, including the following:

1.    Was the witness able to see, or hear, or know the things about which that witness testified?

2.    How well was the witness able to recall and describe those things?

3.    What was the witness's manner while testifying?

4.    Did the witness have an interest in the outcome of this case, or any bias or prejudice concerning any party or any matter involved in the case?

26

5.    How reasonable was the witness's testimony, considered in light of all the evidence in the case?

6.    Was the witness's testimony contradicted by what that witness has said or done at another time, or by the testimony of other witnesses, or by other evidence?

7.    Was the witness's explanation about what supposedly happened plausible?

Credibility of a witness is like a slice of burnt toast. If the toast is burned badly enough, you may throw out the whole slice. Or, if you think there's a good piece of bread still in there, you could eat it as it is, or scrape away that portion of the burnt toast that you think needs to be gotten rid of. How much of a witness's testimony is to be believed is a matter for you to decide.

In deciding whether or not to believe a witness, keep in mind that people sometimes forget things. You need to consider, therefore, whether a contradiction is an innocent lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or with only a small detail.

The weight of the evidence presented by each side does not necessarily depend on the number of witnesses testifying on one side or the other. You must consider all the evidence in the case, and you may decide that the testimony of a smaller number of witnesses on one side has greater weight than that of a larger number on the other.

All of these are matters for you to consider in finding the facts.

**SOURCE:**  Adopted from Judge Zilly's charge in *SEC v. Clark*, 699 F. Supp. 839 (W.D. Wa. 1988), *aff'd*, 915 F.2d 439 (9th Cir. 1990); 2 Freedman § 6 at 742-4. *See also* 2 Freedman § 6 at 742-44; *see also* Charge by the Hon. Robert E. Keeton, *SEC v. Happ*, C.A. No. 00-12051-REK (D. Mass. Oct. 8, 2003).

## INSTRUCTION NO. 10.  INTERVIEW OF WITNESSES

There was testimony at trial that the attorneys interviewed witnesses when preparing for trial.  You should understand that attorneys are obliged to prepare their case as thoroughly as possible and, in the discharge of that responsibility, may properly interview witnesses before trial and as necessary throughout the course of trial.

**SOURCE:**  ABA Model Rules of Professional Conduct, Rule 1.1 Competence.

## INSTRUCTION NO. 11.  INFERENCE DEFINED

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess.  It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence.  The plaintiff asks you to draw one set of inferences, while the defendants ask you to draw another.  It is for you, and you alone, to decide what inferences, if any, you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation.  An inference is a deduction or conclusion which you, the jury, are permitted to draw—but not required to draw—from the facts which have been established by either direct or circumstantial evidence.  In drawing inferences, you should exercise your reason, experience and common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your reason, experience and common sense.

**SOURCE:**  *Schulz v. Pennsylvania R. Co.*, 350 U.S. 523, 526 (1956); *Computer Identics Corp. v. Southern Pacific Co.*, 756 F.2d 200, 204 (1st Cir. 1985).

## INSTRUCTION NO. 12.  IMPEACHMENT BY PRIOR INCONSISTENT STATEMENTS

You have heard counsel argue that at some earlier time certain witnesses may have said or done things that counsel argue are inconsistent with the witness's trial testimony.  A prior statement by a witness that is inconsistent with the witness's trial testimony is called a prior inconsistent statement.

You may consider a prior inconsistent statement as affirmative evidence in deciding the issues in this case if the statement was an admission made by one of the defendants.  You may also consider a prior inconsistent statement as affirmative evidence in deciding the issues in this case if the prior inconsistent statement was made by a witness who was not a defendant, and it was offered into evidence by either the plaintiff or by one of the defendants, and it was received into evidence by the court.

You may also consider a prior inconsistent statement by any witness that was not received into evidence, for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself or herself.  If you find that a witness made an earlier statement that conflicts with his or her trial testimony, you may take that into account when deciding how much of his or her trial testimony, if any, to believe, or how much weight, if any, to give to whatever part of his or her testimony you believe.

When deciding how much weight to give to the testimony of a witness who made a prior inconsistent statement, you may consider whether the witness purposely either at trial or previously made a false statement or an innocent mistake, whether the inconsistency concerns an important fact or a small detail, or whether the witness had an adequate explanation for the inconsistency.  Examples of prior inconsistent statements that you may consider when deciding whether to believe a witness's trial testimony or how much weight to afford his or her testimony, may include prior denials that a witness now admits, prior admissions that a witness now denies, prior claims or answers to a question that a witness now recants, prior refusals to answer questions that a witness now answers—including prior refusals to answer a question based upon the invocation of constitutional rights which the witness no longer asserts.  Prior inconsistent statements may include any prior statements by a witness, written or spoken, that you perceive to be inconsistent with the witness's testimony at trial.

It is exclusively your duty, based upon all the evidence and your own good judgment and experience, to determine whether the prior statement was inconsistent, and if so, how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness's testimony.

**SOURCE:**  Adopted from 3 Sand § 76.01, Instruction No. 76-5 (1988 ed.); *US. v. Klein*, 488 F.2d 481 (2d Cir. 1973), *cert. denied*, 419 U.S. 1091.

## INSTRUCTION NO. 13.  CIRCUMSTANTIAL EVIDENCE

There are two types of evidence from which a jury may find the truth as to the facts of a case. One is direct evidence, such as the testimony of an eyewitness, and the other is indirect or circumstantial evidence, which is the proof of a chain of circumstances pointing to the existence or non-existence of certain facts.

Here is a simple example of circumstantial evidence that is often used in court.  Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom has no windows and you could not look outside.  As you were sitting here, someone walked in with an umbrella that was dripping wet.  Then a few minutes later another person also entered with a wet umbrella.  Now, you cannot look outside the courtroom and you cannot see whether or not it is raining.  So you have no direct evidence of that fact.  But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.  That is all there is to circumstantial evidence.  You infer, based on reason, experience and common sense from one established fact the existence or non-existence of some other fact.

As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that the jury find the facts in accordance with the standard of proof in the case.

You are to consider only the evidence in the case.  But in your consideration of the evidence you are not limited solely to what you see and hear as the witnesses testify.  You are permitted to draw, from facts that you find have been proved, such reasonable common sense inferences that you believe are justified in light of your experience.

**SOURCE:**  2 Freedman § 6 at 744; *United States v. Libera*, 989 F.2d 596, 601 (2d Cir. 1993), *cert. denied*, 510 U.S. 976 (1993); *SEC v. Geon Industries, Inc*., 531 F.2d 39, 46 (2d Cir. 1976); *SEC v. Singer*, 786 F. Supp. 1158, 1164-65 (S.D.N.Y. 1992); *SEC v. Musella*, 748 F. Supp. 1028, 1038 (S.D.N.Y. 1989), *aff'd*, 898 F.2d 138 (2d Cir. 1990), *cert. denied*, 498 U.S. 816 (1990).

## INSTRUCTION NO. 14.  STANDARD OF PROOF: DOMICILE

The issue in this case concerns the domicile of Ms. Monroe and whether at the time of her death in August 1962 she was a domiciliary of New York or California.  Therefore, the Shaw Family and MMLLC each have the burden of proving their respective domicile claims by what is called clear and convincing evidence.[4]  When I say that a particular party must prove something by "clear and convincing evidence," this is what I mean: When you have considered all of the evidence, you are convinced that it is highly probable that it is true.  This is a higher burden of proof than "more probably true than not true."  Clear and convincing evidence must persuade you that it is "highly probably true."[5]

The burden of proof rests initially with the Shaw Family, which claims that Marilyn Monroe became a domiciliary of New York beginning at some time in the mid to late 1950s, which they must prove by clear and convincing evidence.[6]  If the Shaw Family does not meet their burden on the issue of domicile, you cannot find that Marilyn Monroe was domiciled in New York, and as such, your verdict on the issue of domicile must be for MMLLC.

If the Shaw Family meets their burden on their claim of domicile, you must find that Marilyn Monroe was a domiciliary of New York.  This shifts the burden of proof to MMLLC.[7]  If you find that Marilyn Monroe was a domiciliary of New York, MMLLC can only meet their burden if they show, by clear and convincing evidence, that Marilyn Monroe had legally changed her domicile to California at the time of her death on August 5, 1962.  If MMLLC meets their burden of proof, your verdict on the issue of domicile must be for MMLLC.  If MMLLC does not show, by clear and convincing evidence, that Marilyn Monroe legally changed her domicile

---

[4] *See Bank of India v. Subramanian*, 2007 U.S. Dist. LEXIS 35148, at *8 (S.D.N.Y. May 15, 2007) (quoting *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 243–44 (2d Cir. 1984)).

[5] Seventh Circuit Model Jury Instruction 1.28.

[6] *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 243–44 (2d Cir. 1984); *Pacho v. Enterprise Rent-A-Car*, 510 F. Supp. 2d 331, 335 (S.D.N.Y. 2007); *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000).

[7] *Pacho v. Enterprise Rent-A-Car*, 510 F. Supp. 2d 331, 335 (S.D.N.Y. 2007) (citing *Herrick Co. v. SCS Commc'ns Inc.*, 251 F.3d 315, 324 (2d Cir. 2001)).

from New York to California at the time of her death, your verdict on the issue of domicile must be for the Shaw Family.[8]

In evaluating whether the Shaw Family and MMLLC have met their burdens on their claims, you should also know that the law does not require parties to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matter in issue at this trial. Nor does the law require parties to produce as exhibits all papers or other things mentioned in the evidence in the case.

You should base your decision on all of the evidence, regardless of which party presented it.

Some of you may have heard of proof beyond a reasonable doubt, which is a proper standard in a criminal trial. This is a civil trial, _not_ a criminal trial. Because this is a civil case, the reasonable doubt standard does _not_ apply to this case, and you should put it out of your mind.

**SOURCE:**    Ninth Circuit Model Jury Instruction 1.13; Third Circuit Model Jury Instruction 1.10 (2006); Stock jury instructions in a civil case received from the chambers of the Honorable John L. Kane (D. Col.); 4 Sand, Instruction No. 73-2.

---

[8] *Pacho v. Enterprise Rent-A-Car*, 510 F. Supp. 2d 331, 335–36 (S.D.N.Y. 2007) (domicile not found where party was "bouncing around from family's house to family's," did not "have an address," and "wasn't situated.") (citing Agee v. Bush, 1996 WL 914110, at *4–5 (D.D.C. Aug. 26, 1996) (domicile not established where party lived "nomadic" and "transient" lifestyle)).

## INSTRUCTION NO. 15.  PERSONS NOT ON TRIAL

You may not draw any inference, favorable or unfavorable to the Shaw Family or MMLLC from the fact that any person has or has not been sued by either party or that any person is not on trial before you at the present time.  You should not concern yourself with the disposition as to those other persons, but should consider only the issues between the Shaw Family and MMLLC.

**SOURCE:**  3 Devitt § 71.07; *see also* Charge by the Hon. Robert E. Keeton, *SEC v. Happ*, C.A. No. 00-12051-REK (D. Mass. Oct. 8, 2003).

## INSTRUCTION NO. 16.  THE SHAW FAMILY'S DOMICILE CLAIM

The Shaw Family has alleged that Marilyn Monroe became a domiciliary of New York beginning at some time in the mid to late 1950's and did not legally change it before her death on August 5, 1962.  Domicile is different from residence.  Although a person may have many *residences*, like a summer house or three different homes in different states, at any given time, a person can have only one *domicile*.[9]

Domicile is the place where a person has his or her true fixed home and principal establishment, and to which, whenever he or she is absent, he or she has the intention of returning.[10]  Domicile generally requires two elements: (1) physical presence in a state; and (2) the intent to make the state a home.[11]  As you can see, domicile is more than an individual's residence.[12]

To find that Marilyn Monroe was domiciled in New York beginning at some time in the mid to late 1950's, you will make a determination of fact[13] looking at the totality of the evidence before you.[14]  This determination is made by examining the entire course of Marilyn Monroe's conduct at the time in question.[15]

When making your decision, you should take into consideration all relevant factors, including these:

- residence,[16]
- the nature of the residence (i.e., how permanent the living arrangement appears)[17]

---

[9] *Williamson v. Osenton*, 232 U.S. 619, 624 (1914); *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000); *Pacho v. Enterprise Rent-A-Car*, 510 F. Supp. 2d 331, 336 (S.D.N.Y. 2007) ("[R]esidence is not the issue."); *Boston Safe Deposit & Trust Co. v. Morse*, 779 F. Supp. 347, 348 (S.D.N.Y. 1991) ("a citizen has only on e domicile, regardless of the number of residences that citizen maintains.").

[10] Moore's Federal Practice 3d § 102.34[2] (citing *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000)).

[11] *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000); *Pacho v. Enterprise Rent-A-Car*, 510 F. Supp. 2d 331, 333 (S.D.N.Y. 2007).

[12] Moore's Federal Practice 3d § 102.34[2] (citing *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1227 (S.D.N.Y. 1991)).

[13] Moore's Federal Practice 3d § 102.34[2] (citing *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000)).

[14] Moore's Federal Practice 3d § 102.34[2] (citing *Hicks v. Brophy*, 841 F. Supp. 466, 467 (D. Conn. 1994)).

[15] Moore's Federal Practice 3d § 102.34[2] (citing *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1227 (S.D.N.Y. 1991)).

[16] *Bank of India v. Subramanian*, 2007 U.S. Dist. LEXIS 35148, *8–9 (S.D.N.Y. May 15, 2007) (citations omitted).

[17] *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991).

- voting registration,[18]
- driver's license and automobile registration,[19]
- location of brokerage and bank accounts,[20]
- membership in fraternal organizations,[21]
- churches, and other associations,[22]
- places of employment or business,[23]
- payment of taxes,[24]
- whether a party owns his home or rents,[25]
- where she keeps her personal belongings (for example, furniture and automobiles),[26]
- whether a party went back and forth from residence to residence,
- where a party was "situated,"[27]
- tax return addresses,[28]
- location of spouse and family,[29]
- location of business and financial transactions,[30]
- clubs and other social associations,[31]
- licenses other than driver's license,[32]
- person's own statements concerning her intentions,[33]
- location of a person's physician, lawyer, accountant, dentist, and stockbroker,[34]
- exercise of civil and political rights[35]

---

[18] *Bank of India v. Subramanian*, 2007 U.S. Dist. LEXIS 35148, *8–9 (S.D.N.Y. May 15, 2007) (citations omitted).

[19] *Bank of India v. Subramanian*, 2007 U.S. Dist. LEXIS 35148, *8–9 (S.D.N.Y. May 15, 2007) (citations omitted).

[20] *Bank of India v. Subramanian*, 2007 U.S. Dist. LEXIS 35148, *8–9 (S.D.N.Y. May 15, 2007) (citations omitted).

[21] *Bank of India v. Subramanian*, 2007 U.S. Dist. LEXIS 35148, *8–9 (S.D.N.Y. May 15, 2007) (citations omitted).

[22] *Bank of India v. Subramanian*, 2007 U.S. Dist. LEXIS 35148, *8–9 (S.D.N.Y. May 15, 2007) (citations omitted).

[23] *Bank of India v. Subramanian*, 2007 U.S. Dist. LEXIS 35148, *8–9 (S.D.N.Y. May 15, 2007) (citations omitted).

[24] *Bank of India v. Subramanian*, 2007 U.S. Dist. LEXIS 35148, *8–9 (S.D.N.Y. May 15, 2007) (citations omitted).

[25] *Bank of India v. Subramanian*, 2007 U.S. Dist. LEXIS 35148, *9 (S.D.N.Y. May 15, 2007) (citations omitted); Moore's Federal Practice 3d § 102.36[1] (citing *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991)).

[26] *Bank of India v. Subramanian*, 2007 U.S. Dist. LEXIS 35148, *9 (S.D.N.Y. May 15, 2007) (citations omitted); Moore's Federal Practice 3d § 102.36[1] (citing *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991)).

[27] *Pacho v. Enterprise Rent-A-Car*, 510 F. Supp. 2d 331, 336 (S.D.N.Y. 2007).

[28] Moore's Federal Practice 3d § 102.36[1] (citing *Stifel v. Hopkins*, 477 F.2d 1116,1122 (6th Cir. 1973)).

[29] *Boston Safe Deposit & Trust Co. v. Morse*, 779 F. Supp. 347, 349–50 (S.D.N.Y. 1991).

[30] *Boston Safe Deposit & Trust Co. v. Morse*, 779 F. Supp. 347, 349–50 (S.D.N.Y. 1991).

[31] *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991).

[32] *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991).

[33] *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991).

[34] *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991).

[35] *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991).

- payment of utilities,[36]
- receipt of mail,[37]
- affidavits of intention,[38]
- membership in unions,[39]

Additional factors may be relevant.[40]  No single factor is conclusive.[41]

If, after examination of these factors and any other relevant factors presented in the evidence, you find by clear and convincing evidence that Marilyn Monroe was physically present in the State of New York and intended to make New York her true, fixed home beginning at some time during the mid to late 1950's, you must find that Marilyn Monroe was domiciled in the State of New York at that time.

---

[36] Moore's Federal Practice 3d § 102.36[1] (citing *Simmons v. Skyway of Ocala*, 592 F. Supp. 356, 360 (S.D. Ga. 1984)).

[37] Moore's Federal Practice 3d § 102.36[1] (citing *Simmons v. Skyway of Ocala*, 592 F. Supp. 356, 360 (S.D. Ga. 1984)).

[38] Moore's Federal Practice 3d § 102.36[1] (citing *Krasnov v. Dinan*, 465 F.2d 1298, 1301 (3d Cir. 1972); *Stifel v. Hopkins*, 477 F.2d 1116, 1122 (6th Cir. 1973)).

[39] Moore's Federal Practice 3d § 102.36[1] (citing *Garcia v. Amer. Heritage Life Ins. Co.*, 773 F. Supp. 516, 520 (D.P.R. 1991); *Knapp v. State Farm Ins.*, 584 F. Supp. 905, 907 (E.D. La. 1984); *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

[40] *Boston Safe Deposit & Trust Co. v. Morse*, 779 F. Supp. 347, 349–50 (S.D.N.Y. 1991).

[41] Moore's Federal Practice 3d § 102.34[2] (citing *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991)).

## INSTRUCTION NO. 17.  MMLLC'S DOMICILE CLAIM

If you find that Marilyn Monroe was domiciled in New York, you must next evaluate MMLLC's domicile claim.  MMLLC has alleged that Marilyn Monroe had legally changed her legal domicile from New York to California, and was a domiciliary of California at the time of her death in August 1962.

Once a domicile is established in one state, it is presumed to continue in existence, even if the party leaves that state, until the adoption of a new domicile is established.[42]  One can reside in one place but be domiciled in another if the person intends to return to a prior residence.[43]

To effect a change of domicile, two things are indispensable: First, residence in a new domicile; and, second, the intention to remain there indefinitely.[44]  Both are necessary.[45]  Either one without the other is insufficient.[46]  The party alleging that domicile has changed has the burden of proving the requisite intent to abandon the old domicile and take up the new domicile, coupled with an actual acquisition of a residence in a new locality.[47]

To find that Marilyn Monroe had effectively changed her domicile from the State of New York to the State of California in 1962, you will make a determination of fact[48] looking at the totality of the evidence before you.[49]  This determination is made by examining the entire course of Marilyn Monroe's conduct at the relevant time.[50]

---

[42] Moore's Federal Practice 3d § 102.34[2] (citing *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000)).

[43] Moore's Federal Practice 3d § 102.34[2] (citing *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974), cert. denied, 419 U.S. 842 (1974); *Young v. Century House Historical Soc'y*, 117 F. Supp. 2d 277, 280 (N.D.N.Y. 2000)); *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991) (indefinitely) (citing *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30 (1989)).

[44] *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000); *Pacho v. Enterprise Rent-A-Car*, 510 F. Supp. 2d 331, 333 (S.D.N.Y. 2007); *Clyde v. Ludwig Hardware Store, Inc.*, 815 F. Supp. 688, 690 (S.D.N.Y. 1993).

[45] *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (quoting *Lindaros v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998) (quoting *Sun Printing & Publishing Ass'n v. Edwards*, 194 U.S. 377, 383 (1904))).

[46] *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (quoting *Lindaros v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998) (quoting *Sun Printing & Publishing Ass'n v. Edwards*, 194 U.S. 377, 383 (1904))).

[47] Moore's Federal Practice 3d § 102.35[2] (citing *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000)).

[48] Moore's Federal Practice 3d § 102.34[2] (citing *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000)).

[49] Moore's Federal Practice 3d § 102.34[4] (citing *Hicks v. Brophy*, 841 F. Supp. 466, 467 (D. Conn. 1994)).

[50] Moore's Federal Practice 3d § 102.34[2] (citing *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1227 (S.D.N.Y. 1991)).

When making your decision, you should take into consideration all relevant factors, including these:

- residence,[51]
- the nature of the residence (i.e., how permanent the living arrangement appears)[52]
- voting registration,
- driver's license and automobile registration,
- location of brokerage and bank accounts,
- membership in fraternal organizations,
- churches, and other associations,
- places of employment or business,
- payment of taxes,[53]
- whether a party owns his home or rents,
- where she keeps her personal belongings (for example, furniture and automobiles),[54]
- whether a party went back and forth from residence to residence,
- where a party was "situated,"[55]
- tax return addresses,[56]
- location of spouse and family,[57]
- location of business and financial transactions,[58]
- clubs and other social associations,[59]
- licenses other than driver's license,[60]
- person's own statements concerning her intentions,[61]
- location of a person's physician, lawyer, accountant, dentist, and stockbroker,[62]
- exercise of civil and political rights[63]
- payment of utilities,[64]
- receipt of mail,[65]

---

[51] *Bank of India v. Subramanian*, 2007 U.S. Dist. LEXIS 35148, *8–9 (S.D.N.Y. May 15, 2007) (citations omitted).

[52] *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991).

[53] *Bank of India v. Subramanian*, 2007 U.S. Dist. LEXIS 35148, *8–9 (S.D.N.Y. May 15, 2007) (citations omitted).

[54] *Bank of India v. Subramanian*, 2007 U.S. Dist. LEXIS 35148, *9 (S.D.N.Y. May 15, 2007) (citations omitted); Moore's Federal Practice 3d § 102.36[1] (citing *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991)).

[55] *Pacho v. Enterprise Rent-A-Car*, 510 F. Supp. 2d 331, 336 (S.D.N.Y. 2007).

[56] Moore's Federal Practice 3d § 102.36[1] (citing *Stifel v. Hopkins*, 477 F.2d 1116,1122 (6th Cir. 1973)).

[57] *Boston Safe Deposit & Trust Co. v. Morse*, 779 F. Supp. 347, 349–50 (S.D.N.Y. 1991).

[58] *Boston Safe Deposit & Trust Co. v. Morse*, 779 F. Supp. 347, 349–50 (S.D.N.Y. 1991).

[59] *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991).

[60] *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991).

[61] *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991).

[62] *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991).

[63] *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991).

[64] Moore's Federal Practice 3d § 102.36[1] (citing *Simmons v. Skyway of Ocala*, 592 F. Supp. 356, 360 (S.D. Ga. 1984)).

[65] Moore's Federal Practice 3d § 102.36[1] (citing *Simmons v. Skyway of Ocala*, 592 F. Supp. 356, 360 (S.D. Ga. 1984)).

- affidavits of intention,[66]
- membership in unions,[67]

Additional factors may be relevant.[68]  No single factor is conclusive.[69]  A party who claims to have changed her domicile in favor of a new one bears a heavy burden of establishing the new domicile.[70]  Statements of intention to change domicile will not overcome contradictory behavior.[71]

If, after examination of these factors and any other relevant factors presented in the evidence, you find by clear and convincing evidence that Marilyn Monroe had acquired a new residence in the State of California and intended to remain there in 1962 at the time of her death, you must find that Marilyn Monroe effectively changed her domicile to the State of California at that time.

---

[66] Moore's Federal Practice 3d § 102.36[1] (citing *Krasnov v. Dinan*, 465 F.2d 1298, 1301 (3d Cir. 1972); *Stifel v. Hopkins*, 477 F.2d 1116, 1122 (6th Cir. 1973)).

[67] Moore's Federal Practice 3d § 102.36[1] (citing *Garcia v. Amer. Heritage Life Ins. Co.*, 773 F. Supp. 516, 520 (D.P.R. 1991); *Knapp v. State Farm Ins.*, 584 F. Supp. 905, 907 (E.D. La. 1984); *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

[68] *Boston Safe Deposit & Trust Co. v. Morse*, 779 F. Supp. 347, 349–50 (S.D.N.Y. 1991).

[69] Moore's Federal Practice 3d § 102.34[2] (citing *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991)).

[70] Moore's Federal Practice 3d § 102.35[6] (citing *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000)).

[71] *Boston Safe Deposit & Trust Co. v. Morse*, 779 F. Supp. 347, 349–50 (S.D.N.Y. 1991).

## INSTRUCTION NO. 18.  DELIBERATION

Members of the jury, it is now time for the case to be submitted to you and for you to start your discussions - what we call your deliberations.  The first thing you should do when you go into the jury room is to elect a foreperson.  When you consider the evidence in this case, the foreperson will ensure that every juror is present during all of your deliberations and that all jurors, the foreperson included, will have an equal and full opportunity to participate in the deliberations.  The fact that one of you has been elected as foreperson does not give that person special status in your deliberations.  You are all equal.  The foreperson is merely a moderator to ensure that your deliberations are orderly.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully and with the other jurors, and listened to the views of your fellow jurors.  Do not be afraid to change your opinion if the discussion persuades you that you should.  Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Whenever you need a recess for any purpose, your foreperson may declare a recess.  Do not discuss the case during a recess.  All your discussions of the case should occur only when you are all together and your foreperson has indicated that deliberations may proceed.  This should be your procedure so that everyone in the jury will have equal opportunity to participate and to hear all that other members of the jury may say.

**SOURCE:**  1 Freedman § 1 at 68-69; Ninth Circuit Model Civil Jury Instructions, Instruction 4.1. *See also SEC v. Clark*, 699 F. Supp. 839 (W.D. Wa. 1988), *aff'd*, 915 F2d 439 (9th Cir. 1990).

## <u>INSTRUCTION NO. 19.  COMMUNICATION WITH COURT</u>

If you have any questions about the law as you deliberate, you may write out such questions and hand them over to the [bailiff][marshal], who will pass them on to me.   No member of the jury should ever attempt to communicate with me except by a signed writing.  I will communicate with any member of the jury on anything concerning the case only in writing, or orally here in open court.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.

**SOURCE:**  1 Freedman § 1 at 17; Ninth Circuit Model Civil Jury Instructions, Instruction 4.3.

### INSTRUCTION NO. 20.  CONCLUSION

Having now instructed you, I repeat the caution that nothing said in these instructions and no comment or question of the court is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.  Your verdict must be based solely on the evidence and on the law as I have given it to you in these instructions.  All the decisions you reach during your deliberations must be the result of unanimous agreement.  Each of you must decide the case for yourself, but you should do so only after considering all the evidence, discussing it fully with the other jurors, and listening to the views of your fellow jurors.

A verdict form has been prepared for your convenience and you will take this form to the jury room.

{READ ATTACHED VERDICT FORM}

You will take the verdict form to the jury room and when you have reached unanimous agreement you will have your foreperson fill in the verdict form, date and sign it, and then return to the courtroom.  The foreperson will sign it and announce your agreement to the bailiff who will conduct you into court to declare your verdict.

**SOURCE:**  2 Freedman § 6 at 755; Eleventh Circuit Pattern Jury Instructions 8, with the addition of the bracketed explanation of the verdict form taken from 4 Sand § 78.01, Instruction No. 78-7 (2000).

**<u>Verdict Form</u>**

1.     Did the Shaw Family establish by clear and convincing evidence that Marilyn Monroe was domiciled in New York beginning at some time in the mid to late 1950's?

Yes _____ No_____

2.     If yes, did MMLLC establish by clear and convincing evidence that Marilyn Monroe had affirmatively met the legal requirements for changing her domicile from the State of New York to the State of California by the time of her death on August 5, 1962?

Yes _____ No_____

3.     If yes, did MMLLC establish by clear and convincing evidence that Marilyn Monroe was a domiciliary of the State of California at the time of her death on August 5, 1962?

Yes _____ No _____.


_____
Signature of Foreperson


_____
Printed Name of Foreperson


_____
Date