UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

SHAW FAMILY ARCHIVES, LTD.,
EDITH MARCUS, META STEVENS, and
BRADFORD LICENSING ASSOCIATES,

      Plaintiffs/Consolidated Defendants,

-against-                                                                05 Civ. 3939 (CM)

CMG WORLDWIDE, INC. and
MARILYN MONROE, LLC,

      Defendants/Consolidated Plaintiffs.
_____x

## PLAINTIFFS' PROPOSED JURY INSTRUCTIONS

      Plaintiffs/Consolidated Defendants Shaw Family Archives, Ltd., Edith Marcus, and Meta Stevens (hereinafter, collectively, the "Shaw Family") submit their proposed jury instructions set forth below.  In addition, Consolidated Defendant, Bradford Licensing Associates, hereby joins in these proposed jury instructions, and, although not a plaintiff in this action, shall be deemed to be included in any reference to the "Shaw Family" herein.

      [To be read after the jury is empanelled but before opening statements.]

## PROPOSED OPENING REMARKS OF THE COURT

      Before we begin the trial, I'd like to describe how the trial will be conducted.  At the end of the trial, I will give you more detailed guidance on how you will go about reaching your decision.

      Let's turn now to this specific case.  As I told you during the trial on domicile, the plaintiffs are the Shaw Family Archives, Ltd., Edith Marcus, and Meta Stevens.  The Plaintiffs allege that Edith Marcus and Meta Stevens are the joint owners of the copyrights in photographs taken of Marilyn Monroe by their father Sam Shaw.  It is their position that in April of 1998 Sam Shaw created a trust in which he assigned all of his rights in his catalog of photographs, negatives, transparencies and copyrights therein, which trust named Ms. Marcus and Ms. Stevens

as the trustees. The trustees had the power to license the copyrights, and otherwise exploit the photographs, negatives and other property during Mr. Shaw's lifetime for his benefit and at his death Ms. Marcus and Ms. Shaw became the owners of the photographs, negatives, transparencies and copyrights therein.  After Mr. Shaw died, Ms. Marcus, Ms. Stevens and other family members formed Shaw Family Archives, Ltd. for the purpose of licensing Mr. Shaw's images. Defendant Bradford Licensing Associates is the licensing agent for the Shaw Family Archives, Ltd.

The defendants are CMG Worldwide, Inc. and Marilyn Monroe, LLC, referred to together as MMLLC.  It is not disputed that MMLLC is the current owner of Marilyn Monroe's testimentary residuary estate, which includes whatever property was not specifically given away in Marilyn Monroe's will to named individuals.  The parties do, however, dispute exactly what property was included in the residuary estate.  It is also undisputed that Marilyn Monroe's will bequeathed her residuary estate to Lee Strasburg, her acting coach in New York.  Mr. Strasberg later married Anna Strasburg, who, after he died, inherited the residuary of Mr. Strasburg's estate which included whatever he received from Marilyn Monroe's estate.  MMLLC claims in July 2001, Ms. Strasberg transferred ownership of whatever remained of Marilyn Monroe's residuary estate to MMLLC.

You have already decided the issue of domicile.  You will now decide the issue of whether the copyrights in certain of Sam Shaw's photographs of Marilyn Monroe are now in the "public domain" and free for anyone to use for any purpose without permission from Ms. Shaw and Ms. Marcus or the Shaw Family Archives, Ltd..

MMLLC alleges that certain copyrights in certain photographs of Marilyn Monroe taken by Sam Shaw and now owned by Edith Marcus and Meta Stevens, Mr. Shaw's daughters, have expired because no renewal copyright was timely filed with the United States Copyright Office after the 28 year term expired or that no copyright exists because the photographs were published without the required copyright notice and as a result, those photographs are now in the "public domain" such that they may be used by anyone without making payment for a license to the Shaw Family.  The Shaw Family denies that the copyrights in certain of the photographs of Marilyn Monroe have entered the public domain.

The first step in the trial will be the opening statements.  MMLLC in its opening statement will tell you about the evidence that it intends to put before you, so that you will have a preview of what its case is going to be about.  After MMLLC's opening statement, the attorney for the Shaw Family will make his opening statements.  At this point in the trial, neither side will have offered evidence.  The opening statements by counsel for the parties is not evidence.  Their purpose is simply to help you, the jury, understand what the case will be about, what the evidence will be, and what facts in dispute that either side will attempt to prove during the trial.

Next MMLLC will offer evidence that it says supports its claim against the Shaw Family that certain copyrights of Sam Shaw's photographs have entered the public domain.  MMLLC's evidence in this regard will consist of the testimony of witnesses as well as documents.

Some of you have probably heard the terms "circumstantial evidence" and "direct evidence."  Do not be concerned with these terms at this time.  You are to consider all the evidence given in this trial.

After MMLLC's evidence, the Shaw Family will present evidence on its behalf as to why the copyrights in the photographs at issue are still valid and, as such, the photographs are not in the "public domain."  MMLLC has the burden of proving that the copyrights in certain of Sam Shaw's photographs have entered the public domain, and you may not find so unless you unanimously find that MMLLC has proven this fact by a preponderance of the evidence.

After you have heard all the evidence on both sides, the Shaw Family and MMLLC will each be given time for their closing arguments.  I just told you that the opening statements are not evidence.  This same rule applies to the parties' counsels' closing arguments.  They are not evidence either.  In their closing arguments, the lawyers for the Shaw Family and MMLLC will attempt to summarize their cases by referring to the evidence presented and arguing what conclusions should be drawn from the evidence that was presented.

The final part of the trial occurs when I instruct you about the rules of law that you are to use in reaching your verdict.  After hearing my instructions, you will leave the courtroom together to make your decision.  Your deliberations will be secret.  You will never have to explain your verdict to anyone if you choose not to.

Now that I have described the trial itself, let me explain the jobs that you and I are to perform during the trial. I will decide which rules of law apply to this case. I will make those decisions in response to questions raised by the parties as we go along and also in the final instructions given to you after the evidence and arguments are completed. You will decide whether MMLLC has proved, by a preponderance of the evidence, that certain photographs of Sam Shaw have entered the public domain.

During the course of the trial, you should not talk with any witness, or with the Plaintiffs or Defendants, or their families, or with any of the lawyers in the case. Please don't talk with them about any subject at all that may pertain to this case or the trial. As you enter or leave the Court — in the halls or the elevator, for example — you may see one of the lawyers for the Plaintiffs or the Defendants. If you see them, please do not in any way acknowledge them or speak with them. I am advising the Plaintiffs, Defendants, and the lawyers not to acknowledge you in any way or speak with you if they see you.

In addition, during the course of the trial you should not talk about the trial with anyone else — not your family, nor your friends, nor the people you work with. Also, you should not discuss this case amongst yourselves until I have instructed you on the law and you have gone to the jury room to make your decision at the end of the trial. It is important that you wait until all the evidence is received and you have heard my instructions on the rules of law before you deliberate among yourselves.

Let me add that during the course of the trial you will receive all the evidence you properly may consider to decide the case. Because of this, you should not attempt to gather any information on your own which you think might be helpful. Do not engage in any outside reading on this case, do not attempt to visit any places mentioned in the case, and do not in any other way try to learn about the case or matters pertaining to the case outside the courtroom.

Now that the trial has begun you must not read about it in the newspapers, on the Internet, or watch or listen to television or radio reports of what is happening here.

The reason for these rules, as I am certain you will understand, is that your decision in this case must be made solely on the evidence presented at the trial.

At times during the trial, a party may make an objection to a question asked by another party, or to an answer by a witness. This simply means that a lawyer for the Shaw Family or MMLLC has requested that I make a decision on a particular rule of law. Do not draw any conclusion from such objections or from my rulings on the objections. These only relate to the legal questions that I must determine and should not influence your deliberations or thinking about the case. If I sustain an objection to a question, the witness may not answer it. Do not attempt to guess what answer might have been given had I allowed the question to be answered or draw any adverse inference from this. Similarly, if I tell you not to consider a particular statement, you should not refer to that statement in your later deliberations.

During the course of the trial I may ask a question of a witness. If I do, that does not indicate I have any opinion about the facts in this case or that the question pertains to any particularly material issue in the case.

Finally, let me clarify something you may wonder about later. During the course of the trial I may have to interrupt the proceedings to confer with the attorneys about the rules of law that should apply here. Sometimes we will talk here, at the bench. But some of these conferences may take time. So, as a convenience to you, I will excuse you from the courtroom. I will try to avoid such interruptions as much as possible, but please be patient even if the trial seems to be moving slowly because conferences often save time for all of us.

I will give you a much fuller explanation of the law concerning copyright at issue here after all the witnesses have testified and the documentary evidence has been considered and the case is ready to be submitted to you for your verdict. This was just an introduction.

## PRELIMINARY INSTRUCTIONS[1]

## PRELIMINARY INSTRUCTION NO. 1:  DUTY OF JURY

Ladies and gentlemen:  I want to take a few minutes to tell you something about your duties as jurors and to give you some instructions.  At the end of the trial I will give you more detailed instructions.  Those instructions will control your deliberations.

It will be your duty to decide from the evidence what the facts are.  You, and you alone, are the judges of the facts.  You will hear the evidence, decide what the facts are, and then apply the law, which I will give to you, to those facts.  That is how you will reach your verdict.  In doing so, you must follow that law whether you agree with it or not.  The evidence will consist of the testimony of witnesses, documents, and other things received into evidence as exhibits and any facts on which the parties agree or which I may instruct you to accept.

You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be.

**SOURCE:**   Ninth Circuit Model Civil Jury Instructions, Instruction 1.1.

---

[1] "Preliminary instructions are desirable for a number of reasons:  substantive instructions provide a framework which will help the jury understand the issues in the case and organize and recall the evidence; procedural instructions will help jurors deal with questions of credibility and inference as they come up, rather than retrospectively."  William Schwarzer, *Reforming Jury Trials*, 1990 U. CHI. LEGAL F. 119, *reprinted in* 132 F.R.D. 575, 583 (1991).

## PRELIMINARY INSTRUCTION NO. 2:  CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, you are not to discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else, nor are you allowed to permit others to discuss the case with you.  If anyone approaches you and tries to talk to you about the case please let me know about it immediately;

Second, do not read any news stories or articles or listen to any radio or television reports about the case or about anyone who has anything to do with it;

Third, do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me simply give a signed note to the [clerk] [law clerk] to give to me; and

Fifth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence.  Keep an open mind until then.

**SOURCE**:   Ninth Circuit Model Jury Instruction 1.12.

## PRELIMINARY INSTRUCTION NO. 3:
## NO TRANSCRIPT AVAILABLE TO JURY

At the end of the trial, you will have to make your decision based on what you recall of the evidence.  You will not have a transcript of the trial.  I urge you to pay close attention to the testimony as it is given.

**SOURCE**:   Ninth Circuit Model Jury Instruction 1.13.

## PRELIMINARY INSTRUCTION NO. 4:  TAKING NOTES

If you wish, you may take notes to help you remember what witnesses said.  If you do take notes, please keep them to yourself.  Do not let note-taking distract you so that you do not hear other answers by witnesses.  When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room].

Whether or not you take notes, you should rely on your own memory of what was said. Notes are only to assist your memory.  You should not be overly influenced by the notes.

**SOURCE:**    Ninth Circuit Model Jury Instruction 1.11; 1 O'Malley, Grenig, & Lee, Federal Jury Practice and Instructions (Civil) ("O'Malley"), Chapter 4, Appendix E (6th Ed. 2007).

## PRELIMINARY INSTRUCTION NO. 5:
## BURDEN OF PROOF-COPYRIGHT — PREPONDERANCE OF THE EVIDENCE

This is a civil case regarding the validity of certain copyrights in photographs of Marilyn Monroe taken by Sam Shaw and now owned by his daughters Meta Stevens and Edith Marcus. Specifically, MMLLC asserts that certain copyrights in certain photographs of Marilyn Monroe taken by Sam Shaw have fallen into the public domain. Therefore, MMLLC has the burden of proving its public domain claim by what is called a preponderance of the evidence.[2] When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true. That means that no matter who produces the evidence, when you consider MMLLC's claim in light of all the facts, you believe that its claim is more likely true than not true. To put it differently, if you were to put all of the evidence in favor of MMLLC's public domain claim and all of the evidence in favor of the Shaw Family on opposite sides of a scale, MMLLC would have to make the scale tip somewhat to its side. If MMLLC meets this burden, your verdict on this claim must be for MMLLC. If MMLLC fails to meet this burden, your verdict must be for the Shaw Family.

In evaluating whether MMLLC has met its burdens on its claims, you should also know that the law does not require parties to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matter in issue at this trial. Nor does the law require parties to produce as exhibits all papers or other things mentioned in the evidence in the case.

You should base your decision on all of the evidence, regardless of which party presented it.

Some of you may have heard of proof beyond a reasonable doubt, which is a proper standard in a criminal trial. This is a civil trial, _not_ a criminal trial. Because this is a civil case, the reasonable doubt standard does _not_ apply to this case, and you should put it out of your mind.

---

[2] *See, e.g., Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc*, 224 F. Supp 2d 567, 570 (S.D.N.Y. 2002), *aff'd in part, rev'd in part, vacated in part*, 2004 U.S. App. LEXIS 17452 (2d Cir. N.Y., Aug. 18, 2004); DUANE BURTON, JURY INSTRUCTIONS IN INTELLECTUAL PROPERTY CASES § 40:55:01 (2000) (citing *Kelier Advertising Inc. v. Premier Pontiac Inc*., 17 U.S.P.Q. 2d. (10th Cir. 1990); *Baxter v. MCA, Inc*., 812 F.2d 421 (9th Cir. 1987)).

**SOURCE:**    Ninth Circuit Model Jury Instruction 1.13; Third Circuit Model Jury Instruction 1.10 (2006); Stock jury instructions in a civil case received from the chambers of the Honorable John L. Kane (D. Col.); 4 Sand, J. Siffert, W. Loughlin, S. Reiss, N. Batterman, Modern Federal Jury Instructions (Civil) ("Sand"), Instruction No. 73-2.

## PRELIMINARY INSTRUCTION NO. 6:  WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

(1)     the sworn testimony of any witness;

(2)     the exhibits which are received into evidence; and

(3)     any facts or exhibits to which the parties stipulate.

**SOURCE:**   Ninth Circuit Model Jury Instruction 1.3.

## PRELIMINARY INSTRUCTION NO. 7:  WHAT IS NOT EVIDENCE

The following things are not evidence, and you must not consider them as evidence in deciding the facts of this case:

(1)    statements and arguments by the lawyers;

(2)    questions and objections by the lawyers;

(3)    testimony that I instruct you to disregard;

(4)    anything you may see or hear when the trial is not in session even if what you see or hear is done or said by one of the parties or by one of the witnesses, and

(5)    anything you might have inadvertently learned about this case, the parties, or lawyers when the trial is not in session.

**SOURCE:**  Ninth Circuit Model Jury Instruction 1.4.

## PRELIMINARY INSTRUCTION NO. 8:
## CIRCUMSTANTIAL EVIDENCE

There are two types of evidence from which a jury may find the truth as to the facts of a case. One is direct evidence, such as the testimony of an eyewitness, and the other is indirect or circumstantial evidence, which is the proof of a chain of circumstances pointing to the existence or non-existence of certain facts.

Here is a simple example of circumstantial evidence that is often used in court. Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom has no windows and you could not look outside. As you were sitting here, someone walked in with an umbrella that was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining. That is all there is to circumstantial evidence. You infer, based on reason, experience and common sense from one established fact the existence or non-existence of some other fact. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that the jury find the facts in accordance with the standard of proof in the case.

You are to consider only the evidence in the case. But in your consideration of the evidence you are not limited solely to what you see and hear as the witnesses testify. You are permitted to draw, from facts that you find have been proved, such reasonable common sense inferences that you believe are justified.

**SOURCE:** 2 Freedman § 6 at 744; *United States v. Libera*, 989 F.2d 596, 601 (2d Cir. 1993), *cert. denied*, 510 U.S. 976 (1993); *SEC v. Geon Industries, Inc.*, 531 F.2d 39, 46 (2d Cir. 1976); *SEC v. Singer*, 786 F. Supp. 1158, 1164–65 (S.D.N.Y. 1992); *SEC v. Musella*, 748 F. Supp. 1028, 1038 (S.D.N.Y. 1989), *aff'd*, 898 F.2d 138 (2d Cir. 1990), *cert. denied*, 498 U.S. 816 (1990).

## **PRELIMINARY INSTRUCTION NO. 9:**
### **ABSENCE OF EVIDENCE**

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

**SOURCE:**   Seventh Circuit Model Jury Instruction 1.18.

## PRELIMINARY INSTRUCTION NO. 10:  STIPULATIONS OF FACT

The parties have agreed to certain facts relevant to this case.  You will also receive a written list of those agreed-upon facts, called "stipulations." Because the parties have agreed to these facts, neither the Shaw Family or MMLLC need to prove them, and you should treat these facts as having been proved.

The Shaw Family and MMLLC have agreed to the following stipulations of fact:


[INSERT STIPULATIONS OF FACT]


**SOURCE:**   Ninth Circuit Model Jury Instruction 2.4 (modified).

**Comment:**   When parties enter into stipulations as to material facts, those facts will be deemed to have been conclusively proved, and the jury may be so instructed. 3 O'Malley, § 102.11 (5th Ed.); *Suchowitz v. U.S.*, 140 F.3d 381, 382 (2d Cir. 1998).

## CAUTIONARY INSTRUCTION FIRST RECESS

We are about to take our first break during the trial, and I want to remind you of the instruction I gave you earlier.  Until the trial is over, you are not to discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else, nor are you allowed to permit others to discuss the case with you.  If anyone approaches you and tries to talk to you about the case, please let me know about it immediately.  Do not read or listen to any news reports of the trial.  Finally, you are reminded to keep an open mind until all the evidence has been received and you have heard the arguments of counsel, the instructions of the court, and the views of your fellow jurors.

If you need to speak with me about anything, simply give a signed note to the [courtroom deputy] [law clerk] to give to me.

I will not repeat these admonitions each time we recess or adjourn, but I may remind you of them occasionally.

**SOURCE:**   Ninth Circuit Model Jury Instruction 2.1.

[To be read after closing arguments.]

## INSTRUCTION NO. 1.  FUNCTION OF THE JUDGE

Now that you have heard the evidence and the parties' closing statements, it is my duty to instruct you on the law that governs this case.  It has been clear to me and counsel that you have faithfully discharged your duty to listen carefully and observe each witness who testified and carefully consider the documentary evidence.  Please pay the same close attention to these instructions as I read them.

To help you understand and remember my instructions on the law, I will divide them into three main parts:  First, I will provide general instructions defining your duties as jurors; second, I will instruct you on the claims and defenses asserted in this case and about the law you must apply in considering those claims and defenses; and third, I will provide additional general instructions about procedures during your deliberations.

**SOURCE**:  1 F. Freedman, N. Gorton, K. Neiman, M. Ponsor, C. Swartwood, W. Young, From Voir Dire to Verdict:  Judges, Juries And You, § 1 at 51 (charge by the Hon. Charles B. Swartwood III in *Diaz v. City of Fitchburg*, Civ. No. 94-40157-CBS (D. Mass. April 23, 1998)); 2 Freedman § 6 at 741 (charge by the Hon. Michael A. Ponsor in *Embriano v. Grosnick*, Civ. No. 90-30186-MAP (D. Mass.)); 4 Sand, Instruction No. 71-1 (2006).

## INSTRUCTION NO. 2.  FUNCTION OF THE JURY

You were chosen and sworn as jurors in this case to decide the issues of fact presented by the allegations of the complaint of MMLLC against the Shaw Family.  When you go into the jury room to deliberate, you are to perform your duty without bias or prejudice against any party.  Our system of law does not permit jurors to be governed by sympathy, prejudice or public opinion.  The parties and the public expect that when you deliberate you will carefully and impartially consider all the evidence in this case, follow the law as I state it to you, and reach a just verdict, regardless of the consequences.  It is your duty as jurors to seek the truth as to the facts from the evidence presented to you and to apply the law to the facts as you find them.

In their closing statements, the parties may have referred to some rules of law.  If you find any difference between the law as stated by the parties and that stated by me in these instructions, you should follow my instructions.  Do not single out one instruction alone as stating the law, but consider the instructions as a whole.

You are not to be concerned with the wisdom of any rule of law that I state to you.  Regardless of any opinion you might have about what the law ought to be, it would be a violation of your sworn duty to base a verdict on any view of the law other than what I give you in these instructions.  Likewise, it would be a violation of your sworn duty, as judges of the facts, to base a verdict on anything but the evidence in the case.  You should not take anything I say in these instructions to be an indication that I have any opinion about the facts of the case, or what that opinion might be.  It is not my function to determine the facts, but yours.

During the trial, I occasionally asked witnesses questions in order to bring out facts not fully explained by the testimony—for example, to clarify a point in time or some other detail.  Do not assume that I hold any opinion on the matters about which I asked questions.  Also, in allowing testimony or other evidence to be introduced over the objection of a party, I did not intend to indicate any opinion as to the weight or effect of such evidence.  That is for you to decide.

**SOURCE:**  2 Freedman § 6 at 741-42; 4 Sand, Instruction No. 71-2 (2006).

## <u>INSTRUCTION NO. 3.  SYMPATHY</u>

Under your oath as jurors you are not to be swayed by sympathy.  You should be guided solely by the evidence presented during the trial and the instructions on the law that I give you, without regard to the consequences of your decision.

You have been chosen to try the issues of fact and reach a verdict on the basis of the evidence or lack of evidence.  If you let sympathy interfere with your clear thinking there is a risk that you will not arrive at a just verdict.  All parties to a civil lawsuit are entitled to a fair trial.  You must make a fair and impartial decision so that you will arrive at the just verdict.

**SOURCE:**  4 Sand, Instruction No. 71-10 (2006).

## INSTRUCTION NO. 4.  WHAT IS EVIDENCE

The evidence from which you are to decide what the facts are consists of:

1.    The sworn testimony of witnesses, on both direct and cross-examination, regardless of who called the witness;

2.    The exhibits which have been received into evidence; and

3.    Any facts or exhibits to which all the parties have agreed or stipulated.

**SOURCE:**  Ninth Circuit Model Civil Jury Instructions, Instruction 1.3 (modified).

## INSTRUCTION NO. 5.  WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1.     What the lawyers have said in their opening statements, closing arguments, and at other times, is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.     Questions and objections by the lawyers are not evidence.  You should not be influenced by the objection or by the court's ruling on it.

3.     Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, some testimony and exhibits have been received only for a limited purpose; where I have given a limiting instruction, you must follow it.

4.     Anything you may have seen or heard when the trial was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

5.     Anything you might have inadvertently learned about this case, the parties, or lawyers when the trial is not in session.

**SOURCE:**  Ninth Circuit Model Civil Jury Instructions, Instruction 1.4.

## <u>INSTRUCTION NO. 6.  STIPULATED FACTS</u>

The parties have agreed, or stipulated, to certain facts.  This means that you should treat these facts as true.  You should consider these in addition to those facts that were proved to you at trial.  The parties have stipulated to the following:

The Shaw Family and MMLLC have agreed to the following stipulations of fact:

[INSERT STIPULATIONS OF FACT]

**SOURCE:**  4 Sand § 74.02, Instruction No. 74-4 (2006) (modified).

## INSTRUCTION NO. 7.  ADMISSIONS

The evidence you have been presented with may have included various statements that a party made, including statements a party made in various documents, statements a party made in various conversations with other people, statements a party made during depositions in this litigation, and testimony by a party during the trial.  When one party offers such a statement as evidence against the other party who made it, the statement is called an admission.  Admissions by a party are among the strongest types of evidence and may constitute the most compelling proof against a party concerning the facts admitted.  Accordingly, you are entitled to give great weight to any admission by any of parties in this case.

**SOURCE:**  Adopted from Judge Haight's charge in *U.S. v. Newman*, 82 Crim. 166 (S.D.N.Y. 1982), Tr. 3502, *aff'd*, 722 F.2d 729 (2d Cir.), *cert. denied*, 464 U.S. 863 (1983); *Wilson v. U.S.*, 162 U.S. 613, 622 (1896); Fed. R. Evid. 801 (d)(2).

The following is a list of some admissions the parties have made.  In addition to this list, you may also take into account any admission by any of the parties that was part of the evidence at the trial, if you find that there were any.

[INSERT LIST OF ADMISSIONS]

## INSTRUCTION NO. 8.  USE OF DEPOSITIONS

Some testimony has been presented to you by means of depositions, instead of testimony of witnesses in this courtroom.  Some of this deposition testimony has been read to you from transcripts or has been shown to you by video or has been played for you in audio form.

A deposition is a document, audiotape or videotape containing sworn testimony given by a witness outside of court in the presence of a person authorized to administer an oath and in the presence of lawyers for each party who may, in turn, ask questions.

A witness whose deposition was taken may not be available to provide live testimony during trial.  As such, a witness's deposition testimony is entitled to the same consideration and is to be judged as to credibility and weighed, and otherwise considered by you insofar as possible, in the same way as if each witness were present and testifying from the witness stand.

**SOURCE:**  Adopted in part from Judge Bramwell's charge cited in *In re Air Crash Disaster at John F. Kennedy Int'l Airport*, 635 F.2d 67, 73 (2d Cir. 1980); F.R.C.P. 32 (a).

## **INSTRUCTION NO. 9.  CREDIBILITY OF WITNESSES**

The law does not require you to accept all of the evidence as true simply because it was admitted at trial for your consideration.  However, in deciding what the facts are, you must consider all the evidence.  In doing this, you must decide which testimony to believe and which testimony not to believe.  You must determine the weight you choose to give to each testimony.  You may disbelieve all, none, or any part of any witness's testimony.  Sometimes it may appear that the testimony of a witness fails to conform to the facts as they occurred.  This may be because the witness is intentionally telling a falsehood, because the witness did not accurately see or hear that about which he or she testified, because the witness's recollection of the event is faulty, or because he or she has not expressed himself or herself very clearly.  There is no magical formula for evaluating testimony.  You bring with you to this courtroom all of the experience and background of your lives.  In your everyday affairs, you determine for yourselves the reliability or unreliability of statements made to you by others.

In determining reliability here, you may be guided by the appearance and conduct of a witness, or by the witness's manner in giving testimony, or by the character of the witness's testimony, or by evidence that contradicts the testimony.  You should scrutinize the circumstances under which each witness testified and every matter in evidence that tends to show whether a witness is worthy of belief.

In making that decision, you may take into account a number of factors, including the following:

1.      Was the witness able to see, or hear, or know the things about which that witness testified?

2.      How well was the witness able to recall and describe those things?

3.      What was the witness's manner while testifying?

4.      Did the witness have an interest in the outcome of this case, or any bias or prejudice concerning any party or any matter involved in the case?

5.     How reasonable was the witness's testimony, considered in light of all the evidence in the case?

6.     Was the witness's testimony contradicted by what that witness has said or done at another time, or by the testimony of other witnesses, or by other evidence?

7.     Was the witness's explanation about what supposedly happened plausible?

Credibility of a witness is like a slice of burnt toast.  If the toast is burned badly enough, you may throw out the whole slice.  Or, if you think there's a good piece of bread still in there, you could eat it as it is, or scrape away that portion of the burnt toast that you think needs to be gotten rid of.  How much of a witness's testimony is to be believed is a matter for you to decide.

In deciding whether or not to believe a witness, keep in mind that people sometimes forget things.  You need to consider, therefore, whether a contradiction is an innocent lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or with only a small detail.

The weight of the evidence presented by each side does not necessarily depend on the number of witnesses testifying on one side or the other.  You must consider all the evidence in the case, and you may decide that the testimony of a smaller number of witnesses on one side has greater weight than that of a larger number on the other.

All of these are matters for you to consider in finding the facts.

**SOURCE:**  Adopted from Judge Zilly's charge in *SEC v. Clark*, 699 F. Supp. 839 (W.D. Wa. 1988), *aff'd*, 915 F.2d 439 (9th Cir. 1990); 2 Freedman §6 at 742-4.  *See also* 2 Freedman § 6 at 742-44; *see also* Charge by the Hon. Robert E. Keeton, *SEC v. Happ*, C.A. No. 00-12051-REK (D. Mass. Oct. 8, 2003).

## INSTRUCTION NO. 10.  INTERVIEW OF WITNESSES

There was testimony at trial that the attorneys interviewed witnesses when preparing for trial.  You should understand that attorneys are obliged to prepare their case as thoroughly as possible and, in the discharge of that responsibility, may properly interview witnesses before trial and as necessary throughout the course of trial.

**SOURCE:**  ABA Model Rules of Professional Conduct, Rule 1.1 Competence.

### INSTRUCTION NO. 11.  INFERENCE DEFINED

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess.  It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence.  The plaintiff asks you to draw one set of inferences, while the defendants ask you to draw another.  It is for you, and you alone, to decide what inferences, if any, you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation.  An inference is a deduction or conclusion which you, the jury, are permitted to draw—but not required to draw—from the facts which have been established by either direct or circumstantial evidence.  In drawing inferences, you should exercise your reason, experience and common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your reason, experience and common sense.

**SOURCE:**  *Schulz v. Pennsylvania R. Co.*, 350 U.S. 523, 526 (1956); *Computer Identics Corp. v. Southern Pacific Co.*, 756 F.2d 200, 204 (1st Cir. 1985).

**INSTRUCTION NO. 12.**
**IMPEACHMENT BY PRIOR INCONSISTENT STATEMENTS**

You have heard counsel argue that at some earlier time certain witnesses may have said or done things that counsel argue are inconsistent with the witness's trial testimony. A prior statement by a witness that is inconsistent with the witness's trial testimony is called a prior inconsistent statement.

You may consider a prior inconsistent statement as affirmative evidence in deciding the issues in this case if the statement was an admission made by one of the defendants. You may also consider a prior inconsistent statement as affirmative evidence in deciding the issues in this case if the prior inconsistent statement was made by a witness who was not a defendant, and it was offered into evidence by either the plaintiff or by one of the defendants, and it was received into evidence by the court.

You may also consider a prior inconsistent statement by any witness that was not received into evidence, for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself or herself. If you find that a witness made an earlier statement that conflicts with his or her trial testimony, you may take that into account when deciding how much of his or her trial testimony, if any, to believe, or how much weight, if any, to give to whatever part of his or her testimony you believe.

When deciding how much weight to give to the testimony of a witness who made a prior inconsistent statement, you may consider whether the witness purposely either at trial or previously made a false statement or an innocent mistake, whether the inconsistency concerns an important fact or a small detail, or whether the witness had an adequate explanation for the inconsistency. Examples of prior inconsistent statements that you may consider when deciding whether to believe a witness's trial testimony or how much weight to afford his or her testimony, may include prior denials that a witness now admits, prior admissions that a witness now denies, prior claims or answers to a question that a witness now recants, prior refusals to answer questions that a witness now answers—including prior refusals to answer a question based upon the invocation of constitutional rights which the witness no longer asserts. Prior inconsistent

statements may include any prior statements by a witness, written or spoken, that you perceive to be inconsistent with the witness's testimony at trial.

It is exclusively your duty, based upon all the evidence and your own good judgment and experience, to determine whether the prior statement was inconsistent, and if so, how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness's testimony.

**SOURCE:** Adopted from 3 Sand §76.01, Instruction No. 76-5 (1988 ed.); *US. v. Klein*, 488 F.2d 481 (2d Cir. 1973), *cert. denied*, 419 U.S. 1091.

## INSTRUCTION NO. 13.  CIRCUMSTANTIAL EVIDENCE

There are two types of evidence from which a jury may find the truth as to the facts of a case. One is direct evidence, such as the testimony of an eyewitness, and the other is indirect or circumstantial evidence, which is the proof of a chain of circumstances pointing to the existence or non-existence of certain facts.

Here is a simple example of circumstantial evidence that is often used in court.  Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom has no windows and you could not look outside.  As you were sitting here, someone walked in with an umbrella that was dripping wet.  Then a few minutes later another person also entered with a wet umbrella.  Now, you cannot look outside the courtroom and you cannot see whether or not it is raining.  So you have no direct evidence of that fact.  But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.  That is all there is to circumstantial evidence.  You infer, based on reason, experience and common sense from one established fact the existence or non-existence of some other fact.

As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that the jury find the facts in accordance with the standard of proof in the case.

You are to consider only the evidence in the case.  But in your consideration of the evidence you are not limited solely to what you see and hear as the witnesses testify.  You are permitted to draw, from facts that you find have been proved, such reasonable common sense inferences that you believe are justified in light of your experience.

**SOURCE:**  2 Freedman § 6 at 744; *United States v. Libera*, 989 F.2d 596, 601 (2d Cir. 1993), *cert. denied*, 510 U.S. 976 (1993); *SEC v. Geon Industries, Inc*., 531 F.2d 39, 46 (2d Cir. 1976); *SEC v. Singer*, 786 F. Supp. 1158, 1164-65 (S.D.N.Y. 1992); *SEC v. Musella*, 748 F. Supp. 1028, 1038 (S.D.N.Y. 1989), *aff'd*, 898 F.2d 138 (2d Cir. 1990), *cert. denied*, 498 U.S. 816 (1990).

## INSTRUCTION NO. 11:  BURDEN OF PROOF-COPYRIGHT

This is a civil case regarding the validity of certain copyrights in photographs of Marilyn Monroe taken by Sam Shaw and now owned by his daughters Meta Stevens and Edith Marcus. Specifically, MMLLC asserts that certain copyrights in certain photographs of Marilyn Monroe taken by Sam Shaw have fallen into the public domain.  Therefore, MMLLC has the burden of proving its public domain claim by what is called a preponderance of the evidence.[3]  When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.  That means that no matter who produces the evidence, when you consider MMLLC's claim in light of all the facts, you believe that its claim is more likely true than not true.  To put it differently, if you were to put all of the evidence in favor of MMLLC's public domain claim and all of the evidence in favor of the Shaw Family on opposite sides of a scale, MMLLC would have to make the scale tip somewhat to its side.  If MMLLC meets this burden, your verdict on this claim must be for MMLLC.  If MMLLC fails to meet this burden, your verdict must be for the Shaw Family.

In evaluating whether MMLLC has met its burdens on its claims, you should also know that the law does not require parties to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matter in issue at this trial.  Nor does the law require parties to produce as exhibits all papers or other things mentioned in the evidence in the case.

You should base your decision on all of the evidence, regardless of which party presented it.

Some of you may have heard of proof beyond a reasonable doubt, which is a proper standard in a criminal trial.  This is a civil trial, *not* a criminal trial.  Because this is a civil case, the reasonable doubt standard does *not* apply to this case, and you should put it out of your mind.

---

[3] *See, e.g., Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc*, 224 F. Supp 2d 567, 570 (S.D.N.Y. 2002), *aff'd in part, rev'd in part, vacated in part*, 2004 U.S. App. LEXIS 17452 (2d Cir. N.Y., Aug. 18, 2004); DUANE BURTON, JURY INSTRUCTIONS IN INTELLECTUAL PROPERTY CASES § 40:55:01 (2000) (citing *Kelier Advertising Inc. v. Premier Pontiac Inc*., 17 U.S.P.Q. 2d. (10th Cir. 1990); *Baxter v. MCA, Inc*., 812 F.2d 421 (9th Cir. 1987)).

**SOURCE:**    Ninth Circuit Model Jury Instruction 1.13; Third Circuit Model Jury Instruction 1.10 (2006); Stock jury instructions in a civil case received from the chambers of the Honorable John L. Kane (D. Col.); 4 Sand, J. Siffert, W. Loughlin, S. Reiss, N. Batterman, Modern Federal Jury Instructions (Civil) ("Sand"), Instruction No. 73-2.

## INSTRUCTION NO. 14.  PERSONS NOT ON TRIAL

You may not draw any inference, favorable or unfavorable to the Shaw Family or MMLLC from the fact that any person has or has not been sued by either party or that any person is not on trial before you at the present time.  You should not concern yourself with the disposition as to those other persons, but should consider only the issues between the Shaw Family and MMLLC.

**SOURCE:**  3 Devitt § 71.07; *see also* Charge by the Hon. Robert E. Keeton, *SEC v. Happ*, C.A. No. 00-12051-REK (D. Mass. Oct. 8, 2003).

## INSTRUCTION NO. 15.  MMLLC'S COPYRIGHT CLAIM

You will decide whether MMLLC has proved, by a preponderance of the evidence, that Ms. Marcus and Ms. Stevens have lost the copyrights in certain of the photographs of Marilyn Monroe taken by their father, Sam Shaw, because these photographs have entered the public domain.

MMLLC has alleged that certain of Sam Shaw's photographs of Marilyn Monroe have entered the public domain, and may therefore be used without permission of the Shaw Family. In response, the Shaw Family contends that these works have not entered into the public domain, and that their copyrights in the photographs are valid.

MMLLC makes two arguments.  First, MMLLC argues that certain photographs taken by Sam Shaw and now owned by Ms. Marcus and Ms. Stevens were published without proper copyright notice, and as a result entered the public domain.  Second, MMLLC argues that certain books containing the Shaw photographs, while initially protected by valid copyrights, no longer are protected because those copyrights were not renewed after the 28 year term expired. Consequently, MMLLC argues that the Shaw photographs of Marilyn Monroe contained in those books have entered the public domain and are therefore free for anyone to use without having to seek permission from Ms. Marcus or Ms. Stevens or the Shaw Family.  I will explain copyright, public domain, notice, and renewal.

A copyright is a protection that the law extends to an author of an original work against unauthorized copying or appropriation of that work by others.  You are probably accustomed to hearing the word "author" used for writers.  But under the copyright law, any creator of an original work, including a photographer, is referred to as the "author."  That is the term we use in the copyright law for the creator of an original work.[4]

Under the copyright law, the owner of a copyright has the exclusive right to print, distribute, import, publish, display and sell the copyrighted work and copies of the same.  This is

---

[4] *Aldon Accessories Ltd. v. Spiegel, Inc.*, 738 F2d 548 (2d Cir. 1984); DUANE BURTON, JURY INSTRUCTIONS IN INTELLECTUAL PROPERTY CASES § 40:20:04 (2000).

the protection that the law gives an author's original work against the unauthorized copying or other use of protectable expression in that work by others.[5]

The term "public domain" means artistic works which have been distributed to the public without restriction and further distributions are unprotected under the copyright law.[6] Any subject matter which is in the public domain may be freely copied by any member of the public, without liability therefor.[7] This means that any of Sam Shaw's photographs of Marilyn Monroe that have entered the public domain may be freely copied by MMLLC or any other party, and that Ms. Marcus and Ms. Stevens may no longer claim to own the copyrights in those photographs.

---

[5] *My Favorite Co. v. Globos Int'l, Inc.*, C.A. 87-10198-MMP (N.D. Fla. 1991); DUANE BURTON, JURY INSTRUCTIONS IN INTELLECTUAL PROPERTY CASES § 40:20:06 (2000).

[6] *Rally Mfg. v. Mr. Gasket Co.*, 984 F.2d 410 (Fed. Cir. 1993); DUANE BURTON, JURY INSTRUCTIONS IN INTELLECTUAL PROPERTY CASES § 40:50:11 (2000).

[7] *Sears v. Stiffel*, 376 U.S. 225 (1964); DUANE BURTON, JURY INSTRUCTIONS IN INTELLECTUAL PROPERTY CASES § 40:50:11 (2000).

## INSTRUCTION NO. 16.  MMLLC'S COPYRIGHT CLAIM
### Notice

As works created in the 1950's, Sam Shaw's photographs of Marilyn Monroe are subject to the rules of the Copyright Act of 1909, which required use of the copyright notice when the photographs were first published in order for copyright protection to exist.

MMLLC contends that certain of Sam Shaw's photographs of Marilyn Monroe failed to include a proper copyright notice when they were first published either individually or in various periodicals such as magazines and newspapers like *LOOK, LIFE, MODERN SCREEN*, *New York Journal American*, the *New York Mirror* and the *New York Post*.[8]

The Copyright Act of 1909 required a copyright owner to place a notice of copyright on all publicly distributed copies of the work.  A proper notice included:

1. The letter "C" in a circle, or the word "copyright" or a proper abbreviation, like "copr.",
2. The name of the copyright proprietor, and
3. In the case of printed literary works, the first year of publication[9]

Insubstantial variations from the prescribed form of copyright notice did not destroy the rights of the copyright proprietor if innocent persons were not misled,[10] or had actual notice of the copyright.[11]

A proper notice was required to be affixed to the copies in such a way as to give reasonable notice of the owner's contention that this is a copyrighted work.  A work published in which notice did not appear as prescribed by the Copyright Act would inject the work into the public domain.[12]  But it did not do so if the notice had been omitted from no more than a relatively small number of copies distributed to the public.[13]

---

[8] *Tracy v. Skate Key, Inc.*, 14 U.S.P.Q.2d 1248 (S.D.N.Y. 1990); DUANE BURTON, JURY INSTRUCTIONS IN INTELLECTUAL PROPERTY CASES § 40:51:01 (2000).

[9] *Aldon Accessories Ltd. v. Spiegel, Inc.*, 738 F.2d 548 (2d Cir. 1984); *Wildman v. N.Y. Times Co.*, 42 F. Supp 412 (S.D.N.Y. 1941); DUANE BURTON, JURY INSTRUCTIONS IN INTELLECTUAL PROPERTY CASES § 40:33:02 (2000); Nimmer § 7.08[A][2].

[10] *Lifshitz v. Walter Drake & Sons, Inc.*, 806 F.2d 1426, 1434–35 (9th Cir. 1986); Nimmer § 7.14[A][2].

[11] *Prestige Floral, Societe Anonyme v. Cal. Artificial Flower Co.*, 201 F. Supp. 287 (S.D.N.Y. 1962); Nimmer § 7.14[A][2].

[12] *J.A. Richards, Inc. v. N.Y. Post, Inc.*, 23 F. Supp. 619 (S.D.N.Y. 1938); Nimmer §7.10[B].

[13] *Aldon Accessories Ltd. v. Spiegel, Inc.*, 738 F.2d 548 (2d Cir. 1984); DUANE BURTON, JURY INSTRUCTIONS IN INTELLECTUAL PROPERTY CASES § 40:33:02 (2000).

In the case of a photograph, proper copyright notice may appear on some accessible portion of the copies such as the margin or back.[14]  However, in the case of periodicals, such as magazines or newspapers, proper copyright notice must appear either upon the title page, or upon the first page of text of each separate number, or under the title heading.[15]  A proper copyright notice in the name of the periodical (for example, "© LIFE, Inc. 1955") is sufficient to protect each contribution contained in the periodical, such as an article or a photograph.[16]

You must decide whether MMLLC has proven by a preponderance of the evidence that a notice of copyright in the Sam Shaw photographs at issue was not properly placed on the publicly distributed copies of the photographs or the magazines or newspapers in which they first appeared.[17]  I will now explain to you what publication is.

Copies are publicly distributed when a work is made available to members of the public regardless of who they are or what they will do with it.[18]  The notice requirements of the law apply only to those copies which have been publicly distributed, which is to say those copies which have been "generally" published.[19]  However, if the publication is "limited," it does not trigger the loss of a copyright when copies of the work are distributed both (1) to a "definitely selected group," and (2) for a limited purpose, without the right of further reproduction, distribution or sale.[20]

Where a periodical such as a magazine or newspaper obtains the right of first publication in a work, such as the photographs in this case, under circumstances which show that the author has no intention to donate his work to the public, copyright notice in the periodical's name is sufficient to obtain a valid copyright in the photograph on behalf of the author, here Sam Shaw.[21]

---

[14] Copyright Act of 1909 §§ 5(j), 19.

[15] Copyright Act of 1909 § 20; Nimmer § 7.10[B][2]

[16] Nimmer § 7.12[C][1]; *Sanga Music, Inc. v. EMI Blackwook Music, Inc.*, 55 F.3d 756, 760 (2d Cir. 1995).

[17] *Aldon Accessories Ltd. v. Spiegel, Inc.*, 738 F.2d 548 (2d Cir. 1984); DUANE BURTON, JURY INSTRUCTIONS IN INTELLECTUAL PROPERTY CASES § 40:33:02 (2000).

[18] *Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446 (9th Cir. 1991) (citing *Burke v. Nat'l Broad. Co., Inc.*, 598 F.2d 688, 691 (1st Cir.), cert. denied, 444 U.S. 869 (1979)).

[19] *Key v. Tellez*, CA No. SA-79-CA-388 (W.D. Tex. 1981); DUANE BURTON, JURY INSTRUCTIONS IN INTELLECTUAL PROPERTY CASES § 40:33:03 (2000).

[20] *Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446 (9th Cir. 1991) (citing *White v. Kimmell*, 193 F. 2d 744, 746–47 (9th Cir.), cert. denied, 343 U.S. 957 (1952).

[21] *Goodis v. United Artists Television, Inc.*, 425 F.2d 397, 399 (2d Cir. 1970). *See also Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc*, 380 F.3d 624, 638 n.30 (2d 2004) (continued…)

Thus, a single notice in the name of the copyright owner of the periodical like a magazine or newspaper is sufficient to protect each contribution contained therein for the contributor.

If you find by a preponderance of the evidence that any of Sam Shaw's photographs of Marilyn Monroe did not comply with the notice requirements of the Copyright Act of 1909, then you must find for MMLLC that those photographs have entered the public domain.

---

(…continued)

(copyright notice in a film which included three dances was sufficient to preserve the copyright of a contributing choreographer's independently owned work).

## INSTRUCTION NO. 17.  MMLLC'S COPYRIGHT CLAIM
### Renewal

As works created in the 1950's, Sam Shaw's photographs are subject to the rules of the Copyright Act of 1909.  When combined with changes in the 1976 Copyright Act, copyright protection for such works, when properly renewed, lasts for 95 years from the original registration.

Copyrights secured before January 1, 1964 are governed by the renewal requirements of the Copyright Act of 1909.[22]  Under the renewal provisions of the Copyright Act of 1909, the copyright term of published works ended 28 years after the date of first publication with adequate notice unless copyright was renewed in the final year of copyright protection.[23]

The Copyright Act of 1909 required application for such renewal and extension to have been made to the Copyright Office and duly registered there within one year prior to the expiration of the original term of copyright.[24]  Renewal of a copyright in a periodical like a magazine or newspaper serves as a renewal for each of the contributions to that work, such as individual photographs appearing in the magazine or newspaper.[25]

If the initial copyright term expired without renewal, the work entered the public domain.[26]

If you find by a preponderance of the evidence that any of the copyrights in Sam Shaw's photographs of Marilyn Monroe were not timely renewed, either by Mr. Shaw or by the

---

[22] *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc*, 224 F. Supp 2d 567, 594 (S.D.N.Y. 2002), *aff'd in part, rev'd in part, vacated in part*, 2004 U.S. App. LEXIS 17452 (2d Cir. N.Y., Aug. 18, 2004).

[23] *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc*, 224 F. Supp 2d 567, 594 (S.D.N.Y. 2002), *aff'd in part, rev'd in part, vacated in part*, 2004 U.S. App. LEXIS 17452 (2d Cir. N.Y., Aug. 18, 2004).

[24] *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc*, 224 F. Supp 2d 567, 594–95 (S.D.N.Y. 2002), *aff'd in part, rev'd in part, vacated in part*, 2004 U.S. App. LEXIS 17452 (2d Cir. N.Y., Aug. 18, 2004).

[25] Nimmer § 9.03[B] (citing *Cadence Indus. Corp. v. Ringer*, 450 F. Supp. 59, 64 (S.D.N.Y. 1978); *Bartok v. Boosey & Hawkes*, 523 F.2d 941 (2d Cir. 1975) ("In a periodical . . . presumably the rationale of the renewal term is to avoid the inconvenience of needing many contributors to join in order to renew the entire work.").

[26] *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc*, 224 F. Supp 2d 567, 595 (S.D.N.Y. 2002), *aff'd in part, rev'd in part, vacated in part*, 2004 U.S. App. LEXIS 17452 (2d Cir. N.Y., Aug. 18, 2004).

publishers of the periodicals in which the photographs were first published, those works are in the public domain, even if they had been first published with adequate notice of copyright.[27]

---

[27] *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc*, 224 F. Supp 2d 567, 595 (S.D.N.Y. 2002), *aff'd in part, rev'd in part, vacated in part*, 2004 U.S. App. LEXIS 17452 (2d Cir. N.Y., Aug. 18, 2004).

# INSTRUCTION NO. 18.  DELIBERATION

Members of the jury, it is now time for the case to be submitted to you and for you to start your discussions - what we call your deliberations.  The first thing you should do when you go into the jury room is to elect a foreperson.  When you consider the evidence in this case, the foreperson will ensure that every juror is present during all of your deliberations and that all jurors, the foreperson included, will have an equal and full opportunity to participate in the deliberations.  The fact that one of you has been elected as foreperson does not give that person special status in your deliberations.  You are all equal.  The foreperson is merely a moderator to ensure that your deliberations are orderly.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully and with the other jurors, and listened to the views of your fellow jurors.  Do not be afraid to change your opinion if the discussion persuades you that you should.  Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Whenever you need a recess for any purpose, your foreperson may declare a recess.  Do not discuss the case during a recess.  All your discussions of the case should occur only when you are all together and your foreperson has indicated that deliberations may proceed.  This should be your procedure so that everyone in the jury will have equal opportunity to participate and to hear all that other members of the jury may say.

**SOURCE:**  1 Freedman § 1 at 68-69; Ninth Circuit Model Civil Jury Instructions, Instruction 4.1. *See also SEC v. Clark*, 699 F. Supp. 839 (W.D. Wa. 1988), *aff'd*, 915 F2d 439 (9th Cir. 1990).

## <u>INSTRUCTION NO. 19.  COMMUNICATION WITH COURT</u>

If you have any questions about the law as you deliberate, you may write out such questions and hand them over to the [bailiff][marshal], who will pass them on to me.  No member of the jury should ever attempt to communicate with me except by a signed writing.  I will communicate with any member of the jury on anything concerning the case only in writing, or orally here in open court.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.

**SOURCE:**    1  Freedman  §  1  at  17;  Ninth  Circuit  Model  Civil  Jury  Instructions, Instruction 4.3.

## <u>INSTRUCTION NO. 20.  CONCLUSION</u>

Having now instructed you, I repeat the caution that nothing said in these instructions and no comment or question of the court is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.  Your verdict must be based solely on the evidence and on the law as I have given it to you in these instructions.  All the decisions you reach during your deliberations must be the result of unanimous agreement.  Each of you must decide the case for yourself, but you should do so only after considering all the evidence, discussing it fully with the other jurors, and listening to the views of your fellow jurors.

A verdict form has been prepared for your convenience and you will take this form to the jury room.

{READ ATTACHED VERDICT FORM}

You will take the verdict form to the jury room and when you have reached unanimous agreement you will have your foreperson fill in the verdict form, date and sign it, and then return to the courtroom.  The foreperson will sign it and announce your agreement to the bailiff who will conduct you into court to declare your verdict.

**SOURCE:**  2 Freedman § 6 at 755; Eleventh Circuit Pattern Jury Instructions 8, with the addition of the bracketed explanation of the verdict form taken from 4 Sand § 78.01, Instruction No. 78-7 (2000).

**VERDICT FORM**

1.      Did MMLLC prove by a preponderance of the evidence that the photographs at issue have entered the public domain?

Yes _____ No _____.

2.      Did MMLLC prove by a preponderance of the evidence that Sam Shaw failed to renew the copyright in the [photographs/books]?

Yes _____ No _____.

3.      Did MMLLC prove by a preponderance of the evidence that the periodicals which first published the photographs at issue failed to renew their copyrights?

Yes _____ No _____.


_____
Signature of Foreperson


_____
Printed Name of Foreperson


_____
Date