UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

SHAW FAMILY ARCHIVES, LTD., et al.,

Plaintiffs,

v. 05 Civ. 3939(KMK)(MDF)

CMG WORLDWIDE, INC., ET AL.,

Defendants.

------------------------------x

White Plains, N.Y.
December 26, 2007

Before:

THE HONORABLE MARK D. FOX,

Magistrate Judge

APPEARANCES

LAW OFFICES OF CHRISTOPHER SERBAGI
Attorneys for Plaintiffs
CHRISTOPHER SERBAGI

LOEB & LOEB
Attorneys for Defendant Marilyn Monroe, LLC
BARRY I. SLOTNICK
JONATHAN STRAUSS

SOVICH, MINCH
Attorneys for Defendant CMG Worldwide, Inc.
CHRISTINE SOVICH (via telephone)

Proceedings recorded by electronic sound recording.

MARY M. STATEN, CSR, RPR, RMR
(914) 390-4027

THE DEPUTY CLERK: This is the matter of Shaw Family against CMG Worldwide, et al.

Counsel, please state your names for the record.

MR. SLOTNICK: Barry Slotnick for MM, LLC.

MS. SOVICH: Christine Sovich --

THE COURT: Just a moment, please.

Go ahead.

MR. SLOTNICK: Barry Slotnick for MM, LLC, along with Jonathan Strauss.

MR. SERBAGI: Good morning, your Honor.

Christopher Serbagi for Shaw Family Archives.

THE COURT: Okay. Thank you.

(Pause)

THE COURT: Okay. Now, somebody is on the phone representing or on behalf of Mr. Minch, I believe.

Is that right?

MS. SOVICH: Yes, that is correct.

THE COURT: All right. You'll be permitted to listen in, but you can't argue. I don't take argument over the phone.

All right. Now, I have before me a whole series of letter briefs, and the record should reflect each -- Mr. Serbagi, I guess, handed me about an inch and a half of paper, or handed it to my Clerk, about ten minutes ago, which I have not read. I've read the letters, but not the attachments.

The discovery cutoff on this case is December 31st.

The issue that is before the Court --

And I say that, Mr. Serbagi, so that if there is anything in those attachments that you think is relevant, you can mention it in your argument.

All right. The issue before the Court started in Ms. Colbath's December 7th letter. And then there was a December 10th letter from Mr. Serbagi. And then there was a December 20th letter from Mr. Strauss. And then there were the two letters delivered this morning from Mr. Serbagi.

So, Mr. Slotnick, you can let me know what your position is. I'll take oral argument, and then I'm prepared to make a ruling on this.

Go ahead, please.

MR. SLOTNICK: Thank you, your Honor.

Before we get to the "he said she said" about whose deposition should be taken when, I think we really need to talk more about more basic issue in this case.

There has been a characterization of our third amended complaint as being restricted to certain photographs, the Risoli book and the Ballantine book.

The Risoli book has already been declared by the --

THE COURT: You pointed that out in your letter.

MR. SLOTNICK: Okay. Absent a showing of ownership of some copyright interest in a photograph of Marilyn Monroe by the Shaw Family, they have no standing to seek any ruling with

respect to Marilyn Monroe's domicile.

The only -- the issue in this case from the beginning is: Who has the rights to utilize Marilyn Monroe's name and likeness?

Judge McMahon has ruled in a way that we respectfully, you know, aren't happy with, of course, that there was no right of publicity in Marilyn Monroe that MM, LLC currently has, subject to a determination of domicile.

The only basis for the Shaw Family to be able to engage in the Marilyn Monroe business is owning copyrights in photographs that Mr. Shaw took.

They are unwilling, and have refused so far, to identify one single photograph in the Marilyn Monroe collection that they actually own. And if they don't own that, they have

no basis for challenging our right of publicity.

So, you know, this more Seinfeldian that Morovian. This may well be a case about nothing.

Absent a showing that they own something -- and that's what we've been asking for -- they have no standing to challenge our right to Marilyn Monroe's right of publicity. And that's what the case is about, your Honor.

MR. SERBAGI: Good morning, your Honor.

Your Honor, as an initial matter, that's the very first time they put forth that argument to the Court or to me. It's not in any of the papers.

All the other arguments are on the papers, your Honor. And since Mr. Slotnick didn't address them, I'll just address the point that he raised.

The standing issue is very simple. As Judge McMahon has acknowledged, on the defendants' counsel's behalf, California has recently passed a statute which purports to provide a retroactive right of publicity on Marilyn Monroe.

The defendants are also arguing that Marilyn Monroe was a California domiciliary, which, according to their position, would put that statute front and center in this case and potentially hold our clients liable under that statute.

That's the standing issue, your Honor. They've claimed a violation of the right to publicity. If the California statute is valid, as they say it is, then that's the standard.

THE COURT: It's before me right now. What's before me right now, according to these letters, would be governed by the scope of the pleading, one side claiming that it's limited to the Ballantine and Risoli books, the other side claiming that it's particular photographs.

So why doesn't somebody show me the pleading and show me where you think it goes your way. I have a copy of the third amended complaint in front of me.

MR. SERBAGI: Your Honor, I'll address that, since I'm already standing.

THE COURT: All right.

MR. SERBAGI: With the Court's permission, if you look at the third amended complaint -- I'm pulling that out, your Honor -- there is absolutely nothing in this third amended complaint. This is a pure fishing expedition. They don't request that -- they don't ask --

THE COURT: I don't care whether it's a fishing expedition or not. The question is whether they pled it.

MR. SERBAGI: No, they didn't.

THE COURT: That's what I'm asking.

MR. SERBAGI: All they pled -- excuse me, your Honor. I'm sorry.

All they pled in the complaint is that the Risoli and Ballantine books are in the public domain.

If the Court turns to Paragraph 23 on Page 5, that's where they identify that the Risoli book is in the public domain.

THE COURT: Just one moment.

(Pause)

THE COURT: All right.

MR. SERBAGI: And then on Paragraph 25 -- excuse me. That's not it.

THE COURT: 25 mentions the Ballantine book.

MR. SERBAGI: Yes, 25. Those are the only two paragraphs where they request -- where they identify any book

that's in the public domain.

If the Court turns to the prayer for relief, which is where they ask the Court to declare that a particular work is in the public domain, on Page 8, all they identify is the Risoli book as being in the public domain.

THE COURT: They say -- the prayer for relieve reads under A for declaratory judgment that "In addition to the Risoli works, defendants do not possess a valid -- do not possess valid and enforceable copyrights in those photographs that compromise the Monroe/Shaw photographs and/or the Shaw collection that were either published prior to January 1, 1964, where no copyright renewals were obtained during the final year of the initial 28-year copyright term for such photographs; or B. published prior to March 1, 1989, without the requisite copyright notice."

MR. SERBAGI: That's correct, but all they identify in there is one book. If that argument were a bridge to get -- if that argument were acceptable to look at our entire collection, there would be no end to the discovery, your Honor. They'd be able to analyze every one of our books and every one of our photographs. There is no basis for that. All they've -- all they're asking the Court to declare is that the particular Risoli and Ballantine is in the public domain. They have no basis to say anything else is in the public domain. So --

THE COURT: That's not what it says. It says "in

addition to the Risoli works."

MR. SERBAGI: I know that it says that, your Honor, but they're not entitled to view our entire collection, just because they say "in addition." That's just language so that they can get to everything. You know --

THE COURT: Okay. I understand your position.

Go ahead, please.

MR. SLOTNICK: Your Honor, this is a bit of a shell game. They say we're not entitled to ask about any other photographs, but they haven't identified any other photographs, so we don't know what they are. We asked specifically, even with respect to those photographs, whether the photographs in the book had been -- in two books, had ever been published before, had ever been registered before. And the witnesses -- the witness will not answer questions regarding even those photographs. But that --

THE COURT: Let me just say this to everybody before we go any further.

Under the Southern District rules, directing a witness not to answer is sanctionable conduct, unless it falls within one of the exceptions in Rule 30. If it happens again, there will be sanctions. That's point one.

Point two is, I'm going to hear what everybody has to say on this, and then I'm going to make rulings. And any

07cqshaMS.txt

discovery that I order is going to take place today, tomorrow

MARY M. STATEN, CSR, RPR, RMR
(914) 390-4027

9
07cqshaMS

and Friday. December 31st is the cutoff. Judge McMahon has made clear she's not extending it.

So go ahead, please.

MR. SLOTNICK: Your Honor, what we want to see are the copyright registrations and the other documents that we've requested regarding the Marilyn Monroe collection. The one piece of information that we did get out of Shaw's 30(b)(6) was that there may be two binders of registrations dealing with the Marilyn Monroe photographs. While that is not insignificant, it's certainly not voluminous. If those documents are produced to us today, we're prepared to take a deposition tomorrow or Friday.

THE COURT: Mr. Serbagi, let me ask you. Any attempt to narrow down the complaint is -- any opportunity to do that is long gone. I'm dealing with the pleadings as they now exist.

What specific photographs are your clients claiming that they have an interest in? Because that's what we're -- that's what this is going to be narrowed down to. So counsel says there's a folder of photographs. You haven't indicated to me what photographs. Certainly, the pleadings go beyond the Risoli and the Ballantine book. So are you in a position to tell me now what specific photographs you're claiming?

MR. SERBAGI: Your Honor, there's over 3,000 photographs in that collection. We're not asserting any of

MARY M. STATEN, CSR, RPR, RMR
(914) 390-4027

10
07cqshaMS

them in this case against these parties.

THE COURT: I'm asking you what claims you're making.

MR. SERBAGI: What claims are we making? I'm sorry. I don't understand the question.

THE COURT: Claims as to which photographs -- which particular photographs fall within the scope of your claims? That's what I'm asking you.

MR. SERBAGI: It's a difficult question to answer, your Honor, because the scope of our claim has nothing to do with the photographs that we have in our collection. It has absolutely nothing to do with anything. All we're requesting -- the only claim we have is a request that the Court declare that Marilyn Monroe died a New York domiciliary. That's the only claim we have.

So in a sense, none of them. Because we're not asserting any of the photographs in this case against these clients.

THE COURT: Okay. I think I understand your position.

What are you talking about when you say there is a folder of photographs, Mr. Slotnick?

MR. SLOTNICK: The Shaw witness identified two binders as being those -- as encompassing those documents which have copyright registration certificates for the Marilyn Monroe photographs.

THE COURT: Which Shaw witness?

MARY M. STATEN, CSR, RPR, RMR
(914) 390-4027

11
07cqshaMS

Page 5

MR. SLOTNICK: The 30(b)(6), Melissa Stevens.

THE COURT: And how specifically did she identify them? What language did she use?

MR. SLOTNICK: I don't have the specific language. She said that there were two --

THE COURT: Doesn't help me.

MR. SLOTNICK: Okay. She said there were two binders which contained copyright registration certificates. She said there were at least two binders. I asked if those were all of the Shaw --

THE COURT: Now, first, you said two binders. Now you're saying at least two binders. Look at the deposition transcript and tell me what she said.

MR. SLOTNICK: One moment.

THE COURT: Yes. Take your time.

(Pause)

MR. SLOTNICK: Okay. Your Honor, on Page 138, "Generally speaking, SFA keeps binders of our files. I've seen a binder with copyright registration-related documents."

Then I asked, "How many?"

She said, "I really don't know."

I said, "More than five?"

She said, "I'll say more than two, definitely."

I said, "Did you view these binders in preparation for today's deposition?

"Yes, I did."

I requested that she review the files and produce to us any other registrations that FSA -- SFA has with respect to Marilyn Monroe as the girl, or any other specific individual photographs with Marilyn Monroe.

And that's on Pages 138 through 141 of the deposition transcript.

(Pause)

MR. SERBAGI: May I make an additional point, your Honor?

THE COURT: I'm going to hear from you in just a moment. I want to read this.

MR. SERBAGI: Certainly. I'm sorry.

(Pause)

THE COURT: All right. Go ahead, please.

MR. SERBAGI: Okay. Your Honor, there's a few points I'd like to make by way of an analogy.

If this were an infringement case, and they were arguing that we had infringed Product A, and in their complaint, they said on information and belief other products infringe, they certainly would not be entitled to discovery on all the products that we would have in our repertoire. That kind of argument, it would open up discovery in incredible ways.

Secondly, your Honor, we are not asserting any of

these photographs in this case. This is not about our photographs. They have absolutely no standing to argue that these photographs are in the public domain, anyway. The Court has already ruled that they don't have a right of publicity in Marilyn Monroe. And that's going to be the subject of summary

judgment briefing, your Honor. They have no standing to argue that these are in the public domain, because the Court has already ruled they don't any rights to the photographs to begin with.

So for them to say on information and belief other photographs are in the public domain, and then to get discovery on every single photograph we have, which are thousands, would open up the floodgates, your Honor.

THE COURT: Well, they're not talking about photographs here. What they're talking about is registration certificates. That's different.

MR. SERBAGI: Well, your Honor, it's photographs that are in the public domain, not the registrations. And so what they're trying to --

THE COURT: But the registrations would be at least indicative or at least they would be relevant to the issue of whether the photographs are in the public domain or not, wouldn't they?

MR. SERBAGI: That is true, your Honor. But based on their argument, they would open up the floodgates to things

they haven't even identified. This is pure fishing. They can't just say Risoli and Ballantine are in the public domain and get discovery on everything we have. I mean, that argument, as I say with the infringement issue, your Honor, if it were an infringement claim, that would be the same exact issue. If I were arguing that a pharmaceutical company's Drug A was -- patent was invalid, and on that argument, on information and belief, other patents are invalid, I'd get discovery an all their patents? It's just baseless.

THE COURT: Okay. Anything further?

MR. SLOTNICK: Yes, one thing, your Honor.

First of all, they never made a motion to dismiss this claim or to limit it.

Secondly, and most importantly, let me get back to what they are asserting against us, as well. They're asserting that they have certain rights to use the Marilyn Monroe image, and that we have -- we, the Marilyn Monroe estate and LLC -- have no ability to limit, restrict that right. And they are now seeking from us a determination of Marilyn Monroe's domicile to determine the right of publicity.

Well, if someone came off the street having no contact whatsoever with the Marilyn Monroe estate, they'd be thrown out of court if they were asked about domicile.

If the Shaw Estate does not own a copyright in a photograph of Marilyn Monroe, they are in the same position as

anybody off the street. If they want to be voyeurs of Marilyn Monroe's life, you know, we can address that, too. But that's not what this is about. We're in a court of law. They allegedly have some basis for being in this court of law. They originally did sue for copyright infringement. We would like to have some repose when this case is over. The parties really do needs to know --

THE COURT: You're only entitled to discovery on what's left in the case.

MR. SLOTNICK: Your Honor, all we need -- if we see

the registration certificates, that's going to go a long way, and obviously, at this stage of the game, all the way to determining what the rights are of both of the parties.

THE COURT: All right. Anything further?

MR. SERBAGI: One final point, your Honor.

It's absolutely false to say that we are asserting that we have rights to these images in this case anymore. That's not the issue. Those were the issues maybe to begin with when we were asserting various claims. Those issues are out of the case. It has nothing to do with this case whatsoever. They've claimed the two images are in the public domain. That's all they're entitled to discovery on, your Honor. This kind of -- this is blatant fishing expedition.

THE COURT: All right. Thank you.

I think it might be. However, I don't think I have to

get to that in order to decide this issue.

It's pretty plain, from the deposition testimony of Melissa Stevens, that, in preparation for her deposition, she looked at these binders, and she describes them in detail as binders containing registration certificates.

Anything that she looked at in preparation for her deposition, counsel would be entitled to inspect.

So I'm going to direct that the Melissa Stevens deposition be reconvened tomorrow at 12:00 noon.

The folders to which she referred in her deposition testimony will be made available to counsel for inspection. That doesn't mean copying. That means inspection, and inspection only. Starting at 8:00 a.m. tomorrow morning, and that will be at Mr. Serbagi's office, unless counsel agree to do it somewhere else.

(Pause)

THE COURT: And then that deposition will proceed starting at 12:00 noon. It will proceed for a maximum of four hours, which should be more than sufficient time.

Now, there is a second issue that was raised here regarding the scope of the 30(b)(6) deposition.

I have to tell you, gentlemen, I'm kind of perplexed in an '05 case why all this is happening within a week or two of the close of discovery, but I'm not going to get into it.

You're claiming, Mr. Slotnick, that the witness who

was produced was not an appropriate 30(b)(6) deposition. You're claiming that she only worked for the company for two weeks. Counsel is telling me that she was involved with the company for a long time. This is not a company that is apparently a Fortune 500 company. It's a small operation.

In any event, the rules are pretty clear with reference to 30(b)(6) deposition. You have the transcript. Point out to me any place in the transcript where she was unable to provide information that was covered by the scope of the 30(b)(6) notice.

Does anybody have a copy of the 30(b)(6) notice?

(Pause)

MR. SLOTNICK: I'm not sure (unintelligible), your Honor.

(Pause)

MR. SERBAGI: Your Honor, the greater issue for us, really, was that she was limited to talking about two books.

THE COURT: I'm not getting into what you think is the greater issue. I want to see the 30(b)(6) notice. We're way beyond the time we get into these philosophical discussions.

(Pause)

MR. SLOTNICK: Your Honor, we don't have a copy, but I'm looking through the transcript now.

(Pause)

THE COURT: Do you have a copy?

MR. SERBAGI: No, your Honor, I do not.

(Pause)

THE COURT: Well, gentlemen, without a copy of the 30(b)(6) notice, I'm really not in a position to give you anything on this. So what I would suggest is that you go out and make a phone call and find out if somebody in your offices can messenger a copy up here. If not, we'll reconvene at two o'clock this afternoon, when I'll see the 30(b)(6) notice, when you have a copy for me. Because that's what this is going to turn on. I want to see the scope of the notice. Then I want to see the transcript. And counsel can point out to me specifically where in the transcript it's indicated that this particular witness, Melissa Stevens, who apparently is the niece of one of the three principals, did not comply -- was not prepared to comply with the 30(b)(6) notice.

The arguments that she only worked there for two weeks don't mean very much to me. That is absolutely not what a 30(b)(6) witness turns on. A 30(b)(6) witness can be anybody, as long as they are properly prepared to provide factual information on the issues which were raised in the notice.

So one of you gentlemen go out in the hall and use the phone if you have to, and see if you can get somebody to get a copy of the 30(b)(6) notice up here. And as soon as you get that information, you can let my Clerk know.

Okay. Let's go ahead with the criminal calendar,

please.

MR. SERBAGI: Can I make one point, quick point, with your Honor?

THE COURT: Yes.

MR. SERBAGI: We do have scheduled today the final 30(b)(6) deposition of CMG, just for the Court's information. Mr. Slotnick, if this is his issue, should have had this here today.

THE COURT: You both got a lot of lawyers working with you. Get somebody else to do one or the other. Right now, call down there and see if you can get it.

What time is that deposition set for?

MR. SERBAGI: It's set for 10:00, your Honor.

THE COURT: Well, if somebody in your office has a copy and they can fax it up here, I'll permit -- I'll take a fax for that limited purpose, even though I don't usually do that.

It's incredible to me that you guys would come in here to argue this issue and nobody has a copy of the notice.

In any event, see if you can get it. If you can, the

Clerk will give you the fax number, and I'll have it faxed up.

Okay. Second call.

(Recess)

- - -

THE DEPUTY CLERK: Your Honor, in the matter of the

Shaw Family, et al. against CMG Worldwide, et al.

Second call.

THE COURT: Okay. I understand from my Clerk that neither of you gentlemen, because of the holiday situation, were able to get anybody in your office who could obtain a copy of the 30(b)(6) deposition. So there is not much I can do about that.

All right. The deposition of -- the renewed deposition of Melissa Stevens will take place, as I've indicated, tomorrow.

Where did you want to do that?

MR. SLOTNICK: We'll do it at our office.

THE COURT: Okay. The only problem -- the only reason I'm hesitating -- ordinarily, I'd say that's strictly a matter within, you know, the purview of you gentlemen -- is that I'm sure there are going to be further problems. So make sure your court reporter is prepared to leave your offices and get up here, because if there are any disputes at all, I'm not going to do them over the phone. You're going to have to up, and you'll resume your deposition here in the deposition room downstairs.

MR. SLOTNICK: Your Honor, I'm certainly prepared to take the deposition here.

THE COURT: What do you want to do, Mr. Serbagi?

MR. SERBAGI: That's fine with us, your Honor.

THE COURT: All right. Why don't you convene here then. The boxes -- the only trouble with that is going to be, I think the document review should take place -- I think the document review should take place at your offices, because that's where the documents would be. And then if there is some dispute about the relevancy of the documents, you can call me. Although what I'll tell you is, you're going to bring them up here.

MR. SERBAGI: I'm sorry. When the Court said what do you want to do? I thought you meant if there is a problem. We would prefer to have the deposition in New York, your Honor; and if there is a problem, come up here, but --

THE COURT: All right. That's fine. I have no problem with that. Except I think it ought to be at your office, since you have the documents.

MR. SERBAGI: That's fine.

THE COURT: That way, if documents -- you know, if there is some issue about them, the documents are going to be there and be available.

You've only got until December 31st to do all this, and I will not be here on December 31st. So that means whatever needs to be done is going to be done between now and Friday.

MR. SLOTNICK: Your Honor, just as a logistical issue, you've indicated we can examine the documents, but not copy

07cqshaMS.txt
MARY M. STATEN, CSR, RPR, RMR
(914) 390-4027

22
07cqshaMS

them. Obviously, for the purpose of taking the deposition --

THE COURT: You can make notes on them. And you can mark with a post-it any document you think is relevant to the deposition so that it can be immediately available. But no copying, and you're not going to take anything with you. Okay?

MR. SERBAGI: Just one final request, your Honor, which I made in my letter motion.

The deposition of Anna Strassberg, the parties have consented, because of scheduling difficulties, to take her on January 4th, if that's acceptable to the Court. It's after the discovery deadline.

THE COURT: Yes, it is. All right. Since both sides have agreed on that, I'll permit that. But that is a so-ordered date, and may not be changed without on order of the Court. The witness is directed to be available and to appear on that day.

Anything else?

MR. SLOTNICK: Your Honor, does your Honor want us to come back at two o'clock with respect to the --

THE COURT: No, I don't think it's necessary at this point. If there are any further issues, I'll deal with them when the disputes come up. But as far as the claim that the 30(b)(6) witness did not -- was not prepared to testify as appropriate, that claim is gone.

Without the 30(b)(6) notice, I'm not in a position to

MARY M. STATEN, CSR, RPR, RMR
(914) 390-4027

23
07cqshaMS

rule on it. So the application is denied.

Okay. Thank you very much.

You will not disappoint me if there are no problems and you can't come up. Don't get me wrong.

All right. Thank you.

\- - -

MARY M. STATEN, CSR, RPR, RMR
(914) 390-4027

Page 11