UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
SAM SHAW,

     Plaintiff,

 -against-

ST. MARTIN'S PRESS, INC.,
SUZANNE SOMMER PRODUCTIONS,
SUSAN BERNARD,

     Defendants.
--------------------------------X



**AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

93 Civ. 2871 (Patterson)

LAP

Plaintiff, by his attorneys, BRESSLER & BRESSLER, as and for
his Complaint, alleges and says:


### JURISDICTION


1. The claims herein arise under the copyright laws of the
United States; under the provisions of the Lanham Act; the New York
General Business Law, Section 368(d); and under the Common Law.
Jurisdiction is conferred upon this Court under the provisions of
28 U.S.C. Sec. 1331, 1338 (a) and (b), and 15 U.S.C. Sec. 1125, and
Section 302 of the New York Civil Practice Laws and Rules.


### VENUE


2. Venue in this district is proper by virtue of 18 U.S.C.
Sections 1391(b) and (c) and 1400(a).

MMLLC (Shaw) 000682

## PARTIES

3.    Plaintiff, Sam Shaw ("Shaw"), at all times, was and is a citizen of the United States.  He is a famous and world renowned photographer, creative director, movie producer and writer.  A number of books of his photography and text have been published including three relating to the late actress, Marilyn Monroe.  In his capacity, as creative director and still photographer on behalf of the producer of the film, "The Seven Year Itch", Plaintiff set up and photographed still shots of the Marilyn Monroe "Flying Skirt" series, as well as other photographs.

4.    Defendant, St. Martin's Press, Inc. ("Publisher") is a publisher with offices in New York City.  It publishes a variety of books including books containing photographs.  Over the years it has published a number of books containing photographs of Marilyn Monroe.  It has caused a book to be printed and offered for sale containing photographs of Marilyn Monroe, purportedly taken solely by the late Bruno Bernard ("The Book").  The Book has been widely promoted, with distribution in the United States commencing on May 3, 1993.  It has heretofore been published and distributed in the French language in France.  A copy of the original English language version is submitted herewith as Exhibit "A".

MMLLC (Shaw) 000683

5.   Defendant, Susan Bernard ("Bernard"), is a resident of Los Angeles, California, and is the daughter of the late Bruno Bernard. She is a former actress. Her father, Bruno Bernard, was a photographer in California during the 1940's, 1950's and 1960's. On information and belief, Defendant Bernard has succeeded to the interest of Bruno Bernard in the photographs created by him. She is the author of the text of the Book, and together with Publisher, selected the photographs purportedly taken by Bruno Bernard for inclusion in the Book. In acquiring many of the photographs from stock photo houses for the Book, Susan Bernard utilized the name of Suzanne Sommer.

6.   Suzanne Sommer Productions, on information and belief, is a non-corporate entity wholly owned by defendant, Bernard and was created solely for the purposes of acquiring material for the Book.

## FACTS COMMON TO ALL DEFENDANTS

7.   Sometime in 1953, Plaintiff was retained by the producer of a film to be produced by him, entitled the "Seven Year Itch" ("The Movie"), to be its creative director. The Producer was Charles Feldman. Plaintiff's function was to act as a consultant to the Producer to develop publicity for the film, among other things, to create appropriate still photography by either him or by others, and to promote the film. Plaintiff's activities were those of an independent contractor and all rights in and to the

3

MMLLC (Shaw) 000684

photographs taken by him relating to the movie were his.

8.    In furtherance of his consulting services, Plaintiff was required to be, and was, on the movie set at all times that Marilyn Monroe was on the set.

9.    In addition to Plaintiff, the only photographer regularly permitted on the set of the movie, be it either on location in New York, or on the Twentieth Century Fox lot in Hollywood, was the Twentieth Century Fox staff photographer, who took his own still photographs, for the benefit of the Studio.  In addition, from time to time, Plaintiff invited other photographers on the movie set in furtherance of his obligations to create photo opportunities.

10.    Plaintiff took many photographs of Marilyn Monroe on the movie set both on location in New York and on the studio lot in Hollywood, California.  The most famous of the photographs was the "profile flying skirt" shot which depicts Ms. Monroe in Profile, her skirt blowing in the wind over a subway grate, with Tom Ewell, her co-actor in the movie, looking on ("Profile Shot").  Plaintiff has, on occasion, authorized the cropping of Mr. Ewell's image from the photograph.

MMLLC (Shaw) 000685

11.  The "profile shot" was taken at Twentieth Century Fox's Hollywood lot.  It was taken by Plaintiff on a Saturday, during a special shoot while he was the only special photographer present. Neither Bruno Bernard nor any other still special photographer was present.

12.  Other photographs which were part of what has come to be known as the "Flying Skirt Series", were taken in Hollywood on the Studio lot.  The only photographer who was permitted to take, and did take photographs, of the "flying skirt scene" while it was being filmed in Hollywood, was the Studio photographer, Bill Thomas.

13.  Bruno Bernard, with whom Shaw was acquainted, was not on the Studio lot during the shooting of the flying skirt scene or during still photo shoots.

14.  Location shots of the "flying Skirt" scene were taken in New York City.  Plaintiff, and another photographer, George Barris, were the only non-studio photographers on the location, during the filming, other than a few news photographers and others invited to the location by Shaw for a photo shoot after the filming.  Mr. Bernard was not invited to the location and was not on it.

5

MMLLC (Shaw) 000686

15. In addition to the "flying skirt" series, photographs were taken on the set of Ms. Monroe in a bath. Because of the nudity involved, and the close, small area in which the scene was shot, photos were taken in a "closed" set on the Studio lot in Hollywood. The only photographers who took pictures of the bath scene were Plaintiff and the Studio photographer, Bill Thomas. Bruno Bernard, was, at no time on the closed set and did not take a photograph of the bath scene.

16. Over the years, Plaintiff has permitted selected photos of his flying skirt photographs and the profile flying skirt photograph of Marilyn Monroe to be reproduced during the production and first distribution of "The Seven Year Itch" film and thereafter. At no time has Defendant Bernard nor her father; Bruno Bernard, suggested or complained that Plaintiff was not the creator of such photographs.

17. Among the photographs appearing in the Book, its creation improperly attributed to Bruno Bernard, was the profile flying skirt photograph taken by Plaintiff on the Hollywood lot. In 1972, a poster of this photograph was reproduced for purposes of promoting a book, containing Plaintiff's profile flying skirt image, among other photographs taken by a total of twenty-four photographers, to be published with text by Norman Mailer, entitled "Marilyn". The poster bore a copyright notice as follows:

" c  Sam Shaw 1972  "

6

MMLLC (Shaw) 000687

secured bearing number TX 51-061.  A supplemental registration was secured by the Copyright claimants dated November 6, 1979, bearing registration number TX 376-054.  Copies of such registrations are annexed hereto as Exhibit "D".

22.  On information and belief, since August 1, 1973, all copies of "Marilyn" and of the "Profile Flying Skirt" photograph contained therein, has been printed and published in strict conformity with 17 U.S.C. Sec. 1, et. seq. and all other laws governing copyright in the United States.

23.  Since August 1, 1973, Plaintiff is, and has been the sole beneficial owner of all right, title and interest in and to the copyright in and to the Profile Flying Skirt photograph taken by him as reproduced in the book, Marilyn.  A copy of the title page of "Marilyn" containing an appropriate notice of copyright, and acknowledgement of Plaintiff's copyright ownership in his photographs annexed therein is annexed as Exhibit "E".

24.  Defendants have reproduced the "Profile Flying Skirt" in the Book, as well as eleven (11) other photographs taken of Marilyn Monroe by Plaintiff in connection with the movie.  Copies of Plaintiff's photographs reproduced in the Book with the page of the Book in which they are reproduced set forth thereon, are annexed hereto as Exhibits "F" through "Q", respectively.

MMLLC (Shaw) 000688

25.  On April 27, 1993, Plaintiff filed for a registration of copyright on an expedited basis in the aforesaid photographs marked "G" through "H", "J", "K", "L", "N", "O", "P", and "Q". A copy of the registration thereof bearing number VA 250941 is annexed hereto as Exhibit "R". Application for copyright registration on an expedited basis for Exhibits "I" and "M" was sought on May 5, 1993. A copy of the application is annexed as Exhibit "S". Upon receipt of a copy of the registration of such application, it will be appended in lieu of the application.

26.  The aforesaid eleven (11) photographs have never been published with the authority of Plaintiff.

27.  One of the photographs (Exhibit "O") reproduced on page 101 and on the back cover of the Book, would not have been reproduced by Plaintiff and he would not have permitted its reproduction by others because of taste.

28.  Plaintiff has, at all times since their creation, been the sole proprietor of all right, title and interest in and to the copyright in the aforesaid photographs marked as Exhibits "F" through "Q" attached hereto.

29.  All photographs in the Book are attributed to Bruno Bernard including the front and rear dust jacket. In addition to the twelve (12) photographs in the Book created by Plaintiff, and

9

MMLLC (Shaw) 000689

improperly attributed by Defendants to Bruno Bernard, no less than 64 photographs, taken by photographers other than Bruno Bernard are reproduced in the Book and likewise attributed to Bruno Bernard. A list of the images in the Book, by page reference to it, of images that were either created by Plaintiff, or which Plaintiff believes at this time were created by photographers other than Bruno Bernard, is annexed as Exhibit "T".

30. Defendant Bernard's father, Bruno Bernard, was a photographer in Hollywood who had taken pictures of Marilyn Monroe in the earlier portion of her career. His photographs of her were little known and he had not gained any renown either during Marilyn Monroe's lifetime or in the years subsequent to her death for having shot photographs of significance of Marilyn Monroe.

31. During his lifetime, Bruno Bernard was not known as having taken any photographs of Marilyn Monroe in connection with "The Seven Year Itch" in general and the famous "flying skirt" photos, in particular, and on information and belief, during his lifetime no photograph of her in connection with said movie attributed to him was published.

32. On information and belief, during her father's last illness, and subsequent to his death in 1986, Defendant Bernard sought to attribute to her father the creation of the "Flying Skirt Series" recognized as perhaps the best known "pin-up" photos of

MMLLC (Shaw) 000690

Marilyn Monroe by utilizing photographs of quality and recognition created by others. To accomplish this goal, she caused books of Marilyn Monroe, photographs purportedly taken by Bruno Bernard, to be published thus crediting the "flying skirt" photos of Marilyn Monroe to Bruno Bernard as well the creation of other photographs of Marilyn Monroe taken both before and after the "flying skirt series" in 1954 so as to lend him credibility as the "Flying Skirt Series" photographer and to demonstrate the breadth of his supposed photographs of Marilyn Monroe. To have "jumped" from his relatively early pre-stardom photographs of Marilyn Monroe to the "Flying Skirt Series" with no photographs credited to him before or after such series would have strained credibility.

33. Toward that end, commencing in the 1980's, Defendant Bernard began asserting that her father had created photographs of Marilyn Monroe that she knew had in fact been created by others, including Plaintiff and went about publishing a number of photographs created by Plaintiff and others attributed them to Bruno Bernard. In addition, she held herself out as capable of granting licenses for reproducing such photographs with a willingness to do so.

34. Commencing no later than the Spring of 1992, Defendant Bernard, under the name Suzanne Sommer Productions, began acquiring color transparencies and black and white photos of Marilyn Monroe from photo repositories, under the representation that it was in

11

MMLLC (Shaw) 000691

the process of producing a documentary and pictorial book on the life of Norma Jean - Marilyn. In doing so, Sommer Productions did not disclose the fact that it was packaging a book purporting to use the photographs of Bruno Bernard only.

35. On information and belief, the sole purpose for the creation of Suzanne Sommer Productions was to conceal Defendant Bernard's interest in acquiring photographs of Marilyn Monroe, regardless of the photographer, to be utilized in the Book as having been created by Bruno Bernard.

36. Defendant Bernard has, over the years, accumulated from third persons, various negatives, copy negatives and prints of images of Marilyn Monroe taken by Plaintiff, the original negatives of such images having been misappropriated from Plaintiff.

37. Commencing in July 1992, immediately upon learning that Defendants were planning to publish the Book, Plaintiff's representatives informed Publisher that the projected publication of the Book contained photographs taken by Plaintiff and were protected by Copyright. Although Publisher promised to respond to the claim, it did not do so. At numerous times thereafter, Plaintiff's representatives advised Publisher of Plaintiff's rights with specific proof as to the origins of many of the photographs in the Book. At the time of the publication of the Book, in the United States and outside, Defendants were fully aware of

MMLLC (Shaw) 000692

Plaintiff's claims that they were violating his rights of copyright and of attribution by publishing the Book.

38.  Commencing on or about April 8, 1993, and thereafter, Plaintiff's representatives advised Publisher that the Book not only contained reproductions of Plaintiff's photographs, of which it had been advised nine months prior thereto, but that a substantial number of additional photographs reproduced in the Book and attributed to Bruno Bernard, were not taken by him and that such attribution was likewise incorrect.  Lists setting forth such falsely attributed photographs were submitted to Publisher prior to publication of the Book.

39.  Publisher and defendant Bernard are aware that Defendant Bernard's father, Bruno Bernard, stated in a book, purportedly written by him and published in the United Kingdom in 1986, entitled Requiem For Marilyn, that a number of photographs published in his 1986 book were reproduced by courtesy of one Perry Lieber, formerly of Twentieth Century Fox and thus assumedly not taken by Bruno Bernard.  Such photographs are reproduced in the Book and appear on pages 46, 53, 55, 60 and 72 thereof.  Variations of the photographs printed in the 1986 book with courtesy to Mr. Lieber, and thus photographed at the same time by the same photographer, are reproduced on the front cover and pages 58, 59, 61 and 117 of the Book.

15

MMLLC (Shaw) 000693

40.  Such eleven photographs, attributed by Bruno Bernard to a third person in the 1986 book, are incorrectly attributed in the Book by Defendant Bernard to Bruno Bernard.

41.  Defendants Bernard and Publisher have heretofore announced the reprinting by Publisher of the 1986 book, <u>Requiem for Marilyn</u>, which in its original United Kingdom printing attributes the aforesaid eleven (11) works to persons other than to Bruno Bernard.

42.  Notwithstanding notice given to Defendants regarding the unauthorized reproductions in the Book and the false attribution of at least 74 of the 147 photographs reproduced therein, and the knowledge thereof acquired independent of Plaintiffs notice, Defendants have nevertheless permitted the Book to be published in English, translated into French, published and distributed prior hereto in France, by Editions du Collectionneur and have granted licenses to utilize Plaintiff's photographs without his consent and without attribution to him.

43.  The utilization and exploitation of the likeness of the late Marilyn Monroe over the years has been great and many of the photographs taken of her are recognized throughout the world and have become iconographic.  The photographers of her best known pictures are likewise recognized throughout the world and each, including Plaintiff, is known for having photographed her during a

MMLLC (Shaw) 000694

particular period of her career.

44.  The recognition and correct attribution as to the source of one photograph or group of photographs taken of Marilyn Monroe during one period of time effects the recognition and attribution of later or earlier photographs to the correct photographer. Incorrect attribution to photographers, such as Bruno Bernard, places him in the historical context of Monroe photographers, the result sought by Defendant Bernard, thus giving her father the credibility to claim the creation of the "flying skirt" photos and the reputation and economic reward flowing therefrom.

45.  Marilyn Monroe was a much photographed actress.  A substantial number of photographers were given the opportunity to photograph her during her career.  In order for such photographers to exercise their right of reproduction in the world marketplace, users are required to engage in photo research to determine the creator of the photograph to be used so as to seek and obtain the required permission.  The incorrect attribution of over fifty (50%) percent of the photographs in the Book to persons other than the creators by reason of such attribution, is reckless and careless and intended to create a false provenance, a chain of self-created "facts", which will permit a future researcher to rely upon the authority of the prior incorrect attribution of the source of the pictures in the Book.

MMLLC (Shaw) 000695

## AS AND FOR A FIRST CLAIM
### (Intentional Tort)

46.  Plaintiff repeats and realleges each and every allegation of paragraphs 1" through "45" as if fully set forth herein.

47.  Defendants caused the Book to be published, and rights in Plaintiff's photographs licensed, notwithstanding their knowledge that Plaintiff was the copyright proprietor of the photographs created by him, which are reproduced in the Book, that Bruno Bernard had conceded that some of the photographs attributed to him in the Book had been created by others and that over half the photographs in the Book were incorrectly attributed to Bruno Bernard.  Plaintiff and the other photographers who together created at least half of the photographs reproduced in the Book, have the right under the law to have their works credited to them respectively rather than to Bruno Bernard.

48.  On information and belief, the Defendants' conduct as aforesaid was part of a fraudulent plan and scheme by Defendants Bernard and Suzanne Sommer Productions, and adapted by Publisher in publishing the Book, to assert unto Bruno Bernard, the creation of photographs taken by Plaintiff specifically, and other photographs in general, in order to confuse the public as to the source of the photographs and create the belief by the public and prospective licenses that all rights therein and particularly in the "flying skirt" photos, resided with Defendant Bernard and that prospective

15

MMLLC (Shaw) 000696

licensees were not required to procure any rights elsewhere.

49.   The attribution to Bruno Bernard of all the photographs in the Book by Publisher is a result of a lack of the most elementary photo-research that prospective purchasers, future researchers, and photographers, expect from a Publisher of the Publisher's high stature.   Such reckless failure interferes with the balance of attribution by those photographers who, over the thirty years, after the death of Marilyn Monroe, have become fixed in the mind of the public as the photographers of Ms. Monroe at different portions of her career.   Defendant Publisher, having previously published a number of monographs of Monroe photographs each by a recognized Monroe photographer was well aware of the necessity for careful photo-research.

50.   The aforesaid conduct of expropriating from Plaintiff and other photographers their patrimonial interest in the work created by them en gros and by Plaintiff individually, and taking such interest unto themselves, was a malicious act of trade disparagement intended to destroy the relationship between Plaintiff, and others, with their respective works and to deny their place in the history of Marilyn Monroe photographers.   This conduct constitutes an intentional tort.

17

MMLLC (Shaw) 000697

51.   The result of the aforesaid acts upon Plaintiff and the other photographers whose works have been expropriated by Defendants, is a diminution of their respective bodies of work; loss of opportunity by Plaintiff and others to maintain and enhance their respective reputations by being credited with the work they created and a specific loss of royalties that Plaintiff and others otherwise would have received by reason of the unfettered recognition to which they would have thus been entitled.  Further, by reason of such conduct, Plaintiff and others have lost and shall continue to lose the ability to control the quality and nature of reproductions of their respective works because potential users will be unaware of the fact that they created their works.

52.   By reason of the aforesaid, Plaintiff has suffered substantial damage and incurred substantial costs and fees in attempting to protect himself against such conduct.

## AS AND FOR A SECOND CLAIM AGAINST ALL DEFENDANTS
### (Copyright Infringement)

53.   Plaintiff repeats and realleges each and every allegation of paragraphs "1" through "45" as if fully set forth therein.

54.   The intentional assertion by Defendants that Bernard is the author and copyright proprietor of Plaintiff's photographs reproduced in the Book, with the right to control their reproduction, despite having been repeatedly advised to the

MMLLC (Shaw) 000698

contrary and knowing full well that the works were created by Plaintiff, and that permission therefor had not been obtained from him, constitutes Defendants as knowing and willful infringers of Plaintiff's photographs. Further, the publication of Plaintiff's photographs and failure to attribute their creation to him constitutes a violation of Section 106A of the Copyright Act. As copyright infringers, Defendant Bernard and Publisher are severally and jointly liable for all such acts of infringement.

### AS AND FOR A THIRD CLAIM AGAINST ALL DEFENDANTS
(Lanham Act)

55. Plaintiff repeats and realleges each and every allegation of paragraphs "1" through "54" hereof as if fully set forth herein.

56. Plaintiff is a world-recognized photographer, whose photographs connected with "The Seven Year Itch" are now identified, and have been, since 1954, identified throughout the world as having been created by him and that Plaintiff is the source of their creation.

57. Defendants utilized Bruno Bernard's name as the photographer of the photographs reproduced in the Book, and in promotion and advertising thereof, knowing that such a description was a false designation as to origin of the twelve photographs in the Book that were created by Plaintiff as well as the additional 64 photographs created by photographers other than Bruno Bernard,

19

MMLLC (Shaw) 000699

all in violation of the Lanham Act, Section 43(a), 15 U.S.C., Section 1125(a).

## AS AND FOR A FOURTH CLAIM
### (Violation of Section 368-d of New York General Business Law)

58.  Plaintiff repeats and realleges each and every allegation of paragraphs "1" though "57" as if fully set forth herein.

59.  By reason of Defendants' conduct, there is a likelihood of injury to business reputation and dilution of the distinctive quality of Plaintiff's world-renown reputation all in violation of Section 368-d of New York's General Business Law.

## AS AND FOR A FIFTH CLAIM
### (Unfair Competition)

60.  Plaintiff repeats and realleges each and every allegation of paragraphs "1" through "49" and "52" through "57" as if fully set forth herein.

61.  Over the years, a source of revenue for Plaintiff has been the licensing of reproduction rights in the totality of the photographs that he has taken and the publishing of books of his photographs with a narrative written by him.

20

MMLLC (Shaw) 000700

62.  Plaintiff is currently negotiating the publication of a book of his photographs and narrative relating to his relationship with Marilyn Monroe in the filming of "The Seven Year Itch", and otherwise.

63.  The publication of the Book and the attribution to Bruno Bernard of Plaintiff's photographs, and the confusion resulting therefrom, will decrease the likelihood of his securing a publisher to publish his new work.

64.  Further, the false attribution of Plaintiff's photographs to Bruno Bernard, and the passing off of such photographs as his has the effect of disparaging Plaintiff's reputation with regard to the balance of his work since he has held himself out as the photographer of the "Profile Flying Skirt", in particular, and other "flying skirt" photos in general and has licensed the right of reproduction therein; has written and published a book with photos relating to the filming of "The Seven Year Itch" with photos from the "Flying Skirt Series" since 1955; and has acquired the reputation as the photographer of record for the iconographic "Seven Year Itch" flying skirt photographs.

65.  In addition, the misappropriation by Defendant Bernard of Plaintiff's photographs by attributing them to Bruno Bernard and causing them to be reproduced prominently in the Book, including the rear of the dust jacket thereof, and promoted widely as having

MMLLC (Shaw) 000701

been created by Bruno Bernard, diminishes Plaintiff's opportunity to maintain and enhance his reputation because of the loss of credit that results from the fact that he and no one else took these photos. The future publication and use of photographs reproduced in the Book, properly attributed, as well as other photographs of both "The Seven Year Itch" of Marilyn Monroe and of other subjects of fame photographed by Plaintiff will be reduced since Plaintiff will no longer be considered the creator of the "Profile Flying Skirt" photographs which have been considered by the public as a significant part of his body of work, and he will lose his well earned role as a pre-eminent Monroe photographer.

66. Plaintiff's photograph (Exhibit "M") utilized by Defendants on page 101 and the back cover of the Book, is an "out-take" and was never intended, and would not be used by Plaintiff. Inasmuch as the photograph would be identified with Plaintiff as being part of his "flying skirt series", its publication is damaging to his reputation.

67. Defendants' conduct constitutes unfair competition toward Plaintiff which results in his irreparable injury for which there is no adequate remedy at law.

MMLLC (Shaw) 000702

WHEREFORE, the Plaintiff demands judgment against Defendants as follows:

a.  As to the First Claim, those damages deemed to be suffered by Plaintiff by reason of the loss of fees and royalties received and expenses incurred or estimated to be incurred by him in the sum of $250,000 plus punitive damages in the sum of $4,000,000;

b.  As to the Second Claim:

   1.  That Defendants be held to have infringed Plaintiff's copyrights in the photographs;

   2.  That the Court find a substantial likelihood that Defendants will continue to infringe Plaintiff's copyrights in the photographs unless enjoined from doing so;

   3.  That Defendants, their directors and officers, agents, servants, employees, and all other persons in active concert or privity or in participation with them, be enjoined from directly or indirectly infringing Plaintiff's copyrights in the photographs, or continuing to market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop or manufacture any works derived or copies from the photographs to participate or assist in any such activity;

   4.  That Defendants, their directors and officers, agents, servants, employees, and all other persons

- 22 -

MMLLC (Shaw) 000703

in active concert or privity or in participation with them, be enjoined to return to Plaintiff any and all originals, copies, facsimiles, or duplicates of the photographs in their possession, custody or control.

5. That Defendants, their directors and officers, agents, servants, employees, and all other persons in active concert or privity or in participation with them, be enjoined to recall from all distributors, wholesalers, jobbers, dealers, retailers, and distributors, and all others known to Defendant, any originals, copies, facsimiles, or duplicates of any works shown by the evidence to infringe any copyright in the photographs;

6. That Defendants be enjoined to deliver upon oath, for destruction pursuant to judgment herein, all originals, copies, facsimiles, or duplicates of any work shown by the evidence to infringe any copyright in the photographs;

7. That judgment be entered for Plaintiff and against Defendants for Plaintiff's actual damages according to proof, and for an additional profits attributable to infringements of Plaintiff's copyrights, in accordance with proof;

8. That judgment be entered for Plaintiff and against Defendants for statutory damages based upon

MMLLC (Shaw) 000704

Defendants' willful acts of infringement, pursuant to the Copyright Act of 1976, 17 U.S.C., Section 101 *et seq*.

9.   That Defendants be required to account for all gains, profits, and advantages derived from their acts of infringement and for its other violations of law;

10.  That all gains, profits and advantages derived by Defendants from their acts of infringement and other violations of law be deemed to be held in constructive trust for the benefit of Plaintiff;

11.  That Plaintiff have judgment against Defendant for Plaintiff's costs and attorneys fees as permitted by statute;

12.  That the Court grant such other, further and different relief as the Court deems proper under the circumstances.


As to the Third Claim:

1.   That Defendants, their officers, agents and servants, and all persons acting in concert with them be permanently enjoined from falsely designating the origin of the photographs;

2.   That Defendants pay to Plaintiffs, the damages sustained by Plaintiffs in consequence of Defendants' conduct

25

MMLLC (Shaw) 000705

3.   That Defendants pay to Plaintiffs, treble damages for their intentional and willful false designation of the origin of the photographs;

4.   That Defendants pay to Plaintiffs, their costs of suit incurred herein, including reasonable attorneys fees.

     As to the Fourth Claim, injunctive relief and destruction as requested for the Second and Sixth Counts.

     As to the Fifth Claim, compensatory damages in the sum of $1,000,000.

     As to all Claims, such other and further relief as to this Court may deem just and proper.

Dated:   New York, New York
         May 10, 1993

                              Yours, etc.,

                              BRESSLER & BRESSLER
                              Attorneys for Plaintiff
                              1133 Avenue of the Americas
                              45th Floor
                              New York, New York 10036

                       By:   MARTIN BRESSLER    (MB-3500)

                              25

MMLLC (Shaw) 000706