```
                                07cqshaMS.txt
                                                                      1
       07cqshaMS
 1     UNITED STATES DISTRICT COURT
 1     SOUTHERN DISTRICT OF NEW YORK
 2     ------------------------------X
 2
 3     SHAW FAMILY ARCHIVES, LTD.,
 3     et al.,
 4
 4                  Plaintiffs,
 5
 5           v.                              05 Civ. 3939(KMK)(MDF)
 6
 6     CMG WORLDWIDE, INC., ET AL.,
 7
 7                  Defendants.
 8
 8     ------------------------------X
 9
 9                                           White Plains, N.Y.
10                                           December 26, 2007
10
11     Before:
11
12                    THE HONORABLE MARK D. FOX,
12
13                                           Magistrate Judge
13
14                          APPEARANCES
14
15     LAW OFFICES OF CHRISTOPHER SERBAGI
15          Attorneys for Plaintiffs
16     CHRISTOPHER SERBAGI
16
17
17     LOEB & LOEB
18          Attorneys for Defendant Marilyn Monroe, LLC
18     BARRY I. SLOTNICK
19     JONATHAN STRAUSS
19
20
20     SOVICH, MINCH
21          Attorneys for Defendant CMG Worldwide, Inc.
21     CHRISTINE SOVICH (via telephone)
22
22
23
24
24     Proceedings recorded by
25     electronic sound recording.
                        MARY M. STATEN, CSR, RPR, RMR
                               (914) 390-4027
                                                                      2
       07cqshaMS
 1           THE DEPUTY CLERK:  This is the matter of Shaw Family
 2     against CMG Worldwide, et al.
 3           Counsel, please state your names for the record.
 4           MR. SLOTNICK:  Barry Slotnick for MM, LLC.
 5           MS. SOVICH:  Christine Sovich --
 6           THE COURT:  Just a moment, please.
 7           Go ahead.
 8           MR. SLOTNICK:  Barry Slotnick for MM, LLC, along with
 9     Jonathan Strauss.
                                  Page 1
```

07cqshaMS.txt

```
10          MR. SERBAGI:  Good morning, your Honor.
11      Christopher Serbagi for Shaw Family Archives.
12          THE COURT:  Okay.  Thank you.
13          (Pause)
14          THE COURT:  Okay.  Now, somebody is on the phone
15  representing or on behalf of Mr. Minch, I believe.
16      Is that right?
17          MS. SOVICH:  Yes, that is correct.
18          THE COURT:  All right.  You'll be permitted to listen
19  in, but you can't argue.  I don't take argument over the phone.
20          All right.  Now, I have before me a whole series of
21  letter briefs, and the record should reflect each --
22  Mr. Serbagi, I guess, handed me about an inch and a half of
23  paper, or handed it to my clerk, about ten minutes ago, which I
24  have not read.  I've read the letters, but not the attachments.
25          The discovery cutoff on this case is December 31st.
                    MARY M. STATEN, CSR, RPR, RMR
                          (914) 390-4027
```

                                                                    3

```
07cqshaMS
 1      The issue that is before the Court --
 2          And I say that, Mr. Serbagi, so that if there is
 3  anything in those attachments that you think is relevant, you
 4  can mention it in your argument.
 5          All right.  The issue before the Court started in
 6  Ms. Colbath's December 7th letter.  And then there was a
 7  December 10th letter from Mr. Serbagi.  And then there was a
 8  December 20th letter from Mr. Strauss.  And then there were the
 9  two letters delivered this morning from Mr. Serbagi.
10          So, Mr. Slotnick, you can let me know what your
11  position is.  I'll take oral argument, and then I'm prepared to
12  make a ruling on this.
13          Go ahead, please.
14          MR. SLOTNICK:  Thank you, your Honor.
15          Before we get to the "he said she said" about whose
16  deposition should be taken when, I think we really need to talk
17  more about more basic issue in this case.
18          There has been a characterization of our third amended
19  complaint as being restricted to certain photographs, the
20  Risoli book and the Ballantine book.
21          The Risoli book has already been declared by the --
22          THE COURT:  You pointed that out in your letter.
23          MR. SLOTNICK:  Okay.  Absent a showing of ownership of
24  some copyright interest in a photograph of Marilyn Monroe by
25  the Shaw Family, they have no standing to seek any ruling with
                    MARY M. STATEN, CSR, RPR, RMR
                          (914) 390-4027
```

                                                                    4

```
07cqshaMS
 1  respect to Marilyn Monroe's domicile.
 2          The only -- the issue in this case from the beginning
 3  is:  who has the rights to utilize Marilyn Monroe's name and
 4  likeness?
 5          Judge McMahon has ruled in a way that we respectfully,
 6  you know, aren't happy with, of course, that there was no right
 7  of publicity in Marilyn Monroe that MM, LLC currently has,
 8  subject to a determination of domicile.
 9          The only basis for the Shaw Family to be able to
10  engage in the Marilyn Monroe business is owning copyrights in
11  photographs that Mr. Shaw took.
12          They are unwilling, and have refused so far, to
13  identify one single photograph in the Marilyn Monroe collection
14  that they actually own.  And if they don't own that, they have
```

07cqshaMS.txt
```
15   no basis for challenging our right of publicity.
16         So, you know, this more Seinfeldian that Morovian.
17   This may well be a case about nothing.
18         Absent a showing that they own something -- and that's
19   what we've been asking for -- they have no standing to
20   challenge our right to Marilyn Monroe's right of publicity.
21   And that's what the case is about, your Honor.
22         MR. SERBAGI:  Good morning, your Honor.
23         Your Honor, as an initial matter, that's the very
24   first time they put forth that argument to the Court or to me.
25   It's not in any of the papers.
                     MARY M. STATEN, CSR, RPR, RMR
                            (914) 390-4027
```
                                                                      5
```
07cqshaMS
1          All the other arguments are on the papers, your Honor.
2    And since Mr. Slotnick didn't address them, I'll just address
3    the point that he raised.
4          The standing issue is very simple.  As Judge McMahon
5    has acknowledged, on the defendants' counsel's behalf,
6    California has recently passed a statute which purports to
7    provide a retroactive right of publicity on Marilyn Monroe.
8          The defendants are also arguing that Marilyn Monroe
9    was a California domiciliary, which, according to their
10   position, would put that statute front and center in this case
11   and potentially hold our clients liable under that statute.
12         That's the standing issue, your Honor.  They've
13   claimed a violation of the right to publicity.  If the
14   California statute is valid, as they say it is, then that's the
15   standard.
16         THE COURT:  It's before me right now.  What's before
17   me right now, according to these letters, would be governed by
18   the scope of the pleading, one side claiming that it's limited
19   to the Ballantine and Risoli books, the other side claiming
20   that it's particular photographs.
21         So why doesn't somebody show me the pleading and show
22   me where you think it goes your way.  I have a copy of the
23   third amended complaint in front of me.
24         MR. SERBAGI:  Your Honor, I'll address that, since I'm
25   already standing.
                     MARY M. STATEN, CSR, RPR, RMR
                            (914) 390-4027
```
                                                                      6
```
07cqshaMS
1          THE COURT:  All right.
2          MR. SERBAGI:  With the Court's permission, if you look
3    at the third amended complaint -- I'm pulling that out, your
4    Honor -- there is absolutely nothing in this third amended
5    complaint.  This is a pure fishing expedition.  They don't
6    request that -- they don't ask --
7          THE COURT:  I don't care whether it's a fishing
8    expedition or not.  The question is whether they pled it.
9          MR. SERBAGI:  No, they didn't.
10         THE COURT:  That's what I'm asking.
11         MR. SERBAGI:  All they pled -- excuse me, your Honor.
12   I'm sorry.
13         All they pled in the complaint is that the Risoli and
14   Ballantine books are in the public domain.
15         If the Court turns to Paragraph 23 on Page 5, that's
16   where they identify that the Risoli book is in the public
17   domain.
18         THE COURT:  Just one moment.
19         (Pause)
```
                                Page 3

```
                            07cqshaMS.txt
20          THE COURT:  All right.
21          MR. SERBAGI:  And then on Paragraph 25 -- excuse me.
22   That's not it.
23          THE COURT:  25 mentions the Ballantine book.
24          MR. SERBAGI:  Yes, 25.  Those are the only two
25   paragraphs where they request -- where they identify any book
                    MARY M. STATEN, CSR, RPR, RMR
                          (914) 390-4027
                                                                  7
     07cqshaMS
 1   that's in the public domain.
 2          If the Court turns to the prayer for relief, which is
 3   where they ask the Court to declare that a particular work is
 4   in the public domain, on Page 8, all they identify is the
 5   Risoli book as being in the public domain.
 6          THE COURT:  They say -- the prayer for relieve reads
 7   under A for declaratory judgment that "In addition to the
 8   Risoli works, defendants do not possess a valid -- do not
 9   possess valid and enforceable copyrights in those photographs
10   that compromise the Monroe/Shaw photographs and/or the Shaw
11   collection that were either published prior to January 1, 1964,
12   where no copyright renewals were obtained during the final year
13   of the initial 28-year copyright term for such photographs; or
14   B. published prior to March 1, 1989, without the requisite
15   copyright notice."
16          MR. SERBAGI:  That's correct, but all they identify in
17   there is one book.  If that argument were a bridge to get -- if
18   that argument were acceptable to look at our entire collection,
19   there would be no end to the discovery, your Honor.  They'd be
20   able to analyze every one of our books and every one of our
21   photographs.  There is no basis for that.  All they've -- all
22   they're asking the Court to declare is that the particular
23   Risoli and Ballantine is in the public domain.  They have no
24   basis to say anything else is in the public domain.  So --
25          THE COURT:  That's not what it says.  It says "in
                    MARY M. STATEN, CSR, RPR, RMR
                          (914) 390-4027
                                                                  8
     07cqshaMS
 1   addition to the Risoli works."
 2          MR. SERBAGI:  I know that it says that, your Honor,
 3   but they're not entitled to view our entire collection, just
 4   because they say "in addition."  That's just language so that
 5   they can get to everything.  You know --
 6          THE COURT:  Okay.  I understand your position.
 7          Go ahead, please.
 8          MR. SLOTNICK:  Your Honor, this is a bit of a shell
 9   game.  They say we're not entitled to ask about any other
10   photographs, but they haven't identified any other photographs,
11   so we don't know what they are.  We asked specifically, even
12   with respect to those photographs, whether the photographs in
13   the book had been -- in two books, had ever been published
14   before, had ever been registered before.  And the witnesses --
15   the witness will not answer questions regarding even those
16   photographs.  But that --
17          THE COURT:  Let me just say this to everybody before
18   we go any further.
19          Under the Southern District rules, directing a witness
20   not to answer is sanctionable conduct, unless it falls within
21   one of the exceptions in Rule 30.  If it happens again, there
22   will be sanctions.  That's point one.
23          Point two is, I'm going to hear what everybody has to
24   say on this, and then I'm going to make rulings.  And any
                              Page 4
```

```
                                 07cqshaMS.txt
    25    discovery that I order is going to take place today, tomorrow
                        MARY M. STATEN, CSR, RPR, RMR
                                 (914) 390-4027
                                                                             9
          07cqshaMS
     1    and Friday.  December 31st is the cutoff.  Judge McMahon has
     2    made clear she's not extending it.
     3             So go ahead, please.
     4             MR. SLOTNICK:  Your Honor, what we want to see are the
     5    copyright registrations and the other documents that we've
     6    requested regarding the Marilyn Monroe collection.  The one
     7    piece of information that we did get out of Shaw's 30(b)(6) was
     8    that there may be two binders of registrations dealing with the
     9    Marilyn Monroe photographs.  While that is not insignificant,
    10    it's certainly not voluminous.  If those documents are produced
    11    to us today, we're prepared to take a deposition tomorrow or
    12    Friday.
    13             THE COURT:  Mr. Serbagi, let me ask you.  Any attempt
    14    to narrow down the complaint is -- any opportunity to do that
    15    is long gone.  I'm dealing with the pleadings as they now
    16    exist.
    17             What specific photographs are your clients claiming
    18    that they have an interest in?  Because that's what we're --
    19    that's what this is going to be narrowed down to.  So counsel
    20    says there's a folder of photographs.  You haven't indicated to
    21    me what photographs.  Certainly, the pleadings go beyond the
    22    Risoli and the Ballantine book.  So are you in a position to
    23    tell me now what specific photographs you're claiming?
    24             MR. SERBAGI:  Your Honor, there's over 3,000
    25    photographs in that collection.  We're not asserting any of
                        MARY M. STATEN, CSR, RPR, RMR
                                 (914) 390-4027
                                                                            10
          07cqshaMS
     1    them in this case against these parties.
     2             THE COURT:  I'm asking you what claims you're making.
     3             MR. SERBAGI:  What claims are we making?  I'm sorry.
     4    I don't understand the question.
     5             THE COURT:  Claims as to which photographs -- which
     6    particular photographs fall within the scope of your claims?
     7    That's what I'm asking you.
     8             MR. SERBAGI:  It's a difficult question to answer,
     9    your Honor, because the scope of our claim has nothing to do
    10    with the photographs that we have in our collection.  It has
    11    absolutely nothing to do with anything.  All we're
    12    requesting -- the only claim we have is a request that the
    13    Court declare that Marilyn Monroe died a New York domiciliary.
    14    That's the only claim we have.
    15             So in a sense, none of them.  Because we're not
    16    asserting any of the photographs in this case against these
    17    clients.
    18             THE COURT:  Okay.  I think I understand your position.
    19             What are you talking about when you say there is a
    20    folder of photographs, Mr. Slotnick?
    21             MR. SLOTNICK:  The Shaw witness identified two binders
    22    as being those -- as encompassing those documents which have
    23    copyright registration certificates for the Marilyn Monroe
    24    photographs.
    25             THE COURT:  Which Shaw witness?
                        MARY M. STATEN, CSR, RPR, RMR
                                 (914) 390-4027
                                                                            11
          07cqshaMS
                                     Page 5
```

```
                              07cqshaMS.txt
1           MR. SLOTNICK:  The 30(b)(6), Melissa Stevens.
2           THE COURT:  And how specifically did she identify
3    them?  What language did she use?
4           MR. SLOTNICK:  I don't have the specific language.
5    She said that there were two --
6           THE COURT:  Doesn't help me.
7           MR. SLOTNICK:  Okay.  She said there were two binders
8    which contained copyright registration certificates.  She said
9    there were at least two binders.  I asked if those were all of
10   the Shaw --
11          THE COURT:  Now, first, you said two binders.  Now
12   you're saying at least two binders.  Look at the deposition
13   transcript and tell me what she said.
14          MR. SLOTNICK:  One moment.
15          THE COURT:  Yes.  Take your time.
16          (Pause)
17          MR. SLOTNICK:  Okay.  Your Honor, on Page 138,
18   "Generally speaking, SFA keeps binders of our files.  I've seen
19   a binder with copyright registration-related documents."
20          Then I asked, "How many?"
21          She said, "I really don't know."
22          I said, "More than five?"
23          She said, "I'll say more than two, definitely."
24          I said, "Did you view these binders in preparation for
25   today's deposition?
                        MARY M. STATEN, CSR, RPR, RMR
                              (914) 390-4027
```
                                                                           12
```
     07cqshaMS
1           "Yes, I did."
2           I requested that she review the files and produce to
3    us any other registrations that FSA -- SFA has with respect to
4    Marilyn Monroe as the girl, or any other specific individual
5    photographs with Marilyn Monroe.
6           And that's on Pages 138 through 141 of the deposition
7    transcript.
8           (Pause)
9           MR. SERBAGI:  May I make an additional point, your
10   Honor?
11          THE COURT:  I'm going to hear from you in just a
12   moment.  I want to read this.
13          MR. SERBAGI:  Certainly.  I'm sorry.
14          (Pause)
15          THE COURT:  All right.  Go ahead, please.
16          MR. SERBAGI:  Okay.  Your Honor, there's a few points
17   I'd like to make by way of an analogy.
18          If this were an infringement case, and they were
19   arguing that we had infringed Product A, and in their
20   complaint, they said on information and belief other products
21   infringe, they certainly would not be entitled to discovery on
22   all the products that we would have in our repertoire.  That
23   kind of argument, it would open up discovery in incredible
24   ways.
25          Secondly, your Honor, we are not asserting any of
                        MARY M. STATEN, CSR, RPR, RMR
                              (914) 390-4027
```
                                                                           13
```
     07cqshaMS
1    these photographs in this case.  This is not about our
2    photographs.  They have absolutely no standing to argue that
3    these photographs are in the public domain, anyway.  The Court
4    has already ruled that they don't have a right of publicity in
5    Marilyn Monroe.  And that's going to be the subject of summary
                                  Page 6
```

```
                              07cqshaMS.txt
 6      judgment briefing, your Honor.  They have no standing to argue
 7      that these are in the public domain, because the Court has
 8      already ruled they don't any rights to the photographs to begin
 9      with.
10              So for them to say on information and belief other
11      photographs are in the public domain, and then to get discovery
12      on every single photograph we have, which are thousands, would
13      open up the floodgates, your Honor.
14              THE COURT:  Well, they're not talking about
15      photographs here.  What they're talking about is registration
16      certificates.  That's different.
17              MR. SERBAGI:  Well, your Honor, it's photographs that
18      are in the public domain, not the registrations.  And so what
19      they're trying to --
20              THE COURT:  But the registrations would be at least
21      indicative or at least they would be relevant to the issue of
22      whether the photographs are in the public domain or not,
23      wouldn't they?
24              MR. SERBAGI:  That is true, your Honor.  But based on
25      their argument, they would open up the floodgates to things
                        MARY M. STATEN, CSR, RPR, RMR
                               (914) 390-4027
                                                                    14
        07cqshaMS
 1      they haven't even identified.  This is pure fishing.  They
 2      can't just say Risoli and Ballantine are in the public domain
 3      and get discovery on everything we have.  I mean, that
 4      argument, as I say with the infringement issue, your Honor, if
 5      it were an infringement claim, that would be the same exact
 6      issue.  If I were arguing that a pharmaceutical company's Drug
 7      A was -- patent was invalid, and on that argument, on
 8      information and belief, other patents are invalid, I'd get
 9      discovery an all their patents?  It's just baseless.
10              THE COURT:  Okay.  Anything further?
11              MR. SLOTNICK:  Yes, one thing, your Honor.
12              First of all, they never made a motion to dismiss this
13      claim or to limit it.
14              Secondly, and most importantly, let me get back to
15      what they are asserting against us, as well.  They're asserting
16      that they have certain rights to use the Marilyn Monroe image,
17      and that we have -- we, the Marilyn Monroe estate and LLC --
18      have no ability to limit, restrict that right.  And they are
19      now seeking from us a determination of Marilyn Monroe's
20      domicile to determine the right of publicity.
21              Well, if someone came off the street having no contact
22      whatsoever with the Marilyn Monroe estate, they'd be thrown out
23      of court if they were asked about domicile.
24              If the Shaw Estate does not own a copyright in a
25      photograph of Marilyn Monroe, they are in the same position as
                        MARY M. STATEN, CSR, RPR, RMR
                               (914) 390-4027
                                                                    15
        07cqshaMS
 1      anybody off the street.  If they want to be voyeurs of Marilyn
 2      Monroe's life, you know, we can address that, too.  But that's
 3      not what this is about.  We're in a court of law.  They
 4      allegedly have some basis for being in this court of law.  They
 5      originally did sue for copyright infringement.  We would like
 6      to have some repose when this case is over.  The parties really
 7      do needs to know --
 8              THE COURT:  You're only entitled to discovery on
 9      what's left in the case.
10              MR. SLOTNICK:  Your Honor, all we need -- if we see
                                  Page 7
```

```
                              07cqshaMS.txt
11      the registration certificates, that's going to go a long way,
12      and obviously, at this stage of the game, all the way to
13      determining what the rights are of both of the parties.
14              THE COURT:  All right.  Anything further?
15              MR. SERBAGI:  One final point, your Honor.
16              It's absolutely false to say that we are asserting
17      that we have rights to these images in this case anymore.
18      That's not the issue.  Those were the issues maybe to begin
19      with when we were asserting various claims.  Those issues are
20      out of the case.  It has nothing to do with this case
21      whatsoever.  They've claimed the two images are in the public
22      domain.  That's all they're entitled to discovery on, your
23      Honor.  This kind of -- this is blatant fishing expedition.
24              THE COURT:  All right.  Thank you.
25              I think it might be.  However, I don't think I have to
                        MARY M. STATEN, CSR, RPR, RMR
                              (914) 390-4027
                                                                   16
        07cqshaMS
 1      get to that in order to decide this issue.
 2              It's pretty plain, from the deposition testimony of
 3      Melissa Stevens, that, in preparation for her deposition, she
 4      looked at these binders, and she describes them in detail as
 5      binders containing registration certificates.
 6              Anything that she looked at in preparation for her
 7      deposition, counsel would be entitled to inspect.
 8              So I'm going to direct that the Melissa Stevens
 9      deposition be reconvened tomorrow at 12:00 noon.
10              The folders to which she referred in her deposition
11      testimony will be made available to counsel for inspection.
12      That doesn't mean copying.  That means inspection, and
13      inspection only.  Starting at 8:00 a.m. tomorrow morning, and
14      that will be at Mr. Serbagi's office, unless counsel agree to
15      do it somewhere else.
16              (Pause)
17              THE COURT:  And then that deposition will proceed
18      starting at 12:00 noon.  It will proceed for a maximum of four
19      hours, which should be more than sufficient time.
20              Now, there is a second issue that was raised here
21      regarding the scope of the 30(b)(6) deposition.
22              I have to tell you, gentlemen, I'm kind of perplexed
23      in an '05 case why all this is happening within a week or two
24      of the close of discovery, but I'm not going to get into it.
25              You're claiming, Mr. Slotnick, that the witness who
                        MARY M. STATEN, CSR, RPR, RMR
                              (914) 390-4027
                                                                   17
        07cqshaMS
 1      was produced was not an appropriate 30(b)(6) deposition.
 2      You're claiming that she only worked for the company for two
 3      weeks.  Counsel is telling me that she was involved with the
 4      company for a long time.  This is not a company that is
 5      apparently a Fortune 500 company.  It's a small operation.
 6              In any event, the rules are pretty clear with
 7      reference to 30(b)(6) deposition.  You have the transcript.
 8      Point out to me any place in the transcript where she was
 9      unable to provide information that was covered by the scope of
10      the 30(b)(6) notice.
11              Does anybody have a copy of the 30(b)(6) notice?
12              (Pause)
13              MR. SLOTNICK:  I'm not sure (unintelligible), your
14      Honor.
15              (Pause)
                                Page 8
```

07cqshaMS.txt
16          MR. SERBAGI: Your Honor, the greater issue for us,
17   really, was that she was limited to talking about two books.
18          THE COURT: I'm not getting into what you think is the
19   greater issue. I want to see the 30(b)(6) notice. We're way
20   beyond the time we get into these philosophical discussions.
21          (Pause)
22          MR. SLOTNICK: Your Honor, we don't have a copy, but
23   I'm looking through the transcript now.
24          (Pause)
25          THE COURT: Do you have a copy?
                    MARY M. STATEN, CSR, RPR, RMR
                           (914) 390-4027

                                                                    18
     07cqshaMS
1           MR. SERBAGI: No, your Honor, I do not.
2           (Pause)
3           THE COURT: Well, gentlemen, without a copy of the
4    30(b)(6) notice, I'm really not in a position to give you
5    anything on this. So what I would suggest is that you go out
6    and make a phone call and find out if somebody in your offices
7    can messenger a copy up here. If not, we'll reconvene at two
8    o'clock this afternoon, when I'll see the 30(b)(6) notice, when
9    you have a copy for me. Because that's what this is going to
10   turn on. I want to see the scope of the notice. Then I want
11   to see the transcript. And counsel can point out to me
12   specifically where in the transcript it's indicated that this
13   particular witness, Melissa Stevens, who apparently is the
14   niece of one of the three principals, did not comply -- was not
15   prepared to comply with the 30(b)(6) notice.
16          The arguments that she only worked there for two weeks
17   don't mean very much to me. That is absolutely not what a
18   30(b)(6) witness turns on. A 30(b)(6) witness can be anybody,
19   as long as they are properly prepared to provide factual
20   information on the issues which were raised in the notice.
21          So one of you gentlemen go out in the hall and use the
22   phone if you have to, and see if you can get somebody to get a
23   copy of the 30(b)(6) notice up here. And as soon as you get
24   that information, you can let my Clerk know.
25          Okay. Let's go ahead with the criminal calendar,
                    MARY M. STATEN, CSR, RPR, RMR
                           (914) 390-4027

                                                                    19
     07cqshaMS
1    please.
2           MR. SERBAGI: Can I make one point, quick point, with
3    your Honor?
4           THE COURT: Yes.
5           MR. SERBAGI: We do have scheduled today the final
6    30(b)(6) deposition of CMG, just for the Court's information.
7    Mr. Slotnick, if this is his issue, should have had this here
8    today.
9           THE COURT: You both got a lot of lawyers working with
10   you. Get somebody else to do one or the other. Right now,
11   call down there and see if you can get it.
12          What time is that deposition set for?
13          MR. SERBAGI: It's set for 10:00, your Honor.
14          THE COURT: Well, if somebody in your office has a
15   copy and they can fax it up here, I'll permit -- I'll take a
16   fax for that limited purpose, even though I don't usually do
17   that.
18          It's incredible to me that you guys would come in here
19   to argue this issue and nobody has a copy of the notice.
20          In any event, see if you can get it. If you can, the

07cqshaMS.txt
```
21        Clerk will give you the fax number, and I'll have it faxed up.
22              Okay.  Second call.
23              (Recess)
24                           -  -  -
25              THE DEPUTY CLERK:  Your Honor, in the matter of the
                        MARY M. STATEN, CSR, RPR, RMR
                              (914) 390-4027
```
                                                                          20
```
   07cqshaMS
1  Shaw Family, et al. against CMG Worldwide, et al.
2           Second call.
3           THE COURT:  Okay.  I understand from my Clerk that
4  neither of you gentlemen, because of the holiday situation,
5  were able to get anybody in your office who could obtain a copy
6  of the 30(b)(6) deposition.  So there is not much I can do
7  about that.
8           All right.  The deposition of -- the renewed
9  deposition of Melissa Stevens will take place, as I've
10 indicated, tomorrow.
11          Where did you want to do that?
12          MR. SLOTNICK:  We'll do it at our office.
13          THE COURT:  Okay.  The only problem -- the only reason
14 I'm hesitating -- ordinarily, I'd say that's strictly a matter
15 within, you know, the purview of you gentlemen -- is that I'm
16 sure there are going to be further problems.  So make sure your
17 court reporter is prepared to leave your offices and get up
18 here, because if there are any disputes at all, I'm not going
19 to do them over the phone.  You're going to have to up, and
20 you'll resume your deposition here in the deposition room
21 downstairs.
22          MR. SLOTNICK:  Your Honor, I'm certainly prepared to
23 take the deposition here.
24          THE COURT:  What do you want to do, Mr. Serbagi?
25          MR. SERBAGI:  That's fine with us, your Honor.
                        MARY M. STATEN, CSR, RPR, RMR
                              (914) 390-4027
```
                                                                          21
```
   07cqshaMS
1           THE COURT:  All right.  Why don't you convene here
2  then.  The boxes -- the only trouble with that is going to be,
3  I think the document review should take place -- I think the
4  document review should take place at your offices, because
5  that's where the documents would be.  And then if there is some
6  dispute about the relevancy of the documents, you can call me.
7  Although what I'll tell you is, you're going to bring them up
8  here.
9           MR. SERBAGI:  I'm sorry.  When the Court said what do
10 you want to do?  I thought you meant if there is a problem.  We
11 would prefer to have the deposition in New York, your Honor;
12 and if there is a problem, come up here, but --
13          THE COURT:  All right.  That's fine.  I have no
14 problem with that.  Except I think it ought to be at your
15 office, since you have the documents.
16          MR. SERBAGI:  That's fine.
17          THE COURT:  That way, if documents -- you know, if
18 there is some issue about them, the documents are going to be
19 there and be available.
20          You've only got until December 31st to do all this,
21 and I will not be here on December 31st.  So that means
22 whatever needs to be done is going to be done between now and
23 Friday.
24          MR. SLOTNICK:  Your Honor, just as a logistical issue,
25 you've indicated we can examine the documents, but not copy
                                Page 10
```

```
                       07cqshaMS.txt
                MARY M. STATEN, CSR, RPR, RMR
                       (914) 390-4027
                                                                    22
        07cqshaMS
 1   them. Obviously, for the purpose of taking the deposition --
 2            THE COURT:  You can make notes on them.  And you can
 3   mark with a post-it any document you think is relevant to the
 4   deposition so that it can be immediately available.  But no
 5   copying, and you're not going to take anything with you.  Okay?
 6            MR. SERBAGI:  Just one final request, your Honor,
 7   which I made in my letter motion.
 8            The deposition of Anna Strassberg, the parties have
 9   consented, because of scheduling difficulties, to take her on
10   January 4th, if that's acceptable to the Court.  It's after the
11   discovery deadline.
12            THE COURT:  Yes, it is.  All right.  Since both sides
13   have agreed on that, I'll permit that.  But that is a
14   so-ordered date, and may not be changed without on order of the
15   Court.  The witness is directed to be available and to appear
16   on that day.
17            Anything else?
18            MR. SLOTNICK:  Your Honor, does your Honor want us to
19   come back at two o'clock with respect to the --
20            THE COURT:  No, I don't think it's necessary at this
21   point.  If there are any further issues, I'll deal with them
22   when the disputes come up.  But as far as the claim that the
23   30(b)(6) witness did not -- was not prepared to testify as
24   appropriate, that claim is gone.
25            Without the 30(b)(6) notice, I'm not in a position to
                MARY M. STATEN, CSR, RPR, RMR
                       (914) 390-4027
                                                                    23
        07cqshaMS
 1   rule on it.  So the application is denied.
 2            Okay.  Thank you very much.
 3            You will not disappoint me if there are no problems
 4   and you can't come up.  Don't get me wrong.
 5            All right.  Thank you.
                           -  -  -




                MARY M. STATEN, CSR, RPR, RMR
                       (914) 390-4027
```