# LICENSE AGREEMENT

This License Agreement, dated _____, is made by and between

Shaw Family Archives Limited
225 Hudson Terrace
Piermont, New York 10968, USA

hereinafter referred to as "Licensor"

and

Scandecor Marketing AB
Semiariegatan 33/Box 656
751 27 Uppsala
Sweden

hereinafter referred to as "Licensee".

**THE FOLLOWING HAS BEEN ESTABLISHED AND AGREED:**

**1. Grant**
The LICENSOR concedes to LICENSEE the non-exclusive right to use the photo/artwork specified under Schedule A hereunder for the production, the presentation and the sale of the products specified under Schedule B hereto.

**2. Territory**
This Agreement is strictly limited to the territory given in Schedule C hereunder and the LICENSEE is not permitted to export or sell outside this territory.

**3. Duration**
The present Agreement is to be valid during the period given in Schedule D hereunder.

**4. Restrictions**
The License granted hereunder is and shall be personal to LICENSEE and shall not be assignable by any act of LICENSEE or by operation of law. The LICENSEE shall not have Licensed Products manufactured for LICENSEE by a third party unless LICENSEE first obtains LICENSOR's approval in writing.
Licensee understands that in its use of any pictures of the property, the rights granted by Licensor are for the use of the specified photos as per the attached layout only and that Licensor shall not be responsible, in any way whatsoever, for the Licensees use of any other likeness, characterization or name/trademark on the product/s licensed hereunder and/or in Licensees advertising campaign, unless otherwise agreed in writing.
If Licensee orders any material through Licensor the corresponding expenses/cost has to be covered by Licensee separately at the effective cost charged to Licensor (Shipping, insurance, handling etc).

SFA 00518

-2-

### 5. Distribution

It is agreed by the LICENSEE that any item produced, specified in Schedule B under this Agreement, and intended for sale, will only be sold to recognized wholesale firms for re-sale or to retails firms for re-sale to the public, and not to any others whatsoever and not for any other purpose whatsoever.

LICENSEE shall not sell or in any way dispose of the Licensed Products to any person or body, both corporate and incorporate, for use either by itself or in association with other products, matters, goods or services, in sales or promotional activities or as premiums or in incentive programs of any kind. LICENSEE shall forthwith notify the LICENSOR and furnish it with names and full particulars of any person(s), bodies (corporate or incorporate), who have approached the LICENSEE with a view to utilizing the Licensed Products for the purpose particularized above.

### 6. Approvals

LICENSEE is not allowed to manufacture or sell any of the Licensed Products before having previously submitted a prototype for approval to LICENSOR. LICENSEE shall also supply LICENSOR with prototypes of all packaging or advertising and publicity material of whatsoever kind with which, or with the aid of which, it is intended to exploit or use the rights herein before granted in *Article 1*.

On receipt by LICENSOR of the said prototypes the LICENSOR shall notify the LICENSEE whether or not the proposed items, products and/or packaging and advertising material is approved or for any reason whatsoever unacceptable. If such notice is not received by LICENSEE within 14 (fourteen) days upon submission of drawings/prototypes, such shall be deemed automatically as approved.

LICENSEE agrees to sell only articles of first technical and artistic quality in accordance with the submitted prototypes.

### 7. Copyright Notice

LICENSEE agrees that all units of Licensed Products and their packaging, advertising and publicity material shall bear the credit and copyright notice given in *Schedule F* hereto. LICENSOR shall have the right to prohibit the selling of any product which does not bear the above mentioned credit and/or copyright notice. In case that LICENSEE sells any licensed products without the proper Copyright Notice/s, LICENSEE undertakes to pay a surcharge equal to 100% of the royalty stipulated in *Article 9* as penalty.

### 8. Samples

LICENSEE shall furnish to LICENSOR, promptly upon the start-up of LICENSEE's initial production run, at LICENSEE's sole cost and expense, transport prepaid, the number of samples of each of the Licensed Products stipulated in *Schedule H*. In addition it is agreed that LICENSOR shall have the right to purchase from LICENSEE, at wholesale selling price, such number of royalty-free units of any Licensed Products as LICENSOR may from time to time specify in a notice to LICENSEE.

SFA 00519

-3-

### 9. Royalties

a) LICENSEE shall pay a royalty at the rate/s shown in *Schedule E* hereto. The royalty due is calculated on the net sales price of LICENSEE to the trade excluding VAT (if any) and any credits granted by LICENSEE due to returns have to be evidenced by the corresponding documentation.

b) LICENSEE shall pay on signing of this Agreement the sum more particularly shown in *Schedule E* hereto, which sum is to be an *advance payment* of royalties, which may fall due to the LICENSOR under the provisions of this Agreement. Royalties due on effective sales may be set-off against the advance payment before further royalty payments have to be effected to LICENSOR.
This Agreement shall not become operative until receipt be the LICENSOR of the aforementioned advance payment.

c) It is agreed that in the event of no such royalties on actual sales becoming payable the aforesaid sum shall in no event become repayable to the LICENSEE.

LICENSEE shall within 30 days after each calendar quarter during the subsistence of this Agreement deliver to the LICENSOR a statement giving particulars of all sales disposals or receipts in connection with the Licensed Products effected by the LICENSEE during the previous quarter and showing the total royalty and at the same time deliver to the LICENSOR a remittance for the full amount of the royalty shown, which may be payable after having deducted that sum herein before referred to under b) above.
All payments by LICENSEE shall be net and free of all taxes, duties and/or other withholdings to LICENSOR or its agent.
The LICENSOR shall have the right at all reasonable times to inspect and take copies or extracts from relevant records and accounts and to demand further information reasonably required to enable the calculation of royalties to be verified.

### 10. Expiration/Termination

The present Agreement is terminated/expires:

a) on the normal date of expiration given in Schedule D hereunder

b) if the LICENSEE fails to perform any obligations of this Agreement, unless LICENSEE remedies the same and notifies the LICENSOR in writing thereof within a period of 10 days.

c) if LICENSEE becomes insolvent, bankrupt or any similar situations should occur.

d) if LICENSEE fails to have the Licensed Products for sale to the public later than the date given in *Schedule G* hereunder.

In all aforementioned cases of termination/expiration, all sums (advance payment and/or royalties) paid by LICENSEE to LICENSOR shall remain LICENSOR's and shall in no event become repayable to LICENSEE.

### 11. Effect/s of Expiraton/Termination

On expiration or termination of the present Agreement, all royalties due are immediately payable and the LICENSEE shall immediately stop manufacture, sale and distribution of all Licensed Products and send to the LICENSOR a complete inventory report and accounting with payment due within 30 days. On expiration only, and provided that LICENSEE has duly delivered its stock list, LICENSEE shall have a period of three month in which to sell-off previously manufactured products licensed hereunder, accounting and payment shall be due 30 days thereafter.

SFA 00520

-4-

After the above mentioned 30 days all goods shall be destroyed. LICENSEE undertakes to provide written proof of such destruction by a professional company. The destruction shall be duly verified and confirmed to the LICENSOR.

### 12. Reservation of Rights
This License is limited to the Licensed Products as defined in Schedule B hereunder and nothing in this Agreement shall prevent the LICENSOR from dealing with any of its rights and interests in the photo/artwork mentioned in Schedule A hereto for any other purpose. The LICENSEE shall use its best endeavors to exploit this License to the best advantage.

### 13. Infringements
The LICENSEE agrees/undertakes to inform the LICENSOR of all copyright and/or artwork infringements that comes to its attention during the term of this Agreement. LICENSEE agrees to cooperate to the best of its ability with LICENSOR in providing details and information of such infringements. It is clearly understood and agreed that the LICENSEE is not to take legal action in any copyright and/or artwork infringement without the prior written approval by the LICENSOR. On the other hand, the LICENSOR agrees to help and support the LICENSEE to the best of its ability in protecting the copyright, artwork and designs used under this Agreement.

### 14. No Partnership
Nothing in this Agreement shall be deemed to constitute a partnership between the parties hereto.

### 15. Validity
The non-validity of one or more of the articles of this Agreement does not effect the validity of the entirety of this Agreement.

### 16. Jurisdiction
16. The validity of this Agreement and all matters relating to the interpretation and performance thereof shall be governed by the Laws of the State of New York. The place of jurisdiction is New York City, N. Y. / USA, or at the option of LICENSOR, the place LICENSEE resides.

Made and executed on_____

In witness whereof the parties hereto have caused this instrument to be duly executed as of the day and year above written.

FOR LICENSOR:                           FOR LICENSEE:


............................................       ............................................
Signature/s                             Signature/s

Title/Seal_____             Title/Seal_____

030909 L.3.spc

SFA 00521

# THE SCHEDULE

of the License Agreement between Shaw Family Archives Limited, Piermont/New York and _____ dated _____

Schedule A : (Intellectual Property licensed)
**Marilyn Monroe image ref: KV-Shaw 001-77**
**2 (Two) additional images to be advised by Licensee**

Schedule B : (Product/s licensed)
- Panorama Poster (30x91cm) utilising image ref: KV-Shaw 001-77
- Large Poster (68x99cm). Image to be advised by Licensee and is subject to Licensor's approval.
- Print (50x70). Image to be advised by Licensee and is subject to Licensor's approval.

Schedule C : (Territory)

**USA and Europe**

Schedule D : (Duration)

**1st March 2004 to 28th February 2006**

Schedule E : (Financial Terms)

Royalty:      10% (Ten Percent) Net Wholesale Price
Advance:      EUR 3000 payable by Licensee on signature of
              License Agreement

Schedule F : (Copyright Notice)

© Sam Shaw / Shaw Family Archives
(and/or such other copyright notice as required by Licensor.)

Schedule G : (Distribution Date):

Schedule H : (Free Samples)

**25 of each licensed product (and variations thereof)**

Date:_____

FOR LICENSOR:                              FOR LICENSEE:


..................................          ..................................
Signature/s                                 Signature/s

Title/Seal_____                      Title/Seal_____

030417 L.3.spc

SFA 00522



SFA 00523