SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  CIVIL TERM
--------------------------------------------X
EDITH SHAW MARCUS and META SHAW STEVENS,
as Temporary Administrators of the
Estate of SAM SHAW,

                        Plaintiffs,
                                                Index No.
            - against -                         123783/94

MARTIN BRESSLER, LARRY SHAW,
SUSAN SHAW, BRESSLER & BRESSLER,
VALERIE GOODMAN, 1912 PRODUCTIONS,
INC., MARC WEINSTEIN, individually
and d/b/a COLOR GROUP,

                        Defendants.
--------------------------------------------X
                        80 Centre Street
                        New York, New York 10007
                        June 5, 2002


B E F O R E :

            HONORABLE MARTIN EVANS,
                        Judicial Hearing Officer


A P P E A R A N C E S :

            MEYER, GREENAWALT, TAUB & WILD, LLP
            Attorneys for the Plaintiffs
            230 Park Avenue
            New York, New York 10169
            BY:  WILLIAM GREENAWALT, ESQ.
                    -and-
                SAUL RUDES, ESQ.
                605 Third Avenue
                New York, New York 10158


            DEBRA SALZMAN, RMR, Official Court Reporter

2

1                              Proceedings

2    A P P E A R A N C E S:  (Cont'd)

3              JEFFREY P. TUNICK, ESQ.
             Attorneys for Defendants
4            150 Main Street
             Nyack, New York 10960
5                 -and-
                 MICHAEL J. MARINO, ESQ.
6
             RUBIN & SHANG
7            Attorneys for the Plaintiff
             9 East 40th Street
8            New York, New York 10016
             BY:  JEFFREY RUBIN, ESQ.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

3

Proceedings

A F T E R N O O N   S E S S I O N

MR. MARINO:  It is hereby stipulated and

agreed by and between the parties to the within action

and their attorneys, all of which are present, that

the above entitled action is hereby settled on the

following terms and conditions:

Number 1.  An entity will be formed.

Whether that entity be a corporation, limited

liability partnership, joint venture, what type of

entity it will be will be determined by what is most

reasonably efficient with respect to making money, tax

consequences and the like.

The name of that entity will be the Shaw

Family Archives.  Whether it be Shaw Family Archives

Inc., LLC, partnership, "Shaw Family Archives" will be

the primary name.

Larry Shaw, Meta Shaw Stevens and Edith Shaw

Marcus shall be principals in that entity and their

respective interests in that entity will be the

following: Larry Shaw shall own 50 percent of that

entity.  Meta Shaw Stevens and Edith Shaw Marcus --

off the record.

(Discussion held off the record.)

MR. MARINO:  Meta Shaw Stevens shall own 25

percent of that entity and Edith Shaw Marcus shall own

DEBRA SALZMAN, RMR, Official Court Reporter

4

1               Proceedings

2       25 percent of that entity.

3               That entity shall own and take possession

4       of, in a manner set forth below, all of the

5       photographs involved in this litigation.   That

6       includes --

7               MR. RUBIN:  Off the record.

8               (Discussion held off the record.)

9               MR. MARINO:  That includes each and every

10      photograph shot by either Sam Shaw or Larry Shaw

11      during the course of their respective careers,

12      lifetimes --

13              JHO EVANS:  Excuse me.  Wait a minute.

14              There were some photographs that were

15      claimed by both Sam and Larry Shaw, but Sam Shaw's

16      attorneys weren't aware they were taken by her but

17      owned by Columbia pictures.  If you want to dispose of

18      those photographs, they're not a party to it.

19              MR. MARINO:  Your Honor, I don't think we

20      can dispose of them via stipulation.

21              JHO EVANS:  From the point of view of the

22      stipulation you can.

23              (Discussion held off the record.)

24              MR. MARINO:  The photographs included in the

25      collection to be owned by the Shaw family foundation

26      entity include -- Shaw Family Archives entity include

DEBRA SALZMAN, RMR, Official Court Reporter

1                           Proceedings

2       all of those photographs now in the possession -- I

3       can't do that either.

4                 (Discussion held off the record.)

5                 MR. MARINO:  (Continuing) All of the

6       photographs taken -- snapped by Sam Shaw and/or Larry

7       Shaw during the course of their lifetimes, together

8       with those photographs taken by third parties which

9       either of them claim as being owned by them via some

10      gift or sale from a third party, all subject to claims

11      by said third parties.

12                    There shall be appointed what we have termed

13      a "superagent."  The superagent shall have two roles:

14      number one, the primary role shall be the custodian of

15      all the photographs hereinbefore mentioned.  However,

16      it is in the interest of all the parties to keep that

17      group of photographs within the possession of the

18      superagent at a minimum in order to save costs.

19                    Let me go back for a minute.  The primary or

20      one of the roles of the super agent shall be to

21      warehouse and maintain all of the photographs subject

22      to a reduction in that collection pursuant to the

23      agreement of the principals: Larry, Meta and Edith.

24                    The second role for the super agent is to

25      determine the commercial reasonableness of each and

26      every deal brought to the Shaw Family Archive entity.


            DEBRA SALZMAN, RMR, Official Court Reporter

1

Proceedings

2 Each and every deal brought to the Shaw Family entity

3 upon which there is not agreement between Larry, Edith

4 and Meta, and with respect to that their votes are 50

5 percent Larry, and 50 percent total for Edith and

6 Meta, 25 percent each.

7 In the event of a deadlock, 50/50 deadlock,

8 the super agent will determine whether or not a deal

9 shall go forward depending on its commercial

10 reasonableness. The respective voting power is 50

11 percent Larry, no matter what the entity; 25 percent

12 Edith, 25 percent Meta.

13 Let me try to back up. With respect to all

14 types of transactions other than outright sales of

15 photographs, the procedure is as follows: If the

16 parties agree either to do or to not do the

17 transaction, the super agent need not be involved.

18 If, however, there is a deadlock on whether

19 or not to do the transaction the transaction must go

20 to the super agent who will determine whether or not

21 it is commercially reasonable to do and his

22 determination shall be final.

23 However, with respect to the outright sale

24 of an image, photograph -- if with respect to the

25 outright sale of a photograph, negative or

26 transparency, photographic print, negative or

DEBRA SALZMAN, RMR, Official Court Reporter

7

1          Proceedings

2     transparency, again, if the parties -- withdraw that.

3          If any of the parties wishes not to do the

4     transaction and even if it is a minority position,

5     then -- withdrawn.  That's not right.

6          MR. RUBIN:  Keep going.

7          MR. MARINO:  If it is a minority position,

8     and the super agent makes the determination that the

9     deal is commercially reasonable, the party, either

10    Larry, Edith or Meta, dissenting, or parties, will

11    have the right of first refusal to make that deal.

12          JHO EVANS:  Off the record.

13          (Discussion held off the record.)

14          MR. MARINO:  Let's back up a little bit.

15          In the event --

16          MR. RUBIN:  Off the record.

17          (Discussion held off the record.)

18          MR. MARINO:  Let me back up.

19          With respect to an outright sale as

20    previously stated, if any of the parties -- with

21    respect to the outright sale of a photographic print,

22    negative or transparency, if any of the parties -- let

23    me continue.

24          With respect to the outright sale of a

25    photographic print, negative or transparency or

26    contact sheet, which is a print, in the event of

DEBRA SALZMAN, RMR, Official Court Reporter

8

Proceedings

unanimity between the parties, the deal shall go forward.

In the event that there is a majority in favor of the deal, the dissenting party may nonetheless match the deal presented within five days, and if said deal is not matched by this dissenting party within said five-day period the deal shall go forward.

In the event there is a deadlock that the decision as to whether or not to go forward with that transaction shall be in the hands of the super agent, and if the super agent makes the determination that the deal should go forward because it is commercially reasonable, then any of the dissenting parties to that deal among the principals shall have the right, within five days after the super agent makes determination, to go forward to match the deal. If they cannot match the deal within that said five-day period the deal goes forward.

Now, all of the principals, Larry, Edith and Meta, may act as subagents for the collection, and they shall be compensated by the entity for each deal that is brought to the super agent -- excuse me -- each deal that is brought to the entity via the super agent in an amount which is commercially reasonable

DEBRA SALZMAN, RMR, Official Court Reporter

1                        Proceedings

2    given industry standards.

3              To clarify, they shall be compensated an

4    agency commission in an amount which is reasonable in

5    accordance with industry standards for all deals

6    brought and consummated.  Said compensation upon

7    consummation shall only be paid in the event money is

8    received with respect to that transaction by the

9    entity.

10             With respect to any monies coming in, any

11   monies generated by the collection as described

12   previously, all monies shall be paid directly to the

13   entity, and any commissions or expenses as will be

14   laid out below will all be paid by the entity after

15   receipt of said -- off the record.

16             (Discussion held off the record.)

17             MR. MARINO:  In the event any income

18   generated by the collection is payable to anyone

19   other -- any one or any entity other than the Shaw

20   Family Archives, the person or entity receiving that

21   check or money or cash shall immediately endorse it

22   over and deliver it to the super agent on behalf of

23   the Shaw Family Archives.

24             The commission paid to the subagent shall be

25   a percentage based on the gross amount generated and

26   collected in connection with the transaction, and such

10

1                              Proceedings

2    commissions shall be paid by the entity to the agent

3    after said generated money is deposited and cleared in

4    the entity bank account.

5              All expenses incurred by agents, whether

6    they be Larry, Meta or Edith, or any other outside

7    agents shall be borne by the agent as the agent's cost

8    of doing business.

9              However, in the event either Larry, Meta or

10   Edith, or any other outside agent request that certain

11   expenses be borne by the entity because of

12   extraordinary circumstances, then if Meta, Larry and

13   Edith agree they will be borne by the entity.  If

14   there is a deadlock -- withdrawn.

15             A majority of the parties may agree to have

16   the entity bear such expenses, or a majority of the

17   parties may agree that the expenses should not be

18   borne by the entity.  In the event of a deadlock, the

19   super agent will determine the expenses sought to be

20   borne by the entity using a commercially reasonable

21   standard.

22             Any such expenses advanced by a subagent

23   without the prior written approval of the entity --

24   forget that.  Forget that.  It's assumed.

25             The parties herein, Larry, Meta and Edith,

26   shall each be entitled to a percentage of the net


                DEBRA SALZMAN, RMR, Official Court Reporter

11

Proceedings

proceeds of all income-generating transactions after

the payment of all reasonable and necessary expenses,

which shall include the agency commission, if any,

subagency commission, if any, and after the payment of

all expenses reasonable and necessary to house and

maintain the collection, including any and all fees,

reasonable and necessary fees paid to the super

agent.

   JHO EVANS:  Off the record.

   (Discussion held off the record.)

   MR. MARINO:  Just by way of example only,

expenses shall include the super agent's fee, the cost

of housing and maintaining the collection -- by

"maintaining," I mean kept boxes, glassine envelopes,

folders, maintain -- but it shall also include the

administration of the entity's business affairs and

shall also include the scanning and inventorying of

all the images in the collection.

   The net proceeds after the deduction of the

aforementioned expenses shall be split in the

following manner: 50 percent to Larry Shaw; 25 percent

to Meta Shaw Stevens; 25 percent to Edith Shaw

Marcus.

   JHO EVANS:  Off the record.

   (Discussion held off the record.)

DEBRA SALZMAN, RMR, Official Court Reporter

12

Proceedings

1

2          MR. MARINO:  Any reference herein to the

3      principals' ownership of a share in the entity -- I

4      said that wrong.  The principals of the entity shall

5      herein -- the next subject.

6              The parties, each of them individually,

7      Larry Shaw, Meta Shaw Stevens Edith Shaw Marcus

8      individually, indemnify and hold the other harmless,

9      including the entity, for any and all claims, losses

10     or liabilities incurred by any of the parties or the

11     entity.

12              Each of the individual parties agrees to

13     indemnify and hold harmless --

14          MR. RUBIN:  Each of the principals of the

15     entity agree to indemnify and hold harmless the entity

16     and each other from any claims made against them for

17     any transaction that they conducted in relation to the

18     subject of the entity prior to this date.

19          JHO EVANS:  Can you tell me what it is

20     you're referring to?

21          MR. RUBIN:  What we're referring to is in

22     the event one of the parties had done a transaction --

23     off the record.

24              (Discussion held off the record.)

25          MR. RUBIN:  From any claims including any

26     lawsuits, including but not limited to any lawsuits

13

1                   Proceedings

2  which are made against any of the principals for any

3  transaction conducted by such principals or their

4  agents, each respective principal or their agents in

5  relation to the corpus of the entity.

6         JHO EVANS:  I take it that what you're

7  referring to is if any claims are made against this

8  proposed entity, whatever it is, corporation or LLC,

9  by an    rd person arising out of any activities that

10  a           any of these three individuals who are

11             before today, those individuals will

12           rmless and indemnify the entity

13           arising out of those claims.  Is

14

15           ect, your Honor.

16          ntity and each other.

         :  And the other principals.

      ARINO:  Individually.

    JHO EVANS:  Indemnify each other from the

  made against them..

    MR. MARINO:  Exactly what you said, except

the indemnity also extends to the individuals.

    MR. GREENAWALT:  And would also be, your

24  Honor, for acts of those parties if the parties have

25  agents and have done things in their name, then that

26  would also apply.


DEBRA SALZMAN, RMR, Official Court Reporter

02/11/2002 10:51 FAX 212 861 6075                                    ☒015

14

Proceedings

MR. MARINO:  And I am saying it has to be authorized agents.

MR. RUBIN:  Our problem is Darius, where there is a claim by Larry that he is acting without authority.

JHO EVANS:  What you're saying is if he makes any claim against the entity, Larry Shaw will hold the entity harmless against them.  Is that right?

MR. RUBIN:  That's what it should be.  We didn't have any dealings with them.

JHO EVANS:  Is that true?

MR. MARINO:  That's what they are suggesting.  All I'm saying is that the agent be an authorized agent in order for the indemnity to take effect, and then the issue of whether it was authorized or not is --

MR. RUDES:  Just a second on that.

JHO EVANS:  If this fellow was not an authorized agent and he makes some claim again the entity, even though he was unauthorized, and suppose somebody is from Australia and says they were authorized by Meta Stevens to sell these photographs and he wasn't, should there be an indemnity by Meta Stevens against the entity?

DEBRA SALZMAN, RMR, Official Court Reporter

15

Proceedings

MR. RUBIN:  No.  Our problem is with Darius specifically because Darius was doing business with Larry, and if Darius had done -- if Darius had done business with another person, and that person comes against the entity claiming that there was some problem in the sale, we shouldn't have to pay for the defense of that.

JHO-EVANS:  I fail to see how any person can make a claim against an entity arising out of a past action if the entity has not been in existence.

MR GREENAWALT:  Not just against the entity.  The way Mr. Marino put it, it's also claims against any one of the principals or their acts for any of those transactions.

JHO EVANS:  Is there a possibility that Darius will make claims against Stevens and Marcus?

MR. RUBIN:  I don't know.  There was a contract that he signed with the receiver.  I have no idea -- I haven't seen the contract -- I have no idea who is responsible for that.

MR. TUNICK:  The receiver, he signed the deal, he's responsible for it.

MR. RUBIN:  The receiver signs in his representative capacity.

MR. GREENAWALT:  Darius and the receiver

DEBRA SALZMAN, RMR, Official Court Reporter

16

Proceedings

1  signed a contract.

2       JHO EVANS:  But he was authorized to do so,

3  wasn't he?  If he was authorized to sign a contract

4  and based on that contract, that's an authorized

5  contract.

6

7       MR GREENAWALT:  Darius is only supposed to

8  do certain things under the contract.

9       JHO EVANS:  I don't know, if there's a claim

10  based on the contract that should be indemnified.

11       MR. GREENAWALT:  If somebody claims against

12  Darius outside of the contract or claims against Larry

13  or Meta, claims against them for acts up to now,

14  that's what we're trying to get into the indemnity.

15       MR. TUNICK:  Authorized agent.

16       JHO EVANS:  You want the entity indemnified

17  for claims against Larry.

18       MR GREENAWALT:  By a third person.

19       JHO EVANS:  I don't understand that but --

20       MR GREENAWALT:  If somebody claims Larry has

21  done something strange and Larry owes somebody a

22  hundred thousand dollars for some reason, okay --

23       MR. RUDES:  Not "for some reason," for work

24  he did on behalf of marketing the photos.

25       JHO EVANS:  That's not a claim against the

26  entity.

DEBRA SALZMAN, RMR, Official Court Reporter

17

Proceedings

1
2          MR GREENAWALT:  The point is --

3          JHO EVANS:  How can that be a claim against

4    the entity?

5          MR. MARINO:  This indemnity makes no sense.

6    This indemnity makes no sense.

7          JHO EVANS:  It doesn't make any sense.

8          MR. MARINO:  The indemnity makes no sense at

9    all.

10         JHO EVANS:  That doesn't make any sense.

11         MR. RUBIN:  Judge, there's another issue

12   that there is a claim --

13         JHO EVANS:  You're forming a corporation.

14   Somebody is making a claim against Larry for past

15   acts.  How is the corporation involved?

16         MR. MARINO:  The extent of the claim can

17   only be against Larry and Larry's interest in the

18   entity.

19         MR. RUBIN:  Here is the problem.  The

20   problem is that there is an issue that some pictures

21   which Larry has are also claimed by another party, a

22   photographer as being his.  If those become the

23   subject of --

24         JHO EVANS:  Wait a minute.  Tell me that

25   again.  Some third party makes a claim against what?

26         MR. RUBIN:  Larry has claimed that certain


DEBRA SALZMAN, RMR, Official Court Reporter

08/1. 2002 10:52 FAX 212 81 5075                                                      ☒019

18

Proceedings

pictures are authored by himself. There is another
photographer that made a claim that those pictures are
not Larry's but his. Those then, however, will become
part of this entity and will be marketed as part of
the entity.

If that person, that photographer, sues the
entity in claiming that those pictures are his not
Larry's, we want Larry to defend it.

MR. MARINO: There are a similar amount of
photographs on the other end.

JHO EVANS: We know that there are claims by
third parties.

MR. TUNICK: We already said that.

MR. RUBIN: Who pays for the defense of the
lawsuit?

JHO EVANS: We know there are claims by
third parties against some of these photographs. Some
of these photographs were claimed by Larry Shaw and
also claimed by Sam Shaw. Now, if this third party
comes in against the corporation and says those are
mine, who is going to indemnify the corporation?

MR. RUBIN: I'm saying there are certain
pictures that Larry claims were taken. There is a
pictures taken by Atami (phonetic) that he took. If
in fact there is a lawsuit, Larry makes these part of

DEBRA SALZMAN, RMR, Official Court Reporter

002 10:52 FAX 212 661 6075                                                        Ø020

19

Proceedings

the corpus of the entity, if this person comes in and

brings a lawsuit, who pays for --

    MR. TUNICK:  Don't take them as part of the

corpus.

    MR. MARINO:  Turn them over.

    MR. TUNICK:  Don't take them.

    MR. RUBIN:  That's not the point.

    MR. TUNICK:  Came them back to Atami.

    JHO EVANS:  Is there any likelihood of that

happening?

    MR GREENAWALT:  Well, your Honor, I think

two of the groups you were referring to, Maureen

Lambrey and Jessica Burstein, Jessica says so far as

she's concerned Sam, she feels, could have those.

    JHO EVANS:  I don't care.  She testified

that she took them and the ownership of them is in

Columbia Pictures.  That's what she testified to.

What kind of a claim can she make?  She doesn't own

the photographs.

    MR GREENAWALT:  I understand.

    I suppose Columbia could make a claim, your

Honor.

    JHO EVANS:  Don't look for something that

doesn't exist.

    MR. RUBIN:  The women are concerned about

DEBRA SALZMAN, RMR, Official Court Reporter

20

Proceedings

1

2  being responsible or being responsible for something

3  that was done previously which may be wrong or have

4  some consequences against them and the entity, that's

5  all, so they just want to be held harmless for that

6  because they don't know what Larry was doing and

7  they're willing to do it reciprocally.

8              MR. RUDES:  Each party here represents that

9  they have done nothing in any way which would expose

10  the individual or the entity to anymore suits or any

11  other suits or any attempts to recover in any fashion,

12  and they acknowledge that in entering into this

13  agreement they have been relying on the

14  representations and warranties.

15              MR. MARINO:  That's fine.  I'm happy with

16  that.

17              JHO EVANS:  What more do you need?  That's

18  all you need.

19              Both sides agree to that?

20              MR. MARINO:  Yes, we're fine, Judge.

21              MR GREENAWALT:  Just a minute.

22              JHO EVANS:  Next point.

23              MR. MARINO:  Now we move on to attribution.

24              All of the photographs involved in this

25  collection shall be the property -- shall be termed a

26  part of the Shaw Family Archives.

DEBRA SALZMAN, RMR, Official Court Reporter

21

Proceedings

1
2          With respect to the individual authorship of

3      an individual image, all of the Marilyn Monroes will

4      be -- I was about to state that all of the Marilyn

5      Monroes can be attributed to Sam Shaw, except that my

6      client just raised 72 photographs or 36 photographs --

7      are they printed or negatives?

8          (Discussion held off the record.)

9          MR. MARINO:  The parties have agreed that

10     the attribution of the photographs involved in this

11     collection will be determined by Judge Evans based on

12     his findings, which will be based in turn on the

13     evidence adduced at trial over the past seven years.

14         MR GREENAWALT:  I'm not willing to let

15     Marilyn Monroe be attributed to Larry Shaw.

16         MR. MARINO:  Let me tell you, since we

17     didn't present any evidence on that during seven

18     years --

19         MR. GREENAWALT:  No, no, no.

20         MR. RUBIN:  Hold it.  I don't know what the

21     problem is.  I thought we agreed.

22         MR. MARINO:  We did agree.

23         MR. TUNICK:  Larry tells us two rolls are

24     Larry Shaw's photographs of Marilyn Monroe.  If we can

25     agree that all Marilyn Monroe photographs can be        -

26     attributed to Sam Shaw except for a certain two rolls,

DEBRA SALZMAN, RMR, Official Court Reporter

1                              Proceedings

2      Judge Evans based on the evidence adduced in this case

3      over the past seven years.

4                    In the event any of the parties, Larry, Meta

5      or Edith, have marketed any photograph outside of the

6      parameters, a photograph, any image, any transparency

7      of any kind, have marketed any of those images outside

8      the parameters of this agreement, then that party

9      shall be penalized in the following manner --

10     start again.

11                   In the event any of the parties herein from

12     this date forward, June 5, 2002, market,

13     commercialize, attempt to sell, attempt to make any

14     type of deal with respect to an image involved in this

15     transaction --

16                   JHO EVANS:  What about gifts?

17                   MR. MARINO:  Gifts are included, if they

18     attempt to gift -- off the record.

19                   (Discussion held off the record.)

20                   MR. MARINO:  (Continuing) Including gifts,

21     without the agreement of the other parties -- excuse

22     me -- without the majority agreement of the other

23     parties, then that person shall be penalized in the

24     following manner: they will be subject to treble

25     damages in the event monies are received.  In the

26     event of a gift they will be subject to treble damages


                  DEBRA SALZMAN, RMR, Official Court Reporter

Proceedings

1

2    on the value of the damages, on the value of the

3    photograph plus $10,000.

4            Off the record.

5            (Discussion held off the record.)

6            MR. LARRY SHAW:  I will not agree on that.

7            MR. TUNICK:  Strike that.

8            (Discussion held off the record.)

9            MR. MARINO:  No $10,000, just treble

10   damages.

11           In the event any of the parties market,

12   commercially exploit, sell or even gift one of the

13   images that should be a part of this collection but

14   has not been previously -- but has not been turned

15   over pursuant to this stipulation, that party will be

16   penalized in the following manner: they will be

17   subject to treble damages and they will be penalized,

18   in addition be penalized in the amount of $10,000 per

19   occurrence.

20           MR. TUNICK:  Also the value --

21           MR GREENAWALT:  Also you don't have to --

22           MR. TUNICK:  After discovered photographs,

23   images, transparencies, whatever was listed, turned in

24   by any principal to the super agent, any ones turned

25   in after this date, any photographs turned in -- any

26   photographs after discovered -- how about after

DEBRA SALZMAN, RMR, Official Court Reporter

25

1                          Proceedings

2      discovered photographs?  I'm giving everybody the

3      benefit of the doubt.

4                    MR. LARRY SHAW:  After recovered.

5                    MR. MARINO:  After discovered or after

6      recovered photographs, beautiful.

7                    MR. RUDES:  Very good.

8                    MR. TUNICK:  (Continuing) Turned over to the

9      super agent or the entity shall not be subject to the

10     aforementioned penalties.

11                   MR. MARINO:  Fine.  Okay.

12                   MR. RUDES:  One thing clarified, Madam

13     Reporter.  At the outset when Mr. Marino made

14     reference to images and all that stuff, could you put

15     "collectively known as photographs" so we don't have

16     to worry about anything cropping up if he left out a

17     word.

18                   COURT REPORTER:  Your statement is now on

19     the record.

20                   MR. MARINO:  In the event of any dispute

21     arising out of the terms and conditions of this

22     stipulation, said dispute shall be --

23                   MR. RUDES:  No arbitration.  Leave it out.

24                   MR. MARINO:  Judge, can you help us out

25     here?  All the parties agree, I think, that Myron

26     Beldock is an appropriate super agent.


             DEBRA SALZMAN, RMR, Official Court Reporter

1                              Proceedings

2              However, we are unclear on how to deal with

3     whether -- how he gets fired or how he gets renewed.

4     In the event of a deadlock there's no super agent to

5     make a determination.

6              MR. TUNICK:  That's the last point we had.

7              MR. RUDES:  Go back to court and get a new

8     receiver.

9              MR GREENAWALT:  Your Honor, let me explain

10    some of the reason for this.  There are many people

11    who would love to have some control of this

12    collection, who are experts in this field, who we

13    are -- we've been told on good source would really

14    market this collection tremendously.  Myron Beldock is

15    a fine guy but he's a very, very busy lawyer.

16             JHO EVANS:  In that case, use your people as

17    subagents.

18             MR GREENAWALT:  We want to have some

19    provisions for maybe cutting down the cost of the

20    super agent's administration, such as having True

21    Color --

22             JHO EVANS:  What you're saying is you want

23    somebody else as a super agent?

24             MR GREENAWALT:  At some period.

25             JHO EVANS:  Is that what you're saying?

26             MR GREENAWALT:  We would like somebody else

                 DEBRA SALZMAN, RMR, Official Court Reporter

27

Proceedings

1

2  now. We are acceding to Beldock for the time being,

3  but we want to have another way to get another

4  superagent, or if True Color can take it over, the

5  pictures --

6          MR. MARINO:  I'm sorry.

7          (Discussion held off the record.)

8          JHO EVANS:  You have agreed on everything

9  now except whether Beldock will continue in some way.

10  Everything else is agreed?

11          MR. TUNICK:  Yes.

12          MR. MARINO:  Yes.

13          JHO EVANS:  Everything agreed except the

14  question of what happens if you don't like Beldock.

15          MR. RUBIN:  Right.

16          MR GREENAWALT:  We have one more thing.

17          JHO EVANS:  Is everything else agreed except

18  that?

19          MR. RUBIN:  The only other issue is what

20  lab, the place of storage.  Right now it's my

21  understanding that these are stored at True Color

22  Laboratories.

23          MR. LARRY SHAW:  A portion are stored there.

24          MR. RUBIN:  A portion stored there and a

25  portion stored at Edie's house.

26          Is that true?


DEBRA SALZMAN, RMR, Official Court Reporter

28

Proceedings

1

MS. SHAW MARCUS: Yes.

2

MR. RUBIN: Is there a problem if you put

3

all the photos at True Color?

4

MR. MARINO: The problem is the expense; it

5

seems to me a waste of money.

6

(Discussion held off the record.)

7

MR. MARINO: Let's do that. To start, at

8

some point get together and determine --    -

9

MR. TUNICK: Just so they're in one place.

10

MR. RUDES: We're going to store them all at

11

True Color and then decide what they're going to do?

12

MR. MARINO: They can be scanned at True

13

Color.

14

MR. TUNICK: They're going to be stored at

15

True Color Lab. All photos have to be delivered to

16

True Color Lab.

17

JHO EVANS: Let's say this. If two-thirds

18

of the parties agree --

19

MR. TUNICK: That this is a deal --

20

JHO EVANS: -- that any photograph can be

21

taken out and given to any one of the parties, that

22

will be done.

23

MR. MARINO: I'm happy with that.

24

MR. RUDES: There's a problem now about

25

family photos that are in bins, which they say have to

26

DEBRA SALZMAN, RMR, Official Court Reporter