SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
==================================================X

SAM SHAW,                                        Index No.  123783/94

                            Plaintiff,

        - against -                              **COMPLAINT**

MARTIN BRESSLER, LARRY SHAW, SUSAN SHAW,         Jury Trial Demanded
BRESSLER & BRESSLER, VALERIE GOODMAN, 1912
PRODUCTIONS, INC., MARC WEINSTEIN,               Assigned Judge:
individually and d/b/a COLOR GROUP,
                                                 Hon. _____,
                            Defendants.                 J.S.C.

==================================================X

        Plaintiff, SAM SHAW, by his attorneys, HOLTZMANN, WISE & SHEPARD, for his

complaint against the defendants, alleges as follows:

### THE PARTIES

#### Plaintiff

        1.    Plaintiff Sam Shaw is an internationally known artist, photographer,

film maker, producer and film writer who has an office for the transaction of

business c/o Holtzmann, Wise & Shepard, 1271 Avenue of the Americas, New York,

New York  10020.

        2.    Plaintiff's photographic work includes some of the most well known

images ever taken of many luminaries of the entertainment industry, including

Marilyn Monroe, Marlon Brando, Duke Ellington, Anthony Quinn, John Cassavetes,

John Wayne and many others.

        3.    Plaintiff was the designer and photographer of the famous and

iconographic "flying skirt" photos of Marilyn Monroe taken on the set of The

Seven Year Itch, in which she is pictured standing on a subway grate with her

white skirt being blown by the apparent rush of air from an oncoming subway

train.

        4.    Plaintiff also designed and photographed the well known publicity photo

of Marlon Brando wearing a torn T-shirt that became the logo for A Streetcar

Named Desire.

5.    Plaintiff is the author of eight books of photography, and his photographic work has been the subject of numerous international exhibitions throughout the world.

**Defendants**

6.    Defendant Martin Bressler ("Bressler") is an attorney and is a partner in the firm of defendant Bressler & Bressler.  Bressler maintains an office for the transaction of business at 521 Fifth Avenue, New York, New York.

7.    Defendant Bressler & Bressler is a New York law partnership.  Its only partners are Bressler and his wife, Rosalind Lubetsky Bressler.  Bressler & Bressler maintains an office for the transaction of business at 521 Fifth Avenue, New York, New York 10017.

8.    Defendant Larry Shaw ("Larry") is plaintiff's son and former photographic agent.  Larry resides at 225 Hudson Terrace, Piermont, New York 10968.

9.    Defendant Susan Shaw ("Susan") is Larry's wife and plaintiff's daughter-in-law.  Susan resides at 225 Hudson Terrace, Piermont, New York 10968.

10.    Defendant Valerie Goodman is Larry's business associate, and resides at c/o Vincent Capraro, 80 Piermont Avenue, Piermont, New York  10968.

11.    Defendant 1912 Productions, Inc. ("1912 Productions") is a New York corporation with an office for the transaction of business c/o Valerie Goodman, 80 Piermont Avenue, Piermont, New York 10968.

12.    Upon information and belief, Larry is an officer, shareholder and director of 1912 Productions.

13.    Upon information and belief, Valerie Goodman is an officer, shareholder and director 1912 Productions.

14.    As discussed further below, the defendants named above have conspired together to steal plaintiff's invaluable photographic collection (the "Collection"), they refuse to return the Collection despite numerous demands — both oral and in writing, and they brazenly continue to exploit the Collection that they have stolen from plaintiff.

2

MMLLC (Shaw) 000658

15.   Defendant Marc Weinstein ("Weinstein") is an individual who does business under the name "Color Group."   Weinstein has an office for the transaction of business at 168 Saw Mill River Road, Hawthorne, New York.

16.   Weinstein is named as a defendant because he and Color Group are in possession of a portion of the Collection and refuses to return it.

### FACTS APPLICABLE TO ALL CAUSES OF ACTION

17.   Plaintiff entered into an oral agency agreement (the "Agency Agreement") with Larry in or about 1989.  Under the Agency Agreement, Larry agreed to promote the Collection.  Under the Agency Agreement, plaintiff was to receive 60% of the gross proceeds of any new project, and Larry was to receive 40% of the gross proceeds less any expenses incurred on the project.

18.   Under the implicit terms of the Agency Agreement, Larry owed plaintiff a duty of good faith and loyalty, a duty to obey all reasonable directions of plaintiff, a duty not to exceed the authority granted by plaintiff, a duty not to use confidential information acquired in his employment in competition with plaintiff, an obligation not to deal in the Collection for his own account, an obligation not to acquire an interest in the Collection without the consent of plaintiff, a duty not to divert to his own use money or property belonging to plaintiff, a duty to account to plaintiff with regard to the Collection, a duty to account to plaintiff for all secret profits obtained by Larry with respect to the Collection, a duty not to engage in business in competition with plaintiff, an obligation to return all property belonging to plaintiff upon demand, and a duty to keep and render true accounts of monies earned from the Collection.

19.   An important part of the Agency Agreement between plaintiff and Larry was that plaintiff had final say over any project before it was done.  This was of critical importance to plaintiff for artistic reasons.

20.   The Agency Agreement continued in force until March 11, 1994, when plaintiff formally notified Larry in writing that he had no authority to act on plaintiff's behalf.

3

MMLLC (Shaw) 000659

21.   From time to time throughout the term of the Agency Agreement, Valerie Goodman assisted Larry in putting together projects involving the Collection.

22.   On March 11, 1994, plaintiff formally notified Valerie in writing that she had no authority to act on plaintiff's behalf.

23.   On or about April 23, 1993, Bressler was retained by Larry, as agent for plaintiff, to represent plaintiff in an action entitled <u>Sam Shaw v. St. Martin's Press, Inc., Suzanne Sommer Productions, Susan Bernard</u>, 93 Civ. 2871 (LAP), which was commenced in the United States District Court for the Southern District of New York in or about May 1993 (the "Federal Court Action").

24.   In the Federal Court Action, plaintiff sued St. Martin's Press and others for unauthorized use of twelve of the "flying skirt" photographs of Marilyn Monroe that were taken by plaintiff on the set of <u>The Seven Year Itch</u>.

25.   Although plaintiff was aware of and approved the hiring of Bressler for the Federal Court Action, plaintiff did not know all of the terms of the retainer agreement signed by Larry, and was misinformed by Larry and Bressler as to its contents.

26.   On or about April 23, 1993, Larry and Bressler told plaintiff that Bressler would only be paid a fee if they were able to recover money.  Larry also told plaintiff that Bressler needed $9,000 in advance for expenses, so that Bressler could begin doing the necessary research and other work that was needed to commence the litigation.

27.   Plaintiff caused $9,000 to be paid to Bressler on or about April 23, 1993, believing that money was to be used for expenses.

28.   In fact, under the terms of the retainer agreement signed without plaintiff's knowledge by Larry, as agent for Sam Shaw, the $9,000 payment was treated as a legal fee.

29.   Plaintiff never authorized Bressler or his firm, Bressler & Bressler, to act as plaintiff's attorney in any matter other than the Federal Court Action.

30.   Bressler and his firm, Bressler & Bressler, were the attorneys of record for plaintiff in the Federal Court Action until August 15, 1994.

4

MMLLC (Shaw) 000660

31.  On or about March 11, 1994, plaintiff notified Bressler that he was not to represent plaintiff or his work, other than the Federal Court Action.

32.  Despite the notices sent to Larry, Valerie, and Bressler, Larry and Valerie have continued to do business in plaintiff's name and without plaintiff's knowledge or authority.  Bressler has knowingly assisted Larry and Valerie Goodman to conduct business in plaintiff's name and without plaintiff's knowledge or authority.

33.  In a number of instances, Bressler has represented interests that are completely adverse to plaintiff's interests in the Collection.

## THE THEFT OF PLAINTIFF'S PHOTOGRAPHIC COLLECTION

34.  Larry, Susan and Valerie have taken portions of the Collection from plaintiff from time to time over the past two or more years.

35.  In some instances, plaintiff allowed Larry and Susan and Valerie Goodman to take photos out of plaintiff's house, for use in particular projects. In these instances, plaintiff was told and always understood that the photos would be returned after the project was finished.  In other instances, Larry and Susan and Valerie Goodman removed portions of the Collection without plaintiff's knowledge.

36.  In 1992, when plaintiff was out of the country attending a film festival and exhibition of plaintiff's work in Portugal, Larry removed a large portion of the Collection from plaintiff's home without plaintiff's knowledge or approval.

37.  During the summer of 1993, Valerie Goodman introduced plaintiff to Nicholas Ducrot, a photographic archivist/editor who had previously put together a book about another photographer -- Gordon Parks.

38.  During the summer of 1993, Valerie Goodman and Susan removed hundreds of photographs from the Collection with plaintiff's knowledge.

39.  At or about the time that the photos were removed, Valerie Goodman and Susan represented to plaintiff that Mr. Ducrot needed to have these photos so that he and Valerie Goodman could begin putting a presentation together for a French publisher and for an exhibition.  Valerie, Susan and Nicholas Ducrot

5

MMLLC (Shaw) 000661

each respresented to plaintiff that the photos would be used only for the project that was being discussed and they would then be returned. Each representation made by Valerie Goodman and Susan was made with Larry's knowledge, and with his approval.

40. At the end of the summer of 1993, Valerie Goodman travelled to Europe to try to line up a publisher and an exhibitor for the project. Before she left, she told plaintiff that she was going to try to put together an exhibition at a prestigious gallery in Marseille, which she said would have been a great honor to plaintiff. When she returned to this country, she told plaintiff, with Larry's knowledge and approval, that there was no interest in the project.

41. Valerie Goodman's respresentation to plaintiff that there was no interest in a French book and exhibition of plaintiff's work was false, and both Valerie Goodman and Larry knew it to be false.

42. Upon information and belief, Valerie Goodman and Larry have gone forward with both the book and the exhibition without plaintiff's knowledge, and without his approval, using the photos removed from plaintiff's home by Valerie Goodman, Susan and Larry.

43. Plaintiff has made numerous demands upon Valerie Goodman, Susan and Larry for return of the photos removed from plaintiff's home.

44. In February of this year, after numerous demands, Valerie Goodman permitted plaintiff's daughter Edie to take back some of the photos that Valerie Goodman and Susan had removed last summer.

45. Valerie Goodman, Larry and Susan have failed and refused to return most of the photos that they have taken from Plaintiff.

46. Among the photos that has not been returned, and that Larry, Susan and/or Valerie have in their possession, is a group of 11 x 14 prints that include 3 or 4 portraits of Jacques Prevert, images of Marc Chagall, Kisling, Lipchitz, Aaron Copeland, Irving Berlin, John Houston, Frank Loesser, Elie Weisel, John Wayne, Jean Renoir and others.

47. Larry has possession of plaintiff's Americana collection, plaintiff's Southern collection, some of plaintiff's Jazz collection (Duke Ellington, Louis

6

MMLLC (Shaw) 000662

Armstrong, Miles Davis and others), much of plaintiff's John Cassavettes collection, and many others that cover 50 years of plaintiff's creative life.

48.    Larry also has possession of the best of plaintiff's Marilyn Monroe collection, including each of the prints and/or negatives described on an "Inventory of Sam Shaw photographic materials relating to Marilyn Monroe" that was prepared by Larry.

49.    Upon information and belief, some or all of the photos that were taken from plaintiff are in the possession of Bressler.

50.    Color Group is a photo lab owned and run by Marc Weinstein.

51.    From time to time over the past year, Larry has delivered portions of the Collection to Marc Weinstein to have those photos duplicated or to have some service performed by the lab.

52.    With the exception of two occasions, each photo or negative that was delivered to Marc Weinstein by Larry was done without plaintiff's knowledge and without plaintiff's authority.

53.    With the exception of two instances, each of the services performed by Marc Weinstein was performed for Larry and not for plaintiff.

54.    Most of the work performed by Mark Weinstein for Larry was done after Larry's authority to transact business in plaintiff's name was formally terminated.

55.    Marc Weinstein/Color Group is in possession of 150 to 200 negatives that form a part of the Collection, including the following: "Marilyn Skirt Blowing", "Marlon Brando Pool Hall", "Lionel Hampton and Louis Armstrong", "Ellington/Paris", "Duke E. & Louis A. Paris", "Duke Ellington", "Marilyn for Screen Saver", "MM Panties", "Sam Shaw Jazz", and "Jazz & John Wayne".

56.    Marc Weinstein refuses to return any part of the Collection that is in his possession, despite repeated demands therefore.

7

MMLLC (Shaw) 000663

## THE UNAUTHORIZED EXPLOITATION OF THE COLLECTION BY LARRY, VALERIE GOODMAN, BRESSLER AND 1912 PRODUCTIONS, INC.

57.    Defendants Larry, Valerie Goodman, 1912 Productions, Inc. and Bressler have transacted business involving the Collection without plaintiff's knowledge or consent.

58.    Upon information and belief, in 1993, Larry and Valerie were instrumental in putting on an exhibition in Marseille that featured some of the Collection that was removed from Plaintiff's home.

59.    Upon information and belief, Larry and Valerie were paid for putting on the Marseille exhibition and will be paid additional amounts in the future.

60.    Plaintiff has received no remuneration from the Marseille Exhibition.

61.    Plaintiff had no prior knowledge of the Marseille exhibition and did not approve of that exhibition.

62.    Upon information and belief, Valerie Goodman and Larry have entered into discussions with Cahiers Du Cinema to publish a book in France featuring portions of the Collection.

63.    Upon information and belief, defendants Valerie Goodman, Larry and 1912 Productions, Inc. have entered into an agreement with Cahiers Du Cinema to publish a book in France featuring portions of the Collection.

64.    Upon information and belief, the theme of the book is the "Movie Makers", and is going to be published by Cahiers Du Cinema in conjunction with the 100th anniversary of movie making in 1995.

65.    In or about November 1993, without plaintiff's knowledge or consent, Larry and/or some entity with which he is affiliated entered into an agreement with Art Shows and Products ("ASaP") concerning the exploitation of all or parts of the Collection (the "ASaP Agreement").

66.    Plaintiff had no prior knowledge of the ASaP Agreement, did not approve it, and never gave Larry or Bressler authority to enter into such an agreement.

67.    Upon information and belief, the ASaP Agreement purports to grant an exclusive world-wide license to ASaP to use a large portion of the Collection, including all of plaintiff's images of Marilyn Monroe, in the following media:

8

MMLLC (Shaw) 000664

T-shirts, sweat shirts, tuxedo shirts, fashion wear, aprons, tote bags, placemats, computer screen savers, jigsaw puzzles, and print products such as calendars, post-cards, and agenda books.

68.   Upon information and belief, the ASaP Agreement calls for royalties to be paid as follows: 60% to Larry, 30% to ASaP, and 10% to Bressler.

69.   At the time the ASaP Agreement was executed, Bressler was the attorney of record for plaintiff in the Federal Court Action.

70.   Plaintiff had no prior knowledge of the ASaP Agreement.

71.   Plaintiff did not authorize Larry or anyone else to enter into the ASaP agreement on plaintiff's behalf.

72.   Upon information and belief, in or about July 1994, Larry was paid $9,000 by ASaP pursuant to ASaP Agreement and Bressler was paid $1,500 by ASaP pursuant to the ASaP Agreement.

73.   Plaintiff has received no payment by anyone on account of the ASaP Agreement.

74.   Upon information and belief, on or about June 21, 1994, ASaP entered into an agreement (the "Desktop Agreement") with Desktop Software, Inc. ("Desktop").

75.   Upon information and belief, the Desktop Agreement purports to grant to Desktop the right to manufacture, distribute and sell a computer screen saver utilizing 36 images taken by plaintiff of Marilyn Monroe that are part of the Collection. The rights granted are world-wide and are non-exclusive.

76.   The Desktop Agreement also purports to give Desktop the right to use plaintiff's name.

77.   Upon information and belief, ASaP was paid $15,000 as an advance against a royalty equal to 20% of the gross revenues. Further royalty payments are to be made quarterly.

78.   Neither ASaP, Larry nor anyone else had plaintiff's authority to enter into the Desktop Agreement or to grant anyone the right to use plaintiff's name.

9

MMLLC (Shaw) 000665

79.   Plaintiff had no prior knowledge of the Desktop Agreement and did not approve of that agreement.

80.   Plaintiff has received no payments from anyone on account of the Desktop Agreement.

81.   Upon information and belief, Larry and non-defendant Lawrence Cutler are in the process of putting together an exhibition featuring parts of plaintiff's Collection that will take place at the Aux Printemps department store in Paris in 1995.

82.   Upon information and belief, Larry was paid for the Aux Printemps exhibition and will be paid additional amounts in the future.

83.   Plaintiff has received no payments on account of the Aux Printemps exhibition.

84.   Plaintiff did not approve of the Aux Printemps exhibition.

85.   Upon information and belief, Larry has been paid $40,000 for putting on the Aux Printemps exhibition and will be paid additional amounts for that exhibition in the future.

86.   Plaintiff has not received any payments on account of the Aux Printemps Exhibition.

87.   Neither Larry nor anyone else has been given plaintiff's authority to put on an exhibition of plaintiff's work at the Aux Printemps department store.

88.   On or about January 27, 1994, Larry and Valerie Goodman, doing business as 1912 Productions, Inc., entered into an agreement (the "Uno Mundo Agreement") with Uno Mundo, Inc. ("Uno Mundo").

89.   The Uno Mundo Agreement purports to grant to Uno Mundo an option to enter into a licensing agreement with 1912 Productions, which would give Uno Mundo the exclusive right to exploit for commercial and non-commercial purposes "all of the photographic works of Mr. Sam Shaw . . . by means of new technology multimedia works, whether now known or hereafter created, including without limitation, on digital compression compact discs (optonumerical discs and other

10

MMLLC (Shaw) 000666

supports) including CD Rom, CD photos, CD Interactive, etc. . . (the "Multimedia Works")." The rights granted are world-wide and are exclusive.

90.    The Uno Mundo Agreement also purports to grant to Uno Mundo an option to enter into a joint venture with 1912 Productions for the purpose of the exclusive commercial exploitation of all of the photographic works of Mr. Sam Shaw by audiovisual devices of any type whatsoever."

91.    Upon information and belief, Larry, Valerie and/or 1912 Productions was paid $15,000 on or about February 2, 1994 and another $15,000 payment on or about September 1, 1994 pursuant to the Uno Mundo Agreement.

92.    Neither 1912 Productions, Larry, Valerie Goodman nor anyone else had plaintiff's authority to enter into the Uno Mundo Agreement or to grant anyone any rights in the Collection to Uno Mundo.

93.    When plaintiff was first shown a copy of the Uno Mundo Agreement, plaintiff refused to sign it and rejected its terms.

94.    Plaintiff has received no payments from anyone on account of the Uno Mundo Agreement.

95.    Notwithstanding plaintiff's rejection of the Uno Mundo Agreement, Larry, Valerie Goodman and Uno Mundo have gone forward with the transactions contemplated under the Uno Mundo Agreement. Among other things, they have attempted to negotiate an agreement with B.M.G. for the production and distribution of a CD Rom featuring images of Marilyn Monroe taken from the Collection.

96.    Despite numerous demands, Larry, Valerie Goodman and Uno Mundo have failed and refused to return those parts of the Collection that are in their possession.

97.    On June 29, 1992, while plaintiff was in Portugal, Larry called plaintiff and told plaintiff that he needed plaintiff to fax a letter (the "June 29th Fax") to Larry that Larry could show to third parties to demonstrate that Larry was authorized by plaintiff to act in his behalf.

98.    Larry represented to plaintiff that he needed the June 29th Fax urgently, and that he would only use it while plaintiff was out of the country.

11

MMLLC (Shaw) 000667

99.  Larry dictated exactly what he wanted plaintiff to write in the June 29th Fax over the telephone.

100.  Plaintiff wrote exactly what Larry dictated and then faxed the June 29th Fax back to Larry in New York.

101.  At the time he demanded that plaintiff send him the June 29th Fax, Larry did not tell plaintiff that the purpose of the June 29th Fax was to transfer ownership of part of the Collection -- the Marilyn Monroe photographs.

102.  Had Larry said that the purpose of the June 29th Fax was to transfer plaintiff's interest in any part of the Collection to Larry, plaintiff would never have written or sent the June 29th Fax to Larry.

103.  At the time of the June 29th Fax, plaintiff was unrepresented by counsel.

104.  Plaintiff did not intend to transfer ownership of any part of the Collection to Larry when he wrote and sent the June 29th Fax.

**FIRST CAUSE OF ACTION**
**AGAINST LARRY SHAW**

105.  Plaintiff repeats the allegations set forth in paragraphs 1 through 104 above.

106.  Defendant Larry Shaw has breached both the explicit and implicit terms of the Agency Agreement by (i) failing and refusing to pay to plaintiff the amounts due to plaintiff; (ii) by going forward with projects involving the Collection without plaintiff's prior approval; (iii) by failing to account to plaintiff; (iv) by breaching his duty of good faith and loyalty to plaintiff; (v) by failing to obey all reasonable directions of plaintiff; (vi) by exceeding the authority granted to him by plaintiff; (vii) by using confidential information acquired in his employment in competition with plaintiff; (viii) by dealing in the Collection for his own account; (ix) by purporting to acquire an interest in the Collection without the consent of plaintiff; (x) by diverting to his own use money or property belonging to plaintiff; (xi) by failing and refusing to account to plaintiff with regard to the Collection; (xii) by failing to account to plaintiff for all secret profits obtained by Larry with respect to the

12

MMLLC (Shaw) 000668

Collection; (xiii) by engaging in business in competition with plaintiff; (xiv) by failing and refusing to return all property belonging to plaintiff despite demands therefore; and (xv) by failing to keep and render true accounts of monies earned from the Collection.

107. As a result of the foregoing breaches of the Agency Agreement, plaintiff has been damaged.

### SECOND CAUSE OF ACTION
### AGAINST LARRY SHAW

108. Plaintiff repeats the allegations set forth in paragraphs 1 - 107 above.

109. Larry has willfully breached his fiduciary obligations to plaintiff.

110. Larry continues to willfully breach his fiduciary obligations to plaintiff.

111. Plaintiff has been and will continue to be damaged by the aforesaid breaches of Larry's fiduciary obligations to plaintiff.

112. Plaintiff has suffered irreparable harm as a result of the aforesaid breaches of fiduciary duty.

113. Plaintiff has no adequate remedy at law.

### THIRD CAUSE OF ACTION
### AGAINST LARRY SHAW, SUSAN SHAW, VALERIE GOODMAN
### MARTIN BRESSLER, BRESSLER & BRESSLER AND 1912 PRODUCTIONS, INC.

114. Plaintiff repeats the allegations set forth in paragraphs 1 - 113 above.

115. Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler and 1912 Productions have received funds belonging to plaintiff as a result of the authorized and unauthorized exploitation of the Collection.

116. Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler and 1912 Productions have retained funds belonging to plaintiff without justification and without plaintiff's approval.

117. Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler and 1912 Productions are obliged to turn over to plaintiff those funds rightfully belonging to plaintiff.

MMLLC (Shaw) 000669

118. The funds received by Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler and 1912 Productions through exploitation of the Collection are held in trust for plaintiff.

119. Plaintiff has no adequate remedy at law.

120. As a result of the foregoing, plaintiff is entitled to a judgment (i) declaring that plaintiff is entitled to the funds received by Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler and 1912 Productions through the exploitation of the Collection, (ii) directing Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler and 1912 Productions to account for all funds received by them as through the exploitation of the Collection, (iii) directing Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler and 1912 Productions, and any persons under their direction or control, to deliver such funds immediately to plaintiff.

**FOURTH CAUSE OF ACTION**
**AGAINST LARRY SHAW, SUSAN SHAW, VALERIE GOODMAN**
**MARTIN BRESSLER, BRESSLER & BRESSLER AND 1912 PRODUCTIONS, INC.**

121. Plaintiff repeats the allegations set forth in paragraphs 1 - 120 above.

122. Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler and 1912 Productions have failed to deliver to plaintiff monies that rightfully belong to plaintiff and have instead, converted those monies to their own use, to the detriment of plaintiff.

123. Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler and 1912 Productions have taken the monies received from the exploitation of the Collection, which they have no right to receive or retain, and have converted those monies to their own use, to the detriment of plaintiff.

124. As a result of a foregoing, plaintiff has been damaged.

**FIFTH CAUSE OF ACTION**
**AGAINST LARRY SHAW, SUSAN SHAW, VALERIE GOODMAN**
**MARTIN BRESSLER, BRESSLER & BRESSLER AND 1912 PRODUCTIONS, INC.**

125. Plaintiff repeats the allegations set forth in paragraphs 1 - 124 above.

14

MMLLC (Shaw) 000670

126. The entire Collection belongs to plaintiff.

127. Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler and 1912 Productions are in possession of parts of the Collection.

128. Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler and 1912 Productions refuse to return the Collection to plaintiff despite demands therefore.

129. Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler and 1912 Productions have converted those parts of the Collection in their possession to their own use, to the detriment of plaintiff.

130. As a result of a foregoing, plaintiff has been damaged.

### SIXTH CAUSE OF ACTION
### AGAINST LARRY SHAW, SUSAN SHAW, VALERIE GOODMAN
### MARTIN BRESSLER, BRESSLER & BRESSLER AND 1912 PRODUCTIONS, INC.

131. Plaintiff repeats the allegations set forth in paragraphs 1 - 130 above.

132. The entire Collection belongs to plaintiff.

133. The Collection consists of an invaluable collection of rare and irreplaceable photographs and photographic negatives created by plaintiff over a period of fifty years of his life, for which he has a tremendous artistic and emotional attachment.

134. By removing parts of the Collection from plaintiff and refusing to return it, Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler and 1912 Productions have caused and continue to cause plaintiff to suffer irreparable harm.

135. Plaintiff will continue to suffer irreparable harm until the Collection is accounted for and returned to plaintiff.

### SEVENTH CAUSE OF ACTION
### AGAINST LARRY SHAW, SUSAN SHAW, VALERIE GOODMAN
### MARTIN BRESSLER, BRESSLER & BRESSLER AND 1912 PRODUCTIONS, INC.

136. Plaintiff repeats the allegations set forth in paragraphs 1 - 135 above.

15

MMLLC (Shaw) 000671

137.  The aforesaid representations made by Larry, Susan, Valerie Goodman, and Bressler to plaintiff concerning the uses to which the Collection would be put if plaintiff allowed them to take possession thereof were false when made, and these defendants knew them to be false.

138.  The representations were made with the intent to induce plaintiff to permit these defendants to remove and retain parts of the Collection, or to induce plaintiff to deliver parts of the Collection to them.

139.  Plaintiff was not aware of the falsity of the representations made by these defendants.

140.  Plaintiff relied on the truth of the representations made by the defendants in permitting these defendants to remove parts of the Collection from his home, and in delivering parts of the Collection to these defendants.

141.  As a result of the false and fraudulent misrepresentation set forth above, plaintiff has been damaged.

### EIGHTH CAUSE OF ACTION
### AGAINST LARRY SHAW, MARTIN BRESSLER, AND BRESSLER & BRESSLER

142.  Plaintiff repeats the allegations set forth in paragraphs 1 - 141 above.

143.  At all relevant times, Larry, Bressler and Bressler & Bressler were in a fiduciary relationship with plaintiff; Larry was plaintiff's photographic agent; Bressler and Bressler & Bressler were plaintiff's attorney.

144.  By virtue of that fiduciary relationship, Larry, Bressler and Bressler & Bressler had an obligation to disclose all facts that were material to plaintiff.

145.  Larry, Bressler and Bressler & Bressler willfully concealed material information from plaintiff, despite their knowledge that plaintiff was unaware of that information.

146.  Among other things, Larry, Bressler and Bressler & Bressler willfully concealed from plaintiff that (i) they engaged in an effort to collect monies on plaintiff's behalf for unauthorized use of the Collection by third parties, (ii) they collected sums of money on plaintiff's behalf but did not turn over those

MMLLC (Shaw) 000672

funds to plaintiff; (iii) Larry, Valerie Goodman, 1912 Productions, Inc.,
Bressler, ASaP and possibly others were attempting to exploit plaintiff's
Collection and that they were not remitting to plaintiff any part of the proceeds
of the exploitation of the Collection; (iv) Bressler and Bressler & Bressler were
acting as the attorneys for Larry, Susan, ASaP and Lawrence Cutler at the same
time that they were acting as attorneys for plaintiff, and that the interests of
plaintiff did not coincide with, and frequently conflicted with, the interests
of Bressler's other clients; (v) Larry, Susan, Valerie Goodman, and 1912
Productions, Inc. were making false representations to third parties that Larry,
Valerie and/or 1912 Productions, Inc. were the owners of the Collection,
including all of the images of Marilyn Monroe that were created by plaintiff.

147. Larry, Bressler and Bressler & Bressler intended to and did deceive
plaintiff by concealing these facts from plaintiff.

148. Plaintiff did not know of the facts that were fraudulently concealed
from him by Larry, Bressler and Bressler & Bressler.

149. As a result of the fraudulent concealment by Larry, Bressler and
Bressler & Bressler, plaintiff has been damaged.

150. Had plaintiff been aware of the facts concealed from him by Larry,
Bressler & Bressler & Bressler, plaintiff would have taken steps earlier to
terminate his business relationships with Larry, Valerie Goodman, Bressler, and
Bressler & Bressler, and would have taken steps earlier to prevent the removal
and unauthorized exploitation of his Collection.

151. As a result of the fraudulent concealment by Larry, Bressler and
Bressler & Bressler, plaintiff has been damaged.

### NINTH CAUSE OF ACTION
### AGAINST LARRY SHAW AND MARTIN BRESSLER

152. Plaintiff repeats the allegations set forth in paragraphs 1 - 151
above.

153. The representations made by Larry to plaintiff concerning the June
29th Fax were false and Larry knew them to be false at the time they were made.

17

MMLLC (Shaw) 000673

154. At the time of the June 29th Fax, Larry did not tell plaintiff that Larry intended to use the June 29th Fax to make a claim that Larry was the owner of the Marilyn Monroe photographs that form a part of the Collection.

155. Larry made those representations to plaintiff intending that plaintiff rely on them, which he did.

156. As a result of Larry's false and fraudulent misrepresentations concerning the June 29th Fax, plaintiff was induced to write and fax the June 29th Fax to Larry.

157. Since June 29, 1992, Larry and Bressler have falsely represented to third parties, including ASaP and Bressler, that Larry owns all rights in and to the Marilyn Monroe photographs that form a part of the Collection.

158. As a result of Larry's and Bressler's false and fraudulent misrepresentations and material omissions, plaintiff has been damaged.

159. As a result of the foregoing, plaintiff is entitled to a judgment declaring that the June 29th Fax is a nullity, that it is of no force and effect, that it does not confer upon any rights in and to the Collection upon Larry, and that Larry has no rights in and to any part of the Collection.

### TENTH CAUSE OF ACTION
### AGAINST BRESSLER AND BRESSLER & BRESSLER

160. Plaintiff repeats the allegations set forth in paragraphs 1 - 159 above.

161. Bressler and Bressler & Bressler (collectively referred to hereinafter as B&B) have knowingly violated various provisions of the Code of Professional Responsibility during the course of their respresentation of plaintiff.

162. B&B represented plaintiff at the same time that they represented Larry.

163. B&B represented plaintiff at the same time that they represented ASaP.

164. B&B represented plaintiff at the same time that they represented Lawrence Cutler.

MMLLC (Shaw) 000674

165. The subject matter of B&B's representation of plaintiff was in part the same as the subject matter of B&B's representation of Larry, Cutler and ASaP.

166. The interests of plaintiff are in conflict with the interests of Larry, ASaP and Cutler.

167. B&B did not request or obtain plaintiff's consent before representing Larry, Cutler and ASaP.

168. In or about April 1993, B&B made an agreement with respect to the sharing of fees with an attorney who is not a partner in or associate of B&B without plaintiff's knowledge and without plaintiff's consent, in violations of section DR 2-107 of the Code of Professional Responsibility.

169. In or about April 1993, B&B misrepresented to plaintiff the terms of its retention by plaintiff in the Federal Court Action.

170. On or about April 23, 1993, B&B made an agreement with plaintiff, his daughter Edie Marcus and his son-in-law Charles Marcus, to reimburse $9,000 to Edie Shaw Marcus and Charles Marcus out of the first monies recovered by B&B from its legal activities on behalf of plaintiff.

171. B&B breached that agreement by failing and refusing to distribute any portion of any amounts recovered by B&B on behalf of plaintiff to Edie Shaw Marcus and Charles Marcus.

172. B&B falsely advised plaintiff that B&B recovered no monies on behalf of plaintiff.

173. Upon information and belief, B&B has recovered substantial sums on behalf of plaintiff, including but not limited to the sum of $5,500 on behalf of plaintiff on or about November 1, 1993 and never advised plaintiff of that recovery.

174. B&B falsely represented to plaintiff that they were not engaged in any collection activities on plaintiff's behalf, when in fact they were engaged in such activities.

175. At the same time that B&B were representing plaintiff in the Federal Court Action, Bressler negotiated and drafted the ASaP Agreement.

19

MMLLC (Shaw) 000675

176.  Plaintiff's interest was not represented at all in the ASaP Agreement.  To the contrary, the ASaP Agreement purports to transfer rights in and to the Collection without plaintiff's knowledge and without any benefit to plaintiff.

177.  B&B has received the sum of $1,500, representing 10% of the first $15,000 royalty paid under the ASaP Agreement, but plaintiff has received nothing on account of that agreement.

178.  As a result of the foregoing breaches of the Code of Professional Responsibility, plaintiff has been damaged.

ELEVENTH CAUSE OF ACTION
AGAINST LARRY SHAW, SUSAN SHAW, VALERIE GOODMAN
MARTIN BRESSLER, BRESSLER & BRESSLER AND 1912 PRODUCTIONS, INC.

179.  Plaintiff repeats the allegations set forth in paragraphs 1 - 178 above.

180.  Each of the defendants named above constitutes a "person" within the meaning of 18 U.S.C. §1961(3).

181.  The acts of the defendants named above, and each of them, constitute a pattern of racketeering activity within the meaning of 18 U.S.C. §1961(3).

182.  The defendants named above became associated with each other to form an enterprise, within the meaning of 18 U.S.C. §1961(4), whose purpose was to obtain and exploit the Collection.

183.  Each of the defendants named above was employed by or associated with the enterprise.

184.  The above described enterprise has engaged in conduct which affects interstate commerce.

185.  Each of the defendants have conducted the affairs of the enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

186.  Plaintiff has been injured in his business and property as a result of the foregoing violations.

187.  As a result of the foregoing, plaintiff is entitled to treble damages and attorneys fees in accordance with 18 U.S.C. §1964(c).

MMLLC (Shaw) 000676

### TWELFTH CAUSE OF ACTION
### AGAINST LARRY SHAW, SUSAN SHAW, VALERIE GOODMAN
### MARTIN BRESSLER, BRESSLER & BRESSLER AND 1912 PRODUCTIONS, INC.

188.   Plaintiff repeats the allegations set forth in paragraphs 1 - 187 above.

189.   Each of the defendants named above have conspired together to violate the provisions of 18 U.S.C. §1962(c).

190.   As a result of the foregoing, plaintiff is entitled to treble damages and attorneys fees in accordance with 18 U.S.C. §1964(c).

### THIRTEENTH CAUSE OF ACTION
### AGAINST MARTIN BRESSLER AND BRESSLER & BRESSLER

191.   Plaintiff repeats the allegations set forth in paragraphs 1 - 190 above.

192.   As attorney for plaintiff in the Federal Court Action, B&B owed plaintiff a duty of loyalty, and a duty to exercise the degree of skill and expertise of a reasonable attorney.

193.   B&B breached their duties to plaintiff by failing to exercise that degree of skill and expertise to which plaintiff was entitled, and by taking actions that were in conflict with the interests of plaintiff.

194.   As a result of the foregoing, plaintiff has been damaged.

### FOURTEENTH CAUSE OF ACTION
### AGAINST LARRY SHAW, SUSAN SHAW, VALERIE GOODMAN, MARTIN BRESSLER
### BRESSLER & BRESSLER, 1912 PRODUCTIONS, INC. AND MARC WEINSTEIN

195.   Plaintiff repeats the allegations set forth in paragraphs 1 - 194 above.

196.   The defendants named above are in possession of part of the Collection.

197.   The entire Collection belongs to plaintiff.

198.   Upon information and belief, the part of the Collection that is in the possession of the defendants named above is worth not less than $100,000,000.

199.   The defendants named above have refused to deliver the parts of the Collection in their possession to plaintiff despite demand therefore.

WHEREFORE, plaintiff demands judgment as follows:

MMLLC (Shaw) 000677

A.    On the First Cause of Action, damages against Larry Shaw in an amount to be determined at trial, together with punitive damages of $100,000,000;

B.    On the Second Cause of Action: (i) a money judgment for damages against Larry Shaw in an amount to be determined at trial, together with punitive damages of $100,000,000, (ii) a permanent injunction prohibiting Larry from dealing in any manner, directly or indirectly, with the Collection and from representing to anyone that he is the agent of Sam Shaw or that he has any right or authority to act on behalf of Sam Shaw, (iii) a mandatory permanent injunction directing Larry to advise plaintiff of all persons and entities with whom Larry has had any dealings involving the Collection and directing Larry to advise each such person in writing that Larry has no authority to act on plaintiff's behalf in the Collection; (iv) an accounting of all activities engaged in by Larry involving the Collection, as well as an accounting of all photographs that form a part of the Collection; and (v) a permanent mandatory injunction directing Larry to turn over to plaintiff all funds and property that belong to plaintiff;

C.    On the Third Cause of Action, a judgment against Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler and 1912 Productions: (i) declaring that plaintiff is entitled to the funds received by Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler and 1912 Productions through the exploitation of the Collection, (ii) directing Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler and 1912 Productions to account for all funds received by them through the exploitation of the Collection, (iii) directing Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler and 1912 Productions, and any persons under their direction or control, to deliver such funds immediately to plaintiff;

D.    On the Fourth Cause of Action, a money judgment against Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler and 1912 Productions, jointly and severally, for such damages as are proved at trial, together with punitive damages of $100,000,000;

E.    On the Fifth Cause of Action, a money judgment against Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler and 1912 Productions, jointly and

22

severally, for such damages as are proved at trial, together with punitive damages of $100,000,000;

F.     On the Sixth Cause of Action, (i) a permanent injunction prohibiting Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler and 1912 Productions from dealing in any manner, directly or indirectly, with the Collection and from representing to anyone that they are the agent of Sam Shaw or that they have any right or authority to act on behalf of Sam Shaw, (ii) a mandatory permanent injunction directing Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler and 1912 Productions to advise plaintiff of all persons with whom they have had any dealings involving the Collection and directing Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler and 1912 Productions to advise each such person in writing that Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler and 1912 Productions have no authority to act on behalf of Sam Shaw; (iii) an accounting of all activities engaged in by Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler and 1912 Productions involving the Collection, as well as an accounting of all photographs that form a part of the Collection; and (v) a permanent mandatory injunction directing Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler and 1912 Productions to turn over to plaintiff all funds and property that belong to plaintiff;

G.     On the Seventh Cause of Action, a money judgment against Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler and 1912 Productions, jointly and severally, for such damages as are proved at trial, together with punitive damages of $100,000,000;

H.     On the Eighth Cause of Action, a money judgment against Larry, Bressler, and Bressler & Bressler, jointly and severally, for such damages as are proved at trial, together with punitive damages of $100,000,000;

I.     On the Ninth Cause of Action, (i) a judgment declaring that the June 29th Fax is a nullity, that it is of no force and effect, that it does not confer upon any rights in and to the Collection upon Larry, and that Larry has no rights in and to any part of the Collection, and (ii) a money judgment against Larry,

23

MMLLC (Shaw) 000679

Bressler, and Bressler & Bressler, jointly and severally, for such damages as are proved at trial, together with punitive damages of $100,000,000;

J.    On the Tenth Cause of Action, a money judgment against Bressler, and Bressler & Bressler, jointly and severally, for such damages as are proved at trial, together with punitive damages of $100,000,000;

K.    On the Eleventh Cause of Action, a money judgment against Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler and 1912 Productions, jointly and severally, for three times such damages as are proved at trial, together with reasonable attorneys fees;

L.    On the Twelfth Cause of Action, a money judgment against Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler and 1912 Productions, jointly and severally, for three times such damages as are proved at trial, together with reasonable attorneys fees;

M.    On the Thirteenth Cause of Action, a money judgment against Bressler, and Bressler & Bressler, jointly and severally, for such damages as are proved at trial, together with punitive damages of $100,000,000;

N.    On the Fourteenth Cause of Action, a judgment declaring that plaintiff is the owner of the Collection and is entitled to its immediate possession; (ii) directing Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler, 1912 Productions and Marc Weinstein to account for those parts of the Collection that are in their possession, and (iii) directing Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler, 1912 Productions and Marc Weinstein to immediately deliver those parts of the Collection that are in their possession to plaintiff.  In the event possession of the Collection cannot be obtained, plaintiff demands a money judgment against Larry, Susan, Valerie Goodman, Bressler, Bressler & Bressler, 1912 Productions and Marc Weinstein for not less that $100,000,000;

24

MMLLC (Shaw) 000680

O.    On all causes of action, a judgment for costs and disbursements, and such other and further relief as this Court deems just and proper.

Dated:        New York, New York
              September 15, 1994

                        HOLTZMANN, WISE & SHEPARD
                         Attorneys for Plaintiff
                        1271 Avenue of the Americas
                        New York, New York  10020
                        (212) 554-8000

MMLLC (Shaw) 000681