SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: **EMILY JANE GOODMAN**        PART 17
                 Justice

0116636/2003

TUNICK, JEFFREY P.        INDEX NO. _____
vs
SHAW, LARRY        MOTION DATE _____

SEQ 2        MOTION SEQ. NO. _____

SUMMARY JUDGMENT        MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | |
| Answering Affidavits — Exhibits | |
| Replying Affidavits | |

Cross-Motion:  ☑ Yes   ☐ No

Upon the foregoing papers, it is ordered that ~~this motion~~ *The cross petitions involving the Receiver's Commissions/expenses are decided in accordance with the attached Decision, order and judgment*

[signature]

MMLLC (Shaw) 000649

Dated: 11/23/04

Check one: ☑ FINAL DISPOSITION  ☐ NON-FINAL DISPOSITION

EMILY JANE GOODMAN

Check if appropriate: ☐ DO NOT POST

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 17
----------------------------------------X
JEFFREY P. TUNICK,

                Petitioner,

     -against-                             Index No. 116636/03

LARRY SHAW, EDITH SHAW MARCUS, META     Seq. 002
SHAW STEVENS, MYRON BELDOCK, ESQ.,
WILLIAM S. GREENAWALT, ESQ., MARTIN
BRESSLER, ESQ., SHAW FAMILY ARCHIVES,
LTD., TRUCOLOR, INC. and GAB ROBBINS
NORTH AMERICAN, INC.,

                Respondents
----------------------------------------X
**EMILY JANE GOODMAN, J.S.C.**

      In this special proceeding[1], respondent Myron Beldock, Esq., who was appointed as receiver of the photographic collection at issue in the underlying action, entitled <u>Edith Shaw Marcus and Meta Shaw Stevens, as Temporary Administrators of the Estate of Sam Shaw, deceased v Martin Bressler and Larry Shaw, et al</u>, Index No. 123783/94, Supreme Court, New York County (the "Shaw action"), cross petitions for a determination of his three pending applications for fees, commissions and expenses in the amount of $609,798.01, or in such reduced amount as may be agreed upon by the parties. Respondents Larry Shaw, Edith Shaw Marcus, Meta Shaw Stevens (collectively, the "Shaw Siblings"), and the Shaw Family Archives, Ltd., cross petitions for an order granting them leave to sue Beldock, as receiver, for the alleged loss, damage and destruction of a substantial part of the photographic collection at issue in the

---

[1] A companion decision, which will be forthcoming, addresses the petition of petitioner Jeffrey Tunick and the cross petition of respondent William S. Greenawalt for an attorneys' lien pursuant to Judiciary Law § 475, as well as respondent Martin Bressler's motion for summary judgment regarding his priority as a judgment creditor of Sam Shaw.

MMLLC (Shaw) 000650

Shaw action, and for an accounting pursuant to CPLR 6404. William S. Greenawalt, counsel for Edith Shaw Marcus and Meta Shaw Stevens (the "Shaw Sisters"), submits an Affidavit Responding To Cross-Petition of Myron Beldock, alleging, in relevant part, that issue exists concerning the "proper application of the statutory fee limitation of 5% of the value of property" and the receiver's billing rates. Jeffrey P. Tunick, counsel for Larry Shaw, submits no papers in connection with the aforementioned cross petitions, and, in connection with a separate motion (seq 002), states he has no objection to Beldock's cross petition (see Motion Seq 002, Joint Reply Affirm., p. 47).

By Stipulation of Settlement, dated November 12, 2004, Myron Beldock, Esq. and the Shaw Siblings settled the disputes raised in the cross petitions (the "Stipulation") and the Stipulation has been so-ordered by the Court.

### Facts

The Shaw action involved an eight year intra family battle over ownership of valuable photographic images, primarily of movie stars, musicians, artists and other celebrities, including the famous photograph of Marilyn Monroe with a blowing skirt, taken by Sam Shaw, a well known photographer. The lawsuit, which was fraught with family distrust, was originally filed in 1994 by Sam Shaw, against his son Larry Shaw, also a photographer, in which the authorship and ownership of approximately 700,000 rare and valuable photographic images, shot over a period of approximately 35 years by Sam and/or Larry Shaw, was disputed. These 700,000 photographic images, also described as all of the commercial photographic images formerly owned by Larry and/or Sam Shaw, are the subject of this petition.

At the heart of the Shaw action was Sam Shaw's contention that many of the

MMLLC (Shaw) 000651

commercially viable photographic images shot by him were in the hands, or the under control of, Larry Shaw. Thus, Sam Shaw initially sought $100,000,000 from Larry Shaw for his alleged conversion of approximately 200,000 photographic images to which Sam Shaw claimed ownership. Larry Shaw interposed several counterclaims, and disputed Sam Shaw's claims with respect to those 200,000 images, on the ground that Sam Shaw had given him possession and control of those images.

Larry Shaw also contended that he alone had all of the marketing rights to certain Marilyn Monroe photographic images, by virtue of a claimed written assignment by Sam Shaw to him of this right in June 1992. Sam Shaw contended that this document was procured by fraud, and had also been fraudulently altered by Larry after its execution to transform a limited temporary agency into an assignment of marketing rights.

Sam Shaw's demands for judgment in the Shaw action included an accounting of the photographs; an injunction directing Larry Shaw to turn over all property belonging to Sam Shaw; a declaration that the June 29, 1992 "assignment" of all commercial rights in the Marilyn Monroe photos to Larry Shaw was a nullity; and that Sam Shaw had ownership rights in the Marilyn Monroe photos and the rest of the photographic collection, and was entitled to possession of the collection.

In April 1999, Sam Shaw died. Upon his death, Edith Shaw Marcus and Meta Shaw Stevens, Sam Shaw's daughters, were appointed as Temporary Administrators to continue prosecution of the Shaw action.

By order dated May 13, 1999, Justice Emily Jane Goodman appointed respondent Myron Beldock as receiver to take possession of the 500,000 photographic images which had

MMLLC (Shaw) 000652

been in Sam Shaw's possession prior to his death. These photographs were stored at Manhattan Mini Storage, where they were damaged. Beldock filed an insurance claim for damage to the collection, in the amount of $2,000,000, with Reliance Insurance Company. Shortly after the claim was filed, Reliance filed bankruptcy, and the claim was turned over to the New York State Liquidation Bureau. Respondent GAB Robbins North America, Inc. then took over the claim to act as the adjuster on behalf of the Liquidation Bureau. The insurance claim is still pending and the collection is now warehoused at the premises of respondent TruColor, Inc.

On June 5, 2002, after eight years of hearings, motions, appeals, stays, changes of counsel, spin-off actions and referrals of most of the issues in 1995 to Judicial Hearing Officer Martin Evans, the Shaw action was finally settled by a Stipulation of Settlement (the "Underlying Settlement").

Under the terms of the Underlying Settlement, respondent Shaw Family Archives, Ltd., a domestic corporation, was formed to take possession and ownership of all of the photographs involved in the Shaw action. As a result, a collection of photographic images was created (the "Collection"), consisting of 700,000 photographic images, which included the 500,000 images in Sam Shaw's possession, as well as the 200,000 images in Larry Shaw's possession. Pursuant to the Settlement, Larry Shaw became a 50% owner of the entire Collection, and the Shaw Sisters each received a 25% ownership interest in the Collection. In addition, both Larry Shaw and the Shaw Sisters, respectively, have equal agency rights to the Collection, as well as equal rights to the marketing and commercialization of the Marilyn Monroe photos.

MMLLC (Shaw) 000653

## Discussion

Subject to Beldock filing the appropriate forms, i.e., UCS-872 (Notice of Appointment and Certification of Compliance) and UCS-875 (Statement of Approval of Compensation), and the filing of an accounting, the Court approves payment to Beldock of the fees, commissions and expenses agreed to in the Stipulation.

CPLR 8004 (a) provides, in relevant part, that a receiver "is entitled to such commissions, not exceeding five per cent upon the sums received and disbursed by him."

CPLR 8004 (b) provides, in relevant part, that if, "at the termination of a receivership, there are no funds in the hands of the receiver, the court, upon application of the receiver, may fix the compensation of the receiver and the fees of his attorney, in accordance with the respective services rendered." Cases have interpreted CPLR 8004 (b) as providing that if the receiver has not received or disbursed funds sufficient to pay for his services, the Court may, upon the finding of special circumstances, fix the compensation in accordance with the services rendered (see Sun Beam Enterprises, Inc. v Liza Realty Corp., 210 AD2d 153 [1st Dept 1994]; Long Island City Savings and Loan Assoc. v Bertsman Bldg. Corp., 123 AD2d 840 [2d Dept 1986]; East Chatham Corp. v Iacovone, 25 AD2d 622 [1st Dept 1966]).[2] Further, a hearing is not required prior to confirmation of a fee award if no issues of fact are raised and the scope of services performed, or, the amount claimed, is not challenged (cf. Matter of Keele, 305 AD2d

---

[2]Exhibit F to the cross petition of Beldock indicates that between November 10, 1999 and December 31, 2001, Beldock collected income of only $62,872.23 and paid expenses of $53,951.94. Clearly to apply CPLR 8004 (a) in this instance is unjust, and, special circumstances exist to apply CPLR 8004 (b). Further, the nature of the receiver's services were more in the nature of protecting and preserving property and not in the nature of receiving and disbursing income, which renders the application of CPLR 8004 (b) appropriate here.

MMLLC (Shaw) 000654

145 [1st Dept 2003]; <u>Bankers Federal Sav. Bank, FSB v Off W. Broadway Developers</u>, 224 AD2d 376 [1st Dept 1996]; <u>Paganuzzi v Primrose Mgt. Co.</u>, 268 AD2d 213 [1st Dept 2000]; <u>Vacation Village Homeowners' Assoc., Inc. v Mordkofsky</u>, 254 AD2d 650 [3d Dept 1998]). Here, Beldock and the Shaw Siblings have agreed to an amount, and, Beldock has substantiated the scope of his services (<u>see</u> Exhibits B-F of his cross petition, far in excess of what he and the Shaw Siblings agreed to in the Stipulation. Although Greenawalt, counsel for the Shaw Sisters, has generally questioned the receiver's billing rates, Greenawalt has raised no issue of fact, nor established why he even has standing to object to confirmation of Beldock's fees, which he is not responsible to pay.

The Court further finds the fees, commissions and expenses agreed to in the Stipulation to be reasonable considering the extraordinary, inordinate, voluminous and protracted nature of the Shaw action and the expertise by which Beldock, an experienced and reputable attorney, has performed services as the receiver of the collection, including an extensive inventory of the collection (<u>cf.</u> <u>Bankers Federal Savings Bank, FSB v Off W. Broadway Developers</u>, 224 AD2d 376 [1st Dept 1996] [factors considered under CPLR 8004 (b) in awarding counsel fees]). The Court recognizes the efforts of the receiver and commends him for his painstaking work.

It is hereby

ORDERED that Beldock's cross petition for a determination of his fees, commissions and expenses is granted is accordance with the terms of this Decision, Order and Judgment; and it is further

ORDERED that the cross petition of the Shaw Siblings and the Shaw Family Archives, Ltd., for an order granting them leave to sue Beldock, as receiver, for the loss, damage and

6

MMLLC (Shaw) 000655

destruction of a substantial part of the collection is moot as the issues have been resolved by the Stipulation; and it is further

ADJUDGED, subject to Beldock filing the appropriate forms, i.e., UCS-872 (Notice of Appointment and Certification of Compliance) and UCS-875 (Statement of Approval of Compensation), and the filing of an accounting, the total fees and commissions of Beldock is approved in the amount agreed to in the Stipulation; and it is further

ADJUDGED, subject to Beldock filing the appropriate forms, i.e., UCS-872 (Notice of Appointment and Certification of Compliance) and UCS-875 (Statement of Approval of Compensation), and the filing of an accounting, the expenses of Beldock are approved in the amount agreed to in the Stipulation; and it is further

ORDERED that Beldock serve a copy of this Decision, Order and Judgment, with notice of entry, on all parties.

This Constitutes the Decision, Order and Judgment of the Court.

Dated: November 23, 2004

ENTER:

_____
J.S.C.
**EMILY JANE GOODMAN**

MMLLC (Shaw) 000656