UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE MILTON H. GREENE ARCHIVES, INC., <br><br> Plaintiff, <br><br> v. <br><br> CMG WORLDWIDE, INC., an Indiana Corporation, and MARILYN MONROE, LLC, a Delaware Limited Liability Company, ANNA STRASBERG, an individual, <br><br> Defendants. <br><br> AND CONSOLIDATED ACTIONS | CASE NO. CV 05-02200 MMM (MCx) <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION |

Plaintiff Marilyn Monroe, LLC ("MMLLC") has moved under Local Rule 7-18 for reconsideration of the court's May 14, 2007 order holding that it has no standing to enforce Marilyn Monroe's posthumous right of publicity.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 25, 2005, The Milton H. Greene Archives, Inc. filed this action against CMG Worldwide Inc., Marilyn Monroe LLC, and Anna Strasberg.  On May 3, 2005, the court

consolidated the case with two other actions filed in this district – *Shirley De Dienes et al. v. CMG Worldwide, Inc. et al.* (CV 05-2516)[1] and *Tom Kelley Studio, Inc. v. CMG Worldwide, Inc. et al.* (CV 05-2568).[2] On December 14, 2005, the court consolidated two additional actions with the pending case – *CMG Worldwide, Inc., et al. v. Tom Kelley Studios* (CV 05-5973) and *CMG Worldwide, Inc., et al. v. The Milton H. Green Archives, Inc.* (CV 05-7627).[3] These actions were originally filed by CMG Worldwide, Inc. and Marilyn Monroe, LLC (the "CMG Parties" or "plaintiffs") in the United States District Court for the Southern District of Indiana, and were transferred to this district pursuant to 28 U.S.C. § 1404(a) on August 9, 2005.[4] All of the actions seek to have the court resolve competing claims to ownership of the legal right to use, license, and distribute certain photographs of Marilyn Monroe.

In their complaints against the Milton H. Green Archives, Inc. and Tom Kelley Studios, Inc. (the "MHG Parties" or "defendants"), the CMG Parties assert that they own the "Right of Publicity and Privacy in and to the Marilyn Monroe name, image, and persona" that was created by "the Indiana Right of Publicity Act, I.C. § 32-36-1-1 et seq., and other applicable right of publicity laws." The CMG Parties contend that defendants have infringed this right by using Marilyn Monroe's name, image and likeness "in connection with the sale, solicitation, promotion, and advertising of products, merchandise, goods and services" without their consent or authorization.[5]

On October 6, 2006, the MHG Parties filed a motion for summary judgment. They argued, *inter alia*, that plaintiffs' right of publicity claims were preempted by the Copyright Act, 28 U.S.C.

---

[1] The *De Dienes* action was dismissed without prejudice on February 2, 2006, pursuant to the parties' stipulation.

[2] Tom Kelley Studio, Inc. sued the same defendants as did The Milton H. Greene Archive, Inc. – CMG Worldwide Inc., Marilyn Monroe LLC, and Anna Strasberg.

[3] Anna Strasberg was not a party to the Indiana actions.

[4] On February 6, 2006, the court issued a scheduling order, which denominated the CMG Parties plaintiffs and the MHG Parties defendants for purposes of the consolidated actions. The court based this order on the fact that the CMG Parties' Indiana action was the first filed action.

[5] Plaintiffs' First Amended Complaint against Milton H. Greene Archives, Inc., ¶¶ 7, 24-26; Plaintiffs' First Amended Complaint against Tom Kelley Studios, Inc., ¶¶ 7, 28-30.

2

§§ 101-1332, and that, even if they were not preempted, plaintiffs had failed to adduce any evidence that they had standing to assert claims based on Marilyn Monroe's right of publicity.[6] In essence, defendants argued that, even if a posthumous right of publicity in Monroe's name, image and likeness exists, plaintiffs could not show that they were presently in possession of that right.[7]

On May 14, 2007, the court granted defendants' motion for summary judgment, concluding that plaintiffs lacked standing to assert Marilyn Monroe's right of publicity.[8] The court found that Marilyn Monroe could not have devised a non-statutory right of publicity through her will, and also could not have devised subsequently created statutory rights that did not come into existence until decades after her death. This conclusion was supported, in part, by the court's interpretation of the California right of publicity statute.[9] The court determined that under the statute, a deceased personality

---

[6] Defendants' Memorandum of Points and Authorities in Support of Their Motion for Summary Judgment ("Defs.' Mem.") at 32-34.

[7] Defendants also argue that (1) Marilyn Monroe was domiciled in New York at the time of her death, such that no right of publicity could survive her passing; (2) even if Marilyn Monroe was not a New York domiciliary at the time of her death, plaintiffs are collaterally and judicially estopped from asserting otherwise; (3) Indiana's right of publicity statute does not apply to Marilyn Monroe; and (4) plaintiffs' claims are barred by laches. Defendants' motion also challenged plaintiffs' copyright infringement claims (see *id.* at 43-47); those claims have since been dismissed without prejudice pursuant to the parties' stipulation.

[8] California created a descendible, posthumous right of publicity in 1984, with the passage of its post-mortem right of publicity statute. See CAL. CIVIL CODE § 3344.1 (formerly CAL. CIVIL CODE § 990). Before passage of this act, California recognized a common law right of publicity, but that right expired on an individual's death. See *Guglielmi v. Spelling-Goldberg Productions*, 25 Cal.3d 860, 861 (1979).

[9] The California statute provides, in pertinent part:
(a)(1) Any person who uses a deceased personality's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods, or services, without prior consent from the person or persons specified in subdivision (c), shall be liable for any damages sustained by the person or persons injured as a result thereof. . . .
(b) The rights recognized under this section are property rights, freely transferable, in whole or in part, by contract or by means of trust or testamentary documents, whether the transfer occurs before the death of the deceased personality, by the deceased personality or his or her transferees, or, after the death of the deceased personality, by the person or persons in whom the rights vest under this section or the transferees of that

3

who had died *before* the measure was enacted was deemed not to have had the capacity to transfer the subsequently created right of publicity, which was denominated a "property right[ ]" prior to death. See CAL. CIVIL CODE § 3344.1(b) (providing that a "deceased personality" may, "*before [his or her] death,*" transfer the statutory publicity right "by contract or by means of trust or testamentary documents," but that "after the death of the deceased personality," the statutory publicity right "vest[ed]" directly in specified statutory beneficiaries (emphasis added)). Given the clear common law prescription that a testator cannot devise property not owned at the time of death, and the presumption that the California legislature knew of this prescription, the court found that, as respects personalities who died before its enactment, the California right of publicity statute vested the posthumous publicity right in designated heirs rather than in the "personality" himself or herself. A review of the relevant legislative history confirmed this construction of the statute. Because the California right of publicity statute did not reveal a legislative intent that was contrary to general principles of property and probate law, the court held that plaintiffs could not show that they were entitled to assert Marilyn Monroe's posthumous right of publicity.

The court, however, reached this conclusion with reluctance because some personalities who died before passage of the California and Indiana right of publicity statutes had left their residuary estates to charities. These charities had, since the California statute was enacted in 1984, assumed that they controlled the personality's right of publicity, and it appeared that they would be "divested" of the celebrities' posthumous rights of publicity as a result of the court's order. The court therefore noted that its ruling in no way prevented the California or Indiana legislature from enacting a right of publicity

---

person or persons.
(c) The consent required by this section shall be exercisable by the person or persons to whom the right of consent, or portion thereof, has been transferred in accordance with subdivision (b), or if no transfer has occurred, then by the person or persons to whom the right of consent, or portion thereof, has passed in accordance with subdivision (d).
(d) Subject to subdivisions (b) and (c), after the death of any person, the rights under this section shall belong to the following person or persons and may be exercised, on behalf of and for the benefit of all of those persons, by those persons who, in the aggregate, are entitled to more than a one-half interest in the rights: [the surviving spouse and surviving children or grandchildren, or the surviving parents of the deceased personality]." CAL. CIVIL CODE § 3344.1.

statute that vested the right directly in the residuary beneficiaries of a deceased personality's estate, or in the successors-in-interest of those residuary beneficiaries.

On November 21, 2007, plaintiff MMLLC filed a motion for reconsideration of the court's order. MMLLC bases its motion on the fact that, six weeks after the order was entered, California State Senator Sheila Kuehl amended Senate Bill 771 ("SB 771") to abrogate the court's ruling and clarify the meaning of California's right of publicity statute.[10] SB 771 passed both houses of the California Legislature in September 2007, and was signed by Governor Schwarzenegger on October 10, 2007.[11]

Based on this newly enacted measure, MMLLC seeks reconsideration of the court's conclusions (1) that "under either California or New York law, Marilyn Monroe had no testamentary capacity to devise, through the residual clause of her will, statutory rights of publicity that were not created until decades after her death"; (2) that alternatively, even if Marilyn Monroe's estate was open at the time the statutory rights of publicity were created, it "was not [an] entity capable of holding title to the rights"; and (3) that MMLLC and CMG have "no standing to assert the publicity rights they seek to enforce in this action."[12]

## II. DISCUSSION

### A. Consideration of the Motion for Reconsideration

Local Rule 7-18 limits the grounds upon which a party may seek reconsideration of the court's decision on a given motion. Under Local Rule 7-18, a motion for reconsideration is proper only where the moving party demonstrates:

> "(a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of

---

[10] Memorandum of Points and Authorities in Support of Marilyn Monroe, LLC's Motion for Reconsideration of the Court's May 14, 2007 Order Granting Summary Judgment ("Pl.'s Mem.") at 1.

[11] Id. at 4; Declaration of Laura A. Wytsma Filed in Support of Marilyn Monroe, LLC's Motion for Reconsideration ("Wytsma Decl."), Exhs. F, G, H.

[12] Pl.'s Mem. at 12.

5

new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision." CA CD L.R. 7-18.

MMLLC does not identify the basis on which it seeks Rule 7-18 reconsideration. Presumably, however, it asserts that the legislature's attempt to clarify Civil Code § 3344.1 is "a material difference in fact or law" that could not have been presented to the court prior to its decision of the original motion, or that the passage of the bill constitutes "the emergence of new material facts or a change of law" post-dating the decision. See CA CD L.R. 7-18.

### B.   SB 771's Purported Clarification of the Right of Publicity Statute

#### 1.   The Legislative History of SB 771

The legislative history[13] of SB 771 indicates that the measure was intended to respond to the court's May 14, 2007 summary judgment order, as well as a recent decision by a court in the Southern District of New York,[14] and to clarify existing law with respect to protection of a deceased personality's publicity rights. See SENATE JUDICIARY COMMITTEE BILL ANALYSIS at 1 (S.B. 771 Sept. 6, 2007). The bill states that all celebrities who died within seventy years of January 1, 1985 (the effective date of § 3344.1) have a posthumous right of publicity that is deemed to have existed at the time of their death. It explains that, in the absence of an express provision in a will or other testamentary instrument that

---

[13]Under Rule 201 of the Federal Rules of Evidence, the court may take judicial notice of the legislative history of state statutes. See, e.g., *Chaker v. Crogan*, 428 F.3d 1215, 1223 n. 8 (9th Cir. 2005) (granting plaintiff's request to take judicial notice of the legislative history of a state statute); see also *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (explaining that a court may judicially notice undisputed matters of public record but not disputed facts stated therein).

[14]*Shaw Family Archives Ltd. v. CMG Worldwide, Inc.*, 486 F.Supp.2d 309 (S.D.N.Y. 2007), is an action similar to this one that CMG and MMLLC filed in Indiana against the family archives of a photographer of Marilyn Monroe. *Id.* at 312-13. The case was transferred to the Southern District of New York by a court in the Southern District of Indiana after the Shaw Family Archives filed suit in New York seeking a declaratory judgment regarding Marilyn Monroe's post-mortem right of privacy or publicity. *Id.* at 310-11. On May 7, 2007, the New York court granted summary judgment in favor of plaintiff on MMLLC's claim that plaintiff had violated Marilyn Monroe's right of publicity. *Id.* at 320. Like this court in its May 14, 2007 order, the *Shaw* court determined that Marilyn Monroe could not devise a right of publicity she did not possess at that time of her death, and also that California's right of publicity statute did not allow for transfer of the right of publicity through the will of a personality who had died prior to the statute's enactment. *Id.* at 319-20.

6

transfers the publicity right of a deceased personality, "disposition of the publicity right[ ] would be in accordance with the disposition of the residue of the deceased personality's assets." *Id.* Finally, the bill clarifies that publicity rights recognized in § 3344.1 are "freely transferable or descendible by contract, trust, or any other testamentary instrument by any subsequent owner of the deceased personality's publicity rights." *Id.*

Committee reports on the bill indicate that Senator Kuehl, the bill's sponsor, believed that the court erred in ruling that Marilyn Monroe did not possess a statutory right of publicity when she died and thus that the right could not pass to the residuary beneficiary under her will. *Id.* at 4. Senator Kuehl asserted that passage of SB 771 was necessary to clarify that in enacting § 3344.1, the legislature intended "to create post-mortem publicity rights for celebrities, to extend those rights back to 50 years from the date the statute became effective[15] and to enable the transfer of such publicity rights to the deceased personality's designated beneficiaries."[16] *Id.*

### 2. Amended Text of § 3344.1

In relevant part, SB 771 amends § 3344.1(b) to provide:

"The rights recognized under this section are property rights, freely transferable or descendible, in whole or in part, by contract or by means of any trust or any other testamentary instrument, executed before or after January 1, 1985. The rights recognized

---

[15] A 1999 amendment to the statute extends publicity rights back seventy years from the date of the law's enactment. See 1999 Cal. Stat. ch. 998 (S.B. 209).

[16] The Senate Judiciary Committee analysis indicates that SB 771 was intended to clarify § 3344.1 in the following ways:
"a)   It would provide that the 3344.1 rights of publicity are property rights that are deemed to have existed at the time of death of any deceased personality who died prior to or after January 1, 1985.
b)   It would provide that these rights are therefore transferable or descendible by contract, trust, or other testamentary instrument.
c)   If the rights were not expressly transferred under a provision of the deceased personality's will or other testamentary instrument, the rights are to be disposed under the residue provision of the testamentary instrument.
d)   The rights established by this statute are freely transferable and descendible by contract, trust, or other testamentary instrument by any subsequent owner of these rights." See SENATE JUDICIARY COMMITTEE BILL ANALYSIS at 5.

under this section shall be deemed to have existed at the time of death of any deceased personality who died prior to January 1, 1985, and, except as provided in subdivision (o), shall vest in the persons entitled to these property rights under the testamentary instrument of the deceased personality effective as of the date of his or her death. In the absence of an express transfer in a testamentary instrument of the deceased personality's rights in his or her name, voice, signature, photograph, or likeness, a provision in the testamentary instrument that provides for the disposition of the residue of the deceased personality's assets shall be effective to transfer the rights recognized under this section in accordance with the terms of that provision. The rights established by this section shall also be freely transferable or descendible by contract, trust, or any other testamentary instrument by any subsequent owner of the deceased personality's rights as recognized by this section. Nothing in this section shall be construed to render invalid or unenforceable any contract entered into by a deceased personality during his or her lifetime by which the deceased personality assigned the rights, in whole or in part, to use his or her name, voice, signature, photograph or likeness, regardless of whether the contract was entered into before or after January 1, 1985." 2007 Cal. Stat. ch. 439 (S.B. 771).

Newly added subsection (o) provides an exception to subsection (b) for parties who exercised posthumous rights of publicity under the pre-amendment version of § 3344.1. Subsection (o) provides:

"(o) Notwithstanding any provision of this section to the contrary, if an action was taken prior to May 1, 2007, to exercise rights recognized under this section relating to a deceased personality who died prior to January 1, 1985, by a person described in subdivision (d), other than a person who was disinherited by the deceased personality in a testamentary instrument, and the exercise of those rights was not challenged successfully in a court action by a person described in subdivision (b), that exercise shall not be affected by subdivision (b). In such a case, the rights that would otherwise vest in one or more persons described in subdivision (b) shall vest solely in the person or persons described in subdivision (d), other than a person disinherited by the deceased

personality in a testamentary instrument, for all future purposes." *Id.*

Finally, a new subsection (p) provides:

"(p) The rights recognized by this section are expressly made retroactive, including to those deceased personalities who died before January 1, 1985." *Id.*

SB 771 expressly states that "[i]t is the intent of the Legislature to abrogate the summary judgment orders entered in The Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc., United States District Court, Central District of California, Case No. CV 05-2200 MMM (Mcx), filed May 14, 2007, and in Shaw Family Archives Ltd. v. CMG Worldwide, Inc., United States District Court, Southern District of New York, Case No. 05 Civ. 3939 (CM), dated May 2, 2007." *Id.*

### C. Whether the Court Should Reconsider its Order in Light of SB 771

#### 1. Standard for Determining When a Statute is a Legislative Clarification of an Existing Law

As a first step, the court must determine the effect on this case of the legislature's enactment of SB 771. It is a basic canon of statutory construction that "statutes do not operate retrospectively unless the Legislature plainly intended them to do so." *Western Security Bank, N.A. v. Superior Court*, 15 Cal.4th 232, 243 (1997) (citing *Evangelatos v. Superior Court*, 44 Cal.3d 1188, 1207-1208 (1988), and *Aetna Cas. & Surety Co. v. Ind. Acc. Com.*, 30 Cal.2d 388, 393 (1947)); see also *Immigration and Naturalization Service v. St. Cyr*, 533 U.S. 289, 316 (2001) ("Despite the dangers inherent in retroactive legislation, it is beyond dispute that, within constitutional limits, Congress has the power to enact laws with retrospective effect").

"A statute has retrospective effect when it substantially changes the legal consequences of past events." *Western Security Bank*, 44 Cal.3d at 243 (citing *Kizer v. Hanna*, 48 Cal.3d 1, 7 (1989)). "A statute does not operate retrospectively simply because its application depends on facts or conditions existing before its enactment." *Id.* When the legislature clearly intends a statute to operate retrospectively, the court is obligated to carry out that intent unless due process considerations prevent it from doing so. *Id.* (citing *In re Marriage of Bouquet*, 16 Cal.3d 583, 587, 592 (1976)).

"A corollary to these rules is that a statute that merely *clarifies*, rather than changes, existing law does not operate retrospectively even if applied to transactions predating its enactment." *Id.* (emphasis

9

1  original). A clarifying statute "'may be applied to transactions predating its enactment without being
2  considered retroactive' because it 'is merely a statement of what the law has always been.'" *In re*
3  *Marriage of Fellows*, 39 Cal.4th 179, 183 (2006) (quoting *Riley v. Hilton Hotels Corp.*, 100 Cal.App.4th
4  599, 603 (2002)); *Western Security Bank*, 44 Cal.3d at 243 ("Such a legislative act has no retrospective
5  effect because the true meaning of the statute remains the same" (citations omitted)); *Re-Open Rambla,*
6  *Inc. v. Bd. of Supervisors*, 39 Cal.App.4th 1499, 1511 (1995) ("[W]e honor the well-established precept
7  that '... the enactment of a statute or an amendment to a statute for the purpose of clarifying preexisting
8  law or making express the original legislative intent is not considered a change in the law; ... it simply
9  states the law as it was all the time, and no question of retroactive application is involved,'" quoting *City*
10 *of Redlands v. Sorensen*, 176 Cal.App.3d 202, 211 (1985)); see also *Valles v. Ivy Hill Corp.*, 410 F.3d
11 1071, 1079 (9th Cir. 2005).
12         In determining whether a statute seeks to clarify existing law or constitutes a new measure, the
13 court considers the circumstances surrounding the legislature's change to the statute to ascertain whether
14 its sole intent is to clarify existing law. *Western Security Bank*, 44 Cal.3d at 243 (citations omitted);
15 *Kern v. County of Imperial*, 226 Cal.App.3d 391, 400 (1990) ("The legislative history of a statute and
16 the wider historical circumstances of its enactment are legitimate and valuable aids in divining statutory
17 purpose" (citation omitted)). One circumstance that may be relevant to the court's analysis is whether
18 the legislature's changes are a prompt reaction "to the emergence of a novel question of statutory
19 interpretation." *Id.* ("'An amendment which in effect construes and clarifies a prior statute must be
20 accepted as the legislative declaration of the meaning of the original act, where the amendment was
21 adopted soon after the controversy arose concerning the proper interpretation of the statute. ... [¶] If
22 the amendment was enacted soon after controversies arose as to the interpretation of the original act,
23 it is logical to regard the amendment as a legislative interpretation of the original act – a formal change
24 – rebutting the presumption of substantial change,'" quoting *RN Review for Nurses, Inc. v. State of*
25 *California*, 23 Cal.App.4th 120, 125 (1994) (quoting 1A Singer, SUTHERLAND STATUTORY
26 CONSTRUCTION (5th ed. 1993) § 22.31))).
27         The California Supreme Court has recognized, however, that even where a statute purports to
28 clarify the original meaning of the act, "a legislative declaration of an existing statute's meaning is

10

neither binding nor conclusive in construing the statute." *Id.* at 244. While such a declaration is given due consideration, "[u]ltimately, the interpretation of a statute is an exercise of the judicial power the Constitution assigns to the courts." *Id.* (citing *California Emp. etc. Com. v. Payne*, 31 Cal.2d 210, 213 (1947), *Bodinson Mfg. Co. v. California E. Com.*, 17 Cal.2d 321, 326 (1941), and *Del Costello v. State of California*, 135 Cal.App.3d 887, 893 n. 8 (1982)); see *Alch v. Superior Court*, 122 Cal.App.4th 339, 398 (2004). Thus, "[w]hen [the state's highest court] 'finally and definitively' interprets a statute, the Legislature does not have the power to then state that a later amendment merely declared existing law." *Carter v. California Dep't of Veterans Affairs*, 38 Cal.4th 914, 922 (2006). Indeed, "there is little logic and some incongruity in the notion that one Legislature may speak authoritatively on the intent of an earlier Legislature's enactment when a gulf of decades separates the two bodies." *Western Security Bank*, 15 Cal.4th at 244; see also *Peralta Community College Dist. v. Fair Employment & Housing Com.*, 52 Cal.3d 40, 52 (1990) ("The declaration of a later Legislature is of little weight in determining the relevant intent of the Legislature that enacted the law" (citation omitted)).

"[E]ven [in cases where] the court does not accept the Legislature's assurance that an unmistakable change in the law is merely a 'clarification,' the declaration of intent may still effectively reflect the Legislature's purpose to achieve a retrospective change." *Western Security Bank*, 15 Cal.4th at 244 (citing *California Emp. etc. Com.*, 31 Cal.2d at 214). "Whether a statute should apply retrospectively or only prospectively is, in the first instance, a policy question for the legislative body enacting the statute." *Id.* (citing *Evangelatos*, 44 Cal.3d at 1206). Ordinarily, "[t]he presumption of prospectivity assures that reasonable reliance on current legal principles will not be defeated in the absence of a clear indication of a legislative intent to override such reliance." *Evangelatos*, 44 Cal.3d at 1214; see also CAL. CIVIL CODE § 3 ("No part of [the civil code] is retroactive, unless expressly so declared"). "Thus, where a statute provides that it clarifies or declares existing law, '[i]t is obvious that such a provision is indicative of a legislative intent that the amendment apply to all existing causes of action from the date of its enactment. In accordance with the general rules of statutory construction, we must give effect to this intention unless there is some constitutional objection thereto.'" *Western Security Bank*, 15 Cal.4th at 244 (quoting *California Emp. etc. Com.*, 31 Cal.2d at 214, and citing *City of Sacramento v. Public Employees' Ret. Sys.*, 22 Cal.App.4th 786, 798 (1994); *City of Redlands v.*

*Sorensen*, 176 Cal.App.3d 202, 211 (1985)).

### 2. MMLLC's Arguments in Favor of Reconsideration

Applying these principles, MMLLC argues that SB 771 clarifies the law in two ways that warrant reconsideration of the court's order granting summary judgment. First, it notes that SB 771 clarifies that "post-mortem publicity rights in California 'shall be deemed to have existed at the time of death of any person who died prior to January 1, 1985.'"[17] MMLLC contends this provision makes clear that, in enacting § 3344.1, the legislature intended that a celebrity who died prior to the bill's passage would be deemed to have held the right of publicity at the time of death, such that the right could pass through the residuary clause of his or her will. Such an intent may be gleaned, MMLLC asserts, from the fact that § 3344.1 "always" defined a "deceased personality" as any person who died within 70 years of January 1, 1985.[18] MMLLC also cites Senator Kuehl's remark that "[t]here is nothing in the statute that indicates the Legislature intended to treat people differently depending on whether they died before or after 1985."[19] It contends that this statement of intent by the bill's sponsor should be given "due consideration by the court."[20] See *Kern*, 226 Cal.App.3d at 401 ("The statements of the sponsor of legislation are entitled to be considered in determining the import of the legislation" (citations omitted)).

MMLLC next asserts that SB 771 clarifies that "'the property right to use a deceased personality's name, voice, signature, photograph or likeness in a commercial product is freely descendible by means of trust or any other testamentary instrument executed before or after January 1, 1985.'"[21] The legislative history of SB 771 indicates that "in the absence of an express [t]ransfer of these rights, a provision in the will or other testamentary instrument that provides for the disposition of

---

[17] Pl.'s Mem. at 6 (citing SB 771).

[18] *Id.*

[19] *Id.* (citing SENATE JUDICIARY COMMITTEE BILL ANALYSIS at 5).

[20] *Id.* at 8.

[21] *Id.* at 7; Wytsma Decl., Exh. K (Analysis of SB 771 by Office of Senate Floor Analyses, Senate Rules Committee (prepared for Sept. 7, 2007 Senate floor vote) at 2).

12

1  the residue of the deceased personality's assets is effective to transfer them."[22]  The stated legislative
2  purpose of this amendment is not to "change[ ] existing law, but, rather . . . [to] clarif[y] it in order to
3  prevent needless litigation."[23]

4      MMLLC notes that the legislature acted swiftly to address a perceived judicial error in statutory
5  interpretation.[24] It argues that because SB 771 was introduced, passed, and signed into law within five
6  months of the court's order, the court should honor the legislature's statement that it was acting to
7  clarify existing law.[25] See *Western Security Bank*, 15 Cal.4th at 246 ("If the Legislature acts promptly
8  to correct a perceived problem with a judicial construction of a statute, the courts generally give the
9  Legislature's action its intended effect"). This is particularly true, MMLLC asserts, because the
10 legislature expressly stated, both in the legislative history of SB 771 and in the text of the bill, that it
11 intended to abrogate the court's May 14, 2007 order.[26] See 2007 Cal. Stat. ch. 439 (SB 771); SENATE
12 JUDICIARY COMMITTEE BILL ANALYSIS at 6.

13     That there is a direct link between the court's May 14, 2007 decision and SB 771 is highlighted
14 by the fact that the Senate Judiciary Committee's analysis specifically describes how *Marilyn Monroe's*
15 right of publicity would be transferred under the clarified scheme, i.e., that Monroe's posthumous right
16 of publicity would be deemed to have passed to Lee Strasberg as part of her residuary estate, that Lee
17 Strasberg would be deemed to have transferred the right by will to his wife, Anna Strasberg, thus
18 entitling Anna Strasberg to transfer the right to MMLLC. The bill analysis also references the CMG
19 Parties, observing that, after receiving the rights from Anna Strasberg, MMLLC "licensed CMG to use
20 the images and likenesses of Marilyn Monroe." See SENATE JUDICIARY COMMITTEE BILL ANALYSIS
21 at 6. As this aspect of the legislative history underscores, the legislature not only attempted to abrogate

---

[22] Wytsma Decl., Exh. K (Analysis of SB 771 by Office of Senate Floor Analyses, Senate Rules Committee (prepared for Sept. 7, 2007 Senate floor vote) at 5).

[23] *Id.*

[24] Pl.'s Mem. at 8.

[25] *Id.* at 8-9.

[26] *Id.* at 9.

13

the court's interpretation of § 3344.1, but to delineate how the statute should be applied in this case.

### 3. SB 771 is a Clarification of Existing Law

While recognizing the legislature's clearly expressed intent to abrogate the court's summary judgment order and vest Marilyn Monroe's right of publicity in MMLLC, the court is cognizant that interpretation of statutes is a judicial function. See *People v. Cruz*, 13 Cal.4th 764, 780 (1996) ("[T]he interpretation of law is a judicial function"). Even when the legislature declares that an amendment merely clarifies the meaning of a preexisting statute, its declaration is not dispositive. *Id.* at 781. Rather, "[b]ecause the determination of the meaning of statutes is a judicial function, a court, faced with the question of determining the scope of the earlier version, still must ascertain from all the pertinent circumstances and considerations whether the subsequent amendment actually constitutes a modification or instead a clarification of the preexisting provision." *Id.* (citing *Peralta Community College Dist.*, 52 Cal.3d at 52; *Harris v. Capital Growth Investors XIV*, 52 Cal.3d 1142, 1158 (1991) (noting that subsequent legislative declarations are not binding as to the intent of the Legislature that enacted the statute, and observing that the Legislature has no authority to interpret a statute)).

Applying the guidelines for statutory construction established by the California Supreme Court, however, the court is persuaded that SB 771 is a clarification of existing law. First, it is significant that the meaning of § 3344.1 has never been "finally and definitively" interpreted by the state's highest court. See *Carter*, 38 Cal.4th at 922. "'[I]f the courts have not yet finally and conclusively interpreted a statute and are in the process of doing so, a declaration of a later Legislature as to what an earlier Legislature intended is entitled to consideration.'" *Id.* (quoting *McClung v. Employment Development Dept.*, 34 Cal.4th 467, 473 (2004)). As noted in the May 14, 2007 order, in construing § 3344.1, the court lacked guidance from a higher court. As a result, it looked to the language of the statute itself, the common law background against which it was enacted, and the measure's legislative history. Under these circumstances, the legislature's attempted clarification of the statute is entitled to due consideration.

It is also significant that the legislature explicitly stated that it was clarifying existing law. In interpreting a statute, a California court must determine legislative intent so as to effectuate the

14

purpose of the law. See, e.g., *Cruz*, 13 Cal.4th at 775. "'In order to determine this intent, [the court] begin[s] by examining the language of the statute.'" *Id.* (quoting *People v. Pieters*, 52 Cal.3d 894, 898 (1991)). Generally, if the statute's language is "'without ambiguity, doubt, or uncertainty, then the language controls.'" *Herman v. Los Angeles County Metropolitan Transportation Authority*, 71 Cal.App.4th 819, 825 (1999) (quoting *Halbert's Lumber, Inc. v. Lucky Stores, Inc.*, 6 Cal.App.4th 1233, 1239 (1992)). The California Supreme Court has held, however, that even if the plain meaning of a statute is clear, a court may nonetheless inquire whether the "literal meaning of [the] statute comports with its purpose." *Lungren v. Deukmejian*, 45 Cal.3d 727, 729 (1988) ("[T]he 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. . . . Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act"). To ascertain legislative intent, the court looks to "the history of the statute, committee reports, and staff bill reports." *DeCastro West Chodorow & Burns, Inc. v. Superior Court*, 47 Cal.App.4th 410, 411 (1996).

As MMLLC notes, the legislative history of SB 771 contains numerous statements that "[t]he bill would clarify" the meaning of the existing law protecting a deceased personality's right of publicity.[27] See, e.g., SENATE JUDICIARY COMMITTEE BILL ANALYSIS at 3 ("SB 771 intends to clarify the Legislature's intent to make the protections under 3344.1 of the Civil Code applicable to deceased personalities who died between January 1, 1915 and January 1, 1985, the 70 year period of protection under the statute"); *id.* at 4 ("The author states this bill is necessary to clarify the Legislature's intent, when it enacted Civil Code 3344.1 (then 990 of the Civil Code) in 1984 to create post-mortem publicity rights for celebrities, to extend those rights back to 50 years from the date the statute became effective and to enable the transfer of such publicity rights to the deceased personality's designated beneficiaries"); *id.* at 5 ("SB 771 would indeed clarify 3344.1 in several ways").

These expressions of intent are indicative of the legislature's purpose in enacting SB 771. See

---

[27] Pl.'s Mem. at 5-7.

*Valles*, 410 F.3d at 1080 ("In this case, the California legislature made clear that in its view the amendment constituted a clarification and not a substantive change"); *Western Security Bank*, 15 Cal.4th at 238 ("The Legislature soon acted to express a clear, contrary intent. It passed Senate Bill No. 1612 (1993-1994 Reg. Sess.) . . . as an urgency measure specifically meant to abrogate the Court of Appeal's holding"); *Salazar*, 117 Cal.App.4th at 324 (noting that "AB 76 also includes the following declaration of legislative intent: 'It is the intent of the Legislature in enacting this act to construe and clarify the meaning and effect of existing law and to reject the interpretation given to the law in [the court's prior decision]'"); *Kern*, 226 Cal.App.3d at 401 (noting that "it is clear the intent of the sponsor of the bill was to clarify existing law and remove any ambiguity to specific fact situations, one of which was the type of transfer which is the subject of this lawsuit"). Compare *Fonseca v. City of Gilroy*, 148 Cal.App.4th 1174, 1197 (2007) ("[P]articularly when there is no definitive 'clarifying' expression by the Legislature in the amendments themselves, we will presume that a substantial or material statutory change, as occurred here by the addition of section 65583 alone, bespeaks legislative intention to change, and not just clarify, the law," citing *Reidy v. City and County of San Francisco*, 123 Cal.App.4th 580, 592 (2004), and *Garrett v. Young*, 109 Cal.App.4th 1393, 1404-05 (2003)).

Furthermore, SB 771 was enacted shortly after the court entered an order interpreting § 3344.1. Senator Kuehl amended SB 771 to address § 3344.1 in June 2007, after the court entered its May 14, 2007 order construing the statute.[28] As amended, the measure passed in the Assembly without a single negative vote on September 4, 2007; on September 7, 2007, the Senate also approved the bill, again without a negative vote.[29] On October 10, 2007, just five months after the court entered a final order, Governor Schwarzenegger signed the bill into law.[30] "'[W]here [an] amendment [is] adopted soon after [a] controversy arose concerning the proper interpretation of the statute,'" the court should generally construe it as a "'legislative declaration of the meaning of the original act.'" *Western Security Bank*,

---

[28] Wytsma Decl., Exh. F.

[29] *Id.*, Exh. G.

[30] *Id.*, Exh. H.

16

15 Cal.4th at 243 (quoting *RN Review for Nurses, Inc.*, 23 Cal.App.4th at 125).[31] That this was the legislature's intent in the present case is also evident from statements by the bill's author that the bill was intended to abrogate the court's order. See 2007 Cal. Stat. ch. 439 (SB 771), § 2. Given the legislature's clear statement that SB 771 was meant to clarify existing law, the court must give it "due consideration," *Western Security Bank*, 15 Cal.4th at 244, and examine whether "all the pertinent circumstances and considerations" support the legislature's declaration, see *Cruz*, 13 Cal.4th at 781; see also *Fonseca*, 148 Cal.App.4th at 1197.

One relevant factor in assessing whether a bill is a clarification rather than a modification of existing law is whether the measure as originally enacted was clear or contained some ambiguity. See *In re Marriage of McClellan*, 130 Cal.App.4th 247, 257 (2005) (noting that the legislature "indicates an intent to merely clarify existing law where . . . it amends a statute to resolve ambiguity in the existing law"); *Kern*, 226 Cal.App.3d at 401 (holding that an amendment clarified existing law, *inter alia*, because the sponsor intended to "remove any ambiguity to specific fact situations"); see also *Tyler v. State of California*, 134 Cal.App.3d 973, 977 (1982) (concluding that a statute clarified existing law where it was enacted in response to "confusion" created by a court decision).

Subsection (h) of § 3344.1 states that the term "'deceased personality' . . . include[s], without limitation, any . . . natural person who . . . died within 70 years prior to January 1, 1985." CAL. CIVIL CODE § 3344.1(h). Because the statute was passed in 1984 and took effect on January 1, 1985, at the time it became law the only individuals whose rights it impacted were celebrities who were already deceased. The legislative history of the statute shows, in fact, that it was enacted to protect the names,

---

[31]Defendants argue it is incongruous for the 2007 legislature to declare the intent of the 1984 legislature. (See Defs.' Opp. at 9-11). As noted earlier, courts have recognized that "there is little logic and some incongruity in the notion that one Legislature may speak authoritatively on the intent of an earlier Legislature's enactment when a gulf of decades separates the two bodies." See *Western Security Bank*, 15 Cal.4th at 244; see also *Salazar*, 117 Cal.App.4th at 333 (Kitching, J., dissenting) ("The length of time between the 1984 amendment and the 2003 amendment suggests that the Legislature's declaration of its earlier intent should be disregarded"). Although acknowledging this, the California Supreme Court has nonetheless instructed that "the Legislature's expressed views on the prior import of its statutes are entitled to due consideration, and we cannot disregard them." *Western Security Bank*, 15 Cal.4th at 244; see *Salazar*, 117 Cal.App.4th at 328 (holding that the 2003 legislature properly clarified a 1984 law); *Carter*, 38 Cal.4th at 930 (affirming *Salazar*'s determination that a law was a clarification of a prior statute despite the fact that nearly twenty years had elapsed).

17

images and likenesses of deceased celebrities such as Elvis Presley, John Wayne, and W.C. Fields.

Subsection (b) provides that "[t]he rights recognized under this section are property rights, freely transferable, in whole or in part, by contract or by means of trust or testamentary documents, whether the transfer occurs before the death of the deceased personality, by the deceased personality or his or her transferees, or, after the death of the deceased personality, by the person or persons in whom the rights vest under this section or the transferees of that person or persons." *Id.*, § 3344.1(b). Subsection (e) provides that "[i]f any deceased personality does not transfer his or her rights under this section by contract, or by means of a trust or testamentary document, and there are no surviving persons as described in subdivision (d), then the rights set forth in subdivision (a) shall terminate." *Id.*, § 3344.1(e).

The court earlier concluded that, because a deceased person cannot transfer a property right that she does not own at the time of death, subsection (b) meant that the publicity right of a predeceased celebrity automatically vested in the statutorily designated heirs. This interpretation flowed directly from the language of subsection (b), which distinguished between transfers that occurred "before the death of the deceased personality" and transfers that occurred "after the death of the deceased personality." The statute provided that transfers occurring "before the death of the deceased personality" were to be made "by the deceased personality or his or her transferees," while transfers occurring "after the death of the deceased personality" were to be made by "the person or persons in whom the rights vest under this section or the transferees of that person or persons."

MMLLC now argues that the definition of "deceased personality" found in subsection (h) injects ambiguity into the language of subsection (b), which states that a "deceased personality" can transfer the right before his or her death. Since subsection (h) defines "deceased personality" as an individual who died within 70 years of January 1, 1985, and since the bill did not take effect until that date, MMLLC contends that the legislature must have contemplated that celebrities who predeceased the enactment would be deemed to have held the right before their death and to have had the ability to transfer it via a residual clause in their will. It is to this possible ambiguity that SB 771 speaks. The bill makes explicit what was at best implicit, and at worst ambiguous, in the original version of § 3344.1 – i.e., that "[t]he rights recognized under this section shall be deemed to have existed at the time of death of any deceased personality who died prior to January 1, 1985. . . ."

18

The need for clarification is also supported by the fact that there was confusion in the marketplace as to the operation of the statute. As the court acknowledged in the May 14, 2007 order, some celebrities who died before § 3344.1 was passed in 1985 left their residuary estates to specified charities. Albert Einstein's statutory right of publicity, for instance, is registered to the Hebrew University of Jerusalem, a university co-founded by Einstein, who died in 1955. Similarly, the legislative history of SB 771 indicates that Wayne Enterprises, of which John Wayne's son is the president, is able to support the John Wayne Cancer Foundation and the John Wayne Cancer Institute through use of John Wayne's name and likeness. See SENATE JUDICIARY COMMITTEE BILL ANALYSIS at 9. The legislative history reports that many other "worthwhile causes and charitable institutions" are supported by exploitation of the publicity rights of deceased personalities such as Joan Crawford, Mae West, Edith Head, Janis Joplin, Alfred Hitchcock, Glenn Miller, Ozzie Nelson, Groucho Marx, and Bela Lugosi. *Id.* These charities evidently perceive that although the celebrity whose right of publicity they hold died before 1985, he or she was deemed to have transferred the right pursuant to § 3344.1. The charities and organizations have apparently relied on this and acted accordingly.

It is appropriate for the legislature to clarify the law to protect such expectations. See *Western Security Bank*, 15 Cal.4th at 245-46 ("The Legislature's unmistakable focus was the disruptive effect of the Court of Appeal's decision on the expectations of parties to transactions where a letter of credit was issued in connection with a loan secured by real property. By abrogating the Court of Appeal's decision, the Legislature intended to protect those parties' expectations and restore certainty and stability to those transactions. If the Legislature acts promptly to correct a perceived problem with a judicial construction of a statute, the courts generally give the Legislature's action its intended effect," citing *Escalante v. City of Hermosa Beach*, 195 Cal.App.3d 1009, 1020 (1987), *City of Redlands v. Sorensen*, 176 Cal.App.3d 202, 211-12 (1985), and *Tyler v. State of California*, 134 Cal.App.3d 973, 976-977 (1982)).

Defendants argue that SB 771 is not a clarification because it substantially changes prior law.[32] As noted, SB 771 rewords subsection (b) of § 3344.1 to provide that a deceased personality's right of

---

[32]Defs.' Opp. at 8.

Case 1:05-cv-03939-CM   Document 181-60   Filed 02/12/2008   Page 20 of 20

Case 2:05-cv-02200-MMM-E   Document 369   Filed 01/07/2008   Page 20 of 39

publicity is deemed to have been in existence at the time of the celebrity's death, and to have been transferrable either through an express testamentary disposition or through the residual clause of the celebrity's will. 2007 Cal. Stat. ch. 439 (S.B. 771), § 3344.1(b). Recognizing that this intent was not necessarily apparent in § 3344.1 as originally drafted, and that the statute has potentially been misinterpreted by the public, SB 771 includes a savings provision as subsection (o). This subsection states that statutory heirs who, prior to May 1, 2007, "took action" to exercise a deceased celebrity's right of publicity, and whose "action" was not successfully challenged by a residuary beneficiary in court, continue to hold the right of publicity unless they were expressly disinherited by the deceased celebrity in a testamentary instrument. *Id.*, § 3344.1(o). The legislature also provided that "[t]he rights recognized [in the statute] are expressly made retroactive . . . to . . . deceased personalities who died before January 1, 1985." *Id.*, § 3344.1(p).

While it is true that SB 771 makes material changes to the right of publicity statute, the court need not view the changes as modifications given the potential ambiguity in the original version of § 3344.1. Under certain circumstances, "the Legislature may make material changes in language in an effort to clarify existing law." *Carter*, 38 Cal.4th at 929 (citing *Western Security Bank*, 15 Cal.4th at 243 (holding that a change was a clarification of existing law despite the addition of two sections by amendment); *Plotkin v. Sajahtera, Inc.*, 106 Cal.App.4th 953, 961 n. 3 (2003) ("The amendment's substantial narrowing of the definition of 'vehicle parking facility' does not necessarily preclude a finding that it merely clarifies, rather than changes, existing law"); see also *In re Angelique C.*, 113 Cal.App.4th 509, 518 (2003) (addressing the legislature's action to clarify law in response to *Renee v. Superior Court*, 26 Cal.4th 735 (2001)).

Additionally, "'the Legislature may choose to state all applicable legal principles in a statute rather than leave some to even a predictable judicial decision.'" *Id.* (quoting *Reno v. Baird*, 18 Cal.4th 640, 658 (1998)). Thus, SB 771 does not contain surplusage or create new law simply because it confirms that the right of publicity created by § 3344.1 is deemed to have existed at the time a predeceased celebrity died; sets forth the manner in which the right of publicity can be transferred; and declares that the rights recognized by § 3344.1 are retroactive to celebrities who died before January 1, 1985. "'Rather, [the provisions are statements that] may eliminate potential confusion and avoid the