UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SHAW FAMILY ARCHIVES, LTD., EDITH
MARCUS and META STEVENS,

                        Plaintiffs,        Index No. 05 CV 3939 (CM)

      -against-                       Hon. Colleen McMahon

CMG WORLDWIDE, INC., an Indiana Corporation
and MARILYN MONROE, LLC, a Delaware
Limited Liability Company,

                        Defendants.
------------------------------------------------------------X

## DECLARATION OF CHRISTOPHER SERBAGI

STATE OF NEW YORK   )
                               : ss.:
COUNTY OF NEW YORK  )

       I CHRISTOPHER SERBAGI, an attorney duly licensed to practice law before this Court, declare the following facts under penalty of perjury:

       1.    I represent Shaw Family Archives, Ltd., Edith Marcus, Meta Stevens and Bradford Licensing Associates (collectively referred to as the "Shaw Family") in the above-captioned matter and am fully familiar with the facts set forth herein.

**DEFENDANTS' ATTEMPTED TO MISLEAD THE COURT BY WITHOLDING AS "CONFIDENTIAL" PUBLICLY AVAILABLE DOCUMENTS THAT DEMONSTRATE THAT MARILYN MONROE DIED A CALIFORNIA DOMICILIARY**

       2.    The Shaw Family respectfully requests that the Court consider the Defendants' current incredible representations that Ms. Monroe died a California domicile in the context of its prior lack of disclosure on the subject, which necessitated expensive additional briefing.

1

3.       On October 25, 2006, Defendant MMLLC filed its motion for summary judgment on its right of publicity claim. On October 31, 2006, the Shaw Family served, *inter alia*, document request No. 5, which requested "[a]ll documents relating to the States in which Marilyn Monroe was a domicile at any time during the final five years of her life." The Defendants requested two separate extensions of time to produce its documents, which the Shaw Family granted. The Shaw Family filed its opposition and cross-motion for summary judgment on November 29, 2006. The papers were fully briefed by December 22, 2006. In MMLLC's memorandum of law in opposition to the Plaintiffs' cross-motion, MMLLC represented to this Court that Ms. Monroe died a California domiciliary. At the time, the only documents in the Shaw Family's possession stated that Ms. Monroe died a "resident" of New York. Defendants seized on this lack of evidence in the Plaintiffs' possession and told this Court in its briefing that "resident" does not mean "domicile."

4.       On December 26, 2007, the Defendants told the Shaw Family in written discovery responses that it could not produce documents on domicile because they were "confidential" and the parties would need a protective order. We now know that the key domicile documents the Defendants declined to produce were publicly available court filings. It was not until February 13, 2007 (more than six weeks later and after the summary judgment motions were fully briefed) that Defendants produced 53,135 pages of documents and an additional 6,000 pages on February 26, 2007. The Defendants' produced their documents on disks, which contained a separate Tiff file for each page of the production. Despite the Plaintiffs' repeated request, the Defendants refused to produce these documents in hard copy or in a manner in which Plaintiffs could reasonably access.

5. On or about March 5-6, 2007, the Plaintiffs completed their review of the first few pages of Defendants' document production and it found numerous new documents <u>that directly contradict MMLLC's representation to this Court that Ms. Monroe died a California domiciliary</u> (the "New Documents"). The New Documents reveal that Defendants' tried to escape the application of New York law by telling the Court that Ms. Monroe died a California domiciliary, which the New Documents reveal Defendants did not even believe to be the case.

6. By letter dated March 6, 2007, Plaintiffs wrote the Court and requested the opportunity to submit supplemental briefs on the significance of the New Documents. On March 12, 2007, the Court directed the Shaw Family to submit a brief in ten days on the issue of domicile and MMLLC would have ten days to respond. On May 2, 2007, the Court granted the Shaw Family's cross-motion for summary judgment on Count II of the Second Amended Complaint. The Court did not reach the domicile question because it was not necessary for its decision.

7. The documents that the Defendants produced demonstrate that the Defendants intended to deceive the Court in two ways. First, Defendants told this Court in its summary judgment papers that it believed Ms. Monroe died a California domiciliary when it had numerous documents in its <u>exclusive possession</u> that demonstrate that it did not even believe that to be the case. Second, Defendants represented in its discovery responses that those documents were "confidential" and required a protective order, which was obviously false as well because publicly available court filings cannot possibly be confidential. The Defendants' improper lack of disclosure caused the Shaw Family <u>considerable additional expense</u> in the supplemental briefing that took place.

3

**ON JANUARY 7, 2008, JUDGE MORROW DECLINED TO PRECLUDE THE DEFENDANTS' FROM ARGUING THAT MS. MONROE DIED A NEW YORK DOMICILIARY, BUT ONLY BECAUSE THE DEFENDANTS HAD NOT PRODUCED THE DOMICILE DOCUMENTS CITED HEREIN WHEN THE ISSUE WAS INITIALLY BRIEFED IN CALIFORNIA**

8.  The Defendants obtained a huge benefit in California from their failure to produce the domicile documents at the critical juncture. On January 7, 2008, Judge Morrow granted the Defendants' motion to reconsider her May 14, 2007 Order that Defendants have no right of publicity in Marilyn Monroe. Judge Morrow ruled, in part, that the Defendants were not estopped from litigating the domicile issue, but she did not have before her, and therefore could not have considered, <u>any of the key documents that the Shaw Family has cited herein</u>. Judge Morrow did not have these documents because the parties did not re-brief the domicile issue, which means that Judge Morrow relied on briefing that took place prior to the Defendants' production of the domicile documents presently before the Court.

Dated: New York, New York
February 14, 2008

                LAW OFFICES OF CHRISTOPHER SERBAGI

                */s/ Christopher Serbagi*
                By: Christopher Serbagi
                488 Madison Avenue
                New York, New York 10022
                Tel: 212-593-2112
                Fax: 212-308-8582

                Attorneys for Plaintiff/Consolidated Defendant SFA,
                Plaintiffs Edith Marcus and Meta Stevens and Consolidated
                Defendant Bradford Licensing, Inc.