UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SHAW FAMILY ARCHIVES, LTD., EDITH
MARCUS and META STEVENS,

                              Plaintiffs,         Index No. O5 CV 3939 (CM)

           -against-

CMG WORLDWIDE, INC., an Indiana Corporation
and MARILYN MONROE, LLC, a Delaware
Limited Liability Company,

                        Defendants.
------------------------------------------------------------------X

## RULE 56.1 STATEMENT OF FACTS IN SUPPORT OF THE MOTION OF SHAW FAMILY ARCHIVES, LTD., BRADFORD LICENSING, INC., EDITH MARCUS AND META STEVENS FOR SUMMARY JUDGMENT

Plaintiffs SHAW FAMILY ARCHIVES, LTD., EDITH MARCUS, META STEVENS and BRADFORD LICENSING, INC., pursuant to Rule 56.1(a) of the Local Rules of the United States District Court for the Southern District of New York, respectfully submits the following statement of undisputed facts:

    1.      Marilyn Monroe died a domiciliary of New York State.  Declaration of David M. Marcus dated February 14, 2008 ("Marcus Decl.") at ¶ 36, Ex. 35.  MM 0004364.

    2.      Marilyn Monroe executed her will in New York on January 14, 1961.  Id. at ¶ 2, Ex. 1., MM 0000381-383.

    3.      In the seventh and eighth paragraphs of Ms. Monroe's will, Aaron Frosch was named as the executor and trustee of her Estate.  Id., MM 0000383.

4.      Marilyn Monroe died on August 5, 1962. Id. at ¶ 3, Ex. 2, SFA1 0260.

5.      When Marilyn Monroe died, her permanent residence was 444 E. 57th Street, New York, New York. Id. at ¶ 17, Ex. 16, MM 0009350-9360.

6.      When Marilyn Monroe died, she was a non-resident of California. Id., ¶ 18, Ex. 17, ¶ 19, Ex. 18.

Hawaii Litigation

7.      On September 16, 1992, Nancy Miracle sued Anna Strasberg, in her capacity as Administratrix of the Estate of Marilyn Monroe, in Hawaii federal district court. Id. at ¶ 41, Ex. 40.

8.      In her complaint dated September 16, 1992, Ms. Miracle claimed that she was the daughter of Marilyn Monroe and was entitled to a 50% share of the Estate of Marilyn Monroe. Id. at SFA1 0002-3.

9.      Nancy Miracle made numerous representations in Hawaii federal district court that Marilyn Monroe died a California domiciliary. Id. at ¶ 43, Ex. 42, p. 1-2, 4-5, ¶ 44, EX. 43, p. 1, ¶ 46, Ex. 45, pp. 5-11, 14, 17, ¶ 47, Ex. 46, p. 2, ¶ 48, Ex. 47, pp. 3-4, ¶ 49, Ex. 48, SFA1 0065-68, ¶ 51, Ex. 50, p. 8, 19-20.

10.     Anna Strasberg made numerous representations in Hawaii federal district court that Marilyn Monroe died a New York domiciliary. Id. at ¶ 42, Ex. 41, pp. 5-16, ¶ 45, Ex. 44, p.4, ¶ 46, Ex. 45, pp. 15-21, ¶ 52, Ex. 51, p. 1.

11.     The Hawaii federal district court reportedly adopted Anna Strasberg's argument and held that Marilyn Monroe was domiciled in New York. Id. at ¶ 49, Ex. 48, SFA1 0074, ¶ 50, Ex. 49, pp. 8, 13, 14.

12. The Hawaii Federal district court dismissed Nancy Miracle's complaint because Nancy Miracle lacked personal jurisdiction over Anna Strasberg and failed to state a claim. Id. at ¶ 49, Ex. 48, p. 25-28, ¶ 50, Ex. 49, p. 8, 10-14.

13. The Hawaii federal district court held that Nancy Miracle did not have personal jurisdiction over Anna Strasberg because, in part, Marilyn Monroe died a domiciliary of New York. Id. at ¶ 49, Ex. 48, p. 27, ¶ 50, Ex. 49, p. 8.

14. The Hawaii federal district court applied New York substantive law to Ms. Miracle's pretermitted child claim because Ms. Monroe died a domiciliary of New York. Id. at ¶ 49 Ex. 48, pp. 25-28, ¶ 50, Ex. 10-14.

15. The Hawaii Federal district court denied Nancy Miracle's motion to reconsider its Order dismissing her complaint. ¶ 54, Ex. 53, pp. 1-2.

16. The Ninth Circuit denied Ms. Miracle's appeal. Id. at ¶ 56, Ex. 55, p. 1.

Probate

17. On August 10, 1962, the Superior Court of California issued an Order, which stated that Marilyn Monroe died either a resident of Los Angeles, California, or New York, New York. Id. at ¶ 4, Ex. 3.

18. On October 26, 1962, Aaron Frosch, the executor of the Estate of Marilyn Monroe, filed Notice of Probate of Marilyn Monroe's will in New York State Surrogate's Court. Id. at ¶ 5, Ex. 4.

19. On October 30, 1962, the New York County Surrogate's Court accepted Ms. Monroe's January 14, 1962 will to probate. Id. at ¶ 6, Ex. 5, MM 0001497-1498.

20.     On December 17, 1962, Aaron Frosch filed a Petition for Probate of Foreign Will and for Ancillary Letters Testamentary in the California Superior Court, County of Los Angeles. Id. at ¶ 7, Ex. 6, SFA1 0021-230.

21.     In Aaron Frosch's petition dated December 17, 1962, Mr. Frosch referred to Ms. Monroe as a resident of the County of New York, State of New York and stated that Ms. Monroe's will was executed in conformity with the laws of the State of New York, the place where she was domiciled at the time of her death. Id. at ¶ 7, Ex. 6, SFA 1 0222.

22.     On January 21, 1963, the California Superior Court issued an Order admitting Marilyn Monroe's foreign will to probate and ancillary letters testamentary. Id. at ¶ 8 Ex. 7, SFA1 0231-233.

23.     In its January 21, 1963, the California Surrogate's Court made the judicial finding of fact that Marilyn Monroe died on August 5, 1962, then a resident of the County of New York, State of New York, and leaving Estate in the County of Los Angeles, State of California. Id. at SFA1 0231.

24.     Throughout the pendency of the California probate proceedings, Mr. Frosch referred to Marilyn Monroe as having died a domiciliary of New York. Id. at ¶ 27, Ex. 26, SFA1 0167, 0183.

25.     Throughout the pendency of the California probate proceedings, Mr. Frosch referred to the New York estate as the domiciliary probate estate. Id. at ¶ 25, Ex. 24 SFA1 0239, 241, ¶ 27, Ex. 26, SFA1 0159, 190, ¶ 29, Ex. 28, p. SFA 00675.

26.     Throughout the pendency of the California probate proceedings, Mr. Frosch referred to himself as the Ancillary Executor in California. Id. at ¶ 8, Ex. 7, SFA1

0231, ¶ 23, Ex. 22, MM 0009212, ¶ 24, Ex. 23, MM 0000088, ¶ 26, Ex. 25, SFA1 0244,

¶ 26, Ex. 25, SFA1 0251, ¶ 27, Ex. 26, SFA1 0155, SFA1 0170, ¶ 28, Ex. 27, SFA1 0132

27.    Throughout the pendency of the California probate proceedings, Mr.

Frosch referred to himself as the Domiciliary Executor in New York. Id. at ¶ 25, Ex.24,

SFA 0243, ¶ 27, Ex. 26, SFA1 0170, 190, ¶ 28, Ex. 27 SFA1 0132.

28.    The California law firm of Gang, Tyre, Rudin & Brown represented Aaron

Frosch and the Estate of Marilyn Monroe, during all stages of the California probate

proceedings. Id. at ¶ 27, Ex. 26, SFA1 0186-196.

29.    On May 25, 1976, Aaron Frosch filed his First and Final Account of

Ancillary Executor with the Superior Court of the State of California and represented that

Marilyn Monroe died a New York domiciliary. Id. at ¶ 27, Ex. 26, SFA1 0167, 0183.

30.    In his application to the Superior Court of the State of California, dated

May 21, 1976, Mr. Frosch requested the Estate of Marilyn Monroe's California assets be

delivered to him as the New York domiciliary Executor. Id., SFA1 0167-168

31.    In his application to the Superior Court of the State of California, dated

May 21, 1976, Mr. Frosch also requested executor fees for his extraordinary work on

behalf of the Estate of Marilyn Monroe. Id., SFA 0164, 0169, 0183-185

32.    In the Order Settling First and Final Account of Ancillary Executor, dated

July 15, 1976, the California Superior Court acknowledged that Aaron Frosch had

complied with all of the requirements required by that court and ordered that all the

remaining assets of the Estate of Marilyn Monroe in California be delivered to Aaron

Frosch. Id. at ¶ 28 Ex. 27, SFA1 0132-0135.

33.    Upon the Order of the Superior Court of the State of California, dated July 15, 1976, Aaron Frosch, as ancillary executor of the Estate of Marilyn Monroe, received the statutory executor's fees and extraordinary executor's fees that he requested. Id. at ¶ 30, Ex. 29.

34.    In December of 1977, Aaron Frosch, as domiciliary executor of the Estate of Marilyn Monroe, filed a receipt with the Superior Court of the State of California acknowledging that he received the remaining California assets of the Estate of Marilyn Monroe. Id. at ¶ 28, Ex. 29, SFA 00675.

35.    By Order dated July 22, 1977, the California Superior Court issued an Order of the Final Discharge to Aaron Frosch. Id. at ¶ 31, Ex. 30.

36.    After acting as the Administratrix of the Estate of Marilyn Monroe for approximately eleven years, Anna Strasberg successfully petitioned the New York Surrogate's Court, in 2001, for a final accounting of the Estate of Marilyn Monroe, to close the Estate and to be relieved of any fiduciary liability to the Estate of Marilyn Monroe. Id. at ¶¶ 61, 64, Exs. 60, at MM 0002789-2799, 63 at MM 0003458-3561.

37.    On October 18, 2000, Anna Strasberg released the Estate of Aaron Frosch from any liability that may have been incurred in connection with Mr. and Mrs. Frosch's fiduciary duties to the Estate of Marilyn Monroe. Id. at ¶ 62, Ex. 61., MM 0002843-2844.

Anna Strasberg as Administratrix of the Estate of Marilyn Monroe

38.    On April 29, 1989, Aaron Frosch died. Id. at ¶ 34, Ex. 33, MM 0000025.

39.    By Order dated July 20, 1989, the New York Surrogate's Court appointed Anna Strasberg to be the Administratrix of the Estate of Marilyn Monroe. Id. at ¶ 35, Ex. 34, MM 0000423-424.

40.     On July 28, 1989, Anna Strasberg, as Administratrix of the Estate of Marilyn Monroe, filed a petition for Construction of Wills, with the New York Surrogate's Court, for the purpose of determining the proper beneficiary of Dr. Marianne Kris' 25% ownership of the residuary Estate of Marilyn Monroe. Id. at ¶ 36, Ex. 35, MM 0000241-242, 0004364-4372.

41.     In her application to the New York Surrogate's Court dated July 28, 1989, Ms. Strasberg stated that Marilyn Monroe died a New York domiciliary, and cited to New York probate law and case law in support of her application. Id. at ¶ 36, Ex. 35, 0004364.

42.     The Anna Freud Centre admitted that Marilyn Monroe died a New York domiciliary, and cited to New York probate law and case law in response to the application. Id. at ¶ 37, Ex. 36, MM 0007335, 0004443-4463.

43.     The New York Surrogate's Court relied on New York probate law and case law in order to construct Ms. Monroe's will, and find that the Anna Freud Centre was the proper beneficiary to the 25% remainder of the residuary Estate of Marilyn Monroe. Id. at ¶ 40, Ex. 39, MM 0005583-5588, MM 0005157-5164.

The California and New York Tax Proceedings

44.     On or about April 11, 1963, Aaron Frosh filed an Inventory and Appraisement with the California Superior Court, which set the value of Ms. Monroe's Estate in California to be $92,781.00. Id. at ¶ 10, Ex. 9.

45.     From 1963 to 1966, Executor Aaron Frosch, and attorneys from his law firm, Weissberger & Frosch, worked with Hermione Brown, of Gang, Tyre, Rudin & Brown, to complete Aaron Frosch's Inheritance Tax Affidavit and Affidavit Concerning

7

Residence. Id. at ¶ 11, Ex. 10, ¶ 15, Ex. 14, ¶ 16, Ex. 15, ¶ 17, Ex. 16., ¶ 27, Ex. 26, SFA1 0191-196.

46.     In a letter dated April 24, 1964, Hermione Brown strongly advised Mr. Frosch that it was his duty to immediately complete his Inheritance Tax Affidavit and Affidavit Concerning Residence. Id. at ¶ 11, Ex. 10, MMLLC (SHAW) 00465-469.

47.     By letter dated March 4, 1966, Aaron Frosch filed an Inheritance Tax Affidavit, his Affidavit Concerning Residence, and the Affidavits Concerning Residence from May Reis, Patricia Newcomb, Hattie Stephenson and Ralph Roberts, four of Marilyn Monroe's most intimate friends and employees, with the California Inheritance Tax Appraiser, for the purpose of proving that Marilyn Monroe was a non-resident of California, and permanent resident of New York. Id. at ¶ 14 Ex. 13. MM 0012402-12417., ¶ 17, EX. 16, MM 0009297-9298, 9350-9364.

48.     The five Affidavits Concerning Residence, that Mr. Frosch submitted to the California Tax Appraiser by letter dated March 4, 1966, established that Marilyn Monroe was a New York domiciliary at the time of her death. Id.

49.     According to the duly sworn Inheritance Tax Affidavit of Aaron Frosch, dated June 28, 1965, Marilyn Monroe paid California non-resident income tax from 1959 through 1962. Id., MM 0012408.

50.     Based upon the documents submitted with the March 4, 1996 letter to the California Inheritance Tax Appraiser, the California Tax Appraiser valued the California ancillary Estate of Marilyn Monroe at $36,144.22, and determined that it owed the State of California $777.63 in inheritance taxes. Id. at ¶ 18, Ex. 17, pp. 1-4, ¶ 19, Ex. 18.

51.     Aaron Frosch filed various tax related documents, with the New York Surrogate's Court and New York tax authorities, which included Marilyn Monroe's intangible assets (such as bank accounts, contract royalty payments, stocks and proceeds from a life insurance policy) in the value of her New York Estate. Id. at ¶ 13 Ex. 12, MM 0000367-374, ¶ 20, Ex. 19, MM 0000392-398.

52.     The New York Surrogate's Court found that the gross value of Ms. Monroe's Estate was $836,524.81 and affixed the New York inheritance tax at $17,698.42. Id. at ¶ 21, Ex. 20, MM 0004814, 4846, 4785, ¶ 22, Ex. 21, MM 0000001.

53.     Aaron Frosch filed several court documents, in New York and California, which stated that he was successful in having Marilyn Monroe determined to be a non-resident of California and that the Estate only had to pay taxes based on property located in California. Id. at ¶ 27, Ex. 26, SFA1 0161-0162, 0192, ¶ 32, Ex. 31, MM 0004483.

MMLLC as successor to the rights of the Estate of Marilyn Monroe

54.     Marilyn Monroe, LLC. was created near the end of the closing of the New York probate proceedings in order to protect Anna Strasberg personally and the Estate's assets from claims against the Estate. Id. at ¶ 60, Ex. 59, MM 0003743-3744.

55.     The Estate of Marilyn Monroe never once argued that Marilyn Monroe died a California domiciliary, or even a California resident. Id. at ¶¶ 5-8, 11- 14, 17-40, 42, 45, 61, Exs. 4-7, 10-13, 16-39, 41, 44, 60.

Defendants believed that Marilyn Monroe died a New York domiciliary

56.     The licensing agents for the Estate of Marilyn Monroe and Marilyn Monroe, LLC. admitted that Marilyn Monroe died a New York domiciliary. Id. at ¶ 39, Ex. 38, MM 00044376, ¶ 58 Ex. 57, MM 0013315, ¶ 67, Ex. 66., pp. 12, 234, 239-240.

57.     Irving Seidman, Esq., the attorney for Anna Strasberg as Administratrix for the Estate of Marilyn Monroe, believed that Marilyn Monroe died a New York domiciliary. Id. at ¶ 36, Ex. 35, MM 00004364, ¶ 39, Ex. 38.

58.     Anna Strasberg testified at her deposition on January 4, 2008, that she considered Mark Roesler, president of CMG Worldwide, Inc. to be truthful and that his statements concerning Marilyn Monroe to be accurate. Id. at ¶ 68 Ex. 67, pp. 198-200, 209.

59.     Anna Strasberg testified, at her deposition on January 4, 2008, that she considered Irving Seidman to be honest, competent and that she was unaware of any mistakes he ever made. Id., at ¶ 67, pp 55-53, 156, 158, 166, 171, 180, 196.

60.     In a letter dated July 11, 1993, from Peter Eichler, of Baker & Hostetler, to Roger Richman, the exclusive agent for the Estate of Marilyn Monroe, Mr. Eichler asked Mr. Richman for his opinion of the letter from Martin Bressler to Lawrence Shaw, dated June 11, 1993, in which Mr. Bressler advised that the Estate of Marilyn Monroe did not own a right of publicity in Marilyn Monroe because Ms. Monroe died a New York domiciliary.  Id. at ¶ 57, Ex. 56, MM 0003905-3909.

61.     CMG, Worldwide, Inc., never responded to the letter, dated March 28, 1996, from Jonathan Reichman, of Kenyon & Kenyon, to Christine M. Sovich of CMG Worldwide, Inc, in which Mr. Riechman stated that the Estate of Marilyn Monroe did not own a right of publicity in Marilyn Monroe because Ms. Monroe died a domiciliary of New York. Id. at ¶ 59, Ex. 58, MM 3905-09.

62.     In the deposition of Marilyn Monroe, LLC's 30(b)(6) witness, taken on December 20, 1007, Mr. David Strasberg identified the voice of Marilyn Monroe in a

recorded interview of her on January 12, 1955, where she stated that she had moved to New York, and that when she retired she would retire to Brooklyn. Id. at ¶ 66, Ex 65, p. 208.

Dated: New York, New York
       February 14, 2008

LAW OFFICES OF CHRISTOPHER SERBAGI

By: David M. Marcus
488 Madison Avenue
New York, New York 10022
Tel: 212-593-2112
Fax: 212-308-8582

Attorneys for Shaw Family Archives, Bradford Licensing, Inc., Edith Marcus and Meta Stevens

recorded interview of her on January 12, 1955, where she stated that she had moved to New York, and that when she retired she would retire to Brooklyn. Id. at ¶ 66, Ex 65, p. 208.

Dated: New York, New York
       February 14, 2008

                              LAW OFFICES OF CHRISTOPHER SERBAGI

                              By: David M. Marcus
                              488 Madison Avenue
                              New York, New York 10022
                              Tel: 212-593-2112
                              Fax: 212-308-8582

                              Attorneys for Shaw Family Archives, Bradford
                              Licensing, Inc., Edith Marcus and Meta Stevens