# EXHIBIT 7

GANG, TYRE, RUDIN & BROWN
6400 Sunset Building
Los Angeles 28, California



FILED

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

IN THE MATTER OF THE ESTATE

OF

MARILYN MONROE,

  Deceased.

No. 453,236

ORDER ADMITTING FOREIGN WILL TO PROBATE AND FOR ANCILLARY LETTERS TESTAMENTARY.

The PETITION FOR PROBATE OF FOREIGN WILL AND FOR ANCILLARY LETTERS TESTAMENTARY herein of AARON R. FROSCH, by Gang, Tyre, Rudin & Brown, his attorneys, coming on this 17th day of January, 1963, for hearing by the Court, all notices of said hearing having been given as required by law, the Court, after hearing the evidence, hereby grants the petition for probate of foreign will and ancillary letters testamentary thereon, as follows:

IT IS ORDERED, ADJUDGED AND DECREED by the Court that said Marilyn Monroe died on August 5, 1962, then a resident of the County of New York, State of New York, and leaving estate in the County of Los Angeles, State of California; that the document heretofore duly admitted to probate in the Surrogate's Court, County of New York, State of New York, as the last will of said deceased, and so alleged to be in said petition, an authenticated copy of which is filed herein, is hereby admitted to probate as the last will of said deceased; that AARON R. FROSCH is hereby appointed executor of said last will, and

SF41 0231

ancillary letters testamentary be issued to him upon his taking the oath required by law, and giving surety bond in the sum of $5,500.00.

Dated: JAN 21 1963, 1963.

_____
Judge of the Superior Court

SFA1 0232

THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED IS A FULL, TRUE, AND CORRECT COPY OF THE ORIGINAL ON FILE AND OF RECORD IN MY OFFICE.

ATTEST  JAN 2 3 2008

JOHN A. CLARKE, CLERK
Executive Officer/Clerk of the Superior Court of California, County of Los Angeles.

By  R. Beechum  Deputy
R. BEECHUM  SFAL 0233

This is the best microfilm copy available

# EXHIBIT 8

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF LOS ANGELES

Case No. P-458,935

IN THE MATTER OF THE ESTATE OF

MARILYN MONROE

Deceased.

Filed FEB 26 1963
WILLIAM G. SHARP
HAROLD J. OSTLY, County Clerk.
By _____, Deputy

LETTERS TESTAMENTARY

STATE OF CALIFORNIA, } ss.
County of Los Angeles }

The last will of the above named decedent, having been proved in the above entitled court,

Aaron R. Frosch

who **is** named therein as such, **is** hereby appointed Executor thereof.
(is/are)                                    (is/are)

WITNESS, HAROLD J. OSTLY, Clerk of the Superior Court of the County of Los Angeles, with the seal of the Court affixed.

Dated FEB 26 1963

By order of the Court.
WILLIAM G. SHARP
HAROLD J. OSTLY, County Clerk and Clerk of the Superior Court of the State of California, in and for the County of Los Angeles

By _____ Deputy

OATH

STATE OF CALIFORNIA, } ss.
County of Los Angeles }

I do solemnly swear that I will perform, according to law, the duties of Executor of the last Will and Testament of the above named decedent.

Aaron R. Frosch

Subscribed and sworn to before me,

February 26, 1963

_____
Notary Public in and for the County of Los Angeles
My Commission Expires July 1, 1966

WILLIAM G. SHARP
HAROLD J. OSTLY, County Clerk and Clerk of the Superior Court of the State of California, in and for the County of Los Angeles

By _____ Deputy

CERTIFICATION

STATE OF CALIFORNIA, } ss.
County of Los Angeles }

I, HAROLD J. OSTLY, County Clerk and Clerk of the Superior Court within and for the County and State aforesaid, do hereby certify the foregoing to be a full, true and correct copy of the original Letters Testamentary issued herein, as the same appears on file in my office, and I further certify that said Letters have not been revoked and are in full force and effect at the present time.

Dated: _____

WILLIAM G. SHARP
HAROLD J. OSTLY, County Clerk and Clerk of the Superior Court of the State of California, in and for the County of Los Angeles

By _____ Deputy

LETTERS TESTAMENTARY

SEA1 0254

THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED IS A FULL, TRUE, AND CORRECT COPY OF THE ORIGINAL ON FILE AND OF RECORD IN MY OFFICE.

ATTEST  JAN 2 3 2008

JOHN A. CLARKE, CLERK
Executive Officer/Clerk of the Superior Court of California, County of Los Angeles

By  R. Beechum  Deputy

R. BEECHUM  SF97 0255

This is the best microfilm copy available

# EXHIBIT 9

(EXTRA COPY MUST BE FURNISHED CLERK FOR FILE STAMP)
(Sections 600 and 1550 Probate Code.)

GANG, TYRE, RUDIN & BROWN
Attorneys for Estate
6400 Sunset Building
Los Angeles 28, California
Address

HO 3-4863
Telephone

# IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR THE COUNTY OF LOS ANGELES

In the Matter of the Estate of

MARILYN MONROE

Deceased

No. P- 498553

**INVENTORY AND APPRAISMENT**

Date of Death: August 5, 1962

The following information is required by Los Angeles County Probate Policy Memoranda 18. to be signed by the attorney:

Bond filed, $ 5,500.00

(Sufficient ✓ )

(Insufficient ___ )

GANG, TYRE, RUDIN & BROWN

BY Hermione K. Brown
Attorneys for estate

STATE OF CALIFORNIA, County of Los Angeles:     **DECLARATION OF APPRAISER**

I, the undersigned, state: That I will truly, honestly and impartially appraise the property of said estate which shall be exhibited to me, according to the best of my knowledge and ability.

I certify (or declare) under the penalty of perjury that the foregoing is true and correct.

Dated March 14, 1963

(Signature of Appraiser)

STATE OF CALIFORNIA, County of Los Angeles:     **OATH OF REPRESENTATIVE(S)**

I, the undersigned, state: That the following inventory contains a true statement of all the assets of the estate of said deceased which has come to my knowledge or possession, and particularly of all the money belonging to the said deceased, and of all just claims of the said deceased against others.

Dated March 11, 1963

I certify (or declare) under the penalty of perjury that the foregoing is true and correct.

Aaron R. Frosch

(Signature of Affiant)

Subscribed and sworn to before me

(Signature of Declarant)

Notary Public in and for the County of Los Angeles, State of California

INVENTORY AND APPRAISEMENT

SFA1 0234

## INVENTORY AND STATEMENT OF ASSETS

Note: The inventory must show, as far as can be ascertained by the executor or administrator, what portion of the property is community property and what portion is separate property of the deceased. Section 601, Probate Code.)

| | | Appraised Value |
|---|---|---|
| (1) | Real property: Decedent's residence commonly known as 12305-5th, Helena Drive, Los Angeles, California and described as follows: | |
| (2) | Lot 20 of Tract 5462, sheets 1 and 2 of Map recorded in book 58 pages 71 and 72 in the office of the Los Angeles county recorder | 87,000 00 |
| (3) | Cash at City National Bank of Beverly Hills, Calif. | 21,200 00 |
| | Cash | 405 00 |
| (4) | Clothing and personal effects | 690 00 |
| (5) | Furniture and furnishings located at 12305-5th Helena Drive, Los Angeles, California, as follows: | 2,486 00 |
| | (a) Hotpoint freezer-refrigerator; built-in dinette set; all tacked-down carpeting and drapes (500.00) | |
| | (b) All other furniture and furnishings (1,986.00) | |

SFAI 0235

I, the undersigned, duly appointed to appraise the estate of said deceased, hereby certify that I have appraised the same as specifically set forth in the foregoing inventory and at the total sum of Ninety-two Thousand Seven hundred Eighty-one 78/100 Dollars ($92,781.78)

Dated April 11, 1963

For services in appraising said estate, as provided by law:

$ 72.78

$

$

Necessary disbursements

($ 4.00

76.78

**STATE OF CALIFORNIA, County of Los Angeles:**

I, the undersigned, state: That the foregoing bill of items is correct and just and that the services have been duly rendered as herein set forth.

I certify or declare under the penalty of perjury that the foregoing is true and correct.

Dated April 11, 1963.

SFAT 0236

This is the best microfilm copy available

THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED IS A FULL, TRUE, AND CORRECT COPY OF THE ORIGINAL ON FILE AND OF RECORD IN MY OFFICE.

ATTEST  JAN 2 3 2008

JOHN A. CLARKE, CLERK
Executive Officer/Clerk of the Superior Court of California, County of Los Angeles.

By _____ Deputy
R. BEECHUM  SFA1 0237

# EXHIBIT 10

CONFIDENTIAL
Shaw Family Archives
Subject to Protective Order

GANG, TYRE, RUDIN & BROWN
ATTORNEYS AT LAW

MARTIN GANG
NORMAN R. TYRE
HERMIONE K. BROWN
MILTON A. RUDIN
PAYSON WOLFF
STANLEY L. KELLER
FRANK G. WELLS
BRUCE M. RAMER



ROBERT E. KOPP (1912-1953)

8400 SUNSET BUILDING
HOLLYWOOD, CALIFORNIA 90028
463-4863
CABLE: GANKOT

April 24, 1964

Mr. Aaron R. Frosch
Weissberger & Frosch
120 East 56th Street
New York 22, New York

Re: Estate of Marilyn Monroe

Dear Aaron:

When last I spoke to you in December 1963, you advised me that you would soon have a clearer picture of the above estate and could then give me definite instructions with respect to a number of matters affecting the California probate. I have not heard from you directly since then, but recently I did hear through Alfred Rice that the income tax matters in dispute had been settled. I assume, therefore, that the federal estate tax return has been filed and that the financial picture with respect to the estate can now be determined with some clarity. With this in mind I call your attention again to all of the matters still pending in California.

1. In September 1963, I sent to you the California Inheritance Tax Affidavit, and Affidavit Concerning Residence, completed insofar as I was then able to do so. You signed and returned these forms without completing them. I am again sending you a copy of each of these forms, pointing out that they have to be completed with information which I do not have available. In particular, with respect to the Inheritance Tax Affidavit, paragraph 6 requires a statement of all tangible or intangible personal property or real property owned by the decedent outside the State of California, together with appraised value if Court proceedings are pending in another state, paragraph 10 requires a listing of all life insurance on decedent's life, paragraph 11 requires a statement of all annuity policies or supplemental contracts, paragraph 12 requires a statement of gifts or transfers, paragraph 16 requires an itemization of all deductions and a statement as to federal estate tax actually paid. Perhaps the simplest way to supply all of this information

MMLLC (SHAW) 000465

CONFIDENTIAL
Shaw Family Archives v. CMG
Subject to Protective Order

GANG, TYRE, RUDIN & BROWN

-2-

is to furnish me with a copy of the federal estate tax return and the inventory, or comparable documentation filed in the New York probate. In any event, I should have a copy of the federal estate tax return available, since the California tax people frequently ask for it when reviewing the Inheritance Tax Affidavit.

With respect to the Affidavit Concerning Residence, you must furnish us with some information to counteract the fact that Miss Monroe owned a home and actually was living in California at the time of her death, and that her mother is physically in California. You will see the types of questions asked on this affidavit. It is important that you answer all of the questions, and in doing so build as strong a case as possible.

With respect to these two documents, commencing two years after death any tax due the State of California bears interest at 7%. Furthermore, the executor is under the usual duty to complete the tax forms as quickly as possible, and in any event it is impossible to dispose of the estate until the inheritance tax has been determined. In addition, should the State of California reject the contention that Miss Monroe was a non-resident of California, then of course, there would be a serious tax situation. Therefore, I do not think we should delay unduly in getting this matter determined.

In this connection, also, I point out to you that after the Inheritance Tax Affidavit and Affidavit Concerning Residence are filed, probably the Inheritance Tax Department will require a hearing, at which time you will have to be present and testify. The matters set forth in these affidavits will form the basis for your testimony.

2. The next problem in order of urgency is the matter of the furniture and furnishings held in storage with Fidelity Van and Storage Company. The bill is now somewhere in the neighborhood of $1,000.00. Fidelity has called several times asking for payment of the charges.

I have no idea what the value of the items held in storage are. I assume they are worth more than the $1,000.00, particularly considering that they are associated with Miss Monroe,

MMLLC (SHAW) 000466

CONFIDENTIAL
Shaw Family Archives v. CMG
Subject to Protective Order

GANG, TYRE, RUDIN & BROWN

-3-

but in any event, I cannot conceive that they grow more valuable as times goes on. It is important, therefore, that you give me instructions as to what you want done with these items. If Mr. Strasberg wants to buy them for his foundation then, provided that the estate is solvent and creditors would not be injured, it seems to me that we could very well sell them to him or to his foundation for the appraised value, plus the storage charges, and he could then take over the problem of having the items shipped to New York or otherwise disposed of. If Mr. Strasberg does not want to buy the items, you should direct me to petition the Court for instructions that the words "personal effects and clothing", as used in the will, were not intended to and do not include household furniture, furnishings and effects, authorize me to arrange with an auctioneer locally for auctioning off the furniture and furnishings on the best basis obtainable, and petition the Court for authorization to sell such items at auction. At that time we will have to pay the storage charges to Fidelity so that the furniture can be released for auction.

3. This leads us logically to the next matter--ie., how to deal with the creditors. As you know, the assets currently in the estate, together with whatever we might get by way of sale of the furniture, are not sufficient to pay all of the creditors claims which were filed locally. At one time you said you would negotiate with MCA in New York so as to arrange to pay the MCA claim out of the New York assets. If MCA would withdraw its claim in California, then it would be possible to pay all of the other creditors in California and ultimately dispose of the estate in California and remit any proceeds to you in New York. Have you had any further negotiations or made any progress toward this end? Of course, I recognize that the possibility of doing this depends upon the ultimate solvency of the estate, but I gathered that once the Government's tax claim was settled on a reasonably favorable basis you felt confident that the estate would be solvent. I therefore urge you again to try to reach some arrangement with MCA on this score so as to permit the ultimate disposal of the estate in California without waiting until the New York estate is disposed of. Although there is no legal urgency in this regard I feel sorry for all of the tradespeople and other small creditors who have already been waiting almost two years for their money.

MMLLC (SHAW) 000467

CONFIDENTIAL
Shaw Family Archives
Subject to Protective Order

GANG, TYRE, RUDIN & BROWN

-4-

4.  There are a few specific items which should get immediate action on your part:

(a) I am enclosing check to Behrendt-Levy Insurance Company in the amount of $201.75, for renewal of your executor's bond. Please sign and return this to us.

(b) I am enclosing check to Eunice Murray in the amount of $400.00, together with copy of a letter signed by her, which is self-explanatory. Miss Murray rendered services for two weeks after Miss Monroe's death in handling the household problems, and her salary which has been delayed all this time constitutes a proper expense of administration. Accordingly, I told her that I would try to get this paid promptly.

(c) I am still holding a check dated November 20, 1963, payable to the Franchise Tax Board in the amount of $2,614.24, which you signed and sent to me on December 2, 1963 with instructions to hold until it was determined whether its priority would permit transmittal thereof. If by now you are satisfied that the estate is solvent, then this bill should be paid. You should authorize me to transmit the check to the Franchise Tax Board. Undoubtedly there will be additional interest for the period since September 27, 1963, which is the date of the bill from the Franchise Tax Board, but at least if the principal amount were paid the interest could then be separately determined and paid.

(d) In January 1964 I sent to you a creditor's claim filed by Mura Bright, together with a suggested Partial Rejection of Claim; Partial Approval of Claim for signature and return by you. This claim was accompanied by a letter from me dated January 17, 1964 explaining the details with respect to Miss Bright's claim and the related matters, and I refer you to that letter to refresh your recollection. Please, however, return the claim either signed, as suggested by me, or give me instructions as to what to do in this regard.

MMLLC (SHAW) 000468

GANG, TYRE, RUDIN & BROWN

-5-

5. You may recall that in November 1963, you discussed with me by telephone the matter of an antique Mexican chest which was being held by the Bureau of Customs and which was about to be sold for customs fees. At that time you telephoned me and we decided that it did not appear feasible for the estate to advance approximately $300.00 to redeem the chest from the Customs Bureau only to have to figure out how to sell it at auction and recover the costs. Thereafter I heard indirectly that someone from Pauley Petroleum, Inc. had redeemed the chest before it was auctioned off and we were quite puzzled as to how this had been accomplished. Not long ago Mickey received a letter from Mr. Pagen, President of Pauley Petroleum, Inc., copy of which is enclosed herewith, since it explains the situation. If we propose to auction off the furniture I will ask the auctioneer to check out this chest too to see whether it is worth redeeming from Mr. Pagen for purposes of including it in the auction. If not, this is also something you might want to discuss with Mr. Strasberg if he proposes to buy the furniture.

6. The last matter is the question of our attorneys' fees for services rendered prior to Miss Monroe's death. Mickey and I have discussed this and he feels that a fee of $10,000.00 for these pre-death services would be in order. Is there any particular procedure or form to be followed for the presentation of such claim?

Although I recognize that the foregoing may appear burdensome, I would greatly appreciate your furnishing us with the information, advice and instructions above requested.

Sincerely yours,

GANG, TYRE, RUDIN & BROWN

By *Hermione K. Brown*
Hermione K. Brown

hkb/b
encs.
cc: Elliott J. Lefkowitz
    Bernard Brandes (encs.)
    Milton A. Rudin

MMLLC (SHAW) 000469