# EXHIBIT 11

# Surrogate's Court

COUNTY OF New York

In the Matter of the Application to Determine Estate Tax Upon the Estate of

Marilyn Monroe

Deceased.

Petition for Designation of Appraiser

File No. P 2781/1962

**To the Surrogate's Court of the County of** New York

The petition of Aaron R. Frosch respectfully shows:

FIRST. That your Petitioner is the Executor of the Estate of Marilyn Monroe deceased, and as such is a person interested in the estate of said deceased.

SECOND. That the said decedent departed this life on the 5th day of August, at Los Angeles, California; that the said deceased was a resident of 444 East 57th Street, New York, N.Y.

THIRD. That letters Testamentary on the estate of said deceased were on the 30th day of October, 1962, issued to your petitioner by the Surrogate's Court of the County of New York and that his post office address is 120 East 56th Street, City, County and State of New York

FOURTH. That the approximate gross estate of said decedent is $ 846,150.00 [handwritten initials]

FIFTH. That as your Petitioner is informed and believes the estate of said decedent is or may be subject to the payment of the tax imposed by law on the estates of deceased persons.

SIXTH. That all persons who are interested in said estate and who are entitled to notice of all proceedings herein, and their post office addresses, are as follows:

STATE TAX COMMISSION.
Norman and Hedda Rosten, 84 Remsen Street, Brooklyn, New York.
May Reiss, 299 West 12th Street, New York, N.Y.
Mrs. Michael Chekhov, 3374 Rowena, Los Angeles, Calif.
Dr. Marianne Kris, 135 Central Park West, New York, N.Y.
Lee Strasberg, 135 Central Park West, New York, N.Y.
Bernice Miracle, 330 S. West 27th Street, Gainsville, Florida.
Gladys Eley, also known as Gladys Baker, c/o Inez Melson, 9110 Sunset Boulevard, Los Angeles, Calif.
Attorney General of the State of New York, 80 Centre Street, New York, N.Y.

That all of the above are of full age and sound mind, except:
Gladys Eley, aslo known as Gladys Baker, c/o Inez Melson. Inez Melson was, by order of the Superior Court of the State of California, for the County of Los Angeles, dated December 22, 1959, appointed Conservator of the said Gladys Eley, Also known as Gladys Baker.

That no previous application has been made for an order designating an appraiser in this proceeding.

WHEREFORE, your petitioner prays that you will designate an appraiser as provided by the law.

Dated, July 27, 1964.

[signature: Aaron R. Frosch]
Petitioner.

AUG -7 64 3 8 1 6 8 1 8 AP 2731 62 —FILCLK 1000C

STATE OF New York }
COUNTY OF New York } ss.:

Aaron R. Frosch, being duly sworn, deposes and says: That he is the petitioner herein; that he read the foregoing petition subscribed by him and knows the contents thereof; that the same is true to his own knowledge except as to matters herein stated to be alleged upon information and belief, and as to those matters he believes it to be true.

Sworn to before me this 27 day of July, 1964.

[Signature] Aaron R. Frosch

[Signature]
ELLIOT J. LEFKOWITZ
Notary Public, State of New York
No. 03-7474775
Qualified in Bronx County
Certificate filed in New York County
Commission Expires March 30, 1966

Surrogate's Court

COUNTY OF ______

IN THE MATTER OF THE APPLICATION TO DETERMINE THE ESTATE TAX UPON THE ESTATE OF

MARILYN MONROE

DECEASED.

PETITION FOR APPRAISER AND DESIGNATION

Weissberger & Frosch
*Attorney for Petitioner.*
120 East 56th Street,
New York, New York
PL 8-0800

# EXHIBIT 12

TT-143 (4-62) 200M (213-116)

Read carefully all instructions.

SURROGATE'S COURT
County of New York

In the Matter of the Appraisal under the Estate Tax Law of the Estate of

MARILYN MONROE

Deceased.

RECEIVED
AUG 5 1964
TRANSFER & ESTATE TAX
DEPARTMENT OF TAXATION AND FINANCE
U. S. D.

STATE OF NEW YORK
COUNTY OF New York } ss.:

AARON R. FROSCH above named decedent, being duly sworn in this proceeding for the determination of the tax, if any, to be paid upon the assets of the said estate under Article 10-C of the Tax Law, deposes and says that as such executor of the estate of the with the affairs of said estate, the property constituting the assets thereof, their fair market value, and the debts, expenses and charges properly allowable as deductions therefrom, and makes the following return:

GENERAL INFORMATION

1. Date of death Aug. 5, 1962 2. Resident of New York County
3. Did the decedent leave a will? (Answer "yes" or "no") Yes
If the answer is "yes" attach copy of the will.
4. Letters of administration testamentary were issued on October 30, 1962 by the Surrogate's Court of New York County.
5. The names and post-office addresses of the executors or administrators are:

| Name | Post Office Address |
|---|---|
| AARON R. FROSCH | 120 E. 56th Street, New York 22, New York |

## GROSS ESTATE

Answer all questions "yes" or "no" and submit appropriate schedule in each case where answer is "yes". Refer to instructions for each schedule in listing the assets.

**SCHEDULE A—REAL ESTATE**
6. Did the decedent at the time of death own any interest in real estate located within the State of New York? No

**SCHEDULE B—STOCKS AND BONDS**
7. Did the decedent at the time of death own any stocks and bonds? Yes

**SCHEDULE C—MORTGAGES, NOTES AND CASH**
8. Did the decedent at the time of death own any mortgages, notes or cash? Yes

**SCHEDULE D—INSURANCE**
9. Was any insurance on life of decedent receivable by his estate? Yes
10. Was any insurance on life of decedent receivable by beneficiaries other than the estate? No

**SCHEDULE E—JOINTLY OWNED PROPERTY**
11. Did the decedent at the time of his death own any property as a joint tenant or as a tenant by the entirety with right of survivorship or as community property? No

**SCHEDULE F—OTHER MISCELLANEOUS PROPERTY**
12. Did the decedent, at the time of death, own any interest in a co-partnership or unincorporated business? No
13. Did the decedent, at the time of death, own any miscellaneous property not returnable under any other schedule? Yes

**SCHEDULE G—TRANSFERS DURING DECEDENT'S LIFE**
14. Did the decedent during life make any transfer, including any transfer believed to be nontaxable, which the instructions with reference to Schedule G require to be reported? No
15. Was there in existence at the time of decedent's death any trust created by him during life? Yes - copy of trust hereto attached

**SCHEDULE H—POWERS OF APPOINTMENT**
16. Did the decedent, at any time, possess, release or exercise any power of appointment? No

**SCHEDULE I—ANNUITIES**
17. Was any annuity or other payment receivable by any person surviving the decedent under an annuity contract or any similar contract or agreement, other than a policy of life insurance? No

## DEDUCTIONS

**SCHEDULE J—FUNERAL AND ADMINISTRATION EXPENSES**
18. Itemize the funeral expenses and administration expenses in Schedule J.

**SCHEDULE K—DEBTS OF DECEDENT**
19. Itemize the debts of the decedent in Schedule K.

**SCHEDULE L—MORTGAGES AND LIENS; AND NET LOSSES DURING ADMINISTRATION**
20. List deductions claimed for these items in accordance with instructions.

**SCHEDULE M—MARITAL DEDUCTION FOR TRANSFERS TO SURVIVING SPOUSE**
21. Itemize in this schedule all interests in property transferred to decedent's surviving husband or wife, with respect to which a deduction is claimed.

**SCHEDULE N—CHARITABLE, PUBLIC, AND SIMILAR GIFTS AND BEQUESTS**
22. Itemize in Schedule N all devises and bequests to exempt corporations or associations.

**SCHEDULE O—BENEFICIARIES**
23. Give in Schedule O a statement of the names of all persons beneficially interested in the estate, the nature of their respective interests, etc.

I HEREBY CERTIFY THAT: No income tax deduction, either Federal or State, has been or will be claimed by the decedent or his estate, for a taxable year ending on or after December 31, 1960, on account of any administrative expenses, expenses of the decedent's medical care or casualty losses during administration, for which estate tax deductions are claimed herein.

Sworn to before me this 31st day of July 1964

[signature] [notary stamp, illegible]

[signature]
Aaron R. Frosch
Executor

## SCHEDULE A—REAL ESTATE

Real estate should be so described that it may be readily located. Give town or city, map, lot, block and section numbers, and place of record of deed. State the exact right, title or interest the decedent had in every parcel of real estate. The full valuation of the property and not the equity must be given. The mortgages should be deducted under Schedule L. Show also, with respect to each parcel of property, the assessed valuation thereof, and furnish the estimated market value at the date of death. Attach appraisal made by a competent real estate appraiser.

Real property which the decedent has contracted to purchase should be listed in this schedule. The full value of the property and not the equity must be shown. The unpaid portion of the purchase price should be deducted under Schedule K.

The value of dower and courtesy is taxable, and no reduction on account thereof or on account of homestead or other exemptions should be made in returning the value of the real estate.

All rents accrued and unpaid should be apportioned to the date of death, whether due at that time or not.

## SCHEDULE B—STOCKS AND BONDS

*Description.*—Description of stocks should indicate number of shares, whether common or preferred, issue, par value, price per share, exact name of corporation, and, if not listed on a stock exchange, the post-office address of the principal business office, the State in which incorporated, and the date of incorporation. If listed, state principal exchange upon which sold. Description of bonds should include quantity and denomination, name of obligor, kind of bond, date of maturity, interest rate, and interest-due dates. State the exchange upon which listed, or if unlisted the principal business office of the company.

*Valuation.*—In the case of stocks and bonds listed on a stock exchange the mean between the highest and lowest quoted selling prices on the date of death shall be considered as the fair market value per share or bond. If there were no sales on the date of death, such value shall be determined by taking the mean between the highest and lowest sales on the nearest date before and the nearest date after the date of death (both such nearest dates being within a reasonable period), and by prorating the difference between such mean prices to the date of death, and by adding or subtracting, as the case may be, such prorated portion of the difference to or from the mean price obtaining on such nearest date before the date of death. For example, assume that sales of stock nearest the date of death (June 15) occurred 2 days before (June 13) and 3 days after (June 18) and that on such days the mean sale prices per share were $10 and $15, respectively. The price of $12 shall be taken as representing the fair market value of a share of such stock as of the date of death. If, however, on June 13 and 18 the mean sale prices per share were $15 and $10, respectively, the price of $13 shall be taken as representing the fair market value of a share of such stock as of the date of death. If the security was listed on more than one exchange, the records of the exchange where the security is principally dealt in should be employed. In valuing listed stocks and bonds the executor should observe care to consult accurate records to obtain values as of the date of death.

Dividends declared on shares of stock prior to the death of the decedent but payable to stockholders of record on a date after his death are not includable in his gross estate for estate tax purposes. However, in a case where the stock is being traded on an exchange and is selling ex-dividend on the date of the decedent's death, the amount of the dividend should not be included in the gross estate as a separate item but should be added to the ex-dividend quotation in determining the fair market value of the stock as of the date of the decedent's death.

In the case of stocks and bonds which are not listed upon an exchange, but are dealt in through brokers or have a market, the fair market value shall be determined by taking the mean between the highest and lowest selling prices as of the date of death; or, if there were no sales on that date, such value shall be determined by taking the mean between the highest and lowest sales on the nearest date before and the nearest date after the date of death (both such nearest dates being within a reasonable period), and by prorating the difference between such mean prices to the date of death, and by adding or subtracting, as the case may be, such prorated portion of the difference to or from the mean price obtaining on such nearest date before the date of death. If quotations are obtained from brokers, or evidence as to the sale of securities is obtained from the officers of the issuing companies, copies of the letters furnishing such quotations or evidence of sale should be attached to the return.

If actual sales are not available during a reasonable period beginning before and ending after the date of death, the fair market value may be determined by taking the mean between the bona fide bid and asked prices on the nearest date before and the nearest date after the date of death (both such nearest dates being within a reasonable period), and by prorating the difference between such mean prices to the date of death, and by adding or subtracting, as the case may be, such prorated portion of the difference to or from the mean price obtaining on such nearest date before the date of death. If actual sale prices or quoted bona fide bid and asked prices are available on a date within a reasonable period prior to the date of death, but if no actual sale prices or bona fide bid and asked prices are available on a date within a reasonable period after the date of death, or vice versa, then the mean between such highest and lowest available sale prices or bid and asked prices may be taken as the value.

*Inactive unlisted stock and stock in close corporations* should be valued upon the basis of the company's net worth and earning capacity. Attach to each set of schedules balance sheets and earning statements of such companies for five years preceding the date of death. If there were any sales of these securities within a reasonable period before or after the date of death, furnish a statement of such sales, showing the number of shares sold and the prices at which sold.

*Securities returned as of no value* or of nominal value should be listed last and a statement furnished of the reasons for returning them as of no value or of nominal value.

*Accrued interest on bonds* should be computed to the date of death and reported separately.

*Community Property.* If a decedent died after April 18, 1943, a transfer of property held as community property by the decedent and surviving spouse under the law of any state, territory, or possession of the United States, or any foreign country, shall be considered to have been made by the decedent, except such part thereof as may be shown to have been received as compensation for personal services actually rendered by the surviving spouse or derived originally from such compensation or from separate property of the surviving spouse. This reference to community property applies not only to Schedule B but also to Schedules C, E, F and G.

## SCHEDULE C—MORTGAGES, NOTES AND CASH

*The five classes of property in this schedule should be listed separately in the order given.*

*Mortgages.* State (1) the face value and the unpaid balance (2) the date of mortgage, (3) the name of maker, (4) property mortgaged, (5) interest date and rate of interest, (6) the date to which interest was paid, and (7) date of maturity. *Add* accrued interest to date of death.

*Notes.* Give similar data.

*Contract by Decedent to Sell Land.* Give name of vendee, date of contract, description of property, sale price, initial payment, amounts of installment payments, unpaid balance of principal and accrued interest, interest rate, and date prior to decedent's death to which interest had been paid.

*Cash in Possession.* List separately from bank deposits.

*Cash in Bank.* Give name of bank and address, amount in bank, accrued interest, if any.

## SCHEDULE D—INSURANCE

*Insurance.* Include all insurance upon the life of the decedent, *stating whether payable to the estate or to a named beneficiary.* For annuities, see instructions under Schedule I.

## SCHEDULE E—JOINTLY OWNED PROPERTY

All property of whatever kind or character, whether real estate, personal property, bank accounts, etc., in which the decedent held at the time of his death an interest either as a joint tenant, a tenant by the entirety or as an owner of community property, must be returned under this schedule.

The full value of the property must be included, unless it can be shown that a part of the property originally belonged to the other tenant or tenants and was never received or acquired by the other tenant or tenants from the decedent for less than a fair consideration in money or money's worth.

Where it is shown that the property or any part thereof, or any part of the consideration with which the property was purchased, was acquired by the other tenant or tenants from the decedent for less than an adequate and full consideration in money or money's worth, there should be omitted from this schedule only so much of the value of the property as is proportionate to the consideration furnished by such other tenant or tenants.

Where the property was acquired by gift, bequest, devise, or inheritance by the decedent and spouse as tenants by the entirety, then only one-half of the value of the property should be listed on this schedule. Where the property was acquired by the decedent and another person or persons by gift, bequest, devise, or inheritance as joint tenants, and their interest are not otherwise specified or fixed by law then there should be entered on this schedule only such fractional part of the value of the property as is obtained by dividing the full value of the property by the number of joint tenants.

If the executor contends that less than the value of the entire property is includable in the gross estate for purposes of the tax, the burden is upon him to show his right to include such lesser value, and in such case he should make proof of the extent, origin, and nature of the decedent's interest and the interest of decedent's co-tenant or co-tenants.

If the property consists of real estate, the assessed valuation thereof for the year of death should be shown, and the estimated market value as of the date of death should be furnished, supported by an appraisal made by a competent real estate appraiser.

Property in which the decedent held an interest as a tenant in common should not be listed here but the value of his interest therein should be returned under Schedule A if real estate, or if personal property under the appropriate schedule. The value of the decedent's interest in a partnership should be reported under Schedule F.

## SCHEDULE F—OTHER MISCELLANEOUS PROPERTY

Under this schedule include all items of gross estate not returned under another schedule, including the following: Debts due the decedent, interests in business, claims, rights, royalties, pensions, leaseholds, judgments, shares in trust funds or in estates of other decedents, household goods and personal effects including wearing apparel, farm products and growing crops, livestock, farm machinery, automobiles, etc.

When an interest in a copartnership or unincorporated business is returned, submit statement of assets and liabilities as of date of death and for the five years preceding death, and statement of the net earnings for the same five years; also salary of decedent. Good will must be accounted for.

*In listing automobiles,* give make, model, year, and condition as of date of decedent's death.

Give title of schedule and total each schedule.

*It is not necessary to submit a schedule unless the property in the estate requires its use, nor is it necessary*

ing capacity. Attach to each set of schedules balance sheets and earning statements of such companies for five years preceding the date of death. If there were any sales of these securities within a reasonable period before or after the date of death, date of death and for the five years preceding death, and statement of the net earnings for the same five years; also salary of decedent. Good will must be accounted for.

In listing automobiles, give make, model, year, and condition as of date of decedent's death.

TT 143 A

Give title of schedule and total each schedule.
It is not necessary to submit a schedule unless the property in the estate requires its use, nor is it necessary to place each schedule on a separate sheet unless that is more convenient in the preparation of the schedule.

| DESCRIPTION | AMOUNT | Values as Appraised in this Proceeding (Leave this blank) |
|---|---|---|
| SCHEDULE A - Real Estate | | |
| NONE *Located State of California* | | |
| SCHEDULE B - Stocks and Bonds | | |
| 1. 100 shares no par value preferred stock of MARILYN MONROE PRODUCTIONS, INC. Said preferred stock is the corpus of a trust. A copy of Trust Indenture is hereto annexed. | | |
| 2. 101 shares of common stock no par value of MARILYN MONROE PRODUCTIONS, INC. | *61,750.19* $ 7,250.19 | |
| SCHEDULE C Mortgages, Notes and Cash | | |
| 1. Cash at decedent's N.Y. Residence | 3.50 | |
| 2. Checking Account - Irving Trust Co. | 2,334.65 | |
| 3. Savings Account - Bowery Savings Bank | 614.29 | |
| 4. Savings Account - Excelsior Savings Bank | 1,171.06 | |
| 5. Account First National City Bank | 84.67 | |
| 6. Account - City National Bank of Beverly Hills, Beverly Hills, Calif. | 2,200.00 | |
| 7. Cash at decedent's California residence | 405.00 | |
| | $ 6,813.17 | |
| SCHEDULE D - Insurance | | |
| 1. Union Labor Life Insurance No.1263, payable to the decedent's estate | $ 3,000.00 | |
| SCHEDULE E Jointly Owned Property NONE | | |
| SCHEDULE F Other Miscellaneous Property | | |
| 1. Furs and miscellaneous jewelry from New York apartment | $ 1,423.00 | |
| 2. Personal effects and clothing and furniture at decedent's apartment at 444 W. 57th St., New York City | 11,057.00 | |
| 3. Clothing and personal effects at decedent's residence in California | 1,558.00 *-0-* | |
| 4. Furniture and furnishings at decedent's residence in California | 2,486.00 *-0-* | |
| *Federal Line Audit Annexed.* | | (Cont.) |

TT 141 A

Give title of schedule and total each schedule.
It is not necessary to submit a schedule unless the property in the estate requires its use, nor is it necessary to place each schedule on a separate sheet unless that is more convenient in the preparation of the schedule.

| DESCRIPTION | AMOUNT | Values as Appraised in this Proceeding (Leave this blank) |
|---|---|---|
| SCHEDULE F (Cont.) | | |
| 5. Refund of NYState income tax for 1962 | $ 4,935.36 | |
| 6. Return of premium on NY Insurance Fund | 10.85 | |
| 7. Return of premium on Royal Insurance Co. policy | 351.05 | |
| 8. Commuted value after payment of taxes of decedent's rights pursuant to contract dated 7/1/58 between decedent and Ashton Productions, Inc. pertaining to motion picture "SOME LIKE IT HOT" and | | 593,675.89 |
| in contract between decedent and Seven Arts Productions, Inc. dated 1/30/60 pertaining to the motion picture film "THE MISFITS" | 140,920.00 | 153,008.31 |
| 9. Decedent's share in Profit Sharing Plan Marilyn Monroe Productions, Inc. | 13,832.45 | |
| | ~~$176,573.71~~ | ~~[illegible]~~ 90 |
| Total F = $764,461.45 | | |
| SCHEDULE G<br>Transfers During Decedent's Life | | |
| 1. The decedent created a trust on October 26, 1959 for the benefit of her mother, Gladys Baker, to which the decedent transferred 100 shares of preferred stock of Marilyn Monroe Productions, Inc. This trust is disclosed for information purposes only, as it is not includible in the decedent's gross estate. Though this transfer was made within three years before decedent's death such transfer was not made in contemplation of death. Decedent's motive of making the said transfer was to provide an annual income to her mother and at the time of such transfer there was no contemplation of death and no undue influence. preferred | 1000.00 | |
| SCHEDULE H<br>Powers of Appointment<br>NONE | | |
| SCHEDULE J<br>Funeral and Administration Expenses | | |
| 1. Westwood Memorial Funeral expenses | $ 4,352.00 | |

TT 143 A

Give title of schedule and total each schedule.
It is not necessary to submit a schedule unless the property in the estate requires its use, nor is it necessary to place each schedule on a separate sheet unless that is more convenient in the preparation of the schedule.

| DESCRIPTION | AMOUNT | Values as Appraised in this Proceeding (Leave this blank) |
|---|---|---|
| SCHEDULE J - (Cont.) | | |
| 2. Bel Air Patrol Co. - guarding property | $ 1,982.75 | |
| 3. Norman Jefferies - handy man services | 360.00 | |
| 4. Landon Pool Service - pool maintenance | 496.52 | |
| 5. Edward P. Halavaty - lock and key services | 71.55 | |
| 6. West L.A. Patrol - guarding property | 1,325 00 | |
| 7. General Telephone | 123.35 | |
| 8. Sam Tateishi - gardener | 939.55 | |
| 9. Department of Water and Power - water and electricity | 203.31 | |
| 10. Southern Counties Gas Co. | 185.62 | |
| 11. Appraisal Bureau | 220.00 | |
| 12. Actual Appraisal Co.,Inc. for appraisal | 300.00 | |
| 13. Appraiser | 96.78 | |
| 14. Rovins & West, - insurance on decedent's household effects for two years | 1,989.96 | |
| 15. J. Santini & Bros., Inc. - storage charges | 2,021.00 | |
| 16. Bekins Van & Storage | 54.10 | |
| 17. Cherie Redmond - secretarial services | 689.30 | |
| 18. Fidelity Van & Storage | 767.45 | |
| 19. Eunice Murray - housekeeping after death | 400.00 | |
| 20. Mura Bright - services and expenses reimbursement | 181.60 | |
| 21. Estimated additional administration expenses for storage of personal and household effects increases at the rate of 197.75 per month - estimated additional 12 months charges until disposed of | 2,373.00 | |
| Total J | $ 19,132.84 | |

TT 1?? A

Give title of schedule and total each schedule.
It is not necessary to submit a schedule unless the property in the estate requires its use, nor is it necessary to place each schedule on a separate sheet unless that is more convenient in the preparation of the schedule.

| DESCRIPTION | AMOUNT | Values as Appraised in this Proceeding (Leave this blank) |
|---|---|---|
| SCHEDULE K - Debts of Decedent | | |
| 1. James M. Attley d/b/a V. Adair Co. window screens | $ 29.85 | |
| 2. Don J. Briggs, Inc. - merchandise sold delivered | 215.41 | |
| 3. Buzin News Co. - advertising | 94.00 | |
| 4. State of California Department of Employment | 99.18 | |
| 5. Drs. Conti and Steinberg - professional services | 25.00 | |
| 6. C & J Howard, Inc. c/b/a Landon Pool Service | 37.00 | |
| 7. Consolidated Edison, electric service | 29.89 | |
| 8. Dr. Hyman Engelberg, for professional services | 478.00 | |
| 9. Agnes M. Flanagan - hair styling | 840.00 | |
| 10. Francis-Orr Stationery Co. | 5.55 | |
| 11. General Telephone, telephone bill | 274.61 | |
| 12. Robert K. Goka d/b/a Frank's Nurseries - trees etc. | 59.64 | |
| 13. Dr. Ralph R. Greenson, for professional services | 1,400.00 | |
| 14. Austin A. Innes - carpentry | 45.17 | |
| 15. Arthur P. Jacobs - reimbursement of expenses | 797.85 | |
| 16. Norman Jefferies | 180.00 | |
| 17. 444 Management Co. for amounts due with respect to decedent's N.Y. apartment | 2,290.00 | |
| 18. Magnetic Springs Water Co. - spring water | 3.60 | |
| 19. Malone Studios Service, Inc. - cleaning of clothes | 111.50 | |
| 20. New York Telephone Co. | 40.36 | |
| 21. Jack M. Ostrow, accountant's fees | 2,500.00 | |
| 22. The Pacific Telephone & Telegraph Co. telephone services | 14.66 | |
| 23. Jose Paraeo - tile work | 66.00 | |
| 24. Raese Period Furniture - gates, 7 hinges | 313.92 | |
| 25. Rand-Fields, Inc. - airline tickets | 205.59 | |
| 26. Santa Monica Dairy Co. - dairy products | 6.06 | |
| 27. Saks Fifth Avenue - clothes etc. | 388.32 | |
| 28. Allan Snyder, professional photographer | 1,800.00 | |
| 29. A. Ray Tolman, for work done at decedent's California residence | 150.00 | |
| 30. Sam S. Tateishi - gardening services | 40.00 | |
| 31. H.B. Thompson d/b/a Thompson Electric Co. labor and material | 111.45 | |
| 32. Vincente Pharmacy - drugs | 58.57 | |
| 33. Weissberger & Frosch, legal and accounting services | 15,000.00 | |
| 34. Gang,Tyre,Rudin & Brown - legal services | 10,000.00 | |
| 35. Affiliated Telephone Answering Service Inc. | 19.10 | |
| 36. Elizabeth Arden | 93.55 | |
| 37. Mura Bright - goods, merchandise and services rendered | 1,050.67 | |

(Cont.)

TT 143 A

Give title of schedule and total each schedule.
It is not necessary to submit a schedule unless the property in the estate requires its use, nor is it necessary to place each schedule on a separate sheet unless that is more convenient in the preparation of the schedule.

| | DESCRIPTION | AMOUNT | Values as Appraised in this Proceeding (Leave this blank) |
|---|---|---|---|
| 38. | Con Edison - gas and electricity | $ 6.05 | |
| 39. | California Franchise Tax - 1962 income tax | 2,614.24 | |
| 40. | California Department of Employment repayment of refund made to estate in error | 36.00 | |
| 41. | District Director of Internal Revenue Social Security Tax, third quarter | 102.98 | |
| 42. | Guido De Angelis, Inc. - goods sold | 948.87 | |
| 43. | Joseph P. DiMaggio - personal loan | 5,000.00 | |
| 44. | Felsen Associates, Inc. | 90.50 | |
| 45. | Cristede Bros. - grocery bill | 12.91 | |
| 46. | Globe Photos, Inc. - hotographic services | 5,000.00 | |
| 47. | Edward P. Halavaty | 17.28 | |
| 48. | B.J. Denihan - for cleaning services | 1,241.60 | |
| 49. | Internal Revenue Service, decedent's 1962 Federal Income tax | 21,724.72 | |
| 50. | Paul J. Juley d/b/a Peter A. Juley & Son | 262.65 | |
| 51. | M. Buzin & Sons | 150.00 | |
| 52. | Eunice Murray, services in remodeling and decorating decedent's house in Calif. | 1,000.00 | |
| 53. | MCA Artists, Ltd., asserted claim against the decedent | 80,168.44 ✓ (112,728.61) | |
| 54. | New York State Unemployment Insurance | 105.61 | |
| 55. | New York State Department of Labor Division of Employment | 203.66 | |
| 56. | New York State Unemployment Insurance Fund Third quarter taxes | 1.85 | |
| 57. | Harold Ostley - Tax Collector - items of personal property held by storage company | 8.02 | |
| 58. | Pinkerton's National Detective Agency | 578.25 | |
| 59. | Pinto Winokur & Pagano, Certified Public Accountants - professional services rendered | 2,000.00 | |
| 60. | Heda Rosten | 882.01 | |
| 61. | Ralph Roberts | 470.00 | |
| 62. | Bill A. Pearson | 1,000.00 | |
| 63. | Paula Strasberg - services rendered and expenses in connection therewith | 22,269.37 (32,269.37) | |
| 64. | Hattie Stephenson - work, labor and services | 140.00 | |
| 65. | Twentieth Century-Fox, asserted claim against the decedent - claim contested | -0- (500,000.00) | |
| 66. | United Air Lines, Inc. for travelling | 411.18 | |
| 67. | United California Bank | 100.00 | |
| 68. | District Director Internal Revenue Assessment against decedent's Federal Income taxes for the year 1958 | 22,665.49 | 84,092.78 |
| 69. | Assessments for the year 1959, 1960 and 1961 payable to the District Director Internal Revenue | 30,000.00 | 10,599.04 / 22.25 / 3085.39 |
| 70. | Additional income tax assessments for the years, 1958, 1959, 1960 and 1961 payable to New York State Income Tax Bureau - estimated | 10,000.00 | 74,000 / Total 174,002.9[illegible] |
| | | $830,646.35 | 359,423.[illegible] |

TT 143 A

Give title of schedule and total each schedule.
It is not necessary to submit a schedule unless the property in the estate requires its use, nor is it necessary to place each schedule on a separate sheet unless that is more convenient in the preparation of the schedule.

| DESCRIPTION | AMOUNT | Values as Appraised in this Proceeding (Leave this blank) |
|---|---|---|
| SCHEDULE L<br>Mortgages and Liens, and Net Losses During Administration<br>NONE | | |
| SCHEDULE M<br>Matiral Deduction for Transfers to Surviving Spouse<br>NONE | | |
| SCHEDULE N<br>Charitable,Public, and Similar Gifts and Bequests<br>NONE | | |
| SCHEDULE O<br>Beneficiaries | | |
| 1. Bernice Miracle - 330 So.West 27th St. Gainesville, Florida - decedent's sister- Legacy of | $ 10,000.00 | 5000 Exempt. |
| 2. May Reis - 299 West 12th St.,New York City Specific legacy of plus $40,000.00 or 25% of the residuary estate whichever shall be the lesser amount. | 10,000.00 | |
| 3. Norman and Hedda Rosten - 84 Remsen St., Brooklyn, New York - Legacy of | 5,000.00 | |
| 4. Lee Strasberg,135 Central Park West, New York City, N.Y. Legacy of personal effects, clothing plus the balance of the residuary estate. | | |
| 5. Gladys Baker - decedent's mother c/o Inez C.Melson,9110 Sunset Blvd., Los Angeles 69, Calif. Inez C.Melson was, by order of the Superior Court of the State of California for the County of Los Angeles dated December 22,1959,appointed conservator of the person of the said Gladys Eley a/k/a Gladys Baker. Beneficiary for life - life income of $5,000.00 per annum. | Mother 5000 | Exempt. |
| 6. Mrs. Michael Chekhow - 3374 Rowena, Los Angeles, Calif.- beneficiary for life - life income of $2500.00 per annum. | | |
| 7. DR. Marianne Kris, 135 Central Park West, New York City. Remainderman of Trust plus 25% of the residuary estate. | | |

[illegible] should be described by [illegible] and the name of the court in which rendered, date of judgment, name and address of judgment debtor, amount of judgment, rate of interest to which subject, whether any payments have been made thereon, and if so, when and in what amounts.

SCHEDULE G—TRANSFER DURING DECEDENT'S LIFE

Certain gifts, trusts and other transfers made during life are subject to estate tax and must be included in the gross estate in this schedule. A *bona fide* sale for an adequate and full consideration in money or money's worth is not subject to tax, but a release of marital rights does not constitute such consideration, and transfer in consideration of such a release may be taxable. The transfers which are subject to estate tax include those which must be reported even though it is believed that they are not subject to tax, are as follows:

*Transfers in contemplation of death.* In the estate of a decedent who died *after April 30, 1952,* any gift or transfer without adequate consideration made within three years before death is presumed to be a transfer made in contemplation of death and must be reported. Where it is claimed that any such transfer was not made in contemplation of death, there should be filed with the return a copy of the death certificate and an [illegible] making the transfer and his mental and physical condition at that time. In such an estate, transfers made more than three years before death are not deemed to have been made in contemplation of death and need be reported only if they come within one of the other classifications set forth in these instructions.

In the estate of a decedent who died *before May 1, 1952,* transfers without adequate consideration made within two years before death are presumed to have been made in contemplation of death, and transfers made more than two years before death may also be subject to tax on this ground, depending upon the circumstances. In such an estate, any transfer of a material part of his property made by the decedent at any time during his life without adequate consideration must be reported, and if it is claimed that any such transfer was not made in contemplation of death, proof of the material facts should be submitted as indicated in the preceding paragraph.

*Transfers with income, possession or enjoyment retained by decedent.* There must be reported in this schedule all transfers under which the decedent retained for his life, or for any period not ascertainable without reference to his death, or for any period which did not in fact end before his death, the income, possession or enjoyment of the property transferred. There must also be reported all transfers under which the decedent retained, either alone or with any other person, the right to determine the persons who should possess or enjoy the property or its income.

*Transfers taking effect on death.* There must be reported any transfer under which the transferee could obtain possession or enjoyment of the property only by (1) surviving the decedent, or (2) surviving either the decedent's death or some other event, and such other event did not in fact occur during the decedent's life. Such transfers must be reported whether or not the decedent retained any right or interest in the property transferred. If it is claimed that any such transfer is not taxable, a copy of the instrument of transfer must be submitted with a statement of the relevant facts. If the instrument of transfer retained for the decedent a reversionary interest in the property (i.e., a possibility that the property might return to him or his estate, or might be subject to disposition by him), show the value of such interest immediately before death.

*Transfers subject to decedent's power to alter, amend, revoke or terminate.* There must be included in the gross estate under this schedule all property transferred by decedent at any time during his life with reference to which he possessed at the date of death, or relinquished in contemplation of death, a power to alter, amend, revoke or terminate the transfer or the interests of the transferees. Such transfers must be included regardless of the capacity in which he could exercise his power (i.e., whether as trustee or otherwise), whether the decedent possessed his power alone or in conjunction with any other person, and also without regard to when or from what source he acquired such power. Any transfer with reference to which the decedent released such a power must be reported if the release was made under such circumstances as would require that a transfer of property made under similar circumstances be reported pursuant to the foregoing instructions with reference to "Transfers in Contemplation of Death."

SCHEDULE H—POWERS OF APPOINTMENT

[illegible] a general power of appointment is a power to control the disposition of property, such as a power given to the decedent by the will of another person or under a trust created by another person. There must be reported in this schedule any power of appointment at any time possessed, released or exercised by the decedent and the property subject to such power, even though it is believed that such property is not subject to tax in his estate. [illegible] following paragraphs indicate when property subject to a power of appointment is subject to tax. In the estate of a decedent who died after April 30, 1952, in the estate of prior decedents, refer to paragraphs 7 and 7-a of section 249-[illegible] of the Tax Law [illegible] date of death.

Property subject to a general power of appointment created after October 21, 1942 is subject to tax if the decedent possessed such power at his death regardless of whether or not the [illegible] exercised the power by his will, and also if he exercised or released the power during his life in a manner which would make a transfer of his own property subject to estate tax. (See instructions under Schedule G above.) Property subject to a general power of appointment created on or before October 21, 1942 is subject to tax if the decedent either by his will or otherwise exercised the power in a manner which would make a transfer of his own property subject to tax, or if the decedent failed to exercise [illegible]. Subject to certain exceptions set forth in section 249-[illegible] of the Tax Law, a power of appointment which the decedent could have exercised in favor of himself, his estate, his creditors or creditors of his estate, is a general power of appointment.

Property passing under the exercise of certain special or limited powers of appointment created before September 1, 1930 is also subject to tax. See Tax Law, section 249-r (7-a).

SCHEDULE I—ANNUITIES

Report here all annuities or other payments receivable by any person by reason of surviving the decedent, under any form of contract or agreement made after March 9, 1931 (other than an insurance policy on decedent's life), under which the decedent possessed the right to receive, alone or in conjunction with another person, an annuity, or other payment for his life, or for any period not ascertainable without reference to his death, or for any period which did not in fact end before his death.

In the estate of a decedent who died after April 30, 1955, the value receivable by a beneficiary under any such contract or agreement is taxable in proportion to the part of the purchase price contributed by the decedent or by his employer, exclusive of any employer's contributions under a pension, stock bonus or profit-sharing plan qualified for income tax exemption. If any portion of the value receivable by a beneficiary is claimed to be nontaxable, all relevant facts must be shown, including the total purchase price of the contract or agreement and the amounts contributed towards such purchase price by the decedent, by his employer, and by any other person.

In describing an annuity, the date of the contract and the name and address of the grantor of the annuity should be given, or, if payable out of a trust or other fund, such a description as will fully identify it. If payable for a term of years, the duration of the term and the date on which it began should be given, and if payable for the life of a person other than the decedent, the date of birth of such person should be stated.

Describe all policies or contracts fully, such as joint and surviving annuities, or refund annuities, as the case may be.

SCHEDULE J—FUNERAL AND ADMINISTRATION EXPENSES

Funeral expenses and administration expenses should be itemized. Give name of creditor and exact nature of the expense. No deduction should be taken on the basis of a vague or uncertain estimate but a close estimate is deductible. Where an amount is estimated, indicate that fact.

Attorneys' fees should be deducted in the amount paid or to be paid. If the fees have not been paid and the amount thereof is estimated, indicate that fact.

Attorneys' fees incident to litigation instituted by the beneficiaries as to their respective interest do not constitute a proper deduction inasmuch as expenses of this character are properly charged against the beneficiary personally and are not administration expenses as contemplated by the statute.

Executors' or administrators' commissions should be entered in the amount actually paid or which it is reasonably expected will be paid, not to exceed the amount allowable under the statute governing such deductions.

Estate, legacy, succession and inheritance taxes, and taxes on income received after death, are not deductible.

Deductions under this schedule and also under Schedules K and L are limited to the value of property included in the gross estate which is subject to claims, that is, property out of which such deductions would be payable in the final settlement of the estate, except that if the decedent died after April 30, 1955, deductions which represent amounts actually paid within eighteen months after decedent's death may be allowed regardless of such limitation.

SCHEDULE K—DEBTS OF DECEDENT

Itemize fully all valid debts of the decedent due and owing at the time of death.

*Contested Claims.* If the executor or administrator contests any claim, that fact should be indicated. No deduction will be allowed for a debt the amount of which is disputed, or the subject of litigation, exceeding the amount which the estate concedes to be a valid claim.

Any enforceable claim founded upon a promise or agreement of the decedent to make a contribution or gift (such as a pledge or a subscription) to or for the use of a charitable, public, religious, etc., organization is deductible to the extent that such a deduction would be allowable as a bequest under the applicable statute.

SCHEDULE L—MORTGAGES AND LIENS, AND NET LOSSES DURING ADMINISTRATION

Itemize under this schedule only obligations secured by mortgages or other liens upon property included in the gross estate at the full value thereof or the value of the property undiminished by the amount of the mortgage or lien.

Give location of property, name of mortgagee, date and term of mortgage, face amount, unpaid balance, rate of interest and date to which interest was paid prior to death. Identify by item number as listed in Schedule A the property securing each mortgage. Show accrued interest accrued to date of death. Mortgages upon, or any indebtedness in respect to, property included in the gross estate is deductible only to the extent that the liability for the mortgage or indebtedness was incurred or contracted bona fide and for an adequate and full consideration in money or money's worth received by the decedent. Unsecured notes should be listed in Schedule K.

A mortgage may not be deducted in an amount in excess of the appraised value of the property unless the estate is liable on a bond accompanying the mortgage.

*Losses.* Losses are strictly limited to those arising from fire, storm, shipwreck, or other casualty, or from theft, to the extent that such losses are not compensated for by insurance or otherwise. Losses must occur during the settlement of the estate and shall be allowed only if at the time of the filing of the return such losses have not been claimed as a deduction for income tax purposes in an income tax return. Depreciation in the value of securities or other property does not constitute a deductible loss. In listing losses, full particulars must be given not only as to the loss sustained, but the cause thereof, and in the case of death of livestock, the cause of death must be stated, if known. If insurance or other compensation was received on account of loss, state the amount collected.

## SCHEDULE M—MARITAL DEDUCTION FOR TRANSFERS TO SURVIVING SPOUSE

If the decedent died after September 30, 1950, and if any interest in property listed in Schedules A to I, inclusive, passes to the surviving spouse, a marital deduction may be allowable under section 249-s (3) of the Tax Law. This deduction may be claimed by submitting Schedule M in accordance with these instructions.

In general, a marital deduction is allowable only for (1) property passing into the absolute ownership of the surviving spouse; or (2) a life estate and power of appointment, given to the surviving spouse, which satisfies the requirements of section 249-s (3) (f) of the Tax Law; or (3) life insurance, endowment, or annuity proceeds held by the insurer for the benefit of the surviving spouse, under a contract which satisfies the requirements of section 249-s (3) (g). The fact that decedent's will contains a "common disaster clause," or a provision making the surviving spouse's interest conditional upon survival of the decedent by a period of not more than six months, will not prevent allowance of a marital deduction if the spouse does not in fact die as the result of a common disaster or within the time specified in the will.

If a marital deduction is claimed, there should be listed in Schedule M, separately, each interest in property passing to the surviving spouse for which such deduction is allowable. If such interest passes to the surviving spouse under decedent's will, specify the part of the will which applies. If the interest of the surviving spouse relates to specific items of property listed in Schedules A to I, inclusive, specify the schedule and item number under which such property is listed. If the residue or a part of the residue, passes to the surviving spouse, there should be submitted a computation showing how the value of the residue was arrived at. If the interest passing to the surviving spouse is subject to any encumbrance (for example, a mortgage), only the net value over and above such encumbrance is deductible.

If any estate or other death tax (State or Federal) is payable, in whole or in part, out of the interests of the surviving spouse, Schedule M must include a computation of the amount of such tax, and of the amount thereof payable out of or chargeable against the surviving spouse's interests.

If the interest of the surviving spouse in any property listed in this schedule is affected by (1) a proceeding to contest the will or for judicial construction of the will, instituted or intended by any party; or (2) exercise or non-exercise of the surviving spouse's right to elect other benefits as against the will; or (3) a claim to any of said property asserted by any party other than the surviving spouse; the facts must be fully stated in this schedule.

No deduction is allowable for an interest disclaimed by the surviving spouse, or for an interest passing to the surviving spouse as the result of a disclaimer by any other person.

The amount of the marital deduction cannot exceed 50% of the balance remaining after subtracting the deductions allowable under Schedules J. to L, inclusive, from the total of Schedules A to I, inclusive.

## SCHEDULE N—CHARITABLE, PUBLIC, AND SIMILAR GIFTS AND BEQUESTS

If deduction is claimed, an affidavit made by the executor showing whether the decedent's will has been, or to the best of his knowledge, information and belief, will be contested, should be submitted.

If claim is made for deduction of the value of the residue or of a portion thereof (*e.g.*, present worth of a remainder interest in the residue), there should be submitted the computation whereby the value was determined.

Where under the terms of the will or the law of the jurisdiction wherein the estate is administered or the law of the jurisdiction imposing the particular tax, the Federal estate tax or any estate, succession, legacy, or inheritance tax is payable in whole or in part out of any bequest, legacy, or devise deductible hereunder, the sum deductible is the amount of such bequest, legacy, or devise so reduced.

## SCHEDULE O—BENEFICIARIES

Give the name and address of all persons beneficially interested in this estate, showing the nature of their respective interests, their relationship, if any, to the decedent, and the extent of their interest.

Show the age, at the time of the decedent's death, of all minors, annuitants, and beneficiaries for life. If any of the beneficiaries named in the will died prior to the decedent, indicate that fact and show the date of death and survivors, and the relationship of such survivors to the decedent.

NOTICE: Section 249-v of the Tax Law provides for a fine or imprisonment or both for making any false or fraudulent statement or supply any false or fraudulent information in connection with estate taxes.

Surrogate's Court
COUNTY OF New York

IN THE MATTER OF THE APPRAISAL UNDER THE ESTATE TAX LAW OF THE ESTATE OF MARILYN MONROE, Deceased

RETURN and SCHEDULES

FILED ON BEHALF OF AARON R. FROSCH, Executor

WEISSBERGER & FROSCH, Attorney for Executor

120 East 56th Street
Address New York 22, New York

# EXHIBIT
# 13

Filed separately under seal pursuant to Protective Order

# EXHIBIT
# 14

Filed separately under seal pursuant to Protective Order

# EXHIBIT 15

Filed separately under seal pursuant to Protective Order

# EXHIBIT

# 16

Filed separately under seal pursuant to Protective Order