1  <u>Estate of Marilyn Monroe</u>:    LASC No. 458,935

3           said attorneys believe, and therefore, allege
4  that for their services in connection with all of the fore-
5  going matters, a reasonable attorneys' fee would be not less
6  than $15,000.00; but in view of the fact that the estate in
7  California is relatively small (even though the domiciliary
8  estate is substantially larger), said attorneys have requested
9  the court to allow $12,000 as an extraordinary attorneys'
10 fee herein.
11 200 hrs for 12,000 = 60/hr.

EXHIBIT III
(28)

SGAI 0196

State of New York
County of New York

(VERIFICATION—446 and 2015.5 C.C.P.)

I, the undersigned (being first duly sworn), say: I am the **petitioner** in the above entitled proceeding; I have read the foregoing PETITION FOR ALLOWANCE OF STATUTORY AND EXTRAORDINARY COMMISSIONS AND FOR OTHER RELIEF INCLUDING ALLOWANCE FOR FEES OF SPECIAL ADMINISTRATOR AND COUNSEL AND AUTHORIZING DEPOSIT OF MONEYS DUE UNLOCATED CLAIMANT and know the contents thereof; and that the same is true of my own knowledge, except as to the matters and things which are therein stated upon my information or belief, and that as to those matters and things I believe them to be true.

I certify (or declare) under penalty of perjury that the foregoing is true and correct.

Executed on _____ (date) _____ at _____ (place) _____

Subscribed and sworn to before me this 29th
day of April, 19 76

(X) /s/ Aaron R. Frosch
(Signature) Aaron R. Frosch

Notary Public in and for the said County and State.
[SEAL]

If certification (or declaration) is used instead of a notarized affidavit, cross out "being first duly sworn" and the jurat and omit notarization. Certification (or declaration) form cannot be used outside of California. If notarization is used, cross out statement of certification.

(PROOF OF SERVICE BY MAIL—1013a, and 2015.5 C.C.P.)

AFFIDAVIT OF SERVICE
BY MAIL

State of California
County of Los Angeles

I, _____, (being first duly sworn) say that I am and was at all times herein mentioned, a citizen of the United States and employed in the County of Los Angeles, over the age of eighteen years and not a party to the within action or proceeding; and that:

My business address is _____

On _____, 19____, I served the within _____

_____

in said action, by depositing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed to the attorney(s) of record for said _____ at the office address of said attorney(s), as follows:

I certify (or declare) under penalty of perjury that the foregoing is true and correct.

Executed on _____ (date) _____ at _____ (place) _____, California

_____ (Signature)

Subscribed and sworn to before me this _____

SFAI 0197



SERVICES RENDERED

ESTATE OF MARILYN MONROE

CALENDAR - FEBRUARY, 1963:

**February 1 and 2, 1963:**  3½ Hours

Telephone conversation with Aaron Frosch regarding accounting for 1962 for Mrs. Miner.
Trip to house to check on everything and let pool man and gardener in.

**Week Ending 2/9/63:**  5 Hours

Two trips to house to check on everything and let pool man and gardener in.

**Week Ending 2/16/63:**  6 Hours

Valentine's Telegram - NYC 2/13/63.
Miscellaneous telephone calls.
Two trips to house to check on everything and let pool man and gardener in.

**Week Ending 2/23/63:**  15½ Hours

Meeting with Al Hanson, real estate broker.
Received letter from Howard La Shaw regarding W-2. Necessary telephone calls to make arrangements to get W-2.
Preparation of papers covering cost of house and furnishings.
Two trips to house to check on everything and let pool man and gardener in.

**Week Ending 2/28/63:**  4 Hours

Telephone conversations with Santa Monica office of Department of Employment regarding a matter. In addition, time spent going thru files to obtain information that they requested.
Regarding item in Hollywood Reporter that 20th. Century Fox was releasing album of Marilyn, had telephone conversations with Aaron Frosch in order to determine whether Marilyn had any interest regarding this and whether there could be any funds coming to her from this release.
One trip to house to check on everything and let pool man and gardener in.

TOTAL HOURS FOR THE MONTH OF FEBRUARY, 1963 . . . . . . . . . 34 Hours

SFA1 0198

EXHIBIT III
(11)

B. **EXTRAORDINARY SERVICES OF INEZ C. MELSON,
   SPECIAL ADMINISTRATRIX**

SERVICES RENDERED

ESTATE OF MARILYN MONROE

By INEZ C. MELSON

HOURS:

August, 1962 . . . . . . . . . . . . . . . . . . . 136
September, 1962 . . . . . . . . . . . . . . . . . 54
October, 1962 . . . . . . . . . . . . . . . . . . 27½
November, 1962 . . . . . . . . . . . . . . . . . 30
December, 1962 . . . . . . . . . . . . . . . . . 27
January, 1963 . . . . . . . . . . . . . . . . . . 35
February, 1963 . . . . . . . . . . . . . . . . . . 22

Sub-total - hours thru February, 1963 . . . . 311

March, 1963 . . . . . . . . . . . . . . . . . . . 124
April, 1963 . . . . . . . . . . . . . . . . . . . 23
May, 1963 . . . . . . . . . . . . . . . . . . . . 112

Additional hours, 1962, per books
                                              546-1/2

Additional hours--June 1963 through
October 1963, per pages (16) and (17)
of this Exhibit III                            34-1/4

TOTAL HOURS                                   574-3/4

EXHIBIT III
(4)

SFA1 0199

1  Estate of Marilyn Monroe:   LASC No. 458,935

3  he sought an Income Tax Certificate from the
4  Franchise Tax Board in accordance with the then
5  applicable requirements of law. The Franchise
6  Tax Board responded with a claim that petitioner
7  owed the State of California fiduciary income
8  taxes for the years 1963 through 1970, based upon
9  the estate's share of gross receipts from the
10 above entitled pictures attributable to decedent's
11 services rendered in California.
12         In accordance with instructions furnished
13 by petitioner's attorneys herein, the accountants
14 for the estate prepared appropriate fiduciary income
15 tax returns for the years in question and submitted
16 them to the Franchise Tax Board under protest.
17 Extensive negotiations and discussions were then
18 carried on between said attorneys and representa-
19 tives of the Franchise Tax Board with respect to
20 the legal position of the estate that such income
21 was not subject to tax. After considering the legal
22 arguments asserted by the attorneys herein, the
23 Franchise Tax Board served notice of proposed assess-
24 ments of tax against the ancillary executor for the
25 years 1963 through 1970. Petitioner, through
26 his attorneys, appealed from such assessments,

EXHIBIT III
(25)

SFA1 0193

1  Estate of Marilyn Monroe:  LASC No. 458,935

2

3          The point in issue in the proceedin[gs is a]
4  completely novel point of law; namely, what [under]
5  California Revenue and Taxation Code and r[egulations]
6  thereunder permitted the taxati[on of the]
7  source income of receipts from contracts which [had]
8  been valued for tax purposes as assets of decedent's
9  domiciliary estate and were passively receive[d by]
10 such domiciliary estate outside of Californi[a. The]
11 question involved matters of constitutional [law,]
12 statutory construction and the interpretat[ion of]
13 the Franchise Tax Board's own rulings.
14          Extensive research was carried on by sai[d]
15 attorneys, both with respect to the facts and the
16 law; an opening brief and a reply brief were [filed]
17 in support of the estate's position.  The matter
18 came on for hearing before the Board of Equali[za-]
19 tion and was orally argued at length before the [full]
20 Board in December, 1973.
21          In 1975, the Board of Equalization ultimately
22 affirmed the Franchise Tax Board's determinati[on of]
23 tax.  The taxes, penalties and interest involved
24 totaled approximately $93,000.  Before determin[ing]
25 whether or not to appeal further, said attorne[ys]
26 discussed with the Franchise Tax Board, and subse-
27 quently with the California Attorney General's office.
28 ...
EXHIBIT III
(26)

SFA1 0194

1 Estate of Marilyn Monroe:    LASC No. 458,935
2
3        the possibility of settlement. Negotiations were
4        conducted on the basis that this was a matter of
5        first impression, that there were substantial
6        issues of law which the courts would have to
7        upon, and that it was advantageous both to
8        State and to the estate to dispose of the matter
9        as promptly as possible on a reduced basis.
10       Ultimately, after said attorneys, with the approval
11       of petitioner, had prepared and submitted various
12       proposals, the State of California agreed to a
13       settlement which waived all penalties and accepted
14       the sum of approximately $52,000, as payment in
15       full. The domiciliary estate supplied a substan-
16       tial portion of the funds necessary to make this
17       settlement possible. Said attorneys reviewed and
18       approved the settlement documents prepared. Said
19       attorneys then prepared a Petition for Order
20       
21       tended a hearing thereon, and after approval by
22       the Court, prepared the Order of Approving Compro-
23       mise. Payment has been effected and the action
24       has been dismissed.
25            In the preparation of the briefs, negotiations,
26       hearing, argument and settlement procedures, said
27       attorneys have expended in excess of one hundred
28       (100) hours.

EXHIBIT III
(27)

SFA10185

```
 1  Estate of Marilyn Monroe:    LASC No. 458,935
 2
 3               said attorneys believe, and therefore, allege
 4  that for their services in connection with all of the fore-
 5  going matters, a reasonable attorneys' fee would be not less
 6  than $15,000.00; but in view of the fact that the estate in
 7  California is relatively small (even though the domiciliary
 8  estate is substantially larger); said attorneys have requested
 9  that this Court allow, as an extraordinary attorneys'
10  fee herein.
11  200 hrs for 12,000 = 60/hr.
```

EXHIBIT III
(28)

SGAZ 0196

(VERIFICATION—446 and 2015.5 C.C.P.)

State of **New York**
County of **New York**

I, the undersigned (being first duly sworn), say: I am the **petitioner** in the above entitled proceeding; I have read the foregoing PETITION FOR ALLOWANCE OF STATUTORY AND EXTRAORDINARY COMMISSIONS AND CHARGES, INCLUDING ALLOWANCE FOR FEES OF SPECIAL ADMINISTRATORS, ATTORNEYS, CONSULTANTS AND GUARDIAN; DIRECTING DEPOSIT OF MONEYS DUE UNLOCATED CLAIMANT; AND PROVIDING FOR DISTRIBUTION and know the contents thereof; and that the same is true of my own knowledge, except as to the matters and things which are therein stated upon my information or belief, and that as to those matters and things I believe them to be true.

I certify (or declare) under penalty of perjury that the foregoing is true and correct.

Executed on _____ (date) _____ (place) _____

Subscribed and sworn to before me this 29th
day of April, 19 76

(X) _Aaron R. Frosch_
(Signature) Aaron R. Frosch

[Notary seal]

If certification (or declaration) is used instead of a notarized statement, cross out "being first duly sworn" and the jurat and omit notarization. Certification (or declaration) form cannot be used outside of California. If notarization is used, cross out statement of certification.

(PROOF OF SERVICE BY MAIL—1013a, and 2015.5 C.C.P.)

**AFFIDAVIT OF SERVICE BY MAIL**

State of California
County of Los Angeles } ss.

I, _____, (being first duly sworn) say that I am and was at all times herein mentioned, a citizen of the United States and employed in the County of Los Angeles, over the age of eighteen years and not a party to the within action or proceeding; and that:

My business address is _____

On _____, 19___, I served the within _____

_____ in said action, by depositing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed to the attorney(s) of record for said _____ at the office address of said attorney(s), as follows:

I certify (or declare) under penalty of perjury that the foregoing is true and correct.

Executed on _____ at _____, California
         (date)              (place)

_____
(Signature)

Subscribed and sworn to before me this _____

SFAI 0197

SERVICES RENDERED

ESTATE OF MARILYN MONROE

CARRYOVER - FEBRUARY, 1963:

**February 1 and 2, 1963:**   3½ Hours

Telephone conversation with Aaron Frosch regarding accounting for 1962 for M.M. Files.
Trip to house to check on everything and let pool man and gardener in.

**Week Ending 2/9/63:**   5 Hours

Two trips to house to check on everything and let pool man and gardener in.

**Week Ending 2/16/63:**   6 Hours

Dictation of memo - MMC 2/13/63.
Miscellaneous telephone calls.
Two trips to house to check on everything and let pool man and gardener in.

**Week Ending 2/23/63:**   15½ Hours

Meeting with Al Johnson, real estate broker.
Received letter from Howard La Shaw regarding W-2. Necessary telephone calls to make arrangements to get W-2.
Preparation of papers covering cost of house and furnishings.
Two trips to house to check on everything and let pool man and gardener in.

**Week Ending 3/2/63:**   4 Hours

Telephone conversations with Santa Monica office of Department of Employment regarding Mexico. In addition, time spent going thru files to obtain information that they requested.
Regarding item in Hollywood Reporter that 20th Century Fox was releasing album of Marilyn, had telephone conversations with persons in an effort to determine whether Marilyn had any interest in this and whether there would be any funds coming to her from this release.
One trip to house to check on everything and let pool man and gardener in.

TOTAL HOURS FOR THE MONTH OF FEBRUARY, 1963 . . . . . . . . . . . . 34 Hours

SFA1 0198

EXHIBIT III
(11)

B. **EXTRAORDINARY SERVICES OF INEZ C. MELSON, SPECIAL ADMINISTRATRIX**

SERVICES RENDERED

ESTATE OF MARILYN MONROE

By INEZ C. MELSON

Hours:

| | |
|---|---|
| August, 1962 | 136 |
| September, 1962 | 54 |
| October, 1962 | 27½ |
| November, 1962 | 30 |
| December, 1962 | 27 |
| January, 1963 | 35 |
| February, 1963 | 21 |
| Sub-total – hours thru February, 1963 | 31.3 |
| March, 1963 | 124 |
| April, 1963 | 23½ |
| May, 1963 | 15 |
| Additional hours – 1963, per pages | 540-1/2 |
| Additional hours – June 1963 through October 1963, per pages (16) and (17) of this Exhibit III | 34-1/4 |
| TOTAL HOURS | 574-3/4 |

EXHIBIT III
(4)

SFA1 0199



CALENDAR - AUGUST, 1962:

Week ending 8/11/62:

Funeral Arrangements, time spent at both house and mortuary.
Funeral Services.
Filing of Petition for appointment as Special Administratrix.
Initial work at house examining personal effects, etc.

Week ending 8/18/62:

Examining personal effects, papers, etc. Putting papers in order, etc.
Going through Leather Case with Mrs. Miracle, Mrs. Redmond and Mr. Weiss.
Taking Leather Case to Lokins and making arrangements for its storage.
Appointments at the house for two days with Mr. Donohue to take inventory of furnishings, household goods and personal items for appraisal purposes.
Correspondence.
Mailing of Marilyn Productions/ Checkbook
[illegible] to Mr. Howard Le Shan in answer to [illegible]

Week ending 8/25/62:                                                                46 hours

[illegible] Statements and Correspondence.
[illegible]
Conference with telephone company.
[illegible] of each item and supervision of Ability Van & Storage Brokers packing and moving to warehouse for storage. This was all done in one day from 8:00 am to 8:00 pm.
[illegible] Typewriter and [illegible] machine from 20th Century for [illegible] [illegible] used in preparing statements, etc.

Week ending 8/31/62:                                                                20 hours

[illegible]
Additional Inventory typed covering items not shown on Mr. [illegible]
[illegible]

TOTAL HOURS FOR THE MONTH OF AUGUST, 1962 . . . . . . . . . . .

SFA1 0200

EXHIBIT III
(5)

SERVICES RENDERED
ESTATE OF MARILYN MONROE

CALENDAR – SEPTEMBER, 1962:

Week Ending 9/8/62:

Conversation with Mrs. Murray regarding ......
Time spent at house including travel time to and from my office to house for the purpose of checking to make sure everything was alright, to let workmen and service men in such as pool service, gardner, etc.
Letter and statements to Milton Rudin.

Week Ending 9/15/62:

Conference with Mrs. Murray regarding Talleres Borda Merchandise.
Telephone Calls from Alfred Abolli, New York Daily News regarding Special Guardian.
Telephone calls from creditors and other miscellaneous telephone calls and correspondence.
Three trips to house and time spent at house checking to make sure everything was alright, to let pool service man in and gardner.

Week Ending 9/22/62:

Application for Loan completed and mailed.
Trip to Department of Water and Power to make arrangements for service to be continued under Estate of Marilyn Monroe.
Two trips to house to check on everything and to let Pool Service Man in and Gardner.

Week Ending 9/29/62:

Discussion with Stanley Fountain regarding payment of utilities.
Telephone conversations regarding payroll check given to Norman Jeffries that was not cleared through bank before Miss Monroe's death.
Telephone Conversations with Mrs. Fright regarding rugs and other furniture.
Two trips to house to check on everything and let pool service in and gardner in.

TOTAL HOURS FOR THE MONTH OF SEPTEMBER, 1962 . . . . . . . . . .

EXHIBIT III
(6)

SFA1 0201

SERVICES RENDERED
ESTATE OF MARILYN MONROE

CALENDAR - OCTOBER, 1962:

Week Ending 10/6/62:

Petition from Stanley Epstein regarding preservation of assets.
Telephone conversation with Aaron Frosch regarding proposed
activities of Seminole (documentaries, film and tv) regarding
Marilyn Monroe.
Miscellaneous telephone calls.
Two trips to house to check everything and let pool service man
and gardener in.

Week Ending 10/13/62:                                           5 Hours

Two trips to house to check everything, to let pool service man in
and to let gardener in.

Week Ending 10/20/62:                                           6 Hours

Received copy of letter to Abraham Frosch regarding declaration
of Trust.
Two trips to house to check on everything and to let pool service
man and gardener in.
Miscellaneous telephone calls and correspondence.

Week Ending 10/27/62:                                           7 Hours

Met with London Pool man, regarding new pool motor, at house.
Three trips to house to check on everything, to let pool service
man in and gardener in and to let pool repair men in.

October 29 - 31, 1962:                                          2 Hours

Telephone calls regarding sale of home from various real estate
brokers and answered inquiries.
Trip to house to let pool service man in and check everything, also
to let gardener in.

TOTAL HOURS FOR THE MONTH OF OCTOBER, 1962 ................ 27 Hours

EXHIBIT III
(7)

SFA1 0202