# EXHIBIT
# 31

SURROGATE'S COURT

COUNTY OF NEW YORK

ACCOUNTING OF                :

AARON R. FROSCH
as Executor                  )          FILE NO.:  P 2781/1962

ESTATE OF MARILYN MONROE,                PETITION FOR FINAL ACCOUNTING
                             :
           Deceased.

─────────────────────────── )

TO THE SURROGATE'S COURT OF THE COUNTY OF NEW YORK:

1. The petition of AARON R. FROSCH residing at

300 Central Park West, New York, N. Y. respectfully

states:

2. The decedent died on the 5th day of August, 1962

and at the time of her death was a resident of the

Borough of Manhattan, City, County and State of New York.

3. Letters Testamentary were duly granted to your

petitioner by the Surrogate's Court of New York County,

New York on the 30th day of October, 1962.

4. More than seven (7) months have elapsed since

the issuance of said letters.

MM-0004478

5. The names and post-office addresses of all persons interested in the Estate and/or Trust Fund to whom process must issue pursuant to the provisions of SCPA 315 and SCPA 2210 are as follows:

| Name and Post-Office Adress | Relationship | Nature of Interest |
|---|---|---|
| Bernice Miracle 330 S. W. 27th Street Gainesville, Fla. | Half-Sister Legatee | Specific Bequest of $10,000.00 |
| Norman and Hedda Rosten 84 Remsen Street Brooklyn, N. Y. 11201 | Legatee | Specific Bequest of $5,000.00 |
| May Reis 229 W. 12th Street New York, N. Y. 10014 | Legatee | Specific Bequest of $10,000.00 plus $40,000. from residuary or 25% of residuary whichever shall be the lesser |
| Gladys Baker a/k/a Gladys Eley c/o Bernice Miracle 330 S. W. 27th Street Gainesville, Fla. | Mother Life Income Beneficiary under Trust | Income co-Beneficiary under Trust to receive $5,000.00 per annum during her lifetime |
| Mala Powers, as Executrix Estate of Mrs. Michael (Xenia Julia) Chekhov c/o Belcher Henzie & Biegenzahn 330 South Hope Street Suite 3650 Los Angeles, Cal. 90017 | Life Income Beneficiary under Trust | Income co-Beneficiary under Trust to receive $2500.00 per annum during her lifetime |
| Lee Strasberg 135 Central Park West New York, N. Y. | Legatee | Bequest of personal eff and clothing plus balan of residuary estate |
| Dr. Marianne Kris 135 Central Park West New York, N. Y. | Legatee | 25% of balance of resid after residuary bequest May Reis plus remainder Trust after death of Tr Income Beneficiaries |

A/C Privilege and/or Work Product

2

MM-0004479

6. The following legatees have been paid:

   A.  Norman and Hedda Rosten - bequest of $5,000.00

   B.  Bernice Miracle - bequest of $10,000.00

   C.  May Reis - bequest of $10,000.00

   D.  Lee Strasberg - bequest of personal effects and clothing

7. There are no other persons that those above-mentioned who are interested in this proceeding.

8. That all of said above-mentioned persons are of sound mind and all are of full age except Gladys Baker a/k/a Gladys Eley, mother of the decedent. Inez C. Melson was appointed as Conservator by Order of the Superior Court of the State of California and that subsequently Bernice Miracle, residing at 330 S. W. 27th Street, Gainesville, Florida., daughter of said Gladys Baker a/k/a Gladys Eley, (has been) was appointed Guardian and, upon information and belief, continues to act as Guardian.

9. That there is no other accounting proceeding now pending.

10. That your petitioner duly commenced probate proceedings in New York County and ancillary probate proceedings in the State of California. After appropriate probate hearings, decedent's will was duly admitted to probate and petitioner was duly appointed Executor in

-3-

A/C Privilege and/or Work Product

MM-0004480

both jurisdictions and then commenced the marshalling of the decedent's assets.

At the time of decedent's sudden and unexpected death, she had no cash available in the State of California and insufficient cash in the State of New York to meet her obligations. Mobs of curiousity seekers came to her homes seeking to buy or remove memorabilia. There was no family member who could supply aid or information in the supervision of her affairs. Her obligations to creditors and her tax liabilities far exceeded her cash availability.

The decedent did, however, have a continuing compensation interest in two (2) motion picture films entitled "Some Like It Hot" and "The Misfits", which provided for deferred compensation for a guaranteed amount for a number of years and, thereafter, a percentage participation. Decedent, however, had granted a wage assignment against said deferred compensation to a bank in the State of California in the sum of Seventy Four Thousand ($74,000.00) Dollars. Said deferred compensation to its determined valuation was deemed "income in respect of the decedent" and, therefore, was subject to estate

-4-

taxes and, when received, was deemed "income" and subject
to income taxes.  Said deferred compensation was further
subject to payment of agent's commissions of 10% of the
gross to M. C. A. Artists; Ltd.  Hence, the assets available
to petitioner were insufficient for the payment of creditors'
claims and estate taxes for a substantial period of time after
the death of the decedent.

Decedent was the sole shareholder of Marilyn Monroe
Productions, Inc.  The asset of the said corporation was
a proprietary interest in the motion picture film entitled
"The Prince and the Showgirl."  The decedent's Common
Stock in said corporation was valued for estate tax
purposes at Sixty One Thousand Two Hundred Fifty ($61,250.00)
Dollars (per Schedule "A").  For a substantial period of
time the sale of this asset could not be effectuated for
an amount sufficient to realize its said value; however,
in September 1970, petitioner sold same and liquidated
the corporation at a value as set forth on Schedule "A-1"
hereof.

Upon receipt of funds, petitioner deposited same
with the Savings Bank Association which association then
selected and deposited said funds into numerous different
savings banks in amounts within the then existing insurance limi-
tation of $10,000.00.  Petitioner therefore placed the
Estate funds properly insured in accounts which at that

-5-

MM-0004482

time were paying the highest rate of interest then available. Estate funds were thereafter deposited in Certificates of Deposit or Treasury Bills as set forth on Schedules hereto.

Petitioner was compelled to defend a proceeding commenced by the State of California which claimed decedent was a resident of the State of California at the time of her death. Petitioner was successful in said proceeding.

All creditors' claims and all tax liabilities have been paid in full. The California ancillary estate was accounted and was concluded.

In 1974, Petitioner negotiated a contract with respect to a publication entitled "My Story" authored by Milton H. Green by the terms of which the Estate received a participation in the royalty proceeds of the said publication and has received income therefore as set forth on Schedule "A-2".

Thereafter, your petitioner commenced litigation in connection with a publication entitled "Marilyn" authored by Norman Mailer. The said litigation was in the past year concluded in favor of defendants after appropriate appeal by your petitioner.

-6-

MM-0004483

By virtue of the Estate having insufficient
cash availability for many years, the various pro-
tracted negotiations, the complicated proceedings
and litigation, as hereinbefore set forth, your
petitioner was not in the appropriate position to
submit to the Court a final accounting.

In addition, the residuary provisions of the
decedent's will provides for May Reis , as a residuary
legatee, to receive "$40,000.00 or 25% of the total
remainder" of the estate, whichever is less. The
assets of the Estate were at all times insufficient
to determine, with finality, the precise amount of
the said legacy. Even at the particular point in time,
the assets of the Estate are insufficient to pay said
residuary legatee the sum of $40,000.00 inasmuch as
said sum exzeeds 25% of the present assets of the Estate.

The Estate still retains a continuing compensation
and royalty interest in four (4) properties. The Estate
retains an interest in the motion picture films entitled
"Some Like It Hot" and "The Misfits". The Estate retains
an interest in continuing music royalties and in the
publication entitled "My Story" all as aforesaid described.
The schedules herewith have not set forth a current
valuation of the Estate's interest in the said four (4)

-7-

MM-0004484

properties.  Petitioner will request an evaluation thereof from the producers of same and then apply to this Court for approval to conclude the sale of the Estate's interests therein or for a pro rata distribution among the residuary legatees of the continuing royalties therefrom and as residuary legatees will desire.

11.  That your petitioner is desirous of rendering to said Surrogate's Court an account of these proceedings and therefore prays

that the account be judicially settled; and

that the Executor, from the cash balance of $101,299.25 on hand, pay to himself the sum of $16,591.62 for the balance of commissions due him upon this accounting as per Schedule I; and

that the Executor, from the cash balance of $101,299.25 on hand, pay to N. Rubin & Co. the sum of $6,000.00 for accounting services rendered in connection with the within accounting; and

that the Executor, from the cash balance of $101,299.25 on hand, pay to Elliot J. Lefkowitz, Esq. the sum of $3,000.00 for legal services rendered in connection with the within accounting; and

that the Executor pay to May Reis 25% of the balance then remaining; and

that the Executor pay to Dr. Marianne Kris 25% of the then remaining balance; and

that the Executor pay to Lee Strasberg the entire remaining balance; and

-8-

MM-0004485

that the Executor, prior to payment
of said residuary, retain the sum of
Seven Thousand Five Hundred ($7,500.00)
Dollars for payment of any taxes or all
other charges which may be reasonably
due; and

that the Executor shall obtain an
evaluation and/or offer for decedent's
continuing compensation interest in the
motion picture films entitled "Some
Like It Hot" and "The Misfits" and in
music royalties and the publication
entitled "My Story" and then accept
such offer or arrange for a pro rata
distribution, as the residuary legatees
will desire or as directed by the Court,
among the residuary legatees thereof,
however, the residuary legatee, May
Reis, shall receive her pro rata
in an amount limited so that her residuary
legacy shall not exceed the sum of
Forty Thousand ($40,000.00) Dollars
in total; and

that the legatees upon receipt of their
respective payments to be made to them
hereunder will acknowledge receipt there-
fore and in consideration thereof, each
of them will forever release, remise and
discharge the Executor of and from any
and all claims and liabilities of every
kind or nature arising from or in any
manner relating to or connected with
the Estate of Marilyn Monroe, deceased,
and the administration of said Estate; and

that the persons above-mentioned and all
necessary and proper persons be cited to
show cause why such settlement should not
be had; and

-9-

MM-0004486

for such other and further relief as
the Court may deem just and proper.

DATED, August 14, 1980.


_____
AARON R. FROSCH, Petitioner


CITY, COUNTY AND STATE OF NEW YORK, ss:


AARON R. FROSCH, the petitioner named in the
foregoing petition, being duly sworn, deposes and says
that he has read the foregoing petition subscribed by
him and knows the contents thereof; and that the same
is true of his own knowledge, except as to the matters
therein stated to be alleged on information and belief,
and that as to those matters he believes it to be true.


_____
AARON R. FROSCH, Petitioner


Sworn to and subscribed before me this
____ day of August, 1980.


ELLIOT LEFKOWITZ
Notary Public, State of New York
No. 31-7474775
Qualified in New York County
Commission Expires March 30, 1986


-10-

# EXHIBIT
# 32

SURROGATE'S COURT
COUNTY OF NEW YORK
STATE OF NEW YORK

----------------------------------------X
                            :

In the Matter of the Final Accounting  :
of Aaron Frosch, as Executor,        :
                            :     <u>OBJECTIONS TO ACCOUNT</u>
   ESTATE OF MARILYN MONROE,      :
                            :     File No. P2781/62
                Deceased.   :
                            :
----------------------------------------X

     MARIANNE KRIS, a person interested in the Estate of Marilyn Monroe, Deceased, as a reminderman of the Trust under Article FIFTH of the Decedent's Last Will and Testament, and as a twenty-five percent residuary legatee, hereby makes the following Objections to the settlement of the Account of Aaron R. Frosch as Executor of the Last Will and Testament of Decedent:

     1.   <u>Failure to Minimize Income Tax Payments</u>.  The largest aggregate expense of the Estate was the payment of income taxes on income received by the Executor.  Over the 18 years of Estate Administration, the Executor paid $674,398 in income taxes.  A very large percentage of these payments was unnecessary.  As a consequence, virtually all of the funds that otherwise could have been distributed to the Decedent's beneficiaries were dissipated.  Although MARIANNE KRIS recognizes the necessity to pay income taxes that cannot lawfully be avoided, in this Estate the Executor improvidently paid income taxes he did not have to pay, as follows:

MM-0013141

(a)    <u>Failure to Take All Available Deductions for</u>
<u>Income in Respect of a Decedent</u>.  The Executor failed to take
full advantage of the deduction for "income in respect of a
decedent" on the Fiduciary Income Tax Returns.  Included in the
gross estate on the Federal Estate Tax Return was $593,675 as the
value for Marilyn Monroe's entitlements under a contract
concerning the motion picture <u>Some Like It Hot</u> and $153,008 for
her entitlements under a contract covering the motion picture <u>The</u>
<u>Misfits</u>.  These dollar amounts were also required to be reported
in the Fiduciary income tax returns, to be included in gross
income subject to tax.  However, all of this income is what the
Internal Revenue Code called "income in respect of a decedent"
and thus Federal Estate Tax attributable to these amounts was
available to the Estate as a deduction in income tax returns.  In
this Estate the full $119,691 paid in Federal Estate Tax is
attributable to these amounts and is therefore all available as a
deduction on income tax returns of one or another tax years of
the Estate.

Despite the availability of this deduction, the Executor
took only $14,566 for the year 1965 by way of deduction for
income in respect of a decedent and $23,929 for that deduction
for the year 1966.  In no other year was any deduction for this
purpose taken.

-2-

MM-0013142

Instead of $119,691 in deductions, only $38,395 was taken. Accordingly, $81,196 of deductions were lost. Since the Estate was in a relatively high income tax bracket for the years in which the deduction was available but not used, the Executor's failure to seek this deduction cost the Estate a very high percentage of the $81,496. The following are illustrative incremental tax brackets of the Estate:

| 1963 | 90% bracket |
| 1964 | 76.5% " |
| 1965 | 70% " |
| 1966 | 70% " |
| 1970 | 60% " |
| 1974 | 55% " |

The above brackets are only those for federal income tax purposes. The same deduction is available for state income tax purposes.

On the basis of the tax returns supplied by the Executor, $65,030 is the Federal tax cost of the omitted deduction. Figures for the State tax cost are less certain but the amount is approximately $2,400.

-3-

MM-0013143

The surchargeable amount is therefore approximately $67,000 Federal tax, with appropriate interest.

(b)    <u>Failure to Claim Available Credits on State Tax Returns.</u>  The Estate paid income taxes to the State of California for the years 1963 to 1970.  Amounts paid to one State may be taken as a credit against the taxes payable to another State. The amount of taxes paid to California for the years 1967, 1968 and 1969 were not claimed as a credit against New York State tax.  $13,830 was paid in the year 1967, $3,241 was paid for the year 1968, and $140 was paid for the year 1969, the total being $17,211.  In each of those years, the Estate paid New York a sum greater than the credit; the Executor's failure to take the credit therefore cost the Estate the full amount of the credit. The Executor should be surcharged for this $17,211, with appropriate interest.

(c)    <u>Failure to Take the Deduction for Distribution of "Distributable Net Income."</u>  The greatest cost in unnecessary income tax payments was incurred because of the combination of circumstances improvidently permitted by the Executor to exist: He kept the Estate open for 18 years during all of which time the Estate earned sizeable income that fell within the Internal Revenue Code's definition of "distributable net income" ("DNI"); the Executor made no distribution of one cent of DNI throughout

-4-

MM-0013144

the 18 years.  As a result, unnecessary income taxes at very high
brackets were paid by the Executor on Estate income because,
under the Code, a distribution to a beneficiary entitled to DNI
produces a deduction to the Estate in the precise amount of DNI
so distributed.  Thus the Estate paid income taxes in each year
between 1962 and 1980 at the Estate's high surtax brackets, which
as noted, exceeded 60% in at least five years.

A prudent and responsible Executor would, in the face of
such potentially large tax payments as a result of high tax
brackets, resolve two issues:  First, would it be a greater tax
burden on each of the beneficiaries were they to receive
distributions of DNI, for under the Code the beneficiary is taxed
at his or her effective bracket on such income.  Second, are
there funds to make the DNI distributions.  On the first issue,
as to MARIANNE KRIS, had the Executor asked her what her bracket
was or had he reviewed correspondence between MARIANNE KRIS'S
Counsel and himself, he would have known that the bracket of
MARIANNE KRIS as a beneficiary of the Estate's DNI was zero, for
she would have assigned her interest to the Anna Freud
Foundation, an organization exempt from income tax under Section
501(c)3 of the Internal Revenue Code, that runs a renowned child
therapy clinic and instructional program for child therapists.
Therefore, every cent of DNI distributed to MARIANNE KRIS would
have saved payment of income taxes at the effective bracket of
the Estate and would have incurred no taxes for the recipient.
As to other beneficiaries entitled to such distributions, it is
probable,

-5-

MM-0013145

given the high Estate brackets, that each would have been in
lower brackets than the Estate.

As to the issue of available funds, a cash flow analysis of
the Estate's actual revenues from all sources <u>less</u> disbursements
for all purposes shows a positive cash flow at the end of every
single year of the Estate's existence.  The following table shows
the net cash balance available to the Executor (even after taxes
computed on the Executor's incorrect figures) for distribution of
DNI; it also shows the amount of taxes the Executor directly paid
with respect to each such year:

| Year | Cash available as of December 31 of each year of the Estate | Amount of Federal Taxes Actually Paid (Payment Made in Following Year) | Amount of State Taxes Paid (Payment Made In Following Year) |
|------|------|------|------|
| 1963 | 145,600 | 138,716 | 17,348 |
| 1964 | 155,200 | 116,643 | 16,852 |
| 1965 | 117,700 | 61,667 | 13,626 |
| 1966 | 152,700 | 80,282 | 14,306 |
| 1967 | 216,800 | 79,606 | 19,903 |
| 1968 | 178,300 | 19,293 | 8,974 |
| 1969 | 153,000 | 1,497 | 585 |
| 1970 | 147,600 | 22,784 | 5,771 |
| 1971 | 155,000 | 9,958 | 2,267 |
| 1972 | 168,900 | 10,548 | 3,663 |
| 1973 | 182,100 | 7,598 | 2,225 |
| 1974 | 212,700 | 15,234 | 4,603 |
| 1975 | 178,400 | 4,408 | 2,195 |
| 1976 | 61,000 | 156 | 1,700 |
| 1977 | 81,000 | 5,904 | 2,483 |
| 1978 | 100,300 | 8,260 | 2,761 |
| 1979 | 108,900 | 4,037 | 1,431 |

On the basis of such available cash and the deductions
available to the Executor by reason of making distributions of
DNI, upon information and belief, far smaller income taxes would
have had to be paid by the Estate.

-6-

MM-0013146

Until the arithmetic for each beneficiary has been worked out, the amount of the surcharge cannot be ascertained. As to MARIANNE KRIS, however, the amount of the surcharge is ascertainable because no income tax would have been paid on her 25% of the available DNI. This is a fact the Executor knew or should have known for the these reasons: First, the legacy to MARIANNE KRIS itself contains the condition the funds given to her be used "for the furtherance of the work of such psychiatric institutions or groups as she shall elect". Secondly, MARIANNE KRIS' Counsel made it known to the Executor that she was going to assign her interest to the Anna Freud Foundation. Thirdly, the Executor would have learned of the zero bracket of the recipient had he asked her, an inquiry that is both customary and prudent especially where the estate will, but for a distribution of DNI, incur high income taxes.

(d)    The Executor Failed to Claim Certain Administrative Expenses Available as Deductions on Estate Income Tax Returns. The Executor incurred various administrative expenses as shown in the Accounting which were larger, at least in three years of which MARIANNE KRIS has records, than those claimed as deductions on the Estate's income tax returns for those years. Thus, in the year 1970, the accounting shows that $28,834 was incurred in Administrative expenses but only $23,334 was claimed

-7-

MM-0013147

as a deduction.  In 1975, a total of $16,633 was incurred in
administrative expenses but only $1,633 was deducted for
administrative expenses on the income tax returns for the year.
In 1976, $33,488 is shown in the accounting as having been
incurred in administrative expenses but only $18,750 was
deducted.  As a result, deductions appear to have been lost in
the aggregate amount of $35,238.  The amount of surcharge would
be equal to the effect of applicable surtax bracket for each of
these three years, establishing the amount of estate funds that
could have been saved had the deductions been properly taken.
Until all income tax returns are delivered, the correct surtax
bracket is yet to be established.

   2.   The Executor Incurred Unnecessary Interest Charges on
Late Tax Payments.  The Executor paid a very substantial amount
of money in interest for late payments of estate tax and income
tax, as follows:

     In 1964, $2,071 was paid to the Internal Revenue Service;
in 1965, $1,041 was paid to the State of New York; in 1969,
$15,149 was paid to the Internal Revenue Service; in 1970, $5,778
was paid to the State of New York for late payment of New York
State Estate Tax; in 1972, $1,932 was paid to New York State; in

-8-

MM-0013148

1974, $29 was paid to the State of California; in 1976, $10,458 was paid to the State of California.  The total amount of this interest is $36,458.  Unless the Executor has a valid justification all of this is surchargable.

   3.   The Executor Incurred Unnecessary Storage Charges.
The Executor kept the decedent's personal property in storage for many years after the date on which it could and should have been distributed.  Storage charges were paid at least 10 years, into the year 1972.  Over this period, on aggregate sum of $16,834 was paid in storage charges, this on property which itself had an estate tax value of only $11,057.  It is submitted that all storage charges after 1963 are surchargable.  Since $2,247 is the amount of storage charges for the year 1963, the surchargable amount would be $14,587.

   4.   The Executor Incurred Unnecessary Bond Premium
Charges.  Because the Executor kept the Estate open for 18 years, the payment of premiums on bonds was excessively high.  Over the course of the Estate administration, a total of $26,229 was paid to bonding companies.  The amount of the surcharge cannot be precisely ascertained until the amount of the total bond premium allocable to Trustee's bond, which does have to be paid for the duration of the trust, is known.

MM-0013149

5.   The Executor Improperly Paid Part of the Executor's
Commissions.  The Executor paid himself part of the Executor's
commissions without a court order, as required by the Surrogate's
Court Procedure Act.  Not only was the payment without Court
order wrong, but for reasons that will be set forth below, no
commission at all should be paid to this Executor and therefore
the entire amount of this payment is surchargable.

6.   The Executor Improperly Paid Legal Fees to His Own
Law Firm.  The Executor paid to his own law firm two amounts for
legal fees aggregating $30,000, both without court order.  The
first was paid on November 30, 1970 in amount of $15,000
(Schedule D, Item 31) and the second was paid on December 30,
1971, also in the amount of $15,000 (Schedule C, Item 208).  The
former was a claimed debt of the decedent, but in view of the
dual relationship of the Executor as both fiduciary and Counsel,
this too should have been subject to court approval where the
bona fides of the alleged debt would have been subject to review.

7.   The Executor Paid Excessive Professional Fees.  The
Executor paid excessive amounts for legal fees and for the
accounting fees of the Estate.  Since the overwhelming percentage
of the Estate's assets derived from straightforward contracts
entered into by decedent, legal activities of the Executor's

-10-

MM-0013150

Counsel cannot be claimed as having materially produced these assets. Revenue from the films <u>Some Like It Hot</u> and <u>The Misfits</u>, and revenue from RCA on record contracts the decedent entered into generated a total of approximately $1,300,000 of the gross estate. Another approximately $90,000 was produced from the sale of the decedent's home, a routine function. Therefore, upon information and belief, approximately $1,400,000 out the total Gross Estate of $1,688,000 required very little, if any, legal services. For the balance of the gross revenue - $288,000 - the Executor incurred over $100,000 in professional fees.

Specific objection to specific professional fees will be presented to the Court once details of the services rendered, the time expended, and the result achieved have been made available through discovery. MARIANNE KRIS has requested details concerning these professional fees but no information has been provided.

Under the Account as submitted, the attorneys and accountants received more than Marilyn Monroe's mother and more than all residuary legatees combined. Because of the magnitude of these professional fees, and in light of the facts of the Estate, the Surrogate should permit an inquiry into the bona fides and propriety of the legal fees and accounting fees and the amount thereof so that a reasonable sum for them can be ascertained. The amount in excess would be subject to surcharge.

-11-

MM-0013151

8.   <u>The Executor Did Not Receive an Adequate Price for
the Shares of Marilyn Monroe Productions, Inc.</u>  The sale of the
shares of Marilyn Monroe Productions, Inc. for a total of $85,000
was, on information and belief, an improvidently low purchase
price.  This company owned outright all rights to the film <u>The
Prince And The Show Girl</u>.  While MARIANNE KRIS knows very little
about the circumstances of the sale of these shares to Warner
Brothers, the Court should conduct an inquiry into the propriety
of the price.  At the very least, the Court should appoint an
appraiser familiar with the values of motion picture films at the
time and familiar with the value of this particular motion
picture in which Marilyn Monroe appeared with Lawrence Olivier.
On the basis of certain information available to MARIANNE KRIS,
which she will present to the Court after full discovery from the
Executor, upon information and belief, these shares were worth at
least approximately twice the amount the Executor sold them for.

9.   <u>The Executor Failed to Complete Correctly Certain New
York State Income Tax Returns</u>.  Various refunds received by the
Executor that were reported (correctly so) on the Federal Tax
Returns as income should have been excluded from the New York
income reported on State returns under New York income tax laws.
In four different years the Executor failed to make this
exclusion, as follows:  In 1963, the Federal return reported a
refund of $4,935; this should have been excluded from the gross
income reported on the New York return, but was not.  For the

-12-

MM-0013152

year 1965, there was a refund from California for $4,723; this sum was not excluded on the New York return. In 1967, there was a refund of $6,853, for the year 1966; this sum was not excluded on the New York return. Finally, in 1978, a $750 refund for the year 1977 was not excluded from the New York State return. The total of these sums is $17,261, and unnecessary tax was paid on it. Upon information and belief, the New York tax bracket applicable to these amounts was 12% in the years in question. Accordingly, the amount of the surcharge is $2,071.

10. <u>The Executor Failed to keep Funds Invested to the Maximum Extent Possible and Where Invested He Did Not Always Secure the Highest Return Available on Equally Safe or Safer Investments.</u> For certain periods of time, upon information and belief, the Executor did not put at interest large amounts of money after receipt.

As to maximizing the return on funds invested, the Accounting shows no investment in three or six month Treasury Bills for the years 1972, 1973, 1977, 1978, 1979 and 1980, but rather deposits in, or certificates of deposit of, savings banks; in 1977, 1978, 1979 and 1980 funds were invested in savings accounts of commercial banks. Upon information and belief, three and six month Treasury Bills in each of these years produced returns higher than savings bank deposits, higher than commercial bank deposits, and upon information and belief, higher than savings bank certificates of deposit.

-13-

MM-0013153

The lost interest on uninvested funds and the difference in available interest on invested funds is surchargable.

11.    <u>Failure to Supply Documents and Information</u>.
MARIANNE KRIS, through her attorneys, Dornbush Mensch & Mandelstam, requested in writing on August 27, 1980 various material documents and relevant information concerning items in the Account.  The Executor has failed to supply copies of many of the requested Fiduciary Tax Returns and other documents and has supplied only part of the requested data.  As a result, it has not been possible for MARIANNE KRIS to evaluate the propriety or correctness of a number of items in the Account nor to be able to know whether the Account is complete.  The objection is, therefore, that MARIANNE KRIS has been supplied insufficient information and will be obliged to conduct a deposition and other appropriate discovery before completing her Objections to the Account.

12.    <u>The Executor is Not Entitled to Commissions</u>.  In light of the Executor's mismanagement of the Estate, it is respectfully submitted that he be held not to be entitled to any Executor's commissions.  Without limiting the enumeration, the following support such a determination:

MM-0013154

(a)    The Executor has shown no concern whatsoever
for the interests or the needs of the residuary legatees.  This
can be demonstrated in a variety of ways.  <u>First</u>, he has not made
a single distribution of income or principal to any of the
residuary legatees over the entire eighteen years of the Estate
Administration.  This not only deprived them of funds decedent
intended them to have but it cost the Estate (and the
beneficiaries, in turn) thousands upon thousands of dollars in
lost tax deductions.  <u>Second</u>, the Executor's whole course of
conduct, at least with MARIANNE KRIS, was secretive.  From 1972
on, the Executor failed to supply information about the financial
status of the Estate.  <u>Third</u>, the Executor, between the years
1965 and 1970, failed to secure one penny of income from the film
<u>The Prince and The Show Girl</u> which the Estate in that period
owned outright throughout the world.  <u>Fourth</u>, in the years in
which the Estate had enormous income - for example, in the five
years in which its surtax bracket exceeded sixty percent (60%) -
the Executor failed to invest funds in tax-exempt securities,
instead investing them or leaving them invested in savings banks
where the after-tax yield was significantly less than the yield
from available tax-exempt securities.

(b)    Apart from these evidences of indifference to
his fiduciary responsibilities to beneficiaries, all the other

-15-

MM-0013155

improvident failings and undertakings bear on his entitlement to
Executor's commissions.  The following are some of them:

(i)  The Executor incurred unnecessary income
tax because he failed to seek credits and tax deductions;

(ii)  The Executor incurred unnecessary and
excessive storage charges.

(iii)  The Executor incurred unnecessary and
excessive bond premiums.

(iv)  The Executor incurred and paid
unnecessary and excessive professional fees.

(v)  The Executor kept the Estate open an
excessive number of years.

(vi)  The Executor incurred unnecessary
interest charges.

(vii)  The Executor has not promptly invested
funds of the Estate and even after they were invested, failed to
purchase the highest yielding securities.

(viii)  The Executor over-reported income on
New York State returns.

For these and other reasons, the Executor has forfeited his
entitlement to any commissions.

MM-0013156

13.    On the basis of the data set forth in these
Objections to the Account, MARIANNE KRIS respectfully requests
the following relief:

(a)    The Executor should be surcharged for the
amounts (i) specified in these Objections and (ii) to be
determined after the hearing, all with appropriate interest on
such amounts.

(b)    The Surrogate should determine that the
Executor is not entitled to any commissions, directing him to
return $15,000 already paid to himself.

(c)    The Surrogate should direct the immediate
distribution of $75,000 to the residuary legatees, out of the
$101,229.25 the Executor states is on hand.  This would permit a
distribution to beneficiaries while other issues are resolved.
The amount requested will not prevent payment of the claims
presently pending, even assuming they are valid, for it leaves a
reserve in excess of the total of all such claims.

(d)    The Executor should be directed to produce all
documents requested by MARIANNE KRIS and to do so by a date
certain.

(e)    Upon delivery of the balance of requested data,
MARIANNE KRIS should be entitled to conduct a deposition of the
Executor and others with knowledge of the facts.

(f)    Upon completion of the investigation, MARIANNE
KRIS should be entitled to submit additional objections to the
Account.

-17-

MM-0013157

(g)   The Court should schedule a hearing for a consideration of the various questions raised in the objections.

(h)   The Surrogate should direct payment of reasonable fees to Objector's counsel and Objector's accountant for their services in this proceeding.

(i)   The Surrogate should direct such other and further relief as shall be just and proper.

October 23, 1980         MARIANNE KRIS, Objector

Dornbush Mensch & Mandelstam,
Attorneys for Objector

Office and P.O. Address:
  747 Third Avenue
  New York, N. Y. 10017
  (212 935-3900)

-18-

MM-0013158

STATE OF NEW YORK   )

                      :   SS.:

COUNTY OF NEW YORK )


    I, the undersigned Objector named in the foregoing
Objections to Account, being duly sworn depose and say that I
have read the foregoing Objections to Account subscribed by me
and know the contents thereof, and that the same is true of my
own knowledge, except as to the matters therein stated to be
alleged on information and belief, and that as to those matters I
believe it to be true.


                          /s/ Marianne Kris
                          MARIANNE KRIS,
                          Objector


Sworn to before this
23rd day of October, 1980.

/s/ Charles L. Mandelstam
 Notary Public

CHARLES L. MANDELSTAM
NOTARY PUBLIC, STATE OF NEW YORK
No. 31-2502800
Qualified in New York County
Commission Expires March 30, 19 81


-19-

MM-0013159

# EXHIBIT

# 33

Surrogate's Court

## County of New York

In the Matter of an Application for Letters of Administration with the Will Annexed on the Estate of

MARILYN MONROE

Deceased

The citizenship of the decedent and of the petitioner must be alleged in the petition.

Petition for Letters of Administration with the Will Annexed

2751                    1962

To the Surrogate's Court of the County of New York:

The petition of Anna Strasberg

respectfully shows:

That your petitioner is a resident of No. 135 Central Park West in the City of New York    and is    named in the last will and testament of    , deceased, and is a citizen of the United States. That said Marilyn Monroe    departed this life at California on the 5th day of August    , 1962, leaving a last will and testament in and by which She appointed Aaron R. Frosch    executor    thereof; that decedent at the time of her death was a citizen of USA    , that the said last will and testament was duly admitted to probate by Honorable Joseph A. Cox    Surrogate of the County of New York, on the 30th day of October    , 1962 AND LETTERS TESTAMENTARY duly issued thereon to Aaron R. Frosch on 31 December 1962

And your petitioner further shows that the said Aaron R. Frosch died on April 28, the executor named in said will,    1989,

and that certain property and assets of the said testator are unadministered; that your petitioner has to the best of her    ability estimated and ascertained the value of the personal property of which the said testatrix    died possessed, and of the real estate so possessed and the proceeds thereof which may come to the hands of an administrator by reason of the provisions of said last will and testament, and that the value of said personal estate will not exceed in all the sum of    $500,000    , and is estimated to be $1,000.00 Dollars.

That the decedent died seized of    none    real property in this State. The said real property is improved. unimproved. A brief description of each parcel is as follows:........................................

.................................................................................................................................................

.................................................................................................................................................

That the estimated value of such real property and improvements is ....................................Dollars.

That the estimated gross rents for the period of eighteen months from the date of the death of decedent is the sum of.............................................................................................Dollars.

1. That the name and post office address of the

## sole beneficiary

named or described in said will is as follows:

Name                                                    Post Office Address

That the said sole beneficiary is a resident of the State of New York.

MM-0000025

That the names and post office addresses of the

## residuary beneficiaries

named or described in said will are as follows:

| Name | Post Office Address |
|---|---|
| Estate of Lee Strasberg (DOD 2/17/82) c/o Anna Strasberg, executrix | 135 Central Park West New York, N.Y. |
| Anna Freud Centre as successor to Estate of Dr. Marianne Kris (DOD 11/23/80) | c/o Kaplan Russin Vecchi + Kirkwood 645 Madison Ave. New York, NY actual location: 20 Maresfield Gardens Hampstead, London NW 3 ENGLAND |

That all of the said residuary beneficiaries are residents of the State of New York, except:

Anna Freud Centre

That all of the said residuary beneficiaries are of full age and are of sound mind, except:

3. That the names and post office addresses of all other persons interested in the estate, as defined in

Section 103, subdivision 36, Surrogate's Court Procedure Act, are as follows:

| Name | Post Office Address | Nature or Value of Interest |
|---|---|---|
| Attorney General of the State of New York Attn: Lavita Werner, Esq. | 120 Broadway New York, NY | On behalf of ultimate charitable beneficiaries. |

That all of said persons are residents of the State of New York, except:

That all of said persons are of full age and are of sound mind, except:

MM-0000027

That said deceased was at the time of her death a resident of the County of New York.

That there are no persons having a prior or equal right to letters of administration with the will annexed who have not renounced and no persons interested in this proceeding other than those hereinbefore mentioned.

That no previous application has been made for the appointment of an administrator with the will annexed of the estate of said deceased.

That a correct copy of said will is hereto annexed and marked Exhibit A.

Your petitioner therefore prays for a decree of the Surrogate's Court of the County of New York appointing your petitioner administratrix with the will annexed of the estate of said deceased, and that letters be issued accordingly, and that all persons having a prior or equal right to said letters who have not renounced be cited to show cause why such letters should not be issued.

_____
                                    Petitioner

## County and State of New York. ss.:

The abovenamed petitioner, being duly sworn, doth depose and say that she has read the foregoing petition subscribed by her and knows the contents thereof and that the same is true to her own knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters she believes it to be true.

Sworn to this 17th day of July, 1987.

_____
                                    Petitioner

MM-0000026