# EXHIBIT
# 36

STATE OF NEW YORK
SURROGATE'S COURT, COUNTY OF NEW YORK:

- - - - - - - - - - - - - - - - - - - x

Proceeding for Construction of the : File No. 2781/62
Last Will of

       :

  MARILYN MONROE,

       : ANSWER OF RESPONDENTS

     Deceased.   THE ANNA FREUD CENTRE

       : AND EXECUTORS OF THE

        ESTATE OF MARIANNE KRIS

- - - - - - - - - - - - - - - - - - - x

TO THE SURROGATE'S COURT, COUNTY OF NEW YORK:

    Respondents, The Anna Freud Centre and Anton O.
Kris and Anna Kris Wolff, as executors of The Estate of
Marianne Kris, by their attorneys, Paul, Weiss, Rifkind,
Wharton & Garrison, with offices at 1285 Avenue of the
Americas, New York, New York 10019-6064, respectfully answer
the petition herein as follows. The numbered paragraphs in
this answer correspond to the numbered paragraphs in the
petition.

    1. Admit the first sentence. As to the second
sentence, admit that petitioner would have standing to
commence a construction proceeding if there were any necessity
for one, but deny that a construction proceeding is necessary.

    2. Admit.

    3. Admit on information and belief.

    4. Admit on information and belief.

    5. Admit.

    6. Deny knowledge and information sufficient to
form a belief as to the truth of the first sentence. The

second sentence is a statement of the petitioner's intention to perform an act in the future, which requires no answer.

7.  Admit, except deny knowledge and information sufficient to form a belief as to whether the payments described in this paragraph constitute income or principal.

8.  Admit, except as to the characterization of the payments as "income," as to which deny knowledge or information sufficient to form a belief as to whether the payments are income or principal.

9.  Admit.

10.  Admit.

11.  Admit the first sentence.  As to the second sentence, state that both Anton O. Kris and Anna Kris Wolff, the two children of Marianne Kris, were appointed co-executors of Marianne Kris's estate.  To the extent that the petition states that only Anton Kris was appointed executor of that estate, and to the extent that process was ordered to be served only on Anton Kris, the petitioner is in error. Respondent Anna Kris Wolff has nevertheless appeared, thereby curing the petitioner's error in this regard.

12.  Admit on information and belief that petitioner expressed the view set forth in this paragraph of the petition. Deny that the decedent's will was unclear or there is any need for this proceeding.

13.  Admit.

2

MM-0007336

14.    Deny knowledge and information sufficient to form a belief as to petitioner's advice from her counsel or as to petitioner's belief. Deny that paragraphs FIFTH and SIXTH of the Monroe Will are in need of construction.

15.    Deny the first sentence. Admit the second sentence, except that the Monroe Will bequeaths the remainder of a trust to Dr. Kris for the purposes specified therein. Admit the third sentence. As to the fourth sentence, deny the characterization of the Kris Will. As to the balance of the fourth sentence, state that it is a description of the petitioner's request to the Court in this proceeding which requires no answer.

16.    Deny the first sentence. Admit that the language of the Monroe Will does not expressly indicate whether or not the Kris bequests survived Kris's death and that it does not contain an explicit or implicit power of appointment. Deny that the grant of an explicit or implicit power of appointment would be necessary to permit Kris to bequeath her legacy to psychiatric institutions. In all other respects, deny.

17.    Deny the first sentence. As to the second sentence, state that it describes the petitioner's request of the Court and therefore requires no answer, except that respondents deny that there is any need for a construction on this point.

3

MM-0007337

18.   As to the first sentence, deny that Kris understood her interest under the Monroe Will as a power of appointment and deny that a construction of the Kris Will is necessary.   As to the balance of the sentence, state that it describes the petitioner's request to the Court and requires no answer.   As to the second sentence, admit the description of Monroe's apparent intent and state that Kris selected the respondent The Anna Freud Centre (using its former name, which was then substantially correct), and therefore deny the stated necessity to determine "who the proper entities selected by the Will of Kris" (sic).   Deny the characterization of Kris's interest as a power of appointment.

19.   Admit.

20.   As to the first sentence, deny that the Hampstead Child-Care Clinic no longer exists, and therefore deny that a construction is necessary with regard to a "successor" to Hampstead or the alternative bequest to Yale University.   Deny that there is a successor to Hampstead Child-Care Clinic (because it still exists under a new name).   As to the second sentence, deny that Yale University is entitled to any amount under either the Kris Will or the Monroe Will, because all conditions of both Wills were satisfied at the respective dates of death of the testatrices.   As to the third sentence, state that Kris has

4

MM-0007338



selected respondent The Anna Freud Centre (under its former name), and therefore petitioner has no derivative interest in the construction of the Kris Will. Deny the last sentence.

21. Admit on information and belief.

22. Deny on the ground that there is no bona fide good faith doubt that The Anna Freud Centre is currently entitled to twenty-five percent of the residuary estate under the Monroe Will.

23. Admit on information and belief.

24. Deny knowledge and information sufficient to form a belief as to the truth of this allegation.

WHEREFORE, respondents The Anna Freud Centre and the Estate of Marianne Kris pray that the Court declare that the Kris interest in the Monroe Will survived Kris's death; that The Anna Freud Centre is the psychiatric institution selected by Kris to receive that interest; and that The Anna

5

MM-0007339

Freud Centre is entitled to twenty-five percent of the residuary estate under the Monroe Will.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON

By: _Bernard_ _Nickelson_

Attorneys for Respondents
The Anna Freud Centre and
Anton O. Kris and Anna Kris Wolff
as Executors of the
Estate of Marianne Kris
1285 Avenue of the Americas
New York, New York  10019-6064
(212) 373-3000

6

MM-0007340

<u>**VERIFICATION**</u>

STATE OF NEW YORK )
                          ss.:
COUNTY OF NEW YORK)

        Jonathan J. Rikoon being duly sworn upon
information and belief, states that he is an attorney for
respondents, The Anna Freud Centre and Anton O. Kris and Anna
Kris Wolff as Executors of the Estate of Marianne Kris,
respondents herein, and that he has read the annexed answer
of the said respondents, and that the statements contained
therein are true to his own knowledge, except as to matters
stated to be upon information and belief, and as to those
matters he believes them to be true; and that the reason why
the verification is not made by respondents is that
respondent The Anna Freud Centre is a charitable institution
located in London, England, with none of its trustees located
in the State of New York, and that respondents Anton O. Kris
and Anna Kris Wolff are both residents of and presently
residing in the Commonwealth of Massachusetts.

                                 _____
                                  Jonathan J. Rikoon

Sworn to before me this
20th day of November 1989.

_____
Notary Public

JEANNE RACANELLI
Notary Public, State of New York
No. 41-4934317
Qualified in Queens County
Commission Expires May 23, 1990

7

SURROGATE'S COURT:
COUNTY OF NEW YORK

------------------------------------x

Proceeding for Construction of          :          File No. 2781/62
the Last Will of
                                        :

    MARILYN MONROE,                     :

        Deceased                        :

------------------------------------x


### MEMORANDUM OF LAW OF
### RESPONDENTS THE ANNA FREUD CENTRE
### AND THE ESTATE OF MARIANNE KRIS


PAUL, WEISS, RIFKIND, WHARTON & GARRISON
ATTORNEYS AT LAW
1285 AVENUE OF THE AMERICAS, NEW YORK, N.Y. 10019

MM-0004443

# TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES ............................. | ii |
| FACTS ............................................... | 1 |
| QUESTION PRESENTED ................................ | 5 |
| ARGUMENT | |
| I.  THE MONROE WILL BEQUEATHS THE REMAINDER OF THE PRERESIDUARY TRUST, PLUS 25% OF THE RESIDUARY ESTATE, ABSOLUTELY TO SUCH PSYCHIATRIC INSTITUTIONS AS DR. KRIS ELECTS ................................. | 5 |
| II.  DR. KRIS ELECTED THE CENTRE AS THE PSYCHIATRIC INSTITUTION TO RECEIVE THE MONROE LEGACIES ................... | 13 |
| CONCLUSION ........................................ | 16 |

i

MM-0004444

TABLE OF AUTHORITIES

<u>Cases</u>

Page

<u>Matter of Ablett</u>, 3 N.Y.2d 261,
165 N.Y.S.2d 63, 144 N.E.2d 46 (1957) .......... 15

<u>Matter of Bergen</u>, 22 Misc. 2d 762, 193
N.Y.S.2d 817 (Sur. Ct., Dutchess Co. 1959) ..... 16

<u>Matter of Bloch</u>, 30 Misc. 2d 959,
220 N.Y.S.2d 455 (Sur. Ct., N.Y. Co. 1961) ..... 16

<u>Estate of Bush</u>, 124 Misc. 2d 40, 475
N.Y.S.2d 311 (Sur. Ct., Lewis Co. 1984) ....... 11

<u>Matter of Carper</u>, 67 A.D.2d 333, 415 N.Y.S.2d
550 (4th Dep't 1979), <u>aff'd</u>, 50 N.Y.2d 974,
431 N.Y.S.2d 468, 409 N.E.2d 941 (1980) ....... 11

<u>Matter of Dammann</u>, 12 N.Y.2d 500,
240 N.Y.S.2d 968, 191 N.E.2d 452 (1963) ........ 6

<u>Matter of Dubrow</u>, 254 N.Y. 469,
157 N.E. 747 (1927) ........................... 9, 11

<u>Matter of Fabbri</u>, 2 N.Y.2d 236,
159 N.Y.S.2d 184, 140 N.E.2d 269 (1957) ........ 6

<u>Matter of Hampton</u>, 15 Misc. 2d 846,
182 N.Y.S.2d 439 (Sur. Ct., Kings Co. 1958) .... 11

<u>Matter of Harrigan</u>, 23 A.D.2d 667, 257 N.Y.S.2d
299 (2d Dep't 1965), <u>aff'd</u>, 18 N.Y.2d 881, 276
N.Y.S.2d 622, 223 N.E.2d 33 (1966) ............ 7, 9, 13

<u>Matter of Jones</u>, 27 Misc. 2d 569,
213 N.Y.S.2d 92 (Sur. Ct., Kings Co. 1961) ..... 9, 13

<u>Matter of Jones</u>, 38 N.Y.2d 189, 379 N.Y.S.2d 55,
341 N.E.2d 565 (1975) ......................... 5

<u>Matter of Kaufman</u>, 30 Misc. 2d 860,
219 N.Y.S.2d 627 (Sur. Ct., Kings Co. 1961) ... 10, 12

<u>Matter of Kearney</u>, 199 Misc. 1085,
104 N.Y.S.2d 818 (Sur. Ct., N.Y. Co. 1951) ..... 16

ii

MM-0004445

Cases                                                    Page

Matter of Kittinger, 36 Misc. 2d 385,
    232 N.Y.S.2d 922 (Sur. Ct., N.Y. Co. 1962) .....        12

Estate of Klein, 39 Misc. 2d 960,
    242 N.Y.S.2d 241 (Sur. Ct., N.Y. Co. 1963) .....        15

Matter of Krauthoff, 141 N.Y.S.2d 591
    (Sur. Ct., N.Y. Co. 1955) ......................        16

Matter of Kosek, 31 N.Y.2d 475, 341 N.Y.S.2d
    593, 294 N.E.2d 188 (1973) .....................         5

Lefevre v. Lefevre, 59 N.Y. 434 (1875) .......          15

Matter of Loew, 6 Misc. 2d 863, 165 N.Y.S.2d
    689 (Sur. Ct., N.Y. Co. 1957) ..................        16

Matter of Martin, 32 A.D.2d 849,
    300 N.Y.S.2d 751 (3d Dep't 1969) ...............     10, 11

Matter of Michaels, 7 Misc. 2d 439,
    165 N.Y.S.2d 234 (Sur. Ct., N.Y. Co. 1957) .....    8, 9, 13

Matter of Nurse, 35 N.Y.2d 381,
    362 N.Y.S.2d 441, 321 N.E.2d 537 (1974) ........        10

Matter of O'Connor, 45 Misc. 2d 1033,
    258 N.Y.S.2d 688 (Sur. Ct., Broome Co. 1965) ...    8, 9, 13

Matter of Potter, 307 N.Y. 504,
    121 N.E.2d 527 (1954) ..........................        10

Matter of Stalp, 79 Misc. 2d 412,
    359 N.Y.S.2d 749 (Sur. Ct., Kings Co. 1974) ....        10

Matter of Stymus, 64 N.Y.S.2d 304
    (Sur. Ct., Westchester Co. 1946) ...............        16

Matter of Syracuse University, 3 N.Y.2d 665,
    171 N.Y.S.2d 545, 148 N.E.2d 671 (1958) ........        15

Matter of Thall, 18 N.Y.2d 186, 273 N.Y.S.2d 33,
    219 N.E.2d 397 (1966) ..........................         5

Matter of Thomas, 38 Misc. 2d 48, 235
    N.Y.S.2d 601 (Sur. Ct., N.Y. Co. 1962) ........     12, 16

Statute

E.P.T.L. 8-1.1 ...................................     9, 14

MM-0004446

SURROGATE'S COURT:
COUNTY OF NEW YORK

------------------------------------x

Proceeding for Construction of    :    File No. 2781/62
the Last Will of

    :

    MARILYN MONROE,

    :

        Deceased

    :

------------------------------------x

## MEMORANDUM OF LAW OF
### RESPONDENTS THE ANNA FREUD CENTRE
### AND THE ESTATE OF MARIANNE KRIS

    Respondents The Anna Freud Centre (formerly known
as The Hampstead Child-Therapy Course and Clinic) (the
"Centre") and the estate of Marianne Kris (the "Kris estate")
submit this memorandum in support of the plain meaning of the
wills of Marilyn Monroe ("Monroe" or the "decedent") and
Marianne Kris ("Dr. Kris") and respectfully urge the Court to
uphold the interest of the Centre in the Monroe estate.

## FACTS

    Marilyn Monroe died on August 5, 1962, and her will
was admitted to probate in this Court on October 30, 1962.
Her will bequeathed $100,000 in trust for the lifetime
benefit of her mother and Mrs. Michael Chekhov. At the death
of the survivor of the life beneficiaries, the remainder of
the trust was directed to be paid "to Dr. Marianne Kris to be
used by her for the furtherance of the work of such

MM-0004447

psychiatric institutions or groups as she shall elect,"
Article FIFTH(d).

Twenty-five percent of Monroe's residuary
estate, after a pecuniary legacy payable from the residue,
was likewise bequeathed to Dr. Kris "to be used by her as set
forth in Article FIFTH(d) of this my Last Will and Testa-
ment." Article SIXTH(b).

Dr. Kris received no distributions from the Monroe
estate during her life.  She supported the Centre with her
own funds, time and energy.  She was a good friend and
professional colleague of Anna Freud, and she was familiar
with the work of the Centre and the role Anna Freud played
in founding and directing the operations of the Centre.
Dr. Kris admired the work of Dr. Freud and further assisted
the Centre not only by electing it in her will as the
psychiatric institution to receive the Monroe legacy but also
by instigating a cooperative affiliation between the Centre
and the Yale University Child Study Center, where Dr. Kris
worked teaching and practicing psychiatry.

Dr. Kris died on May 23, 1980.  Her will provides
as follows with regard to the Monroe estate, in Article
SIXTH:

I give and bequeath all property which I have
received or am entitled to receive under the will of
Marilyn Monroe, which I have not otherwise disposed of
during my life, to the HAMPSTEAD CHILD-THERAPY CLINIC,
London, England.  If this Clinic is not in operation at

MM-0004448

3

the time of my death, I give and bequeath the same to Yale University for the furtherance of the psychiatric work of its Child Study Center, and it is my wish and desire that such property be used as directed by Dr. Albert Solnit and/or Dr. Samuel Ritvo so long as one or both of such doctors are actively associated with the work of said Child Study Centre.

At the date of Dr. Kris's death, the Hampstead Child-Therapy Course and Clinic, London, England, was in operation.  (There has never been a "Hampstead Child-Therapy Clinic" in London.)  It was and is listed in the The Internal Revenue Service cumulative list of tax-exempt organizations, and the Internal Revenue Service has ruled that the Centre is an organization described in sections 501(c)(3) and 509(a) of the Internal Revenue Code.  The Internal Revenue Service and the New York State Department of Taxation and Finance allowed a charitable estate tax deduction to the Kris estate for the disposition set forth in Article SIXTH of Dr. Kris's will.

The Centre was formally established by Dr. Anna Freud, in London, by a deed of trust in 1953, and is registered with the United Kingdom Charity Commission.  It has never ceased its existence or merged with or into any other organization.  During Dr. Freud's life, she was asked on a number of occasions to change the name of her clinic to the Anna Freud Centre but she declined, to avoid any appearance of self-aggrandizement.  The Trustees of the Centre changed the name after her death to honor her memory and life's work.  The change of name to The Anna Freud Centre

MM-0004449

(technically, "The Anna Freud Centre for the Psychoanalytic Study and Treatment of Children") was approved by a "Scheme" of the United Kingdom Charity Commission in 1985.

The Centre receives contributions from a number of sources, including distributions from the Monroe estate (directly and through the Kris estate) received both before and after the 1985 name change. After the death of the decedent's mother and Mrs. Michael Chekhov, the life beneficiaries of the trust under Article FIFTH of the Monroe Will, the remainder of the trust was paid to the executors of Dr. Kris's estate; they in turn transmitted the funds so received to the Centre. The Centre also receives grants from The Anna Freud Foundation, a Massachusetts charitable trust that was created in 1953; the Foundation's governing instrument expressly names the Centre (under its then name) as an intended grant recipient, and grants from the Foundation have continued to be made to the Centre since its change of name.

The Centre's facilities are located near Anna Freud's former residence which is now a museum dedicated to Sigmund and Anna Freud. The museum is owned and operated by an English charitable trust and company controlled by the Sigmund Freud Archives in New York. The Centre, the Anna Freud Foundation and the Sigmund Freud Archives (and museum) are each separate and independent entities. One Trustee

MM-0004450

of the Centre is also a Trustee of the Foundation, and another Trustee of the Centre is also a director of the Archives.  The governance of the Centre is otherwise unrelated to that of either the Foundation or the Archives.

On January 27, 1987, the executors of the Kris estate wound up its administration and consequently assigned all of the Kris/charitable interest under the Monroe will to the Centre, pursuant to the Kris will.

## QUESTION PRESENTED

Is the Centre a beneficiary of the estate of Marilyn Monroe?

## ARGUMENT

### I.

**THE MONROE WILL BEQUEATHS THE REMAINDER OF THE PRERESIDUARY TRUST, PLUS 25% OF THE RESIDUARY ESTATE, ABSOLUTELY TO SUCH PSYCHIATRIC INSTITUTIONS AS DR. KRIS ELECTS**

The most important and fundamental purpose of a construction proceeding is to determine the intent of the testator.  Once the testator's intent is ascertained, the will is to be construed to give effect to that intent.  E.g., Matter of Jones, 38 N.Y.2d 189, 379 N.Y.S.2d 55, 341 N.E.2d 565 (1975); Matter of Kosek, 31 N.Y.2d 475, 341 N.Y.S.2d 593, 294 N.E.2d 188 (1973); Matter of Thall, 18 N.Y.2d 186, 273 N.Y.S.2d 33, 219 N.E.2d 397 (1966) (first rule of

MM-0004451

construction is that a will be interpreted to reflect the
testator's intent); Matter of Dammann, 12 N.Y.2d 500, 240
N.Y.S.2d 968, 191 N.E.2d 452 (1963) (the "most urgent" rule
of a testamentary construction proceeding is to ascertain the
testator's intent); Matter of Fabbri, 2 N.Y.2d 236, 159
N.Y.S.2d 184, 140 N.E.2d 269 (1957).

Here, the testatrix expressly stated that 25%
of her residuary estate, as well as the remainder of the
Article FIFTH trust, was to be "used" by Dr. Kris for "the
furtherance of the work of" psychiatric institutions to be
elected by Dr. Kris.  There is no suggestion in the will that
Dr. Kris's "use" of the residuary interest or trust remainder
for "the furtherance of the work" of charitable institutions
was limited to her lifetime, or that the absolute bequests of
that residuary interest and trust remainder to charity were
to be cut off at Dr. Kris's subsequent death.  To the con-
trary, Dr. Kris was herself a psychiatrist, and the legacies
were not designed to "further" her own professional work
(necessarily limited to her lifetime): she was required to
elect "institutions or groups," a requirement that clearly
imports continuity and permanence of the charitable legacies
far beyond Dr. Kris's lifetime.

Indeed, Monroe and her attorney-draftsman knew how
to create lifetime interests that terminate at death.
Article FIFTH creates a trust for the lives of two

MM-0004452

individuals, with the remainder at the death of the survivor
of the two of them to institutions to be elected by Dr. Kris.
Had Monroe wished to limit the interests of those
institutions to Dr. Kris's lifetime, her will would have said
so in the very provision in Article FIFTH (d) that disposes
of the trust remainder at the death of the survivor of the
two life beneficiaries.  Of course, there is no such
limitation in that provision, which also disposes of the 25%
residuary interest by reason of the cross-reference in
Article SIXTH(b).  Nor is there any such limitation in
Article SIXTH, which disposes of the residuary estate in the
first instance.  The charitable legacies clearly were not
intended to terminate, and did not terminate, at Dr. Kris's
death.

　　　Several courts have construed similar bequests in
like fashion even in the weaker case where the individual who
was to select the charitable legatees had not done so and
died without a will, like Dr. Kris's, that selected the
charities.  In _Matter of Harrigan_, 23 A.D.2d 667, 257
N.Y.S.2d 299 (2d Dept.  1965), _aff'd_, 18 N.Y.S.2d 881, 276
N.Y.S.2d 622, 223 N.E.2d 33 (1966), the will gave the residu-
ary estate to the executrix "to be divided _or used for_ any
and all charities" that she selected (emphasis supplied).
The Court held that "such disposition constitutes a valid
charitable bequest" and did not fail on death of the

nominated executrix before designating the charities to receive the bequest (indeed, she died before the testatrix).

Similarly, in Matter of Michaels, 7 Misc. 2d 439, 165 N.Y.S.2d 234 (Sur. Ct., N.Y. Co. 1957), the Court was asked to construe testamentary provisions disposing of a portion of the remainder of a trust to a named individual "to be distributed by him" among educational institutions and charities. The named individual survived the testator but predeceased the life beneficiary of the trust. The Court recognized that "a testator often is content merely to outline in broad terms the [charitable] field of his choice and to leave the selection of beneficiaries to the one who is in a position to judge present needs and merits," id. at 441-442, 165 N.Y.S.2d at 236-37, and went on to hold that the charitable legacy survived the death of the named individual. Here, the Monroe will similarly outlined the charitable field -- psychiatry -- and left the selection of particular institutions to Dr. Kris, herself a psychiatrist familiar with institutions eligible for the legacy.

Again, in Matter of O'Connor, 45 Misc. 2d 1033, 258 N.Y.S. 2d 688 (Sur. Ct., Broome Co. 1965), the decedent bequeathed his residuary estate in trust to his executor to be distributed among such Roman Catholic charities as the executor selected. The decedent's executor died shortly after the decedent, but prior to designating such charities.

MM-0004454

The Court determined the probable charitable intentions of the executor and ordered distribution accordingly.  And in Matter of Jones, 27 Misc. 2d 569, 213 N.Y.S. 2d 92 (Sur. Ct., Kings Co. 1961), the will directed the executors to divide the remainder of the residuary trust, after the death of the life tenants, among Protestant and nonsectarian charities in Brooklyn.  The executors survived the decedent but predeceased the life tenants without having designated charitable beneficiaries. The Court implemented the testator's charitable purpose by designating the charities itself, citing Pers. Prop. L. § 12(1) (now EPTL 8-1.1(1)).

Legacies to charities to be selected after the decedent's death are, of course, valid, as these four cases held.  The seminal case upholding such a legacy is Matter of Dubrow, 245 N.Y. 469, 157 N.E. 747 (1927) (upholding legacy to charities that had been selected by executor under will directing executor to distribute residuary estate "where he . . . shall consider it will be most effective in the advancement of Christ's Kingdom on earth.").  In our case, of course, Dr. Kris did designate the charitable beneficiary before her death (as had the Dubrow executor), and there is no need to have the Court do so as in Harrigan, Michaels, Jones and O'Connor.  Dr. Kris's designation of the Centre (under its former name) is no less valid merely because the nature of the assets of the Monroe estate appears likely to

MM-0004455

produce a growing revenue flow to the residuary beneficiaries long after Kris's death.

What we have urged thus far is a simple, straight-forward reading of the Monroe will, which is in fact clear and unambiguous.  In addition, the reading we urge is supported by the broad public policy in favor of charitable bequests.  In construing charitable bequests, courts are influenced by the public policy favoring charitable giving. "Where a testator has apparently sought to leave money for charitable purposes, a liberal construction is to be given to the terms of the will in order to uphold it and validate the bequest."  _Matter of Potter_, 307 N.Y. 504, 507, 121 N.E.2d 522, 528 (1954); _accord_, _Matter of Nurse_, 35 N.Y.2d 381, 388, 362 N.Y.S.2d 441, 446, 321 N.E.2d 537, 540 (1974); _Matter of Stalp_, 79 Misc. 2d 412, 359 N.Y.S.2d 749 (Sur. Ct., Kings Co. 1974).

Guided by this public policy, "[w]here the charitable purpose of a testator is evident from the provisions of a will, the courts will strain to sustain a legacy to charity," _Matter of Kaufman_, 30 Misc. 2d 860, 219 N.Y.S.2d 627 (Sur. Ct., Kings Co. 1961) (court upheld legacy to (foreign) charity even though executors were given broad discretion in selecting charitable beneficiary); _accord_, _Matter of Martin_, 32 A.D.2d 849, 300 N.Y.S.2d 751 (3d Dept. 1969).  When construing charitable provisions and bequests,

MM-0004456

"the most liberal construction will be given to the terms of a will in order to validate a charitable bequest." <u>Matter of Martin</u>, 300 N.Y.S.2d at 753.

In fact, "testamentary language is to be construed most favorable [sic] toward the sustaining of charitable bequests." <u>Estate of Bush</u>, 124 Misc. 2d 40, 475 N.Y.S.2d 311, 313 (Sur. Ct., Lewis Co. 1984). <u>See</u> <u>Matter of Dubrow</u>, <u>supra</u> p. 9, 245 N.Y. 469, 157 N.E. 747 (1927) (will directed executor to distribute the entire residuary estate "where he . . . shall consider it will be most effective in the advancement of Christ's Kingdom on earth"; Court of Appeals unanimously reversed the Appellate Division and upheld the bequest against a number of challenges; "the intention to make a gift for charitable and religious purposes pervades and dominates the whole bequest and the court will give it effect if it is possible to do so by the application of the most liberal rules of construction that the law will permit.") <u>See also</u>, <u>Matter of Carper</u>, 67 A.D.2d 333, 415 N.Y.S.2d 550 (4th Dept. 1979), <u>aff'd</u>, 50 N.Y.2d 974, 431 N.Y.S.2d 468, 409 N.E.2d 941 (1980) (where testator demonstrates charitable intent, liberal rules of construction will be applied to support the bequest); <u>Matter of Hampton,</u> 15 Misc. 2d 846, 182 N.Y.S.2d 439 (Sur. Ct., Kings Co. 1958) (testator's will embodied a general charitable intent, and thus the court strained to uphold the bequest even though

MM-0004457

specific provision of the will could not be carried out with exactitude); Matter of Kittinger, 36 Misc. 2d 385, 232 N.Y.S.2d 922 (Sur. Ct., N.Y. Co. 1962) (where a will discloses a charitable intent, the court will effectuate that intent by applying liberal rules of construction even if there has been a change in circumstances which makes it impossible to carry out the particular charitable intent of the testator).

The public policy in favor of charity is not diminished if the designated charity happens to be foreign. See Matter of Kaufman, supra p. 10 (Israel); Matter of Thomas, 38 Misc. 2d 48, 235 N.Y.S.2d 601 (Sur. Ct., N.Y. Co. 1962) (Libya, Lebanon).

Any construction of the Monroe will to the effect that the charitable interests died with Dr. Kris would entirely defeat the testatrix's obvious charitable intent (as well as the plain meaning of her will and the strong public policy upholding charitable legacies). No distributions were made in respect of the legacy during Dr. Kris's life, and if the legacy terminated at her death, charity would receive not a single penny from the Monroe estate.

Indeed, Dr. Kris died before the termination of the preresiduary trust, and if any reading of the Monroe will is adopted other than the one we urge, the trust remainder was not specifically disposed of under those circumstances. That

MM-0004458

tortured interpretation would read into the will an unstated condition that Dr. Kris must survive the life tenants for charity to take the remainder, with no express disposition of the remainder charity supposedly forfeited. And if Dr. Kris had died before the decedent, under the strained anti-charity construction apparently urged by the petitioner, again charity would receive nothing -- a result precisely opposite to the results on those same facts in Harrigan, supra p. 7, Michaels and O'Connor, supra p. 8, and Jones, supra p. 9, all of which implemented similar language after the death of the individual who was to designate charitable "beneficiaries." Our case, of course, is much stronger than these four cases, because here, not only did Dr. Kris survive the decedent, but she also elected the charity, as required by the Monroe will.

II.

DR.  KRIS ELECTED THE CENTRE AS THE
PSYCHIATRIC INSTITUTION TO RECEIVE
THE MONROE LEGACIES

The petition in this construction proceeding incorrectly alleges that "the Hampstead Child-Care Clinic no longer exists" (¶ 20). In fact, that entity, named in Dr. Kris's will, is alive and well, as attested by the affidavits submitted herein by Hugh R.B. Hamilton (a British lawyer and a Trustee of the Centre who was also Anna Freud's personal solicitor and Executor), Dr. Albert Solnit (a

MM-0004459

Trustee of the Centre who was well acquainted with Dr. Kris),
Dr. Anton Kris (Dr. Kris's son and a co-executor of her will)
and Charles Mandelstam (Dr. Kris's attorney and the draftsman
of her will). It is clear from the four corners of Dr.
Kris's will as well as from these affidavits and the
documents annexed to them that Dr. Kris intended to elect the
Centre to receive the 25% legacy under the Monroe will, that
the subsequent name change of the Centre was consistent with
her wishes and that there has been no merger or termination
of or successor to the institution she named in her will.

The only condition in the Monroe will to the Kris
legacies is that Dr. Kris use the legacies for one or more
psychiatric institutions or groups as she "elects." She
elected the Centre (under a variation of its former name) by
Article SIXTH of her will. The only condition in her will is
that the Centre be in operation at her death. It was. Thus,
the Monroe legacies, which vested in psychiatric institutions
in general (EPTL 8-1.1) in 1962 (at Monroe's death), vested
in the Centre in 1980 (at Dr. Kris's death), when the final
condition was satisfied. Even if the Centre had subsequently
merged with another organization (which it did not), the 25%
residuary interest would have passed to the Centre's succes-
sors, as a vested property interest. And even if the legacy
had not vested under those hypothetical circumstances, where
a donee ceases to exist and merges into another institution

MM-0004460

with similar purposes, the successor will receive the legacy.
Matter of Syracuse University, 3 N.Y.2d 665, 171 N.Y.S.2d
545, 148 N.E.2d 671 (1958); Matter of Ablett, 3 N.Y.2d 261,
165 N.Y.S.2d 63, 144 N.E.2d 46 (1957).

The fact that the Kris will omitted two words of
the official name of the Centre at the time is of no conse-
quence.  There is no entity but the Centre which had a name
and location close to those in the will, and Dr. Kris's long
association with the Centre and her directions to her drafts-
man remove any doubt.  As the Court of Appeals ruled long
ago:

> A misnomer or misdescription of a legatee or devisee,
> whether a natural person or a corporation, will not
> invalidate the provision or defeat the intention of the
> testator, if, either from the will itself or evidence
> dehors the will, the object of the testator's bounty can
> be ascertained.  No principle is better settled than
> that parol evidence is admissible to remove latent
> ambiguities, and when there is no person or corporation
> in existence precisely answering to the name or descrip-
> tion in the will, parol evidence may be given to ascer-
> tain who were intended by the testator.  A corporation
> may be designated by its corporate name, by the name by
> which it is usually or popularly called and known, by a
> name by which it was known and called by the testator,
> or by any name or description by which it can be distin-
> guished from every other corporation; and when any but
> the corporate name is used, the circumstances to enable
> the court to apply the name or description to a particu-
> lar corporation and identify it as the body intended,
> and to distinguish it from all others and bring it
> within the terms of the will, may, in all cases be
> proved by parol.

Lefevre v. Lefevre, 59 N.Y. 434 (1875).  Accord, Matter of
Klein, 39 Misc. 2d 960, 242 N.Y.S.2d 241 (Sur. Ct., N.Y. Co.

1963) (where the issue involved was merely one of misnomer, the Court directed that the bequest be paid to the intended charitable beneficiary); Thomas, supra p. 12 at 49, 235 N.Y.S.2d at 601; Matter of Bloch, 30 Misc. 2d 959, 220 N.Y.S.2d 455 (Sur. Ct., N.Y. Co. 1961); Matter of Bergen, 22 Misc. 2d 762, 193 N.Y.S.2d 817 (Sur. Ct., Dutchess Co. 1959); Matter of Loew, 6 Misc. 2d 863, 165 N.Y.S.2d 689 (Sur. Ct., Suffolk Co. 1957); Matter of Krauthoff, 141 N.Y.S.2d 591 (Sur. Ct., N.Y. Co. 1955); Matter of Kearney, 199 Misc. 1085, 104 N.Y.S.2d 959 (Sur. Ct., N.Y. Co. 1951); Matter of Stymus, 64 N.Y.S.2d 304 (Sur. Ct., Westchester Co. 1946).

## CONCLUSION

For the reasons set forth above we urge the Court to hold that the Anna Freud Centre is the absolute legatee of

MM-0004462

both the remainder of the preresiduary trust and 25% of the

residuary estate of Marilyn Monroe.

Dated: November 20, 1989

                              PAUL, WEISS, RIFKIND, WHARTON & GARRISON
                              Counsel for Respondents
                                The Anna Freud Centre and
                                The Estate of Marianne Kris
                              1285 Avenue of the Americas
                              New York, New York 10019-6064
                              (212) 373-3000

Of Counsel:

  Bernard H. Greene
  Jonathan J. Rikoon
  Lori Sullivan*/

---

*/    Not yet admitted to practice.

MM-0004463