# EXHIBIT

# 37

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------X

Proceeding for Construction of the Last
Will of                                          Index No. P2781/62
        MARILYN MONROE,

             Deceased.

----------------------------------------------X

**PETITIONER'S MEMORANDUM OF LAW
IN SUPPORT OF THE PETITION FOR
CONSTRUCTION OF THE LAST WILL
OF MARILYN MONROE, DECEASED**

IRVING P. SEIDMAN, P.C.
ATTORNEYS AT LAW
600 THIRD AVENUE
NEW YORK, N.Y. 10016

MM-0007357

Proceeding for Construction of the Last
Will of

        MARILYN MONROE,               Index No. P2781/62

           Deceased.

------------------------------------------------X

### PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF THE PETITION FOR CONSTRUCTION OF THE LAST WILL OF MARILYN MONROE, DECEASED

### PRELIMINARY STATEMENT

    This memorandum is submitted in support of the petition of Anna Strasberg, as Administrator, c.t.a. of the Estate of Marilyn Monroe:

    A.    To determine whether a conditional residuary legacy to Dr. Marianne Kris ("Kris") under Paragraph SIXTH of the Monroe Will survives the death of Kris and whether Kris has a testamentary power to designate recipients of said legacy by her will; and

    B.    If the Court determines that Monroe gave Kris a testamentary power to convey her legacy, whether that legacy lapsed when, the Hampstead Child Therapy Clinic ("Hampstead"), the legatee designated under the Kris Will, ceased to exist.

MM-0007358

By Order to Show Cause dated July 28, 1989, Anna Strasberg, the Administrator, c.t.a. of the Estate of Marilyn Monroe, requests this Court to determine whether the Anna Freud Centre ("Freud Centre"), an organization neither named as a legatee in the Will of Marilyn Monroe nor the Will of Kris, is entitled to receive a conditional residuary legacy bequeathed to Kris under the Monroe Will.

The decedent, Marilyn Monroe, died on August 5, 1962 leaving a Last Will and Testament dated January 14, 1961 which was admitted to probate in this Court.  At the time of her death, Monroe was survived by Kris, her psychiatrist, and Lee Strasberg ("Strasberg"), her acting coach, both of whom post-deceased Monroe on November 23, 1980 and February 17, 1982 respectively.

Pursuant to Article SIXTH of the Monroe Will, the residuary Estate was bequeathed as follows:

SIXTH:

All the rest, residue and remainder of my estate, both real and personal, of whatsoever nature and wheresoever situate, of which I shall die seized or possessed or to which I shall be in any way entitled, or over which I shall possess any power of appointment by Will at that time of my death, including any lapsed legacies, I give, devise and bequeath as follows:

(a) To MAY REIS the sum of $40,000.00 or 25% of the total remainder of my estate, whichever shall be the lesser.

(b) To DR. MARIANNE KRIS 25% of the balance thereof, to be used by her as set forth in

- 2 -

MM-0007359

ARTICLE FIFTH (d) of this my Last Will and Testament.

(c) To LEE STRASBERG the entire remaining balance.

Article FIFTH(d) of the Monroe Will attaches conditions to the bequest to Kris, and requires that it "be used by her for the furtherance of the work of such psychiatric institutions or groups as she shall elect."

As noted previously, Kris died on November 23, 1980 leaving a Last Will and Testament dated June 8, 1976 which was admitted to probate in this Court.

Paragraph SIXTH of the Will of Kris, provides as follows:

> I give and bequeath all property which I have received or which I am entitled to receive under the Will of Marilyn Monroe, which I have not otherwise disposed of during my life, to THE HAMPSTEAD CHILD-THERAPY CLINIC, London, England. If this Clinic is not in operation at the time of my death, I give and bequeath the same to YALE UNIVERSITY for the furtherance of the psychiatric work of its Child Study Center, and it is my wish and desire that such property shall be used as directed by Dr. Albert Solnit and/or Dr. Samuel Ritvo so long as one or both of such doctors are actively associated with the work of said Child Study Center.

On or about March 4, 1985, subsequent to the death of Kris, Hampstead, designated by the Kris to receive her conditional bequest under the Monroe Will, ceased to exist. In papers submitted to this Court, the Freud Centre admits that it is a separate institution which existed since 1947 and that it operated independently of Hampstead while Hampstead existed. While the

- 3 -

MM-0007360

primary function of Hampstead is treatment, (children with psychological problems) the primary function of the Freud Centre is education (the training of qualified psychoanalysts). There is no indication that the legacy bequeathed to Hampstead but received by Freud Centre has been used exclusively for the operations of Hampstead.   Upon information and belief, in a letter dated August 7, 1989, the law firm of Kaplan, Russin, Vecchi & Kirkwood who represented the Freud Centre, admitted that it received approximately $175,000 in legal fees from the legacy during the period January, 1987 through July, 1989.

The property of the Monroe Estate which remains undistributed consists of income derived from the royalties paid pursuant to motion picture contracts entered into by the decedent during her lifetime and royalties paid pursuant to trademark licensing agreements which use decedent's signature, name and likeness.

Upon information and belief (a) all of the specific legacies of the Monroe Will have been paid, therefore, all of the above referenced motion picture and licensing royalties fall into the residuary estate and (b) the bequest to Mary Reis in paragraph SIXTH(a) has been paid in full.   Until this Court has determined the aforementioned questions, petitioner cannot fully perform her role as Administrator, c.t.a. of the Monroe Estate.

- 4 -

MM-0007361

THE CONDITIONAL LEGACY TO KRIS WAS
TO BE USED DURING HER LIFETIME
AND KRIS HAD NO TESTAMENTARY POWER
TO DESIGNATE BENEFICIARIES OF SAID BEQUEST

In a construction proceeding, the primary consideration, consistent with principles of law and public policy, is to ascertain the intent of the testator as expressed in the Will. Matter of Fabbri, 2 N.Y. 2d 236, 159 N.Y.S.2d 184 (1957); Matter of Larkin, 9 N.Y.2d 88, 91, 211 N.Y.S.2d 175 (1961). Intent is determined from the words used in the Will which a court, in construing them, must accord their "everyday and ordinary meaning". Matter of Walker, 64 N.Y.2d 354, 357 486 N.Y.S. 2d 899, 901 (1985); see also Matter of Gautier, 3 N.Y. 2d 502, 508, 169 N.Y.S. 2d 416 (1957); Matter of Dorand 250 N.Y. 45, 53-54 (1928). The reason for this search for intent is to discern "a dominant purpose or plan of distribution" Matter of Fabbri, supra.

In the matter sub judice, Monroe's dominant purposes were to benefit the residuary legatee, Strasberg and to provide funds to psychiatric institutions or groups which Kris selected and monitored. The legacy to Kris is restricted in several significant respects. First, the legacy can only be used to further the work of "psychiatric institutions or groups"; this indicates an intention to prohibit the funds from being used for Kris' personal benefit. Second, the Will requires that the legacy to Kris "be used by her"; this indicates that Monroe intended that Kris monitor and supervise the "use" of the bequest. The word "use" as defined

- 5 -

MM-0007362

in the dictionary means "to put or bring into action...contrast the employ for or apply to a given purpose". dictionary defines "give" as "to turn over the possession or control of to someone without cost or exchange; make a gift". Webster's New World Dictionary of the American Language. Second College Edition, 1984. Thus in providing that the legacy to Kris "be used by her", Monroe specifically retained possession or control of the legacy upon the death of Kris and provided that such a legacy would be bequeathed to Strasberg as part of "the entire remaining balance" of the residuary estate to which Strasberg is entitled.

If Monroe intended to give Kris a testamentary power to transfer this restricted legacy, Monroe's residuary provision would have so provided. Where as here, Monroe was concerned with how the funds were being used and placed significant restrictions on their use, Monroe's failure to specifically provide for their disposition upon Kris' death constitutes an important omission. It is clear from Article SIXTH of the Monroe Will, where Monroe exercises all powers of appointment that she possesses, that Monroe knew that certain legacies must be affirmatively exercised in order for them to survive death.

- 6 -

MM-0007363

ASSUMING ARGUENDO, THAT KRIS HAS A
TESTAMENTARY POWER TO BEQUEATH
THE LEGACY BY HER WILL, THE LEGACY
LAPSED WHEN HAMPSTEAD CEASED TO EXIST

As noted previously, the terms of the Monroe restrict the legacy to Kris by requiring that the funds only be utilized by psychiatric institutions or groups as she (Kris) shall "elect". Even if this Court was to determine that Kris had the power to "elect" institutions by her Will, the Freud Centre is not such an institution.

A plain reading of the Kris Will reveals that Hampstead not the Freud Centre, was "elected" as the nominated residuary beneficiary. Notwithstanding the fact that the Freud Centre has been in existence since 1947 and was obviously known to Kris, the Freud Centre received no legacy of any kind under Kris' Will.

While the Freud Centre will undoubtably claim that it is entitled to the Hampstead bequest because it is a successor to the assets of Hampstead, such an argument conveniently overlooks the intention of Kris as expressed by her "election". At the time that Kris executed her Will she was undoubtedly familiar with the purposes of Hampstead and the treatment programs that it provided. While the primary function of Hampstead is treatment, the primary function of the Freud Centre is education. Thus, a determination that the Freud Centre was an institution which Kris "elected" would subvert the testamentary scheme of two decedents. The Monroe scheme would be subverted because Kris did not "elect" the Freud

- 7 -

MM-0007364

Centre as the entity which would --- --- scheme would be subverted because the Freud Centre was not an object of her bounty. These subversions are particularly grotesque where there is no indication that the legacy bequeathed to Hampstead but received by the Freud Centre has been utilized exclusively for the treatment of children, the purpose of Hampstead. In fact, over 36% of the legacy has been used by the Freud Centre in legal fees. Given the failure by Kris to properly "elect" the Freud Centre, the legacy lapses and is bequeathed in accordance with the residuary provision of the Monroe Will.

Petitioner reiterates her previous statement before this Court that in the event that the Estate of Lee Strasberg is entitled to the entire residuary of the Monroe Estate, petitioner shall donate to the appropriate charitable institutions, consistent with the general charitable intent of the Monroe Will, 25% of the residuary estate that this Court shall award the Strasberg Estate.

- 8 -

MM-0007365

For all the foregoing reasons, we respectfully urge this Court to grant the petition of Anna Strasberg as Administrator, c.t.a. of the Estate of Marilyn Monroe, and grant such other and further relief as the Court may deem just and proper.

Dated:    New York, New York
          November 27, 1989

                              IRVING P. SEIDMAN, P.C.
                              Attorneys for ANNA STRASBERG,
                              as Administrator, c.t.a. of the
                              Estate of Marilyn Monroe
                              600 Third Avenue
                              New York, New York  10016
                              (212)922-1900

Of Counsel:   Irving P. Seidman
              Lawrence H. Silverman
              Allen L. Weintraub

- 9 -

MM-0007366

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK )
                     ) SS.:
COUNTY OF NEW YORK )

        Beth Ann Tunnessen, being duly sworn, deposes and says: that she is not a party to the action, is over 18 years of age and resides in New York County.

That on the 27th day of November, 1989, I served the within PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF THE PETITION FOR CONSTRUCTION OF THE LAST WILL OF MARILYN MONROE, DECEASED upon YALE UNIVERSITY to the OFFICE OF THE PRESIDENT, ATTN: Cynthia Carr, Esq., 105 Wall Street, New Haven, Connecticut 06520 by mailing a true and complete copy of same by certified mail, return receipt requested in a post office or official depository of the United States Postal Service within the State of New York.

                                      _____
                                      BETH ANN TUNNESSEN

Sworn to before me this
27th day of November, 1989

_____
        NOTARY PUBLIC

LAWRENCE H. SILVERMAN
NOTARY PUBLIC, State of New York
No. 31-4699574
Qualified in New York County
Commission Expires Oct. 30, 19__

MM-0007367

# EXHIBIT
# 38

Filed separately under seal pursuant to Protective Order

# EXHIBIT
# 39

(Lambert, S.)

2781/1962

Estate of Marilyn Monroe

In the within proceeding, the administratrix c.t.a. of
Marilyn Monroe's estate requests a construction of the decedent's
will and the will of another decedent, Dr. Marianne Kris, so as to
determine the proper parties entitled to estate assets.  Among a
number of contentions, the petitioner avers that the terms of
Monroe's will providing "conditional" bequests to Kris are
unclear; that the interests Kris may have had in Monroe's estate
lapsed upon Kris' death in 1980; and that Kris could not
effectively appoint property from Monroe's estate as she attempted
in her own last will.  Parenthetically, if the petitioner succeeds
in any of these arguments, the estate assets still undistributed
and all future estate assets, such as royalty payments, would then
pass to the estate of the petitioner's deceased husband, Lee
Strasberg, under the residuary clause of Monroe's will.  The
petitioner has additionally stated, however, that in such
eventuality, she shall arrange for any amounts awarded to the
Strasberg estate to be donated to charities.  The background facts
and allegations in the case are as follow.

Monroe's last will and testament, executed on January 14,
1961, is a document that in its entirety is only three pages long.
Among the will's brief provisions, Monroe made two directions
concerning Dr. Marianne Kris.  Specifically, in Article Fifth(d),
Monroe stated that upon the termination of a certain trust, the
trust's principal and accumulated income were to be paid to Kris
"to be used by her for the furtherance of the work of such

MM-0005583

psychiatric institution or group as she shall elect." Thereafter, in Article Sixth, Monroe added that a portion of her residuary estate should pass:

> "to DR. MARIANNE KRIS . . . to be used by her
> as set forth in ARTICLE FIFTH (d) of this my
> Last Will and Testament."

During the 18 year period after Monroe's death in 1962, until Kris' own death in 1980, Kris allegedly never received any distributions from Monroe's estate. In Article Sixth of her own will, however, Kris directed as follows:

> "I give and bequeath all property which I have
> received or which I am entitled to receive
> under the Will of Marilyn Monroe, which I have
> not otherwise disposed of during my life, to
> THE HAMPSTEAD CHILD-THERAPY CLINIC, London,
> England. If this Clinic is not in operation
> at the time of my death, I give and bequeath
> the same to YALE UNIVERSITY for the
> furtherance of the psychiatric work of its
> Child Study Center . . . ."

Presently, the petitioner asserts that the terms of Monroe's will concerning Kris are ambiguous inasmuch as they fail to give Kris an explicit power to appoint property or otherwise create a trust for Kris to execute. Petitioner further views Monroe's directions for Kris to "use" funds as a direction that Kris had to personally monitor or supervise the use of the funds by any entity elected to benefit therefrom. Accordingly, the petitioner believes that the "conditional" bequests to Kris were limited in their duration to the lifetime of Kris and that they lapsed upon her death.

In the process of construing a will, the proper role of a court is to ascertain and give effect to a decedent's intentions. (Matter of Kosek, 31 NY2d 475; Matter of Fabbri, 2 NY2d 236).

- 2 -

MM-0005584

Where a testator employs ordinary words and phrases in the will, they are to be accorded their natural and ordinary meaning (Matter of Gautier, 3 NY2d 502). Where the decedent's wishes are clearly expressed, there is no authority for a court or other person to change them (Matter of Bisconti, 306 NY 442). Furthermore, "courts will strive, wherever possible, to give effect to every part of a will" (Matter of Goldstein, 46 AD2d 449, 452 affd 38 NY2d 876).

In the case at hand, Monroe's will employs ordinary words and phrases to clearly and completely dispose of her estate. There are no express provisions directing that Kris had to supervise or monitor the activities of any entity elected to receive estate funds. There are no substantial hints or indications to justify creating such limitations by implication. Therefore, there is no basis to add any clauses or restrictions to Kris' gifts as the petitioner would have this Court do. Indeed, evidence that Kris was given more than a lifetime interest can be seen by comparing the provisions for Kris to the entire text of Article Fifth of Monroe's will whereby Monroe created true lifetime interests in a trust for two parties. The provisions for Kris are completely different, and it is another rule of construction that: "When a testator in one part of his will demonstrates his ability to make a certain variety of gift by apt terms, the use of a different mode of expression in another direction raises the inference that he had a diverse disposition in mind" (Matter of Parant, 39 Misc 2d 285, 287).

In the view of this Court, Monroe effectively granted Kris the power to appoint portions of her estate to a psychiatric institution or group. Monroe's failure to use the term "power to

- 3 -

MM-0005585

appoint" does not complicate the obvious.  Indeed, it is well established that the creation of a power does not turn upon the use of any precise, semantic formulae or locutions.  (See Matter of Weinstein, 111 Misc 2d 860; Matter of Jackson, 57 Misc 2d 896).  On the other hand, to declare that Kris did not have a power would in effect wipe out significant portions of Monroe's will and destroy her apparent estate plan.

Inasmuch as the petitioner has argued that Kris was not given a "testamentary" power of appointment i.e., one that she could exercise by her own will, a reference to two statutes is appropriate.  Estates Powers and Trusts Law 10-5.1 provides:

> "The scope of the donee's authority as to
> . . . the time and manner of the appointment
> is unlimited except as the donor manifests a
> contrary intention."

Furthermore, EPTL 10-6.2(a)(3) adds that:

> "Where the donor has made the power
> exercisable only by deed, it is also
> exercisable by a written will unless exercise
> by will is expressly excluded."

Once again, inasmuch as the terms of Monroe's will do not state an explicit limitation as to when Kris might "use" her power, this court will not create one.  Under the statutes and for all the foregoing reasons, this Court holds that Kris did indeed have a testamentary power of appointment which, at least, at the time of her death she validly exercised.

Still remaining for discussion in this proceeding, is one additional matter which the petitioner has brought to light at this time.  Apparently, the Hampstead Child-Therapy Clinic which Kris designated to receive the Monroe funds (its true name was in fact The Hampstead Child-Therapy Course and Clinic) no longer

- 4 -

MM-0005586

exists under any form of that name. The petitioner suggests that the entity may have ceased all operations or may have been merged into or taken over by another, different entity called the Anna Freud Centre or the Anna Freud Centre for the Psychoanalytic Study and Treatment of Children. Under this circumstance, the petitioner seeks additional directions as to the proper recipient of funds originating in the Monroe estate.

In unanimous opposition to the petitioner's allegations, all respondents who have filed answers in this proceeding deny that Hampstead no longer exits. Those respondents are: the Anna Freud Centre; the executors of Kris' estate; the preliminary executrix of the Estate of Aaron R. Frosch, who until his death in 1989 had been the executor of the Monroe estate from its inception; the Attorney General of the State of New York; and Yale University, the alternate donee named in Kris' will if Hampstead could not qualify to receive the Monroe estate funds as Kris intended. Through a variety of submissions, Hampstead's history has been traced from its root origins in 1947 to its formal creation in 1951, and the change of its name in 1985. That new name is the Anna Freud Centre for the Psychoanalytic Study and Treatment of Children and the change was accomplished by a "Scheme" approved by a regulatory authority in Great Britain. The change was made to honor Hampstead's founder, Dr. Anna Freud, and otherwise, the entity continues to function as it always had. Any uncertainty that the petitioner may have entertained in this regard is somewhat understandable in light of the fact that there are several organizations bearing Anna Freud's name and certain papers submitted by the respondents to explain this fact might have been

- 5 -

MM-0005587

more carefully drafted.  All doubts, however, have been resolved more than adequately so that it is fully apparent that the proper recipient of funds under the wills of Monroe and Kris is the Anna Freud Centre for the Psychoanalytic Study and Treatment of Children.  No further proceedings to establish that fact  would be appropriate.

As a final word, the petitioners' supplemental petition, exhibits annexed thereto and supplemental memorandum of law have been reviewed and are deemed to be lacking in substantive merit. On the other hand this Court did find Exhibit O, an excerpt from a book by Shelley Winters, mildly amusing although in no way a convincing legal argument.

Submit decree on notice.

MM-0005588

New York, held at Surrogate's
Street, in said County on the
30th day of April , 1990

SURROGATE'S COURT
NEW YORK COUNTY

CERTIFICATES
FILED

PRESENT:

Hon. Thomas M. Limbert

                    Surrogate.

- - - - - - - - - - - - - - - - - x

- - - - - - - - - - - - - - - -        : File No. 2781/62

Proceeding for Construction of         : DECREE CONSTRUING WILLS
the Last Will of

    MARILYN MONROE,                     :

            Deceased.                   :

- - - - - - - - - - - - - - - - - x

Anna Strasberg, Administratrix c.t.a. of the Estate
of Marilyn Monroe (the "Monroe Estate"), having heretofore
filed with this Court a verified petition, together with an
affirmation of Irving P. Seidman, both dated July 28, 1989,
for a construction of Articles FIFTH and SIXTH of the Last
Will and Testament of Marilyn Monroe dated January 14, 1961
(hereinafter the "Monroe Will"), and Article SIXTH of the
Last Will and Testament of Dr. Marianne Kris dated June 8,
1976 (hereinafter the "Kris Will"), in which application was
made for (1) a determination that the legacies to Dr. Marianne
Kris under Articles FIFTH and SIXTH of the Monroe Will were
conditional bequests which did not survive Dr. Kris's death
or (2) a determination that even if the legacies survived
Dr. Kris's death, Dr. Kris failed effectively to exercise her

MM-0005157

power of appointment because the bequest of her interest in the Monroe Estate to The Hampstead Child Therapy Clinic ("Hampstead") under Article SIXTH of the Kris Will lapsed;

And a citation having been issued by this Court on July 28, 1989, directed to The Anna Freud Centre, the Estate of Aaron R. Frosch, the Estate of Dr. Marianne Kris, Yale University and the Attorney General of the State of New York, citing them to show cause before this Court on the 12th day of September, 1989 at 10:00 a.m. of that day, why the relief requested in the petition should not be granted;

And the citation having been returned with proof of due service thereof required by law, and this Court having obtained jurisdiction of all necessary and proper parties to this proceeding;

And the petitioner having appeared by her attorney, Irving P. Seidman on July 28, 1989;

And The Anna Freud Centre and Anton Kris, Co-Executor of the Estate of Marianne Kris, having appeared by their attorneys, Paul, Weiss, Rifkind, Wharton & Garrison, on September 11, 1989;

And an affidavit of Hugh R.B. Hamilton, Anna Freud's Solicitor and Executor, dated September 11, 1989 opposing the construction requested in the petition and stating that The Hampstead Child Therapy Clinic changed its name to The Anna Freud Centre on March 4, 1985, and that The

2

MM-0005158

Anna Freud Centre and Freud Museum are two separate bodies
having been served and filed;

And an oral application by the petitioner for a
decree directing The Anna Freud Centre to post a refunding
bond having been made at a conference held before this Court
on September 12, 1989;

And Anna Kris Wolff, Co-Executor of the Estate of
Marianne Kris, having appeared by her attorneys, Paul, Weiss,
Rifkind, Wharton & Garrison, on September 28, 1989;

And an affidavit of Anton O. Kris dated October 19,
1989 opposing the construction requested in the petition
having been served and filed;

And an affidavit of Albert J. Solnit dated Octo-
ber 26, 1989 opposing the construction requested in the peti-
tion having been served and filed;

And Paul, Weiss, Rifkind, Wharton & Garrison, on
behalf of the respondents The Anna Freud Centre and the
Estate of Marianne Kris, having filed objections to the pro-
posed decree for a refunding bond on October 27, 1989;

And this Court having entered an order on Octo-
ber 31, 1989 denying the petitioner's application for a
refunding bond in all respects;

And Yale University having filed its verified
answer dated November 14, 1989;

3

MM-0005159

And Marjorie M. Frosch, as Preliminary Executor of the Estate of Aaron R. Frosch, having filed her verified answer dated November 16, 1989;

And an affidavit of Ronald J. Stein, a member of the firm of Stroock, Stroock & Lavan, dated November 16, 1989, on behalf of Marjorie M. Frosch, as Preliminary Executor of the Estate of Aaron R. Frosch, opposing the construction requested in the petition, having been served and filed;

And an affidavit of Charles M. Mandelstam, the attorney for Marianne Kris and the draftsman of her Will, dated November 17, 1989 opposing the construction requested in the petition having been served and filed;

And an answer by Paul, Weiss, Rifkind, Wharton & Garrison, on behalf of The Anna Freud Centre and the Estate of Marianne Kris, having been served and filed on November 20, 1989;

And a memorandum of law of Paul, Weiss, Rifkind, Wharton & Garrison, dated November 20, 1989, on behalf of respondents The Anna Freud Centre and the Estate of Marianne Kris, opposing the construction requested in the petition and moving the Court for an order declaring The Anna Freud Centre to be the absolute legatee of Dr. Kris's interest in the Estate of Marilyn Monroe, having been served and filed;

4

MM-0005160

And the Attorney General of the State of New York
having appeared by Laura Werner, Esq. by answer dated Novem-
ber 27, 1989, requesting this Court to dismiss the petition;

And a memorandum of law of Irving Seidman, P.C.,
dated November 27, 1989, on behalf of petitioner, in support
of the petition for construction having been served and
filed;

And an affidavit of George D. Moran, Director of
The Anna Freud Centre, dated December 8, 1989, stating that
The Hampstead Child Therapy Clinic and The Anna Freud Centre
are the same organization having been served and filed;

And a reply memorandum of law of Paul, Weiss,
Rifkind, Wharton & Garrison, dated December 13, 1989, on
behalf of respondents The Anna Freud Centre and the Estate of
Marianne Kris, having been served and filed;

And a reply memorandum of law of Irving Seid-
man, P.C., dated December 13, 1989, on behalf of the peti-
tioner, in further support of the petition for construction
having been served and filed;

And the matter having come before this Court at a
conference held on February 6, 1990 at which the petitioner
appeared in person and by her counsel, Irving P. Seidman,
P.C., and respondents The Anna Freud Centre and the Estate of
Marianne Kris appeared by Paul, Weiss, Rifkind, Wharton &
Garrison;

5

MM-0005161

And a supplemental verified petition for construction of the Monroe and Kris Wills, together with a supplemental memorandum of law, both dated February 16, 1990, on behalf of petitioner, moving this Court for an order requiring (1) that all monies payable to The Anna Freud Centre be paid to The Anna Freud Foundation as a fiscal intermediary for transmission to The Anna Freud Centre, (2) that The Anna Freud Foundation file with the appropriate federal and state governmental agencies certain annual financial and tax reports which account for the receipt of and disbursement by The Anna Freud Foundation as fiscal intermediary to The Anna Freud Centre of all monies received from the Monroe Estate, (3) that The Anna Freud Centre subject itself to the jurisdiction of the Surrogate's Court, New York County and agree to file with the England Charity Commission annual reports which report the receipt and disbursement of all Monroe Estate monies received by it from The Anna Freud Foundation, (4) that The Anna Freud Centre account to the administratrix, c.t.a. for all monies received from 1982 to date, and (5) that The Anna Freud Centre bear its 25% share of administration costs, having been served and filed;

And this Court having reviewed the record before it and having rendered a decision published in the New York Law Journal on March 12, 1990, hereby makes the following findings:

1.   The Monroe Will effectively granted Dr. Kris

6

MM-0005162

the power to appoint the remainder of the preresiduary trust under Article FIFTH and 25% of the residuary estate under Article SIXTH of the Will of Marilyn Monroe (the "charitable share") to psychiatric institutions or groups, as Dr. Kris selected.

2.    Dr. Kris's power of appointment was exercisable by Will.

3.    Dr. Kris exercised her power and, by her Will, validly appointed the charitable share to Hampstead (referred to in the Kris Will as The Hampstead Child-Therapy Clinic).

4.    Hampstead is the same institution as The Anna Freud Centre for Psychoanalytic Study and Treatment of Children, also known as The Anna Freud Centre, having merely changed its name to honor its founder, Dr. Anna Freud.

5.    The Anna Freud Centre for the Psychoanalytic Study and Treatment of Children is the legatee of, and properly entitled to, (i) the remainder of the preresiduary trust under Article FIFTH of the Monroe Will, and (ii) 25% of the entire residuary estate under Article SIXTH of the Monroe Will.

Accordingly, IT IS HEREBY,

ORDERED, ADJUDGED AND DECREED that:

1.    The Anna Freud Centre for the Psychoanalytic Study and Treatment of Children is the legatee of, and properly entitled to, (i) the remainder of the preresiduary trust

7

MM-0005163

under Article FIFTH of the Monroe Will, and (ii) 25% of the entire residuary estate under Article SIXTH of the Monroe Will;

2.    Payments on account of the legacy to the Anna Freud Centre shall be unencumbered by any conditions set forth in petitioner's supplemental petition, with accompanying supplemental memorandum of law, both dated February 16, 1990;

3.    This Court shall entertain applications for allowances of counsel fees and disbursements incurred in connection with this construction proceeding.

_____
Surrogate

8

MM-0005164