# EXHIBIT
# 45

i

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF HAWAII

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 3 1 1993

at 3 o'clock and 1 min. ○ M.
WALTER A.Y.H. CHINN, CLERK

NANCY MIRACLE, aka NANCY     )
MANISCALCO GREEN,            )
                            )
            Plaintiff,      )
                            )
        vs.                 )     CIVIL NO. 92-00605ACK
                            )
ANNA STRASBERG, as          )
Administratrix, c.t.a. of   )
the Last Will and Testament )
of MARILYN MONROE,          )
                            )
            Defendant.      )
_____)


TRANSCRIPT OF PROCEEDINGS

The above-entitled matter came on for hearing on

Tuesday, November 24, 1992, at 10:45 a.m., at Honolulu, Hawaii,

BEFORE:

        HONORABLE ALAN C. KAY
        Chief United States District Judge
        District of Hawaii

APPEARANCES:

        JOHN AARON MURPHY JONES, Esq.
        1170 N. King Street
        Honolulu, Hawaii

                        Attorney for Plaintiff
                        Nancy Miracle, aka Nancy
                        Maniscalco Green;

        MILTON M. YASUNAGA, Esq.
        Cades, Schutte, Fleming
          & Wright
        1000 Bishop Street
        Honolulu, Hawaii

1

2          Attorney for Defendant
           Anna Strasberg, as
3          Administratrix, c.t.a. of
           the Last Will and Testament
4          of Marilyn Monroe.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    THE CLERK:  Civil No. 92-00605ACK, Nancy Miracle vs.

2 Anna Strasberg.  This case is called for plaintiff's motion to

3 continue defendant's motion to dismiss complaint.

4    MR. JONES:  Good morning, Your Honor, John Aaron

5 Murphy Jones for the Plaintiff Nancy Miracle, who is not

6 present in court.

7    THE COURT:  Good morning.

8    MR. YASUNAGA:  Good morning, Your Honor.  Milton

9 Yasunaga, attorney for Anna Strasberg, as administratrix of

10 the last will and testament of Marilyn Monroe.

11    THE COURT:  Good morning.  The Court has just

12 received your memo, looked through it very quickly.  I

13 understand that this motion was just set yesterday, so let's

14 proceed.

15    MR. JONES:  Thank you, Your Honor.

16    Your Honor, the plaintiffs have requested in their

17 motion a continuance of the defendant's motion to dismiss and

18 the plaintiffs have based their motion on Rule 12, if I can

19 read in part:  If on a motion asserting defendants numbered

20 six to dismiss for failure of the pleadings to state a claim

21 upon which relief can be granted, matters outside the

22 pleadings are presented to and not included -- excluded by the

23 Court, the motion shall be treated as one for summary judgment

24 and disposed of as provided in Rule 56 and all parties shall

25 have -- shall be given reasonable opportunity to present all

1   material made pertinent to such motion by Rule 56.

2        Your Honor, the -- as I've had just a brief

3   opportunity to look over the defendant's motion, there are two

4   things that we are requesting:  No. 1, we are requesting the

5   probate documents from New York.  It's worthy to note that the

6   defendants have introduced a part of the probate documents,

7   which they purport to show that Marilyn Monroe was domiciled

8   in New York at the time of death.  We feel that introducing

9   only a part of the record opens the door -- and I'm sorry I

10  don't have a copy of this, Your Honor, but I have here an

11  order approving a merchandising agreement and I only have one

12  copy.  (Document handed).

13        THE CLERK:  (Document handed).

14        MR. JONES:  Your Honor, that document came from the

15  just some of the documents of the probate court of New York

16  that we were able to get ahold of this week.  What we are

17  contending is that the estate of Marilyn Monroe went to the

18  probate court, they got an order from that court to do

19  merchandising worldwide.  So, basically, what we are saying is

20  that the Court can take judicial notice of the fact that the

21  Court can walk outside of this courtroom and purchase a

22  T-shirt or a sweat shirt with a picture of Marilyn Monroe

23  right down in Waikiki or downtown Honolulu.

24        We are saying that the defendants are doing business

25  in the State of Hawaii for purposes of the long arm statutes

1    and what we are contending is that my client, Nancy Miracle,

2    is entitled to a part of those proceeds that the defendants

3    are making worldwide.  We feel that that will establish the

4    jurisdiction of this Court under the State of Hawaii statutes --

5    long arm statutes for us to proceed.

6         Once we have all of the probate documents issued --

7    submitted into the Court, we are then requesting a copy of the

8    will and the death certificate of Marilyn Monroe to show and

9    being offered to show for purposes of domicile as to where

10   Marilyn Monroe was domiciled at the time of her death.  Again,

11   the defendants have offered the probate documents to show that

12   she was domiciled in New York, but it is a matter of record

13   that Marilyn Monroe is buried in California, where she resided

14   for many years and has a home.

15        Once we find out where she is domiciled, then we can

16   move to the issue of conflict of laws to determine what state

17   law applies to all of the issues concerned here.  There are

18   cases that we have found that where the pretermitted heir is

19   allowed to use state law other than where the decedent is

20   buried or where the case was probated so we feel that we have

21   a right to have the will and the death certificate of Marilyn

22   Monroe, all of these documents are under the control --

23   exclusive control -- of the defendants and we have not been

24   able to get any of them.

25        THE COURT:  Well, they're all being probated in New

4

1  York, right?

2           MR. JONES:  Yes, they are.

3           THE COURT:  Why aren't you suing there?

4           MR. JONES:  The -- Nancy Miracle lives here.  She is

5  a resident of the City and County of Honolulu.

6           THE COURT:  The estate is being probated in New

7  York.

8           MR. JONES:  It had been probated.  It's not being

9  probate -- it was probated back in 1962.

10          THE COURT:  Well, you are seeking to set that aside,

11 right, to challenge the probate?

12          MR. JONES:  No, Your Honor.  We are moving under the

13 pretermitted heir statutes and specifically we are not moving

14 to set aside the probate.  To set aside the probate the

15 federal court would lose jurisdiction of the entire case,

16 whereas if it -- the case comes under the pretermitted heir

17 statutes, the federal courts are allowed to handle those cases

18 and that would be basically brought up in our motion in

19 opposition -- our memorandum in opposition to their motion.

20          But, as long as we are proceeding under the

21 pretermitted heir statutes, we can proceed in the federal

22 district court; that's quite well established, Your Honor.

23 So, those are the types of documents that we are requesting

24 and the issue of jurisdiction and the issue of domicile re the

25 two issues that we are going to and that's why we need those

1  particular documents.

2        On Page -- I just had a chance to briefly look at

3  the defendant's memorandum and I'm looking on Page 4 and he

4  says: The plaintiffs never -- about halfway down it says:

5  Plaintiffs never stated --

6        THE COURT: Which memorandum --

7        MR. JONES: The present one that they just

8  submitted. Memorandum in opposition to plaintiff's motion to

9  continue defendant's motion to dismiss complaint. Page 4

10 about halfway down it says: Plaintiff never states in her

11 complaint or motion papers what state she believes to have

12 been decedent's domicile and, as I'm going back to show, that

13 if we have the will and the death certificate, we can answer

14 those questions and never shows that the law of such state

15 gives her pretermitted heir rights, despite the fact that she

16 was born before the last will -- that goes to the conflict of

17 law issue and that goes to the domicile issue as to where she

18 was domiciled. At the present time --

19        THE COURT: Wouldn't her will have been probated

20 where she was domiciled?

21        MR. JONES: At the time the will was probated, Your

22 Honor, there were no heirs of Marilyn Monroe. My client found

23 out within the last three years, two years that in fact she is

24 the daughter of Marilyn Monroe. She found that out from the

25 family. This is not somebody who is outside the family of

1  Marilyn Monroe and that entire family claiming to be Marilyn

2  Monroe's daughter.   This is someone who is and always has been

3  inside the immediate family of Marilyn Monroe.

4         Our complaint states that when Marilyn Monroe was 18

5  years old, she had a baby; that she gave that baby to her

6  older sister.   This is -- I mean -- we can document that much.

7  So that Marilyn Monroe's older sister raised this daughter.

8  That's in our complaint.   So, everybody in that family knew --

9  I mean -- of the older people -- the aunts the uncles, the

10 grandparents -- knew that Marilyn Monroe got pregnant, she had

11 a baby and she was beginning her career.   So, what happened:

12 She gives the baby to her older sister.   When she had the baby

13 at Wilcox Hospital, she goes to the hospital -- when she has

14 the baby, she puts her thumbprints where it says the mother's

15 left and right thumbprints, we included that in our

16 complaints.   Those thumbprints are Marilyn Monroe's

17 thumbprints.   The footprints are those of Nancy Miracle, the

18 baby.   Okay.   The older sister then signs the birth

19 certificate as having -- claimed at that point it is her baby

20 because she is married and she already has kids.

21         So, then for the next 46 years Marilyn Monroe's

22 older sister raises the child and if you look on Page -- if

23 you look in our complaint, Exhibit A -- the second page of

24 Exhibit A -- first page is the birth certificate -- the Wycoff

25 (Phonetic) Heights Hospital, and the second page has the --

1   where it says:  Right and left footprints of the baby and then

2   it says mother's left and right thumbprints.

3          We are asking the Court, basically, to treat this as

4   a paternity action -- in the nature of a paternity action

5   because, basically, what we would be requesting from the Court

6   is a DNA genetic analysis which will prove beyond a doubt --

7   99.9 percent effective -- that the tissue samples that we

8   still can take from Marilyn Monroe -- the body is buried -- as

9   I said, the body was buried -- is buried in California, it is

10  not in the ground.  It's in a crypt.  It would not be that

11  much of an expense for the -- as we -- we're going to propose

12  to the defendants that two physicians, forensic medicine

13  specialists, be allowed to take tissue samples from the --

14  from the body, have those compared to the blood and tissue

15  samples of Nancy Miracle and at that point we feel that there

16  would be a 99 percent probability that in fact Nancy Miracle

17  is the child of Marilyn Monroe.

18         THE COURT:  Well, what about the fingerprints on the

19  birth certificate?

20         MR. JONES:  The fingerprints, we can get those from

21  the -- we would need a subpoena to get those from -- let me

22  back up.  Excuse me, Your Honor.  Let me back up just one

23  minute.

24         It's worthy to note at this point that there is an

25  ongoing murder investigation involving this case.   In

1  California at the present time the supervisors of the County

2  of Los Angeles voted in October as to whether or not they were

3  going to exhume the body of Marilyn Monroe for purposes of

4  continuing the criminal investigation; that vote fell one vote

5  short of them going -- of the county going ahead to exhume the

6  body for purposes of continuing -- to exhume the body for

7  purposes of continuing the murder investigation.  I do know

8  that what we would like to do is subpoena the FBI fingerprints

9  of Marilyn Monroe, and then compare those to the fingerprints

10  and footprints that we have on the original Wycoff's hospital

11  records.

12        THE COURT:  Okay.  Well, let's go back to my

13  question.

14        MR. JONES:  I'm sorry, Your Honor.  The particular

15  question?

16        THE COURT:  My question to you was:  Wasn't the will

17  probated where Marilyn Monroe was domiciled?

18        MR. JONES:  Your Honor, there are several cases that

19  we have that show that just cause the domicile -- the will is

20  domiciled in -- they claim that the will was domiciled in New

21  York -- I mean -- that Marilyn Monroe was domiciled in New

22  York.

23        At the time that they did the probate, there were no

24  heirs of Marilyn Monroe.  There was nobody there to contest

25  the will, so they just took -- in fact, in addition that there

1 are at least two wills of Marilyn Monroe running around here --

2 that are in existence -- so, when we are asking for a copy of

3 the will from the defendants, we're asking for, as it says,

4 more than one will that is there.

5 But, yes, they went on ahead and probated the will

6 in New York, but for purposes of a pretermitted heir statute

7 we are not contesting the will. What we are saying is that

8 she is a pretermitted heir and under statutes of pretermitted

9 heir both in New York and in California, which is where we

10 believe that the law applies -- I mean -- we're leaning more

11 towards California law because she was domiciled there. She

12 was living in California for some 20 years, she owned property

13 in California, and she's buried in California. So, under the

14 law we have a right to come in and contend that even though

15 the Court says that she was domiciled in New York; that we

16 have a right to proceed -- and if I could read a case to you,

17 Your Honor, this is a case called Robins vs. Robins. It's

18 cited as -- I'm sorry. It's Robertson vs. Robertson cited at

19 803 F-two-D one three six. This is the Fifth Circuit, 1986.

20 THE COURT:  803 what?

21 MR. JONES:  803 F-two-D --

22 THE COURT:  F what?

23 MR. JONES:  F second.

24 THE COURT:  Oh.  What's the page number?

25 MR. JONES:  One thirty-six.  It's the Fifth Circuit.

1    Let me just read part of this.  This is an action to establish
2    the decedent's domicile in Louisiana at the time of death,
3    which would give children greater rights than those granted
4    under the will, jurisdiction would not interfere with state
5    court proceedings.  So, basically, where the red is, that
6    would be part of our (indicating) --

7                    THE CLERK:  (Document handed).

8                    MR. JONES:  ...that would be part of our motion in
9    opposition we're going to use that.  There are other statutes
10   on there that say that what is a pretermitted heir and how can
11   a pretermitted heir -- even though the probate was going on,
12   has been completed in New York in 1962 under the pretermitted
13   heir statutes in California, we are allowed to proceed now
14   against the estate to show that pretermitted means to be left
15   out or forgotten and that we have a right to proceed on those
16   grounds.

17                   Secondly, on Page 4, it's a little bit further down,
18   the defendant says plaintiff's contention that the defendant
19   may be doing some unspecified type of business in the State of
20   Hawaii is mere speculation.  This is what he says:  Some type
21   of business in the State of Hawaii is mere speculation and the
22   rules do not allow a claim to be brought based on mere
23   speculation, but I've just handed you what we believe is a
24   merchandising probate document that allows the estate through
25   its agents to do business here in Hawaii and we just got ahold

1  of that document.  They have opened the door by bringing in

2  the probate documents and what they're doing is they're

3  bringing in one page, two pages and what we're asking the

4  Court to do is to give us an opportunity to bring in the rest

5  of the probate documents, which we'll conclusively show that,

6  yes, they're out here doing business in Hawaii.  Once we've

7  done that the long arm statutes of the State of Hawaii take

8  over and say:  Yes to this Court, there is jurisdiction for

9  this Court to proceed.

10          The next issue --

11          THE COURT:  Wouldn't the subject matter of the

12  litigation have to arise out of the activities within the

13  state?

14          MR. JONES:  Your Honor, if they are doing -- if they

15  are merchandising, we are claiming a part of the royalties of

16  the merchandising, so yes, it does arise out of -- we're

17  contending that it does arise out of the activity that they're

18  doing in the state.  The activity is merchandising and making

19  money from a license.

20          THE COURT:  Whether or not the plaintiff is the

21  daughter of Marilyn Monroe arises out of the fact that the

22  estate is doing business here in Hawaii?

23          MR. JONES:  No, it rises out of the fact that under

24  the pretermitted heir statutes of both New York and California

25  that she was left out and a pretermitted heir has a right to

1  come in and claim a part of the estate.  In fact, under the

2  statutes it's 50 percent of the estate, so Nancy Miracle is

3  claiming 50 percent of the estate of Marilyn Monroe, which is

4  in money terms.

5       MR. JONES:  That's all we have, Your Honor.  Thank

6  you.

7       THE COURT:  What about the statute of limitations?

8       MR. JONES:  Oh, I'm sorry.  As to the issue of the

9  statute of limitations, Your Honor, if we would go back to the

10  conflict of law problems, the conflict of law problems go to

11  the issue of domicile and this is what we're trying to get:

12  The documents to show -- the will, the death certificate and

13  the probate documents are basically what we're after.  Okay.

14  Once we've got those documents, we can then find out what

15  state law applies to the pretermitted heir statutes.  We are

16  confident that we have a right to go under the pretermitted

17  heir statute.  The defendants talk about --

18       THE COURT:  You are suggesting that by being able to

19  discover what's contained within the probate files in New York

20  you are going to find evidence that will establish that New

21  York erroneously probated the will and that in fact Marilyn

22  Monroe was domiciled in some other state, is that what you are

23  saying?

24       MR. JONES:  Not they erroneously probated the will.

25  We're not attacking the will.

1      THE COURT:  No, but you're saying that you suspect

2 you're going to find that evidence that she was domiciled

3 somewhere other than New York.

4      MR. JONES:  Right.  Yes, Your Honor.  If you look at

5 both copies of the will -- there are at least two copies of

6 the will.  If you look at both of them, which we really have

7 not looked at, we're going to contend, basically, that if you

8 look at those wills, where were they made?  They were made in

9 California.  They were drawn up in California when she was

10 residing in California.  She was domiciled in California.  The

11 heir at that time did not know that she was the heir of

12 Marilyn Monroe, so, actually, there were no heirs listed and,

13 as best we can tell, Marilyn Monroe left the estate over to

14 two other people or some other people, but under the

15 pretermitted heir statutes of the State of California and of

16 New York, if we can show that she is an omitted heir 40 years

17 later, 50 years later, those people, that group of people are

18 allowed to go back and not challenge the will, not challenge

19 the probate, but they can go back under the statute and claim

20 50 materials of the estate and there are hundreds of cases

21 along those lines.

22      THE COURT:  Well, getting back to my question:  What

23 do you wish or anticipate that you will recover or discover in

24 the probate records in New York?

25      MR. JONES:  No. 1 is the will.  What does the will

1   say about -- does the will say anything at all about heirs or

2   issues, which is critical to our case?  I mean, does the will

3   itself say:  Well, you know, I'm -- this is what -- I'm living

4   in New York -- I mean -- I'm living in California and this is

5   what I expect to happen with my estate.

6           THE COURT:  Well, that's a public record, isn't it?

7           MR. JONES:  We have not been able to get ahold of

8   the certified copies of the will and of the other probate

9   documents.  These documents are clearly in the control of the --

10  of the defendants.

11          THE COURT:  You are saying, are you not, they're not

12  public record?

13          MR. JONES:  We haven't been able to get ahold of

14  them.

15          THE COURT:  Have you tried?

16          MR. JONES:  We have tried.  My client has tried

17  several times to get ahold of the original certified copies of

18  documents -- of the probate documents.  Okay.  As to -- going

19  back of your statute of limitations, the statute of

20  limitations will depend on what state law applies under the

21  pretermitted heir statute.  If it's the pretermitted heir

22  statute of the State of California, there is no statute of

23  limitations problem.  If the pretermitted heir statute is one

24  from New York, we, again, are going to contend that those

25  people are still allowed to come back in and claim years later

1   that they are entitled to 50 percent of the estate so that is

2   why we are asking for those documents to put them to our

3   memorandum in opposition to the defendant's motion and, again,

4   finally in conclusion, Your Honor, going back to Rule 12 it

5   says:  All parties shall be given reasonable opportunity to

6   present all material and all material under the rules as we

7   are interpreting them means that we be given an opportunity --

8   we're not asking them to go through all of their records.

9   We're not asking to burden them, you know, with going through

10  a hundred or a thousand documents.

11          We're basically asking for, you know, ten, maybe 12

12  documents, which we would like to put in our memorandum in

13  opposition to their motion to dismiss to address the issue of:

14  Is there jurisdiction of the Court, which we feel there is

15  under the long arm statutes.  Where was Marilyn Monroe

16  domiciled?  That goes back to the will itself.  Thank you,

17  Your Honor.

18          THE COURT:  Thank you.

19          Mr. Yasunaga.

20          MR. YASUNAGA:  Thank you, Your Honor.

21          I think it's already been recognized that although

22  under a motion for summary judgment an affidavit talking about

23  why further discovery is necessary is appropriate, that's not

24  provided for under Rule 12 and Your Honor has already

25  recognized that in a prior ruling in the California Hawaiian

1   Fund vs. Simon case, and I've attached a copy of that order.

2      And there's good reason why you don't allow

3   discovery before the motion to dismiss is decided.  It's an

4   attack on the pleadings and the whole point is to give the

5   defendant a chance to show the defectiveness of the claim and

6   the complaint without having to go through burdensome

7   discovery.  I don't know if Your Honor has looked at the

8   discovery requested, but it is very burdensome:  Turn over all

9   bills of Marilyn Monroe, all telephone records, it's crazy.

10  On and on and on.

11     And we are entitled -- we should be given a shot to

12  get out of this without going through burdensome discovery.

13  This motion has not been turned into a motion for summary

14  judgment just because there were a couple of affidavits

15  involved.  The affidavits were just to present for the Court's

16  convenience a matter of public record.  This proceeding should

17  not even be in Hawaii, it should be in New York and there it

18  would be easy for the court to have access to those matters of

19  public record.  We just presented it for the Court's

20  convenience, and we've presented authority -- Mac vs. South

21  Bay Beer Distributors -- that says that the Court may take

22  judicial notice of matters of public record and that inclusion

23  of such material doesn't change the motion to a motion for

24  summary judgment.  So, what we have here is a motion to

25  dismiss and discovery is really not appropriate.

1    It's evident that plaintiff has not done the
2    required investigation -- pre-complaint investigation.  There
3    are many things that plaintiff doesn't even know what her
4    theory will be and the motion to dismiss is aimed at those
5    deficiencies and, therefore, the motion to dismiss should go
6    forward.

7    We cited the case of McFarland vs. Memorex
8    Corporation and I was not able to get a copy for you because
9    of the shortness of time, but this is a case, Your Honor is
10   already familiar with and dealt with in that Simon case, and
11   that case, although it was a Rule 9 case, the principle there
12   was that pleadings -- requirements for proper pleadings should
13   be met before discovery occurs and one cannot ask for
14   discovery in order to meet the pleading requirements.

15   Again, our motion is aimed at attacking the
16   pleadings.

17   Your Honor agreed with this reasoning and rejected a
18   similar position to continue in order to do discovery in this
19   other case.

20   The discovery that Mr. Jones proposes will not
21   defeat the motion to dismiss.  There are three different
22   grounds and I think, as Your Honor has pointed out, the long
23   arm statute and the personal subject matter jurisdiction
24   requirements provide that you can't just say the defendant is
25   doing business here.  The cause of action has to arise out of

1  the contact with the state and the claim here that Ms. Miracle
2  was the daughter just does not in any way arise out of, and I
3  think that requirement should certainly not be stretched to
4  have this litigation be done here when it's clear from
5  everything Mr. Jones said the events that he wants to talk
6  about are all in New York, maybe some in California, but
7  certainly nothing here.  So, they can't show that the cause of
8  action arises out of any possible contacts, therefore, a
9  motion to dismiss is appropriate.  At least let us have a full
10  hearing on that issue, which does not turn on discovery at all
11  and, therefore, do not make us go through burdensome discovery
12  before even addressing that issue in the motion to dismiss.
13          There are two other grounds for the motion to
14  dismiss:  Statute of limitations, Mr. Jones has not really
15  shown how this discovery he's talked about will get him around
16  the statute of limitations problem.
17          And, the third one is the substantive claim of the
18  pretermitted heir.  He tries to raise this issue about
19  domicile now and it's his main arrow here.  I don't think it's
20  a valid argument, but the other two reasons still exist.  In
21  short, I don't think we should be bushwhacked into this
22  hearing on one day's notice to really decide these issues.  He
23  should file his memorandum in opposition to the motion to
24  dismiss, we should get a chance to reply and then if at that
25  time Your Honor feels that there are material issues of fact

1   that are in dispute, then you can deny our motion to dismiss,

2   but at least let us go forward rather than bog us down in

3   burdensome discovery that's the whole intent of the motion to

4   dismiss and we should be allowed to take advantage of that

5   mechanism.

6           THE COURT:  Well, the Court agrees with Mr.

7   Yasunaga.

8           MR. JONES:  If it please the Court --

9           THE COURT:  The Court will require plaintiff to file

10  its motion in opposition and the defendant to file their

11  supplemental brief and at that point if the Court feels that

12  further discovery or discovery is merited, the Court will

13  consider it at that time.  The Court will ask you, Mr.

14  Yasunaga, to prepare the order.

15          MR. YASUNAGA:  Thank you, Your Honor.

16          MR. JONES:  If it please the Court, could I move the

17  Court then for an extension of time to file my memorandum in

18  opposition to the -- Mr. Yasunaga's motion to dismiss it?  I

19  believe it's due in two weeks.

20          THE COURT:  It's due a lot sooner than that.

21          MR. JONES:  We would ask the Court --

22          THE COURT:  This matter is set for hearing on

23  December 14th.

24          MR. JONES:  December 14th, so today is the 24th, so

25  I guess that would be approximately that amount of time we

1    would have to file.  We would ask the Court for --

2                THE COURT:  When is your motion due now?

3                MR. JONES:  I'm sorry, Your Honor?

4                THE COURT:  When is your opposition due at this

5    time?

6                MR. JONES:  It's due on -- anytime before the five

7    days before the 14th.

8                THE COURT:  What's the date of --

9                THE CLERK:  18 days before.

10               MR. JONES:  18 days before.

11               THE COURT:  Yeah, so it's due tomorrow?

12               MR. YASUNAGA:  Your Honor, I believe the 18th day

13   fell on Thanksgiving.  Maybe I'm counting wrong.

14               THE COURT:  You have it as tomorrow?

15               THE CLERK:  It would be tomorrow.

16               MR. JONES:  Your Honor, I would also note that in

17   the record we agreed to Mr. Yasunaga's request for a 30-day

18   extension of time, and one of the documents in there is a

19   stipulation that we signed a month ago granting Mr. Yasunaga

20   and Mr. Sideman an additional 30 days with which to prepare

21   their motion, which is the motion that was going to be heard.

22   So, in fact, we stipulated with them to give them more time to

23   come forward and file their documents, so we're asking for the

24   same courtesy that -- you know -- they allow us an additional

25   30 days.

1          THE COURT:  Well, you'd have to -- you both would

2    have to agree on a different hearing date if --

3          MR. JONES:  Your Honor, I'm asking --

4          THE COURT:  -- you are going to get a further

5    extension.

6          MR. JONES:  Your Honor, what I'm moving, Your Honor,

7    is I'm saying that -- I'm asking the Court if the Court would

8    do that based on the fact that in fact we -- the Court did

9    agree that we would give them additional time, which was 30

10   days to --

11         THE COURT:  Well, that was something that you worked

12   out with between the parties.  You will have to ask Mr.

13   Yasunaga whether he's willing to continue the hearing date.

14         MR. JONES:  (Affirmative nod).

15         THE COURT:  You going to ask him or not?

16         MR. JONES:  Mr. Yasunaga, could we have a 30-day

17   extension of time?

18         MR. YASUNAGA:  Your Honor, I'm not authorized to

19   agree to that and let me just explain this.

20         The first extension was required because we're

21   really dealing with New York people here.  The estate is in

22   New York.  Any attorneys who know anything about it -- and

23   there are multiple attorneys because there are multiple

24   beneficiaries --

25         THE COURT:  All right.  Well, I'll give Mr. Jones an

1    extension until next Tuesday to file his opposition, and I

2    want you, Mr. Yasunaga, to prepare the order.

3              MR. YASUNAGA:  Thank you, Your Honor.

4              MR. JONES:  If it please the Court, I have one more

5    point.  Sorry, Your Honor.

6              Your Honor, I would ask the Court to reconsider its

7    motion and allow us to orally ask the Court to reconsider its

8    present motion under the rules.  Due to the length of time we

9    have a right to come forward and ask the Court to reconsider

10   the oral motion that was just made and give us ten more

11   minutes to --

12             THE COURT:  You can file a written motion then.  I'm

13   not inclined to grant it, though.

14             MR. JONES:  I understand.

15             MR. YASUNAGA:  Thank you, Your Honor.

16             (Whereupon, the proceedings recessed at 11:24 a.m.,

17   November 24, 1992.)

18

19

20

21

22

23

24

25

1                       --oo000oo--

2              I, Terrence Chun, Official Court Reporter, United

3    States District Court, District of Hawaii, Honolulu, Hawaii,

4    do hereby certify that the foregoing is a true and correct

5    transcript of proceedings in Civil No. 92-00605ACK, Nancy

6    Miracle vs. Anna Strasberg, at Honolulu, Hawaii, on

7    November 24, 1992, before the Honorable Alan C. Kay, Chief

8    United States District Judge.

9

10

11          November 25, 1992          _____

12                                     TERRENCE CHUN, CSR NO. 114

13

14

15

16

17

18

19

20

21

22

23

24

25

## NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

# To all to whom these presents shall come. Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf,
er the seal of the National Archives and Records Administration, that the attached reproduction(s) is
and correct copy of documents in his custody.



| Signature | |
| --- | --- |
| NAME | DATE |
| *PATRICIA S. BAILEY* | February 6, 2008 |
| TITLE | |
| Acting  Director, Records Center Operations | |

NAME AND ADDRESS OF DEPOSITORY

Office of Regional Records Services
Pacific Region (San Francisco)
1000 Commodore Drive
San Bruno, CA  94066-2350

*U.S. GPO:    4-122/79063.                                    NA FORM 13040 (10-86)

```
16    EFORE:

17        HONORA    ALAN C. KAY
          Chief U   d States District Judge
18        District   Hawaii

19    PEARANCES:

20        JOHN AARON M   HY JONES, Esq.
          1170 N. King    eet
21        Honolulu, Haw

22                                  Attorney for Plaintiff
                                    Nancy Miracle, aka Nancy
23                                  Maniscalco Green;

24        MILTON M. YASUNAGA,    q.
          Cades, Schutte, Flem
25          & Wright
          1000 Bishop Street
          Honolulu, Hawaii
```

TERRENCE CHUN, RPR - CSR #114
OFFICIAL COURT REPORTER-U. S. DISTRICT COURT
P. O. BOX 50131 - HONOLULU, HAWAII 96850