# EXHIBIT 49

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| NANCY MIRACLE,<br>aka, NANCY MANISCALCO GREEN,<br><br>    Plaintiff,<br><br>vs.<br><br>ANNA STRASBERG,<br>as Administratrix, c.t.a. of<br>the Last Will and Testament<br>of MARILYN MONROE<br><br>    Defendant. | CIV. NO. 92-00605<br><br>FILED IN THE<br>UNITED STATES DISTRICT COURT<br>DISTRICT OF HAWAII<br><br>DEC 23 1992<br><br>at __3__ o'clock and __20__ min. P.M.<br>WALTER A.Y.H. CHINN, CLERK<br>By |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

### BACKGROUND

Plaintiff Nancy Miracle claims that she is the natural daughter of defendant's decedent, Marilyn Monroe. Asserting a claim that she is a pretermitted heir, she seeks a share of decedent's estate. Defendant has moved to dismiss Plaintiff's complaint for lack of personal jurisdiction, for failure to state a claim, and because the action is barred by the statute of limitations.[1]

### FACTS

Plaintiff Nancy Miracle, aka Nancy Maniscalco Greene, contends that she recently discovered evidence that she is the natural daughter of Marilyn Monroe, aka Nancy Cusumano.

---

[1] After Defendant filed her motion, Plaintiff filed an amended complaint. The Court will consider the motion to dismiss as being addressed to the amended complaint as well as the original complaint. 6 Wright & Miller, Federal Practice and Procedure, § 1476 (1990).

Plaintiff was born on September 14, 1946, at Wykoff Heights Hospital in Ridgewood Brooklyn. The hospital birth certificate lists Jennie Cusumano Maniscalco, whom Plaintiff claims is the older blood sister of Marilyn Monroe, as the Plaintiff's mother. Plaintiff claims that Marilyn Monroe was the actual birth mother, and that Monroe gave the child (Plaintiff) to Monroe's older sister to raise as her own.

The Last Will and Testament of Marilyn Monroe was executed on January 14, 1961, and did not provide for Plaintiff. Plaintiff is claiming that she is a pretermitted heir, entitled to "the same share of decedent's estate as if decedent had died intestate." Complaint, ¶9.

## DISCUSSION

### I. PERSONAL JURISDICTION

#### A. Legal Standard

In order to establish personal jurisdiction, Plaintiff must demonstrate that the forum state's jurisdictional statute confers personal jurisdiction, and that the exercise of jurisdiction accords with federal constitutional principles of due process. Pacific Atlantic Trading Co. v. M/V Main Express, 758 F.2d 1325, 1327 (9th Cir. 1985). In scrutinizing a motion to dismiss based upon lack of personal jurisdiction, the court looks to the uncontroverted allegations of the complaint, affidavits and depositions. Pure, Ltd. v. Shasta Beverages, Inc., 691 F.Supp. 1274, 1277 (D.Haw. 1988).

2

Hawaii's Uniform Probate Code expressly provides for personal jurisdiction of a "foreign personal representative" such as Anna Strasberg where she has engaged in one of the two acts:

> (1) filing an application or petition for appointment as a local personal representative together with authenticated copies of the foreign personal representative's appointment, or
> (2) doing any act as a personal representative in this State which would have given the State jurisdiction over the foreign personal representative as an individual.

H.R.S. § 560:4-301 (1985). In addition, a foreign personal representative "is subject to the jurisdiction of the courts of this State to the same extent that the foreign personal representative's decedent was subject to jurisdiction immediately prior to death." H.R.S. § 560:4-302. Plaintiff has not claimed that Anna Strasberg filed an application or petition for appointment as a local representative. Thus, the relevant actions include the actions of Anna Strasberg in Hawaii as a personal representative, and the actions of decedent Marilyn Monroe in Hawaii immediately prior to her death.

In order to determine whether Anna Strasberg or Marilyn Monroe performed any acts that would subject them to this State's jurisdiction, we must look to Hawaii's jurisdictional statute. Hawaii's jurisdictional statute provides, in relevant part, as follows:

> (a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and if an individual, the person's personal representative, to the jurisdiction of the courts of the State as to any cause of action arising from the doing of any of the acts:

3

>    (1) The transaction of any business within this State;
>    (2) The commission of a tortious act within thus State;
>    (3) The ownership, use, or possession of any real estate situated in this State;
>    (4) Contracting to insure any person, property, or risk located within this State at the time of contracting.

Haw. Rev. Stat. § 634-35(a). Hawaii's long-arm statute has been construed by the Supreme Court of Hawaii to permit the assertion of jurisdiction to the extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution. <u>Cowan v. First Insurance Co. of Hawaii</u>, 61 Haw. 644, 649 (1980). Thus, for our purposes, the statutory and constitutional standards merge into a single due process test.

Considerations of due process require that non-resident defendants have certain minimum contacts with the forum state, so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. <u>International Shoe v. Washington</u>, 326 U.S. 310, 316 (1945). However, the nature and quality of the necessary contacts required vary, depending upon whether "general jurisdiction" or "specific jurisdiction" is asserted.

1. <u>general jurisdiction</u>

General jurisdiction exists where the non-resident defendant has "substantial" or "continuous and systematic" contacts with the forum state. <u>Fields v. Sedgwick Associated Risks, Ltd.</u>, 796 F.2d 299, 301 (9th Cir. 1986). A court exercising general jurisdiction over a defendant may hear cases unrelated to the defendant's forum-related activities. <u>Id</u>. The level of contact with the forum state necessary to establish general jurisdiction

4

is quite high. See, e.g., Helicopteros Nacionales de Columbia v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872 (1984) (no jurisdiction over foreign corporation that sent officers to forum for a negotiating session, accepted checks drawn from a forum bank, purchased equipment from the forum, and sent personnel to the forum to be trained).

2. specific jurisdiction

If the non-resident defendant's activities within the forum are not sufficiently pervasive to justify the exercise of "general" jurisdiction, a court may nevertheless assert "specific" jurisdiction for a cause of action arising out of the defendant's activities within the forum.

B. Jurisdiction over Anna Strasberg

1. general jurisdiction

Plaintiff appears to argue that Anna Strasberg is subject to this Court's general jurisdiction because Marilyn Monroe products are sold in Hawaii. (See First Amended Complaint, ¶ 2). Plaintiff asks that the Court take judicial notice that there are many stores in Hawaii that sell videos, T-shirts and posters bearing the likeness of Marilyn Monroe.

Selling products bearing the likeness of Marilyn Monroe, or entering into a licensing agreement for the same, is insufficient to establish general jurisdiction over Anna Strasberg. To exercise general jurisdiction, courts require more than selling a product in the forum state. In Shute v. Carnival Cruise Lines,

5

897 F.2d 377, 381 (9th Cir. 1990), rev'd on other grounds, 111 S.Ct. 1522 (1991), the court considered whether the State of Washington had general jurisdiction over a cruise ship company. The cruise ship company's contacts with Washington included advertising in the local media, mailing brochures and paying commissions to travel agents, conducting promotional seminars, and selling its vacation cruises to residents of Washington. Nonetheless, the court held that the exercise of general jurisdiction would violate due process. Id.

Similarly, in Scott v. Breeland, 792 F.2d 925 (9th Cir. 1986) the issue was whether California had jurisdiction over a music group and one of its members for an assault of a flight attendant. The court held that the music group member's boarding of a flight to California, a plane change in San Francisco, and occasional music performances in California were not substantial or continuous and systematic activities. The court also considered the music group's selling of records and tapes in the Los Angeles area, and acknowledged that distributing records to California retailers is a "more 'systematic'" activity. Id. at 928. However, the court concluded that it was insufficient to support general jurisdiction. Likewise, in Cubbage v. Merchant, 744 F.2d 665, 667 (9th Cir. 1984), the court held that California did not have general jurisdiction over an Arizona hospital and doctors who advertised in California, obtained California Medi-Cal numbers, and generated 12% and 26% of their business from California patients.

6

The defendants in the cases cited above had quite extensive sales in the forum state, yet the courts found that general jurisdiction did not exist. Thus, it seems clear that substantial sales in the forum state, standing alone, is insufficient to establish general jurisdiction, and that additional contacts are required. For example, the court in <u>Shute</u> stressed that the cruise ship company did not have offices or exclusive agents in Washington, was not registered to do business there, and paid no taxes there. <u>Shute</u>, 897 F.2d at 381. Similarly, the <u>Cubbage</u> court emphasized that the Arizona doctors were not California residents or licensed to practice medicine in California. <u>Cubbage</u>, 744 F.2d at 667. Here, Anna Strasberg, as administratrix of Monroe's estate, is not registered to do business in Hawaii, has no offices in Hawaii, and has not executed a contract in Hawaii. Therefore, under Ninth Circuit authority, the exercise of general jurisdiction would be improper.

2. <u>specific jurisdiction</u>

Hawaii does not have specific jurisdiction over Anna Strasberg. Specific jurisdiction requires that the cause of action relate to the defendant's contacts in Hawaii. Here, Plaintiff's main cause of action is her claim to a fractional share of decedent's estate as a pretermitted heir. Plaintiff's First Amended Complaint, filed November 27, 1992, also asserts claims for intentional infliction of emotional distress, fraud, and breach of fiduciary duties as executor and administrator of

7

the estate by concealing and withholding information from Plaintiff.

Plaintiff must show that the above-mentioned claims "arise out of" the Defendant's forum-related activities. Here, Plaintiff has failed to show that Defendant had any meaningful forum-related contacts. Plaintiff has merely pointed to the fact that the estate has a licensing agreement for the sale of Marilyn Monroe products, but this has nothing to do with Plaintiff's claim to Monroe's estate. Plaintiff's claim to the estate does not "arise out of" the sales of Marilyn Monroe products in Hawaii. Because the complaint does not demonstrate any connection between the cause of action and Defendant's business activities in Hawaii, the jurisdictional allegations are insufficient.

In addition, even if Anna Strasberg committed fraud and breached her fiduciary duties as administratrix and executrix of the estate, there is nothing to show that this wrongful conduct occurred in Hawaii. Plaintiff has admitted in open court that she made a demand on the estate in 1985. Any fraud or misrepresentation would have occurred at that time, in New York. Anna Strasberg is domiciled in New York. Plaintiff Nancy Miracle was born in New York and apparently lived there for most of her life, and did not move to Hawaii until 1986. New York was where decedent was domiciled at her death. The will was admitted to probate in New York, and Anna Strasberg, as executor, presumably conducted all her estate-related activities out of New York.

8

Plaintiff's rights as a pretermitted heir and victim of fraudulent concealment were caused by her alleged birth to Marilyn Monroe (in New York) and the alleged concealment of that fact by persons in New York. There is nothing to show that Anna Strasberg "should have foreseen that [her] tortious acts would cause injury" to Nancy Miracle so that she "could anticipate being sued" in Hawaii. Pure, Ltd. v. Shasta Beverages, Inc., 691 F.Supp. 1274 (D. Hawaii 1988) (concerning tortious interference with contract); Kailieha v. Hayes, 56 Haw. 306, 536 P.2d 568 (1975). Since the wrongful acts have not been shown to have taken place in Hawaii, the allegations are insufficient to support personal jurisdiction. See Yarbrough v. Estate of Yarbrough, 326 S.E.2d 517 (Ga.App. 1985) (under a similar long-arm statute, court held that there was no personal jurisdiction over an executrix where the wrongful acts -- conversion of estate assets and conspiracy to defeat plaintiff's right under a divorce decree -- were not alleged to have taken place in the forum state).

Similarly, Plaintiff's emotional distress claim rests on her assertion that Defendant concealed information from Plaintiff. However, as before, this harm was done to Plaintiff while Plaintiff still resided in New York. Plaintiff claims that she discovered her relationship to Marilyn Monroe in 1985, while she was living in New York. Plaintiff did not move to Hawaii until 1986. Therefore, the conduct of Anna Strasberg has had an effect in Hawaii only because Plaintiff has chosen to reside in the

9

state. In such situations, other courts have held that there is no personal jurisdiction. <u>Bernardo-Wallace v. Gullo</u>, 661 P.2d 991 (Wash. App. 1983).

In sum, Plaintiff has failed to show that Anna Strasberg had any contacts in Hawaii that relate to Plaintiff's causes of action.[2]

## II. FAILURE TO STATE A CLAIM

Under Fed. R. Civ. P. 12(b)(6), in determining whether a motion to dismiss for failure to state a claim upon which relief can be granted, this Court must accept as true the plaintiff's allegations contained in the complaint and view them in a light most favorable to the plaintiff. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686 (1974); <u>Wileman Bros. & Elliott, Inc. v. Giannini</u>, 909 F.2d 332, 334 (9th Cir. 1990); <u>Shah v. County of Los Angeles</u>, 797 F.2d 743, 745 (9th Cir. 1986). Thus, the complaint must stand unless it appears beyond doubt that the plaintiff has alleged no facts that would entitle him to relief. <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02 (1957); <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1990). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. <u>Balistreri</u>,

---

[2] Plaintiff has also failed to show that decedent Marilyn Monroe had any activities in Hawaii prior to her death. Decedent's will was admitted to probate in New York, and Plaintiffs have not claimed that decedent owned any property in Hawaii before her death.

909 F.2d at 699; Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984).

In essence, as the Ninth Circuit has stated, "[t]he issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims." De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir.), cert. denied, 441 U.S. 965 (1979). The Court must determine whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of plaintiffs' claims. Id.

A motion under Rule 12(b)(6) should also be granted if an affirmative defense or other bar to relief is apparent from the face of the Complaint, such as absolute immunity or the statute of limitations. 2A J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice, ¶12.07 at 12-68 to 12-69 (2d ed. 1991 & supp. 1191-92) (citing Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984 (1976)).

Here, Plaintiff fails to state a claim, because the New York pretermitted heir statute in effect at the time of Marilyn Monroe's death allowed claims only if they were brought by "after-born" children, that is, children born after the making of a will. To reach this conclusion, though, it must first be determined that New York law applies to this case. This requires a choice of law analysis.

1. <u>Choice of Law</u>

11

The parties dispute the applicable law to be applied in resolving Plaintiff's claim to Monroe's estate. Defendant argues that New York law applies. Plaintiff asserts that California law applies. The choice is critical; under the California law in effect at Monroe's death, pretermitted children could bring claims even if they were born prior to execution of a will, while under the relevant New York law, claims could be brought only by "after-born children."

In diversity cases, the Court must apply the forum's law in resolving conflict of laws issues. <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 628 (1964); <u>Lettieri v. Equitable Life Assurance Society of the U.S.</u>, 627 F.2d 930, 932 (9th Cir. 1980). Hawaii resolves its conflict of laws issues by deciding which State has the strongest interest in seeing its laws applied to a particular case. <u>Lewis v. Lewis</u>, 69 Haw. 497, 499, 748 P.2d 1362, 1365 (1988); <u>Peters v. Peters</u>, 63 Haw. 653, 662-64, 634 P.2d 586 (1981). The <u>Peters</u> court was guided by the Restatement (Second) of Conflict of Laws, § 145 (1971) which provides that in determining which state has the most significant relationship to the occurrence and the parties, courts should consider:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws, § 145 (1971). The Restatement provides that these contacts are to be evaluated

12

according to their relative importance with respect to the particular issue.

Applying this test, the Court finds that New York has the stronger interest. New York is the place where the relationship between the parties is centered. Plaintiff's cause of action arose because of her alleged birth to the decedent in New York and the decedent's subsequent death (while domiciled in New York) with a will executed in New York that failed to provide for Plaintiff. The will was admitted to probate in New York, and the estate was administered in New York under the supervision of courts of that State. Anna Strasberg is a domicile of New York, and her authority as administratrix derives from the New York courts. Thus, New York clearly has a strong interest in the case, since New York was the domicile of both parties during the period of the alleged fraudulent concealment, nondisclosure and breach of fiduciary duties.

Plaintiff argues, however, that California has the stronger interest. Plaintiff points out that Marilyn Monroe moved to California when she was 19 years old and lived in California for about 10 years, worked in California, bought and resided in a home in California, voted, died, and was buried in California. However, this shows only that the decedent Marilyn Monroe had rather significant contacts with California at various times during her life. It does not show that Monroe was domiciled in California at the time of her death. Nor does it show that California has the stronger interest in the subject matter of

13

this suit or in having its laws applied to this case. Thus, Defendant is correct in arguing that New York law applies to this case.[3]

## 2. Plaintiff has not stated a claim under New York law

New York courts apply the pretermission statute that was in effect at the time of the decedent's death. In re Post's Trust, 61 Misc. 2d 98, 304 N.Y.S.2d 960 (Surrogate's Court, Ontario Co. 1969). The pretermission statute in effect at the time of Marilyn Monroe's death was § 26 of the Decedent Estate Law. See Defendant's exhibit C. The statute provided, in relevant part, as follows:

> Whenever a testator shall have a child born after the making of a last will, either in the lifetime or after the death of such testator, and shall die leaving such child, so after-born, unprovided for by any settlement, and neither provided for, nor in any way mentioned in such will, every such child shall succeed to the same portion of such parent's real and personal estate, as would have descended or been distributed to such child, if such parent had died intestate, and shall be entitled to recover the same portion from the devisees and the legatees, in proportion to and out of the parts devised and bequeathed to them by such will.

Decedent's Estate Law, § 26. Thus, the statute does not protect children who were living at the time of execution of the will. Plaintiff has admitted in open court that she was born before Marilyn Monroe's will was executed. Thus, Plaintiff has failed to state a claim.

---

[3] The result is the same under the Hawaii Uniform Probate Code, which provides that the decedent's domicile at the time of death determines the law that will be applied. Here, the New York Surrogate Court determined that Marilyn Monroe was a New York domiciliary at the time of her death. (Defendant's exhibit A).

14

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, _____DEC 2 3 1992_____.

_____
Chief United States District Judge

NANCY MIRACLE V. ANNA STRASBERG; CIV. NO. 92-00605ACK; ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

15

## NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

### To all to whom these presents shall come. Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, [under] the seal of the National Archives and Records Administration, that the attached reproduction(s) is [a true] and correct copy of documents in his custody.





| Signature | |
|---|---|
| NAME | DATE |
| *PATRICIA S. BAILEY* | February 6, 2008 |
| TITLE | |
| Acting Director, Records Center Operations | |
| NAME AND ADDRESS OF DEPOSITORY | |
| Office of Regional Records Services<br>Pacific Region (San Francisco)<br>1000 Commodore Drive<br>San Bruno, CA 94066-2350 | |

*U.S. GP[O]-334-122/79063

NA FORM 13040 (10-86)

---

decedent['s] estate. [De]fendant has moved to dismiss Plaintiff's complaint [f]or lack [of p]ersonal jurisdiction, for failure to state a claim, [an]d because [the] action is barred by the statute of limitations.[1]

### FACTS

Plain[tiff] Nancy Mira[nda], aka Nancy Maniscalco Greene, contends th[at s]he recently [dis]covered evidence that she is the natural daug[hte]r of Marilyn [Mon]roe, aka Nancy Cusumano.

---

[1] After [de]fendant filed [its] motion, Plaintiff filed an amended compla[int]. The Court [wil]l consider the motion to dismiss as being addre[sse]d to the amend[ed] complaint as well as the original compl[aint]. 6 Wright & [Mill]er, Federal Practice and Procedure, § 14[__] (1990).