# EXHIBIT
# 61

1   GIBSON, DUNN & CROTCHER LLP.
     Randy M. Mastro, Esq.
2   200 Park Avenue
     New York, New York  10166
3   Telephone: (212) 351-4000

4   Attorneys for Anna Strasberg, Administrator C.T.A.

5

6   SURROGATE'S COURT

7   COUNTY OF NEW YORK

8

9   ACCOUNTING BY            FILE NO. P2781/1962

10  MARJORIE M. FROSCH      RECEIPT AND RELEASE

11  EXECUTRIX OF THE ESTATE OF AARON
     R. FROSCH, EXECUTOR
12
     of the ESTATE OF MARILYN MONROE,
13
                 Deceased
14

15

16       The undersigned, being of full age, sound mind and under no

17  disability, and entitled to receive the residue of the estate of the

18  above named decedent as successor Administratrix C.T.A. acknowledges

19  that Marjorie M. Frosch has fully and satisfactorily accounted for

20  all assets of the estate; and acknowledges receipt of money

21  transferred in the sum of $33,904.18, plus interest in the sum of

22  $469.48, for a total of $34,373.66.  The undersigned releases and

23  discharges Marjorie M. Frosch from all liability for any and all

24  matters relating to or derived from the administration of the

25  estate; and authorizes the Surrogate to make and enter a decree

26  settling the account and fully releasing and discharging the

27  ficuciary named above as to all matters in these proceedings.

28                   Exhibit 10

Gibson, Dunn &
Crutcher LLP

Exhibit B

MM-0002843

Date: 10·18·00

Anna Strasberg,
Administratix C.T.A.

STATE OF NEW YORK      )
COUNTY OF New York     )   ss.:

On  10·18         , 2000, before me personally appeared

Anna Strasberg            to me known and known to me to
be the person described in and who executed the foregoing Receipt
and Release and duly acknowledged the execution thereof.

Notary Public
Commission Expires: 7·6·2000
(Affix Notary Stamp of Seal)

PATRICIA ROSADO
Notary Public, State of New York
No. 01RO5014712
Qualified in New York County
Commission Expires July 6, 2001

Name of Attorney: Randy M. Mastro, Esq. Tel. No. 212-351-4000

Address of Attorney: Gibson, Dunn & Crutcher LLP, 200 Park Avenue,
New York, NY 10166

20089510_1.DOC

MM-0002844

# EXHIBIT

# 62

1   GIBSON, DUNN & CRUTCHER LLP
    Randy M. Mastro, Esq.
2   200 Park Avenue
    New York, New York  10166
3   Telephone: (212) 351-4000

4   Attorneys for Anna Strasberg, Administrator C.T.A.

5

6   SURROGATE'S COURT

7   COUNTY OF NEW YORK

8

9   ACCOUNTING BY                        FILE NO. P2781/1962

10  ANNA STRASBERG                       WAIVER OF CITATION AND CONSENT IN
                                         ACCOUNTING, PETITION FOR JUDICIAL
11  AS ADMINISTRATOR C.T.A.              SETTLEMENT, AND FOR OTHER ORDERS

12  of the ESTATE OF MARILYN MONROE,

13                  Deceased

14

15

16      The undersigned, as an authorized representative of The Anna

17  Freud Centre, being of full age, and sound mind, residing at the

18  address written below, having an interest in this proceeding, waives

19  the issuance and service of citation in this proceeding, and

20  consents to the submission of a decree settling the account and

21  granting other orders as filed and adjusted without further notice.

22  I have reviewed the accounting and supporting schedules and consent

23  to all distributions and disbursements set forth therein.

24

25      I acknowledge receipt of full copies of the Accounting of Anna

26  Strasberg, including the summary statement of account and supporting

27  schedules; and the Petition for Judicial Settlement of Final Account

28  of Administrator C.T.A. and For An Order Authorizing Petitioner to

Gibson, Dunn &
Crutcher LLP

MM-0003482

1) Execute Limited Liability Agreement; 2) Establish and Operate
Limited Liability Company; 3) Use Estate Assets to Establish Limited
Liability Company; 4) Distribute Interests to Residuary
Beneficiaries, 5) For Order Vacating Order to Compel Fiduciaries to
Account; and 6) Discharge of Prior Executor.

| | | | |
|---|---|---|---|
| *11/15/00* | *Steven B. Rosenfeld* | *1070 Park Ave., NY, NY 10128* | 25% |
| Date | Signature | Street Address | Interest |

On behalf of
Anna Freud Centre

| | |
|---|---|
| *STEVEN B. ROSENFELD* | *NEW YORK, NY 10128* |
| Print Name | City/Town/Village/State/Zip |

STATE OF NEW YORK          )
COUNTY OF _NEW YORK_       ) ss.:

On _NOVEMBER 15_ , 2000, before me personally appeared

_STEVEN B. ROSENFELD_  to me known who duly swore to
the foregoing instrument and who did say that he/~~she~~ resides at
_1070 PARK AVE., NY, NY 10128_  and that he/~~she~~ is a
_ATTORNEY-IN-FACT_  of The Anna Freud Centre; and that he/~~she~~
signed his/her name thereto by order of the Board of Directors of
said organization.

*Amy Auerbach*
Notary Public
Commission Expires:
(Affix Notary Stamp of Seal)

AMY AUERBACH
Notary Public, State of New York
No. 01AU4721548
Qualified in New York County
Commission Expires March 30, 2002

Name of Attorney: Randy M. Mastro, Esq. Tel. No. 212-351-4000

Address of Attorney: Gibson, Dunn & Crutcher LLP, 200 Park Avenue,
New York, NY 10166

[Note: If you did not receive a copy of the full account from the
petitioner or petitioner's attorney, you may request a copy.]
20087980_1.DOC

Gibson, Dunn &
Crutcher LLP

2

MM-0003483

# EXHIBIT
# 63

1

2

3

4

5

6

7

8

9

10

11

12

At the Chambers of the Surrogate's
Court held in and for the County of
New York, at 31 Chambers Street,
New York, New York, on the
19th day of June , 2001

P R E S E N T :

- - - - - - - - - - - - - - - - - - - -

HONORABLE ~~MICHAEL LAMBERT~~
EVE PREMINGER
Surrogate.

In the Matter of the Judicial Settlement of the Account of the
Proceedings of ANNA STRASBERG, Administratrix C.T.A. of
the Estate of

MARILYN MONROE,

Deceased.

File No. P.2781/1962

DECREE ON A VOLUNTARY
FINAL ACCOUNTING AND
RELATED MATTERS

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Anna Strasberg, as Administratrix C.T.A. of the Estate of Marilyn Monroe ("Petitioner"),

having filed a final account of the Petitioner's proceedings covering the period from July 20, 1989,

the date on which Letters of Administration C.T.A. were issued to Petitioner, through October 3,

2000, and Anna Strasberg having presented a petition ("Petition") duly verified the 18th day of

October, 2000, praying (i) for the judicial settlement of the account; and (ii) for authority to execute

the Limited Liability Company Agreement attached as Exhibit 4 to the Petition, the Supplement

thereto attached as Exhibit 5 to the Petition, the Assignment attached as Exhibit 6 to the Petition, the

Certificate of Formation attached as Exhibit 7 to the Petition, and any and all other documents

necessary to establish the limited liability company and register and/or qualify it in other

jurisdictions; and (iii) for authority to take all other necessary steps to establish and operate the

limited liability company, including registering and qualifying the limited liability company in one or

more other jurisdictions; and (iv) for authority to use estate assets for the purposes of establishing the

limited liability company and registering and qualifying it in one or more other jurisdictions; and

(v) for authority to transfer all assets of the estate to the limited liability company and distribute

membership interests in the limited liability company pro rata to the residuary beneficiaries as

Gibson, Dunn &
Crutcher LLP

MM-0003458

1  follows:  75% to Anna Strasberg, as Executor of the Estate of Lee Strasberg, and 25% to the Anna

2  Freud Centre; and (vi)  for these estate proceedings to be closed;

3    AND there having been filed herein the Consents to Execution of Limited Liability Company

4  Agreement and Related Matters of Anna Strasberg, as Executor of the Estate of Lee Strasberg, and

5  the Anna Freud Centre;

6    AND a Citation having been issued on the 29th day of January, 2001, pursuant to statute

7  directed to all interested parties in the proceeding, directing them and each of them to show cause

8  before this Court on the 9th day of March, 2001, at 9:30 a.m. of that day, why such relief should not

9  be granted;

10    AND said Citation having been duly served, on January 29, 2001, upon the following:  Anton

11  O. Kris and Anna Kris Wolff, pursuant to the Authorization of The Anna Freud Center, the

12  Authorization of Anton O. Kris and the Authorization of Anna Kriss Wolff; Continental Insurance

13  Company; and upon the Attorney General of the State of New York;

14    AND proof of service on all such parties having been filed with this Court;

15    AND the Attorney General of the State of New York having appeared by filing a Notice of

16  Appearance on March 7, 2001;

17    AND this Court having examined the final account now finds the state and condition of the

18  account to be stated and set forth in the following Summary Statement thereof made by this Court as

19  judicially settled and allowed by it to be recorded and taken as part of this Order and Decree;

20                              SUMMARY STATEMENT

21    The following is a Summary Statement of the final account of the Petitioner's proceedings

22  covering the period from July 20, 1989 through October 3, 2000:

23    CHARGES:

24  Amount shown by Schedule "A"
25    (Principal received)              $    34,373.66

26  Amount shown by Schedule "A-1"
27    (Realized increases on principal)         0.00

28

MM-0003459

Amount shown on Schedule "A-2"
(Income collected)                                    15,956,520.01

       TOTAL CHARGES:              $15,990,893.67

CREDITS::

Amount shown on Schedule "B"
(Realized decreases on principal)     $          0.00

Amount shown on Schedule "C"
(Funeral and administration
expenses)                                              636,180.06

Amount shown on Schedule "D"
(Creditors' claim actually paid)                       0.00

Amount shown on Schedule "E"
(Distributions to legatees,
distributees, etc.)                                15,353,243.17

       TOTAL CREDITS:              $15,989,423.23

Balance on hand shown by
Schedule "F"                                          $1,470.44

AND it appearing that Petitioner having fully accounted for all monies and property of said estate which have come into the hands of the Petitioner and the Summary Statement of the same having been shown above, it is hereby

ORDERED, ADJUDGED AND DECREED that the Account of Anna Strasberg, Aministratrix C.T.A. of the Estate of Marilyn Monroe, covering the period from July 20, 1989 to and including October 3, 2000 be and it is hereby judicially settled and allowed as filed; and it is further

ORDERED, ADJUDGED AND DECREED that the Petitioner is authorized to execute the Limited Liability Company Agreement attached as Exhibit 4 to the Petition, the Supplement thereto attached as Exhibit 5 to the Petition, the Assignment attached as Exhibit 6 to the Petition, the Certificate of Formation attached as Exhibit 7 to the Petition, and any and all other documents necessary to establish the limited liability company and register and/or qualify it in other jurisdictions, as the Petitioner deems appropriate; and it is further

Gibson, Dunn &
Crutcher LLP

3

MM-0003460

1      ORDERED, ADJUDGED AND DECREED that the Petitioner is authorized to take all other

2 necessary steps to establish and operate the limited liability company, including registering and

3 qualifying the limited liability company in one or more other jurisdictions, as the Petitioner deems

4 appropriate; and it is further

5      ORDERED, ADJUDGED AND DECREED that the Petitioner is authorized to use estate

6 assets for the purposes of establishing the limited liability company and registering and qualifying it

7 in one or more other jurisdictions, as the Petitioner deems appropriate; and it is further

8      ORDERED, ADJUDGED AND DECREED that the Petitioner is authorized to transfer all

9 assets of the estate to the limited liability company and distribute membership interests in the limited

10 liability company pro rata to the residuary beneficiaries as follows:  75% to Anna Strasberg, as

11 Executor of the Estate of Lee Strasberg, and 25% to the Anna Freud Centre; and it is further

12      ORDERED, ADJUDGED AND DECREED that ~~proceeding in the Estate of Marilyn~~ UPON COMPLYING WITH THE

13 ~~Monroe are closed~~ DIRECTIONS OF THIS DECREE THAT THE PETITIONER HEREBY SHALL BE

14 DISCHARGED AS TO ALL MATTERS AND THINGS CONTAINED IN THIS

15 ACCOUNTING AND DECREE.

16

17 20118337_1.DOC

                SURROGATE

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

MM-0003461

# EXHIBIT

# 64

1     GIBSON, DUNN & CRUTCHER LLP
         Randy M. Mastro, Esq.
2     200 Park Avenue
         New York, New York  10166
3     Telephone: (212) 351-4000

4     Attorneys for Anna Strasberg, Administrator C.T.A.

5

6     SURROGATE'S COURT

7     COUNTY OF NEW YORK

8

9     VOLUNTARY FINAL ACCOUNTING AND     FILE NO. P2781/1962
         RELATED MATTERS BY
10                                      RECEIPT AND RELEASE
         ANNA STRASBERG,
11

12     ADMINISTRATOR C.T.A. OF THE
         ESTATE OF MARILYN MONROE,

13                    Deceased

14

15

16          The undersigned, being of full age, sound mind and under no

17 disability, on behalf of the Estate of Lee Strasberg, a beneficiary

18 of the decedent's will entitled to receive 75% of the residue of the

19 estate, comprised of Marilyn Monroe LLC, acknowledges that Anna

20 Strasberg has fully and satisfactorily accounted for all assets of

21 the estate; and acknowledges receipt by assignment of a 75% interest

22 in Marilyn Monroe LLC.  The undersigned releases and discharges Anna

23 Strasberg from all liability for any and all matters relating to or

24 derived from the administration of the estate; and authorizes the

25 Surrogate to fully release and discharge the fiduciary named above

26 as to all matters in these proceedings.

27 Date: 7/26/01

28                              Anna Strasberg
                             Executor of the Estate of Lee Strasberg

Gibson, Dunn &
Crutcher LLP

MM-0003475

# EXHIBIT
# 65

Filed separately under seal pursuant to Protective Order

# EXHIBIT

# 66

# COPY

1

1   UNITED STATES DISTRICT COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   -----------------------------------x

4   SHAW FAMILY ARCHIVES, LTD.,
    EDITH MARCUS, and META STEVENS

5
                            Plaintiffs,
6
             - against -
7
    CMG WORLDWIDE, Inc., an Indiana
8   corporation, and MARILYN MONROE,
    Limited, a Delaware limited
9   liability company,

10                          Defendants.
    -----------------------------------x
11

12              Ellen Grauer Court Reporters
                126 East 56th Street
13              New York, New York

14

15

16              December 26, 2007
                12:01 p.m.
17

18

19              30(b)(6) deposition of MARK
    ROESLER, before Marlene Lee, CSR, CRR, a Notary
20  Public of the State of New York.

21

22

23      ELLEN GRAUER COURT REPORTING CO. LLC
          126 East 56th Street, Fifth Floor
24              New York, New York
                  212-750-6434
25                Ref: 86257

1              ROESLER

2        A.    I worked at -- I had just graduated

3   from law school and worked in the -- assisted

4   in the licensing of the copyrighted images of

5   Norman Rockwell.

6        Q.    Just Norman Rockwell?

7              MR. MINCH:  Objection.

8        A.    Initially, yes.

9        Q.    And did you have any specific

10  duties and responsibilities -- let me rephrase

11  that.  When you say "assisted in the

12  copyrighting of images of Norman Rockwell,"

13  what do you mean by that?

14             MR. MINCH:  Objection.

15       A.    There was -- Curtis Publishing

16  Company owned 322 copyrights of Norman Rockwell

17  images that appeared in the Saturday Evening

18  Post.  On the covers of the Saturday Evening

19  Post.  And they licensed out the images to

20  those copyrighted images.

21       Q.    And what did you do?

22             MR. MINCH:  Objection.

23       A.    There was a gentleman that was a

24  lawyer that ran that operation.  And I assisted

25  him with reviewing contracts and negotiating

12

```
 1                    ROESLER

 2   licensing agreements.

 3        Q.    How long were you employed at

 4   Curtis Licensing?

 5             MR. MINCH:  Objection.

 6        A.    Well, Curtis Licensing at some

 7   point in the ensuing years became Curtis

 8   Management Group.  We spun it off into a

 9   separate company, of which -- which I owned an

10   interest in and later purchased the entire

11   interest of the company.  And -- I'm sorry.  I

12   forget what the specific question was.

13        Q.    I'm just trying to get an

14   understanding of what your positions were

15   subsequent to graduating.  You said you were at

16   Curtis Licensing since 1981.  Subsequent to

17   that you stated you were at Curtis Management

18   Group.  How long were you at Curtis Management

19   Group?

20        A.    Well, Curtis Licensing folded into

21   Curtis Management Group, and that later became

22   CMG Worldwide.  It was all kind of one and the

23   same.

24        Q.    When did it become CMG Worldwide?

25   Let me rephrase.  When did Curtis Management
```

13

1                      ROESLER
2    Group become CMG Worldwide?
3         A.    Sometime in the '80s.  Maybe mid,
4    late '80s.
5         Q.    And you mentioned that you had
6    purchased the entire group at one point in
7    time?
8              MR. MINCH:  Objection.
9              MS. COLBATH:  Objection.
10        A.    I'm sorry.
11             MS. COLBATH:  What is the question?
12        Q.    You testified earlier you owned an
13   interest in and later purchased the entire
14   interest of the company.  What did you mean by
15   that?
16        A.    In 1981 when I started working, I
17   had a 20 percent interest in the -- in the
18   licensing operation, Curtis Licensing
19   Corporation, I think it was, and had an option
20   to purchase -- I had an option for that to
21   increase to 49 percent, and then an option to
22   purchase the entire amount.  So it evolved over
23   the next five, six, seven years.
24        Q.    When did you purchase the entire
25   amount of Curtis Licensing?

233

1                          ROESLER
2          A.     I -- I don't know that we took
3     specific action as a result of this letter.
4          Q.     This document came from CMG's
5     files?
6                 MS. COLBATH:  Objection.
7          A.     Did -- are you asking me?
8          Q.     I'm asking you.
9          A.     Like I said, I don't recall seeing
10    this letter.  I don't think it came from our
11    files.  I don't recall seeing it.
12         Q.     A second ago you said it did.
13                MR. MINCH:  Objection.
14                MS. COLBATH:  Objection.
15         A.     No, you asked me if I've ever seen
16    document 12.  I said I've never seen the cover
17    letter, that I can recall.  But I've seen it.
18    The second part of 12 got circulated, a fax
19    copy you'd see every once in a while.  Your
20    question is, did this come from our files?  I
21    don't think it did.  I don't think it did.
22    It's possible there's something in our files I
23    don't recall, but --
24                MR. SERBAGI:  If the court reporter
25           would mark as Roesler 13, bearing

234

1                    ROESLER

2          production Nos.  MM 0013310 through

3          13319.

4                    (Roesler Exhibit 13 for

5          identification, document, written by M.

6          Roesler, 5-2-95, production Nos. MM

7          0013310 through 0013319.)

8          Q.    Have you seen this document before,

9    Mr. Roesler?

10         A.    It looks like I wrote it.

11         Q.    When you refer to you wrote it, did

12   you write all of the pages that are contained

13   within Roesler 13?

14         A.    I mean, at least to some extent.

15         Q.    To the extent you didn't write it,

16   did you review it before it was sent to --

17         A.    Yeah.

18         Q.    -- Ms. Strasberg?

19         A.    Yes.

20         Q.    You would have made sure everything

21   in here is true and accurate?

22         A.    I would.

23         Q.    You wouldn't lie to Ms. Strasberg,

24   would you?

25         A.    No.

235

ROESLER

1

2     Q.    That's your signature on page 1?

3     A.    It is.

4     Q.    Dated May 2nd, 1995; correct?

5     A.    Yes.

6     Q.    What was the gist of what you were

7  trying to say in the first page of this

8  document to Ms. Strasberg?

9            MS. COLBATH:   Objection.

10    A.    I don't -- I don't recall.  I don't

11  know what --

12    Q.    If you could just read the first

13  page to yourself.  Maybe it will refresh your

14  recollection.

15           MR. MINCH:   I'm sorry.  What

16       page --

17    A.    You're asking what the recent legal

18  victory on the West Coast was?

19    Q.    I'm just asking you to read the

20  cover page, this letter that you sent to

21  Ms. Strasberg, and tell me what the purpose of

22  this letter was.

23    A.    Well, it was right before -- we

24  started representing the -- officially

25  representing the estate 90 days later, so it

1                    ROESLER

2    attributes."  Do you see that?

3         A.    That's correct.

4         Q.    There's a list of bullet points

5    underneath that.  Do you see that?

6         A.    Yes.

7         Q.    And you wrote those bullet points;

8    correct?

9         A.    I did.

10        Q.    If you turn to the -- let's start

11   with the first bullet point.  "Encompasses

12   protection of names, voices, signatures,

13   photographs, images, likeness, or distinctive

14   appearances, gestures, or mannerisms."  Do you

15   see that?

16        A.    Yes.

17        Q.    Is that something that you wrote?

18        A.    At least reviewed.

19        Q.    True and correct?

20        A.    I'm sorry?

21        Q.    Strike that.  Turning to the fourth

22   bullet point, you state -- if you'd read that

23   into the record.

24        A.    I'm sorry?  You want me to read it?

25        Q.    The fourth bullet point, starting,

```
 1                        ROESLER
 2      "Is only the second state" --
 3           A.       -- "to explicitly define conduct
 4      by which an out-of-state infringer submits to
 5      the jurisdiction of Indiana courts, provides
 6      important guidance and choice of law, domicile
 7      requirements which case law shows courts
 8      generally apply the law of the state where the
 9      person was domiciled in death here in New York
10      which does not recognize the decedent's death."
11           Q.    What did you mean by that
12      statement?
13           A.    That -- I meant that Indiana was an
14      important state to use because it doesn't look
15      to the domicile of where the decedent was
16      domiciled.
17           Q.    When you refer to "decedent,"
18      you're referring to Marilyn Monroe?
19           A.    That's correct.
20           Q.    You say, "apply the law of the
21      state where the person was domiciled at death."
22      That person you're referring to is Marilyn
23      Monroe?
24           A.    That's correct.
25           Q.    You say "here in New York."  Do you
```

240

ROESLER

2  see that?

3      A.    I do.

4      Q.    Do you recall making that

5  statement?

6      A.    I recall -- I mean, I generally

7  recall this document, but -- so I'm sure I made

8  the statement.

9      Q.    Thank you.  Do you recall having

10  communications with Larry Shaw back in December

11  of 2006?

12      A.    I don't remember specific dates,

13  but Larry and I talked a lot.  Recent --

14      Q.    Do you recall ever stating to Larry

15  that, pursuant to the Indiana statute, Larry

16  and my clients would be responsible for paying

17  CMG's and MMLLC's attorneys' fees in connection

18  with the present litigation?

19      A.    Larry and I had often frequent

20  friendly discussions on the case, and what

21  could and might happen and so forth.  And

22  our -- you know, so -- I mean, I -- you know, I

23  think we talked about that there were big legal

24  fees that someone might have to pay.  But it

25  was all in a very friendly context.

241

ROESLER

1

2    Q.    Do you recall ever telling Mr.

3  Shaw, Larry Shaw, that if CMG and MMLLC

4  prevailed in this litigation, Larry and my

5  clients would be responsible for paying CMG's

6  and MMLLC's legal fees?

7            MR. MINCH:  Objection.

8    Q.    Under the Indiana statute.

9            MR. MINCH:  Objection.

10   A.    I don't -- I don't know that I do

11  recall or don't recall.  Like I said, we often

12  talked about the implications of the lawsuit

13  and the costs and so forth.  So there may have

14  been something to that effect.  But I don't

15  have a specific recollection of it.

16   Q.    Let me refresh your recollection.

17            MR. SERBAGI:  If you could mark as

18        Roesler 14 a document that we have

19        previously produced in connection with

20        the pleadings in this case.  It does not

21        bear a production number.  We do have it.

22        It is from Larry Shaw -- no.  It is two

23        e-mails, one from Mark Roesler to Larry

24        Shaw and others, and also an e-mail back

25        from -- strike that.