UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
SHAW FAMILY ARCHIVES, LTD., EDITH MARCUS, :
and META STEVENS, :
                                           :
                      Plaintiffs,         : Index No. O5 CV 3939 (CM)
                                             :
          -against-                      :
                                           :
CMG WORLDWIDE, INC., an Indiana Corporation :
and MARILYN MONROE, LLC, a Delaware :
Limited Liability Company, :
                                           :
                     Defendants.      :
                                           :
----------------------------------------------------------------------X

**MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER THAT SB 771 IS
UNCONSTITUTIONAL AND THAT THE COURT'S
MAY 2, 2007 DECISION AND ORDER STANDS**

                                     LAW OFFICES OF CHRISTOPHER SERBAGI
                                     488 Madison Avenue, Suite 1120
                                     New York, New York 10022
                                     Tele: (212) 593-2112
                                     Fax: (212) 308-8582

                                     Attorneys for the Plaintiffs

On the Brief:
Marci Hamilton, Esq.
Christopher Serbagi, Esq.
David Marcus, Esq.

TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................(i)

TABLE OF AUTHORITIES .........................................................................(ii)

PROCEDURAL HISTORY ............................................................................1

      The Parallel California Litigation ..........................................................3

SUMMARY OF THE ARGUMENT ..............................................................5

ARGUMENT.................................................................................................6

I.     The Law that Governs this Case Is the Law Regarding Devisees in Effect in 1962 When Marilyn Monroe Died, and at that Time, Rights of Publicity Were Not Descendible.................................................6

II.    The 1984 California Law that Established a Posthumous Right of Publicity for Devisees of a Will Could Not Affect the Law in Effect at the Time of Marilyn Monroe's Death, Because It Did Not Clearly Indicate a Legislative Intent that It Be Applied Retroactively and If It Did, It Would be Unconstitutional .........................8

    A.  Section 3344.1, as Enacted in 1985, Did Not Evince a Clear Legislative Intention to be Applied Retroactively ................................9

    B.  Section 3344.1 as Enacted Would Violate Due Process Even If It Were Clearly Intended to Be Applied Retroactively......................12

        1.  The California Constitution Would Render the 1984 Statute Unconstitutional If Applied Retroactively...............14

        2.  The United States Constitution Also Forbids Retroactive Legislation that Disturbs the Property Rights at Stake in the Case....................................................17

III.    The 2007 Amendments to § 3344.1 are Unconstitutional Under the California and Federal Constitutions .......................................................18

CONCLUSION………………………………………………………………..21

TABLE OF AUTHORITIES

SUPREME COURT OF THE UNITED STATES

Barnhart v. Sigmon Coal Co., 534 U.S. 438 (2002) ..........................................19

Chase Securities Corp. v. Donaldson, 325 U.S. 304 (1945) ...............................17

Dodd v. United States, 545 U.S. 353 (2005) ......................................................19

Fernandez-Vargas v. Gonzales, 548 U.S. 30, 126 S.Ct. 2422 (2006)................17

Hooper v. California, 155 U.S. 648 (1895)..........................................................18

Irving Trust Co. v. Day, 314 U.S. 556 (1942) ......................................................9

Landgraf v. USI Film Prods., 511 U.S. 244 (1994) ..............................................5

McConnell v. Federal Election Comm'n, 540 U.S. 93 (2003)............................18

Pub. Citizen v. United States Dep't of Justice, 491 U.S. 440 (1989).................19

Stogner v. California, 539 U.S. 607 (2003) ........................................................17


FEDERAL CASES

Greene Archives, Inc. v. DMB Worldwide, Inc. ("Greene Archives I"), No. 2:05-
    cv-02200 (C.D. Cal. May 14, 2007) ...........................................................3

Greene Archives, Inc. v. DMB Worldwide, Inc. ("Green Archives II"), No. 2:05-
    cv-02200 (C.D. Cal. Jan. 7, 2008) ..............................................................5

Greene Archives, Inc. v. DMB Worldwide, Inc. ("Green Archives III"), No. 2:05-
    cv-02200 (C.D. Cal. Jan. 22, 2008) ............................................................5

Joplin Enterprises v. Allen, 795 F. Supp. 349 (W.D. Wash. 1992)....................12

Miller v. Glenn Miller Productions, 318 F. Supp. 2d 923 (C.D. Cal. 2004) .....12

Shaw Family Archives Ltd. v. CMG Worldwide, Inc., 486 F.Supp.2d 309
    (S.D.N.Y. 2007)...........................................................................................2

Troll Co. v. Uneeda Doll Co., 483 F.3d 150 (2d Cir. 2007)...............................19

United States v. Buckland, 289 F.3d 558 (9th Cir. 2002)...................................18


STATE LAW CASES

Alliance of Am. Insurers v. Chu, 77 N.Y.2d 573 (N.Y. 1991)..........................13

Bank of America v. Angel View Crippled Children's Found., 85 Cal. Rptr. 2d 117
    (Cal. Ct. App. 1999)...................................................................................16

Bullard v. California State Automobile Ass'n, 28 Cal. Rptr. 3d 225 (Cal. Ct. App.
    2005) ............................................................................................................9

City of Modesto v. Nat'l Med., Inc., 27 Cal. Rptr. 3d 215 (Cal. Ct. App. 2005) ...........16

Copley Press, Inc. v. Superior Court, 141 P.3d 288 (Cal. 2006) ......................................19

Gattuso v. Harte-Hanks Shoppers, Inc., 169 P.3d 889 (Cal. 2007) ................................19

Guglielmi v. Spelling-Goldberg Prods., 603 P.2d 454 (Cal. 1979) ...................................7

In re Buzza's Estate, 15 Cal. Rptr. 518 (Cal. Ct. App. 1961) ............................................6

In re Charles' Estate, 158 N.Y.S.2d 469 (N.Y. App. Div. 1957) ......................................7

In re Cindy B., 237 Cal. Rptr. 677 (Cal. Ct. App. 1987) .................................................13

In re Gernon's Estate, 226 N.Y.S.2d 940 (N.Y. Sur. Ct. 1962) .........................................7

In re Marriage of Buol, 705 P.2d 354 (Cal. 1985) ...........................................................14

In re Marriage of Dandona & Araluce, 111 Cal. Rptr. 2d 390 (Cal. Ct. App. 2001) ........16

In re Marriage of Fabian, 715 P.2d 253 (Cal. 1986) .......................................................16

In re Marriage of Heikes, 899 P.2d 1349 (Cal. 1995) .....................................................13

In re Marriage of Siller, 231 Cal. Rptr. 757 (Cal. Ct. App. 1986) ...................................13

In re Putnam's Estate, 28 P.2d 27 (Cal. 1933) .................................................................6

In re Van Winkle's Will, 86 N.Y.S.2d 597 (N.Y. Sur. Ct. 1949) ......................................6

Lent v. Doe, 47 Cal. Rptr. 2d 389 (Cal. Ct. App. 1995) ..................................................13

Liebig v. Superior Court, 257 Cal. Rptr. 574 (Cal. Ct. App. 1989) ..................................13

Lugosi v. Universal Pictures, 603 P.2d 425 (Cal. 1979) ...................................................7

Majewski v. Broadalbin-Perth Cent. Sch. Dist., 91 N.Y.2d 577 (N.Y. 1998) ....................5

Matter of Hodes v. Axelrod, 70 N.Y.2d 364 (N.Y. 1987) .................................................13

Matter of McGlone, 284 N.Y. 527 (N.Y. 1940) .................................................................9

McKay v. Lauriston, 269 P. 519 (Cal. 1928) .....................................................................6

Myers v. Philip Morris Cos., Inc., 50 P.3d 751 (Cal. 2002) ...............................................9

Plotkin v. Sajahtera, Inc., 131 Cal. Rptr. 2d 303 (Cal. Ct. App. 2003) ...........................14

Vaughn v. Manor Towers Owners Corp., 521 N.Y.S.2d 680 (N.Y. App. Div. 91987) ........................................................................................................................9

Western Security Bank v. Superior Court, 933 P.2d 507 (Cal. 1997) ................................5

STATUTES

CAL. CIV. CODE § 3344 (1984 & Supp. 2004) ...................................................................7

OTHER SOURCES

BLACK'S LAW DICTIONARY 446 (8th ed. 2004) ................................................................18

Shaw Family Archives, Ltd., Bradford Licensing, LP., Meta Stevens, and Edith Marcus (the "Shaw Family") respectfully submit this memorandum of law in support of their motion for an Order that SB 771 is unconstitutional and that the Court's May 2, 2007 Decision and Order stands, and for such other relief as the Court may deem just and proper.

## PROCEDURAL HISTORY

On March 23, 2005, Marilyn Monroe, LLC and CMG Worldwide, Inc. (together "MMLLC") filed a complaint in the Southern District of Indiana against Shaw Family Archives, Ltd. and Bradford Licensing Associates (the "Shaw Family"), alleging that the Shaw Family violated, *inter alia*, the Indiana Right of Publicity Statute, I.C. 32-36-1-1 et seq, by infringing MMLC's purported right of publicity in Marilyn Monroe.

On April 19, 2005, Shaw Family Archives, Ltd., Edith Marcus, and Meta Stevens (also referred to as "the Shaw Family") filed a complaint in the Southern District of New York against MMLLC seeking, *inter alia*, a declaration that the MMLLC does not own a right of publicity in Marilyn Monroe and a ruling that MMLLC infringed on copyrights owned by Meta Stevens and Edith Shaw. On March 25, 2006, the Honorable David F. Hamilton of the Southern District of Indiana granted the Shaw Family's motion to transfer venue to the Southern District of New York. On May 2, 2006, the Honorable Colleen McMahon of the Southern District of New York consolidated the Indiana and New York actions.

On October 25, 2006, MMLLC filed a motion for summary judgment against the Shaw Family for violation of the Indiana Right of Publicity Statute based upon the purported sale of a single t-shirt in Indiana. MMLLC argued that the Indiana Right of Publicity Statute gave it a retroactive postmortem right of publicity in Marilyn Monroe, regardless of where Ms. Monroe was domiciled when she died. The Shaw Family cross-moved for summary judgment claiming

1

that the Defendants did not own a right of publicity in Marilyn Monroe because: (i) the law of the state where Ms. Monroe was domiciled at the time of her death, not the Indiana Right of Publicity Statute, determines whether any posthumous right of publicity exists; (ii) Marilyn Monroe died domiciled in New York, a state that does not recognize a postmortem right of publicity; (iii) neither New York nor California, the only two places where Marilyn Monroe could have been domiciled, recognized a postmortem right of publicity when Marilyn Monroe died; (iv) Ms. Monroe could not pass through the residuary clause of her will a right she did not own at the time of her death; and (v) CAL. CIV. CODE § 3344.1 vested postmortem rights of publicity only for a decedent's family members who died prior to the effective date on January 1, 1985.

On May 2, 2007, this Court granted the Shaw Family's cross-motion for summary judgment and held that MMLLC does not own a right of publicity in Marilyn Monroe. Declaration of Christopher Serbagi, dated February 14, 2008 ("Serbagi Decl."), Ex. A. In particular, the Court held that Indiana follows the majority rule that the law of the testator's domicile applies to all questions of a will's construction. Furthermore, the Court held that when Ms. Monroe died, New York and California (the only two states Ms. Monroe could have been domiciled in when she died), did not recognize a postmortem right of publicity. See Shaw Family Archives Ltd. v. CMG Worldwide, Inc., 486 F.Supp.2d 309, 314 (S.D.N.Y. 2007). Moreover, New York and California probate laws do not permit a testator to dispose of property by will that she did not own at the time of her death. The Court also held that Ms. Monroe did not intend to include a non-existent right as part of her residuary estate and that neither the California nor Indiana postmortem right of publicity statutes retroactively vested a right of publicity to the beneficiaries of Ms. Monroe's residuary estate. See id. at 318, 319-20.

**The Parallel California Litigation**

In March of 2005, MMLLC sued Tom Kelley Studios ("Kelley") and The Milton H. Green Archives Inc. in the Southern District of Indiana. Greene and Kelley are the owners of the copyrights in the photographic images of Marilyn Monroe taken by photographers Milton Greene and Tom Kelley, Sr. On March 25, 2005, Greene and Kelley sued MMLLC in the Central District of California. On August 9, 2005, the Southern District of Indiana transferred the Indiana actions to California. On December 14, 2005, the California court consolidated these actions in the Central District of California. On October 6, 2006, Kelley and Greene filed a motion for summary judgment against MMLLC. On May 14, 2007, the Honorable Margaret Morrow held that MMLLC does not own a right of publicity in Marilyn Monroe. Serbagi Decl., Ex. B. In particular, Judge Morrow relied on New York and California probate law, which states that a testator cannot bequeath property she did not own at death and held that neither New York, California nor Indiana law recognized postmortem publicity rights when Ms. Monroe died. Milton H. Greene Archives, Inc. v. DMB Worldwide, Inc. ("Greene Archives I"), No. 2:05-cv-02200, at 14-15, 17-18 (C.D. Cal. May 14, 2007).

Judge Morrow also rejected MMLLC's argument that California's postmortem right of publicity statute, Cal. Civ. Code Section 3344.1, is retroactive. Only statutorily designated heirs could have a right to publicity postmortem. Section 3344.1 did not apply retroactively to residuary beneficiaries. In particular, Judge Morrow held:

> [G]iven the plain language of the California posthumous right of publicity statute, the common law background against which it was enacted, and its legislative history, the court concludes that the statute vests the posthumous right of publicity that it created directly to the statutorily designated heirs rather than in the residuary beneficiaries under a predeceased personality's will.

Order granting Mot. Summ. J., May 14, 2007, at p. 34 (emphasis added).  Greene Archives I, No.

2:05-cv-02200, at 34 (emphasis added).  Judge Morrow further held that since Marilyn Monroe

had no living statutory heirs in January 1, 1985 (the effective date of the California postmortem

right of publicity statute), the right had lapsed into the public domain.  Id. at 28.

Dissatisfied with the court rulings in New York and California, MMLLC hired Loeb &

Loeb to lobby the California and New York legislatures to enact retroactive legislation that

would abrogate the New York and California federal court orders and retroactively hold the

Shaw Family, Greene and Kelley liable for acts that both courts previously determined were

legal.  The California Assembly passed SB 771 on September 4, 2007 and the California Senate

passed SB 771 on September 7, 2007.  On October 10, 2007, Governor Arnold Schwarzenegger

signed SB 771 into law.  Despite the law in existence when Marilyn Monroe died, SB 771

created a new property right that "deems" a celebrity, who died prior to January 1, 1985, to have

owned a descendible right of publicity at the time of her death and that this right of publicity

vested pursuant to the residuary clause of a decedent's will.  Serbagi Decl., Ex. C.  The

California legislature characterized the new property right as merely a "clarification" of §

3344.1, the language of which had previously led this Court and Judge Morrow to hold that there

was no such right.

On November 21, 2007, the Defendants in the California litigation requested that Judge

Morrow reconsider her May 14, 2007 Order that granted Greene's and Kelley's motion for

summary judgment.  On January 7, 2008, the Honorable Margaret Morrow granted the

Defendants' motion for reconsideration, reversed her previous holding, and held that MMLLC

does have a right of publicity in Marilyn Monroe.  Serbagi Decl., Ex. D.  In particular, despite

Judge Morrow's earlier May 14, 2007 conclusion that the "plain language" of 3344.1 dictated

that no retroactive right was intended or existed, she now held that § 3344.1 was so ambiguous that SB 771 was merely a clarification.  Greene Archives ("Green Archives II"), No. 2:05-cv-02200, at 21 (C.D. Cal. Jan. 7, 2008).

## SUMMARY OF ARGUMENT

The 2007 amendments to § 3344.1 in SB 771 rest on the pre-existence of § 3344.1; the legislature made the pre-existing law the base of its amendments.   Without the pre-existing law, the amendments would make no sense. That is why the California legislature characterized it as a "clarification" rather than a new statutory right.

The problem, though, is that § 3344.1 has a fatal constitutional flaw: when it was enacted, there was no clear legislative intent for it to be applied retroactively.  Under both the federal and California constitutions, no law may ever be applied retroactively without clear legislative intent. See Landgraf v. USI Film Prods., 511 U.S. 244, 270 (1994); Western Security Bank v. Superior Court, 62 Cal. Rptr. 2d 243, 249 (1997).  The same principle is true under New York law.  See Majewski v. Broadalbin-Perth Cent. Sch. Dist., 91 N.Y.2d 577, 584 (N.Y.  1998) ("It is a fundamental canon of statutory construction that retroactive operation is not favored by courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it.").

No such clarity with respect to § 3344.1 exists.  If there is any clear intent, it proves the opposite, as this Court and Judge Morrow originally ruled.  Greene Archives I, No. 2:05-cv-02200, at 29, 34.  At best, § 3344.1 was ambiguous on retroactivity.  Green Archives II, No. 2:05-cv-02200, at 21; Greene Archives ("Green Archives III"), No. 2:05-cv-02200, at 18 (C.D. Cal. Jan. 22, 2008).   Thus, the 2007 amendments to § 3344.1 sit on constitutional quicksand, and, therefore, cannot take effect.  Even if the 2007 amendments were considered standing alone,

they are unconstitutional.  There is no reason for this Court to reconsider its earlier decision, let alone reverse it.

## ARGUMENT

I.    **The Law that Governs this Case Is the Law Regarding Devisees in Effect in 1962 When Marilyn Monroe Died, and at that Time, Rights of Publicity Were Not Descendible**

There is a simple and straightforward principle at the core of this case:  "The descent of property is governed by the law in force at the time of the death of the person whose property is to be distributed."  In re Putnam's Estate, 28 P.2d 27, 28 (Cal. 1933) (citing McKay v. Lauriston, 269 P. 519, 523 (Cal. 1928)).  When Marilyn Monroe died, there was no descendible publicity right to include in her estate.

The question posed at this stage of this case is whether there is a constitutional California law that creates descendible rights of publicity and makes them retroactive all the way back to Monroe's death.  There is not.  Therefore, the law of 1962 governs, and no devisee may own descendible publicity rights from Monroe's estate.

Fundamental principles of probate law in California and New York mandate that a decedent may only pass that which is owned at the time of death.  See In re Buzza's Estate, 15 Cal. Rptr. 518, 521 (Cal. Ct. App. 1961) ("In interpreting a will, a court should view the will in a manner which will reveal the intent of the testator as disclosed by the language in the will and, if possible, effectuate that intent.  This does not mean, however, that a testator may validly dispose of nonexistent property."); see also McKay, 269 P. at 522 (because law in effect at the time of wife's death did not vest ownership of community property in her, she "took no present interest therein which she could dispose of by last will and testament.").  See In re Van Winkle's Will, 86 N.Y.S.2d 597, 600 (N.Y. Sur. Ct. 1949) ("Of course, under no circumstances, in the absence

of a valid power, can any amount of testamentary intent produce the effect of subjecting property not owned by a testator at the date of his death to any disposition whatever. . . ."); In re Charles' Estate, 158 N.Y.S.2d 469, 472 (N.Y. App. Div. 1957) ("In this State, the rule has been formulated that, if property bequeathed or devised is not found in the estate of a testator, an ademption takes place or the principles of ademption apply."); In re Gernon's Estate, 226 N.Y.S.2d 940, 942 (N.Y. Sur. Ct. 1962) ("In the absence of a contrary intent the will must be interpreted as applying to all property owned by him at the date of his death.").

At the time of Marilyn Monroe's death, there existed only a common law right of publicity that was not descendible.  Both this Court and the California court reached this conclusion.  Shaw Family Archives Ltd. v. CMG Worldwide, Inc., 486 F. Supp. 2d 309, 314 (S.D.N.Y. 2007); Milton H. Greene Archives, Inc. v. DMB Worldwide, Inc. ("Greene Archives I"), No. 2:05-cv-02200, at 17, note 35 (C.D. Cal. May 14, 2007).  There is no dispute that this right was specific to the person and did not outlive its owner, which the California Supreme Court made clear in a leading decision 17 years after Monroe's death.  Lugosi v. Universal Pictures, 603 P.2d 425, 431 (Cal. 1979) (holding the California right of publicity not descendible and adopting the opinion of the California Court of Appeal, Second Appellate District, that "the right to exploit name and likeness is personal to the artist and must be exercised, if at all, by him during his lifetime."); Guglielmi v. Spelling-Goldberg Prods., 603 P.2d 454, 455 (Cal. 1979) (holding, two days after Lugosi, that "the [common law] right of publicity protects against the unauthorized use of one's name, likeness or personality, but that the right is not descendible and expires upon the death of the person so protected").

California did not enact any statutory right of publicity until 1971, nine years after Monroe died. CAL. CIV. CODE § 3344 (1984 & Supp. 2004).  Until 1984, when California

enacted a statute that permitted prospective posthumous rights of publicity, CAL. CIV. CODE §
3344.1 (formerly CAL. CIV. CODE §990), the existing rights of publicity were held not to be
descendible.  Lugosi, 603 P.2d at 431; Guglielmi, 603 P.2d 454.

This is the reasoning that undergirded this Court's previous, sound decision in this case,
486 F. Supp. 2d 309 (S.D.N.Y. 2007), and the decision in Greene Archives I.  The subsequent
decisions in Greene Archives ("Green Archives II"), No. 2:05-cv-02200 (C.D. Cal. Jan. 7, 2008)
and Greene Archives ("Green Archives III"), No. 2:05-cv-02200 (C.D. Cal. Jan. 22, 2008),
cannot be squared with these facts or common sense.

Until the recent Greene Archives II and Greene Archives III decisions, the notion that a
descendible publicity right existed in any form in 1962 was virtually unthinkable.  It is still
unbelievable.  The only way that such a right could be created is through subsequent legislation
that retroactively constructs a new property right extending back in time before Monroe's death.
As discussed below, the enactment of § 3344.1 in 1984 did not create a retroactive descendible
right for devisees; consequently, the 2007 amendments could not do so by piggybacking on it.

**II. The 1984 California Law that Established a Posthumous Right of Publicity
for Devisees of a Will Could Not Affect the Law in Effect at the Time of Marilyn
Monroe's Death, Because It Did Not Clearly Indicate a Legislative Intent that It Be
Applied Retroactively and If It Did, It Would be Unconstitutional**

In order for a civil statute to pass constitutional muster two elements must be present: (1)
the legislative intent to make the law retroactive must be clear and (2) the statute must not violate
due process.  Neither criterion is satisfied by § 3344.1.

### A.    Section 3344.1, As Enacted in 1985, Did Not Evince A Clear Legislative Intention to Be Applied Retroactively

For California courts to give legislation retroactive effect, the intent of the legislature must be clear.  See Western Security Bank, 933 P.2d at 513 ("A basic canon of statutory interpretation is that statutes do not operate retrospectively unless the Legislature plainly intended them to do so."); Myers v. Philip Morris Cos., Inc., 50 P.3d 751, 761 (Cal. 2002) ("A statute may be applied retroactively only if it contains express language of retroactivity or if other sources provide a clear and unavoidable implication that the Legislature intended retroactive application.") (emphasis in original); accord Bullard v. California State Automobile Ass'n, 28 Cal. Rptr. 3d 225, 229 (Cal. Ct. App. 2005) ("The Legislature is well acquainted with these principles and uses clear language when it intends a statute to operate retroactively.").  The same principle holds under federal constitutional law.  Landgraf, 511 U.S. at 270 ("Since the early days of this Court, we have declined to give retroactive effect to statutes burdening private rights unless Congress had made clear its intent.").

This settled principle is also true under New York law.  See Majewski, 91 N.Y.2d at 584 ("It is a fundamental canon of statutory construction that retroactive operation is not favored by courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it").  see also Vaughn v. Manor Towers Owners Corp., 521 N.Y.S.2d 680, 682 (N.Y. App. Div. 1987) ("Neither the State nor Federal constitutions contain any prohibition against all retroactive laws.  However, the Legislature, while it can take away rights created by the law of the State, may not take away property which has vested by virtue of such rights." (citing Matter of McGlone, 284 N.Y. 527 (1940), aff'd sub nom. Irving Trust Co. v. Day, 314 U.S. 556 (1942)).

When California lawmakers established a descendible right of publicity in 1984, they did not make it clear that they intended it to be applied retroactively for devisees. CAL. CIV. CODE § 3344.1 (West 2007) (formerly CAL. CIV. CODE § 990). Therefore, § 3344.1 could not have bestowed a descendible right of publicity on Monroe's estate upon her death in 1962 that would benefit Anna Strasburg.

In fact, if there was any clarity, it weighed against retroactivity as this Court's previous decision and Greene Archives I attest. The legislative history of § 3344.1 also weighs against any conclusion that retroactivity was intended: Former MMLLC licensing agent, Roger Richman, pushed the California legislature to establish a descendible right of publicity law in 1984. CAL. CIV. CODE § 3344.1 (West 2007) (formerly CAL. CIV. CODE § 990). But even Mr. Richman did not believe that it provided a postmortem right of publicity in Marilyn Monroe. For example, by a letter dated February 27, 1990 by Roger Richman to Anna Strasberg's lawyer Irving Seidman, Mr. Richman (the author) makes clear that neither he nor Anna Strasberg nor Irving Seidman believed that there was a postmortem right of publicity in Marilyn Monroe. Serbagi Decl., Ex. E

This Court and the court in Greene Archives I reasoned that there was no descendible right of publicity available to Anna Strasburg, because § 3344.1 either permitted a personality to include such rights in his or her estate before dying or vested those rights in statutory heirs,[1] a

---

[1] The statute does create a retroactive right for statutory heirs, though, but they are not implicated in this case.

 (d) Subject to subdivisions (b) and (c), after the death of any person, the rights under this section shall belong to the following person or persons and may be exercised, on behalf of and for the benefit of all of those persons, by those persons who, in the aggregate, are entitled to more than a one-half interest in the rights:

(1) The entire interest in those rights belong to the surviving spouse of the deceased personality unless there are any surviving children or grandchildren of the deceased personality, in which case one-half of the entire interest in those rights belong to the surviving spouse.

category that does not include Anna Strasburg.  Greene Archives I, No. 2:05-cv-02200 at 17-18;

Shaw Family Archives, 486 F. Supp. 2d at 314.  Therefore, the 1984 amendments created a

posthumous right of publicity for devisees that was prospective in effect only.  Greene Archives

I, No. 2:05-cv-02200 at 29-31; Shaw Family Archives, 486 F. Supp. 2d at 319-20.  As this Court

correctly reasoned:

> Finally, MMLLC's case is doomed because both the California and
> Indiana postmortem right of publicity statutes recognize that an
> individual cannot pass by will a statutory property right that she
> did not possess at the time of her death.  California's Civ. Code §
> 3344.1(b)-(d) provides that, if no transfer of a personality's
> postmortem right of publicity has occurred before the personality's
> death, either 'by contract or by means of a trust or testamentary
> documents,' then the rights vest in certain statutorily specified
> heirs.    Since a testamentary transfer has no effect until the
> testator's death, such a transfer could not be effectuated 'before
> death' for purposes of the California statute.    Thus, any rights
> bestowed by § 3344.1 on a personality already deceased at the time
> of its enactment could not be transferred by will (which is how the
> purported property right came to MMLLC from the Administratrix
> at the time the Monroe Estate wound up).  It would vest instead in
> the persons provided for by statute. . . . Thus, even if a postmortem
> right of publicity in Marilyn Monroe's persona could have been
> created after her death, neither of the statutes that arguably
> bestowed that right allows for it to be transferred through the will
> of a 'personality' who, like Ms. Monroe, was already deceased at the
> time of the statute's enactment.  To the extent that other courts,

---

(2) The entire interest in those rights belong to the surviving children of the deceased
personality and to the surviving children of any dead child of the deceased personality unless the
deceased personality has a surviving spouse, in which case the ownership of a one-half interest in
rights is divided among the surviving children and grandchildren.
(3) If there is no surviving spouse, and no surviving children or grandchildren, then the entire
interest in those rights belong to the surviving parent or parents of the deceased personality.
(4) The rights of the deceased personality's children and grandchildren are in all cases divided
among them and exercisable in the manner provided in Section 240 of the Probate Code
according to the number of the deceased personality's children represented. The share of the
children of a dead child of a deceased personality can be exercised only by the action of a
majority of them.
(e) If any deceased personality does not transfer his or her rights under this section by contract,
or by means of a trust or testamentary document, and there are no surviving persons as described
in subdivision (d), then the rights set forth in subdivision (a) shall terminate.

> including Joplin Enterprises v. Allen, 795 F. Supp. 349 (W.D.
> Wash. 1992) and Miller v. Glenn Miller Productions, 318 F. Supp.
> 2d 923 (C.D. Cal. 2004), assumed without explicitly deciding that
> California's right of publicity statute allows for the disposition of
> the rights it recognizes through wills of personalities already
> deceased at the time of its enactment, and that such disposition is
> permissible under the applicable probate principles, this court
> respectfully disagrees."

Shaw Family Archives, 486 F. Supp. 2d at 319-20.

The fatal flaw in the Greene Archives II and III decisions is that the court justifies

changing its position on whether a descendible right of publicity existed at the time of Monroe's

death on the basis that § 3344.1 was ambiguous.  The Greene Archives court uses that ambiguity

to justify a conclusion that the 2007 law merely clarifies the 1984 law.  The Green Archives

court's reasoning actually provides the dispositive argument against constitutionality.

To the extent that the 1984 law was ambiguous, confusing, or unclear regarding the

existence of descendible property rights for devisees following Monroe's death, it could not

satisfy the requirement that it contain a clear legislative intent for the new property right to be

applied retroactively. Ambiguity fails the crucial threshold requirement for any law to be applied

retroactively in concert with the federal and state constitutions.

For this reason, the 1984 statute must be applied only prospectively to devisees, as this Court

previously ruled. It follows, therefore, that Strasburg could not hold rights of publicity that

posthumously descended from Monroe's will.  Greene Archives I, No. 2:05-cv-02200 at 36-37;

Shaw Family Archives, 486 F. Supp. 2d at 319-20.


**B.      Section 3344.1 as Enacted Would Violate Due Process Even If It Were
         Clearly Intended to Be Applied Retroactively**

If this Court were to reverse its previous ruling and conclude that the 1984 law was

clearly intended to be applied retroactively, the law would still fail constitutional analysis.  While

California courts have upheld retroactive legislation that affects procedural matters, like the statutes of limitations, See Liebig v. Superior Court, 257 Cal. Rptr. 574, 576 (Cal. Ct. App. 1989); Lent v. Doe, 47 Cal. Rptr. 2d 389, 393 (Cal. Ct. App. 1995), they have struck statutes when the law affected substantive rights and fails the required balancing test.  See In re Marriage of Buol, 705 P.2d 354, 358-62 (Cal. 1985) (holding that retroactive application of a California statute would substantially impair a substantive vested property right without due process of law), superseded by statute, Stats. 1986, ch. 49, § 1, p. 115, as recognized in In re Marriage of Heikes, 899 P.2d 1349, 1354 (Cal. 1995); In re Marriage of Siller, 231 Cal. Rptr. 757, 767 (Cal. Ct. App. 1986) ("The due process clauses of the state and federal Constitutions, in their 'substantive' aspect, provide checks on the government's power to act unfairly or oppressively."); In re Cindy B., 237 Cal. Rptr. 677, 684 (Cal. Ct. App. 1987).

Were the New York legislature to enact a similar law, the New York courts have expressed similar principles. Alliance of Am. Insurers v. Chu, 77 N.Y.2d 573, 586 (N.Y. 1991) ("Although a statute is not invalid merely because it reaches back to establish the legal significance of events occurring before its enactment, a traditional principle applied in determining the constitutionality of such legislation is that the Legislature is not free to impair vested or property rights." (quoting Matter of Hodes v. Axelrod, 70 N.Y.2d 364, 369-370 (N.Y. 1987))); see Vaughn, 521 N.Y.S.2d at 682 (1987) ("Neither the State nor Federal constitutions contain any prohibition against all retroactive laws.  However, the Legislature, while it can take away rights created by the law of the State, may not take away property which has vested by virtue of such rights." (citing Matter of McGlone, 284 N.Y. 527 (1940),  aff'd sub nom. Irving Trust Co. v. Day, 314 U.S. 556 (1942))).

Section 3344.1 expressly creates a "property right", CAL. CIV. CODE §3344.1(3)(b), not

merely a procedural mechanism like a statute of limitations:  "The rights recognized under this

section are property rights, freely transferable, in whole or in part, by contract or by means of

trust or testamentary documents . . ."  Under the weighing analysis required under the California

Constitution, if the 1984 legislature intended it to be applied retroactively, it would still be

unconstitutional.

> **1.  The California Constitution Would Render the 1984 Statute
> Unconstitutional If Applied Retroactively**

California courts apply a balancing test when a retroactive law affects substantive

property rights.  A California court explains: "Determining whether a particular retroactive

provision violates due process by impairing a vested right requires weighing several factors: 'the

significance of the state interest served by the law, the importance of the retroactive application

of the law to the effectuation of that interest, the extent of reliance upon the former law, the

legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent

to which the retroactive application of the new law would disrupt those actions.'" Plotkin v.

Sajahtera, Inc. 131 Cal. Rptr. 2d 303, 311 (Cal. Ct. App. 2003) (quoting In re Marriage of Buol,

705 P.2d 354 at 360).  This balancing test weighs against the retroactive application of the 1984

law.

The interest to be served if the 1984 amendments were applied retroactively is the

enrichment of residuary beneficiaries in circumstances where the personality did not know such

a right existed at the time of death.  This interest comes up woefully short of the interests on the

other side of the balancing equation.

First, those like the Shaw Family Archives had every reason to rely on the fact that there

was no descendible right of publicity starting in 1962 when Monroe died, through 1979 when the

California courts explicitly held that there was no posthumous right of publicity, and right up until residuary beneficiaries started lobbying state legislatures to create such a right in the 1990s. The only statement that the Monroe Estate Executor, Aaron Frosch, made concerning a right of publicity in Marilyn Monroe was in 1972, when photographer Tom Kelley asserted rights to the return of negatives of Marilyn Monroe, and Aaron Frosh testified in an affidavit that Marilyn Monroe "has no rights of privacy and her Estate has no exclusive right to her image." Serbagi Decl., Ex. F.

Second, their decades-long reliance was more than legitimate, since it was based on the fact that there was no mention of a descendible publicity right in any of the Monroe Estate probate documents and the settled law at the time of her death did not recognize such rights. The state of the law led them to take numerous actions with respect to their works that they would not have taken had such a right existed at any time between Monroe's death and the manufacturing of such rights decades later.

Third, a new retroactive descendible publicity right radically disrupts those decades-old arrangements. The Shaw Family started licensing Sam Shaw images of Marilyn Monroe in 1987. During that time, various attorneys advised the Shaw Family that the Monroe Estate did not control a right of publicity in Marilyn Monroe. By letter dated June 11, 1998, the law firm Bressler & Bressler formerly advised the Shaw Family that the Estate had no right of publicity in Marilyn Monroe. Serbagi Dec., Ex. G. The Shaw Family acted accordingly and entered into dozens of contracts based on the longstanding and settled expectation that there was no right of publicity in Marilyn Monroe. Now, more than twenty years after the Shaw Family began to license Marilyn Monroe images, the California legislature states that a right of publicity is

"deemed" to have existed when Ms. Monroe died over forty-five years ago.  This is the sort of

surprise regarding property ownership that constitutes a plain violation of due process.

Section 3344.1, as now configured, violates substantive due process rights by interfering

with settled property relationships.  At the time of Monroe's death, her common law right of

publicity expired, and the economic rights of photographers to exploit their copyrighted works of

Monroe could no longer be fettered by it.  Their intellectual property rights remained unfettered

for 45 years until § 3344.1 was amended in 2007 to introduce descendible publicity rights that

never previously existed.  City of Modesto v. Nat'l Med., Inc., 27 Cal. Rptr. 3d 215 (Cal. Ct.

App. 2005) (holding that retroactive enforcement of amendments to a previously invalid business

tax would violate due process because it would place an "unreasonable and unfair burden" on

company to combat a tax deficiency for which it could not have known it would need to retain

documentation); In re Marriage of Dandona & Araluce, 111 Cal. Rptr. 2d 390, 393  (Cal. Ct.

App. 2001) (noting that "[t]he retroactive application of a law may violate due process where it

interferes with a vested property interest," although holding that in this case, retroactive

application of statute to ex-wife requiring her to pay back child and spousal support

overpayments was not a violation of due process because "the Legislature may constitutionally

use its police power to abrogate rights in marital property that derived from . . . unfair former

law[s].") (internal quotation marks and citation omitted); In re Marriage of Fabian, 715 P.2d 253,

254 (Cal. 1986) (holding that "retroactive application of a . . . [dissolution of marriage] measure

which provides for reimbursement of separate property contributions to community assets absent

a signed writing waiving such reimbursement" was unconstitutional because it "impaired vested

property rights without due process of law" (citing Marriage of Buol, 705 P.2d 354)); Bank of

America v. Angel View Crippled Children's Found., 85 Cal. Rptr. 2d 117, 121 (Cal. Ct. App.

1999) (holding that, although no due process violation had occurred in this case, "a retroactive statute generally offends due process by impairing a contract or a vested property right with insufficient justification.").

### 2. The United States Constitution Also Forbids Retroactive Legislation that Disturbs the Property Rights at Stake in this Case

Under federal constitutional law, a legislature is restrained from enacting retroactive legislation that creates new property rights, but may enact retroactive legislation in the civil context when the law affects procedure. See Landgraf, 511 U.S. at 266-68 (retroactivity of civil legislation is constitutionally permissible); Chase Securities Corp. v. Donaldson, 325 U.S. 304, 315 (1945) (upholding the retroactive application of a civil Minnesota statute of limitations); Liebig, 257 Cal. Rptr. at 576; Lent, 47 Cal. Rptr. 2d at 393 (state legislature had the power to retroactively extend the period of limitations for civil causes of action that arose from childhood sexual abuse); Cf. Stogner v. California, 539 U.S. 607 (2003) (legislation in criminal context may not be retroactive, because it violates Ex Post Facto Clause). Section 3344.1 expressly creates new property rights.

According to the United States Supreme Court, "[t]he largest category of cases in which we have applied the presumption against statutory retroactivity has involved new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance." Landgraf, 511 U.S. at 271 (1994); Fernandez-Vargas v. Gonzales, 548 U.S. 30, 126 S.Ct. 2422, 2427-28 (2006) (stating that "[s]tatutes are disfavored as retroactive when their application 'would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed,'" and that the statute at issue did not have unconstitutional retroactive effect in this case (quoting Landgraf, 511 U.S. at 280))).

In sum, were the property rights for devisees created by the enactment of § 3344.1 clearly intended to be retroactive, it would still be unconstitutional. This issue may be avoided by this Court, however, by the language and history of the statute, which cannot satisfy the threshold requirement that there be a clear intent that it be applied retroactively. See McConnell v. Federal Election Comm'n, 540 U.S. 93, 100 (2003) (Court has an "obligation to construe a statute, if possible, in such a way as to avoid constitutional questions."); United States v. Buckland, 289 F.3d 558, 564 (9th Cir.2002) (en banc) (quoting Hooper, 155 U.S. at 657) ("The Supreme Court instructs us that 'every reasonable construction must be resorted to, in order to save a statute from unconstitutionality'").

### III.    The 2007 Amendments to § 3344.1 Are Unconstitutional Under the California and Federal Constitutions

For the same reasons that the 1984 statute are unconstitutional if applied retroactively with respect to devisees, the 2007 amendments are unconstitutional.

The plain language of the 2007 amendments indicates that they manufactured a new right out of whole cloth, not "clarifying" the earlier statute as California legislators claimed. It states that a descendible right of publicity "shall be deemed to have existed at the time of death of any deceased personality who died prior to January 1, 1985." 2007 Cal. Legis. Serv. Ch. 439 (S.B. 771) (West) ("SB 771"). The use of the term "deemed" is telling. The dictionary definition of "deem" reads as follows: "To treat (something) as if (1) it were really something else, or (2) it had qualities that it does not have." BLACK'S LAW DICTIONARY 446 (8th ed. 2004). The amendments create rights the law had never recognized before. It defies common sense to say that they are nothing more than a "clarification." Greene Archives II, No. 2:05-cv-02200, at 14; Greene Archives III, No. 2:05-cv-02200, at 6.

The <u>Greene Archives II</u> decision reaches the perverse conclusion that the Amendments do no more than "clarify" existing law and, therefore, need not be analyzed as retroactive.  The court's reasoning reaches an utterly absurd result, especially in light of the previous decisions in that case and this one. "[I]t is an elemental principle of statutory construction that an ambiguous statute must be construed to avoid absurd results." <u>Troll Co. v. Uneeda Doll Co.</u>, 483 F.3d 150, 160 (2d Cir. 2007); <u>see also</u> <u>Gattuso v. Harte-Hanks Shoppers, Inc.</u>, 169 P.3d 889, 897 (Cal. 2007); <u>Copley Press, Inc. v. Superior Court</u>, 141 P.3d 288, 305 n.22 (Cal. 2006); <u>Dodd v. United States</u>, 545 U.S. 353, 359 (2005); <u>Barnhart v. Sigmon Coal Co.</u>, 534 U.S. 438, 450 (2002); <u>Pub. Citizen v. United States Dep't of Justice</u>, 491 U.S. 440, 454 (1989).

The 1984 statute is the foundation for the 2007 amendments and, with respect to retroactivity, affords them nothing other than quicksand.  The 2007 amendments were plainly intended to piggy back on the descendible publicity right created in 1984 and to "clarify" what the legislature purportedly meant in 1984 to make the rights retroactive.  Yet, the 1984 statute was not clearly retroactive (which, after all, is why its beneficiaries lobbied for the 2007 amendments).  Since the 1984 statute could only create a prospective right for devisees due to settled constitutional limitations, the 2007 amendments are an empty shell.

The 2007 amendments standing alone, without the benefit of the 1984 statute, also violate due process.  There is no clear intent to apply a brand new property right retroactively and the surprise to settled property interests violates due process.

Absent the support of the 1984 statute, the question becomes whether the California legislature clearly intended to create a new property right out of whole cloth to be applied retroactively.  There is no such clarity, because the law assumes the 1984 statute as its foundation.  Legislators obviously did not understand that they could not do what they sought to

do – use the 1984 statute as their stepping off point to justify a retroactive descendible right of publicity.  Had they understood that they were seriously unsettling property relationships going back 45 years, they may well have spent more time debating such a statute and likely would have rejected it as unfair.  Even if the intent to create wholly new property rights and apply them retroactively were clear, the interference with settled property rights created by a 2007 statute that would affect Monroe's property holdings at her death in 1962 is so egregious its due process violation is self-evident.

The plain language of the amendments indicates that they are creating new rights and thereby surprising all relevant property holders in violation of due process.  The Shaw Family could not have predicted before 2007 that their copyrighted works would be encumbered with a newly introduced right of publicity.  They had exercised their intellectual property rights for 45 years, with the knowledge that there was no descendible right of publicity with respect to works involving Marilyn Monroe.  The 2007 amendments to § 3344.1 have introduced extraordinary instability into this market.

Section 3344.1, as amended in 2007, radically re-configures the relationships between copyright holders and estates of personalities who died when there was no descendible right of publicity.  If photographers had known at the time of the personality's death that the right of publicity would outlive the individual, they would have reached very different agreements regarding their copyrighted works.  The existence of an ongoing right of publicity would have diminished the value of the copyrighted works in the marketplace by placing a restriction on their distribution and a tax in the form of needed permission from the owner of the right of publicity.  Thus, crafting a descendible right of publicity 45 years posthumously threatens economic interests in ways that the copyright holders were never in a position to protect.

Moreover, it unjustly enriches the devisees of the personality's estate at the expense of the copyright owners.

The supposedly clarifying 2007 amendments to § 3344.1 are unconstitutional.

## **CONCLUSION**

For all the foregoing reasons, the Shaw Family respectfully requests an Order that SB 771 is unconstitutional and that the Court's May 2, 2007 Decision and Order stands, and for such other relief as the Court may deem just and proper.

Dated:  New York, New York
          February 14, 2008

                              Respectfully Submitted,

                              LAW OFFICES OF CHRISTOPHER SERBAGI

                              By:_/s/_____
                                  Christopher Serbagi, Esq.
                                  David Marcus, Esq.
                                  488 Madison Avenue, Suite 1120
                                  New York, New York  10022
                                  Tele: (212) 593-2112
                                  Fax:  (212) 308-8582

                                  Attorneys for Shaw Family Archives, Bradford
                                  Licensing, Inc., Edith Marcus and Meta Stevens

**OF COUNSEL**

Marci A. Hamilton, Esq.
36 Timber Knoll Drive
Washington Crossing, PA  18977
Tele:  (215) 353-8984
Fax:  (215) 493-1094