# EX. B, PT. 1

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA



## FAX TRANSMISSION

**DATE:**     May 14, 2007

**TO:**  Gibson Dunn & Crutcher LLP          Musick Peeler & Garrett LLP
ATTN: W. Wegner & Amnon Z. Siegel     ATTN: Peter T. Haven
fax: (213) 229-7520                   fax: (213) 624-1376

Sommer Barnard PC                     The Soni Law Firm
ATTN: Jonathan G. Polak               ATTN: S. Soni & Mark L. Sutton
fax: (317) 713-3699                   fax: (626) 683-1199

**FROM:**     Anel Huerta, Deputy Clerk to
Hon. Margaret M. Morrow, United States District Judge

**TOTAL NUMBER OF PAGES TRANSMITTED (including this page): 54**

**RE:**     *The Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc. et al.,*
No. CV 05-2200 MMM (Ex)

**COMMENT:**     The court directs defense counsel to forward this transmission to co-counsel.

**WARNING:**
*This fax is intended only for the recipient(s) named above. If you receive this fax by mistake, please telephone us at the above voice number to let us know of the error. If this fax contains privileged or otherwise legally protected information, disclosure of the information to anyone other than the named recipient(s) is not authorized, and you may not lawfully read, copy, or otherwise use this fax unless you are a named recipient or a named recipient's authorized representative.*

FILED - WESTERN DIVISION
CLERK, U.S. DISTRICT COURT

MAY 1 4 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

9
10
11

| | |
|---|---|
| THE MILTON H. GREENE ARCHIVES, INC., | CASE NO. CV 05-2200 MMM (MCx) |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| CMG WORLDWIDE, INC., an Indiana Corporation, and MARILYN MONROE, LLC, a Delaware Limited Liability Company, ANNA STRASBERG, an individual, | |
| Defendants. | |
| AND CONSOLIDATED ACTIONS | |

12
13
14
15
16
17
18
19
20
21
22

On March 25, 2005, The Milton H. Greene Archives, Inc. filed this action against CMG

Worldwide Inc., Marilyn Monroe LLC, and Anna Strasberg.   On May 3, 2005, the court

consolidated the case with two other actions  filed in this district – *Shirley De Dienes et al. v.*

*CMG Worldwide, Inc. et al.* (No. CV 05-2516)[1] and *Tom Kelley Studio, Inc. v. CMG Worldwide,*

23
24
25
26
27
28

[1]The *De Dienes* action was dismissed without prejudice on February 2, 2006, pursuant to
the parties' stipulation.

1   *Inc. et al.* (No. CV 05-2568).[2]  On December 14, 2005, the court consolidated two additional

2   actions with the pending case – *CMG Worldwide, Inc., et al. v. Tom Kelley Studios* (No. CV 05-

3   5973) and *CMG Worldwide, Inc., et al. v. The Milton H. Green Archives, Inc.* (No. CV 05-

4   7627).[3]  These actions were originally filed by CMG Worldwide, Inc. and Marilyn Monroe, LLC

5   (the "CMG Parties" or "plaintiffs") in the United States District Court for the Southern District

6   of Indiana, and were transferred to this district pursuant to 28 U.S.C. § 1404(a) on August 9,

7   2005.[4]  All of the actions seek to have the court resolve competing claims to ownership of the

8   legal right to use, license, and distribute certain photographs of Marilyn Monroe.

9        In their complaints against the Milton H. Green Archives, Inc. and Tom Kelley Studios,

10  Inc. (the "MHG Parties" or "defendants"), the CMG Parties assert that they own the "Right of

11  Publicity and Privacy in and to the Marilyn Monroe name, image, and persona" that was created

12  by "the Indiana Right of Publicity Act, I.C. § 32-36-1-1 et seq., and other applicable right of

13  publicity laws."  The CMG Parties contend that defendants have infringed this right by using

14  Marilyn Monroe's name, image and likeness "in connection with the sale, solicitation, promotion,

15  and advertising of products, merchandise, goods and services" without their consent or

16  authorization.[5]

17       On October 6, 2006, the MHG Parties filed a motion for summary judgment.  They argue,

18  *inter alia*, that plaintiffs' right of publicity claims are preempted by the Copyright Act, 28 U.S.C.

19  §§ 101-1332, and that, even if the claims are not preempted, plaintiffs have failed to adduce any

20

21

---

22       [2]Tom Kelley Studio, Inc. sued the same defendants as did The Milton H. Greene Archive,

23  Inc. – CMG Worldwide Inc., Marilyn Monroe LLC, and Anna Strasberg.

24       [3]Anna Strasberg was not a party to the Indiana actions.

25       [4]On February 6, 2006, the court issued a scheduling order, which denominated the CMG

26  Parties plaintiffs and the MHG Parties defendants for purposes of the consolidated actions.  The

27  court based this order on the fact that the CMG Parties' Indiana action was the first filed action.

28       [5]Plaintiffs' First Amended Complaint against Milton H. Greene Archives, Inc., ¶¶ 7, 24-
    26; Plaintiffs' First Amended Complaint against Tom Kelley Studios, Inc., ¶¶ 7, 28-30.

1  evidence that they have standing to assert claims based on Marilyn Monroe's right of publicity.[6]
2  In essence, defendants argue that, even if a posthumous right of publicity in Monroe's name,
3  image and likeness exists, plaintiffs cannot show that they are presently in possession of that
4  right.[7]

6  ## I. FACTUAL BACKGROUND

7  The parties expend considerable effort attempting to create triable issues of fact by
8  objecting to nearly every piece of evidence adduced by their opponent in support of or in
9  opposition to the motion for summary judgment. After reviewing the applicable law, however,
10 the court concludes that resolution of this motion turns on a limited number of facts that are
11 undisputed. Before discussing those undisputed facts, the court addresses defendants' "request
12 to strike," which seeks to have the court strike the bulk of the evidence adduced by plaintiffs in
13 opposition to the summary judgment motion.

14 **A.    The Request To Strike**

15 Defendants contend that virtually all of the evidence plaintiffs submitted in support of their
16 opposition should be excluded because it was not adequately identified in plaintiffs' initial
17 disclosures, and because it was improperly withheld from defendants during discovery.[8] The
18 request is denied.

19 Plaintiffs' initial disclosures adequately identified by "category" the documents they submit

---

[6]Defendants' Memorandum of Points and Authorities in Support of Their Motion for Summary Judgment ("Defs.' Mem.") at 32-34.

[7]Defendants also argue that (1) Marilyn Monroe was domiciled in New York at the time of her death, such that no right of publicity could survive her passing; (2) even if Marilyn Monroe was not a New York domiciliary at the time of her death, plaintiffs are collaterally and judicially estopped from asserting otherwise; (3) Indiana's right of publicity statute does not apply to Marilyn Monroe; and (4) plaintiffs' claims are barred by laches. Defendants' motion also challenged plaintiffs' copyright infringement claims (see *id.* at 43-47); those claims have since been dismissed without prejudice pursuant to the parties' stipulation.

[8]See Objections to and Request To Strike Evidence Submitted in Plaintiffs' Opposition to Defendants' Motion for Summary Judgment.

3

1   in opposition to defendants' motion for summary judgment. Plaintiffs stated, for example, that
2   they would rely on documents that established Marilyn Monroe's domicile at the time of her death
3   (as did defendants), and on documents supporting their claim that defendants were aware of and
4   recognized plaintiffs' asserted rights in Marilyn Monroe's right of publicity. This is all that is
5   required by Rule 26(a)(1)(B) of the Federal Rules of Civil Procedure. See *DE Technologies, Inc.*
6   *v. Dell Inc.*, 238 F.R.D. 561, 566 (W.D. Va. 2006) ("Dell correctly argues that the initial
7   disclosure required by Rule 26 does not require the production of the documents upon which a
8   party intends to rely. Instead, in lieu of production, Rule 26 allows a party to provide 'a
9   description by category and location of, all documents . . . that are in the possession, custody,
10   or control of the party and that the disclosing party may use to support its claims or defenses,
11   unless solely for impeachment"); *Sizemore v. Wal-Mart Stores, Inc.*, No. Civ.A. H-05-1589,
12   2006 WL 1698291, *3 (S.D. Tex. June 16, 2006) ("Plaintiff states in her Response that Wal-Mart
13   identified relevant documents in its Initial Disclosures but did not produce the documents. Rule
14   26(a) of the Federal Rules of Civil Procedure, however, requires only that the documents be
15   described by category and location. . ."); *CP Solutions PTE, Ltd. v. General Elec. Co.*, No.
16   3:04cv2150(JBA)(WIG), 2006 WL 1272615, *1 (D. Conn. Feb. 6, 2006) ("The disclosing party,
17   however, does not have to produce actual documents. It can comply fully with its initial
18   disclosure obligation by providing a description by category and location of all documents, data
19   compilations, and tangible things it expects to use during the proceeding"). Additionally,
20   plaintiffs represent that many of the documents they proffer in support of their opposition to the
21   pending motion were not in their possession, custody or control at the time they made initial
22   disclosures. See FED.R.CIV.PROC. 26(a)(1)(B) (requiring disclosure of "all documents,
23   electronically stored information, and tangible things that are in the possession, custody, or
24   control of the party and that the disclosing party may use to support its claims or defenses, unless
25   solely for impeachment").

26       Defendants' contention that plaintiffs abused the discovery process by "producing"
27   documents for the first time in opposition to defendants' motion is also unavailing. As plaintiffs
28   note, neither party produced *any* documents before defendants' motion for summary judgment was

1  filed.[9] Indeed, defendants concede that their motion – which was filed less than two months after
2  the parties first served written discovery on one another – was "a 'show me' motion . . . directed
3  at Plaintiffs' claims and their lack of basis."[10] If this was defendants' intent, plaintiffs' opposition
4  provided exactly what defendants sought – information regarding the "basis" of plaintiffs' claims.

5      Defendants, moreover, did not move to compel further responses to their discovery
6  requests before filing the motion, a recognized first step in enforcing an opponent's discovery
7  obligations. See FED.R.CIV.PROC. 37(a). Rather, they sought an order striking all of plaintiffs'
8  evidence. Such an order may be entered under Rule 37(d) where a party fails to serve a written
9  response to a request to produce or written answers or objections to interrogatories. See
10 FED.R.CIV.PROC. 37(d); see also 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus,
11 FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 2291, at 720 (1994) ("If [a party] serves a
12 response, but fails to say that inspection will be permitted as requested or fails to permit the
13 inspection itself a motion under Rule 37(a) to compel inspection is available, but Rule 37(d) is
14 inapplicable"); id. ("The provisions of Rule 37(d) with regard to interrogatories do not apply 'for
15 anything less than a serious or total failure to respond to interrogatories'"). There is no evidence
16 that plaintiffs failed to serve a written response to defendants' document production request or
17 written answers and objections to interrogatories; rather, it appears that defendants did not believe
18 the responses they received were adequate or complete. The proper forum for defendants'
19 discovery dispute with plaintiffs is therefore a hearing on a motion to compel before the
20 magistrate judge. Finally, to the extent Rule 37(d) is applicable, the court finds, under the
21 circumstances of this case, that it would not be "just" to strike all of plaintiffs' evidence. See
22 FED.R.CIV.PROC. 37(d) (stating that the court "may make such orders in regard to the failure as
23 are just").

---

26  [9]See Plaintiffs' Opposition to Defendants' Objections to and Request to Strike Evidence in Plaintiffs' Opposition to Defendants' Motion for Summary Judgment at 4.

28  [10]Defendants' Reply in Support of Objections to Strike Evidence Submitted in Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, at 6 n. 5, 10 n. 7.

1      **B.      Undisputed Facts in the Summary Judgment Record**

2          Milton H. Greene and Tom Kelley, Sr. were professional photographers and

3  contemporaries of Marilyn Monroe.[11]   Defendants purport to own copyrights in various

4  photographs of Marilyn Monroe that Greene and Kelley took during her lifetime.[12]   Plaintiffs

5  allege that defendants are using the photographs "on or in connection with the sale, solicitation,

6  promotion, and advertising of products, merchandise, goods and services" without their

7  authorization or consent,[13] and thus that they are violating a right of publicity in Marilyn

8  Monroe's name, image, and likeness that purportedly passed to plaintiffs through her will.[14]

9          Marilyn Monroe died testate on August 5, 1962.[15]  Her will, which did not expressly

10  bequeath a right of publicity, contained the following residuary clause:

11          SIXTH: All the rest, residue and remainder of my estate, both real and personal,

12          or whatsoever nature and wheresoever situate, of which I shall die seized or

13          possessed or to which I shall be in any way entitled, or over which I shall possess

14          any power of appointment by Will at the time of my death, including any lapsed

15          legacies, I give, devise and bequeath as follows:

16

17  _____

18      [11]Defendants' Statement of Uncontroverted Facts and Conclusions of Law Submitted in
Support of Their Motion for Summary Judgment ("Defs.' Facts"), ¶ 1; Plaintiffs' Statement of
19  Genuine Issues of Material Fact ["MF"] and Additional Material Facts ["AMF"] in Response to
Defendants' Statement of Uncontroverted Facts in Support of Defendants' Motion for Summary
20  Judgment ("Pls.' Facts"), MF ¶ 1.

21      [12]Defs.' Facts, ¶¶ 4, 8.  Plaintiffs dispute this fact. (See Pls.' Facts, MF ¶¶ 4, 8.)
22  Whether defendants own copyrights in photographs of Marilyn Monroe is immaterial to court's
resolution of the motion, however.

23
      [13]Plaintiffs' First Amended Complaint Against Milton H. Greene Archives, Inc., ¶¶ 7, 24-
24  26; Plaintiffs' First Amended Complaint Against Tom Kelly Studios, Inc., ¶¶ 7, 28-30.

25      [14]Pls.' Facts, AMF ¶¶ 20-22; Defendants' Response to Plaintiffs' Statement of Genuine
26  Issues of Material Fact and Additional Material Facts Re Defendant's Motion for Summary
Judgment ("Defs.' Reply Facts"), AMF ¶¶ 20-22 (disputing this fact only to the extent it states
27  the legal conclusion that Marilyn Monroe's right of publicity passed through her will).

28      [15]Pls.' Facts, AMF ¶ 10; Defs.' Reply Facts, AMF ¶ 10.

1    (a) To MAY REIS the sum of $40,000.00 or 25% of the total remainder of my

2    estate, whichever shall be the lesser.

3    (b) To DR. MARIANNE KRIS 25% of the balance thereof, to be used by her as

4    set forty in ARTICLE FIFTH (d) of this my Last Will and Testament.

5    (c) To LEE STRASBERG the entire remaining balance.[16]

6    The will was subject to primary probate in New York.[17]

7

8    ## II. DISCUSSION

9    ### A.    Standard Governing Motions for Summary Judgment

10    A motion for summary judgment must be granted when "the pleadings, depositions,

11    answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

12    there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

13    as a matter of law." FED.R.CIV.PROC. 56(c).  A party seeking summary judgment bears the

14    initial burden of informing the court of the basis for its motion and identifying those portions of

15    the pleadings and discovery responses that demonstrate the absence of a genuine issue of material

16    fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have

17    the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no

18    reasonable trier of fact could find other than in its favor. On an issue as to which the nonmoving

19    party will have the burden of proof, however, the movant can prevail merely by pointing out that

20    there is an absence of evidence to support the nonmoving party's case. See *id.*  If the moving

21    party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise

22    provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v.*

23    *Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); FED.R.CIV.PROC. 56(e).

24    In viewing evidence at the summary judgment stage, the court does not make credibility

25    ─────────────────────────

26    [16]Declaration of Greg T. Hill Submitted in Support of Defendants' Motions for Summary
Judgment, Exhibit 13; Declaration of Anna Strasberg in Support of Plaintiffs' Opposition to
27    Defendants' Motion for Summary Judgment, Exhibit C.

28    [17]Defs.' Facts, ¶¶ 16, 18-19; Pls.' Facts, AMF ¶ 26.

1   determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most

2   favorable to the nonmoving party. See *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,*

3   809 F.2d 626, 630-31 (9th Cir. 1987). The evidence presented by the parties must be admissible.

4   FED.R.CIV.PROC. 56(e). Conclusory, speculative testimony in affidavits and moving papers is

5   insufficient to raise genuine issues of fact and defeat summary judgment. See *Falls Riverway*

6   *Realty, Inc. v. Niagara Falls,* 754 F.2d 49, 56 (2d Cir. 1985); *Thornhill Pub'g Co., Inc. v. GTE*

7   *Corp.,* 594 F.2d 730, 738 (9th Cir. 1979).

8       **B.    Whether Plaintiffs' Right of Publicity Claims Are Preempted by the Copyright**

9            **Act**

10      As a threshold matter, the court must determine whether plaintiffs' right of publicity claims

11  are preempted by the Copyright Act. State law claims are preempted by the Copyright Act only

12  if (1) they concern a work that is within the subject matter of copyright and (2) the state law rights

13  asserted are "equivalent" to rights protected by copyright law. See 17 U.S.C. § 301(a); *Laws v.*

14  *Sony Music Entertainment,* 448 F.3d 1134, 1138-39 (9th Cir. 2006); *Downing v. Abercrombie*

15  *& Fitch,* 265 F.3d 994, 1003 (9th Cir. 2001); see also *Toney v. L'Oreal USA, Inc.,* 406 F.3d 905,

16  909 (7th Cir. 2005). State law claims are not "equivalent" if they contain "an element which

17  changes the nature of the action 'so that it is qualitatively different from a copyright infringement

18  claim.'" *Summit Machine Tool Manufacturing Corp. v. Victor CNC Systems, Inc.,* 7 F.3d 1434,

19  1439-40 (9th Cir. 1993); see also *Laws,* 448 F.3d at 1144 (noting that "[t]he mere presence of

20  an additional element . . . is not enough to qualitatively distinguish [a plaintiff's] right of publicity

21  claim from a claim in copyright"; instead, that "extra element must transform the [underlying]

22  nature of the action").

23      The parties dispute which of two Ninth Circuit decisions – *Laws* or *Downing* – provides

24  the standard for evaluating preemption in this case. The court concludes that *Downing* is the

25  applicable precedent. There, the Ninth Circuit considered whether a state law right of publicity

26  claim based on use of a copyrighted photograph was preempted by the Copyright Act. Retailer

27  Abercrombie & Fitch used a copyrighted photograph of plaintiffs, who were surfers, in a surf-

28  themed sales catalogue promoting its clothing lines. Abercrombie published the photograph

8

1    without obtaining the surfers' consent, having purchased it earlier from a professional surf

2    photographer. *Downing*, 265 F.3d at 1000. The catalogue identified the surfers by name, and

3    offered T-shirts identical to those they wore in the photograph for sale. *Id.* The Ninth Circuit

4    held that the surfers' right to control the use of their name, image, and likeness, which was the

5    basis for their claim, was not the "subject matter" of copyright. It stated:

> 6    "The photograph itself, as a pictorial work of authorship, is subject matter
>
> 7    protected by the Copyright Act. . . . However, it is not the publication of the
>
> 8    photograph itself, as a creative work of authorship, that is the basis for [the
>
> 9    surfers'] claims, but rather, it is the use of [their] likenesses and their names
>
> 10    pictured in the published photograph. . . . A person's name or likeness is not a
>
> 11    work of authorship within the meaning of 17 U.S.C. § 102. This is true
>
> 12    notwithstanding the fact that [the surfers'] names and likeness are embodied in a
>
> 13    copyrightable photograph." *Id.* at 1003-04 (citation omitted).

14    In reaching this conclusion, the Ninth Circuit relied, *inter alia*, on Professor McCarthy's treatise

15    on the right of publicity and privacy, which states:

> 16    "The 'subject matter' of a Right of Publicity claim is not a particular picture or
>
> 17    photograph of plaintiff. Rather, what is protected by the Right of Publicity is the
>
> 18    very identity or persona of the plaintiff as a human being. . . . While copyright in
>
> 19    a given photograph may be owned by the person depicted in it, the exact image in
>
> 20    that photograph is not the underlying 'right' asserted in a Right of Publicity case.
>
> 21    To argue that the photograph is identical with the person is to confuse illusion and
>
> 22    illustration with reality. Thus, assertion of infringement of the Right of Publicity
>
> 23    because of defendant's unpermitted commercial use of a picture of plaintiff is not
>
> 24    assertion of infringement of copyrightable 'subject matter' in one photograph of
>
> 25    plaintiff." J. Thomas McCarthy, RIGHTS OF PUBLICITY AND PRIVACY § 11.13[C],
>
> 26    at 11-72-73 (1997) (quoted in *Downing*, 265 F.3d at 1004).

27    The *Downing* court also concluded that the second prerequisite to copyright preemption was not

28    met, because "the subject matter of the [the surfers'] . . . right of publicity claims is their names

9

1    and likenesses, which are not copyrightable, [and therefore] the claims are not equivalent to the

2    exclusive rights contained in § 106." *Id.* at 1005.

3         *Downing* compels the conclusion that plaintiffs' right of publicity claims are not preempted

4    by the Copyright Act. Plaintiffs allege that defendants have exploited Marilyn Monroe's name,

5    image, and likeness – as embodied in photographs defendants purport to have copyrighted – "on

6    or in connection with the sale, solicitation, promotion, and advertising of products, merchandise,

7    goods and services" without their authorization or consent.[18]   Plaintiffs do not challenge

8    defendants' right to publish or otherwise exploit their photographs as "creative work[s] of

9    authorship" protected by copyright. Rather, they contend that defendants are commercially

10   exploiting Marilyn Monroe's name, image and likeness by licensing photographs containing her

11   image to third-party vendors for use in promoting various consumer products. The *Downing* court

12   held that claims based on precisely this kind of use of copyrighted photographs were not

13   preempted by federal law.

14        Defendants dispute this, and contend that *Laws*, rather than *Downing*, controls. They

15   assert that *Laws* held that right of publicity claims are preempted if they are based solely on

16   commercial exploitation of copyrighted works.[19]   They also argue that the *Laws* court

17   distinguished *Downing* on the basis that Abercrombie did not simply exploit the copyrighted

18   photographs commercially, but suggested that plaintiffs endorsed its products by using their names

19

20
_____

21        [18]Plaintiffs' First Amended Complaint Against Milton H. Greene Archives, Inc., ¶¶ 7, 24-
     26; Plaintiffs' First Amended Complaint Against Tom Kelly Studios, Inc., ¶¶ 7, 28-30. Plaintiffs
22   contend that defendants' pleadings in the consolidated cases constitute judicial admissions that they
     have used purportedly copyrighted photographs to exploit Marilyn Monroe's name, image, and
23   likeness commercially. (See Plaintiffs' Opposition to Defendants' Motion for Summary Judgment
24   ("Pls.' Opp.") at 39 (citing Milton H. Greene Archives, Inc. Complaint Against CMG Worldwide
     Inc. et al., ¶ 18 ("[MHG] photographs have been used for, among other things, advertising,
25   magazines, calendars, and on wine bottles. Such licenses can run as much as $25,000 for a single
     use of one Marilyn Monroe photograph"); Tom Kelley Studio, Inc. Complaint Against CMG
26   Worldwide, Inc. et al., ¶¶ 16, 30 (alleging that Kelley Studios "works to . . . commercialize [its]
27   photographs" and to "commercially exploit the images of Marilyn Monroe").)

28        [19]Defendants' Reply in Support of Motion for Summary Judgment ("Defs.' Reply") at 22.

1  and reproducing the T-shirts they wore.[20] Defendants argue that, in contrast to Abercrombie, they

2  have done nothing more than license their photographs for commercial purposes. They assert

3  there is no evidence that they have licensed Marilyn Monroe's name, suggested her endorsement

4  of a particular product, or allowed their photographs to be used on products that look like those

5  being used by Monroe in the photographs.[21]

6       Defendants' reliance on *Laws* is unavailing. There, the Ninth Circuit held that, when a

7  copyrighted sound recording is produced, the singer's interest in her "voice" and the copyright

8  holder's interest in the recording as "an original work[ ] of [creative] authorship" merge, so that

9  the Copyright Act preempts claims based on licensing of the sound recording for commercial

10 purposes, e.g., in advertising campaigns. *Laws*, 448 F.3d at 1139-41 ("Although California law

11 recognizes an assertable interest in the publicity associated with one's voice, we think it is clear

12 that federal copyright law preempts a claim alleging misappropriation of one's voice when the

13 entirety of the allegedly misappropriated vocal performance is contained within a copyrighted

14 medium"). In reaching this result, the *Laws* court recognized that use of copyrighted photographs

15 in advertising implicates a separate set of interests, and thus that such uses "are distinguishable"

16 from the commercial licensing of a sound recording. *Id.* at 1141. In this regard, it acknowledged

17 *Downing*'s holding that "'a person's name or likeness is not a work of authorship within the

18 meaning of [the Copyright Act]'" *id.* (quoting *Downing*, 265 F.3d at 1004), and implicitly

19 recognized that an individual's likeness does not merge with a photograph that is a "work of

20 [creative] authorship" in the same manner that an artist's voice merges with a copyrighted sound

21 recording. See also 1 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT

22 § 1.01[B][1][c], at 1-28 (2006) ("[N]ame and likeness do not become a work of authorship simply

23 because they are embodied in a copyrightable work").[22] In short, the *Laws* court distinguished

24

---

25  [20]*Id.*

26  [21]*Id.* at 22-23.

27

28  [22]In contrast, the *Laws* court noted that, like a person's "voice" captured on a sound
   recording during a vocal performance, a person's "likeness" captured on film during a dramatic

11

1    a photographer's creative work, which is separate from the "likeness" of the person whose image
2    is captured in the photograph, from a singer's creative work, which merges with the "voice" she
3    uses to record. Given this merger, the court stated, the singer's assertion of a right of publicity
4    in her voice necessarily "challeng[ed] control of the artistic work itself," and therefore concerned
5    the subject matter of copyright. *Laws*, 448 F.3d at 1142; *see also Toney*, 406 F.3d at 910
6    ("Toney's identity is not fixed in a tangible medium of expression. There is no 'work of
7    authorship' at issue in Toney's right of publicity claim. A person's likeness – her persona – is
8    not authored and it is not fixed. The fact that an image of the person might be fixed in a
9    copyrightable photograph does not change this," quoted in *Laws*, 448 F.3d at 1142).[23]

10          Consequently, the court concludes that *Downing*, not *Laws*, controls, and that plaintiffs'
11    right of publicity claims are not preempted by the Copyright Act.[24] Unlike a voice captured in
12    a sound recording, Marilyn Monroe's "likeness" did not merge with defendants' photographs so
13    completely that she (or her successors-in-interest) cannot assert an interest in her persona separate
14    and distinct from defendants' interest in their photographs as creative works of art.

15

16    _____

17    performance merges with the creative work of authorship itself. As a result, it suggested, the
18    Copyright Act *would* preempt a right of publicity claim based on a copyright holder's screening
      of a motion picture that embodied an actor's "name, pictures, and likeness without [his] consent."
19    *Laws*, 448 F.3d at 1142-43 (discussing *Fleet v. CBS, Inc.*, 50 Cal.App.4th 1911 (1996)); *see also*
      *Downing*, 265 F.3d at 1005 n. 4 ("In *Fleet*, the plaintiffs were actors in a copyrighted film. The
20    claims of the plaintiffs were based on their dramatic performance in a film CBS sought to
      distribute. . . . This is clearly distinguishable from this case where the Appellants' claim is based
21    on the use of their names and likenesses, which are not copyrightable").

22    [23]Defendants assert that the *Laws* court questioned *Toney*'s reasoning. (Defs.' Reply at 23
23    n. 28.) The court disagrees. The *Laws* court simply found that *Toney* – which involved
      commercial exploitation of a copyrighted photograph rather than commercial exploitation of a
24    copyrighted sound recording – was inapposite in resolving the preemption issue before it.

25    [24]One other court that has considered precisely this issue is in accord. *See Bonner v. Fuji*
26    *Photo Film*, No. C 06-4274 CRB, 2006 WL 3327894, *2 (N.D. Cal. Nov. 13, 2006) (stating,
      in a case that involved the alleged misappropriation of plaintiff's photograph for use on the
27    packaging of disposable cameras, that "[d]efendant's effort to force this case under the umbrella
      of *Laws* is utterly unpersuasive. . . . The Court concludes that this case is squarely controlled by
28    the surfers' case and not the singer's").

                                                    12