# EXHIBIT
# 26, PART E

Estate of Marilyn Monroe: LASC No. 458,935

## GAINS ON SALES

Sale of Helena Drive property, real and personal property sold as a unit:

| | | |
|---|---|---|
| Gross sale price as a unit | | $ 92,150.00 |
| Appraised value: real property | $ 87,000.00 | |
| personal property | 500.00 | 87,500.00 |
| Gain on Sale | | $ 4,650.00 |

Sale price, additional personal property:

| | | |
|---|---|---|
| Sale price | $ 1,558.00 | |
| Appraised value | 1,089.00 | |
| Gain on Sale | | 469.00 |

| | |
|---|---|
| TOTAL GAINS ON SALES | $ 5,119.00 |

SCHEDULE C

Estate of Marilyn Monroe, LASC No. 458,935

## ASSETS ON HAND AT MARCH 15, 1976

| | |
|---|---|
| Clothing and personal effects | |
| Balance of furniture and furnishings | 597.00 |
| Gibraltar Savings and Loan savings account | 4,682.23 |
| Brentwood Savings and Loan savings account | 20,081.16 |
| Cash on hand | 25.50 |
| Total Assets on Hand | $ 26,375.89 |

SCHEDULE D

SFAL 0181



Estate of Marilyn Monroe; LASC No. 458,935

ESTATE ACCOUNTED FOR

| | |
|---|---|
| Inventory and Appraisement | $ 92,781.00 |
| Income receipts (interest on savings accounts) | 19,057.39 |
| [illegible] | 5,119.00 |
| TOTAL ESTATE ACCOUNTED FOR | $116,957.39 |

Computation of Statutory Fees

2% x 116,957.39 = 2,339.15

plus 630.00

$ 2,969.15

EXHIBIT II

SFA1 0182

Estate of Marilyn Monroe: LASC No. 458,935

STATEMENTS RE ADDITIONAL FEES

In order to assist the Court in [illegible] detail and urgency of the services rendered by the [illegible] executor, the special administratrix and the attorneys for the ancillary executor, in connection with the requests for fees set forth below, petitioner points out the following:

Decedent was a world-famous motion picture actress. She died suddenly and unexpectedly. At the time of her death, she was in the process of remodeling a house at 12305 5th Helena Drive, Los Angeles, California, which she had recently acquired. There was a substantial trust deed encumbrance on the property. There was no cash available in California. There was not sufficient cash available at her domicile in New York to meet all of her obligations. There were 35 creditors' claims filed in the ancillary administration in California alone. There were mobs of curiosity seekers who came to the house, many of whom sought to buy or remove curios and memorabilia. There was no family member who could supply any assistance in the supervision of the decedent's affairs or in taking over any of her responsibilities.

It is against this background that the requests for fees in this estate must be viewed.

EXHIBIT III



SFA1 0183



Estate of Marilyn Monroe: LASC No. 458,935

## A. EXTRAORDINARY SERVICES OF ANCILLARY EXECUTOR

The ancillary executor advised and consulted with respect to all the matters set forth in the statement regarding extraordinary attorneys' fees set forth [illegible]. [illegible] connection, further, said attorneys consulted with the ancillary executor with respect to all decisions throughout the entire period of almost fourteen years that this estate has been in the process of administration. The ancillary executor made four trips to California during said period of time to supervise the handling of decedent's affairs in this state.

Without limiting the generality of the foregoing, the ancillary executor's extraordinary services with respect [illegible] administration specifically included: (1) advice, consultation and decision-making with respect to the sale of the real and personal property, as set forth above in the Petition to which this Exhibit is attached; (2) assistance in determination of all matters relative to the California Inheritance Tax Affidavit, including location of witnesses and procuring their affidavits as to decedent's intention with regard to her residence in California; and (3) consultation, review, fact-finding and decision-making with respect to the claims and litigation in respect of the California fiduciary income tax

///

EXHIBIT III



Estate of Marilyn Monroe: LASC No. 458,935

liability of the estate more particularly described in Section C of this Exhibit III.

Petitioner estimates that his said extraordinary services, over the period of almost fourteen years, [illegible] more than one hundred forty (140) hours.

EXHIBIT III

(3)

SFA1 0485




Estate of Marilyn Monroe: LASC No. 458,935

C. EXTRAORDINARY SERVICES OF GANG, TYRE & BROWN, ATTORNEYS FOR ANCILLARY EXECUTOR

1. Extraordinary services in [illegible] the preservation of assets:

Upon the death of decedent, petitioner's attorneys immediately examined decedent's property; cooperated in supplying information in connection with the coroner's [illegible] handled conferences with the press and media [illegible] to the decedent and her affairs; negotiated and supervised the disposition of decedent's pet dog; arranged for continuing housekeeping services during the period immediately following decedent's death and for secretarial services to be [illegible] replying to the thousands of letters (literally) received following decedent's death; arranged to have private [illegible] guard decedent's home day and night; arranged for the bank which held the encumbrance on the property to advance funds and take no steps to declare a default until such time as moneys could be provided through a sale of the property; and arranged for the Special Administratrix to be appointed so that any loss or waste to the estate could be minimized.

Petitioner's attorneys allege that they expended more than 25 hours in connection with the above services, all of which were of an emergency nature.

...

...

EXHIBIT III



SFA1 0786

Estate of Marilyn Monroe: LASC No. 458,935

2. Sale of Real Property:

After the appointment of the ancillary executor, petitioner's said attorneys supervised the sale [illegible] home and some of the personal property [illegible] involved the preparation and publication of a Notice [illegible] of Real and Personal Property As a Unit for Private Sale; preparation of a bid form with respect to the property, copies of which were circulated among a number of real estate brokerage houses; conferences with Mrs. Melson, who was [illegible] showing the premises to prospective purchasers; negotiations with the ultimate bidder to obtain the best possible purchase price; preparation of Return of Sale of Real and Personal Property as a Unit; attendance at the court hearing thereon; preparation of the Order Confirming Sale and the Executor's Deed, and following through with respect to all of the details of the escrow until the transaction was finally complete.

Petitioner's attorneys estimate that they expended not less than twenty (20) hours in connection with the foregoing.

3. Disposition of furniture and furnishings

Since there were no special provisions made for the furniture and furnishings of the decedent and since it was believed that many of them would have a substantial value, either intrinsically or because of association with the decedent, it was necessary to specifically inventory and

...

...

EXHIBIT III



SFA1 0187