# EXHIBIT 47, PART B

JohnAaron Murphy Jones  4641
Attorney at Law
1170 N. King Street
Honolulu, Hawaii  96817
Telephone: 808  926-9078

Attorney for Plaintiff
Nancy Miracle, aka
Nancy Maniscalco Green

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| NANCY MIRACLE,<br>aka, NANCY MANISCALCO GREEN,<br><br>        Plaintiff,<br><br>    vs.<br><br>ANNA STRASBERG, as Administratrix,<br>c.t.a. of the Last Will and<br>Testament of MARILYN MONROE,<br><br>        Defendant. | CIVIL  NO. 92 00605 ACK<br>(Non Motor Vehicle Tort)<br><br>DEMAND FOR JURY TRIAL |

DEMAND FOR JURY TRIAL

TO:  ANNA STRASBERG, as Administratrix,
     c.t.a. of the Last Will and Testament
     of MARILYN MONROE
     600 Third Avenue
     New York, New York  10016

    Please Take Notice that plaintiff demands trial by jury in this action.

    Dated: Honolulu, Hawaii,  11/27/92

                                    _____
                                    JohnAaron Murphy Jones
                                    Attorney for Plaintiff

# United States District Court

FOR THE _____ DISTRICT OF _____ HAWAII

NANCY GREENE, aka NANCY
MANISCALCO GREEN
    Plaintiff,
       v.
ANNA STRASBERG, as Administratrix
c.t.a. of the Last Will and
Testament of MARILYN MONROE
    Defendant.

**SUMMONS IN A CIVIL ACTION**

CASE NUMBER: Civil No. 92-00605
(Non-Motor Vehicle Tort)

DEMAND FOR JURY TRIAL

TO: (Name and Address of Defendant)

ANNA STRASBERG, as Administratrix
c.t.a. of the Last Will and
Testament of MARILYN MONROE
C/O Irving P. Seidman
    Attorneys for the Estate of Marilyn Monroe
    600 Third Avenue
    New York, New York  10016

YOU ARE HEREBY SUMMONED and required to file with the Clerk of this Court and serve upon

PLAINTIFF'S ATTORNEY (name and address)

JohnAaron Murphy Jones
Attorney at Law
1170 North King Street
Honolulu, Hawaii  96717
808  926-9078

an answer to the complaint which is herewith served upon you, within ___20___ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

WALTER A. Y. H. CHINN
CLERK

/s/ Toni Fujinaga
BY DEPUTY CLERK

DATE: NOV 27 1992

EXH B

At Chambers of Surrogate's Court held in and for the County of New York, at the Surrogate's Court, 31 Chambers Street, New York, New York, on the 6th day of ~~May,~~ 1990.

**PRESENT:**

    HON. MARIE M. LAMBERT

                    Surrogate.

-----------------------------------------------------------x

Proceeding by Anna Strasberg, as Administratrix, c.t.a. of the Last Will and Testament of

        MARILYN MONROE,

              Deceased,

for an Order for Advice and Direction as to the Propriety, Price, Manner and Time of Entering into a Merchandising Licensing Agreement Using the Name, Trademarked Signature, and Likeness of Marilyn Monroe, Deceased,

              Petitioner

    THE FRANKLIN MINT.

-----------------------------------------------------------x

File No. P2781/62

ORDER APPROVING MERCHANDISING AGREEMENT

On reading and filing the petition of Anna Strasberg as Administratrix, c.t.a. of the Last Will and Testament of Marilyn Monroe wherein she seeks advice and direction concerning a licensing agreement with The Franklin Mint dated November 2, 1989 and upon all papers and proceedings herein; and the said merchandising licensing agreement having been approved on the record on May 15, 1990 it is

EXHIBIT "C"

29 Columbia Law Review 748

# PRETERMITTED HEIRS: AN ANALYSIS OF STATUTES[1]

After the death of a testator it is discovered that his child is unprovided for in the will and there is no intestate property. Confronted with this disinheritance, the common law is powerless to act. If the child was born prior to the will he has been subjected to the unquestioned power to disinherit; if born later, to the same power on the theory that birth of issue alone is not such an event as to raise a presumption of intent to revoke, nor does it constitute a "tacit condition" and revoke regardless of intent.[2]

An effort of a single legislature to attach an effect to a specific group of facts is not necessarily evidence of a real need, but a series of such efforts from coast to coast is a clear indication of a far-flung attitude. Undoubtedly, as in England, Americans might have rested content with the judicial recognition of the unqualified power to disinherit; but actually, we have not.

Given this condition of the common law, an attitude of disapproval might plausibly be based on one of two grounds; (1) such disinheritance violates a social duty to provide for the family, in particular, for issue, or (2) it violates the presumption that a parent will wish to

## PRETERMITTED HEIRS

conform to such a duty. The first looks to the preservation and support of those for whose existence in this world the testator is responsible. The second insists on his protecting them regardless of his expressed desire. The second looks to the preservation of the property of his property as he wishes. Although power is initially qualified by a charitable presumption that will be removed to protect those in the last analysis the power is preserved though even though to exercise violate social obligations.

The discussion that is to follow will indicate that the Civil Law accepted the first basis of objection to the power to disinherit; that early modern legislation in several of the Dominions shows the same foundation. On the other hand, legislatures throughout the United States have almost unanimously adopted the second, they are seeking to protect the disinherited child only in so far as they deem it consistent with the presumed intent of the testator.

This paper will not attempt to discuss the relative merits of these different attitudes. Rather it will attempt to appraise the matter in this light: given the American attitude, with what measure of success do our statutes effectuate it? This is not an assumption that presumed intent is a sound attitude. It is merely the acceptance of such an attitude as a standard to measure our legislation. Furthermore, the problem will be regarded as one in analysis and comparison of statutes rather than of interpretation.

## TYPICAL MAJORITY PROVISIONS

Among all American jurisdictions there are but seven without enactments dealing with the power to disinherit issue by will. Of these, only three are states.[3] It may thus be accurately stated that the old common law power of disinheritance has been substantially modified. Those provisions most generally prevalent may be rapidly disposed of. Their typical fact basis is the combination referred to: a will followed by the birth of issue unprovided for in the will. The presence of these facts produces, by these statutes, a typical effect. Though variously expressed, this amounts in reality to partial intestacy the after-born child takes by inheritance the portion of his parent's estate, both real and personal, that he would have taken had his parent died intestate. Further, this effect is accompanied by certain devices for avoidance of it. Obviously, since it contradicts the fact hypothesis, no provision in the will prevents this partial intestacy. Another, though less prevalent, device is provision by inter vivos settlement. Again,

---

[1] At Roman Law the term "pretermission" was more prevalent than "preterm ission." Either meant the omission by a testator to mention an heir in his will. HEUMANN-SECKEL, HANDLEXIKON ZU DEN QUELLEN DES RÖMISCHEN RECHT. As heir not formally appointed or disinherited was called *praeteritus* (passed over or omitted). DIG. 28, 2, 3, secs. 2-4. And the praetor or proper magistrate on petition would give him a share in the inheritance." 2 SHERMAN, ROMAN LAW IN THE MODERN WORLD (2d ed. 1922), 263. Also see Lefroy, *Flaws in the Common Law*. (1918) 54 CAN. L. J. 131. The term is more properly used of heirs living at the time of the execution of the will, but has in recent times been extended to include the after-born heirs as well. In a modern case, speaking of an after-born child, the court says, "To pretermit is to pass by, to omit, to disregard. If the intention to exclude appears upon the face of the will, the child has not been omitted, or passed by," Allison v. Allison, 101 Va. 537, 569, 44 S. E. 904, 915 (1903); Porter v. Porter's Exec., 120 Ky. 302, 306, 86 S. W. 546, 547 (1905).

[2] The common law rule that birth of issue alone did not revoke a parent's prior will is too well-established to require citations. See Doe d. White v. Barford, 4 M. & S. 10, 105 Eng. Rep. 739 (1815); Easterlin v. Easterlin, 62 Fla. 468, 56 So. 688, Ann. Cas. 1913 D, 1316 with note at 1318 (1911). Contra: McCullum v. Wills Kenzie, 26 Iowa 510 (1868); Negus v. Negus, 46 Iowa 487 (1877). By the Wills Act, 7 WILL. IV, 1 VICT. c. 26, § 19 (1837) it is provided "No will shall be revoked by any presumption growing out of an alteration of circumstances." See the same provision in NEW BRUNSWICK REV. STAT. (1927) c. 173, § 13; BRIT. COL. REV. STAT. (1911) c. 241, § 16; ONTARIO REV. STAT. (1927) c. 149, § 21.

On May 16, 1928, Viscount Astor proposed in the House of Lords that a "select committee be appointed to see whether a change is necessary in the laws governing testamentary provision for wives, husbands and children." After discussion, the motion was withdrawn. PARLIAMENTARY DEBATES, House of Lords, vol. 71 (1928) cols. 38-61. See also (1928) 44 L. Q. REV. 281.

[3] Florida, Maryland and Wyoming. In addition, no provisions are found in the Canal Zone, District of Columbia, Territory of Hawaii and the Philippine Islands.

EXH D

expression in the will of an intent to disinherit is a generally recognized method. Occasionally this intent must be expressly set forth, but more often it may be implied from "naming" or "mentioning" the future issue in the will, and in a large group the implication is allowed for, but its basis not stated. In short, it may be said that the typical statute permits avoidance of the effect of the birth of the later child by provision for him, by anticipation, in or out of the will, or by an expression or implication of intent not so to provide. Continuing, our typical statute concludes with a provision that the share of the pretermitted child be made up by contributions *pro rata* from the beneficiaries under the will.

Before noting the variations on our typical statute it might be well to note again the policy behind it. Fundamentally, it is a desire to prevent inadvertent disinheritance.[4] Presumably a parent, so it goes, desires to provide for his issue. The likelihood that issue subsequent to the will was unforeseen, otherwise it would have been provided for, leads a solicitous legislature to do what it believes would have been desired had the true circumstances been known. It is a statutory revival of the old common law theory of so-called revocation by circumstances on the basis of presumed intent, applied to a situation not within the common law rule. On the contrary, that it is not an embodiment of that later theory of "tacit condition" independent of intent, is evident from the prominence and effectiveness given an intent to disinherit under these statutes.[5]

Further, the legislature is not motivated by a desire to provide a temporary support for the period of administration; this is accomplished by statutory allowances. Nor is it trying to supply support and education during minority; the pretermitted child may well be an adult of mature years and established position. Nor does it desire to relieve the state of the expense of supporting paupers; that would require the omission of intent to disinherit as an avoidance of pretermission.

The extent to which these statutes actually affect the population at large would constitute an interesting study. To begin with, probably less than a quarter of the estates of persons dying in this country are ever offered for probate. No doubt only a small portion of this fraction is testate. Since these statutes only operate upon testate estates, they must affect only a small percentage of the total number of persons dying. Consequently only a small minority of persons ever comes within these statutes. But, on the contrary, the property interests will vary inversely. An estimated distribution of estates of men dying in Massachusetts within the three years 1889-91 inclusive shows a total value of estates of over 202 million dollars, or an average of over 66 millions a year.[6] Another estimate, this by the Federal Trade Commission, of estates probated in certain selected counties,—rural, town and city from widely distributed states,—shows a yearly average of about 56 million dollars.[7] Since larger estates are generally testate, it may be concluded that the property interests that may be affected by the pretermitted heir statutes are very large.

This general comment should also be made. The pretermitted child, if he takes at all, takes his intestate share. In every case where a will gives property to persons not heirs, the total estate received by children not pretermitted but named in the will will be less than their intestate share.[8] At least this is true in states vesting no discretion in the court as to the allocation of the duty to contribute to make up the share of the omitted child. As a consequence, the child who was expressly provided for is very likely to take less than the child not pro-

---

[4] Or as it is put in McLean v. McLean, 207 N. Y. 365, 371, 101 N. E. 178, 179 (1913), "to guard and provide against such testamentary thoughtlessness and lack of vision as prevent a testator from contemplating the possibility of after-born children and taking such possibility into account in framing a scheme for the testamentary disposition of his property." Also, Shackelford v. Washburn, 180 Ala. 168, 171, 60 So. 318, 319 (1912); Strong v. Strong, 106 Conn. 76, 80, 137 Atl. 17, 18 (1927); Gay v. Gay, 84 Ala. 38, 4 So. 42 (1888); Wilson v. Fosket, 47 Mass. 400, 403 (1843); Ingraham, Appellant, 118 Me. 67, 69, 105 Atl. 812, 813 (1919).

[5] Revocation by a subsequent marriage and birth of issue as a "tacit condition" at common law; Marston v. Roe d. Fox, 8 A. & E. 14, 112 Eng. Rep. 742 (1839).

The origin of the device for avoiding inadvertent disinheritance found in these modern statutes is often attributed to the Roman Law. Certainly it was found there (see *supra* note 1) and is still found in modern Civil Law: GERMAN CIVIL CODE, art. 2303; FRENCH CIVIL CODE, art. 913; LOUISIANA CODE, 1493 to 1495, and 1705. It represents, however, a solicitude for the issue rather than for the freedom of the power to devise. The earliest American statute is 12 Wm. III (1700), Acts and Laws of Province of Massachusetts Bay, p. 125, but no records contemporary with its enactment have been found to throw light on its origin. It may have developed *sui generis* from the same sense of parental obligation as inspired the Roman Law, it may have been taken directly, or it may have been brought over from the then and present Scottish Law.

An interesting historical study of the Scottish law of inheritance has led its author to believe that the present *legitim*, or indefeasible share, of issue in that jurisdiction owes its origin to the early Aryan conception of community property, first of the tribe, then village, and finally family; that this was recognized in Normandy and brought across to England at the Conquest; that thence it was taken by King David I to Scotland; that it was abolished in England, but persisted in Scotland, though now erroneously attributed to Roman origin. He concludes that it is the result of a period when testation was unknown and was not, therefore, "created as a restriction on a complete power of testing." Gardner, *Origin and Nature of Legal Rights of Spouses and Children in the Scottish Law of Succession*, (1927) 39 JURID. REV. 209, 313 and (1928) 40 *ibid.* 72.

[6] Estimated from data of the Mass. Bureau of Labor by WILFORD I. KING, WEALTH AND INCOME OF THE PEOPLE OF THE UNITED STATES 69, 71.

[7] National Wealth and Income, SEN. Doc. No. 126, 69th Cong. 1st Sess. at 58. Both sets of statistics are taken from SMITH, TRUST COMPANIES IN THE UNITED STATES (1928).

[8] The total of the testamentary gifts to children will always be less than the total of their intestate shares where any gift at all is made to a stranger. Of course the individual portions may vary within this total.

752  COLUMBIA LAW REVIEW

vided for. This appears to be a strange inversion of the presumed intent. Of course, an informed testator can easily avoid it, but it is astonishing how few lawyers, to say nothing of layman, are unaware of the very existence of these statutes.

### MINORITY VARIATIONS

### As to Child Whose Omission Is in Question

#### 1. Children Born Prior to the Execution of the Will.

Turning from this typical statute we find a group of minority variations diverging from each of its major portions. First there are variations as to the child whose pretermission is concerned. Typically he is after-born, but in twenty American jurisdictions a child born prior to the will, or issue of such child,[9] if the child be deceased, is within the legislative protection. We have here an extension of solicitude, including grandchildren of prior children. But most interesting is the attitude toward the testator's intent. It would seem reasonable to suggest that the omission of an existing child or grandchild is more likely to be intentional than otherwise. This is recognized in but five of the jurisdictions, however. In their statutes the will is affected only "if it appears that such omission was not intentional, but was made by accident or mistake."[10] This accords with fact. It places the burden on the child to prove the accidental nature of his omission, which, if proved, justifies the inference of intent to provide. The rest, however, establish the opposite presumption by the phrase "unless it appears that such omission was intentional," or a similar clause.[11] Although

[ * ] Missouri and New Mexico use the word "descendant" and Arkansas "legal representatives." Citations below.
[10] MICH. COMP. LAWS (1915) § 13,791; MINN. GEN. STATS. (1923) § 8745; NEB. COMP. STATS. (1922) § 1267; VT. GEN. LAWS (1917) § 3427; WIS. STAT. (1925) vol. 1, § 238.11.
[11] This clause appears in the statutes of eight states. CALIF. CIV. CODE (1923) § 1307; IDAHO COMP. STAT. (1919) § 7827; MONT. REV. CODE (1921) § 7009; NEV. REV. LAWS (1912) § 6216; N. D. COMP. LAWS ANN. (1913) vol. 1 § 5675; OKLA. COMP. STAT. ANN. (1921) vol. II, § 11,255; S. D. REV. CODE (1919) vol. I, § 636; UTAH COMP. LAWS (1917) § 6341.

Three other states add verbatim or in substance, "or/and was not occasioned by mistake." ME. REV. STAT. (1916) c. 79, § 9; MASS. GEN. LAWS (1921) c. 191, § 21, as amended Acts 1925, c. 155, § 1; R. I. GEN. LAWS (1923) title xxix, c. 298, § 22.

Two more make no express reference to intent but establish partial intestacy where the "testator omits to mention the name of a (prior) child," ARK. DIG. STAT. (1919) § 10,507; or the child "is not named or referred to," N. H. PUB. LAWS (1926) ch. 297, § 10.

Suppose in these jurisdictions, A has a child, B, living at the time of making his will. The will expressly disinherits B. A child, C, is born to B; no intent as to disinheritance of C is apparent. B dies, then A dies. Quaere; does C take as a pretermitted child? Or suppose C is born after the death of both A and B? The statutes of Maine, Massachusetts, Missouri…

---

PRETERMITTED HEIRS  753

effect is weakened by the broadness of the [illegible] that the evidence of intent is not limited to the face of the will, [illegible] notwithstand presumption remains, human experience to the [illegible] testator had…

#### 2. The Fact of Prior Children Living at the Execution of the Will in Relation at the Execution of the Will

##### Pretermission of After-born Children

There is another variation in respect to [illegible] that demands comment. It is found in only ten states whose terms are so peculiar as to entitle it to detailed consideration. Wills must be made under one of two 'sets' of circumstances, either the testator had a child living at the time, or he did not. But does this quite obvious alternative justify a difference in legislative policy? These ten states answer "yes."[12] Where, for instance, the testator had a child living at the time he made his will, the subsequent birth of another child, in the absence of conditions named in the statute, produces a certain effect. Where, on the contrary, there was no such child living at the time, the birth of the later child, in the absence of a different set of conditions, produces a different effect. In none of these ten states does the failure to provide for the prior child itself affect the later will.

This factual distinction in the testator's familial environment seems to have first appeared in a Virginia provision enacted in 1785.[13] This was confirmed in an added provision in 1794[14] and has since reappeared through all subsequent revisions. In view of the extensive colonization migrating from Virginia into Kentucky, Ohio and West Virginia, it is not at all surprising to find it in those states. It appeared in Kentucky,[15] for instance, in 1797, in Ohio[16] in 1808, and in West Virginia[17]

This, and the preceding note, cover eighteen jurisdictions. The two remaining, Louisiana and Porto Rico, have Civil Law enactments recognizing the legal portion, legitime, of "forced heirs," of which no parent can deprive them in the absence of certain statutory "just causes." Intent plays no part at all. LA. REV. CIV. CODE (1925) arts. 1493 and 1495; PORTO RICO REV. STAT. COMP. (Comp. 1913) §§ 3874, 3876, 3898, 3899.
[13] ARIZ. REV. STAT. (1919) § 1214-1217; DEL. REV. CODE (1915) §§ 3251-3253; KAN. REV. STAT. ANN. (1923) c. 22, §§ 240, 243; KY. STAT. (Carroll, 1922) §§ 4847, 4848; MISS. ANN. CODE (Hemingway Miss. 1927) §§ 3567, 3568; N. J. COMP. STAT. (1910) 5865, "Wills" §§ 20, 21; OHIO GEN. CODE (1910) §§ 10561, 10563, 10564; TEX. REV. CIV. STAT. (1925) arts. 8291-8293; VA. CODE ANN. (1924) §§ 5242-5243; W. VA. CODE ANN. (Barnes 1923) c. 77, §§ 16-17, 140, from Rev. Bills 1779, c. 21, passed 1785, effective Jan. 1, 1787.
[14] HEN. STAT. VA. c. 61, § 3, 140, from Rev. Bills 1779, c. 21, passed 1785, effective Jan. 1, 1787. This distinction did not appear in the earlier Virginia Act,
5 HEN. STAT. VA. 447 (1748) effective 1751.
[14] VA. STATS. 1794, c. 19, as reprinted REV. CODE (1819) c. 104, § 4, at 376.
[15] 1 LITT. L. KY. 611 and KY. DIG. OF LAWS (1834) Moorehead & Brown, vol. 2, title 180, § 3, at 1539.

in 1568. In addition, it appeared in Mississippi[18] in 1807, in New Jersey[19] in 1824, in the Republic of Texas[20] in 1840, in Delaware[21] in 1852, in Kansas[22] in 1866, and lastly in Arizona[23] in 1887. This distinction does not appear in the statutes of any other state or territory.[24]

Each of these statutes, like those in the majority group, may be conveniently divided into three portions. The first is the factual statement as indicated above. This is, of course, alternative: (a) a child living and (b) a child not living at the time of the will. This appears in this form in all the statutes but that of Delaware. The second, or operative portion, has two distinct aspects: (a) the effect produced by the birth of a child subsequent to the will in each of the alternative situations named, and (b) the devices provided for avoiding this effect. The third, or remedial portion, provides the procedural machinery for the after-born child's procuring the share due him under the operative portion.

Turning to the operative portions, we find that is is customary for the legislatures to deal first with the situation where there was no child living at the time of making the will. Call this case 1. Under such circumstances the birth of any child subsequent to the will operates in five states to suspend the operation of the will until the happening of certain contingencies, while the child, together with all other heirs, takes as by intestacy an estate subject to a special limitation. In Arizona,[26] Mississippi,[27] and Texas,[28] the entire will is suspended, while in Kentucky[29] and West Virginia[30] there is an added clause, "except so far as it provides for the payment of the debts of the testator." All five states provide that the suspension shall continue at least during the life of the child in question and shall be permanent, unless the child dies unmarried. Arizona and Texas add "under twenty-one," Kentucky and Mississippi add "under twenty-one and without issue" (the

[18] Miss. Terr. Stats. 1807, 275.
[19] N. J. Pub. Acts 1824, 174.
[20] Tex. Laws Rep. 1840, 168.
[21] Del. Code (1852) §§ 1653, 1654.
[22] Kan. Laws 1865, c. 86, §§ 38, 41. This distinction is not present in earlier laws as to pretermitted children. Terr. Kan. Laws 1855, c. 164, § 10, at 636; Laws 1859, c. 131, § 8, at 647; Gen. Laws (1862) c. 215, § 8, at 903.
[23] Ariz. Rev. Stat. (1887), § 3242 to 3244.
[24] Accordingly, it can not be accurately asserted that the statutes in any of these ten states "are fairly representative of those found in other states" as is done in Reppy and Tompkins, Historical and Statutory Background of the Law of Wills (1928), 56.
[25] The Delaware distinction is expressed in the phrase "person having at the time (of making the will) no lawful issue." Rev. Code (1915) § 3251.
[26] Ariz. Rev. Stat. (1919) § 1216.
[27] Miss. Code (Hemingway, 1927) § 3567.
[28] Tex. Rev. Civ. Stat. (1925) art. 8293.
[29] Ky. Stat. (Carroll, 1922) § 4847.
[30] W. Va. Code Ann. (Barnes, 1923) c. 77, § 16, at 1647.

latter state cautiously continuing, "capable of inheriting"), while West Virginia omits the matter of age and adds simply "without issue." This state of affairs,—an executory limitation on the provisions of the will and a special limitation on the inheritance of all the heirs,—arises unless certain other conditions are present in the will. In all five states these are the same,—provision for or mention of any child he (the testator) might have."

Three of the remaining five states regard the birth of the child as a revocation of the entire will. Ohio[31] and Kansas[32] refer to this as a presumption rebuttable only by specified types of evidence. Delaware[33] expresses it as a revocation operating as a matter of statutory law, not as a presumption. The other two states express the effect in terms of intestacy, New Jersey[34] as total and in [illegible] Virginia since 1924 as partial to the extent of the after-born child's intestate share, but on the limitation that in case of death of the child or his descendant under twenty-one, unmarried and without issue, so much of his portion as remains unexpended for his support and education reverts to the beneficiaries under the will.

It will be noted that all ten states, Virginia excepted since 1924, exhibit a tendency to avoid in some manner the operation of the entire will. In five the birth avoids it for such child's life, and in the normal course of events, permanently. In three the will is "revoked" and in one it is declared "void." The tenth state, Virginia, before 1924, belonged to the first group, but since then has stood alone for partial intestacy. Actually, however, the practical effect of the 1924 act in that state is to invalidate all the will except for the proportion represented by the widow's inheritance.[36]

As to methods of avoiding these operative provisions, all ten states permit actual provision in the will to accomplish this. All but Delaware give effect to the intent to disinherit as inferred from a mention of the child, while Kansas and Ohio make particular reference to an outside settlement as well.[37]

[31] Ohio Gen. Code (1910) § 10,561.
[32] Kan. Rev. Stat. (1923) c. 22, § 240. The Kansas provisions are verbatim like the Ohio.
[33] Del. Rev. Code (1915) § 3251.
[34] N. J. Comp. Stat. (1910) 5865, "Wills," § 20.
[35] Va. Code Ann. (1924) § 5242.
[36] *Supra* note 35. This is because the after-born child will of necessity be the only heir except for his mother.
[37] All ten states have separate statutes relative to advancements. In Delaware (Rev. Code [1915] c. 95, § 19) and New Jersey (Rev. 1877, "Descent" p. 297) they are limited to real estate. Havens v. Thompson, 23 N. J. Eq. 321 (1873); Marshall v. Rench, 3 Del. Ch. 239, 253 (1868). In the remaining states they include personalty. Generally these statutes are regarded as applicable only in cases of total intestacy. Marshal v. Rench, *supra; In re* Robey [1908] 1 Ch. 71,

The second, and alternative, factual situation is where the testator did have a child living at the time of making his will. Call this case 2. In all ten states the birth of a child after the will and under these circumstances operates to revoke the will to the extent of such child's intestate share. The prior will merely fails to that extent to operate in seven states and the child takes his share in fee by inheritance.[38] In the remaining three states this share is subjected to the limitations which have already appeared in another connection, namely, that if the child dies under twenty-one, unmarried and without issue, so much of his portion as remains unexpended for support and education reverts to the person to whom it was given by the will.[39]

In all ten states there are regulatory provisions governing the manner of making up this share. In five all the beneficiaries "contribute proportionately out of the parts devised and bequeathed to them."[40] In three they "contribute ratably, either in kind or in money, as a court of equity in the particular case may deem proper,"[41] while in two the beneficiaries contribute proportionately "unless . . . a different apportionment be found necessary in order to give effect to the intention of the testator as to that part of the estate which passes by the will."[42]

The devices for avoiding the operative provisions include in all states provision for the after-born child in the will, and in eight, provision outside, in the form of a "settlement."[43] An intent to disinherit expressly evidenced in the will is a recognized device in five states.[44]

4 B. R. C. 256 and note at 268; WOERNER, AMERICAN LAW OF ADMINISTRATION, (3d ed. 1923) § 553. In a few jurisdictions it is otherwise: Payne v. Payne, 128 Va. 33, 39, 104 S. E. 712 (1920); VA. CODE ANN. (1924) § 5278; Walters v. Neafus, 136 Ky. 756, 764, 125 S. W. 167 (1910); KY. STAT. (Carroll 1922) §§ 1407, 4840; Dittoe's Adm'r. v. Cluney's Exrs., 22 Ohio St. 436, 441 (1872).

In either event these statutes do not operate on the will, but only on the estate not passing by will. Whereas, therefore, under the pretermitted heirs statutes the existence of a settlement may determine testacy or intestacy, the advancement statutes presuppose intestacy and merely determine the amount of a given share. These latter statutes are therefore not directly concerned here. As a matter of information, it should be added that practically every American jurisdiction has an enactment relative to advancements. As to what are advancements see three annotations in (1923) 26 A. L. R. at 1089, 1106 and 1178.

[38] Arizona, Delaware, Kansas, Mississippi, New Jersey, Ohio and Texas. See citations, *supra* note 12.

[39] Kentucky, Virginia and West Virginia. See citations, *supra* note 12.

[40] ARIZ. REV. STAT. (1919) § 1214; MISS. CODE (Hemingway, 1927) § 3567; N. J. COMP. STAT. (1910) 5865, "Wills," § 21; TEX. REV. CIV. STAT. (1925) art. 8292. In Delaware there is a further provision that "any intestate estate . . . shall be first applied," REV. CODE (1915) § 3253.

[41] KY. STAT. (Carroll, 1922) § 4848; VA. CODE ANN. (1924) §§ 5242, 5243; W. VA. CODE ANN. (Barnes, 1923) 1647, c. 77, § 17.

[42] KAN. REV. STAT. (1923) c. 22, § 243; OHIO GEN. CODE (1910) § 10,564.

[43] The Delaware statute reads "provision by will or otherwise." Of the ten, only Ohio and Kansas deny effect to a "settlement." Curiously enough these are the only two states that give it effect in case 1. See *supra* notes 12, 31, 32. As to advancement statutes, see *supra* note 37.

[44] The words "expressly excluded" occur in Kentucky, Virginia and West Virginia, and "disinherited" in Mississippi and New Jersey. See citations *supra* note 12.

Comparing, then, the two situations, it is possible to generalize broadly to this extent: that in case 1, that is, where the testator had no child living at the execution of his will, the birth of a subsequent child operates to affect the entire instrument either by suspending it or revoking it, whereas in case 2, where he had a child living at the time, the subsequent birth operates upon a fraction only of the will, namely, to the extent of such after-born child's intestate share. Further, the sweeping effect in the first situation can in general be avoided in two ways, by provision or intent not to provide (from the "mention" expressed in the will), while the narrower effect in the second can in general be avoided either by provision in the will or by settlement *inter vivos*, with one-half the states adding as a third method an expression in the will of an intent to disinherit or exclude.

This is what the statutes say. Practically speaking is it also what they do? To what extent are these differences in wording real? If they are real, and not apparent merely, what policy justifies their existence?

So far as the after-born child, *B*, is concerned, there are no differences. If there was no child, *A*, living at the execution of the will, the will is ineffective and *B* gets the whole estate, perhaps shared with his surviving parent. That is, he gets his intestate share. This is exactly what he gets if there was a child, *A*, but of course this share is now smaller. The protection given *B* is constant; he never loses his inheritance, whether it be case 1 or case 2. As to *A*, there is an obvious factual difference, of course. There is no such person to consider in case 1, while in the other there is. In this latter event *A*, as well as *B*, may conceivably get his intestate share; where, for instance *A* was the sole beneficiary of the will and there is no surviving spouse who inherits, or if there is one, where the proportions given each under the will are the same as by the local law of descent,—an unlikely case. On any other hypothesis the shares of both *A* and the surviving spouse are affected by *B*'s birth. This is particularly so where the will gives part of the estate to strangers. *B*'s constant fraction must now be made up from the shares of all the beneficiaries, and the larger the portion given to strangers the greater the discrepancy between *A*'s testate and intestate share.

Turning from the position of *A* and *B*, to the share of the surviving spouse, how is this affected in the two cases? Where the spouse does not inherit as an heir, his position is, of course, like that of any stranger. But where he is an heir, the birth of *B* in case 1 revokes the will and enables him to inherit. Naturally this may be an estate different from that given him by the will. In case 2 he is not enabled