# EXHIBIT 47, PART C

1963] PRETERMITTED HEIRS 763

possible varieties of children included we find this factual distinction reproduced from time to time until in various forms we have our ten states.

But perhaps there is a less fantastic theory of the original purpose. Where there was no child living at the making of the will, and the after-born child is pretermitted, the beneficiaries were more than likely to be persons not of the testator's immediate family. A statute suspending the entire will upon the birth of issue, was, then, taking from persons who had slight or no moral claim in order to give to one who had a strong one—in cases where there was a child living all initial, sweeping statute might prejudice such a child, at all events, would give something other than that intended by the testator. A without issue, his portion, so far as it might be unexpended for his support and education, should revert to the beneficiaries under the will. It would seem, therefore, that whereas before 1924 the entire will was inoperative for the duration of the life and perhaps forever, since the amendment it takes effect at death, the beneficiaries being subject to the duty to contribute ratably to make up the child's intestate share, with the possibility of recovering a reversion of their contribution. In those cases where there was a child living at the time the will was made, the after-born child (posthumous only, until 1794) took a fee simple to the extent of his intestate share (1785 to 1849). Later this estate was qualified by a special limitation, terminating it in case the child died under twenty-one, unmarried and without issue. (CODE [1849] c. 122, § 18). This is the same limitation which appeared in 1924 in cases where there was no child living at the time of the will. Under the present enactments (1929) the effect of birth of any after-born child is the same,—partial intestacy on the limitation given.

A curious provision appeared in 1840. (Va. Acts 1839-40, c. 56, § 3, at 49). This was limited to those cases where a testator died seized of lands and directing by his will "that his estate shall be kept together for the support of his family," It did not draw any distinction as to the testator's having a child at the time of his will. In the cases named the after-born child was to participate in the estate until its distribution, at which time he took his intestate share, not in fee, but subject to a limitation that so much of it as should be unexpended in his support or education was to revert to the beneficiaries of the will in case he died under twenty-one, unmarried and without issue. This statute remained in operation nine years, dropping out upon the revision of 1849. It is interesting to note that the phrases of this limitation, without the reference to support and education, came from the act of 1819 so far as that act deals with cases where no child was living when the will was made, although used in that act as a condition of abeyance of the will. In 1849, these phrases, including the support provision, reappeared in both the abeyance paragraph, and as a true limitation in cases where a child was living at the time of the will. In 1924 when all after-born children take their share in fee, and there is no abeyance, these phrases are added as the limitation. The shadow of the 1840 statute still lingers.

A similar, though simpler, series of changes is apparent in the portions of the Virginia acts concerned with avoiding the effects outlined above. In all cases provision for the child in the will has always been an adequate means, and where no child was living at the making of the will a "mention" of the child always has been enough. When there was a child living, provision for it in the will or settlement outside has always been effective and since 1849 a provision for its descendant has had a similar effect. "Disinheritance" in the will was another means until 1849 when it was replaced by the Virginia provisions of 1903 see Altizer, *Subsequent Birth of Children as a Revocation of a Will* (1903) 9 VA. L. REG. 473 and 479.

[54] The fact that partial intestacy would result, under certain conditions, in the prior child getting less than his intestate share or than the pretermitted child, may not have been realized at the time. See *supra* note 8.

---

[55] This peculiar variation on the general statute has been gone into in particular detail, first, because of the interesting illustration it furnishes of complicated and confusing legislation. Both the complexities and confusion are due to a failure to keep to the broad purposes to be served, accompanied by an over-sedulous attention to detail, both of fact and of law. Secondly, in at least one of these ten states a movement is now on foot to clarify these provisions.

The Committee on Judicial Administration and Legal Reform of the Ohio State Bar Association submitted a report on the Ohio provisions at the mid-winter meeting, January, 1928. This recommended the consolidation of cases 1 and 2, as in the majority jurisdictions. This would have the effect of making the devices of provision by settlement and an expression of an intent to disinherit (from "mention") available as a means of avoiding intestacy in all cases. Formerly they were not recognized in case 2. However, it retained the expression of the abandoned factual distinction, although this was no longer significant. Moreover, it provided that the birth of a later child should revoke the will in all cases completely, rather than partially, as in the majority jurisdictions.

This proposal, it should be added, was rejected by the Bar Association and the report recommitted. It has since been referred to the Special Committee on Revision of Probate Laws for redrafting and is still under consideration.

to inherit. Only B is given his intestate share, and the spouse continues to take under the will, if at all, now subjected to the duty to contribute. This in half the states is inevitable unless the undisposed of property is sufficient to make up B's share. In the others the spouse may be spared from contribution in the discretion of the court of equity, or if it is necessary to effectuate the testator's intent.

A beneficiary under the will, who is a stranger in the sense that in case of intestacy he does not inherit, is also affected differently. In case 1 he loses out entirely, while in case 2 he is subjected to B's right of contribution. This latter, of course, is like the spouse's position, except that the adjustment permitted in five states is likely to favor the spouse as against the stranger.

There are, then, definite differences in the effect of the operative portion of these statutes in these two cases. They are differences, however, that do not concern the after-born child. Nor do they concern the prior child, for there is none to be concerned in case 1. This difference is limited to two types of persons. The first is the surviving spouse where he is an heir. But this is an effect that is not due to the pretermitted heir statutes, but rather to the statutes of descent. It would occur in any other case of an heir who is not a child of the testator. It is true, however, that in most of these states, the spouse, whether husband or wife, is an heir even when there is another heir, B.[45] The different effect on the share of the stranger-beneficiary, however, can only be accounted for by the pretermitted heir statute. He is definitely prejudiced by B's birth, but far more seriously in case 1 than in case 2.

How do these consequences compare with those under statutes in other states? All these other enactments omit reference to the factual distinction. Cases 1 and 2 are not expressly set forth. The birth of a later child, B, quite regardless of the existence of A, gives B his intestate share, when the devices for avoiding this are not taken advantage of. It is a safe conclusion, then, that the shares of A and B are protected in exactly the same fashion as in the ten states. But the position of the surviving spouse in the majority group is like that in case 2 in the ten. He is likely to be forced to contribute, but has no chance of being given his inheritance as in case 1. As previously observed, this difference cannot be properly attributed to the statute under consideration. It is what Maitland has called a "mere accident of no juristic value."

But it is impossible to account in the same way for the different effects on the share of the stranger-beneficiary in cases 1 and 2 in the

[45] For statutes, see 1 WOERNER, op. cit. supra note 37, §§ 66, 67.

ten states. No laws of descent play a part. The difference is attributable to the pretermitted heirs statutes exclusively. Note, however, that this difference is equally present under the majority statutes. The measure of the stranger-beneficiary's share depends on the testate residue after taking out the after-born child's intestate share. As has already been seen that under both types of statutes, so far as wording, this is a constant. Of necessity, then, the residue is not constant under both. For example, assume that the will (in case 1, no child living) gives the estate to X. In the ten states the later birth of B revokes the will and X takes nothing. In other states B takes his intestate share, here the entire estate, and X gets nothing. Or assume the will in case 2 (A living) gives the estate to A and X, share and share alike. In both groups of states B's birth entitles him to his intestate share, one-half, and A and X must contribute.

If it could be said that in the ten states avoidance of the sweeping effect of B's birth in case 1 is substantially easier or harder than in case 2, one might then find a difference, for in the majority group there is but one set of avoidance devices for all cases. A comparison of the various devices in the smaller group indicates a diversity of device without, at first glance, a difference in respect to the facility of its availability. Taking the ten states as a group, it appears that in both cases 1 and 2, all recognize a provision in the will. In case 1 an intent not to provide, apparent from the will, is effective in nine,[46] but in case 2 only in five. However, provision by settlement outside the will is recognized in only two states in case 1 and in eight (all but these same two) in the other. To assert a difference, one must weigh the probability that the testator will avoid intestacy by an expression of intent in case 1 as against that by settlement in case 2. There is no measure for such imponderables. The group as a whole, therefore, shows no clear tendency.

But the states individually exhibit in most instances a definite balance. In five, for example, intent is a device in both cases, but there is the addition of settlement in case 2.[47] Clearly, the probability of avoidance in these is greater in case 2. On the contrary, in Kansas and Ohio both devices, intent and settlement, appear on the other side of the line, in case 1, and neither is available in case 2.[48] Provision in the will is alone permitted to avoid the effect in this case. The probability of avoidance is then definitely greater in case 1 in those states. In Delaware, where avoidance at best is difficult, and intent figures not

[46] All but Delaware.
[47] Kentucky, Mississippi, New Jersey, Virginia, and West Virginia.
[48] KAN. REV. STAT. (1923) c. 22, §§ 240, 243; OHIO GEN. CODE (1910) §§ 10,561, 10,564.

at all, "provision by will" is the sole device in case 1, but "or otherwise" added in case 2 gives greater latitude.[49] The remaining two states—balance[?] when in case 1 against settlement in case 2 so.

Taking the states individually, then, there appears a real difference in facility of avoidance, six making this greater in case 2 and two in case 1. Since in other jurisdictions the devices for avoidance are the same in either case, however they may differ as between different states, it is possible to generalize to this extent: that in a majority of those ten states expressing this factual distinction, it is a degree more probable that B's birth will operate to affect the share of the stranger-beneficiary in case there was no child living at the making of the will, than in case there was. In other jurisdictions, the probabilities are identical.

Thus, then, is the sole contribution of the meticulously detailed statutes in these ten states—a shifting of the balance of probability in respect to the avoidance of the effect of the birth of an after-born child on the testate share of a stranger. To justify this distinction one must be able to say that where there was a child living at the making of the will, it is less important in six states to protect an after-born child than where there was not, but that in Kansas and Ohio the opposite is true, while in Arizona and Texas it makes no difference. Since this is quite ridiculous, one is driven to the conclusion that this distinction as to avoidance does not itself represent any policy, but is merely an accidental consequence of certain other policies having to do with the effect of pretermission, and not its avoidance.

One due to the nature of such policies may be inferred from a historical fact, namely, the sequence in which the original statutes first appeared. This was in Virginia. In 1785 we find the earliest provision. It contained an express statement of the facts in cases 1 and 2, followed by operative clauses as to the effect of B's birth. In case 1, B might have been any after-born child, but in case 2 he must have been posthumous. Thus, if B is born during the testator's lifetime, his birth produced no effect on the prior will, and B was effectively disinherited.[51]

These provisions suggest that this first statute may have been the product of a desire to protect those classes of children most exposed to the likelihood of unintentional disinheritance. It might be said that when a testator had no living children at the time of making his will, he would be less likely to anticipate and provide for a prospective

---

child than when he had such children living, recognized and present to his mind at the time.[52] In the second place, posthumous children are class-peculiarly exposed to inadvertent disinheritance, for their very existence may be unforeseen. Both types require[?] protection[?] against the desire to disinherit, but against[?] [?] force of circumstances, and in spite of natural parental [?] [?] [?], this interpretation continues, the Virginia assembly approached these two most likely cases of disinheritance. The result [?] [?] [?] statute of 1785. Perhaps it is not too fanciful to suggest [?] [?] would not be long before some astute legislator discovered that [?] [?] omits some unaccountable fashion made no provision for [?] [?] [?] testator who has a child at the time of the will, subsequently [?] another during his life[?], the testator's life. All other after-born [?] [?] [?] some intestate portion. But this unfortunate offspring from heirs [?] [?] Of course the answer is that he is not within either of the classes for which particular solicitude was thought necessary. Certainly, others, he is among those whose arrival the testator should have thought of. Certainly, confronted with this pathetic picture, the assembly could not fail to find a solution, and so we get the statute of 1794 which expressly includes the non-posthumous after-born child in case 2.[53] Now with all—

---

[49] DEL. REV. CODE (1915) §§ 3,251, 3,252.
[50] ARIZ. REV. STAT. (1919) §§ 1214, 1215; TEX. REV. CIV. STAT. (1925) arts. 8291 to 8293.
[51] Two cases, arising under this statute, so hold; Yerby v. Yerby, 7 Va. 334 (1802) and Savare v. Mars, 41 Va. 570 (1843).

[52] "Admittedly this supposition would be more plausible if the statute dealt with the effect on a 'will made by a person who had had no issue,' rather than 'a will made when such person had no child living.' In the experience of the average testator an after-born first issue is less likely to be anticipated than after-born issue when there has already been issue though not living at the execution of the will."

It might be added in support of the text, that the testator's ability to recall his living children as the "natural recipients of his bounty" is often an ingredient in testamentary capacity. Thus the probabilities that he will think of his children are recognized in the law of wills, in cases where they are living at the time. See Hall v. Perry, 87 Me. 569, 572, 33 Atl. 160, 161 (1895).

[53] The successive enactments of the Virginia general assembly furnish an interesting illustration of the development of legislative policy. The earliest statute involving this distinction was enacted in 1785, effective Jan. 1, 1787. (12 Hen. Stat. Va., c. lxi, § 3, p. 140, from Rev. Bills 1779 C. lxi.) This distinguished between cases where the testator had a child living at the time of making his will, and where he did not. In the first case the birth of only posthumous children operated to affect the will, while in the second, the birth of any children, whether posthumous or not. In 1794 (Stat. Large [1794] c. 19, as reprinted Rev. Code [1819] c. 104, § 4, at 376) special provision was made for non-posthumous children in the first case, and from 1819 to date we find all after-born children of either sort included.

The provisions relative to the effect of birth evidence a similar development; in those cases where no child was living at the time of the will we find that until 1924 the birth produced an abeyance of the will; by the original act (1785), it was to have no effect during the life of the child and moreover was void unless the child died unmarried or before he was twenty-one (12 Hen. Stat. Va., supra).

In 1819 this phrase was changed to "unmarried and under twenty-one." (Rev. Code [1819] c. 104, § 3, at 376); while in 1849 it was enlarged to "unmarried, under twenty-one and without issue." (Code [1849] c. 122, § 17, at 518.) Abeyance of the latter conditions persisted until 1924 (Acts 1924, 459) when by amendment the after-born child was given his intestate share subject to the limitation

Case 1:05-cv-03939-CM    Document 202-14    Filed 02/22/2008    Page 5 of 7

testate share, the chances are that if no provision is made for the absentee's child, the absentee gets a larger portion than any one else.

These remarks do not apply to Kentucky. As has been seen, the power of express exclusion and the ready admissibility of parol evidence to rebut the presumption of pretermission go a long way to guaranty the carrying out of the testator's intent. The presumption remains, however, that an absentee, reported dead, is accidentally omitted. Its rebuttal has merely been made easier. Under modern living conditions this presumption appears contrary to fact.

In those twenty states and territories that extend their solicitude to unprovided-for children who were living at the time of the execution of the will, the absentee would be included in this group. In the majority of jurisdictions, however, he is left out and his disinheritance remains undisturbed just as at common law. After all, it would seem that he is not one who is entitled to special protection. The testator may so word his will as to include him if he desires, but his failure to do so is in accord with a presumed intent to disinherit that only a definite social policy of protection should give him a share in the estate. This, it is submitted, does not exist.

### 4. Posthumous Children

In those twenty states and territories that extend their solicitude to unprovided-for children who were living at the time of the execution of where they are singled out for special protection; emphasis is taken from intent and placed upon positive provision in the will "or otherwise." In fact, in six states an expression of intent to disinherit is quite futile,[64] whereas in Minnesota the omission of provision is deemed accidental but may be rebutted by intent not to provide.[65] This is the reverse of the presumption as to omission of all other children in that state.[66]

Kentucky provides a special order of contribution to make up his share but otherwise he is treated like other after-born children.

This special protection for posthumous children originated with the earliest statute on this general subject. The first section of the original enactment in Massachusetts in 1700 provided that such children should take their intestate share unless provided for in the will.[68]

No comment is necessary to bring out the peculiar hazards inherent in the position of a posthumous child. At the time of probate he is invariably an infant of a few months only, and possibly his very existence is unanticipated by his father at death. Of all the categories of unprovided-for children, his is the most deserving.

But it should be observed in passing that the consideration of intent from most of these statutes is an abandonment of the American policy. The peculiarly vulnerable position of the posthumous child has driven the legislatures from their accepted and individualistic position of protection of the power to devise. Here they find themselves in a new terrain, protecting the inheritance of posthumous children, regardless of the parent's intent.

### B. Effect of Birth of the Pretermitted Child

In very nearly every American jurisdiction the birth of the pretermitted child produces a partial intestacy. He succeeds to the same portion of the testator's real and personal property that he would have succeeded to if the testator had died intestate.[69] Occasionally this is called partial revocation[70] and in two states is expressly stated not to be a revocation but an "abatement."[71] In South Carolina the child takes a share equal to that given the other child or children[72] (many latent difficulties seem to lurk in such a phrase) while in eight states the will, at least under certain named circumstances, is entirely revoked.[73]

---

[63] Gifford v. Dyer, 2 R. I. 99 (1852). Georgia attacks this situation from the standpoint of mistake. "A will executed under a mistake of fact as to the existence or conduct of the heirs at law of the testator is inoperative, so far as such heir at law is concerned; but the testator shall be deemed to have died intestate as to him." GA. ANN. CODE (Park, 1914) § 3836. This extends the presumed intent to all heirs on proof of the mistake. The presumption is rebuttable, for if after the will is executed, the testator becomes aware of the true fact, the will is not affected, provided he had sufficient time before death to execute another. Pennington v. Perry, 156 Ga. 103, 118 S. E. 710 (1923). See also Jones v. Grogan, 98 Ga. 552, 25 S. E. 590 (1896); Mallory v. Young, 98 Ga. 728, 25 S. E. 918 (1896) and same case, 110 Ga. 10, 35 S. E. 278 (1899); Adams v. Cooper, 148 Ga. 339, 96 S. E. 858 (1918).

[64] ME. REV. STAT. (1916) c. 79, § 8; N. M. ANN. STAT. (1915) § 1849; R. I. GEN. LAWS (1923) § 4313, c. 298, § 23; S. C. CODE OF LAWS (1922) § 5344; TENN. ANN. CODE (1917) § 4170; VT. GEN. LAWS (1917) § 3426. All require provision in the will, except Rhode Island, which adds "or otherwise."

[65] MINN. GEN. STAT. (1927) § 8744.

[66] Ibid. § 8745.

[67] KY. STAT. (Carroll, 1922) § 2078.

[68] Acts and Laws of the Province of Massachusetts Bay, at 125, (12 WM. III) 1700, entitled "An act providing for posthumous children." In the modern statutes, Maine, Minnesota, New Mexico, and Rhode Island use the term "father" in reference to the parent. The others use "testator."

[69] This is the wording in California and the following states: Idaho, Montana, North Dakota, Oklahoma, South Dakota, and Utah.

[70] ALA. CIV. CODE (1923) § 10,585.

[71] COLO. COMP. LAWS (1921) § 5189; ILL. REV. STAT. (Callaghan, 1924) c. 39, § 10.

[72] S. C. CODE OF LAWS (1922) vol. 3, § 5344.

[73] Four of these states have already been discussed as among the ten that distinguish between cases where there were and were not prior children living at the execution of the will. Total revocation occurs where there were not such children: Delaware, Kansas, Ohio, and New Jersey. See supra notes 31 to 34. Connecticut, Georgia, and Indiana provide for entire revocation upon the birth of any child after the will, CONN. GEN. STAT. (1918) § 4946, amended Laws 1927, c. 227, at 4296; GA. CODE (1914) § 3932; IND. ANN. STAT. (Burns, 1926) § 3116. In Louisiana "the testament falls by the birth of legitimate children of the testator posterior to its date." CIV. CODE, § 1705.

One obvious weakness runs through all these. It is the inelasticity of the share given the pretermitted heir. Presumed intent is behind all these statutes, yet having applied intent to the procuring of a right to a share, we abandon it in determining its amount. A well-founded presumption of a general desire to provide is translated at once into a specific desire to provide an intestate share.

But is it reasonable to go so far? The testator, having a child, $A$, gives him two-thirds of his estate, and leaves the residue to charity, $X$. $B$ is born. If the $A$ and $X$ are the only heirs, $B$ gets one-half the estate on his parent's death: $A$ and $X$ contribute pro rata; we will assume, so that $A$ gets one-third and $X$ one-sixth by the will. We set off a forgotten child and presumed intent as against a remembered child and expressed intent, and give the larger portion to the former. Yet if there is any donee in the will other than $A$, this is inevitable. It will appear from later comments that in some states the duty to contribute may be modified so as to shift it largely to $X$, yet if $A$ contributes at all, he gets less than $B$.

A very different approach to the matter has been made in some of the Dominions. An examination of the statutes of Victoria, New Zealand and New South Wales, for instance, shows the vesting of a broad discretion in the court. Where a person dies testate without making "adequate provision" for the maintenance of his spouse or children, the court is authorized to make such provision as it deems proper.[74] This has not been interpreted as giving the court the power to make a will, but to warrant interference only where there has been a "capricious or unreasonable testamentary disposition."[75]

But these acts are not built on the American foundation of presumed intent. While American provisions temper their solicitude for the pretermitted child by a sturdy protection of the power to dispose

---

of property at death, the Dominion acts have shifted the emphasis to the moral claims of the family. The American power, unrestrained by a rebuttable presumption, has there given way to a duty to furnish adequate support. If this duty is observed, the power to dispose is not impeded.

We have here the fundamental question raised at the very start of this paper: should legislative policy preserve the power, supplementing it by a presumed intent, or should it modify the family of a decedent, permitting a limited exercise of the power? As stated above, the treatment here is premised on the American policy. No assumption is made that presumed intent is the sounder view. It is, however, the accepted policy. This paper deals with the means of effectuating that policy. It is an analysis of an existing common law rather than an exhortation toward a different one.

But even so, there is a definite contribution made by the Dominion statutes that is entirely applicable to ours. They, too, are concerned with the question of adjusting the statutory share to a varying group of specific conditions in the testator's family. Instead, however, of saying that the required provision for family maintenance shall be contingent ratio or an intestate share, they required that it shall be "adequate," and then proceed to leave the determination of that term to the court's discretion. Were we to place equal confidence in our judges, we too might enact, that, having applied presumed intent to the acquisition of a share, we continue the second step, and apply it to the amount. Let the share be presumed to equal the intestate portion, unless it appears that the testator intends it to be less.

But, it is objected, by hypothesis there is no evidence of intent. The child takes only where none appears. True, there is no intent to disinherit. But the absence of this negative intent does not prevent the presence of an affirmative intent. Conceivably the will may exhibit a desire to give without creating an enforceable gift, and at the same time not constitute the type of "mention" that disinherits. This may be found in a reference to the possibility of a child.[76] Further, the other provisions of the will may exhibit an intent that would be violated by enforced contribution to make up an entire intestate share. Suppose, as well, that parol evidence indicates a desire that the pretermitted child take (so there is no intent to disinherit) but that he take a share less than that by intestacy.[77]

---

[74] The new South Wales statute is as follows: "If any person dying disposes of his property either wholly or partly by will in such a manner that the widow, husband, or children of such person, or any, or all of them, are left without adequate provision for their proper maintenance, education, or advancement in life, as the case may be, the court may at its discretion, and taking into consideration all the circumstances of the case, on application . . . order that such provision for such maintenance, education, and advancement as the court thinks fit shall be made out of the estate of the testator for such wife, husband, or children, or any or all of them." Stat. 1916, act no. 41, Testator's Family Maintenance and Guardianship of Infants Act, § 1.

The New Zealand and Victoria statutes are very similar. Dom. N. Z. Consol. Laws (1908) vol. 60, § 33, Family Protection Act; Victorian Stat. (1915) no. 2611, § 109, Administration and Probate Act.

[75] In re McGoun, [1910]-Vict. L. R. 125, 127. Also "regard will be had to the position of the applicant during the testator's life-time and the extent of the testator's estate. . . . The court will exercise its jurisdiction only where the necessity of the case demands it, and will not interfere merely because it may consider that the testator might have disposed of his property more beneficially." In re Will of Read, [1910] Vict. L. R. 68.

[76] "I give to $A$ $10,000 because I do not expect to have any more children. I give $10,000 to $A$, child by $X$, my first wife, and because of my affection for her, I desire $A$ to receive twice as much as any child that may be born to me by my second wife $Y$."

[77] "I give $5000 to my son $A$. No matter what may happen, I want him to have this sum for his college education. Assume that $B$ cannot be given his intestate share without reducing $A$'s gift below $5000."

These illustrations are enough to indicate the possibility of an intent intermediate between that to disinherit and that to give as by intestacy. In determining the right to a share the court is already applying presumed intent. Let it extend its application to the measure of that share. The court has adopted an attitude for the first step. With its viewpoint established let it extend that attitude to the second. An abandonment of it, once the right to a share is determined, violates the very policy sought to be served.

But why not apply a social standard to the second step, as in the Dominions? Give such share as the heir requires for his maintenance? But this is forsaking the American policy. It is a shifting of standards amid stream, as it were. If it be countered that such a shift is in theory merely, it must be observed that, on the contrary, it will work out differently in dollars and cents. Merely try it in the illustrations given, assuming a few further facts as to the needs of support of the parties. To say that if it is different, it more fully effectuates a social benefit is to say the American policy of protecting intent is unsound. And that is beyond the scope of this discussion. Furthermore, such a shift in policy involves the creation of a new attitude on the part of the court. There is definite value as a practical matter, in retaining a single attitude, a single standard, throughout the successive steps in our solution.

Returning to the analysis of the effect given by the American statutes to birth we find that the estate created in the child is almost always a fee simple. A few states, however, exhibit an odd variation in the form of a special limitation. There are eight of these states; six of them have been already discussed in another connection.[78] Three of these attach the limitation only where there was no child living at the time of making the will,[79] while two attach a limitation when there was no such child, different from that in case there was.[80] The remaining three do not distinguish.[81]

---

[78] Alabama, Arizona, Indiana, Kentucky, Mississippi, Texas, Virginia and West Virginia.

[79] ARIZ. REV. STAT. (1919) § 1216; MISS. CODE (Hemingway, 1927) § 3567; and TEX. REV. CIV. STAT. (1925) art. 8293.

[80] Where no child was living at the time of execution, the entire will is suspended and all heirs take a fee on the limitation that "such will, except so far as it provides for the payment of debts of the testator, shall be construed as if the devises and bequests therein had been limited to take effect in the event that the child shall die under the age of 21 years, unmarried and without issue. If there was a child living, so much of the intestate share of the after-born child as remains unexpended in his support and education reverts to the person to whom it was given by the will. The rest of the will is unaffected. KY. STAT. (Carroll, 1922) § 4847 and 4848; W. VA. CODE ANN. (Barnes, 1923) c. 77 §§ 16, 17. This distinction probably was taken from earlier Virginia provisions. See VA. CODE ANN. (1887) §§ 2527, 2528, and supra note 53.

[81] ALA. CIV. CODE (1923) § 10,587; IND. ANN. STAT. (Burns, 1926) § 3458; and VA. CODE ANN. (1924) §§ 5242, 5243.

Without going exhaustively into the details of the limitations, it may be said that in general they enumerate four events all of which must occur to terminate the fee: (a) death of the after-born child, (b) unmarried, (c) without issue and (d) under twenty-one.

That, then, is the pretermitted child's estate. But the interests of the beneficiaries under the will during the pendency of intestacy furnish a peculiar illustration of suspended animation. Indiana, under a provision that "the will shall be deemed revoked," holds the will and property are not held in abeyance.[82] Virginia, under a provision that "the will shall be construed as if . . . limited to take effect in the event the child shall die under the age of 21," holds that "all the provisions of such will . . . become inoperative during the minority of the pretermitted child, and finally void when he arrives at the age of twenty-one years or marries. If, however, the child die under the age of twenty-one years, etc., all the provisions of the will become operative and effectual."[84] In a recent Texas case a similar provision was involved, namely, the will "shall have no effect during the life of such after-born child and shall be void unless the child die, etc." In this instance the will was admitted to probate, unlike Indiana, but the estate administered as though intestate. No letters testamentary could be issued.[85] As a consequence the beneficiaries under the will may have to wait as long as twenty-one years before knowing whether or not they are to realize upon their executory devises. In the absence of harmony between the stranger-beneficiary and the pretermitted heir, this constitutes a serious restriction on alienation of title. Neither acting alone has a marketable interest. Furthermore, there is the un-

---

[82] The Indiana limitation is the most peculiar. It reads: "But in case such child dies without issue and the wife of such testator be living, the estate of the testator, except the wife's interest therein, shall descend according to the terms of the will; and in case of the death of the wife, and also of the child, without issue, the whole of such estate shall descend as directed in the will, unless such child have a wife living at his death, in which case such wife shall hold such estate to her use so long as she remains unmarried." IND. ANN. STAT. (Burns, 1926) § 3458. Alabama substitutes a unique limitation. "If any such child die before receiving its portion, without descendants, such portion or so much thereof as has not been received, passes by will as if such child had not been born." ALA. CIV. CODE (1923) § 10,587.

[83] Morse v. Morse, 42 Ind. 365, 370 (1873), and it must be remembered that in Indiana the entire will is "revoked" so long as certain conditions persist.

[84] Wood v. Tredway, 111 Va. 526, 534, 69 S. E. 445 (1910). This, of course, was under the 1887 code.

[85] Taylor v. Martin's Estate, 3 S. W. (2d) 408 (Tex. 1928). The condition of the will was regarded as though the testator had devised to those who had he died intestate, would have been his heirs, but in the event that an after-born child, surviving the testator, should die without having been married and under 21, then gifts to others. The lower court had held the will not entitled to probate until the happening of the events named. Taylor v. Martin's Estate, 263 S. W. 1102 (Tex. Civ. App. 1924).