# EXHIBIT 47, PART D

Judging these statutes in the light of their professed purpose to provide for an accidentally omitted child, the great run of them are commonly sound. By "sound" is meant that they tend to further this purpose by a presumption that accords with experience. The omission of an afterborn child is regarded as accidental if not contrary to. Actual provision, no matter how small or by what means, indicates no oversight. Equally, does an expression of intent to disinherit either in or out of the will. Limiting this to evidence within the will is artificial, yet a safeguard against fraud. So limited it becomes another formality of execution, which the careful lawyer must bring to his client's attention. Not so limited it opens the door for unscrupulous proponents to defeat, by fabricated evidence, the purpose of the statutes and the intent of testators.

### D. Regulatory Provisions.

In cases where the intestacy is total no regulatory provisions are necessary.[96] The laws of descent govern without qualification. But where, as in the great majority of cases involving pretermitted heirs, the intestacy is partial, and a portion of the will remains effective, a secondary problem is presented: how does the child enforce his right to a share? Or, conversely, who is subjected to the duty to provide him with it?

All states have provided that the beneficiaries under the will must contribute in proportion to the value of their testate shares.[97] Only three provide that contribution may be "in kind or in money as a court of equity, in the particular case, may deem most proper."[98] In about one-third there is no reference as to which portion of the estate is first approached to provide the child's share,[99] tho in the three just referred to, a court of equity has a discretion as to this. In another third there is found a definite order of contribution: first the intestate property, real and personal, then the devises and legacies, pro rata according to value, "unless the obvious intention of the testator in relation to some specific devise, etc., would thereby be defeated; in such case such specific devise, etc., may be exempted from such apportion-

---

ment and a different apportionment consistent with his intention [...] the testator may be adopted."[100] Five states [...] that they do not expressly require a resort [...] first.[101] Four include a first resort to [...] (devises and legacies, but omit the reference [...] Alabama alone expressly requires resort to [...] gatee before approaching the specific devises and legacies.

It is rare to find any reference to the [...] the pretermitted heir. A few states affirmed [...] court has jurisdiction[104] or the court of [...] appear in the notes.[104]

The policy of presumed intent should [...] regulatory provisions, in respect to both [...] tribute and the property from which this contribution is to be made. The former is obvious debts,—intestate property, residuary property, and specific gifts being prima facie appropriated in that order, all qualified by a discretionary power vested in the court to alter this order in the light of further discretion. This is apparent in several of the states which allow [...] intent. The latter is allowed for by the granting to the testator well allowed for by an application of familiar [...] as to satisfaction "in kind or in money." In all probability the testator had no intent, even presumable, to give specific gifts to the accidentally omitted heir; whereas specific devises and legacies to strangers clearly show such an intent. Such a provision contains recognition of an intent already displayed as to these beneficiaries without detracting from the protection of the heir.

Lastly, as a matter of convenience contribution should be handled

---

[Footnotes:]

"Where revocation is to the extent of the child's intestate share and the child is the only heir, the effect will of course be total, and the regulatory provisions will have no testate property on which to operate. Pennsylvania is an exception. PA. STAT. (Supp. 1928) § 8333. In Colorado and Illinois "abatement" is used in lieu of "contribution."

[97] KY. STAT. (Carroll 1922) § 4848; VA. CODE ANN. (1924) §§ 5242 and 5243; W. VA. CODE ANN. (Barnes, 1923) c. 77, § 16, at 1647.

[98] See the provisions in Alabama, Alaska, Arizona, Arkansas, Iowa, Mississippi, Missouri, New Jersey, New Mexico, New York, Oregon, South Carolina, Tennessee, Texas and Washington.

[100] This is quoted from CALIF. CIV. CODE (1923) § 1308 and is substantially the same in Idaho, Michigan, Minnesota, Montana, Nebraska, Nevada, North Dakota, South Dakota, Oklahoma, Utah, Vermont and Wisconsin.

[101] Kansas, Maine, Massachusetts, Ohio and Rhode Island. Maine imposes the duty to contribute on devisees only. ME. REV. STAT. (1916) c. 79, § 8.

[102] Delaware, Kentucky (posthumous child only), New Hampshire and North Carolina. The latter's provisions distinguish between realty for realty, etc. child's share by descent and resort to personalty for his share by distribution, in referring in the former case the phrase "as near as may be convenient" in referring to contribution from the devisees according to their respective values. Exoneration of each type of property from the intestate surplus not required for the child's share in the other, is also provided for. N. C. CONS. STAT. ANN. (1919) § 141 to 143.

[103] ALA. CIV. CODE (1923) § 10,586.

[104] Arkansas, Delaware (Orphan's Court), Maine, Massachusetts and Michigan, see supra note 98.

[105] Kentucky, Maine, Virginia and West Virginia. See supra note 98.

[106] Maine provides three forms of relief. ME. REV. STAT. (1916) c. 74, § 14. Arkansas and New York say the child is "entitled to recover." ARK. DIG. STAT. (1921) § 10,506. N. Y. DECEDENT'S ESTATE LAW, § 26 (Laws 1909, c. 18). The former specifies the writ of scire facias, § 10,508.

under the equity powers of the probate courts as an incident to the settlement of the estate.

* * * *

Two further observations should be made on certain specific features of these statutes. Suppose, in the first place, that pursuant to a testamentary power of sale, an executor purports to convey portions of the estate. Purchasers from him will take subject to the rights of the preterited child even though they be *bona fide* and for value. As to the child there is no will, hence no testamentary power, and the creditor's acts are void.[107] Only in California has this disastrous consequence been directly met. To both paragraphs of its statute has been added the sentence:

"*But such succession does not impair or affect the validity of any sale of property made by authority of such will in accordance with the provisions of Sec. 1561 of the Code of Civil Procedure.*"[108]

Although this may have been intended primarily to protect purchasers, it effectuates equally the testator's intent. California had already provided that his "obvious intent" should be observed,[109] but it is easy to imagine a case where the power of sale covers so large a portion of the estate that without this added sentence the court would be compelled to set aside the conveyance. Under the modified statute the child's share will be made up from the proceeds of sale. In the three states where contribution may be "in kind or in money" in the discretion of the court,[110] an even greater latitude of adjustment is made possible, not necessarily limited to the facts supposed above. But in other jurisdictions purchasers under a power are unprotected.

The second observation has to do with *statutory powers of appointment*. Suppose the parent to be the donee of such a power, the terms of which provide that on default of exercise the property concerned descends to the donee's child. The donee dies leaving a will, and the preterited child now claims his intestate share. If we are to be limited by a literal interpretation of the statute and apply it only to estates to which the child would have succeeded from the testator had there been no will, we must say that it does not apply, since no estate was here vested in the testator or in which he had a heritable title.[111] But on the contrary, a liberal construction more in keeping with the purpose to be served would not hesitate to include such property as the testator's, within the purview of these statutes.[112] Of course, where the will is entitled to operate only on the hand, or where the property involved does not pass on the child on default of appointment we have clear cases for the preterited child taking in the former and not in the latter.[113]

---

[107] Rowe v. Allison, 87 Ark. 206, 112 S. W. 395 (1908); Smith v. Olmstead, 88 Cal. 582, 26 Pac. 521 (1891); Smith v. Robertson, 89 N. Y. 602 (1882); Northrop v. Marquann, 16 Ore. 173, 18 Pac. 449 (1888); Worley v. Taylor, 21 Ore. 589, 28 Pac. 903 (1892); Robeno v. Marlatt, 136 Pa. 35, 42, 20 Atl. 512 (1890); Wood v. Tredway, 111 Va. 526, 533, 69 S. E. 445 (1910). In this latter the power of sale was for reinvestment. In Robeno v. Marlatt, *supra*, there is a dictum that a power of sale for payment of debts would be valid as against the pretermitted heir. So held in Coates v. Hughes, 3 Binn. 498 (Pa. 1811).

[108] CALIF. CIV. CODE (1923) §§ 1306, 1307, as amended by Stat. 1905, at 606. The code commissioners' note states this is intended to change the rule of Smith v. Olmstead, 88 Cal. 582, 26 Pac. 521 (1891). CODE CIV. PRAC. 1561 deals with a sale by the executor without an order of court but subject to confirmation in order to pass title. *Quaere*: Does the 1905 amendment apply to the validity of the sale of property already made, merely? That is, made prior to the moment of succession? If so, purchasers are protected against the succession of posthumous children only. The fact that in the Smith case the child was afterborn but not posthumous indicates, in the light of the commissioners' note, that the protection is not limited to posthumous children.

[109] See *supra* note 100.

[110] See *supra* note 98.

[111] This view has been accepted in Massachusetts and Rhode Island. Sewell v. Wilmer, 132 Mass. 131, (1882); Blagge v. Miles, Fed. Cas. No. 1479 (C. C. D. Mass. 1841); Rhode Island Hospital Trust Co. v. Anthony, 142 Atl. 531 (R. I. 1928). In this latter case the donee was also the settlor of one of two trusts for her life, with a power of appointment over the remainder.

[112] This view is well advanced in a note on the Rhode Island case above, in (1928) 27 MICH. L. REV. 231. In support of it see Young's Appeal, 39 Pa. 115 (1861) and *In re* Paine's Price, 184 Mass. 350, 68 N. E. 833 (1903) where a more liberal construction was given the statute in view of a clause in the settlement of the power, that the property was to descend to those who would have been entitled to it if it had been the absolute property of the donee. See also Yerxa v. Youngman, 241 Mass. 25 (1921).

[113] Since this paper is primarily an effort to analyze these statutes, rather than to interpret them, many interesting points of construction are not discussed. The following are illustrative:
a. Do these statutes apply to wills of both parents? Most use the term "testator," a few "any person," occasionally "father," or "father and mother," and occasionally "parent." See local wordings; also see Cotheal v. Cotheal, 40 N. Y. 405 (1869); McLean v. McLean, 207 N. Y. 365, 101 N. E. 178 (1913); and Ellis v. Darden, 86 Ga. 368, 12 S. E. 652 (1890).
b. Does the adoption of a child operate to affect the will? See Kales, *Rights of Adopted Child*, (1914) 9 ILL. L. REV. 149, 154; note (1922) 22 COLUMBIA LAW REV. 187; (1920) 33 HARV. L. REV. 724; (1919) 17 MICH. L. REV. 713; (1923) 23 MICH. L. REV. 926; (1925) 3 WIS. L. REV. 235, 236 (1911) 30 L. R. A. (N.S.) 916; (1913) 43 L. R. A. (N.S.) 1195; (1919) 57 A. L. R. 1280; also Surman v. Surman, 114 Ohio St. 579, 151 N. E. 708 (1926); CONN. GEN. STAT. (1918) § 4946, vania expressly include adopted children. CONN. GEN. STAT. (1918) § 8333, amended Laws 1927, c. 227; PA. STAT. (Supp. 1928) § 8333.
c. Does the birth of an illegitimate child operate to affect the will? See notes in (1922) 18 A. L. R. 91 and (1925) 38 A. L. R. 1344; also *In re* Patterson, 282 Pa. 396, 128 Atl. 100 (1925) and note in (1925) 73 U. PA. L. REV. 443.
d. Do these statutes apply to gifts *causa mortis*? Bloomer v. Bloomer, 2 Bradf. 339, 346 (N. Y. 1853).
e. What constitutes "provision" under these statutes. Trust for the child, Jackson v. Jackson, 2 Pa. 212, 214 (1845); *In re* Patterson, 282 Pa. 396, 128 Atl. 100 (1925); Matter of Mulqueen, 213 App. Div. 637, 211 N. Y. Supp. 228 (1st Dept. 1925). Discretion in wife to provide for child, Rawls v. Durham etc. Ins. Co., 189 N. C. 368, 127 S. E. 254 (1925); Walker v. Hall, 34 Pa. 483 (1859).

Looking back, then, over this group of statutes* we find the following classification of provisions: the child concerned is typically afterborn, including posthumous. Variations include (a) prior children, (b) a distinction among after-born children in respect to whether a prior child was living or not at the time of execution of the will, (c) children absent and reported dead and (d) special provisions dealing with posthumous children alone. The typical effect is partial intestacy, occasionally total intestacy or revocation. The typical estate is in fee simple with a variation in the form of a special limitation. Avoidance of this effect is normally by three means, (a) provision in the will, (b) provision outside the will (usually by settlement) and (c) an intent to disinherit, normally appearing from the will. Regulatory provisions are provided in the form of a right to contribution from the beneficiaries

Gift to children as a class, McLean v. McLean, 207 N. Y. 365, 101 N. E. 178 (1913); In re Brown's Will, 133 Misc. 457, 233 N. Y. Supp. 145 (1929); Brown v. Nelms, 86 Ark. 368, 112 S. W. 373 (1908). Exclusion as a provision, Block v. Block, 3 Mo. 594 (1834). Insurance for children, Sorrell v. Sorrell, 193 N. C. 439, 137 S. E. 306 (1927); In re Brant's Estate, 121 Misc. 102, 201 N. Y. Supp. 60 (1923). Contingent remainder, In re Donges's Estate, 103 Wis. 497, 79 N. W. 786 (1899); Osborn v. Jefferson Nat. Bank, 116 Ill. 130, 4 N. E. 791 (1886).

1. From the standpoint of Conflicts of Laws, do these statutes deal with the form of a will, with its revocation, or do they impose restrictions on the power to devise? Strong v. Strong, supra note 91; German Mut. Ins. Co. v. Lushey, 20 Ohio C. C. 198 (1900), affirmed 66 Ohio St. 233, 239, 64 N. E. 120 (1902); Shackelford v. Washburn, supra note 91.

* The following enumeration of statutes dealing with pretermitted heirs will supplement the notes:
Ala. Civ. Code (1923) §§ 10,585, 10,586; Alaska Comp. Laws (1913) § 569; Ariz. Rev. Stat. (1919) §§ 1214-1216; Ark. Dig. Stat. (Crawford & Moses, 1921) §§ 10,506-10,508; Cal. Civ. Code (1923) §§ 1306-1308; Colo. Comp. Laws (1922) § 5189; Conn. Gen. Stat. (1918) § 4946, amended Laws 1927, c. 227; Del. Rev. Code (1915) §§ 3251-3253; Ga. Ann. Code (Park's 1914) § 3923; Idaho Comp. Stat. (1919) §§ 7826-7828; Ill. Rev. Stat. (Callaghan, 1924) c. 39, § 10; Ind. Ann. Stat. (Burns, 1926) §§ 3457, 3458; Iowa Code (1924) § 11,858; Kan. Rev. Stat. Ann. (1923) c. 22, §§ 240, 243; Ky. Stat. (Carroll, 1922) §§ 4842, 4847, 4848; La. Rev. Civ. Code (Merrick's 3d ed. 1925) arts. 1493, 1495, 1705; Me. Rev. Stat. (1916) c. 79, §§ 8, 9, 11; Mass. Gen. Laws (1921) c. 191, §§ 20, 21, 28, amended Acts 1925, c. 155, § 1; Mich. Comp. Laws (1915) §§ 13,790-13,792; Minn. Stat. (Mason, 1927), §§ 8744-8746; Miss. Ann. Code (Hemingway, 1927) §§ 3567, 3568; Mo. Rev. Stat. (1919) § 514; Mont. Rev. Codes (1921) §§ 7008-7011; Neb. Comp. Stat. (1922) §§ 1266-1268; Nev. Rev. Laws (1912) §§ 6215-6217; N. H. Pub. Laws (1926) c. 297, §§ 10, 11, at 1202; N. J. Comp. Stat. (1910) 5865, "Wills," §§ 20, 21; N. M. Ann. Stat. (1915) §§ 1849, 5870; N. Y. Decedent's Estate Law (Laws 1909, c. 18) §§ 26, 28; N. C. Cons. Stat. Ann. (1919) §§ 141-143, 4169; N. D. Comp. Laws Ann. (1913) §§ 5674-5676; Ohio Gen. Code (1926) §§ 10,561, 10,563, 10,564; Okla. Comp. Stat. Ann. (Bunn, 1921) §§ 11,254-11,256; Ore. Laws (Olson, 1920) § 10,101; Pa. Stat. (Supp. 1928) § 8333; Porto Rico Rev. Stat. Codes (1911) §§ 3874, 3876, 3898, 3899; R. I. Gen. Laws (1923) §§ 4312-4314; S. C. Code of Laws (1922) §§ 5344, 5345; S. D. Rev. Code (1919) § 636; Tenn. Ann. Code (Shannon, 1917) §§ 3925, 3926, 4170; Tex. Rev. Civ. Stat. (1925) §§ 8291-8293; Utah Laws (1917) §§ 6340-6342; Vt. Gen. Laws (1917) §§ 3426-3428; Va. Code Ann. (1924) §§ 5242, 5243; Wash. Comp. Stat. (Remington, 1922) § 1402; W. Va. Code Ann. (Barnes, 1923) c. 77, §§ 16, 17; Wis. Stat. (1927) §§ 238.10-238.12.

under the will in proportion to the value of their shares, with a variation of "abatement" and contribution in kind or in value. Normally no device for realizing this right is expressed, with a few statutes naming various tribunals as having jurisdiction.

When analysis and discussion result in adverse criticism they often impose the arduous burden of offering a better solution. It would seem that this is particularly true in the field of statutes. Since presumed intent is the basis of the American statutes, the following provisions are suggested, in the light of the foregoing discussion, as embodying those elements best calculated to carry it out.

1. *Children born prior to and unprovided for in the will.* Whenever a testator omits to provide in his will or otherwise for any of his children, by birth or adoption, then living, or for the issue of any such deceased child, and it appears that such omission was not intentional but occasioned by accident or mistake, such child or issue of such deceased child shall succeed to the same share of the testator's estate, both real and personal, that he would have succeeded to if the testator had died intestate.

2. *After-born children unprovided for in the will.* Whenever a testator has a child born or adopted after the making of his last will, either in his lifetime or after his death, and dies leaving such child surviving unprovided for by settlement and neither provided for in the will nor mentioned therein in such fashion as to show an intent not to provide, such child succeeds to the same share of the testator's estate, both real and personal, that he would have succeeded to if the testator had died intestate.

3. *Apportionment of share of omitted child, etc.* (a) When any child, or issue of a child, is entitled to a share of the testator's estate by virtue of the two preceding sections, such share shall be assigned to him by the probate court, resort being had to the testator's estate in the following order:

1. Property not disposed of by the will, if any;

2. If this be insufficient, property given by the will to the residuary devisee and legatee;

3. If this be insufficient, property given by the will to other devisees and legatees in proportion to the value they respectively receive under the will;

(b) Provided, however, that when the clear intent of the testator would be otherwise defeated, the court may in its discretion:

Case 1:05-cv-03939-CM   Document 202-15   Filed 02/22/2008   Page 5 of 9

On an appeal by the petitioner, a judgment dismissing, rendered by the Superior Court, City and County of San Francisco, was reversed, without submitting the case to the jury, by the Supreme Court of California, cause remanded for a new trial, by the Supreme Court of California, Bank, which, in an opinion by Peters, J., held that extrinsic evidence offered by the petitioner, was admissible to show that her omission from the will was unintentional, and that, under the evidence, the question whether the petitioner was a pretermitted heir was one of fact which should have been submitted to the jury.

Spence, Schauer, and McComb, JJ., dissented.

## SUBJECT OF ANNOTATION
Beginning on page 616

Admissibility of extrinsic evidence to show testator's intention as to omission of provision for child

## HEADNOTES
Classified to ALR Digests

Trial § 242 — taking case from jury.
1. A case is properly taken from the jury when the issues are determinable by a sole question of law, but not if the case requires determination of one or more factual issues.
[Am Jur, Trial (1st ed §§ 293–303)]

Evidence § 764 — presumptive heir omitted from will — intention of testator — extrinsic evidence.
2. Extrinsic evidence is admissible to prove a testator's lack of intent to omit from his will any provision for a presumptive heir.
[Am Jur, Wills (1st ed §§ 572–604)]

Wills § 307(1) — pretermission — what constitutes.
3. A pretermission can exist only through oversight; it occurs only when there has been an omission to provide, absent an intent to omit.

Evidence § 764 — child omitted from will — intention of testator — extrinsic evidence.
4. Since, in a pretermission case, the mistake or accident which caused a testator to omit provision for his child cannot possibly appear from the will itself, extrinsic evidence for this purpose must be contemplated by the pretermission statute.
[Annotated]

Evidence § 795 — extrinsic evidence — circumstances attending execution of will.
5. Extrinsic evidence is always ad-missible for the purpose of proving the circumstances under which a will was executed.
[Am Jur, Wills (1st ed §§ 1040–1119)]

Evidence § 795 — child omitted from will — circumstances attending execution — extrinsic evidence.
6. Evidence by petitioner, claiming as testator's daughter and pretermitted heir, of relationship and family circumstances from which the jury could find that for some 32 years testator and his daughter each believed the other was dead, is admissible as showing a part of the circumstances under which the will was executed.
[Annotated]

Evidence § 762 — ambiguous will — extrinsic evidence.
7. Extrinsic evidence is admissible to explain any ambiguity arising on the face of a will, or to resolve a latent ambiguity which does not so appear.
[Am Jur, Wills (1st ed §§ 1040–1119)]

Evidence § 762 — ambiguous will — omission of child — extrinsic evidence.
8. Where a testator states in his will "that I am a widower and that I have no children, issue of my marriage, and that his deceased's wife's name was Pearl, without mentioning a previous wife or any issue by such, and where petitioner in an heirship pro-

---

ESTATE OF ERNEST J. TORREGANO, Deceased

GLADYS TORREGANO STEVENS, Appt.,

v

ALFRED TORREGANO, Respt.

California Supreme Court (In Bank) — May 24, 1960
54 Cal 2d 234, 5 Cal Rptr 137, 352 P2d 505, 88 ALR2d 597
Rehearing denied June 22, 1960

## SUMMARY

Determination of heirship was sought by the instant petition of one claiming as a daughter of the testator, unintentionally omitted from the will. A statute provided for a child of the testator omitted from his will to succeed to the same share as if the decedent had died intestate, "unless it appears from the will that such omission was intentional." The petitioner introduced evidence to show that the testator's mother, at the time the petitioner was a young child, falsely told the testator that the petitioner and her mother were dead, and falsely told the petitioner's mother that the testator was dead, so that, at the time of the execution of the will and the death, the testator and the petitioner were unaware of each other's continued existence,

fully disinherit any or all of his natural heirs if he so desires, in order to avoid the operation of the pretermission statutes an intent to omit provision for testator's child must appear on the face of the will, and it must then appear from words which indicate such intent directly or by implication equally as strong.
[Am Jur, Wills (1st ed §§ 572–604)]

Wills § 158 — construction — disinheritance of children.
21. Before what are considered to be the "natural rights" of children to share in the inheritance of their immediate ancestors shall be taken away, the intent that they shall not so share must appear on the face of the will strongly and convincingly.
[Am Jur, Wills (1st ed § 1170)]

Wills § 307(1) — disinheritance of child — pretermission statute.
22. Before a testator may be said to have intentionally omitted his child from benefits under a will, it must appear on the face of the will that he had such child in mind at the time of executing the will, and having such child in mind he omitted to provide.
[Am Jur, Wills (1st ed §§ 572–604)]

Wills § 307(1) — pretermission — rules of interpretation.
23. A cardinal rule of interpretation, applicable to cases involving pretermission, requires that the court not only look to the clause under scrutiny, but in determining the testator's intent, that it interpret that clause in relation to every other expression in the will.
[Am Jur, Wills (1st ed §§ 572–604)]

Wills § 307(1) — pretermission — rules of interpretation.
24. In determining the question of intentional omission of a natural heir from benefits under a will, more than in any other situation involving the interpretation of wills, the court must be guided by the individual facts of each case, and not by previous interpretation of similar words or phrases.
[Am Jur, Wills (1st ed §§ 572–604)]

Wills § 158 — presumptive heir — construction against disinheritance.
25. Mere general phraseology in a will, standing alone, cannot be construed to indicate an intent to omit provision for a presumptive heir under every possible circumstance, even if such phraseology includes the word "heirs."
[Am Jur, Wills (1st ed § 1170)]

Wills § 157(2) — construction — ascertaining intent from will as a whole.
26. Strict adherence to the technical meaning of words and phrases must give way, if inconsistent with testator's intent as shown by the will as a whole.
[Am Jur, Wills (1st ed § 1137)]

Wills § 307(1) — pretermitted heir — claimant as contestant.
27. One claiming to be a pretermitted heir is not a contestant within the meaning of a provision of the will leaving $1 to any person contesting the will.
[Am Jur, Wills (1st ed §§ 572–604)]

Wills § 307(1) — pretermitted heir — provision leaving nominal sum to claimants.
28. A clause of a will leaving $1 to any person asserting any claim "by virtue of relationship" may not be found as a matter of law to have been intended to apply to a purported daughter whom the testator believed to be dead and who is claiming as a pretermitted heir.
[Am Jur, Wills (1st ed §§ 572–604)]

Wills § 158 — child of testator — construction against disinheritance.
29. It could not be said, as a matter of law, that the word "relationship" as used by testator in the contest clause of his will was used with intent to exclude his child where, construing the will as a whole, giving effect to all of its clauses, such language was meaningless unless it was intended to convey the impression that testator was childless.
[Am Jur, Wills (1st ed § 1170)]

Wills § 307(1) — pretermitted heir — testator's belief as to death.
30. One claiming as a pretermitted heir cannot be regarded as having been intended to be excluded from the estate, where it appears that the testator thought her to be dead.
[Am Jur, Wills (1st ed §§ 572–604)]

Wills § 307(1) — no contest and disinheritance clauses — distinction.
31. A no contest clause in a will differs radically from a clause of disinheritance; the true disinheritance clause often fails to name a specific ceeding seeks to offer evidence that she was testator's daughter by a wife named Viola, a latent ambiguity appears which must be resolved by recourse to extrinsic evidence.
[Annotated]

Evidence § 764 — presumptive heir omitted from will — intention of testator — extrinsic evidence.
9. The several statutes protecting presumptive heirs against unintentional omission from a will disclose a clear legislative intent that evidence outside the will should be admissible to prove a reason or cause for such omission, other than an intentional omission.
[Annotated]

Evidence § 764 — presumptive heir omitted from will — intention of testator — extrinsic evidence.
10. Where the case of testator's purported daughter claiming as a pretermitted heir rests on the contention that she was omitted from the will because testator thought her dead, which, if true, explained rationally his failure to provide for her, absent an intent to disinherit her, she is entitled to prove such lack of intention, which could not appear from the face of the will, by resort to extrinsic evidence.
[Annotated]

Wills § 307(1) — claim as pretermitted heir — omission or inclusion in will.
11. A clause in a will leaving $1 "to any person or persons who may contest . . . or assert any claim . . . by virtue of relationship or otherwise," may not be deemed, as a matter of law, necessarily to include a close relative whom the testator mistakenly thought dead and who claims as a pretermitted heir.
[Am Jur, Wills (1st ed §§ 572–604)]

Wills § 307(1) — omission of lineal descendants — legislative policy.
12. By statutes unknown to the common law, protecting both spouse and children, and to some extent grandchildren, from unintentional omission from a share in testator's estate, the legislature has indicated a continuing policy of guarding against the omission of lineal descendants by reason of oversight, accident, mistake, or unexpected change of condition.
[Am Jur, Wills (1st ed §§ 572–604)]

Wills § 307(1) — succession by pretermitted issue — object.
13. The sole object of the statutes relating to succession by pretermitted issue is to protect children against omission or oversight which not infrequently arises from the peculiar circumstances under which the will was executed.
[Am Jur, Wills (1st ed §§ 572–604)]

Wills § 307(1) — succession by pretermitted issue — effect of value of property.
14. Neither the pecuniary value nor the lack thereof, of that which the child of a testator receives by succession, has any effect on the object of the statutes relating to succession by pretermitted issue, the purpose being merely to prevent unintentional omission.
[Am Jur, Wills (1st ed §§ 572–604)]

Wills § 307(1) — remembrance of children — public policy.
15. Public policy requires that a testator remember his children at the time of making his will.
[Am Jur, Wills (1st ed §§ 572–604)]

Wills § 307(1) — provision for wife and children — public policy.
16. It is the policy of the law that wife and children must be provided for by testator.
[Am Jur, Wills (1st ed §§ 572–604)]

Wills § 307(1) — provision for spouse and children — public policy.
17. The law does not favor the failure to provide for surviving spouse or children.
[Am Jur, Wills (1st ed §§ 572–604)]

Wills § 158 — construction in favor heirs.
18. The heirs of a testator are favored by the policy of the law and cannot be disinherited on mere conjecture.
[Am Jur, Wills (1st ed § 1170)]

Evidence § 207 — presumption — intention of testator.
19. There is a presumption of law that failure to name a child or grandchild in a will was unintentional.
[Am Jur, Wills (1st ed §§ 1160, 1161)]

Wills § 307(1) — disinheritance of natural heirs — power of testator — pretermission statutes.
20. Although a testator may law-

54 Cal 2d 234, 5 Cal Rptr 151, ~~~ ~~~ ~~~, ~~
presumptive heir, and yet may be interpreted to exclude the same because of the use of words indicating an intent to disinherit.
[Am Jur, Wills (1st ed §§ 572-604)]

**Wills § 158 — unnamed presumptive heir — construction against disinheritance.**

32. An unnamed presumptive heir may not be excluded from the will unless the will contains either some express language of intention to omit provision for all but those named, or a complete testamentary plan from which it clearly appears that testator would adhere to such plan even in the event it should later appear that he had a presumptive heir who was unknown to him.
[Am Jur, Wills (1st ed § 1170)]

**Wills § 307(1) — disinheritance — provision for payment of nominal sum.**

33. A mere bequest of a nominal sum to anyone who might "claim by reason of relationship" does not constitute an intent to disinherit under other circumstances than those contemplated in the will.
[Am Jur, Wills (1st ed §§ 572-604)]

**Wills § 307(1) — pretermitted heirs — intent to disinherit.**

34. A judgment may not be rendered against one claiming as pretermitted heir unless the will includes a specific clause of disinheritance, a general clause expressing an intention to disinherit all those not named, a clause affecting all persons who might have taken in the event testator died intestate, a clause expressing some doubt regarding the identity of testator's heirs and providing for disinheritance or nominal sums to such persons who may prove to be his heirs, reasons for leaving the entire estate to the named beneficiaries, which reasons exclude the intent to leave anything to other presumptive heirs, or a complete testamentary plan from which the court is bound to find that testator would have left nothing to any other person even though there were presumptive heirs of whose existence he was unaware.
[Am Jur, Wills (1st ed §§ 572-604)]

**Trial § 242 — petition by one claiming as pretermitted heir — taking case from jury.**

35. Upon petition for determination of heirship by one claiming as a pretermitted heir, error is committed in taking the case from the jury, where the question whether the petitioner, a purported daughter of the testator, was a pretermitted heir, depends on such questions of fact as whether she was the person she claimed to be, whether testator believed her dead, or whether he intended that the phrase "by relationship or otherwise" in the contest clause of his will should include her.
[Am Jur, Wills (1st ed §§ 572-604)]

## BRIEFS OF COUNSEL

Bergen Van Brunt, of San Francisco, for appellant:

Where plaintiff's causes of action set forth that the executor of the estate was required to rely upon information furnished by defendant as to who decedent's heirs were, that defendant concealed and withheld information as to plaintiff's existence and status as decedent's sole child, that as a result no notice of any of the probate proceedings was sent to plaintiff and she had no knowledge of them, that by such action defendant acquired a sizeable portion of decedent's estate, and that defendant's acts precluded plaintiff from appearing and establishing her claim as a pretermitted heir and from objecting to any such prior distribution of property to defendant, the complaint set forth equitable causes of action entitling plaintiff to relief against defendant. Larrabee v Tracy, 21 Cal 2d 645, 649, 134 P2d 265; Olivera v Grace, 19 Cal 2d 570, 575, 122 P2d 564, 140 ALR 1328; Westphal v Westphal, 20 Cal 2d 393, 397, 126 P2d 105; Purinton v Dyson, 8 Cal 2d 322, 326, 65 P2d 777, 113 ALR 1230; Caldwell v Taylor, 218 Cal 471, 23 P2d 758, 88 ALR 1194; Re Ross, 180 Cal 651, 658, 182 P 752; Re Walker, 160 Cal 547, 549, 117 P 510, 36 LRA NS 89; Campbell-Kawannanakoa v Campbell, 152 Cal 201, 208, 92 P 184; Bacon v Bacon, 150 Cal 477, 480, 89 P 317; Harkins v Fielder, 150 Cal App 2d 528, 535, 310 P2d 423; Bennett v Hibernia Bank, 47 Cal 2d 540, 558, 305 P2d 20; Carney v Simmonds, 49 Cal 2d 84, 315 P2d 305; Sohler v Sohler, 135 Cal 323, 326, 67 P 282; Cardozo v Bank

EXH E

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| NANCY MIRACLE,<br>aka, NANCY MANISCALCO GREEN, | )<br>)<br>) | CIVIL NO. 92-00605ACK<br>(Non-Motor Vehicle Tort) |
| Plaintiff, | )<br>) | CERTIFICATE OF SERVICE |
| vs. | )<br>) | |
| ANNA STRASBERG, as<br>Administratrix, c.t.a. of the<br>Last Will and Testament of<br>MARILYN MONROE. | )<br>)<br>)<br>)<br>) | |
| Defendant. | )<br>) | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date a copy of the foregoing documents were duly served on the following party by mail to his/her address indicated below:

IRVING SEIDMAN,
Attorney at Law
600 Third Avenue
New York, New York  10016   and;

MILTON YASUNAGA
CADES SCHUTTE FLEMING & WRIGHT
1000 Bishop Street
Honolulu, Hawaii  96813

Attorneys for Defendant

DATED: Honolulu, Hawaii, 11/30/92

JOHNAARON M. JONES
Attorney for Plaintiff

## NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

### To all to whom these presents shall come. Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, under the seal of the National Archives and Records Administration, that the attached reproduction(s) is a true and correct copy of documents in his custody.



| Signature | |
|---|---|
| NAME | DATE |
| *PATRICIA S. BAILEY* | February 6, 2008 |
| TITLE | |
| Acting Director, Records Center Operations | |
| NAME AND ADDRESS OF DEPOSITORY | |
| Office of Regional Records Services<br>Pacific Region (San Francisco)<br>1000 Commodore Drive<br>San Bruno, CA 94066-2350 | |

*U.S. GPO 834-122/79063.    NA FORM 13040 (10-86)

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANT'S MOTION TO DISMISS COMPLAINT**

**INTRODUCTION**

Plaintiff Nancy Miracle aka Nancy Miracle Greene, contends that she recently discovered by evidence heretofore unknown, to her that she is the natural daughter of Marilyn Monroe, aka Nancy Cusumano.

Plaintiff's complaint alleges on page 3, paragraph 8, that plaintiff Nancy Miracle, aka Nancy Maniscalco Greene, was born on September 14, 19__ at Wykoff Heights Hospital in Ridgewood