UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SHAW FAMILY ARCHIVES, LTD., EDITH MARCUS, :
and META STEVENS,                                                 :
                                                                  :
                                                                  :
                                        Plaintiffs,              :  Index No. O5 CV 3939 (CM)
                                                                  :
                                                                  :
            -against-                                             :
                                                                  :
                                                                  :
CMG WORLDWIDE, INC., an Indiana Corporation     :
and MARILYN MONROE, LLC, a Delaware             :
Limited Liability Company,                                        :
                                                                  :
                                        Defendants.              :
                                                                  :
-------------------------------------------------------------------X


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANTS'
SUMMARY JUDGMENT CROSS-MOTION AND IN FURTHER SUPPORT OF
PLAINTIFFS' SUMMARY JUDGMENT MOTION ON THE PUBLIC DOMAIN CLAIM**

LAW OFFICES OF CHRISTOPHER SERBAGI
488 Madison Avenue, Suite 1120
New York, New York  10022
Tele: (212) 593-2112
Fax: (212) 308-8582

Attorneys for the Plainiffs

On the Brief:
Christopher Serbagi, Esq.
David Marcus, Esq.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... v

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ........................................................................................................... 4

I.   THE DEFENDANTS HAVE PRESENTED
NO EVIDENCE THAT THEY HAVE ARTICLE III STANDING ............................. 4

   A. THE DEFENDANTS' VAGUE ALLEGATION
THAT THEY "DESIRE" OR "INTEND" TO USE
UNSPECIFIED SAM SHAW PUBLIC DOMAIN
IMAGES IN CONJUNCTION WITH THEIR
PURPORTED MARILYN MONROE-RELATED
INTELLECUTAL PROPERTY IS EXACTLY WHAT
THE SECOND CIRCUIT HAS REPEATEDLY STATED
IS INSUFFICIENT TO ALLEGE A CASE OR  CONTROVERSY ...................... 5

      1.  The Defendants' Unsubstantiated "Desire" and "Wish"
To Include Unspecified Public Domain Photographs in
Unspecified License Arrangements Does Not Approach
The Constitutional Case or Controversy Requirement ....................................... 5

      2.  The Defendants  Have Submitted No Evidence
That They Had Licensing Arrangements At the
Time They Filed The Third Amended Complaint
Or That Public Domain Photographs Would
Increase The Value of Those Relationships ..................................................... 11

   B. THE DEFENDANTS HAVE SUBMITTED NO
EVIDENCE TO SUPPORT THEIR ARGUMENT
THAT THE SHAW FAMILY HAS ASSERTED
RIGHTS TO RIZZOLI AND BALLANTINE  SUCH
THAT THERE IS AN ACTUAL CONTROVERSY
BETWEEN THE PARTIES ............................................................................... 13

      1.  The Shaw Family Has Not "Refused to Acknowledge"
That Any Marilyn Monroe Images Are In The Public
Domain And Its Withdrawn Infringement Claim Did
Not Pertain To Rizzoli and Ballantine ........................................................... 14

      2.  The Defendants Mischaracterize The Nature of
the Shaw Family's Withdrawn Infringement Claims,
Which Did Not Relate To Rizzoli or Ballantine ............................................. 15

(i) The Defendants Mischaracterize The Shaw
Family Representations in Its 2005 Complaint,
Which Do Not Create A Justiciable Controversy Now ..........................15

(ii) The Shaw Family's Withdrawn Infringement
Allegation In The Second Amended Complaint
Has Nothing To Do With Rizzoli and Ballantine .................................16

(iii) The Defendants Falsely Represent That The Shaw
Family Accused CMG of Displaying Public Domain
Photographs on its Website....................................................................17

(iv) The Shaw Family's Request for the Court to Dismiss
Its Copyright Count "Without Prejudice" Does Not
Create a Justiciable Controversy Because The
Registrations At Issue Is Not Rizzoli or Ballantine
And The Shaw Family Made The Request After The
Defendants' Filed The Third Amended Complaint ................................19

3. The Shaw Family's Efforts to Re-Register Certain
Copyrights After The Time When the Defendants Filed
The Third Amended Complaint is Irrelevant to Whether
There Is A Case And Controversy Between the Parties ..................................19

4. The Defendants' Attorneys' Reliance On Some Shaw Family
Cease And Desist Letters To Third Parties Is Baseless
Because The Letters Do Not Assert Rights to Rizzoli
or Ballantine As Collective Works and The Defendants'
Principles Do Not Allege To Have Known About These Letters....................20

5. The Defendants' Repeated Admission That A Court
Has Already Determined Rizzoli To Be In The Public
Domain Clearly Obviates The Need For This Court
To Duplicate That Ruling ..............................................................................22

6. The Declaration of David Strasberg is Not Based On
His Personal Knowledge of a Justiciable Controversy
Nor Is He Competent To Testify As To Those Matters
As Required By Rule 56(e)............................................................................23

II.   THE DEFENDANTS HAVE NO ONE BUT THEMSELVES
      TO BLAME FOR THEIR NEGLIGENT FAILURE TO NAME
      THECOPYRIGHT OWNERS IN A LAWSUIT TO CANCEL
      THOSE COPYRIGHTS EVEN THOUGH THE SHAW
      FAMILY REPEATEDLY PROVIDED THIS INFORMATION
      IN EACH OF THEIR THREE COMPLAINTS AND IN DISCOVERY ...................24

III.  THE COURT SHOULD NOT CONSIDER THE SUBST
      ANTIVE BASIS FOR THE DEFENDANTS' CLAIMS
      BECAUSE THEY REFUSED TO PROVIDE ANY PRIOR
      DISCLOSURE OF THESE POSITIONS, THEY ARE
      INCORRECT AS A MATTER OF LAW OR
      ENTIRELY INADMISSIBLE FOR PURPOSES
      OF SUMMARY JUDGMENT ...................................................................26

      A.   The Defendants Have Provided No Basis For
           This Court to Hold That Rizzoli is Public Domain.............................26

      B.   The Defendants Failed Meet Their Burden To
           Provide Admissible Evidence That Ballantine
           Is In The Public Domain.................................................................27

      C.   The Photographs That Sam Shaw Took In
           Connection With The Seven Year Itch Were
           Not Works For Hire .......................................................................28

      D.   Defendants Have Not Demonstrated That One
           Single Monroe/Shaw Photograph Was Both
           Published In the 1950s Without Notice And Was
           Done So With Sam Shaw's Knowledge and Consent ........................29

IV.   THE DEFENDANTS' NOTICE OF CROSS-MOTION
      IS SO VAGUE THAT THE COURT CAN DISMISS
      THE DEFENDANTS' SUMMARY JUDGMENT
      MOTION ON THAT BASIS ALONE ......................................................30

V.    THE SHAW FAMILY IS ENTITLED TO ITS
      ATTORNEY'S FEES UNDER THE COPYRIGHT
      ACT BECAUSE DEFENDANTS HAD NO BASIS
      TO ALLEGE THE EXISTENCE OF A JUSTICIABLE
      CONTROVERSY AND THEY OTHERWISE
      ACTED IN BAD FAITH.......................................................................31

      A.   Attorney's Fees Are Warranted Because The
           Defendants Fabricated The Allegations In the
           Third Amended Complaint Concerning The
           Existence of A Justiciable Controversy ...........................................31

iii

1.  The Defendants' Fabricated Paragraph 4
    of The Third Amended  Complaint..............................................................31

2.  The Defendants Fabricated Paragraph 22
    of the Third Amended Complaint...............................................................33

3.  David Strasberg's Recent Sworn Declaration
    Directly Contradicts His Sworn 30(b)(6) Testimony,
    Which Itself Contradicts The Third Amended Complaint............................34

CONCLUSION.....................................................................................................36

## TABLE OF AUTHORITIES

**CASES:**

Adsani v. Miller,
    94 Civ. 9131 (DLC),1996 U.S. Dist. LEXIS 13740, *
    (S.D.N.Y. 1996) ..................................................................................................... 35

Chamilia v. Pandora Jewelry, LLC,
    No. 04-CV-6017, 2007 U.S. Dist LEXIS 71246,
    *65 (S.D.N.Y. 2007) ................................................................................................ 6

Dowdey v. Phoenix Films, Inc.,
    78 Civ. 699-CSH, 1978 U.S Dist. LEXIS 16388, *11
    (S.D.N.Y. 1978) ..................................................................................................... 30

Little v. Twentieth Century-Fox Film Corp.,
    1996 U.S. Dist. LEXIS 454 (S.D.N.Y. 1996) ......................................................... 35

Lujan v. Defenders of Wildlife,
    504 U.S. 555, 112 S.Ct. 2130, 119 L.E.2d 351 (1992) ...................................... 4, 10

Medimmune, Inc. v. Genentech, Inc.,
    127 S.Ct. 764, 166 L.Ed. 2d 604, 609-10, 2007 U.S LEXIS 1003 (2007) ..................... 13, 14

Newman-Greene, Inc. v. Alfonzo-Larrain,
    490 U.S. 826, 104 L. Ed. 2d 893, 109 S.Ct. 2218 (1989) ................................... 6, 21

Palmer v. De Witt,
    47 N.Y. 532 (1872) ............................................................................................... 30

Pocketmedicine.Com, Inc. v. John Wiley & Sons, Inc.,
    2006 U.S. Dist. LEXIS 13617, *8 (S.D.N.Y. Mr. 23, 2006) ............................... 9, 10

Re-Alco Industries, Inc. v. National Center for Health Education, Inc.,
    812 F. Supp. 387 (S.D.N.Y. 1993), .......................................................................... 10

Rule v. Brine, Inc.,
    85 F.3d 1002 (2d Cir. 1996) .................................................................................. 35

Shaw v. Rizzoli Int'l Publ'ns, Inc.,
    No. 96 Civ. 4259 (JGK), 1999 WL 160084 (S.D.N.Y. Mar. 23, 1999) ................... 22

Starter Corporation v. Converse, Inc.,
    84 F.3d 592 (2d Cir. 1996) ...................................................................................... 8

Technical Tape Corp. v. Minnesota Minning & MFG. Co.,
    200 F.2d 876, *6 (2d Cir. 1952 ................................................................................ 7

Textron Lycoming  Reciprocating Engine Div., Avco Corp v.
    United Auto., Aerospace and Agric. Implement
    Workers of Am., Int'l Union, 523 U.S. 653,
    140 L.Ed. 2d 863, 118 S.Ct. 1626 (1998) .................................................. 6, 19, 23

Trans-Orient marine Corp. v. Star trading & Marine, Inc.,
    925 F.2d 566 (2d Cir. 1991) ................................................................................... 35

W. Interactive Corp. v. First Data Res., Inc.,
    972 F.2d 1295 (Fed. Cir. 1992) ................................................................................ 7

<u>Wembley, Inc. v. Superba Cravats, Inc.</u>,
    315 F.2d 87 (2d Cir. 1963)......................................................................... 8
<u>Windsurfing Int'l v. AMF Inc.</u>,
    828 F.2d 755 (Fed. Cir. 1987).  ......................................................... 8, 9

## <u>STATUTES:</u>

17 U.S.C. § 202 and 204 ............................................................................. 25

Plaintiff/Consolidated Defendant Shaw Family Archives, Ltd. and Consolidated Defendant Bradford Licensing Associates (the "Shaw Family") respectfully submit this memorandum of law in opposition to the Defendants' motion for summary judgment and in further support of the Shaw Family's motion for summary judgment on Count I of the Defendants/Consolidated Plaintiffs Marilyn Monroe, LLC's ("MMLLC") and CMG Worldwide, Inc.'s ("CMG") (together the "Defendants") Third Amended Complaint and for attorney's fees under the United States Copyright Act, and for such other relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

It turns out that the Defendants fabricated not one, but <u>all</u> the allegations in the Third Amended Complaint regarding the existence of a justiciable controversy. The Defendants have presented no evidence of standing in over three years of discovery, either in response to Shaw Family interrogatories, in their document production, or by 30(b)(6) testimony. Even now, when faced with judicial scrutiny of their fabricated allegations, all the Defendants can do is submit two highly generalized party affidavits that sharply contrast with the specific allegations in the Defendants' Third Amended Complaint and fall far short of demonstrating a justiciable controversy between the parties. The Defendants' substantive arguments that Sam Shaw images are in the public domain are either flatly false or based entirely on inadmissible and unreliable evidence.

First, taking everything that the Defendants say as true, they still lack standing as a matter of law. All Messrs. Strasberg and Roesler say in their respective declarations is that they "wish" or "intend" to use Sam Shaw images of Marilyn Monroe. However, Defendants fail to identify any Sam Shaw image they would use but for the purported threat of legal action posed by the Shaw Family. Moreover, Strasberg's and Roesler's vaguely expressed "intent" and "wish" are exactly what the Second Circuit has repeatedly held is insufficient to find a justiciable controversy. Defendants must have engaged in "meaningful preparation," such that they are "actively preparing to produce the

article in question." Strasberg and Roesler cannot identify a single Sam Shaw image of Marilyn Monroe they "wish" to use, must less demonstrate that they have taken the meaningful preparatory steps to distribute those images, as the Second Circuit requires. Finally, Messrs. Strasberg and Roesler do not even allege that they had a "wish" to use Sam Shaw images at the time they filed the Third Amended Complaint, which is when a justiciable controversy must have existed.

The Strasberg and Roesler affidavits also fail to provide <u>any evidence</u> that Defendants had any apprehension of suit by the Shaw Family concerning the Rizzoli and Ballantine registrations, which are the only registrations the Defendants identify in the Third Amended Complaint as being in the public domain. While the Defendants' <u>attorneys</u> cite to a number of irrelevant cease and desist letters the Shaw Family sent to Ebay, these letters were <u>all</u> timely produced by the Shaw Family in this litigation, which Strasberg and Roesler do not even claim to have seen or relied upon prior to filing the Third Amended Complaint. The letters are also inadmissible because the Defendants declined to take the depositions of their purported authors to ascertain whether they were drafts, or whether they were even sent or received. Indeed, many of the letters and documents that the Shaw Family produced were drafts, but the Defendants would not know that because they did not bother to investigate the issue – they merely attached them to an attorney affidavit. Defendants did not produce these letters from their files nor did they cite to them in response to the only contention interrogatory the Shaw Family propounded on the issue.

The Defendants cite to one letter that the Shaw Family allegedly sent to CMG, but the letter had nothing to do with the Shaw Family asserting any copyrights, much less the only ones at issue in this case, Rizzoli and Ballantine. Not surprisingly, the Defendants also fail to tell the Court that the Shaw Family letter at issue was a response to CMG's continued insistence that Defendants' own a right of publicity in Marilyn Monroe in the United States, even after this Court's May 2, 2007 Decision and Order. Moreover, that letter was dated <u>after</u> the Defendants filed the Third Amended

2

Complaint, and is therefore irrelevant as a matter of well-settled law. In short, all the "evidence" that the Defendants submit to support the existence of a justiciable controversy is irrelevant and inadmissible. As set forth in the accompanying preclusion motion, the Defendants failed to disclose during discovery any of the evidence or argument upon which they currently rely and are therefore precluded as a matter of law. Defendants refused to answer any of the Shaw Family's numerous interrogatories on the public domain issue, including a contention interrogatory, and, not surprisingly, their 30(b)(6) witnesses knew nothing about what their attorneys now argue.

Second, the Defendants either have no substantive basis for their claims that certain Sam Shaw images are in the public domain or fail to provide the Court with admissible evidence as required by Rule 56(e). As an initial matter, anything Defendants assert as to works that are not Rizzoli and Ballantine is irrelevant because they did not identify those works in the Third Amended Complaint. As for Ballantine, all the Defendants can muster after three years of discovery is to submit a paralegal declaration, which attaches inadmissible search report results from the Copyright office web page. The Defendants did not bother to have the Copyright Office conduct the search or to certify the results, as is customary for use in litigation. Circular 22 from the Copyright Office expressly characterizes the type of search result that Defendants' paralegal conducted as untrustworthy. The rest of the evidence that the Defendants submit is highly incomplete or inadmissible. While there is clearly no evidence of a justiciable controversy, there is also no evidence that the Defendants' substantive assertions have any merit whatsoever. While it is true that a court in 1999 stated that certain Rizzoli images are public domain, the Defendants have provided no reason whatsoever for the Court to duplicate that ruling, especially since the Defendants keep characterizing that decision as conclusive.

Finally, the Defendants express outrage that the Shaw Family argued that the Defendants attorney's failed to name the true copyright owners. The Defendants' outrage is misplaced and

3

should not be directed at the Shaw Family, but at their own attorneys for failing to name as

defendants the actual copyright owners, despite clear and repeated notice over the course of almost

three years.  The Defendants even asked the Shaw Family in an interrogatory that it served on

January 11, 2007 to "state all facts concerning your ownership in any copyrights in the

Monroe/Shaw Photographs."  On March 2, 2007, the Shaw Family responded by citing to documents

that clearly state that Edith Marcus and Meta Stevens are the copyright owners, which the Shaw

Family clearly reiterated in all three complaints it filed in this action.  That the Defendants would

have the Court blame the Shaw Family for failing to name the copyright owners under these

circumstances speaks volumes.

## ARGUMENT

### I.  THE DEFENDANTS HAVE PRESENTED NO EVIDENCE THAT THEY HAVE ARTICLE III STANDING

The only evidence the Defendants submit that is relevant to the existence of a justiciable

controversy are declarations by CMG's Mark Roesler and MMLLC's David Strasberg.  But those

declarations are so vague and generalized that they would be barely sufficient to overcome a motion to

dismiss, much less the Supreme Court's requirement that a party set forth by affidavit or other evidence

specific facts of injury to overcome a summary judgment motion in the context of a  declaratory judgment

action.  In the Lujan case, the court stated:

> At the pleading stage, general factual allegations of injury stemming from
> the defendant's conduct may suffice, for on a motion to dismiss we
> "presum[e] that general allegations embrace those specific facts that are
> necessary to support the claim.  **In response to a summary judgment
> motion, however, the plaintiff can no longer rest on such mere
> allegations, but must set forth by affidavit or other evidence specific
> facts, F.R.C.P. 56(e), which for purposes of the summary judgment
> motion will be taken as true.**

# FILED SEPERATELY PURSUANT TO PROTECTIVE ORDER

P. 5

FILED SEPERATELY
PURSUANT TO
PROTECTIVE ORDER

P. 6

Jewelry, LLC, No. 04-CV-6017, 2007 U.S. Dist LEXIS 71246, *65 (S.D.N.Y. Sept. 24, 2007) (holding that declaratory judgment action must meet actual case or controversy requirement at the time the complaint was filed"); West Interactive Corp. v. First Data Res., Inc., 972 F.2d 1295, 1297 (Fed. Cir. 1992) (same); Technical Tape Corp. v. Minnesota Minning & MFG. Co., 200 F.2d 876, *6 (2d Cir. 1952) (same).

Second, even if the Defendants' assertion that they wish to use public domain photographs now were relevant to a case or controversy in August 2007, the Court should preclude the Defendants from making this litigation driven assertion because they were unable to disclose the specifics of this purported "intent" or "wish" during three years of discovery. In particular, the Defendants were unable to respond to the Shaw Family's contention interrogatory, in which it asked the Defendants to explain the basis for Count I. SUF ¶ 9-10; Serbagi Decl. at ¶ 13-14, Ex. J, p. 5, Ex. K, pp. 4-5. The Defendants did not produce a single document in discovery that would support their claim. Shaw Family's Additional Undisputed Statement of Undisputed Fact, dated March 4, 2008 ("ASUF"), ¶ 4; David Marcus Decl. at ¶¶ 16, 18, 22, Exs. O, Q, U. And finally, when the Shaw Family asked Mark Roesler at his 30(b)(6) deposition for a single photograph that Defendants seek to utilize that they have not because of the Shaw Family's purported assertion of rights, Mr. Roesler stated that he could not identify any particular work. ASUF ¶ 13; Serbagi Decl. at ¶ 18, Ex. O, pp. 175-76. Mr. Roesler testified:

> Q:    What photographs of Marilyn Monroe would CMG and MMLLC seek to utilize that they haven't utilized because the Shaw Family has asserted rights to them?
>
> MR. MINCH:  Objection
> .       .       .
> Q:    Sitting here today, can you identify one of those registrations or images of Marilyn Monroe?
>
> MS. COLBATH:  Objection.
> MR. MINCH:  Objection.

7

A:    Not sitting here at this moment.

Id. MMLLC's 30(b)(6) deponent generally referred to CMG for information about licensing issues and had nothing himself to contribute to the issue.   SUF ¶ 12; Serbagi Decl. ¶ 17, Ex. N, 162-63, 166-67, 169; David Marcus Decl. ¶ 23, Ex. V, pp. 203, 214.

Third, what the Defendants do not appear to appreciate is that "ability" to produce a product is not sufficient for a declaratory judgment action.  The law is clear that an actual case or controversy exists only where a party has engaged in a "course of conduct evidencing a definite intent and apparent ability to commence use" of the property in question.  Starter Corp. v. Converse, Inc., 84 F.3d 592, 595-96 (2d Cir. 1996).  To demonstrate an actual intent and ability to imminently engage in the allegedly infringing conduct, the party must show more than a vague or general desire to use the property, it must be **engaged in meaningful preparation such that it is actively preparing to produce the article in question."  Id. at 596 (emphasis added).  See Wembley, Inc. v. Superba Cravats, Inc., 315 F.2d 87, 90 (2d Cir. 1963) (dismissing complaint because it did not contain specific facts "from which the court can determine that it is about to infringe or take some action which is prejudicial to the interests of the patentee.");  see Starter Corp., 84 F.3d at 596-97 (holding that a party seeking declaratory relief of trademark non-infringement must do more than express a "vague and general desire" to use the product, it must be "engaged in meaningful preparation, such that is it actively preparing to produce the article in question").  The present testimony by Defendants' principles Strasberg and Roesler that they "intend" and "wish" to license unspecified Sam Shaw photographs is precisely the highly generalized and vague assertion that the Second Circuit has repeatedly held is insufficient to justify declaratory relief.  For example, in the seminal Windsurfing case,  the plaintiff sued the defendant for infringement on the patent for a sailboard and the defendant counterclaimed, seeking a declaration that the plaintiff's trademark had become generic.  Windsurfing Int'l v. AMF Inc., 828 F.2d 755, 758 (Fed. Cir. 1987).  In its

complaint and counterclaim, the defendant AMF stated that "AMF is interested in using the mark

descriptively in connection with its products" and it cited testimony that AMF has a "desire" to use

the "windsurfer" mark in its advertising and promotion, and that the other member of the trade

have the same "desire." Id. at 758. The district court ordered the plaintiff's trademark cancelled,

but the Second Circuit reversed on grounds that "the record contained no evidence that AMF has

engaged in a course of conduct or indeed, any conduct, at all, that has brought it into adversarial

conflict with WSI respecting WSI's trademarks." Id. The court further held:

> AMF's **mere desire to use** "windsurfer" and "windsurfing" in
> connection with its products does not constitute a course of conduct
> placing AMF in legally adversarial conflict with WSI respecting WSI's
> trademark registrations. AMF in its complaint and counterclaim, did
> not present a justiciable controversy. On the contrary, it impermissibly
> asked the district court for an advisory opinion.

Id. at 759 (emphasis added). The law makes absolute sense, otherwise, one could artificially create

a case or controversy just by alleging that they "intend" or "desire" or "wish" to utilize a product

when that is not the case, just as these Defendants do now.

Cases in this District that have addressed the issue of whether a party has standing to request that a

copyright is in the public domain also firmly support the Shaw Family's position. The cases repeatedly

state that a party seeking a declaration that a copyrighted work is in the public domain must demonstrate

preparatory steps they have taken revealing a course of conduct evidencing a "definite intent and apparent

ability to commence use." Pocketmedicine.Com, Inc. v. John Wiley & Sons, Inc., 2006 U.S. Dist. LEXIS

13617, *8 (S.D.N.Y. Mar. 23, 2006). "Major stress should be placed on the definite intention of plaintiff

to take immediate action to utilize [a product's] potential and this intention should be evident from the

preparatory steps outlined in its complaint." Id. at *8-*9 (citations and internal quotations omitted)

(emphasis added). In the Pocketmedicine.Com case, the court granted the Defendant's motion to dismiss

a claim that its copyrighted book was in the public domain because, while the Plaintiff alleged an

intention to publish some portion of the Plaintiff's book, as do the present Defendants, it did not allege

that Plaintiff "has engaged in a course of conduct evidencing a "definite intent and apparent ability to

commence use" of the Book. Id. at *8 (citations and quotations omitted). Likewise, in Re-Alco

Industries, Inc. v. National Center for Health Education, Inc., 812 F. Supp. 387, 395 (S.D.N.Y. 1993),

Judge Mukasey granted the defendants' motion to dismiss a declaratory judgment claim that the

plaintiff's manuals were in the public domain because "plaintiff has failed to plead a justiciable

controversy because it has not established that it would immediately begin production." Id. Likewise, the

present Defendants' naked suggestion that they "wish" and "desire" to license unspecified Sam Shaw

public domain photographs is insufficient to overcome the Shaw Family's motion for summary judgment.

Lujan, 504 U.S at 594 (holding that generalized allegations may suffice on a motion to dismiss, but in

response to a summary judgment motion, the plaintiff cannot rest on such mere allegations, but must set

forth specific facts).

The Court should grant the Shaw Family's motion for summary judgment because Messrs.

Roesler and Strasberg failed to identify any specific preparatory steps to license the Sam Shaw

photographs. While the Defendants' memorandum of law correctly cites black letter law that a party

need not actually infringe before it is entitled to declaratory relief (Defs' Memo, at 24), these Defendants

did not even identify the images they purportedly seek to license, much less any preparatory steps they

have taken to license those photographs. Instead, the Defendants' principles vaguely state that they

"intend" or "wish" to "use various public domain photographs of Marilyn Monroe taken by Sam Shaw . .

." If the Defendants had sufficiently concrete plans to license Shaw Family images, they would have at

least (i) identified the specific Sam Shaw images of Marilyn Monroe they seek to use; (ii) described how

they had already collected those images and prepared them for scanning on their web site; and (iii)

described interest in those images by their current licensees or a specific market for the images. The

Defendants did none of that because they have no such plans, which is exactly why CMG's 30(b)(6)

10

witness, Mark Roesler, testified at his deposition that he <u>could not think of a single Marilyn Monroe image that CMG would utilize</u>, but for the Shaw Family's purported assertion of rights to those images. ASUF ¶ 13; Serbagi Decl. at ¶ 18, Ex. O, pp. 175-76. Mr. Roesler's carefully worded declaration is consistent with his inability to identify at his deposition a single Sam Shaw photograph of Marilyn Monroe that Defendants seek to use.

Finally, the Defendants' declaratory judgment is clearly limited to Rizzoli and Ballantine because they are the only specific works that the Defendants identified in the Third Amended Complaint to be in the public domain. Their failure to allege that they would license those particular photographs is alone fatal to their opposition to the Shaw Family's summary judgment motion.

### 2. The Defendants Have Submitted No Evidence That They Had Licensing Arrangements At the Time They Filed The Third Amended Complaint Or That Public Domain Photographs Would Increase The Value of Those Relationships

David Strasberg attaches some uncertified trademark registration printouts to his declaration and proclaims that MMLLC "owns copyrights to a number of collections . . ." but he does not provide a single copyright registration that MMLLC purportedly owns. Messrs. Roesler and Strasberg also fail to allege that (i) MMLLC is currently licensing trademarks or copyrights to anyone; (ii) that these licensing arrangements existed at the time they filed the Third Amended Complaint, as required; or (iii) that adding Sam Shaw images would in any way increase the value of those purported licensing relationships. Without some quantifiable added value to the images that the Defendants seek to utilize (which they have not identified), it is hard to conceive of any reason why the Court would exercise its discretionary authority.

Both Defendants fail to even allege that they have any current or ongoing licensing arrangements with anyone concerning any intellectual property. All David Strasberg states is that MMLLC is "actively engaged in the business of licensing and otherwise exploiting the trademarks

11

discussed above." Strasberg Decl., at ¶ 19. However, Mr. Strasberg does not allege that MMLLC has any active trademark licensing clients nor does he attach any trademark licensing agreements to his declaration. His carefully chosen phrase "actively engaged in the business" is entirely cryptic, without meaning, and obviously attorney driven. As for Mark Roesler, he also fails to allege that CMG has any ongoing licensing arrangements. Mr. Roesler merely states he "intends" to actively market Sam Shaw images "in conjunction with MMLLC's Marilyn Monroe-related trademarks and copyrights." Roesler Decl., at ¶ 14. The three licensing agreements that Mark Roesler attaches to his declaration at Exhibits C-E are dated May 22, 2001, November 22, 2006, and January 1, 2006. The agreement at Exhibit C is for a right of publicity grant that expired by its express terms on December 31, 2005, and is therefore plainly irrelevant here. Finally, all the licensing agreements were dated prior to the Court's May 2, 2007 Decision and Order that held that MMLLC has no right of publicity and California did not pass the newly enacted right of publicity legislation until October 2007, after the Defendants filed the Third Amended Complaint on August 1, 2007. The license agreements were all expressly for a right of publicity in Marilyn Monroe, and any purported copyrights and trademarks were provided in connection therewith. All the agreements that the Defendants provided are invalid on that basis alone. Without a right of publicity in the image of Marilyn Monroe, it would make no sense for anyone to license images of Marilyn Monroe from MMLLC nor would it make sense to license trademarks by themselves. That is why the Defendants have failed to produce any license agreements that were for solely trademarks or solely for copyrights.

Thus, the best these Defendants can now do is to vaguely allege, without any specific facts whatsoever, that they "intend to use" or are "engaged in the business." This alone is insufficient to overcome summary judgment. Moreover, Defendants failure to identify a single licensing arrangement in force when the Defendants filed the Third Amended Complaint on August 7, 2007 is

itself fatal because Defendants argue that they would use Sam Shaw images only to supplement the licensing of its other purported intellectual property.  The deficiencies in Defendants' threadbare allegations are monumental, and could fill a treatise on what is insufficient to justify a declaratory judgment in an intellectual property case.

As set forth in the accompanying preclusion motion, the Defendants' prior refusal to identify in response to a Shaw Family interrogatory the very intellectual property upon which they now purport to own is itself fatal to their claim.  ASUF, ¶¶ 6-7; David Marcus Decl. at ¶ 8, 12, Ex. G, pp. 5-6, Ex. K, pp. 4-5; SUF ¶¶ 9-10, 13, Ex. J, p.5, Ex. K, pp. 4-5.

**B.**   **THE DEFENDANTS HAVE SUBMITTED NO EVIDENCE TO SUPPORT THEIR ARGUMENT THAT THE SHAW FAMILY HAS ASSERTED RIGHTS TO RIZZOLI AND BALLANTINE SUCH THAT THERE IS AN ACTUAL CONTROVERSY BETWEEN THE PARTIES**

The Defendants have also failed to identify any admissible evidence in support of their position that they have a reasonable apprehension of suit as to Rizzoli and Ballantine.  The Defendants' effort to apply the highly distinguishable <u>Medimmune</u> decision to the present scenario is unavailing.  Defs. Memo, at 15-16.  <u>Medimmune</u> only held that a licensee of a patent relating to pharmaceutical ingredients is entitled to seek a declaration that the licensor's patent is invalid, unenforceable, or not infringed because the licensor sent a letter demanding royalties.  <u>Medimmune, Inc. v. Genentech, Inc.</u>, 127 S.Ct. 764, 166 L.Ed. 2d 604, 609-10.  The only aspect of <u>Medimmune</u> that was in any way surprising, to some, was that it held that the licensee did not need to terminate the license agreement prior to seeking a declaratory judgment.  <u>Id.</u>  If anything, <u>Medimmune</u> supports the Shaw Family's position because it reiterates the longstanding requirement that a dispute between the parties must be "definite and concrete, touching the legal relations of parties having adverse legal interests; that it be real and substantial . . ."  <u>Id.</u> at 615.  Here, the Declarations of Messrs. Strasberg and Roesler demonstrate that there is no copyright

dispute at all, much less one that is real and substantial, as required by <u>Medimmune</u>. Moreover, in the present matter the Shaw Family never demanded royalty payments from the Defendants for any works, much less Rizzoli or Ballantine.

> **1.    The Shaw Family Has Not "Refused to Acknowledge" That Any Marilyn Monroe Images Are In The Public Domain And Its Withdrawn Infringement Claim Did Not Pertain To Rizzoli and Ballantine**

The Defendants argue that a justiciable controversy exists because of the Shaw Family's "refusal to acknowledge that any photographs of Marilyn Monroe taken by Sam Shaw have entered the public domain." Defs' Memo, at 16, 19-20. But the Court will notice that the Defendants submit no evidence whatsoever in support of their position, much less evidence that would be admissible at trial. When the Shaw Family asked CMG's 30(b)(6) deponent, Mark Roesler, the basis for that statement, he generally testified that it was based on Bradford's "representations to other parties," but when pressed to identify who made these "representations," or even what the representations were, he testified that he could not provide any particulars or even <u>one instance</u> where the Shaw Family refused to acknowledge that an image is in the public domain, much less Rizzoli or Ballantine. SUF ¶¶ 19, 23, Serbagi Decl. at ¶ 18, Ex. O, pp. 170-73.

Second, it is not incumbent upon the Shaw Family to "acknowledge" to Defendants what images are public domain or not, but even if it was, the Defendants do not purport to have requested that information, either in discovery or at any time prior to this litigation. Moreover, even if the Defendants' false and entirely unsupported statement was true, a refusal to "acknowledge" that a photograph is in the public domain does not approach the standard necessary to justify a declaratory judgment. If a refusal to "acknowledge" that a copyright is in the public domain constituted a justiciable controversy, it would eviscerate the Article III "case or controversy" requirement entirely.

14

Finally, because the Third Amended Complaint is limited to Rizzoli and Ballantine, the Defendants' failure to present any evidence that the Shaw Family refused to "acknowledge" that those specific works are in the public domain is itself fatal.  Defendants cannot possibly meet the Rule 56(e) requirement of a case and controversy as to Rizzoli and Ballantine by vaguely asserting, without any admissible evidence, that the Shaw Family has "refused to acknowledge" that certain unspecified works are in the public domain.

> **2.    The Defendants Mischaracterize The Nature of the Shaw Family's Withdrawn Infringement Claims, Which Did Not Relate To Rizzoli or Ballantine**
>
> > **(i)    The Defendants Mischaracterize The Shaw Family Representations in Its 2005 Complaint, Which Do Not Create A Justiciable Controversy Now**

The Defendants refer the Court to the Shaw Family's initial 2005 Complaint and argue that selected excerpts from three years ago create a justiciable controversy now.  Defs' Memo, at 17.  But the Defendants severely mischaracterize even these old excerpts.

The Defendants argue that the Shaw Family's 2005 complaint states that the Shaw Family owns copyrights in "all" photographs Sam Shaw took.  Id.  But the excerpts to which the Defendants refer do not say that at all.  The applicable portion of the complaint to which the Defendants refer states only that "Sam Shaw was the author and owner of all copyrights to the photographs he took."  SUF ¶ 2, Serbagi Dec., Ex. D, ¶ 11 (emphasis added).  The statement is obviously true, he was, but that does not mean that the Shaw Family asserts that every single photograph Sam Shaw took is protected by enforceable copyright now.  Paragraph 12 of the 2005 complaint, to which the Defendants also refer, simply states that "Plaintiffs Marcus and Stevens own and control the copyrights of photographs of Marilyn Monroe contained within the Shaw Collection, many of which have never been seen by the public."  Id. at ¶ 12.  Again, this just means that Ms. Stevens and Ms. Marcus own the applicable copyrights, not that they own a copyright in every single image that Sam

Shaw ever took. Finally, the Defendants emphasize in their brief a section of the Complaint where the cause of action heading states:

> Declaration as to Plaintiffs Exclusive Right to the Photographs Contained Within the Shaw Family Collection and Defendants' Lack of Publicity Regarding The Copyrights, and The Alleged Right of Publicity, Or the Alleged Right to Publish.

Id. at p. 7. But what the Defendants do not tell the Court is that a later section of the 2005 complaint clarifies exactly what the Shaw Family sought in that complaint, which was simply to be left alone by Defendants and to be free to license the their iconic photographs without interference. Id. at ¶ 38. Indeed, it should not go unnoticed that the only reason that the parties are before the Court is because the Defendants so desired to monopolize the Marilyn Monroe market that they could not countenance the sale if a single tee shirt in Indiana with the Shaw Family name on it. In any event, the Defendants did not request that the Court declare that the entire Shaw Family collection contained valid and enforceable federal copyrights (as the Defendants imply), but just that Marcus and Stevens (i) have the right to "publish and issue licenses for the publication and use of those photographs" and (ii) that they own the copyright only to the single registration specifically described in the Complaint, which was only "Marilyn Among Friends." Id. at 9-10. Thus, the Defendants are essentially requesting the Court to declare a justiciable controversy as to Rizzoli and Ballantine now based on the assertion of an entirely different registration three years ago.

Accordingly, the Defendants' citation to the 2005 Complaint is of no moment now.

### (ii)    The Shaw Family's Withdrawn Infringement Allegation In The Second Amended Complaint Has Nothing To Do With Rizzoli and Ballantine

The Defendants also argue that the Shaw Family's withdrawn infringement claim from the Second Amended Complaint creates a case and controversy between the parties. Defs' Memo, at 18. As the Defendants readily admit, the Shaw Family's Second Amended Complaint asserts that the Defendants infringed a registration for a book entitled "Marilyn Among Friends." ASUF ¶ 5; Serbagi

16

Decl. ¶ 7, Ex. F, ¶¶ 15-19. The Defendants had ample opportunity to argue that "Marilyn Among Friends" or any of the particular photographs contained therein are in the public domain when the Defendants answered that Complaint. The Defendants passed on that opportunity. ASUF ¶ 5; David Marcus Decl. at ¶ 13, Ex. L. Having declined to assert that "Marilyn Among Friends" is in the public domain then, they now would have the Court believe that there is a justiciable controversy as to whether two completely separate works, Rizzoli and Ballantine, are in the public domain now. Accordingly, the Shaw Family's prior assertion as to "Marilyn Among Friends" is therefore irrelevant.

### (iii) The Defendants Falsely Represent That The Shaw Family Accused CMG of Displaying Public Domain Photographs on its Website

The Defendants falsely represent that the Shaw Family responded to the Defendants' placement of Rizzoli photographs on their website by "accusing Defendants of displaying Sam Shaw photos on its website, in the copyright infringement portion of the Shaw Family's Second Amended Complaint." Defs' Memo, at 19. Defendants' representation is, again, absolutely false. What actually happened is that on February 1, 2007, the Shaw Family served its first set of interrogatories, which included the following inquiry:

> State all facts concerning your public display licensing of any of the Monroe/Shaw Photographs without authorization, consent, involvement, or participation of Plaintiffs.

ASUF ¶ 8; Serbagi Decl. ¶ 8, Ex. G, p. 5. On March 19, 2007, Defendants responded to Interrogatory No. 1 as follows:

> In 2004, CMG displayed no more than 5 Monroe/Shaw Photographs on its corporate website for no more than 6 to 9 months. When CMG displayed those images, it had a reasonable belief that those images were in the public domain.

ASUF ¶ 9; Serbagi Decl. at ¶ 9, Ex. H, p. 4. The Shaw Family sent electronic communications to Defendants requesting them to identify the photographs they were referring to in their response to

the Shaw Family's Interrogatory.  By emails of July 6, 2007 and July 19, 2007, the Shaw Family

requested that the Defendants produce the images at issue.  ASUF ¶ 10; David Marcus Decl. ¶¶ 7, 9,

Exs. F, H.  The Defendants did not respond until July 27, 2007, when counsel for CMG stated that the

images are "apparently from Rizzoli" but he did not specify the specific images so that the Shaw

Family could not test the veracity of CMG's representation.  ASUF ¶ 10; David Marcus Decl. at ¶ 10,

Ex. I. The lack of a prompt response caused the Shaw Family to question the veracity of whether the

images were Rizzoli or not.  Thus, when the Shaw Family filed its Second Amended Complaint on

August 8, 2007, the Shaw Family merely quoted the Defendants' interrogatory response and stated

that the Defendants refused to identify the specific images.  The Shaw Family's Second Amended

Complaint simply stated:

> In their written responses to Plaintiffs' first set of interrogatories,
> Defendant CMG admitted to displaying in 2004 "no more than 5
> Monroe/Shaw Photographs on its corporate website for no more than
> 6-9 months.'  Despite Plaintiffs written requests, the Defendants have
> refused to identify the photographs at issue

ASUF ¶ 5, Serbagi Decl. at ¶ 7, Ex. F, ¶ 22.  It is regrettable that the Defendants would have the Court

believe that this exchange constitutes an "accusation," where the Shaw Family simply requested

that CMG produce the images in question.  But this type of blatant fabrication of the written record

is endemic on the Defendants part and is exactly why attorney's fees are appropriate.  Moreover,

that the Shaw Family did not sue or even threaten Defendants after they admitted that they posted

Rizzoli photographs on their website is strong evidence that there is  no case or controversy

between the parties.

**(iv)    The Shaw Family's Request for the Court to Dismiss Its Copyright Count "Without Prejudice" Does Not Create a Justiciable Controversy Because The Registrations At Issue Are Not Rizzoli or Ballantine And The Shaw Family Made The Request After The Defendants' Filed The Third Amended Complaint**

The Defendants argue that the Shaw Family's recent efforts to have the court withdraw its prior copyright infringement claim "without prejudice" on December 2007 somehow creates a justiciable controversy as of August 1, 2007, with respect to entirely different registrations. Defs' Memo, at 19-20. The Shaw Family asserted a copyright count based on books entitled "Marilyn Monroe Among Friends" and "In the Camera Eye." First, those registrations are not Rizzoli or Ballantine and are therefore irrelevant for that reason alone. Second, because the Shaw Family sought to withdraw those claims "without prejudice" in December 2007, it is irrelevant to the existence of a justiciable controversy when the Defendants filed the Third Amended Complaint in August 2007. <u>Textron Lycoming</u>, 523 U.S. at 660.

**3.    The Shaw Family's Efforts to Re-Register Certain Copyrights After The Time When the Defendants Filed The Third Amended Complaint is Irrelevant to Whether There Is A Case And Controversy Between the Parties**

The Defendants argue that the Shaw Family's efforts to register certain photographs in November 2007 is somehow evidence of a justiciable controversy when they filed the Third Amended Complaint in August 2007. Def's Memo, at 9-10. Again, this argument is baseless.

First, this is pure attorney argument because neither Strasberg nor Roesler testified that they even knew about the Shaw Family's purported efforts to re-register copyrights when they filed the Third Amended Complaint. Second, because there must have been a case or controversy at the time the Defendants filed the Third Amended Complaint on August 1, 2007, whatever the Shaw Family did in November 2007 is irrelevant. Third, the Shaw Family did not attempt to re-register either the Ballantine or Rizzoli books, which are the only books at issue in this case.   ASUF ¶ 45;

19

Second Declaration of Edith Marcus, dated March 3, 2008 ("Second Edith Marcus Decl."), ¶¶ 9, 11-13, Ex. F. An attempt to register single images cannot create a case or controversy as to entire books. The Defendants had the opportunity to attack the specific images in question. Having waived that opportunity, they cannot now cancel registrations that cover entire books. Fourth, the Defendants fail to cite to any case that has ever held that a mere attempt to register a copyright in any way supports the existence of a case or controversy.

### 4. The Defendants' Attorneys' Reliance On Some Shaw Family Cease And Desist Letters To Third Parties Is Baseless Because The Letters Do Not Assert Rights to Rizzoli or Ballantine As Collective Works and The Defendants' Principles Do Not Allege To Have Known About These Letters

In order to demonstrate that there is a justiciable controversy, the Defendants cite to a number of cease and desist letters addressed to eBay and a few third parties, all of which the Shaw Family produced in this litigation and are inadmissible for the purpose they are offered. Def's Memo, at 21-22.

First, the Defendants clearly did not rely on these third party letters prior to filing their Declaratory Judgment Action because they are all attached to an attorney affidavit, not the declarations of the Defendants. In both MMLLC's and CMG's current declarations and in their respective 30(b)(6) depositions, neither party purports to have even seen these letters, much less assert that they relied on them as the basis for their testimony that there is a justiciable controversy. Defendants did not produce these letters from their files nor did they cite to them in response to the only contention interrogatory the Shaw Family propounded on the issue.

Second, the letters are inadmissible because there is no evidence that they were even sent or received or that they are authentic and genuine because the Defendants declined to take the depositions of the authors Larry Shaw (when he was alive) and Bradford's Michelle Minieri or the recipients of any of those letters. ASUF ¶ 26; Declaration of David Marcus Decl. at ¶ 33; SUF ¶ 28;

Serbagi Decl. at ¶ 21.  Defendants had to know that these letters would be meaningless to the Court, yet they boldly pronounce in their memorandum that "the evidence is indisputable that the Shaw Family repeatedly threatens third parties with infringement actions, and attempts to extract money through baseless claims that it owns copyrights in what are unquestionably public domain photographs."[1]  Not only is the evidence not "indisputable," but the evidence is non-existent because the Defendants did nothing to prove that the letters were sent, received, drafts or final copies, complete, or are even authentic.

Third, the letters pertain to single images of Marilyn Monroe, so there is clearly no case or controversy as to the entire Rizzoli and Ballantine collections, which are the only specific works the Defendants identified in the Third Amended Complaint to be in the public domain.  ASUF ¶ 29; Serbagi Decl. at ¶ 12, Ex. I, at ¶¶ 23, 25.  Defendants do not even attempt to explain how a cease and desist letter to a third party over a single image can create a justiciable controversy between the present parties over entire books.  Moreover, if the Defendants felt sufficiently threatened by the cease and desist letters their attorneys cite, they should have sought to invalidate the specific images that those letters address.  They did not.  Taking every single fact the Defendants say as true, there is no evidence that the Defendants ever asserted rights to the entire Rizzoli and Ballantine collection so there can be no justiciable controversy between those parties over those collections.

Fourth, the Defendants cite to a letter that the Shaw Family allegedly sent to CMG (Strauss Decl., Ex. 42), but that letter was dated December 13, 2007, long after the Defendants filed the Third Amended Complaint in August 2007, and is therefore irrelevant as a matter of law.  Newman-Green, 490 U.S. at 830.

---

[1] The irony in this pronouncement is that it was these Defendants who obtained millions by proclaiming they had a right of publicity that they never and, it appears from documents they produced, knew they never had.

The CMG letter is also inadmissible and irrelevant for all the reasons that the third party cease and desist letters are inadmissible.  Most significantly, the Defendants even declined to disclose to the Court the context of the letter.  The letter was the Shaw Family response to a CMG electronic communication, dated November 21, 2007, in which CMG stated to one of the Shaw Family's Korean licensees that it <u>owned a right of publicity in Marilyn Monroe,</u> both in the United States and in other countries.  ASUF ¶ 42, Declaration of Michelle Minieri, dated March 4, 2008 ("Second Minieri Decl.") at  ¶¶ 6-7, Ex. A, Strauss Decl., Ex. 42.  The letter had nothing to do with asserting any particular copyrights.  <u>Id.</u>

### 5. The Defendants' Repeated Admission That A Court Has Already Determined Rizzoli To Be In The Public Domain Clearly Obviates The Need For This Court To Duplicate That Ruling

The Defendants argue that as a result of the decision of <u>Shaw v. Rizzoli Int'l Publ'ns, Inc.</u>, No. 96 Civ. 4259 (JGK), 1999 WL 160084 (S.D.N.Y. Mar. 23, 1999), "there can be no real dispute that at least 14 Monroe/Shaw Photographs appearing in the Rizzoli Book are in the public domain."  <u>Id.</u> Defs. Memo, at 6, 22.  At the 30(b)(6) deposition of Melissa Stevens, Defendants' attorney stated on the record:

> I don't think there is any real need to have significant questioning as to whether the Rizzoli works are in the public domain, because a court of competent jurisdiction already ruled that they are in the public domain.

ASUF ¶ 16, Strauss Decl. at Ex. 15, p. 38.  Defendants try to create a justiciable controversy by representing that the Shaw Family's 30(b)(6), Ms. Melissa Stevens, "refused to recognize that any of Sam Shaw's photographs appearing in the Rizzoli Book were in the public domain" (Defs. Memo, at 6), <u>but that is not what happened at all as is plainly evident from the transcript</u>.  When Ms. Stevens testified on December 17 and December 27, she did not deny what the prior Rizzoli decision held. (ASUF ¶ 15, Strauss Dec., Ex. 15, pp. 58-59).  She asked to see a copy of the Rizzoli decision, which MMLLC's counsel, for some inexplicable reason, declined to mark as an exhibit.  <u>Id.</u>  In any event, the

decision says what is says, and Ms. Stevens' inability, as a non-lawyer, to confirm the court's holding in the manner that suited MMLLC does not create a justiciable controversy. In any event, Ms. Stevens testified long after the Defendants filed their Third Amended Complaint on August 1, 2007, so her testimony is also irrelevant as a matter of law to the question of whether a justiciable controversy existed at the time the Defendants filed the Third Amended Complaint. <u>Textron Lycoming</u>, 523 U.S. at 660.

  **6.  The Declaration of David Strasberg is Not Based On His Personal Knowledge of a Justiciable Controversy Nor Is He Competent To Testify As To Those Matters As Required By Rule 56(e)**

  Putting aside the issue that Mr. Strasberg's declaration is fatally vague, the very language Mr. Strasberg employs shows that his lawyers spoon fed him the information he needed. Instead of saying that he <u>knew</u> something to be true or not , he repeatedly stated: "It is my understanding . . ." or "I understand that . . ." ¶¶ 21-22. While Mr. Strasberg does not explain from where his "understanding" derives, he does not even purport to represent that it came from his personal knowledge as required by Rule 56(e). Indeed, it could not have come from his personal knowledge because Mr. Strasberg testified at MMLLC's 30(b)(6) deposition that (i) he is not employed at MMLLC; (ii) he holds no position at the company; (iii) that he had no specific duties and responsibilities at the company; (iv) his sole responsibilities were to coordinate MMLLC's effort to overturn this court's May 2, 2007 decision in the legislature and "coordinating the activities of the various professionals with regard to this litigation;" (v) he became involved in MMLLC's licensing efforts only over the last few months only to the extent of "reviewing some of the documents that go to my mother for approval and seeing some sort of the flow of traffic there a little bit;" and (vi) he generally had very infrequent involvement with the company over the years. ASUF ¶ 18; David Marcus Decl. at ¶ 23, Ex. V, pp. 157, 201-04. Under these circumstances, the Defendants should not have even filed the utterly vague and conclusory Strasberg declaration, because it implicitly

represents that Ms. Strasberg is informed about MMLLC licensing issues, whereas his former

testimony revealed that his primary responsibility is to lobby the legislature and to coordinate the

litigation.

**II.    THE DEFENDANTS HAVE NO ONE BUT THEMSELVES TO BLAME FOR THEIR NEGLIGENT FAILURE TO NAME THE COPYRIGHT OWNERS IN A LAWSUIT TO CANCEL THOSE COPYRIGHTS EVEN THOUGH THE SHAW FAMILY REPEATEDLY PROVIDED THIS INFORMATION IN EACH OF THEIR THREE COMPLAINTS AND IN DISCOVERY**

The Defendants' irate response to the Shaw Family's argument that Defendants failed to sue

the copyright owners is protesting too much, but likely derives from the frustration they feel at

their inexplicable negligence.[2]  The Shaw Family named Edith Marcus and Meta Stevens as the true

copyright owners <u>in all three complaints it filed in this case and also in the April 22, 1998 trust</u>

<u>agreement, which the Shaw Family produced on October 30, 2007</u>.[3]   SUF ¶ 25; Declaration of Edith

Marcus, dated January 6, 2008 ("Edith Marcus Decl."), Ex. A; ASUF ¶ 19; David Marcus Decl. at ¶ 15,

Ex. N.  If that was not enough notice, the Defendants even asked the Shaw Family in an

interrogatory that it served on January 11, 2007 to "state all facts concerning your ownership in any

copyrights in the Monroe/Shaw Photographs."  ASUF ¶ 20, David Marcus Decl. at ¶ 5, Ex. D, p. 6.  On

March 2, 2007, the Shaw Family responded by citing to (i) paragraphs in its complaint where it

clearly states that Edith Shaw and Meta Stevens are the copyright owners and (ii) the trust

agreement that identified Ms. Shaw and Ms. Stevens as the copyright owners.  ASUF ¶ 20; David

Marcus Decl. at ¶ 6, Ex. E, p. 11; Serbagi Decl. at ¶ 5, Ex. D, ¶¶ 11-12.  The Defendants put so little

effort into prosecuting this issue, that the Shaw Family did not think Defendants would pursue their

---

[2] This is not the first time that the Defendants' careless behavior has prejudiced the Shaw Family. By way of one other example, the Defendants dragged the Shaw Family to White Plains to make the argument that its 30(b)(6) witness was unprepared.  SUF ¶ 29, Serbagi Decl. at ¶¶ 19-25, Exs. P-S. Ironically, it was Defendants who were unprepared because, much to Judge Fox's consternation, they did not bring the 30(b)(6) Notice to court so Judge Fox dismissed the issue from consideration. SUF ¶ 30, Serbagi Decl. at ¶ 25, Strauss Decl., Ex. 16, Tr. at 18-20, 22.

[3] The trust agreement bears production numbers BL 00045-59.

24

public domain claim at all.  Even so, Defendants boldly characterize the Shaw Family's argument

that the Defendants failed to properly identify these parties as "absurd" and even go so far as to say

that it should not be "countenanced."  Defs. Memo, at 2.  What should not be "countenanced" is

fabricating facts in a complaint to avoid a motion to dismiss, not making a legitimate legal argument

that it would be malpractice to omit.

First, the Defendants do not dispute that Edith Marcus and Meta Stevens obtained ownership

of the copyrights pursuant to a 1998 trust.  SUF at ¶ 25; Edith Marcus Decl., Ex. A; Serbagi Decl., ¶¶

5-7, Exs. D-F.  Instead, essentially ignoring all basic precepts of well established copyright law, they

argue that the 2002 settlement agreement that formed SFA provided that SFA was to "own and take

possession of . . . each and every photograph shot by either Sam Shaw or Larry Shaw during the

course of their respective careers," and that "all of the photographs involved in this collection shall

be the property – shall be deemed a part of the Shaw Family Archives."  Defs' Memo, at 27.  As the

Defendants well know, that document speaks of actual photographs, which is distinct from the

copyrights to those photographs.   17 U.S.C. § 202 makes that abundantly clear.  It states:

> Ownership of a copyright, or of any of the exclusive rights under a
> copyright, is distinct from ownership of any material object in which
> the work is embodied. Transfer of ownership of any material object,
> including the copy or phonorecord in which the work is first fixed, does
> not itself convey any rights in the copyrighted work embodied in the
> object . . .

17 U.S.C. § 202.  Moreover, for Meta Stevens and Edith Marcus to have validly transferred the

copyrights to the Shaw Family, that transfer would have to be in writing.  See 17 U.S.C. § 204.

Second, the Defendants curiously point to some equivocal statements made by Larry Shaw

and Bradford, but it is entirely unclear why the Defendants believe that these statements made by

third parties somehow override the 1998 trust agreement and basis principles of copyright law.

Finally, it is true that a court may add parties as is just, but it is not just to do so here. As set forth above, there was no basis for the Defendants' allegations concerning a justiciable controversy. For years, the Defendants failed to conduct any discovery whatsoever on their public domain claim. And none of the more than 60,000 documents Defendants produced related to the public domain claim. There is no reason whatsoever that the Shaw Family should have volunteered information that two large firms failed to identify in three complaints the Shaw Family filed, the trust agreement the Shaw Family produced, and in an interrogatory response the Shaw Family provided. To put it frankly, the negligence was severe and inexcusable, and that is what should not be countenanced, not the Shaw Family's failure to do Defendants' work for them.

III.   **THE COURT SHOULD NOT CONSIDER THE SUBSTANTIVE BASIS FOR THE DEFENDANTS' CLAIMS BECAUSE THEY REFUSED TO PROVIDE ANY PRIOR DISCLOSURE OF THESE POSITIONS, THEY ARE INCORRECT AS A MATTER OF LAW OR ENTIRELY INADMISSIBLE FOR PURPOSES OF SUMMARY JUDGMENT**

As set forth in the Shaw Family's accompanying prelusion motion, the Court should also disregard the Defendants' entire motion because they were unable or refused to provide any of these arguments during discovery. The Court should not permit the Defendants to expand their arguments into Shaw Family works that Defendants never before even identified as public domain. This is especially true because Judge Fox ever ordered that the Shaw Family produce documents other than Rizzoli and Ballantine, despite the Defendants' repeated requests that he do so. SUF ¶¶ 29-30, 32-33; Serbagi Decl. at ¶¶ 19-29, Exs. P-U; Strauss Decl., Ex 16. Thus, the issue of what claims are fairly at issue has already been decided, decided by Judge Fox, and is now the law of the case. SUF ¶¶ 29, 32-33; Serbagi Decl. at ¶¶ 25, 29 Strauss Decl., Ex. 16.

A.   **The Defendants Have Provided No Basis For This Court to Hold That Rizzoli is Public Domain**

The Defendants fail to provide any reason why Rizzoli images are in the public domain except to cite to a 1999 court case. Defs. Memo, at 6. Having failed to provide any reason why

Rizzoli is public domain except to say that their status has "already been determined," there can be no conceivable reason for this Court to duplicate that ruling. Def's Memo at 6. Indeed, the Court would have no basis to agree or disagree with the 1999 decision because the Defendants have provided none for the Court to examine. Instead, the Defendants repeat their mantra that "it has already been determined" and "there can be no real dispute" that Rizzoli is public domain. Id. What the Defendants expect the Court to do with that information is unclear.

### B. The Defendants Failed Meet Their Burden To Provide Admissible Evidence That Ballantine Is In The Public Domain

The sole basis for the Defendants' argument that Ballantine is in the public domain is the Declaration of Maureen Cloonan, a Loeb & Loeb paralegal. Ms. Cloonan purports to have "performed searches of the United States Copyright Office Website for copyright registrations regarding Ballantine." Defs' Memo, at 5. Ms. Cloonan's affidavit and the attachments thereto are inadmissible as a matter of law.

First, the search report printouts that Ms. Cloonan attaches to her declaration are not certified. Copyright Office Circular 22 provides that "[c]ertification of a search report is available for an additional fee. Certified searches are frequently requested to meet the evidentiary requirements of litigation." See David Marcus Decl. at ¶ 25, Ex. X., at 3. In fact, Circular 22 even states that "the complete absence of any information about a work in the Office records does not mean the work is unprotected" and "the work may have been registered under a different title or as part of a larger work." Id. at 6.

Second, Ms. Cloonan does not provide even a cursory explanation of the search methods she employed to search for the Ballantine renewal. She does not purport to have conducted such a search before or even that is understands how to properly conduct a search.

Third, Defendants are precluded from introducing any of this evidence because they neither produced Ms. Cloonan's declaration or the search results in discovery, nor produced this information in response to the Shaw Family's contention interrogatory or in response to 30(b)(6) questions. ASUF ¶¶ 1-4, 13, 18, 24; Serbagi Decl. at ¶ 13, 14, Ex. J, p. 5, Ex. K, pp. 4-5, David Marcus Decl. at ¶¶ 16, 18-19, 23, 31, Exs. O, R, Q, U, V, at pp. 157, 201-204; SUF 16, 18-19; Serbagi Decl. at ¶ 17-18, Ex. N, p. 28-24, Ex. O, at p. 47-59, 80-133, 158-187; Strauss Decl., Exs. 3, 4, 6, 7-10, 17, 28-31, 40, 40-42, 45; Declaration of Maureen Cloonan, dated February 12, 2008, Exs. A-M; Declaration of David Strasberg, dated February 12, 2008, Exs. A-K; Declaration of Mark Roesler, dated February 12, 2008, Exs. A-B.

## C. The Photographs That Sam Shaw Took In Connection With The Seven Year Itch Were Not Works For Hire

The Defendants argue that the photographs taken by Sam Shaw in connection with the Seven Year Itch are works made for hire and therefore did not belong to Sam Shaw. Defs. Memo at 11-13. The Court should not consider this issue because Defendants did not sue over these images and they refused to disclose this information during discovery. However, even the select evidence that the Defendants cite in support of this argument is not enough to create a triable issue of fact on the issue. First, Defendants cite to a complaint in which Sam Shaw sued St. Martins Press, but Sam Shaw stated in the very paragraphs that the Defendants cite that the rights in and to the photographs he took for The Seven Year Itch were his (¶ 7). Defendants do not cite other paragraphs where Mr. Shaw states that he is lawful copyright owner (¶¶23, 25, 28, 37), that others have reproduced those photographs without Mr. Shaw's permission (¶¶ 24, 29); that those photographs have never been published without Mr. Shaw's authority (¶¶ 26-27). Indeed, the entire complaint in that case is predicated on Sam Shaw's position that he is the rightful owner of *The Seven Year Itch* photographs, yet these Defendants represent to this Court that it is sufficient for summary judgment here. Second, the Defendants cite to a transcript of Sam Shaw's deposition in the Rizzoli case, but even there Mr. Shaw testified that when he was finished with the photographs that he, and not the

producers of *The Seven Year Itch*, owned the photographs.  Strauss Decl., Ex. 7, p. 7, Tr. at p. 78

(MMLLC (Shaw) 000611).  Defendants did not obtain a certified copy of the complaint or deposition

transcript they reply upon; nor did they bother to take the deposition of the people who would possibly be

knowledgeable of what happened in this case; nor did they bother to find out what happened in the case

itself.

The Shaw Family submits significant additional evidence attached to the Declaration of Edith

Marcus, dated March 3, 2008, that the producers of *The Seven Year Itch* and Sam Shaw had no

employment contract; that no one supervised his activities on the set; that the producer of the Seven Year

Itch admitted that Sam Shaw owned the copyrights; and that the director of the film would not even pay

Sam Shaw's expenses for his work on the set.  ASUF ¶ 43, Second Edith Marcus Decl. at ¶¶ 3-6, Exs. A-

C.  The Defendants did not assert in their Third Amended Complaint that Sam Shaw's photographs were

works for hire, so the Shaw Family did not produce these documents before.  Indeed, that the producers

of *The Seven Year Itch* never challenged Sam Shaw's ownership of the copyrights in the

photographs, even though Mr. Shaw openly and notoriously claimed ownership in those

photographs is itself sufficient to raise a triable issue of fact on the issue.  ASUF ¶ 43, Edith Marcus

Decl, at ¶¶ 3, 5-6, Ex. A, David Marcus Decl. at ¶ 3, Ex. B, Strauss Decl., Ex. 1, p.4, Ex. 34.

Finally, the Defendants failed to produce any of the documents upon which they rely in

discovery and failed to provide this information in response to a contention interrogatory.

### D.  Defendants Have Not Demonstrated That One Single Monroe/Shaw Photograph Was Both Published In the 1950s Without Notice And Was Done So With Sam Shaw's Knowledge and Consent

Finally, the Defendants attach Monroe photographs from a number of newspapers and magazines

to an attorney affidavit and argue that they may have been published without notice or not properly

renewed.  Defs. Memo, 6-7.

First, the Defendants do not pretend to know whether the photographs in the newspapers and magazines their attorney attaches to his declaration are in the public domain or not.

Second, even if certain Sam Shaw Monroe photographs were published without notice, the Defendants provide no basis for the Court to rule that Sam Shaw provided his consent for those publications. The notice requirements of the copyright act are applicable only to such copies of a work that are published "by authority of the copyright owner." The case law under the 1909 regime indicates that publication occurs when by consent of the copyright owner the original or tangible copies of a work are sold, leased, loaned, given away, or otherwise made available to the general public, or when an authorized offer is made to dispose of the work in any such manner, even if a sale or other such disposition does not in fact occur. Dowdey v. Phoenix Films, Inc., 78 Civ. 699-CSH, 1978 U.S Dist. LEXIS 16388, *11 (S.D.N.Y. July 25, 1978) ; Palmer v. De Witt, 47 N.Y. 532, 539 (1872). Therefore, any publication of works owned by Sam Shaw or his successors in interest that occurred without his/their consent, could not have initiated the initial 28-year copyright term of the 1909 Act to run and do thus not support the allegation that the works have fallen into the Public Domain.

## IV. THE DEFENDANTS' NOTICE OF CROSS-MOTION IS SO VAGUE THAT THE COURT CAN DISMISS THE DEFENDANTS' SUMMARY JUDGMENT MOTION ON THAT BASIS ALONE

The Defendants' opposition papers are baseless and it starts with the Notice of Cross-Motion, which is supposed to put the Shaw Family and the Court on notice of the relief the Defendants seek. However, the Defendants' Notice of Cross-Motion requests that the court generally declare that the Shaw Family does not own enforceable copyrights "to certain photographs of Marilyn Monroe taken by Sam Shaw" that were either published without notice prior to March 1, 1989 or that were covered by registrations that were not properly renewed. The Defendants' request that the Court make such an abstract ruling is tantamount to requesting a federal court to generally declare that a company's

30

trademarks that are generic are incapable of protection or a company's patents that are obviously invalid. The Defendants have provided no basis to request that the Court render such a generalized ruling.

**V.    THE SHAW FAMILY IS ENTITLED TO ITS ATTORNEY'S FEES UNDER THE COPYRIGHT ACT BECAUSE DEFENDANTS HAD NO BASIS TO ALLEGE THE EXISTENCE OF A JUSTICIABLE CONTROVERSY AND THEY OTHERWISE ACTED IN BAD FAITH**

The Shaw Family is entitled to its attorney's fees under the United States Copyright Act as the "prevailing party" because discovery has revealed that the Defendants fabricated not one, but <u>all</u> the allegations in the Third Amended Complaint regarding the existence of a justiciable controversy.[4]  As a result, the Shaw Family could not file a motion to dismiss, and was forced to expend hundreds of thousands of dollars defending against a claim that the Defendants knew they had no standing to assert. Attorney's fees are particularly appropriate because these Defendants wielded the threat of attorney's fees against the Shaw Family throughout this entire case, first in connection with their right of publicity cause of action and now on the public domain claim.  In this manner, the Defendants have abused the litigation process all for the purpose of bludgeoning the Shaw Family into a submissive litigation posture, negotiating a favorable settlement, and biding time while they lobby the New York Legislature to abrogate this Court's well reasoned May 2, 2007 Decision and Order.

**A.    Attorney's Fees Are Warranted Because The Defendants Fabricated The Allegations In the Third Amended Complaint Concerning The Existence of A Justiciable Controversy**

**1.    The Defendants Fabricated Paragraph 4 of The Third Amended Complaint**

Paragraph four of the Third Amended Complaint states, in part:

---

[4] The attorneys' fees that the Shaw Family has incurred to date on the public domain issue are approximately $293,580.00 for Christopher Serbagi and $167,320.00 for David Marcus.  The Shaw Family will submit detailed invoices substantiating these amounts if the Court so requires.

31

>Defendants have refused to recognize that certain photographs of Marilyn
>Monroe allegedly owned and controlled by Defendants are in the public
>domain and Defendants have asserted that Plaintiffs are prohibited from
>using such photographs without Defendants' consent.

SUF ¶ 5; Serbagi Decl. at ¶ 12, Ex. I, at ¶ 4.  When asked to identify the specifics of the representations

that Bradford made, Mr. Roesler stated: "I can't give you those specifics."  SUF ¶ 19, Serbagi Decl. at ¶

18, Ex. O, pp. 170-73.  Mr. Roesler also testified as follows:

Q:    You can't identify the particular photographs of Marilyn Monroe that my clients have refused to

recognize are owned and controlled by defendants; correct?

A:    Not at this moment in the deposition.

ASUF ¶ 12, Serbagi Decl. at ¶ 18, Ex. O, p. 173.  Paragraph four of the Third Amended Complaint also

states, in part:

>But for the Defendants' false claim of ownership of copyrights in and to
>photographs of Marilyn Monroe that have, on information and belief,
>entered the public domain, Plaintiffs would seek to utilize such public
>domain photographs commercially in connection with goods and services
>that are officially authorized by Plaintiffs.

SUF ¶ 5; Serbagi Decl. at ¶ 12, Ex. I, at ¶ 4.  Mr. Roesler provided the following
testimony:

Q:    Let's get into the details of that . . . What are the false claims of ownership of
      copyrights in and to photographs of Marilyn Monroe that you're referring to.
      When I say "you," I mean CMG,

A:    The licensing activities of the Shaw Family and the licensing representatives.

Q:    What particular copyrights are you referring to in this sentence that I just read into
      the record that you say we falsely claim ownership to?

A:    The various photographs that have been previously published.

Q:    Can you name, sitting here today, the title of one copyright registration that we
      have falsely claimed ownership to?

A:    Not sitting here today.

.        .        .

Q:    With respect to that portion I just read into the record, what photograph of Marilyn Monroe would CMG and MMLLC seek to utilize that they haven't utilized because the Shaw Family has asserted rights to them?

.    .    .

Q:    Sitting here today, can you identify one of those registrations or images of Marilyn Monroe?

A:    Not sitting here at this moment.

ASUF ¶ 13, Serbagi Decl. at ¶ 18, Ex. O, pp. 174-176.

### 2.    The Defendants Fabricated Paragraph 22 of the Third Amended Complaint

The Shaw Family pointedly asked CMG to provide the basis for paragraph 22 of the Third

Amended Complaint, namely CMG's position that the Shaw Family asserted copyrights in all its images:

Paragraph 22 of the Third Amended Complaint states:

> Shaw has asserted, either by itself or through Bradford, that it possesses valid and enforceable copyrights, pursuant to Copyright Act 17 U.S.C., § 101, et seq., in each and every photograph that constitutes the Monroe/Shaw photographs in the Shaw limited edition Marilyn/Norma Jean collection, hereinafter the Shaw Collection.

Serbagi Decl. at ¶ 12, Ex. I, ¶ 22. Mr. Roesler testified as follows:

Q: It's the Third Amended Complaint. Turn to paragraph 22, sir. It's on page 5, Can you read that into the record?

[paragraph 22 read into the record]

Q: Thank you. What was the basis for that?

A: I believe the basis is that representations that Bradford makes with respect to the collection.

Q: Well, what representations are you taking about.

Mr. Minch: Objection

Ms. Colbath: Objection

A: I don't have specific information.

Q: You don't have specific information of representations that Bradford has made, correct?

A: That's correct.

Q: Nor do you have specific representations that the Shaw Family Archives made; correct?

# FILED SEPERATELY PURSUANT TO PROTECTIVE ORDER

P. 34

FILED SEPERATELY
PURSUANT TO
PROTECTIVE ORDER

P. 35

Dated:  New York, New York
        March 4, 2008

Respectfully Submitted,


By: _____
Christopher Serbagi, Esq.
David Marcus, Esq.
Law Offices of Christopher Serbagi
488 Madison Avenue, Suite 1120
New York, New York  10022
Tele: (212) 593-2112
Fax:  (212) 308-8582
Attorneys for Defendants/Consolidated Plaintiffs
Shaw Family Archives, Edith Shaw, and Meta
Stevens