UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SHAW FAMILY ARCHIVES, LTD., EDITH
MARCUS and META STEVENS,

                        Plaintiffs, : Index No. O5 CV 3939 (CM)

      -against- : Hon. Colleen McMahon

CMG WORLDWIDE, INC., an Indiana Corporation
and MARILYN MONROE, LLC, a Delaware
Limited Liability Company,

                        Defendants.
-----------------------------------------------------------X

## SECOND DECLARATION OF CHRISTOPHER SERBAGI

I, Christopher Serbagi, an attorney duly licensed to practice law before this Court, declare the following facts under penalty of perjury:

1.    I represent Shaw Family Archives, Ltd., Edith Marcus, Meta Stevens and Bradford Licensing Associates (collectively referred to as the "Shaw Family") in the above-captioned matter and am fully familiar with the facts set forth herein. I respectfully submit this declaration on behalf of the Shaw Family in opposition to the Defendants' motion for summary judgment on Count 1 of their Third Amended Complaint and in further support of the Shaw Family's motion for summary judgment

**The Deposition of Shaw Family 30(b)(6) Witness Melissa Stevens**

2.    Defendants argue that the Shaw Family improperly directed its 30(b)(6) witness, Ms. Melissa Stevens, not to answer questions pertaining to non-Rizzoli and non-Ballantine books. Defs. Memo, at 33. What really happened is this: On December 10, 2007, the Shaw

Family made a motion with Judge Fox for a protective order to limit the Stevens' deposition testimony to Rizzoli and Ballantine. Declaration of Christopher Serbagi, dated January 8, 2008 ("Serbagi Decl."), at ¶ 20, Ex. Q. On December 15, 2007, the Shaw Family informed Defendants' attorney via electronic communication that it would not permit inquiry into non-Rizzoli and non-Ballantine works at her deposition. Declaration of David Marcus, dated March 4, 2008 ("David Marcus Decl."), at ¶ 21, Ex. T. On December 13, 2007, Shaw Family counsel wrote to Defendants' counsel again and suggested that the parties jointly contact Judge Fox prior to the Stevens' deposition in order to obtain a ruling. David Marcus Decl. at ¶ 20, Ex. S. Defendants' counsel rejected that offer and insisted on proceeding with the Stevens deposition knowing that it was the Shaw Family position that it would not answer questions outside of Rizzoli and Ballantine. Id.

      3.     The Defendants falsely state that Judge Fox admonished only the Shaw Family's attorney for directing a witness not answer questions (Def's Memo, at 33), but Judge Fox generally admonished both parties. Strauss Decl., Ex. 16, Tr. 8. In any event, it was MMLLC's attorney that insisted on proceeding with the Shaw Family deposition while its motion for a protective order was pending.

      4.     In radical contrast to the foregoing, MMLLC, without seeking a protective order and without notice, repeatedly directed its witness not to answer basic questions of how many copyrights MMLLC owned in images of Marilyn Monroe (Serbagi Decl. at ¶ 17, Ex. N, pp. 190-91); questions concerning MMLLC revenues (Serbagi Decl. at ¶ 17, Ex. N, pp. 177-180); whether MMLLC changed its business practices as a result of the Court's May 2, 2007 Decision and Order (Serbagi Decl. at ¶ 17, Ex. N, pp. 192-93); and questions concerning the newly enacted California right of publicity legislation (David Marcus Decl. at ¶ 23, Ex. V, pp. 196-97).

**The Defendants' Discovery Expedition Was Evidence of Bad Faith Because It Would Not Have Been Possible But For The Fabricated Statements In The Complaint Regarding A Justiciable Controversy**

5.   All the discovery that the Defendants' conducted on the public domain claim was frivolous for two reasons: First, it would not have been possible but for the Defendants' false allegations in the Third Amended Complaint concerning a justiciable controversy. Had the Defendants not made these false allegations, the Shaw Family would have immediately filed a motion to dismiss. Second, the Defendants misrepresented numerous material facts before Judge Fox concerning proceedings before this Court (to which he was not privy) in order to discover the entire Shaw Family collection. The Defendants continue their false accusations by misrepresenting to this Court what happened before Judge Fox.

6.   First, Defendants severely mischaracterize Judge Fox's repeated rejection of the Defendants' attempts to obtain access to the entire Shaw Family collection as "prevailing." Defs' Memo, at 33. The record is clear that the Defendants requested access to the entire Shaw Family collection, but Judge Fox repeatedly refused to order the Shaw Family to produce those documents. Serbagi Decl. at ¶¶ 19-29, Exs. P-U, Strauss Decl. at Ex. 16.

7.   It lso exceeds the bounds of permissible advocacy for the Defendants to state in their memorandum that as a "result of the Shaw Family's conduct, Magistrate Judge Fox ordered that they make their 30(b)(6) witness available for an additional four hours of testimony." What the transcript makes crystal clear is that at the end of the proceeding, Judge Fox agreed that the Defendants' request for additional discovery may be a fishing expedition, but that he would order Ms. Stevens produced for an additional half day, <u>only because she testified that she reviewed certain copyright binders in preparation for her deposition and the Defendants were entitled to testimony on that.</u>  Serbagi Decl. at ¶ 25, 28, Ex. U; Strauss Decl., Ex. 16, Tr. at 16.

8. But Judge Fox repeatedly refused Defendants request, not only for works outside of Rizzoli and Ballantine, but even for the production of the registration binders. Serbagi Decl. at ¶¶ 25, 29; David Marcus Decl. at ¶ 30; Strauss Decl., Ex. 16 at Tr. 16.

9. Second, the Defendants completely mischaracterized the entire nature of the case in a manner that this Court will immediately recognize as frivolous, but, Judge Fox did not recognize because he was not involved in non-discovery matters. In particular, the Defendants falsely told Judge Fox that the Shaw Family's photographs were relevant to <u>whether the Shaw Family had standing on the domicile issue</u>. Defendants' counsel stated:

> They are unwilling, and they have refused so far, to identify one single photograph in the Marilyn Monroe collection that they actually own. And if they don't own that, they have no basis for challenging our right of publicity . . . Absent a showing that they own something – and that's what we've been asking for – **they have no standing to challenge our right to Marilyn Monroe's right of publicity. And that's what the case is about, your honor.**

Strauss Decl., Ex. 16, Tr. at 4 (emphasis added). Defendants actually repeated this frivolous characterization of the standing issue by letter to Judge Fox dated January 2, 2008, in which it stated: "In addition, the binder is relevant to Shaw's own declaratory judgment claim regarding domicile because, absent proof that Shaw actually has a legitimate ownership interest in any Marilyn Monroe images, Shaw has no standing to pursue a declaratory judgment against MMLLC." Serbagi Decl. at ¶ 27, Ex. T.

10. The Defendants knew that the representations concerning standing they made to Judge Fox were false. On September 4, 2007, Defendants, moved to dismiss the Shaw Family's Count 9 on grounds that the Defendants lacked standing to request that Marilyn Monroe died a New York domiciliary. David Marcus Decl. at ¶ 14, Ex. M. On November 2, 2007, Shaw Family counsel wrote to Defendants' counsel and requested that they withdraw their motion to

dismiss on grounds that continued opposition to Count 9 on standing grounds was frivolous in light of the newly passed California right of publicity legislation. David Marcus Decl. at ¶ 17, Ez. P. On November 28, 2007, the Defendants' complied by withdrawing their motion to dismiss, and stated to this Court the following:

> We represent Defendant Marilyn Monroe, LLC ("MMLLC") and respectfully write to advise the Court that (1) in light of the **recently enacted California Right of Publicity statute**, Defendants hereby withdraw their motion to dismiss count nine of Plaintiffs' Second Amended Complaint . . .

Declaration of Jonathan Strauss, dated February 12, 2008, Ex. 53 (emphasis added). Thus, the Defendants admitted to this Court that the Shaw Family had standing because of the newly passed right of publicity statute.

11.    If that is not enough, the Defendants also did not disclose to this Court its November 29, 2007 Order, where it expressly ruled that **"Plaintiffs' Ninth Cause of Action remains in the case because the State of California recently passed a statute that purports to confer property rights on a dead person that were not possessed by that dead person at the time of her death."** Serbagi Decl. at ¶ 16, Ex. M. The Defendants knew that the Shaw Family's copyrights were of no moment whether the Defendants had standing to request a declaration that Marilyn Monroe died a New York domiciliary, so their contrary representation to Judge Fox is astounding.

12.    Defendants have the audacity to argue that it is "inexplicable" that the Shaw Family did not turn over its entire collection to Defendants. (Defs. Memo p. 8.) What is inexplicable is that Defendants believed any such obligation existed given that their Third Amended Complaint identified only Rizzoli and Ballantine to be in the public domain. The Defendants produced all relevant documents in its possession concerning those works. The

5

Defendants engaged in a mission to obtain the rest of the Shaw Family collection (including photographs that had never been published), which constituted at least six letters, a trip to White Plains and several telephone conferences. Judge Fox repeatedly declined to Order the production of one additional document other than Rizzoli and Ballantine. While Judge Fox did permit the Defendants to review a few binders of Shaw Family copyright registrations, he refused their production and stated that was only because Ms. Stevens testified that she reviewed those binders in preparation for her deposition.

Dated: New York, New York
      March 4, 2008

                                      LAW OFFICES OF CHRISTOPHER SERBAGI

                                      By: Christopher Serbagi
                                      488 Madison Avenue
                                      New York, New York 10022
                                      Tel: 212-593-2112
                                      Fax: 212-308-8582

                                      Attorneys for Shaw Family Archives, Ltd., Bradford Licensing Associates, Edith Marcus and Meta Stevens