# EX. L

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - -x

SHAW FAMILY ARCHIVES, LTD., EDITH
MARCUS, and META STEVENS,

      Plaintiffs,

      v.

CMG WORLDWIDE, INC., an Indiana Corporation
and MARILYN MONROE, LLC, a Delaware
Limited Liability Company,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - -x

05 CV 3939 (CM)

**ANSWER**

      Marilyn Monroe, LLC ("MMLLC"), by its attorneys, Gibson, Dunn & Crutcher, LLP,

and CMG Worldwide, Inc. ("CMG"), by its attorneys, Minch Sovich LLP (collectively,

"Defendants"), for their answer to those portions of the Second Amended Complaint (the

"Complaint") filed by Shaw Family Archives, Ltd. ("SFA"), Edith Marcus ("Marcus"), and Meta

Stevens ("Stevens") (collectively, "Plaintiffs") that are not included in Defendants' Motion to

Dismiss, filed September 4, 2007 (the "Motion to Dismiss"), respond as follows:

      1.      The allegations in paragraph 1 of the Complaint contain allegations of law, not

fact, to which no response is required, except that Defendants admit that Plaintiffs' Complaint

alleges the causes of action identified in paragraph 1.

      2.      The allegations in paragraph 2 of the Complaint contain allegations of law, not

fact, to which no response is required.  To the extent paragraph 2 contains allegations of fact,

those allegations are denied.

3.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 of the Complaint.

4.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4 of the Complaint.

5.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the Complaint.

6.      Admit the allegations contained in paragraph 6 of the Complaint.

7.      Admit the allegations contained in paragraph 7 of the Complaint.

8.      The allegations in paragraph 8 of the Complaint contain allegations of law, not fact, to which no response is required.

9.      The allegations in paragraph 9 of the Complaint contain allegations of law, not fact, to which no response is required.

10.     The allegations in paragraph 10 of the Complaint contain allegations of law, not fact, to which no response is required.  To the extent paragraph 10 contains allegations of fact, those allegations are denied, except that Defendants do not contest this Court's personal jurisdiction over them.

11.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 of the Complaint.

12.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the Complaint.

13.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 of the Complaint.

14.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 of the Complaint, especially with respect to the undefined term "the Shaw Collection."

15.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 of the Complaint.

16.     Deny the allegations contained in paragraph 16 of the Complaint.

17.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the Complaint.

18.     Deny the allegations contained in paragraph 18 of the Complaint.

19.     Admit that CMG entered an agreement with Centric Corporation, authorizing Centric Corporation to use certain trademark and publicity rights related to Marilyn Monroe, and deny the remainder of the allegations contained in the first sentence of paragraph 19 of the Complaint.  Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second and third sentences of paragraph 19 of the Complaint.  Deny the allegations contained in the fourth and fifth sentences of paragraph 19 of the Complaint.

20.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 of the Complaint.

21.     Deny the allegations contained in paragraph 21 of the Complaint.

22.     Admit that CMG stated in its responses to Plaintiffs' first set of interrogatories that, in 2004, it displayed "no more than 5 Monroe/Shaw Photographs on its corporate website for no more than 6 to 9 months."  Deny the remainder of the allegations contained in paragraph 22 of the Complaint.

23.     Aver that no response to the allegations contained in paragraph 23 is required because those allegations are subject to the Motion to Dismiss.

24.     Aver that no response to the allegations contained in paragraph 24 is required because those allegations are subject to the Motion to Dismiss.

25.     Aver that no response to the allegations contained in paragraph 25 is required because those allegations are subject to the Motion to Dismiss.

26.     Aver that no response to the allegations contained in paragraph 26 is required because those allegations are subject to the Motion to Dismiss.

27.     Aver that no response to the allegations contained in paragraph 27 is required because those allegations are subject to the Motion to Dismiss.

28.     Aver that no response to the allegations contained in paragraph 28 is required because those allegations are subject to the Motion to Dismiss.

29.     Aver that no response to the allegations contained in paragraph 29 is required because those allegations are subject to the Motion to Dismiss.

30.     Aver that no response to the allegations contained in paragraph 30 is required because those allegations are subject to the Motion to Dismiss.

31.     Aver that no response to the allegations contained in paragraph 31 is required because those allegations are subject to the Motion to Dismiss.

32.     Aver that no response to the allegations contained in paragraph 32 is required because those allegations are subject to the Motion to Dismiss.

33.     Aver that no response to the allegations contained in paragraph 33 is required because those allegations are subject to the Motion to Dismiss.

4

34.     Aver that no response to the allegations contained in paragraph 34 is required because those allegations are subject to the Motion to Dismiss.

35.     Incorporate their responses to the allegations contained in paragraphs 1 through 34 of the Complaint, as if fully set forth herein.

36.     Deny the allegations contained in paragraph 36 of the Complaint.

37.     Incorporate their responses to the allegations contained in paragraphs 1 through 36 of the Complaint, as if fully set forth herein.

38.     Deny the allegations contained in paragraph 38 of the Complaint.

39.     Incorporate their responses to the allegations contained in paragraphs 1 through 38 of the Complaint, as if fully set forth herein.

40.     Aver that no response to the allegations contained in paragraph 40 is required because those allegations are subject to the Motion to Dismiss.

41.     Incorporate their responses to the allegations contained in paragraphs 1 through 40 of the Complaint, as if fully set forth herein.

42.     Aver that no response to the allegations contained in paragraph 42 is required because those allegations are subject to the Motion to Dismiss.

43.     Incorporate their responses to the allegations contained in paragraphs 1 through 42 of the Complaint, as if fully set forth herein.

44.     Aver that no response to the allegations contained in paragraph 44 is required, because those allegations are subject to the Motion to Dismiss.

45.     Incorporate their responses to the allegations contained in paragraphs 1 through 44 of the Complaint, as if fully set forth herein.

46.     Aver that no response to the allegations contained in paragraph 46 is required, because those allegations are subject to the Motion to Dismiss.

47.     Aver that no response to the allegations contained in paragraph 47 is required, because those allegations are subject to the Motion to Dismiss.

48.     Aver that no response to the allegations contained in paragraph 48 is required, because those allegations are subject to the Motion to Dismiss.

49.     Incorporate their responses to the allegations contained in paragraphs 1 through 48 of the Complaint, as if fully set forth herein.

50.     Aver that no response to the allegations contained in paragraph 50 is required, because those allegations are subject to the Motion to Dismiss.

51.     Aver that no response to the allegations contained in paragraph 51 is required, because those allegations are subject to the Motion to Dismiss.

52.     Incorporate their responses to the allegations contained in paragraphs 1 through 50 of the Complaint, as if fully set forth herein.

53.     Aver that no response to the allegations contained in paragraph 53 is required, because those allegations are subject to the Motion to Dismiss.

54.     Incorporate their responses to the allegations contained in paragraphs 1 through 48 of the Complaint, as if fully set forth herein.

55.     Aver that no response to the allegations contained in paragraph 50 is required, because those allegations are subject to the Motion to Dismiss.

## AFFIRMATIVE DEFENSES

The statement of any affirmative defense hereinafter does not assume the burden of proof for any issue as to which the applicable law places the burden upon Plaintiffs.  In addition,

6

Defendants expressly reserve the right to amend and/or supplement their affirmative and other defenses.

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs' Complaint, including each and every purported cause of action contained therein, fails to state a claim or defense upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of laches.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of waiver.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of estoppel.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of unclean hands.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by their fraud or other inequitable conduct.

## SEVENTH AFFIRMATIVE DEFENSE

To the extent they are entitled to any relief, Plaintiffs are not entitled to injunctive relief because they have an adequate remedy at law.

## EIGHTH AFFIRMATIVE DEFENSE

To the extent they are entitled to any relief, Plaintiffs are not entitled to treble, statutory or punitive damages or to attorney's fees.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the applicable Statutes of Limitations.

Wherefore, Defendants, by counsel, respectfully request that this Court deny Plaintiffs the relief sought in their Complaint.

Dated: New York, New York
       September 4, 2007

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Orin Snyder
Orin Snyder (OS-3122)
Cynthia S. Arato (CA-8350)
Howard S. Hogan (HH-7995)
Michelle Craven (MC-8556)
200 Park Avenue, 47th Floor
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Attorneys for Defendant Marilyn Monroe, LLC*

SOVICH MINCH LLP

By: /s/ Theodore J. Minch
Theodore J. Minch (Admitted *Pro Hac Vice*)
10099 Chesapeake Drive, Suite 100
McCordsville, Indiana 46055
Telephone: (317) 335-3601
Facsimile: (317) 335-3602

*Attorneys for Defendant CMG Worldwide, Inc.*

EX. M

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SHAW FAMILY ARCHIVES, LTD., EDITH
MARCUS, and META STEVENS,

     Plaintiffs,

     v.

CMG WORLDWIDE, INC., an Indiana Corporation
and MARILYN MONROE, LLC, a Delaware
Limited Liability Company

     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

05 CV 3939 (CM)

## DEFENDANTS/CONSOLIDATED PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS/CONSOLIDATED DEFENDANTS' SECOND AMENDED COMPLAINT AND FOR A LIMITED STAY OF DISCOVERY

Theodore J. Minch (*Pro Hac Vice*)
SOVICH MINCH LLP
10099 Chesapeake Drive
Suite 100
McCordsville, Indiana 46055
Telephone: (317) 335-3601
Fax: (317) 335-3602

*Attorneys for CMG Worldwide, Inc.*

Orin Snyder (OS-3122)
Cynthia S. Arato (CA-8350)
Howard S. Hogan (HH-7995)
Michelle Craven (MC-8556)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Fax: (212) 351-4035

*Attorneys for Marilyn Monroe, LLC*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL BACKGROUND ................................................................................... 3

     A.     Relevant Procedural History ........................................................... 3

     B.     Plaintiffs' Second Amended Complaint ........................................ 4

ARGUMENT ........................................................................................................... 7

I.      STANDARD OF REVIEW ....................................................................... 7

II.     PLAINTIFFS' FOURTH THROUGH EIGHTH CAUSES OF ACTION ARE
        BARRED AND SHOULD BE DISMISSED TO THE EXTENT THEY ARE
        BASED ON DEFENDANTS' CONSTITUTIONAL RIGHT TO PETITION, A
        BEDROCK RIGHT GUARANTEED BY THE FIRST AMENDMENT ......................... 8

     A.     Plaintiffs' Fourth Through Eighth Causes of Action Are Barred To The
           Extent They Are Based On Defendants' Lobbying Efforts Before State
           Legislative Bodies ....................................................................... 8

     B.     Plaintiffs' Fourth Through Eighth Causes of Action Are Barred To The
           Extent They Are Based On "Pre-Litigation Activities" Undertaken By
           Defendants Prior To The Entry Of The May 2 Order ......................... 12

III.     PLAINTIFFS' TORTIOUS INTERFERENCE CLAIMS FAIL AS A MATTER
       OF LAW ................................................................................................. 16

     A.     Plaintiffs Have Not Alleged The Fundamental Elements Of Their Claim
           For Tortious Interference with Contract ........................................ 16

     B.     Plaintiffs Have Similarly Failed to Allege the Elements of a Prospective
           Economic Advantage Claim ....................................................... 17

IV.     PLAINTIFFS' LANHAM ACT AND UNFAIR COMPETITION CLAIMS FAIL
       AS A MATTER OF LAW ....................................................................... 19

     A.     Plaintiffs' Allegations Of "Misrepresentations" Are Too Vague To Be
           Actionable ................................................................................. 19

     B.     Black-Letter New York Law Bars Plaintiffs' Statutory Unfair Trade
           Practices Claims Because These Claims Are Not Consumer-Oriented .............. 20

i

**TABLE OF CONTENTS**
(Continued)

Page

V.     THIS COURT LACKS JURISDICTION OVER PLAINTIFFS'
DECLARATORY JUDGMENT CLAIMS BECAUSE PLAINTIFFS HAVE
NOT ALLEGED A SUFFICIENT CASE OR CONTROVERSY ................................... 21

    A.     Plaintiffs' Request for a Declaration that Defendants Own No Rights in
Marilyn Monroe's Image is Duplicative of this Court's May 2 Order ............... 22

    B.     Plaintiffs Have No Standing to Seek a Declaration that Marilyn Monroe
Died a Domiciliary of New York ........................................................................ 23

VI.    BECAUSE OF THE FATAL DEFECTS IN PLAINTIFFS' SECOND
AMENDED COMPLAINT, DISCOVERY SHOULD BE STAYED WITH
RESPECT TO DEFENDANTS' LOBBYING ACTIVITIES ......................................... 24

CONCLUSION .................................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Advanced Mktg. Group, Inc. v. Bus. Payment Sys., LLC,*
    481 F. Supp. 2d 319 (S.D.N.Y. 2007)............................................................... 17

*Alfred Weissman Real Estate, Inc. v. Big V. Supermarkets, Inc.,*
    268 A.D.2d 101, 707 N.Y.S.2d 647 (2d Dep't 2000)............................ 9, 10, 11

*Armstrong v. McAlpin,*
    699 F.2d 79 (2d Cir. 1983)............................................................................. 8

*Barr Labs., Inc. v. Quantam Pharmics, Inc.,*
    827 F. Supp. 111 (S.D.N.Y. 1993) ........................................................... 19, 20

*Baur v. Veneman,*
    |352 F.3d 625 (2d Cir. 2003).......................................................................... 22

*Bayou Hedge Fund Litig. v. Hennessee Group LLC,*
    Nos. 06-MDL-1755 (CM), 06-CV-2943 (CM), 2007 WL 2319127 (July 31,
    2007, S.D.N.Y.) ...................................................................... 7, 10, 20, 21

*BE&K Constr. Co. v. NLRB,*
    536 U.S. 516, 122 S. Ct. 2390 (2002)................................................ 8, 10, 12

*Bell Atl. Corp. v. Twombly,*
    __ U.S. __, 127 S. Ct. 1955 (May 21, 2007) ........................................ 2, 7, 10

*Bristol-Myers Squibb Co. v. Ivax Corp.,*
    77 F. Supp. 2d 606 (D.N.J. 2000) ............................................................... 10

*Brownsville Golden Age Nursing Home, Inc. v. Wells,*
    839 F.2d 155 (3d Cir. 1988)...................................................................... 9, 12

*Cal. Motor Transp. Co. v. Trucking Unlimited,*
    404 U.S. 508, 92 S. Ct. 609 (1972)............................................................ 9, 13

*Carvel Corp. v Noonan,*
    3 N.Y.3d 182, 789 N.Y.S.2d 359 (N.Y. 2004) ............................................. 18

*Cheminor Drugs, Ltd. v. Ethyl Corp.,*
    168 F.3d 119 (3d Cir. 1999)...................................................................... 9, 10

*Chrysler Capital Corp. v. Century Power Corp.,*
    137 F.R.D. 209 (S.D.N.Y. 1991) ................................................................. 24

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Columbia v. Omni Outdoor Adver., Inc.,*
    499 U.S. 365, 111 S. Ct. 1344 (1991)...................................................................... 11

*Commercial Data Servers, Inc. v. Int'l Bus. Machines Corp.,*
    166 F. Supp. 2d 891 (S.D.N.Y. 2001)..................................................................... 18

*Concourse Nursing Home v. Englestein,*
    278 A.D.2d 35, 717 N.Y.S.2d 154 (1st Dep't 2000) ........................................... 9

*DirecTV, Inc. v. Rowland,*
    No. 04-CV-297S, 2005 WL 189722 (S.D.N.Y. Jan. 22, 2005) ........................... 10, 14, 21

*Doron Precision Sys. v. FAAC, Inc.,*
    423 F. Supp. 2d 173 (S.D.N.Y. 2006)..................................................................... 11, 12

*E. R.R. Presidents Conference v. Noerr Motor Freight,*
    365 U.S. 127, 81 S. Ct. 523 (1961)...................................................................... 9, 11

*Eua Cogenix Corp. v. N. Rockland Cent. Sch. Dist.,*
    124 F. Supp. 2d 861 (S.D.N.Y. 2000)..................................................................... 20, 21

*ExxonMobil Inter-America, Inc. v. Advanced Info. Eng'g Servs., Inc.,*
    328 F. Supp. 2d 443 (S.D.N.Y. 2004)..................................................................... 21

*G-I Holdings, Inc. v. Baron & Budd,*
    179 F. Supp. 2d 233 (S.D.N.Y. 2001).................................................................... 16, 17

*Gianni Versace, S.P.A. v. Versace,*
    No. 01 Civ. 9645 (PKL), 2003 WL 470340 (S.D.N.Y. Feb. 25, 2003)........................... 18

*Hampshire Equity Partners II, L.P. v. Teradyne, Inc.,*
    No. 04 Civ. 3318 (LAP), 2005 WL 736217 (S.D.N.Y. Mar. 30, 2005) ........................... 18

*Havoco of Am., Ltd. v. Hollobow,*
    702 F.2d 643 (7th Cir. 1983) ............................................................................ 9

*Hutton v. Priddy's Auction Galleries, Inc.,*
    275 F. Supp. 2d 428 (S.D.N.Y. 2003)..................................................................... 18

*I.G. Second Generation Partners, L.P. v. Duane Reade,*
    17 A.D.2d 206, 793 N.Y.S.2d 379 (1st Dep't 2005) ........................................... 9

*Info. Superhighway, Inc. v. Talk Am., Inc.,*
    395 F. Supp. 2d 44 (S.D.N.Y. 2005)...................................................................... 20

iv

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Iqbal v. Hasty,*
    490 F.3d 143 (2d Cir. 2007)................................................................ 7

*Jeanette Coquette Co., Inc. v. Hartford Fire Ins. Co.,*
    No. 93 CIV 4418, 1995 WL 363864 (S.D.N.Y. June 19, 1995)....................................... 8

*Jenkins v. United States,*
    386 F.3d 415 (2d Cir. 2004).......................................................................... 24

*Johnson v. N.Y. Univ. Sch. of Educ.,*
    205 F.R.D. 433 (S.D.N.Y. 2002) ............................................................... 24, 25

*Karp v. Hill & Knowlton, Inc.,*
    631 F. Supp. 360 (S.D.N.Y. 1986) ................................................................ 14

*Kirch v. Liberty Media Corp.,*
    449 F.3d 388 (2d Cir. 2006)..................................................................... 16, 17

*Kittay v. Kornstein,*
    210 F.3d 531 (2d Cir. 2000)........................................................................ 7

*Liberty Lobby, Inc. v. Person,*
    390 F.2d 489 (D.C. Cir. 1968) ..................................................................... 10

*Maurizio v. Goldsmith,*
    230 F.3d 518 (2d Cir. 2000) ........................................................................ 21

*Melea, Ltd. v. Quality Models Ltd.,*
    345 F. Supp. 2d 743 (E.D. Mich. 2004)........................................................... 9, 13

*Miller v. Glenn Miller Prods.,*
    318 F. Supp. 2d 923 (C.D. Cal. 2004),
    *aff'd,* 454 F.3d 975 (9th Cir. 2006)................................................................. 15

*Milton Abeles, Inc. v. Farmers Pride, Inc.,*
    No. 03 Civ. 6111 (DLI) (WDW), 2007 WL 2028069 (E.D.N.Y. July 11, 2007)............. 19

*Minn. Mining & Mfg. Co. v. Graham-Field, Inc.,*
    No. 96 Civ. 3839 (MBM), 1997 WL 166497 (S.D.N.Y. Apr. 9, 1997) .......................... 18

*Miramax Film Corp. v. Abraham,*
    No. 01 Civ. 5202(GBD), 2003 WL 22832384 (S.D.N.Y. Nov. 25, 2003) ..................... 22

*Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians,*
    94 F.3d 747 (2d Cir. 1996)...................................................................... 21, 22

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*,
   170 F.R.D. 361 (S.D.N.Y. 1997) ................................................................ 22

*Port Wash. Teachers' Ass'n v. Bd. of Educ.*,
   478 F.3d 494 (2d Cir. 2007)........................................................................ 23

*Primetime 24 Joint Venture v. Nat'l Broad. Co., Inc.*,
   219 F.3d 92 (2d Cir. 2000)..................................................................... 13, 14

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49, 113 S. Ct. 1920 (1993)..................................................... 12, 14

*Reilly v. Natwest Mkts. Group, Inc.*,
   178 F. Supp. 2d 420 (S.D.N.Y. 2001)......................................................... 17

*Rivera v. Heyman*,
   No. 96 Civ. 4489 (PKL), 1997 WL 86394 (S.D.N.Y. Feb. 27, 1997)............................ 24

*Rudoff v. Huntington Symphony Orchestra*,
   91 Misc.2d 264, 397 N.Y.S.2d 863 (N.Y. Sup. Ct. App. Div. 1977) ................ 10

*Ruffalo v. Oppenheimer & Co.*,
   987 F.2d 129 (2d Cir. 1993)........................................................................ 8

*Sedona Corp. v. Ladenburg*,
   No. 03 Civ. 3120 (LTS), 2005 WL 1902780 (S.D.N.Y. Aug. 9, 2005) ............ 16, 17

*Sofi Classic S.A. de C.V. v. Hurowitz*,
   444 F. Supp. 2d 231 (S.D.N.Y. 2006)........................................................ 22

*Sosa v. DirecTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) ................................................................ 10, 13

*Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*,
   206 F.R.D. 367 (S.D.N.Y. 2002) ............................................................ 24, 25

*Thomas Info. Servs., Inc. v. Lyons Commercial Data, Inc.*,
   No. 97 Civ. 7716 (JSR), 1998 WL 193236 (S.D.N.Y. Apr. 20, 1998)............................ 15

*Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag*,
   207 F. Supp. 2d 221 (S.D.N.Y. 2002).................................................. 10, 14, 15

*United Mine Workers v. Pennington*,
   381 U.S. 657, 85 S. Ct. 1585 (1965)........................................................... 9

vi

### TABLE OF AUTHORITIES
#### (Continued)

Page(s)

*USFL v. NFL,*
    634 F. Supp. 1155 (S.D.N.Y. 1986)..................................................................................... 9

*Volmar Distribs., Inc. v. N.Y. Post Co., Inc.,*
    152 F.R.D. 36 (S.D.N.Y. 1993) ...................................................................................... 24

*Volunteer Fireman's Ins. Servs., Inc. v. McNeil & Co., Inc.,*
    221 F.R.D. 388 (W.D.N.Y. 2004)..................................................................................... 19

*Weaver v. Chrysler Corp.,*
    172 F.R.D. 96 (S.D.N.Y. 1999) ...................................................................................... 11

*Wolff v. Rare Medium, Inc.,*
    210 F. Supp. 2d 490 (S.D.N.Y. 2002).......................................................................... 16, 18

*Zdenek Marek v. Old Navy (Apparel) Inc.,*
    348 F. Supp. 2d 275 (S.D.N.Y. 2004)............................................................................ 18

#### Statutes

15 U.S.C. § 1125(a) ..................................................................................................................... 5

22 U.S.C. § 2201 ....................................................................................................................... 21

N.Y. Gen. Bus. Law §§ 349-350 ............................................................................................. 10

Unif. Probate Code § 2-602 ...................................................................................................... 15

#### Rules

Fed. R. Civ. P. 26(c) ................................................................................................................. 24

#### Constitutional Provisions

Cal. Const., art. I, § 3 (2004) ...................................................................................................... 8

Ind. Const., art. I, § 31 ................................................................................................................ 8

N.Y. Const., art. I, §§ 8, 9 (2002) ............................................................................................... 8

U.S. Const. amend. I.................................................................................................................... 8

## PRELIMINARY STATEMENT

Plaintiffs' Second Amended Complaint is an abuse of the judicial process because it seeks to chill Defendants' constitutionally protected right to lobby for the enactment of legislation, and to engage in protected pre-litigation acts, to protect the rights of publicity associated with Marilyn Monroe. By attacking Defendants' petitioning efforts, the Second Amended Complaint violates core constitutional protections for free speech, and its remaining allegations are defective as a matter of law for other reasons as well. Plaintiffs' Second Amended Complaint should be dismissed with prejudice and this Court should stay discovery with respect to Plaintiffs' constitutionally infirm attacks on Defendants' lobbying efforts.

As this Court is aware, in May of this year, both this Court and The Honorable Margaret M. Morrow of the United States District Court for the Central District of California issued rulings holding that Defendant Marilyn Monroe LLC ("MMLLC") owns no right of publicity related to Marilyn Monroe because Marilyn could not bequeath any post-mortem publicity rights by will and because New York does not recognize a descendible right of publicity. In apparent recognition of the hardships that could be caused by her ruling, Judge Morrow noted that "nothing prevents legislatures from enacting right of publicity statutes so as to vest the right of publicity directly in the residuary beneficiaries of deceased personality's estates or to their successors-in-interest." Since then, following Judge Morrow's invitation, Defendants, together with other affected parties, have exercised their First Amendment rights to petition for legislative change in New York and California.[1] Fearful of the outcome of Defendants' efforts, and having

---

[1]   In New York, for example, Defendants' legislative efforts are supported by Rachel Robinson (widow of Jackie Robinson), Jeanne Moutoussamy-Ashe (widow of Arthur Ashe), Yoko Ono (widow of John Lennon), Liza Minelli, Al Pacino, and the Babe Ruth and Mickey Mantle

[Footnote continued on next page]

failed so far in their efforts to impede legislative change, Plaintiffs now seek to prosecute

Defendants civilly for engaging in constitutionally protected acts.  Specifically, Plaintiffs have

asserted five purported tort claims against Defendants (for violations of the Lanham Act, for

tortious interference with contract and contractual relations, for unfair competition and for unfair

trade practices) for lobbying the New York and California legislatures to enact new publicity

laws and for engaging in other protected pre-litigation conduct.  Plaintiffs' claims are barred

under hornbook constitutional law and the fundamental principles of government upon which the

United States was founded.  Under the well-known *Noerr-Pennington* doctrine, Defendants have

the clear constitutional right to petition these legislative bodies, and to engage in the challenged

pre-litigation activities, and Defendants cannot be prosecuted under civil laws for engaging in

these protected acts.

       Plaintiffs' tort claims are also defective in numerous other respects.  Almost two years

after first filing this action, Plaintiffs have failed to allege *any* of the elements needed to plead

their two tortious interference claims, thus plainly demonstrating that no valid claims exist.

Plaintiffs' Lanham Act, unfair competition and unfair trade practices claims fail because

Plaintiffs have improperly pled their claims in the most bare-bones and conclusory manner

possible and have failed to allege "enough facts to state a claim to relief that is plausible on its

face." *Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964-65 (May 21, 2007).  And

Plaintiffs' unfair trade practices claim fails because this claim is not the least bit consumer-

oriented.

---

[Footnote continued from previous page]
    estates).  Irrespective of Defendants' lobbying efforts, Defendants respectfully disagree with
the Courts' rulings and intend to appeal from them.

In addition to their tort claims, Plaintiffs also have brought two fatally defective claims for declaratory relief seeking rulings regarding Defendants' "rights" in the image of Marilyn Monroe and, allegedly "by virtue" of the pending legislative initiatives, the state in which Monroe was domiciled at the time of her death. The first of these claims is wholly unnecessary in light of this Court's prior ruling. The second seeks intervention from this Court to redress future injuries that Plaintiffs' may never suffer based on governmental action that has not yet occurred. For these reasons, this Court lacks jurisdiction to hear these claims.

For each of these reasons, Plaintiffs respectfully request that these claims be dismissed with prejudice and that this Court stay discovery with respect to Plaintiffs' constitutionally infirm attacks on Defendants' lobbying efforts.[2]

## FACTUAL BACKGROUND

### A.    Relevant Procedural History

This action began on March 23, 2005, when Defendants MMLLC and CMG Worldwide, Inc. filed a Complaint against Plaintiffs the Shaw Family Archives and others in the United States District Court of the Southern District of Indiana alleging, among other things, that the Shaw Family Archives had violated MMLLC's right of publicity in Marilyn Monroe. In response to this filing, Plaintiffs filed their initial Complaint in this action on April 19, 2005, followed by an Amended Complaint filed on May 9, 2005, asserting claims for copyright infringement, tortious interference and declaratory relief regarding the parties' ownership of various intellectual property rights.

---

[2]    If the Court grants Defendants' motion, only the following claims will remain in the parties' actions: Plaintiffs' First and Second Causes of Action for copyright infringement and Defendants' cause of action for a declaration that Plaintiffs do not possess valid and enforceable copyrights in various photographs of Marilyn Monroe.

Defendants' Complaint against Plaintiffs was transferred to this Court on March 23,

2006. On May 2, 2007, this Court granted summary judgment on MMLLC's right of publicity

and ruling that MMLLC owned no right of publicity in Marilyn Monroe because she could not

bequeath any post-mortem publicity rights by will. Decision and Order Granting

Defendants'/Consolidated Plaintiffs' Motion for Summary Judgment Dismissing Count II of

Plaintiffs'/Consolidated Defendants' Complaint, dated May 2, 2007 (the "May 2 Order").

Parallel litigation brought by MMLLC against other parties also has been pending before

Judge Morrow. On May 14, 2007, Judge Morrow granted summary judgment on the right of

publicity claim asserted by MMLLC in that parallel proceeding. Order Granting Defendants'

Motion for Summary Judgment, dated May 14, 2007 (the "May 14 Order").

Plaintiffs filed their Second Amended Complaint on August 8, 2007. This pleading

abandoned Plaintiffs' declaratory relief claim regarding ownership issues; altered Plaintiffs'

tortious interference claims; and added new Lanham Act, unfair competition, unfair trade

practices and declaratory relief claims.

**B.    Plaintiffs' Second Amended Complaint**

Plaintiffs are the alleged owners of various photographs of Marilyn Monroe taken by the

late Sam Shaw. 2d Am. Compl. ¶¶ 11-14. Plaintiffs' Second Amended Complaint asserts nine

different causes of action against Defendants related to: (1) Defendants' alleged use of Shaw

photographs; (2) the rights of publicity in and to Marilyn Monroe that were the subject of the

May 2 Order; and (3) Defendants' constitutionally protected right to petition the government

with respect to these publicity rights.

Plaintiffs' First and Second Causes of Action assert claims for copyright infringement

related to Shaw photographs. *Id.* ¶¶ 35-38. This motion does not seek dismissal of such claims.

Plaintiffs' Third Cause of Action seeks a declaration that Defendants do not own any "rights" in the image of Marilyn Monroe. *Id.* ¶¶ 39-40.

Plaintiffs' Fourth and Fifth Causes of Action assert claims for tortious interference with, respectively, Plaintiffs' contractual relations and prospective economic advantage. *Id.* ¶¶ 41-44.

Plaintiffs' Sixth, Seventh and Eighth Causes of Action, respectively, assert claims under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), unfair competition under New York common law and unfair trade practices under N.Y. Gen. Bus. Law §§ 349-50. *Id.* ¶¶ 45-53.

Plaintiffs' Ninth Cause of Action seeks a declaration that Marilyn Monroe died a domiciliary of New York. *Id.* ¶¶ 54-55.

None of Plaintiffs' causes of action identify any particular act or omission that gives rise to Plaintiffs' claims. Rather, Plaintiffs assert a "kitchen-sink" set of "allegations common to all counts," followed by bare-bones claims based on "the foregoing acts." *Id.* ¶¶ 23-34, 39-55.

Putting aside allegations related solely to Plaintiffs' copyright infringement claims, these "acts" fall into three distinct categories. *First*, Plaintiffs allege that Defendants have wrongfully represented to unspecified third parties that Defendants owned a right to publicity related to Marilyn Monroe. Specifically, Plaintiffs allege that Defendants "have pursued an aggressive and improper campaign of threats and intimidation to force [unidentified] third-parties to obtain Defendants' permission for the use of Marilyn Monroe's name, likeness or image" and have "demanded and obtained payments from these [unidentified] parties by wrongfully representing to Plaintiff's licensees and potential licensees that Defendants had a right of publicity in Marilyn Monroe (or right to the image and likeness of Marilyn Monroe), which Defendants knew or should have known was false." *Id.* ¶ 23. Plaintiffs further allege that these acts caused

5

unidentified licensees or prospective licensees of Plaintiffs to "cease" or "forgo licensing images of Marilyn Monroe from Plaintiffs." *Id.* ¶ 24.

*Second*, Plaintiffs allege that Defendants have improperly commented on and failed to follow the May 2 and May 14 Orders. Specifically, Plaintiffs allege that Defendants "have frequently expressed contempt for the legal reasoning and basis set forth in the New York and California Orders in the media and in commerce," and that, despite these Orders, Defendants "continue to represent that they have rights to the image of Marilyn Monroe" and "to make false representations of fact to Plaintiffs' licensees and potential licensees concerning Defendants' alleged rights in the image of Marilyn Monroe which they do not have." *Id.* ¶¶ 27-29. Notably, despite these sweeping conclusory assertions, Plaintiffs fail to identify a single false statement made by Defendants, or to explain the alleged falsities.

*Third*, Plaintiffs attack Defendants for petitioning State legislatures to enact laws that protect statutory publicity rights for deceased individuals and for achieving success in these petitioning efforts. Specifically, Plaintiffs allege that "Defendants' [sic] have lobbied the New York and California legislature [sic] for laws that would eviscerate the New York and California Orders;" and have "achieved success in New York and California" by allegedly "misrepresenting and omitting numerous material facts concerning the import of the respective rulings and failing to provide full disclosure on the nature and extent of their wrongful acts as set forth herein." *Id.* ¶¶ 32-33. Again, these allegations of misconduct are wholly conclusory, as Plaintiffs fail to identify a single "fact" that Defendants allegedly misrepresented or failed to disclose.[3]

---

[3]    Notably, if anyone is misrepresenting the court rulings it is Plaintiffs, who contend that both this Court and the California court ruled "that [MMLLC] does not own a right of publicity in Marilyn Monroe because she died a domiciliary in a state that did not recognize a post-

[Footnote continued on next page]

According to Plaintiffs, these acts "are continuing to cause Plaintiffs' damage because their actual and prospective licensees continue to suffer anxiety that their existing contractual relations and expectations will be nullified by new legislation." *Id.* ¶ 34.

## ARGUMENT

### I.    STANDARD OF REVIEW

In order to survive a motion to dismiss, Plaintiffs must "allege facts that, if true, would create a judicially cognizable cause of action." *Kittay v. Kornstein*, 210 F.3d 531, 537 (2d Cir. 2000). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bayou Hedge Fund Litig. v. Hennessee Group LLC*, Nos. 06-MDL-1755 (CM), 06-CV-2943 (CM), 2007 WL 2319127 at *6 (July 31, 2007, S.D.N.Y.) (*citing Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964-65 (2007)). "Indeed, a plaintiff must assert 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (*citing Twombly* at 1974). "This 'plausibility standard' obliges a pleader 'to amplify' a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Id. (citing Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 127 S. Ct. at 1964.

---

[Footnote continued from previous page]
   mortem right of publicity." 2d Am. Compl. ¶¶ 25-26.  Of course, neither court ruled in any
   such manner.  Both courts expressly declined to rule on this domicile question.  May 2 Order
   at 9-10; May 14 Order at 15-16, n.32.

Where the defects in Plaintiffs' complaint are incurable, or Plaintiffs already have filed

numerous complaints and amended complaints, this Court should dismiss with prejudice

insufficiently pled claims. *See, e.g., Ruffalo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.

1993); *Armstrong v. McAlpin*, 699 F.2d 79, 93-94 (2d Cir. 1983); *Jeanette Coquette Co., Inc. v.*

*Hartford Fire Ins. Co.*, No. 93 CIV 4418, 1995 WL 363864, at *5 (S.D.N.Y. June 19, 1995).

## II. PLAINTIFFS' FOURTH THROUGH EIGHTH CAUSES OF ACTION ARE BARRED AND SHOULD BE DISMISSED TO THE EXTENT THEY ARE BASED ON DEFENDANTS' CONSTITUTIONAL RIGHT TO PETITION, A BEDROCK RIGHT GUARANTEED BY THE FIRST AMENDMENT

### A. Plaintiffs' Fourth Through Eighth Causes of Action Are Barred To The Extent They Are Based On Defendants' Lobbying Efforts Before State Legislative Bodies

Plaintiffs Fourth through Eighth Causes of Action expressly challenge Defendants'

efforts to enact legislation to protect their interests in the rights of publicity associated with

Marilyn Monroe. The challenges are absolutely barred under the well-established *Noerr-*

*Pennington* doctrine, which immunizes Defendants' petitioning activity from attack, as required

by the First and Fourteenth Amendments of the United States Constitution.

The First Amendment provides, in relevant part, that "Congress shall make no law . . .

abridging . . . the right of the people . . . to petition the Government for a redress of grievances."

U.S. Const. amend. I. The United States Supreme Court has long "recognized this right to

petition as one of the most precious of liberties safeguarded by the Bill of Rights," and, as the

Court has explained, this "right is implied by the very idea of a government, republican in form."

*BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 524-25, 122 S. Ct. 2390, 2396 (2002); *see also* N.Y.

Const. art. I, §§ 8, 9 (2002) (protecting one's freedom of speech and right to petition,

respectively); Cal. Const. art. I, § 3 (2004) (protecting one's right to petition); Ind. Const. art. I, §

31 (protecting one's right to assemblage and petition).

8

Accordingly, starting with the landmark case of *Eastern Railroad Presidents Conference v. Noerr Motor Freight*, 365 U.S. 127, 81 S. Ct. 523 (1961), as affirmed by *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S. Ct. 1585 (1965), the United States Supreme Court has held that citizens who petition for governmental action favorable to them are engaged in constitutionally-protected activities and cannot be prosecuted under civil laws for engaging in such acts.

In *Noerr*, the Supreme Court held that the solicitation of legislative activity cannot violate federal antitrust laws. 365 U.S. at 137-38, 81 S. Ct. at 529-30. Although the *Noerr* doctrine initially arose in the antitrust field, the doctrine immunizes First Amendment petitioning of the government from all types of claims brought under both Federal and State law.[4] For this reason, both federal and state courts routinely have dismissed at the pleading stages all types of claims (including virtually all of the claims brought by Plaintiffs here), when such claims were based on petitioning activity like that alleged here:

- Tortious interference with contractual relations, *see Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128 (3d Cir. 1999); *Melea, Ltd. v. Quality Models Ltd.*, 345 F. Supp. 2d 743, 760 (E.D. Mich. 2004); *I.G. Second Generation Partners, L.P. v. Duane Reade*, 17 A.D.2d 206, 208, 793 N.Y.S.2d 379, 381 (1st Dep't 2005); *Alfred Weissman Real Estate, Inc. v. Big V. Supermarkets, Inc.*, 268 A.D.2d 101, 111, 707 N.Y.S.2d 647, 655 (2d Dep't 2000);

- Tortious interference with prospective economic advantage, *see Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 160 (3d Cir. 1988); *Havoco of Am., Ltd. v. Hollobow*, 702 F.2d 643, 649 (7th Cir. 1983) (collecting cases); *Alfred*

---

[4]  In addition, although *Noerr* involved petitioning before the United States government, *Noerr* immunity applies to the solicitation of action by state and local officials as well as by federal officials. *See, e.g., Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11, 92 S. Ct. 609, 612 (1972) (extending *Noerr-Pennington* doctrine to petitions to "state and federal agencies and courts"); *USFL v. NFL*, 634 F. Supp. 1155, 1178 (S.D.N.Y. 1986) (same); *Concourse Nursing Home v. Englestein*, 278 A.D.2d 35, 717 N.Y.S.2d 154 (1st Dep't 2000) (same).

9

*Weissman*, 268 A.D.2d at 111, 707 N.Y.S.2d at 655; *Rudoff v. Huntington Symphony Orchestra*, 91 Misc. 2d 264, 266, 397 N.Y.S.2d 863 (N.Y. Sup. Ct. App. Div. 1977).

- N.Y. Gen. Bus. Law §§ 349-350, *see DirecTV, Inc. v. Rowland*, No. 04-CV-297S, 2005 WL 189722, at *3-*4 (S.D.N.Y. Jan. 22, 2005); *Alfred Weissman*, 268 A.D.2d at 111, 707 N.Y.S.2d at 655; and

- Common law unfair competition, *see Cheminor*, 168 F.3d at 128-29; *Bristol-Myers Squibb Co. v. Ivax Corp.*, 77 F. Supp. 2d 606, 616 (D.N.J. 2000) (applying N.J. law).[5]

The activities of Defendants which Plaintiffs improperly challenge are at the heart of the First Amendment and *Noerr*. Indeed, Plaintiffs attack Defendants for lobbying for legislative change – the exact type of petitioning activity that unquestionably is protected by *Noerr*. *See, e.g., Liberty Lobby, Inc. v. Person*, 390 F.2d 489, 491 (D.C. Cir. 1968) ("every person or group engaged . . . in trying to persuade Congressional action is exercising the First Amendment right of petition."). Plaintiffs' allegations are, accordingly, plainly barred under *Noerr* and should be dismissed with prejudice.

Plaintiffs, moreover, cannot negate Defendants' *Noerr* immunity through their spurious allegations that Defendants allegedly have made misleading statements, or failed to disclose information, to the New York and California legislative bodies.[6] Indeed, *Noerr* itself involved

---

[5]  We have found no reported case involving petitioning activity and the Lanham Act. However, *Noerr* unquestionably applies to this federal law as well. *See, e.g., BE&K*, 536 U.S. at 526, 122 S. Ct. at 2396 (applying *Noerr* principles to National Labor Relations Act); *Sosa v. DirecTV, Inc.*, 437 F.3d 923 (9th Cir. 2006) ("because it is based on and implements the First Amendment right to petition, the *Noerr-Pennington* doctrine is not limited to the antitrust context, but applies equally in all contexts." (quotations omitted)).

[6]  These allegations are also wholly conclusory and insufficient on their face. *First*, the allegations consist of mere "labels and conclusions" and fail to meet *Twombly's* "plausibility" requirement. *Twombly*, 127 S. Ct. at 1974; *Bayou Hedge Fund*, 2007 WL 2319127, at *6. *Second*, they fail to give Defendants reasonable notice of the conduct that is alleged to be wrongful. *See, e.g., Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag*, 207 F. Supp. 2d 221, 224 (S.D.N.Y. 2002); *Weaver v. Chrysler Corp.*, 172

[Footnote continued on next page]

10

similar allegations. As noted by the Supreme Court, defendants' conduct there included the

"deception of the public, manufacture of bogus sources of references, and distortion of public

sources of information," all of which fell "far short of the ethical standards generally approved in

this country." *Noerr*, 365 U.S. at 140, 81 S. Ct. at 531. The Court nevertheless held that the

alleged conduct could not violate the Sherman Act, explaining that:

> Congress has traditionally exercised extreme caution in legislating with respect
> to problems relating to the conduct of political activities, a caution which has
> been reflected in the decisions of this Court interpreting such legislation. All of
> this caution would go for naught if we permitted an extension of the Sherman
> Act to regulate activities of that nature simply because those activities have a
> commercial impact and involve conduct that can be termed unethical.

*Id.; see also Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 381, 111 S. Ct. 1344, 1354-

55 (1991) ("improper or even unlawful" lobbying techniques are insufficient to defeat *Noerr*

immunity); *Doron Precision Sys. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 189 (S.D.N.Y. 2006)

("Defendants are entitled to *Noerr-Pennington* protection even if they pressured government

officials [or] lied to the government about the merits of" the proposal at issue); *Alfred Weissman*,

268 A.D.2d at 107, 707 N.Y.S.2d at 652 ("Courts have upheld the application of the doctrine

even when the petitioning activity included the use of questionable or underhanded activity.").

Simply put:

> The rule that liability cannot be imposed for damage caused by inducing
> legislative, administrative or judicial action is applicable here. The conduct on
> which this suit is based is protected by the firmly rooted principle, endemic to a
> democratic government, that enactment of and adherence to law is the
> responsibility of all.

---

[Footnote continued from previous page]
    F.R.D. 96, 101 (S.D.N.Y. 1999) (claims based on alleged "misrepresentations" must meet the
requirements of Fed. R. Civ. P. 9(a), requiring that fraud be pled with particularity).

*Brownsville*, 839 F.2d at 160.  Plaintiffs' Second Amended Complaint directly and improperly

attacks lobbying activities of Defendants that unquestionably are protected by *Noerr*.[7]

Accordingly, each of Plaintiffs' Fourth through Eighth Causes of Action should be dismissed

with prejudice to the extent they are based on these protected acts.

**B.    Plaintiffs' Fourth Through Eighth Causes of Action Are Barred To The Extent They Are Based On "Pre-Litigation Activities" Undertaken By Defendants Prior To The Entry Of The May 2 Order**

Plaintiffs' Fourth through Eighth Causes of action are deliberately vague, but it appears

that they also are based on pre-litigation cease and desist letters which Defendants sent, prior to

the entry of the May 2 Order, to third parties who were exploiting Marilyn Monroe's publicity

rights without Defendants' authorization.  *See, e.g.*, 2d Am. Compl. ¶ 23 (Defendants "have

pursued an aggressive and improper campaign of threats and intimidation to force third-parties to

obtain Defendants' permission for the use of Marilyn Monroe's name, likeness or image.").[8]

---

[7]  The only arguable exclusion from *Noerr-Pennington* immunity is "sham" conduct that never genuinely was intended to influence government action.  *BE&K*, 536 U.S. at 525-26, 122 S. Ct. at 2396.  Plaintiffs, of course, have not alleged that Defendants have engaged in "sham" activity that was not genuinely designed to achieve legislative change.  To the contrary, Plaintiffs have conceded that Defendants' petitioning activity has "achieved success in New York and California" (2d. Am. Compl. ¶ 33), and it is black-letter law that such success precludes any finding of "sham" activity.  *See, e.g.*, *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60, 113 S. Ct. 1920, 1928 (1993) ("*PRE*") (so long as the petitioning activity has even a reasonable chance of success, the activity is genuine as a matter of law).  For this reason as well, Plaintiffs' allegations must fail.  *See, e.g.*, *Doron Precision*, 423 F. Supp. 2d at 192 (finding independent basis for dismissal of complaint where plaintiff failed to allege that petitioning activity was not genuine).

[8]  Plaintiffs' prior Complaints were even more vague than the Second Amended Complaint (*see, e.g.*, Am. Compl. at ¶ 42 (alleging that Defendants "contacted" unnamed third-parties and "induced" them to breach their contracts with Plaintiffs "through various means")).  However, Plaintiffs' discovery responses explained that Plaintiffs sought to attack Defendants' cease and desist letters that post-dated the filing of this action.

As with Defendants' lobbying efforts, these "pre-litigation" activities also are immunized

by *Noerr*. In *California Motor Transport*, the Supreme Court recognized that "the right to

petition extends to all departments of the government" and that "[t]he right of access to the

courts is . . . but one aspect of the right of petition." 408 U.S. at 510-11, 92 S. Ct. at 612.

Accordingly, the Court in that case extended *Noerr* immunity to the use of "the channels and

procedures of state and federal . . . courts to advocate [groups'] causes and points of view

respecting resolution of their business and economic interests. . . ." *Id.* In order to fully protect

this bedrock right to petition, the Second Circuit and other courts have recognized that the right

extends to conduct incidental to the prosecution of a lawsuit, such as "prelitigation threat letters."

As the Second Circuit has explained:

> Courts have extended *Noerr-Pennington* to encompass concerted efforts incident
> to litigation, such as prelitigation "threat letters," *see McGuire Oil Co. v. Mapco,
> Inc.*, 958 F.2d 1552, 1560 (11th Cir. 1992) (holding that concerted threats of
> litigation are protected under *Noerr-Pennington*); *Coastal States Mktg., Inc. v.
> Hunt*, 694 F.2d 1358, 1367-68 (5th Cir. 1983) (same); *Barq's Inc. v. Barq's
> Beverages, Inc.*, 677 F. Supp. 449, 452-53 (E.D. La. 1987) (applying prelitigation
> rights to enforcement of trademark litigation), and settlement offers, *see Columbia
> Pictures Indus., Inc. v. Professional Real Estate Investors, Inc.*, 944 F.2d 1525,
> 1528-29 (9th Cir. 1991), *aff'd*, 508 U.S. 49, 123 L. Ed. 2d 611, 113 S. Ct. 1920
> (1993).

*Primetime 24 Joint Venture v. Nat'l Broad. Co., Inc.*, 219 F.3d 92, 100 (2d Cir. 2000); *see also*

*Sosa*, 437 F.3d at 936-37 (9th Cir. 2006) (extending *Noerr* immunity to sending of pre-litigation

settlement demands in order to give "breathing space" to adequately protect a citizen's ability to

exercise his or her right to petition the Courts); *Melea, Ltd.*, 345 F. Supp. 2d at 760 ("Plaintiffs

are immune from liability because the Plaintiffs' letters proposed a potential lawsuit."). Under

this authority, Defendants' sending of cease and desist letters is also protected activity under

*Noerr* and cannot form the basis of Plaintiffs' claims.

13

As with its untenable objections to Defendants' lobbying efforts (*see supra* n.6),

Plaintiffs fail to allege any facts showing that Defendants' pre-litigation activities were a "sham,"

at least with respect to activities undertaken prior to the May 2 Order.[9]  In order to meet the

"sham" exception for litigation activities, Plaintiffs must show that the conduct complained of is

"objectively baseless in the sense that no reasonable litigant could realistically expect success on

the merits" and, if so, that it was brought "to interfere directly with the business relationships of

a competitor through the use of the governmental process – as opposed to the outcome of that

process – as an anticompetitive weapon." *PRE*, 508 U.S. at 60; *see also Primetime 24*, 219 F.3d

at 100-01.[10]

Plaintiffs' Second Amended Complaint comes nowhere close to meeting this stringent

test.  At best, Plaintiffs contend that Defendants claimed to own a right of publicity related to

Marilyn Monroe when Defendants allegedly knew or should have known that no such right

existed.  Such allegations, however, are insufficient to overcome *Noerr* immunity.  *See, e.g.*,

*DirecTV, Inc.*, 2005 WL 189722, at *3-*4 (rejecting "sham" argument because of failure to

---

9    We recognize that Plaintiffs may have adequately pled a "sham" exception to the extent they
     are alleging that Defendants sent cease and desist letters after the May 2 Order threatening to
     sue third parties for violating the right of publicity related to Marilyn Monroe.  *See, e.g.*, 2d
     Am. Compl. ¶¶ 29-30 ("Defendants continue to make false representations of fact to
     Plaintiffs' licensees and potential licensees concerning Defendants' alleged rights in the
     image of Marilyn Monroe.").  However, as set forth below, Plaintiffs' allegations are wholly
     conclusory and insufficient on their face.  *See infra* at IV.B.  Since the entry of the May 2
     Order, Defendants have explained to third parties that Defendants intend to appeal the Order
     and have expressed their opinion that the Order should be reversed.  Of course, such
     expressions of opinion and intent are not actionable.  *See, e.g., Karp v. Hill & Knowlton, Inc.*,
     631 F. Supp. 360, 365 (S.D.N.Y. 1986) (holding that a party's agent's statement that the
     court supported the party's claim was non-actionable opinion).

10   It is appropriate for this Court to make this determination at the pleading stage "in order to
     avoid chilling a litigant's exercise of the right to petition."  *Twin City Bakery Workers &
     Welfare Fund v. Astra Aktiebolag*, 207 F. Supp. 2d 221, 223 (S.D.N.Y. 2002).

14

allege that presuit demands were made "merely to harass" and not out of any "objectively

reasonable" belief); *Thomas Info. Servs., Inc. v. Lyons Commercial Data, Inc.*, No. 97 Civ. 7716

(JSR), 1998 WL 193236, at *3 (S.D.N.Y. Apr. 20, 1998) (Plaintiff cannot overcome a

defendant's right of petition where it pleads "no particulars to support the claim" that the accused

party's presuit demands were "objectively baseless").

Here, although the Court ultimately ruled against Defendants on their right of publicity

claim, Defendants' belief, prior to the May 2 Order, that MMLLC owned these rights was

objectively reasonable. Indeed, prior to the May 2 Order, MMLLC had exercised these

challenged publicity rights for decades; the New York Surrogate Court included Marilyn

Monroe's publicity rights in its order distributing her estate (*i.e.*, "royalties from the licensing of

[d]ecedent's name, likeness and signature") (May 14 Order at ¶ 20); the Uniform Probate Code

supported Defendants' belief that a will may provide for passage of "all property acquired by the

estate after the testator's death" (Unif. Probate Code § 2-602); and the Ninth Circuit had

previously ruled on publicity rights owned by similarly situated estates without questioning the

estate's ownership of the rights at issue. *See Miller v. Glenn Miller Prods.*, 318 F. Supp. 2d 923

(C.D. Cal. 2004), *aff'd*, 454 F.3d 975 (9th Cir. 2006).

Under these circumstances, it is impossible for Plaintiffs ever to plead facts sufficient to

overcome Defendants' immunity for Defendants' pre-suit demands that pre-date the May 2

Order. *See, e.g., Twin City Bakery*, 207 F. Supp. 2d at 223-34 (finding it "impossible" for

plaintiffs to prove objective unreasonable activity related to defendants patent litigation, even

though the vast majority of patents were found to be invalid in that action, where court allowed

certain patent claims to survive past summary judgment and others to go to trial). Accordingly,

15

Plaintiffs' Fourth through Eighth Causes of Action should be dismissed with prejudice to the

extent they are based on Defendants' protected pre-litigation acts.

### III.    PLAINTIFFS' TORTIOUS INTERFERENCE CLAIMS FAIL AS A MATTER OF LAW

Plaintiffs' tortious interference claims fail because Plaintiffs have failed to allege

virtually all of the requisite elements of these claims. Tellingly, although Plaintiffs did plead

many of these elements in their prior Complaints filed in this action, Plaintiffs have omitted these

elements now, plainly signaling that Plaintiffs have no basis to allege them. For this reason, their

interference claims should be dismissed with prejudice.

### A.    Plaintiffs Have Not Alleged The Fundamental Elements Of Their Claim For Tortious Interference with Contract

In order to sustain a claim for tortious interference with contract, Plaintiffs must allege:

(1) "the existence of a valid contract between the plaintiff and a third party"; (2) "defendant's

knowledge of the contract"; (3) "defendant's intentional procurement of the third-party's breach

of the contract without justification"; (4) "actual breach of the contract"; and (5) "damages

resulting therefrom." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006).

Plaintiffs have failed to allege the first four elements, mandating dismissal of the claim:

- Plaintiffs have failed to allege that they have valid contracts with third parties. *See, e.g., Sedona Corp. v. Ladenburg*, No. 03 Civ. 3120 (LTS), 2005 WL 1902780, at *19 (S.D.N.Y. Aug. 9, 2005) (dismissing complaint for failure to identify a valid existing contract); *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490 (S.D.N.Y. 2002) (same); *G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 253 (S.D.N.Y. 2001) (same).[11]

---

[11] Although Plaintiffs' complaint alludes to Plaintiffs' "licensees," this vague allegation is insufficient. *See, e.g., Wolff*, 210 F. Supp. 2d at 498 (S.D.N.Y. 2002) (reference to "enter[ing] into contracts" is insufficient).

- Plaintiffs have failed to allege that Defendants were aware of Plaintiffs' agreements with any of the unnamed licensees. *See, e.g., Sedona*, 2005 WL 1902780, at *19 (allegations insufficient because they were "devoid of allegations that any specific [defendants] had knowledge of any specific contracts"); *Advanced Mktg. Group, Inc. v. Bus. Payment Sys., LLC*, 481 F. Supp. 2d 319, 325 (S.D.N.Y. 2007) (same).

- Plaintiffs have failed to allege that Defendants intentionally induced these unnamed licensees to breach their agreements. *See, e.g., Advanced Mktg. Group*, 481 F. Supp. 2d at 325 (dismissing claim for failure to allege defendant's "willful and intentional procurement of a breach").

- Plaintiffs have failed to allege the actual breach of any agreement. *See, e.g., Sedona*, 2005 WL 1902780, at *19 (dismissing complaint where plaintiffs failed to allege that there would not have been breach but for defendants' conduct); *Reilly v. Natwest Mkts. Group, Inc.*, 178 F. Supp. 2d 420, 430-31 (S.D.N.Y. 2001) (dismissing complaint for failure to allege that "a breach actually occurred"); *G-I Holdings*, 179 F. Supp. 2d at 253 (same).[12]

For these reasons, Plaintiffs' Fourth Cause of Action should be dismissed with prejudice.

**B.    Plaintiffs Have Similarly Failed to Allege the Elements of a Prospective Economic Advantage Claim**

To state a claim for tortious interference with prospective economic advantage, Plaintiffs

must allege that: (1) Plaintiffs "had a business relationship with a third party"; (2) "the

defendant knew of that relationship and intentionally interfered with it"; (3) "the defendant acted

solely out of malice, or used dishonest, unfair, or improper means," and (4) "the defendant's

interference caused injury to the relationship." *Kirch*, 449 F.3d at 400. "Improper means"

requires allegations of "physical violence, fraud or misrepresentation, civil suits and criminal

prosecutions, [or] some degree of economic persuasion." *Carvel Corp. v Noonan*, 3 N.Y.3d 182,

---

[12] At best, Plaintiffs have alleged that unnamed licensees "cease[d]" licensing images of Marilyn Monroe from Plaintiffs as a result of Defendants' acts. 2d Am. Compl. ¶ 24. Yet such vague pleading "does not amount to an allegation that [Plaintiffs' licensees] violated the terms of a contract with [Plaintiffs] when [they] did so." *Kirch*, 449 F.3d 388 at 402 (allegations that party "abandoned" and "walked away" from Plaintiffs are insufficient).

190, 789 N.Y.S.2d 359, 362 (N.Y. 2004). Plaintiffs have failed to plead the elements of this

claim:

- Plaintiffs have failed to allege the requisite business relationship with a third party. As explained above, Plaintiffs' pleading refers only generally to "potential licensees" and fails to identify a single potential licensee with whom Defendants allegedly interfered. Such "[a] general allegation of interference with customers without any sufficiently particular allegation of interference with a specific contract or business relationship does not state a claim." *Commercial Data Servers, Inc. v. Int'l Bus. Machines Corp.*, 166 F. Supp. 2d 891, 898 (S.D.N.Y. 2001) (McMahon, J.); *see also Gianni Versace, S.P.A. v. Versace*, No. 01 Civ. 9645 (PKL), 2003 WL 470340, at *2 (S.D.N.Y. Feb. 25, 2003) (same); *Minn. Mining & Mfg. Co. v. Graham-Field, Inc.*, No. 96 Civ. 3839 (MBM), 1997 WL 166497, at *7 (S.D.N.Y. Apr. 9, 1997) (same).[13]

- Plaintiffs have failed to allege that Defendants knew of the supposedly damaged business relationships or intentionally interfered with those relationships. *See, e.g., Hutton v. Priddy's Auction Galleries, Inc.*, 275 F. Supp. 2d 428, 433 (S.D.N.Y. 2003) (dismissing complaint because it did not allege "that defendants had any knowledge of [the plaintiff's] prospective third party contracts"); *Zdenek Marek v. Old Navy (Apparel) Inc.*, 348 F. Supp. 2d 275, 280 (S.D.N.Y. 2004) ("It is due to the utter failure to allege any knowledge on the part of the defendants of any business relationships with which they allegedly interfered that plaintiff's claim must fail.").

- Plaintiffs also have failed to allege either that: (a) Defendants acted solely to inflict intentional harm on the Plaintiffs or (b) Defendants employed "wrongful means." It is apparent that Defendants' alleged conduct was done to benefit Defendants and not solely to inflict intentional harm on the Plaintiffs (*e.g.*, so that Defendants could license and receive payment for Marilyn Monroe's right of publicity). *See* 2d Am. Compl. ¶ 23. In addition, although Plaintiffs accuse Defendants of engaging in vague "misrepresentations," Plaintiffs' allegation cannot constitute the requisite "wrongful means" because Plaintiffs have failed to plead this misrepresentation with specificity. *See, e.g., Wolff*, 210 F. Supp. 2d at 499 (dismissing tortious interference claim based on alleged misrepresentation where plaintiff failed to plead fraud with the specificity required by Fed. R. Civ. P. 9(b)); *Hampshire Equity Partners II, L.P. v. Teradyne, Inc.*, No. 04 Civ. 3318 (LAP), 2005 WL 736217, at *2 & n.2 (S.D.N.Y. Mar. 30, 2005) (same); *Milton*

---

[13] Although Plaintiffs have alleged that "Defendants continue to assert rights to the image of Marilyn Monroe" to "New Media, Inc. and Pyramid Posters Limited," Plaintiffs have not alleged that these entities were licensees or potential licensees. *See* 2d Am. Compl. ¶ 30.

*Abeles, Inc. v. Farmers Pride, Inc.*, No. 03 Civ. 6111 (DLI) (WDW), 2007 WL 2028069, at *15 (E.D.N.Y. July 11, 2007) (same).

For these reasons, Plaintiffs' Fifth Cause of Action should be dismissed with prejudice.

IV.    **PLAINTIFFS' LANHAM ACT AND UNFAIR COMPETITION CLAIMS FAIL AS A MATTER OF LAW**

Plaintiffs' Lanham Act and competition claim allege that Defendants have made various "false" representations of "fact": (1) that Defendants had a right of publicity in Marilyn Monroe; and (2) "concerning Defendants' alleged rights in the image of Marilyn Monroe." 2d Am. Compl. ¶¶ 23, 28-29. These allegations are fatally flawed because Plaintiffs have failed to allege Defendants' false statements with the required specificity.

A.    **Plaintiffs' Allegations Of "Misrepresentations" Are Too Vague To Be Actionable**

In their pleadings, Plaintiffs allege vaguely that Defendants made false statements regarding Marilyn Monroe's publicity rights and "concerning Defendants' alleged rights in the image of Marilyn Monroe." 2d Am. Compl. ¶¶ 23, 28-29.

There is divergent case law in this district regarding whether the specificity requirements of Fed. R. Civ. P. 9(b) regarding the pleading of fraud claims apply to Lanham Act claims. *See, e.g., Volunteer Fireman's Ins. Servs., Inc. v. McNeil & Co., Inc.*, 221 F.R.D. 388, 393-94 (W.D.N.Y. 2004); *Barr Labs., Inc. v. Quantam Pharmics, Inc.*, 827 F. Supp. 111, 117-18 (S.D.N.Y. 1993). Yet, regardless of the applicability of Rule 9(b), it is axiomatic that a Lanham Act plaintiff is, at a minimum, required to state generally the content of the alleged misrepresentation. *Id.*[14] Plaintiffs' allegations certainly fail to meet the requirement of Rule

---

[14] This infirmity is especially problematic given that Plaintiffs' Lanham Act claim accuses Defendants of engaging in "intentional" and "willful" conduct. 2d Am. Compl. ¶¶ 24, 48; *see Volunteer Fireman's*, 221 F.R.D. at 393-94 (requiring specificity when pleading Lanham

[Footnote continued on next page]

19

9(b). In addition, Plaintiffs' allegations that, subsequent to the May 2 Order, Defendants have

made alleged false representations "concerning alleged rights in the image of Marilyn Monroe"

and "continue to assert rights to the image of Marilyn Monroe which they do not have" are

wholly inadequate and fail to place Defendants on notice of their alleged wrongdoing. Indeed, it

is impossible to discern from this conclusory assertion what false statements allegedly were

made, mandating dismissal of the claim. *Id.* (finding inadequate the generalized allegation that

defendant made false statements about the physical character, quality, nature and therapeutic

value of drugs). The allegations, finally, are a mere "label[s] or conclusion[s]," devoid of factual

support, which fail to meet *Twombly*'s "plausibility standard," and they should be dismissed for

that reason as well. *Bayou Hedge Fund*, 2007 WL 2319127, at *6.[15]

**B.    Black-Letter New York Law Bars Plaintiffs' Statutory Unfair Trade Practices Claims Because These Claims Are Not Consumer-Oriented**

Plaintiffs' Eighth Cause of Action for unfair trade practices under N. Y. Gen. Bus. Law

§§ 349-50 fails as a matter of law because the conduct challenged by Plaintiffs is not consumer-

oriented. As this Court has recognized, the GBL laws were enacted "to protect the consuming

public from deceptive practices aimed at them." *Eua Cogenix Corp. v. N. Rockland Cent. Sch.*

*Dist.*, 124 F. Supp. 2d 861, 874 (S.D.N.Y. 2000) (McMahon, J.). Accordingly, as this Court has

held, in order to plead a valid GBL claim, Plaintiffs must, as "a threshold matter . . . charge

conduct of the defendant that is consumer-oriented, namely, that the acts or practices have a

---

[Footnote continued from previous page]
    Act claim where plaintiff accused defendant of making false statements "brazenly, willfully
    and wantonly," because such allegation sounded in fraud).

[15]  Plaintiffs' unfair competition claim fails for the same reasons that bar Plaintiffs' Lanham Act
    claim. *See Info. Superhighway, Inc. v. Talk Am., Inc.*, 395 F. Supp. 2d 44, 56 (S.D.N.Y.
    2005) ("Since the Lanham Act claim will be dismissed . . . ISI's common law [unfair
    competition] claims must also be dismissed.").

broad impact on consumers at large." *Id.* (dismissing § 349 claim); *accord ExxonMobil Inter-*

*America, Inc. v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp. 2d 443, 447 (S.D.N.Y. 2004)

(McMahon, J.); *see also Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (*per curiam*)

(same for § 350 claim).  Here, Plaintiffs complain only of business-to-business dealings between

Defendants and other companies or government entities.  Because these claims have nothing to

do with the general public, they fail as a matter of law and should be dismissed with prejudice.[16]

## V.    THIS COURT LACKS JURISDICTION OVER PLAINTIFFS' DECLARATORY JUDGMENT CLAIMS BECAUSE PLAINTIFFS HAVE NOT ALLEGED A SUFFICIENT CASE OR CONTROVERSY

This Court lacks jurisdiction over Plaintiffs' declaratory judgment claims because the

requested judgments are duplicative, or wholly unnecessary, in light of this Court's May 2 Order

and fail to address any injury in fact to that could be redressed by the requested relief.

Accordingly, there is no "actual controversy" for this Court to resolve, as required under the

Declaratory Judgment Act, 22 U.S.C. § 2201.

"For a court to have subject matter jurisdiction over a declaratory judgment action, there

must be a substantial controversy, between parties having adverse legal interests, of sufficient

immediacy and reality to warrant the issuance of a declaratory judgment." *Niagara Mohawk*

*Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752 (2d Cir. 1996).

Accordingly, a declaratory judgment plaintiff must plead the existence of an injury in fact that

would be redressed by the relief sought, "to confirm that the plaintiff has a personal stake in the

---

[16]   Although Plaintiffs baldly allege that "Defendants have caused consumer confusion," 2d Am.
Compl. ¶ 47, this conclusory allegation is insufficient as a matter of law:  "In order to defeat
a motion to dismiss, a plaintiff advancing a § 349 claim 'must allege *facts* showing injury or
potential injury to the public,' allegations which are absent here." *DirecTV*, 2005 WL
189722, at *2;  *see also Bayou Hedge Fund*, 2007 WL 2319127, at *6.

controversy and avoid having the federal courts serve as merely publicly funded forums for the ventilation of public grievances or the refinement of jurisprudential understanding." *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003). Further, the "related doctrines of prudential standing, mootness, and ripeness all serve to effectively narrow the types of cases which may be adjudicated" as a declaratory judgment act claim. *Id.* at 636. Under these principles, neither of Plaintiffs' two declaratory relief requests is appropriate.

**A.     Plaintiffs' Request for a Declaration that Defendants Own No Rights in Marilyn Monroe's Image is Duplicative of this Court's May 2 Order**

Plaintiffs' request for a declaration that Defendants own no rights in the Marilyn Monroe image is wholly unnecessary in light of the May 2 Order, in which this Court already ruled that MMLLC owns no publicity rights related to Marilyn Monroe. Although Defendants respectfully disagree with the Court's conclusions, and have reserved the right to appeal from them, any declaration that this Court could render regarding Marilyn Monroe's image would be duplicative, and wholly unnecessary, in light of this Court's prior ruling. Accordingly, Plaintiff's Third Cause of Action should be dismissed because it fails to relate to any controversy "of sufficient immediacy and reality." *Niagara*, 94 F.3d at 752; *see also Soft Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249-50 (S.D.N.Y. 2006) (dismissing declaratory judgment claim that is "duplicative in that it seeks no relief that is not implicitly sought in the other causes of action"); *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 170 F.R.D. 361, 386 (S.D.N.Y. 1997) (same); *Miramax Film Corp. v. Abraham*, No. 01 Civ. 5202(GBD), 2003 WL 22832384, at *15 (S.D.N.Y. Nov. 25, 2003) (same).

22

**B.    Plaintiffs Have No Standing to Seek a Declaration that Marilyn Monroe Died a Domiciliary of New York**

Similarly, a declaration that Marilyn Monroe died a domiciliary of New York also would have no bearing on this case, because this Court already has ruled that Plaintiffs own no publicity rights related to Marilyn Monroe regardless of her domicile. *See* May 2 Order at 9-10.

Trying to avoid this fatal defect, Plaintiffs contend that they are entitled to a ruling regarding Marilyn Monroe's domicile "by virtue of [Defendants' alleged] legislative efforts. . . ." 2d Am. Compl. ¶ 55. Presumably, Plaintiffs wish to obtain a ruling that Marilyn Monroe died a domiciliary of New York in case California passes a new right of publicity statute but New York does not, presumably so that Plaintiffs could then argue that Marilyn Monroe had no publicity rights that could descend, regardless of any new California law. Yet, as Plaintiffs have conceded, legislative remedies are under consideration in both states, *id.* ¶¶ 32-33, and there is no way of predicting whether one state, both, or neither will implement a relevant statute. As a result, Plaintiffs lack standing to bring this declaratory judgment claim, because any harm that could be inflicted on them in the absence of such a judgment is speculative and theoretical at best and, therefore, not ripe for determination. *See, e.g., Port Wash. Teachers' Ass'n v. Bd. of Educ.*, 478 F.3d 494, 500 (2d Cir. 2007) (affirming dismissal of declaratory judgment claims because "the theoretical possibility that" the alleged harms "might occur in the future does not amount to injury in fact").

Plaintiffs, finally, also allege that a ruling regarding Marilyn Monroe's domicile is necessary "[b]y virtue of the . . . ongoing factual misrepresentations concerning [Defendants'] rights to the image of Marilyn Monroe." 2d Am. Compl. ¶ 55. Plaintiffs do not so much as hint as to how a determination of Marilyn Monroe's domicile will impact Defendants' alleged "misrepresentations," especially in light of the May 2 Order. As a result, the alleged

"misrepresentations" cannot support this cause of action. *See, e.g., Jenkins v. United States*, 386

F.3d 415, 417-18 (2d Cir. 2004) ("Where the remedy sought is a mere declaration of law without

implications for practical enforcement upon the parties, the case is properly dismissed.").

Accordingly, Plaintiffs' Ninth Cause of Action should also be dismissed with prejudice.

## VI.    BECAUSE OF THE FATAL DEFECTS IN PLAINTIFFS' SECOND AMENDED COMPLAINT, DISCOVERY SHOULD BE STAYED WITH RESPECT TO DEFENDANTS' LOBBYING ACTIVITIES

Rule 26(c) of the Federal Rules of Civil Procedure gives this Court the authority to stay

discovery for "good cause." Fed. R. Civ. P. 26(c). Courts in this Circuit routinely grant stays

where resolution of a preliminary matter may dispose of a portion of a case. *See, e.g., Johnson v.*

*N.Y. Univ. Sch. of Educ.*, 205 F.R.D. 433, 434 (S.D.N.Y. 2002); *Chrysler Capital Corp. v.*

*Century Power Corp.*, 137 F.R.D. 209, 211 (S.D.N.Y. 1991); *Spencer Trask Software & Info.*

*Servs., LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002) (same); *Rivera v. Heyman*,

No. 96 Civ. 4489 (PKL), 1997 WL 86394, at *2 (S.D.N.Y. Feb. 27, 1997) (same).

Because discovery has been ongoing in this action with respect to Plaintiffs' previously

pled common law tort claims, and such discovery overlaps with Plaintiffs' newly pled tort

claims, we do not seek a blanket stay of discovery with respect to those claims, despite their

legal deficiencies. However, as set forth above, Plaintiffs' claims regarding Defendants'

constitutionally protected lobbying activities are fatally flawed. They are plainly barred by

black-letter law and should be dismissed. Because Defendants' motion to dismiss is strong, a

stay should be entered. *Spencer Trask*, 206 F.R.D. at 368 (court should consider strength of

motion to dismiss in deciding request for stay). Moreover, requiring Defendants to produce

discovery regarding their protected actions would certainly chill, if not violate, Defendants'

constitutional rights. *Cf. Volmar Distribs., Inc. v. N.Y. Post Co., Inc.*, 152 F.R.D. 36, 39

(S.D.N.Y. 1993) (ordering stay of discovery to protect defendant's Fifth Amendment rights).

24

Accordingly, the burden associated with such discovery is great, further supporting the entry of a

stay. *Spencer Trask*, 206 F.R.D. at 368 (court should consider burden associated with discovery

in deciding request for stay); *Johnson*, 205 F.R.D. at 434 (same).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss the

Third through Ninth Causes of Action and stay discovery regarding Defendants' lobbying

activities pending the resolution of this motion.


Dated:   New York, New York
         September 4, 2007


Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP                    SOVICH MINCH LLP

By: /s/ Orin Snyder                            By: /s/ Theodore J. Minch
Orin Snyder (OS-3122)                          Theodore J. Minch (Admitted *Pro Hac Vice*)
Cynthia S. Arato (CA-8350)                     10099 Chesapeake Drive, Suite 100
Howard S. Hogan (HH-7995)                      McCordsville, Indiana 46055
Michelle Craven (MC-8556)                      Telephone:  (317) 335-3601
200 Park Avenue, 47th Floor                    Facsimile:  (317) 335-3602
New York, New York 10166-0193
Telephone:  (212) 351-4000
Facsimile:  (212) 351-4035

*Attorneys for Defendant Marilyn Monroe, LLC*   *Attorneys for Defendant CMG Worldwide, Inc.*


100288451_8.DOC

25

the allegations of this paragraph and therefore deny the same.

8.    Defendants lack sufficient information to form an accurate belief as to the truth of the allegations of this paragraph and therefore deny the same.

9.    Admitted except that Bradford is a New York entity.

10.    Admitted.

11.    Admitted.  Case 1:05-cv-03939-CM-MDF    Document 123    Filed 08/24/2007    Page 2 of

12.    Admitted.

13.    Defendants deny each and every allegation of this paragraph.

14.    Defendants deny each and every allegation of this paragraph.

15.    Defendants lack sufficient information to form an accurate belief as to the truth of the allegations of this paragraph and therefore deny the same.

16.    Defendants lack sufficient information to form an accurate belief as to the truth of the allegations of this paragraph and therefore deny the same.

17.    Defendants lack sufficient information to form an accurate belief as to the truth of the allegations of this paragraph and therefore deny the same.

18.    Admitted.

19.    Admitted.

20.    Admitted.

21.    Defendants deny each and every allegation set forth in this paragraph but admit that Bradford represents SFA and that SFA controls the marketing and licensing of certain images of Marilyn Monroe.

22.    Defendants deny each and every allegation set forth in this paragraph but admit that SFA controls the marketing and licensing of all photographs of Marilyn Monroe taken by

Sam Shaw (the "Shaw Photos").

23.     Defendants lack sufficient information to form an accurate belief as to the truth of the allegations of this paragraph and therefore deny the same.

24.     Defendants deny each and every allegation of this paragraph.

25.     Defendants deny each and every allegation of this paragraph.

26.     Defendants deny each and every allegation of this paragraph.

27.     Defendants deny each and every allegation of this paragraph.

28.     Defendants repeat and represent each and every answer set forth to paragraphs 1 through 27 as if fully set forth herein.

29.     Admitted.

30.     Defendants deny each and every allegation of this paragraph.

31.     Defendants deny each and every allegation of this paragraph.

32.     Defendants deny each and every allegation of this paragraph.

33.     Defendants deny each and every allegation of this paragraph.

34.     Defendants deny each and every allegation of this paragraph.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

1.  Each of the counts in the Complaint fail to state a cause of action upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

2.   Plaintiffs' claims are barred by the applicable Statute of limitations.

### THIRD AFFIRMATIVE DEFENSE

3.  Plaintiffs have failed to mitigate their damages.

3

## FOURTH AFFIRMATIVE DEFENSE

4.  The Complaint fails to state a claim against Defendants upon which relief can be granted in that the Plaintiffs claims, if any, are barred by the doctrines of laches, estoppel and acquiescence.

## FIFTH AFFIRMATIVE DEFENSE

5.  Plaintiffs' claims are barred by the doctrine of waiver.

Case 1:05-cv-03939-CM-MDF    Document 123    Filed 08/24/2007    Page 4 of

## SIXTH AFFIRMATIVE DEFENSE

6.  Plaintiffs' claims are barred by fraud or their other inequitable conduct.

## SEVENTH AFFIRMATIVE DEFENSE.

7.  Plaintiffs' claims are barred by the doctrine of unconsionability.

## EIGHTH AFFIRMATIVE DEFENSE

8.  Plaintiffs' claims are barred by the doctrine of unclean hands.

## NINTH AFFIRMATIVE DEFENSE

9.  Plaintiffs' claims are either partially or wholly diminished by the doctrine of set off.

## TENTH AFFIRMATIVE DEFENSE

10.  Plaintiffs lack standing to bring some or all of the claims asserted.

## ELEVENTH AFFIRMATIVE DEFENSE

11.  Plaintiffs' claims are barred by the doctrine of accord and satisfaction.

## TWELFTH AFFIRMATIVE DEFENSE

12.  To the extent they are entitled to any relief, plaintiffs are not entitled to injunctive relief because they have an adequate remedy at law.

## THIRTEENTH AFFIRMATIVE DEFENSE

13.  To the extent they are entitled to any damages, plaintiffs are not entitled to treble

damages, punitive damages and/or statutory damages.

Dated: August 24, 2007

LAW OFFICE OF DAVID M. MARCUS

By: _____
      David M. Marcus (DM 0960)
      1650 Broadway, Suite 1001
      New York, NY 10019
      (646) 536-7602

      Attorney for the Defendants