# EX. N

# LAW OFFICES OF CHRISTOPHER SERBAGI

### ATTORNEYS AT LAW

### 488 MADISON AVENUE

### SUITE 1120

### NEW YORK, NEW YORK 10022

### (212) 593-2112

### FACSIMILE: (212) 308-8582

### c.serbagi@att.net

October 30, 2007

<u>Via Overnight Mail</u>
Barry Slotnick, Esq.
Loeb & Loeb LLP
345 Park Avenue
New York, New York  10154

Re:  <u>Shaw Family Archives, Ltd. et al. v. CMG Worldwide, Inc. et al.,</u>
<u>Index. No. 05 CV 3939 (CM)</u>

Dear Barry:

Enclosed are additional documents responsive to Defendants' document requests, bearing bates numbers BL 00040 to BL 00072.

Pursuant to Defendants' prior request, I enclose copies of the following SFA bates numbers: 281, 303, 310, 311, 321, 402, 494, and 509.  We withheld SFA 556 on grounds of attorney-client privilege.  We will provide a privilege log this week.

We are still waiting for the following: (i) Defendants' privilege log for their prior productions; (ii) Defendants' responses to Plaintiffs' second set of documents requests and interrogatories; and (iii) Defendants' supplemental responses to Plaintiffs' first set of interrogatories, including our contention interrogatories.  I have raised these issues many times but Defendants have ignored my pleas.  If I do not receive the foregoing by end of business on November 9, 2007, I will be forced to raised these matters with the Court.

Very truly yours,

Christopher Serbagi

cc:  Ted Minch, Esq. (w/encl)

EX. O

------------------------------------------------------------X

SHAW FAMILY ARCHIVES, LTD., EDITH    :
MARCUS and META STEVENS,    :

    :

                    Plaintiffs,    :  Index No. O5 CV 3939 (CM)

    :

      -against-    :

    :

CMG WORLDWIDE, INC., an Indiana Corporation    :
and MARILYN MONROE, LLC, a Delaware    :
Limited Liability Company,    :

    :

                 Defendants.    :

    :

------------------------------------------------------------X

## PLAINTIFFS/CONSOLIDATED DEFENDANTS' THIRD SET OF
## DOCUMENT REQUESTS TO DEFENDANTS/CONSOLIDATED PLAINTIFFS

Plaintiffs/Consolidated Defendants ("Plaintiffs"), by and through their undersigned

attorneys and pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, hereby

request that Defendants/Consolidated Plaintiffs CMG Worldwide, Inc. and Marilyn Monroe,

LLC (collectively, "Defendants"), in accordance with the definitions and instructions set forth

below, produce all the documents and things described below, wherever located, that are in

Defendants' possession, custody, or control, or in the possession, custody, or control of their

agents, servants, employees, attorneys, accountants or other persons acting or purporting to act

on Defendants' behalf, at the Law Offices of Christopher Serbagi, 488 Madison Avenue, Suite

1120, New York, New York 10022, within thirty days or at such earlier time as may be ordered

by the Court. Defendants may produce true and correct copies of the requested documents rather

than originals.

## DEFINITIONS

The following terms shall have the meanings set forth below whenever used in any Definition, Instruction, or Request for the Production of Documents.

1)    The term "company" includes all predecessor, successor, subsidiary, parent and affiliated entities.

2)    The term "communication" or "communicating" refers to any transmission of information (in the form of facts, ideas, inquiries, or otherwise) between or among individuals or companies in any manner, whether verbal, written, electronic, or otherwise, whether in-person or telephonic, whether direct or through an intermediary.

3)    The term "concerning" or "concerns" means discussing, referring to, describing, evidencing, or constituting.

4)    "Document" has the same meaning as in Rule 34 of the Federal Rules of Civil Procedure and includes, without limitation, any typed writing, handwritten notes, photograph, chart, graph, video tape, audio tape, computer disk, or electronically stored data (including electronic mail and electronic or computerized data compilations) which is in your actual or constructive possession or custody or control, and includes, without limitation, all originals, copies, drafts (sent or unsent), or other non-conforming copies of every kind. A draft or non-identical copy is a separate document within the meaning of this term.

5)    "Identify" (with respect to persons) means to provide, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this paragraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

6)    "Identify" (with respect to documents) means to provide, to the extent known, the type of document, its general subject matter, the date of the document, and its author(s), addressee(s) and recipient(s).

7)    The term "including" or "includes" means including/includes, without limitation; or including/includes, but not limited to.

8)    The term "Monroe Intellectual Property Rights" means and refers to Defendants' claims to various intellectual property rights, including certain trademarks, copyrights, and the rights of association and sponsorship and Right of Publicity and Privacy in and to the name, image, likeness, persona, voice, and signature of Marilyn Monroe.

9)    The term "Monroe/Shaw Photographs" means the original photographs of Marilyn Monroe taken by Sam Shaw.

10)    The term "person" or "persons" means any natural person or any business, legal or governmental entity, or association.

11)    The term "representative of your company" means a natural person who acts on behalf of your company, including an officer, director, employee, servant, partner, agent, attorney, or other representative.

12)    The terms "you," "your," and "your company" shall mean each Defendant and includes the predecessors, persons, partners, present and former divisions, branches, authorized agents, attorneys, servants, employees, officers, directors, representatives, and any other person acting on behalf of each Defendant.

13)    Each of the terms "all" and "each" shall be construed as both all and each.

14)    The term "any" means both any and all.

3

15)    The connectives "and" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

16)    The use of the singular form of any word shall be taken to mean the plural as well as the singular, and the use of the plural form of any word shall be taken to mean the singular as well as the plural.

17)    The use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all other tenses, moods, or voices, as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside the scope.

18)    The term "MM Trademark" or "MM Mark" means any trademark or trade dress that the Defendants purport to own in the name or image of "Marilyn" or "Marilyn Monroe" or "Monroe" or any derivation thereof.

19)    The term "PTO" means the United States Patent and Trademark Office.

20)    The term "Federal Court Decisions" means Judge Colleen McMahon's Decision and Order in the present litigation, dated May 2, 2007, and Judge Margaret M. Morrow's Decision and Order in the litigation entitled The Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc. et al., Index. No. CV 05-2200 MMM, dated May 14, 2007.

<u>INSTRUCTIONS</u>

1)    Unless otherwise noted, the time period covered by each request for documents is January 1, 1996, to present

2)    Each request for documents seeks production of documents in their entirety, without abbreviation, modification, or redaction, including all attachments and materials affixed thereto.

4

3)      Documents shall be produced in an order corresponding to each paragraph of this document request, or, in the alternative, they may be produced in the same order in which they are maintained in the usual course of business.

4)      Each defendant remains under a duty of supplement pursuant to Rule 26 with respect to each request.

5)      Each request for documents shall be construed independently, and no request shall be viewed as limiting the scope of any other request.

6)      Each and every non-identical copy of a document, whether different from the original because of stamps, indications of the recipient(s), handwritten notes, marks, attachments, or any other reason, is a separate document that must be produced.

7)      A representation of inability to comply with a particular request shall state the specific reason for the inability to comply, including whether the particular document has never existed, has been destroyed; has been lost misplaced, or stolen or has never been, or is no longer, in your possession, custody, or control. The statement shall set forth the same and address of any natural persons or organization known or believe by you to have possession, custody, or control of that document or category of documents.

8)      If only part of a request is objectionable, the response shall set forth clearly the extent of and the specific ground for the objection, and all other requested documents shall be produced. If objection is based on a claim of privilege or other protection, for such document you must state:

        a)      the date of the document;

        b)      the request(s) to which the document is responsive;

        c)      the title and/or general subject matter of the writing;

5

d)    the person(s) to whom the document was addressed or copied; and

e)    the nature and basis of your claim of privilege or other reason that

the information is protected from discovery, sufficiently to determine

the validity of that claim in accordance with Fed. R Civ. P. 26(b)(5).

## **DOCUMENT REQUESTS**

Document Request No. 1

All documents relating to Count I of Defendants' Third Amended Complaint, including but not limited to, all documents that Defendants plan to use in support of their claims.

Document Request No. 2

All documents upon which Defendants may rely to demonstrate that they filed the Indiana Litigation (Index No. 1:05-cv-0423) and litigated the New York Litigation (05 Civ. 3939) in good faith.

Dated:  November 1, 2007
        New York, New York

LAW OFFICES OF CHRISTOPHER SERBAGI

By: _____
Christopher Serbagi (CS 7746)
488 Madison Avenue, Suite 1120
New York, New York 10022
Tele: (212) 593-2112
Fax: (212) 308-8582

Attorney for the Plaintiffs

6

EX. P

**Subject:** <no subject>
**Date:** Friday, November 2, 2007 3:42 PM
**From:** Christopher Serbagi <c.serbagi@earthlink.net>
**To:** Paula Colbath <pcolbath@loeb.com>, Barry Slotnick <bslotnick@loeb.com>

Dear Paula:

In light of the passing of the California right of publicity legislation, Plaintiffs ask you to withdraw your motion to dismiss Count 9 of the Second Amended Complaint.  Plaintiffs believe your continued opposition is frivolous in light of the new California legislation and we will ask Judge McMahon for attorney's fees if we prevail.  We request that you provide us an answer tonight because we may file our opposition tonight.

Best,

Christopher Serbagi


Law Offices of Christopher Serbagi
488 Madison Avenue, Suite 1120
New York, New York  10022
Tele:  212-593-2112
Fax:  212-308-8582
Email: c.serbagi@earthlink.net
Web Site: www.serbagi.com

**christopher serbagi**                                    Wednesday, February 27, 2008 11:40 PM

**Subject:** <no subject>
**Date:** Friday, November 2, 2007 4:50 PM
**From:** Christopher Serbagi <c.serbagi@earthlink.net>
**To:** "Ted J. Minch" <tjminch@sovichminch.com>

Dear Ted:

In light of the passing of the California right of publicity legislation, Plaintiffs ask you to withdraw your motion to dismiss Count 9 of the Second Amended Complaint.  Plaintiffs believe your continued opposition is frivolous in light of the new California legislation and we will ask Judge McMahon for attorney's fees if we prevail.  We request that you provide us an answer tonight because we may file our opposition tonight.

Best,

Christopher Serbagi


Law Offices of Christopher Serbagi
488 Madison Avenue, Suite 1120
New York, New York  10022
Tele: 212-593-2112
Fax:  212-308-8582
Email: c.serbagi@earthlink.net
Web Site: www.serbagi.com

# EX. Q

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
SHAW FAMILY ARCHIVES, LTD., EDITH  :
MARCUS and META STEVENS
                                                    :
                Plaintiffs,
                                                    :   05 Civ. 3939 (CM)
        -against-
                                                    :   Honorable Colleen McMahon
CMG WORLDWIDE, INC., an Indiana
Corporation and MARILYN MONROE, LLC,  :
a Delaware Limited Liability Company,
                                                    :
                Defendants.
                                                    :
------------------------------------------------------- X

### DEFENDANTS/CONSOLIDATED PLAINTIFFS' RESPONSES AND OBJECTIONS TO PLAINTIFFS/CONSOLIDATED DEFENDANTS' THIRD SET OF DOCUMENT REQUESTS

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendant/Consolidated

Plaintiffs Marilyn Monroe, LLC ("MMLLC") and CMG Worldwide, Inc. ("CMG")

(collectively, "Defendants") hereby respond and object to Plaintiffs/Consolidated

Defendants' Third Set of Document Requests as follows:

### GENERAL OBJECTIONS

1.      Defendants object to Plaintiffs' demands for production to the extent they

are vague, ambiguous, overbroad, unduly burdensome, and/or not reasonably calculated

to lead to the discovery of relevant and admissible evidence.

2.      Defendants object to Plaintiffs' demands for production to the extent that

they purport to require the production of documents that are already in Plaintiffs'

possession, are public or are otherwise readily available from sources to which Plaintiffs

also have access.

3.      Defendants object to Plaintiffs' demands for production to the extent that they purport to require production of documents not in the Defendants' possession, custody or control.

4.      Defendants object to the instructions and definitions in Plaintiffs' demands for production to the extent they in any way deviate from or expand upon obligations, duties or requirements set forth in the Federal Rules of Civil Procedure (the "Federal Rules") or the Local Civil Rules for the United States District Court for the Southern District of New York (the "Local Rules").

5.      Defendants object to the definitions in Plaintiffs' demands for production to the extent that they are used in such a way as to otherwise render Plaintiffs' demands vague, ambiguous, overbroad and/or not reasonably calculated to lead to the discovery of relevant and / or admissible evidence.

6.      Defendants object to Plaintiffs' demands for production to the extent they purport to require production of documents relating to allegations or matters that are not included in the Parties operative complaints, as amended and filed in this Case, or to the extent they purport to require production of documents relating to allegations, claims or matters that have been dismissed, withdrawn, or otherwise no longer remain in this Case.

7.      Defendants object to Plaintiffs' demands for production to the extent that they purport to require documents that are protected by the the attorney-client privilege, the attorney work product doctrine, the common interest privilege, and / or any other applicable law, rule, privilege or immunity.

8.      Defendants object to Plaintiffs' demands for production to the extent that they violate, infringe, or interfere with Defendants' rights under the First, Fifth, and

Fourteenth Amendments to the United States Constitution and other state and federal protections of the rights to freedom of speech and to petition the government.

9.    In furnishing the objections herein, Defendants do not concede that any of Plaintiffs' demands for production, or any subpart thereof, is relevant to the claims or defenses as raised by the Parties in their amended complaints filed in this action.

10.    Any documents inadvertently disclosed to Plaintiffs shall not constitute a waiver of any privilege, any other doctrine against disclosure, or the right of Defendants to object to the use of any document inadvertently disclosed. Defendants reserve the right to demand that Plaintiffs return to them any information inadvertently disclosed without further recourse.

11.    Any documents disclosed to Plaintiffs shall not constitute a waiver of any right of Defendants to object to the use and/or ultimate admissibility of any such document duly produced to Plaintiffs by Defendants. As such, Defendants hereby expressly reserve the right to object, on whatever basis, to the use and/or ultimate admissibility of any document produced to Plaintiffs in this Case.

12.    Defendants object to Plaintiffs' demands for production to the extent that they seek trade secrets, proprietary information and/or confidential commercial information not relevant to, or necessary for, the adjudication of the issues remaining in this action.

13.    Defendants reserve the right at any time to supplement and/or amend any of the objections herein on the basis of information that comes to its attention or the attention of its attorneys.

14.    In furnishing the responses herein, Defendants do not concede the truth of any factual assertion or implication contained in any of Plaintiffs' requests for production. Moreover, Defendants' responses and objections shall not be construed as representations regarding the existence or non-existence of specific documents in its possession, custody or control.

15.    Each of the foregoing General Objections is incorporated in each of the Specific Responses and Objections regardless of whether they are specifically referenced therein. Subject to and without waiving the General Objections, Defendants respond as follows:

## SPECIFIC RESPONSES TO DOCUMENT REQUESTS

### Document Request No. 1:

All documents relating to Count I of Defendants' Third Amended Complaint, including but not limited to, all documents that Defendants plan to use in support of their claims.

### Response to Document Request No. 1:

Defendants object to this request on the basis that it lacks specificity, and is overbroad, vague, and ambiguous. Defendants further object to this Request to the extent that it calls for the production of documents that are already in Plaintiffs' possession, publicly available, equally available to Plaintiff, and/or are obtainable from some other source that is more convenient, less burdensome or less expensive. Defendants also object to this request to the extent that it improperly purports to require Defendants to identify, at this time, all documents that they "plan to use in support of their claims" – Defendants are still in the process of determining which documents they intend to use at trial in support of their claims, and at an appropriate time, in connection with a pre-trial

order, Defendants will identify the documents that they intend to use at trial, all of which will be produced, if not heretofore produced.

Subject to and without waiving these objections and the foregoing general objections, which Defendants specifically preserve, Defendants will produce documents responsive to this request.

**Document Request No. 2:**

All documents upon which Defendants may rely to demonstrate that they filed the Indiana Litigation (Index No. 1:05-cv-0423) and litigated the New York Litigation (05 Civ. 3939) in good faith.

**Response to Document Request No. 2:**

Defendants object to this request on the grounds that it is seeks information that is not relevant to the claims or defenses of any party.

Dated: New York, New York
         December 4, 2007

                              LOEB & LOEB LLP

                              By: _____
                                    Barry I. Slotnick (BS-9796)
                                    Paula K. Colbath (PC-9895)
                                    Jonathan Neil Strauss (JS-1090)
                                    345 Park Avenue
                                    New York, New York 10154-1895
                                    (212) 407-4000

                                    Attorneys for Defendant/Consolidated
                                    Plaintiff Marilyn Monroe, LLC

SOVICH MINCH LLP

By: _____

Theodore J. Minch (Admitted *Pro Hac Vice*)
10099 Chesapeake Drive, Suite 100
McCordsville, IN 46055
(317) 335-3601

Attorneys for Defendant/Consolidated
Plaintiff CMG Worldwide, Inc.

6R9403.1

EX. R

**Subject: RE: Shaw Family Archives, Ltd., et al. v. CMG Worldwide, Inc., et al.**
**Date:** Wednesday, December 5, 2007 1:29 PM
**From:** Jonathan Neil Strauss <jstrauss@loeb.com>
**To:** Christopher Serbagi <c.serbagi@earthlink.net>

Chris, the Ballantine book contains a number of Flying Skirt photographs. As you know, many of these photographs are extremely similar and difficult to distinguish from each other. I also note that, in our discovery requests, we have asked you for information regarding the entire "Flying Skirt" series which you have thus far refused to provide. Thus, we are unable to provide further detail at this time, but will supplement our responses as applicable after your clients' depositions and other further discovery is completed. Thanks,

Jon

---

**From:** Christopher Serbagi [mailto:c.serbagi@earthlink.net]
**Sent:** Wednesday, December 05, 2007 1:02 PM
**To:** Jonathan Neil Strauss
**Subject:** Re: Shaw Family Archives, Ltd., et al. v. CMG Worldwide, Inc., et al.

Dear John:

Thank you for your response, which we disagree with on many levels and will address more fully at the appropriate time.

For now, I have a comment and a question:

1.  Interrogatory No. 1 asks for the "detailed factual and  legal basis for Count I in the Third Amended Complaint.  The rest is  merely a detailed recitation of what that interrogatory should include, not  subparts.  Proceed as you will.

2.  Do you have a basis to believe that the flying skirt documents to which you refer are in the Rizzoli or Ballantine books?

Thank you for your anticipated cooperation.

Christopher Serbagi

On 12/5/07 12:23 PM, "Jonathan Neil Strauss" <jstrauss@loeb.com> wrote:

Chris,

As reflected in our responses, we are not refusing to respond to Interrogatory No. 1. However, I note the following (in addition to the other objections set forth in our responses):

(1) - By our conservative estimate, Plaintiffs' First and Second Set of Interrogatories contained a total of at least 37 discrete interrogatories. And Interrogatory No. 1 in Plaintiffs' Third Set of Interrogatories actually contains at least ten discrete interrogatories, bringing Plaintiffs' over the 45-interrogatory limit. In light of the above, and so that defendants' are not forced to pick and choose the interrogatories to which they respond, you may wish to narrow your request.

(2) - In addition, and as noted in our objections and responses, Local Rule 33.3(c) provides that contention interrogatories may be served only "[a]t the conclusion of other discovery." As we are still awaiting discovery and depositions relevant to Count I of MMLLC's Third Amended Complaint, we cannot respond fully to Interrogatory No. 1 at this time. Indeed, much of the information called for in Interrogatory No. 1 relates to the publication and/or registration of Monroe/Shaw Photographs, information that you have thus far refused to provide to us. However, as reflected in the objections and responses, subject to our other objections we are willing to supplement our response to the interrogatories listed under Interrogatory No. 1 after other discovery and depositions have concluded.

Notwithstanding the foregoing, we will state that the basis of Count I of Defendants' Third Amended Complaint is that there exist Monroe/Shaw Photographs that were published prior to January 1, 1964 for which no copyright renewals were obtained during the final year of the initial 28-year copyright for such works, and that there exist further Monroe/Shaw Photographs that were initially published without copyright notice prior to March 1, 1989, when notice was required under the United States Copyright Act, or with the wrong copyright notice.

For example, the United States District Court for the Southern District of New York has ruled that all photographs in the book entitled "Marilyn Monroe. The Life. The Myth", which includes a number of Monroe/Shaw Photographs, have entered the public domain. In addition, in 1955 Ballantine Books published a book entitled "Marilyn Monroe as The Girl," which features numerous Monroe/Shaw Photographs (including photographs from the "Flying Skirt" series of photographs). Because no copyright renewal was obtained in connection with these photographs, all of them, including the Flying Skirt photographs, are now in the public domain.

Upon information and belief, there exist additional Monroe/Shaw Photographs that are in the public domain for, *inter alia*, the reasons discussed above. As we are in the midst of discovery regarding these issues, we reserve the right to supplement our response at a later time after the close of discovery.

Moreover, the document productions in this case are rife with examples of instances in

**Page 2 of 4**

which the Shaw Family Archives asserted rights to Monroe/Shaw Photographs, including photographs from the Flying Skirt series, not withstanding that photographs from the Flying Skirt series have plainly entered the public domain.

Please let me know if you would like to discuss these issues further,

Jon

---

**From:** Christopher Serbagi [mailto:c.serbagi@earthlink.net]
**Sent:** Tuesday, December 04, 2007 12:45 PM
**To:** Jonathan Neil Strauss
**Cc:** Paula Colbath; tjminch@sovichminch.com; David Marcus
**Subject:** Re: Shaw Family Archives, Ltd., et al. v. CMG Worldwide, Inc., et al.

Dear John:

Thank you for these responses. I have some initial questions about Defendants' failure to respond to Interrogatory No. 1.

First, is your firm aware that the parties previously agreed to extend the number of permissible interrogatories to 45? It is my recollection that Judge Fox agreed to that on July 31, 2007, as evidenced by Orin Snyder's letter dated August 1, 2007 in which he requested confirmation that Judge Fox had so granted the parties request. If this is the basis for Defendants refusal to provide their contentions on the sole claim Defendants' have asserted please let me know now so we can contact Judge Fox for clarification immediately.

Second, Defendants are well aware that Plaintiffs are entitled to Defendants' contentions as to the existing declaratory judgment claim and that is what we are seeking. Are Defendants refusing to provide their contentions and why do Defendants believe that a response is premature at this late stage, as stated in Defendants' interrogatory response.

Thank you.

Christopher Serbagi

Law Offices of Christopher Serbagi
488 Madison Avenue, Suite 1120
New York, New York 10022
Tele: 212-593-2112

Fax:   212-308-8582
Email: c.serbagi@earthlink.net
Web Site:  www.serbagi.com


On 12/4/07 11:59 AM, "Jonathan Neil Strauss"  <jstrauss@loeb.com> wrote:

    Chris,

    Attached please find defendants' responses and objections to your  most
    recent discovery requests.  We will provide you with  documents  responsive
    to your requests at our offices later  today.

    Very truly yours,

    Jon

    CONFIDENTIALITY NOTICE:  This  e-mail  transmission, and any
    documents, files or previous e-mail  messages attached  to it may
    contain confidential information that  is legally privileged.   If
    you are not the intended recipient,  or a person responsible  for
    delivering it to the intended  recipient, you are hereby  notified
    that any disclosure, copying,  distribution or use of any of  the
    information contained in or  attached to this transmission  is
    STRICTLY PROHIBITED.  If you  have received this transmission  in
    error, please immediately notify  the sender.  Please destroy  the
    original transmission and its  attachments without reading or
    saving  in any manner.  Thank  you, Loeb & Loeb LLP.

EX. S

**Subject:** RE: <no subject>
**Date:** Friday, December 14, 2007 11:24 AM
**From:** Paula Colbath <pcolbath@loeb.com>
**To:** Christopher Serbagi <c.serbagi@earthlink.net>
**Cc:** Jonathan Neil Strauss <jstrauss@loeb.com>, David Marcus
<dmmlitigates@yahoo.com>
**Conversation:** <no subject>

Chris:  I do not think it would be appropriate for us to call Judge Fox.  He made it clear to us to strictly follow his July 6, 2006 Order, which we have done, and he is well aware of Judge McMahon's December 31 discovery cut-off date.  Magistrate Fox's Order also expressly states that "[i]f the court deems it necessary, the parties will have an opportunity to make oral replies to points made in the letter briefs, although the court may decide the matters on the papers, without any appearance by counsel, if appropriate."  If Magistrate Fox wants to hear further from the parties, he will let us know.  To avoid having to bring back your witnesses once you are required to supplement your document production, my suggestion would be to simply comply with our discovery requests.


Paula


**From:** Christopher Serbagi [mailto:c.serbagi@earthlink.net]
**Sent:** Thursday, December 13, 2007 9:16 PM
**To:** Paula Colbath
**Subject:** Re: <no subject>

Have you heard from Judge Fox?  We might want to give him a call tomorrow to get a ruling on my request for a protective order and your motion to compel.  What do you think?


On 12/13/07 9:13 PM, "Paula Colbath" <pcolbath@loeb.com> wrote:

    We intend to go forward.

    ----- Original Message -----
    From: Christopher Serbagi <c.serbagi@earthlink.net>
    To:  Paula Colbath
    Cc: David Marcus <dmmlitigates@yahoo.com>
    Sent: Thu  Dec 13 20:33:58 2007
    Subject: <no subject>

    Paula:

    I  would very much appreciate you letting me know immediately if you do

not
plan on taking my clients' depositions before I meet with them  tomorrow. To
cancel these depositions at the last minute would cause  us significant and
unnecessary additional expense.  Thank  you.

Best,

Chris


Law Offices of Christopher  Serbagi
488 Madison Avenue, Suite 1120
New York, New York   10022
Tele: 212-593-2112
Fax:  212-308-8582
Email:  c.serbagi@earthlink.net
Web Site:  www.serbagi.com





**Paula K.  Colbath**

Partner


 345 Park Avenue
 New York, NY  10154
 **www.loeb.com**
 **Direct** 212.407.4905
 **Main** 212.407.4000
 **Fax** 212.937.3189
 pcolbath@loeb.com
 <mailto:pcolbath@loeb.com>

_____

CONFIDENTIALITY NOTICE: This e-mail transmission, and  any documents, files or previous
e-mail messages attached to it may contain  confidential information that is legally
privileged. If you are not the  intended recipient, or a person responsible for delivering it to
the intended  recipient, you are hereby notified that any disclosure, copying, distribution  or

use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify the sender. Please destroy the original transmission and its attachments without reading or saving in any manner. Thank you, Loeb & Loeb LLP.

# EX. T

**Subject: Re: Depositions**
**Date:** Sunday, December 16, 2007 3:17 PM
**From:** Christopher Serbagi <c.serbagi@earthlink.net>
**To:** Barry Slotnick <bslotnick@loeb.com>, Paula Colbath <pcolbath@loeb.com>, "Ted J. Minch" <tjminch@sovichminch.com>
**Cc:** David Marcus <dmmlitigates@yahoo.com>
**Conversation:** Depositions

Barry:

I am not inviting you to debate the issue, but I am telling you that in the absence of a Court Order, our witnesses will not testify about any works other than those you have identified to be in the public domain in your Third Amended Complaint.  We will not facilitate your fishing expedition, which can only be seen as a vindictive effort to punish the Shaw Family since your clients have no rights to the images of Marilyn Monroe themselves.  This case is almost three years old, if Defendants had any evidence that any other works are public domain, they would have identified them in what is now Defendants' fourth complaint.  If you have legal authority supporting your position that you are entitled to inquire into works you have not even identified, I would be happy to review that authority and re-consider my position.  I can tell you that I have researched the issue, and Judge McMahon has, in my estimation, specifically criticized the very position you are now taking.

You have obviously preserved the record, and if the Judge rules that you are correct, we will make our witnesses available for another day.  In the absence of that decision, I suggest that you not make the deposition unnecessarily uncomfortable by asking questions you know the witness will not answer.  Thank you in advance for you professional courtesies.

Chris


Law Offices of Christopher Serbagi
488 Madison Avenue, Suite 1120
New York, New York  10022
Tele: 212-593-2112
Fax:  212-308-8582
Email: c.serbagi@earthlink.net
Web Site: www.serbagi.com



On 12/16/07 2:59 PM, "Barry Slotnick" <bslotnick@loeb.com> wrote:

Chris:

I am not going to engage in a debate about the issue.  The pleadings and the 30(b)(6) notices to SFA clearly encompass more than just the Rizzoli book which, of course, has already been determined to be in the public domain (insofar as Shaw photos).  Our inquiry is not limited to the photos in that book, but extends to all the so called "Shaw Collection"  including the Monroe/Shaw Photos.  We will examine your designated witness in areas relating to the topics identified in our notice.

Barry

---

**From:** Christopher Serbagi [mailto:c.serbagi@earthlink.net]
**Sent:** Saturday, December 15, 2007 3:07 PM
**To:** Paula Colbath; Barry Slotnick; Ted J. Minch
**Cc:** David Marcus
**Subject:** Depositions

Paula/Ted:  Regarding the 30(b)(6) depositions of Shaw and Bradford:

First, I am stunned that Defendants have added topics to the 30(b)(6) notices on the Friday before a Monday deposition.  We obviously object to those new topics and will not testify on them at the deposition.  When I asked for a revised notice, the idea was that you would drop topics in light of the Plaintiffs' withdrawal of claims, not add topics at the last minute when our witnesses have no time to properly prepare for them.   That maneuver cannot be in good faith and is noted.

Second, as you know, the Plaintiffs will only testify about topics that are relevant to pending claims.  There are two claims outstanding. Our request for a declaratory judgment that Ms. Monroe died a New York domiciliary and Defendants request for the Court to declare that the Rizzoli book is in the public domain.  The Defendants did not identify the Ballantine book in its Prayer for Relief, but since it is mentioned in the Complaint itself, Plaintiffs will testify concerning that book.  However, Plaintiffs reserve their right to argue that the Defendants have not requested that the Court declare it is in the public domain.  All this is not news to you because we have already identified these positions to Judge Fox in request for a protective order, which is currently pending.

We will see you Monday morning at your office for the 30(b)(6) of Shaw Family Archives.  Thank you.

Christopher Serbagi

Law Offices of Christopher Serbagi
488 Madison Avenue, Suite 1120
New York, New York  10022
Tele: 212-593-2112
Fax:  212-308-8582
Email: c.serbagi@earthlink.net
Web Site: www.serbagi.com

On 12/14/07 12:15 PM, "Paula Colbath" <pcolbath@loeb.com> wrote:

CONFIDENTIALITY NOTICE:  This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged.  If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED.  If you have received this transmission in error, please immediately notify the sender.  Please destroy the original transmission and its attachments without reading or saving in any manner.  Thank you, Loeb & Loeb LLP.

# EX. U

## Subject: RE: Defendants' Document Production
**Date:** Thursday, December 20, 2007 9:11 AM
**From:** Paula Colbath <pcolbath@loeb.com>
**To:** Christopher Serbagi <c.serbagi@earthlink.net>, "Ted J. Minch"
<tjminch@sovichminch.com>
**Cc:** Barry Slotnick <bslotnick@loeb.com>, Jonathan Neil Strauss <jstrauss@loeb.com>,
<dmmlitigates@yahoo.com>
**Conversation:** Defendants' Document Production

Chris:  My understanding is that CMG and MMLLC produced over 60,000 pages
to
you (not including the Conroy documents and the numerous other
supplemental
productions Loeb & Loeb has made to you).  Indeed, you have complained to
the
Court on numerous occasions about the volume of documents that were
produced
to you.  If you believe specific documents were not produced, please
identify
them and we will look for them.

Paula Colbath


Paula K. Colbath

Partner


   345 Park Avenue
   New York, NY  10154
   www.loeb.com

Direct 212.407.4905
Main 212.407.4000
Fax 212.937.3189
pcolbath@loeb.com


------------------------------------------------------
CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files
or previous e-mail messages attached to it may contain confidential
information that is legally privileged. If you are not the intended
recipient, or a person responsible for delivering it to the intended
recipient, you are hereby notified that any disclosure, copying,
distribution or use of any of the information contained in or attached to
this transmission is STRICTLY PROHIBITED. If you have received this
transmission in error, please immediately notify the sender. Please
destroy the original transmission and its attachments without reading or
saving in any manner. Thank you, Loeb & Loeb
LLP.------------------------------------------------------

# EX. V

Served separately under seal
pursuant to protective order

EX. W

# COPY

1

1  UNITED STATES DISTRICT COURT

2  SOUTHERN DISTRICT OF NEW YORK

3  ------------------------------------x

4  SHAW FAMILY ARCHIVES, LTD.,
   EDITH MARCUS, and META STEVENS

5
                              Plaintiffs,
6
        - against -
7
   CMG WORLDWIDE, Inc., an Indiana
8  corporation, and MARILYN MONROE,
   Limited, a Delaware limited
9  liability company,

10                            Defendants.
   ------------------------------------x
11

12                Ellen Grauer Court Reporters
                  126 East 56th Street
13                New York, New York

14

15

16                December 26, 2007
                  12:01 p.m.
17

18

19            30(b)(6) deposition of MARK
   ROESLER, before Marlene Lee, CSR, CRR, a Notary
20 Public of the State of New York.

21

22

23      ELLEN GRAUER COURT REPORTING CO. LLC
          126 East 56th Street, Fifth Floor
24              New York, New York
                  212-750-6434
25                Ref: 86257

174

1                           ROESLER

2              What is the basis for that

3     statement?

4              MR. MINCH:   Objection.

5         A.     I believe what that would mean is,

6     except for the claim of the defendants in this

7     case, that they have valid copyrights.  If they

8     acknowledged they were in the public domain, we

9     would encourage licensees to use those photos.

10        Q.     Let's get into the details of that.

11    You say, "but for defendants' false claim of

12    ownership of copyrights in and to photographs

13    of Marilyn Monroe."  Start with that.  What are

14    the false claims of ownership of copyrights in

15    and to photographs of Marilyn Monroe that

16    you're referring to?  When I say "you," I mean

17    CMG.

18        A.     The licensing activities of the

19    Shaw Family and the licensing representative.

20        Q.     What particular copyrights are you

21    referring to in this sentence that I just read

22    that you say we falsely claim ownership to?

23        A.     The various photographs that have

24    been previously published.

25        Q.     Can you name, sitting here today,

175

                          ROESLER
1
2    the title of one copyright registration that we
3    have falsely claimed ownership rights to?
4                 MS. COLBATH:   Objection.
5                 MR. MINCH:   Objection.
6         A.     Not sitting here today.
7         Q.     And would the same answer apply to
8    the rest of the sentence, that sitting here
9    today, you can't provide me any information
10   regarding the part of the sentence that reads,
11   "Plaintiffs would seek to utilize such public
12   domain photographs commercially in connection
13   with goods and services that are officially
14   authorized or licensed by plaintiffs"?
15                MR. MINCH:   Objection.
16                MS. COLBATH:   Objection.
17        Q.     Let me strike the question and
18   reask it.   With respect to that portion I just
19   read into the record, what photographs of
20   Marilyn Monroe would CMG and MMLLC seek to
21   utilize that they haven't utilized because the
22   Shaw Family has asserted rights to them?
23                MR. MINCH:   Objection.
24        Q.     Sitting here today, can you name
25   one?

176

ROESLER

A.    Any that would be clearly recognized or acknowledged to be in the public domain.

Q.    Sitting here today, can you identify one of those registrations or images of Marilyn Monroe?

MS. COLBATH:  Objection.

MR. MINCH:  Objection.

A.    Not sitting here at this moment.

Q.    Turning to page 6, please, under the heading "Count 1."  Looking at paragraph 29, would you read that into the record, please, sir.

A.    "Defendants have refused to acknowledge that any of the works that comprise the Monroe/Shaw photographs and/or the Shaw collection have entered the public domain."

Q.    What's the basis for that statement, sir?

MR. MINCH:  Objection.

A.    The basis would be that they claim valid copyright ownership to photographs that have been published without notice.

Q.    Which photographs are you talking

177

ROESLER

1

2  about?  Again, you don't recall?

3              MR. MINCH:  Objection.

4       A.     Again, the various photographs that

5  appear in the various publications of

6  Photoplay.

7       Q.     But just for the record, so it's

8  clear, you can't identify them, can you?

9       A.     At this moment --

10             MS. COLBATH:  Objection.

11             MR. MINCH:  Objection.

12      Q.     At this point.

13      A.     At this point in the deposition,

14  that's correct.

15      Q.     If you read paragraph 30 into the

16  record and tell me the basis for that

17  statement.

18      A.     "On information and belief, Shaw

19  and/or Bradford communicated to licensees,

20  potential licensees, business partners, and/or

21  potential business partners that such

22  licensees, potential licensees, business

23  partners, and/or potential business partners

24  require the prior permission and consent from

25  Shaw and/or Bradford prior to utilizing the

From: Christopher Serbagi [mailto:c.serbagi@earthlink.net]
Sent: Wednesday, December 19, 2007 9:17 PM
To: Paula Colbath; Ted J. Minch
Subject: Defendants' Document Production

Dear Paula/Ted:

Aside from the third party Conroy documents,the last time CMG and MMLLC
produced documents in this case was in February 2007.  I have asked the
Defendants to supplement their production, but I have received nothing
additional.  If there are no additional responsive documents, that's fine,
but I an entitled to a representation from you both that this is the case.

Have Defendants produced all documents in their possession, custody, and
control that are relevant to Count I in the Third Amended Complaint?
Please
let me know immediately.

Thank you in advance for your cooperation.

Best,

Christopher Serbagi


Law Offices of Christopher Serbagi
488 Madison Avenue, Suite 1120
New York, New York  10022
Tele: 212-593-2112
Fax:  212-308-8582
Email: c.serbagi@earthlink.net
Web Site: www.serbagi.com

EX. X

Circular 22

# How to Investigate the Copyright Status of a Work

**Table of Contents**

- In General
    - A Few Words of Caution about Copyright Investigation
- How to Search Copyright Office Catalogs and Records
    - Individual Searches of Copyright Records
- Searching by the Copyright Office
    - What the Fee Does Not Cover
    - Information Needed
    - Searches Involving Assignments and Other Documents
- Limitations on Searches
- Some Words of Caution
    - Protection in Foreign Countries
- Other Circulars
- Impact of Copyright Act on Copyright Investigations
    - A Changed System of Copyright Formalities
    - Automatic Copyright
    - Copyright Notice
    - Works Already in the Public Domain
    - Scope of Exclusive Rights under Copyright
- Duration of Copyright Protection
- Works First Published before 1978: the Copyright Notice
    - Absence of Copyright Notice
    - The Date in the Copyright Notice
    - Derivative Works
    - The Name in the Copyright Notice
    - Ad Interim
- For Further Information

## In General

### Methods of Approaching a Copyright Investigation

There are several ways to investigate whether a work is under copyright protection and, if so, the facts of the copyright. These are the main ones:

1. Examine a copy of the work for such elements as a copyright notice, place and date of publication, author and publisher. If the work is a sound recording, examine the disk, tape cartridge, or cassette in which the recorded sound is fixed, or the album cover, sleeve, or container in which the recording is sold;

2. Make a search of the Copyright Office catalogs and other records; or

3. Have the Copyright Office make a search for you.

## A Few Words of Caution About Copyright Investigations

Copyright investigations often involve more than one of these methods. Even if you follow all three approaches, the results may not be conclusive. Moreover, as explained in this circular, the changes brought about under the Copyright Act of 1976, the Berne Convention Implementation Act of 1988, the Copyright Renewal Act of 1992, and the Sonny Bono Copyright Term Extension Act of 1998 must be considered when investigating the copyright status of a work.

This circular offers some practical guidance on what to look for if you are making a copyright investigation. It is important to realize, however, that this circular contains only general information and that there are a number of exceptions to the principles outlined here. In many cases it is important to consult with a copyright attorney before reaching any conclusions regarding the copyright status of a work.

## How to Search Copyright Office Catalogs and Records

### Catalog of Copyright Entries

The Copyright Office published the *Catalog of Copyright Entries (CCE)* in printed format from 1891 through 1978. From 1979 through 1982 the CCE was issued in microfiche format. The catalog was divided into parts according to the classes of works registered. Each CCE segment covered all registrations made during a particular period of time. Renewal registrations made from 1979 through 1982 are found in Section 8 of the catalog. Renewals prior to that time were generally listed at the end of the volume containing the class of work to which they pertained.

A number of libraries throughout the U.S. maintain copies of the *Catalog,* and this may provide a good starting point if you wish to make a search yourself. There are some cases, however, in which a search of the *Catalog* alone will not be sufficient to provide the needed information. For example:

- Because the *Catalog* does not include entries for assignments or other recorded documents, it cannot be used for searches involving the ownership of rights.

- The *Catalog* entry contains the essential facts concerning a registration, but it is not a verbatim transcript of the registration record. It does not contain the address of the copyright claimant.

Effective with registrations made since 1982 when the CCE was discontinued, the only method of searching outside the Library of Congress is by using the Internet to access the automated catalog. The automated catalog contains entries from 1978 to the present. Information on accessing the catalog via the Internet is provided below.

## Individual Searches of Copyright Records

The Copyright Office is located in the Library of Congress James Madison Memorial Building, 101 Independence Avenue SE, Washington, DC 20559-6000.

Most Copyright Office records are open to public inspection and searching from 8:30 am to 5:00 pm, eastern time, Monday through Friday, except federal holidays. An exception is the area containing copyright applications from 1870 to the present, which is open from 9:00 am to 4:30 pm. The various records freely available to the public include an extensive card catalog, an automated catalog containing records from 1978 forward, record books, and microfilm records of assignments and related documents. Other records, including correspondence files and deposit copies, are not open to the public for searching. However, they may be inspected upon request and payment of a search fee.[*]

*NOTE: Copyright Office fees are subject to change. For current fees, please check the Copyright Office website, write the Copyright Office, or call (202) 707-3000.

If you wish to do your own searching in the Copyright Office files open to the public, you will be given assistance in locating the records you need and in learning procedures for searching. If the Copyright Office staff actually makes the search for you, a search fee must be charged. The search will not be done while you wait.

In addition, Copyright Office records in machine-readable form cataloged from January 1, 1978, to the present, including registration and renewal information and recorded documents, are available for searching from the Copyright Office website at www.copyright.gov.

The Copyright Office does not offer search assistance to users on the Internet.

## Searching by the Copyright Office

### In General

Upon request, and at the statutory rate for each hour or fraction of an hour consumed, the Copyright Office staff will search its records covering the records of registrations and other recorded documents concerning ownership of copyrights and will provide a written report. If desired, an estimate can be provided. Estimates for searches are based on the information furnished and are provided for a set fee that is applied toward the cost of the search and report. Fees for estimates are nonrefundable and are good for up to one year. Requests must include an address and telephone number where you may be reached during business hours and an email address if available.

Certification of a search report is available for an additional fee. Certified searches are frequently requested to meet the evidentiary requirements of litigation.

Preferred payment is by personal check or credit card. Contact the Copyright Office for information regarding payment with money orders or by overseas banking institutions.

For information, correspondence, or payment, contact:

Library of Congress
Copyright Office, Mail Stop 6306
101 Independence Avenue SE
Washington, DC 20559-6000

Phone: (202) 707-6850 (M–F, 8:30–5:00 eastern time)
Fax: (202) 252-3485
TTY: (202) 707-6737
email: copysearch@loc.gov

### What the Fee Does Not Cover

The search fee does not include the cost of additional certificates, photocopies of deposits, or copies of other Office records. For information concerning these services, request Circular 6, *Obtaining Access to and Copies of Copyright Office Records and Deposits.*

### Information Needed

The more detailed information you can furnish with your request, the less expensive the search will be. Please provide as much of the following information as possible:

- the title of the work, with any possible variants

- the names of the authors, including possible pseudonyms

- the name of the probable copyright owner, which may be the publisher or producer • the approximate year when the work was published or registered

- the type of work involved (book, play, musical composition, sound recording, photograph, etc.)

- for a work originally published as a part of a periodical or collection, the title of that publication and any other information, such as the volume or issue number, to help identify it

- the registration number or any other copyright data

Motion pictures are often based on other works such as books or serialized contributions to periodicals or other composite works. *If you desire a search for an underlying work or for music from a motion picture, you must specifically request such a search. You must also identify the underlying works and music and furnish the specific titles, authors, and approximate dates of these works.*

### Searches Involving Assignments and Other Documents Affecting Copyright Ownership

For the standard hourly search fee, the Copyright Office staff will search its indexes covering the records of assignments and other recorded documents concerning ownership of copyrights. The reports of searches in these cases will state the facts shown in the Office's indexes of the recorded documents but will offer no interpretation of the content of the documents or their legal effect.

## Limitations on Searches

In determining whether or not to have a search made, you should keep the following points in mind:

**No Special Lists** • The Copyright Office does not maintain any listings of works by subject or any lists of works that are in the public domain.

### Contributions Not Listed Separately in Copyright Office Records • Individual works

such as stories, poems, articles, or musical compositions that were published as contributions to a copyrighted periodical or collection are usually not listed separately by title in our records.

**No Comparisons** · The Copyright Office does not search or compare copies of works to determine questions of possible infringement or to determine how much two or more versions of a work have in common.

**Titles and Names Not Copyrightable** · Copyright does not protect names and titles, and our records list many different works identified by the same or similar titles. Some brand names, trade names, slogans, and phrases may be entitled to protection under the general rules of law relating to unfair competition. They may also be entitled to registration under the provisions of the trademark laws. Questions about the trademark laws should be addressed to: Commissioner of Patents and Trademarks, U.S. Patent and Trademark Office, PO Box 1450, Alexandria, VA 22313-1450. Possible protection of names and titles under common law principles of unfair competition is a question of state law.

**No Legal Advice** · The Copyright Office cannot express any opinion as to the legal significance or effect of the facts included in a search report.

## Some Words of Caution

### Searches Not Always Conclusive

Searches of the Copyright Office catalogs and records are useful in helping to determine the copyright status of a work, but they cannot be regarded as conclusive in all cases. The complete absence of any information about a work in the Office records does not mean that the work is unprotected. The following are examples of cases in which information about a particular work may be incomplete or lacking entirely in the Copyright Office:

- Before 1978, unpublished works were entitled to protection under common law without the need of registration.

- Works published with notice prior to 1978 may be registered at *any* time within the first 28-year term.

- Works copyrighted between January 1, 1964, and December 31, 1977, are affected by the Copyright Renewal Act of 1992, which automatically extends the copyright term and makes renewal registrations optional.

- For works under copyright protection on or after January 1, 1978, registration may be made at any time during the term of protection. Although registration is not required as a condition of copyright protection, there are certain definite advantages to registration. For further information, request Circular 1, *Copyright Basics.*

- Since searches are ordinarily limited to registrations that have already been cataloged, a search report may not cover recent registrations for which catalog

records are not yet available.

- The information in the search request may not have been complete or specific enough to identify the work.

- The work may have been registered under a different title or as part of a larger work

### Protection in Foreign Countries

Even if you conclude that a work is in the public domain in the United States, this does not necessarily mean that you are free to use it in other countries. Every nation has its own laws governing the length and scope of copyright protection, and these are applicable to uses of the work within that nation's borders. Thus, the expiration or loss of copyright protection in the United States may still leave the work fully protected against unauthorized use in other countries.

## Other Circulars

For further information, request Circular 6; Circular 15, Renewal of Copyright; Circular 15a, Duration of Copyright; and Circular 15t, Extension of Copyright Terms, from:

> Library of Congress
> Copyright Office
> Publications Section
> 101 Independence Avenue SE
> Washington, DC 20559-6000

You may call the Forms and Publications Hotline at (202) 707-9100 at any time, day or night, to leave a recorded request for forms or circulars. Requests are filled and mailed promptly.

## Impact of the Copyright Act on Copyright Investigations

On October 19, 1976, the President signed into law a complete revision of the copyright law of the United States (title 17 of the *United States Code*). Most provisions of this statute came into force on January 1, 1978, superseding the copyright act of 1909. These provisions made significant changes in the copyright law. Further important changes resulted from the Berne Convention Implementation Act of 1988, which took effect March 1, 1989; the Copyright Renewal Act of 1992 (P.L. 102-307) enacted June 26, 1992, which amended the renewal provisions of the copyright law; and the Sonny Bono Copyright Term Extension Act of 1998 (P.L. 105-298) enacted October 27, 1998, which extended the term of copyrights for an additional 20 years.

If you need more information about the provisions of either the 1909 or the 1976 law, write or call the Copyright Office. For information about renewals, request Circular 15. For information about the Sonny Bono Copyright Term Extension Act, request SL-15, New Terms for Copyright Protection. For copies of the law, request Circular 92, Copyright Law of the United States (stock number is changed to 030-002- 00197-7), from:

> Superintendent of Documents
> P.O. Box 371954
> Pittsburgh, PA 15250-7954

Phone: (202) 512-1800 [toll free: (866) 512-1800]
Fax: (202) 512-2104

Or go to the Copyright Office website at www.copyright.gov/title17.

For copyright investigations, the following points about the impact of the Copyright Act of 1976, the Berne Convention Implementation Act of 1988, and the Copyright Renewal Act of 1992 should be considered.

## A Changed System of Copyright Formalities

Some of the most sweeping changes under the 1976 Copyright Act involve copyright formalities, that is, the procedural requirements for securing and maintaining full copyright protection. The old system of formalities involved copyright notice, deposit and registration, recordation of transfers and licenses of copyright ownership, and U.S. manufacture, among other things. In general, while retaining formalities, the 1976 law reduced the chances of mistakes, softened the consequences of errors and omissions, and allowed for the correction of errors.

The Berne Convention Implementation Act of 1988 reduced formalities, most notably making the addition of the previously mandatory copyright notice optional. It should be noted that the amended notice requirements are not retroactive.

The Copyright Renewal Act of 1992, enacted June 26, 1992, automatically extends the term of copyrights secured between January 1, 1964, and December 31, 1977, making renewal registration optional. Consult Circular 15 for details. For additional information, you may contact the Copyright Office by phone at (202) 707-8180 or by fax at (202) 707-3849.

## Automatic Copyright

Under the present copyright law, copyright exists in original works of authorship created and fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly, or indirectly with the aid of a machine or device. In other words, copyright is an incident of creative authorship not dependent on statutory formalities. Thus, registration with the Copyright Office generally is not required, but there are certain advantages that arise from a timely registration. For further information on the advantages of registration, write or call the Copyright Office and request Circular 1.

## Copyright Notice

The 1909 Copyright Act and the 1976 Copyright Act as originally enacted required a notice of copyright on published works. For most works, a copyright notice consisted of the symbol ©, the word "Copyright" or the abbreviation "Copr.," together with the name of the owner of copyright and the year of first publication. For example: "© Joan Crane 2004" or "Copyright 2004 by Abraham Adams."

For sound recordings published on or after February 15, 1972, a copyright notice might read "℗ 1994 XYZ Records, Inc." See below for more information about sound recordings.

For mask works, a copyright notice might read "Ⓜ SDR Industries." Request Circular 100, Federal Statutory Protection for Mask Works, for more information. As originally enacted, the 1976 law prescribed that all visually perceptible published copies of a work, or

published phonorecords of a sound recording, should bear a proper copyright notice. This applies to such works published before March 1, 1989. After March 1, 1989, notice of copyright on these works is optional. Adding the notice, however, is strongly encouraged and, if litigation involving the copyright occurs, certain advantages exist for publishing a work with notice.

Prior to March 1, 1989, the requirement for the notice applied equally whether the work was published in the United States or elsewhere by authority of the copyright owner. Compliance with the statutory notice requirements was the responsibility of the copyright owner. Unauthorized publication without the copyright notice, or with a defective notice, does not affect the validity of the copyright in the work.

Advance permission from, or registration with, the Copyright Office is not required before placing a copyright notice on copies of the work or on phonorecords of a sound recording. Moreover, for works first published on or after January 1, 1978, through February 28, 1989, omission of the required notice, or use of a defective notice, did not result in forfeiture or outright loss of copyright protection. Certain omissions of, or defects in, the notice of copyright, however, could have led to loss of copyright protection if steps were not taken to correct or cure the omissions or defects. The Copyright Office has issued a final regulation (37 *CFR* 201.20) that suggests various acceptable positions for the notice of copyright. For further information, write to the Copyright Office and request Circular 3, *Copyright Notice.* This regulation is available on the Copyright Office website at www.copyright.gov/title37/201/index.html.

### Works Already in the Public Domain

No law will restore protection to works that fell into the public domain before the passage of the law. However, the North American Free Trade Agreement Implementation Act (NAFTA) and the Uruguay Round Agreements Act (URAA) may restore copyright in certain works of foreign origin that were in the public domain in the United States. Under the copyright law in effect prior to January 1, 1978, copyright could be lost in several situations. The most common were publication without the required notice of copyright, expiration of the first 28-year term without renewal, or final expiration of the second copyright term. The Copyright Renewal Act of 1992 automatically renews first term copyrights secured between January 1, 1964, and December 31, 1977.

### Scope of Exclusive Rights Under Copyright

The present law has changed and enlarged in some cases the scope of the copyright owner's rights. The new rights apply to all uses of a work subject to protection by copyright after January 1, 1978, regardless of when the work was created.

## Duration of Copyright Protection

### Works Originally Copyrighted On or After January 1, 1978

A work that is created and fixed in tangible form for the first time on or after January 1, 1978, is automatically protected from the moment of its creation and is ordinarily given a term enduring for the author's life plus an additional 70 years after the author's death. In the case of "a joint work prepared by two or more authors who did not work for hire," the term lasts for 70 years after the last surviving author's death. For works made for hire and for anonymous and pseudonymous works (unless the author's identity is revealed in the Copyright Office records), the duration of copyright will be 95 years from publication or 120 years from creation, whichever is less.

Works created before the 1976 law came into effect but neither published nor registered

for copyright before January 1, 1978, have been automatically brought under the statute and are now given federal copyright protection. The duration of copyright in these works will generally be computed in the same way as for new works: the life-plus-70 or 95/120-year terms will apply. However, all works in this category are guaranteed at least 25 years of statutory protection.

### Works Copyrighted Before January 1, 1978

Under the law in effect before 1978, copyright was secured either on the date a work was published with notice of copyright or on the date of registration if the work was registered in unpublished form. In either case, copyright endured for a first term of 28 years from the date on which it was secured. During the last (28th) year of the first term, the copyright was eligible for renewal. The copyright law extends the renewal term from 28 to 67 years for copyrights in existence on January 1, 1978.

However, for works copyrighted prior to January 1, 1964, the copyright still must have been renewed in the 28th calendar year to receive the 67-year period of added protection. The amending legislation enacted June 26, 1992, automatically extends this second term for works first copyrighted between January 1, 1964, and December 31, 1977. For more detailed information on the copyright term, write or call the Copyright Office and request Circular 15a.

## Works First Published Before 1978: the Copyright Notice

### General Information About the Copyright Notice

In investigating the copyright status of works first published before January 1, 1978, the most important thing to look for is the notice of copyright. As a general rule under the previous law, copyright protection was lost permanently if the notice was omitted from the first authorized published edition of a work or if it appeared in the wrong form or position. The form and position of the copyright notice for various types of works were specified in the copyright statute. Some courts were liberal in overlooking relatively minor departures from the statutory requirements, but a basic failure to comply with the notice provisions forfeited copyright protection and put the work into the public domain in this country.

### Absence of Copyright Notice

For works first published before 1978, the complete absence of a copyright notice from a published copy generally indicates that the work is not protected by copyright. For works first published before March 1, 1989, the copyright notice is mandatory, but omission could have been cured by registration before or within 5 years of publication and by adding the notice to copies published in the United States after discovery of the omission. Some works may contain a notice, others may not. The absence of a notice in works published on or after March 1, 1989, does not necessarily indicate that the work is in the public domain.

**Unpublished Works** · No notice of copyright was required on the copies of any unpublished work. The concept of "publication" is very technical, and it was possible for a number of copies lacking a copyright notice to be reproduced and distributed without affecting copyright protection.

**Foreign Editions** · In the case of works seeking ad interim copyright,* copies of a copyrighted work were exempted from the notice requirements if they were first published outside the United States. Some copies of these foreign editions could find their way into the United States without impairing the copyright.

*Note: "Ad interim copyright" refers to a special short term of copyright available to certain pre-1978 books and periodicals. (See further information on <u>ad interim</u> copyright.)

**Accidental Omission ·** The 1909 statute preserved copyright protection if the notice was omitted by accident or mistake from a "particular copy or copies."

**Unauthorized Publication ·** A valid copyright was not secured if someone deleted the notice and/or published the work without authorization from the copyright owner.

**Sound Recordings ·** Reproductions of sound recordings usually contain two different types of creative works: the underlying musical, dramatic, or literary work that is being performed or read and the fixation of the actual sounds embodying the performance or reading. For protection of the underlying musical or literary work embodied in a recording, it is not necessary that a copyright notice covering this material appear on the phonograph records or tapes on which the recording is reproduced. As noted above, a special notice is required for protection of the recording of a series of musical, spoken, or other sounds that were fixed on or after February 15, 1972. Sound recordings fixed before February 15, 1972, are not eligible for federal copyright protection. The Sound Recording Act of 1971, the present copyright law, and the Berne Convention Implementation Act of 1988 cannot be applied or be construed to provide any retroactive protection for sound recordings fixed before February 15, 1972. Such works, however, may be protected by various state laws or doctrines of common law.

### The Date in the Copyright Notice

If you find a copyright notice, the date it contains may be important in determining the copyright status of the work. In general, the notice on works published before 1978 must include the year in which copyright was secured by publication or, if the work was first registered for copyright in unpublished form, the year in which registration was made. There are two main exceptions to this rule.

1. For pictorial, graphic, or sculptural works (Classes F through K under the 1909 law), the law permitted omission of the year date in the notice.

2. For "new versions" of previously published or copyrighted works, the notice was not usually required to include more than the year of first publication of the new version itself. This is explained further under "Derivative Works" below.

The year in the notice usually (though not always) indicated when the copyright began. It is, therefore, significant in determining whether a copyright is still in effect; or, if the copyright has not yet run its course, the year date will help in deciding when the copyright is scheduled to expire. For further information about the duration of copyright, request <u>Circular 15a</u>.

In evaluating the meaning of the date in a notice, you should keep the following points in mind:

**Works Published and Copyrighted Before January 1, 1978 ·** A work published before January 1, 1978, and copyrighted within the past 75 years may still be protected by copyright in the United States if a valid renewal registration was made during the 28th year of the first term of the copyright. If renewed by registration or under the Copyright Renewal Act of 1992 and if still valid under the other provisions of the law, the copyright

will expire 95 years from the end of the year in which it was first secured.

Therefore, the U.S. copyright in any work published or copyrighted prior to January 1, 1923, has expired by operation of law, and the work has permanently fallen into the public domain in the United States. For example, on January 1, 1997, copyrights in works first published or copyrighted before January 1, 1922, have expired; on January 1, 1998, copyrights in works first published or copyrighted before January 1, 1923, have expired. Unless the copyright law is changed again, no works under protection on January 1, 1999, will fall into the public domain in the United States until January 1, 2019.

**Works First Published or Copyrighted Between January 1, 1923, and December 31, 1949, But Not Renewed** · If a work was first published or copyrighted between January 1, 1923, and December 31, 1949, it is important to determine whether the copyright was renewed during the last (28th) year of the first term of the copyright. This can be done by searching the Copyright Office records or catalogs as explained previously. If no renewal registration was made, copyright protection expired permanently at the end of the 28th year of the year date it was first secured.

**Works First Published or Copyrighted Between January 1, 1923, and December 31, 1949, and Registered for Renewal** · When a valid renewal registration was made and copyright in the work was in its second term on December 31, 1977, the renewal copyright term was extended under the latest act to 67 years. In these cases, copyright will last for a total of 95 years from the end of the year in which copyright was originally secured. Example: Copyright in a work first published in 1925 and renewed in 1953 will expire on December 31, 2020.

**Works First Published or Copyrighted Between January 1, 1923, and December 31, 1949, and Registered for Renewal** · When a valid renewal registration was made and copyright in the work was in its second term on December 31, 1977, the renewal copyright term was extended under the latest act to 67 years. In these cases, copyright will last for a total of 95 years from the end of the year in which copyright was originally secured. Example: Copyright in a work first published in 1925 and renewed in 1953 will expire on December 31, 2020.

Works First Published or Copyrighted Between January 1, 1964, and December 31, 1977 · If a work was in its first 28- year term of copyright protection on June 26, 1992, renewal registration is now optional. The term of copyright for works published or copyrighted during this time period has been extended to 95 years by the Copyright Renewal Act of 1992 and the Sonny Bono Term Extension Act of 1998. There is no need to make the renewal filing to extend the original 28- year copyright term to the full 95 years.

However, there are several advantages to making a renewal registration during the 28th year of the original term of copyright. If renewal registration is made during the 28th year of the original term of copyright, the renewal copyright vests in the name of the renewal claimant on the effective date of the renewal registration; the renewal certificate constitutes prima facie evidence as to the validity of the copyright during the renewed and extended term and of the facts stated in the certificate; and, the right to use the derivative work in the extended term may be affected. Request Circular 15 for further information.

**Unpublished, Unregistered Works** · Before 1978, if a work had been neither "published" in the legal sense nor registered in the Copyright Office, it was subject to perpetual protection under the common law. On January 1, 1978, all works of this kind,

Case 1:05-cv-03939-CM    Document 215-5    Filed 03/05/2008    Page 55 of 56

subject to protection by copyright, were automatically brought under the federal copyright statute. The duration of copyright for these works can vary, but none of them expired before December 31, 2002.

## Derivative Works

In examining a copy (or a record, disc, or tape) for copyright information, it is important to determine whether that particular version of the work is an original edition of the work or a "new version." New versions include musical arrangements, adaptations, revised or newly edited editions, translations, dramatizations, abridgments, compilations, and works republished with new matter added. The law provides that derivative works, published or unpublished, are independently copyrightable and that the copyright in such a work does not affect or extend the protection, if any, in the underlying work. Under the 1909 law, courts have also held that the notice of copyright on a derivative work ordinarily need not include the dates or other information pertaining to the earlier works incorporated in it. This principle is specifically preserved in the present copyright law. Thus, if the copy (or the record, disc, or tape) constitutes a derivative version of the work, these points should be kept in mind:

- The date in the copyright notice is not necessarily an indication of when copyright in all the material in the work will expire. Some of the material may already be in the public domain, and some parts of the work may expire sooner than others.

- Even if some of the material in the derivative work is in the public domain and free for use, this does not mean that the "new" material added to it can be used without permission from the owner of copyright in the derivative work. It may be necessary to compare editions to determine what is free to use and what is not.

- Ownership of rights in the material included in a derivative work and in the preexisting work upon which it may be based may differ, and permission obtained from the owners of certain parts of the work may not authorize the use of other parts.

## The Name in the Copyright Notice

Under the copyright statute in effect before 1978, the notice was required to include "the name of the copyright proprietor." The present act requires that the notice include "the name of the owner of copyright in the work, or an abbreviation by which the name can be recognized, or a generally known alternative designation of the owner." The name in the notice (sometimes in combination with the other statements on the copy, records, disk, tape, container, or label) often gives persons wishing to use the work the information needed to identify the owner from whom licenses or permission can be sought. In other cases, the name provides a starting point for a search in the Copyright Office records or catalogs, as explained at the beginning of this circular.

In the case of works published before 1978, copyright registration is made in the name of the individual person or the entity identified as the copyright owner in the notice. For works published on or after January 1, 1978, registration is made in the name of the person or entity owning all the rights on the date the registration is made. This may or may not be the name appearing in the notice. In addition to its records of copyright registration, the Copyright Office maintains extensive records of assignments, exclusive licenses, and other documents dealing with copyright ownership.

Case 1:05-cv-03939-CM    Document 213-5    Filed 03/05/2008    Page 56 of 56    3/2/08 6:55 PM

### Ad Interim

Ad interim copyright was a special short-term copyright that applied to certain books and periodicals in the English language that were first manufactured and published outside the United States. It was a partial exception to the manufacturing requirements of the previous U. S. copyright law. Its purpose was to secure temporary U. S. protection for a work, pending the manufacture of an edition in the United States. The ad interim requirements changed several times over the years and were subject to a number of exceptions and qualifications.

The manufacturing provisions of the copyright act expired on July 1, 1986, and are no longer a part of the copyright law. The transitional and supplementary provisions of the act provide that for any work in which ad interim copyright was subsisting or capable of being secured on December 31, 1977, copyright protection would be extended for a term compatible with the other works in which copyright was subsisting on the effective date of the new act. Consequently, if the work was first published on or after July 1, 1977, and was eligible for ad interim copyright protection, the provisions of the present copyright act will be applicable to the protection of these works. Anyone investigating the copyright status of an English-language book or periodical first published outside the United States before July 1, 1977, should check carefully to determine:

- Whether the manufacturing requirements were applicable to the work; and

- If so, whether the ad interim requirements were met.

## Search Request Form

Fill out the search request form to investigate the copyright status of a work.

## For Further Information

### Information via the Internet

Circulars, announcements, regulations, other related materials, and all copyright application forms are available from the Copyright Office website at www.copyright.gov.

### Information by telephone

For general information about copyright, call the Copyright Public Information Office at (202) 707-3000. The TTY number is (202) 707-6737. Staff members are on duty from 8:30 am to 5:00 pm, eastern time, Monday through Friday, except federal holidays. Recorded information is available 24 hours a day. Or, if you know which application forms and circulars you want, request them 24 hours a day from the Forms and Publications Hotline at (202) 707-9100. Leave a recorded message.

### Information by regular mail

Write to:

    Library of Congress
    Copyright Office
    Publications Section
    101 Independence Avenue SE