UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SHAW FAMILY ARCHIVES, LTD.,  EDITH MARCUS,  :
and META STEVENS,                                          :
                                                                        :
                                                                        :
                                           Plaintiffs,        :   Index No. O5 CV 3939 (CM)
                                                                        :
           -against-                                             :
                                                                        :
                                                                        :
CMG WORLDWIDE, INC., an Indiana Corporation  :
and MARILYN MONROE, LLC, a Delaware          :
Limited Liability Company,                             :
                                                                        :
                                          Defendants.       :
                                                                        :
-------------------------------------------------------------------X


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR CROSS-
MOTION FOR AN ORDER THAT PLAINTIFFS' ARE PRECLUDED FROM
ASSERTING COUNT I OF THEIR THIRD AMENDED COMPLAINT ON
SUMMARY JUDGMENT OR AT TRIAL AND FOR SANCTIONS**


                                   LAW OFFICES OF CHRISTOPHER SERBAGI
                                   488 Madison Avenue, Suite 1120
                                   New York, New York  10022
                                   Tele: (212) 593-2112
                                   Fax: (212) 308-8582

                                   Attorneys for the Plaintiffs

On the Brief:
Christopher Serbagi, Esq.
David Marcus, Esq.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................iii

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT......................................................................................................................2

I.  THE COURT SHOULD PRECLUDE THE DEFENDANTS
    FROM ARGUING COUNT I BECAUSE THEY REFUSED
    TO ANSWER INTERROGATORY RESPONSES DIRECTED
    TOWARD THAT CLAIM .........................................................................................3

    A.  The Defendants Declined To Answer Interrogatories
        That Requested The Basis Of Their Public Domain Claim......................................5

    B.  The Defendants Refused To Disclose The Nature
        of The Intellectual Property They Purportedly Own,
        And Are Therefore Precluded From Asserting
        The Existence of a Justiciable Controversy .........................................................7

    C.  The Defendants' Interrogatory Responses
        Were Limited Entirely To Claiming That
        Rizzoli Is In The Public Domain ..........................................................................8

II. THE COURT SHOULD PRECLUDE THE DEFENDANTS
    FROM ARGUING THAT SAM SHAW IMAGES OF MARILYN
    MONROE ARE IN THE PUBLIC DOMAIN BECAUSE
    DEFENDANTS DID NOT PRODUCE ANY OF THE DOCUMENTS
    UPON WHICH IT NOW RELIES ...........................................................................8

    A.  The Defendants' Arguments that Ballantine Is Public
        Domain Are Based On An Declaration And Documents
        They Produced Two Months After Discovery Closed............................................9

    B.  The Defendants' Arguments That Photographs That
        Sam Shaw Took In Connection With The Seven Year
        Itch Are Works For Hire Are Based On Documents
        That The Shaw Family Produced After Discovery Closed.....................................10

    C.  The Defendants' Additional Arguments That
        Unspecified Monroe/Shaw Photographs Purportedly
        Published In the 1950s Without Notice  Are Public
        Domain Are Based On Documents Defendants
        Produced After Discovery Closed .......................................................................11

III. THE DEFENDANTS' 30(B)(6) WITNESSES FAILED TO
   PROVIDE ANY BASIS FOR THE DEFENDANTS' COUNT I .........................................11

   A. MMLLC's 30(b)(6) Could Not Provide Any
      Basis for A Justiciable Controversy Between The Parties......................................12

      1. MMLLC Testified That It Had No Knowledge
         of Plans To License Rizzoli Images.................................................................12

      2. MMLLC Testified That It Had No Knowledge
         Of Shaw Family Threats Concerning Rizzoli ....................................................12

      3. MMLLC Testified That It Had No Plans
         To License Ballantine Images.........................................................................13

      4. MMLLC Testified That It Did Not Know
         Of Any Images That Defendants Would Like
         To License But Did Not Because of Fear of
         Litigation With The Shaw Family ...................................................................14

      5. Despite MMLLC's Current Conclusory Assertion
         That It Owns Intellectual Property, David
         Strasberg Was Unable To Identify Any Such
         Property At His Deposition.............................................................................14

      6. MMLLC Counsel Improperly Directed MMLLC
         Not To Answer Relevant Questions Concerning
         Their Public Domain Claim ...........................................................................16

   B. CMG's 30(b)(6) Witness Could Not Provide
      Any Basis For Count I ........................................................................................17

      1. CMG Could Not Provide Any Basis To Allege
         A Justiciable Controversy  .............................................................................18

      2. CMG Could Not Substantiate The Allegations
         In The Third Amended Complaint Concerning
         A Justiciable Controversy ..............................................................................21

IV. SANCTIONS ARE APPROPRIATE UNDER RULE 37 AND
    THE COURT'S INHERENT AUTHORITY ...........................................................24

CONCLUSION......................................................................................................26

TABLE OF AUTHORITIES

**CASES:**

American Stock Exchange, LLC v. Mopex, Inc.,
    00 Civ. 5943, 2002 U.S. Dist. LEXIS 23924,
    *23-24 (S.D.N.Y. 2002)........................................................................................ 24

Blauinsel Stiftung v. Sumitomo Corp.,
    No. 03-7636, 2004 U.S. App. LEXIS 2326,
    *3 (2d Cir. Feb. 12, 2004)................................................................................... 3

Design Strategies, Inc. v. David,
    367 F. Supp. 2d 630 ......................................................................................... 23

Elizabeth Iron Works, Inc. v. Atlas machine and Iron Works, Inc.,
    No. 76 Civ. 1569 (PNL), 1983 U.S. Dist. LEXIS 10828,
    *1-*5 (S.D.N.Y. Dec. 14, 1983) ......................................................................... 5

Guadagno v. Wallack Ader Levithan Assocs.,
    950 F. Supp. 1258, (S.D.N.Y., aff'd, 125 F.3d 844
    (2d Cir. 1977)............................................................................................... 5, 6

JSC Foreign Economic Assoc. v. Technostroyexport,
    03 Civ. 5562 (JGK) (AJP), 2005 U.S. Dist LEXIS (AJP),
    * 31 (S.D.N.Y. Aug. 16, 2005) ........................................................................... 3

Prince Group, Inc. v. MTS Prods.,
    No. 95 Civ. 1160, 1998 U.S. Dist. LEXIS 7835,
    *7-*8 (S.D.N.Y. May 27, 1998) ......................................................................... 5

Reilly v. Natwest Mkts. Group Inc.,
    181 F.3d 253 (2d Cir. 1999).............................................................................. 3

Republic of the Philippines v. Marcus et al.,
    888 F.2d 954 (2d Cir. 1989).............................................................................. 12

Sabre v. First Dominion Capital, LLC,
    01 Civ. 2145, 2001 U.S. Dist. LEXIS 20637, *2
    (S.D.N.Y. Dec. 10, 2001).................................................................................. 11

Stiftung v. Sumitomo Corp.,
    99 Civ. 1108 (BSK), 2001 U.S. Dist. LEXIS 20746,
    *18-*19. (S.D.N.Y. Dec. 12, 2001) ................................................................... 12

Texas Instruments Inc. v. Powerchip Semiconductor Corp.,
    06 Civ. 2305 (SHS), 2007 U.S. Dist. LEXIS 38312,
    * 31 (S.D.N.Y. May 24, 2007)........................................................................... 23

The Bank of New York et al. v. Meriden Biao Bank Tanzania Ltd.,
    171 F.R.D. 135 (S.D.N.Y. 1997) .................................................................. 11, 12

Wechsler v. Hunt Health Sys., Ltd.,
    No. 94 Civ. 8294 (PKL), 1999 U.S. Dist LEXIS 13216,
    *3-*4 (S.D.N.Y. Aug. 25, 1999) ......................................................................... 4

Weiss v. Chrysler Motors Corp.,
    515 F.2d 449 (2d Cir. 1975)............................................................................................................. 5
Zappia Middle East Construction Co., Ltd.
    v. The Emirate of Abu Dhabi,
    94 Civ. 1942 (DC), 1995 U.S. Dist. LEXIS 17187,
    *10 (S.D.N.Y. Nov. 17, 1995) ................................................................................................... 11

## STATUTES:

Federal Rules of Procedure ............................................................................................................ 2

Plaintiff/Consolidated Defendant Shaw Family Archives, Ltd. and Consolidated Defendant Bradford Licensing Associates (the "Shaw Family") respectfully submit this memorandum of law in support of its cross-motion to preclude the Defendants/Consolidated Plaintiffs Marilyn Monroe, LLC's ("MMLLC") and CMG Worldwide, Inc.'s ("CMG") (together the "Defendants") from arguing that any photographic images of Marilyn Monroe taken by Sam Shaw are in the public domain based on their failure to provide any discovery on the subject, for sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure and the Court's inherent authority, and for other relief that the Court may deem just and proper.

## PRELIMINARY STATEMENT

Defendants have now perfected the art of trial by ambush. They secrete the most relevant documents during discovery, and sandbag the Shaw Family with their disclosure when they file summary judgment motions. The Defendants surprised the Shaw Family in connection with their prior summary judgment briefing on their right of publicity claim, where they produced critical domicile documents after they told this Court that Ms. Monroe died a California domiciliary in fully briefed summary judgment motions. Now, undeterred by the Court's prior admonition, the Defendants again submit a summary judgment motion on their public domain claim, notwithstanding their failure to produce during discovery the documents or legal argument upon which they now rely. The Shaw Family did not consider the Defendants' failure to produce discovery to be a "dispute" that it needed to raise with Judge Fox and that is because the Shaw Family always believed that Defendants simply had no credible evidence to present. As set forth herein and in the accompanying summary judgment papers, the Shaw Family was correct.

First, the Defendants failed to produce the documents upon which they currently rely in support of their summary judgment motion on the public domain claim. Not a single one. For

example, they currently rely (i) on a paralegal affidavit and a copyright search report that purports to demonstrate that the Ballantine work was not renewed; (ii) a number of prior state and federal court litigation documents, which they use to argue that Sam Shaw photographs were work for hire and that Shaw Family Archives owns the applicable copyrights; (iii) newspaper and magazine articles which they use to argue that Sam Shaw photographs were in the public domain. Defendants produced none of these documents.

Second, Defendants declined to answer either of the two interrogatories the Shaw Family propounded on the Defendants' public domain claim. Even worse, when the Shaw Family inquired whether it would need to bring the issue before Judge Fox, Defendants lulled the Shaw Family into believing that additional expensive briefing would be unnecessary by indicating, in writing, that they would answer the interrogatory at the end of discovery and after depositions. The Defendants never answered either interrogatory.

Third, Defendants produced two 30(b)(6) witnesses, Messrs. Strasberg and Roesler, neither of whom could not explain any basis for Defendants' public domain claim. Despite the inability of Roesler and Strasberg to provide any useful information during their depositions, Defendants now submit declarations on their behalf in support of their summary judgment claim. The Court should disregard their respective declarations on preclusion grounds because the little knowledge they purport to have now was noticeably absent during their depositions.

## ARGUMENT

Rule 26(e)(2) of the Federal Rules of Civil Procedure provides that a litigant is "under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to

the other parties during discovery in writing." Under Rule 37(c)(1), the penalty for a failure to meet this obligation is clearly defined: "A party that without substantial justification fails to ... amend a prior response to discovery as required by Rule 26(e)(2), is not, unless the failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). Rule 37 also provides that the Court may order the payment of reasonable attorney's fees caused by the failure of disclosure. Id.

The Court also has inherent authority to impose sanctions on a party for misconduct in discovery under its inherent authority to manage its own affairs ... Where, as here, the nature of the alleged breach of a discovery obligation is the non-production of evidence, a district court has broad discretion in fashioning an appropriate sanction . . ." JSC Foreign Economic Assoc. v. Technostroyexport, 03 Civ. 5562 (JGK) (AJP), 2005 U.S. Dist LEXIS (AJP), * 31 (S.D.N.Y. Aug. 16, 2005) (citing Residential Funding Corp. v. Degeorge Financial Corp., 306 F.3d 99, 106-07 (2d Cir. 2002)); see also, e.g., Blauinsel Stiftung v. Sumitomo Corp., No. 03-7636, 2004 U.S. App. LEXIS 2326, *3 (2d Cir. Feb. 12, 2004) ("Although appellants take issue with the district court's authority under Fed. R. Civ. P. 37(b) to have sanctioned them to nearly the full amount of defendants' expenses, we need not reach that issue as we find the district court's 'inherent power to manage its own affairs' – on which the district court also expressly relied – provided the court with sufficient authority"); Reilly v. Natwest Mkts. Group Inc., 181 F.3d 253, 267 (2d Cir. 1999) ("Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses.")

I.    **THE COURT SHOULD PRECLUDE THE DEFENDANTS FROM ARGUING COUNT I BECAUSE THEY REFUSED TO ANSWER INTERROGATORY RESPONSES DIRECTED TOWARD THAT CLAIM**

Contention interrogatories issued pursuant to Rule 33 of the Federal Rules of Civil Procedure are one of many discovery tools designed to assist parties in narrowing and clarifying the disputed issues and reducing the possibility of surprise at trial. Such interrogatories may seek a variety of information from a party to the litigation, including identification of a party's legal positions regarding a given issue and the evidence on which those contentions are based. Wechsler v. Hunt Health Sys., Ltd., No. 94 Civ. 8294 (PKL), 1999 U.S. Dist LEXIS 13216, *3-*4 (S.D.N.Y. Aug. 25, 1999). In the Weschsler case, the court precluded the plaintiff from raising a legal theory on summary judgment that he had previously failed to disclose in response to a contention interrogatory response. Id. at *3-*10. While the Defendant argued that there was no unfair prejudice to the defendant, the court held that unfair prejudice is not a prerequisite to preclusion because "[t]he estoppel principles applies in this Circuit to contention interrogatory responses implicitly presume unfair prejudice will result if the responding party subsequently alters his position." Id. at *9. The answers to contention interrogatories are treated in this Circuit as "judicial admissions" that "generally estop the answering party from later seeking to assert positions omitted from, or otherwise at variance with, those responses." Id. at *5.

The United States Court of Appeals for the Second Circuit addressed an analogous claim in Weiss v. Chrysler Motors Corp., 515 F.2d 449 (2d Cir. 1975). In Weiss, defendant failed to disclose, in relevant interrogatory answers, its trial defense that a fracture in an automobile steering wheel stud was caused by collision of plaintiff's car with a tree trunk, rather than by a design defect. Id. at 456. Plaintiff asserted on appeal that she had not been given fair notice of the defense and that the trial court had, therefore, erred in allowing it to be presented. Id. The

4

Second Circuit reversed and remanded for new trial, finding that the defense, crucial to defendant's case, should have been disclosed in response to contention interrogatories served before trial. Id. at 456-57. Although some of the Court's comments were geared particularly to the special discovery rules governing expert testimony, the basic thrust of the decision is that parties to a litigation must fully disclose their positions in discovery, including when responding to interrogatories. Id.; Elizabeth Iron Works, Inc. v. Atlas Machine and Iron Works, Inc., No. 76 Civ. 1569 (PNL), 1983 U.S. Dist. LEXIS 10828, *1-*5 (S.D.N.Y. Dec. 14, 1983) (precluding defendant from asserting damages in its counterclaim on the basis of contentions first provided after the close of discovery).

Several subsequent decisions in this District have reiterated that failure to disclose a litigation theory in response to contention interrogatories has preclusive effect. See Prince Group, Inc. v. MTS Prods., No. 95 Civ. 1160, 1998 U.S. Dist. LEXIS 7835, *7-*8 (S.D.N.Y. May 27, 1998); Guadagno v. Wallack Ader Levithan Assocs., 950 F. Supp. 1258, 1261 (S.D.N.Y., aff'd, 125 F.3d 844 (2d Cir. 1977). Relying on a somewhat different rationale than that stated in Weiss, the decisions have reasoned that answers to contention interrogatories constitute judicial admissions and that, therefore, omission of material information from them is preclusive. Judicial admissions have the effect of withdrawing facts from contention, and may not be controverted on appeal. See Guadagno, 950 F. Supp. at 1261.

### A. The Defendants Declined To Answer Interrogatories On Basis Of Their Public Domain Claim

The Court should preclude the Defendants from litigating Count I because they refused to explain the basis for the claim throughout discovery.

On November 1, 2007, the Shaw Family served its Third Set of Interrogatories. Interrogatory No. 1 requested: "The detailed factual and legal basis for Count I in the Third

Amended Complaint . . ." and went on to define the items that the Shaw Family wanted the

Defendants to include as part of their explanation of the basis for Count I. Second David Marcus

Declaration, dated March 4, 2008 ("Second Marcus Declaration"), at ¶ 11, Ex. J, p. 5. In

particular, the Shaw Family requested that the Defendants provide specific detail for Defendants'

claim that there was a justiciable controversy between the parties. Id.

On December 4, 2007, the Defendants asserted the usual boilerplate objections. Id. at ¶

13, Ex. L, pp. 3-4. By electronic communication dated December 4, 2007, the Shaw Family

requested the basis for the Defendants' failure to respond to Interrogatory No. 1. Id. at ¶ 15, Ex.

N. The Shaw Family informed counsel that Gibson Dunn & Crutcher had previously stipulated

to increase the permissible number of interrogatories to 45 and requested Defendants to clarify

whether that was the reason for the failure to object so that the Shaw Family would know

whether to raise that issue with Judge Fox. Id. In particular, Shaw Family counsel stated:

> First, is your firm aware that the parties previously agreed to
> extend the number of permissible interrogatories to 45? It is my
> recollection that Judge Fox agreed to that on July 31, 2007, as
> evidenced by Orin Snyder's letter dated August 1, 2007 in which
> we requested confirmation that Judge Fox had so granted the
> parties request. If this is the basis for Defendants refusal to
> provide their contentions on the sole claim Defendants' have
> asserted please let me know so we can contact Judge Fox for
> clarification immediately.
>
> Second, Defendants are well aware that Plaintiffs are entitled to
> Defendants contentions as to the existing declaratory judgment
> claim and that is what we are seeking, Are Defendants refusing to
> provide their contentions and why do Defendants believe that a
> response is premature at this late stage, as stated in Defendants'
> interrogatory response.

Id. Defendants' counsel responded by stating that the Shaw Family had exceeded the number of

interrogatories and that contentions were premature. Id. The Shaw Family asserted that

Interrogatory No. 1 is a single interrogatory that does not contain discrete subparts. Id.

Defendants' counsel then stated that they would "supplement the responses as applicable after your clients' depositions and other further discovery is completed." Id.

Based on the Defendants' representation that it would supplement Interrogatory No. 1 and provide a basis for Count I after further discovery and depositions, the Shaw Family took the 30(b)(6) deposition of MMLLC on December 20, 2007 and the 30(b)(6) deposition of CMG on December 27, 2007. Id. The Shaw Family expended substantial sums associated with these depositions because it expected that Defendants and their counsel would have prepared MMLLC's and CMG's 30(b)(6) witness as required by the Federal Rules. The Shaw Family was wrong.

**B. The Defendants Refused To Disclose The Nature of The Intellectual Property They Purportedly Own, And Are Therefore Precluded From Asserting The Existence of a Justiciable Controversy**

In order to substantiate the existence of a justiciable controversy between the parties on their public domain claim, the Defendants allege that they would distribute certain purportedly public domain Sam Shaw Photographs of Marilyn Monroe in connection with their other intellectual property. Def's Memo Summary Judgment Memo of Law, dated February 12, 2008 ("Defs' Memo"). See Defs. Memo, at 14-15; Declaration of David Strasberg, dated February 12, 2008 ("Strasberg Decl."); Declaration of Mark Roesler, dated February 12, 2008 ("Roesler Decl.").

However, despite their newly asserted positions on summary judgment, the Defendants repeatedly refused to disclose the purported intellectual property they own throughout discovery. For example, on July 10, 2007, the Shaw Family served Interrogatory No. 1, in which it requested that the Defendants identify the intellectual property the they purport to own in what they had defined as "Monroe Intellectual Property Rights," including but not limited to, Monroe

related trademarks, copyrights, and right of publicity. Id. at ¶7, Ex. F, pp. 5-6. The Defendants never answered that interrogatory except to again insert boilerplate objections, leading the Shaw Family to reasonably believe that the Defendants were not claiming any such rights or did not have such rights. Id. at ¶ 9, Ex. H, pp. 3-5. Accordingly, the Court should preclude the Defendants from asserting the existence of a justiciable controversy.

### C.    The Defendants' Interrogatory Responses Were Limited Entirely To Claiming That Rizzoli Is In The Public Domain

On February 1, 2007, the Shaw Family requested in Interrogatory No. 15 for the Defendants to explain the basis for their affirmative defense that plaintiffs "copyrights either never existed or have since lapsed, expired, cancelled or were otherwise terminated." Id. at ¶ 5, Ex. D, p. 7. On March 19, 2007, the Defendants responded by citing only to the Rizzoli decision. Based on this failure alone, the Court should preclude the Defendants from arguing that anything but Rizzoli is in the public domain. Id. at ¶ 6, Ex. E.

## II.    THE COURT SHOULD PRECLUDE THE DEFENDANTS FROM ARGUING THAT SAM SHAW IMAGES OF MARILYN MONROE ARE IN THE PUBLIC DOMAIN BECAUSE DEFENDANTS DID NOT PRODUCE ANY OF THE DOCUMENTS UPON WHICH IT NOW RELIES

It is fundamentally unfair that the Shaw Family has sought the basis for Defendants' public domain claim since its first document request dated October 8, 2006 (Id. at ¶ 3, Ex. B, p. 9), but Defendants strategically waited until after the discovery end date to produce the documents upon which they now rely. Id. at ¶ 19. Not only did Defendants not produce relevant documents until after discovery closed, but they also now rely on new allegations, not contained in their complaint or interrogatory responses, to prove that Sam Shaw's images are in the public domain. Id. at ¶¶ 19, 20. The Defendants failed to produce any of the documents upon which

they currently rely in support of their summary judgment motion, despite the Shaw Family's repeated request for these documents. Id. at 3, 5, 7, 8, 11-12, 16, Exs. B, D, F, G, J-K, O.

As early as October 8, 2006, the Shaw Family requested in Document Request No. 12 that the Defendants produce all documents that Defendants "will rely upon to prove their claim that some or all of the Sam Shaw Photographs depicting Marilyn Monroe that are owned or controlled by Shaw Family Archives, Ltd. are in the public domain." Id. at ¶ 3, Ex. B, p. 9. On December 26, 2006, the Defendants served written responses with the usual boilerplate objections, but did not serve any responsive documents. Id. at ¶ 4, Ex. C, p. 13.

On July 16, 2007, the Shaw Family requested that the Defendants produce documents relevant to (i) "the rights that either Defendants purportedly has in the image, name or likeness of Marilyn Monroe subsequent to the date of the Federal Court Decisions"; (ii) Defendants' trademarks; and (iii) CMG's purported belief that the images it admitted to posting on its website for 6-9 months were in the public domain. Id. at ¶ 8, Ex. G, p. 6. Defendants served written responses with the usual boilerplate objections. Id. at ¶ 10, Ex. I, pp. 4-5.

On November 1, 2007, the Shaw Family requested in Document Request No. 1 that the Defendants produce all documents "relating to Count I of Defendants' Third Amended Complaint, including but not limited to, all documents that Defendants' plan to use in support of their claims." Id. at ¶ 12, Ex. K, p. 6. On December 4, 2007, the Defendants served the usual boilerplate objections. Id. at ¶ 14, Ex. M, pp. 4-5

## A. The Defendants' Arguments that Ballantine Is Public Domain Are Based On An Affidavit And Documents They Produced Two Months After Discovery Closed

The sole basis for the Defendants' argument that Ballantine is in the public domain is the Declaration of Maureen Cloonan, a Loeb & Loeb paralegal. (See the Declaration of Maureen Cloonan, dated February 18, 2008, annexed to Defendants' cross-motion for summary

judgment). The Defendants argue that the Court should hold that Ballantine is in the public domain, on summary judgment, because Ms. Cloonan was purportedly unable to find a renewal for Ballantine in her search of the copyright records. Defs' Memo, at 5. Ms. Cloonan states that on February 7, 2008, she performed searches of the United States Copyright Office website for copyright registrations regarding Ballantine, and she attached the uncertified search results to her declaration. Def's Memo, at 4-5.

First, Rule 56(e) clearly limits the Defendants to documents that are otherwise admissible at trial. Because the Defendants did not produce the Cloonan search reports during discovery, they cannot rely on it now. Had Defendants produced this information during discovery, the Shaw Family would have taken Ms. Cloonan's deposition and demonstrated why Ms. Cloonan's findings are highly unreliable and inadmissible. The Defendants are precluded for that reason alone. But the Defendants' conduct here reflects exactly what they have done with all the claims they have asserted against the Shaw Family. They asserted that Ballantine was in the public domain in their August 1, 2007 Third Amended Complaint (David Marcus Decl, at ¶ 2, Ex. A, at ¶ 25), produced no discovery to support that claim, and now, more than two months after discovery closed, they sandbag the Shaw Family with a paralegal declaration containing clearly inadmissible search reports.

### B. The Defendants' Arguments That Photographs That Sam Shaw Took In Connection With The Seven Year Itch Are Works For Hire Are Based On Documents That The Shaw Family Produced After Discovery Closed

The Defendants argue that the photographs taken by Sam Shaw in connection with the Seven Year Itch are works made for hire and therefore did not belong to Sam Shaw. Defs. Memo at 11-13. Again, putting aside the utter baseless nature of this claim, the Defendants did not produce any of this information during discovery. The Court should preclude the Defendants

from making these belated arguments now, especially since they are based on documents that the Defendants produced after discovery closed.

### C. The Defendants' Additional Arguments That Unspecified Monroe/Shaw Photographs Purportedly Published In the 1950s Without Notice Are Public Domain Are Based On Documents Defendants Produced After Discovery Closed

Defendants attach purported Monroe photographs from a number of newspapers and magazines to an attorney affidavit, but they do not even purport to know whether these newspapers and magazines contained the proper copyright notice. But that does not stop the Defendants from asking this Court on summary judgment to generally rule that "to the extent that any such photographs were published without copyright notice, or to the extent that Sam Sham failed to renew the copyright in such photographs at the end of the original 28-year term, the photographs are in the public domain." Defs. Memo, 6-7. The Defendants are precluded from relying on these publications because they did not produce them during discovery.

### III. THE DEFENDANTS' 30(B)(6) WITNESSES FAILED TO PROVIDE ANY BASIS FOR THE DEFENDANTS' COUNT I

A 30(b)(6) witness testifies as a representative of the entity, his answers bind the entity and he is responsible for providing all the relevant information known or reasonably available to the entity. Sabre v. First Dominion Capital, LLC, 01 Civ. 2145, 2001 U.S. Dist. LEXIS 20637, *2 (S.D.N.Y. Dec. 10, 2001). While a 30(b)(6) deposition "is not designed to be a memory contest, the deponents must be both knowledgeable about a given area and prepared to give complete and binding answers on behalf of the corporation. Zappia Middle East Construction Co., Ltd. v. The Emirate of Abu Dhabi, 94 Civ. 1942 (DC), 1995 U.S. Dist. LEXIS 17187, *10 (S.D.N.Y. Nov. 17, 1995) (citations and internal quotations omitted). "Producing an unprepared witness is tantamount to a failure to appear. The Bank of New York et al. v. Meriden Biao Bank Tanzania Ltd., 171 F.R.D. 135, 151 (S.D.N.Y. 1997). Failure to appear for a deposition warrants

# FILED SEPERATELY PURSUANT TO PROTECTIVE ORDER

# FILED SEPERATELY PURSUANT TO PROTECTIVE ORDER

# FILED SEPERATELY PURSUANT TO PROTECTIVE ORDER

# FILED SEPERATELY PURSUANT TO PROTECTIVE ORDER

FILED SEPERATELY
PURSUANT TO
PROTECTIVE ORDER

**B.     CMG's 30(b)(6) Witness Could Not Provide Any Basis For Count I**

When the Shaw Family requested CMG to set forth the factual basis for Count I, he first

provided some generalized statement that "all images that were published prior to, I believe

'77'" and the Rizzoli work. Id. at ¶ 18, Ex. Q, pp. 47-48. When pressed to identify the images

CMG was talking about, Mr. Roesler vaguely referred to a publication called "photoplay" and

made some non-specific statements that it contained "different photos of people like Marilyn

Monroe and other entertainment personalities." Id. at 49. Defendants did not produce the

purported photoplay publication during discovery and are therefore precluded on that basis as

well.

CMG was unable to provide any further specificity as to any specific images that were

purportedly covered by a Shaw Family copyright registration. Id. at 49-54. The Shaw Family

asked the pointed question:

Q:     I'm just asking you to identify any Shaw Family copyright registration for Marilyn
       Monroe that is for an image that was published prior to 1977 without notice.

Mr. Colbath:  Objection

Mr. Minch:  Objection

A: I—I can't do that. I do know that there were apparently two copyright registrations in, I
believe, after – the late 1990s. And for what period of time – obviously they were photos of
Marilyn while she was alive. But whether those were published prior to that registration or nor, I
don't know.

Id. at 55. The Shaw Family requested Mr. Roesler to identify the specific "photoplay" image of

Marilyn Monroe that was in the public domain, but Mr. Roesler was unable to do so. Id. at 56-

57.

The only other information that Mr. Roesler purported to be able to provide about

purported Shaw Family public domain works was the Rizzoli work, but when the Shaw Family

asked him to provide information concerning that decision, Mr. Roesler again had no knowledge.

Id. at 57-61. Even though Mr. Roesler is a lawyer, he was unable to even state what the court

held in the Rizzoli decision. Id. at 60.

### 1.    CMG Could Not Provide Any Basis To Allege A Justiciable Controversy

Mr. Roesler was unable to provide any basis for a justiciable controversy between the

parties during his deposition.   While he generally testified that the basis was Bradford's

purportedly false representations that  Shaw Family images are copyright protected, (Id. at 48,

80.), when pressed to provide specifics of these purported "representations," CMG referred only

to  representations that the late Larry Shaw purportedly made to Dolce & Gabbana, where he

purportedly stated that D&G needed a license from the Shaw Family, not MMLLC.[1] Id. at 82.

However, CMG could not provide any information concerning (i)  any additional representations

that the Shaw Family or Bradford made (Id. at p. 83); (iii) the nature of Mr. Shaw's

representation to D&G (Id.); (iv) whether the purported communication to D&G was in writing

or verbally communicated (Id.); (v) whether the purported communication was made to a man or

woman (Id. at p. 84); (vi) the Shaw Family image that was purportedly at issue (Id. at 85); (vii)

whether the image was covered by copyright or not (Id.); (viii) the title of the D&G person or

whether they could bind D&G or not (Id. at 85-86); or (ix) whether Mr. Shaw ever threatened

D&G or not with a cease and desist letter (Id. at 88).  Moreover, when pressed, Mr. Roesler

admitted that Dolce & Gabbana went ahead with a licensing program with Defendants anyway,

which means there could have been no possible justiciable controversy over those alleged

representations. Id. at 89-90. D&G paid MMLLC for a purported right of publicity. Id. at 92.

---

[1] Of course this does not at all mean that Mr. Shaw threatened S&G with infringement, just that it did not need to license a right of publicity from the Estate, which was true.

Thus, CMG's sole testimony was that Mr. Shaw generally stated that D&G did not need a license from CMG because a copyright license from the Shaw Family was all that was needed. This does not create a justiciable controversy between the parties because Mr. Roesler did not allege that the Shaw Family asserted rights to a public domain work to D&G. However, because CMG was unable to identify the images at issue, there is no basis to assume that it involved a Ballantine or Rizzoli image or any image that the Defendants now argue are in the public domain.

Shaw Family counsel provided CMG ample opportunity to provide the basis for its declaratory judgment by repeatedly asking whether there were any other purported representations that the Shaw Family made concerning its copyrights. Id. at 47-48, 96-99. CMG admitted to not knowing any specifics, but generally asserted that Shaw Family representations to a company called Freeze created "confusion." Id. at 99. However, when pressed to identify the nature of the purported Shaw Family representation, CMG stated that it objected to Freeze's use of the purported trademark "Marilyn Monroe." Id. at 101. CMG claimed that the Shaw family represented that it did not need a trademark license for "Marilyn Monroe" from Defendants. Id. at 101-02. While CMG also speculated that Freeze "presumably" had a copyright license from the Shaw Family (Id. at 103), CMG stated that (i) it did not know the images of Ms. Monroe that the Shaw Family purportedly licensed (Id. at 104) ; (ii) if those purported images were protected by copyright or not (Id. at 184); and (iii) it did not investigate that issue in preparation for the deposition (Id. at 104). CMG generally testified that the Shaw Family represented that the Freeze did not need to "secure any rights" from MMLLC, but CMG could provide no specifics whatsoever concerning that purported representation. Id. at 106-120.

19

The Shaw Family provided CMG ample opportunity to disclose any additional purported representations made by the Shaw Family other than to D&G and Freeze, but CMG could not provide that information. <u>Id.</u> at 19-124.  After repeatedly asking the same question many different ways, the Shaw Family pointedly provided CMG a final opportunity to disclose the representations upon which is currently lies. Mr. Roesler testified:

Q:    What I'm getting at is that you're asserting that certain representations were made by my clients regarding rights to images of Marilyn Monroe that my  clients may have had, purportedly, copyrights.

A:    Correct

Q:    I'm asking you can you identify, sitting here today, the copyrights at issue of Marilyn Monroe?

A:    No, I cannot.

Q:    Or images of the Marilyn Monroe issue?

A:    I cannot

Q:    So we're absolutely clear for the record, other than Frieze and Dolce & Gabana, sitting here today, you can't identify any specific licenses or potential licenses of MMLLC that either any of my clients purportedly made representations to regarding rights to images of Marilyn Monroe.

Mr. Minch: Objection.

Ms. Colbath: Objection

A:    Not without specific information from my office, that's correct.  I can't, sitting her today, at this exact moment, give --- recall any of the specifics.

<u>Id.</u> at 124-25.

CMG testified that it had never licensed Rizzoli images in the past (<u>Id.</u> at p. 130) or every made any offers to license Rizzoli images.  <u>Id.</u>  CMG did not know of any companies who wanted to use Rizzoli images in connection with the sale of good and services and did not do so out of fear of being sued by the Shaw Family.  <u>Id.</u> at 131.  CMG testified that it did not know

whether it or MMLLC ever "engaged in negotiations" with parties that desired to license

Ballantine images. Id. at 132. CMG further testified:

Q: Sitting here today, do you know whether any company or individual or entity ever declined the opportunity to use images of Marilyn Monroe that are contained in the Ballantine book because they were fearful of being sued by the Shaw Family?

Mr. Minch: Objection

Ms. Colbath: Objection.

Q: or any of my clients?

A: I do not.

Id. at 158-160. The amount of additional information that CMG did not know about the claims

in this litigation was astounding.

## 2.    CMG Could Not Substantiate The Allegations In The Third Amended Complaint Concerning A Justiciable Controversy

The Shaw Family also took CMG through each of the first three complaints it filed, and

CMG was unable to identify a single image of Marilyn Monroe that had fallen into the public

domain. Id. at 141-158.

With respect to the Defendants' Third Amended Complaint, the Shaw Family asked

CMG for the basis of every paragraph that the Defendants used to substantiate the basis for their

declaratory judgment action. CMG's repeated rank failure to provide any basis for its allegations

was painful. For example, Mr. Roesler testified:

Q: It's the Third Amended Complaint. Turn to paragraph 22, sir. It's on page 5, Can you read that into the record?

A: "Shaw's asserted either by itself or through Bradford that it possesses valid enforceable copyrights pursuant to Copyright Act 17 U.S.C., Section 101, in each and every photograph that constitutes the Monroe/Shaw photographs in the Shaw limited edition Marilyn/Norma Jean collection, hereinafter the Shaw Collection.

Q: Thank you. What was the basis for that?

Mr. Minch: objection

Ms. Colbath: Objection

A: I believe the basis is that representations that Bradford makes with respect to the collection.

Q: Well, what representations are you taking about?

Mr. Minch: objection

Ms. Colbath: Objection

A: I don't have specific information.

Q: You don't have specific information of representations that Bradford has made, correct?

A: That's correct.

Q: Nor do you have specific representations that the Shaw Family Archives made; correct?

Mr. Minch: Objection

A: I personally don't

Q: Nor do you have specific representations that were made by Edith ---that may have been made by Edith Marcus or Meta Stevens; correct?

Mr. Minch: objection

A: That's correct.  I don't.

Id. at 158-60.

The Shaw Family continued to take Mr. Roesler through every paragraph of the Third Amended Complaint in which the Defendants alleged facts that, if true, would support their declaratory judgment action.  In particular, the Shaw Family asked Mr. Roesler the basis for paragraph 4 of the Third Amended Complaint, which alleged that the certain photographs the defendants purport to license to third parties are in the public domain and can be used by licensees without the Shaw Family's consent.  Id. at ¶¶ 2, 18, Ex. A, at ¶4, Ex. Q at pp. 167-68. When Shaw Family counsel asked Mr. Roesler what photographs Defendants were referring to, Mr. Roesler stated "[t]hat I can't identify at this moment."  Id. at ¶ 18, Ex. Q, pp. 167-168.

Paragraph four of the Third Amended Complaint also alleges that the Shaw Family "have refused to recognize that certain photographs of Marilyn Monroe allegedly owned and controlled

by the [Shaw Family] are in the public domain, and the [Shaw Family] have asserted that plaintiffs are prohibited from using such photographs without the [Shaw Family's] consent." Id. at ¶¶ 2, 18, Ex. A, at ¶4, Ex. Q at pp. 168-70.  When Shaw Family counsel asked Mr. Roesler the basis for that statement, he again stated "I can't – I can't give you those specifics."  Id. at ¶ 17, Ex. Q, pp. 172-73.

Paragraph four of the Third Amended Complaint states that "[b]ut for the Shaw Family's false claims of ownership of copyrights . . . plaintiffs would seek to utilize such public domain photographs commercially in connection with goods and services . . ." Id. at 172-73.  When Shaw Family counsel asked Mr. Roesler if he could name one copyright registration that the Shaw Family falsely claimed ownership rights to, Mr. Roesler stated: "Not sitting here today." Id. at 173-75.

Paragraph twenty-two of the Third Amended Complaint alleges that the Shaw Family and Bradford Licensing asserted that they have enforceable copyrights in all the photographs that constitute the Shaw Family collection.  Id. at ¶ 2, Ex. A, ¶ 22.  When asked the pointed question about the basis for paragraph twenty-two, Mr. Roesler stated "I don't have specific information." Id. at ¶ 18, Ex. Q, pp. 158-160.  In many other instances, Mr. Roesler stated only that he relied on his attorneys for the information in a paragraph, but was unable to provide any substantive discussion on the topic himself, which rendered his 30(b)(6) deposition completely useless.  Id. at pp. 160-67.

Again and again, the Defendants' 30(b)(6) witnesses were unable to identify the substantive basis for any of the allegations in the Third Amended Complaint pertaining to injury and standing.  Id. at ¶¶ 17, 18, Ex. P at pp. 28-41, 161-169, 190-191, Ex. Q at 47-57; 80-133; 158-187.  This is not a case of large corporations failing to properly choose the correct witness.

23

Mr. Roesler is CMG, and there is no one at that company more involved or knowledgeable about the licensing of Marilyn Monroe images than him. The documents produced in this action demonstrate his intimate involvement and familiarity on a daily basis in the lucrative business of licensing Marilyn Monroe images. The reason he was unable to provide any meaningful testimony is not that he was not properly prepared, it was because the allegations in the Third Amended Complaint pertaining to the Shaw Family's purported representations to the Defendants' licensees are factually false and incapable of defense by any witness. This is exactly why asking for another 30(b)(6) witness would have been fruitless.

The Defendants' inability to provide any basis for Count I during both their 30(b)(6) depositions is further evidence that the Defendants' fabricated the aspects of the Third Amended Complaint that allege a justiciable controversy between the parties. The Shaw Family did not request Judge Fox to Order the Defendants to produce a properly prepared witness because no witness could substantiate events that never happened.

The Defendants' 30(b)(6) transcripts plainly demonstrate that both Defendants were unable to support any of the allegations in the Third Amended Complaint that pertained to alleged injury and standing. In particular, MMLLC's witness knew virtually nothing about Rizzoli and Ballantine and MMLLC's licensing activities and repeatedly stated that CMG's Mark Roesler would know about those topics. Id. at ¶ 17, Ex. Q, pp. 161-169.

## III.    SANCTIONS ARE APPROPRIATE UNDER RULE 37 AND THE COURT'S INHERENT AUTHORITY

The imposition of sanctions is a matter committed to the sound discretion of the district court. Under Fed. R. Civ. P. 37, a court may impose sanctions for discovery-related abuses. A court may also impose sanctions based on "its own inherent authority to manage its own affairs." A finding of bad faith is required in the later context, but not the former. Texas Instruments Inc.

24

v. Powerchip Semiconductor Corp., 06 Civ. 2305 (SHS), 2007 U.S. Dist. LEXIS 38312, * 31 (S.D.N.Y. May 24, 2007). Sanctions are warranted here.

First, Rule 37(c) clearly authorizes the Court to preclude the Defendants from asserting Count I because they refused to provide any of the information upon which they now rely in discovery. They could not substantiate the existence of a judicial controversy nor could they provide a basis for their claim that any Shaw Family images were in the public domain, except to cite to the Rizzoli decision. The Defendants should not be permitted to ambush the Shaw Family by asserting the very claims now that the Shaw Family has unsuccessfully requested over three years. Design Strategies, Inc. v. David, 367 F. Supp. 2d 630 (S.D.N.Y. 2005) (preclusion is mandatory under Fed. R. Civ. P. 37(c)(1) where there is no substantial justification for the failure to disclose); American Stock Exchange, LLC v. Mopex, Inc., 00 Civ. 5943, 2002 U.S. Dist. LEXIS 23924, *23-24 (S.D.N.Y. Dec.12, 2002) (precluding patentee from asserting new infringement claim that it did not disclose in response to an interrogatory response during discovery).

Second, monetary sanctions are warranted under these egregious circumstances. The Defendants have cost the Shaw Family a lot of money with their discovery chicanery, which on two separate occasions, both in connection and the initial domicile briefing and now, consists of withholding relevant discovery and then moving for summary judgment based on the documents or information they have in their exclusive possession.

## CONCLUSION

For all the foregoing reasons, the Shaw Family respectfully requests that the Court its

cross-motion to preclude the Defendants from asserting Count 1 of their Third Amended

Complaint on summary judgment or at trial, for sanctions under Fed. R. Civ. P. 37 and under the

Court's inherent authority, and for such other relief that the Court deems just and proper.

Dated:  New York, New York
       March 4, 2008

Respectfully Submitted,

By: _____

Christopher Serbagi, Esq.
David Marcus, Esq.
Law Offices of Christopher Serbagi
488 Madison Avenue, Suite 1120
New York, New York  10022
Tele: (212) 593-2112
Fax:  (212) 308-8582
Attorneys for Defendants/Consolidated Plaintiffs
Shaw Family Archives, Edith Shaw, and Meta
Stevens