# EX. A

Case 1:50-cv-00000-hhh   Document 2123   Filed 09/18/2008   Page 2 of 38

At Surrogate's Court in and for
the County of New York, at the
Courthouse located at 31
Chambers Street, New York, New
York, on the 28 day of
July, 1989.

PRESENT:

   HON. MARIE M. LAMBERT,

      Surrogate.

------------------------------------X

Proceeding for Construction of
the Last Will of MARILYN MONROE,

           Deceased.

------------------------------------X

FILE NO. P2781/62

ORDER TO SHOW
CAUSE FOR CONSTRUCTION
OF WILL

Upon reading and filing the annexed petition of ANNA
STRASBERG, Administratrix of the Estate of Marilyn Monroe, by her
attorneys Irving P. Seidman, P.C. dated July 28, 1989; the annexed
affirmation of IRVING P. SEIDMAN, ESQ. dated July 28, 1989 and the
exhibits annexed thereto, it is hereby

ORDERED that respondents The Anna Freud Centre, Estate
of Aaron R. Frosch, Estate of Marianne Kris, Yale University and
Attorney General of the State of New York show cause before this
Court at a motion term thereof at the Courthouse at 31 Chambers
Street, New York, New York on the 18th day of September 1989 at 10:00
o'clock in the forenoon of that day or soon thereafter as counsel
can be heard why a decree should not be made and entered herein
pursuant to Surrogate's Court Procedure Act §1420 construing the

then to my Executor hereinafter named, it being my desire

MM-0000241

Last Will and Testament of Marilyn Monroe

Testament of Marianne Kris upon the grounds that a construction is necessary to enable petitioner to determine the proper beneficiary, if any, of the portion of the residuary Estate of Marilyn Monroe conditionally bequeathed by Monroe to Marianne Kris, and for such other and further relief as the Court may deem just and proper.

Sufficient cause appearing therefor, let service of a copy of this order, the Petition, the affidavit of IRVING P. SEIDMAN, and all other papers on which it is granted upon The Anna Freud Centre by service upon its attorneys Kaplan, Russin, Vecchi & Kirkwood at their offices located at 135 East 57th Street, New York, New York by personal delivery; upon Margery Frosch, the Executrix of the Estate of Aaron R. Frosch by service upon Stroock & Stroock & Lavan, attorneys for said estate at their offices at Seven Hanover Square, New York, New York  10004, by personal delivery; upon the office of the Attorney General of the State of New York at its offices located at 120 Broadway, New York, New York 10278, by personal delivery; upon Yale University to the Office of the President, 105 Wall Street, New Haven, Connecticut  06520, by certified mail returned receipt requested and upon Anton Kris, Executor of the Estate of Marianne Kris by service upon Dornbush, Mensch, Mandelstam & Silverman, attorneys for said Estate at their offices at 747 Third Avenue, New York, New York 10017, by personal delivery,  on or before August 3/st, 1989 be deemed to be good and sufficient service thereof.

*Marie M. Lamb*

Surrogate

hen to my Executor hereinafter named, it being my desire

MM-0000242

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------X

Proceeding for Construction of                    FILE NO. P2781/62
the Last Will of MARILYN MONROE,
                                                  PETITION FOR
                          Deceased.               CONSTRUCTION OF
                                                  WILLS

------------------------------------------X

TO THE SURROGATE'S COURT, COUNTY OF NEW YORK

        The petition of Anna Strasberg, Administratrix c.t.a. of

the Estate of Marilyn Monroe, by her attorneys Irving P. Seidman,

P.C., with offices at 600 Third Avenue, New York, New York 10016,

respectfully alleges as follows:

        1. Petitioner is domiciled at 135 Central Park West, New

York, New York and is duly qualified and acting as Administratrix,

c.t.a. of the Last Will and Testament of Marilyn Monroe, the above-

named decedent. Petitioner is a person interested in obtaining a

determination as to the validity, construction, and effect of said

Will under the provisions of §1420(1) of the Surrogate's Court

Procedure Act.

        2. Petitioner is acting as such Administratrix, c.t.a.

pursuant to a Decree issued and filed by this Court on July 21,

1989.

        3. The Decedent died on August 5, 1962, domiciled in the

City and State of New York, leaving a Last Will and Testament dated

January 14, 1961 which was admitted to probate in this Court on

MM-0004364

October 30, 1962, and Letters Testamentary were issued to Aaron R. Frosch, the executor named in the will, on October 30, 1962.

4.  On April 29, 1989, executor Aaron R. Frosch died.

5.  A true copy of the Will of Marilyn Monroe is annexed hereto as Exhibit "A" and made a part hereof as if fully set forth herein.

6.  Since petitioner's appointment, her counsel has requested by letter of the Estate of Aaron R. Frosch that a final accounting of the Estate of Marilyn Monroe be made.  Should the fiduciaries of that Estate not do so, petitioner will commence a proceeding pursuant to SCPA §2205 to compel Mr. Frosch's fiduciaries to render a final accounting to the Court regarding the distribution of assets of the Monroe Estate.

7.  The property of the Estate of Marilyn Monroe which remains undistributed is principally the royalties paid pursuant to motion picture contracts entered into by the decedent during her lifetime and royalties paid pursuant to trademark licensing agreements which use decedent's signature, name and likeness.  Said trademark licenses are currently negotiated and entered into by The Roger Richman Agency, Inc..  The Roger Richman Agency, Inc. also collects the royalty income derived from these trademark license agreements.

CONSTRUCTION OF THE MONROE WILL

8.   Upon information and belief, all of the specific legacies of the Monroe Will have been paid.  Thus the above income falls into the residuary estate.

9.   The residuary clause in the Monroe Will (Exhibit "A") reads as follows:

SIXTH:

All the rest, residue and remainder of my estate, both real and personal, of whatsoever nature and wheresoever situate, of which I shall die seized or possessed or to which I shall be in any way entitled, or over which I shall possess any power of appointment by Will at that time of my death, including any lapsed legacies, I give, devise and bequeath as follows:

(a)  To MAY REIS the sum of $40,000.00 or 25% of the total remainder of my estate, whichever shall be the lesser.

(b)  To DR. MARIANNE KRIS 25% of the balance thereof, to be used by her as set forth in ARTICLE FIFTH (d) of this my Last Will and Testament.

(c)  To LEE STRASBERG the entire remaining balance.

10.   Upon information and belief, the bequest to May Reis has been paid in full and she has no interest in the Monroe Estate.

11.   Marianne Kris died on November 23, 1980.  Pursuant to her will, Anton Kris was appointed executor of her estate.

12.   During Petitioner's prior application to this Court for appointment as administratrix, c.t.a. pursuant to SCPA §1418,

and Petitioner's answer to the petition of The Anna Freud Centre, Petitioner raised her concern that the directions of the Will of Marilyn Monroe with respect to the portion of the residuary Monroe Estate conditionally bequeathed to Marianne Kris, were unclear and that this proceeding would be brought to determine the nature and proper disposition of the conditional bequest to Marianne Kris.

13.  The Monroe Will which contains the directions to Kris, reads as follows:

> FIFTH (d):
>
> Upon the death of the survivor between my mother, GLADYS BAKER, and MRS. MICHAEL CHEKHOV to pay over the principal remaining in the Trust, together with any accumulated income, to DR. MARIANNE KRIS to be used by her for the furtherance of the work of such psychiatric institutions or groups as she shall elect.

14.  Upon advice of counsel, petitioner believes that said Paragraphs FIFTH and SIXTH are in need of construction in several respects.

15.  It is unclear from the Monroe Will whether Monroe intended Kris to "use" the proceeds of Monroe's conditional bequest only in Kris' lifetime or after Kris' death.  The Monroe Will contains no express power of appointment nor trust to Kris. Further, the Monroe Will contains a bequest devising "the entire remaining balance" in the residuary estate to Lee Strasberg. Among other things, petitioner asks the Court to construe the phrase "to be used by her..." to determine from such language whether or not Monroe contemplated Kris' attempt to appoint by Kris' Will the

Exhibit A        Exhibit B

MM-0004367

16.  The particular limitations of the conditional bequest and the requirement that Kris "elect" the institution suggests that Monroe only wanted to benefit psychiatric institutions that were approved and monitored by Kris during her lifetime. Significantly, the language of the Monroe Will does not indicate that the conditional bequest to Kris survived Kris' death, nor does the Monroe Will contain an explicit or implicit power of appointment which would permit Kris to bequeath Kris' conditional legacy to psychiatric institutions named in the Kris Will.

17.  In the prior proceeding for the appointment of a successor fiduciary, The Anna Freud Centre, purported assignee of the Estate of Marianne Kris, submitted that by Paragraph FIFTH of the Monroe Will, Monroe left an unconditional gift to Kris; this notwithstanding the seemingly clear charitable intent and directions contained in paragraphs FIFTH and SIXTH of the Monroe Will. Petitioner therefore asks that the Court construct the nature of the bequest to Kris, if it survives Kris' death.

CONSTRUCTION OF THE KRIS WILL

18.  Assuming Monroe's conditional bequest to Kris survived Kris' death, Petitioner also seeks a construction of the Will of Marianne Kris (Exhibit "B") to determine whether the attempt by Kris to exercise what appears to have been understood by her as a power of appointment was exercised effectively. Since

Exhibit A    Exhibit B

MM-0004368

Monroe appears to have intended that twenty-five percent (25%) of her residuary estate be given to "psychiatric institutions or groups" as Kris selected, it is also necessary to determine, assuming the power of appointment survived Kris' death, who the proper entities selected by the Will of Kris.

19.    Paragraph SIXTH of the Will of Marianne Kris (Exhibit "B") reads as follows:

> I give and bequeath all property which I have received or which I am entitled to receive under the Will of Marilyn Monroe, which I have not otherwise disposed of during my life, to THE HAMPSTEAD CHILD-THERAPY CLINIC, London, England. If this Clinic is not in operation at the time of my death, I give and bequeath the same to YALE UNIVERSITY for the furtherance of the psychiatric work of its Child Study Center, and it is my wish and desire that such property shall be used as directed by Dr. Albert Solnit and/or Dr. Samuel Ritvo so long as one or both of such doctors are actively associated with the work of said Child Study Center.

20.    Because the Hampstead Child-Care Clinic no longer exists a construction is necessary as to the intent of Kris with respect to either a successor of Hampstead or Kris' alternative bequest to Yale University. For this reason, Yale University is named as a party to this proceeding since, should the legacy to the Hampstead Child-Therapy Clinic fail, under the Kris Will, Yale University may be entitled to twenty-five percent (25%) of the residuary Estate of Monroe. In this respect, Petitioner has a derivative interest in the construction of the Kris Will since she is obligated under the Will of Monroe, to pay only those "psychiatric institutions or groups as [Kris] shall elect". In order to know the proper appointee, the Kris Will must be construed

Exhibit A          Exhibit B

MM-0004369

to determine which, if any, institution or group was "elected" by Kris.

21.    The Attorney General of the State of New York is named as a party to this proceeding since paragraph SIXTH of the Kris Will provides for the distribution to charities of monies received by Kris from the Monroe Estate.

22.    It is respectfully submitted that Petitioner cannot fully perform her role as Administratrix c.t.a. of the Estate of Marilyn Monroe until the foregoing questions have been determined by this Court.

23.    There are no persons other than those above-mentioned in this petition interested in this proceeding.

24.    No other application has been made to this or any other court for the relief requested herein.

WHEREFORE, the Petitioner prays:

(1)  for a decree determining the validity, construction, and effect of Paragraphs FIFTH and SIXTH of the Monroe Will;

(2) if necessary, for a decree determining the validity, construction and effect of Paragraph SIXTH of the Kris Will;

(3) that process issue to the persons and entities above-named requiring them to show cause before this Court why such a determination should not be made; and

MM-0004370

(4) for such other and further relief which this Court may deem just and proper.

IRVING P. SEIDMAN, P.C.

By: _____
Attorneys for Petitioner,
Anna Strasberg,
Administratrix, c.t.a. of
the Estate of Marilyn Monroe
600 Third Avenue
New York, New York 10016
(212) 922-1900

MM-0004371

VERIFICATION

STATE OF NEW YORK    )
                     )    SS:
COUNTY OF NEW YORK   )

IRVING P. SEIDMAN, being duly sworn, upon information and belief, states that he is an attorney for Petitioner, Anna Strasberg, Administratrix, c.t.a. of the Estate of Marilyn Monroe and that he has read the annexed Verified Petition for Construction pursuant to SCPA §1420, and that the statements contained therein are true to his own knowledge, except as to matters stated to be upon information and belief, and as to those matters he believes them to be true; that the grounds of his belief as to all matters not stated upon his knowledge are correspondence and other writings furnished to him by Petitioner; and that the reason why the verification is not made by Petitioner is that Petitioner is presently in Los Angeles, California.

IRVING P. SEIDMAN

Sworn to before me this
28th day of July, 1989

Notary Public

**LAWRENCE H. SILVERMAN**
NOTARY PUBLIC, State of New York
No. 31-4699574
Qualified In New York County
Commission Expires Oct. 30, 19__

MM-0004372

# EX. B

Filed separately under seal
pursuant to protective order

# EX. C

Filed separately under seal
pursuant to protective order

# EX. D

Filed separately under seal
pursuant to protective order

EX. E

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

CMG WORLDWIDE, INC., an Indiana
Corporation and MARILYN MONROE, LLC,
a Delaware Limited Liability Company,

        Plaintiffs,

    -against-

BRADFORD LICENSING ASSOCIATES and THE
SHAW FAMILY ARCHIVES, Ltd., a New York
Corporation,

        Defendants.

------------------------------------------------------------x

05 Civ. 3939 (CM)
06 Civ. 2619 (CM)
(formerly No. 1:05-cv-0423-DFH-WTL)

**THIRD AMENDED
COMPLAINT**

Plaintiffs CMG Worldwide, Inc. ("CMG"), and Marilyn Monroe, LLC ("MMLLC"),

by counsel, and for their Complaint for declaratory relief against defendants Bradford

Licensing Associates ("Bradford") and Shaw Family Archives, Ltd. ("Shaw" and, together

with Bradford, "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.    Plaintiffs brought this action on or about March 23, 2005 to halt Defendants'

unauthorized exploitation of Plaintiffs' valuable intellectual property rights related to the

iconic Marilyn Monroe, one of the most popular, glamorous, and attractive public

personalities in the world.

2.    Plaintiffs' prior complaints in this action alleged, among other things, that

Defendants were violating the Plaintiffs' rights in and to Marilyn Monroe's rights of publicity

(Count 2 of Second Amended Complaint), and Plaintiffs sought a declaration of Plaintiffs' rights of publicity related to Marilyn Monroe (Count 1 of Second Amended Complaint).

3.    On or about May 2, 2007, this Court issued an order (the "May 2 Order") granting Defendants' motion for summary judgment on Count 2 of Plaintiffs' Second Amended Complaint. The May 2 Order dismissed Plaintiffs' right of publicity claim and implicitly rendered moot Plaintiffs' claim for a declaration regarding Plaintiffs' right of publicity. Defendants intend to appeal the May 2 Order and Plaintiffs incorporate by reference, as if fully set forth herein, Counts 1 and 2 of the Second Amended Complaint to the extent such incorporation is necessary to preserve the appeal and to try Counts 1 and 2 should the May 2 Order be reversed.

4.    On information and belief, both prior to and since the issuance of the May 2 Order, Defendants have granted to third-parties licenses to exploit photographs allegedly owned by Defendants bearing Marilyn Monroe's image. On information and belief, however, certain of the photographs that Defendants purport to license to third parties are in the public domain and can be freely used by such licensees without Defendants' consent. Defendants have refused to recognize that certain photographs of Marilyn Monroe allegedly owned and controlled by Defendants are in the public domain and Defendants have asserted that Plaintiffs are prohibited from using such photographs without Defendants' consent. But for Defendants' false claims of ownership of copyrights in and to photographs of Marilyn Monroe that have, on information and belief, entered the public domain, Plaintiffs would seek to utilize such public domain photographs commercially in connection with goods and services that are officially authorized and/or licensed by Plaintiffs.

1

5.    On information and belief, Defendants' licensing of and attempts to license images of Marilyn Monroe that are in the public domain injure Plaintiffs by causing confusion in the marketplace for licenses to utilize photographs of Marilyn Monroe, and by affecting the overall demand for licenses to create and market products that incorporate Marilyn Monroe's image.

6.    Accordingly, Plaintiffs respectfully request that this Court award declaratory relief to establish that Defendants have no right to license or interfere with the use of photographs of Marilyn Monroe that have entered the public domain.

### PARTIES

7.    Plaintiff CMG is a corporation organized and existing pursuant to the laws of the State of Indiana, maintaining its principal place of business in Hamilton County, Indiana.

8.    Plaintiff MMLLC is a business entity organized and existing pursuant to the laws of the State of Delaware, maintaining its principal place of business through CMG, its exclusive licensing and business representative.

9.    Upon information and belief, Defendant Bradford is a business entity organized and existing pursuant to the laws of the State of New Jersey.

10.    Upon information and belief, Defendant Shaw is a business entity organized and existing pursuant to the laws of the State of New York.

### JURISDICTION AND VENUE

11.    This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

2

12.    This Court has personal jurisdiction over Defendants based on Defendants' decision to move the United States District Court for the Southern District of Indiana to transfer this action to this Court, and because Defendants reside in the State of New York.

13.    Venue in the United States District Court for the Southern District of Indiana was proper pursuant to 28 U.S.C. §§ 1391(b) and 28 U.S.C. § 1400.  Venue has been placed in this judicial district pursuant to the Order of the United States District Court for the Southern District of Indiana in this matter dated March 23, 2005.

## PLAINTIFFS' BUSINESS AND RIGHTS

14.    For the past several decades, MMLLC has exercised various statutory and common law rights of publicity and other rights related to Marilyn Monroe.  Until the issuance of this Court's May 2 Order, MMLLC has always understood and believed that it was the lawful owner of these publicity rights.

15.    CMG has been granted the exclusive right to exploit the rights of publicity owned and controlled by MMLLC.

16.    Over the last twenty-five (25) years, CMG has been in the business of representing certain famous individuals or the heirs, families, estates, or business enterprises of famous individuals ("CMG Clients") for the purpose of licensing to third parties the right to commercially utilize the intellectual property rights belonging to these famous individuals and/or their heirs, families, estates, or business enterprises.  Typically, CMG represents such individuals or entities exclusively and, accordingly, there can be no entity other than CMG with the authority to represent, in a licensing context, the intellectual property rights of the CMG Clients.  Through CMG's various efforts to manage and exploit the intellectual property

3

rights of its clients, CMG generates income for its clients and operating revenue for itself. CMG's various methods for promoting and pursuing commercial opportunities on behalf of the CMG Clients have been honed, stylized, and refined by experience and success in the industry over the past two and a half decades. As such, CMG, as well as its clients, have developed considerable goodwill with companies such as well-known advertising agencies and prestigious manufacturers throughout the world with whom CMG maintains close contact and conducts regular and ongoing business.

17.    MMLLC and CMG have invested considerable time, energy, and financial resources over the span of many years in pursuing opportunities that will promote the popularity of Ms. Monroe with the consuming public, and in developing critical and lucrative business relationships with licensees and business partners.

## DEFENDANTS' ACTIVITIES

18.    Upon information and belief, Shaw has within its possession certain photographs of Marilyn Monroe taken by Sam Shaw (hereinafter "Monroe/Shaw Photographs").

19.    Shaw, either directly or through its agents or representatives, is in the business of licensing the Monroe/Shaw Photographs for use on or in connection with products or services that are offered, marketed, and advertised to the public.

20.    Bradford is in the business of offering, marketing, and advertising to the public, licensing services featuring various consumer brands and properties. Upon information and belief, Bradford's business and commercial endeavors include activities conducted on behalf of Shaw.

4

21.    Upon information and belief, Bradford represents certain third parties, including Shaw, who allegedly own certain copyright interests in photographs of Marilyn Monroe, including the Monroe/Shaw Photographs.

22.    Shaw has asserted, either by itself or through Bradford, that it possesses valid and enforceable copyrights, pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq*, in each and every photograph that constitutes the Monroe/Shaw Photographs and *The Shaw Limited Edition Marilyn/Norma Jeane Collection* (hereinafter the "Shaw Collection").

23.    In 1999, the United States District Court for the Southern District of New York ruled, in the case of *Shaw v. Rizzoli Int'l Publ'ns, Inc.*, No. 96 Civ. 4259 (JFK) (S.D.N.Y.), that certain photographs that comprise the Monroe/Shaw Photographs and/or the Shaw Collection and that were published in a book entitled *Marilyn Monroe. The Life. The Myth.* (the "*Rizzoli* Works") have entered the public domain.  In that case, the Honorable John G. Koeltl ruled that the copyrights in the *Rizzoli* Works "expired," and such photographs entered the public domain when "no renewals were obtained with respect to" them.

24.    Upon information and belief, there exist photographs other than the *Rizzoli* Works that comprise the Monroe/Shaw Photographs and/or the Shaw Collection that were published prior to January 1, 1964, and for which copyright renewals were not obtained during the final year of the initial 28-year copyright term for such works.  Accordingly, upon information and belief, such other photographs have similarly entered the public domain.

25.    For example, in 1955, Ballantine Books published a book entitled *Marilyn Monroe as The Girl*, featuring over 100 photographs of Marilyn Monroe that were taken by Sam Shaw.  Upon information and belief, Mr. Shaw registered his copyright in this work with

5

the Library of Congress in 1955, under registration number A193450, but failed to renew such copyright during the final year of the initial 28-year copyright term for such work or at any time. As a result, the copyright for this work expired in 1983, and photographs contained in this work fell into the public domain.

26.    Further, on information and belief, other photographs that comprise the Monroe/Shaw Photographs and/or the Shaw Collection were initially published without copyright notice prior to March 1, 1989, when notice was required under the United States Copyright Act, and these photographs also have entered the public domain.

27.    As a result, many of the photographs that comprise the Monroe/Shaw Photographs and/or the Shaw Collection have entered the public domain (collectively, the "Public Domain Monroe/Shaw Photographs").

## COUNT I:

(DECLARATION AS TO SHAW'S COPYRIGHTS IN SHAW COLLECTION)

28.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

29.    Defendants have refused to acknowledge that any of the works that comprise the Monroe/Shaw Photographs and/or the Shaw Collection have entered the public domain.

30.    On information and belief, Shaw and/or Bradford have communicated to licensees, potential licensees, business partners, and/or potential business partners that such licensees, potential licensees, business partners, and/or potential business partners require the prior permission and consent from Shaw and/or Bradford prior to utilizing the Public Domain Monroe/Shaw Photographs.

6

31.    On information and belief, Defendants have actively discouraged licensees, potential licensees, business partners, and/or potential business partners from entering into any relationship with Plaintiffs in connection with products or services that feature certain Public Domain Monroe/Shaw Photographs.

32.    On information and belief, Plaintiffs have been and continue to be injured by Defendants' conduct in inducing or attempting to induce Plaintiffs' licensees, potential licensees, business partners, and potential business partners to forgo entering into any relationship with Plaintiffs and to instead obtain unnecessary licenses from Defendants to use Public Domain Monroe/Shaw Photographs.

33.    Were it not for Defendants' false claims to ownership in the Public Domain Monroe/Shaw Photographs, Plaintiffs would seek to make use of the Public Domain Monroe/Shaw Photographs either by themselves or through licensees and/or business partners.

34.    As a result of Defendants' conduct as alleged herein, Defendants have created a case of actual controversy within the jurisdiction of this Court such that this Court may declare the status of the rights and other legal relations of the parties to this litigation pursuant to 28 U.S.C. § 2201 that, in addition to the *Rizzoli* Works which already have been found to be in the public domain, Shaw does not possess valid and enforceable copyrights in those photographs that comprise the Monroe/Shaw Photographs and/or the Shaw Collection that were either:  (a) published prior to January 1, 1964, where no copyright renewals were obtained during the final year of the initial 28-year copyright term for such photographs; or (b) published prior to March 1, 1989, without the requisite copyright notice.

7

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief in the following particulars:

A.      Enter a Declaratory Judgment, pursuant to 28 U S.C. § 2201, and to declare

therein:

      i.      That, in addition to the *Rizzoli* Works, Defendants do not possess valid and

enforceable copyrights in those photographs that comprise the

Monroe/Shaw Photographs and/or the Shaw Collection that were either:

(a) published prior to January 1, 1964, where no copyright renewals were

obtained during the final year of the initial 28-year copyright term for such

photographs; or (b) published prior to March 1, 1989, without the requisite

copyright notice;

      ii.      That Defendants are and shall be permanently enjoined and restrained from

conducting further activities inconsistent with the rights of their licensees,

potential licensees, business partners, and/or potential business partners to

make use of the Public Domain Monroe/Shaw Photographs without any

authorization, permission, or license from Defendants; and

      iii.      That Defendants are and shall be permanently enjoined and restrained from

engaging in any activities which interfere with Plaintiffs' business

activities with respect to the rights of Plaintiffs, their licensees and business

partners, and the general public to make commercial use of the Public

Domain Monroe/Shaw Photographs; and

B.     Award Plaintiffs their costs, including attorneys' fees, pursuant to the Untied

States Copyright Act.

C.     Award Plaintiffs such other relief as may be just and proper.

Dated: New York, New York
       August 9, 2007

                    Respectfully submitted,

                    GIBSON, DUNN & CRUTCHER LLP

                    By: _____
                         Orin Snyder (OS-3122)
                         Cynthia Arato (CA-8750)
                         Howard S. Hogan (HH-7995)
                         Michelle Craven (MC-8556)

                    200 Park Avenue, 47th Floor
                    New York, New York 10166-0193
                    Telephone: (212) 351-4000
                    Facsimile: (212) 351-4035

                    *Attorneys for Plaintiff Marilyn Monroe, LLC*

                         and

                    SOVICH MINCH LLP

                    By: _____
                         Theodore J. Minch (*Pro Hac Vice* application forthcoming)

                    10099 Chesapeake Drive, Suite 100
                    McCordsville, Indiana 46055
                    Telephone: (317) 335-3601
                    Facsimile: (317) 335-3602

                    *Attorneys for Plaintiff CMG Worldwide, Inc.*

9

B.    Award Plaintiffs their costs, including attorneys' fees, pursuant to the Untied

States Copyright Act.

C.    Award Plaintiffs such other relief as may be just and proper.

Dated: New York, New York
       August 9, 2007

                         Respectfully submitted,

                         GIBSON, DUNN & CRUTCHER LLP


                         By:_____
                              Orin Snyder (OS-3122)
                              Cynthia Arato (CA-8350)
                              Howard S. Hogan (HH-7995)
                              Michelle Craven (MC-8556)

                         200 Park Avenue, 47th Floor
                         New York, New York 10166-0193
                         Telephone:  (212) 351-4000
                         Facsimile:  (212) 351-4035

                         *Attorneys for Plaintiff Marilyn Monroe, LLC*

                              and

                         SOVICH MINCH LLP

                         By:_____
                              Theodore J. Minch (*Pro Hac Vice* application forthcoming)

                         10099 Chesapeake Drive, Suite 100
                         McCordsville, Indiana 46055
                         Telephone:  (317) 335-3601
                         Facsimile:  (317) 335-3602

                         *Attorneys for Plaintiff CMG Worldwide, Inc.*

9

# EX. F

Filed separately under seal
pursuant to protective order

EX. G

# COPY

1

1   UNITED STATES DISTRICT COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   -----------------------------------x

4   SHAW FAMILY ARCHIVES, LTD.,
    EDITH MARCUS, and META STEVENS

5

6                           Plaintiffs,

7             - against -

8   CMG WORLDWIDE, Inc., an Indiana
    corporation, and MARILYN MONROE,
    Limited, a Delaware limited

9   liability company,

10                          Defendants.
    -----------------------------------x

11

12            Ellen Grauer Court Reporters
              126 East 56th Street

13            New York, New York

14

15

16            December 26, 2007
              12:01 p.m.

17

18

19            30(b)(6) deposition of MARK
    ROESLER, before Marlene Lee, CSR, CRR, a Notary

20  Public of the State of New York.

21

22

23      ELLEN GRAUER COURT REPORTING CO. LLC
         126 East 56th Street, Fifth Floor

24            New York, New York
                212-750-6434

25              Ref: 86257

229

1                           ROESLER
2              "You have stated that Marilyn
3    Monroe was a New York domiciliary at the time
4    of her death.  Papers in her probate filed
5    prepared by others substantiate this.
6              "I wrote the New York celebrity
7    rights law only to protect Marilyn Monroe
8    because several lawyers reviewed her probate
9    file and alleged that her domicile upon date of
10   death was likely New York.
11             "Should any licensee assert this,
12   there may be no future licensing revenue for
13   Marilyn Monroe."
14        Q.     Did you know that Roger Richman
15   made that statement to Irving Seidman?
16        A.     I can't say I do, no.
17        Q.     Does it surprise you in any way?
18             MR. MINCH:  Objection.
19             MS. COLBATH:  Objection.
20        A.     Not necessarily.
21        Q.     This is not, to be clear, a
22   document you reviewed in preparation for your
23   deposition today?
24        A.     That's correct.  I've never seen it
25   before.

230

ROESLER

1

2          Q.    Do you know whether Roger Richman

3   ever represented in the course of his business

4   dealings that Marilyn Monroe died a California

5   domiciliary?

6          A.    I do not know.

7          Q.    Have you ever seen any document

8   where anybody represented to any court, whether

9   Surrogate's or otherwise, that Marilyn Monroe

10  died a California domiciliary?

11              MR. MINCH:   Objection.

12         A.    I haven't seen any documents.

13              MR. SERBAGI:   The court reporter

14         will please mark as Roesler Exhibit 12 a

15         document bearing production Nos. MM

16         0003905 through 3909.

17              (Roesler Exhibit 12 for

18         identification, letter, to Richman, from

19         Bresler, production Nos. MM 0003905

20         through 0003909.)

21         Q.    Have you seen this document?

22         A.    Have I seen which document?

23         Q.    That is marked as Roesler Exhibit

24  12, before you.

25              MS. COLBATH:   Objection.

231

ROESLER

1

2      A.    I can't say I've seen this letter

3  from -- to Roger.  I've seen that letter from

4  Bresler before, though.

5      Q.    When did you see it?

6      A.    He used to pass it around.  I think

7  a number of people used to pass it around.  It

8  kind of got circulated.

9      Q.    When was it first passed around, as

10 you say?

11     A.    It looks like it was back in '93.

12     Q.    Who did he pass it around to?

13     A.    Who does who pass it around to?

14     Q.    Mr. Bresler.

15     A.    No.  You'd just see it circulate

16 every once in a while.  You'd see somebody say,

17 "Hey.  I've got this letter.  So-and-so sent it

18 to me."

19     Q.    Did you see this letter back in

20 1993 or around that time?

21     A.    I saw it at some point in time.  I

22 saw it a number of times.

23     Q.    Back in the '90s?

24     A.    '90s.

25     Q.    Early '90s?

232

1                           ROESLER

2               MS. COLBATH:  Objection.

3               MR. MINCH:  Objection.

4        A.    I don't know when I saw it, but I

5   saw it over the years.  There might even have

6   been some derivative versions of this or

7   something.  I'm not sure.

8        Q.    And in this letter Mr. Bresler

9   takes the position that the estate does not

10  have a right of publicity in Marilyn Monroe;

11  isn't that right?

12       A.    That's correct.

13       Q.    And did CMG take any action as a

14  result of this letter?

15             MS. COLBATH:  Objection.

16       A.    Well, at the time of this letter,

17  we weren't representing the estate.  I mean, we

18  were fighting Mr. Bresler in another lawsuit

19  with James Dean back in the early '90s.  So we

20  were familiar with some of his beliefs.

21       Q.    Well, when CMG began to -- the

22  question is: Did CMG ever take any action as a

23  result of this letter?

24             MS. COLBATH:  Objection.

25             MR. MINCH:  Objection.

# EX. H

Filed separately under seal
pursuant to protective order

# EX. I

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------- X

SHAW FAMILY ARCHIVES, LTD., EDITH     :
MARCUS, and META STEVENS,

             Plaintiffs,          :     05 Civ. 3939 (CM)

      -against-                              :

CMG WORLDWIDE, INC. and MARILYN       :     Honorable Colleen McMahon
MONROE LLC,
                       :

            Defendants.        :
------------------------------------------------------- X

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'**
**MOTION TO WITHDRAW COUNTS 1-8 OF PLAINTIFFS' SECOND AMENDED**
**COMPLAINT WITHOUT PREJUDICE AND IN SUPPORT OF DEFENDANTS'**
**CROSS-MOTION TO DISMISS COUNTS 1 AND 2 WITH PREJUDICE**

LOEB & LOEB LLP
345 Park Avenue
New York, New York, 10154
Tel: (212) 407-4000
Fax: (212) 308-8582
*Attorneys for Defendant Marilyn*
*Monroe LLC*


SOVICH MINCH LLP
10099 Chesapeake Drive
Suite 100
McCordsville, Indiana 46055
Tel: (317) 335-3601
Fax: (317) 335-3602
*Attorneys for Defendant CMG Worldwide,*
*Inc.*

Defendants Marilyn Monroe LLC ("MMLLC") and CMG Worldwide, Inc. ("CMG") respectfully submit this memorandum of law in opposition to Plaintiffs' Motion to Withdraw Counts 1-8 of Their Second Amended Complaint Without Prejudice and in support of Defendants' Cross-Motion to Dismiss Counts 1 and 2 of Plaintiffs' Second Amended Complaint With Prejudice.

## PRELIMINARY STATEMENT

Defendants have spent hundreds of thousands of dollars and countless attorney and paralegal hours preparing and responding to dozens of document requests and interrogatories, reviewing and producing over sixty-five thousand pages of documents, reviewing over a thousand pages of documents produced by Plaintiffs, preparing for depositions, appearing at numerous pretrial conferences, and briefing a lengthy motion to dismiss. Now, after two-and-a-half years of litigation, Plaintiffs seek to withdraw eight of their nine causes of action *without prejudice*, so they can be reasserted in some future litigation, thereby forcing Defendants to duplicate their efforts spent in this action.

Moreover, after Defendants' September 2007 motion to dismiss demonstrated that Plaintiffs' Counts 3-8 failed to state a claim or were otherwise barred by black-letter law, and after Defendants agreed to withdraw that motion only if Plaintiffs dismissed those claims *with prejudice*, the Court dismissed Counts 3-8 *with prejudice*. Plaintiffs' present motion therefore seeks reconsideration of that order, but woefully fails to meet the heightened standard required to overturn a prior court order. It is also clearly untimely under this Court's Local Rules.

Counts 1 and 2 should be dismissed with prejudice because Plaintiffs' counsel agreed in writing to withdraw them *with prejudice*, and because they have been pending far too long, and