UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
SHAW FAMILY ARCHIVES, LTD., EDITH MARCUS, :
and META STEVENS,                         :
                                          :
                                          :
                        Plaintiffs,       : Index No. O5 CV 3939 (CM)
                                          :
        -against-                         :
                                          :
                                          :
CMG WORLDWIDE, INC., an Indiana Corporation :
and MARILYN MONROE, LLC, a Delaware       :
Limited Liability Company,                :
                                          :
                        Defendants.       :
                                          :
------------------------------------------------------------------------X


**THE SHAW FAMILY'S MEMORANDUM OF LAW IN SUPORT OF ITS MOTION
FOR A BOND PURSUANT TO LOCAL RULE 54.2**

                              LAW OFFICES OF CHRISTOPHER SERBAGI
                              488 Madison Avenue, Suite 1120
                              New York, New York 10022
                              Tele: (212) 593-2112
                              Fax: (212) 308-8582

                              Attorneys for the Plaintiffs

On the Brief:
Christopher Serbagi, Esq.
David Marcus, Esq.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT..............................................................................................1

ARGUMENT.............................................................................................................................4

I.    THE COURT SHOULD ORDER THE DEFENDANTS TO POST A BOND BECAUSE THEY ARE BOTH NON-RESIDENTS OF NEW YORK....................5

II.   THE COURT SHOULD ORDER THE DEFENDANTS TO POST A BOND BECAUSE MMLLC'S ATTORNEYS HAVE STATED THAT IT MAY NOT HAVE THE FUNDS TO SATISFY AN AWARD OF ATTORNEY'S FEES.............5

III.  THE COURT SHOULD ORDER THAT THE DEFENDANTS POST A BOND BECAUSE THERE IS NO MERIT TO THEIR CLAIMS..................................7

       A. The Defendants' Right of Publicity Claim Had No Merit And The Indiana Statute Mandates An Award of Attorneys' Fees and Costs To The Prevailing Party...........7

       B. The Defendants' Public Domain Claim is Baseless Because Discovery Revealed That There Was Never Any Basis To Allege The Existence of A Justiciable Controversy..........................................................................................7

IV.  THE COURT SHOULD ORDER THE DEFENDANTS TO POST A BOND BECAUSE DISCOVERY HAS BEEN EXTENSIVE AND ADDITIONAL LEGAL COSTS WILL BE SUBSTANTIAL..........................................................9

V.   THE COURT SHOULD ORDER THE LARGE BOND THAT THE SHAW FAMILY HAS REQUESTED BECAUSE THE DOCUMENTARY EVIDENCE REVEALS THAT THE DEFENDANTS INITIATED THIS LAWSUIT IN BAD FAITH AND WILL BE SUBJECT TO THE SHAW FAMILY'S ATTORNEYS' FEES FOR THE ENTIRE CASE....................................................................9

CONCLUSION................................................................................................................15

# TABLE OF AUTHORITIES

**CASES:**

Adsani v. Miller,
    94 Civ. 9131 (DLC), 1996 U.S. Dist. LEXIS 13740 (S.D.N.Y. 1996)..........................9

Beverly Hills Design Studio (N.Y.) Inc. v. Morris,
    126 F.R.D. 33 (S.D.N.Y. 1989)..........................................................................5, 9, 10

Expense Reduction Servs., Inc. v. Jonathan Woodner Co., Inc.,
    720 F. Supp. 262 (S.D.N.Y. 1989)...........................................................................5

Herbstein v. Bruetman,
    89 Civ. 6864 (RWS), 1992 U.S. Dist. LEXIS 3078 (S.D.N.Y. 1992).........................4

Little v. Twentieth Century-Fox Film Corp.,
    1996 U.S. Dist. LEXIS 454 (S.D.N.Y. 1996), *aff'd*, 139 F.3d 67 (2d Cir.),
    *cert. denied*, 525 U.S. 875 (1998).............................................................................9

RBFC One v. Zeeks, Inc.,
    No. 02 Civ. 323 (DFE), 2005 U.S. Dist LEXIS 19148 (S.D.N.Y. Sept. 1, 2005)............6, 7

RLS Assocs., LLC v. United Bank of Kuwait PLC,
    01 Civ. 1290 (CSH) (DF), 2006 U.S. Dist. LEXIS 85966 (S.D.N.Y. Nov. 27, 2006)...4, 6, 9

Selletti v. Carey,
    173 F.R.D. 96, 100-01 (S.D.N.Y. 1997).....................................................................4

Sinatra v. Gucci (In re Gucci),
    No. 05 Civ. 4444, 2005 U.S. Dist. LEXIS 12975 (S.D.N.Y. June 27, 2005)..................5

Spitzer v. Shanley Corp.,
    89 Civ. 8549(MEL), 1993 U.S. Dist. LEXIS 14863 (S.D.N.Y. Oct. 22, 1993)..............5, 8

Tri-Ex Enterprises, Inc. v. Morgan Guaranty Trust Co. of New York,
    80 Civ. 3856, 1985 WL 144 (S.D.N.Y. January 11, 1985).............................................6

Watson v. E.S. Sutton, Inc.,
    02 CV 2739 (KMW), 2006 U.S. Dist. LEXIS 88415 (S.D.N.Y. 2006) ........................5

**STATUTES:**

I.C. § 32-36-1-12 ................................................................................................7

S.D.N.Y R. Rule 54.2................................................................................................1,4, 8

Pursuant to Rule 54.2 of the United States District Courts for the Southern District of New York ("Local Rule 54.2"), Plaintiff/Consolidated Defendant Shaw Family Archives, Ltd., Consolidated Defendant Bradford Licensing Associates, Plaintiffs Edith Marcus and Meta Stevens (the "Shaw Family"), respectfully request that the Court direct defendants Marilyn Monroe, LLC and CMG Worldwide, Inc. (the "Defendants") to post a bond in the amount of $4,500,000.

## PRELIMINARY STATEMENT

The Court should require the Defendants to post a bond to cover the Shaw Family's attorneys' fees and legal costs. The Indiana right of publicity statute mandates that the Defendants pay the Shaw Family's attorneys' fees. Defendants' conduct in connection with the litigation of their public domain claim also warrants an award of attorneys' fees under the Copyright Act because they fabricated facts in the Third Amended concerning a justiciable controversy. The Shaw Family withdrew its affirmative claims long ago, and seeks only for the Court to affirm its May 2, 2007 Decision and Order by holding that the newly passed California right of publicity legislation is unconstitutional[1] and that Marilyn Monroe died a New York domiciliary. Defendants, on the other hand, insist on pressing their frivolous public domain claim and are desperately trying to keep their right of publicity claim alive. It is the Defendants' stubborn refusal to acknowledge well established principles of probate and constitutional law that have cost the Shaw Family many additional hundreds of thousands of dollars. While the Defendants' lobbying efforts are obviously Constitutionally protected, it was their own choosing to seek to abrogate this Court's May 2, 2007 Decision and Order, which the California

---

[1] Taking the Defendants at their word, this issue is particularly ripe because the New York legislature is very likely to pass virtually identical legislation any moment.

1

legislature "purports" to have already done. The Defendants should now post a bond to ensure that the Shaw Family is able to recover the attorney's fees to which it is entitled in the likely event that Defendants' strenuous efforts to re-write history prove futile.

Defendants meet all the elements that courts within the Second Circuit consider in deciding whether to require a bond. First, both Defendants are non-residents of New York, which means that it would be particularly costly and difficult for the Shaw Family to recover a judgment of attorneys' fees against them. Second, MMLLC is a shell company and the loss of MMLLC's most valuable asset, its purported ownership of a right of publicity, and resulting loss in revenue, means that it will likely lack the funds necessary to pay the Shaw Family's costs and attorney's fees. Unfortunately, MMLLC's precise revenues are unknown because its attorney refused to permit its 30(b)(6) witness to answer questions concerning revenues, which itself warrants an adverse inference against them. Moreover, MMLLC's attorneys have already indicated that MMLLC may dissolve if there is any substantial judgment against it. Third, the merits of the Defendants' underlying claims are very weak. The Court has already held that the Defendants' right of publicity claim is baseless and, as the court will see in pending Shaw Family motions for summary judgment and preclusion, Defendants fabricated facts in the Third Amended Complaint concerning a justiciable controversy over purportedly public domain images.

Courts have imposed a bond that covers the attorneys' fees a party is likely to incur over an entire case based only upon its belief that a party's claims are speculative. Here, not only was the Defendants' right of publicity claim speculative, but the Court's May 2, 2007 Decision and Order indicates that their claim was baseless. But Defendants did more than stretch the bounds of permissible advocacy, there is very compelling documentary evidence that the Court's ruling

2

came as no surprise to these Defendants because <u>they knew long ago that they never had a right of publicity in Marilyn Monroe</u>.  As early as 1990, Ms. Strasberg's licensing agent, Roger Richman, stated to both Ms. Strasberg and her lawyer that should any licensee recognize what is clearly revealed in the New York probate documents, "there may be no future licensing revenue from Marilyn Monroe." In this historical context, the Defendants' decision to withhold the key New York probate documents (and other key domicile documents) at a time that it told this court in fully briefed summary judgment motions that Marilyn Monroe died a California domiciliary is very disturbing.  That the Defendants initially refused to produce these documents on grounds that they are "confidential" is shocking.

    The evidence also demonstrates that the Defendants tried to oppress the Shaw Family in a distant Indiana/CMG-friendly court, with a statute that CMG helped to pass, with arguments that it did not even believe to be true.  When that plan failed and the Indiana court transferred the case here, Defendants did what they could to rush this Court to a quick decision on summary judgment without producing the crucial New York probate documents that Mr. Richman warned Ms. Strasberg and her lawyer about – documents that, as Mr. Richman stated, would mean "there may be no future licensing revenue from Marilyn Monroe." Moreover, the Defendants and their attorneys repeatedly attempted to intimidate the Shaw Family into submission with threats of having to pay the Defendants' attorneys fees under the Indiana statute.  The Defendants clearly expected a quick resolution in CMG based Indiana, using a statute that CMG helped to draft.  If a large bond is not warranted under these facts, a large bond is never warranted.  Based on the foregoing, the Shaw Family respectfully requests that the Court Order the Defendants to post a bond, which constitutes the Shaw Family's attorneys' fees and costs.

## ARGUMENT

Local Rule 54.2 provides this Court with authority to order that the Defendants post a bond with the Court. It states:

> The court, on motion or on its own initiative, may order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate. For failure to comply with the order the court may make such orders in regard to non-compliance as are just, and among others the following: an order striking out pleadings or staying further proceedings until the bond is filed or dismissing the action or rendering a judgment by default against the non-complying party

Courts in this District consider a variety of factors to ascertain whether a bond is appropriate, including: (i) whether the party is a non-resident or foreign entity; (ii) the party's ability to pay; (iii) the merits of the underlying claims; (iv) the extent and scope of discovery; (v) the legal costs expected to be incurred; and (vi) compliance with past court orders. Selletti v. Carey, 173 F.R.D. 96, 100-01 (S.D.N.Y. 1997). Not all factors need be present in order for a court to require a bond and a district court's bond determination is "an exercise with equitable as well as legal implications." See RLS Assocs., LLC v. United Bank of Kuwait PLC, 01 Civ. 1290 (CSH) (DF), 2006 U.S. Dist. LEXIS 85966, *37 (S.D.N.Y. Nov. 27, 2006) (requiring bond based solely on a party's inability to pay potential significant costs).

Numerous courts in this District have recognized that "security for costs may include attorney's fees to which a party is potentially entitled by statute." Selletti, 173 F.R.D. at 100; Herbstein v. Bruetman, 89 Civ. 6864 (RWS), 1992 U.S. Dist. LEXIS 3078, *1 (S.D.N.Y. 1992) ("The security for costs may include attorney's fees to which a party is potentially entitled"); Beverly Hills Design Studio (N.Y.) Inc. v. Morris, 126 F.R.D. 33, 36 (S.D.N.Y. 1989) ("While the language of Rule 39 limits itself to costs, attorneys' fees have been included in a cost bond where the defendant was statutorily entitled to them"). Numerous courts have also held that costs for which security may be required include attorney's fees for which a party may be

4

responsible at the conclusion of the litigation. Watson v. E.S. Sutton, Inc., 02 CV 2739 (KMW), 2006 U.S. Dist. LEXIS 88415, *3-*4 (S.D.N.Y. 2006) (citing Sinatra v. Gucci (In re Gucci), No. 05 Civ. 4444, 2005 U.S. Dist. LEXIS 12975, at *3-*4 (S.D.N.Y. June 27, 2005)).

**I.     THE COURT SHOULD ORDER THE DEFENDANTS TO POST A BOND BECAUSE THEY ARE BOTH NON-RESIDENTS OF NEW YORK**

Both Defendants are non-residents of New York. CMG is an Indiana corporation and with a principal place of business in Hamilton County, Indiana. Declaration of David Marcus, dated March 12, 2008 ("Marcus Decl."), at ¶ 6, Ex. E, ¶ 7. MMLLC is a Delaware LLC, who alleges that its principal place of business is at CMG's Indiana headquarters. Id. at ¶ 8. The Defendants' non-resident status favors the Court's imposition of a bond here.

**II.    THE COURT SHOULD ORDER THE DEFENDANTS TO POST A BOND BECAUSE MMLLC'S ATTORNEYS HAVE STATED THAT IT MAY NOT HAVE THE FUNDS TO SATISFY AN AWARD OF ATTORNEY'S FEES**

Defendant MMLLC's attorneys have stated that MMLLC may not have the funds to satisfy a judgment for attorney's fees against it at the conclusion of the case. Marcus Decl. ¶ 11. MMLLC's representations are grounds enough for the Court to require it to post a bond now. See Tri-Ex Enterprises, Inc. v. Morgan Guaranty Trust Co. of New York, 80 Civ. 3856, 1985 WL 144 (S.D.N.Y. January 11, 1985) (plaintiff "argues with no small irony, that the motion should be denied precisely because it has no funds with which to post a bond. The Court finds little merit in this self-defeating argument…").

Putting aside the representations of MMLLC's attorneys, there are many other reasons to believe that MMLLC may not have the funds to cover an award of attorney's fees against it. MMLLC is a shell company, whose only function is to hold the purported intellectual property that Anna Strasberg inherited from Lee Strasberg. Marcus Decl., at ¶ 7, Ex. F, at 173-177. See RLS Assoc., 464 F. Supp. 2d at 226 (awarding bond where it would be necessary to pierce the

5

corporate veil to reach a party's personal assets). Because this Court has already held that MMLLC does not have a right of publicity, MMLLC no longer has the sole asset which formerly sustained it. Courts have awarded bonds under these precise circumstances. See <u>RBFC One v. Zeeks, Inc.</u>, No. 02 Civ. 323 (DFE), 2005 U.S. Dist LEXIS 19148 (S.D.N.Y. Sept. 1, 2005). In the <u>RBFC One Case</u>, the court characterized the plaintiff as a limited liability company formed solely for the purpose of producing and exploiting a film that was the subject of the lawsuit. <u>Id.</u> at * 4. The court stated that a bond was appropriate because, as a shell company, its owner had complete power to cause the LLC to make payments to cover whichever of its debts it chooses. <u>Id.</u> at *5. The parallels between the <u>RBFC One</u> case and the present are apparent. Simply stated, as was the case in <u>RBFC One,</u> there would be nothing to prevent Anna Strasberg (or CMG) from funneling any assets MMLLC has to its numerous creditors, instead of the Shaw Family. Moreover, if the Court affirms its prior decision, then Defendants' Marilyn Monroe licensing revenues are likely to cease and the Shaw Family will be forced to absorb the astronomical attorneys' fees it has incurred in this litigation. In fact, MMLLC testified at its 30(b)(6) deposition that its licensing revenues of Marilyn Monroe significantly decreased after the Court's May 2, 2007 Decision and Order. Marcus Decl. at ¶ 7, Ex. F, at 194-96. Mr. Strasberg's testimony is reason enough to believe that MMLLC would not have the revenues to pay the Shaw Family's costs and attorney's fees at the conclusion of this case.

### III. THE COURT SHOULD ORDER THAT THE DEFENDANTS POST A BOND BECAUSE THERE IS NO MERIT TO THEIR CLAIMS

#### A. The Defendants' Right of Publicity Claim Had No Merit And The Indiana Statute Mandates An Award of Attorneys' Fees and Costs To The Prevailing Party

Courts also consider the merits of a claim to determine whether a bond is appropriate. Seletti, 173 F.R.D. at 100. The Indiana right of publicity statute mandates an award of attorneys' fees and costs to the prevailing party. It states:

> Sec. 12, In addition to any damages awarded under section 10 of this chapter, the court (1) **shall award to the prevailing party** reasonable attorney's fees, costs, and expenses relating to an action under this chapter; and (2) may order temporary or permanent injunctive relief, except as provided by section 13 of this chapter.

I.C. § 32-36-1-12 (emphasis added). As the prevailing party, the Shaw Family is entitled to its attorneys' fees under the Indiana Statute because the Court dismissed that claim from the Defendants' Second Amended Complaint on May 2, 2007. But the Shaw Family is also entitled to all the attorneys' fees it expended subsequent to May 2, 2007 as those fees relate to proving that Marilyn Monroe died a New York domiciliary and demonstrating that the newly passed California legislation is unconstitutional. The Indiana Statute requires that the Defendants pay those fees as well because the issue of domicile and the constitutionality of the California statute pertain to whether the Shaw Family is subject to liability under the Indiana Statute or not. Heberstein, 1992 U.S. Dist. LEXIS 3078, at * 3 (granting bond, in part, based on attorney's fees a party has already incurred and is likely to incurred over the course of the case).

#### B. The Defendants' Public Domain Claim is Baseless Because Discovery Revealed That There Was Never Any Basis To Allege The Existence of A Justiciable Controversy

The Court should also order that the Defendants post a bond to cover the attorneys' fees they are likely to incur as a result of their baseless declaratory judgment action that certain

7

Marilyn Monroe photographs are in the public domain – images that the Defendants have not even identified. As set forth in the Shaw Family's recently filed summary judgment motions on the Defendants' public domain claim, discovery revealed that the Defendants fabricated the allegations in the Third Amended Complaint concerning a justiciable controversy. Courts in this District have repeatedly held that where "the merits of plaintiff's case [are] questionable," security bonds are considered appropriate. Seletti, 173 F.R.D. at 102 (citing Spitzer v. Shanley Corp., 89 Civ. 8549(MEL), 1993 U.S. Dist. LEXIS 14863, *10 (S.D.N.Y. Oct. 22, 1993)). In the seminal Seletti case, the plaintiff Seletti, an amateur songwriter, brought an action for copyright infringement against a singer, her record label, a musician, and others. Id. at *2. The Defendants moved for a security bond pursuant to Local Rule 54.2. Id. The court noted that Seletti's "precise financial condition is unclear" because he "neglected to submit any relevant information." Id. at *15-*16. The court also noted that the merits of Seletti's copyright infringement action are "questionable" because the allegations in the complaint regarding the Defendants' purported conspiracy to copy are "speculative at best" and that Seletti's assertions as to the similarity between the respective works was "conclusory and unsupported." Id. at *17-*18. Based on the foregoing, Judge Chin directed Seletti to post a security bond. Id. at *20. See Beverly Hills Design Studio, 26 F.R.D. at 37 (where the court ordered defendant to post a security bond where plaintiff's claims were found to have little merit and where the Copyright and Lanham Acts provided for attorneys' fees). Here, Defendants' allegations in the Third Amended Complaint concerning a purported justiciable controversy over public domain images are far worse than "speculative," they were fabricated and, like Seletti, MMLLC refused to provide relevant financial information. Id. at ¶ 7, Ex. F, at 194-96. Although there is significant evidence of the Defendants' bad faith here, it is not required – it is enough that the Defendants'

claims were objectively unreasonable. Adsani v. Miller, 94 Civ. 9131 (DLC), 1996 U.S. Dist. LEXIS 13740, * (S.D.N.Y. 1996) (citing Little v. Twentieth Century-Fox Film Corp., 1996 U.S. Dist. LEXIS 454 (S.D.N.Y. 1996) (imposing fees against plaintiff's "objectively unreasonably" copyright infringement claim "even in subjective good faith by the plaintiffs"), aff'd, 139 F.3d 67 (2d Cir.), cert. denied, 525 U.S. 875 (1998)).

Accordingly, the Court should order the Defendants to post a bond because every claim they have asserted is, at the very least, objectively unreasonable.

## IV. THE COURT SHOULD ORDER THE DEFENDANTS TO POST A BOND BECAUSE DISCOVERY HAS BEEN EXTENSIVE AND ADDITIONAL LEGAL COSTS WILL BE SUBSTANTIAL

Courts award a bond when discovery is expected to be substantial. RLS Assoc., 2006 U.S. Dist. LEXIS at * 37. Here, we already know that discovery has been extensive in this three year old case. Both sides have taken numerous depositions, exchanged approximately 70,000 documents, attended numerous discovery hearings before Judge Fox in White Plains, and filed numerous discovery motions. Marcus Decl., at ¶ 15. Merely reviewing Defendants' document production has been a monumental undertaking for the Shaw Family. Id. The Defendants admitted that discovery in the present case was extensive in papers it filed with the Court in opposition to the Shaw Family's motion to withdraw Counts 1-8 "without prejudice." Id. at ¶ 10, Ex. I.

## V. THE COURT SHOULD ORDER THE LARGE BOND THAT THE SHAW FAMILY HAS REQUESTED BECAUSE THE DOCUMENTARY EVIDENCE REVEALS THAT THE DEFENDANTS INITIATED THIS LAWSUIT IN BAD FAITH AND WILL BE SUBJECT TO THE SHAW FAMILY'S ATTORNEYS' FEES FOR THE ENTIRE CASE

The Court should grant a bond that is likely to cover the attorneys' fees that the Shaw Family is likely to incur over the course of this case because the documents and the Defendants'

litigation conduct indicate that the Defendants always knew that they had no right of publicity in Marilyn Monroe to assert, yet sued the Shaw Family anyway to test case the Indiana statute CMG helped to pass. That is the only conceivable reason why these Defendants would have made the unfathomable decision to risk the eight million per year that CMG has stated Defendants made in 2004 alone on Marilyn Monroe licensing. As set forth below, they expected to oppress and overwhelm the Shaw Family in the distant Indiana court.

The Beverly Hills Design court based the bond on the attorneys' fees that the defendant was likely to expend over the course of the entire case. In Beverly Hills Design Studio, the court held:

> For the foregoing reasons, plaintiffs' federal claims seem to be of dubious merit. Indeed, there appears to be a reasonable question whether they are prosecuted in good faith. Accordingly, the security bond will include attorneys fees likely to be expended in defending against plaintiffs' copyright and trademark claims. Since plaintiffs themselves contemplate taking over 20 depositions, it is evident that these expenses may be substantial.

1989 U.S. Dist. LEXIS 6259 at *18. First, as set forth in the Shaw Family's pending domicile motion, all the Defendants' principals have admitted, in various judicial and non-judicial contexts, that Marilyn Monroe died a New York domiciliary. Since New York did not have a post-mortem right of publicity when Ms. Monroe died, it logically follows that she had no such right to pass to her heirs and beneficiaries. Defendants and their highly sophisticated counsel just had to know that this was the case.

Second, there is also strong documentary evidence that the Defendants always knew that they never had a right of publicity in Marilyn Monroe. For example, by letter dated February 27, 1990, Anna Strasberg's former licensing agent, Roger Richmond, wrote a letter to Anna Strasberg's lawyer, Irvine Seidman. Marcus Decl., at ¶ 3, Ex. B, MM 0044375-44376. That

letter states that Mr. Seidman previously represented to Mr. Richman that Marilyn Monroe died a New York domiciliary and that, according to Mr. Richman, "her **probate files, prepared by others, substantiate this.**" Id. at MM 0044376. (emphasis added). Anna Strasberg was copied on the letter. Id. In that same letter, Mr. Richman promulgated the following ominous warning to Mr. Seidman and Ms. Strasberg:

> I wrote the New York celebrity rights law only to protect Marilyn Monroe because several lawyers reviewed her probate file and alleged that her domicile upon death was likely New York. "[S]hould any licensee assert this, **there may be no more licensing revenue from Marilyn Monroe.**"

Id. (emphasis added).

Documents that Mr. Seidman previously filed on behalf of Anna Strasberg substantiate that they both knew **that there was no right of publicity in Marilyn Monroe.** Id. at ¶ 2, Ex. A, MM 0000241-242, 0004364-4372. On July 28th, 1989, Irving Seidman (on behalf of Anna Strasberg, as Administratrix of the Monroe Estate), filed a Petition for Construction of Wills with the New York Surrogates Court. Id. Mr. Seidman requested that the court construe the Will of Marianne Kris "upon grounds that a construction is necessary to enable petitioner to determine the proper beneficiary of the residuary Estate of Marilyn Monroe." Id. at MM 0000242. In support of Ms. Strasberg's Petition, Mr. Seidman stated in paragraph 3 that "[t]he decedent died on August 5, 1962, domiciled in the City and State of New York . . ." Id. at MM 0004364. Anna Strasberg testified at her deposition that she believed that Mr. Seidman made this statement because he believed "Aaron Frosch is right."[2] Id. at ¶ 9, Ex. H, at 161.

In 1993, the Shaw Family sought advice of counsel, Martin Bressler, on the issue of whether the Estate had a right of publicity in Marilyn Monroe. Id. at ¶ 4, Ex. C, MM 0003906-

---

[2] In the interest of full disclosure to the Court, Anna Strasberg made numerous conflicting statements throughout her deposition,

11

3909. Mr. Bressler rendered a written opinion (the "Bressler Opinion"), dated June 11, 1993, that Marilyn Monroe died a New York domiciliary and therefore that MMLLC had no right of publicity in Marilyn Monroe. Id. The Shaw Family sent this letter to numerous licensees and it was widely distributed in the market. Id. at ¶ 8, Ex. G, at 230-231. CMG's Mark Roesler testified during MMLLC's 30(b)(6) deposition that it had seen the Bressler Opinion back in 1993. Id. By letter dated July 7, 1993, Baker & Hostetler sent the Bressler Opinion to Anna Strasberg's agent, Roger Richman, and asked him to render an opinion on its contents. Id. at ¶ 4, Ex. C, MM 0003905. Of course, Roger Richman already knew that the New York probate documents meant that there was no right of publicity in Marilyn Monroe because that is exactly what he told Irvine Seidman and Anna Strasberg years earlier. Id. at ¶¶ 2, 3, 9, Exs. A, B, H, at 161.

Undeterred by the knowledge that they had no right of publicity in Marilyn Monroe, Defendants vigorously policed the market, sent many hundreds of cease and desist letters to virtually anyone who mentioned the name Marilyn Monroe, and sued many who were the least able to defend themselves. Id. at ¶ 16. On those occasions that these Defendants threatened a party who was represented by an established law firm, the Defendants turned their attention to less formidable prey, who were not as likely to call Defendants' non-existent right of publicity into question. For example, by letter dated March 28, 1996, the law firm Kenyon & Kenyon (on behalf of its client Renaissance Roads Production) sent a letter to CMG, in which it firmly rejected CMG's and MMLLC's assertion that there was a right of publicity in Marilyn Monroe. Id. at ¶ 5, Ex. D, MM 0019959-19962. One of the many arguments Kenyon & Kenyon asserted is the precise argument that Irvin Seidman and Roger Richman articulated back in 1990, namely that because Marilyn Monroe died a New York domiciliary, MMLLC and CMG had no post-

mortem right of publicity in Marilyn Monroe to assert. <u>Id</u>. at MM 0019959-60.  Accordingly, because the Defendants' knew they had no right of publicity in Marilyn Monroe to assert and because Kenyon & Kenyon is a formidable intellectual property boutique, CMG and MMLLC took no further action against Renaissance Road Productions.  The Shaw Family was not so lucky.

In 2005, the Defendants filed suit against the Shaw Family over the purported sale of a single tee shirt in Indiana.  But the Defendants never sent the Shaw Family a cease and desist letter or called any purported dispute to the Shaw Family's attention.  <u>And that is because there never was a dispute until the Defendants create one with this litigation</u>.  Because all the Shaw Family ever did was to license its copyrights, the litigation came as a complete surprise to the Shaw Family.  The evidence clearly demonstrates that the Defendants tried to heavily oppress the Shaw Family in a distant Indiana/CMG-friendly court, with a statute that CMG helped to pass, with arguments that it did not even believe to be true.  Exactly why the Defendants did not pursue a company represented by Kenyon & Kenyon yet pursued the Shaw Family is blatantly obvious.  At the time, the Shaw Family was represented by a single solo practitioner, David Marcus, and the Defendants were represented by Gibson Dunn & Crutcher.  Defendants initially refused to produce <u>any</u> documents on the frivolous grounds that they were "confidential," including <u>the very New York probate documents Roger Richman warned Anna Strasberg and her attorney about back in 1990</u>.  Marcus Decl. at ¶¶ 3, 14, Ex. B.  Defendants then quickly moved for summary judgment on their right of publicity claim, which was fully briefed before the Defendants produced a single document, answered a single interrogatory, or produced a single deponent for deposition.  Marcus Decl. , at ¶ 14.  Defendants and their attorneys' were clearly

rushing the Court to judgment, well before the Shaw Family (and the Court) obtained the critical New York probate files that Mr. Richman warned Anna Strasberg about years earlier.

Finally, if all that is not bad enough, there is more evidence of the Defendants intent to oppress the Shaw Family into quickly capitulating. By way of just one example, Defendants and their attorneys repeatedly attempted to intimidate the Shaw Family into submission with threats of having to pay the Defendants' attorneys' fees under the Indiana statute. On one occasion, CMG's Mark Roesler even memorialized this threat in an electronic communication to Larry Shaw. Larry Shaw Declaration, dated May 22, 2007, at ¶¶ 4-5, Ex. A.

Everything the Defendants have done in this case evidences their intent to oppress and mislead; from filing in CMG friendly Indiana based on the sale of a single tee shirt, without any notice whatsoever; threatening the Shaw Family with attorney's fees; moving for summary judgment while withholding the critical probate and other domicile documents they knew contradicted representations they made before this Court; propounding claims that they could not substantiate in a response to a contention interrogatory or by 30(b)(6) deposition testimony; telling Judge Fox one thing and this Court another; repeatedly directing their witnesses not to answer relevant questions at depositions; coaching and disrupting depositions with speaking objections. The list goes on and on. Defendants' conduct has been absolutely vexations and all their claims baseless. A large bond is warranted here so that the Shaw Family is ensured that it will recover its attorneys' fees.

## CONCLUSION

For all the foregoing reasons, the Shaw Family respectfully requests that the Court order that Defendants to post a bond in the amount of $ 4,500,000. This amount would cover the approximate $3,303,500 in costs and fees that the Shaw Family has already incurred in addition to the additional $1,000.00 it estimates through trial.

Dated:  New York, New York
        March 12, 2008

                Respectfully Submitted,

                LAW OFFICES OF CHRISTOPHER SERBAGI

        By: _/s/ Christopher Serbagi_
                Christopher Serbagi, Esq.
                David Marcus, Esq.
                488 Madison Avenue, Suite 1120
                New York, New York  10022
                Tele: (212) 593-2112
                Fax:  (212) 308-8582

                Attorneys for Shaw Family Archives, Bradford Licensing, Inc., Edith Marcus and Meta Stevens