Barry I. Slotnick (BS-6234)
Paula K. Colbath (PC-9895)
Douglas E. Mirell (CA SBN 094169), appearing *pro hac vice*
LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154
(212) 407-4000

Attorneys For Defendant
Marilyn Monroe LLC

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X
                          :

SHAW FAMILY ARCHIVES, LTD. EDITH
MARCUS and META STEVENS,                    :    05 Civ. 3939 (CM)

             Plaintiffs,          :

        -against-                            :    **MEMORANDUM OF LAW IN**
                                         **OPPOSITION TO PLAINTIFFS'**
CMG WORLDWIDE, INC., an Indiana        :    **MOTION FOR ORDER THAT SB 771 IS**
Corporation, and MARILYN MONROE, LLC,          **UNCONSTITUTIONAL AND THAT THE**
a Delaware Limited Liability Company,      :    **COURT'S MAY 2, 2007 DECISION AND**
                                         **ORDER STANDS**

             Defendants.          :
-------------------------------------------------------X

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ i

I.      INTRODUCTION ................................................................................................ 1

II.     STATUTORY AND PROCEDURAL BACKGROUND ...................................... 4

        A.      California's Right of Publicity. ................................................................... 4

        B.      Section 3344.1 (formerly Section 990). ...................................................... 5

        C.      Court Orders in This Action and the California Action. ............................. 6

        D.      The Enactment of SB 771. ......................................................................... 7

        E.      Reconsideration of the May 14, 2007, Order in the California Action............ 9

III.    ARGUMENT ....................................................................................................... 10

        A.      Plaintiffs Lack Standing To Challenge the Constitutionality of
                California's Post-Mortem Right of Publicity Statute. .................................. 10

        B.      California's Post-Mortem Right of Publicity Statute Is Not
                Unconstitutional. ......................................................................................... 12

                1.      SB 771 Does Not Operate Retroactively, As It Merely  Clarified
                        Existing Law. ................................................................................... 12

                2.      This Court Has Not Authorized Plaintiffs To Challenge the
                        Constitutionality of Section 3344.1. ................................................. 15

                3.      As Applied to Plaintiffs, Section 3344.1 Does Not Operate
                        Retroactively. ................................................................................... 16

                4.      Even if Section 3344.1 Might Operate Retroactively As Applied
                        to Plaintiffs, It Is Not Unconstitutional. .......................................... 17

                        (a)     The Constitutional Prohibition Against *Ex Post Facto*
                                Laws Does Not Apply To Section 3344.1. .............................. 18

                        (b)     None of Plaintiffs' Contractual Relationships Has Been
                                Impaired. ................................................................................ 18

                        (c)     Section 3344.1 Does Not Impair Any "Vested Right"
                                Possessed By Plaintiffs. ......................................................... 21

V.      CONCLUSION ..................................................................................................... 22

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Allied Structural Steel v. Spannaus,*
    438 U.S. 234 (1978)................................................................................................19

*Allstate Ins. Co. v. Serio,*
    261 F.3d 143 (2d Cir. 2001)..................................................................................13

*Am. Power & Light Co. v. SEC,*
    329 U.S. 90 (1946)................................................................................................12

*Ashwander v. Tennessee Valley Auth.,*
    297 U.S. 288, 347 (1936)......................................................................................11

*Bd. of Regents v. Roth,*
    408 U.S. 564 (1972)..............................................................................................21

*Cairns v. Franklin Mint Co.,*
    292 F.3d 1139 (9th Cir. 2002) ..............................................................................11

*Calder v. Bull,*
    3 U.S. 386 (1798)..................................................................................................18

*Carbon Fuel Co. v. USX Corp.,*
    100 F.3d 1124 (4th Cir. 1996) ..............................................................................21

*Christopher v. Harbury,*
    536 U.S. 403 (2002).......................................................................................11, 16

*City Council v. Taxpayers for Vincent,*
    466 U.S. 789 (1984)..............................................................................................16

*Energy Partners Reserves Group, Inc. v. Kansas Power & Light Co.,*
    459 U.S. 400 (1983).......................................................................................19, 20

*Fairfield v. Am. Photocopy Equip. Co.,*
    138 Cal.App.2d 82 (Cal. Ct. App. 2d Dist. 1955)..............................................4, 5

*Fletcher v. Peck,*
    10 U.S. 87 (1810)..................................................................................................18

*General Motors Corp. v. Remein,*
    503 U.S. 181 (1992)..............................................................................................19

*Greater New Orleans Broad. Ass'n v. United States,*
    527 U.S. 173 (1999)..............................................................................................10

Page(s)

*Groucho Marx Prods., Inc. v. Day and Night Co., Inc.,*
689 F.2d 317 (2d Cir. 1982)................................................................................5

*Harisiades v. Shaughnessy,*
342 U.S. 580 (1952).........................................................................................18

*In re Marriage of Fellows,*
39 Cal.4th 179 (Cal. 2006)...............................................................................13

*In re Marriage of Hilke,*
4 Cal.4th 215 (Cal. 1992).................................................................................17

*Kansas v. Hendricks,*
521 U.S. 346 (1997).........................................................................................18

*Kerby v. Hal Roach Studios,*
53 Cal.App.2d 207 (Cal. Ct. App. 2d Dist. 1942)..............................................4

*Kinney v. Connecticut Judicial Dep't,*
974 F.2d 313 (2d Cir. 1992)..............................................................................19

*Kizer v. Hanna,*
48 Cal.3d 1, 7 (Cal. 1989)................................................................................12

*Landgraf v. Usi Film Prods.,*
511 U.S. 244 (1994)....................................................................................12, 17

*League v. Texas,*
184 U.S. 156 (1902).........................................................................................17

*Lugosi v. Universal Pictures,*
25 Cal.3d 813 (Cal. 1979)..................................................................................5

*Lujan v. G & G Fire Sprinklers,*
532 U.S. 189 (2001), *reh'g denied,* 533 U.S. 912 (2001) ..............................12

*Melvin v. Reid,*
112 Cal.App. 285 (Cal. Ct. App. 4th Dist. 1931) ............................................4

*Middleton v. Texas Power & Light Co.,*
249 U.S. 152 (1919)....................................................................................21, 22

*Murrill v. State Board of Accountancy,*
97 Cal.App.2d 709 (Cal. Ct. App. 2d Dist. 1950)............................................18

*New York v. Ferber,*
458 U.S. 747 (1982).........................................................................................20

Page(s)

*People v. Blakeley,*
  23 Cal.4th 82 (Cal. 2000)................................................................18

*People v. Hoyos,*
  41 Cal.4th 872 (Cal. 2007)..............................................................18

*People v. Rathert,*
  24 Cal.4th 200 (Cal. 2000)..............................................................18

*Plotkin v. Sajahtera, Inc.,*
  106 Cal.App.4th 953 (Cal. Ct. App. 2d Dist. 2003) ...........................14

*Polk Co. v. Glover,*
  305 U.S. 5 (1938)...........................................................................11

*Proprietors of Charles River Bridge v. Proprietors of Warren Bridge,*
  36 U.S. 420 (1837).........................................................................22

*Quetel Corp. v. Columbia Communications Int'l, Inc.,*
  787 F.Supp. 1 (D.D.C. 1992)..........................................................21

*Re-Open Rambla v. Bd. of Supervisors,*
  39 Cal.App.4th 1499 (Cal. Ct. App. 2d Dist. 1995) ...........................13

*Resolution Trust Corp. v. Maplewood Investments,*
  31 F.3d 1276 (4th Cir. 1994) ..........................................................21

*Riley v. Hilton Hotels Corp.,*
  100 Cal.App.4th 599 (Cal. Ct. App. 2d Dist. 2002) ...........................13

*RN Review for Nurses, Inc. v. State of California,*
  23 Cal.App.4th 120 (Cal. Ct. App. 1st Dist. 1994)............................14

*Robertson v. Willis,*
  77 Cal.App.3d 358 (Cal. Ct. App. 2d Dist. 1978)..............................17

*Robinson v. State of New Jersey,*
  806 F.2d 442 (3d Cir. 1986)............................................................16

*Sabri v. United States,*
  541 U.S. 600 (2004).......................................................................20

*The Milton Greene Archives, Inc. v. CMG Worldwide, Inc, et al.,*
  U.S.D.C. Case No. CV 05-2200 MMM-E.........................................6, 7

*United States v. Fernandez-Antonia,*
  278 F.3d 150 (2d Cir. 2002)............................................................13

Page(s)

*United States v. Raines,*
362 U.S. 17 (1960)................................................................10, 11, 20

*United States v. Sandoval-Lopez,*
122 F.3d 797 (9th Cir. 1997) ..............................................11, 16

*United States Nat'l Bank v. Independent Ins. Agents of Am.,*
508 U.S. 439 (1993)............................................................11

*United States Trust Co. v. New Jersey,*
431 U.S. 1 (1977)..............................................................19

*Universal Sanitation Corp. v. Trade Waste Comm'n of City of N.Y.,*
940 F. Supp. 656 (S.D.N.Y. 1996) ......................................20

*Usery v. Turner Elkhorn Mining Co.,*
428 U.S. 1 (1976)..............................................................21

*Valles v. Ivy Hill Corp.,*
410 F.3d 1071 (9th Cir. 2005) ............................................13

*Weissman v. Fruchtman,*
700 F.Supp. 746 (S.D.N.Y. 1988),
*reh'g denied,* 124 F.R.D. 599 (S.D.N.Y. 1989) ..................16

*Western Security Bank, N.A. v. Superior Ct.,*
15 Cal.4th 232 (Cal. 1997)..................................................12, 13, 14

## STATUTES, RULES & REGULATIONS

U.S. Const. art. I, § 9...........................................................18

U.S. Const. art. I, § 10.........................................................18

Cal. Const. art. I, § 9...........................................................18, 19

California Civil Code Section 990 ..........................................Passim

California Civil Code Section 3344.1 ......................................Passim

California Code of Civil Procedure § 335.1 .............................17

Senate Bill 209 ...................................................................14

Senate Bill 613 ...................................................................6

Senate Bill 771 ...................................................................Passim

<u>Page(s)</u>

## OTHER AUTHORITIES

Charles Warren & Louis Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890) ...............20

J. Thomas McCarthy, *The Rights of Publicity and Privacy* § 1:3 (2d ed. 2007) ......................4, 20

J. Thomas McCarthy, *The Rights of Publicity and Privacy* § 1:3 – 1:6 (2d ed. 2007) .................20

J. Thomas McCarthy, *The Rights of Publicity and Privacy* § 1:4 (2d ed. 2007) ...........................4

J. Thomas McCarthy, *The Rights of Publicity and Privacy* § 6:8 (2d ed. 2007) ...........................1

J. Thomas McCarthy, *The Rights of Publicity and Privacy* § 9:20 (2d ed. 2007) ......................5, 6

Defendant Marilyn Monroe LLC submits this Memorandum of Law in opposition to the "Motion for an Order that SB 771 is Unconstitutional and that the Court's May 2, 2007 Decision and Order Stands" (the "Motion") filed by plaintiffs Shaw Family Archives, Ltd., Edith Marcus and Meta Stevens (collectively "Plaintiffs").

## I.    INTRODUCTION

Plaintiffs' Motion asks this Court to invalidate a California statute that has been on the books for over two decades. That statute – California Civil Code Section 3344.1 (formerly Section 990) – became effective on January 1, 1985. It has never been challenged, much less successfully, on the claim that it is unconstitutionally retroactive. The reason for this is simple. It is not unconstitutional. Moreover, Plaintiffs' asserted basis for finding this statute unconstitutional renders the California law indistinguishable from the statutes of the thirteen other states that, to date, have enacted post-mortem publicity rights legislation – Florida, Illinois, Indiana, Kentucky, Nebraska, Nevada, Ohio, Oklahoma, Pennsylvania, Tennessee, Texas, Virginia and Washington.[1] Marilyn Monroe LLC is likewise unaware of any cases challenging any of these states' statutes, let alone successfully, on the basis that they are unconstitutionally retroactive.

In addition to contending that Section 3344.1 is unconstitutionally retroactive, Plaintiffs' Motion asserts that Senate Bill 771 ("SB 771") – legislation recently enacted to clarify Section 3344.1 – is likewise constitutionally infirm, though on no additional or different bases. These novel contentions, raised by Plaintiffs for the first time in this Motion, are untenable as a matter of law. For the following reasons, they should be summarily rejected:

---

[1] *See* J. Thomas McCarthy, *The Rights of Publicity and Privacy* § 6:8 (2d ed. 2007) [hereinafter "McCarthy"].

First, Plaintiffs lack standing to challenge, and this Court lacks jurisdiction to consider, the constitutionality of Section 3344.1. In federal courts, standing is jurisdictional, and injury is a prerequisite. Nevertheless, in their Motion, Plaintiffs fail to assert any cognizable constitutional injury caused by the operation of Section 3344.1. Although Marilyn Monroe LLC contends that Section 3344.1 is controlling with respect to its right of publicity claim, Plaintiffs dispute this contention. They claim that New York law applies. On this issue, Marilyn Monroe's domicile is clearly decisive, but as yet undecided. Until a jury determines that Ms. Monroe was domiciled in California at the time of her death, Plaintiffs cannot claim any injury by operation of Section 3344.1. Absent some such injury, this Court lacks jurisdiction to consider the issues raised by Plaintiffs' Motion.

Second, any claim that SB 771 itself is unconstitutional has already been rejected *twice* in lengthy opinions authored by United States District Judge Margaret Morrow of the Central District of California. The Ninth Circuit Court of Appeals has also rejected an entreaty to review the claim that SB 771 is unconstitutional by summarily denying a mandamus petition.

Third, setting aside the threshold standing issue, Plaintiffs have not established that either SB 771 or Section 3344.1 (as clarified by SB 771) is unconstitutionally retroactive.

Indeed, this Court has never even authorized Plaintiffs to challenge the constitutionality of Section 3344.1. As the very title of Plaintiffs' Motion reflects, this Court granted Plaintiffs permission to challenge only the constitutionality of SB 771, effective January 1, 2008. It did *not* authorize Plaintiffs to bring a motion questioning the constitutionality of California's original

1985 post-mortem publicity rights statute or the 1999 amendments thereto. *See* November 30, 2007, Disposition Order.[2]

Notably, Plaintiffs did not assert that Section 3344.1 was unconstitutional in the summary judgment motion they brought. That summary judgment motion (which led to this Court's May 2, 2007, Order) was filed before the passage of SB 771 and could have raised the same unconstitutionality claim concerning Section 3344.1 that is only now being presented by this Motion.

Nevertheless, as the relevant legislative history and Judge Morrow's opinions make clear, SB 771 merely clarified Section 3344.1. Under settled law, amendments which operate to clarify preexisting law have no retroactive application. This is because, properly understood, they do not effect any change of law. They simply re-state that law as it always was.

Nor is Section 3344.1, as clarified by SB 771, unconstitutionally retroactive. Section 3344.1 merely vests beneficiaries or heirs of deceased personalities with the ability to control the commercial exploitation of those personalities' identities. It does not, however, create any new rights. It simply affirms that California's long-recognized lifetime publicity rights continue for a term of years beyond death and establishes a statutory remedy in the event those rights are violated. In any event, Marilyn Monroe LLC's right of publicity claim does not concern the period preceding enactment of Section 3344.1. All of the events at issue here post-date the

---

[2] The November 30, 2007, Disposition Order provides, in relevant part: "[T]he State of California recently passed a statute that purports to confer property rights on a dead person that were not possessed by that dead person at the time of her demise. . . . [I]f there is going to be any attack against the California statute on any legal ground, I want to be told that now and I want to know what the ground of attack is going to be, so that we can set an appropriate briefing schedule. I want to resolve all issues surrounding the *newly-passed California statute*." Docket No. 138 [emphasis added].

enactment of Section 3344.1 by decades. These events cannot form the basis of any viable retroactivity challenge.

For each of these reasons, Marilyn Monroe LLC respectfully requests that the Motion be denied.

## II.    STATUTORY AND PROCEDURAL BACKGROUND

### A.    <u>California's Right of Publicity</u>.

The right of publicity is the "inherent right of every human being to control the commercial use of his or her identity." McCarthy, *supra*, § 1:3. The origins of the publicity right lie within the older right of privacy. *Id.* at § 1:4.

For more than 75 years, California courts have recognized a common law right to control the commercial use of one's persona. *Melvin v. Reid*, 112 Cal.App. 285 (Cal. Ct. App. 4th Dist. 1931) was a seminal case in California's recognition of a publicity right in one's persona. In that case, defendant exhibited a movie called "The Red Kimono," which depicted the life of a former prostitute who had been tried for murder, and acquitted seven years earlier. *Id.* at 286-287. The movie depicted plaintiff's murder trial and used her maiden name. *Id.* at 287. As a result, plaintiff contended that the film disrupted her new life by disclosing her past experience to the world. *Id.* Although the California Court of Appeal declined to find that the use of incidents from plaintiff's public past was actionable, it held that the film's use of her *name* in connection with those events "together with their advertisements" was an invasion of her right of privacy. *Id.* at 291

California's recognition of the right of publicity grew over time. *See, e.g., Kerby v. Hal Roach Studios*, 53 Cal.App.2d 207, 210 (Cal. Ct. App. 2d Dist. 1942) (where actress' name was appropriated in an advertisement which "cast doubt on her moral character," the court spoke of compensation for injury to her feelings); *Fairfield v. Am. Photocopy Equip. Co.*, 138 Cal.App.2d

82, 88 (Cal. Ct. App. 2d Dist. 1955) (an attorney whose name, personality, and endorsement had been appropriated in an advertisement was compensated "for injury to his peace of mind and to his feelings"). During her lifetime, Marilyn Monroe exploited her own right of publicity by appearing, for example, in multiple advertisements for a variety of commercial products. (Declaration of Douglas E. Mirell in Opposition to Motion ("Mirell Decl."), ¶ 14, Ex. M.) In 1972, the right of publicity was codified as California Civil Code Section 3344. (1971 Cal. Stat. ch. 1595.)

**B.    Section 3344.1 (formerly Section 990).**

In *Lugosi v. Universal Pictures*, 25 Cal.3d 813 (Cal. 1979), the California Supreme Court concluded that Bela Lugosi's right of publicity in his persona as Count Dracula terminated at his death. *Id.* at 818-820. Unfortunately, it did not provide a clear explanation of the basis for this conclusion. *Id.* at 819-820. As a result, two competing, mutually-exclusive interpretations emerged. *Id.* at 822; McCarthy, *supra*, § 9:20, pp. 433-434. Some understood *Lugosi* to mean that in California the common law right of publicity terminates at death. *Id.*; *see Groucho Marx Prods., Inc. v. Day and Night Co., Inc.*, 689 F.2d 317, 323 (2d Cir. 1982). Others understood it to mean that the right of publicity descended on death, but only where it was exploited by the decedent during his or her lifetime. *Id.*

In response to this confusion and to resolve any uncertainty, the California Legislature enacted Civil Code Section 990, which became effective on January 1, 1985. McCarthy, *supra*, § 9:20, pp. 433-434. It established that, notwithstanding any contrary suggestion in *Lugosi*, deceased persons did in fact have the ability to control the unauthorized exploitation of their personas for a period of 50 years after death, and affirmed that this post-mortem right of publicity was a property right, fully transferable by contract, will or trust before or upon death. *Id.*

Importantly, in a letter dated September 17, 1984, the Legislative Counsel of California[3] advised California's then-Governor, George Deukmejian, that it had reviewed Senate Bill 613 ("SB 613") – the legislation that ultimately became Section 990 – and, based on that review, concluded that it was constitutional.  (1984 Cal. Stat. ch. 1704; Mirell Decl., ¶2, Ex. A.)

In 1999, Section 990 was amended and renumbered as Section 3344.1.  McCarthy, *supra*, § 9:20, pp. 434-435.  Among other things, Section 3344.1 expanded the duration of the statutory right of publicity from 50 to 70 years following death. *Id.*; 1999 Cal. Stat. ch. 998.

For the past 23 years, no one has ever mounted a challenge – successful or otherwise – to the constitutionality of Sections 990 or 3344.1 on retroactivity grounds.  Indeed, Plaintiffs themselves never before questioned the constitutionality of this statute – including in their summary judgment motion that became the basis of this Court's May 2, 2007 decision – until now. *See* Docket Nos. 55, 89.

C.    **Court Orders in This Action and the California Action.**

In an Order dated May 2, 2007, this Court held that "Ms. Monroe did not have any postmortem right of publicity under the law of any relevant state" and concluded that "any publicity rights she enjoyed during her lifetime were extinguished at her death by operation of law." *See* Docket No. 106 [at p. 9].

In a parallel proceeding – *The Milton Greene Archives, Inc. v. CMG Worldwide, Inc, et al.*, USDC Case No. CV 05-2200 (the "California Action") – the District Court for the Central District of California reached a similar conclusion on May 14, 2007.  It held that "Marilyn Monroe could not have devised a non-statutory right of publicity, and also could not have

---

[3] The Office of Legislative Counsel is a nonpartisan public agency that drafts legislative proposals, prepares legal opinions, and provides confidential legal services to the California Legislature and other public officials. *See* http://www.leginfo.ca.gov/legcnsl.html.

devised subsequently created statutory rights that did not come into existence until decades after her death." (Mirell Decl., ¶9, Ex. H [at 3:6-9].)  However, it did so with some reluctance.  After noting that many personalities, who died before enactment of the California post-mortem right of publicity statute, left their residuary estates to charities, the court expressed concern that these charities would be "divested" of those rights as a consequence of its order.  (*Id.* [at 36:15-18 and n. 80].)  Based on this concern, the District Court invited the California Legislature to clarify its original intention.  (*Id.*, [at 36:18-20]; *see also id.* [at n. 38] ("This is not to say that the California or Indiana legislature could not vest a posthumous right of publicity *directly* in the residuary beneficiaries of a predeceased personality's estate, or in the successors-in-interest of those residuary beneficiaries" [emphasis in original].)

### D.     The Enactment of SB 771.

Following these Orders, the California Legislature moved swiftly to pass SB 771 without a single negative vote in any committee or on the floors of either the State Senate or State Assembly.[4]  On October 10, 2007, Governor Arnold Schwarzenegger signed SB 771; it became effective on January 1, 2008.  (*Id.*, ¶5, Ex. D; 2007 Cal. Stat. ch. 439.)

In passing SB 771, the California Legislature made clear that it was doing nothing more than clarifying Section 3344.1:

> [T]his bill is necessary to clarify the Legislature's intent, when it enacted Civil Code 3344.1 (then 990 of the Civil Code) in 1984 to create post-mortem publicity rights for celebrities, to extend those rights back to 50 years from the date the statute became effective and to enable the transfer of such rights to the deceased

---

[4] The Senate Bill Analysis for SB 771 expressly states that "[i]t is the intent of the Legislature to abrogate the summary judgment orders entered in The Milton Greene Archives, Inc. v. CMG Worldwide, Inc., United States District Court, Central District of California, Case No. CV 05-2200 MMM (MCx), filed May 14, 2007, and in Shaw Family Archives Ltd. v. CMG Worldwide, Inc., United States District Court, Southern District of New York, Case No. 05 Civ. 3939 (CM), dated May 2, 2007." (*Id.*, ¶5, Ex. D; ¶7, Ex. F [at p. 3].)

> personality's designated beneficiaries. This legislative intent, according to the
> sponsor of the bill, was further evidenced by the Legislature's amendments to the
> statute in 1999, extending the protection of 3344.1 even further back to 70 years
> from the date the statute first became effective.

(Mirell Decl., ¶6, Ex. E [at p. 4].)

This original intention was further confirmed by retired State Senator Bill Campbell – the

author of the 1985 legislation creating a post-mortem right of publicity –in a letter he drafted in

support of SB 771. (*Id.*, ¶8, Ex. G.) In that letter, addressed to the author of SB 771, Senator

Campbell wrote:

> As the author of landmark legislation that was enacted as California's civil code
> Section 3344.1 in 1985, I wanted to write and commend you for your introduction
> of legislation to clarify that law's intent. At no time did I or any of the bill's
> supporters anticipate only prospective application of this important right of
> publicity for deceased celebrities. In point of fact, the overwhelming testimony
> on my bill throughout the legislative process came from heirs or representatives of
> celebrities who had already past [sic], such as, the widow of Elvis Presley, the son
> of John Wayne, and the grandson of WC Fields.

(*Id.*)

SB 771 clarified Section 3344.1 in three important ways. First, it affirmed that Section

3344.1 had *always* defined a "deceased personality" as any "natural person who has died within

50 [later 70] years prior to January 1, 1985," and further affirmed that a posthumous right of

publicity was "deemed to have existed at the time" of their death. (*Id.*, ¶6, Ex. E [at p. 5].)

Second, SB 771 explained that, in the absence of an express provision in a will or other

testamentary instrument that transfers the publicity right of a deceased personality, "disposition

of the publicity right[] would be in accordance with the disposition of the residue of the deceased

personality's assets." (*Id.*) Third, it clarified that the post-mortem publicity right is, and had

always been, freely descendible by means of a will, trust or any other testamentary instrument

executed before or after January 1, 1985. (*Id.*)

As it had done with SB 613 (the legislation that created former Section 990), the

Legislative Counsel of California advised Governor Schwarzenegger that it had reviewed SB 771

and, based on that review, concluded that it was constitutional. (Mirell Decl., Ex. L.)

E.    **Reconsideration of the May 14, 2007, Order in the California Action.**

Based on the passage of SB 771, Marilyn Monroe LLC filed a motion for reconsideration

in the California Action on November 21, 2007. (*Id.* at ¶10.) In this motion, Marilyn Monroe

LLC requested that the District Court reconsider its determination that Marilyn Monroe could

not have devised her post-mortem right of publicity by means of the residuary clause of her will.

(*Id.*).

The Milton H. Greene Archives, Inc. ("Greene") and Tom Kelley Studios, Inc. ("Kelley")

opposed this motion. (*Id.* at ¶11, Ex. J [at 7:10-:20].) They argued that SB 771 effected an

unconstitutional taking of property by removing ownership of the statutory right of publicity

from a deceased personality's heirs and vesting it in the residuary beneficiaries under the

personality's will. (*Id.*) They also argued that SB 771 was an unconstitutional interference with

contracts between third parties and statutory heirs (or those who were freely entitled to use the

deceased personality's right of publicity because that personality did not have any statutory

heirs). (*Id.*) After evaluating these arguments and concluding that Greene and Kelley did not

"identify any due process concerns that arise from the fact that §3344.1 applies retroactively to

celebrities who died prior to January 1, 1985," (*id.* at ¶10, Ex. I [at p. 23 n. 36]), the Court

granted Marilyn Monroe LLC's motion for reconsideration and vacated its May 14, 2007 Order.

(*Id.*) Judge Morrow (1) reasoned that "SB 771 clearly expressed the California legislature's

intent to clarify § 3344.1 as originally enacted" (*id.* [at 5:23-25]); (2) observed that SB 771 had

been passed promptly after entry of her summary judgment order (*id.* [at 5:26-6:2]); and (3)

concluded that SB 771 clarified existing law by pronouncing that the right of publicity of a

personality who died before January 1, 1985, "was deemed to have existed at the time that personality died, and could pass through the residual clause of her will." (*Id.* [at 6:15-17].)

In response to the District Court's Order granting reconsideration and vacating summary judgment, on January 14, 2008, Greene and Kelley filed a motion requesting authorization to immediately appeal that ruling. (*Id.*, ¶11, Ex. J.) In this request, Greene and Kelley again challenged SB 771 on constitutional grounds. (*Id.*) After affirming that Greene and Kelley had failed to identify any due process concerns, the District Court denied this motion on January 22, 2008. (*Id.*)

On January 28, 2008, Greene and Kelley petitioned the Ninth Circuit Court of Appeals for a writ of mandamus seeking a reversal of the District Court's order granting reconsideration and vacating summary judgment. The Ninth Circuit denied this petition on February 21, 2008. (*Id.*, ¶12, Ex. K.)

## III.    ARGUMENT

### A.    Plaintiffs Lack Standing To Challenge the Constitutionality of California's Post-Mortem Right of Publicity Statute.

Unless and until a jury determines that Marilyn Monroe was a California domiciliary at the time of her death, Plaintiffs lack standing to challenge the constitutionality of SB 771 or Section 3344.1, as clarified by SB 771.

Although Plaintiffs appear to insist that Section 3344.1 is unconstitutional in the abstract, this is insufficient to create standing. Under settled law, a court may not scrutinize the constitutionality of a statute as applied to "hypothetical cases thus imagined." *United States v. Raines*, 362 U.S. 17, 22 (1960). This is because Article III, section 2 of the United States Constitution confines the federal courts to adjudicating actual "cases" and "controversies." *See, e.g., Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 184 (1999) ("It is,

however, an established part of our constitutional jurisprudence that we do not ordinarily reach

out to make novel or unnecessarily broad pronouncements on constitutional issues when a case

can be fully resolved on a narrower ground"); *United States Nat'l Bank v. Independent Ins.*

*Agents of Am.*, 508 U.S. 439, 448 (1993) (noting that "[t]he exercise of judicial power under Art.

III of the Constitution depends on the existence of a case or controversy," and that "a federal

court [lacks] the power to render advisory opinions"); *Raines*, 362 U.S. at 21-22 (holding that

federal courts lack jurisdiction to pronounce any state or federal statute unconstitutional, unless

they are called upon to adjudge the legal rights of litigants in actual controversies).

Furthermore, as a prudential matter, this Court may not address constitutional issues –

particularly those that require interpretation of a foreign state's law – unless absolutely

necessary. *See Christopher v. Harbury*, 536 U.S. 403, 417 (2002) (noting that it is an "obligation

of the Judicial Branch to avoid deciding constitutional issues needlessly"); *Polk Co. v. Glover*,

305 U.S. 5, 10 (1938) (noting "[t]he salutary principle that the essential facts should be

determined before passing upon grave constitutional questions"); *United States v. Sandoval-*

*Lopez*, 122 F.3d 797, 802 n.9 (9th Cir. 1997) ("We avoid constitutional questions when an

alternative basis for disposing of the case presents itself," citing *Ashwander v. Tennessee Valley*

*Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring)).  No such compelling necessity

presents itself here.

This Court need not reach questions of constitutionality unless it is absolutely necessary

to do so.  Under California law, the law of the jurisdiction in which the decedent was domiciled

at the time of death is controlling with respect to the existence of a post-mortem right of

publicity.  *See Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1149 (9th Cir. 2002).  Accordingly,

until a jury determines that Ms. Monroe was domiciled in California at the time of her death,

Plaintiffs have no basis for seeking to adjudicate, and this Court lacks jurisdiction to consider, the constitutionality of SB 771 or Section 3344.1.[5]

For this constitutional reason alone, the Motion should be denied.

**B.    California's Post-Mortem Right of Publicity Statute Is Not Unconstitutional.**

"Wherever possible, statutes must be interpreted in accordance with constitutional principles." *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 108 (1946). Accordingly, as the parties challenging the constitutionality of SB 771 and Section 3344.1, Plaintiffs bear the burden of persuasion. *See Lujan v. G & G Fire Sprinklers*, 532 U.S. 189, 198 (2001), *reh'g denied,* 533 U.S. 912 (2001). They have not met that burden here. As set forth below, a law is only retroactive where it attaches new legal consequences to conduct or transactions *already completed. Landgraf v. Usi Film Prods.*, 511 U.S. 244, 280 (1994). As applied to Plaintiffs, neither SB 771 nor Section 334.1 has any retroactive effect.

**1.    SB 771 Does Not Operate Retroactively, As It Merely Clarified Existing Law.**

"A statute has retrospective effect when it substantially changes the legal consequences of past events." *Western Security Bank, N.A. v. Superior Ct.*, 15 Cal.4th 232, 234 (1997) (citing *Kizer v. Hanna*, 48 Cal.3d 1, 7 (Cal. 1989)). A statute or amendment to a statute that clarifies preexisting law, or otherwise affirms an original legislative intent, does not effect any change in

---

[5] Moreover, the opinions expressed in the various documents appended as Exhibits E, F and G to the Declaration of Christopher Serbagi filed in support of Plaintiffs' Motion concerning the existence or non-existence of Marilyn Monroe's post-mortem right of publicity all turn exclusively on the question of whether Ms. Monroe was a New York domiciliary at the time of her death. These exhibits thus serve only to further confirm the impropriety of having this Court rule upon the constitutionality of either Section 3344.1 or SB 771 unless and until it is determined that Ms. Monroe was a California domiciliary at the time of her death.

the law. Rather, it states the law as it always was. In such cases, "no question of retroactive application is involved." *Id.*; *In re Marriage of Fellows*, 39 Cal.4th 179, 183 (Cal. 2006) (quoting *Riley v. Hilton Hotels Corp.*, 100 Cal.App.4th 599, 603 (Cal. Ct. App. 2d Dist. 2002)) (observing that a clarifying statute "'may be applied to transactions predating its enactment without being considered retroactive' because it 'is merely a statement of what the law has always been.'"); *Re-Open Rambla v. Bd. of Supervisors,* 39 Cal.App.4th 1499, 1511 (Cal. Ct. App. 2d Dist. 1995) (citation omitted) (rejecting argument that legislation intended to abrogate case changed the law, rather than clarified it).

In the California Action, Judge Morrow clearly concluded that SB 771 expressed the California Legislature's intent to clarify Section 33441 as originally enacted. (Mirell Decl., Ex. I [at 5:23-25].) This conclusion, rendered by a federal court sitting in California on a matter of California law, is entitled to deference. *See United States v. Fernandez-Antonia*, 278 F.3d 150, 162 (2d Cir. 2002); *see Allstate Ins. Co. v. Serio*, 261 F.3d 143, 150 (2d Cir. 2001).

In any event, there can be no doubt that SB 771 clarified the original meaning of California's post-mortem right of publicity statute.

First, the California Legislature unequivocally expressed its intention to clarify existing law. This expression is entitled to deference. *See Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1080 (9th Cir. 2005) ("In this case, the California legislature made clear that in its view the amendment constituted a clarification and not a substantive change"). It is also confirmed by the fact that SB 771 did not broaden the scope of the post-mortem right of publicity in any respect. Rather, it clarified that the statutory publicity right embraced personalities who predeceased its passage, and confirmed the means by which their rights were transferable or descendible.

Second, SB 771 was enacted shortly after this Court entered its order interpreting section 3344.1. "'[W]here [an] amendment [is] adopted soon after [a] controversy arose concerning the proper interpretation of the statute,'" a court should construe that amendment as a "'legislative declaration of the meaning of the original act.'" *Western Security Bank*, 15 Cal.4th at 243 (quoting *RN Review for Nurses, Inc. v. State of California,* 23 Cal.App.4th 120, 125 (Cal. Ct. App. 1st Dist. 1994).

Third, SB 771 sought to clarify section 3344.1 to resolve an ambiguity perceived by this Court about whether celebrities who predeceased the enactment of section 3344.1 were deemed to hold a descendible, transferable post-mortem right of publicity at the time of their death. (Mirell Decl., ¶6, Ex. E [at p. 4].) Although SB 771 revised the expression of the statutory post-mortem right of publicity, it did not effect any change to existing law. *See Western Security Bank*, 15 Cal.4th at 243 (holding that a change was a clarification of existing law despite the addition of two sections by amendment); *Plotkin v. Sajahtera, Inc.*, 106 Cal.App.4th 953, 961 n. 3 (Cal. Ct. App. 2d Dist. 2003) ("The amendment's substantial narrowing of the definition of 'vehicle parking facility' does not necessarily preclude a finding that it merely clarifies, rather than changes, existing law").

Fourth, the Senate Judiciary Committee specifically examined SB 771 on constitutional grounds and concluded that SB 771 "would not create a new 'retroactive' effect of 3344.1." (Mirell Decl., ¶6, Ex. E [at 6-8].) In reaching this conclusion, the Committee revisited both the original enactment of Section 3344.1 in 1985 (then Section 990) as well as its own prior analysis of Senate Bill 209, enacted in 1999 to extend the retroactive term of protection of Section 3344.1 for an additional 20 years. (*Id.*) California's Legislative Counsel similarly confirmed to Governor Schwarzenegger that SB 771 was constitutional. (*Id.*, ¶13, Ex. L.)

For each of these reasons, SB 771 was a clarifying legislative act without any retroactive effect.

### 2. This Court Has Not Authorized Plaintiffs To Challenge the Constitutionality of Section 3344.1.

In its November 30, 2007, Disposition Order, this Court granted Plaintiffs permission to challenge the constitutionality of SB 771, effective January 1, 2008. Docket No. 138. It did not, however, authorize Plaintiffs to bring a motion challenging – for the first time in this litigation – the constitutionality of California's *original* 1984 post-mortem publicity rights statute or the 1999 amendments thereto. *See id.* Indeed, the Court's Disposition Order, dated November, 30, 2007, provides, in relevant part:

> [T]he State of California recently passed a statute that purports to confer property rights on a dead person that were not possessed by that dead person at the time of her demise. . . . [I]f there is going to be any attack against the California statute on any legal ground, I want to be told that now and I want to know what the ground of attack is going to be, so that we can set an appropriate briefing schedule. I want to resolve all issues surrounding the *newly-passed California statute.* [Emphasis added.]

*Id.* In so doing, the Disposition Order narrowly authorizes limited briefing as to the constitutionality of SB 771 – *i.e.*, the legislation referred to as the "newly-passed California statute." *Id.* In their Motion, Plaintiffs exceed the scope of this narrow authorization – a fact apparent from their Motion's very title.

The impropriety of Plaintiffs' belated attack upon the constitutionality of Section 3344.1 is further manifested by their failure to make this claim in the summary judgment motion they brought in 2006. That motion (which led to this Court's May 2, 2007, Order) was filed before the passage of SB 771 and could have raised the same unconstitutionality claim concerning Section 3344.1 that is only now being presented for the first time in this Motion.

### 3.    As Applied to Plaintiffs, Section 3344.1 Does Not Operate Retroactively.[6]

Assuming this Court is disposed to entertain Plaintiffs' unauthorized challenge to Section 3344.1, that challenge fails on its merits.

Plaintiffs' contention that Section 3344.1, as originally enacted, was somehow ambiguous in its expression of a retroactive intent is now moot. Section 3344.1, as clarified by SB 771, is clearly intended to vest a posthumous right of publicity in personalities who died prior to its original enactment in January 1, 1985. Although Plaintiffs contend that Section 3344.1 thus vested new rights in deceased personalities, Plaintiffs are wrong. Section 3344.1 merely affirms that lifetime publicity rights – long recognized in California by common law and statute – are deemed to continue for a term of years beyond death. It further establishes a statutory remedy in the event those rights are violated.

Setting aside the above, even if Section 33441.1, as clarified, might arguably raise constitutional concerns as applied to individuals who used a deceased personality's image prior to 1985, that issue is simply not implicated here. *See Christopher v. Harbury*, 536 U.S. 403, 417 (2002) (noting "obligation of the Judicial Branch to avoid deciding constitutional issues

---

[6] To the extent Plaintiffs also purport to mount a facial challenge to the constitutionality of Section 3344.1, that effort is unavailing. "[A] holding of facial invalidity expresses the conclusion that the statute could never be applied in a valid manner." *City Council v. Taxpayers for Vincent*, 466 U.S. 789, 797-98 (1984); *see also Weissman v. Fruchtman*, 700 F.Supp. 746, 752 (S.D.N.Y. 1988), *reh'g denied*, 124 F.R.D. 599 (S.D.N. Y. 1989) ("courts will not invalidate a statute on its face simply because it *may* be applied unconstitutionally, but only if it *cannot* be applied consistently with the Constitution.") (quoting *Robinson v. State of New Jersey*, 806 F.2d 442, 446 (3d Cir. 1986)). Even if, assuming *arguendo*, Section 3344.1 might be unconstitutionally retroactive as applied to individuals using a deceased personality's image prior to 1985, it cannot possibly be unconstitutionally retroactive as applied to individuals using a deceased personality's image after 1985. Accordingly, no facial challenge to Section 3344.1 can be maintained.

needlessly"); *United States v. Sandoval-Lopez*, 122 F.3d 797, 802 n.9 (9th Cir. 1997) ("We avoid

constitutional questions when an alternative basis for disposing of the case presents itself"). As

to Marilyn Monroe LLC's right of publicity claim, the events at issue in this case – the sale of a

T-shirt bearing Ms. Monroe's likeness in an Indiana Target store, and the operation of a website

selling licenses to commercially exploit Ms. Monroe's likeness – occurred decades after Section

3344.1 was first enacted.[7]   Accordingly, as applied here, Section 3344.1 cannot possibly be

understood to attach new legal consequences to past events.

### 4.   Even if Section 3344.1 Might Operate Retroactively As Applied to Plaintiffs, It is Not Unconstitutional.

A law is not unconstitutional simply because it operates retroactively. *See League v.

Texas*, 184 U.S. 156, 161 (1902) (holding that the mere fact that a statute is retroactive in its

operation does not make it repugnant to the United States Constitution); *Robertson v. Willis*, 77

Cal.App.3d 358, 365 (Cal. Ct. App. 2d Dist. 1978) ("All retrospective legislation is not invalid

merely because it operates as such").

A retroactive law is only unconstitutional where it: (1) constitutes an *ex post facto* law;

(2) impairs the obligation of a contract; or (3) deprives a person of a vested right or substantially

impairs that right, thereby denying due process. *Id.*; *see Landgraf v. Usi Film Prods.*, 511 U.S.

244, 266 (1994); *In re Marriage of Hilke*, 4 Cal.4th 215, 222 (Cal. 1992) ("Retroactive

legislation may not be applied when it constitutes an ex post facto law or an impairment of an

existing contract, or when to do so would impair a vested property right without due process of

law").

---

[7] Moreover, any attempt to make a claim based upon actions occurring before 1985 would have been barred two decades ago by California's two-year statute of limitations. *See* California Code of Civil Procedure § 335.1.

Beyond their failure to demonstrate that Section 3344.1 (formerly Section 990) or SB 771 created any new rights whatsoever – as opposed to simply providing an enforcement mechanism for the infringement of rights that already existed – Plaintiffs make no attempt to establish the existence of any of the three above-identified circumstances here.

      **(a)**    **The Constitutional Prohibition Against *Ex Post Facto* Laws Does Not Apply To Section 3344.1.**

Although Plaintiffs do not appear to contend that Section 3344.1 violates the *ex post facto* clauses of the United States and California constitutions, to the extent they do, Plaintiffs are wrong.

The United States Constitution contains two *Ex Post Facto* Clauses which together prohibit the federal government and the States from enacting laws with certain retroactive effects.  Art. I, § 9, cl. 3 (Federal Government); Art. I, § 10, cl. 1 (States).  These clauses apply exclusively to penal statutes. *Kansas v. Hendricks*, 521 U.S. 346, 370 (1997); *see generally Calder v. Bull*, 3 U.S. 386 (1798); *Fletcher v. Peck*, 10 U.S. 87, 138 (1810); *Harisiades v. Shaughnessy*, 342 U.S. 580, 594-95 (1952).  So too does California's *Ex Post Facto* Clause (Article I, Section 9).  *People v. Hoyos*, 41 Cal.4th 872, 890 (Cal. 2007); *People v. Rathert*, 24 Cal.4th 200, 209 (Cal. 2000); *People v. Blakeley*, 23 Cal.4th 82, 91 (Cal. 2000); *Murrill v. State Board of Accountancy*, 97 Cal.App.2d 709, 711 (Cal. Ct. App. 2d Dist. 1950).

Because Section 3344.1 is not a penal statute, it cannot possibly raise any *ex post facto* concerns here.

      **(b)**    **None of Plaintiffs' Contractual Relationships Has Been Impaired.**

The United States Constitution provides that "[n]o state shall . . . pass any . . . Law impairing the Obligation of Contracts."  U.S. Const. art. I, § 10.  The California Constitution contains a similar guarantee.  It provides that a "law impairing the obligation of contracts may

not be passed." Cal. Const. art. I, § 9. The underlying purpose of these clauses is to protect the

expectation of contracting parties from *unreasonable disruption* by subsequent changes to the

law. They do not otherwise prohibit States from repealing or amending statutes. *See Energy*

*Partners Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 410 (1983)

("Although the language of the Contract Clause is facially absolute, its prohibition must be

accommodated to the inherent police power of the State . . ."); *United States Trust Co. v. New*

*Jersey*, 431 U.S. 1, 17 (1977). Nor do they prohibit States from enacting legislation with

retroactive effects. *Id.*

 In evaluating a claim that a State has violated the Contracts Clause, a court must

determine whether the change in law has operated to substantially impair a contractual

relationship. *Energy Partners Reserves Group, Inc*, 459 U.S. at 411; *Allied Structural Steel v.*

*Spannaus*, 438 U.S. 234, 244 (1978). This inquiry has three components: (1) whether there is a

contractual relationship; (2) whether a change in law impairs that contractual relationship; and

(3) whether the impairment is substantial. *See General Motors Corp. v. Remein*, 503 U.S. 181,

185-86 (1992). Where a substantial impairment is found, the court must then determine whether

there is a legitimate public purpose for the regulation, such as remedying broad social and/or

economic problems. *See Energy Partners Reserves Group, Inc*, 459 U.S. at 411-412.

 In this case, Plaintiffs have not identified a single contract, *predating January 1, 1985*,

which they believe is unconstitutionally impaired by Section 3344.1.[8] Absent such a contract,

---

[8] It is well settled that contracts postdating the law in question cannot form the basis for a Contract Clause claim. *See Kinney v. Connecticut Judicial Dep't*, 974 F.2d 313, 315 (2d Cir. 1992) ("And, of course, the offending statute necessarily must be enacted after the contract in question has come into effect. A judicial decision that interprets a statute predating the contract in question cannot, therefore, trigger an unconstitutional interference.")

this Court cannot complete the first step of the Contracts Clause analysis, much less the second or third.[9] But even if Plaintiff had offered some evidence of an impaired contract, there can be no doubt that Section 3344.1 is reasonable and necessary to serve an important public purpose.[10]

Section 3344.1 advances two important interests: a dignitary interest in reputation and a property interest in controlling unauthorized (and potentially offensive) exploitations. (Mirell Decl., ¶7, Ex. F); *see* McCarthy, *supra*, §§1:3-1:6, pp. 3-8; *see generally* Charles Warren & Louis Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890). Where, as here, the private interest in controlling a name or image (and thereby preserving a lifetime's effort spent building a valuable reputation) is balanced against the private interest in unconstrained profiteering from the commercial exploitation of that name or image for potentially offensive and/or tawdry purposes, a legislature is free to weigh these competing interests and to impose a legislative balance. This Court must defer to that balance. *See Energy Partners Reserves Group, Inc*, 459 U.S. at 412-413.

---

[9] To the extent Plaintiffs seek to challenge Section 3344.1 on the ground that it may conceivably be unconstitutional as applied to others not before this Court, they do not have standing to do so. *See, e.g., Sabri v. United States*, 541 U.S. 600, 608-09 (2004) ("Although passing on the validity of a law wholesale may be efficient in the abstract, any gain is often offset by losing the lessons taught by the particular, to which common law method normally looks. Facial adjudication carries too much promise of 'premature interpretatio[n] of statutes' on the basis of factually bare-bones records"); *New York v. Ferber*, 458 U.S. 747, 767 (1982) ("The traditional rule is that a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court"); *United States v. Raines*, 362 U.S. 17, 21-22 (1960) (holding that federal courts lack jurisdiction to pronounce any state or federal statute unconstitutional, unless they are called upon to adjudge the legal rights of litigants in actual controversies).

[10] This test is fundamentally indistinguishable from traditional rational basis review. *See Universal Sanitation Corp. v. Trade Waste Comm'n of City of N.Y.*, 940 F. Supp. 656, 661 (S.D.N.Y. 1996).

(c)    **Section 3344.1 Does Not Impair Any "Vested Right"**
**Possessed By Plaintiffs.**

A substantial impairment of a vested right may constitute a "taking" of property without due process of law. However, "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). A vested right is one that is "fixed, settled, absolute and not contingent upon anything." *Quetel Corp. v. Columbia Communications Int'l, Inc.*, 787 F.Supp. 1, 5 (D.D.C. 1992). The mere expectancy of future benefits, or a contingent interest in property founded on the anticipated continuance of existing laws, does not constitute a vested right. *Resolution Trust Corp. v. Maplewood Investments*, 31 F.3d 1276, 1288 n. 24 (4th Cir. 1994).

In their Motion, Plaintiffs have not bothered to allege, much less prove, that any "vested rights" have been impaired by Section 3344.1. Instead, they vaguely assert that Section 3344.1 upsets certain settled expectations created by the pre-1985 absence of a statutory post-mortem right of publicity. This assertion is factually unsupported, wholly speculative and, in any event, legally misguided.

First, "[l]egislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations." *Carbon Fuel Co. v. USX Corp.*, 100 F.3d 1124, 1137 (4th Cir. 1996) (quoting *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 16, (1976)). This is true even though the legislation imposes a new duty or liability based on past acts. *Id.* Were the rule otherwise, government regulation would be impossible, and the economic status quo would be forever frozen.

Second, notwithstanding Plaintiffs' suggestion to the contrary, no vested right is created by the omission to legislate on a subject. *See Middleton v. Texas Power & Light Co.*, 249 U.S.

152, 162-163 (1919). Accordingly, Section 3344.1 does not offend principles of due process by affirming, for the first time in 1985, that Plaintiffs and others are prohibited from commercially exploiting, without authorization, a deceased personality's name, likeness or image. Under settled law, a vested right must be something more than a mere expectation founded on an anticipated continuance of existing law. *See Proprietors of Charles River Bridge v. Proprietors of Warren Bridge*, 36 U.S. 420, 540 (1837).

## V.    CONCLUSION

Based on the foregoing, Plaintiffs lack standing to challenge to the constitutional validity of Section 3344.1. Setting aside this standing issue, Plaintiffs' challenge simply lacks merit. For each of these reasons, Marilyn Monroe LLC respectfully requests that the Motion be denied.

Dated:  New York, New York
       March 13, 2008

LOEB & LOEB LLP

By: _____
    Barry I. Slotnick (BS-6234)
    Paula K. Colbath (PC-9895)
    Douglas E. Mirell (CA Bar No.
    094169), appearing *pro hac vice*

    345 Park Avenue
    New York, New York 10154
    (212) 407-4000

    Attorneys for Defendant
    Marilyn Monroe LLC