SENATE JUDICIARY COMMITTEE
Senator Ellen M. Corbett, Chair
2007-2008 Regular Session

SB 771                                                S
Senator Kuehl                                         B
As Amended August 30, 2007
Hearing Date: September 6, 2007                       7
Civil Code                                            7
GMO                                                   1

PURSUANT TO SENATE RULE 29.10

SUBJECT

Deceased Personalities: Transfer of Publicity Rights
By Testamentary Instrument

DESCRIPTION

The bill would clarify that existing law protecting a deceased personality's publicity rights applies to all those whose date of death was within 70 years preceding January 1, 1985, the effective date of the law that created post-mortem publicity rights for deceased personalities.

The bill would further clarify that in the absence of an express provision in a will or other testamentary instrument that effectively transfers the publicity rights of a deceased personality, disposition of the publicity rights would be in accordance with the disposition of the residue of the deceased personality's assets. Finally, the bill would clarify that the publicity rights transferred according to this statute are freely transferable or descendible by contract, trust, or any other testamentary instrument by any subsequent owner of the deceased personality's publicity rights.

The bill states the intent of the Legislature to abrogate two federal court decisions, The Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc. (U.S. District Court, Central District of California) and Shaw Family Archives Ltd. v. CMG Worldwide, Inc. (United States District Court, Southern

(more)

SB 771 (Kuehl)
Page 2 of ?

District of New York), both of which found that the California statute granting post-mortem publicity rights to deceased personalities does not apply to personalities who died prior to January 1, 1985.

## BACKGROUND

In 1984, California enacted what is now Civil Code 3344.1, to address the ruling in _Lugosi v. Universal Pictures_ (1979) 25 Cal.3d 813. The decision was interpreted by some as holding that a celebrity's right of publicity expired at death and thus the publicity rights that had not been used or exploited by the time of death of the celebrity defaulted to the public domain. When enacted, Civil Code 3344.1 recognized publicity rights as property rights that may be transferred, specified prohibited uses, and required the registration of those rights with the Secretary of State. An action to enforce rights protected by 3344.1 was required to be brought within 50 years of the death of the celebrity.

SB 209 (Burton, Ch. 988, Stats. 1999) was enacted to abrogate the Ninth Circuit's decision in _Astaire v. Best Film & Video_ (9th Cir. 1997) 116 F. 3d 1297, which held that the unauthorized use of Fred Astaire's image in a "how to" dance video was not prohibited by the statute. The amendments to 3344.1 deleted certain exceptions in the statute that had been relied on by the court in the _Astaire_ case and inserted language to distinguish between permissible use of the celebrity's likeness in works of art and entertainment (which the statute permitted) and use in connection with products, goods, and merchandise (which is prohibited without consent), and extended the period of protection provided by the statute from 50 years to 70 years after the death of the celebrity.

In May 2007, two federal courts (one in New York and the other in the Central District of California) interpreted California's post-mortem publicity rights statute as prohibiting publicity rights from passing under a deceased celebrity's will if that celebrity died before January 1, 1985 (the effective date of the statute enacting 3344.1).

SB 771 (Kuehl)
Page 3 of ?

Thus, the courts ruled, only statutorily listed heirs (using intestate succession rules) could enforce publicity rights: surviving spouse, children, grandchildren, and

parents.

SB 771 intends to clarify the Legislature's intent to make the protections under
3344.1 of the Civil Code applicable to deceased personalities who died between January 1, 1915 and January 1, 1985, the 70 year period of protection under the statute.

### CHANGES TO EXISTING LAW

_Existing law_ imposes liability on any person who uses without consent a deceased personality's name, voice, signature, photograph, or likeness on or in products, merchandise or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services for 70 years after the death of the personality. Consent may be provided by those persons to whom the right has been transferred by contract, trust, or other testamentary instrument, or, if no such transfer has been made, by the surviving spouse or other specifically listed heirs. Exceptions from the requirement of consent are uses such as in material that is of political or newsworthy value, or an advertisement or commercial announcement of the allowed uses. (Civil Code
3344.1. All references are to this Code unless otherwise indicated.)

_This bill_ would provide that 3344.1 applies to a deceased personality who died prior to January 1, 1985, the effective date of the statute that created the post-mortem publicity rights of a deceased personality.

_This bill_ would provide that the post-mortem publicity rights of the deceased personality vest in those persons entitled to those rights under a testamentary instrument of the deceased personality that was effective on the date of his or her death.

_This bill_ would provide that in the absence of an express transfer in a testamentary instrument, the deceased personality's rights to publicity would transfer in

SB 771 (Kuehl)
Page 4 of ?

accordance with the testamentary provision disposing of the residue of the personality's assets.

_This bill_ would provide that publicity rights established by this statute are freely transferable or descendible by contract, trust, or any other testamentary instrument by any subsequent owner of the deceased personality's rights.

This bill would not affect publicity rights that have been exercised by statutory heirs named in subdivision (d) prior to May 1, 2007 provided a challenge made in court by a beneficiary under subdivision (b) was unsuccessful. In this case, the bill would deem those rights vested in the statutory heirs who had exercised those rights.

COMMENT

1. Stated need for the bill

The author states this bill is necessary to clarify the Legislature's intent, when it enacted Civil Code 3344.1 (then 990 of the Civil Code) in 1984 to create post-mortem publicity rights for celebrities, to extend those rights back to 50 years from the date the statute became effective and to enable the transfer of such publicity rights to the deceased personality's designated beneficiaries. This legislative intent, according to the sponsor of the bill, was further evidenced by the Legislature's amendments to the statute in 1999, extending the protection of 3344.1 even further back, to 70 years from the date the statute first became effective.

Referring to the case of CMG Worldwide, Inc. v. Milton H. Greene Archives, LLC , supra , which involved a dispute over ownership of Marilyn Monroe's right of publicity, the author believes the court erred in ruling that Marilyn Monroe did not have those statutory rights when she died (she died in 1962 and left a designated beneficiary to receive the residue of her estate) and that therefore only her heirs as identified in the statute could exercise those rights. Since Marilyn Monroe left no heirs that qualified as a statutory heir under
 3344.1, the court held that her rights died with her

SB 771 (Kuehl)
Page 5 of ?

and nobody else has the right to control the use of her name, image, or likeness.

"There is nothing in the statute?that indicates the Legislature intended to treat people differently depending on whether they died before or after 1985. Moreover, California law has always strongly held that the courts should do whatever possible to avoid "intestacy" - that is a situation where the law defines who a person's assets should pass to at death because the decedent failed to do so by will or trust. Given that celebrities like Marilyn Monroe died with very clear testamentary documents about who should benefit from

113

their estates, it is even more important that the statute be clarified so that the law does not alter what our citizens clearly decided for themselves. Their intent about who should inherit their identities should be respected, and
[SB 771] would do just that," the author writes.

The court in CMG Worldwide Inc. did invite the Legislature to cure this defect in the statute by expressly making the statute applicable to deceased personalities who died prior to January 1, 1985, and vest the deceased personality's publicity rights in the residuary beneficiaries or their successors-in-interest, if the deceased personality left a will or other testamentary instrument.

2. Clarifying 3344.1

SB 771 would indeed clarify 3344.1 in several ways:

a) It would provide that the 3344.1 rights of publicity are property rights that are deemed to have existed at the time of death of any deceased personality who died prior to or after January 1, 1985.

b) It would provide that these rights are therefore transferable or descendible by contract, trust, or other testamentary instrument.

c) If the rights were not expressly transferred under a provision of the deceased personality's will or

SB 771 (Kuehl)
Page 6 of ?

other testamentary instrument, the rights are to be disposed under the residue provision of the testamentary instrument.

d) The rights established by this statute are freely transferable and descendible by contract, trust, or other testamentary instrument by any subsequent owner of these rights.

By clearly stating the above, SB 771 effectively abrogates the decisions of the two federal courts in the cases involving Marilyn Monroe's publicity rights. First, because Marilyn Monroe (MM) died in 1962, 23 years prior to January 1, 1985, under SB 771 she is deemed to have had those rights and could have transferred those rights by contract or will. Her will devised some money to several persons, and left the residue of her estate (which included "all the rest, residue and remainder of

114

[her] estate, both real and personal, or whatsoever nature and wheresoever situate, of which I shall die seized or possessed or to which I shall be in any way entitled?") to Lee Strasberg, her friend and acting coach. Thus, secondly, under SB 771, her post-mortem publicity rights are transferable through her will.

Third, because Marilyn Monroe's will did not expressly refer to any transfer of post-mortem publicity rights to a specific person, under SB 771 the rights are to be disposed as part of her residuary estate, to which Lee Strasberg is the beneficiary of 75%. And fourth, when Lee Strasberg, as subsequent owner of those Marilyn Monroe publicity rights, transferred them by will to his wife, Anna Strasberg, the transfer was permissible under 3344.1, according to SB 771. Anna Strasberg subsequently transferred her 75% interest (and so did the owner of the 25% interest), to MM LLC, which then licensed CMG to use the images and likenesses of Marilyn Monroe.

In support of this bill, the Screen Actors Guild writes: "Existing California law maintains that there is a cause for recourse and damages with the unauthorized use of a deceased personality's likeness. In recent years, it has become increasingly important to protect these rights in the face of increasing avenues of commercial

SB 771 (Kuehl)
Page 7 of ?

exploitation, while still taking care not to hamper the creative process. The passage of SB 771 will help to protect these public figures while still allowing for creative expression."

The proponents point out that other states have similar protections for post-mortem publicity rights, and that the statute proposed in New York, as currently drafted, would apply regardless of whether the celebrity died before or after the enactment date of the legislation.

To ensure that the federal court decisions are abrogated by passage of this bill, SB 771 contains legislative intent language to that effect. Additionally, SB 771 would preserve any 3344.1 rights conveyed or assigned by a deceased personality in his or her lifetime in any contract, regardless of whether the contract was entered into before, or after, January 1, 1985.

3.  <u>Does SB 771 create a retroactive effect not intended by the Legislature when it enacted 3344.1?</u>

Testimony on SB 613 (Campbell, Chapter 1704, Statutes of

115

1984), the bill that first enacted protections for deceased personalities' publicity rights, from the son of W.C. Fields, Priscilla Presley, and Burt Lancaster apparently convinced the committee and the Legislature that increasing protections for those rights, and ensuring their ability to pass those rights by testamentary instrument, were called for.

SB 771 contains express language that "[t]he rights recognized [under 3344.1] are expressly made retroactive, including to those deceased personalities who died before January 1, 1985." (Proposed 3344.1(p).)

In fact, SB 771 would not create a new "retroactive" effect of 3344.1 to sweep publicity rights of those personalities who died between January 1, 1915 to January 1, 1985 under its protection. The legislative history of 3344.1 shows that the original 50-year term of protection (under then 990) was drafted to mirror the term of protection provided in federal copyright law and that then 990 was enacted as the "likeness appropriation law" corollary to copyright law. In 1999,

SB 771 (Kuehl)
Page 8 of ?

when SB 209 was enacted, the federal copyright law had been extended by 20 years, hence the period of protection under 990/ 3344.1 was also extended 20 years for a total of 70 years.

The Senate Judiciary Committee analysis of SB 209 quoted the opponents of extending the right of publicity from 50 years to 70 years: "They (opponents) write, 'Extension of the right of publicity from 50 to 70 years further perpetuates the chilling effect of SB 209 by reaching back into history and removing from public view or subjecting to private control another 20 years worth of historical figures.'" The same analysis quoted the proponents to say that extension of the term of protection to 70 years after death of the celebrity is a necessary recognition of the "increased longevity of the personalities and their heirs; the trend toward rearing children late in life; unprecedented growth in technology over the last 20 years including the advent of digital media, the internet and other information infrastructures, which have greatly enhanced the marketability of creative works, and the growing international movement towards the adoption of a longer term for intellectual property."

Thus, the Legislature, by first providing for a 50-year term of protection in 1984 and then extending that protection to 70 years in 1999, intended to "reach back

into history" and protect the publicity rights of deceased personalities who died as far back as January 1, 1935 when the statute was first enacted, then to January 1, 1915 when SB 209 was enacted.

Under this analysis, there would be no protection for publicity rights of deceased personalities who died prior to January 1, 1915, since the right did not exist for them before that date (unless a new statute were to be passed to increase the term of protection to more than 70 years from 1985).

4. <u>Bill would have no effect where rights have been exercised by statutory heir and vested prior to May 1, 2007</u>

This bill would make the provisions of proposed

SB 771 (Kuehl)
Page 9 of ?

subdivision (b) of 3344.1 (specifying the manner by which these property rights are passed by contract or testamentary instrument) inapplicable where a statutory heir under subdivision (d) has taken action prior to May 1, 2007 to exercise the property rights protected by 3344.1, and the action was challenged unsuccessfully in a court action by a person who would be a beneficiary under subdivision (b). By this provision, the bill protects those cases that have been settled prior to the decisions in the two federal cases (<u>The Milton H. Green Archives, Inc. v. CMG Worldwide, Inc.</u>, <u>supra</u>, and <u>Shaw Family Archives Ltd. v. CMG Worldwide Inc.</u>, <u>supra</u>). The decisions were dated immediately after May 1, 2007. Thus, where a court, prior to May 1, 2007, has decided that the deceased personality's transferable or descendible property rights have vested in a statutory heir under subdivision (d), this bill would have no effect on that court decision. Where the court action may still be pending, however, the rights would not have vested in a subdivision (d) statutory heir, and this bill would apply.

5. <u>Support arguments</u>

Marilyn Monroe, LLC, the current holder of the publicity rights of Marilyn Monroe, states that the bill is needed to clarify that those publicity rights are transferable regardless of whether a personality died before or after January 1, 1985. "The Marilyn Monroe, LLC has carefully guarded the publicity rights of Marilyn Monroe's image in order to maintain her legacy as she intended?However, due to recent court decisions, Ms. Monroe's publicity rights could be released into the public domain only to result

117

in offensive and exploitive uses of her image? ."

John Wayne's son, president of Wayne Enterprises, writes that the use of John Wayne's name and likeness enables them to support the John Wayne Cancer Foundation and the John Wayne Cancer Institute. In addition, he writes, "[l]egislative protections regarding rights of publicity assist us in assuring that the use of John Wayne's personality is meaningful and appropriate."

Among other deceased personalities whose publicity rights provide support to worthwhile causes and charitable

SB 771 (Kuehl)
Page 10 of ?

institutions are Albert Einstein, Joan Crawford, Mae West, Edith Head, Janis Joplin, Alfred Hitchcock, Glenn Miller, Ozzie Nelson, Groucho Marx, and Bela Lugosi.

6.  Opposition from photographers

The committee received several identical letters from photographers who make their living taking photographs of celebrities, politicians, and other personalities. Some photographers are from out of state (New York, Minnesota, New Orleans, New Mexico, Florida) and Canada and a couple are from California. They object to the retroactive effect of SB 771, claiming that this would cause substantial damage to "any business that is based on photographs or reproductions of famous people" and that SB 771 is of "questionable constitutionality" and "is inherently unreasonable." They further claim that if enacted, SB 771 would "open the door to hundreds of lawsuits against every photographer, gallery, or publisher who has ever worked within today's law ?, would be detrimental to the state's already beleaguered treasury?[and] would cost millions to the taxpayers."

The committee staff's discussions with experts in intellectual property and copyright law on the "retroactive" effect of SB 771 are already reflected in Comment 3.

Another opponent, also representing professional photographers, suggested other changes to the statute that this bill does not address.

Support: AFSCME; Batjac Productions, Inc.; Bela G. Lugosi; California Labor Federation; Senator John Campbell (retired, author of California Publicity Rights Statute); Cecil B. DeMille Foundation; Corbis Corpordation; Elvis Presley Enterprises, Inc.; Experience Hendrix (Estate of Jimi Hendrix); The

118

> John Steinbeck Family Foundation; Chad McQueen;
> Marilyn Monroe, LLC; Motion Picture & Television
> Fund; Taylor & Faust (Trustee of the Second
> Residuary Trust of Alfred Hitchcock); Wayne
> Enterprises, L.P. (John Wayne Family Partnership);
> and 223 letters from members of the Screen Actors
> Guild

☐

SB 771 (Kuehl)
Page 11 of ?

Opposition:   OneWest Publishing; The Archives, LLC;
          Pacific Licensing; several lawyers and law firms;
                              38 letters from members of the America
          of Media Photographers; and 3 individuals

                           HISTORY

Source: Screen Actors Guild (sponsor)

Related Pending Legislation: None Known

Prior Legislation: SB 209 (Burton, Ch. 988, Stats. 1999)
(See Background)
                  SB 613 (Campbell, Ch. 1704, Stats. 1984)
(See Comment 3)

Prior Vote: Asm. Jud. (Ayes 10, Noes 0)
          Asm. Floor (Ayes 77, Noes 0)
          (Previous Senate votes not relevant.  This was a
gut-and-amend.)

                       **************