

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE MILTON H. GREENE ARCHIVES, INC., | CASE NO. CV 05-02200 MMM (MCx) |
| Plaintiff, | |
| v. | ORDER DENYING DEFENDANT'S MOTION FOR CERTIFICATION OF ORDER FOR IMMEDIATE APPEAL PURSUANT TO 28 U.S.C. § 1292(B) AND FOR STAY OF THE CASE |
| CMG WORLDWIDE, INC., an Indiana Corporation, and MARILYN MONROE, LLC, a Delaware Limited Liability Company, ANNA STRASBERG, an individual, | |
| Defendants. | |
| AND CONSOLIDATED ACTIONS | |

Defendant The Milton H. Greene Archives, Inc. ("MHG") seeks certification of the court's January 7, 2008 order granting plaintiff Marilyn Monroe, LLC's ("MMLLC") motion for reconsideration under 28 U.S.C. § 1292(b) so that it may take an immediate appeal to the Ninth Circuit. It also seeks a stay of the action pending resolution of the appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

1      On March 25, 2005, The Milton H. Greene Archives, Inc. filed this action against CMG

2  Worldwide Inc., Marilyn Monroe LLC, and Anna Strasberg.    On May 3, 2005, the court

3  consolidated the case with two other actions filed in this district – *Shirley De Dienes et al. v. CMG*

4  *Worldwide, Inc. et al.* (CV 05-2516)[1] and *Tom Kelley Studio, Inc. v. CMG Worldwide, Inc. et al.*

5  (CV 05-2568).[2]  On December 14, 2005, the court consolidated two additional actions with the

6  pending case – *CMG Worldwide, Inc., et al. v. Tom Kelley Studios* (CV 05-5973) and *CMG*

7  *Worldwide, Inc., et al. v. The Milton H. Green Archives, Inc.* (CV 05-7627).[3]  These actions were

8  originally filed by CMG Worldwide, Inc. and Marilyn Monroe, LLC (the "CMG Parties" or

9  "plaintiffs") in the United States District Court for the Southern District of Indiana, and were

10  transferred to this district pursuant to 28 U.S.C. § 1404(a) on August 9, 2005.[4]  All of the actions

11  seek to have the court resolve competing claims to ownership of the legal right to use, license, and

12  distribute certain photographs of Marilyn Monroe.

13      In their complaints against The Milton H. Green Archives, Inc. and Tom Kelley Studios, Inc.

14  (the "MHG Parties" or "defendants"), the CMG Parties assert that they own the "Right of Publicity

15  and Privacy in and to the Marilyn Monroe name, image, and persona" that was created by "the

16  Indiana Right of Publicity Act, I.C. § 32-36-1-1 et seq., and other applicable right of publicity laws."

17  The CMG Parties contend that defendants have infringed this right by using Marilyn Monroe's

18  name, image and likeness "in connection with the sale, solicitation, promotion, and advertising of

---

22      [1]The *De Dienes* action was dismissed without prejudice on February 2, 2006, pursuant to the

23  parties' stipulation.

24      [2]Tom Kelley Studio, Inc. sued the same defendants as did The Milton H. Greene Archive, Inc.

25  – CMG Worldwide Inc., Marilyn Monroe LLC, and Anna Strasberg.

26      [3]Anna Strasberg was not a party to the Indiana actions.

27      [4]On February 6, 2006, the court issued a scheduling order, which denominated the CMG

    Parties plaintiffs and the MHG Parties defendants for purposes of the consolidated actions.  The

28  court based this order on the fact that the CMG Parties' Indiana action was the first filed action.

1   products, merchandise, goods and services" without their consent or authorization.[5]

2        On October 6, 2006, the MHG Parties filed a motion for summary judgment. They argued,

3   *inter alia*, that plaintiffs' right of publicity claims were preempted by the Copyright Act, 28 U.S.C.

4   §§ 101-1332, and that, even if they were not preempted, plaintiffs had failed to adduce any evidence

5   that they had standing to assert claims based on Marilyn Monroe's right of publicity. In essence,

6   defendants argued that, even if a posthumous right of publicity in Monroe's name, image and

7   likeness exists, plaintiffs could not show that they were presently in possession of that right.

8        On May 14, 2007, the court granted defendants' motion for summary judgment, concluding

9   that plaintiffs lacked standing to assert Monroe's right of publicity.[6] Specifically, the court found

10   that Marilyn Monroe could not have devised a non-statutory right of publicity through her will, and also

11   could not have devised a subsequently created statutory right that did not come into existence until

12   decades after her death. This conclusion was supported, in part, by the court's interpretation of the

13   California right of publicity statute, Civil Code § 3344.1.[7] The court determined that under the statute,

14

---

15       [5]Plaintiffs' First Amended Complaint against Milton H. Greene Archives, Inc., ¶¶ 7, 24-26;
16   Plaintiffs' First Amended Complaint against Tom Kelley Studios, Inc., ¶¶ 7, 28-30.

17       [6]California created a descendible, posthumous right of publicity in 1984, with the passage of its
   post-mortem right of publicity statute. See CAL. CIVIL CODE § 3344.1 (formerly CAL. CIVIL CODE §
18   990). Before passage of this act, California recognized a common law right of publicity, but that right
   expired on an individual's death. See *Guglielmi v. Spelling-Goldberg Productions*, 25 Cal.3d 860, 861
19   (1979).

20       [7]The California statute provides, in pertinent part:
21       (a)(1) Any person who uses a deceased personality's name, voice, signature, photograph,
   or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of
22   advertising or selling, or soliciting purchases of, products, merchandise, goods, or
   services, without prior consent from the person or persons specified in subdivision (c),
23   shall be liable for any damages sustained by the person or persons injured as a result
24   thereof. . . .
   (b) The rights recognized under this section are property rights, freely transferable, in
25   whole or in part, by contract or by means of trust or testamentary documents, whether
   the transfer occurs before the death of the deceased personality, by the deceased
26   personality or his or her transferees or, after the death of the deceased personality, by
   the person or persons in whom the rights vest under this section or the transferees of that
27   person or persons.
28   (c) The consent required by this section shall be exercisable by the person or persons to

1   a deceased personality who had died *before* the measure was enacted was deemed not to have had the

2   capacity to transfer the subsequently created right of publicity, which was denominated a "property

3   right[ ]," prior to death.  See CAL. CIVIL CODE § 3344.1(b) (providing that a "deceased personality"

4   could, "*before [his or her] death*," transfer the statutory right of publicity "by contract or by means of

5   trust or testamentary documents," but that "after the death of the deceased personality," the statutory

6   publicity right "vest[ed]" directly in specified statutory beneficiaries (emphasis added)).

7        Given the clear common law prescription that a testator cannot devise property not owned at the

8   time of death, and the presumption that the California legislature knew of this prescription, the court

9   found that, as respects personalities who died before its enactment, the California right of publicity

10  statute vested the posthumous publicity right in designated heirs rather than in the predeceased

11  personality himself or herself.  A review of the relevant legislative history confirmed this

12  construction, as it did not reveal a legislative intent that was contrary to general principles of property

13  and probate law.  Consequently, the court held that plaintiffs could not show they were entitled to assert

14  Marilyn Monroe's posthumous right of publicity.

15       The court, however, reached this conclusion with reluctance because some personalities who

16  died before passage of the California and Indiana right of publicity statutes had left their residuary

17  estates to charities.  These charities had, since the California statute was enacted in 1984, assumed that

18  they controlled the personality's right of publicity, and it appeared that they would be "divested" of the

19  personalities' posthumous rights of publicity as a result of the court's order.  The court therefore noted

20  that its ruling in no way prevented the California or Indiana legislature from enacting a right of publicity

21  statute that vested the right directly in the residuary beneficiaries of a deceased personality's estate, or

22

23       whom the right of consent, or portion thereof, has been transferred in accordance with

24  subdivision (b), or if no transfer has occurred, then by the person or persons to whom the
    right of consent, or portion thereof, has passed in accordance with subdivision (d).

25  (d) Subject to subdivisions (b) and (c), after the death of any person, the rights under this
    section shall belong to the following person or persons and may be exercised, on behalf

26  of and for the benefit of all of those persons, by those persons who, in the aggregate, are
    entitled to more than a one-half interest in the rights: [the surviving spouse and surviving

27  children or grandchildren, or the surviving parents of the deceased personality]."  CAL.
    CIVIL CODE § 3344.1.

28
                                                    4

1    in the successors-in-interest of those residuary beneficiaries.

2    On November 21, 2007, plaintiff MMLLC filed a motion for reconsideration of the court's order.

3    MMLLC based its motion on the fact that, six weeks after the order was entered, California State

4    Senator Sheila Kuehl amended Senate Bill 771 ("SB 771") to include provisions designed to abrogate

5    the court's ruling and clarify the meaning of California's right of publicity statute. SB 771 passed both

6    houses of the California Legislature in September 2007, and was signed by Governor Schwarzenegger

7    on October 10, 2007. The bill expressly provided that the statutory right of publicity created by §

8    3344.1 was deemed to exist at the time of death of any deceased personality who died before January

9    1, 1985. It further provided that "[t]he rights recognized under this section are property rights, freely

10    transferable, in whole or in part, by contract or by means of trust or testamentary documents, whether

11    the transfer occurs before the death of the deceased personality, by the deceased personality or his or

12    her transferees, or, after the death of the deceased personality, by the person or persons in whom the

13    rights vest under this section or the transferees of that person or persons." The bill explained that, in

14    the absence of an express provision in a will or other testamentary instrument that transferred the

15    publicity right of a deceased personality, "disposition of the publicity right[ ] would be in accordance

16    with the disposition of the residue of the deceased personality's assets."

17    Based on this measure, MMLLC asked the court to reverse its conclusions (1) that "under either

18    California or New York law, Marilyn Monroe had no testamentary capacity to devise, through the

19    residual clause of her will, statutory rights of publicity that were not created until decades after her

20    death"; (2) that alternatively, even if Marilyn Monroe's estate was open at the time the statutory rights

21    of publicity were created, it "was not [an] entity capable of holding title to the rights"; and (3) that

22    MMLLC and CMG had "no standing to assert the publicity rights they seek to enforce in this action."[8]

23    On January 7, 2008, the court granted plaintiff's motion for reconsideration. It noted that SB

24    771 clearly expressed the California legislature's intent to clarify § 3344.1 as originally enacted,

25    explicitly outlining that intent in the bill and emphasizing it in the legislative history. The court

26    observed that the bill had been passed promptly after, and in response to, the court's May 14, 2007

27

28    [8]Pl.'s Mem. at 12.

1  order, a factor of significance under California Supreme Court law guiding when subsequently passed

2  bills should be considered clarifications, rather than modifications, of existing law.  Finally, upon

3  reconsideration, the court found that there was a potential ambiguity in § 3344.1 as originally enacted

4  that SB 771 addressed.  It concluded that the definition of "deceased personality" in § 3344.1(h) injected

5  some ambiguity into the court's earlier construction of § 3344.1(b), i.e., its conclusion that subsection

6  (b) permitted transfer of the statutory right of publicity after a personality's death only by the

7  personality's heirs. Because the statute defined a "deceased personality" as "any . . . natural person who

8  . . . died within 70 years prior to January 1, 1985," and because subsection (b) provided that a "deceased

9  personality" could transfer the statutory right before his or her death, the court concluded that there was

10  some ambiguity as to whether the legislature intended to provide that a predeceased personality could

11  transfer the right through his or her will.  The court noted that this potential ambiguity had caused

12  beneficiaries, particularly charitable beneficiaries, of deceased personalities to act in a manner that

13  conflicted with its earlier reading of the statute, and that it had resulted in court decisions that were at

14  odds with what the 2007 legislature believed the earlier legislature had intended.  In combination, the

15  court found that these circumstances supported a finding that SB 771 clarified existing law by making

16  explicit that the right of publicity of a personality who died before January 1, 1985 was deemed to have

17  existed at the time that personality died, and could pass through the residual clause of her will.

18       As a result, the court determined that it was appropriate to reconsider its ruling that MMLLC

19  lacked standing to assert claims for infringement of Marilyn Monroe's statutory right of publicity.

20  Interpreting § 3344.1 as clarified, the court held that because the statutory right of publicity was deemed

21  to have existed at the time of Marilyn Monroe's death, and because it was not expressly bequeathed in

22  her will, it was transferred under the residual clause of the will to Lee Strasberg and other residuary

23  beneficiaries.  Because SB 771 made clear that a deceased personality's posthumous right of publicity

24  was "freely transferable or descendible by contract, trust, or any other testamentary instrument by any

25  subsequent owner of the deceased personality's rights. . . ," the court determined that when Lee

26  Strasberg died, his property, which, under SB 771, was deemed to include Monroe's publicity rights,

27  passed by will to his wife, Anna Strasberg.  Anna Strasberg and the holder of a 25% interest in the

28  residue of Monroe's estate, in turn, formed MMLLC and transferred their interest in Monroe's estate,

1   including, without limitation, the right of publicity, to MMLLC.

2        As a result, the court found that, under § 3344.1 as clarified, MMLLC possessed Monroe's

3   posthumous right of publicity. Consequently, it vacated its prior ruling that MMLLC lacked standing

4   to assert the right. Because the law of the testator's domicile controls the testamentary disposition of

5   property, and because New York, unlike California, does not recognize a descendible, posthumous right

6   of publicity, the court noted that its reconsidered ruling made it necessary to determine whether Marilyn

7   Monroe was domiciled in California or in New York at the time of her death. Given the undeveloped

8   state of the record before it regarding Monroe's domicile, the court denied defendants' motion for

9   summary judgment on that issue and indicated that it would have to be decided at trial.

10        In their opposition to MMLLC's motion for reconsideration, defendants argued that SB 771

11   effected an unconstitutional taking of property by removing ownership of the statutory right of publicity

12   from a deceased personality's heirs and vesting it in the residuary beneficiaries under the personality's

13   will. They also argued that SB 771 was an unconstitutional interference with contracts into which third

14   parties had entered with the heirs or with those who were freely entitled to use a deceased personality's

15   right of publicity because the personality had died without statutory heirs. The court found these

16   arguments unavailing because SB 771 clarified that, as originally enacted, § 3344.1 provided that a

17   deceased personality's right of publicity existed at the time of his or her death and could be transferred

18   either by a specific bequest or as part of the residue of his or her estate. As a result, the court concluded,

19   the right of publicity of a personality who died testate did not vest in a deceased personality's statutory

20   heirs or in the public at large, as defendants asserted, and thus no constitutional issues were raised.

21

22                        **II. DISCUSSION**

23   **A.**     **Standard for Certification of Interlocutory Appeal Under 28 U.S.C. § 1292(b)**

24        As a general rule, an appellate court should not review a district court ruling until after the

25   entry of final judgment. See 28 U.S.C. § 1291; *Hansen v. Schubert*, 459 F.Supp.2d 973, 999 (E.D.

26   Cal. 2006) (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 474 (1978), and *In re Cement

27   Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982), aff'd sub nom. *Arizona v. Ash Grove Cement

28   Co.*, 459 U.S. 1190 (1983). There are, however, situations in which "appellate review of a particular

1  ruling will materially advance disposition of the claims before the trial court." *Morrison-Knudsen*

2  *Co., Inc. v. Archer*, 655 F.2d 962, 966 (9th Cir. 1981). In such cases, "the appropriate procedure for

3  the district court is to certify its order for interlocutory appeal under 28 U.S.C. s 1292(b)." *Id.*

4  Section 1292(b) provides:

5      "When a district judge, in making in a civil action an order not otherwise appealable

6      under this section, shall be of the opinion that such order involves a controlling

7      question of law as to which there is substantial ground for difference of opinion and

8      that an immediate appeal from the order may materially advance the ultimate

9      termination of the litigation, he shall so state in writing in such order. The Court of

10     Appeals which would have jurisdiction of an appeal of such action may thereupon,

11     in its discretion, permit an appeal to be taken from such order, if application is made

12     to it within ten days after the entry of the order: Provided, however, That application

13     for an appeal hereunder shall not stay proceedings in the district court unless the

14     district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C.

15     § 1292(b).

16     "An interlocutory appeal should be granted 'only in exceptional situations in which allowing

17  [such an appeal] would avoid protracted and expensive litigation.'" *Hansen*, 459 F.Supp.2d at 999-

18  1000 (quoting *In re Cement Antitrust Litig.*, 673 F.2d at 1026). "The party seeking certification of

19  an interlocutory appeal has the burden to show the presence of those exceptional circumstances."

20  *Id.* (citing *Coopers & Lybrand*, 437 U.S. at 474-75).

21     Under § 1292(b), a district court must make three findings before certification of an order for

22  immediate appeal is appropriate: (1) that the order involves a controlling question of law about which

23  (2) there is substantial ground for difference of opinion, and (3) that an immediate appeal will "advance

24  the ultimate termination of the litigation." 28 U.S.C. § 1292(b); see *In re Cement Antitrust Litig.* 673

25  F.2d at 1026. If the district court includes such findings in its order, the circuit court will then determine

26  "whether the district court has properly found that the certification requirements of [§ 1292(b)] have

27  been met," and whether it will, in its discretion, permit the appeal. *In re Cement Antitrust Litigation*,

28  673 F.2d at 1026. This "mechanism permits the Court of Appeals to protect its docket by determining

8

1    for itself whether to accept the issue for review." *Morrison-Knudsen*, 655 F.2d at 966.

2    **B.    Whether the Court Should Certify Its Order for Interlocutory Appeal**

3    Defendant[9] seeks certification of the following question for appeal:

4    "[W]hether, as amended, California Civil Code § 3344.1 unconstitutionally effects a

5    taking without due process or just compensation, interferes with contracts or is an *ex post*

6    *facto* law, and whether it provides standing to Marilyn Monroe LLC to assert a post-

7    mortem [right of publicity] regarding Marilyn Monroe."[10]

8    **1.    Whether the Order Involves a Controlling Question of Law**

9    **a.    Parties' Arguments**

10    A question of law is controlling if "resolution of the issue on appeal could materially affect the

11    outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d at 1026.

12    Applying this standard, defendant argues that the court's order involves a controlling question of law

13    because a decision by the appeals court on the issues posed "could materially affect the outcome of the

14    litigation."[11]    Defendant asserts that the majority of claims raised by the parties "rest squarely upon

15    whether MMLLC controls Marilyn Monroe's [right of publicity]."[12]    It maintains that "[t]hat issue[, in

16    turn,] hinges upon the correct interpretation of the amendment to California Civil Code § 3344.1 and

17    whether the changes are effective to provide standing to MMLLC to assert a [right of publicity] as to

18    Marilyn Monroe."[13]

19    Plaintiffs challenge defendant's assertion that the issues it has identified for appeal are pure

20    questions of law, citing the fact that whether MMLLC owns Monroe's right of publicity depends on

21    ───────────────────────

22    [9]On January 17, 2008, defendant Tom Kelley Studios, Inc. joined MHG's motion for certification
      of this issue under § 1292(b).

23

24    [10]Defendant The Milton H. Greene Archives, Inc.'s Notice of Motion and Motion for
      Certification of Order Granting Plaintiff's Motion for Reconsideration for Immediate Appeal Pursuant

25    to 28 U.S.C. § 1292(b), and for Stay of the Case ("Def.'s Mem.") at 6-7.

26    [11]*Id.*

27    [12]*Id.* at 7.

28    [13]*Id.*

1    whether Monroe was domiciled in California at the time of her death.[14] Domicile, plaintiffs contend,

2    is "an intensely factual issue,"[15] and one that has yet to be decided by the court. See *Lew v. Moss*, 797

3    F.2d 747, 750 (9th Cir. 1986) ("The courts have held that the determination of an individual's domicile

4    involves a number of factors (no single factor controlling), including: current residence, voting

5    registration and voting practices, location of personal and real property, location of brokerage and bank

6    accounts, location of spouse and family, membership in unions and other organizations, place of

7    employment or business, driver's license and automobile registration, and payment of taxes" (citations

8    omitted)). Because the court has determined that domicile will have to be decided at trial, plaintiffs

9    argue that MMLLC's standing may be resolved by a jury finding that Monroe was not domiciled in

10   California at the time of her death. If this were to occur, then the Ninth Circuit would not need to decide

11   the issue of MMLLC's standing or the constitutionality of the clarifying amendment to § 3344.1.[16]

12       Plaintiffs note that, as a prudential matter, the Ninth Circuit should not be asked to address

13   important constitutional questions unless resolution of them is absolutely necessary.[17] See *Christopher*

14   *v. Harbury*, 536 U.S. 403, 417 (2002) (noting "obligation of the Judicial Branch to avoid deciding

15   constitutional issues needlessly"); *Estelle v. Gamble*, 429 U.S. 97, 112 n. 7 (1976) (Stevens, J.,

16   dissenting) (noting that in *Polk Co. v. Glover*, 305 U.S. 5, 10 (1938), "the Court reversed the dismissal

17   of a complaint, without intimating any view of the constitutional issues, on '(t)he salutary principle that

18   the essential facts should be determined before passing upon grave constitutional questions . . . ,' and

19   indicating that "[t]his approach potentially avoids the necessity of ever deciding the constitutional issue

---

21   [14]Plaintiffs' Opposition to Motion for Certification of the Court's January 7, 2008, Order
22   Pursuant to 28 U.S.C. § 1292(b) ("Pls.' Opp.") at 6-7.

23   [15]*Id.* at 7.

24   [16]*Id.*

25   [17]*Id.* Plaintiffs posit that the Ninth Circuit might certify the question to the California Supreme
26   Court, rather than decide a state law question of first impression itself. See CAL. RULES COURT 8.548(a)
     ("On request of the United States Supreme Court, a United States Court of Appeals, or the court of last
27   resort of any state, territory, or commonwealth, the Supreme Court may decide a question of California
28   law if: (1) The decision could determine the outcome of a matter pending in the requesting court; and
     (2) There is no controlling precedent").

1    since the facts as proved may remove any constitutional question"); *United States v. Sandoval-Lopez*,

2    122 F.3d 797, 802 n. 9 (9th Cir. 1997) ("We avoid constitutional questions when an alternative basis

3    for disposing of the case presents itself," citing *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347

4    (1936) (Brandeis, J., concurring)).

5         Additionally, they contend that the questions defendant seeks to have certified are improper

6    because they exceed the issues actually briefed and decided by the court in connection with the

7    reconsideration motion.[18] In particular, plaintiffs cite the *ex post facto* claim defendant wishes the court

8    to certify; this issue was not raised or addressed by the parties in their briefs or at argument, and was

9    not decided by the court.[19] See *El Dorado Irrigation Dist. v. Traylor Bros., Inc.*, Civ 03-949 LKK GGH,

10   2005 WL 3453913, *2 (E.D. Cal. Dec. 16, 2005) ("The second question which plaintiff seeks to have

11   certified is newly raised here, it was not addressed at any point in the papers prepared for the motions

12   for partial summary judgment. . . . This court cannot certify for appeal an issue that was not decided

13   by this court in the first place, except in unusual circumstances, none of which have been shown here,"

14   citing *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 999 (9th Cir. 2005), and *United States v.*

15   *Flores-Payon*, 942 F.2d 556, 558 (9th Cir. 1991) ("Issues not presented to the trial court cannot

16   generally be raised for the first time on appeal")).

17        Additionally, plaintiffs note, the *ex post facto* clauses of Article I of the United States

18   Constitution and Article I of the California State Constitution apply only to penal statutes, not to civil

19   statutes such as the one at issue here. See *Quinteros v. Hernandez*, 419 F.Supp.2d 1209, 1218 (C.D. Cal.

20   2006) ("'Although the Latin phrase "ex post facto" literally encompasses any law passed "after the fact,"

21   it has long been recognized . . . that the constitutional prohibition on ex post facto laws applies only to

22   penal statutes which disadvantage the offender affected by them.' *Collins v. Youngblood*, 497 U.S. 37,

23   41 (1990). The ex post facto clause is 'aimed at laws that "retroactively alter the definition of crimes

24

25        [18]Pls.' Opp. at 8.

26        [19]Defendant argues that the *ex post facto* issue was addressed in the parties' briefing of the

27   motion for reconsideration and in the court's order. (Def.'s Mem. at 8). It provides no citation to the
     record, however, and the court finds no reference to the argument in defendant's opposition brief. It is

28   clear, additionally, the matter was not addressed by the court in its order.

1  or increase the punishment for criminal acts.""" *California Dep't of Corr. v. Morales*, 514 U.S. 499, 504

2  (1995) (citations omitted). Thus, an ex post facto law 'punishes as a crime an act previously committed,

3  which was innocent when done[,] which makes more burdensome the punishment for a crime, after its

4  commission, or which deprives one charged with crime of any defense available according to law at the

5  time when the act was committed. . . .'" *Collins*, 497 U.S. at 42 (citations omitted)); *People v. Hoyos*,

6  41 Cal.4th 872, 890 (2007) ("[B]oth the United States and California Constitutions forbid only 'the

7  retroactive application of an unexpected or unforeseeable judicial enlargement of a criminal statute,'"

8  quoting *People v. Superior Court (Clark)*, 22 Cal.App.4th 1541,1550 (1994)); *People v. Rathert*, 24

9  Cal.4th 200, 209 (2000) ("A statute which makes more burdensome the punishment for a crime, after

10  its commission, violates article I, section 9, clause 3, of the United States Constitution as an ex post

11  facto determination of criminal liability, as well as its California counterpart, article I, section 9 of the

12  state Constitution" (internal quotations and citations omitted)).

13         Defendant counters that the questions presented for appeal are "pure question[s] of law."[20]  To

14  the extent there are factual issues related to MMLLC's standing to assert Marilyn Monroe's right of

15  publicity, it contends those facts "are undisputed in that there is no dispute that Marilyn Monroe left the

16  residuary of her estate to her acting coach, Lee Strasberg and Dr. Marianne Kris, and that Lee Strasberg

17  and Dr. Kris, in turn, left whatever rights [they] had to Anna Strasberg and what is now the Anna Freud

18  Center."[21]  Even if fact issues do exist, defendant maintains, mixed questions of law and fact can be

19  certified for interlocutory review.[22]  See *Paiute-Shoshone Indians of the Bishop Community of the

20  Bishop Colony v. City of Los Angeles*, CV 06-736 OWW SMS, 2007 2202242, *2 n. 1 (E.D. Cal. July

21  30, 2007) ("The City correctly indicates that section 1292(b) is not meant to be used for the review of

22  factual issues nor is it to be used to 'substitute wholesale appellate certainty for trial court uncertainty.'

23  *Link v. Mercedes-Benz of North Am.*, 550 F.2d 860, 863 (3d Cir. 1977).  But, the issue proposed to be

24  certified is a mixed question of fact and law that is appropriately raised on interlocutory appeal").

25  ─────────────────

26  [20]Def.'s Mem. at 7.

27  [21]*Id.*

28  [22]*Id.*

b.    **Court's Analysis**

1
2    The undisputed facts that defendant identifies regarding MMLLC's standing to assert Marilyn

3 Monroe's statutory right of publicity are not the facts that control resolution of the standing question.

4 Rather, it is where Marilyn Monroe was domiciled at the time of her death that is determinative.  This

5 question has yet to be decided, and thus, even if the court were to certify the standing question, the

6 appeals court would be unable to make a final determination regarding it.  Defendant's request for

7 certification of this issue, therefore, must be denied.

8    The balance of the issues defendant seeks to have certified are constitutional questions:

9 (1) whether Civil Code § 3344.1, as clarified by SB 771, unconstitutionally effects a taking of property

10 without due process or just compensation; (2) whether it interferes with contracts; and (3) whether it is

11 an *ex post facto* law.  As respects the ex post facto issue defendant has identified, both because it was

12 not previously raised, and because it is legally incorrect (and therefore does not present a controlling

13 question of law as to which there is substantial grounds for difference of opinion), the court must deny

14 the request for certification.

15    This leaves the remaining constitutional issues defendant has identified – whether § 3344.1 as

16 clarified unconstitutionally effects a taking without due process or just compensation, and whether it

17 interferes with contracts.  As to these arguments, which consumed a scant four paragraphs in defendant's

18 eighteen-page opposition to the motion for reconsideration, the court concluded that SB 771 was not

19 unconstitutional because it was a clarification of existing law.  Specifically, the bill clarified that, as

20 initially enacted, § 3344.1 permitted transfer of a predeceased personality's statutory right of publicity

21 through the residual clause of his or her will at the time it took effect in 1985.  Consequently, SB 771

22 did not "take" property rights that § 3344.1 had vested in statutory heirs.[23]

23

24   [23]The court identified, but did not decide, a potential constitutional issue that neither party raised – whether the fact that, when it was first enacted, § 3344.1 applied retroactively to personalities who

25 died prior to January 1, 1985 interfered with any entitlement members of the public had to use rights that were previously in the public domain.  The court found that it was not necessary to decide this

26 question, as it was not apparent that it affected the rights of the parties to this case.  Although this is not the issue defendant seeks to have certified, the Ninth Circuit has stated that its "'jurisdiction under §

27 1292(b) . . . is not limited to deciding the precise question the district court certified to us.  Rather, we

28 are reviewing the district court's order . . . , and may address any issue fairly included within that order.'"

1    For this reason, although defendant purports to seek certification of constitutional questions

2 surrounding § 3344.1 as clarified, it is clear that, in reality, it seeks to appeal the court's determination

3 that SB 771 was a clarification, rather than a modification, of existing law.

4    Defendant maintains that this question is controlling, as reversal of the court's order will

5 eliminate "the most significant claim in the case."[24] It further argues that plaintiffs' purported ownership

6 of Monroe's right of publicity "forms the basis" for the following additional claims they assert against

7

8    _____

*Sissoko v. Rocha*, 440 F.3d 1145, 1153 (9th Cir. 2006) (quoting *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997,

9 1000 (9th Cir. 2001)).

10    Apart from arguing – belatedly, in conclusory terms, and without citation to the record or legal
authority – that "in fact, Defendants . . . developed a justifiable right to use the indicia of persona of

11 Marilyn Monroe and Plaintiffs [seek] to impose liability upon Defendants for their uses of that indicia
before 1985 and after" (Def.'s Mem. at 14), defendant has not shown that it has standing to raise such

12 a challenge. See *United States v. Kurt*, 988 F.2d 73, 76 (9th Cir. 1993) ("A defendant cannot claim a
statute is unconstitutional in some of its reaches if the statute is constitutional as applied to him," citing

13 *United States v. Raines*, 362 U.S. 17, 20-21 (1960) ("[t]he very foundation of the power of the federal

14 courts to declare Acts of Congress unconstitutional lies in the power and duty of those courts to decide
cases and controversies properly before them")). As a result, this constitutional issue is not a controlling

15 question of law in this case and does not warrant certification under § 1292(b).

16    Similarly, although asserting generally that the right of publicity statute unconstitutionally
interfered with contracts, defendant proffered no evidence of any extant contracts that § 3344.1 or

17 SB 771 impaired. "The threshold inquiry in Contract Clause analysis is '"whether the state law has,
in fact, operated as a substantial impairment of a contractual relationship."'" *Campanelli v. Allstate*

18 *Life Ins. Co.*, 322 F.3d 1086, 1098 (9th Cir. 2003) (quoting *Energy Reserves Group, Inc. v. Kansas*
*Power & Light Co.*, 459 U.S. 400, 411 (1983)). "'The severity of the impairment measures the

19 height of the hurdle the state legislation must clear.' The more severe the impairment, the more

20 searching the examination of the legislation must be." *Id.* (quoting *Allied Structural Steel v.*
*Spannaus*, 438 U.S. 234, 245 (1978)). Because defendant provided no evidence as to whether there

21 *were* contractual relationships that were impaired by § 3344.1 when it was enacted in 1984, the court
could not complete even the first step of a Contracts Clause analysis, much less proceed to the

22 second and third steps, which ask whether, if a statute substantially impairs existing contracts, the

23 state nonetheless had a "significant and legitimate public purpose" for enacting the regulation, and
"'whether the adjustment of "the rights and responsibilities of contracting parties [is based] upon

24 reasonable conditions and [is] of a character appropriate to the public purpose justifying [the
legislation's] adoption."'" *Id.* (quoting *Energy Reserves Group*, 459 U.S. at 411-12). Because

25 defendant proffered no evidence that any of its contracts were impaired by § 3344.1, interference

26 with contracts is not a controlling question of law in this case, and there are no substantial grounds
for differing with the court's conclusion that the statute need not be declared unconstitutional on this

27 basis.

28    [24]Def.'s Mem. at 15.

14

1  MHG: declaratory relief; conversion; violation of the Indiana Crime Victims Act; defamation;

2  interference with MMLLC's relationship with CMG; and interference with business advantage and

3  prospective business advantage.[25] As respects plaintiffs' complaint against Kelley, defendant argues

4  that, in addition to a direct claim for violation of the right of publicity, the right "forms part of the basis"

5  for the following additional claims: declaratory relief; unfair competition; trade libel/disparagement;

6  conversion; violation of the Indiana Crime Victims Act; interference with business advantage and

7  prospective business advantage; and interference with MMLLC's contract with CMG.[26] Defendant also

8  contends that the issue is the only question raised by MHG's and Kelley's respective claims for a

9  declaration that MMLLC and CMG do not own any right of publicity in Monroe.

10      The legislative history of § 1292(b) indicates that controlling questions are ones that would

11  terminate the litigation if decided differently on appeal. See *United States v. Woodbury*, 263 F.2d

12  784, 787 (9th Cir. 1959), citing Senate Report No. 2434, 85th Cong., 2d Sess., page 5256. "Courts[,

13  however,] have refused to interpret the phrase so narrowly. . ." (*In re Cement Litigation*, 673 F.2d

14  at 1026; *Woodbury*, 263 F.2d at 787), and have held that "controlling" questions need only assist

15  in avoiding protracted and expensive litigation, *In re Cement Litigation*, 673 F.2d at 1026; *id.* ("all

16  that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal

17  could materially affect the outcome of the litigation in district court"); see also *United States Rubber*

18  *Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966) (holding that an "uncertain" question of law

19  relevant to only one of several causes of action was not "controlling").

20      Assuming *arguendo* that the claims identified by defendant rest on the validity of MMLLC's

21  claim to Monroe's right of publicity, the court does not disagree that whether SB 771 constituted a

22  clarification, rather than a modification, of existing law may be a controlling question of law in the sense

23  that it would avoid protracted and expensive litigation. Even if it is deemed to be controlling, however,

24  defendant has not shown that the other factors required for certification of an interlocutory appeal are

25  present.

26  _____

27  [25]*Id.*

28  [26]*Id.*

## 2.    Whether There are Substantial Grounds for Difference of Opinion

The Ninth Circuit has observed that § 1292(b) "was not intended merely to provide review of difficult rulings in hard cases." *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966). Rather, as noted, to demonstrate that certification for appeal is appropriate, defendant must show there exist substantial grounds for differences of opinion. 28 U.S.C. § 1292(b).

Defendant argues that substantial grounds for difference of opinion exist because, prior to the court's ruling on the motion for reconsideration, the amendment to § 3344.1 "had never before been litigated, and [the issue was therefore one] . . . of first impression."[27]  It contends that "analysis of the effect of the statute is a difficult issue, and the legal and political maneuvering and wrangling with which this issue has been fought evidences that there are substantial grounds for difference of opinion."[28]

Some courts have found substantial grounds for difference of opinion where the issue to be certified is one of first impression. See, e.g., *Paiute-Shoshone Indians*, 2007 WL 2202242 at *2 ("As discussed at length in the February 14, 2007 memorandum decision, although a number of cases have dealt with indispensability in somewhat similar contexts, none concerned factual circumstances similar enough to this case to provide clear guidance. There are substantial grounds for difference of opinion"); *Ovando v. City of Los Angeles*, 92 F.Supp.2d 1011, 1025 (C.D. Cal. 2000) ("[W]hile the Court believes its analysis is correct, the Court recognizes that (1) this case presents certain issues that appear to be of first impression; (2) that the most pertinent precedent is 13 years old; and (3) either the Ninth Circuit, the Supreme Court, or both, may take a less expansive view of the substantive due process claim than Smith permits. Thus, the Court sees substantial ground for a difference of opinion on this issue").

While it may be a consideration, however, the fact that an issue is one of first impression is not alone sufficient to support certification for interlocutory appeal. See, e.g., *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) ("[T]he mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion. Rather, '[i]t is the

---

[27]*Id.* at 9.

[28]*Id.* at 9-10.

1   duty of the district judge . . . to analyze the strength of the arguments in opposition to the challenged

2   ruling when deciding whether the issue for appeal is truly one on which there is a substantial ground for

3   dispute,'" quoting *Max Daetwyler Corp. v. Meyer*, 575 F.Supp. 280, 283 (E.D. Pa. 1983); and citing

4   *FDIC v. First Nat'l Bank of Waukesha, Wis.*, 604 F.Supp. 616, 622 (E.D. Wis. 1985)); *Batt v. City of*

5   *Oakland*, C 02-4975 MHP, 2006 WL 2925681, *4 (N.D. Cal. Oct. 12, 2006) ("While prior cases dealing

6   with the precise factual predicate of the present case may not exist, this does not necessarily give rise

7   to substantial grounds for difference of opinion," citing *In re Flor*, 79 F.3d at 284); *El Dorado Irrigation*

8   *Dist.*, 2005 WL 3453913 at *1 ("All three qualities must be present in order to merit interlocutory

9   certification; that an issue is novel does not, in itself, make it immediately appealable," citing *Krangel*

10   *v. General Dynamics Corp.*, 968 F.2d 914, 915 (9th Cir. 1992)); *In re Conseco Life Ins. Cost of Ins.*

11   *Litig.*, ML 04-1610 AHM MCx, 2005 WL 5678841, *2 (C.D. Cal. May 31, 2005) ("[I]t is true, as

12   Conseco argues, that Plaintiffs' alter ego claims are 'novel' and that the Ninth Circuit has not addressed

13   whether and how the fair contemplation test applies to alter ego claims.  As the Second Circuit has

14   explained, however, 'the mere presence of a disputed issue that is a question of first impression, standing

15   alone, is insufficient to demonstrate a substantial ground for difference of opinion' under § 1292(b),"

16   quoting *In re Flor*, 79 F.3d at 284)); *Bennett v. SLT/TAG Inc.*, Civ 02-65 HU, 2003 WL 23531965, *1

17   (D. Or. July 21, 2003) ("[W]hile some dispute exists outside of the federal courts – in dicta in a

18   Washington Supreme Court opinion and a Department of Labor ('DOL') opinion letter – 'the mere

19   presence of a disputed issue that is a question of first impression, standing alone, is insufficient to

20   demonstrate a substantial ground for difference of opinion,'" quoting *In re Flor*, 79 F.3d at 284); *Larsen*

21   *v. Senate of Com. of Pa.*, 965 F.Supp. 607, 609 (M.D. Pa. 1997) ("Unfortunately, the fact that this case

22   may involve an issue of first impression does not warrant certification pursuant to § 1292(b)); *A&J*

23   *Deutscher Family Fund v. Bullard*, No. CV-85-1850-PAR, 1987 WL 16951, at *1 (C.D. Cal. March

24   25, 1997) ("mere lack of authority is not sufficient to establish this prong of the certification test");

25   *German v. Federal Home Loan Mortgage Corp.*, 896 F.Supp. 1385, 1398 (S.D.N.Y. 1995) ("Simply

26   because a question of law has not been authoritatively addressed . . . does not make the question

27   ground for a substantial difference of opinion").

28         Instead, "'in determining whether a substantial ground for difference of opinion truly exists, a

17

district court must analyze the strength of the arguments in opposition to the challenged ruling.'" *Marshall v. City of Portland*, CV 01-1014 ST, 2004 WL 1774532, *5 (D. Or. Aug. 9, 2004) (quoting *Ryan, Beck & Co., LLC v. Fakih*, 275 F.Supp.2d 393, 398 (E.D.N.Y. 2003)); see also *In re Conseco*, 2005 WL 5678841 at *2 ("'[A] party's strong disagreement with the Court's ruling is not sufficient for there to be a substantial ground for difference; the proponent of an appeal must make some greater showing,'" quoting *Mateo v. The M/S Kiso*, 805 F.Supp. 792, 800 (N.D. Cal. 1992)); *Chiron Corp. v. Abbott Labs.*, C 93-4380 MHP, 1996 WL 15758, *2 (N. D. Cal. Jan. 3, 1996) ("[T]he fact that the conclusion was neither easy nor obvious is not reason enough to permit an appeal," citing *United States Rubber Co.*, 359 F.2d at 785).

The legal issue that controlled decision of the motion for reconsideration was, as noted, whether SB 771 was a clarification or a modification of § 3344.1.  The court will not repeat the reasoning set forth in its January 7, 2008 order granting reconsideration.  Cf. *Chiron Corp.*, 1996 WL 15758 at *2 ("This court is unwilling, under the guise of a motion for interlocutory appeal, to rehash its rationale for applying the standard for hybrid conception which it painstakingly detailed in a 70-page order").  It will simply note that, in evaluating whether SB 771 was a clarification, it looked to and applied various factors identified by the California Supreme Court as relevant to such a determination, i.e., the fact that § 3344.1 had never been definitively construed by the state's highest court; the legislature's intent in passing SB 771; the swiftness with which the legislature responded to perceived judicial errors in construction; the fact that the prior version of § 3344.1 contained a potential ambiguity; and the fact that there was confusion in the marketplace as to the statute's application.

Apart from asserting that the issue is one of first impression and restating its arguments in opposition to reconsideration, defendant offers no evidence that there are substantial grounds for difference of opinion on the issue.  Defendant, for example, cites no authority regarding the interpretation of legislation that purports to clarify existing law that suggests the court erred in finding that SB 771 was a clarification rather than a modification.[29] Compare *Watson*, 2007 WL 4107539 at *4 ("[T]he court acknowledged in its Order that there was a paucity of relevant case law on the applicability

---

[29]*Id.* at 11-14.

18

1   of the irrigation exemption. The court specifically noted that the only federal case to address the

2   interpretation of § 213 after it was amended in 1997 is [*Avila v. Turlock Irrigation District*, 2006 WL

3   3437549 (E.D. Cal. Nov. 27, 2006),] an unpublished decision from the Eastern District of California.

4   However, the court's Order did not adopt the interpretation of § 213 set forth in *Avila*. As such, there

5   is now an intra-district conflict with respect to the interpretation of the irrigation exemption to the

6   FLSA. Thus, the court finds that there is substantial ground for difference of opinion on the issue").

7          Defendant merely relies on its "strong disagreement" with the court's decision and the legislative

8   process that preceded it. See *Valdovinos v. McGrath*, C 02-1704 CW, 2007 WL 2023505, *5 (N.D. Cal.

9   July 12, 2007) ("As stated above, a substantial ground for difference of opinion is not established by a

10  party's strong disagreement with the court's ruling. Respondent argues that the March 20, 2007 Order

11  is incorrect but does not make the requisite greater showing that a substantial ground for difference of

12  opinion exists" (citation omitted)).

13         The factors that are relevant in determining whether a statute constitutes a clarification or a

14  modification of existing law are well established, and have been the subject of numerous decisions by

15  the California Supreme Court and the California Courts of Appeal. The court applied those factors in

16  determining that SB 771 clarified existing § 3344.1. While defendant may disagree with the court's

17  analysis, neither the underlying standard, nor the court's application of it, is the subject of conflicting

18  judicial decisions. Analyzing the strengths of defendant's arguments in opposition to the challenged

19  ruling, the court concludes that it cannot show that the arguably controlling question of law in this case

20  is one as to which there are substantial grounds for difference of opinion.

21         **3.    Whether an Immediate Appeal From the Order May Materially Advance**

22                **the Ultimate Termination of the Litigation**

23         The last requirement for certification of an interlocutory appeal is a finding that an immediate

24  appeal will materially advance or speed the ultimate termination of the litigation. See *Hansen*, 459

25  F.Supp.2d at 1000 ("[A]n interlocutory appeal must be likely to materially speed the termination of the

26  litigation"). "This factor is linked to whether an issue of law is 'controlling' in that the court should

27  consider the effect of a reversal by the court of appeals on the management of the case." *Id.* (citing *In*

28  *re Cement Antitrust Litig.*, 673 F.2d at 1026).

1   Citing primarily cases involving the entry of final judgment under Rule 54(b) of the Federal

2   Rules of Civil Procedure,[30] defendant argues that an immediate appeal will materially advance

3   termination of the litigation by eliminating the most significant claim in the case; that it will save the

4   parties substantial time and resources by avoiding the need for costly and time-consuming pretrial

5   preparation; and that it will facilitate settlement of the remainder of the claims.[31] See *Curtiss-Wright*

6   *Corp. v. General Elec. Co.*, 446 U.S. 1, 8 n. 2 (1980) (noting in the context of a Rule 54(b) certification

7   that "if the district court concluded that there was a possibility that an appellate court would have to

8   face the same issues on a subsequent appeal, this might perhaps be offset by a finding that an appellate

9   resolution of the certified claims would facilitate a settlement of the remainder of the claims," citing

10  *Cold Metal Process Co. v. United Engineering & Foundry Co.*, 351 U.S. 445, 450 n. 5 (1956)); *Core-*

11  *Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993) (affirming the district court's entry

12  of final judgment under Rule 54(b) because it "would serve the efficient administration of justice");

13  *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 797 (9th Cir. 1991) ("Rule 54(b) certification is proper if it will

14  aid 'expeditious decision' of the case," citing *Sheehan v. Atlanta Int'l Ins. Co.*, 812 F.2d 465, 468 (9th

15  Cir. 1987)); *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 821 (D.C. Cir.

16  1984) (noting that the district court certified its ruling for interlocutory appeal under § 1292(b) "in order

17  to facilitate settlement by removing an issue on which there was substantial ground for difference of

18  opinion" (internal quotations & citations omitted)).

19   Although an immediate appeal of the court's order might permit the parties to avoid discovery

20  and trial preparation costs, the court is not convinced that it would *materially speed the termination of*

21  *the litigation.*  If anything, it would delay the case further.  First, although defendant suggests that

22  certifying the right of publicity question would facilitate settlement, the parties have been able to agree

23  upon little during the three year history of this litigation.  The court doubts that even the specter of

---

[30]Rule 54(b) states: "When an action presents more than one claim for relief – whether as a claim, counterclaim, crossclaim, or third-party claim – or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." FED.R.CIV.PROC. 54(b).

[31]Def.'s Mem. at 15-16.

1    prompt appellate review of the right of publicity question would change this in any material respect.

2    Second, while an appellate determination that MMLLC lacks standing to assert Marilyn Monroe's right

3    of publicity might well eliminate "the most significant claim in the case," many other claims and parts

4    of claims remain.  As defendant concedes, for example, the right of publicity "forms [only] part of the

5    basis" for the declaratory relief, unfair competition, trade libel/disparagement, conversion, Indiana

6    Crime Victims Act, interference with business advantage and prospective business advantage, and

7    interference with contract claims plaintiffs assert against Kelley.[32]  Similarly, Plaintiffs' declaratory

8    relief claim against MHG, moreover, rests not only on their purported ownership of Marilyn Monroe's

9    right of publicity, but on ownership of other "intellectual property rights" as well, including trademarks

10   and copyrights.[33]  Finally, defendant's copyright infringement claim is not dependent in any way on the

11   right of publicity issue,[34] nor is plaintiffs' trademark infringement claim against Kelley.  It therefore

12   appears that even if an immediate appeal were certified, these issues would remain and ultimate

13   termination of the case would not be effectively advanced.  Furthermore, defendant's motion for

14   certification comes just ten days before the close of discovery and a short time before the April 8, 2008

15   trial date set by the court.  Given the aggressive manner in which the parties have litigated this case for

16   nearly three years, the court can perceive no benefit in prolonging full and complete resolution of the

17   issues any longer.  See, e.g., *Shurance v. Planning Control Int'l, Inc.*, 839 F.2d 1347, 1348 (9th Cir.

18   1988) (denying leave to file an interlocutory appeal where the question presented was not a controlling

19   issue of law and where "an interlocutory appeal might well have the effect of delaying the resolution

20   of this litigation, for an appeal probably could not be completed before July, 1988, when trial is

21   currently scheduled"); *Williams v. Saxon Mortg. Co.*, Civ 06-799 WS B, 2007 WL 4105126, *4 (S.D.

22   Ala. Nov. 15, 2007) ("This case is on the cusp of being ready for trial now, and an appeal (regardless

23   of its outcome) would delay, not obviate the need for, a trial.  Thus, the Court concludes that

24   certification of an interlocutory appeal on the damages question would not materially advance the

25

26        [32]*Id.* at 15.

27        [33]Plaintiffs' First Amended Complaint against Milton H. Greene Archives, Inc., ¶ 7.

28        [34]*Id.* at 16.

21

1   ultimate termination of the litigation, because it would neither serve to avoid a trial nor otherwise

2   substantially shorten the litigation. Rather, allowing an interlocutory appeal here would do nothing

3   more than delay the trial of the rescission claims, invite piecemeal appeals, and oblige the appellate

4   court to decide a limitations issue that may be mooted by the outcome of the trial on the rescission

5   claims"); *Smith v. Argent Mortg. Co., LLC*, CV 05-2364 REB BNB, 2007 WL 3232078, *2-3 (D. Colo.

6   Oct. 30, 2007) ("If the trial proceeds as set, then the plaintiffs' claims will be resolved fully, including

7   a determination of any appropriate remedies. Following a prompt resolution of the plaintiffs' claims,

8   any party who chooses to appeal could present to the court of appeals a complete record and a complete

9   presentation of the appealable issues. On the other hand, if this case were stayed while the plaintiffs

10   pursued an interlocutory appeal, and assuming the Tenth Circuit agreed to accept the plaintiffs'

11   interlocutory appeal, progress toward a complete resolution of this case would be slowed dramatically.

12   At least several months would be required to complete briefing, possible argument, and a ruling by the

13   Tenth Circuit. After such a ruling, the case would return to this court with a few pretrial issues resolved,

14   but with the continuing need for a trial to resolve the remaining issues"); *Jackson v. Jimino*, 506

15   F.Supp.2d 105, 118 (N.D.N.Y. 2007) ("[W]e do not concur that an appeal would materially advance the

16   ultimate termination of the litigation, especially in light of the fact that this matter will be scheduled for

17   trial within the next sixty (60) days and has been on and off the court's trial calendar for approximately

18   three years," citing *Cadlerock Joint Venture II, L.P. v. Milazzo*, 07 mc 26 MRK, 2007 WL 470323, *

19   1 (D. Conn. Feb. 8, 2007)); *City of Sterling Heights v. United Nat'l Ins. Co.*, 03-72773, 2007 WL

20   541648, *1 (E.D. Mich. Feb. 16, 2007) ("[T]he Court is not convinced that an immediate appeal from

21   these orders will materially advance the ultimate termination of this litigation. Rather, an interlocutory

22   appeal will unnecessarily delay the March 20, 2007 trial date set for this 2003 case"); *UMG Recordings,*

23   *Inc. v. MP3.Com, Inc.*, Civ 00-472 JSR, 2000 WL 710056, *1 (S.D.N.Y. June 1, 2000) ("[W]ith trial

24   of all remaining issues firmly scheduled for August 28, 2000, the only real effect of certification would

25   be to introduce delay, rather than reduce it," citing *Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863,

26   865-66 (2d Cir. 1996)); *Cortez v. MTD Prods., Inc.*, 927 F.Supp. 386, 394 (N.D. Cal. 1996) ("This case

27   is scheduled to go to trial on May 14th of this year, less than two months from now. Virtually all pretrial

28   preparation is to have been completed soon. The trial will consume only four or five days – and its

22

1   outcome could render moot any need for the Court of Appeals to address the legal question that

2   defendants seek to certify.  Moreover, if plaintiff prevails at trial, defendants will have access to

3   appellate consideration of this legal issue only a few months (at the worst) after they would have that

4   access were I to grant the requested certification now.  Given these considerations, and the fact that this

5   case already has been pending in this court for a year, it would not be fair to plaintiff either to postpone

6   the trial for a considerable period or to force him to respond to an interlocutory appeal at the same time

7   he is engaged in final pretrial preparations.  Nor, in these circumstances, would we be justified in

8   imposing prematurely on the resources of the Court of Appeals (I point out, again, that the outcome at

9   the forthcoming trial might make any such imposition completely unnecessary)").

10       As noted, it is well-established that "certification for interlocutory appeal should be applied

11  sparingly."  *Ovando*, 92 F.Supp.2d at 1025 (citing *Woodbury*, 263 F.2d at 788 n. 11).  Defendant has

12  failed to demonstrate both that an immediate appeal would speed termination of the litigation and that

13  substantial grounds for difference of opinion exist.  The court cannot certify its order for interlocutory

14  appeal unless all three criteria of § 1292(b) are satisfied.  See *El Dorado Irrigation Dist.*, 2005 WL

15  3453913 at *1 ("All three qualities must be present in order to merit interlocutory certification").

16  Because defendant has not made such a showing, the court denies its motion for certification of the

17  January 7, 2008 order, and for a stay of the case.

18

19                          **III.  CONCLUSION**

20       For the reasons stated, defendant MHG's motion for certification of the order granting plaintiffs'

21  motion for reconsideration for immediate appeal under 28 U.S.C. § 1292(b), and for a stay of the case,

22  is denied.

23

24  DATED: January 22, 2008

25                                    MARGARET M. MORROW
                                      UNITED STATES DISTRICT JUDGE

26

27

28