**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
SHAW FAMILY ARCHIVES, LTD., EDITH   :
MARCUS and META STEVENS,
                                    :
    Plaintiffs,                   Case No. 05 Civ. 3939 (CM)
                                    :
      -against-              Hon. Colleen McMahon
                                    :
CMG WORLDWIDE, INC. and MARILYN
MONROE LLC,                         :

    Defendants.                   :
-----------------------------------------------------------X

## DECLARATION OF MARK ROESLER

MARK ROESLER, pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am CEO and Chairman of CMG Worldwide, Inc. ("CMG") and submit this declaration in support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment.

2. I have personal knowledge of the following facts and would make the same representations if called to testify.

3. On July 1, 1995 (prior to the formation of Marilyn Monroe LLC ("MMLLC")), the Estate of Marilyn Monroe entered an agreement with CMG whereby CMG became the Estate's exclusive licensing agent.

4. Prior to July 1, 1995, CMG actively solicited the Estate for the purpose of marketing CMG's services in the area of deceased celebrity licensing representation.

5. Solely for the purpose of marketing CMG's services in the area of deceased celebrity licensing representation and, as is customary in the licensing agency business with regard to the solicitation of new clients, on or about May 2, 1995, CMG

sent a letter to the Estate together with a CMG promotional / marketing brochure, under my signature, that was prepared by employees of CMG for the purpose of advising the Estate of the various attributes of CMG's various licensing tools which CMG uses to maximize revenue for its clients.  A true and accurate copy of the letter and marketing brochure is attached hereto as Exhibit A.

      6.      Any and all data, whether legal in nature or otherwise, as contained in the promotional / marketing brochure herein described was based upon very general information that was obtained as a result of CMG's long standing presence in the business of deceased celebrity licensing.  Specifically, the information contained in the promotional / marketing brochure was not the result of any formal (or informal) investigation into the nature and basis of the publicity rights of the late Marilyn Monroe and, furthermore, for these reasons, the information contained in the May, 1995, promotional / marketing brochure was, in no way, intended constitute a professional legal position paper or advice of counsel to the Estate with regard to publicity rights of the late Marilyn Monroe; to the contrary, CMG had no formal (or informal) relationship with or obligation to the Estate in May, 1995 because, at the time, CMG had neither been retained as agent to or as counsel for the Estate.  As such, the promotional / marketing brochure was only meant to highlight the basis and diversity of CMG's abilities to maximize licensing revenue for its clients and as a recapitulation of any discussions that we may have had with the Estate in presenting CMG's attributes to the Estate.

      7.      In particular, at no time prior to sending the promotional / marketing brochure did I or anyone at CMG perform any investigation into the issue of where

Marilyn Monroe was actually domiciled at the time of her death. Nor did I or anyone at CMG have any personal knowledge regarding the state of Marilyn Monroe's domicile.

8. Any reference to Marilyn Monroe's "domicile" in the promotional / marketing brochure was simply intended to reflect CMG's understanding that others in the marketplace had previously argued the issue of Marilyn Monroe's purported New York residence. For example, attached as Exhibit B is a newspaper article reflecting that Sam Shaw's attorney had previously taken the position that Marilyn Monroe was a New York domiciliary and thus that the Estate did not possess a right of publicity.

9. Further, any references in the promotional / marketing brochure to Indiana's comprehensive Right of Publicity Statute, were made to highlight CMG's ability to effectively prosecute claims of infringement on behalf of the Estate, and to allay any concerns that the Estate may have had with regard to CMG's headquarters being located in Indiana.

10. After beginning to serve as the Estate's licensing agent, it then became my belief that Marilyn Monroe was a domiciliary of California, not New York.

11. I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 13, 2008
       Indianapolis, Indiana

*Mark Roesler*

_____
Mark Roesler
CEO / Chairman
CMG Worldwide, Inc.