# EXHIBIT 18



This agreement made in the City of New York, State of New York as of the 2nd day of January, 1956 by and between MARILYN MONROE PRODUCTIONS, INC. a corporation duly organized and existing under the laws of the State of New York and having its principal office at 450 Lexington Avenue, in the Borough of Manhattan, City of New York (hereinafter sometimes referred to as "Productions"), and MARILYN MONROE residing at Fanton Hills, Studio House, Weston, Connecticut (herein sometimes referred to as "First Party" or "Party" or as one of the "Parties") and MILTON H. GREENE, residing at Fanton Hills, Weston, Connecticut (herein sometimes referred to as "Second Party", or "Party" or as one of the "Parties").

WHEREIN, Productions severally agrees with each of the other parties hereto and the First Party and the Second Party, each for himself agrees with Productions as follows:

FIRST:

1. It is the sense of this agreement and it shall be interpreted so far as the Parties are concerned, in the spirit of "what's good for one is good for the other".

2. Productions hereby employs the First Party to be a managing agent of Productions, one of its performers, and to do, exclusively for Productions, whatever is required of her by Productions to further the business of Productions, and its corporate purposes as now set forth in its duly filed Certificate of Incorporation, and as such Certificate of Incorporation may be hereafter amended, and to do whatever is required by Productions on her part to carry out the present and the future contractual obligations of Productions.

3. Productions hereby employs the Second Party to be a managing agent of Productions, one of its photographers, and to do, exclusively for Productions, whatever is required of him by Productions to further the business of Productions, and its corporate purposes as now set forth in its duly filed Certificate of Incorporation, and as such Certificate of In-

MM-0000068

corporation may be hereafter [illegible], and to do whatever is required by Productions on any party to carry out the present and the future contractual obligations [illegible].

SECOND: The period of employment and the term of this agreement shall be seven (7) years, commencing from the 1st day of January, 1956.

THIRD: A. The First Party hereby accepts the aforesaid employment and agrees that during the aforesaid period of employment she shall devote her entire time and energy exclusively to the furtherance of the business of Productions, and to the performance of her duties hereunder under the direction of Productions and shall not act in an advisory or other capacity or in any way work or perform services of any kind or nature for herself or for or with any individual firm or corporation other than for Productions.

B. The Second Party hereby accepts the aforesaid employment and agrees that during the aforesaid period of employment he shall devote his entire time and energy exclusively to the furtherance of the business of Productions, and to the performance of his duties hereunder under the direction of Productions and shall not act in an advisory or other capacity or in any way work or perform services of any kind or nature for himself or for or with any individual firm or corporation other than for Productions without first having obtained the written consent thereto of Productions.

C. The services hereunder required to be performed by any of the parties shall in the discretion of Productions be performed for or on behalf of any person, firm or corporation in which Productions has an interest or has a business relationship, and for or on behalf of the furtherance of the corporate purposes and contractual obligations of any parent or subsidiary corporation of Productions now in existence or hereafter to come into existence.

[illegible] A. In full consideration of the services to be rendered pursuant hereto, Productions shall pay to the First Party and she shall accept salary at the rate of One Hundred Thousand ($100,000.) Dollars for the year commencing January 1, 1956, and for each succeeding year of her employment hereunder which said salary shall be payable in equal monthly installments beginning with the 1st day of February, 1956.

B. In full consideration of the services to be rendered pursuant hereto, Productions [illegible] pay to the Second Party and he shall accept salary at the rate of Seventy Five Thousand ($75,000.) Dollars for the year commencing January 1, 1956, and for each succeeding year of his employment hereunder which said salary shall be payable in equal monthly installments beginning with the 1st day of February, 1956.

[illegible]: The First and Second Parties shall each be entitled to the same aggregate vacation time with pay in every calendar year. In no calendar year, however, shall such vacation time be less than thirty (30) days. No more than an aggregate of sixty (60) days vacation time may be accumulated by either Party and taken in any year or years subsequent to the year or years in which such vacation time would or should have been taken.

[illegible] A. Productions shall treat the Parties hereto identically and equally so far as conditions of employment and all other similar or different matters are concerned, except as to those things specifically provided for differently and unequally in this agreement. In case any change or changes are made by Productions in the contract of either of the Parties hereto, such change or changes, whether oral or in writing, shall be deemed automatically to become part and parcel of and embodied in the contract of the other Party hereto, unless rejected in writing by the said other Party within sixty (60) days of such actual notice of such change [illegible].

F. If Productions shall have the right to cancel or terminate this agreement for any cause whatever, insofar as any one of the Parties hereto is concerned, and whether or not Productions exercises such right of termination or cancellation, or if Productions for any reason whatever cancels or terminates this agreement so far as any one of the Parties is concerned, then the other Party shall have the right to terminate this agreement so far as he is concerned, upon giving thirty (30) days notice within sixty (60) days after actual knowledge of his right of termination; and in case any consideration passes to or for a Party from Productions in connection with such cancellation or termination, then such other Party exercising the right of termination shall be entitled to receive the same consideration.

G. If a Party shall exercise his right to terminate this agreement as provided in paragraph "FIFTH: F" above, this agreement, so far as Productions and he are concerned, shall be deemed terminated as though such termination were occasioned by the passage of time.

[illegible] 1. Productions shall be entitled to and shall own, in addition to each of the Party's services rendered to it hereunder, all of the results and proceeds of such services (including all rights of every kind and nature throughout the world of reproduction, manufacture, recordation, copyright, trademark and patent) without limitation, and whether such results and proceeds consist of or flow from literary, dramatic, musical, motion or still picture, mechanical, manual, or any other work, tangible or intangible, and each of the Parties does hereby assign to Productions all of the foregoing without reservation, condition or limitation. In the event that Productions shall desire to secure separate assignments of any of the foregoing, each of the Parties shall execute the same upon Productions' request therefor. If any of the Parties shall fail or refuse to execute or deliver any such separate assignments,

MM-0000071

Productions shall have and is hereby granted the right and authority to execute the same in the name and as the attorney in fact of such Party.

B. All inventions, ideas, processes and designs (whether or not patentable or susceptible to trademark protection and whether or not so protected) together with all patents, trademarks and other rights resulting therefrom, and any improvements in existing patents or trademarks which any Party may devise or invent or take part in devising or inventing, during the term hereof in connection with his work shall be the property of and belong to Productions; and each Party hereby assigns and transfers the same to Productions in all respects and for all purposes without reservation, condition or limitation. In the event that Productions shall desire to secure separate assignments of any of the foregoing, each of the Parties shall execute the same upon Productions' request therefor. If any of the Parties shall fail or refuse to execute and deliver any such separate assignment, Productions shall have and is hereby granted the right and authority to execute the same in name and as attorney in fact of such Party.

C. Neither of the Parties shall transfer or attempt to transfer any right, privilege, title or interest in or to any of the services or results of such services or proceeds of such services, rendered in connection with this agreement or otherwise, and neither of the Parties shall permit any person, firm or corporation to infringe in any manner upon such rights hereby granted to Productions, and Productions is hereby authorized in the name of Productions to institute at its own expense any legal proceedings to prevent such infringement.

EIGHTH: Productions is hereby granted the exclusive right to use and display the name, voice and likeness of each of the Parties for advertising, endorsements, commercial tieups, or publicity purposes.

FIFTH: Whenever billing or credits are customarily given to persons performing similar tasks in connection with the services or results and proceeds of such services rendered by either of the Parties hereto, such billing and credits shall be given to each Party hereto as is customary for other highest ranking persons performing such services.

SIXTH: Productions now has and shall continue to have the sole right to use the name "MARILYN MONROE" as part of its corporate name and title, and it shall also have the sole right to use the names (or parts thereof, separately or in conjunction with the other Party) of any of the Parties hereto, as part of its own corporate name and title, or as part of the name and title of any subsidiary or parent firm or corporation engaged in similar business. These ri[illegible] shall not be affected by the termination of a Party's associa[illegible] with Productions, either as stockholder or employee, or by any other cause. In the event that either of the Parties ceases to be employed by Productions for any reason, he will not thereafter use or permit the use of his full name, or any part thereof in the name or trademark of any corporation, partnership or other business with which he is associated in any capacity, directly or indirectly, and which is engaged in a business similar in any respect to that conducted by Productions unless the name or trademark includes also other words denoting that such business is a separate organization, business or entity, entirely distinct from and not to be confused with Productions, and unless such name or trademark does not contain any words stating or suggesting prior or current affiliation or connection with or experience in the business or otherwise with Productions.

SEVENTH: A. If Productions shall require the services of any of the Parties hereto outside of the Metropolitan area of New York it shall furnish first class round trip transportation for such Party, and necessary expense items [illegible] York [illegible] such Party was located preceding

MM-0000073

Productions or from New York City, whichever is further. Such transportation shall consist, in the discretion of the affected Party, of a drawing-room, if he wishes to travel by train, or a lower berth on a plane at night, it being understood that such accommodations will be furnished if available, and if not available, the next best accommodation will be furnished. In addition, and for each day he renders services outside the metropolitan area of New York such Party shall be reimbursed for actual and reasonable living expenses, but not more than five hundred ($500.) dollars a week. If, however, such Party is making his home in the place he is then rendering services Productions will not be obliged to reimburse him.

8. If by reason of the fact that any Party hereto is required to render his services hereunder outside the United States he becomes obligated to pay any income tax to any foreign government or tax authority, Productions shall pay to him a sum equal to the amount by which:

1) the total income tax of the Party paid to any and all governments or legally constituted tax authorities for any taxable period, after making full allowance for all possible [illegible] and other credits and deductions to which the Party may be legally entitled, exceeds

2) the total income tax that would have been due from the Party if he had rendered his services during such period in the City of New York.

The aforesaid amount shall be paid to the Party as and when ascertained. If the laws of any foreign country require the Party to pay an income tax on the compensation received by him for services rendered there, before permitting him to leave, Productions shall advance the same on behalf of the Party. Immediately upon the termination of the tax period of the Party during which such advance was made by Productions, he sha[illegible] to Productions for such part of the [illegible]

advance or shall be borne by the party pursuant to the provisions above set forth.

[illegible]: 1. If any Party shall suffer any illness, facial or other physical injury or impairment, deformity or disfigurement materially detracting from his appearance, or ability to perform the services which Productions shall require, or if by reason of any other disability, mental, physical or otherwise, he shall be incapacitated from fully performing and complying with terms and conditions hereof on his part to be performed, and such incapacity shall continue for a consecutive period in excess of two hundred seventy (270) days or for aggregate periods in excess of three hundred thirty (330) days during any calendar year, thereafter Productions shall have the right and option to terminate this contract, and upon the exercise by Productions of such right and option by written notice to such Party, this contract shall be deemed terminated as though such termination were occasioned by passage of time.

2. In the event of an illness or of a mental or physical disability of a Party as aforesaid, Productions shall have the right to have him examined from time to time by such medical doctors as Productions may designate, it being understood, however, that such examination be had in the presence of such medical doctors as are selected by such disabled Party.

[illegible]: Productions shall require, and each Party shall perform the services for Productions (or others as elsewhere herein provided) herein contracted for in the manner that shall be conducive to the best interests of Productions (or others as elsewhere herein provided for) and of the business in which Productions (or others as elsewhere herein provided for) is engaged. In the event that either Party shall conduct himself, either while rendering such services for Productions (or others as elsewhere herein provided) or at any other time during the term hereof, in such manner as to commit an offense involving moral turpitude under Federal,

local law or ordinance, or in the event that he shall conduct himself in a manner that shall offend against decency, morality or social propriety, or that shall cause him to be held in public ridicule, scorn or contempt, or that it cause public scandal then, and in such event or events, Productions shall have the right to terminate this agreement and all of its further obligations and further liabilities whatsoever hereunder, including credits and billing, but excluding all other liabilities and obligations which by their nature, survive the termination of this contract occasioned by the passage of time.

INJUNCTION: A. Each of the Party's services herein contracted for are of a special, unique, unusual, extraordinary and intellectual character and of great and peculiar value to Productions and neither Party's talent and services can be replaced by Productions. Productions and each Party agree that in an action at law for the loss of services of such Party, by reason of the breach or default of such Party, Productions may be entitled to damages and that monetary award alone may be inadequate to compensate Productions for the loss of said services of such Party, and that in addition to the rights of Productions, if any, to such monetary award, Productions shall have the right to bring an action to enjoin and restrain any such breach by a Party of his obligations to Productions under this agreement.

B. No waiver by Productions or either Party hereto of the non-performance or breach of any term, condition or obligation to be performed by, or binding upon Productions, or the other Party, or Parties, shall be a waiver of any subsequent non-performance or breach of the same, or any other term, condition or obligation.

C. No waiver or modification of any of the terms of this agreement shall be valid unless in writing. No waiver of a breach of any provision hereof, or a default under any provision hereof, shall be deemed a waiver of such provision or of any subsequent breach or default of any kind or