# EXHIBIT 110

At a Surrogate's court, held in and for the County
of __New York__ at __Hall of Records__
in said county, on the __20__
day of __January__ 19 __70__

PRESENT,

Hon. __Samuel J. Silverman__
~~Samuel J. Di Falco~~   Surrogate

FILE NO. P 2781   19  62

IN THE MATTER
OF THE
APPRAISAL OF THE ESTATE OF

MARILYN MONROE
                        _Deceased_

ORDER FIXING TAX ON REPORT

On reading the report filed the __30th__ day of __December__, 19 __69__,
of __MILTON ELETZ~~succeeding Samuel Eletz~~__, the appraiser appointed by order
of this Court, dated the __7th__ day of __August__, 19 __64__, and it
appearing that the said decedent died on the __5th__ day of __August__,
19 __62__, it is

ORDERED AND ADJUDGED that the market value of the gross estate of said decedent at the
time of death, the amount of exemptions and deductions allowed from said gross estate, the net amount
of said estate which is subject to tax under the provisions of Article 10-C of the Tax Law, and the
amount of tax to which the same is liable, shall be and the same hereby is assessed, fixed and determined
as follows:

Gross estate ................................................................................ $ 836,524.81

Total deductions allowed by statute .................................. 378,556.42

Net estate ................................................................................ $ 457,968.39

Tax on first $50,000 less exemptions of $ __10,000.__ ....... $ 800.00

Tax on next $100,000 less
    additional exemptions of $ _____ ................................. $ 3,000.00

Tax on net estate in excess of $150,000 ......................... $ 13,898.42

Total tax ................................................................................ $ 17,698.42

FILED JAN 20 1970

_Samuel J. Silverman_
                    Surrogate

STATE OF NEW YORK
County of ....................

In the Matter of the Appraisal under the Estate
Tax Law of the Estate of

**MARILYN MONROE**                                        Deceased.

**RECEIVED**
AUG 6  1964
TRANSFER & ESTATE TAX
DEPARTMENT OF TAXATION
AND FINANCE

STATE OF NEW YORK
County of ....New York.... } ss.:

.....AARON R. FROSCH.......... executor of the estate of the
above named decedent, being duly sworn in this proceeding for the determination of the tax, if any, to be paid upon the assets of the
said estate under Article 10-C of the Tax Law, deposes and says that as such .................. executor deponent is personally familiar
with the affairs of said estate, the property constituting the assets thereof, their fair market value, and the debts, expenses and charges
properly allowable as deductions therefrom, and makes the following return:

**GENERAL INFORMATION**

1. Date of death ........Aug. 5, 1962.............................. 2. Resident of ..New York........................... County.

3. Did the decedent leave a will? (Answer "yes" or "no")..........Yes................ If the answer is "yes" attach copy of last will.

4. Letters of administration *testamentary* were issued on ......October 30, 1962.............by the Surrogate's

Court of ......New York..........................County.

5. The names and post-office addresses of the executors or administrators are:

| Name | Past Office Address |
|---|---|
| AARON R. FROSCH | 120 E. 56th Street, New York 22, New York |

## GROSS ESTATE

Answer all questions "yes" or "no" and submit appropriate schedule in each case where answer is "yes."
Refer to instructions for each schedule in listing the assets.

**SCHEDULE A—REAL ESTATE**

6. Did the decedent at the time of death own any interest in real estate located within the State of New York?...No.

**SCHEDULE B—STOCKS AND BONDS**

7. Did the decedent at the time of death own any stocks and bonds?.....Yes.

**SCHEDULE C—MORTGAGES, NOTES AND CASH**

8. Did the decedent at the time of death own any mortgages, notes or cash?.....Yes.

**SCHEDULE D—INSURANCE**

9. Was any insurance on life of decedent receivable by his estate?.................Yes.

10. Was any insurance on life of decedent receivable by beneficiaries other than the estate?......No.

**SCHEDULE E—JOINTLY OWNED PROPERTY**

11. Did the decedent at the time of his death own any property as a joint tenant or as a tenant by the entirety with right of
survivorship or as community property?.....No.

**SCHEDULE F—OTHER MISCELLANEOUS PROPERTY**

12. Did the decedent, at the time of death, own any interest in a co-partnership or unincorporated business?........No.

13. Did the decedent, at the time of death, own any miscellaneous property not returnable under any other schedule?...Yes.

**SCHEDULE G—TRANSFERS DURING DECEDENT'S LIFE**

14. Did the decedent during life make any transfer, including any transfer believed to be nontaxable, which the instructions
with reference to Schedule G require to be reported?.....No.

15. Was there in existence at the time of decedent's death any trust created by him during life? Yes – copy of trust
                                                                                                hereto attached

**SCHEDULE H—POWERS OF APPOINTMENT**

16. Did the decedent, at any time, possess, release or exercise any power of appointment?......No.

**SCHEDULE I—ANNUITIES**

17. Was any annuity or other payment receivable by any person surviving the decedent under an annuity contract or any similar
contract or agreement, other than a policy of life insurance?......No.

## DEDUCTIONS

**SCHEDULE J—FUNERAL AND ADMINISTRATION EXPENSES**

18. Itemize the funeral expenses and administration expenses in Schedule J.

**SCHEDULE K—DEBTS OF DECEDENT**

19. Itemize the debts of the decedent in Schedule K.

**SCHEDULE L—MORTGAGES AND LIENS, AND NET LOSSES DURING ADMINISTRATION**

20. List deductions claimed for these items in accordance with instructions.

**SCHEDULE M—MARITAL DEDUCTION FOR TRANSFERS TO SURVIVING SPOUSE**

21. Itemize in this schedule all interests in property transferred to decedent's surviving husband or wife, with respect to
which a deduction is claimed.

**SCHEDULE N—CHARITABLE, PUBLIC, AND SIMILAR GIFTS AND BEQUESTS**

22. Itemize in Schedule N all devises and bequests to exempt corporations or associations.

**SCHEDULE O—BENEFICIARIES**

23. Give in Schedule O a statement of the names of all persons beneficially interested in the estate, the nature of their
respective interests, etc.

I HEREBY CERTIFY THAT: No income tax deduction, either Federal or State, has been or will be claimed by the decedent
or his estate, for a taxable year ending on or after December 31, 1960, on account of any administrative expenses, expenses of the decedent's
medical care or casualty losses during administration, for which estate tax deductions are claimed herein.

Sworn to before me this

....31st... day of ....July.... 1964

*ELLIOT J. LEFKOWITZ*
Notary Public, State of New York
No. 03-7474275
Qualified in Bronx County
Certificate filed in New York County
Commission Expires March 30, 1966

Aaron R. Frosch                    Executor

MM-0000002

## SCHEDULE A—REAL ESTATE

Real estate should be so described that it may be readily located. Give town or city, map, lot, block and section numbers, and place of record of deed. State the exact right, title or interest the decedent had in every parcel of real estate. The full valuation of the property and not the equity must be given. The mortgages should be deducted under Schedule I. Show also, with respect to each parcel of property, the assessed valuation thereof, and furnish the estimated market value at the date of death. Attach appraisal made by a competent real estate appraiser.

Real property which the decedent has contracted to purchase should be listed in this schedule. The full value of the property and not the equity must be shown. The unpaid portion of the purchase price should be deducted under Schedule E.

The value of dower and courtesy is taxable, and no reduction on account thereof or on account of homestead or other exemptions should be made in returning the value of the real estate.

All rents accrued and unpaid should be apportioned to the date of death, whether due at that time or not.

## SCHEDULE B—STOCKS AND BONDS

*Description.*—Description of stocks should indicate number of shares, whether common or preferred, issue, par value, price per share, exact name of corporation, and, if not listed on a stock exchange, the post-office address of the principal business office, the State in which incorporated, and the date of incorporation. If listed, state principal exchange upon which sold. Description of bonds should include quantity and denomination, name of obligor, kind of bond, date of maturity, interest rate, and interest-due dates. State the exchange upon which listed, or if unlisted the principal business office of the company.

*Valuation.*—In the case of stocks and bonds listed on a stock exchange the mean between the highest and lowest quoted selling prices on the date of death shall be considered as the fair market value per share or bond. If there were no sales on the date of death, such value shall be determined by taking the mean between the highest and lowest sales on the nearest date before and the nearest date after the date of death (both such nearest dates being within a reasonable period), and by prorating the difference between such mean prices to the date of death, and by adding or subtracting, as the case may be, such prorated portion of the difference to or from the mean price obtaining on such nearest date before the date of death. For example, assume that sales of stock nearest the date of death (June 15) occurred 2 days before (June 13) and 3 days after (June 18) and that on such days the mean sale prices per share were $10 and $15, respectively. The price of $12 shall be taken as representing the fair market value of a share of such stock as of the date of death. If, however, on June 13 and 18 the mean sale prices per share were $15 and $10, respectively, the price of $13 shall be taken as representing the fair market value of a share of such stock as of the date of death. If the security was listed on more than one exchange, the records of the exchange where the security is principally dealt in should be employed. In valuing listed stocks and bonds the executor should observe care to consult accurate records to obtain values as of the date of death.

Dividends declared on shares of stock prior to the death of the decedent but payable to stockholders of record on a date after his death are not includable in his gross estate for estate tax purposes. However, in a case where the stock is being traded on an exchange and is selling ex-dividend on the date of the decedent's death, the amount of the dividend should not be included in the gross estate as a separate item but should be added to the ex-dividend quotation in determining the fair market value of the stock as of the date of the decedent's death.

In the case of stocks and bonds which are not listed upon an exchange, but are dealt in through brokers or have a market, the fair market value shall be determined by taking the mean between the highest and lowest selling prices as of the date of death; or, if there were no sales on that date, such value shall be determined by taking the mean between the highest and lowest sales on the nearest date before and the nearest date after the date of death (both such nearest dates being within a reasonable period), and by prorating the difference between such mean prices to the date of death, and by adding or subtracting, as the case may be, such prorated portion of the difference to or from the mean price obtaining on such nearest date before the date of death. If quotations are obtained from brokers, or evidence as to the sale of securities is obtained from the officers of the issuing companies, copies of the letters furnishing such quotations or evidence of sale should be attached to the return.

If actual sales are not available during a reasonable period beginning before and ending after the date of death, the fair market value may be determined by taking the mean between the bona fide bid and asked prices on the nearest date before and the nearest date after the date of death (such nearest dates being within a reasonable period), and by prorating the difference between such mean prices to the date of death, and by adding or subtracting, as the case may be, such prorated portion of the difference to or from the mean price obtaining on such nearest date before the date of death. If actual sale prices or quoted bona fide bid and asked prices are available on a date within a reasonable period prior to the date of death, but if no actual sale prices or bona fide bid and asked prices are available on a date within a reasonable period after the date of death, or vice versa, then the mean between the highest and lowest available sale prices or bid and asked prices may be taken as the value.

*Inactive unlisted stock in close corporations* should be valued upon the basis of the company's net worth and earning capacity. Attach to each set of schedules balance sheets and earning statements of such companies for five years preceding the date of death. If there were any sales of these securities within a reasonable period before or after the date of death, furnish a statement of such sales, showing the number of shares sold and the prices at which sold.

Securities returned as of no value or of nominal value should be listed last and a statement furnished of the reasons for returning them as of no value or of nominal value.

*Accrued interest on bonds* should be computed to the date of death and reported separately.

*Community Property.* If a decedent died after April 18, 1943, a transfer of property held as community property by the decedent and surviving spouse under the law of any state, territory, or possession of the United States, or any foreign country, shall be considered to have been made by the decedent, except such part thereof as may be shown to have been received as compensation for personal services actually rendered by the surviving spouse or derived originally from such compensation, or from separate property of the surviving spouse. This reference to community property applies not only to Schedule B but also to Schedules C, F, and G.

## SCHEDULE C—MORTGAGES, NOTES AND CASH

The five classes of property in this schedule should be listed separately in the order given.

*Mortgages.* State (1) the face value and the unpaid balance (2) the date of mortgage, (3) the name of maker, (4) property mortgaged, (5) interest date and rate of interest, (6) the date to which interest was paid, and (7) date of maturity. Add accrued interest to date of death.

*Notes.* Give similar data.

*Contract by Decedent to Sell Land.* Give name of vendee, date of contract, description of property, sale price, initial payment, amounts of installment payments, unpaid balance of principal and accrued interest, interest rate, and date prior to decedent's death to which interest had been paid.

*Cash in Possession.* List separately from bank deposits.

*Cash in Bank.* Give name of bank and address, amount in bank, accrued interest, if any.

## SCHEDULE D—INSURANCE

*Insurance.* Include all insurance upon the life of the decedent, stating whether payable to the estate or to a named beneficiary. For annuities, see instructions under Schedule I.

## SCHEDULE E—JOINTLY OWNED PROPERTY

All property of whatever kind or character, whether real estate, personal property, bank accounts, etc., in which the decedent held at the time of his death an interest either as a joint tenant, a tenant by the entirety or as an owner of community property, must be returned under this schedule, with a few exceptions.

The full value of the property must be included, unless it can be shown that a part of the property originally belonged to the other tenant or tenants and was never received or acquired by the other tenant or tenants from the decedent for less than a fair consideration in money or money's worth.

Where it is shown that the property or any part thereof, or any part of the consideration with which the property was purchased, was acquired by the other tenant or tenants from the decedent for less than an adequate and full consideration in money or money's worth, there should be omitted from this schedule only so much of the value of the property as is proportionate to the consideration furnished by such other tenant or tenants.

Where the property was acquired by gift, bequest, devise, or inheritance by the decedent and spouse as tenants by the entirety, then only one-half of the value of the property should be listed on this schedule. Where the property was acquired by the decedent and another person or persons by gift, bequest, devise, or inheritance as joint tenants, and their interest are not otherwise specified or fixed by law then there should be entered on this schedule only such fractional part of the value of the property as is obtained by dividing the full value of the property by the number of joint tenants.

If the executor contends that less than the value of the entire property is includable in the gross estate for purposes of the tax, the burden is upon him to show his right to include such lesser value and in such case he should make proof of the extent, origin, and nature of the decedent's interest and the interest of decedent's co-tenant or co-tenants.

If the property consists of real estate, the assessed valuation thereof for the year of death should be shown, and the estimated market value as of the date of death should be furnished upon proof by an appraisal made by a competent real estate appraiser.

Property in which the decedent held an interest as a tenant in common should not be listed here but the value of his interest therein should be returned under Schedule A if real estate, or personal property under the appropriate schedule. The value of the decedent's interest in a partnership should be reported under Schedule F.

## SCHEDULE F—OTHER MISCELLANEOUS PROPERTY

Under this schedule include all items of gross estate not returned under another schedule, including the following: Debts due the decedent, interests in business, claims, rights, royalties, pensions, leaseholds, judgments, shares in trust funds, etc., estates of other decedents, household goods and personal effects, including wearing apparel, farm products and growing crops, livestock, farm machinery, automobiles, etc., etc.

When an interest in a copartnership or unincorporated business is returned, submit statement of assets and liabilities as of date of death and for the five years preceding and a statement of the net earnings for the same five years. The decedent, Good will must be accounted for.

In listing automobiles, give make, model, year, and condition as of date of decedent's death.

2

Give title of schedule and total each schedule.
It is not necessary to submit a schedule unless the property in the estate requires its use, nor is it necessary to place each schedule on a separate sheet unless that is more convenient in the preparation of the schedule.

| DESCRIPTION | AMOUNT | Values as Appraised in this Proceeding (Leave this blank) |
|---|---|---|
| **SCHEDULE A - Real Estate** *Located State of California* | | |
| NONE | | |
| **SCHEDULE B - Stocks and Bonds** | | |
| 1. 100 shares no par value preferred stock of MARILYN MONROE PRODUCTIONS, INC. Said preferred stock is the corpus of a trust. A copy of Trust Indenture is hereto annexed. | *61,250.19* | |
| 2. 101 shares of common stock no par value of MARILYN MONROE PRODUCTIONS, INC. | $ 7,250.19 | |
| **SCHEDULE C** Mortgages, Notes and Cash | | |
| 1. Cash at decedent's N.Y. Residence | 3.50 | |
| 2. Checking Account - Irving Trust Co. | 2,334.65 | |
| 3. Savings Account - Bowery Savings Bank | 614.29 | |
| Savings Account - Excelsior Savings Bank | 1,171.06 | |
| Account First National City Bank | 84.67 | |
| 6. Account - City National Bank of Beverly Hills, Beverly Hills, Calif. | 2,200.00 | |
| 7. Cash at decedent's California residence | 405.00 | |
| | $ 6,813.17 | |
| **SCHEDULE D - Insurance** | | |
| 1. Union Labor Life Insurance No.1263, payable to the decedent's estate | $ 3,000.00 | |
| **SCHEDULE E** Jointly Owned Property | | |
| NONE | | |
| **SCHEDULE F** Other Miscellaneous Property | | |
| 1. Furs and miscellaneous jewelry from New York apartment | $ 1,423.00 | |
| 2. Personal effects and clothing and furniture at decedent's apartment at 444 W. 57th St., New York City | 11,057.00 | |
| 3. Clothing and personal effects at decedent's residence in California | 1,558.00 | -0- |
| 4. Furniture and furnishings at decedent's residence in California | 2,486.00 | -0- |
| | | (Cont.) |

*Federal Line Audit Annexed.*

TT 143 A

Give title of schedule and total each schedule.
It is not necessary to submit a schedule unless the property in the estate requires its use, nor is it necessary
to place each schedule on a separate sheet unless that is more convenient in the preparation of the schedule.

| DESCRIPTION | AMOUNT | Values as Appraised in this Proceeding (Leave this blank) |
|---|---|---|
| **SCHEDULE F (Cont.)** | | |
| 5. Refund of NYState income tax for 1962 | $ 4,935.36 | |
| 6. Return of premium on NY Insurance Fund | 10.85 | |
| 7. Return of premium on Royal Insurance Co. policy | 351.05 | |
| 8. Commuted value after payment of taxes of decedent's rights pursuant to contract dated 7/1/58 between decedent and Ashton Productions, Inc. pertaining to motion picture "SOME LIKE IT HOT" and | | 593,675.88 |
| in contract between decedent and Seven Arts Productions, Inc. dated 1/30/60 pertaining to the motion picture, film "THE MISFITS" | 140,920.00 | 153,008.31 |
| 9. Decedent's share in Profit Sharing Plan Marilyn Monroe Productions, Inc. | 13,832.45 ($176,573.71) | |

*Total F = $764,461.45*

**SCHEDULE G**
**Transfers During Decedent's Life**

1. The decedent created a trust on October 26, 1959 for the benefit of her mother, Gladys Baker, to which the decedent transferred 100 shares of preferred stock of Marilyn Monroe Productions, Inc. This trust is disclosed for information purposes only, as it is not includible in the decedent's gross estate. Though this transfer was made within three years before decedent's death such transfer was not made in contemplation of death. Decedent's motive of making the said transfer was to provide an annual income to her mother and at the time of such transfer there was no contemplation of death and no undue influence. *perfected*

1000 00

**SCHEDULE H**
**Powers of Appointment**
NONE

**SCHEDULE J**
**Funeral and Administration Expenses**

1. Westwood Memorial Funeral expenses     $ 4,352.00

TT 163 A

Give title of schedule and total each schedule.
It is not necessary to submit a schedule unless the property in the estate requires its use, nor is it necessary
to place each schedule on a separate sheet unless that is more convenient in the preparation of the schedule.

| DESCRIPTION | AMOUNT | Values as Appraised in this Proceeding (Leave this blank) |
|---|---|---|
| SCHEDULE J – (Cont.) | | |
| 2.  Bel Air Patrol Co. – guarding property | $ 1,982.75 | |
| 3.  Norman Jefferies – handy man services | 360.00 | |
| 4.  Landon Pool Service – pool maintenance | 496.52 | |
| 5.  Edward P. Halavaty – lock and key services | 71.55 | |
| 6.  West L.A. Patrol – guarding property | 1,325.00 | |
| 7.  General Telephone | 123.35 | |
| 8.  Sam Tateishi – gardener | 939.55 | |
| 9.  Department of Water and Power – water and electricity | 203.31 | |
| 10.  Southern Counties Gas Co. | 185.62 | |
| 11.  Appraisal Bureau | 220.00 | |
| 12.  Actual Appraisal Co.,Inc. for appraisal | 300.00 | |
| 13.  Appraiser | 96.78 | |
| 14.  Rovins & West, – insurance on decedent's household effects for two years | 1,989.96 | |
| 15.  J. Santini & Bros., Inc. – storage charges | 2,021.00 | |
| 16.  Bekins Van & Storage | 54.10 | |
| 17.  Cherie Redmond – secretarial services | 689.30 | |
| 18.  Fidelity Van & Storage | 767.45 | |
| 19.  Eunice Murray – housekeeping after death | 400.00 | |
| 20.  Mura Bright – services and expenses reimbursement | 181.60 | |
| 21.  Estimated additional administration expenses for storage of personal and household effects increases at the rate of 197.75 per month – estimated additional 12 months charges until disposed of | 2,373.00 | |
| *Total J* | $ 19,132.84 | |

MM-0000006

TT 147 A

Give title of schedule and total each schedule.
It is not necessary to submit a schedule unless the property in the estate requires its use, nor is it necessary
to place each schedule on a separate sheet unless that is more convenient in the preparation of the schedule.

| DESCRIPTION | AMOUNT | Values as Appraised in this Proceeding (Leave this blank) |
|---|---|---|

## SCHEDULE K – Debts of Decedent

| | | |
|---|---|---|
| 1. James M. Attley d/b/a V. Adair Co. window screens | $  29.85 | |
| 2. Don J. Briggs, Inc. – merchandise sold delivered | 215.41 | |
| 3. Buzin News Co. – advertising | 94.00 | |
| 4. State of California Department of Employment | 99.18 | |
| 5. Drs. Conti and Steinberg – professional services | 25.00 | |
| 6. C & J Howard, Inc. c/b/a London Pool Service | 37.00 | |
| 7. Consolidated Edison, electric service | 29.89 | |
| 8. Dr. Hyman Engelberg, for professional services | 478.00 | |
| 9. Agnes M. Flanagan – hair styling | 840.00 | |
| 10. Francis Orr Stationery Co. | 5.55 | |
| 11. General Telephone, telephone bill | 274.61 | |
| 12. Robert K. Goka d/b/a Frank's Nurseries – trees etc. | 59.64 | |
| 13. Dr. Ralph R. Greenson, for professional services | 1,400.00 | |
| 14. Austin A. Innes – carpentry | 45.17 | |
| 15. Arthur P. Jacobs – reimbursement of expenses | 797.85 | |
| 16. Norman Jefferies | 180.00 | |
| 17. 444 Management Co. for amounts due with respect to decedent's N.Y. apartment | 2,290.00 | |
| 18. Magnetic Springs Water Co. – spring water | 3.60 | |
| 19. Malone Studios Service, Inc. – cleaning of clothes | 111.50 | |
| 20. New York Telephone Co. | 40.36 | |
| 21. Jack M. Ostrow, accountant's fees | 2,500.00 | |
| 22. The Pacific Telephone & Telegraph Co. telephone services | 14.66 | |
| 23. Jose Paraeo – tile work | 66.00 | |
| 24. Raese Period Furniture – gates, 7 hinges | 313.92 | |
| 25. Rand-Fields, Inc. – airline tickets | 205.59 | |
| 26. Santa Monica Dairy Co. – dairy products | 6.06 | |
| 27. Saks Fifth Avenue – clothes etc. | 388.32 | |
| 28. Allan Snyder, professional photographer | 1,800.00 | |
| 29. A. Ray Tolman, for work done at decedent's California residence | 150.00 | |
| 30. Sam S. Tateishi – gardening services | 40.00 | |
| 31. H.B. Thompson d/b/a Thompson Electric Co. labor and material | 111.45 | |
| 32. Vincente Pharmacy – drugs | 58.57 | |
| 33. Weissberger & Frosch, legal and accounting services | 15,000.00 | |
| 34. Gang, Tyre, Rudin & Brown – legal services | 10,000.00 | |
| 35. Affiliated Telephone Answering Service Inc. | 19.10 | |
| 36. Elizabeth Arden | 93.55 | |
| 37. Mura Bright – goods, merchandise and services rendered | 1,050.67 | |

(Cont.)

MM-0000007