# EXHIBIT 120

THE STATE OF NEW YORK
SURROGATE'S COURT : COUNTY OF NEW YORK
----------------------------------------------------------------X
In the Matter of the Petition of Nancy Miracle to Revoke
Letters Testamentary, etc. and to Vacate Decrees
Settling the Accounts in the Estate of

        MARILYN MONROE,

               Deceased.

File No. 2781-1962
----------------------------------------------------------------X

PREMINGER, S.

    In its order dated June 17, 2002, the Court converted respondents' motion to dismiss to a motion for summary judgment and required that petitioner come forward with some evidence raising a question of fact as to whether she is the child of famed actor Marilyn Monroe. Petitioner Nancy Miracle has not done so, and consequently respondents' motion should be granted and her petition to revoke the letters issued and to vacate settled decrees on the accounts in this estate should be dismissed.

    Petitioner admits that she was born in Brooklyn at 3:16 a.m. on September 14, 1946. She claims, however, that her birth certificate lists the wrong mother. Instead of Jennie Cusamano Maniscalco, petitioner claims that Jennie's sister, Nancy Cusamano, is her mother and that Nancy Cusamano is actually who became Marilyn Monroe. Petitioner offers nothing more than speculation to support this claim. Her belief that she is Marilyn Monroe's daughter began in 1985, when a friend told her that she was the actor's daughter. Although petitioner states that she thereafter called Jennie "aunt-mom" and that Jennie, who has since died, admitted to petitioner that she was not petitioner's mother, none of this connects petitioner with decedent.

    Petitioner claims, however, that at a dinner at a Chinese restaurant in 1985, the playwright Arthur Miller, who was married to decedent in the late 1950's, told her that she was decedent's daughter. She also avers that a worker at the Social Security Administration office told her that

Nancy Cusumano's social security number and Marilyn Monroe's social security number were the same. Both claims are unverified, inadmissable hearsay, which in this case cannot serve as a defense to the summary judgment motion (see Shapiro v Health Ins. Plan of Greater N.Y., 7 NY2d 56, 63 [evidentiary facts required, not surmise or conjecture]; Agoglia v Sterling Foster & Co., 237 AD2d 549, 550 [affidavit relating hearsay rumors insufficient]; Memory Gardens, Inc. v D'Amico, 91 AD2d 1159, 1160). Moreover, the letters petitioner has provided from the Social Security Administration fail to support her claim and conclude that they are "unable to establish your [petitioner's] relationship to Nancy Cusumano."

Respondents have also shown that it would have been practically impossible for Marilyn Monroe to have been in Brooklyn on the morning petitioner was born. Respondents have provided a copy of the decree divorcing Norma Jean Dougherty from James Dougherty by the Clark County, Nevada Eighth Judicial District Court. The decree states that Norma Jean Dougherty personally appeared on September 13, 1946, approximately 10 to 15 hours before petitioner was born in the wee hours of September 14th. Petitioner does not deny that decedent originally went under the name Norma Jean Baker and that her first marriage was to James Dougherty. Nor does petitioner deny that decedent was divorced from James Dougherty on September 13, 1946 in Las Vegas, Nevada.

Although we take trans-continental air travel for granted today, it was practically impossible in 1946. Respondents researched and have provided information on the commercial flights available between Las Vegas and New York in 1946. Only Trans World Airlines and Western Air Lines provided service between those two cities, neither were direct and these flights leaving in the evening took over 17 hours and arrived in New York well into the afternoon

-2-

MM-0003082

the next day. Even if a pregnant woman about to have a baby had left Las Vegas on September 13, 1946, she never would have arrived in Brooklyn by 3 a.m. on the 14th to give birth. Petitioner has failed to rebut this evidence.

Although petitioner claims that under CPLR 3212(f) she should be given a chance for further discovery to oppose the motion, it does not appear from the submissions, as required by that rule, that "facts essential to justify opposition may exist." The "mere hope that evidence sufficient to defeat a motion for summary judgment may be uncovered" is not enough (Anderson v Rehabilitation Programs, Inc., 240 AD2d 524; see Ingalsbe v Chicago Ins. Co., 287 AD2d 939). Although petitioner has had over 15 years to locate some evidence that she is decedent's daughter, she has come up with nothing. The Los Angeles County Police Department was cooperative with petitioner and provided her a copy of decedent's fingerprints, but the forensic investigator, hired by petitioner to compare them with those on the back of petitioner's birth certificate, concluded that he could not "give a definite finding due to the poor quality of the prints taken of the deceased." Likewise, the fact that decedent may have been visited petitioner's grandmother and that petitioner has various photographs of or with the decedent, does not raise a question of fact as to whether petitioner's mother was Marilyn Monroe, one of the most popular and most investigated persons of the Twentieth Century.

Accordingly, respondents' motion for summary judgment is granted and Nancy Miracle's petition is dismissed in its entirety.

This constitutes the decision and order of the Court.

Dated: February 5, 2003

SURROGATE

MM-0003083