# EXHIBIT E

Switch Client | Preferences | Sign Off | ? Help

Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator    Dossier | History

Source: Legal > States Legal - U.S. > New York > Find Cases > NY Federal & State Cases, Combined
Terms: **shaw and rizzoli and "no renewals were obtained"** (Edit Search | Suggest Terms for My Search | Feedback on Your Search)

*1999 U.S. Dist. LEXIS 3233, \*; 51 U.S.P.Q.2D (BNA) 1097;*
*Copy. L. Rep. (CCH) P27,900*

SAM **SHAW**; EDITH **SHAW** MARCUS, HENRI DAUMAN; ROY SCHATT; GEORGE BARRIS; TOM KELLEY STUDIOS, INC.; SHIRLEY de DIENES; WILLIAM SARRIS; PHIL STERN; BERT STERN; TRAVILLA, INC.; MARIO RIVA; QUON EDITIONS, INC.; PATRICIA FOX; ANTONELLO VILLANI; CARL E. ROLLYSON; VALERIE WEICH; THE ARCHIVES OF MILTON H. GREENE, LLC, jointly with THE ARCHIVES OF MILTON H. GREENE (INT.) LLC; MEGNUM PHOTOS INC., as agent for ELLIOT ERWITT and EVE ARNOLD; and MICKEY PEDERSON a/k/a MICKEY SONG, Plaintiffs, - AGAINST - **RIZZOLI** INTERNATIONAL PUBLICATIONS, INC.; RCS LIBRI & GRANDI OPERA SPA; POOL 4 ART WORLD, SRL; STEFANO PETRICCA; MARTA FRANCOCCI; GIANNI MERCURIO; PAOLO FRULLINI; and VALPA SRL, as successor in interest to POOL 4 ART WORLD SRL, Defendants. **RIZZOLI** INTERNATIONAL PUBLICATIONS, INC.; RCS LIBRI & GRANDI OPERA SPA, Third-Party Plaintiffs, - AGAINST - VALPA SRL, Third-Party Defendants.

96 Civ. 4259 (JGK)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1999 U.S. Dist. LEXIS 3233; 51 U.S.P.Q.2D (BNA) 1097; Copy. L. Rep. (CCH) P27,900

March 19, 1999, Decided
March 23, 1999, Filed

**DISPOSITION:** [*1] Defendants' motion for partial summary judgment granted in part and denied in part. Plaintiffs' motion for partial summary judgment denied in its entirety. Claim for return of property withdrawn.



**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff artists and defendant publishers moved for partial summary judgment in an action by plaintiffs seeking damages and injunctive relief for copyright and trademark infringement and violations of the Visual Artists' Rights Act of 1990, 17 U.S.C.S. § 106A, arising from defendants' distribution of a catalog that exhibited certain celebrity photographs and memorabilia.

**OVERVIEW:** Plaintiff artists filed suit against defendant publishers, alleging that their works were wrongfully used in a catalog of certain celebrity photographs and memorabilia. The court granted summary judgment to defendants on plaintiffs' copyright infringement claims relating to distribution of the catalog in Italy because the court lacked subject matter jurisdiction where no predicate act occurred in the United States. Defendants were awarded summary judgment dismissal of plaintiffs' copyright claims due to American distribution because the photographs used by defendants were in the public domain at the time of publication. Summary judgment was awarded to defendants on plaintiffs' claims of violations of the Visual Artists' Rights Act of 1990, 17 U.S.C.S. § 106A, because plaintiffs claimed only economic harm and failed to assert any intentional distortion or modification of the works as protected under the statute. Summary judgment was denied to both parties on plaintiffs' trademark infringement and dilution claims because factual issues

existed as to whether plaintiffs' marks were famous and were used in a manner likely to confuse, or which diluted their distinctive character.

**OUTCOME:** Summary judgment was granted to defendant publishers on plaintiff artists' copyright infringement claims because the court lacked subject matter jurisdiction and the works used were in the public domain. Defendants were awarded summary judgment on plaintiffs' statutory violation claims because only economic harm was alleged. Because factual issues remained, both parties' motions for summary judgment were denied on trademark infringement claims.

**CORE TERMS:** photographs, summary judgment, infringement, copyright laws, public domain, partial, ownership, copyright infringement, genuine issues of material fact, edition, foreign law, common law, matter jurisdiction, supplemental jurisdiction, exhibition, newspaper, artists, visual, registrations, predicate act, trademark infringement, significant relationship, reproduction, distributed, dilution, law claims, choice of law, moving party, citations omitted, original jurisdiction

**LEXISNEXIS® HEADNOTES**                                          Hide

Civil Procedure > Discovery > Methods > General Overview
Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview
Civil Procedure > Summary Judgment > Supporting Materials > Discovery Materials

**HN1** Summary judgment may not be granted unless the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law. The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution. More Like This Headnote | Shepardize: Restrict By Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants
Civil Procedure > Summary Judgment > Standards > Appropriateness
Civil Procedure > Summary Judgment > Standards > Genuine Disputes

**HN2** The moving party bears the initial burden of informing the district court of the basis for its motion and identifying the matter that it believes demonstrates the absence of a genuine issue of material fact. The substantive law governing the case identifies those facts which are material and only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment. In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial. With respect to the issues on which summary judgment is sought, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. More Like This Headnote | Shepardize: Restrict By Headnote

Civil Procedure > Summary Judgment > Standards > General Overview

**HN3** When both parties seek summary judgment, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable

inferences against the party whose motion is under consideration. More Like This Headnote

Copyright Law > Civil Infringement Actions > Elements > Copying by Defendants
Copyright Law > Civil Infringement Actions > Jurisdiction & Venue > General Overview
Copyright Law > Foreign & International Protections > General Overview

HN4 ⭐ Copyright laws generally do not have extraterritorial application. There is an exception when the type of infringement permits further reproduction abroad, such as the unauthorized manufacture of copyrighted material in the United States. For a United States court to assert jurisdiction over alleged infringements of United States copyright laws abroad, there must be a predicate act in the United States. More Like This Headnote | Shepardize: Restrict By Headnote

Copyright Law > Civil Infringement Actions > General Overview
Copyright Law > Foreign & International Protections > Multilateral Treaties
Copyright Law > Foreign & International Protections > Protected Rights

HN5 ⭐ The Berne Convention does not purport to settle issues of ownership. Rather, the convention simply assures that if the law of the country of infringement applies to the scope of substantive copyright protection, that law will be applied uniformly to foreign and domestic authors. Copyright is a form of property, and the usual rule is that the interests of the parties in property are determined by the law of the state with the most significant relationship to the property and the parties. More Like This Headnote

International Law > Dispute Resolution > Conflicts of Laws > General Overview

HN6 ⭐ Fed. R. Civ. P. 44.1(1) requires parties to give written notice of their intention to assert foreign law, and where no or insufficient information has been provided about the foreign law, the forum usually decides case in accordance with its own local law. More Like This Headnote

Copyright Law > Ownership Interests > Governmental Works
Copyright Law > Restoration From Public Domain > Duration
Copyright Law > Subject Matter > Pictorial, Graphic & Sculptural Works > Photographs

HN7 ⭐ The Copyright Act of 1909, 17 U.S.C.S. § 24, sets forth the applicable United States law governing renewal of the copyright of a work that was first published prior to January 1, 1964. Under that law, an author is entitled to a copyright term of 28 years from the first publication, which expires unless the copyright is renewed during the final year of the initial term. More Like This Headnote | Shepardize: Restrict By Headnote

Civil Procedure > Justiciability > Standing > General Overview
Copyright Law > Civil Infringement Actions > Standing > Beneficial Owners
Copyright Law > Civil Infringement Actions > Standing > Copyright Act of 1976

HN8 ⭐ Under United States law, an owner, including one determined according to foreign law, may sue for copyright infringement in a United States court only if it meets the standing test of 17 U.S.C.S. § 501(b), which accords standing only to the legal or beneficial owner of an exclusive right. More Like This Headnote

Copyright Law > Owner Rights > Moral Rights
Copyright Law > Subject Matter > Pictorial, Graphic & Sculptural Works > General Overview

HN9 ⭐ See 17 U.S.C.S. § 106A.

Copyright Law > Foreign & International Protections > Protected Rights
Copyright Law > Owner Rights > Moral Rights
Copyright Law > Subject Matter > Pictorial, Graphic & Sculptural Works > Works of Art

**HN10** The principal provisions of the Visual Artists' Rights Act of 1990 (VARA), 17 U.S.C.S. § 106A, afford protection only to authors of works of visual art, a narrow class of art defined to include paintings, drawings, prints, sculptures, or photographs produced for exhibition purposes, existing in a single copy or limited edition of 200 copies or fewer. The VARA ensures to artists the rights of attribution and integrity. The Berne Convention art. 6bis expressly states that these "moral rights" exist independently of the author's economic rights, and even after the transfer of the said rights. More Like This Headnote

Copyright Law > Owner Rights > Moral Rights
Copyright Law > Subject Matter > Pictorial, Graphic & Sculptural Works > General Overview

**HN11** Text is not defined as "visual art" under the Visual Artists' Rights Act of 1990, 17 U.S.C.S. § 101. More Like This Headnote

Torts > Intentional Torts > Invasion of Privacy > Appropriation > General Overview
Trademark Law > Special Marks > Likenesses & Names

**HN12** In order to establish liability for a violation of a right to privacy, a plaintiff must demonstrate a direct and substantial connection between the appearance of the plaintiff's name or likeness and the main purpose and subject of the work. More Like This Headnote

Trademark Law > Infringement Actions > Burdens of Proof
Trademark Law > Infringement Actions > Determinations
Trademark Law > Likelihood of Confusion > General Overview

**HN13** To prevail on a federal trademark infringement claim, each plaintiff must prove that the plaintiff has a valid mark subject to protection and that the defendants' use of the mark results in a likelihood of confusion. More Like This Headnote

Trademark Law > Dilution of Famous Marks > General Overview

**HN14** To prevail on a federal dilution of trademark claim, the plaintiff must prove that the plaintiff's mark is famous, that the defendant made a commercial use of the mark in commerce, that the defendant's use began after the mark became famous, and that such use diluted the distinctive quality of the mark. More Like This Headnote

Trademark Law > Dilution of Famous Marks > General Overview
Trademark Law > Infringement Actions > Determinations

**HN15** The standards for trademark infringement and trademark dilution are essentially the same under the Lanham Act, New York law, and the common law. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > General Overview

**HN16** A district court's exercise of supplemental jurisdiction is mandatory over any claim that satisfies the requirements of 28 U.S.C.S. § 1367(a) unless the claim also falls within one of the exceptions enumerated in 28 U.S.C.S. § 1367(c). More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > General Overview

**HN17** See 28 U.S.C.S. § 1367(a).

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > General Overview
**HN18** See 28 U.S.C.S. § 1367(c).

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Pendent Claims
**HN19** Once a court identifies one of the factual predicates which corresponds to one of the subsection categories of 28 U.S.C.S. § 1367(c), the exercise of discretion is informed by whether remanding the pendent state claims comports with the underlying objective of most sensibly accommodating the values of economy, convenience, fairness, and comity. More Like This Headnote

**COUNSEL:** For Plaintiffs: Stephen A. Weingrad, Esq., WEINGRAD & WEINGRAD, LLP, New York, NY.

For Defendants: Jesse Alan Epstein, Esq., WEISMAN CELLER SPETT & MODLIN, PLC, New York, NY.

**JUDGES:** John G. Koeltl, United States District Judge.

**OPINION BY:** John G. Koeltl

**OPINION**

**OPINION AND ORDER**

**JOHN G. KOELTL, District Judge:**

This action seeks damages and injunctive relief for copyright and trademark infringement, and related claims, arising out of the distribution in 1995 and 1996 in Italy and the United States of a catalog of an exhibition of Marilyn Monroe photographs and memorabilia entitled "Marilyn Monroe. The Life. The Myth." Various plaintiffs and defendants have filed cross-motions for partial summary judgment. For the reasons explained below, the defendants' motion is granted in part, and the plaintiffs' motion is denied.

**I.**

**(A)**

The standard for granting summary judgment is well established. **HN1** Summary judgment may not be granted unless "the pleadings, depositions, [*2] answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see generally Celotex Corp. v. Catrett, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219 (2d Cir. 1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

**HN2** The moving party bears the initial burden of "informing the district court of the basis for

its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson [*3] v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986) (citing United States v. Diebold, 369 U.S. 654, 655, 8 L. Ed. 2d 176, 82 S. Ct. 993 (1962)); Gallo, 22 F.3d at 1223.

If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56 (e). With respect to the issues on which summary judgment is sought, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. See Chambers v. TRM Copy Ctrs., 43 F.3d 29, 37 (2d Cir. 1994).

HN3 When, as in this case, both parties seek summary judgment, the court must "'evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under [*4] consideration.'" Abrams v. United States, 797 F.2d 100, 103 (2d Cir. 1986) (quoting Schwabenbauer v. Bd. of Educ., 667 F.2d 305, 314 (2d Cir. 1981)).

**(B)**

There is no dispute with respect to the following facts except where noted. The plaintiffs Sam **Shaw**, Edith **Shaw** Marcus, Henri Dauman, Roy Schatt, George Barris, Tom Kelley Studios, Inc. ("Tom Kelley Studios"), Shirley de Dienes, William Sarris, Phil Stern, Mario Riva, Patricia Fox, Antonello Villani, The Archives of Milton H. Greene LLC ("Greene") and The Archives of Milton H. Greene (International.) LLC ("Greene International"), Carl E. Rollyson, Valerie Weich, Magnum Photos Inc. ("Magnum"), Mickey Pederson a/k/a Mickey Song, and Bert Stern, [1] are all individuals who are either professional photographers, professional writers, professional artists and designers, collectors of Marilyn Monroe memorabilia, or individuals or corporations who are the successors in interest to such persons. These plaintiffs include citizens of both the United States and/or foreign countries. The plaintiff Quon Editions, Inc. ("Quon") is a Canadian corporation doing business in Canada and the United States and is the publisher of the book [*5] "Marilyn Monroe UnCovers." The plaintiff Travilla, Inc. ("Travilla") is a domestic corporation who is the successor in interest to property entrusted to the defendants.

**FOOTNOTES**

[1] The plaintiffs Mario Riva and Magnum Photos, Inc., as agent for Elliot Erwitt and Eve Arnold, do not join in the plaintiffs' pending motion for partial summary judgment. (See Mar. 1, 1998 Weingrad Aff. P 8).

The defendant RCS Libri & Grandi Opera, SpA ("RCS") is an Italian corporation organized and existing under the laws of Italy. The defendant **Rizzoli** International Publications, Inc. ("**Rizzoli**") is a New York corporation. (RCS and **Rizzoli** are collectively referred to as the "**Rizzoli** defendants.") The defendant Pool 4 Art World, SRL ("Pool 4") is an Italian corporation. The defendants Stefano Petricca, Marta Francocci, Gianni Mercurio, and Paolo Frullini are partners, stockholders, or officers of Pool 4. The defendant Valpa SRL ("Valpa") is an Italian corporation which is the successor in interest to Pool 4.

The defendant Pool 4 created [*6] an exhibition of Marilyn Monroe photographs and memorabilia in Italy. (Polito Aff. P 4). Pool 4 contracted with the defendant RCS to publish a catalog of the exhibition entitled "Marilyn Monroe. The Life. The Myth." (*Id.*). RCS subsequently compiled and printed four different books relating to the Marilyn Monroe exhibition: two softcover books (the "**Rizzoli** catalogs") that contained advertisements from exhibition sponsors, one in English and one in Italian; and two hardcover books (the "**Rizzoli** trade books") that contained no advertisements from sponsors, one in English and one in Italian. ² (Defs.' Supp. Rule 56.1 Stmt. P 2; Pls.' Supp. Resp. P 1). These publications were distributed in the United States and in Italy. (Second Am. Compl. P 39; copyright pages of the **Rizzoli** publications).

**FOOTNOTES**

2 The **Rizzoli** catalogs and the **Rizzoli** trade books are hereinafter referred to as the "**Rizzoli** publications."

The plaintiffs assert that their works, including photographs, sketches and text, were wrongfully published by [*7] the defendants in the **Rizzoli** publications. The plaintiffs include the following ten causes of action in their Second Amended Complaint: (1) copyright infringement; (2) unfair competition, unfair trade practices, and violations of the Visual Artists Rights Act; (3) invasion of privacy on behalf of the plaintiffs **Shaw** and Barris; (4) fraud and conversion; (5) violation of §§ 32(1) & 43(a) of the Lanham Act with respect to the plaintiff Tom Kelley Studios, Inc.; (6) violation of § 43(c) of the Lanham Act with respect to the plaintiff Tom Kelley Studios, Inc.; (7) common law trademark infringement and unfair competition; (8) tortious misappropriation of good will; (9) common law trademark dilution; and (10) unjust enrichment. Various parties have now moved for partial summary judgment with respect to individual claims. ³

**FOOTNOTES**

3 At oral argument, the plaintiffs agreed to withdraw the request for summary judgment for the return of property sought in the Fourth Cause of Action because that property had been returned. (Tr. of Oral Argument, Aug. 14, 1998, at 38-39.)

[*8] II.

(A)

The **Rizzoli** defendants move for partial summary judgment on Count One to the extent it is based on the "foreign infringement claims" asserted by Tom Kelley Studios, Greene, Greene International, Sarris/Travilla, de Dienes, Bert Stern, Phil Stern, Quon, and Dauman. The defendants contend that this Court lacks subject matter jurisdiction over those claims. (*See* Defs.' Mem. Supp. Mot. for Partial Summ. J. at 2). The plaintiffs oppose the motion.

The Court of Appeals for the Second Circuit has addressed the issue of federal subject matter jurisdiction over foreign copyright infringement claims in *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67 (2d Cir. 1988). There, the appellants were Modiin, an Israeli corporation which published a newspaper called "Maariv" in Israel, and Maariv Promotions, Ltd., a New York corporation which distributed an international edition of the weekend edition of Maariv in the United States. *Id.* at 69. The appellants were held liable by the lower court for reproducing without authorization a poster entitled "Ronbo" in a weekend edition of Maariv in

both its Israeli and international editions. *Id.* at 73. On appeal, the **[*9]** appellants challenged the judgment on the ground, among others, that the court lacked subject matter jurisdiction to award damages accruing from the alleged illegal infringement in the Israel newspapers. 4

**FOOTNOTES**

4 On appeal, the appellants conceded the court's jurisdiction over the newspapers distributed in the United States by Maariv Promotions, Ltd. which also contained the unauthorized reproduction of "Ronbo." *Id.*

The Court of Appeals affirmed the judgment and explained: "It is well established that **HN4** copyright laws generally do not have extraterritorial application. There is an exception--when the type of infringement permits further reproduction abroad--such as the unauthorized manufacture of copyrighted material in the United States." *Id.* at 73 (citations omitted). For a United States court to assert jurisdiction over alleged infringements of United States copyright laws abroad, there must be a predicate act in the United States:

> As the applicability of American copyright law over the Israeli **[*10]** newspapers depends on the occurrence of a predicate act in the United States, the geographic location of the illegal reproduction is crucial. If the illegal reproduction of the poster occurred in the United States and then was exported to Israel, the magistrate properly could include damages accruing from the Israeli newspapers. If . . . this predicate act occurred in Israel, American copyright laws would have no application to the Israeli newspapers.

*Id.*

There was no evidence in the record in *Update Art* that the reproduction of "Ronbo" occurred in Israel. *Id.* In contrast, "Ronbo" was sold in the United States and one of the two appellants was located in the United States. *Id.* On these facts, the Court of Appeals found that the predicate act of illegally reproducing the poster occurred in the United States, not in Israel. *Id.*

Here, the parties agree that both the English and Italian versions of the **Rizzoli** publications were compiled and printed entirely in Italy by RCS, an Italian corporation. (*See* Defs.' Supp. 56.1 Stmt. P 2; Pls.' Supp. Resp. P 1). Therefore, to the extent that the defendants seek summary judgment as to the publications distributed **[*11]** in Italy, *Update Art* is controlling and this Court lacks subject matter jurisdiction over those claims. 5

**FOOTNOTES**

5 The plaintiffs argue that this Court has jurisdiction over all the defendants on a theory of "contributory infringement." (*See* Pls.' Mem. Opp. Supp. Mot. for Partial Summ. J. at 5). According to the plaintiffs, **Rizzoli** is a wholly owned subsidiary of RCS, and RCS authorized **Rizzoli** to distribute the infringing publications in the United States. Therefore, RCS is liable for the actions of its subsidiary. This argument is not responsive to the defendants' contention, which was not that the Court lacked jurisdiction over RCS, but that there is no subject matter jurisdiction under United States copyright laws over infringements that occurred in Italy where there was no predicate act in the United States. Moreover, the plaintiffs' allegation is factually inaccurate. The uncontroverted evidence shows that **Rizzoli** is a subsidiary of RCS **Rizzoli** Corporation New York, not of RCS. (*See* Polito Reply Aff. P 4).

**[\*12]** Therefore, the defendants' motion for partial summary judgment on Count One to the extent it is based on alleged infringements in Italy is **granted**.

**(B)**

The defendants argue that summary judgment should also be granted in their favor on the copyright infringement claims alleged in Count One with respect to 105 photographs and images [6] on the grounds that those photographs are in the public domain and therefore not subject to any copyright infringement claims. The plaintiffs claiming rights to those photographs dispute that the 105 photographs are in the public domain. [7] In support of this argument, the plaintiffs claimed that the Berne Convention applies to the alleged infringements because the infringements occurred in Italy. The plaintiffs argued further that under the Berne Convention, the applicable law is the copyright law of the state in which the infringement occurred, which the plaintiffs argue is Italy in this case. (*See* Pls.' Mem. at 11). Since Italian law does not contain a copyright renewal requirement, the plaintiffs contended that the 105 photographs are not in the public domain and are protected. The plaintiffs further claimed that because a large **[\*13]** majority of the 105 photographs were first published outside the United States, those images are governed by the terms of the foreign law in the countries of first publication.

**FOOTNOTES**

[6] These 105 photographs and images are identified in Defs.' Summ. of Pls.' Claims to be Dismissed.

[7] The plaintiffs whose photographs are at issue are **Shaw,** de Dienes, Greene, Phil Stern, Schatt, Dauman, Quon, Bert Stern, Tom Kelley Studios, Inc., and Barris. (*See* Dec. 8, 1997 Polito Aff. P 10; Defs.' Supp. 56.1 Stmt. PP 2-11; Pls.' Supp. Resp. PP 2-11).

In their most recent brief, the plaintiffs conceded that United States copyright law governs this case and "[there] is no need to apply foreign law under the facts of this case." (*See* Pls.' Mem. Opp. Supp. Mot. Partial Summ. J. at 7). The defendants expressed understandable dismay at this statement in view of the vigorous and convoluted arguments that the plaintiffs had previously made for the application of Italian law to the issue of copyright validity. To the extent **[\*14]** that the plaintiffs now concede that United States copyright law applies, it is plain, as explained below, that the 105 photographs are in the public domain and summary judgment must be granted dismissing the copyright infringement claims in Count One as to those photographs.

It appears that some of the **Rizzoli** publications were distributed in the United States. While it is undisputed that all of the **Rizzoli** publications were compiled and printed entirely in Italy, **Rizzoli** purchased from RCS approximately 6,200 copies of the English language version for resale. (*See* Defs.' Supp. 56.1 Stmt. P 2; Pls.' Supp. Resp. P 1). As explained above, there is no subject matter jurisdiction over the alleged infringements in Italy. With respect to the alleged infringements in the United States, the plaintiffs have no rights because under United States law the photographs are in the public domain. The plaintiffs have no claims based on these photographs because of their concession. Even if the plaintiffs had not conceded the application of United States law, the appropriate choice of law analysis indicates that United States copyright law should be applied to the question of what rights the plaintiffs **[\*15]** had in the photographs.

The Court of Appeals for the Second Circuit recently analyzed the choice of law issues

presented in international copyright cases like the pending action. See *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82 (2d Cir. 1998). As the Court explained, <sup>HN5</sup>the Berne Convention "does not purport to settle issues of ownership." *Id. at 91* (citation omitted). Rather, the Convention "simply assures that if the law of the country of infringement applies to the scope of substantive copyright protection, that law will be applied uniformly to foreign and domestic authors." *Id.* at 89-90 (citing *Murray v. British Broadcasting Corp.*, 906 F. Supp. 858 (S.D.N.Y. 1995), aff'd, 81 F.3d 287 (1996)). The Court found that copyright is a form of property and "the usual rule is that the interests of the parties in property are determined by the law of the state with "the most significant relationship to the property and the parties." 153 F.3d at 90. The Court of Appeals specifically noted the significance of the nationality of the authors and the place of first publication, although "country of origin" might not always be the appropriate country for [*16] purposes of choice of law concerning ownership. *Id.* In contrast, the law of the country where the alleged infringement occurred governs the determination of whether an infringement has in fact occurred. *Id. at 90-91*. Thus, the Court has expressly rejected the contention originally urged by the plaintiffs here, that, under the Berne Convention, the law of the country of infringement must necessarily be applied in determining whether the plaintiffs have protectable copyrights.

The United States is the country with the most significant relationship to the 105 photographs for which the defendants seek summary judgment. The plaintiffs alleged in their complaint, in their Rule 56.1 Statement, and in their original moving papers that their copyrights were obtained under the United States copyright laws. (*See* Second Am. Compl. PP 2, 36, 37; Pls.' 56.1 Stmt. P 45). All of the plaintiffs as to whom the public domain argument is addressed except for Quon (a Canadian corporation) are either citizens of the United States, residents of the United States, or both. (*See* Second Am. Compl. PP 6-25). [8] The defendants have introduced evidence on this motion to establish that 60 of the [*17] photographs were first published in the United States. [9] Indeed, the plaintiffs have cited no evidence on this motion for summary judgment to justify the application of Italian law to the issue of the ownership of the copyrights in the 105 photographs, other than their argument that some infringements occurred in Italy. [10] This was the argument rejected by the Court of Appeals in *Itar-Tass*. The country with the most significant relationship to the 105 photographs at issue is the United States, which therefore "is the appropriate source of law to determine issues of ownership of rights." *Itar-Tass, 153 F.3d at 90*. [11]

**FOOTNOTES**

[8] *See* **Shaw** Aff. P 1 (United States citizen); Dauman Aff. P 1 (United States resident); Schatt Aff. P 1 (United States citizen); Barris Aff. P 1 (United States citizen); de Dienes Aff. P 1 (United States citizen); Phil Stern Aff. P 1 (United States citizen); Bert Stern Aff. P 1 (United States citizen); Second Am. Compl. P 7 (stating that Edith **Shaw** Marcus is a United States citizen). The photographs for which the Archives of Milton H. Greene seeks recovery were made by Milton H. Greene, a citizen of the United States. (*See* Certificates of Registration attached to the Affidavit of Joshua Greene dated Jan. 7, 1998). The photographs for which Tom Kelley Studios seeks recovery were created by the late Tom Kelley, a U.S. citizen. (*See* Certificate of Registration attached to Tom Kelley Aff. dated Jan. 5, 1998). [*18]

[9] The defendants argue that 84 of the 105 photographs at issue were first published in the United States. (*See* Defs.' Reply Mem. Supp. Mot. Partial Summ. J. at 5). In fact, however, the evidence establishes only that the parties do not dispute that 60 of 105 were first published in the United States. *See* **Shaw** Dep. attached as Ex. G to Defs.' 56.1 Stmt., at 76; **Shaw** Dep. attached as Ex. A to April 30, 1998 Polito Aff., at 86, 88; Hicks Aff. attached as Ex. H to Defs.' 56.1 Stmt.; Pls.' Resp. to 56.1 Stmt. PP 5, 60; Joshua Greene Dep. attached as Ex. K to April 30, 1998 Polito Aff., at 153-54, 159-60, 186-87;

Joshua Greene Aff. dated Jan. 7, 1998, P 4; Phil Stern Dep. attached as Ex. H to April 30, 1998 Polito Aff., at 27-29; Kelley Dep. attached as Ex. E to April 30, 1998 Polito Aff., at 29; Sarris Dep. attached as Ex. G to Apr. 30, 1998 Polito Aff., at 43-44, 55; Bert Stern Aff. dated Feb. 3, 1998.

10 There is an argument that Canadian law should apply to the question of public domain as it applies to Quon, a Canadian corporation. However, the plaintiffs have not argued for the application of Canadian law, nor have they given any notice under Fed. R. Civ. P. 44.1 that they intended to rely on Canadian law. Compare Vishipco Line v. Chase Manhattan Bank, 660 F.2d 854, 860 (2d Cir. 1981) (holding that while forum's choice of law rules would have called for the application of Vietnamese law, a court can apply the law of the forum when neither party invoked Vietnamese law); Cavic v. Grand Bahama Dev. Co., Ltd., 701 F.2d 879, 882 (11th Cir. 1983) (noting that [HN6] Rule 44.1(1) requires parties to give written notice of their intention to assert foreign law and where no or insufficient information has been provided about the foreign law, the forum will usually decide case in accordance with its own local law) (citing Restatement (2d) of Conflicts § 136, comment h (1971)). [*19]

11 Itar-Tass left open the question which country would have the most significant relationship to a work that was created by a United States citizen or resident, but first published outside of the United States. The present record does not establish the place of first publication of 45 of the 105 photos or images alleged to be in the public domain. However, given that the plaintiffs (except Quon) claiming ownership of these 45 photos or images are United States citizens or residents and allegedly have copyright registrations in the United States, these 45 works also have the most significant relationship to the United States.

Even if Italian law applied to the issue of ownership, the infringement claims with respect to the 105 photographs would still be barred. See 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright ("Nimmer") § 17.10[A] at 17-54 and n.9; § 17.10[B] at 17-62 (1998) (explaining that under the "shorter term rule" contained in art. 7(8) of the Berne Convention and art. IV(4)(a) of the Universal Copyright Convention, to both of which Italy is a party, an American work which has not been renewed under U.S. law will at the end of the first U.S. term enter the public domain in Italy.).

[*20] The plaintiffs do not dispute that the 105 photographs alleged to be in the public domain for which the defendants seek summary judgment were published prior to January 1, 1964. 12 [HN7] The Copyright Act of 1909 [13] sets forth the applicable United States law governing renewal of the copyright of a work that was first published prior to January 1, 1964. Under that law, an author is entitled to a copyright term of 28 years from the first publication, which expires unless the copyright is renewed during the final year of the initial term. See Fred Fisher Music Co. v. M. Witmark & Sons, 318 U.S. 643, 644-45 & n.1, 87 L. Ed. 1055, 63 S. Ct. 773 (1943); Stone v. Williams, 970 F.2d 1043, 1051 (2d Cir. 1992), cert. denied, 508 U.S. 906, 124 L. Ed. 2d 243, 113 S. Ct. 2331 (1993); Int'l Film Exch., Ltd. v. Corinth Films, Inc., 621 F. Supp. 631, 634-35 (S.D.N.Y. 1985). The plaintiffs also do not dispute that **no renewals were obtained** with respect to the 105 photographs. (See Defs.' 56.1 Stmt. PP 62-63; Pls.' Resp. PP 62-63). Accordingly, under United States copyrights laws, the copyrights on those photographs expired well before their publication by the defendants in 1995 and [*21] 1996. Thus, the defendants' motion must be granted and the plaintiffs' motion denied with respect to Count One as to the 105 photographs because they cannot properly be the subject of any copyright infringement claims.

**FOOTNOTES**

12 *See* Defs.' 56.1 Stmt. PP 6-60; Pls.' Resp. PP 6-60; Kelley Dep. attached as Ex. E to Polito Aff. at 18-21, 28-29, 32; "Marilyn" copyright page attached as Ex. P to April 30, 1998 Polito Aff.; Barris Dep. attached as Ex. D to April 30, 1998 Polito Aff. at 69; "Eros" copyright page attached as Ex. O to Defs.' 56.1 Stmt.

13 Former 17 U.S.C. § 24, as amended by the Copyright Act of 1976, former 17 U.S.C. § 304(a).

### (C)

The defendants are also entitled to summary judgment dismissing all of the claims alleged by plaintiff Quon against them under Count One of the Second Amended Complaint alleging copyright infringement because Quon is only a non-exclusive licensee of the works for which it sues. The documents that gave Quon the right to publish the photographs in its compilation **[*22]** were plainly non-exclusive licenses, and Quon does not contend otherwise. (*See* Ex. N attached to Defs.' 56.1 Stmt.; Pls.' Mem. Opp. at 27). Quon therefore has no basis to sue for republication of the photographs it published because it has no exclusive right to those photographs. See *Itar-Tass*, 153 F.3d at 91 **HN8**("Under United States law, an owner (including one determined according to foreign law) may sue for infringement in a United States court only if it meets the standing test of 17 U.S.C. § 501(b), which accords standing only to the legal or beneficial owner of an "exclusive right."); *Nimmer*, § 3.05 at 3-34.19-34.20.

Quon attempts to avoid its lack of standing by arguing that it was its right to its compilation of photographs that was infringed. However, there is no evidence of any original contributions in Quon's compilation of photographs that were infringed. See *Roy Export Co. Establishment of Vaduz, Liechtenstein v. Columbia Broadcasting Sys., Inc.*, 672 F.2d 1095, 1103 (2d Cir. 1982), cert. denied, 459 U.S. 826, 74 L. Ed. 2d 63, 103 S. Ct. 60 (1982); *Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc.*, 482 F. Supp. 980, 989 (S.D.N.Y. 1980). Rather, it **[*23]** was the simple republication of individual photographs as to which Quon had no exclusive right that is the subject of the alleged infringement. Quon has no standing to complain about those publications. Quon's claims for copyright infringement in Count One of the Second Amended Complaint are therefore dismissed.

### (D)

The defendants next move for summary judgment on the claim in Count Two for violation of the Visual Artists' Rights Act of 1990 (VARA), 17 U.S.C. § 106A. The plaintiffs have not responded to this motion in their papers and have thus defaulted on this motion.

**HN9**Section 106A of VARA provides, in relevant part, that:

> The author of a work of visual art-
>
> (1) shall have the right-
>
> (A) to claim authorship of that work, and
>
> . . .
>
> (3) . . . shall have the right--
>
> (A) to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation, and any

intentional distortion, mutilation, or modification of that work is a violation of that right . . .

17 U.S.C. § 106A. **HN10** The principal provisions of VARA "afford protection only to authors of works of visual art--a narrow class of art defined **[*24]** to include paintings, drawings, prints, sculptures, or photographs produced for exhibition purposes, existing in a single copy or limited edition of 200 copies or fewer." Carter v. Helmsley-Spear, Inc., 71 F.3d 77, 83 (2d Cir. 1995); see also 17 U.S.C. § 101. As the Court of Appeals explained in Carter, VARA ensures to artists "the rights of 'attribution' and 'integrity.' . . . These rights are analogous to those protected by Article 6bis of the Berne Convention, which are commonly known as 'moral rights.' The theory of moral rights is that they result in a climate of artistic worth and honor that encourages the author in the arduous act of creation." Id. at 83 (citation omitted). See also English v. BFC & R East 11th Street LLC, 1997 U.S. Dist. LEXIS 19137, No. 97 Civ. 7446, 1997 WL 746444 at *3 (S.D.N.Y. Dec. 3, 1997). Moreover, Article 6bis of the Berne Convention expressly states that these "moral rights" exist "independently of the author's economic rights, and even after the transfer of the said rights." Carter, 71 F.3d at 82 (quoting Berne Convention, art. 6bis).

As the defendants correctly point out, the plaintiffs have failed to allege, either in their Second Amended Complaint **[*25]** or in any of their supporting affidavits, any intentional distortion, mutilation, or other modification of the works at issue which would be prejudicial to their honor or reputation. The gravamen of their complaint is that the alleged infringement of the works at issue has caused them economic harm. However, as explained above, economic harm is not the type of injury protected by VARA. [14] Moreover, because the plaintiffs have defaulted by not responding to this argument, the defendants are entitled to summary judgment dismissing this part of Count Two.

**FOOTNOTES**

14 Alternative bases for granting this motion exist, although not specifically raised. To the extent that the claim is asserted on behalf of plaintiffs Fox, Villani, Rollyson, and Weich, the claim must be dismissed because **HN11** text is not defined as "visual art" under 17 U.S.C. § 101. See, e.g., Choe v. Fordham Univ. Sch. of Law, 920 F. Supp. 44, 49 (S.D.N.Y. 1995) (author of an allegedly mangled law review Comment failed to state a claim under VARA). To the extent that the claim is asserted on behalf of Edith **Shaw** Marcus, Tom Kelley Studios, de Dienes, and Greene, the claim is not viable because VARA protects only the artists, and those "rights cannot be transferred." Carter, 71 F.3d at 83.

**[*26]** Accordingly, the defendants' motion for summary judgment on the VARA claim in Count Two is granted.

**(E)**

In Count Three, the plaintiffs Sam **Shaw** and George Barris each claim that the defendants violated their rights to privacy under New York law. See N.Y. Civ. Rights §§ 50 & 51. Both the plaintiffs and defendants seek summary judgment on this Count. These claims are based upon the defendants' publication of two photographs depicting each of these plaintiffs with Marilyn Monroe. However, the two photographs at issue in this Count were published in books whose length exceeded 300 pages and which included over 300 photographs of Marilyn Monroe. As a result, the defendants' use of these two photographs constitutes a de minimis invasion of the plaintiffs' rights that is not actionable under sections 50 and 51 of the New York Civil Rights Law. See D'Andrea v. Rafla-Demetrious, 972 F. Supp. 154, 157 (S.D.N.Y. 1997) (granting judgment as a matter of law against the plaintiff despite the fact that a picture of him was used in a hospital recruiting brochure without his consent: **HN12** "In order

to establish liability, plaintiff must demonstrate a direct and substantial connection [*27] between the appearance of the plaintiff's name or likeness and the main purpose and subject of the work.") (citation and internal quotation marks omitted); see also Man v. Warner Bros. Inc., 317 F. Supp. 50, 53 (S.D.N.Y. 1970) ("The incidental use of plaintiff's forty-five-second performance in defendants' motion picture . . . is surely de minimus."); Marks v. Elephant Walk, Inc., 548 N.Y.S.2d 549, 551-52, 156 A.D.2d 432, 434 (2nd Dep't 1989) ("It is well settled that where, as here, a reference to an individual is fleeting and incidental, it will not be actionable as a nonconsensual use of that person's name for the purpose of advertising or trade.") (internal quotation marks and citation omitted); Dallesandro v. Henry Holt & Co., Inc., 166 N.Y.S.2d 805, 806-07, 4 A.D.2d 470, 472 (1st Dep't 1957) (plaintiff's picture on the cover of a book with a priest who was the subject of the book was not actionable under New York law), appeal dismissed, 7 N.Y.2d 735, 193 N.Y.S.2d 635, 162 N.E.2d 726 (1959). Thus, summary judgment must be granted in the defendants' favor with respect to Count Three.

**(F)**

The plaintiffs have raised trademark-related claims in Counts Five, [*28] Six, Seven, and Nine. The Fifth and Sixth Counts are brought on behalf of the plaintiff Tom Kelley Studios and assert federal trademark infringement and dilution claims. The Seventh and Ninth Counts are brought on behalf of all of the plaintiffs and assert common law trademark infringement and dilution claims.

HN13 To prevail on a federal infringement claim, each plaintiff must prove that the plaintiff has a valid mark subject to protection and that the defendants' use of the mark results in a likelihood of confusion. See Gruner + Jahr USA Pub. v. Meredith Corp., 991 F.2d 1072, 1074 (2d Cir. 1993); Clinique Laboratories, Inc. v. DEP Corp., 945 F. Supp. 547, 550 (S.D.N.Y. 1996). HN14 To prevail on a federal dilution claim, the plaintiff must prove that the plaintiff's mark is famous, that the defendants made a commercial use of the mark in commerce, that the defendants' use began after the mark became famous, and that such use diluted the distinctive quality of the mark. See Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1324 (9th Cir. 1998). In this case, the Court cannot determine based upon the current record whether the defendants used Tom Kelley Studios' mark in a manner [*29] which resulted in a likelihood of confusion, whether Tom Kelley Studios' mark is famous, and whether the defendants used Tom Kelley Studios' mark in a matter which diluted its distinctive quality. Summary judgment cannot, therefore, be granted in favor of either party at this time.

As to the common law trademark-related claims filed by the rest of the plaintiffs in Counts Seven and Nine, HN15 the standards for trademark infringement and trademark dilution are essentially the same under the Lanham Act, New York law, and the common law. See Lurzer GmbH v. Amer. Showcase, Inc., 1998 U.S. Dist. LEXIS 13605, *13 n.5, No. 97 Civ. 6576, 1998 WL 557600, at *4 n.5 (S.D.N.Y. Sep. 1, 1998); Hartz & Co., Inc. v. Italia, Inc., 1998 U.S. Dist. LEXIS 3716, *6 n.9, No. 97 Civ. 5657, 1998 WL 132787 at *1 n.9 (S.D.N.Y. Mar. 24, 1998). Thus, summary judgment can similarly not be granted in favor of either party with respect to these claims at this time because genuine issues of material fact exist as to whether any of the other plaintiffs owned common law trademarks.

**(G)**

The defendants argue that summary judgment should be granted in their favor with respect to the remainder of the infringement claims--in addition to the 105 previously discussed--because the plaintiffs [*30] have allegedly failed to establish their ownership to valid copyrights and registrations. [15] However, the record is replete with conflicting testimony and affidavits and therefore contains genuine issues of material fact relating to the ownership and subsequent assignment of ownership to these works. Moreover, genuine issues of material

fact also exist with respect to the alleged inaccuracies in those copyright registrations which have been filed. As a result, the Court cannot award summary judgment to either side with respect to the remainder of the claims raised in Count One in the absence of further factual development.

**FOOTNOTES**

15 The defendants also argued in their papers that the plaintiffs George Barris, William Sarris, Travilla, Inc., and Mickey Peterson a/k/a Mickey Song consented in writing to the publication of a total of 29 photographs in the **Rizzoli** publications. However, the defendants conceded at oral argument that summary judgment could not be granted on the basis of this argument because a genuine issue of material fact existed with respect to any consent. (See Tr. at 34.)

[*31] For the same reasons, the defendants' motion to dismiss twelve plaintiffs' claims for statutory damages and attorneys' fees in connection with some or all of their alleged copyrighted works is denied. (See Defs.' Mem. Opp. at 5-8). Moreover, the plaintiffs have conceded that they make no such claims for works which do not have renewal registrations in the United States and those works which are protected solely by the Berne Convention. (See Pls.' Reply Mem. at 5-6). However, the plaintiffs have not clarified and it is not possible to determine on the current record those works for which the plaintiffs do claim statutory damages and attorneys' fees.

**(H)**

As to the Counts Two (to the extent it is not based on VARA), Eight and Ten, summary judgment cannot be granted at this time because there are genuine issues of material fact with respect to the extent to which the defendants engaged in unfair competition, were unjustly enriched, and misappropriated the plaintiffs' goodwill. However, to the extent that the plaintiffs seek to apply substantive Italian law to any of these claims, those claims must be dismissed because the plaintiffs failed to provide notice of their intent [*32] to raise an issue of foreign law with respect to those Counts pursuant to Rule 44.1. They brought their claims in the Complaint under United States law and even in their summary judgment papers they have failed to specify any Italian law on which they were relying.

**(I)**

The defendants' motion pursuant to 28 U.S.C. § 1367(c) for summary judgment dismissing the state law claims is denied. The Court of Appeals for the Second Circuit has held that [HN16] a district court's exercise of supplemental jurisdiction is mandatory over any claim that satisfies the requirements of 28 U.S.C. § 1367(a) unless the claim also falls within one of the exceptions enumerated in § 1367(c). See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir. 1998); see also Nevares v. Morrissey, 1998 U.S. Dist. LEXIS 7680, *24, No. 95 Civ. 1135, 1998 WL 265119 at *8 (S.D.N.Y. May 22, 1998). [HN17] Subsection (a) states:

> Except as provided in subsection . . . (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district court shall have supplemental jurisdiction over all other claims that are so related to claims in the action [*33] within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution . . . .

28 U.S.C. § 1367(a).

In this case, the federal and pendent state and local law claims all relate to the **Rizzoli** publications and raise related claims, and therefore are part of the same case or controversy. Therefore, the exercise of supplemental jurisdiction is mandatory unless one of the § 1367(c) exceptions apply.

HN18 Section 1367(c) provides that:

> District courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Moreover, HN19 "once a court identifies one of the factual predicates which corresponds to one of the subsection 1367(c) categories, the exercise of discretion 'is informed by whether **[*34]** remanding the pendent state claims comports with the underlying objective of 'most sensibly accommodating' the values of 'economy, convenience, fairness, and comity.'" *Itar-Tass*, 140 F.3d at 446 (quoting *Executive Software N. Am., Inc. v. United States Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994)).

Here, the plaintiffs rely on subsection 1367(c)(3). However, since some federal law claims remain, subsection 1367(c)(3) is inapplicable to this case. Because none of the other exceptions apply, the defendants' motion to dismiss for lack of supplemental jurisdiction is denied.

CONCLUSION

For all of the reasons explained above, the defendants' motion is **granted in part** and **denied in part** as follows:

1. The defendants' motion pursuant to Fed. R. Civ. P. 12(b)(1) for partial summary judgment on Count One to the extent Count One is based on alleged infringement of the works at issue in Italy is **granted.**

2. The defendants' motion for summary judgment on Count One with respect to the 105 public domain photographs is **granted.**

3. The defendants' motion to dismiss the claims against it by Quon Editions, Inc. in Count One is **granted.**

4. **[*35]** The defendants' motion for summary judgment on the Visual Artists' Rights Act claims in Count Two is **granted.**

5. The defendants' motion for summary judgment on the claims raised in Count Three is **granted.**

6. The defendants' motion to dismiss the state law claims based on lack of supplemental jurisdiction is **denied.**

7. The plaintiffs' motion for partial summary judgment is **denied in its entirety.**

8. The claim for return of property was **withdrawn.**

The Court has carefully reviewed all of the papers and arguments raised by the parties. To the extent not specifically addressed in this Opinion, the motions are denied.

The parties are directed to submit a Joint Pretrial Order, including any motions in limine, together with Proposed Voir Dire and Requests to Charge on the remaining Counts, within **forty-five (45) days** of the date of this Order. The parties shall be ready for trial on **forty-eight (48) hours** notice **two weeks** after the submission of the Joint Pretrial Order.

**SO ORDERED.**

**Dated: New York, New York**

3/19/99

**John G. Koeltl**

**United States District Judge**

Source: Legal > States Legal - U.S. > New York > Find Cases > NY Federal & State Cases, Combined
Terms: **shaw and rizzoli and "no renewals were obtained"** (Edit Search | Suggest Terms for My Search | Feedback on Your Search)
View: Full
Date/Time: Wednesday, October 10, 2007 - 9:58 AM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.

Search | Research Tasks | Get a Document | *Shepard's*® | Alerts | Total Litigator
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Off | Help

 About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.