**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- X
SHAW FAMILY ARCHIVES, LTD., EDITH    :
MARCUS and META STEVENS,

                                              :

                Plaintiffs,            Case No. 05 Civ. 3939 (CM)

                                                :

            -against-            Hon. Colleen McMahon

                                              :

CMG WORLDWIDE, INC. and MARILYN    :
MONROE LLC,    :

                Defendants.     :
-------------------------------------------------------- X

**RESPONSE TO PLAINTIFFS' ADDITIONAL STATEMENT**
**OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR**
**<u>SUMMARY JUDGMENT ON PUBLIC DOMAIN CLAIM</u>**

Defendants / Consolidated Plaintiffs Marilyn Monroe LLC ("MMLLC") and CMG

Worldwide, Inc. ("CMG") (collectively, "Defendants"), pursuant to Rule 56.1 of the Local Rules

of the United States District Court for the Southern District of New York, respectfully submit the

following response to the "Additional Statement of Undisputed Facts in Support of Motion for

Summary Judgment on Public Domain Claim" of Plaintiffs / Consolidated Defendants Shaw

Family Archives, Ltd., Bradford Licensing, Inc., Edith Marcus and Meta Stevens (collectively,

"Plaintiffs").

At the outset, it is improper for Plaintiffs to assert "additional undisputed facts" in

support of their motion for summary judgment, as Defendants are not afforded an opportunity to

respond to such facts in sur-reply. Accordingly, no such "additional material facts" should be

considered in connection with Plaintiffs' motion for summary judgment. Defendants respond

below to Plaintiffs' purported "additional" facts only to the extent that Plaintiffs rely on such

facts in connection with their opposition to Defendants' cross-motion for summary judgment.

As indicated in Defendants' individual responses, Plaintiffs have cited evidence that does not support certain of the statements made by them; certain of Plaintiffs' contain legal arguments or improper characterizations; and certain statements need additional facts, information or testimony to make the statements Plaintiffs have made accurate or not misleading.  In addition, some of Plaintiffs' statements  contain inadmissible evidence or facts that are not material to the pending summary judgment motions.  Defendants respectfully request that the Court strike or disregard Plaintiffs' unsupported, inaccurate, inadmissible or argumentative and conclusory statements.  *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("[W]here the cited materials do not support the factual assertions in the statements, the Court is free to disregard the assertion.") (internal quotations omitted); *Epstein v. Kemper Ins. Co.*, 210 F. Supp. 2d 308, 314 (S.D.N.Y. 2002) ("Statements in a . . . Rule 56.1 statement are inappropriate if they . . . are conclusory or argumentative, or do not cite to supporting evidence.").

**<u>Defendants' Response to Additional Statement No. 1:</u>**

Defendants state that Plaintiffs' assertions in this statement are conclusory and argumentative, and are duplicative and repetitive of Statements No. 9 and 10 in Plaintiffs January 8, 2008 Statement of Undisputed Facts ("Pl. SUF").  Defendants respectfully refer the Court to their Responses to those Statements in Defendants' "Response to Plaintiffs / Consolidated Defendants' Statement of Undisputed Facts" dated February 12, 2008 ("Def. Resp. to Pl. SUF").

In addition, Plaintiffs' third set of interrogatories and Defendants' responses thereto speak for themselves, and Defendants respectfully refer the Court to those documents, attached as exhibits J and K to the Declaration of Chris Serbagi dated January 8, 2008 ("Serbagi Decl.") for their full contents.  Further, MMLLC supplemented its response to the interrogatory in question in an email dated December 5, 2007, a copy of which was attached as exhibit 50 to the

Declaration of Jonathan Neil Strauss dated February 12, 2008 ("Strauss Decl."), and respectfully refers the Court to that document for the full contents thereof.

**Defendants' Response to Additional Statement No. 2:**

Defendants dispute Plaintiffs' assertions in this statement, which are not supported by the cited evidence.  Further, Defendants do not have information sufficient to form a belief as what Plaintiffs "believe[d]."

In fact, in an email dated December 5, 2007, MMLLC supplemented its interrogatory response, and reserved the right to further supplement its response after discovery was completed.  The email speaks for itself, and Defendants respectfully refer the Court to that document, attached as Exhibit R to March 4, 2008 Declaration of David Marcus ("Marcus Decl."), for its full contents.  Plaintiffs never raised any objections to this interrogatory response before the Court, or moved to compel any further response.

In addition, on February 1, 2008, less than a month after the close of discovery, the parties submitted their Joint Pre-trial Order and their respective proposed jury instructions, which set forth, in detail, the legal and factual basis for, *inter alia*, Defendants' public domain claim. Indeed, two weeks prior, on January 18, 2008, Defendants had sent Plaintiffs a draft pre-trial order that contained 115 paragraphs of detailed facts supporting Defendants' public domain claim.  (*See* Declaration of Tal Dickstein dated March 25, 2008 ("Dickstein Decl."), Ex. A).

**Defendants' Response to Additional Statement No. 3:**

Defendants do not dispute that Plaintiffs never brought any issue regarding their contention interrogatories to the attention of Magistrate Judge Fox.  Defendants further state that Plaintiffs never raised any objections to Defendants' interrogatory response before the Court, or moved to compel any further response.

Defendants dispute Plaintiffs' remaining assertions in this statement, including Plaintiffs' assertion that they did not bring the issue to the Court "[b]ased upon the Defendants' acknowledgement that they would provide their contention interrogatory responses after depositions." As stated in Defendants' Response to Additional Statement No. 2, *supra*, Defendants merely reserved the right to further supplement its response, and, in fact, provided detailed facts supporting its public domain claim on January 18, 2008, shortly after the close of discovery. Further, Defendants note that on January 9, 2008, just two business days after the final deposition in this case, Plaintiffs filed their motion for summary judgment in which they accused Defendants of "refus[ing] to answer a contention interrogatory" (*see* Pl. Br. at 20), even though Plaintiffs apparently now argue that the response in question was "not due to be exchanged until after the completion of discovery," (Marcus Decl. ¶ 19), and even though Plaintiffs never moved to compel any response.

**Defendants' Response to Additional Statement No. 4:**

Defendants dispute Plaintiffs' assertions in this statement. The documents cited by Plaintiffs in no way support their assertion that Defendants "refused to provide any documents" relating to Count I of the Third Amended Complaint – to the contrary, the documents that Plaintiffs cite demonstrate that Defendants <u>did</u> agree to produce such documents. (*See* Marcus Decl. Ex. Q). In fact, after Plaintiffs served their third set of document requests on November 1, 2007, Defendants produced over 900 pages of additional documents, many of which related to the public domain issue. (*See* Dickstein Decl. ¶ 3, Ex. B).

**Defendants' Response to Additional Statement No. 5:**

Defendants do not dispute that Plaintiffs filed their Second Amended Complaint on August 8, 2007, or that Defendants filed their Answer to the Second Amended Complaint on September 4, 2007. Defendants dispute Plaintiffs' remaining assertions in this statement. The Second Amended Complaint (which was attached as exhibit F to the Serbagi Declaration) and the Answer thereto (which is attached as Exhibit L to the Marcus Declaration) speak for themselves, and Defendants respectfully refer the Court to those documents for their full contents.

Defendants specifically dispute Plaintiffs' implication that only Edith Marcus and Meta Stevens asserted copyright infringement claims in the Second Amended Complaint. For example, the complaint itself makes clear that Shaw Family Archives, Ltd. ("SFA") was a plaintiff, and accuses Defendants of infringing "the Plaintiffs' federal copyrights." (Serbagi Decl. Ex. F ¶ 36). And for the reasons set forth in paragraphs 72-88 of Defendants' Statement of Undisputed Facts dated February 12, 2008 ("Def. SUF"), SFA is the owner of the photographs and copyrights in question, notwithstanding any allegation by Plaintiffs to the contrary.

Indeed, prior to his death, Larry Shaw, the 50% owner of SFA (see Def. SUF ¶ 74) who, in Plaintiffs' words, "ran the entire business since the inception of Shaw Family Archives" (Serbagi Decl. Ex. S at 1-2) expressly stated that "SHAW FAMILY ARCHIVES, LTD. is the sole owner of all of the commercial photographic images formerly owned by Larry Shaw and or Sam Shaw [and] is the sole owner of all copyrights in these photographs." (Dickstein Decl. Ex. C). Plaintiffs failed to produce this key document in discovery – Defendants only recently discovered it after it was publicly filed in a Surrogate's Court proceeding.

Defendants also dispute any implication that they were required to assert "public domain" as an affirmative defense in their Answer to the Second Amended Complaint, particularly as they

had already filed a Third Amended Complaint asserting that numerous Sam Shaw photographs of Marilyn Monroe were in the public domain. (*See generally* Serbagi Decl. Ex. I).

**Defendants' Response to Additional Statement No. 6:**

Defendants do not dispute that, on July 10, 2007, Plaintiffs served their second set of interrogatories. Defendants dispute Plaintiffs' remaining assertions in this statement, which misstate the cited evidence and constitute an incomplete, argumentative, and conclusory summary of the referenced discovery request. The interrogatories, copies of which were attached as exhibit G to the Marcus Declaration, speak for themselves, and Defendants respectfully refer the Court to the interrogatories for their full contents.

Defendants further state that the interrogatory in question requested information regarding the "Monroe Intellectual Property Rights" as that term was used in, *inter alia*, Defendants' Second Amended Complaint. (*See* Marcus Decl. Ex. G at 5). Defendants' Second Amended Complaint sought, among other things, a declaration of Defendants' interests in the Monroe Intellectual Property Rights. (*See* Serbagi Decl. Ex. C at 7-9). However, on August 9, 2007, prior to answering the interrogatory in question, Defendants filed their Third Amended Complaint, which did not seek any declaration regarding the Monroe Intellectual Property Rights. (*See generally* Serbagi Decl. Ex. I). Thus, the interrogatory in question requested information that was tied to an outdated complaint that was no longer in effect.

**Defendants' Response to Additional Statement No. 7:**

Defendants do not dispute that, on August 13, 2007, Defendants served their response to Plaintiffs' second set of interrogatories. Defendants dispute Plaintiffs' remaining assertions in this statement, which misstate the cited evidence and constitute an incomplete, argumentative, and conclusory summary of the referenced discovery response. Defendants' interrogatory

responses, copies of which were attached as exhibit K to the Marcus Declaration, speak for themselves, and Defendants respectfully refer the Court to those responses for their full contents.

As stated in Defendants' Response to Additional Statement No. 6, *supra*, the interrogatory in question related to allegations in an outdated complaint. Plaintiffs never raised any objections to Defendants' response to the interrogatory in question, and never moved to compel any further response.

**Defendants' Response to Additional Statement No. 8:**

Defendants do not dispute that, on February 1, 2007, Plaintiffs served their first set of interrogatories. The interrogatories, copies of which were attached as exhibit G to the Serbagi Declaration, speak for themselves, and Defendants respectfully refer the Court to the interrogatories for their full contents.

**Defendants' Response to Additional Statement No. 9:**

Defendants do not dispute that, on March 19, 2007, Defendants served their response to Plaintiffs first set of interrogatories. Defendants dispute Plaintiffs' remaining assertions in this statement, which misstate the cited evidence and constitute an incomplete, argumentative, and conclusory summary of the referenced discovery response. Defendants' interrogatory responses, copies of which were attached as exhibit H to the Serbagi Declaration, speak for themselves, and Defendants respectfully refer the Court to those responses for their full contents.

**Defendants' Response to Additional Statement No. 10:**

Defendants dispute Plaintiffs' assertions in this statement, which misstate the cited

evidence and constitute an incomplete, argumentative, and conclusory summary of the

referenced correspondence.

In fact, Plaintiffs requested that Defendants "produce the Shaw Family Photographs that

Defendants admitted to displaying on their web site," or, alternatively, "[i]f Defendants do not

have those images, please describe the photographs with as much detail as possible." (Marcus

Decl. Ex. F). On July 27, 2007, CMG's new counsel (who had only been involved in the case

for a short period) responded, *inter alia*, that its inquiry revealed the following:

> 1) There were apparently up to five (5) photographs that were selected from the Rizzoli book to be posted to CMG's website sometime in 2004;
> 2) While the photos had all been selected from the Rizzoli book, and despite our various earnest efforts, including whatever electronic means we had available, to retrieve the actual screen shot(s) from the 2004 CMG webpage(s) that bore said photos, there is no specific and/or independent recollection of which photos were actually utilized;
> 3) The photos from the Rizzoli book were posted for a period of approximately nine (9) months sometime in 2004;
> 4) We are uncertain how many actual photos appeared on the website though we are certain there were likely no more than five (5); and
> 5) No other photos outside those that appeared in the Rizzoli book were used on CMG's website.
> Please understand that should you have any additional questions based up[on] the foregoing information, we would be happy to continue to delve into this matter more deeply. However, given the fact that it is our understanding that the photos that appeared in the Rizzoli book were deemed to be in the public domain . . . I would suggest that this issue is now rendered moot.

(Marcus Decl. Ex. I).

### Defendants' Response to Additional Statement No. 11:

Defendants dispute Plaintiffs' assertions in this statement, which constitute an

argumentative, conclusory, incomplete and misleading summary of the deposition testimony.

Contrary to Plaintiffs' assertions, during his deposition testimony, Mark Roesler stated that many

photographs of Marilyn Monroe taken by Sam Shaw have entered the public domain, including

8

photographs from the Rizzoli book, as well as photographs that were published without the proper copyright notice and photographs that were published prior to 1964 for which no copyright renewals were obtained, (*see* Serbagi Decl. Ex. O at 48-49, 58-62, 161-63, 174), and that, but for the licensing activities of Plaintiffs in which they asserted copyright ownership to various photographs that had been previously published, CMG would encourage its licensees to use any photographs that Plaintiffs acknowledge to be in the public domain. (*Id.* at 174-176).

**Defendants' Response to Additional Statement No. 12:**

Defendants dispute Plaintiffs' assertions in this statement, which are misleading and misstate both the cited deposition testimony and Defendants' Third Amended Complaint. In their Third Amended Complaint, Defendants alleged that Plaintiffs (referred to as "defendants" in the complaint) "have refused to recognize that certain photographs of Marilyn Monroe allegedly owned and controlled by [Plaintiffs] are in the public domain." (Serbagi Decl. Ex. I ¶ 4). During the deposition of Mark Roesler, Plaintiffs' attorney mis-cited this paragraph of the Third Amended Complaint, asking Mr. Roesler to "identify the particular photographs of Marilyn Monroe that my clients have refused to recognize are owned and controlled by defendants." (*Id.* Ex. O at 173). Of course, nowhere does the Third Amended Complaint assert that any particular photographs are owned and controlled by Defendants, much less that Plaintiffs have refused to recognize such ownership.

**Defendants' Response to Additional Statement No. 13:**

Defendants dispute Plaintiffs' assertions in this statement, which constitute an argumentative, conclusory, incomplete and misleading summary of the deposition testimony. Contrary to Plaintiffs' assertions, during his deposition Mr. Roesler testified that Plaintiffs, through their marketing and licensing activities, falsely represented that Sam Shaw's

9

photographs of Marilyn Monroe are subject to their exclusive copyright. (*Id.* at 47-48, 81-82, 99-100, 170-71, 174). Mr. Roesler also identified large categories of Monroe/Shaw photographs that are in the public domain. (*See* Def. Resp. to Add'l Stmt. No. 11, *supra*). Indeed, the evidence establishes that Mr. Roesler's statements were correct, because Plaintiffs have repeatedly represented, during the course of their marketing and licensing activities, that they own copyrights in <u>all</u> of Sam Shaw's photographs, including photographs that have actually entered the public domain. (*See* Def. SUF ¶¶ 33-56).

In the portion of the deposition relied on by Plaintiffs, Mr. Roesler was only asked if he could remember a specific "title of one copyright registration that [Plaintiffs] falsely claimed ownership rights to," (Serbagi Decl. Ex. O at 174-75) – Mr. Roesler's inability to identify by memory a specific title of a copyright registration in no way refutes his testimony, supported by substantial documentary evidence, that Plaintiffs have falsely asserted ownership of copyrights to <u>all</u> of Sam Shaw's photographs of Marilyn Monroe.

The assertions in the final sentence of this statement are completely duplicative of those in Plaintiffs' Additional Statement No. 11, and Defendants respectfully refer the Court to their response to that Statement.

**<u>Defendants' Response to Additional Statement No. 14:</u>**

Defendants dispute Plaintiffs' assertions in this statement, which constitute an argumentative, conclusory, incomplete and misleading summary of the deposition testimony. As set forth *supra* in Defendants' Response to Additional Statement No. 13, contrary to Plaintiffs' assertions, Mr. Roesler testified that Plaintiffs falsely represented exclusive ownership of copyrights in Sam Shaw's photographs of Marilyn Monroe through their general marketing and

licensing activities.  And, as also set forth in Defendants' Response to Additional Statement No.
13, the documentary and other evidence supports Mr. Roesler's general understanding.

**Defendants' Response to Additional Statement No. 15:**

Defendants dispute Plaintiffs' assertions in this statement, which are not supported by the
cited deposition testimony.  Contrary to Plaintiffs' assertions, SFA's 30(b)(6) witness claimed
not to know whether the *Rizzoli* Court ruled that certain Sam Shaw photographs are in the public
domain, and instead claimed that she was aware only that the *Rizzoli* case ultimately settled.
(Dickstein Decl. Ex. D at 58-59).  Also contrary to Plaintiffs' assertions, Defendants <u>did</u> provide
SFA's 30(b)(6) witness with a copy of the *Rizzoli* decision.  (*See* Dickstein Decl. Ex. D at 60-64;
Ex. E).

**Defendants' Response to Additional Statement No. 16:**

Defendants dispute Plaintiffs' assertions in this statement, which are misleading,
argumentative and conclusory, and are not supported by the cited evidence.  As the deposition
transcript reflects, the statement by Defendants' counsel was made in response to Plaintiffs'
counsel's improper efforts to limit the scope of the deposition to the *Rizzoli* and *Ballantine*
books.  (*See* Dickstein Decl. Ex. D at 37-40).  In response to those efforts, Defendants' counsel
merely stated that significant questioning regarding *Rizzoli* was not necessary – Defendants'
counsel in no way stated that there was "no issue" with respect to *Rizzoli* images.  (*Id.*).

**Defendants' Response to Additional Statement No. 17:**

Defendants do not dispute that, in their Third Amended Complaint, Defendants allege
that they "would seek to utilize such public domain photographs commercially in connection
with goods and services that are officially authorized and/or licensed" by Defendants.  (*See*
Serbagi Decl. Ex. I ¶ 4).  Defendants dispute Plaintiffs' remaining assertions in this statement,

which are misleading, argumentative and conclusory, and are not supported by the cited

evidence.  Contrary to Plaintiffs' implication, Defendants have never alleged that they intend to

"license" public domain photographs – rather, as asserted in the Third Amended Complaint,

Defendants seek to utilize such photographs in conjunction with goods and services that

Defendants do authorize and/or license.

**Defendants' Response to Additional Statement No. 18:**

Defendants do not dispute that David Strasberg testified that, at the time of his

deposition, he was not employed by MMLLC and did not hold an official position at the

company.  (*See* Marcus Decl. Ex. V at 157, 201).  Defendants dispute Plaintiffs' remaining

assertions in this statement, which are argumentative, conclusory, and are not supported by the

cited testimony.  For example, contrary to Plaintiffs' argumentative assertions, Mr. Strasberg

testified that his informal duties and responsibilities include coordinating various litigations and

legislative efforts, and that he has also been involved in licensing efforts.  (*Id.* at 201-04).

**Defendants' Response to Additional Statement No. 19:**

Defendants do not dispute Plaintiffs' assertions in this statement.

**Defendants' Response to Additional Statement No. 20:**

Defendants do not dispute that they served their first set of interrogatories on January 11,

2007, or that Plaintiffs responded to such interrogatories on March 2, 2007.  Defendants dispute

Plaintiffs' remaining assertions in this statement, which are misleading and are not supported by

the cited evidence.  Contrary to Plaintiffs' assertions, Defendants did not only ask a "single"

interrogatory regarding Plaintiffs' ownership of copyrights – rather, a number of Defendants

interrogatories in their first set of interrogatories related to the issue of copyright ownership and

public domain.  (*See* Marcus Decl. Ex. D at 6, 7).  Further, contrary to Plaintiffs' assertions, they

did not "respond[] . . . that Edith Marcus and Meta Stevens owned the copyrights" – rather, Plaintiffs simply referred Defendants to a number of documents, including, *inter alia*, the settlement agreement between Larry Shaw, Edith Marcus and Meta Stevens, by which SFA was formed. (Marcus Decl. Ex. E at 11 (referring to, *inter alia*, Pl. Amended Compl. Ex. E, a June 5, 2002 settlement agreement). For the reasons set forth in   paragraphs 72-88 of Defendants' SUF, SFA is the owner of the photographs and copyrights in question pursuant to that settlement agreement.

Further, as stated in Defendants' Response to Additional Statement No. 5, Larry Shaw expressly stated that Shaw Family Archives is the sole owner of all copyrights in photographs taken by Sam Shaw.

**Defendants' Response to Additional Statement No. 21:**

Defendants dispute Plaintiffs' assertions in this statement. Contrary to Plaintiffs' allegations, the majority of the deposition of SFA's 30(b)(6) witness was dedicated to issues regarding the purported ownership of Sam Shaw's photographs of Marilyn Monroe and whether such photographs had entered the public domain. (*See generally* Dickstein Decl. Ex. D). Indeed, Defendants specifically asked:  "Is SFA the owner of all of the rights to your grandfather's photographs?" – the witness failed to answer. (*Id.* at 101-05).

**Defendants' Response to Additional Statement No. 22:**

Defendants do not dispute that Plaintiffs filed a Second Amended Complaint on August 8, 2007 (which sought, *inter alia*, a declaration that Marilyn Monroe died a New York domiciliary), that Defendants filed a motion to dismiss on August 9, 2007, and that on November 2, 2007, Plaintiffs sent an email to Defendants regarding Defendants' pending motion to dismiss. Those documents speak for themselves, and Defendants respectfully refer the Court to the

Second Amended Complaint, Defendant' motion to dismiss, and the November 2, 2007 email

(attached as exhibit F to the Serbagi Declaration and exhibits M and P to the Marcus Declaration,

respectively) for their full contents.

Defendants dispute Plaintiffs' assertion that Defendants moved to dismiss "the Shaw

Family's Complaint." Defendants' motion to dismiss only addressed counts 3-9 of the Second

Amended Complaint. (*See* Marcus Decl. Ex. P).

**Defendants' Response to Additional Statement No. 23:**

Defendants do not dispute that, on November 28, 2007, Defendants withdrew their

motion to dismiss Plaintiffs' declaratory judgment claim in light of the recently enacted

California right of publicity legislation. Defendants' November 28, 2007 letter to the Court

speaks for itself, and Defendants respectfully refer the Court to that letter, attached as exhibit 53

to the Strauss Declaration, for its full contents.

**Defendants Response to Additional Statement No. 24:**

Defendants dispute Plaintiffs' misleading assertions in this statement. As set forth in

more detail below, many of the exhibits identified by Plaintiffs were previously produced in this

litigation. Moreover, the vast majority of the exhibits referenced by Plaintiffs constitute publicly

available documents, documents that were already in Plaintiffs' possession (but never produced

by Plaintiffs), and/or documents that were not in Defendants' possession, custody or control

prior to the expiration of the discovery deadline. In their various responses to Plaintiffs'

document requests, Defendants objected to producing "documents that are already in Plaintiffs'

possession, are public or are otherwise readily available from sources to which Plaintiffs also

have access" or "documents not in the Defendants' possession, custody or control." (*See, e.g.,*

Marcus Decl. Ex. Q at 1-2). Plaintiffs never challenged these objections.

Exhibit 3 to the Strauss Declaration is not a "document" at all – it is a publicly available court decision in *Shaw v. Rizzoli Int'l Publ'ns, Inc.*, No. 96 Civ. 4259 (JFK) (S.D.N.Y.). Defendants expressly referred to this decision in their Third Amended Complaint, (*see* Serbagi Decl. Ex. I  at 23), and a copy of the decision was produced and marked as an exhibit at the December 17, 2007 deposition of SFA's 30(b)(6) witness, prior to the expiration of the discovery deadline.  (*See* Dickstein Decl. Ex. D at 61; Ex. E).  Moreover, Sam Shaw (SFA's predecessor-in-interest) and Edith Marcus (a plaintiff in this action and a shareholder in SFA) were <u>parties</u> to the *Rizzoli* action, and thus this decision was at all times within Plaintiffs' possession.  (*See* Strauss Decl. Ex. 3).

Similarly, exhibits 4, 6, 7, 10, 40 and 41 to the Strauss Declaration constitute publicly available court papers from a number of cases in which Sam Shaw and/or SFA and its shareholders were parties, including the *Rizzoli* action (*id.* Exs. 4, 7),  *Sam Shaw v. St. Martin's Press, Inc., et al.*, 93 Civ. 2871 (S.D.N.Y.) (*id.* Ex. 6); *Shaw v. Bressler*, Index No. 123783/94 (N.Y. Cty.) (*id.* Exs. 10, 40); and *Tunick v. Shaw*, Index No. 116636/03 (N.Y. Cty.) (*id.* Ex. 41). In addition to the fact that plaintiff Edith Marcus was a party to the *Rizzoli* action, Edith Marcus, Meta Stevens and Larry Shaw were all parties to the *Bressler* action – indeed, SFA was formed by those parties as a result of the settlement of that case.  (Def. SUF ¶¶ 73-74).  And Edith Marcus, Meta Stevens, Larry Shaw and SFA itself were all defendants in the *Tunick* case.  (*See* Strauss Decl. Ex. 41).  Accordingly, not only were all of these documents publicly available, they were <u>already in Plaintiffs' possession</u>, yet Plaintiffs never produced them to Defendants during the course of discovery.

In addition, Strauss Decl. Ex. 7 was marked as an exhibit during the December 17, 2007 deposition of SFA's 30(b)(6) witness.  (Dickstein Decl. Ex. D at 64; Ex. F).  Defendants

provided Plaintiffs with copies of the remaining publicly available court filings (which were already in Plaintiffs' possession) on January 18, 2008.  (Dickstein Decl. Ex. A at 1, Ex. B at 1/18/08 letter).

Exhibits A-K to the Declaration of Maureen Cloonan dated February 12, 2008 ("Cloonan Decl.") and exhibit 8 to the Strauss Declaration consist of publicly-available newspaper publications of Sam Shaw's photographs of Marilyn Monroe from the set of the film *The Seven Year Itch*.  In addition to being publicly available, none of these newspaper articles were in Defendants' possession, custody or control prior to the expiration of the discovery deadline.  (*See* Cloonan Decl. ¶ 2).  Plaintiffs refused to produce any documents regarding publication of such photographs (other than documents relating to the *Rizzoli* and *Ballantine* books) (*see* Strauss Decl. Ex. 12 Doc. Request No. 8; Def. SUF ¶¶ 18-19), and, during her December 27, 2007 deposition, SFA's 30(b)(6) witness was unable to state whether SFA maintained records of the publication history of all Sam Shaw photographs of Marilyn Monroe. (Dickstein Decl. Ex. D at 167-83).  Accordingly, in preparing for trial Defendants conducted their own investigation and located the publicly available documents at issue, which they would have expected to be within Plaintiffs possession.  Copies of these publicly available articles were then produced to Plaintiffs on January 18, 2008.  (Dickstein Decl. Ex. A at 1, Ex. B at 1/18/08 letter)..

Exhibit 9 to the Strauss Declaration consists of a publicly available magazine article containing photographs of Marilyn Monroe taken by Sam Shaw.  A copy of this article was

produced to Plaintiffs on December 4, 2007, prior to the expiration of the discovery deadline. (Dickstein Decl. ¶ 8, Ex. B at 12/4/07 cover letter; Ex. G).[1]

Exhibit 17 to the Strauss Declaration consists of excerpts of *Marilyn Among Friends*, a publicly available book written by Sam Shaw himself. Not only do Plaintiffs already have a copy of this book, SFA's 30(b)(6) witness testified that she reviewed that book in preparing for her deposition. (Dickstein Decl. Ex. D at 165-66). Indeed, Plaintiffs cited the book in their Second Amended Complaint, and asserted copyright infringement claims against Defendants based on that book, (*see* Serbagi Decl. Ex. F ¶¶ 15-19), and Plaintiffs themselves produced excerpts from that book in this litigation. (*See* Dickstein Decl. Ex. S). Moreover, the book was marked as an exhibit during the deposition of SFA's 30(b)(6) witness, prior to the close of the discovery deadline. (*See* Dickstein Decl. Ex. D at 186, Ex. H).

Exhibits 28-31 and 45 to the Strauss Declaration are printouts from SFA's own websites. Not only were such printouts not in Defendants' possession, custody or control prior to the expiration of the discovery deadline, they were clearly in Plaintiffs' control, yet Plaintiffs' did not produce them.

Exhibit 42 to the Strauss Declaration is a letter, dated December 13, 2007, from SFA's counsel to CMG's counsel. Obviously, a letter written by Plaintiffs' own attorney is already in Plaintiffs' possession, and Defendants cannot be precluded from utilizing such correspondence in connection with their summary judgment motion. Defendants note that Plaintiffs themselves rely on numerous exchanges of correspondence between the parties' attorneys. (*See, e.g.,* Marcus Decl. Exs. F, H, I, J, N, P, R, S, T, U).

---

[1] For Plaintiffs' convenience, another copy of the article, with the magazine cover page, was later produced on January 18, 2008).

Exhibits L-M to the Cloonan Declaration are electronic search results from searches of the United States Copyright Office website conducted on February 6 and 7, 2008. (Cloonan Decl. ¶¶ 14-15). These documents did not exist at the close of the discovery deadline, much less were they within Defendants' possession, custody or control.

Exhibits A-K to the Declaration of David Strasberg dated February 12, 2008 ("Strasberg Decl.") are publicly available documents relating to MMLLC's various trademarks. Exhibits A and D thereto were previously produced in this litigation, well prior to the discovery deadline. (*See* Dickstein Decl. Exs. T, U). Defendants were unaware of the purported relevance of these documents until Plaintiffs filed their summary judgment motion, alleging that Defendants lacked standing because they "do not have any intellectual property in the Rizzoli and Ballantine books." (Pl. Br. at 6). Defendants had alleged the existence of such trademarks in their Second Amended Complaint, which sought, *inter alia*, a declaration as to Defendants' interest in such intellectual property rights. (Serbagi Decl. Ex. C ¶¶ 7, 30-36). However, Defendants withdrew this claim when they filed their Third Amended Complaint, which did not assert any claims based on trademark. (*See* Serbagi Decl. Ex. I). Plaintiffs were fully informed that MMLLC owned trademarks, but did not attempt to compel production of trademark documents, particularly after the filing of the Third Amended Complaint.

Finally, exhibits A and B to the Declaration of Mark Roesler dated February 12, 2008 ("Roesler Decl.") consist of publicly available images from CMG's website. These documents were never called for by any document request, and Defendants were unaware of their relevance until Plaintiffs filed their summary judgment motion, alleging that Defendants lacked standing because they "do not have any intellectual property in . . . any public domain image of Marilyn Monroe." (Pl. Br. at 6).

**Defendants' Response to Additional Statement No. 25:**

Defendants dispute Plaintiffs' assertions in this statement, which are argumentative, conclusory, and unsupported by any evidence.  Plaintiffs will suffer no prejudice as a result of the Court's consideration of the documents in question.  As explained in Defendants' Response to Additional Statement No. 24, many of the documents in question were in fact produced prior to the expiration of the discovery deadline, and the vast majority of the documents are publicly available or were already in Plaintiffs' possession.  Thus, there is no merit to Plaintiffs' conclusory argument that they never had the opportunity to "authenticate" the documents or use them during the examination of Defendants' deponents.

Further, to the extent Plaintiffs did not already have possession of the documents in question, all of the publicly available material was produced to Plaintiffs at least two months ago.  (*See* Def. Response to Add'l Stmt. 24, *supra*).  Accordingly, contrary to their assertions, Plaintiffs have had substantial time to "review" and "research" the copyright status of such documents, particularly since any information regarding copyrights in Sam Shaw's photographs is in Plaintiffs' control, not Defendants'.

**Defendants' Response to Additional Statement No. 26:**

Defendants do not dispute that they did not take the deposition of Michelle Minieri, and that the documents attached as exhibits 19-24 and 43 to the Strauss Declaration were produced by Plaintiffs during the course of discovery in this action.  Defendants dispute Plaintiffs' remaining assertions in this statement, which are vague, confusing, and misleading.  As Plaintiffs are well aware, Defendants did not depose Larry Shaw only because Mr. Shaw died on October 19, 2007 (*see* Marcus Decl. ¶ 28), before depositions in this case commenced.  And the vast majority of the exhibits referenced above, in which SFA asserts rights in public domain

photographs, were produced by Plaintiffs in February 2007 (*see* Dickstein Decl. Ex. I), prior to the filing of Defendants' Third Amended Complaint.

**Defendants' Response to Additional Statement No. 27:**

Defendants do not dispute that they filed a Complaint on March 23, 2005, which asserted, among other things, that the Shaw Family did not possess a valid or enforceable copyright in one or more photographs that comprise the Shaw Collection and that, absent a valid and enforceable copyright, such photographs enter the public domain. (See Serbagi Decl. Ex. A ¶¶ 51-52). Defendants dispute Plaintiffs' remaining assertions in this statement, which constitute an argumentative, conclusory and slanted summary of Defendants March 23, 2005 Complaint. The Complaint speaks for itself, and Defendants respectfully refer the Court to that document, a copy of which was attached as exhibit A to the Serbagi Declaration, for its full contents. In addition, Plaintiffs' assertions are duplicative and repetitive of Statement No. 1 in their January 8, 2008 Statement of Undisputed Facts, and Defendants respectfully refer the Court to their responses to that Statement. (*See* Def. Resp. to Pl. SUF No. 1).

**Defendants' Response to Additional Statement No. 28:**

Defendants do not dispute that they filed amended complaints on June 7, 2005 and June 21, 2005, and that each of these amended complaints asserted, among other things, that the Shaw Family did not possess a valid or enforceable copyright in one or more photographs that comprise the Shaw Collection and that, absent a valid and enforceable copyright, such photographs enter the public domain. (*See* Serbagi Decl. Ex. B. ¶¶ 75-76; Ex. C ¶¶ 76-77). The amended complaints speak for themselves, and Defendants respectfully refer the Court to those documents, copies of which were attached as exhibits B and C to the Serbagi Declaration, for their full contents.

**Defendants' Response to Additional Statement No. 29:**

Defendants do not dispute that, on August 9, 2007, after the Court's prior summary judgment ruling, Defendant filed their Third Amended Complaint, which seeks a declaration that photographs of Marilyn Monroe taken by Sam Shaw are in the public domain. Defendants dispute any implication that their claim is in any way limited to images appearing in the books *Marilyn Monroe as the Girl* (the "Ballantine Book") or *Marilyn Monroe. The Life. The Myth.* (the "Rizzoli Book"). The Third Amended Complaint speaks for itself, and Defendants respectfully refer the Court to that document, a copy of which was attached as exhibit I to the Serbagi Declaration, for its full contents.

**Defendants' Response to Additional Statement No. 30:**

Defendants do not dispute that, on December 7, 2007, they sent a letter to Magistrate Judge Fox regarding a discovery dispute in this action. Defendants dispute Plaintiffs' summary of that letter, which is misleading and is not supported by the cited document. For example, nowhere in the December 7, 2007 letter did Defendants seek to compel "interrogatory responses." (*See* Serbagi Decl. Ex. P). The December 7, 2007 letter speaks for itself, and Defendants respectfully refer the Court to that document, which was attached as exhibit P to the Serbagi Declaration, for its full contents. Defendants also respectfully refer the Court to paragraphs 18-32 of Defendants' SUF for a full account of the discovery dispute between the parties.

**Defendants' Response to Additional Statement No. 31:**

Defendants do not dispute that, on December 10, 2007, Plaintiffs filed a letter motion with Magistrate Judge Fox. Defendants dispute Plaintiffs' remaining assertions in this statement, because anything contained in the letter motion is pure argument and because Plaintiffs'

summary of the letter motion is misleading and is not supported by the cited document. For

example, while Plaintiffs assert that the letter motion "sought a protective order to limit the

testimony of SFA's 30(b)(6) witness to the Rizzoli and Ballantine books," this issue was

mentioned only in passing in the final sentence of the December 10 letter. (*See* Serbagi Decl.

Ex. Q at 2). Defendants also respectfully refer the Court to paragraphs 21-22 of Defendants'

SUF for a fuller summary of Plaintiffs' December 10, 2007 letter motion.

**Defendants' Response to Additional Statement No. 32:**

Defendants do not dispute that Larry Shaw died on October 19, 2007, and that shortly

thereafter Plaintiffs identified Edith Marcus as SFA's 30(b)(6) witness. Defendants dispute

Plaintiffs remaining assertions in this statement, which are conclusory and argumentative, and

are not supported by evidence. First, despite Plaintiffs' claim that Melissa Stevens was

"immediately substituted as the 30(b)(6) witness" (Marcus Decl. ¶ 28), Plaintiffs did not inform

Defendants that Stevens would be the witness until the afternoon of Friday, December 14, 2007,

less than one business day before the deposition was to commence. (*See* Def. SUF ¶ 23).

Second, Melissa Stevens was not the "most knowledgeable witness" for SFA. For example,

even though Plaintiffs sought to limit the scope of the deposition to the Ballantine and Rizzoli

Books, Ms. Stevens claimed not even to know whether the *Rizzoli* Court ruled that certain Sam

Shaw photographs are in the public domain. (Strauss Decl. Ex. 15 at 58-59). Presumably Edith

Marcus, who was a party to the *Rizzoli* case (*see* Strauss Decl. Ex. 3), had greater knowledge

regarding that decision. In addition, Ms. Stevens was unable to answer numerous questions

regarding Sam Shaw's photographs from the set of *The Seven Year Itch*, repeatedly stating that

she was not alive at the time. (*See, e.g.,* Dickstein Decl. Ex. D at 81-82, 85-86, 89, 221-23). By

contrast, Edith Marcus submitted a declaration in connection with the pending summary

judgment motions purporting to set forth facts regarding Sam Shaw's activities on the set of that

film. (See Declaration of Edith Marcus dated March 3, 2008 ("Second Marcus Decl."), ¶¶ 3-6).

Indeed, Plaintiffs have filed two separate declarations of Edith Marcus in connection with

the pending summary judgment motions on the public domain issue, in which Ms. Marcus claims

to have personal knowledge of facts relevant to the public domain motions.  (*See* Declaration of

Edith Marcus dated January 9, 2008 ("First Marcus Decl."); Second Marcus Decl.).  Plaintiffs

have not filed any declarations from Melissa Stevens.

**Defendants' Response to Additional Statement No. 33:**

Defendants do not dispute that Plaintiffs' counsel sent an email to Defendants' counsel at

9:16 pm on December 13, 2007, and that Defendants' counsel responded the next morning.

Defendants dispute Plaintiffs' remaining allegations in this section, which constitute a

conclusory and argumentative summary of the referenced email exchange.  The email exchange

speaks for itself, and Defendants respectfully refer the Court to the email, which was attached as

exhibit S to the Marcus Declaration, for its full contents.

**Defendants' Response to Additional Statement No. 34:**

Defendants do not dispute that, on Saturday, December 15, 2007 (two days before the

deposition of SFA's 30(b)(6) witness), Plaintiffs' counsel sent an email stating that he would

only permit his witness to testify regarding Marilyn Monroe's domicile and the Rizzoli Book,

that Defendants responded that they would not limit their inquiry in that manner, and that

Plaintiffs' counsel reasserted on December 16, 2007 that he would instruct the witness not to

answer questions about anything other than the Rizzoli and Ballantine Books.  Defendants

dispute Plaintiffs' remaining allegations in this section, which constitute a conclusory and

argumentative summary of the referenced email exchange.  The email exchange speaks for itself,

and Defendants respectfully refer the Court to the email, which was attached as exhibit T to the Marcus Declaration, for its full contents.  Defendants also dispute any suggestion that Plaintiffs had any right to unilaterally restrict the scope of the deposition to just two books.  Defendants respectfully refer the Court to paragraphs 18-32 of Defendants' SUF for a full account of the discovery dispute underlying this email exchange.

**Defendants' Response to Additional Statement No. 35:**

Defendants do not dispute that they began the deposition of Melissa Stevens on December 17, 2007.  Defendants dispute Plaintiffs' remaining assertions in this statement. Contrary to Plaintiffs assertions, Defendants asked numerous questions regarding SFA's licensing activities throughout the deposition.  (*See, e.g.,* Dickstein Decl. Ex. D at 14, 20-21, 40-42, 93, 108-113).  However, Plaintiffs' counsel <u>instructed his witness not to answer questions</u> <u>about such licensing activities unless they specifically related to the Rizzoli or Ballantine Books</u>. (*Id.* at 40-42, 108-13).

**Defendants' Response to Additional Statement No. 36:**

Defendants do not dispute that, on December 20, 2007, they sent a letter to Magistrate Judge Fox regarding Plaintiffs' improper conduct during the deposition.  Defendants dispute Plaintiffs' summary of that letter, which is misleading and is not supported by the cited document.  For example, Plaintiffs' do not mention in their assertions that, among other things, Defendants sent the letter to inform Magistrate Judge Fox that Plaintiffs' counsel unilaterally limited the scope of the deposition, repeatedly instructing his witness not to answer any questions except those directly relating to the Rizzoli and Ballantine Books.  (*See* Serbagi Decl. Ex. R). The December 20, 2007 letter speaks for itself, and Defendants respectfully refer the Court to that document, which was attached as exhibit R to the Serbagi Declaration, for its full

contents.  Defendants also respectfully refer the Court to paragraphs 18-32 of Defendants' SUF for a full account of the discovery dispute between the parties.

**Defendants' Response to Additional Statement No. 37:**

Defendants do not dispute that, on December 25, 2007, Plaintiffs sent a letter to Magistrate Judge Fox.  Defendants dispute Plaintiffs' remaining assertions in this statement, because they constitute a slanted and misleading summary of that letter (which addressed numerous discovery disputes beyond whether Melissa Stevens was an adequate 30(b)(6) witness), and because the letter itself is pure argument.

**Defendants' Response to Additional Statement No. 38:**

Defendants do not dispute Plaintiffs' assertions in this statement.

**Defendants' Response to Additional Statement No. 39:**

Defendants dispute Plaintiffs' assertions in this statement, which are conclusory, argumentative, and are not supported by the cited evidence.  For example, Magistrate Judge Fox did not "deny" Defendants' request for "additional discovery" – at the hearing, Defendants requested that Plaintiffs be compelled to produce two binders of copyright registration materials, and Magistrate Judge Fox ordered that Plaintiffs make those binders available for inspection. (*See* Strauss Decl. Ex. 16 at 5-6, 8).  At no time in the hearing did Magistrate Judge Fox deny any request for additional discovery.  (Strauss Decl. Ex. 16).

Defendants also state that Plaintiffs' remaining assertions in this statement are duplicative and repetitive of Statements No. 29 and 30 in their January 8, 2008 Statement of Undisputed Facts, and Defendants respectfully refer the Court to their previous responses to those statements.  (*See* Def. Resp. to Pl. SUF Nos. 29 and 30).

**Defendants' Response to Additional Statement No. 40:**

Defendants do not dispute that, at the December 26, 2007 hearing, Defendants' counsel stated that "[a]bsent a showing of ownership of some copyright interest in a photograph of Marilyn Monroe by the Shaw Family, they have no standing to seek any ruling with respect to Marilyn Monroe's domicile." (Strauss Decl. Ex. 16 at 2). Defendants dispute Plaintiffs' conclusory assertion that this statement was somehow "false[]," or that this position was in any way inconsistent with Defendants decision to withdraw their motion to dismiss Count Nine of Plaintiffs' Second Amended Complaint. Defendants' motion to dismiss Count Nine was based on entirely different grounds (i.e., that this Court had already ruled that Defendants lacked any right of publicity regardless of Marilyn Monroe's domicile, and thus that declaratory judgment regarding her domicile was not necessary), and Defendants' ultimately withdrew that portion of their motion to dismiss because that particular argument was rendered moot when the State of California enacted revised legislation. (*See* Def. Resp. to Add'l Stmt. No. 23, *supra*). Defendants did <u>not</u> argue in their motion to dismiss that Plaintiffs lacked standing to seek a declaratory judgment because they did not own any valid copyrights, simply because such an argument was not conducive to resolution via motion to dismiss, but instead required factual discovery regarding the nature of Plaintiffs' copyright interests.

**Defendants' Response to Additional Statement No. 41:**

Defendants state that Plaintiffs' assertions in this statement are conclusory and argumentative, and are duplicative and repetitive of Statements No. 29 and 33 in Plaintiffs' January 8, 2008 Statement of Undisputed Facts, and Defendants respectfully refer the Court to their previous responses to those Statements. (*See* Def. Resp. to Pl. SUF Nos. 29, 33).

**Defendants' Response to Additional Statement No. 42:**

Defendants do not dispute that, on December 13, 2007, SFA sent a letter to CMG, or that, on November 21, 2007, CMG had sent an email to an entity in Korea. Defendants dispute Plaintiffs' remaining assertions in this statement, which constitute an argumentative, conclusory and slanted summary of the correspondence in question. For example, in its email to the Korean entity, CMG asserted a violation of its <u>trademark</u> rights, not publicity rights. (*See* Deposition of Michelle Minieri dated March 4, 2008 ("Minieiri Decl.") Ex. A). Further, Defendants do not have information sufficient to form a belief as to SFA's reasons for sending the December 13, 2007 letter, but note that, regardless of their reasons, in the letter SFA claimed to be the "holder of all worldwide rights . . . in the photos taken by Sam Shaw or Larry Shaw during the course of their professional careers as photographers." (Strauss Decl. Ex. 42).

**Defendants' Response to Additional Statement No. 43:**

Defendants dispute Plaintiffs' assertions in this statement, which are not supported by the cited evidence and are based on inadmissible hearsay.

Plaintiffs rely on the Second Marcus Declaration, but Ms. Marcus lacks personal knowledge regarding the details of Sam Shaw's arrangement with the producers of *The Seven Year Itch*, and the statements in her declaration conflict with documentary evidence and the testimony of SFA's 30(b)(6) witness. For example, Ms. Marcus conclusorily asserts that "[t]here is no employment contract between Sam Shaw" and anyone associated with the film (Second Marcus Decl. ¶ 3), yet SFA's 30(b)(6) witness did not know whether or not a written employment contract existed. (Dickstein Decl. Ex. D at 85-86). Ms. Marcus asserts that "Sam Shaw did not work for Twentieth Century Fox," yet goes on to say that "Twentieth Century Fox owed Sam Shaw money for his work on the film." (Second Marcus Decl. ¶¶ 3-4). Indeed, Sam

27

Shaw himself testified that he <u>was</u> paid by the producers of *The Seven Year Itch* for his work in connection with the film.  (Strauss Decl. Ex. 7 at MMLLC (Shaw) 000611).

     Ms Marcus also conclusorily asserts, with no evidentiary support, that "[n]o one supervised my father's activities on *The Seven Year Itch*" and that "[m]y father did not report to any superior . . . and was not required to be on the set at any given time," (Second Marcus Decl. ¶ 3).  But Sam Shaw himself alleged that he "was required to be . . . on the movie set at all times that Marilyn Monroe was on the set."  (Strauss Decl. Ex. 6 ¶ 8).

     Further, exhibits A-C to the Second Marcus Declaration all constitute inadmissible hearsay, and should not be considered.  For example, Plaintiffs rely on exhibit A to the Second Marcus Declaration for the proposition that  "the producer of the Seven Year Itch [Charles Feldman] admitted that Sam Shaw owned the copyrights," but the document in question is not a communication from Charles Feldman himself, but rather is a March 30, 1993 letter from Deane F. Johnson, the executor of Charles Feldman's estate, to Twentieth Century Fox.  Thus, the document is inadmissible double-hearsay.  In addition, the letter only discusses ownership of "photographs," not copyrights, and also evidences a dispute with Twentieth Century Fox regarding whether or not Sam Shaw actually owned such photographs.  (Second Marcus Decl. Ex. A).

     Plaintiffs' assertion that the "director" of *The Seven Year Itch* did not pay Sam Shaw's expenses is immaterial to the pending motion.  Sam Shaw was hired by the <u>producers</u> of the film, not the director, and in his deposition in the *Rizzoli* case, Sam Shaw testified that he was paid by the <u>producers</u> of the film.  (Strauss Decl. Ex. 7 at MMLLC (Shaw) 000611).  And the document that Plaintiffs rely on in support of this proposition, in addition to being inadmissible hearsay, does not even support the assertion for which it is cited.  Ms. Marcus states that exhibit B to her

declaration somehow shows that "Twentieth Century Fox did not even want my father to work on *The Seven Year Itch*," but the document merely states that, for tax reasons, Billy Wilder (the director of the film) could not pay living expenses for Sam Shaw, George Axelrod (the screenwriter) or Mr. Wilder himself, and that the producers would have to fund these expenses. (Second Marcus Decl. Ex. B).

Finally, in addition to being hearsay, exhibits B and C to the Second Marcus Declaration are also inadmissible because they wee never produced by Plaintiffs (*see* Pl. Br. at 29), even though they were directly called for in document requests. (*See* Strauss Decl. Ex. 12, Doc. Req. 15 (calling for production of "[a]ll agreements and/or assignments concerning the Flying Skirt Photographs, including but not limited to any and all correspondence and/or agreements with 20th Century Fox, Billy Wilder or any of the producers of *The Seven Year Itch*.").

**Defendants' Response to Additional Statement No. 44:**

Defendants do not dispute that the producers of *The Seven Year Itch* never alleged Sam Shaw's ownership to the copyrights of his photographs of Marilyn Monroe taken in connection with that film. Defendants dispute Plaintiffs' remaining allegations in this statement, which are not supported by the cited evidence.

**Defendants' Response to Additional Statement No. 45:**

Defendants dispute Plaintiff's assertions in this statement. Contrary to Plaintiffs' assertions, the evidence establishes that Plaintiffs attempted to re-register copyrights in numerous photographs that previously were published in, *inter alia*, the *Rizzoli* and *Ballantine* books. (*See* Def. SUF ¶¶ 47-56).

Dated:  New York, New York
      March 25, 2008

LOEB & LOEB, LLP

By:_____/s/  Jonathan Neil Strauss_____
    Barry I. Slotnick
    Jonathan Neil Strauss
    Tal E. Dickstein
    345 Park Avenue
    New York, New York 10154-1895
    (212) 407-4000

*Attorneys for Marilyn Monroe LLC*


SOVICH MINCH, LLP

By:_____/s/ Theodore J. Minch_____
    Theodore J. Minch, Esq.
    10099 Chesapeake Drive, Suite 100
    McCordsville, Indiana 46055
    Tel: (317) 335-3601
    Fax: (317) 335-3602

*Attorneys for CMG Worldwide, Inc.*