UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SHAW FAMILY ARCHIVES, LTD., EDITH MARCUS,  :
and META STEVENS,                          :
                                           :
                                           :
                                           :
                      Plaintiffs,          : Index No. O5 CV 3939 (CM)
                                           :
       -against-                           :
                                           :
                                           :
                                           :
CMG WORLDWIDE, INC., an Indiana Corporation :
and MARILYN MONROE, LLC, a Delaware        :
Limited Liability Company,                 :
                                           :
                      Defendants.          :
                                           :
------------------------------------------------------------------X


**THE SHAW FAMILY'S REPLY MEMORANDUM IN FURTHER SUPPORT OF
ITS MOTION FOR AN ORDER THAT SB 771 IS UNCONSITTUIONAL, AND
THAT THE COURT'S MAY 2, 2007 DECISION AND ORDER STANDS**


                          LAW OFFICES OF CHRISTOPHER SERBAGI
                          488 Madison Avenue, Suite 1120
                          New York, New York  10022
                          Tele: (212) 593-2112
                          Fax: (212) 308-8582

                          Attorneys for the Plaintiffs

On the Brief:
Marci Hamilton, Esq.
Christopher Serbagi, Esq.
David Marcus, Esq.

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................i

TABLE OF AUTHORITIES..........................................................................................ii

I.     The Shaw Family has Standing to Challenge Sec. 3344.1 and SB 771......................1

II.    This Court's Order to Brief the Constitutionality of SB 771 Clearly Includes within Its Scope SB 771's Underlying Statute, Sec. 3344.1 ..................4

III.   Defendants Have Not Shown That There Is an Express Legislative Intent that Sec. 3344.1 Be Applied Retroactively, Because a Single Instance of Subsequent Legislative History, Created Decades After the Act Was Passed, Cannot Establish Legislative Intent Behind Sec. 3344.1......................................................................................................................5

IV.   B771 Creates New Property Rights .........................................................................6

V.    The Screen Actors Guild Misstates the History of Publicity Rights in California ......................................................................................................................8

CONCLUSION.................................................................................................................8

# TABLE OF AUTHORITIES

**CASES**

Abbott Labs. v. Gardner, 387 U.S. 136 (1967) ................................................................3

Allied Structural Steel v. Spannaus, 438 U.S. 234 (1978) .................................................7

Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289 (1978) ..................................2

Califano v. Sanders, 430 U.S. 99 (1977) ...........................................................................3

Dean v. Superintendent, Clinton Correctional Facility, 93 F.3d 58 (2d Cir. 1996)..........2

Greene Archives v. CMG Worldwide, Inc. ("Greene Archives I"), No. 2:05-cv-02200 (C.D. Cal. May 14, 2007) ....................................................................................3, 6

Greene Archives v. CMG Worldwide, Inc. ("Green Archives II"), No. 2:05-cv-02200 (C.D. Cal. Jan. 7, 2008) .....................................................................................3, 7

Harmon v. Brucker, 355 U.S. 579 (1958)..........................................................................2

Lugosi v. Universal Pictures, 603 P.2d 425 (Cal. 1979)....................................................8

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ........................................................2

United States v. Price, 361 U.S. 304, 313 (1960) ..............................................................5

Republic of Austria v. Altmann, 124 S. Ct. 2240 (2004) ...................................................6

Shaw Family Archives Ltd. v. CMG Worldwide, Inc., 486 F. Supp. 2d 309 (S.D.N.Y. 2007) ...............................................................................................................3, 6

Stogner v. California, 539 U.S. 607 (2003) .......................................................................6

Sullivan v. Finkelstein, 496 U.S. 617 (1990).....................................................................

**STATUTES**

SB 771, 2007 Cal. Legis. Serv. Ch. 439 ......................................................................... 1-8

Cal. Civil Code § 3344.1................................................................................................ 1-8

**OTHER PUBLICATIONS**

Dan Bischoff, A Question of Image: When Pop Culture Tributes Become
Copyright Infringements on Art, N.J. Star-Ledger, Feb. 17, 2008 ................................ 2

Jordana Lewis, Long-Dead Celebrities Can Now Breath Easier, N.Y. Times, Oct.
24, 2007, at E4 ................................................................................................ 2

2 J. Thomas McCarthy, Rights of Publicity and Privacy § 9:5 (2d ed. 2008) .................... 8

While Defendants' Response objects to the inevitable legal conclusions regarding the constitutionality of SB 771, 2007 Cal. Legis. Serv. Ch. 439 (S.B. 771) (West) ("SB 771"), it offers no on-point legal authority. The Shaw Family stands by all arguments made in its motion for an order that SB 771 is unconstitutional and that this Court's May 2, 2007, decision should stand.

In this brief, the Shaw Family will only briefly reply to misstatements of law or fact in the Defendants' Opposition.

### I.    The Shaw Family Has Standing to Challenge Sec. 3344.1 and SB 771

Defendants make the specious argument that the Shaw Family does not have standing to challenge the constitutionality of Sec. 3344.1 and SB 771. Cal. Civil Code § 3344.1. Their own arguments belie their assertions regarding standing.

In separate briefing, as Defendants know, the Shaw Family and Defendants are arguing over the question of Marilyn Monroe's domicile. The Shaw Family argues that she was a New York domiciliary, while the Defendants are energetically asserting that she was a California domiciliary. Compare the Shaw Family's Memorandum of Law in Support of its Motion for Summary Judgment on Count 9 of its Second Amended Complaint, dated February 14, 2008, and Defendants Memorandum in Opposition, dated March 13, 2008. The only reason for Defendants to argue in favor of California as her domicile is to take advantage of California law, with the relevant and controlling law being Sec. 3344.1 and SB 771. Essentially, Defendants have concocted a standing argument in order to get their cake and eat it, too: they would have this Court relinquish jurisdiction over the question of the constitutionality of controlling California law as they forge ahead to have this Court rule, in effect, that the same California law controls.

1

It is not merely hypothetical that Sec. 3344.1 and SB 771 could control the substantive outcome of this case, and they could deprive the Shaw Family of its right to market and license its Marilyn Monroe photographs taken by Sam Shaw. Therefore, the requirements of standing doctrine are satisfied. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1978).

The crux of Defendants' argument, in fact, is not standing, but rather that this Court should not address the constitutional issues squarely before it prior to deciding the domicile issue. While there is a presumption that courts should avoid constitutional decisions if possible, it is not a rule that requires courts to prolong litigation unnecessarily. Dean v. Superintendent, Clinton Correctional Facility, 93 F.3d 58, 61 (2d Cir. 1996) (noting "'duty to avoid deciding constitutional questions presented unless essential to proper disposition of a case'".)(quoting Harmon v. Brucker, 355 U.S. 579, 581 (1958)).

Legislation virtually identical to SB 771 is active in the New York legislature. (See Third Declaration of Christopher Serbagi, dated March 27, 2008, ("Third Serbagi Decl.") at ¶ 2 Ex. A). Dan Bischoff, A Question of Image: When Pop Culture Tributes Become Copyright Infringements on Art, N.J. Star-Ledger, Feb. 17, 2008 ("[T]he New York State Legislature is considering its own copycat celebrity protection act . . . which may come to a vote this winter or spring."); Jordana Lewis, Long-Dead Celebrities Can Now Breath Easier, N.Y. Times, Oct. 24, 2007, at E4. Therefore, even if this Court rules that Marilyn Monroe's domicile was New York, as the Shaw Family requests, the identical constitutional issues may well be before it. Judicial economy demands --

2

especially in light of the weak reasoning on constitutional issues in the only decision to date to address SB 771's constitutionality -- that this Court address the patent unconstitutionality of SB 771 at this stage. Greene Archives v. CMG Worldwide, Inc. ("Green Archives II"), No. 2:05-cv-02200 (C.D. Cal. Jan. 7, 2008).

Defendants argument regarding the timing of the Shaw Family's attack on Sec. 3344.1 is also unavailing. The issue of Sec. 3344.1's constitutionality was not ripe for this Court's review until SB 771 was enacted, which became effective on January 1, 2008, after the Shaw Family filed its summary judgment motion in 2006. Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967), overruled on other grounds, Califano v. Sanders, 430 U.S. 99 (1977) ("[The ripeness doctrine's] basic rationale is to prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.") Until SB 771 was enacted, both courts addressing the issue had concluded that the Shaw Family's interests were not at risk from the operation of Sec. 3344.1, because it did not establish a descendible right of publicity. Shaw Family Archives Ltd. v. CMG Worldwide, Inc., 486 F. Supp. 2d 309, 314 (S.D.N.Y. 2007); Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc. ("Greene Archives I"), No. 2:05-cv-02200, at 17, note 35 (C.D. Cal. May 14, 2007). The Shaw Family's constitutional arguments against Sec. 3344.1 became ripe only when SB 771 altered existing property rights and threatened the Shaw Family's interests, as illustrated by the decision in Greene Archives II. Greene Archives II, No. 2:05-cv-02200, at 21 (C.D. Cal. Jan. 7, 2008).

3

## II. This Court's Order to Brief the Constitutionality of SB 771 Clearly Includes within Its Scope SB 771's Underlying Statute, Sec. 3344.1

Once again, Defendants want to have their cake and eat it, too. This Court's November 29, 2007, Disposition of Various Pending Motions, directed the parties to brief the legality of SB 771 "if there is going to be any attack against the California statute on *any legal ground.*" (Third Serbagi Decl., at ¶ 3, Ex. B)(emphasis added). The Shaw Family have posed (at least) two grounds: they have attacked (1) SB 771 standing by itself and (2) as a law that rests directly on Sec. 3344.1. Memorandum in Support of Motion for an Order That SB 771 Is Unconstitutional and That the Court's May 2, 2007 Decision and Order Stands at 18-20 ("The Shaw Family's Opening Brief").

Yet, according to Defendants, SB 771 is nothing more than a clarification of Sec. 3344.1. Defs' Mem., at 7-8. Thus, they can defend SB 771 by arguing that it is simply piggybacking on Sec. 3344.1, but the Shaw Family supposedly is not permitted to challenge its constitutionality by challenging the constitutionality of the underlying statute. This is simply illogical.

If SB 771 is nothing but a shell or a gloss, then its underlying statute surely is fair game for constitutional challenge. Either way, the Shaw Family stands by its arguments that neither SB 771 nor Sec. 3344.1, taken alone or together, satisfies the minimal constitutional standards for retroactivity, because neither is expressly retroactive. The Shaw Family's Opening Brief at 19.

It is worth noting that Defendants do not rebut the Shaw Family's simple and factual claim that neither statute is expressly retroactive.

III. **Defendants Have Not Shown That There Is an Express Legislative Intent that Sec. 3344.1 Be Applied Retroactively, Because a Single Instance of Subsequent Legislative History, Created Decades After the Act Was Passed, Cannot Establish Legislative Intent Behind Sec. 3344.1**

Defendants brazenly attempt to manufacture express legislative intent behind Sec. 3344.1 by quoting a letter written in support of SB 771 in 2007. This argument fails for two reasons. First, legislative "history" that follows the enactment of a law is the most unreliable history available, and courts should not take cognizance of it, especially when it is decades removed from the original enactment. See Sullivan v. Finkelstein, 496 U.S. 617, 631 (1990) (Scalia, J., concurring) ("'Subsequent legislative history'" - which presumably means the post-enactment history of a statute's consideration and enactment - is a contradiction in terms."); U.S. v. Price, 361 U.S. 304, 313 (1960) ("[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.").

Second, this 2007 letter is all of the evidence that Defendants have been able to muster to prove an express legislative intent to make Sec. 3344.1 retroactive. The requirement of "express intent" requires significantly more than a letter written decades after a law is passed. The Shaw Family's Opening Brief at 19.

Defendants further argue that the Shaw Family may not "mount a facial challenge to the constitutionality of Sec. 3344.1" on the theory that it could be applied constitutionally in some circumstances. In particular, they argue that Sec. 3344.1 "might be unconstitutionally retroactive as applied to individuals using a deceased personality's image prior to 1985, [but] it cannot possibly be unconstitutionally retroactive as applied to individuals using a deceased personality's image after 1985." Defs' Mem. at 16, n. 6. Defendants appear to be confused. As explained in the Shaw Family's opening brief,

5

Sec. 3344.1 only vests descendible publicity rights in two circumstances: (1) before death, if the personality makes his or her intention clear in "testamentary documents" or (2) after death, by statutorily designated heirs. The Shaw Family's Opening Brief at 6-7. The second provision does not describe anyone involved in this case, which means Sec. 3344.1 could only apply in this case if the first provision were retroactive.

Since there is no express retroactive intent, the first provision cannot be applied retroactively in any case. Thus, it would be unconstitutional for the personality's estate to prevent an otherwise legal use of the deceased personality's image before *or* after 1985. What Defendant seems to mean is that Sec. 3344.1 could be applied constitutionally in some circumstances and, therefore, survives constitutional attack. This is a silly argument, because it simply means that it could be applied prospectively. True, but all retroactive applications are unconstitutional.

Defendants also make the sui generis argument that SB 771 is constitutional, because it does not violate the Ex Post Facto Clause. The Shaw Family never argued that it did, because, to date, the Ex Post Facto Clause has only barred retroactive application of criminal laws. See Stogner v. California, 539 U.S. 607, 610 (2003); see also Republic of Austria v. Altmann, 124 S. Ct. 2240, 2250 (2004).

IV.    **SB771 Creates New Property Rights**

Before the enactment of SB 771, Defendants could not employ Sec. 3344.1 to invoke publicity rights that would halt the Shaw Family's distribution and use of their copyrighted works. Shaw Family Archives, 486 F. Supp. 2d at 314; Greene Archives I, No. 2:05-cv-02200, at 17, note 35. With SB 771, the California legislature turned the tables on the parties, and led Judge Morrow to rule that those in Defendants' position

suddenly had rights they did not possess before. Greene Archives II, No. 2:05-cv-02200, at 21. Those rights will not be capable of being exercised at this point, only because Judge Morrow ruled that Marilyn Monroe's domicile is in New York, which means that California law cannot control. Third Serbagi Decl. at ¶ 4, Ex. C. For Defendants to argue that SB 771 was simply a continuation of past practices defies belief and common sense.

Before SB 771, the Shaw Family entered into business arrangements without fear of descendible publicity rights from Marilyn Monroe's estate, because neither California nor New York law established such rights. With its enactment, their property rights in their photographic works are seriously threatened, if not wholly eviscerated (though only if Monroe was a domiciliary of California). Thus, their rights under the Due Process and Contract Clauses of the federal and California constitutions are violated by SB 771. Allied Structural Steel v. Spannaus, 438 U.S. 234, 244, 250 (1978) (finding violation of Contract Clause where state law "operated as a substantial impairment of a contractual relationship," "irrevocably and retroactively").

Defendants try to argue that retroactive application of Sec. 3344.1 is constitutional in this case, because the Shaw Family has not pled pre-1985 contracts that would have been affected by the change in law represented by Sec. 3344.1. As stated above, Sec. 3344.1, before SB 771, did not reasonably threaten the Shaw Family. Only after SB 771 went into effect were the Shaw Family's interests affected. SB 771 attempted to transform Sec. 3344.1 into a retroactive statute. That attempt is unsuccessful, because it is unconstitutional. Therefore, pre-1985 contracts were not

relevant until very recently. Were Monroe found to be a domiciliary of California, the Shaw Family could and would amend the Second Amended Complaint.

### V. The Screen Actors Guild Misstates the History of Publicity Rights in California

The amicus brief filed by the Screen Actors Guild re-configures the history of descendible publicity rights in California when it asserts that before the California Superior Court's 1972 decision in <u>Lugosi v. Universal Pictures</u>, 603 P.2d 425 (Cal. 1979), "the existence of post-mortem rights of publicity was readily accepted." To the contrary, it was not until the 1970s that a discussion of descendible property rights even began. 2 J. Thomas McCarthy, <u>Rights of Publicity and Privacy</u> § 9:5 (2d ed. 2008). The weakness of SAG's theory is underscored by its reliance on the dissent in the landmark appellate decision in <u>Lugosi</u>, 603 P.2d at 439; Brief for Screen Actors Guild, Inc. as Amicus Curiae for Defendants at 6.

### Conclusion

For the foregoing reasons, The Shaw Family respectfully request this Court rule that SB 771 is unconstitutional, and Sec. 3344.1 is unconstitutional if applied retroactively, and uphold its May 2, 2007, decision.

Dated: New York, New York
       March 27, 2008

                           Respectfully Submitted,

                           LAW OFFICES OF CHRISTOPHER SERBAGI

                           By: *[signature]*
                           Christopher Serbagi, Esq.
                           David M. Marcus, Esq.
                           488 Madison Avenue
                           New York, New York 10022

        Tel: 212-593-2112
        Fax: 212-308-8582

        Attorneys for Shaw Family Archives, Ltd.,
        Bradford Licensing Associates, Edith
        Marcus and Meta Stevens

**OF COUNSEL**

Marci A. Hamilton, Esq.
36 Timber Knoll Drive
Washington Crossing, PA 18977
Tele: (215) 353-8984
Fax: (215) 493-1094