# EX. A

**➡ § 50-f. Right of Publicity**

1.  No person, firm or corporation shall use for advertising purposes, or for the purposes of trade, the name, portrait, voice, signature, picture or likeness of any deceased personality without having first obtained the written consent of such deceased personality's transferee, representative or successor in interest as identified in subdivision 17 of this section.

2.  As used in this section, "deceased personality" means any natural person whose name, portrait, voice, signature, picture or likeness has commercial value at the time of his or her death, whether or not during the lifetime of that natural person the person used his or her name, portrait, voice, signature, picture or likeness for advertising purposes or for the purposes of trade. A "deceased personality" shall include, without limitation, any such natural person who has died within 70 years prior to January 1, 2008.

3.  Nothing in this section shall be read as applying to or prohibiting the use of any deceased personality's name, portrait, voice, signature, picture or likeness that occurs after the expiration of 70 years after the death of such deceased personality.

4.  Nothing in this section shall be construed in a manner that violates the freedom of speech provisions contained in the First Amendment to the United States Constitution or Article I, Section 8 of the New York State Constitution.

5.  For purposes of this section, a play, book, magazine, newspaper, musical composition, motion picture, radio or television program, other audiovisual work, single and original work of art, work of political or newsworthy value, or an advertisement or commercial announcement for any of these works shall not be considered to have used the name, portrait, voice, signature, picture or likeness of a deceased personality for advertising purposes or for the purposes of trade, if such work is fictional or nonfictional entertainment or a dramatic, literary or musical work.

6.  This section shall not apply to the use of a name, portrait, voice, signature, picture or likeness for other than advertising purposes or the purposes of trade, including in connection with any news, public affairs, or sports broadcast or account, or any political campaign.

7.  This section shall not apply to promotional material or an advertisement for a news reporting or an entertainment medium that (i) uses all or part of a past edition of the medium's own broadcast or publication; and (ii) does not convey or reasonably suggest that a deceased personality endorses the news reporting or entertainment medium.

8.  This section shall not apply to the use of a deceased personality's name to truthfully identify the personality as the author of or contributor to a written work or a performer of a recorded performance, under circumstances in which the written work or recorded performance is otherwise lawfully reproduced, exhibited, or broadcast.

9.  The use of a deceased personality's name, portrait, voice, signature, picture or likeness in a commercial medium shall not constitute a use for which consent is required under subdivision 1 of this section solely because the material containing the use is commercially sponsored or contains paid advertising. Rather, it shall be a question of fact whether or not the use of the deceased personality's name, portrait, voice, signature, picture or likeness was so directly connected with the commercial sponsorship or with the paid advertising as to constitute a use for which consent is required under subdivision 1.

10. Nothing contained in this section shall be so construed as to prevent any person, firm or corporation from using the name, portrait, voice, signature, picture or likeness of any author, composer or artist in connection with his or her literary, musical or artistic productions which he or she has sold or disposed of with such name, portrait, voice, signature, picture or likeness used in connection therewith.

11. Nothing contained in this section shall be construed to prohibit the copyright owner of a sound recording from disposing of, dealing in, licensing or selling that sound recording to any party, if the right to

dispose of, deal in, license or sell such sound recording has been conferred by contract or other written document by the deceased personality or the owner of such rights.

12. Nothing contained in this section shall be so construed as to prevent any person, firm or corporation from selling or otherwise transferring any material containing a deceased personality's name, portrait, voice, signature, picture or likeness in whatever medium to any user of such name, portrait, voice, signature, picture or likeness, or to any third party for sale or transfer directly or indirectly to any such user, for use in a manner lawful under this section; nor shall anything in this section be so construed as to prevent any person, firm or corporation practicing the profession of photography from exhibiting in or about his or its establishment specimens of the work of such establishment, unless the same is continued by such person, firm or corporation after written notice objecting thereto has been given, on behalf of a deceased personality portrayed in such work, by deceased personality's transferee, representative or successor in interest as identified in subdivision 17 of this section.

13. Nothing in this section shall apply to the owners or employees of any medium used for advertising, including, but not limited to, newspapers, magazines, radio and television networks and stations, cable television systems, billboards, and transit ads, by whom any advertisement or solicitation in violation of this section is published or disseminated, unless it is established that the owners or employees had knowledge of the unauthorized use of the deceased personality's name, portrait, voice, signature, picture or likeness as prohibited by this section.

14. The rights recognized under this section are property rights, freely transferable or descendible, in whole or in part, by contract or by means of any trust or testamentary instrument, whether such contract, trust or testamentary instrument is entered into or executed before or after the effective date of this section, by the deceased personality or by any subsequent owner of the deceased personality's rights as recognized by this section.

15. The rights recognized under this section are expressly made retroactive and shall be deemed to have existed at the time of death of any deceased personality who died within 70 years prior to January 1, 2008 and, except where such rights were passed or assigned prior to such deceased personality's death by means of any contract or trust instrument, shall be deemed to have vested in the person or persons entitled to these property rights under the testamentary instruments of the deceased personality effective as of the date of his or her death.   In the absence of a transfer elsewhere in a testamentary instrument of the deceased personality's rights recognized under this section, a provision in the testamentary instrument that provides for the disposition of the residue of the deceased personality's assets shall be effective to transfer such rights in accordance with the terms of that provision.

16. If no transfer of some or all of the rights recognized in this section has occurred in accordance with subdivisions 14 and/or 15 hereof, then such rights shall be deemed to have passed in accordance with the laws of intestate succession of the jurisdiction in which the deceased personality was domiciled at the time of his or her death, provided, however, that if there are no surviving natural persons to whom the deceased personality's recognized rights pass by intestate succession, the deceased personality's rights set forth in this section terminate.

17. The written consent required by this section shall be exercisable by the person or persons to whom the rights recognized in this section, or an applicable portion thereof, have been transferred in accordance with subdivisions 14-16 of this section.

18. Where the name, portrait, voice, signature, picture or likeness of any deceased personality is used within this state for advertising purposes or for the purposes of trade by either a profit-making or non-profit enterprise without the written consent first obtained as above provided, the person or persons specified in subdivision 17 of this section, or, with respect to any deceased personality who died a non-domiciliary of the State of New York, the person (if any) owning such deceased personality's right of publicity under the laws of such deceased personality's state of domicile, may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using the name, portrait, voice, signature, picture or likeness, to prevent and restrain the use thereof; and may also sue and recover damages for any

injuries sustained by reason of such use and, if the defendant shall have knowingly used such deceased personality's name, portrait, voice, signature, picture or likeness in such manner as is forbidden by this section, the jury, in its discretion, may award exemplary damages.

19. Notwithstanding any provision of this section to the contrary, if an action was taken prior to January 1, 2008, to exercise rights recognized by this section under the laws of any other state, by one or more living parents, spouse, children or grandchildren, other than a person who was disinherited by the deceased personality in a testamentary instrument, and the exercise of those rights was not challenged successfully in a court action by a person described in subdivision 14, that exercise shall not be affected by subdivision 14. In such a case, the rights that would otherwise vest in one or more persons described in subdivision 14 shall vest solely in the parents, spouse, children or grandchildren described herein, other than a person disinherited by the deceased personality in a testamentary instrument, for all future purposes.

20. Any action to enforce a right under this section shall be subject to the one-year limitations period set forth in section 215.3 of the New York Civil Practice Law and Rules.

NY702699.1

# EX. B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

SHAW FAMILY ARCHIVES, LTD., EDITH
MARCUS and META STEVENS,

        Plaintiffs,

    -against-

CMG WORLDWIDE, INC., an Indiana Corporation
and MARILYN MONROE LLC, a Delaware
Corporation,

        Defendants.

----------------------------------------------------------------x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/29/07

05 Civ. 3939 (CM)(MDF)

## DISPOSITION OF VARIOUS PENDING MOTIONS

McMahon, J.:

In view of correspondence received from the parties, the various pending motions are disposed of as follows:

1. The Third through Eighth Causes of Action in the complaint are dismissed with prejudice.

2. The motion for a stay of discovery concerning lobbying has been dealt with by Magistrate Judge Fox, and so should be marked "decided."

The following issues remain in this case:

1. Plaintiffs' First and Second Causes of Action for copyright infringement

2. Plaintiffs' Ninth Cause of Action, for a declaration that Marilyn Monroe died a domiciliary of New York.

3. Defendants' Counterclaim for a declaration that plaintiffs do not possess a valid and enforceable copyright in various photographs of Marilyn Monroe.

Plaintiffs' Ninth Cause of Action remains in the case because the State of California recently passed a statute that purports to confer property rights on a dead person that were not possessed by that dead person at the time of her demise. Obviously, if plaintiff died a domiciliary

of the State of New York, where her will was probated, the California statute is of no moment. The determination of Ms. Monroe's domicile is a question of fact, and the court intends to sever that issue and try it early next year. The parties will be contacted shortly concerning the trial date.

However, if there is going to be any attack against the California statute on any legal ground, I want to be told that now and I want to know what the ground of attack is going to be, so that we can set an appropriate briefing schedule. I want to resolve all issues surrounding the newly-passed California statute, including the issue of domicile, in the next 90 days.

Dated: November 29, 2007

_____
U.S.D.J.

BY ECF TO ALL COUNSEL