UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
SHAW FAMILY ARCHIVES, LTD., EDITH MARCUS, :
and META STEVENS,                          :
                                           :
                                           :
                    Plaintiffs,            : Index No. O5 CV 3939 (CM)
                                           :
          -against-                        :
                                           :
                                           :
CMG WORLDWIDE, INC., an Indiana Corporation :
and MARILYN MONROE, LLC, a Delaware        :
Limited Liability Company,                 :
                                           :
                    Defendants.            :
                                           :
-----------------------------------------------------------------X


**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE MONROE PROBATE DOCUMENTS AND OTHER DOMCILE DOCUMENTS**


LAW OFFICES OF CHRISTOPHER SERBAGI
488 Madison Avenue, Suite 1120
New York, New York 10022
Tele: (212) 593-2112
Fax: (212) 308-8582

Attorneys for the Plaintiffs

On the Brief:
Christopher Serbagi, Esq.
David Marcus, Esq.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT..............................................................................................................2

     I.    THE MONROE PROBATE DOCUMENTS ARE NON- HEARSAY BECAUSE THE SHAW FAMILY OFFERED THEM TO DEMONSTRATE THE DEFENDANTS' PRIOR JUDICIAL REPRESENTATIONS, NOT FOR THE TRUTH OF WHERE MS. MONROE WAS ACTUALLY DOMICILED..................................................................2

     II.    ALL THE OUT OF COURT STATEMENTS ARE ALSO ADMISSIBLE AS NON-HEARSAY ...............................................4

     III.    THE MONROE PROBATE DOCUMENTS ARE ALSO AUTOMATICALLY ADMISSIBLE UNDER THE ANCIENT DOCUMENTS EXCEPTION BECAUSE THE DEFENDANTS STIPULATED TO THEIR AUTHENTICITY AND THEY ARE OVER TWENTY YEARS OLD ....................................6

     IV.    IF THE DOMICIILE DOCUMENTS WERE OFFERED FOR THEIR TRUTH, A VARIETY OF ADDITIONAL HEARSAY EXCEPTIONS APPLY ............................7

     V,    THE DOCUMENTS THAT THE SHAW FAMILY PRODUCED AFTER DISCOVERY WERE MERELY COURT CERTIFIED COPIES OF DOCUMENTS THAT THE SHAW FAMILY PRODUCED WELL BEFORE THE DISCOVERY DEADLINE.................................................................8

CONCLUSION...........................................................................................................9

# TABLE OF AUTHORITIES

**CASES:**

Aramony v. United Way of America,
   No. 96 Civ. 3962, 1998 WL 324874 (S.D.N.Y. June 18, 1998) ................................... 8

Astra Akiebolag v. Andrax Pharmaceuticals, Inc.,
   222 F. Supp.2d 423 (2002) ........................................................................................ 6

Cleveland Policy Mgmt. Sys Corp. v. Policy Mgmt. Sys. Corp.,
   526 U.S. 795 (1999) .................................................................................................. 4

DeWeerth v. Baldinger,
   658 F. Supp. 688 (S.D.N.Y. 1987) ............................................................................ 7

Estate of George,
   914 F.2d 26 (2d Cir. 1990) ........................................................................................ 6

Martha Graham School and Dance Foundation, Inc.
   v. Martha Graham Center of Contemporary Dance, Inc.,
   380 F.3d 624 (2d Cir. 2004) ...................................................................................... 6

Mitchell v. Washingtonville Central School District,
   190 F.3d 1 (2d Cir. 1999) .......................................................................................... 4

Zurich Am. Ins. Co. v. Felipe Grimberg Fine Art,
   Civ. 04-763 RLE, 2008 WL 394808, *4 (S.D.N.Y. Feb. 13, 2008) ........................... 4

Shaw Family Archives, Ltd., Bradford Licensing Associates, LP., Meta Stevens, and Edith Marcus (the "Shaw Family") respectfully submit this opposition memorandum of law to Defendants' cross-motion to strike evidence in the Shaw Family's estoppel summary judgment motion, and for such other relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

Defendants will stop at nothing to keep this Court from considering documents that reveal they knew that they never had a right of publicity in Marilyn Monroe. They first withheld publicly available probate and litigation documents at a critical juncture on grounds that they were "confidential" and they now move to strike them entirely. Both actions are frivolous. Nevertheless, the Court need not rule on the multiple evidentiary objections Defendants raise because it is unnecessary to decide the fully briefed estoppel issue that is presently before the Court. Put simply, the inheritance tax affidavits, probate documents, and Hawaii documents are admissible as non-hearsay because the Shaw Family did not offer them to prove the truth of Marilyn Monroe's actual domicile, but offered them to show the position taken by Defendants' privies in prior judicial proceedings. The Court can then hold that Defendants are estopped from asserting that Marilyn Monroe died anything but a New York domiciliary and affirm that Defendants have no right of publicity in Marilyn Monroe. This is precisely what Judge Morrow held in her March 17, 2008 Order and what makes ultimate sense here.

The only documents the Court need address are the two types of documents that Anna Strasberg and Aaron Frosch submitted in connection with the administration of the Monroe Estate: First, affidavits that Aaron Frosch submitted to the inheritance tax appraiser and documents he submitted to the New York and California probate courts. Second, probate documents that Anna Strasberg submitted to the New York probate court and documents she

formerly filed in Hawaii federal district court as Administratrix of the Monroe Estate (together, the "Monroe Probate Documents"). The Defendants know that the Shaw Family is offering the Monroe Probate Documents, not to prove that Marilyn Monroe was actually domiciled in New York, but to prove that Defendants' took that position in a prior proceeding, thereby precluding them from taking a contrary position now. Defendants raised the same meritless evidentiary objections in the California proceeding, which Judge Morrow quickly disposed of in a footnote by holding that the California tax affidavits are admissible because they demonstrate the position Defendants took on Ms. Monroe's domicile in prior proceedings.

The Monroe Probate documents are not hearsay for the additional reason that the Defendants stipulated to their authenticity, they are over twenty years old, and are therefore automatically admissible under the ancient document exception to the hearsay rule. There are multiple additional hearsay exceptions that would permit the Court to admit, not only the Monroe Probate documents, but all the other documents that the Defendants object to here. But the Court need not engage in the time consuming endeavor of addressing all of Defendants' baseless objections in yet another one of their "cross-motions." Judge Morrow already held that the Monroe Probate Documents are admissible non-hearsay because they were used only to demonstrate what the Defendants' privies previously told other courts.

By repeated use of the cross-motion procedure, by refusing to provide any discovery on their claims, and by litigating every single issue possible, the Defendants are vexatiously trying to delay the ultimate resolution of this case while they simultaneously seek refuge in the New York Legislature for filing this frivolous proceeding and for the attorney's fees they owe under at least the Indiana Statute.

## ARGUMENT

### I. THE MONROE PROBATE DOCUMENTS ARE NON- HEARSAY BECAUSE THE SHAW FAMILY OFFERED THEM TO DEMONSTRATE THE DEFENDANTS' PRIOR JUDICIAL REPRESENTATIONS, NOT FOR THE TRUTH OF WHERE MS. MONROE WAS ACTUALLY DOMICILED

Defendants needlessly complicate the issues before the Court by objecting to every single document the Shaw Family relies upon, even though the vast majority of them came from the Defendants' own files. In particular, the documents that Ms. Strasberg and CMG find most objectionable are the Monroe Probate Documents, which are the very documents that Anna Strasberg obtained during her work as the Administratrix of the Marilyn Monroe probate proceedings. The Shaw Family obviously does not offer the Monroe Probate Documents for the truth of where Ms. Monroe was domiciled when she died, the Shaw Family offers those documents to demonstrate the prior judicial representations of Defendants' privies. Accordingly, the Monroe Probate Documents are non-hearsay and are admissible for the purpose the Shaw Family offers them, namely to estop the Defendants from making contrary representations here.

Judge Morrow agrees. On March 17, 2008, when Judge Morrow held that Defendants are precluded on the domicile question, she also held that the very same documents Defendants object to here are admissible as non-hearsay. Judge Morrow stated:

> the statements made and nature of the opinions expressed in the declarations are not relevant to the issue raised by defendants' motion. The question before the court is not Monroe's actual domicile, but whether plaintiffs are estopped to assert that her domicile was other than New York. The declarations are evidence that was presented to the inheritance tax appraiser by Frosch and his counsel, and are relevant and admissible in this proceeding because they demonstrate the position taken by plaintiffs' privies in the prior proceeding.

Third Declaration of David Marcus ("Third Marcus Decl."), at ¶ 2, Ex. A, at 40, n. 67. In the interest of judicial economy, the Court should also so rule. And for the same reasons that Judge

3

Morrow held that the inheritance tax affidavits are admissible as non-hearsay, so should this Court hold that the Monroe Probate Documents are admissible.

## II. ALL THE OUT OF COURT STATEMENTS ARE ALSO ADMISSIBLE AS NON-HEARSAY

The purpose of the Shaw Family's motion for summary judgment is to have the court rule that Defendants are estopped from asserting anything other than what they have asserted for years, namely that Marilyn Monroe died a New York domiciliary.

A party seeking to defeat summary judgment on judicial estoppel grounds must "sufficiently explain" a prior judicial position that is inconsistent with an essential element of its claim. *See, e.g.*, Cleveland Policy Mgmt. Sys Corp. v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999) (stating that a party must "provide a sufficient explanation" for a prior inconsistent position to defeat summary judgment). Zurich Am. Ins. Co. v. Felipe Grimberg Fine Art, Civ. 04-763 RLE, 2008 WL 394808, *4 (S.D.N.Y. Feb. 13, 2008) ("To survive a motion for summary judgment, . . . individual must explain why his or her previous position or contention is consistent with his or her current position," citing Mitchell v. Washingtonville Central School District, 190 F.3d 1, 7 (2d Cir. 1999)). As set forth below, Defendants cannot possibly explain any of their prior judicial representations because the out of court statements by Defendants' privies also demonstrate that everyone "believed" that Marilyn Monroe died a New York domiciliary.

First, Mr. Roesler's statement to Anna Strasberg in a marketing document that Marilyn Monroe died a New York domiciliary is non-hearsay because the Shaw Family offered that statement only to demonstrate CMG's belief that Marilyn Monroe died a New York domiciliary, not the truth of the matter. He testified at CMG's 30(b)(6) deposition that he (i) he reviewed the marketing document before it was sent; (ii) that he made sure everything in it was true and

correct; and (iii) that he would not have misrepresented any facts to Ms. Strasberg. Third Marcus Decl., at ¶ 3, Ex. B, pp. 234-35. Referring to the document, Mr. Roesler also testified that he was sure that he made the statement to Ms. Strasberg that Marilyn Monroe died a New York domiciliary. Id. at 239-240. Thus, rather than stating that he misspoke by telling Ms. Strasberg that Marilyn Monroe died a New York domiciliary, as he does now, Mr. Roesler testified, under oath, that that he made sure the statements in the documents were true and correct.

Now, Mr. Roesler takes a contrary position. Rather than just admit what is obviously the truth, namely that he thought that Ms. Monroe was a New York domiciliary at the time he drafted the document, he attempts to wiggle out of his prior statements once again. In any event, as the Shaw Family opening memorandum makes clear, the Shaw Family offered Mr. Roesler's statements only as evidence as to what he "believed" to be the case, not for the truth of whether Ms. Monroe was actually domiciled in California or not. Although the statement is not binding as a judicial admission, it is relevant to what CMG and Mark Roesler believed, and goes to their inability to provide a reasonable explanation as to why judicial estoppel should not apply.

The Roger Richman and Kenyon letters are also non-hearsay for the same reasons --- the Shaw Family did not offer them for their truth, but as evidence as to what Defendants believed to be the case. Anna Strasberg received the Richman letter. One would think that she would have objected to Mr. Richman's characterization of Ms. Monroe as a New York domiciliary had she really believed at the time that Ms. Monroe died a California domiciliary. Likewise, all the Shaw Family intended to demonstrate from the Kenyon & Kenyon letter is that when others in the market asserted that Marilyn Monroe died a New York domiciliary and that Anna Strasberg had no right of publicity in Ms. Monroe as a result, CMG capitulated and moved on to a less

5

formidable victims, like the Shaw Family. Again, the issue is what the Defendants believed to be Ms. Monroe's true domicile, not the truth of the matter itself.

Even the Monroe tape is non-hearsay because it is not offered to have this court rule that Ms. Monroe died a New York domiciliary, but to show that that Marilyn Monroe's own words are consistent with that these Defendants have believed and represented for years. It is also authentic. See Declaration of Edith Marcus, dated March 27, 2008; Shaw Domicile Mem., at 34.

### III. THE MONROE PROBATE DOCUMENTS ARE ALSO AUTOMATICALLY ADMISSIBLE UNDER THE ANCIENT DOCUMENTS EXCEPTION BECAUSE THE DEFENDANTS STIPULATED TO THEIR AUTHENTICITY AND THEY ARE OVER TWENTY YEARS OLD

Not a single document that the Shaw Family relies on is offered for the truth. But even if they were, the Monroe Probate Documents are also admissible under the ancient records exception to the hearsay rule because they are more than twenty years old and Defendants have stipulated to their authenticity. Fed. R. Evid. 803(16). Federal Rule of Evidence 803(16) states:

> The following are not excluded by the hearsay rule, even though
> the declarants is available as a witness: Statements in a document
> in existence twenty years or more the authenticity of which is
> established.

Fed. R. Evid. 803(16). All the Monroe Probate Documents that the Shaw Family relies upon, except the Hawaii documents, are over twenty years old. Because Defendants have already stipulated to the authenticity of these documents (Third David Marcus Decl. at ¶ 4, C), they are automatically admissible under the ancient documents exception. Martha Graham School and Dance Foundation, Inc. v. Martha Graham Center of Contemporary Dance, Inc., 380 F.3d 624, 643 (2d Cir. 2004); Estate of George, 914 F.2d 26, 30 (2d Cir. 1990); Astra Akiebolag v. Andrax Pharmaceuticals, Inc., 222 F. Supp.2d 423, 456-57 (2002). This rule also obviously applies

when authenticity is based on party stipulation. DeWeerth v. Baldinger, 658 F. Supp. 688, 695 (S.D.N.Y. 1987).

IV.  **IF THE DOMICILE DOCUMENTS WERE OFFERED FOR THEIR TRUTH, A VARIETY OF ADDITIONAL HEARSAY EXCEPTIONS APPLY**

Because none of the documents upon which the Shaw Family relies is offered for its truth, the Court need not address the applicability of any of the hearsay exceptions. But were any of the documents offered for the truth, many of the hearsay exceptions would apply.

First, Mr. Frosch submitted the affidavits to the California Inheritance Tax Appraiser in connection with his duties as Executor and Trustee of the Estate. The Court can reasonably infer that Mr. Frosch acted properly and would not have submitted the affidavits (including his own), unless he believed them to be true and accurate statements. The F.R.E. 801 Advisory Committee Notes to the 1972 Proposed Rules, Notes to Subdivision (d)(2) state that "[u]nder established principles an admission maybe made by adopting or acquiescing in the statement of another." Accordingly, because Mr. Frosch represented the Estate, the affidavits are admissible as an admission by a party opponent pursuant to F.R.E. 801 (d)(2).

Second, to the extent that the affidavits are considered hearsay or double hearsay, they are admissible under F.R.E. 804(a)(4)(5) because the affiants are unavailable and Frosch submitted the affidavits in connection with a different proceeding. 804(b)(1).

Third, the affidavits are admissible as prior inconsistent statements, admissions against a party opponent, as business records, and as statements against interests.

Finally, the affidavits are certainly admissible under residual hearsay exception because, as required by the F.R.E. 807, the statements therein are (i) offered as evidence of a material fact; (ii) the statements are more probative of the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (iii) the general purposes of the

Rules and the interests of justice will be best served by admission of the statement into evidence. In <u>Aramony v. United Way of America</u>, No. 96 Civ. 3962, 1998 WL 324874 (S.D.N.Y. June 18, 1998), the defendant argued (on a motion for reconsideration) that the court erred by admitting a third party affidavit submitted by the plaintiff in opposition to the defendant's summary judgment motion. The affidavit contained a transcript of testimony submitted by that third party in connection with a prior proceeding. The court stated that "[e]ven if he refuses to appear, his prior testimony may be admissible under Fed.R.Evid. 807, the residual hearsay exception."

The affidavits have a high degree of reliability because (i) they were produced by MMLLC's own files; (ii) Mr. Frosch submitted them to the California Tax Appraiser in connection with his duties and responsibilities as Executor and Trustee of the Estate; (iii) they are signed by intimate and long standing personal friends and employees of Ms. Monroe; and (iv) they are notarized and some of them are certified.

V.  **THE DOCUMENTS THAT THE SHAW FAMILY PRODUCED AFTER DISCOVERY WERE MERELY COURT CERTIFIED COPIES OF DOCUMENTS THAT THE SHAW FAMILY PRODUCED WELL BEFORE THE DISCOVERY DEADLINE**

The Defendants tell this Court that it should exclude documents bearing production numbers "SFA1" because "they were produced after the December 31, 2007 discovery cut-off." Yet again, Defendants misrepresent the facts. As we told the Defendants both on the phone and in an electronic communication, the SFA1 documents consist only of official court certified copies of documents that the Shaw Family previously produced well before the close of discovery. Third Marcus Decl., at ¶¶ 5-32, Ex. D. And the reason that the Shaw Family had to go through the time and expense of obtaining these court certified copies is because the Defendants' counsel waited until the very last minute to agree to authenticate anything, even the very documents that came from Ms. Strasberg's files. As set forth in the accompanying

Declaration of David Marcus, all the Shaw Family documents bearing the production numbers "SFA1" were produced long before the discovery cut off, except some a few of the Hawaii litigation transcripts that were very suspiciously absent from the Defendants production. Id.

## CONCLUSION

For all the foregoing reasons, the Shaw Family respectfully requests that the Court deny Defendants motion to strike on grounds that all the documents at issue are not offered for their truth, but to demonstrate what the Defendants state in prior judicial and non-judicial contexts.

Dated: New York, New York
       March 27, 2008

                              Respectfully Submitted,

                              LAW OFFICES OF CHRISTOPHER SERBAGI

                              By: _____
                                  Christopher Serbagi, Esq.
                                  David Marcus, Esq.
                                  488 Madison Avenue, Suite 1120
                                  New York, New York  10022
                                  Tele: (212) 593-2112
                                  Fax:  (212) 308-8582

                                  Attorneys for Shaw Family Archives, Bradford
                                  Licensing Associates, L.P., Edith Marcus and Meta
                                  Stevens