# EX. B

COPY                                                          1

```
 1   UNITED STATES DISTRICT COURT

 2   SOUTHERN DISTRICT OF NEW YORK

 3   ------------------------------x

 4   SHAW FAMILY ARCHIVES, LTD.,
     EDITH MARCUS, and META STEVENS
 5
                    Plaintiffs,
 6
         - against -
 7
     CMG WORLDWIDE, Inc., an Indiana
 8   corporation, and MARILYN MONROE,
     Limited, a Delaware limited
 9   liability company,

10                  Defendants.
     ------------------------------x
11

12            Ellen Grauer Court Reporters
              126 East 56th Street
13            New York, New York

14

15

16            December 26, 2007
              12:01 p.m.
17

18

19            30(b)(6) deposition of MARK
     ROESLER, before Marlene Lee, CSR, CRR, a Notary
20   Public of the State of New York.

21

22

23       ELLEN GRAUER COURT REPORTING CO. LLC
          126 East 56th Street, Fifth Floor
24              New York, New York
                  212-750-6434
25                Ref: 86257
```

233

1                    ROESLER
2      A.    I -- I don't know that we took
3 specific action as a result of this letter.
4      Q.    This document came from CMG's
5 files?
6           MS. COLBATH:  Objection.
7      A.    Did -- are you asking me?
8      Q.    I'm asking you.
9      A.    Like I said, I don't recall seeing
10 this letter.  I don't think it came from our
11 files.  I don't recall seeing it.
12     Q.    A second ago you said it did.
13          MR. MINCH:  Objection.
14          MS. COLBATH:  Objection.
15     A.    No, you asked me if I've ever seen
16 document 12.  I said I've never seen the cover
17 letter, that I can recall.  But I've seen it.
18 The second part of 12 got circulated, a fax
19 copy you'd see every once in a while.  Your
20 question is, did this come from our files?  I
21 don't think it did.  I don't think it did.
22 It's possible there's something in our files I
23 don't recall, but --
24          MR. SERBAGI:  If the court reporter
25      would mark as Roesler 13, bearing

234

ROESLER

production Nos. MM 0013310 through 13319.

(Roesler Exhibit 13 for identification, document, written by M. Roesler, 5-2-95, production Nos. MM 0013310 through 0013319.)

Q. Have you seen this document before, Mr. Roesler?

A. It looks like I wrote it.

Q. When you refer to you wrote it, did you write all of the pages that are contained within Roesler 13?

A. I mean, at least to some extent.

Q. To the extent you didn't write it, did you review it before it was sent to --

A. Yeah.

Q. -- Ms. Strasberg?

A. Yes.

Q. You would have made sure everything in here is true and accurate?

A. I would.

Q. You wouldn't lie to Ms. Strasberg, would you?

A. No.

235

```
 1                    ROESLER
 2      Q.    That's your signature on page 1?
 3      A.    It is.
 4      Q.    Dated May 2nd, 1995; correct?
 5      A.    Yes.
 6      Q.    What was the gist of what you were
 7  trying to say in the first page of this
 8  document to Ms. Strasberg?
 9            MS. COLBATH:  Objection.
10      A.    I don't -- I don't recall.  I don't
11  know what --
12      Q.    If you could just read the first
13  page to yourself.  Maybe it will refresh your
14  recollection.
15            MR. MINCH:  I'm sorry.  What
16      page --
17      A.    You're asking what the recent legal
18  victory on the West Coast was?
19      Q.    I'm just asking you to read the
20  cover page, this letter that you sent to
21  Ms. Strasberg, and tell me what the purpose of
22  this letter was.
23      A.    Well, it was right before -- we
24  started representing the -- officially
25  representing the estate 90 days later, so it
```

                                                                236

1                    ROESLER
2    was probably in our lead-up to representing --
3         Q.   It says in the second paragraph,
4    "In a follow-up to my recent letters and
5    correspondence to you and my meetings a few
6    days ago with Mr. Seidman and Mr. Starr, I have
7    enclosed a brief summary of our position."  Do
8    you see that?
9         A.   Yes.
10        Q.   By the way, is that the Ken Starr
11   that you are referring to there?  It says "Ken
12   Starr" on the bottom of the page, cc'd.
13        A.   What do you mean, "the Ken Starr"?
14        Q.   Kenneth Starr.
15        A.   You mean the one on the news a lot?
16        Q.   Yes.
17        A.   It's a different Ken Starr.  But a
18   lot of people get him confused.  He's a well
19   known financial adviser in New York.
20             MS. COLBATH:  He thinks he's the
21        Ken Starr.
22        Q.   When you say, "I have enclosed a
23   brief summary of our position," what did you
24   mean?
25        A.   I guess it's what's right here,

238

1                    ROESLER
2  attributes."  Do you see that?
3       A.    That's correct.
4       Q.    There's a list of bullet points
5  underneath that.  Do you see that?
6       A.    Yes.
7       Q.    And you wrote those bullet points;
8  correct?
9       A.    I did.
10      Q.    If you turn to the -- let's start
11 with the first bullet point.  "Encompasses
12 protection of names, voices, signatures,
13 photographs, images, likeness, or distinctive
14 appearances, gestures, or mannerisms."  Do you
15 see that?
16      A.    Yes.
17      Q.    Is that something that you wrote?
18      A.    At least reviewed.
19      Q.    True and correct?
20      A.    I'm sorry?
21      Q.    Strike that.  Turning to the fourth
22 bullet point, you state -- if you'd read that
23 into the record.
24      A.    I'm sorry?  You want me to read it?
25      Q.    The fourth bullet point, starting,

```
 1                    ROESLER
 2   "Is only the second state" --
 3          A.      -- "to explicitly define conduct
 4   by which an out-of-state infringer submits to
 5   the jurisdiction of Indiana courts, provides
 6   important guidance and choice of law, domicile
 7   requirements which case law shows courts
 8   generally apply the law of the state where the
 9   person was domiciled in death here in New York
10   which does not recognize the decedent's death."
11          Q.    What did you mean by that
12   statement?
13          A.    That -- I meant that Indiana was an
14   important state to use because it doesn't look
15   to the domicile of where the decedent was
16   domiciled.
17          Q.    When you refer to "decedent,"
18   you're referring to Marilyn Monroe?
19          A.    That's correct.
20          Q.    You say, "apply the law of the
21   state where the person was domiciled at death."
22   That person you're referring to is Marilyn
23   Monroe?
24          A.    That's correct.
25          Q.    You say "here in New York."  Do you
```

240

1                       ROESLER
2    see that?
3        A.    I do.
4        Q.    Do you recall making that
5    statement?
6        A.    I recall -- I mean, I generally
7    recall this document, but -- so I'm sure I made
8    the statement.
9        Q.    Thank you.  Do you recall having
10   communications with Larry Shaw back in December
11   of 2006?
12       A.    I don't remember specific dates,
13   but Larry and I talked a lot.  Recent --
14       Q.    Do you recall ever stating to Larry
15   that, pursuant to the Indiana statute, Larry
16   and my clients would be responsible for paying
17   CMG's and MMLLC's attorneys' fees in connection
18   with the present litigation?
19       A.    Larry and I had often frequent
20   friendly discussions on the case, and what
21   could and might happen and so forth.  And
22   our -- you know, so -- I mean, I -- you know, I
23   think we talked about that there were big legal
24   fees that someone might have to pay.  But it
25   was all in a very friendly context.

241

ROESLER

Q. Do you recall ever telling Mr. Shaw, Larry Shaw, that if CMG and MMLLC prevailed in this litigation, Larry and my clients would be responsible for paying CMG's and MMLLC's legal fees?

MR. MINCH: Objection.

Q. Under the Indiana statute.

MR. MINCH: Objection.

A. I don't -- I don't know that I do recall or don't recall. Like I said, we often talked about the implications of the lawsuit and the costs and so forth. So there may have been something to that effect. But I don't have a specific recollection of it.

Q. Let me refresh your recollection.

MR. SERBAGI: If you could mark as Roesler 14 a document that we have previously produced in connection with the pleadings in this case. It does not bear a production number. We do have it. It is from Larry Shaw -- no. It is two e-mails, one from Mark Roesler to Larry Shaw and others, and also an e-mail back from -- strike that.

# EX. C

Case 1:05-cv-03939-CM   Document 261-4   Filed 03/27/2008   Page 12 of 16
Case 1:05-cv-03939-CM   Document 220   Filed 03/07/2008   Page 1 of 3

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/7/08

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X
SHAW FAMILY ARCHIVES LTD., EDITH :
MARCUS and META STEVENS,

          Plaintiffs,          Case No. 05 Civ. 3939 (CM)

          -against-          Hon. Colleen McMahon

CMG WORLDWIDE, INC. and MARILYN      STIPULATION
MONROE LLC,

          Defendants.
--------------------------------------------------------------X

       WHEREAS the parties have conferred in an effort to avoid spending time at trial authenticating documents about which there is no genuine dispute;

       IT IS HEREBY STIPULATED AND AGREED by and between the undersigned counsel that, for purposes of this action, all documents produced in discovery prior to the January 1, 2008 discovery deadline, except (i) those documents bearing a production number with the prefix "MC" and (ii) a purported audio recording of a 1955 radio interview of Marilyn Monroe and any transcript thereof, are authentic under Federal Rules of Evidence 901, *et seq.*;

       IT IS FURTHER STIPULATED AND AGREED by and between the undersigned counsel that nothing in this Stipulation shall prevent any party from objecting to any document or piece of evidence on any ground other than authenticity.

LAW OFFICES OF CHRISTOPHER SERBAGI

By: *(signature)*
Christopher Serbagi
488 Madison Avenue, Suite 1120
New York, New York 10022
Tel: (212) 593-2112
Fax: (212) 308-8582

*Attorneys for Shaw Family Archives, Ltd., Edith Marcus and Meta Stevens*

LOEB & LOEB, LLP

By: *(signature)*
Paula K. Colbath
345 Park Avenue
New York, New York 10154-1895
Tel: (212) 407-4000
Fax: (646) 514-2887

*Attorneys for Marilyn Monroe LLC*

SOVICH MINCH, LLP

By: _____
Theodore J. Minch, Esq.
10099 Chesapeake Drive, Suite 100
McCordsville, Indiana 46055
Tel: (317) 335-3601
Fax: (317) 335-3602

*Attorneys for CMG Worldwide, Inc.*

Dated: New York, New York
    March 6, 2008

So Ordered. 3/7/08

*(signature)*
Hon. Colleen McMahon
U.S.D.J.

NY706720.1

2

LAW OFFICES OF CHRISTOPHER SERBAGI

By:_____
Christopher Serbagi
488 Madison Avenue, Suite 1120
New York, New York 10022
Tel: (212) 593-2112
Fax: (212) 308-8582

*Attorneys for Shaw Family Archives, Ltd., Edith Marcus and Meta Stevens*

LOEB & LOEB, LLP

By:_____
Paula K. Colbath
345 Park Avenue
New York, New York 10154-1895
Tel: (212) 407-4000
Fax: (646) 514-2887

*Attorneys for Marilyn Monroe LLC*

SOVICH MINCH, LLP

By:_____
Theodore J. Minch, Esq.
10099 Chesapeake Drive, Suite 100
McCordsville, Indiana 46055
Tel: (317) 335-3601
Fax: (317) 335-3602

*Attorneys for CMG Worldwide, Inc.*

Dated: New York, New York
       March 6, 2008

So Ordered.

_____
Hon. Colleen McMahon
U.S.D.J.

NY706720.1

2

# EX. D

**christopher serbagi**                                               Thursday, March 27, 2008 3:55 PM

**Subject:** <no subject>
**Date:** Monday, January 28, 2008 11:20 PM
**From:** Christopher Serbagi <c.serbagi@earthlink.net>
**To:** Jonathan Neil Strauss <jstrauss@loeb.com>, Paula Colbath <pcolbath@loeb.com>
**Cc:** "dmmlitigates@optonline.net" <dmmlitigates@optonline.net>

Jon:

As discussed just now on the phone, I received today from the California Surrogates Court and the Hawaii District Court certified documents that we will produce tomorrow in the form we received them. We think that all these documents have been produced by the parties before, although it appears that some of the Hawaii documents have not been produced by Defendants. We are currently investigating that matter.

Best,

Christopher Serbagi


Law Offices of Christopher Serbagi
488 Madison Avenue, Suite 1120
New York, New York  10022
Tele: 212-593-2112
Fax:  212-308-8582
Email: c.serbagi@earthlink.net
Web Site: www.serbagi.com