UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SHAW FAMILY ARCHIVES, LTD., EDITH MARCUS, :
and META STEVENS, :
                                           :

                                Plaintiffs, : Index No. O5 CV 3939 (CM)
                                           :

          -against- :

                                           :

CMG WORLDWIDE, INC., an Indiana Corporation :
and MARILYN MONROE, LLC, a Delaware :
Limited Liability Company, :
                                           :

                                Defendants. :
                                           :
-------------------------------------------------------------------X

## PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF DOMICILE

                            LAW OFFICES OF CHRISTOPHER SERBAGI
                            488 Madison Avenue, Suite 1120
                            New York, New York 10022
                            Tele: (212) 593-2112
                            Fax: (212) 308-8582

                            Attorneys for the Plaintiffs

On the Brief:
Christopher Serbagi, Esq.
David Marcus, Esq.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................... iii

PRELIMINARY STATEMENT .................................................................... 1

JUDGE MORROW'S MARCH 17, 2008 ORDER GRANTING
DEFENDANTS' MOTION FOR RECONSIDERATION .............................. 2

ARGUMENT ................................................................................................ 3

    I.     DEFENDANTS MISREPRESENT
             THE REQUISITE ELEMENTS OF THE
             JUDICIAL ESTOPPEL DOCTRINE ............................................. 4

    II.    DEFENDANTS FAIL TO EXPLAIN
             HOW THERE IS NO PRIVITY BETWEEN MMLLC,
             AARON FROSCH, AND ANNA STRASBERG ......................... 6

    III.   DEFENDANTS FAIL TO EXPLAIN
             HOW FROSH'S SUBMISSIONS TO THE
             CALIFORNIA TAX APPRAISER DO NOT
             JUDICIALLY ESTOP DEFENDANTS HERE ............................. 7

    IV.   DEFENDANTS FAIL TO EXPLAIN WHY
             ANNA STRASBERG'S REPRESENTATIONS IN THE
             HAWAII LITIGATION DO NOT ESTOP MMLLC HERE ......... 9

    V.    COLLATERAL ESTOPPEL APPLIES TO STRASBERG'S
             REPRESENTATIONS IN THE HAWAII LITIGATION ............ 14

    VI.   DEFENDANTS DO NOT ADDRESS THE CENTRAL
             REASONS WHY FROSCH'S REPRESENTATIONS
             IN THE CALIFORNIA PROBATE PROCEEDINGS
             ESTOP MMLLC HERE ............................................................. 15

    VII.  THE NEW YORK PROBATE COURT ADOPTED
             ANNA STRASBERG'S REPRESENTATION THAT
             MARILYN MONROE DIED A NEW YORK DOMICILIARY
             SUCH THAT JUDICIAL ESTOPPEL APPLIES ....................... 17

VIII.  DEFENDANTS ARE THE QUINTESSENTIAL
       FAST AND LOOSE LITIGANTS BECAUSE THEY
       WITHHELD THE KEY DOMICILE DOCUMENTS
       THEY KNEW WOULD EXPOSE THEM ................................................19

CONCLUSION..........................................................................................................20

TABLE OF AUTHORITIES

**CASES:**

AXA Marine and Aviation Ins. (U.K.) Ltd v. Seajet Indus.  Indus. Inc.,
    84 F.3d 622 (2d Cir. 1996)................................................................................5, 17

Bates v. Long Island Railroad Co.,
    997 F.2d 1028 (2d Cir. 1993)..................................................................................5

Capsopoulos v. Chater,
    No. 95 C 3274, 1996 WL 717456 (N.D. Ill. Dec. 9, 1996) ........................................7

Cleveland Policy Mgmt. Sys Corp. v. Policy Mgmt. Sys. Corp.,
    526 U.S. 795 (1999)..................................................................................................3

District of Columbia v. Murphy,
    314 U.S. 441, 62 S.Ct. 303 86 L.E.d. 329 (1941) ....................................................10

Estate of Barton,
    196 Cal. 508 (Cal. 1925)..........................................................................................16

Estate of Estreem,
    16 Cal.2d 563 (Cal. 1940).........................................................................................16

Estate of Newcomb,
    192 N.Y. 238, N.E. 950 (N.Y. 1908) .......................................................................10

In re Galerie Des Monnaies of Geneva, Ltd.,
    55 B.R. 253 (Bankr. S.DN.Y. 1985).........................................................................5

In re Slade's Estate,
    154 Misc. 275, 276 N.Y.S.2d 956 (N.Y. Surr. 1935) ..............................................16

Irwin v. Scriber,
    18 Cal. 499 (Cal. 1861)............................................................................................16

Jasper v. Sony Music Entertainment, Inc.,
    378 F. Supp. 2d 334 (S.D.N.Y. 2005) .......................................................................4

Kahn v. Kahn,
    801 F. Supp. 1237 (S.D.N.Y. 1992) .........................................................................10

Lynch v. United Servs. Auto Corp.,
   491 F. Supp. 2d 357 (S.D.N.Y. 2007) ................................................................. 4

Madeira v. United Talmudical Academy of Kiryas Joel,
   351 F. Supp.2d 162 (S.D.N.Y. 2004) ................................................................. 4

Maharaj v. Bankamerica Corp.,
   128 F.3d 94 (2d Cir. 1997).................................................................................. 4

Markowitz v. Gumbs,
   122 A.D.2d 906, 505 N.Y.S.2d 948 (N.Y. Sup. 1986) .................................... 10

Mitchell v. Washingtonville Central School District,
   190 F.3d 1 (2d Cir. 1999)) .................................................................................. 3

Negron v. Weiss,
   2006 U.S. Dist. LEXIS 69906 (E.D.N.Y. Sept. 27, 2006)................................. 5

Nicholas v. Canoga Indus.,
   83 Cal. App. 3d 956, 148 Cal. Rptr. 459 (Cal. App. 1978) ............................. 14

Perlleshi v. County of Westchester,
   98 Civ. 6927, 2000 U.S. Dist LEXIS 6054, *15
   (S.D.N.Y. April 24, 2000)................................................................................... 4

Pioneer Investment Servs. Co. v. Brunswick Assocs., Ltd.,
   507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed. 2d 74 (1993)................................... 11

Richards v. Jefferson County, Alabama,
   517 U.S. 793, 116 S.Ct. 1761, 135 L. Ed. 2d 76 (1996)................................... 6

Rubin v. Irving Trust Co.,
   305 N.Y. 288, 113 N.E.2d 424 (N.Y. 1953) .................................................... 10

Shore v. Shore,
   43 Cal. 2d. 677, 277 P.2d 4 (Cal. 1954)........................................................... 14

State of New Hampshire v. State of Main,
   532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed. 2d 968, (2001)................................. 5

TM Patents, L.P. v. Int'l Business Machines, Corp.,
   121 F. Supp.2d 349 (S.D.N.Y. 2000) ................................................................. 4

Wilke v. Wilke,
   73 A.D.2d 915, 423 N.Y.S.2d 249 (2nd Dep't 1980)...................................... 10

Zedner v. U.S.,
    126 S. Ct. 1976, 164 L. Ed. 2d 749 (2006) ................................................................ 4

Zurich Am. Ins. Co. v. Felipe Grimberg Fine Art,
    Civ. 04-763 RLE, 2008 WL 394808, *4 (S.D.N.Y. Feb. 13, 2008) ........................... 3

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Shaw Family Archives, Ltd.,

Bradford Licensing Associates, LP., Meta Stevens, and Edith Marcus (the "Shaw Family") respectfully

submit this reply memorandum of law in support of their motion for summary judgment that Defendants

are estopped from asserting that Marilyn Monroe died anything but a New York domiciliary and summary

judgment on Count 9 of the Shaw Family's Second Amended Complaint, and for such other relief as the

Court may deem just and proper.

## PRELIMINARY STATEMENT

As Judge Morrow's March 17, 2008 Order makes absolutely clear: MMLLC either committed

repeated acts of tax fraud and perjury in the past or it is committing perjury now before two federal

judges. Either way, Defendants are the quintessential "fast and loose" litigants, whose desire to

reinvigorate their ten million dollar a year monopoly on Marilyn Monroe is so great that they have lost all

sight of the sanctity of the oath and the integrity of the judicial process. The facts and law are so clearly

in the Shaw Family's favor that the proper course would have been to concede the domicile question long

ago. Instead, Defendants told this Court that Marilyn Monroe died a California domiciliary in completed

summary judgment motions, while holding critical documents in their exclusive possession that reveal

that they did not even believe that to be true. Their newly asserted position that Marilyn Monroe died a

California domiciliary is so incredible that Judge Morrow recently issued a sixty-four page decision (with

ninety-seven extensive footnotes) relying on the significance of the California inheritance tax proceedings

alone. And based solely on that single issue, Judge Morrow came to the firm conclusion that the present

Defendants are playing "fast and loose" and have misled either Judge Morrow or the California

inheritance tax authorities. But when this Court considers the extensive and longstanding nature of

Defendants' prior judicial representations cited in the Shaw Family's opening memorandum, which are

far more substantial than what Judge Morrow considered, "fast and loose" is only a quaint euphemism for

Defendants' duplicitous conduct.

As hard as it is to believe, even after Judge Morrow's decision, Defendants would have the Court accept the following incredible scenario: Anna Strasberg; two of her lawyers; CMG's Mark Roesler; Anna Strasberg's former licensing agent; the Executor of the Monroe Estate; the Administratrix of the Monroe Estate; the California Superior Court; the New York Surrogates Court; the California Board of Equalization; the California Franchise Tax Board; and a federal district court judge in Hawaii, all did not mean what they said when they repeatedly represented over many years and in many different proceedings that Marilyn Monroe died a New York domiciliary. There has never been a reported decision where the facts so compel judicial estoppel or where the need to protect the integrity of the judicial system is so great. Defendants' current characterization of their repeated judicial representations as "spare legal argument," "inadvertent error," and "mere inadvertency" far exceeds the bounds of permissible advocacy. But as the Court can see in the pending motion before it on the remaining issues in the case, Defendants' misrepresentations on the domicile question are reflective of their many misrepresentations and fabrications that have infested this entire proceeding and cost the Shaw Family millions of dollars in legal fees.

Finally, the "facts" that Defendants assert as to Ms. Monroe's purported true domicile are both incomplete and misleading, and addressed in the Shaw Family's Response to MMLLC's Rule 56.1 Statement of Facts. Perhaps the best way to respond to Defendants' desperate attempt to distract the Court from the estoppel issue is to quote from the Hawaii Judge before whom Ms. Strasberg formerly appeared. When Nancy Miracle argued that Ms. Monroe died a California domiciliary, Ms. Strasberg convinced the Hawaii Judge to issue the following ruling:

> However, this only shows that the decedent Marilyn Monroe has rather significant contacts with California at various times during her life. It does not show that Ms. Monroe was domiciled in California at the time of her death.

Shaw Mem., at 10. Ms. Strasberg cannot re-litigate that issue here.

2

### JUDGE MORROW'S MARCH 17, 2008 ORDER GRANTING DEFENDANTS' MOTION FOR RECONSIDERATION

At the behest of Anna Strasberg, the California legislature passed SB 771 on October 10, 2007, which "deems," despite well settled property expectations and probate law, that Marilyn Monroe died with a right of publicity. On November 21, 2007, before the statute even became effective, MMLLC asked Judge Morrow to reconsider her prior order granting the California photographers summary judgment on the right of publicity count. Because Defendants had not produced a single document at the time they first briefed the domicile question, Judge Morrow relied on the prior briefing and held on January 7, 2008 that Defendants are not estopped from asserting that Marilyn Monroe died a California domiciliary and granted Defendants' motion for reconsideration. The California photographers, knowing that Judge Morrow based her motion for reconsideration on an incomplete record, re-briefed the domicile question and submitted the Shaw Family's current motion papers and exhibits for Judge Morrow's consideration. Two weeks later, Judge Morrow issued a sixty-four page decision with ninety-seven footnotes, holding that Defendants are estopped from asserting that Marilyn Monroe died anything but a New York domiciliary. Citing many of the cases that the Shaw Family relies upon here, Judge Morrow based her decision only on the affidavits that Aaron Frosch submitted to the California inheritance tax appraiser. Based on that single issue, Judge Morrow correctly characterized Defendants' behavior as "fast and loose" and stated that they misled either Judge Morrow or the California taxing authorities. In other words, Defendants are committing perjury before this Court and in California or they committed repeated acts of tax fraud and perjury in the past. All for the mighty dollar. This is exactly why the Shaw Family has requested a bond and why the Shaw Family has characterized Defendants' litigation conduct as vexatious.

### ARGUMENT

A party seeking to defeat summary judgment on judicial estoppel grounds must "sufficiently explain" a prior judicial position that is inconsistent with an essential element of its claim. See, e.g., Cleveland Policy Mgmt. Sys Corp. v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999) (stating that a

3

party must "provide a sufficient explanation" for a prior inconsistent position to defeat summary

judgment. Zurich Am. Ins. Co. v. Felipe Grimberg Fine Art, Civ. 04-763 RLE, 2008 WL 394808, *4

(S.D.N.Y. Feb. 13, 2008) ("To survive a motion for summary judgment, . . . individual must explain why

his or her previous position or contention is consistent with his or her current position . . .") (citing

Mitchell v. Washingtonville Central School District, 190 F.3d 1, 7 (2d Cir. 1999)).  For the reasons set

forth below, Defendants do not provide any explanation of how they could have possibly represented that

Marilyn Monroe died a New York domiciliary so many times and not believed it to be true.  What is

particularly telling is that in over forty-five years, this is the first time that Defendants or their privies ever

represented that Marilyn Monroe died a California domiciliary, which they would have certainly done in

at least one of the prior proceedings if they believed that to be the case.

## I.    DEFENDANTS MISREPRESENT THE REQUISITE ELEMENTS OF THE JUDICIAL ESTOPPEL DOCTRINE

In order to convince this Court that judicial estoppel does not apply, Defendants need to distort the

basic nature of the doctrine.  And, this is precisely what they have done.

First, Defendants combine elements of judicial estoppel that different courts have considered and

tell the Court that they are necessary requirements.  Def's brief, at 8.  However, this Court has repeatedly

recognized in a series of decisions spanning over eight years that there are only two requirements for

judicial estoppel to apply, namely: "(1) the party against whom the estoppel is asserted took an

inconsistent position in a prior proceeding, and (2) that position was adopted by the first tribunal."  Lynch

v. United Servs. Auto Corp., 491 F. Supp. 2d 357, 364 (S.D.N.Y. 2007) (CM); Jasper v. Sony Music

Entertainment, Inc., 378 F. Supp. 2d 334, 343 (S.D.N.Y. 2005) (CM); Madeira v. United Talmudical

Academy of Kiryas Joel, 351 F. Supp.2d 162, 164 (S.D.N.Y. 2004) (CM); Perlleshi v. County of

Westchester, 98 Civ. 6927, 2000 U.S. Dist LEXIS 6054, *15  (S.D.N.Y. April 24, 2000) (CM); TM

Patents, L.P. v. Int'l Business Machines, Corp., 121 F. Supp.2d 349, 359 (S.D.N.Y. 2000) (CM).  In the

Lynch case, the Court noted that a third "consideration" (not requirement) is whether the party seeking to

assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the

4

opposing party if not estopped." 491 F. Supp. 2d at 364 (citing Zedner v. U.S., 547 U.S. 489, 126 S. Ct. 1976, 164 L. Ed. 2d 749 (2006)).  Defendants argue that a variety of additional elements are required, Defs' Mem., at 8, but the very Second Circuit case that Defendants cite, Maharaj v. Bankamerica Corp., 128 F.3d 94, 98 (2d Cir. 1997), does not articulate the elements of judicial estoppel in the manner Defendants claim. Defs' Memo, at 8.  The Maharaj case sets forth the same two requirements that this Court has articulated for eight years.  Id.  In short, what Defendants' memorandum does not convey is that because judicial estoppel is designed to prohibit parties from deliberately changing positions according to the exigencies of the moment, it cannot be reduced to the precise formula or test the Defendants' suggest. Zedner, 547 U.S. at  504.

Second, Defendants argue throughout their brief, that a party must be "successful" or "prevail" in the prior proceeding for judicial estoppel to apply.  As this Court has recognized throughout eight years of judicial estoppel decisions, the test is not "success" as in a monetary award or winning a case – judicial estoppel applies "if the position was adopted by the first tribunal."  See e.g., Lynch, 491 F. Supp. 2d at 364 (CM).  The United States Supreme Court has explained what the success requirement means when it stated:

> [C]ourts regularly inquire whether the party has **succeeded in persuading a court to accept that party's earlier position**, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled . . .

State of New Hampshire v. State of Main, 532 U.S. 742, 750, 121 S.Ct. 1808, 1815, 149 L.Ed. 2d 968, 978 (2001) (emphasis added).  Thus, the Supreme Court has made clear that "success" simply means that a party was able to persuade a court to adopt its position, not that the party need prevail or receive a substantial benefit as a result of the decision.  Likewise, the Second Circuit has repeatedly held that all the "success" language means is that the prior inconsistent position must have been "adopted by the court in some manner," not that the party won the proceeding or received some favorable monetary reward, as the Defendants repeatedly assert.  Bates v. Long Island Railroad Co., 997 F.2d 1028, 1038 (2d Cir. 1993);

AXA Marine and Aviation Ins. (U.K.) Ltd v. Seajet Indus. Indus. Inc., 84 F.3d 622, 628 (2d Cir. 1996) ("the prior inconsistent position was adopted by the first court in some manner").

In some proceedings, like probate proceedings and bankruptcy proceedings, where judicial estoppel applies with regularity, there are often no winners or "successful" litigants, but judicial estoppel applies nevertheless because the court adopted and relied on the party's prior representation. A number of courts have invoked judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy. For example, in the recent case Negron v. Weiss, 2006 U.S. Dist. LEXIS 69906 (E.D.N.Y. Sept. 27, 2006), the plaintiffs requested a judicial declaration that they owned an equitable interest in an apartment. The defendant argued that the plaintiffs formerly failed to disclose to a bankruptcy court that they owned an equitable interest in the apartment when they had an affirmative obligation to make that disclosure. The court held that the plaintiffs' failure to disclose their alleged equitable interest in the apartment judicially estopped them from asserting such a claim in the present proceeding. Id. at *12. See In re Galerie Des Monnaies of Geneva, Ltd., 55 B.R. 253, 259-60 (Bankr. S.DN.Y. 1985), aff'd, 62 B.R. 224, 1986 WL 6230 (S.D.N.Y. May 27, 1986) (finding judicial estoppel appropriate where the bankruptcy court confirmed the debtor's plan in which no reference was made to preferential payments and fraudulent conveyance). Thus, the court correctly applied judicial estoppel because the plaintiffs' disclosure (of lack of disclosure) was a required component for the completion of the proceeding. By the Defendants' logic, judicial estoppel should not have applied in the bankruptcy proceedings because the Defendants could not have "prevailed" by going bankrupt. Thus, the foregoing parties did not "win" or "prevail" as the Defendants appear to think is necessary, but the courts applied judicial estoppel nevertheless. The strict and unnatural interpretation Defendants provide to "prevail" would mean that judicial estoppel would hardly ever apply to bankruptcy, probate, and the many other proceedings where there are no clearly "prevailing" parties.

## II. DEFENDANTS FAIL TO EXPLAIN HOW THERE IS NO PRIVITY BETWEEN MMLLC, AARON FROSCH, AND ANNA STRASBERG

Defendants argue that Aaron Frosch's and Anna Strasberg's representations are not binding on MMLLC, even though MMLLC is the mere depository and successor in interest of the very Estate property that Frosch and Strasberg sought to protect. The reasons why MMLLC is in privity with Strasberg and Frosch have already been exhaustively briefed by the Shaw Family and thoroughly addressed by Judge Morrow. Shaw Mem., at 4-5, 27-32; Second Declaration of David Marcus, dated March 27, 2008, ("Second Marcus Decl.") at ¶ 2, Ex A, at 23-33. As the Court can see, Defendants do not, and cannot, address any of the privity arguments the Shaw Family or Judge Morrow articulated. An additional case for the Court's consideration on the privity issue is <u>Richards v. Jefferson County, Alabama</u>, 517 U.S. 793, 116 S.Ct. 1761, 135 L. Ed. 2d 76 (1996). In <u>Richards,</u> the Supreme Court recognized an exception to the rule that only a party to a decision is bound by its outcome when "a person, although not a party, has his interests adequately represented by someone with the same interests who is a party." <u>Id.</u> at 798. The court expressly identified a probate proceeding as the type of "remedial scheme" that "exists foreclosing successive litigation by nonlitigants . . ." <u>Id.</u> at 798-99. The <u>Richards</u> Court also acknowledged that a judgment that is binding on a guardian or trustee may also bind the ward or the beneficiaries of a trust. <u>Id.</u>

Judge Morrow adopted many of the privity arguments set forth in the Shaw Family's memorandum over the course of thirteen pages of exhaustive legal analysis. Second Marcus Decl., at ¶2, Ex. A, at 23-35. Judge Morrow firmly held, citing pages and pages of binding legal authority, that as a matter of federal law, New York law, California law, and the Restatement (Second) of Judgments, that estate beneficiaries are in privity with the Estate's administrator or executor. <u>Id.</u> Judge Morrow held:

> Based on the federal authority discussed above, the statutes and case law of
> California and New York – the only two states in which Monroe's will was
> probated – and the Restatement (Second) of Judgments, the court is not
> persuaded by plaintiffs' argument that there was no privity between Frosch,
> the executor of Monroe's estate, and the beneficiaries of that estate.

<u>Id.</u>, at 33.

7

Moreover, there is no conceivable policy justification or legal rationale not to apply the doctrine of judicial estoppel to parties in privity. If basic concepts of privity did not apply to judicial estoppel, a party could avoid any number of prior judicial representations by simply re-incorporating or placing property into an LLC, as Anna Strasberg has done. That Anna Strasberg's lawyers devised MMLLC as a shell only to hold intellectual property and to shield Ms. Strasberg from personal liability is all the more reason to hold it responsible for the representations of its privies here. Shaw Mem., at 28. The unprecedented escape hatch Defendants propose to incorporate into judicial estoppel law would eviscerate the judicial estoppel doctrine and the ability of courts to protect the sanctity of the oath. In a case relied upon by Judge Morrow in her March 17, 2007 Order (Second Marcus Decl., at ¶ 2, Ex. A, at 50), Capsopoulos v. Chater, No. 95 C 3274, 1996 WL 717456 (N.D. Ill. Dec. 9, 1996), the court recognized that judicial estoppel is applicable to parties in privity. Id. at *2. In that case, the court applied judicial estoppel, *sua sponte*, against a surviving son who tried to collect Social Security survivor benefits by claiming that his father earned self-employment income. The court granted estoppel on the grounds that his deceased father had collected SSI disability benefits during his lifetime by asserting that he had not worked and could not work. Id. at *2-3.

## III.    DEFENDANTS FAIL TO EXPLAIN HOW FROSH'S SUBMISSIONS TO THE CALIFORNIA TAX APPRAISER DO NOT JUDICIALLY ESTOP DEFENDANTS HERE

Defendants advance the incredible argument that Frosh did not "prevail" in the California inheritance tax proceedings and that judicial estoppel should not apply as a result. Defs' Mem., at 24-26. In particular, Defendants argue that the Monroe estate was unnecessarily subjected to double taxation and severely penalized." Id. at 24. But Defendants do not address the Shaw Family's argument that the large benefit the Estate obtained was that California did not impose inheritance taxes on the value of the entire Estate and did not tax the Estate's intangible property, both of which it would have done had Mr. Frosh not convinced the California authorities that Ms. Monroe died a New York domiciliary. Shaw Mem., at 25-27. Not surprisingly, Judge Morrow embraced the Shaw Family's position over the course of a

8

detailed five page analysis (Second Marcus Decl., at ¶ 2, Ex. A., at 45-50) and held exactly what the Shaw Family argued in its opening brief. In particular, Judge Morrow held:

> Under the inheritance tax law, the only property of a non-resident decedent that is taxable is real property and "tangible personal property;" "intangible personal property," such as stocks, bonds, notes, and bank deposits, is not taxable. See 18 CAL. CODE REGS. §§ 617, 664-666 (1945). The appraiser valued the portion of Monroe's estate that was taxable in California at $92,761. This is in stark contrast to the gross value of Monroe's estate in New York, which was valued at $836,521.31, and including stocks, insurance policies, and royalty payments. Given the difference in these numbers, it is clear that the appraiser relied on his finding that Monroe was domiciled in New York in determining the value of property that could be taxed in California. Although the appraiser ultimately assessed tax of $777, and denied the estate's request for a no tax certificate, there can be no doubt that the estate successfully advanced its position regarding Monroe's domicile and avoided higher taxation.

Id., at 46, 45-50; 60. Thereafter, Judge Morrow pointedly stated what the Shaw Family has been arguing all along; either the Estate committed tax fraud in California or perjury here:

> Given that the estate successfully argued to the California taxing authorities that Monroe was domiciled in New York at the time of her death, it would appear that either this court or the California taxing authorities have been misled were plaintiffs to prevail on their argument that Monroe died a California domiciliary.

Id., at 49.

Finally, Defendants propound the equally incredible argument that the tax affidavits go to residence, not domicile. As the Shaw Family already argued, all the affiants assert facts that Ms. Monroe considered New York to be her permanent residence and that she was only temporarily in California while filming. Shaw Mem., at 23-25. It is for this reason that all the facts that are set forth in the first six pages of Defendants' opposition memorandum are completely irrelevant. Judge Morrow fully agrees: she recently ruled what is blatantly obvious from just one affidavit, namely:

> The entire purpose of Frosh's "Affidavit Concerning Residence" was to present facts regarding Monroe's domicile to the inheritance tax appraiser.

Second Marcus Decl., at ¶ 2, Ex. A, at p. 50 n. 91. Moreover, if all this were not enough, Judge Morrow also held what the Shaw Family argued in its opening memorandum (Shaw Memo, at 16), namely:

9

These regulations demonstrate that under California's Inheritance Tax Law, residence and domicile are synonymous. Therefore, a party arguing for inheritance tax purposes that a decedent was a resident of another state (i.e., a non-resident of California) was effectively arguing that the decedent was not domiciled in California.

Second Marcus Decl., at ¶ 2, Ex. A, at 38-39. For all the foregoing reasons, the California inheritance tax affidavits clearly judicially estop Defendants here.

## IV.    DEFENDANTS FAIL TO EXPLAIN WHY ANNA STRASBERG'S REPRESENTATIONS IN THE HAWAII LITIGATION DO NOT ESTOP MMLLC HERE

Defendants argue that Anna Strasberg's repeated assertion that Marilyn Monroe died a New York domiciliary in the Hawaii litigation was a "spare legal argument." Defs.' Mem, at 12. Not only was the issue of domicile not a "spare legal argument" in Hawaii, but Ms. Strasberg heavily litigated the domicile question in support of three separate issues, all of which the court adopted. Shaw Mem., at 7-12.

Defendants next argue that "for purposes of judicial estoppel, the prior inconsistent statement must be one of fact . . ." Defs' Mem., at 12-13. Without expressly stating that domicile is a legal issue, Defendants present argument that they hope will lead the Court to that conclusion. Id. But what Defendants fail to tell the Court is that they have already argued to this very Court that domicile is a fact question, so that this entire section of their brief is irrelevant. By letter dated January 16, 2008, in support of their position that the domicile question should be tried before a jury, Defendants argued "[d]etermination of domicile, as the Court recognized, is a "question of fact," which should be tried before a jury." Second Marcus Decl., at ¶ 3, Ex. B, at 1. Defendants were correct on that point, because by order dated November 29, 2007, this Court expressly held "[t]he determination of Ms. Monroe's domicile is a question of fact, and the court intends to sever that issue and try it early next year." Id. at ¶ 4, Ex. C, at 2. Not only is Defendants' newfound implication that domicile is a legal issue contrary to its own prior representation and this Court's November 29, 2007 ruling, but it is also contrary to established legal authority. District of Columbia v. Murphy, 314 U.S. 441, 455, 62 S.Ct. 303, 309, 86 L.E.d. 329, 337 (1941) (holding that the question of domicile is one of fact ); Kahn v. Kahn, 801 F. Supp. 1237, 1243 (S.D.N.Y. 1992) (holding that domicile is "normally an issue of fact . . ."). New York State courts agree.

10

Rubin v. Irving Trust Co., 305 N.Y. 288, 306, 113 N.E.2d 424, 432 (N.Y. 1953) ("[D]omicile, of course, is a question of fact and not law"); Estate of Newcomb, 192 N.Y. 238, 250, N.E. 950, 954 (N.Y. 1908) (holding that the question of domicile is one of fact rather than law); Wilke v. Wilke, 73 A.D.2d 915, 916, 423 N.Y.S.2d 249, 251 (2nd Dep't 1980) ("domicile is necessarily a question of fact"); Markowitz v. Gumbs, 122 A.D.2d 906, 907, 505 N.Y.S.2d 948 (N.Y. Sup. 1986) ("[t]he question of domicile is one of fact based on a variety of circumstances").

Defendants then proceed to argue that judicial estoppel cannot apply to any of Ms. Strasberg's multiple representations to the Hawaii court that Ms. Monroe died a New York domiciliary. First, Defendants argue that judicial estoppel does not apply because Ms. Strasberg was mistaken by telling the Hawaii court that the New York Surrogate's Court formerly determined that Ms. Monroe died a New York domiciliary. Defs. Mem., at 13. But whether the New York Surrogate's Court ever actually determined the issue of Ms. Monroe's domicile or not is irrelevant. The issue is what Anna Strasberg told the Hawaii judge and what the judge did with that information, not whether Ms. Strasberg was incorrect.

Second, Defendants argue that Anna Strasberg never presented any "evidence" in support of her representations that Ms. Monroe died a New York domiciliary. Defs' Mem., at 13. That statement is particularly confusing because Anna Strasberg did not need to submit "evidence" in order for judicial estoppel to apply and the Defendants cite no legal authority to the contrary. All that is required is that Anna Strasberg have made a factual representation to the Hawaii court and it adopted her representation in some manner. And we know that this happened in multiple instances. Shaw Mem., at 7-13.

Third, Defendants argue that Ms. Strasberg should not be bound by the "mistaken" statements made by her attorney, Milton Yasunaga, whom she allegedly never met or spoke with. Defs' Mem., at 12, 3, n.9. Ms. Strasberg is obviously bound by her attorney's representations, whether he was mistaken or not. Pioneer Investment Servs. Co. v. Brunswick Assocs., Ltd., 507 U.S. 380, 397, 113 S.Ct. 1489, 123 L.Ed. 2d 74 (1993) (holding that clients are "accountable for the acts and omissions of their chosen counsel").

11

Fourth, citing to a Texas case from 1987, the Defendants argue that there was no evidence that Anna Strasberg "had the necessary intent to mislead or deceive the Hawaii District Court." Defs' Mem, at 14. Exactly correct! It was in Hawaii that Anna Strasberg told the Hawaii court what everyone knew to be the case and that Anna Strasberg's licensing agent told her a few years earlier – that Marilyn Monroe died a New York domiciliary. It is before this Court that Ms. Strasberg intends to deceive, and all because her financial interests are better served by a different story. Judicial estoppel was designed for this very type of self-serving duplicity.

Fifth, Defendants argue that Ms. Strasberg could not have "prevailed" for purposes of judicial estoppel in the Hawaii litigation because the court ruled that it lacked personal jurisdiction over her and it therefore lacked power to make binding decisions on anything else. Defs' Mem., at 14-15. Either Defendants are confused or they intend to confuse. It is true that a court that does not have personal jurisdiction over a party cannot render a judgment that is *res judicata* in another proceeding. But that does not mean that a party cannot be judicially estopped in a subsequent proceedings based on representations she made in the prior proceeding. In particular, it is undisputed that Ms. Strasberg argued that Marilyn Monroe died a New York domiciliary in support of her argument that the Hawaii court should dismiss the case for lack of personal jurisdiction. The Hawaii court expressly adopted that argument and dismissed the case on that ground. Shaw Memo, at 7, 10. In one of Defendants' thirty-nine detailed footnotes (in direct violation of the Court's Individual Rule 2(c)), Defendants severely mischaracterize that ruling by saying that domicile was irrelevant to the Court's ruling. Defs' Mem., at 15 n. 13. But in its order dismissing the case for lack of personal jurisdiction, the Hawaii court stated:

> New York was where decedent was domiciled at death. The will was
> admitted to probate in New York, and Anna Strasberg, as executor,
> presumably conducted all her estate-related activities out of New York.

Shaw Mem., at 10 (citing SUF at ¶ 11, Ex. 49, at. 8, 13, 14). Based on those facts, the Court held that "[t]here is nothing to show that Anna Strasberg should have foreseen that [her] tortious acts would cause injury to Nancy Miracle so that she could anticipate being sued in Hawaii." SUF at ¶ 11, Ex. 49, at 9.

Thus, while Defendants argue that the Hawaii court dismissed the case because there was no nexus with Hawaii (Defs' Mem., at 15, n. 13), the court reached that conclusion based on Ms. Strasberg's representation that Ms. Monroe died a New York domiciliary and that all the primary probate matters took place in New York, "such that she could not anticipate being sued in Hawaii." Id. To the extent that a "benefit" was required for judicial estoppel to apply, which is not the case, the benefit was that Anna Strasberg convinced the Judge to dismiss the case.

Sixth, Defendants argue that judicial estoppel cannot apply concerning Strasberg's representations during the Hawaii discovery dispute because the court did not accept Ms. Strasberg's representations and Ms. Strasberg did not "prevail." Defs' Mem., at 17 n. 15. However, Ms. Strasberg did prevail because Ms. Miracle argued that she needed discovery into the New York probate documents to prove that "Marilyn Monroe may not have been domiciled in New York at the time of her death;" Anna Strasberg argued in response that the issue of Ms. Monroe's New York domicile is a settled "non-issue;" and the Court denied the request for additional discovery on those grounds. Shaw Mem., at 8-9. In particular, the transcript of the proceedings demonstrates that Ms. Miracle argued that Ms. Monroe likely died a California domiciliary and that they needed discovery on the issue. Marcus Decl., Ex. 45, at 9. Ms. Strasberg contested that representation by stating that Ms. Miracle's attorney "tries to raise this issue now and it's his main arrow here. I don't think it is a valid argument." Id. at 18. And, the Hawaii Judge stated "[w]ell, the Court agrees with Mr. Yasunaga." Id. at 19. The many additional reasons that Defendants' position is baseless are already set forth in the Shaw Family's opening brief. Shaw Mem., at 7-11. Thus, whether or not Ms. Miracle could make the same substantive arguments in another proceeding is not the point – the court adopted Ms. Strasberg's representations and issued a ruling based on that representation. To the extent that a "benefit" is required, Ms. Strasberg obviously received a benefit because the Hawaii court denied the Defendants' request for additional discovery and to stay Ms. Strasberg's motion to dismiss. Id.

13

The same logic applies to the court's dismissal of Ms. Miracle's substantive claim. All the elements of judicial estoppel apply and Ms. Strasberg received the benefit of having the Hawaii court decide the issue and issue a judgment. While the ultimate decision on the merits may not have been binding in another court, that has never been a requirement for judicial estoppel to apply. Had the Ninth Circuit held that the trial court erred on the personal jurisdiction issue, the Hawaii court's order on the substantive claim would still have been decided. The benefit was that it forced Ms. Miracle to appeal the issue to the Ninth Circuit or litigate the issue in New York, on Ms. Strasberg's home turf.

Seventh, Defendants significantly misrepresent the import of the New York Surrogate's Court proceeding, where Ms. Miracle re-argued her pretermission claim. Defs' Mem., at 15-16. Defendants are correct that the New York Surrogate's Court refused to provide preclusive effect to the Hawaii court's substantive decision to dismiss the pretermission cause of action, but that is a total irrelevancy here. The Shaw Family is not arguing that the Hawaii court's ruling on the pretermission claim was *res judicata*, such that Ms. Miracle could not raise it in New York. The Shaw Family is only arguing that judicial estoppel applies to Strasberg's representations concerning Ms. Monroe's New York domicile in Hawaii because the court adopted and relied on those representations when it issued three separate rulings. That Ms. Miracle could re-argue her substantive claims in New York is of no moment. None of Defendants inapposite cases from Tennessee bankruptcy court, Oregon district court, the Sixth Circuit, or the Seventh Circuit, are to the contrary. Defs' Mem., at 16.

Finally, Defendants argue that the "issue of domicile was not even argued in the New York proceedings" and that this somehow means that Ms. Strasberg abandoned the domicile issue. Defs' Mem., at 16-17. Again, Defendants' argument heavily misleads. In the Petition of Nancy Miracle in the New York proceedings, it states that "[O]n August 5, 1962, the Decedent died a domiciliary of New York County, State of New York." Second Marcus Decl., at ¶ 5, Ex. D, at MM 0000263, ¶ 3. Thus, there was nothing to argue about concerning the domicile issue because Ms. Miracle and Ms. Strasberg both agreed that Marilyn Monroe died a New York domiciliary in the New York proceeding.

14

## IV.    COLLATERAL ESTOPPEL APPLIES TO STRASBERG'S REPRESENTATIONS IN THE HAWAII LITIGATION

Defendants argue that collateral estoppel does not apply to Strasberg's representations in the Hawaii proceedings because there was not a final judgment on the merits and that a dismissal for lack of personal jurisdiction does not constitute a judgment on the merits. Defs' Mem., at 17-18. However, in order for the Hawaii court to reach the conclusion that there was no jurisdiction, it relied on and adopted Strasberg's representation that Marilyn Monroe died a New York domiciliary. That is the key distinction. Strasberg fully litigated the issue; the court adopted that position; and the court rendered a final judgment that there was no personal jurisdiction. While the cases do state that a dismissal for lack of jurisdiction is not *res judicata* and does not bar relitigation of substantive issues raised, that is not true for those "issues necessary for the determination of jurisdiction itself." Nicholas v. Canoga Indus., 83 Cal. App. 3d 956, 967 (Cal. App. 1978) (citing Shore v. Shore, 43 Cal. 2d. 677, 681, 277 P.2d 4 (Cal. 1954)).

Finally, Defendants argue that the New York Surrogate's Court issued a subsequent, inconsistent decision and that collateral estoppel should not apply as a result. Defs' Mem., at 19. Defendants again severely misrepresent what occurred in the New York proceeding. As the Court can see, Ms. Miracle argued in her Petition that Ms. Monroe died a New York domiciliary and Anna Strasberg did not contest that issue and it was not addressed by the court. Second Marcus Decl., at ¶ 5, Ex. D, at MM 0000263, ¶ 3. Thus, Defendants representation is, again, false.

## V.    DEFENDANTS DO NOT ADDRESS THE CENTRAL REASONS WHY FROSCH'S REPRESENTATIONS IN THE CALIFORNIA PROBATE PROCEEDINGS ESTOP MMLLC HERE

Defendants' attempt to escape Aaron Frosch's representations to the California Superior Court does not warrant a point-by-point reply. Defendants have so missed the point that the only productive approach is to respectfully refer the Court to the arguments that the Shaw Family has already provided. Shaw Mem., at 14-21.

In short, Aaron Frosh represented to the California Superior Court in the jurisdictional Notice of Probate that Marilyn Monroe died a New York domiciliary. Shaw Mem., at 15. Based on that document,

15

the California Superior Court admitted the Will to probate and Ordered, Adjudged and Decreed that

Marilyn Monroe died a "resident" of New York. Id. at 16. As Judge Morrow held and the Shaw Family

previously argued, residence as used in Section 301 of the former California Probate Code is

"synonymous with domicile." Second Marcus Decl., at ¶ 2, Ex. A, at 36-37; Shaw Mem., at 16. End of

story. Moreover, the numerous cases already cited in the Shaw Family opening memorandum state that

the admission of a will to probate is, in effect, a conclusive decision on the question of domicile; the fact

of domicile is a jurisdictional fact upon which an order of the court admitting the will to probate is based;

and unless set aside on appeal, "findings of jurisdictional facts supporting such an order are final

adjudications upon those facts for all subsequent stages of the proceedings and are as conclusive as the

order admitting the will to probate. See Shaw Mem., at 14.

It is undoubtedly true, as Defendants argue (Defs' Mem., at 28-29) and Judge Morrow has

acknowledged (Second Marcus Decl., at ¶ 2, Ex. A, at 53-60), that an Executor's assertion of domicile in

the Petition for Probate is not necessarily determinative for all time, but if anyone was to challenge the

domicile question, she would have to have done it "only by an appeal or other timely and available direct

attack." As the California Supreme Court has repeatedly stated:

> The jurisdiction of the court to render a judgment or order often depends
> upon the preliminary determination of certain jurisdictional facts. When all
> parties affected are actually or constructively before it with an opportunity
> to assert their contentions and to appeal from an adverse ruling, the finding
> of such facts by the court may be reviewed only by an appeal or other
> timely and available direct attack. This finding cannot be attacked in a
> proceeding under paragraph 4 of section 473 to have the judgment declared
> void, not can it be attacked in any collateral proceeding. In such cases, the
> finding is as conclusive as any other finding of fact by the court in the
> original proceeding . . . [t]his has been the rule in California with regard to
> attacks on judgments rendered by our courts.

Estate of Estreem, 16 Cal.2d 563, 570 (Cal. 1940) (citations omitted; Estate of Barton, 196 Cal. 508, 511

(Cal. 1925) (same); Irwin v. Scriber, 18 Cal. 499, 500, 505-08 (Cal. 1861). After Judge Morrow

discussed and dismissed all the cases that Defendants rely upon here, she came to rest on a single case that

the Shaw Family cited and relied upon in its opening memorandum, namely In re Slade's Estate, 154

Misc. 275, 277, 276 N.Y.S.2d 956, 959 (N.Y. Surr. 1935) (holding that the decedent's widow was estopped from questioning the Executor's domicile representation after the probate proceedings were closed because "it was within her power to have litigated the issue of domicile in the probate proceeding . . . or to have moved directly to vacate the decree in probate for the purpose of determining the actual domicile of the testator"). Judge Morrow stated that she found "the analysis in In re Slade's Estate more persuasive than in any of the cases cited by plaintiffs."[1] Second Marcus Decl., at ¶ 2, Exs. A, at 60.

Accordingly, California probate law provides that if Anna Strasberg and MMLLC, or anyone, were to attack the California Superior Court's determination that Ms. Monroe died a New York domiciliary, she would have to have raised that issue on appeal or direct attack, not forty-five years later before this Court. The issue of Ms. Monroe's domicile is absolutely closed. The principles of *res judicata*, collateral estoppel, and judicial estoppel apply to these proceedings for all the reasons set forth in the Shaw Family's opening memorandum. Shaw Mem., at 20-21. As those cases state, *res judicata* applies not only to claims actually litigated, as Defendants argue, but also to claims that could have been litigated and were not; and that those principles apply to probate proceedings with equal if not greater force. Id.

## VI.    THE NEW YORK PROBATE COURT ADOPTED ANNA STRASBERG'S REPRESENTATION THAT MARILYN MONROE DIED A NEW YORK DOMICILIARY SUCH THAT JUDICIAL ESTOPPEL APPLIES

Given Defendants' repeated characterization of Ms. Monroe as a New York domiciliary in multiple proceedings over many years, it is difficult to understand how they could possibly characterize Ms. Strasberg's representation to the New York Surrogate's Court that Ms. Monroe died a New York domiciliary as "mere inadvertent error," "an isolated and unnecessary reference," and "simply a mistake." But that's what they say. Defs' Mem., at 22.

First, Defendants argue that the New York Surrogate's Court never ruled that Ms. Monroe died a New York domiciliary. Defs' Mem., at 19. That is incorrect. The Second Circuit has held that for

---

[1] The "plaintiffs" in the California proceeding are the Defendants here. Second Marcus Decl., at ¶ 2, Ex. A, at 2.

judicial estoppel to apply, all that is necessary is for the court to have "adopted" Ms. Strasberg's representation that Marilyn Monroe died a New York domiciliary. AXA Marine and Aviation Ins. (U.K.) Ltd v. Seajet Indus. Indus. Inc., 84 F.3d 622, 628 (2d Cir. 1996) ("the prior inconsistent position was adopted by the first court in some manner"). The New York Surrogate's Court clearly adopted Ms. Strasberg's representation that Marilyn Monroe died a New York domiciliary because it applied New York law to the construction of Marilyn Monroe's Will. Shaw Mem., at 21-22. Defendants appear to be correct that because the proceeding before the New York Surrogate's Court involved the construction and not validity of the Monroe Will, the law required the court to apply the law of Monroe's domicile when she executed her Will. However, Ms. Strasberg did not state that Ms. Monroe was domiciled in New York when she executed her Will, she stated that "[t]he decedent died on August 5, 1962, domiciled in the City and State of New York . . ." Shaw Mem., at 21. Had Ms. Strasberg not made that statement, then the Court would have had no basis to apply New York law at all. Whether it mistakenly failed to inquire whether Ms. Monroe was domiciled in New York when she executed her will does not change the reality that it adopted Ms. Strasberg's representation and applied New York law.

Second, Defendants argue that Ms. Strasberg did not "prevail" in the will construction proceeding so judicial estoppel cannot apply. Defs' Mem., at 20-21. While it is true that Ms. Strasberg failed in her attempt to deprive the Anna Freud Centre out of its 25% share, as Defendants now admit, that is an absolute irrelevancy. Anna Strasberg filed the Petition in her role as Administratrix of the Monroe Estate. The Petition she filed stated that "Petitioner is a person interested in obtaining a determination as to the validity, construction, and effect of said Will under the provisions of § 1420(1) of the Surrogate's Court Procedure Act." Marcus Decl., at ¶ 36, Ex. 35, at MM 0004364, ¶ 1. That is exactly what the New York Surrogate's Court provided, so to say that she did not "prevail" misses the point that her duty as Administratrix was to determine the proper beneficiaries and make the appropriate distributions. By interpreting the Kris Will, the court not only adopted Anna Strasberg's representation, but it did exactly what Ms. Strasberg requested. Strasberg may not have prevailed in her role as a beneficiary by obtaining

18

the entire Monroe Estate for herself, but she certainly prevailed as Administratrix, which is how she

appeared in the proceeding.

Finally, the Anna Freud Centre is mistaken that it never took the position that Marilyn Monroe

died a New York domiciliary. When Anna Strasberg submitted a Petition before the New York

Surrogate's Court in which she asserted that Marilyn Monroe died a New York domiciliary, the Anna

Freud Centre, represented by Paul, Weiss, admitted that jurisdictional fact. Shaw Mem., at 21 (citing

SUF at ¶ 42, Ex. 36, MM 7335).

## VII.  DEFENDANTS ARE THE QUINTESSENTIAL "FAST AND LOOSE" LITIGANTS BECAUSE THEY WITHHELD THE KEY DOMICILE DOCUMENTS THEY KNEW WOULD EXPOSE THEM

The Shaw Family argued in its opening memorandum that Defendants intended to deceive the

Court by not producing the critical domicile documents when they formerly submitted summary judgment

motions. Shaw Mem., at 5; Declaration of Christopher Serbagi, dated February 14, 2008. It was in those

motions Defendants asserted that Ms. Monroe died a California domiciliary. Defendants' failure to

address this charge is telling. Defendants' critical lack of disclosure is not just a flagrant discovery abuse,

it is particularly relevant to the present briefing. There is no better evidence of "fast and loose" behavior

than an attempt to secrete the very domicile documents that would have revealed that these Defendants do

not even believe their current representations before this Court concerning Ms. Monroe's purported

California domicile.

As Administratrix of the Monroe Estate, it is just inconceivable that Anna Strasberg did not know

that she had all these domicile documents in her possession. But, there is additional and very disturbing

evidence that Defendants' failure to produce these documents was intentional, including a letter from

Anna Strasberg's former licensing agent, Roger Richman, to Anna Strasberg and her longtime attorney,

Irving Seidman. The letter stated:

> I wrote the New York celebrity rights law only to protect Marilyn Monroe
> because several lawyers reviewed her probate file and alleged that her
> domicile upon death was likely New York. Should any licensee assert this,
> there may be no more licensing revenue from Marilyn Monroe.

19

Shaw Bond Mem., dated March 12, 2008, at 11. Thus, Anna Strasberg and her longtime lawyer knew that the probate documents would (i) reveal that Marilyn Monroe died a New York domiciliary and (ii) endanger their improperly obtained ten million dollar a year enterprise.

Ten million dollars a year was not enough for Anna Strasberg. Thus, Strasberg and Roesler sued the Shaw Family and the other photographers in Indiana because it represented the only threat to their complete domination of the Marilyn Monroe market. They threatened the Shaw Family with having to pay multi-million dollar legal fees and intended to quickly oppress and overwhelm the Shaw Family with a distant litigation it could ill afford. Id. at 13-14. They certainly never expected to produce the critical domicile documents because the Indiana statute purports to apply regardless of domicile, which is exactly what Defendants previously argued. When the case was transferred here, Roesler and Strasberg quickly moved for summary judgment without producing a single document, including the very probate documents they knew would expose them. They withheld the key probate documents as "confidential" and hoped no one would notice

Finally, Defendants utter contempt for the judicial process and this Court's May 2, 2007 Decision and Order is well documented. By way of one many examples we will raise with the Court at the appropriate time, CMG is currently telling the world that, despite this Court's May 2, 2007 Decision and Order, MMLLC still has a right of publicity in Marilyn Monroe in Indiana and Washington. Second Marcus Decl., at ¶ 6, Ex. E, at 1. This Court ruled that there is no right of publicity in Marilyn Monroe, period, but that has not deterred Defendants.

## CONCLUSION

For all the foregoing reasons, the Shaw Family respectfully requests that the Court hold that Defendants are estopped from arguing that Ms. Monroe died anything but a New York domiciliary; confirm that Ms. Monroe had no right of publicity to pass to her heirs and beneficiaries (including MMLLC); and grant the Shaw Family's summary judgment motion on Count 9 of its Second Amended Complaint.

20

Dated:  New York, New York
        March 27, 2008

Respectfully Submitted,


LAW OFFICES OF CHRISTOPHER SERBAGI


By:  _____
     Christopher Serbagi, Esq.
     David Marcus, Esq.
     488 Madison Avenue, Suite 1120
     New York, New York  10022
     Tele: (212) 593-2112
     Fax:  (212) 308-8582

     Attorneys for Shaw Family Archives, Bradford Licensing,
     Inc., Edith Marcus and Meta Stevens

21