# EX. B

**PAULA K. COLBATH**
Partner

345 Park Avenue
New York, NY 10154

**Direct** 212.407.4905
**Main** 212.407.4000
**Fax** 212.937.3189
pcolbath@loeb.com

Via Facsimile

January 16, 2008

Honorable Colleen McMahon
500 Pearl Street, Room 640
New York, New York 10007

Re:   Shaw Family Archives, Ltd., et al. v. CMG Worldwide, Inc., et ano.; Index No. 05 Civ. 3939

Dear Judge McMahon:

We represent Defendant Marilyn Monroe LLC ("MMLLC"), and write in response to Mr.
Serbagi's January 15, 2008 letter, in which he requests clarification as to whether the Court
(i) intends to conduct a bench trial on the issue of Marilyn Monroe's domicile or submit it to a
jury, and (ii) expects the pre-trial order to address both of the remaining claims, namely
Plaintiffs' domicile claim and Defendants' public domain claim, or only domicile.

**Seventh Amendment Right to Jury Trial**

The parties have consistently demanded a jury trial in connection with the domicile issue and
related "right of publicity" claims.  Plaintiffs demanded a jury trial in their Second Amended
Complaint dated August 8, 2007.  Fed. R. Civ. P. 38(d) clearly provides that a demand for trial
by jury, once made, may not be withdrawn without the consent of the parties.  MMLLC does not
consent.

Determination of domicile, as the Court recognized, is a "question of fact," which should be tried
before a jury.[1]  The fact that Plaintiffs' have sought a "declaratory judgment" does not deprive
MMLLC of its Seventh Amendment right to trial by jury.  Mr. Serbagi's argument to the contrary
ignores "the long-settled rule that declaratory judgment actions are inherently neither equitable

---

[1]  Significantly, in a recent state court action in California, MMLLC recovered a vast
collection of personal papers and property belonging to Marilyn Monroe ("Monroe") from
Millington Conroy, the nephew of Monroe's personal assistant in the years immediately
preceding her death.  The papers include documents establishing that, among other things, in
1962 (i) Monroe purchased a house in California with a 15 year mortgage and referred
frequently to her new "home" (this was the first home Monroe had ever owned); (ii) she spent
significant sums renovating, decorating and landscaping the home; (iii) Monroe's California
expenses far surpassed her New York expenses, (iv) Monroe transferred all of her business
operations and files to California; (v) Monroe hired California attorney Mickey Rudin as her
primary legal counsel as well as agent; (vi) California was the "new headquarters" for both
Marilyn Monroe and Marilyn Monroe Productions, Inc.; and (vii) Monroe notified the Connecticut
Department of Motor Vehicles that her permanent address had changed from Roxbury,
Connecticut to Los Angeles, California.  Such factual evidence as to Marilyn Monroe's domicile
is appropriately presented to a jury.

A limited liability partnership including professional corporations



nor legal and that the nature of the underlying dispute determines whether a jury trial is available." *Rosenman & Colin v. Richard*, 850 F.2d 57, 60 (2d Cir. 1988); *see also, e.g., Simler v. Conner*, 372 U.S. 221, (1963) ("The fact that the action is in form of a declaratory judgment case should not obscure the essentially legal nature of the action."); *Mile High Indus. v. Cohen*, 222 F.3d 845, 856 (10th Cir. 2000) ("It is the issues, not the form of the complaint, that will determine the method of trial," and a "request for declaratory relief may be legal or equitable depending on the basic nature of the underlying issues") (quotations and citations omitted); *Archie Comic Publications, Inc. v. DeCarlo*, 00 Civ. 5686, 2002 U.S. Dist. LEXIS 283, at *2 (S.D.N.Y. Jan. 11, 2002) (empanelling jury where "[d]efendant maintains that the action in substance is one for copyright infringement, albeit inverted by means of the declaratory judgment mechanism").

Indeed, to the extent that Plaintiffs have standing to seek a declaratory judgment on domicile (which MMLLC disputes), such standing is based on Plaintiffs' contention that MMLLC and CMG intend to seek reconsideration of the "right of publicity" claims in their Second Amended Complaint (which were dismissed by the Court), in connection with which MMLLC and CMG <u>did</u> assert a jury demand. Plaintiffs should not be permitted to evade Defendants' jury demand by attempting to resolve such inherently legal issues through the mechanism of a declaratory judgment. *Cf. Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 135 (2d Cir. 1991) (jury trial is appropriate in "suits in which *legal* rights are to be ascertained and determined") (emphasis in original).

## The Parties' Joint Pre-trial Order Must Include Defendants' Public Domain Claim

Magistrate Judge Fox's June 11, 2007 scheduling order clearly provided that the parties' joint pre-trial order was to be due on January 15, 2008 – the scheduling order did not suggest that only selected claims were to be included. Accordingly, Defendants have been diligently preparing a pre-trial order that would cover <u>both</u> claims remaining in this case. Plaintiffs should not be permitted, at this late date, to drastically limit the scope of the pre-trial order.

More importantly, Defendants also respectfully request that, in the interest of judicial economy, the "domicile" and "public domain" claims remaining in this case be tried together. The public domain issue is inextricably intertwined with the domicile issue. Plaintiffs and Defendants are each in the "Marilyn Monroe" business, MMLLC by virtue of its rights under trademark, copyright and publicity, and Plaintiffs by virtue of their alleged copyrights. For years Plaintiffs have been asserting vague and expansive claims based upon their exclusive rights in the Marilyn Monroe photographs by Sam Shaw. The evidence is compelling that the most famous and, in Plaintiffs' words, "iconographic" of those photographs, at the very least, are in the public domain. Indeed, Defendants intend to establish that, to the extent Plaintiffs do not possess any valid copyrights in Marilyn Monroe photographs, they lack standing to seek a declaration as to Marilyn Monroe's domicile.

"[S]eparation of issues for trial is not to be routinely ordered," *see* 1966 Advisory Committee Notes to Fed. R. Civ. P. 42, and bifurcation is inappropriate where, as here, the issues are intertwined and the claims will involve several of the same witnesses. *See, e.g., Vichare v. AMBAC Inc.*, 106 F.3d 457, 466-67 (2d Cir. 1996); *Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Maryland*, 763 F. Supp. 28, 35 (S.D.N.Y. 1991). Thus, in order to avoid unnecessary delay and expense associated with multiple trials, and to ensure that Defendants are not prejudiced

Honorable Colleen McMahon
January 16, 2008
Page 3

with respect to their potential "standing" defense, Defendants respectfully request that the remaining claims be resolved in a single proceeding.

We thank the Court for its assistance in this matter.

Respectfully submitted,

Paula K. Colbath

cc:    Christopher Serbagi, Esq. (via email)
       Theodore J. Minch, Esq. (via email)

# EX. C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————x

SHAW FAMILY ARCHIVES, LTD., EDITH
MARCUS and META STEVENS,

        Plaintiffs,

     -against-                        05 Civ. 3939 (CM)(MDF)

CMG WORLDWIDE, INC., an Indiana Corporation
and MARILYN MONROE LLC, a Delaware
Corporation,

        Defendants.

————————————————————————x

<div style="border:1px solid black">

**USDS SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:** _____
**DATE FILED:** 11/24/07

</div>

### DISPOSITION OF VARIOUS PENDING MOTIONS

McMahon, J.:

     In view of correspondence received from the parties, the various pending motions are disposed of as follows:

     1. The Third through Eighth Causes of Action in the complaint are dismissed with prejudice.

     2. The motion for a stay of discovery concerning lobbying has been dealt with by Magistrate Judge Fox, and so should be marked "decided."

     The following issues remain in this case:

     1. Plaintiffs' First and Second Causes of Action for copyright infringement

     2. Plaintiffs' Ninth Cause of Action, for a declaration that Marilyn Monroe died a domiciliary of New York.

     3. Defendants' Counterclaim for a declaration that plaintiffs do not possess a valid and enforceable copyright in various photographs of Marilyn Monroe.

     Plaintiffs' Ninth Cause of Action remains in the case because the State of California recently passed a statute that purports to confer property rights on a dead person that were not possessed by that dead person at the time of her demise. Obviously, if plaintiff died a domiciliary

of the State of New York, where her will was probated, the California statute is of no moment. The determination of Ms. Monroe's domicile is a question of fact, and the court intends to sever that issue and try it early next year. The parties will be contacted shortly concerning the trial date.

However, if there is going to be any attack against the California statute on any legal ground, I want to be told that now and I want to know what the ground of attack is going to be, so that we can set an appropriate briefing schedule. I want to resolve all issues surrounding the newly-passed California statute, including the issue of domicile, in the next 90 days.

Dated: November 29, 2007

_____
U.S.D.J.

BY ECF TO ALL COUNSEL

# EX. D

*AMENDMENT INCL. COPY OF WILL + OTHER INTERESTED PARTIES + THEIR INTEREST*

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------X

In the Matter of the Application of Nancy Miracle
(the "Petitioner") to Open, Vacate , and Set Aside
the Decrees of this Court, Dated October 30, 1962,
Granting Letters Testamentary to Aaron R. Frosch,
and Dated October 3, 2000, Granting Letters of
Administration C.T.A. to Anna Strasberg, on the
Goods, Chattels, and Credits which were of Nancy
Cusumano, also known as Norma Jean Baker, and
also known, and previously represented to this Court,
as Marilyn Monroe, Deceased (the "Decedent")
and to Open, Vacate, and Set Aside Decrees
of this Court Settling the Accounts
of said Aaron R. Frosch, as such Executor, and
of said Anna Strasberg, as such Administratrix C.T.A.

---------------------------------------------------------------X

**INDEX NO.**
**P 2781/1962**

**PETITION OF**
**NANCY MIRACLE**

TO THE SURROGATE'S COURT, COUNTY OF NEW YORK:

Pursuant to the provisions of Section 711 of the Surrogate's Court Procedure
Act of the Laws of the State of New York (the "SCPA"), and all related provisions
of the SCPA, the Petitioner hereby alleges as follows:

1. Petitioner is domiciled at _54 W 10th St (3E)_ County of
_New York_, City of _New York_, State of
_New York_.

2. Petitioner is the sole surviving child of the Decedent and as such is the
next of kin and distributee of the Decedent, and therefore a person interested in this
proceeding within the meaning of SCPA Section 711.

3. On August 5, 1962, the Decedent died a domiciliary of New York County,
State of New York.

MM-0000263

4. Shortly after the death of Decedent, the said Aaron R. Frosch filed with this Court a petition for the probate of the last will and testament of Marilyn Monroe (the "probate petition") seeking his appointment as Executor of the Decedent's estate (the "Estate").

5. On October 30, 1962, this Court, relying on the allegations of the probate petition, granted Letters Testamentary on the Estate to the said Aaron R. Frosch.

6. On information and belief (inasmuch as this Court's files containing the probate petition of the said Aaron R. Frosch are now apparently missing based on information supplied to Petitioner by the records division of this Court), in the probate petition filed with this Court by the said Aaron R. Frosch, Mr. Frosch made, *inter alia*, the following allegations:

(a) That the Decedent's name was Marilyn Monroe, and

(b) That the Decedent died leaving no surviving children.

7. Both of the above allegations by the said Aaron R. Frosch were false inasmuch as (i) the Decedent's true name was Nancy Cusumano, according to the records maintained by the United States Social Security Administration, and (ii) the Petitioner is the sole surviving child of the Decedent.

8. Upon information and belief, the said Aaron R. Frosch made no effort to ascertain the true name of the Decedent.

9. Upon information and belief, the said Aaron R. Frosch made no effort to ascertain and locate the next of kin and distributees of the Decedent, and did not advertise in any newspaper for that purpose, but immediately after Decedent's death, filed the probate petition with this Court seeking his appointment as Executor of the Estate.

10. The Petitioner was never served with any citation in the said proceeding to obtain Letters Testamentary, and no jurisdiction over the Petitioner was ever obtained by this Court.

11. Upon information and belief, the said Anna Strasberg, in applying for Letters of Administration C.T.A of the Estate, neither attempted to advise this Court of the falsity of the allegations described in Paragraph 6, above, nor ever

MM-0000264

caused citations or other notice of her petition seeking her appointment as
Administratrix C.T.A. of the Estate to be served upon Petitioner.

      12. On information and belief, the said Aaron R. Frosch and the said Anna
Strasberg, in obtaining said Letters Testamentary and Letters of Administration
C.T.A., respectively, and in thereafter administering the Estate, acted negligently
and fraudulently and in total disregard of the rights of Petitioner and with the
design of depriving Petitioner of her reasonable expectation of sharing in the
Estate.

      13. Upon information and belief, on at least three separate occasions, the
said Aaron R. Frosch and Anna Strasberg have presented petitions to this Court
praying for the judicial settlement of their accounts as Executor and
Administratrix, C.T.A., respectively, of the Estate (herein referred to as the "Estate
Accounting Petitions"). In the case of each of the Estate Accounting Petitions, the
Petitioner was omitted from the recitals therein of persons who were either (i)
interested in the Estate, or (ii) a next of kin of Decedent, or (iii) a distributee of
Decedent.

      14. Upon information and belief, in none of the Estate Accounting Petitions
is there any statement of facts which would give rise to a presumption of diligent
search for Decedent's next of kin and/or distributees.

      15. Thereafter, this Court, relying upon the allegations contained in the
Estate Accounting Petitions, settled and approved the accounts of said personal
representatives as set forth therein.

      16. Inasmuch as the Estate Accounting Petitions omit acknowledgement of
Petitioner as the child of Decedent, and inasmuch as Petitioner neither received any
notice of the filing of the Estate Accounting Petitions nor was otherwise aware of
their pendency, the Estate Accounting Petitions were submitted on the basis of
false allegations therein and made in fraud of the legitimate rights of Petitioner in
the Estate.

      17. To the best of the Petitioner's knowledge, information and belief, the
names of all persons interested in this proceeding who are required to be cited on
the filing of this Petition, together with their places of residence and post office
addresses, are as follows:

(a) Anton O. Kris and Anna Kris Wolff, pursuant to the Authorization of the Anna Freud Center, the Authorization of Anton O. Kris and the Authorization of Anna Kriss Wolff, who reside at 21 MARES FIELD GARDENS HAMPSTEAD, ; LONDON NW3 5SD ENGLAND + ANTONO, KRIS, MD  37 Philbruck RD  Brookline, Mass 02146 + ANNA K. Wolff, MD  10 Channing Street Cambridge Mass.02138

(b) Continental Insurance Company, a domestic corporation, the surety on the bond of said Anna Strasberg, as Administratrix C.T.A. of the Estate, the principal office of which is at Surety Dept , 39 Bway #620 , NY NY 1006

(c) The Attorney General of the State of New York, whose service address is 120 Bway , New York , New York; (and Govt Agency)  ON Behalf of THE ANNA FREUD Centre

(d) Anna Strasberg, who resides at 135 Central Parkwest New York, NY , 10023 15% Residue

(e) THE ANNA FREUD CENTRE  25% RESIDUE (Beneficiary ORGANIZATION) 21 MARES Field GARDENS HAMPStead, London NW3 5SD ENGLAND

(f) STROOCK, STROOCK + LAVAN  NONE ATTORNEYS FOR MARJORIE M. Frosch, EXECUTRIX ESTATE OF Aaron R. Frosch 180 MAIDEN LANE , New York, NY 10038

18.To the best of the Petitioner's knowledge, information and belief, there are no persons other than those above named who are interested in this proceeding, and all of the above named persons are of sound mind and all are of full age.


WHEREFORE, Petitioner prays that the persons named above may be cited to show cause why an Order should not be made by this Court to (1) open, vacate and set aside the decree of this Court granting Letters Testamentary to Aaron R. Frosch, as Executor of the Estate of Marilyn Monroe, (2) open, vacate and set aside the decree of this Court granting Letters of Administration C.T.A. to Anna Strasberg, as Administratrix C.T.A. of the Estate of Marilyn Monroe, (3) direct judgment against Aaron R. Frosch, individually, and as Executor of the Estate of Marilyn Monroe, in the sum of One Hundred Million Dollars ($ 100,000,000.00), with interest thereon, (4) direct judgment against Anna Strasberg, individually, and as Administratrix C.T.A. of the Estate of Marilyn

MM-0000266

Monroe, and against Continental Insurance Company, as surety on said Administratrix's Bond, in the sum of One Hundred Million Dollars ($ 100,000,000.00), and (5) grant such other and further relief as to this Court shall seem just and proper.

PETITIONER:

*Nancy Miracle*

Nancy Miracle

STATE OF NEW YORK
COUNTY OF NEW YORK

Nancy Miracle, being duly sworn, deposes and says that she is the Petitioner in the within Petition, that she has read the foregoing Petition and knows the contents thereof, and that the same is true of her own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters, she believes them to be true.

AMENDED

*Nancy Miracle*

NANCY MIRACLE

*Nancy Miracle*

NANCY MIRACLE

Sworn to and subscribed before me this 26th day of February, 2002.

NOTARY PUBLIC

SHERIE YEUNG
Notary Public, State of New York
No. 01YE5019673
Qualified in New York County
Commission Expires October 25, 20 __

On the 26th day of February, 2002, before me came Nancy Miracle, the Petitioner in the within Petition, and, being duly sworn, states that she has read the foregoing Petition and knows the contents thereof, and that the same is true to her own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters, she believes them to be true

NOTARY PUBLIC.

SHERIE YEUNG
Notary Public, State of New York
No. 01YE5019673
Qualified in New York County
Commission Expires October 25, 20 __

SHERIE YEUNG
Notary Public, State of New York
No. 01YE5019673
Qualified in New York County
Commission Expires October 25, 20 06

SWORN BEFORE ME ON THE
26th OF MARCH, 2002
(AMENDED VERSION)

MM-0000267

# EX. E



MARKROESLER.COM

"I represent a lot of people who have passed away, so when I speak for them in television interviews, I keep it as professional as possible."

PRESS CENTER

**ABOUT MARK**
Biography
Timeline
Curriculum Vitae
Published Works
Business Ventures
After Hours
Familiar Faces
Awards
Ask Mark
**SERVICES**
Expert Witness Testimony
Consulting
Speaking Engagements
Valuation
**PRESS CENTER**
Interviews
Press Kit
Current News
Weekly Webcasts
Articles Archive
Television Appearances
Radio Interviews
**CMG WORLDWIDE**
About
Clients
Events
Services
Technology
**IP RESOURCES**
Right of Publicity
Damages
State Statutes
Copyright
Trademark
Case Law
Famous Domain Names
Legal Battles

**MARCH CALENDAR**
Nothing scheduled at this time, please check back later

**RULES FOR SUCCESS**
*by Mark Roesler*
What does it take to be successful?
**Read the Rules >>**

✉ **E-ALERT SIGN UP**
HAVE MARKROESLER.COM NEWS SENT TO YOU VIA EMAIL OR TEXT MESSAGE!

♫ **Open Audio Player**

## CURRENT NEWS

**Statement by Mark Roesler concerning Recent Developement to Protect the Valuable Personality Rights of Deceased Celebrities**

03-21-2008

I am very pleased to report that this week the Governor of the State of Washington signed into law a revised right of publicity statute (SHB 2727) recognizing post mortem right of publicity regardless of whether the laws of the state of domicile of a living or deceased personality recognize publicity rights or not. This was in response to the recent case involving the rights of Jimi Hendrix, where the 9th Circuit Court of Appeals applied New York law instead of Washington law in determining whether the Estate of Jimi Hendrix could protect his post mortem rights. The 9th Circuit Appellate Court held that because Hendrix's domicile of New York did not currently protect post mortem rights, Washington law would not apply to protect Hendrix's rights in Washington. The court suggested that the legislature would have to address this issue, which the governor of Washington did this week. This follows the recent amendment that Governor Schwarzenegger signed this past October that clarified the rights of deceased celebrities in California.

CMG and its client, Marilyn Monroe LLC, received mixed news from California this past week. The good news was that the United States Court for the Central District of California granted summary judgment in favor of CMG and Marilyn Monroe LLC, dismissing claims against them filed by the family of photographers for alleged Lanham Act violations, common law unfair competition, statutory unfair competition, false advertising, and tortious interference with actual and prospective business relations. On a more challenging front is the finding by the court that Marilyn Monroe LLC was judicially estopped by statements of the Executor of Marilyn Monroe's Estate concerning Marilyn Monroe's New York residence at the time of her death. Because New York does not recognize a post-mortem right of publicity, the Court dismissed Marilyn Monroe LLC's right of publicity claims. This ruling will almost certainly be appealed to the Ninth Circuit Court of Appeals.

With both Indiana and newly revised Washington right of publicity statutes, however, Marilyn Monroe's right of publicity is firmly secured in at least these states and any acts that occur in those states are actionable under those state statutes. Marilyn Monroe's other intellectual property rights such as rights defined under the federal and international trademark laws, various copyrights, and her contractual rights with studios are unaffected by the recent finding by the California court.

Just as various states have legislatively addressed the rights of deceased personalities, New York is the next state that is under pressure to update its century old and outdated statute addressing personality rights. The New York law was enacted in 1905 to protect "living" personalities but has not been revised since then to include deceased personalities. The current New York law is clearly outdated and out of step with the majority of states and various

countries that protect the rights of the heirs of deceased celebrities.

I am proud to continue to be advancing and protecting the rights of deceased personalities. I began this effort 27 years ago, in 1981 and despite the aggressive opposition that these efforts have always brought out, we have made tremendous progress around the world. My company is headquartered in Indiana with offices also in California and we protect and market almost 200 famous deceased personalities around the world. We will focus our efforts on correcting this obvious shortcoming in New York and we are confident that the citizens and famous celebrities from the state of New York, will not want the fruits of their labor taken from them after their death.

# EX. F

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/7/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
SHAW FAMILY ARCHIVES LTD., EDITH       :
MARCUS and META STEVENS,
                                                              :
                        Plaintiffs,                       :      Case No. 05 Civ. 3939 (CM)
                                                              :
                  -against-                              :      Hon. Colleen McMahon
                                                              :
CMG WORLDWIDE, INC. and MARILYN     :      STIPULATION
MONROE LLC,                                          :
                                                              
                        Defendants.
------------------------------------------------------X

        WHEREAS the parties have conferred in an effort to avoid spending time at trial
authenticating documents about which there is no genuine dispute;

        IT IS HEREBY STIPULATED AND AGREED by and between the undersigned
counsel that, for purposes of this action, all documents produced in discovery prior to the
January 1, 2008 discovery deadline, except (i) those documents bearing a production number
with the prefix "MC" and (ii) a purported audio recording of a 1955 radio interview of Marilyn
Monroe and any transcript thereof, are authentic under Federal Rules of Evidence 901, et seq.;

        IT IS FURTHER STIPULATED AND AGREED by and between the
undersigned counsel that nothing in this Stipulation shall prevent any party from objecting to any
document or piece of evidence on any ground other than authenticity.

LAW OFFICES OF CHRISTOPHER SERBAGI

By: _Christopher Serbagi_
Christopher Serbagi
488 Madison Avenue, Suite 1120
New York, New York 10022
Tel: (212) 593-2112
Fax: (212) 308-8582

*Attorneys for Shaw Family Archives, Ltd., Edith Marcus and Meta Stevens*

LOEB & LOEB, LLP

By: _____
Paula K. Colbath
345 Park Avenue
New York, New York 10154-1895
Tel: (212) 407-4000
Fax: (646) 514-2887

*Attorneys for Marilyn Monroe LLC*

SOVICH MINCH, LLP

By: _____
Theodore J. Minch, Esq.
10099 Chesapeake Drive, Suite 100
McCordsville, Indiana 46055
Tel: (317) 335-3601
Fax: (317) 335-3602

*Attorneys for CMG Worldwide, Inc.*

Dated: New York, New York
       March 6, 2008

So Ordered. 3/7/08

_____
Hon. Colleen McMahon
U.S.D.J.

LAW OFFICES OF CHRISTOPHER SERBAGI

By:_____
Christopher Serbagi
488 Madison Avenue, Suite 1120
New York, New York 10022
Tel: (212) 593-2112
Fax: (212) 308-8582

*Attorneys for Shaw Family Archives, Ltd., Edith
Marcus and Meta Stevens*

LOEB & LOEB, LLP

By:_____
Paula K. Colbath
345 Park Avenue
New York, New York 10154-1895
Tel: (212) 407-4000
Fax: (646) 514-2887

*Attorneys for Marilyn Monroe LLC*

SOVICH MINCH, LLP

By:_____
Theodore J. Minch, Esq.
10099 Chesapeake Drive, Suite 100
McCordsville, Indiana 46055
Tel: (317) 335-3601
Fax: (317) 335-3602

*Attorneys for CMG Worldwide, Inc.*

Dated: New York, New York
       March 6, 2008

So Ordered.

_____
Hon. Colleen McMahon
U.S.D.J.

NY706720.1

2

# EX. G

| | |
|---|---|
| **Date:** | Fri, 4 Jan 2008 07:30:28 -0800 (PST) |
| **From:** | "David Marcus" <dmmlitigates@yahoo.com> |
| **Subject:** | SFA/Bradford v. CMG/MMLLC |
| **To:** | "Paula Colbath" <pcolbath@loeb.com> |
| **CC:** | tjminch@sovichminch.com, "Chistopher Serbagi" <c.serbagi@earthlink.net> |

Dear Paula

As per our agreement made during the deposition of David Strasberg, please find the

enclosed list of documents, sorted by MM bates number, for David Strasberg, or Anna

Strasberg, to authenticate and state whether they came from MMLLC's files as kept in

the ordinary course of business.  With respect to the Millington Conroy documents,

explain the method in which the documents were  obtained from Mr. Conroy and
where

they are presently located (please also provide any declaration/affidavit from Mr. Conroy

if they exist regarding the maintenance and provenance of the documents).

Very truly yours,

David M. Marcus

---

Looking for last minute shopping deals? Find them fast with Yahoo! Search.

**Attachments**

Files:

📎 **David_Strasberg_documents_to_authenticate.pdf** (104k)

# EX. H

At a Special Term, Part II of the
City Court, City of New York, County
of New York, at the County Court-
house, 52 Chambers Street, Borough
of Manhattan, City of New York, on
the 10th day of February, 1956.

PRESENT:

HON. BIRDIE AMSTERDAM,
Justice.

-------------------------------------------x

In the Matter of the Application of

    NORMA JEANE MORTENSON      Index No. 1564/1956

for leave to change her name to

    MARILYN MONROE.

-------------------------------------------x

    On reading and filing the Petition of NORMA JEANE
MORTENSON, duly verified the 10th day of February, 1956,
praying for leave for NORMA JEANE MORTENSON to assume the
name of MARILYN MONROE, and the applicant having been born

in the City of Lost Angeles, County of Los Angeles, State of

California,

    AND the Court being satisfied by said Petition

that the same is true and that there is no reasonable objec-

tion to the change of name proposed.

    NOW, THEREFORE, on motion of IRVING L. STEIN,

attorney for said Petitioner, it is

    ORDERED that upon compliance with this Order, the

said NORMA JEANE MORTENSON be and she hereby is authorized to

assume the name of MARILYN MONROE on the 12th day of March,

1956, and it is further

    ORDERED that the order be entered and with the

Petition hereto annexed be filed in the office of the Clerk

of this Court within ten (10) days after the signing hereof,

and a copy of this order be published in the New York Herald

Tribune, a newspaper published in the County of New York

at least once within twenty (20) days after the entry

Sworn to before me this

day of            19

MM-0000056

STATE OF NEW YORK,
COUNTY OF

of this Order, and that within ~~forty (40)~~ thirty (30) days after the making of this Order, the affidavit of publication thereof be filed ~~in~~ with the Clerk of this Court, and upon compliance with all of the provisions of this Order, and on and after the 12 day of March, 1956, the Petitioner, NORMA JEANE MORTENSON shall be known by the name of MARILYN MONROE, and by no other name, and it is further

ORDERED that within twenty (20) days after the signing hereof, that a copy of this Order be served upon Peter R. Leonardi, ~~plaintiff or Sweet, Reinitz, Peskin &~~ Sweet, the attorneys for the plaintiff, Peter R. Leonardi, in the action in the within Court entitled "Peter R. Leonardi, plaintiff against Marilyn Monroe Productions, Inc. and Marilyn Monroe, defendants" in accordance with Rule 20 of the Rules of Civil Practice

ENTER:

_____
J. C. C.

8993
# City Court of the City of New York
### NEW YORK COUNTY

_____ against _____

**Clerk's Office.**
City Court of The City of New York

I, James P. McDermott, Chief Clerk of the City Court of The City of New York, having compared the annexed_____ in the above-entitled action, with the original on file in this office, do certify that the same is a correct transcript therefrom and of the whole of said original.

In Witness Whereof, I have hereunto subscribed my name and affixed the Seal of the City Court of The City of New York, this 23 day of February 1956.

_____ Chief Clerk

Sworn to before me this
day of                    19

MM-0000057