UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------x

SHAW FAMILY ARCHIVES, LTD., EDITH MARCUS :
and META STEVENS,                                : 05 CV 3939 (CM)

                                       Plaintiffs,     :

                                              : **Honorable Colleen McMahon**

                       -against-               :

CMG WORLDWIDE, INC., an Indiana Corporation,   :
and MARILYN MONROE, LLC, a Delaware Limited   :
Liability Company,                               :
                                              :

                                  Defendants.    :

--------------------------------------------------------------------------x

### THE SHAW FAMILY'S RESPONSE TO MMLLC'S RULE 56.1 STATEMENT OF FACTS

      Plaintiff/Consolidated Defendant Shaw Family Archives, Ltd., Consolidated Defendant Bradford Licensing Associates, Plaintiff Edith Marcus, and Plaintiff Meta Stevens (the "Shaw Family"), pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Southern District of New York, respectfully submits the following Response to the Undisputed Statement of Facts of Marilyn Monroe LLC and CMG Worldwide, Inc. (the "Defendants").

      Defendants failed to cite evidence that supports its contentions, as required by Rule 56.1(d). Moreover, certain statements of Defendants contain faulty legal arguments or improper characterizations, and other statements require additional facts, information or testimony. Additionally, some of Defendants' Rule 56.1 Statement contains inadmissible evidence, and some statements do not contain relevant facts. Moreover, Defendants' statements of fact should be disregarded because they fail to respond to the Shaw Family's motion; that the Defendants are estopped from claiming that Marilyn Monroe died anything but a New York domiciliary.

      Defendants failed to serve the Shaw Family with numerous documents in which they rely upon, prior to the expiration of the close of discovery on December 31, 2007. The Shaw

Family respectfully requests that Defendants be precluded from using any document that was not exchanged prior to the completion of discovery. Defendants also failed to provide contention interrogatory responses to the Shaw Family's third demand for interrogatories dated November 1, 2007, and failed to supplement their responses to the Shaw Family's first and second set of interrogatories. The Shaw Family respectfully requests that Defendants be precluded from asserting any affirmative claim and defense, which were the subject of the Shaw Family's third demand for interrogatories and to which the Defendants failed to provide contention interrogatory responses. The Shaw Family respectfully requests that Defendants be precluded from relying on any document that was not exchanged prior to the discovery end date. Defendants did not timely produce documents starting with bates number MMLLC (SHAW) 00465.

The Shaw Family also objects to Defendant's reliance on documents allegedly obtained from an individual named Millington Conroy. The parties have agreed not to authenticate the Millington Conroy documents, identified by bates pre-fix MC. The parties have agreed to authenticate all documents exchanged prior to the discovery end date, except for the Millington Conroy production documents and an audio clip of Marilyn Monroe. (Second Declaration of David Marcus, dated March 27, 2008, ("Second Marcus Decl.") at ¶ 7, Ex. F. Despite the Shaw Family's good faith attempt to authenticate these documents, the Defendants failed to provide the Shaw Family with (i) any information regarding who created these documents; (ii) how Millington Conroy obtained these documents; (iii) when and how Mr. Conroy maintained the documents; (iv) where and how he stored them; (v); who maintained the documents before Mr. Conroy and (vi) how the Defendants obtained the documents from Mr. Conroy. (Second Marcus Decl., at ¶ 8, Ex. G.)

Defendants also claim new allegations and facts, in their Memorandum in Opposition and Rule 56.1 Statement, that were not previously alleged: (i) in their document production; (ii) in their interrogatory responses; and (iii) during the deposition of their 30(b)(6) witnesses. As such, the Shaw Family will be irreparably harmed if Defendants are permitted to rely on these new facts, allegations and documents as the Shaw Family was unable investigate these facts and allegations, cross-examine Defendants' witnesses and produce rebuttal documentation.

The Shaw Family respectfully requests that the Court strike or disregard Defendants' unsupported, inaccurate, inadmissible or argumentative and compulsory statements. See Hotz v. Rockefeller & Co., 258 F.3d 62, 73 (2nd Cir. 2001); Epstein v. Kemper Ins. Co., 210 F.Supp.2d 308 (S.D.N.Y 2002).

**The Shaw Family's Response to Defendants' Statement No. 1**

1.      The Shaw Family admits that Marilyn Monroe died on August 5, 1962 while she was working in California.  The Shaw Family objects to the use of the document relied upon by Defendants (Strauss Decl., Ex. 1).  Defendants did not produce this document prior to the close of discovery.

**The Shaw Family's Response to Defendants' Statement No. 2**

2.      The Shaw Family lacks sufficient information to either deny or admit the statement set forth by Defendants, except that the Shaw Family Admits that Marilyn Monroe was born Norma Jean Mortenson.  The Shaw Family objects to the use of the document relied upon by Defendants (Strauss Decl. Ex. 2) as the document has not been authenticated and is therefore inadmissible at trial as evidence.  Second Declaration of David Marcus, dated March 27, 2008, ("Second Marcus Decl.") Ex. F.

**The Shaw Family's Response to Defendants' Statement No. 3**

3.    This statement is not an undisputed fact, and is improperly contained herein, under Rule 56.1.  The Shaw Family lacks sufficient information to either deny or admit the statement set forth by Defendants.  Defendants failed to timely serve the Shaw Family with the documents set forth in Exhibits 6-10 to the Strauss Decl.  Defendants' statement is improper as it is conclusory and is based upon statements that are inadmissible hearsay, and should be disregarded.

**The Shaw Family's Response to Defendants' Statement No. 4**

4.    The Shaw Family admits that Marilyn Monroe's mother was domiciled in California, residing in a sanitarium in Verdugo City, California.  The document relied upon by Defendants to support this statement was Inez Melson's Petition for Special Letters of Administration, which actually states that Marilyn Monroe's mother "is a bona fide resident of the State of California, residing at a sanitarium in Verdugo City, California and is incompetent to handle her affairs."  (Marcus Decl., Ex. 2, at ¶ 3, SFA1 0260).  Defendants have therefore conceded that, according to California law at the time of Ms. Monroe's death, domicile was synonymous with residence.  (See Smith v. Smith, 45 Cal.2d 235, 239 (Cal. 1955); Estate of Brace, 180 Cal.App. at 787, 802 (Cal.App. 1960); Estate of Glassford, 114 Cal.App.2d 181, 186 (Cal. App. 1952); Estate of Philips, 269 Cal.App.2d 656, 659 (Cal. Ap. 1969)).

**The Shaw Family's Response to Defendants' Statement No. 5**

5.    The statements made in this paragraph are not an undisputed fact, and are improperly contained herein, under Rule 56.1.  The Shaw Family lacks sufficient information to either deny or admit the statements set forth by Defendants.  Defendants failed to timely serve the Shaw Family with the documents set forth in Exhibits 11, 12, 13 to the Strauss Decl.  The documents, which Defendants rely upon, contain statements that are inadmissible hearsay and

conjecture. Marilyn Monroe legally changed her name from Norma Jean Mortenson to Marilyn Monroe in New York Civil Court, on February 10, 1956. (Second Marcus Decl., ¶ 9, Ex. H at MM 0000056-57). Although Defendant cite to Sam Shaw's book, The Joy of Marilyn, the Shaw Family notes that a man named Jacques Chazaud, not Sam Shaw, was responsible for writing the biography that Defendants cite to. (Strauss Decl., Ex. 5, at 2).

**The Shaw Family's Response to Defendants' Statement No. 6**

6.     The Shaw Family lacks sufficient information to either deny or admit the statements set forth by Defendants, but the Shaw Family admits that Marilyn Monroe was married to James Dougherty and Joe DiMaggio. Defendants failed to timely serve the Shaw Family with the document attached as Exhibit 16 to the Strauss Decl. The documents that Defendants rely upon contain inadmissible hearsay, and should be disregarded.

**The Shaw Family's Response to Defendants' Statement No. 7**

7.     The statements made in this paragraph are not an undisputed fact, and are improperly contained herein, under Rule 56.1. The Shaw Family lacks sufficient information to either deny or admit the statements set forth by Defendants, except that Marilyn Monroe moved to New York in late 1954 or early 1955, and that when she came to New York, she started Marilyn Monroe Productions, Inc., with Milton Greene. The Shaw Family objects to Defendants reliance of Exhibit 17 to the Strauss Decl. as it contains inadmissible hearsay and double hearsay. Defendants reliance upon Exhibit 18 is misplaced as it neither proves the statement that Marilyn Monroe moved east to start a production company with Milton Greene, lived with Milton Greene or that their production company "broke up by February 1958." In fact, according to Marilyn Monroe Productions, Inc.'s tax records, the company was still

operating in New York at the time of Ms. Monroe's death in 1962. (Second Marcus Decl. at, Ex. ¶ 10, Ex. I at MM 0010428-10442).

**The Shaw Family's Response to Defendants' Statement No. 8**

8.    The statements made in this paragraph are not undisputed facts, and are improperly contained herein, under Rule 56.1. The Shaw Family lacks sufficient information to either deny or admit the statements set forth by Defendants except that Marilyn Monroe and Arthur miller were married in a civil ceremony, and religious ceremony, in New York in June or July of 1956. (Second Marcus Decl., ¶ 11, Ex. J, MM 0000056-57). Although Defendants cite to Sam Shaw's book, The Joy of Marilyn, the Shaw Family notes that a man named Jacques Chazaud, not Sam Shaw, wrote the biography of Marilyn Monroe. (Strauss Decl., Ex. 5, at 2). Defendants improperly rely upon, but did not timely produce the copy of Look Magazine contained in Ex. 21 at MMLLC (Shaw) 000557-568. The documents contained in Exs. 21 have not been authenticated and contain inadmissible hearsay. The documents, annexed as Exhibits 22-25, are allegedly part of a production from the files of an individual named Millington Conroy and have not been authenticated. (Second Marcus Decl. at ¶ 7, Ex. F).

**The Shaw Family's Response to Defendants' Statement No. 9**

9.    The statements made in this paragraph are not undisputed facts, and are improperly contained herein, under Rule 56.1. The Shaw Family lacks sufficient information to either deny or admit the statements set forth by Defendants except that Marilyn Monroe and Arthur Miller's marital residence was 444 E. 57th Street, New York, New York. (Declaration of David Marcus, dated February 14, 2008, ("Marcus Decl.") at ¶ 17, Ex. 16, MM 0009356). The documents contained at Exhibits 22-25 are allegedly part of a production allegedly from the files of an individual named Millington Conroy and are unauthenticated.    Defendants

6

improperly rely upon Exhibits 36-39 to prove that Marilyn Monroe paid taxes in California as they contain statements that are hearsay and double hearsay. For the years ending 1958, Ms. Monroe only paid resident state taxes in New York, totaling $13,684.43, and non-resident state taxes in California, totaling $4389.94. (Marcus Decl., Exs. 12 at MM 0000373; 13 at MM 0012407-12408). Defendants have not produced copies of any tax returns and the documents that Defendants rely upon show that Marilyn Monroe was a resident of New York in 1960. (Strauss Decl. Ex. 38). Marilyn Monroe executed numerous agreements, which contained her New York address. Exhibit 41 to the Strauss Decl. merely contains an unsigned motor vehicle operator's license from Connecticut and Exhibit 42 is a unsigned unauthenticated document produced in the Millington Conroy document production. Defendants have not provided any proof that Marilyn Monroe actually voted in Connecticut, and the document that the Defendants rely upon is not dispositive. (Marcus Decl. at Ex. 15 at MM 0057018). There is no proof that Marilyn Monroe ever voted. (Marcus Decl., Ex. 14, M 0051631).

**The Shaw Family's Response to Defendants' Statement No. 10**

10.    The Shaw Family admits this statement.

**The Shaw Family's Response to Defendants' Statement No. 11**

11.    The statements made in this paragraph are not undisputed facts, and are improperly contained herein, under Rule 56.1. The Shaw Family lacks sufficient information to either deny or admit the statements set forth by Defendants except at some point in 1961 Marilyn Monroe was committed to the Payne Whiney Institute in New York, and was subsequently released and admitted to Columbia Presbyterian Hospital, in New York. Defendants improperly rely upon Strauss Decl. Ex. 11 as the document therein was not exchanged during discovery.

**The Shaw Family's Response to Defendants' Statement No. 12**

12.    The statements made in this paragraph are not undisputed facts, are conclusory and are improperly contained herein, under Rule 56.1.  The Shaw Family denies the statement that Marilyn Monroe returned to California in April of 1961 as this statement improperly implies that Marilyn Monroe permanently left New York.  The Shaw Family objects to the unauthenticated document produced at Strauss Decl., Ex. 44 as it part of the Millington Conroy document production.

**The Shaw Family's Response to Defendants' Statement No. 13**

13.    The statements made in this paragraph are not undisputed facts, are conclusory and are improperly contained herein, under Rule 56.1.  The Shaw Family lacks sufficient information to either deny or admit the statements set forth by Defendants.  The Shaw Family objects to Defendants' reliance upon Strauss Decl., Ex. 6, Ex. 7, 45 and 46 as they are unauthenticated and are part of the Millington Conroy document production.

**The Shaw Family's Response to Defendants' Statement No. 14**

14.    The statements made in this paragraph are not undisputed facts, are conclusory and are improperly contained herein, under Rule 56.1.  The Shaw Family lacks sufficient information to either deny or admit the statements set forth by Defendants.  The Shaw Family objects to Defendants' reliance upon Strauss Decl., Exs. 44, 47–51, Ex. 27, as they are unauthenticated, are part of the Millington Conroy document production and contain statements that are inadmissible hearsay and double hearsay.

**The Shaw Family's Response to Defendants' Statement No. 15**

15.    The statements made in this paragraph are not undisputed facts, are conclusory and are improperly contained herein, under Rule 56.1.  The Shaw Family lacks sufficient

information to either deny or admit the statements set forth by Defendants. The Shaw Family objects to Defendants' reliance upon Strauss Decl., Exs. 27-34, as they are unauthenticated and are part of the Millington Conroy document production. The Shaw Family admits that any bank accounts Ms. Monroe had in California at the time of her death, were excluded from the value of her ancillary probate estate in California, but were included as part of the Estate of Marilyn Monroe's domiciliary New York gross estate. (Marcus Decl., Exs. 12 at MM 0000369; 17 at 2).

### The Shaw Family's Response to Defendants' Statement No. 16

16.    The statement made in this paragraph is not an undisputed fact, is conclusory and is improperly contained herein, under Rule 56.1. The Shaw Family lacks sufficient information to either deny or admit the statement set forth by Defendants. The Shaw Family objects to Defendants' reliance upon Strauss Decl., Ex. 52 because the Shaw Family was not provided with a copy of this document prior to the completion of discovery, nor did Defendants advise the Shaw Family that they would rely on this book in any interrogatory response. Moreover, Ex. 52 contains statements that are inadmissible hearsay and double hearsay.

### The Shaw Family's Response to Defendants' Statement No. 17

17.    The statement made in this paragraph is not an undisputed fact, is conclusory and is improperly contained herein, under Rule 56.1. The Shaw Family lacks sufficient information to either deny or admit the statement set forth by Defendants. The Shaw Family objects to Defendants' reliance upon Strauss Decl., Ex. 11 because the Shaw Family was not provided with a copy of this document prior to the completion of discovery, nor did Defendants advise that Shaw Family that they would rely on this book in any interrogatory response. Moreover, Ex. 11 contains statements that are hearsay and double hearsay in nature. The Shaw Family

objects to Defendants' reliance upon Strauss Decl., Exs. 29, 31, 33, 34, as they are unauthenticated and are part of the Millington Conroy document production. In 1966, Dr. Ralph Greenson stated that he encouraged Marilyn Monroe to buy a house in California and that "'[S]he said that she had no interest in remaining in California or making it her residence. She said that after her next picture she would go back to New York, which she considered her permanent home.'" (Second Marcus Decl. at ¶ 12, Ex. K, at 478)

### The Shaw Family's Response to Defendants' Statement No. 18

18.    The statement made in this paragraph is not an undisputed fact, is conclusory and is improperly contained herein, under Rule 56.1. The Shaw Family lacks sufficient information to either deny or admit the statement set forth by Defendants except that the Shaw Family admits that Marilyn Monroe departed her New York City domicile, located at 444 E. 57th Street, New York, New York, for California in September of 1961 for the purpose of filming a movie. (Marcus Decl., Ex. 16, MM 0009350-9360).    The Shaw Family further objects that this statement infers that May Reis permanently ceased working for Marilyn Monroe and that Marilyn Monroe permanently went to California. In fact, Marilyn Monroe's work visit to California was temporary (Id.). Further, May Reis was a beneficiary in Marilyn Monroe's will. (Marcus Decl., Ex. 1, at 1-2).

### The Shaw Family's Response to Defendants' Statement No. 19

19.    The statements made in this paragraph are not undisputed facts, are conclusory and are improperly contained herein, under Rule 56.1. The Shaw Family lacks sufficient information to either deny or admit the statements set forth by Defendants. Moreover, the Shaw Family objects to the statement set forth in this paragraph, as the Defendants do not state a specific time frame. The Shaw Family objects to Defendants' reliance upon Strauss Decl., Ex.

52 because the Defendants did not produce this document to Shaw Family prior to the completion of discovery, nor did Defendants advise that Shaw Family that they would rely on this book in any interrogatory response. Moreover, Ex. 52 contains statements that are inadmissible hearsay and double hearsay. The Shaw Family objects to Defendants' reliance upon Strauss Decl., Exs. 28, 53, 54, as they are unauthenticated and are part of the Millington Conroy document production.

### The Shaw Family's Response to Defendants' Statement No. 20

20.    The statements made in this paragraph are not undisputed facts, are conclusory and are improperly contained herein, under Rule 56.1. The Shaw Family lacks sufficient information to either deny or admit the statements set forth by Defendants. Moreover, the Shaw Family objects to the statements set forth in this paragraph, as the Defendants do not specify a time frame. The Shaw Family objects to Defendants' reliance upon Strauss Decl., Ex. 11 because the Shaw Family was not provided with a copy of this document prior to the completion of discovery, nor did Defendants advise that Shaw Family that they would rely on this book in any interrogatory response. Moreover, Ex. 11 contains statements that are inadmissible hearsay and double hearsay. The Shaw Family objects to Defendants' reliance upon Strauss Decl., Exs. 28-30, 55-57, as they are unauthenticated and are part of the Millington Conroy document production. While Marilyn Monroe was domiciled in New York, Inez Melson's role was to act as the conservator for Marilyn Monroe's mother. (Second Marcus Decl., at ¶¶ 13-14, Exs. L at MM 0012679-12682; M at MM 0009390). When Marilyn Monroe was in California filming *Something's Got to Give* in 1961-1962, she had very little contact with Inez Melson. (Strauss Decl. Ex. 57, at MC 0004053-4054). Marilyn Monroe also retained her housekeeper, Hattie Stephenson Amos, to daily clean her New York City domicile located at

444 E. 57th Street, New York, New York, until the day Ms. Monroe died.  (Marcus Decl., Exs. 15 at MM 0057018; MM 0009354).

### The Shaw Family's Response to Defendants' Statement No. 21

21.    The statements made in this paragraph are not undisputed facts, are conclusory and are improperly contained herein, under Rule 56.1.  The Shaw Family lacks sufficient information to either deny or admit the statements set forth by Defendants.  Moreover, the Shaw Family objects to the statements set forth in this paragraph, as the Defendants do not state a specific time frame in which Ms. Monroe allegedly obtained car insurance in California and gave away her car.  The Shaw Family objects to Defendants' reliance upon Strauss Decl., Ex. 58 because the Shaw Family was not provided with a copy of this document prior to the completion of discovery, nor did Defendants advise that Shaw Family that they would rely on this document in any interrogatory response.  Moreover, Ex. 58 contains statements that are hearsay and double hearsay in nature. The Shaw Family objects to Defendants' reliance upon Strauss Decl., Ex. 59, as it is unauthenticated and are part of the Millington Conroy document production.

### The Shaw Family's Response to Defendants' Statement No. 22

22.    The statements made in this paragraph are not undisputed facts, are conclusory and are improperly contained herein, under Rule 56.1.  The Shaw Family lacks sufficient information to either deny or admit the statements set forth by Defendants.  The Shaw Family objects to Defendants' reliance upon Strauss Decl., Ex. 62 because the Shaw Family was not provided with a copy of this document prior to the completion of discovery, nor did Defendants advise that Shaw Family that they would rely on this document in any interrogatory response.

The Shaw Family objects to Defendants' reliance upon Strauss Decl., Ex. 61, as it is unauthenticated and are part of the Millington Conroy document production.

### The Shaw Family's Response to Defendants' Statement No. 23

23.    The statements made in this paragraph are not undisputed facts, are conclusory and are improperly contained herein, under Rule 56.1.   The Shaw Family lacks sufficient information to either deny or admit the statements set forth by Defendants.   Moreover, the Shaw Family objects to Defendants' reliance upon Strauss Decl., Exs. 52, 65 because the Shaw Family was not provided with a copy of these documents prior to the completion of discovery, nor did Defendants advise that Shaw Family that they would rely on these documents in any interrogatory response.   Moreover, Strauss Decl. Exs. 52, 63-65 contain statements that are inadmissible hearsay and double hearsay.   When Marilyn Monroe died on August 5, 1962, her California house was sparsely furnished.   At the time of Marilyn Monroe's death in August of 1962, the combined value of Marilyn Monroe's furnishings, jewelry and clothing in her New York apartment was $12,480 while the value of the furnishings and clothing in her California house was $4,044.   (Marcus Decl. at Exs. 12 at MM 0000369; 13 at MM 0012407)

### The Shaw Family's Response to Defendants' Statement No. 24

24.    The statements made in this paragraph are not undisputed facts, are conclusory and are improperly contained herein, under Rule 56.1.   The Shaw Family lacks sufficient information to either deny or admit the statements set forth by Defendants. The Shaw Family objects to Defendants' reliance upon Strauss Decl., Exs. 30 and 66, as they are unauthenticated and are part of the Millington Conroy document production.   These documents also contain statements that are inadmissible hearsay.

### The Shaw Family's Response to Defendants' Statement No. 25

13

25.    The statements made in this paragraph are not undisputed facts, are conclusory and are improperly contained herein, under Rule 56.1.  The Shaw Family lacks sufficient information to either deny or admit the statements set forth by Defendants.  Moreover, the Shaw Family objects to Defendants' reliance upon Strauss Decl., Ex. 52 because the Shaw Family was not provided with a copy of this documents prior to the completion of discovery, nor did Defendants advise that Shaw Family that they would rely on this document in any interrogatory response.  Moreover, Strauss Decl. Ex. 52 contains statements that are inadmissible hearsay and double hearsay, and should be disregarded. The Shaw Family objects to Defendants' reliance upon Strauss Decl., Exs. 32 and 68, as they are unauthenticated and are part of the Millington Conroy document production.  These documents also contain statements that are inadmissible hearsay.

**The Shaw Family's Response to Defendants' Statement No. 26**

26.    The statements made in this paragraph are not undisputed facts, are conclusory and are improperly contained herein, under Rule 56.1.  The Shaw Family lacks sufficient information to either deny or admit the statements set forth by Defendants.  Moreover, Strauss Decl. Exs. 29, 30, 63 and 64 contain statements that are inadmissible hearsay and double hearsay in nature.  The Shaw Family objects to Defendants' reliance upon Strauss Decl., Exs. 32 and 68, as they are unauthenticated and are part of the Millington Conroy document production.

**The Shaw Family's Response to Defendants' Statement No. 27**

27.    The statements made in this paragraph are not undisputed facts, are conclusory and are improperly contained herein, under Rule 56.1.  The Shaw Family lacks sufficient information to either deny or admit the statements set forth by Defendants.  Moreover, the Shaw

Family objects to Strauss Decl. Exs. 38-34 as they contain statements that are inadmissible hearsay and double hearsay. The Shaw Family also objects to Defendants' reliance upon Strauss Decl., Exs. 28-34, as they are unauthenticated and are part of the Millington Conroy document production.

**The Shaw Family's Response to Defendants' Statement No. 28**

28.    The statements made in this paragraph are not undisputed facts, are conclusory and are improperly contained herein, under Rule 56.1. The Shaw Family lacks sufficient information to either deny or admit the statements set forth by Defendants except that the Shaw Family denies any suggestion that Marilyn Monroe changed her permanent residence/domicile from New York, to California. (Marcus Decl, Ex. 16, MM 0009350-9360). The Shaw Family also objects to these statements, as Defendants have not provided a time frame for these statements. Moreover, the Shaw Family objects to Defendants' reliance upon Strauss Decl., Exs. 67 and 69 because the Defendants did not provide the Shaw Family with a copy of these documents prior to the completion of discovery, nor did Defendants advise that Shaw Family that they would rely on these document in any interrogatory response. Moreover, Strauss Decl. Exs. 17, 57, 64, 67, 69-71 contain statements that are inadmissible hearsay and double hearsay in nature. The Shaw Family objects to Defendants' reliance upon Strauss Decl., Exs. 57, 70-71, as they are unauthenticated and are part of the Millington Conroy document production. According to Donald Spoto's book, *Marilyn Monroe: The Biography*, a book that Defendants cite to, Marilyn Monroe's psychiatrist, Dr. Ralph Greenson, selected Eunice Murray as Marilyn Monroe's house keeper, a choice which Mr. Spoto called "the unwisest choice of his life." (Second Marcus Decl., at ¶ 12, Ex. K at 478). Eventually, Marilyn "resented Eunice's prying

15

and her obvious function as the doctor's 'plant.'" (Id. at 482.) The Court should disregard any statements attributed to Ms. Eunice Murray.

### The Shaw Family's Response to Defendants' Statement No. 29

29.    The statements made in this paragraph are not undisputed facts, are conclusory and are improperly contained herein, under Rule 56.1.  The Shaw Family lacks sufficient information to either deny or admit the statements set forth by Defendants, except the Shaw Family denies any suggestion by Defendants that Marilyn Monroe changed her permanent residence/domicile from New York, to California.  The Shaw Family also objects to these statements as Defendants have failed to provide a time frame in which Ms. Monroe allegedly changed her personal and business address. Moreover, Strauss Decl. Exs. 41, 42, 68, 72-75 contain statements that are inadmissible hearsay and double hearsay.  The Shaw Family objects to Defendants' reliance upon Strauss Decl., Exs. 42, 68, 72-75, as they are unauthenticated and are part of the Millington Conroy document production.

### The Shaw Family's Response to Defendants' Statement No. 30

30.    The statements made in this paragraph are not undisputed facts, are conclusory and are improperly contained herein, under Rule 56.1.  The Shaw Family lacks sufficient information to either deny or admit the statements set forth by Defendants.  The Shaw Family objects to Defendants' use of Strauss Decl. Ex. 76 as it contains statements that are inadmissible hearsay and double hearsay.  The Shaw Family objects to Defendants' reliance upon Strauss Decl., Ex. 76, as it is unauthenticated and are part of the Millington Conroy document production.

### The Shaw Family's Response to Defendants' Statement No. 31

31.    The statements made in this paragraph are not undisputed facts, are conclusory and are improperly contained herein, under Rule 56.1. The Shaw Family denies this statement, but admit that Mickey Rudin, of the California law firm of Gang, Tyre, Rudin & Brown represented Marilyn Monroe in some matters in California. The Shaw Family further objects to these statements as Defendants failed to identify a time frame in which Mickey Rudin allegedly replaced Aaron Frosch as her attorney. Moreover, the Shaw Family objects to Defendants' reliance upon Strauss Decl. Exs. 35, 77-79 as these documents contain statements that are inadmissible hearsay and double hearsay. The Shaw Family objects to Defendants' reliance upon Strauss Decl., Exs. 35, 77-79, as they are unauthenticated and are part of the Millington Conroy document production.  In fact, Aaron Frosch hired the firm of Gang, Tyre, Rudin & Brown as his attorney in the California Ancillary Probate, and Defendants have not produced any evidence that Mickey Rudin objected to his firm's role in determining that Marilyn Monroe died a New York domiciliary. (Marcus Decl., Exs. 10, 13, 16, 26).

**The Shaw Family's Response to Defendants' Statement No. 32**

32.    The statement made in this paragraph is not undisputed fact, is conclusory and is improperly contained herein, under Rule 56.1. The Shaw Family lacks sufficient information to either deny or admit the statement set forth by Defendants. The Shaw Family further objects to these statements as Defendants failed to identify a time frame in which Marilyn Monroe allegedly hired Jack Ostrow, as an accountant.  Moreover, the Shaw Family objects to Defendants' reliance upon Strauss Decl. Exs. 35, 80-82 as these documents contain statements that are inadmissible hearsay and double hearsay in nature. The Shaw Family objects to Defendants' reliance upon Strauss Decl., Exs. 35, 80, as they are unauthenticated and are part of the Millington Conroy document production.  Marilyn Monroe filed New York resident state

17

tax returns from 1958-1962 and California non-resident state returns from 1959-1962. (Strauss Decl, Ex. 81, Marcus Decl., at Exs. 12 at MM 0000373; 13 at MM0012407-8; 16 at MM 009351).

### The Shaw Family's Response to Defendants' Statement No. 33

33.    The statement made in this paragraph is not undisputed fact, is conclusory and is improperly contained herein, under Rule 56.1. The Shaw Family lacks sufficient information to either deny or admit the statement set forth by Defendants. Moreover, the Shaw Family objects to Defendants' reliance upon Strauss Decl. Exs. 35, 83-86, as these documents contain statements that are inadmissible hearsay and double hearsay in nature. The Shaw Family objects to Defendants' reliance upon Strauss Decl., Exs. 35, 83-86, as they are unauthenticated and are part of the Millington Conroy document production. Marilyn Monroe considered her New York apartment to be her permanent residence, and was only in California for the purpose of filming *Somethings Got to Give*. (Marcus Decl., Ex. 16 at MM 0009350-9360, Second Marcus Decl., at ¶ 12 Ex. K, at 478)

### The Shaw Family's Response to Defendants' Statement No. 34

34.    The statement made in this paragraph is not undisputed fact, is conclusory and is improperly contained herein, under Rule 56.1. The Shaw Family lacks sufficient information to either deny or admit the statement set forth by Defendants. Moreover, the Shaw Family objects to Defendants' reliance upon Strauss Decl. Exs. 87, as this document contains statements that are inadmissible hearsay and double hearsay. The Shaw Family objects to Defendants' reliance upon Strauss Decl., Ex. 87, as it is unauthenticated and is part of the Millington Conroy document production. The Shaw Family denies that Marilyn Monroe intended her stay in

California to be permanent.  (Marcus Decl., Ex. 16 at MM 0009350-9360, Second Marcus

Decl., at ¶ 12 Ex. K, at 478)

### The Shaw Family's Response to Defendants' Statement No. 35

35.    The statements made in this paragraph are not undisputed facts, are conclusory

and are improperly contained herein, under Rule 56.1.  The Shaw Family lacks sufficient

information to either deny or admit these statements set forth by Defendants, except that Shaw

Family admits that Marilyn Monroe went to California expressly for the purpose of filming

*Somethings Got to Give*.  The Shaw Family admits that the producers of *Somethings' Got to*

*Give* fired her and that she fought to get her job back.  (Second Marcus Decl., at ¶ 12, Ex. K at

546-547).  The Shaw Family objects to Defendants use of Strauss Decl. Ex. 62 because

Defendants did not produce it prior to the completion of discovery.  Moreover, the Shaw Family

objects to Defendants' reliance upon Strauss Decl. Exs. 11, 62, 88-90, as these documents

contain statements that are inadmissible hearsay and double hearsay.  The Shaw Family objects

to Defendants' reliance upon Strauss Decl., Ex.  80, as it is unauthenticated and is part of the

Millington Conroy document production.

### The Shaw Family's Response to Defendants' Statement No. 36

36.    The statements made in this paragraph are not undisputed facts, are conclusory

and are improperly contained herein, under Rule 56.1.  The Shaw Family lacks sufficient

information to either deny or admit the statements set forth by Defendants.  The Shaw Family

objects to Defendants reliance upon Strauss Decl. Ex. 92 as this document was not produced

prior to the end of discovery and Defendants did not advise the Shaw Family that they would

rely upon this document in any interrogatory response.  Moreover, the Shaw Family objects to

Defendants' reliance upon Strauss Decl. Ex. 92, as this documents contains statements that are

inadmissible hearsay and double hearsay. The Shaw Family objects to Defendants' reliance upon Strauss Decl., Ex. 91, as it is unauthenticated and are part of the Millington Conroy document production.

### The Shaw Family's Response to Defendants' Statement No. 37

37.    The statements made in this paragraph are not undisputed fact, are conclusory, irrelevant and are improperly contained herein, under Rule 56.1. The Shaw Family lacks sufficient information to either deny or admit the statements set forth by Defendants. The Shaw Family objects to Defendants reliance upon Strauss Decl. Ex. 93 as this document was not produced prior to the end of discovery and Defendants did not advise the Shaw Family that they would rely upon this document in any interrogatory response. Moreover, the Shaw Family objects to Defendants' reliance upon Strauss Decl. Exs. 93-96, as these documents contain statements that are inadmissible hearsay and double hearsay. The Shaw Family objects to Defendants' reliance upon Strauss Decl., Exs. 94-95 as they are unauthenticated and are part of the Millington Conroy document production.

### The Shaw Family's Response to Defendants' Statement No. 38

38.    The statement made in this paragraph is not undisputed fact, is conclusory, irrelevant and is improperly contained herein, under Rule 56.1. The Shaw Family lacks sufficient information to either deny or admit the statements set forth by Defendants, except that the Shaw Family admits that Marilyn Monroe is buried in California. Moreover, the Shaw Family objects to Defendants' reliance upon Strauss Decl. Ex. 97, as this document contains statements that are inadmissible hearsay and double hearsay in nature. The Shaw Family objects to Defendants' reliance upon Strauss Decl., Ex. 97 because it is unauthenticated and is part of the Millington Conroy document production.

### The Shaw Family's Response to Defendants' Statement No. 39

39.    This statement is not an undisputed fact, and is improperly contained herein, under Rule 56.1.  However, the Shaw Family admits that Aaron Frosch was named as executor in Ms. Monroe's will and served as the executor and trustee of the Estate of Marilyn Monroe from 1962 to his death in 1989.    (Marcus Decl., Exs. 5 at MM 0001497-1498; 33 at MM 0000025).

### The Shaw Family's Response to Defendants' Statement No 40

40.    The statement made in this paragraph is not undisputed fact, is conclusory, irrelevant and is improperly contained herein, under Rule 56.1.  The Shaw Family lacks sufficient information to either deny or admit the statements set forth by Defendants, except that, upon information and belief, MMLLC is a Delaware corporation formed in 2001 to protect the assets of the Estate of Marilyn Monroe and that Anna Strasberg and Anna Freud Centre own the same percentage interest in MMLLC that they had in the Estate of Marilyn Monroe. (Marcus Decl., Ex. 59 at MM 0003743-3744).

### The Shaw Family's Response to Defendants' Statement No 41

41.    These statements are not undisputed facts, are conclusory and irrelevant and are improperly contained herein, under Rule 56.1.  The Shaw Family lacks sufficient information to either deny or admit the statements set forth by Defendants.  Moreover, this statement is irrelevant to Marilyn Monroe's domicile or the fact that Defendants are estopped from claiming that Marilyn Monroe died anything but a New York domiciliary.

### The Shaw Family's Response to Defendants' Statement No 42

42.    This statement is not an undisputed fact, and is improperly contained herein, under Rule 56.1.  The Shaw Family denies this statement, but admits that Marilyn Monroe

named May Reis, Lee Strasberg and Dr. Marianne Kris as the beneficiaries to her residuary estate. (Marcus Decl., Ex. 1, at 2-3).

**The Shaw Family's Response to Defendants' Statement No 43**

43.    This statement is not an undisputed fact, is irrelevant and is improperly contained herein, under Rule 56.1.  However, the Shaw Family admits that Aaron Frosch submitted an affidavit to the New York Surrogate's Court stating that Lee Strasberg claimed ownership to Tom Kelley's transparencies. (Strauss Decl., Ex. 98).  As Aaron Frosch did not know whether Marilyn Monroe owned the transparencies at the time of her death, or if they were on loan from Tom Kelley, Mr. Frosch asked the court to decide who owned the transparencies. (Id.) Mr. Strasberg never objected to Mr. Frosch's abilities or actions as the executor of the Estate of Marilyn Monroe.

**The Shaw Family's Response to Defendants' Statement No 44**

44.    This statement is not an undisputed fact, and is improperly contained herein, under Rule 56.1.  However, the Shaw Family admits Dr. Marianne Kris objected to Mr. Frosch's failure to take advantage of certain tax credits, although the New York Surrogates Court did not make a decision on the objection.  Notably, Dr. Marianne Kris did not object to Aaron Frosch's decision to have Marilyn Monroe deemed a non-resident (non-domiciliary) of California in the California Tax proceedings. (Strauss Decl., Ex. 99, Marcus Decl., Exs. 26, 32).  Aaron Frosch was not removed as the executor of the Estate of Marilyn Monroe until he died. (Marcus Decl., Exs. 33, 60 at MM 0002790 at ¶ 3).  The Shaw Family is unable to admit or deny the statement that Aaron Frosch paid approximately $350,000 out of his own funds; the document produced at Strauss Decl., Ex. 100 is not fully executed and there is no other proof that Mr. Frosch made this payment.

**The Shaw Family's Response to Defendants' Statement No 45**

45.    This statement is not an undisputed fact, and is improperly contained herein, under Rule 56.1. However, the Shaw Family admits that the Anna Freud Centre was the beneficiary of Dr. Marianne Kris' 25% interest in the Marilyn Monroe residuary estate. The Shaw Family lacks sufficient information to either deny or admit the Statement that the Anna Freud Centre had no involvement in Estate of Marilyn Monroe prior to Dr. Marianne Kris' death. There is no indication that Dr. Marianne Kris, Anna Freud Centre's predecessor in interest, was not given notice of all relevant probate proceedings. (Marcus Decl., at Exs. 2, 3, 4, 5, 6, 24, 25, 26, 27, 31, 32). In fact, Dr. Kris opposed Aaron Frosch's petition for an accounting. (Marcus Decl., at Exs. 31, 32).

**The Shaw Family's Response to Defendants' Statement No 46**

46.    This statement is not an undisputed fact, and is improperly contained herein, under Rule 56.1. However, the Shaw Family admits that the Anna Strasberg married Lee Strasberg and was named executor of his Estate upon his death. The Shaw Family lacks sufficient information to either deny or admit the Anna Strasberg had no involvement with the Monroe estate until 1982, when Lee Strasberg died. There is no indication that Lee Strasberg, Anna Strasberg's predecessor in interest, was not given notice of all relevant probate proceedings. (Marcus Decl., at Exs. 2, 3, 4, 5, 6, 24, 25, 26, 27, 31, 32). In fact, Anna Strasberg, as the Administratrix of the Estate of Marilyn Monroe, adopted Mr. Frosch's position that Marilyn Monroe died a New York domiciliary and never once officially stated in writing that Marilyn Monroe was anything but a domiciliary or resident of New York. (Marcus Decl., at Exs. 34, 36, 41, 44, 61)

**The Shaw Family's Response to Defendants' Statement No 47**

47.    These statements are not undisputed facts, and is improperly contained herein, under Rule 56.1.  The Shaw Family denies these statements.  In the Anna Freud Centre's Answer to the petition seeking the construction of the will of Marilyn Monroe, the Anna Freud Centre admitted that Marilyn Monroe died a domiciliary of New York. (Marcus Decl., Exs. 35 at ¶ 3, MM 0004364: 36 at ¶ 3, MM 0007335).  In that proceeding, the Anna Freud Centre was ably represented by Paul, Weiss, Rifkind, Wharton & Garrison. ( Marcus Decl., Ex. 36).  In fact, the Anna Freud Centre was successful in obtaining an order from the Surrogate's Court that, based upon New York State law, it was the beneficiary to Dr. Marianne Kris' rights in the Marilyn Monroe residuary estate.    (Marcus Decl.,  Ex. 39 at MM 0005583-5588, MM 0005157-5164.)

**The Shaw Family's Response to Defendants' Statement No 48**

48.    These statements are not undisputed facts, are conclusory and are improperly contained herein, under Rule 56.1.  However, the Shaw Family admits that the Surrogate's Court issued an order, dated June 19, 2001, which authorized Anna Strasberg, as the Administratrix of the Estate of Marilyn Monroe, to close the estate and transfer the estate's assets to a limited liability company.

**The Shaw Family's Response to Defendants' Statement No 49**

49.    These statements are not undisputed facts, are conclusory and are improperly contained herein, under Rule 56.1.  However, the Shaw Family lacks sufficient information to either deny or admit the statements set forth by Defendants.  The Shaw Family also objects to this statement to the extent that Defendants improperly infer that they own a right of publicity in Marilyn Monroe, by virtue of the fact that the Estate of Marilyn Monroe may have submitted schedules showing payments received by the estate from licensees, who licensed Marilyn

Monroe's right of publicity from the estate's licensing agent. If anything, this statement proves that the Estate of Marilyn Monroe, and MMLLC, have been improperly demanding licensing fees, pertaining to a right it never owned, for decades. The Shaw Family notes that the document that Defendants rely upon to support this statement (Strauss Decl., Ex. 101) is not bate stamped, and the Shaw Family not aware if this document was produced by Defendants' prior to the close of discovery.

**The Shaw Family's Response to Defendants' Statement No 50**

50.    These statements are not undisputed facts, are conclusory, are irrelevant and are improperly contained herein, under Rule 56.1. However, the Shaw Family admits that Anna Strasberg, as the Administratrix of the Estate of Marilyn Monroe, filed a petition, dated October 18, 2000, with the New York Surrogate's Court.

**The Shaw Family's Response to Defendants' Statement No 51**

51.    These statements are not undisputed facts, are conclusory, are irrelevant and are improperly contained herein, under Rule 56.1. The Shaw Family also objects to this statement to the extent that Defendants improperly infer that they own a right of publicity in Marilyn Monroe by virtue of the fact that the Estate of Marilyn Monroe may have claimed "royalties from the licensing of the Decedent's name, likeness and signature." If anything, this statement proves that the Estate of Marilyn Monroe, MMLLC, and CMG improperly demanded licensing fees, pertaining to a right they never owned, for decades.

**The Shaw Family's Response to Defendants' Statement No 52**

52.    These statements are not undisputed facts, are conclusory, are irrelevant and are improperly contained herein, under Rule 56.1. However, the Shaw Family only admits to the statement that the New York Surrogate's Court issued a decree authorizing Anna Strasberg, as

the Administratrix of the Estate of Marilyn Monroe, to transfer the estate's assets to a limited liability company. The Shaw Family objects to the remainder of this statement to the extent that Defendants improperly infer that they own a right of publicity in Marilyn Monroe by virtue of the fact that the Court's decree may have included income derived from the exploitation of Marilyn Monroe's name and likeness. If anything, this statement proves that the Estate of Marilyn Monroe, MMLLC and CMG, improperly demanded licensing fees, pertaining to a right they never owned, for decades.

### The Shaw Family's Response to Defendants' Statement No 53

53.   These statements are not undisputed facts, are conclusory, are irrelevant and are improperly contained herein, under Rule 56.1. The Shaw Family denies that Aaron Frosch elected to probate Marilyn Monroe's will in New York because he was a resident and domiciliary of New York. In fact, Marilyn Monroe's will was probated in New York because her permanent residence was located in New York. (Marcus Decl., Exs. 13, 16).

### The Shaw Family's Response to Defendants' Statement No 54

54.   These statements are not undisputed facts, are conclusory, are irrelevant and are improperly contained herein, under Rule 56.1. However, the Shaw Family admits that the New York Surrogate's Decree did not state whether Marilyn Monroe was a resident or domiciliary of New York. Defendants never produced to the Shaw Family a copy of Aaron Frosch' notice of probate, nor could the Shaw Family locate a complete copy of the Notice of Probate in the New York Surrogate's Court file. The California Superior Court did find, on January 31, 1963 Marilyn Monroe was a resident of York.   (Marcus Decl., Ex. 7, SFA1 0231).   In 1963 California probate matters, the term "resident" was synonymous with "domicile." (See Smith v. Smith, 45 Cal.2d 235, 239 (Cal. 1955); Estate of Brace, 180 Cal.App. at 787, 802 (Cal.App.

1960); Estate of Glassford, 114 Cal.App.2d 181, 186 (Cal. App. 1952); Estate of Philips, 269 Cal.App.2d 656, 659 (Cal. Ap. 1969)). In its January 31, 1963 order, the California Superior Court held that Marilyn Monroe died a New York domiciliary.

### The Shaw Family's Response to Defendants' Statement No 55

55.     These statements are not undisputed facts, are conclusory, are irrelevant and are improperly contained herein, under Rule 56.1. However, the Shaw Family admits that Inez Melson filed a petition to be appointed Special Administratrix of the Estate of Marilyn Monroe, in the California Superior Court, which stated that Marilyn Monroe was either a resident of New York or California, and that the Court granted her petition. (Marcus Decl., Exs. 2, 3). In Aaron Frosch's subsequent petition for probate of a foreign will in the California Superior Court, Mr. Frosch stated that Marilyn Monroe was domiciled in New York and the California Superior Court adopted Mr. Frosch's statement and found that Ms. Monroe was a resident of the State of New York. (Marcus Decl., Exs. 6, at SFA1 0222; 7 SFA1 0231)

### The Shaw Family's Response to Defendants' Statement No 56

56.     These statements are not undisputed facts, are conclusory, are irrelevant and are improperly contained herein, under Rule 56.1. However, the Shaw Family admits that the firm Gang, Tyre, Rudin & Brown represented Aaron Frosch in his capacity as ancillary executor of the Estate of Marilyn Monroe in California. According to defendants, Mickey Rudin of Gang, Tyre, Rudin & Brown represented Marilyn Monroe while she was alive. (See Defendants' Additional Material Facts at ¶ 31).

### The Shaw Family's Response to Defendants' Statement No 57

57.     This statement is not an undisputed fact, and is improperly contained herein, under Rule 56.1. However, the Shaw Family admits that attorneys for Aaron Frosch, the

executor of the Estate of Marilyn Monroe spoke to various people who knew Marilyn Monroe, including May Reis, Hattie Stephenson Amos, Ralph Roberts and Patricia Newcomb, to determine where Ms. Monroe considered her permanent residence to be. (Marcus Decl. Exs. 14, 15; Strauss Decl., at Exs. 103, 104, 105). Even Dr. Ralph Greenson believed that Marilyn Monroe considered New York to be her permanent residence. (Second Marcus Decl., at ¶ 12, Ex. K, at 478). The Shaw Family further admits that Aaron Frosch's attorneys prepared the affidavits concerning residence for May Reis, Hattie Stephenson Amos, Ralph Roberts and Patricia Newcomb, which they all signed under oath, under the penalty of perjury. (Marcus Decl., Exs, 14, 15, 16; Strauss Decl., Exs. 103, 104, 105). The Shaw Family objects to Defendants reliance upon Strauss Decl. Ex. 106 as it was not produced to the Shaw Family prior to the end of discovery.

**The Shaw Family's Response to Defendants' Statement No 58**

58.   This statement is not an undisputed fact, and is improperly contained herein, under Rule 56.1. However, the Shaw Family lacks sufficient information to either deny or admit the statements set forth by Defendants. Moreover, the Shaw Family objects to Defendants reliance upon Strauss Decl. Ex. 106 as it was not produced to the Shaw Family prior to the end of discovery and has not been authenticated.

**The Shaw Family's Response to Defendants' Statement No 59**

59.   This statement is not an undisputed fact, contains improper attorney conjecture and is improperly contained herein, under Rule 56.1. However, the Shaw Family lacks sufficient information to either deny or admit the statement set forth by Defendants.

**The Shaw Family's Response to Defendants' Statement No 60**

28

This page filed separately under seal, pursuant to protective order.

This page filed separately under seal, pursuant to protective order.

64.    The statements made in this paragraph are not undisputed fact, are conclusory, irrelevant and are improperly contained herein, under Rule 56.1.  However, The Shaw Family lacks sufficient information to either deny or admit the statements set forth by Defendants. The Shaw Family objects to Defendants reliance upon Strauss Decl. Exs. 12 and 13 as these documents were not produced prior to the end of discovery and Defendants did not advise the Shaw Family that they would rely upon these documents in any interrogatory response. Moreover, the Shaw Family objects to Defendants' reliance upon Strauss Decl. Exs. 12, 13, 25 as these documents contain statements that are inadmissible hearsay and double hearsay.  The Shaw Family objects to Defendants' reliance upon Strauss Decl., Ex. 35 as it is unauthenticated and is part of the Millington Conroy document production.  Marilyn Monroe went to California in September or October of 1961 to work on a film and filming was delayed till April of 1962 as the result of delays caused by script re-writes, illness and personnel changes.  (Marcus Decl., Ex. 16, at MM 0009350-9360; Second Marcus Decl., at ¶ 12, Ex. K, at 472-476, 478, 498-499, 503, 506, 509-510).

**The Shaw Family's Response to Defendants' Statement No 65**

65.    The statements made in this paragraph are not undisputed facts, are conclusory, irrelevant and are improperly contained herein, under Rule 56.1.  However, the Shaw Family admits that Marilyn Monroe considered her New York apartment to be her primary residence and intended to leave her California home as soon as she was done filming *Somethings Got to Give.* (Marcus Decl., Ex. 16, at MM 0009350-9360)

**The Shaw Family's Response to Defendants' Statement No 66**

66.    The statements made in this paragraph are not undisputed facts, are conclusory, irrelevant and are improperly contained herein, under Rule 56.1.  However, the Shaw Family

lacks sufficient information to either deny or admit the statement set forth by Defendants, except that the Shaw Family denies the inference that Marilyn Monroe had changed her domicile from New York to California. Moreover, the Shaw Family objects to Defendants' reliance upon Strauss Decl. Exs. 17, 25-27, 63, as these documents contain statements that are inadmissible hearsay and double hearsay in nature. The Shaw Family objects to Defendants' reliance upon Strauss Decl., Exs.155-27 as they are unauthenticated and are part of the Millington Conroy document production. The Shaw Family also objects to the inference that the Sam Shaw wrote the text of *Marilyn Among Friends*. (Strauss Decl., Ex. 17). Norman Rosten, not Sam Shaw, wrote the text of this book, and Sam Shaw did not agree with some parts of the text. (Id., Ex. 17 at 3; Second Marcus Decl. at 16, Ex. O, SFA 01091).

### The Shaw Family's Response to Defendants' Statement No 67

67.    This statement is not an undisputed fact, and is improperly contained herein, under Rule 56.1. However, the Shaw Family admits that the California firm, Gang, Tyre, Rudin & Brown filed Aaron Frosch's Inheritance Tax Affidavit and the Affidavits Concerning Residence with the California Tax Inheritance Appraiser to determine Marilyn Monroe to be a non-resident of California, and a resident a of New York. (Marcus Decl., Ex. 16) In her cover letter to the Inheritance Tax Appraiser, Hermione Brown observed that since the estate was insolvent, the Inheritance Tax Appraiser should issue a no tax certificate. (Id. at MM 0009297). As a result of the efforts of Gang, Tyre, Rudin & Brown, the Inheritance Tax Appraiser deemed Marilyn Monroe to be a resident of New York. (Id., Ex. 17, at 2). Moreover, as a result of the efforts of Gang, Tyre, Rudin & Brown, not only did the California Tax Authorities not tax Ms. Monroe's intangible property, but also he removed Ms. Monroe's California bank accounts from the value of her California ancillary estate. (Id. at 1) After deductions, the total value of

the California ancillary estate was $36,144.22, and the Estate of Marilyn Monroe was only assessed $777.63 in taxes. In the California action in the Central District of California, titled Milton Greene Archives, Ltd. v. CMG Worldwide, Inc., et al., Index No.: 05-cv-2200, Defendants unsuccessfully argued that judicial estoppel does not apply in this instance because Aaron Frosch did not succeed with the California Tax Authorities. (Second Marcus Decl., at ¶ 2, Ex. A, at 45). Judge Morrow rejected Defendants' argument and held that Defendants are judicially estopped from claiming that Marilyn Monroe did not die a domiciliary of New York. (Id., at 45-64)

### The Shaw Family's Response to Defendants' Statement No 68

68.    This statement is not an undisputed fact, is conjecture and is improperly contained herein, under Rule 56.1. However, the Shaw Family lacks sufficient information to either deny or admit the statement set forth by the Defendants. Mickey Rudin's firm, Gang, Tyre, Rudin & Brown was instrumental in having Marilyn Monroe deemed to be a non-resident of New York. (Marcus Decl., Exs. 10, 14, 16, 26 at SFA1 0191-196, Strauss Decl., Ex. 108). The Shaw Family is unaware if Dr. Ralph Greenson ever signed an affidavit concerning residence, however Dr. Greenson believed that Marilyn Monroe considered New York to be her permanent residence. (Second Marcus Decl., at ¶ 12, Ex. K, p. 478)

### The Shaw Family's Response to Defendants' Statement No 69

69.    This statement is not an undisputed fact, is conjecture and is improperly contained herein, under Rule 56.1. However, the Shaw Family lacks sufficient information to either deny or admit the statement set forth by the Defendants. Defendants have no basis to claim that Inez Melson did not sign a similar affidavit concerning residence, or that she did not

agree to sign an affidavit. The Shaw Family objects to Defendants' reliance upon Strauss Decl., Ex. 108, as it is unauthenticated and are part of the Millington Conroy document production.

**The Shaw Family's Response to Defendants' Statement No 70**

70.    This statement is not an undisputed fact, is conjecture and is improperly contained herein, under Rule 56.1. However, the Shaw Family denies Defendants' insinuation that Aaron Frosch was not successful with the Inheritance Tax Appraiser. (Second Marcus Decl. at ¶ 2, Ex. A at 45-50). The California Inheritance Tax Appraiser adopted Mr. Frosch's argument that Marilyn Monroe was a resident of New York and a non-resident of California. (Marcus Decl., Ex. 17, at 2). Further, the Inheritance Tax Appraiser removed Ms. Monroe's intangible assets (her bank accounts) from the value of her California estate. (Id.) While the California Inheritance Tax Appraiser valued Ms. Monroe's California estate at $92,781 ($36,144.22 after deductions), the appraiser of Ms. Monroe's New York estate valued the New York domiciliary probate estate at $836,524.81 ($457,968.39 after total deductions). (Marcus Decl., Exs. 17 at 2; 20 at MM 000486)

**The Shaw Family's Response to Defendants' Statement No 71**

71.    This statement is not an undisputed fact, is conjecture and is improperly contained herein, under Rule 56.1. However, the Shaw Family admits that the California Inheritance Tax Appraiser's report did not include any intangible assets, such as royalty receipts, bank accounts, stock and life insurance policies. (Marcus Decl., Ex. 17 at 2). Aaron Frosch and the New York appraiser included intangible assets, such as royalty receipts, bank accounts, stock, Marilyn Monroe's share in a profit sharing plan and a life insurance payment in value of the New York gross estate. (Marcus Decl., Ex. 12 at MM 0000369-370; 20 at MM 0004846.)

### The Shaw Family's Response to Defendants' Statement No 72

72.    This statement is not an undisputed fact, is conjecture and is improperly contained herein, under Rule 56.1.  However, the Shaw Family admits that the New York estate tax appraiser valued Ms. Monroe's New York estate at $836,524.81, and that most of this amount consisted of Marilyn Monroe's royalty receipts from *Some Like it Hot* and the *Misfits*, Marilyn Monroe's share in a profit sharing plan, bank accounts, a refund from the New York State income tax authorities for the year 1962 and the value of her personal effects.  (Marcus Decl., Ex. 12 MM 0000369-370).  The Shaw Family advises that Defendants improperly adjoin MM 000002-7 with MM 000001 (See Ex. 110 to the Strauss Decl.).  Document MM 000001, the New York Surrogate's Order fixing the Monroe estate tax on the report of the appraiser, references the report of Milton Eletz, dated December 30th, 1969 (see Marcus Decl., Ex. 20), while MM 000002-7 is a document filed by Aaron Frosch on August 6, 1964.  (Strauss Decl., Ex. 110).

### The Shaw Family's Response to Defendants' Statement No 73

73.    This statement is not an undisputed fact, is conjecture and is improperly contained herein, under Rule 56.1.  However, the Shaw Family admits Aaron Frosch requested a tax clearance certificate from the California Franchise Tax Board in order to submit his final account to probate court.  (Marcus Dec., Ex. 23 at MM 000089).  The Shaw Family also admit that the Franchise Tax Board denied this request, but deny that it concluded that the Estate of Marilyn Monroe owed California income taxes on royalties it earned on *Some Like it Hot* and *The Misfits*.  In fact, the California Franchise Tax Board only assessed taxes on the income received from these pictures according to the percentage that the movies were filmed in California.  (Marcus Decl., E. 22 at MM0009213-4; 23 at MM 0000088).  The Shaw Family is

35

not aware of the percentage of the penalty that was assessed the Estate of Marilyn Monroe, but the Shaw Family admits that Aaron Frosch successfully negotiated the dramatic reduction of the estate's tax liability and tax penalties with the Franchise Tax Board. (Marcus Decl., Ex. 24 at SFA1 0242-43).

### The Shaw Family's Response to Defendants' Statement No 74

74.    This statement is not an undisputed fact, is conjecture and is improperly contained herein, under Rule 56.1.    However, the Shaw Family admits that Aaron Frosch appealed to the Board of Equalization to avoid taxation or, in the alternative, for a set-off because the State of New York already taxed all of the Estate of Marilyn Monroe's income.

### The Shaw Family's Response to Defendants' Statement No 75

75.    This statement is not an undisputed fact, is conjecture and is improperly contained herein, under Rule 56.1.    However, the Shaw Family admits that the Board of Equalization upheld the decision of the California Franchise Tax Board.  In its decision, the California Board of Equalization relied on the fact that Marilyn Monroe was a resident (domicile) of New York.  (Marcus Decl., Ex. 23 at MM 0000088, 93-94, 96)

### The Shaw Family's Response to Defendants' Statement No 76

76.    This statement is not an undisputed fact, is conjecture and is improperly contained herein, under Rule 56.1.    However, the Shaw Family admits that the California Board of Equalization ruled that the Estate of Marilyn Monroe was not entitled for a credit for taxes already paid to New York, because Ms. Monroe was not a resident of California. (Marcus Decl., Ex. 23 at MM 0000095).  As Judge Margaret Morrow of the Central District of California recently held, "resident," for the purpose of the tax proceedings, was synonymous with "domicile." (Second Marcus Decl., at ¶ 2, Ex. A, at 37-39).

**The Shaw Family's Response to Defendants' Statement No 77**

77.     This statement is not an undisputed fact, is conjecture and is improperly contained herein, under Rule 56.1.     There is no proof that any of the documents cited by Defendants are pre-printed forms, but the Shaw Family admits that the cited documents state that Marilyn Monroe died a resident of New York.     Moreover, Aaron Frosch and the New York tax appraiser submitted documents to the New York Surrogate's Court, which included Ms. Monroe's intangible assets in her gross New York estate.     (Marcus Decl., Exs. 12, 19, 20). These documents were accepted and adopted by the New York Surrogate's Court.     (Marcus Decl., Exs. 12, 19, 20, 21).     The inclusion of Ms. Monroe's intangible assets in her New York estate indicates that the New York Surrogates Court determined Marilyn Monroe to have died a domiciliary of the State of New York.     (Estate of Baer, No. 1387 CA 07-01455, 2007 N.Y. App. Div. Lexis 13008, *5 (Dec. 21, 2007), California v. Texas, 457 U.S. 164 (1982)).

**The Shaw Family's Response to Defendants' Statement No 78**

78.     This statement is not an undisputed fact, is conjecture and is improperly contained herein, under Rule 56.1.     However, the Shaw Family admits this statement, except that it denies Defendants' suggestion that the July 29, 1989 petition was recited in rote form.     In fact, since this petition was a construction of Ms. Monroe's will, the statement that Marilyn Monroe died a domiciliary of New York indicated to the Court that New York law applied to the construction of the will.     In fact, Anna Strasberg, as petitioner, only cited New York State cases and law in support of her argument.     (Marcus Decl., Exs. 35, 37).

**The Shaw Family's Response to Defendants' Statement No 79**

79.     This statement is not an undisputed fact, is conjecture and is improperly contained herein, under Rule 56.1.     However, the Shaw Family admits that Anna Strasberg's

petition, by order to show cause, sought a construction of Ms. Monroe's will "upon the grounds

that a construction s necessary to enable petitioner to determine the proper beneficiary, if any,

of the portion of the residuary Estate of Marilyn Monroe conditionally bequeathed by Monroe

to Marianne Kris…" (Marcus Decl., Ex. 35 at MM 0000242.)

### The Shaw Family's Response to Defendants' Statement No 80

80.    This statement is not an undisputed fact, is conjecture and is improperly

contained herein, under Rule 56.1.    However, the Shaw Family denies this statement, in part,

and admits this statement, in part.    The New York Surrogates Court granted petitioner's

application and constructed Ms. Monroe's will. (Marcus Decl., Ex. 39).    Although the Court

did not agree with petitioner's interpretation how the law should be applied, Ms. Strasberg, as

the Administratrix of the Estate of Marilyn Monroe, primarily argued that "…Petitioner cannot

fully perform her role as Administratrix c.t.a. of the Estate of Marilyn Monroe" until the Court

constructed Ms. Monroe's will, and Dr. Marianne' Kris' will, to determine the identity of

beneficiary of Dr. Kris' 25% interest in the Estate of Marilyn Monroe. (Marcus Decl., Ex. 35 at

MM 0004368).

### The Shaw Family's Response to Defendants' Statement No 81

81.    This statement is not an undisputed fact, is conjecture and is improperly

contained herein, under Rule 56.1.    However, the Shaw Family denies this statement because

New York law required the New York Surrogate's Court to apply the law of the State of Ms.

Monroe's domicile when constructing Ms. Monroe's will.    (In re Morgan Guarantee Trust Co.,

28 N.Y. 2d 155, 162, 320 N.Y.S.2d 905, 909 (N.Y 1971)). Anna Strasberg asserted that

Marilyn Monroe died a New York domiciliary and cited New York State law. (Marcus Decl.,

Exs. 35, 37). The New York Surrogate's Court's decision and decree were based exclusively on York State law. (Marcus Decl., Ex. 39).

### The Shaw Family's Response to Defendants' Statement No 82

82.    The Shaw Family admits these statements.

### The Shaw Family's Response to Defendants' Statement No 83

83.    This statement is not an undisputed fact, is conjecture and is improperly contained herein, under Rule 56.1.  However, the Shaw Family admits these statements.

### The Shaw Family's Response to Defendants' Statement No 84

84.    This statement is not an undisputed fact, is conjecture and is improperly contained herein, under Rule 56.1.   However, the Shaw Family admits these statements.  Ms. Miracle's amended complaint alleged that Marilyn Monroe died a domiciliary of California. (Marcus Decl., Ex. 46, at 2 at ¶ 4).

### The Shaw Family's Response to Defendants' Statement No 85

85.    These statements are not undisputed facts, are conjecture and are improperly contained herein, under Rule 56.1.   However, the Shaw Family admits that Anna Strasberg retained Milton Yasanuga, as local counsel in Hawaii.

### The Shaw Family's Response to Defendants' Statement No 86

86.    These statements are not undisputed facts, are conjecture and are improperly contained herein, under Rule 56.1.    However, the Shaw Family admits these statements. Moreover, Anna Strasberg argued that because Marilyn Monroe died a New York domiciliary, the Hawaii Court did not have personal jurisdiction. (Marcus Decl., Exs, 41, 45).

### The Shaw Family's Response to Defendants' Statement No 87

87.    This statement is not an undisputed fact, is conjecture and is improperly contained herein, under Rule 56.1.    However, the Shaw Family admits that because Anna Strasberg argued that Marilyn Monroe died a New York domiciliary, Nancy Miracle amended her complaint to claim that Marilyn Monroe died a domiciliary of California.    (Marcus Decl., Ex. 46, at 2 at ¶4.)

**The Shaw Family's Response to Defendants' Statement No 88**

88.    This statement is not an undisputed fact, is conjecture and is improperly contained herein, under Rule 56.1.    However, the Shaw Family admits that Anna Strasberg's attorneys' annexed a copy of the New York Surrogate's Court's decree admitting Marilyn Monroe's will to probate, to her motion to dismiss Ms. Miracle's complaint.    (Marcus Decl., Ex. 41, at Ex. D).

**The Shaw Family's Response to Defendants' Statement No 89**

89.    This statement is not an undisputed fact, is conjecture and is improperly contained herein, under Rule 56.1.    However, the Shaw Family admits that Anna Strasberg opposed Nancy Miracle's motion for an adjournment of the motion to dismiss in order to complete discovery because the issue of Marilyn Monroe's domicile was moot.    (Marcus Decl. Ex. 44, at 4).    Anna Strasberg argued that Ms. Monroe was domiciled in New York.    (Id.)

**The Shaw Family's Response to Defendants' Statement No 90**

90.    This statement is not an undisputed fact, is conjecture and is improperly contained herein, under Rule 56.1.    The Shaw Family denies this statement as Nancy Miracle's attorney previously stated that Marilyn Monroe may not have been domiciled in New York. (Marcus Decl., at Ex. 42, at SFA1 0029).    Regardless of what Mr. Yasanuga stated on November 24, 1992, the Hawaii Federal Court used the fact that Ms. Monroe was domiciled in

New York as a factor in holding that the court lacked personal jurisdiction over Anna Strasberg. (Marcus Decl., Ex. 49, at 8).

### The Shaw Family's Response to Defendants' Statement No 91

91.    This statement is not an undisputed fact, is conjecture and is improperly contained herein, under Rule 56.1.  However, the Shaw Family admits that the court agreed with Milton Yasanuga, that Nancy Miracle was not entitled to a an adjournment of the motion to dismiss to obtain discovery.  (Marcus Decl, at Ex. 45 at 18-19.)

### The Shaw Family's Response to Defendants' Statement No 92

92.    The Shaw Family admits this statement.

### The Shaw Family's Response to Defendants' Statement No 93

93.    This statement is not an undisputed fact, is conjecture and is improperly contained herein, under Rule 56.1.  However, the Shaw Family admits that Nancy Miracle claimed that Marilyn Monroe was a California domiciliary because Ms. Monroe worked in California in the entertainment industry, brought and resided in a home in California, voted in California, died in California, is buried in California…"  (Marcus Decl, at Ex. 47 at 3-4).

### The Shaw Family's Response to Defendants' Statement No 94

94.    This statement is not an undisputed fact, is conjecture and is improperly contained herein, under Rule 56.1.  However, the Shaw Family admits that Anna Strasberg's reply memorandum stated that Nancy Miracle's complaint was barred by the statute of limitations, lack of personal jurisdiction and that Nancy Miracle failed to state a claim.  (Strauss Decl., Ex. 117)

### The Shaw Family's Response to Defendants' Statement No 95

95.    This statement is not an undisputed fact, is conjecture and is improperly contained herein, under Rule 56.1.  However, the Shaw Family admits that at a December 1, 1992 hearing, Anna Strasberg's attorney argued that Nancy Miracle's amended complaint failed to plead fraud with particularity, was barred by the statute of limitations and that personal jurisdiction did not exist. (Marcus Decl., Ex. 48 at SFA1 0070-72)

**The Shaw Family's Response to Defendants' Statement No 96**

96.    This statement is not an undisputed fact, is conjecture and is improperly contained herein, under Rule 56.1.  However, the Shaw Family admits that the Hawaii federal court dismissed Ms. Miracle's complaint because of lack of jurisdiction, and because Nancy Miracle failed to state a cause of action according to New York's pretermitted statute. (Marcus Decl., Ex. 49).  The Hawaii federal Court held that Marilyn Monroe was domiciled in New York, and based on this fact, held that the court had no personal jurisdiction over Anna Strasberg and applied New York law to the matter.

**The Shaw Family's Response to Defendants' Statement No 97**

97.    This statement is not an undisputed fact, is conjecture and is improperly contained herein, under Rule 56.1.  However, the Shaw Family admits that the recited quote is from the order of the Hawaii federal court that dismissed Ms. Miracle's complaint.

**The Shaw Family's Response to Defendants' Statement No 98**

98.    This statement is not an undisputed fact, is conjecture and is improperly contained herein, under Rule 56.1.  However, the Shaw Family admits that Nancy Miracle's appeal was denied because the notice of appeal was filed while a motion for reconsideration was pending. (Marcus Decl., Ex. 55)  The Order of the Hawaii federal Court (Marcus Decl., Ex. 49) is now a final judgment and is no longer appealable.

42

**The Shaw Family's Response to Defendants' Statement No 99**

99.    This statement is not an undisputed fact, is conjecture and is improperly contained herein, under Rule 56.1.  However, the Shaw Family admits that Nancy Miracle subsequently filed a petition with the New York Surrogate's Court. (Second Marcus Decl. ¶ 5, Ex. D).  Nancy Miracle filed her application in New York because Anna Strasberg argued that Marilyn Monroe was domiciled in New York and because the Hawaii federal Court held that Marilyn Monroe was domiciled in New York. (Marcus Decl., Exs. 41, 44, 49; Second Marcus Decl. ¶).  In fact, Nancy Miracle altered her previous stance, and now alleged that Marilyn Monroe died a New York domiciliary.  (Second Marcus Decl., at ¶ 5, Ex. D at MM 0000263 at ¶ 3).  The Shaw Family admits that the recited quote is from the order of the New York Surrogate's Court, dated June 13, 2002.   Although the New York Surrogate's Court held that the Hawaii federal court's decision did not have res judicative effect, the New York Surrogate's Court did not rule that New York law did not apply to the case.  (Straus Decl., Ex. 1199, at MM 0000363)

**The Shaw Family's Response to Defendants' Statement No 100**

100.    This statement is not an undisputed fact, is conjecture and is improperly contained herein, under Rule 56.1.  However, the Shaw Family admits that the New York Surrogate's Court granted Anna Strasberg summary judgment and dismissed Ms. Miracle's application.  The court determined that based upon the evidence presented, it was impossible for Marilyn Monroe to be the mother of Nancy Miracle.

Dated: New York, New York
    March 27, 2008

LAW OFFICES OF CHRISTOPHER SERBAGI

By: David M. Marcus

43

488 Madison Avenue
New York, New York 10022
Tel: 212-593-2112
Fax: 212-308-8582


Shaw Family Archives, Ltd.,
Bradford Licensing Associates, Edith
Marcus and Meta Stevens