**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- X
SHAW FAMILY ARCHIVES, LTD., EDITH      :
MARCUS and META STEVENS,

                                            :

                Plaintiffs,             Case No. 05 Civ. 3939 (CM)

                                              :

          -against-              Hon. Colleen McMahon

                                              :

CMG WORLDWIDE, INC. and MARILYN       :
MONROE LLC,

                                            :

                Defendants.     :
-------------------------------------------------------- X

<br>

### DEFENDANTS / CONSOLIDATED PLAINTIFFS'
### MEMORANDUM OF LAW IN OPPOSITION TO THE SHAW
### <u>FAMILY'S MOTION FOR A BOND PURSUANT TO LOCAL RULE 54.2</u>

<br>

                                LOEB & LOEB LLP
                                345 Park Avenue
                                New York, New York  10154
                                Tel:  (212) 407-4000
                                Fax:  (212) 308-8582
                                *Attorneys for Defendant Marilyn Monroe LLC*

                                Sovich Minch LLP
                                10099 Chesapeake Drive
                                Suite 100
                                McCordsville, Indiana  46055
                                Tel:  (317) 335-3601
                                Fax:  (317) 335-3602
                                *Attorneys for Defendant CMG Worldwide, Inc.*

# TABLE OF CONTENTS

Page

Table of Authorities ............................................................................................................ ii

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT.........................................................................................................................3

I.   The Relevant Factors Weigh Against Requiring a Security Bond Here.......................4

    A.   Defendants' Financial Condition and Ability to Pay Do Not Justify the
       Imposition of a Security Bond .............................................................................4

    B.   No Security Bond is Necessary Because Defendants are Domestic
       Companies.............................................................................................................6

    C.   Legal Costs and Scope of Discovery ...................................................................7

    D.   Compliance with Past Court Orders ....................................................................9

    E.   The Merits of Defendants' Claims.......................................................................9

II.  Plaintiffs Are Not Entitled to the Legal Fees They Claim.........................................10

    A.   Plaintiffs' Have No Potential Entitlement to Attorneys' Fees for the Vast
       Majority of Claims in this Litigation .................................................................10

       1.   Plaintiffs Are Not Entitled to Attorneys' Fees on Their Declaratory
          Judgment Claim ......................................................................................11

       2.   Plaintiffs Are Not Entitled to Legal Fees on the Numerous Claims that
          Have Been Asserted in This Litigation But Subsequently Withdrawn.............13

       3.   Plaintiffs Are Not Entitled to Legal Fees on the Public Domain Issue ............14

    B.   Plaintiffs' Counsel Previously Represented that Their Fees Were Far Less
       Than The $4.5 Million They Now Seek ..............................................................15

    C.   Plaintiffs Have Provided No Support for Their Claimed Fees ...........................16

III. Plaintiffs' Arguments Regarding "Bad Faith" Are Unsupported and Meritless.......18

    CONCLUSION....................................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,*
    421 U.S. 240, 95 S. Ct. 1612 (1975)......................................................................................13

*Am. Camping Ass'n v. Camp Shane,*
    06 Civ. 0176 (CM), U.S. Dist. LEXIS 50379 (S.D.N.Y. June 16, 2006)...............................17

*Atlanta Shipping Corp., Inc. v. Chemical Bank,*
    631 F. Supp. 335 (S.D.N.Y. 1986), *aff'd*, 818 F.2d 240 (2d Cir. 1987)..............................3, 12

*Becker v. DPC Acquisition Corp.,* 1
    Civ. 1035 (WK), 2002 U.S. Dist. LEXIS 9605 (S.D.N.Y. May 30, 2002) ...............................5

*Beverly Hills Design Studio (N.Y.) Inc. v. Morris,*
    126 F.R.D. 33 (S.D.N.Y. 1989) ...................................................................................10, 18-19

*Farrar v. Hobby,*
    506 U.S. 103, 113 S. Ct. 566 (1992).......................................................................................17

*Herbstein v. Bruetman,*
    141 F.R.D. 246 (S.D.N.Y. 1992) .............................................................................................10

*Kirsch v. Fleet Street, Ltd.,*
    148 F.3d 149 (2d Cir. 1998).....................................................................................................16

*LeBlanc-Sternberg v. Fletcher,*
    143 F.3d 748 (2d Cir. 1998).....................................................................................................17

*Matthew Bender & Co. v. West Publ'g Co.,*
    240 F.3d 116 (2d Cir. 2001).....................................................................................................14

*Minchala v. Terex Corp.,*
    04-CV-3080, 2006 U.S. Dist. LEXIS 66943 (E.D.N.Y. Sept. 19, 2006) ..................................6

*Mohamed v. Rajoub,*
    05 Civ. 8335 (LAP), 2008 U.S. Dist. LEXIS 3631 (S.D.N.Y. Jan. 17, 2008)................3, 9, 11

*New York State Ass'n for Retarded Children, Inc. v. Carey,*
    711 F.2d 1136 (2d Cir. 1983)..............................................................................................16, 17

*Pfizer, Inc. v. Y2K Shipping & Trading Inc.,*
    207 F.R.D. 23 (E.D.N.Y. 2001) ..........................................................................................3, 7, 12

**Page(s)**

*RBFC One, LLC v. Zeeks, Inc.,*
    02 Civ. 3231 (DFE), 2005 U.S. Dist. LEXIS 19148 (S.D.N.Y. Sept. 2, 2005)..................5, 10

*RLS Assocs. v. United Bank of Kuwait,*
    01 Civ. 1290 (CSH) (DF), 2006 U.S. Dist. LEXIS 91443
    (S.D.N.Y. Dec. 19, 2006)...................................................................................................8, 11

*RLS Assocs., LLC v. United Bank of Kuwait*,
    464 F. Supp. 2d 206 (S.D.N.Y. 2006)......................................................................3, 5, 6, 10

*Sea Trade Co. v. Fleetboston Fin. Corp.,*
    03 Civ. 10254, 2008 U.S. Dist. LEXIS 3227 (S.D.N.Y. Jan. 15., 2008)..................................6

*Selletti v. Carey,*
    173 F.R.D. 96 (2d Cir. 1997), *aff'd*, 173 F.3d 104 (2d Cir. 1999) ........................................15

*Sinatra v. Gucci,*
    05 Civ. 4444 (DC), 2005 U.S. Dist. LEXIS 12975 (S.D.N.Y. June 27, 2005)........................6

*Tri-Ex Enters., Inc. v. Morgan Guaranty Trust Co.,*
    08 Civ. 3856 (WCC), 1985 WL 144 (S.D.N.Y. Jan. 11, 1985)...............................................10

*Watson v. E.S. Sutton, Inc.,*
    02 CV 2739, 2006 U.S. Dist. LEXIS 88415 (S.D.N.Y. Dec. 6, 2006)....................................10

*Zen Music, Inc. v. CVS Corp.,*
    Civ. 4246 (DLC), 1999 U.S. Dist. LEXIS 5414 (S.D.N.Y. Apr. 19, 1999) .............. 3, 4-5, 7, 9

Defendants Marilyn Monroe LLC ("MMLLC") and CMG Worldwide, Inc. ("CMG") respectfully submit this memorandum in opposition to Plaintiffs / Consolidated Defendants Shaw Family Archives, Ltd. ("SFA"), Bradford Licensing Associates, Edith Marcus and Meta Steven's (collectively, "Plaintiffs") motion for a bond pursuant to Local Rule 54.2 of the United States District Court for the Southern District of New York ("Rule 54.2").

## PRELIMINARY STATEMENT

Plaintiffs, providing no legitimate evidence of the fees they claim to have incurred, waited until litigation of this action is very nearly complete to ask the Court to impose a massive $4.5 million security bond for their purported attorneys' fees in this litigation. Plaintiffs' request is meritless and untimely.

First, the traditional factors that Courts consider weigh against requiring a bond here. Defendants are domestic companies, discovery is already complete (and its scope was not out of the ordinary), and Defendants have complied with all Court orders. Most importantly, Plaintiffs have completely failed to establish any risk that Defendants would not be able to satisfy a potential award of fees and costs. To the contrary, it is undisputed that defendant CMG, the nation's premiere celebrity licensing agency, has substantial assets and certainly has the ability to pay a fee award – this alone defeats Plaintiffs' application. And while MMLLC's ability to pay is irrelevant because CMG could easily satisfy any fee award, Plaintiffs' speculation regarding MMLLC's financial condition falls well short of establishing the need for any bond, particularly as Plaintiffs' have waited until the end of the litigation to file the present motion. Thus, because the traditional factors weigh against the bond requirement, Plaintiffs' motion should be denied.

Second, Plaintiffs have failed to establish their potential entitlement to an award of any of their legal fees, much less the $4.5 million that they seek. Attorneys' fees may only be included

in a security bond if the moving party is statutorily entitled to such fees, and here Plaintiffs' have no statutory entitlement to attorneys' fees on the vast majority of claims in this litigation. In particular, the bulk of Plaintiffs' claimed fees were apparently incurred in connection with Plaintiffs' own claim for declaratory judgment on the issue of domicile, a claim which provides no statutory basis for an award of attorneys' fees. Recognizing this, Plaintiffs' conclusorily assert, for the first time and without support or explanation, that their affirmative declaratory judgment claim is somehow covered by the Indiana right of publicity statute. This baseless contention should be rejected.

In addition, Plaintiffs' counsel previously represented that their fees were far less than the $4.5 million they now seek. And Plaintiffs have failed to provide any contemporaneous time records or other evidence in support of their new fee claims, even though they are seeking a bond for fees that they claim they have already incurred. Without such records, it is impossible to determine whether Plaintiffs' claimed fees are reasonable, or what portion of such fees, if any, are even attributable to claims that could conceivably give rise to an attorneys' fee award.

Finally, Plaintiffs try to escape from the fact that they have no potential entitlement to an award of the vast majority of their claimed legal fees by arguing that, because of Defendants purported "bad faith," Plaintiffs should get a $4.5 million bond covering all of their fees regardless of what claims those fees relate to, or for what reason they were incurred. Not surprisingly, Plaintiffs cannot find a single case supporting this result. In any case, as stated herein, Plaintiffs' arguments regarding "bad faith" are meritless and unsupported.

## ARGUMENT

The purpose of a security bond under Rule 54.2 is to "assure[] that a defendant who is sued will, if successful, at least be able to recoup its costs." *Atlanta Shipping Corp., Inc. v. Chemical Bank*, 631 F. Supp. 335, 352 (S.D.N.Y. 1986), *aff'd*, 818 F.2d 240 (2d Cir. 1987). Thus, a motion for a bond under Rule 54.2 is almost always made at the outset of litigation, as "imposition of a bond serves as a tool not only to protect the defendant but also to force the plaintiff to make a fresh cost-benefit analysis concerning the litigation." *Pfizer, Inc. v. Y2K Shipping & Trading Inc.*, 207 F.R.D. 23, 25-26 (E.D.N.Y. 2001)

Courts consider the following five factors in determining whether to order a party to file a bond: (1) the financial condition and ability to pay of the party who would post the bond; (2) whether that party is a non-resident or foreign corporation; (3) the merits of the underlying claims; (4) the extent and scope of discovery; (5) the legal costs expected to be incurred; and (6) compliance with past court orders. *See, e.g., RLS Assocs., LLC v. United Bank of Kuwait*, 464 F. Supp. 2d 206, 220 (S.D.N.Y. 2006). *Pfizer, Inc.*, 207 F.R.D. at 24. A court should not include attorneys' fees in its calculation of the bond amount unless the moving party is statutorily entitled to an attorneys' fee award. *Mohamed v. Rajoub*, 05 Civ. 8335 (LAP), 2008 U.S. Dist. LEXIS 3631, at *11 (S.D.N.Y. Jan 17, 2008) (emphasis added); *see also Zen Music, Inc. v. CVS Corp.*, 98 Civ. 4246 (DLC), 1999 U.S. Dist. LEXIS 5414, at *2 (S.D.N.Y. Apr. 19, 1999).

Plaintiffs' request for a $4.5 million security bond should be rejected for a number of reasons. First, the factors described above each weigh against imposing a bond here. Second, Plaintiffs' purported $4.5 million in attorneys fees are inflated and overstated:

- Plaintiffs do not have any potential statutory basis to recoup the vast majority of their legal fees from Defendants, including alleged legal fees expended in connection with Plaintiffs' "declaratory judgment" claim;

3

- Plaintiffs have provided no underlying support for their claimed $4.5 million in fees; and, in fact

- In October 2007, Plaintiffs represented that their attorneys' fees were $900,000. It strains credulity to believe that they have (or will) incur an additional $3.6 million in fees since that time.

<u>Third</u>, Plaintiffs' "bad faith" allegations are without merit and unsupported by facts.

## I. **The Relevant Factors Weigh Against Requiring a Security Bond Here**

### A. **Defendants' Financial Condition and Ability to Pay Do Not Justify the Imposition of a Security Bond**

Plaintiffs do not dispute that CMG, a co-defendant in this action, has the ability to satisfy any reasonable award of costs and fees. CMG is recognized as the premiere celebrity licensing agency, representing numerous corporations, celebrities, and the heirs, families and estates of deceased celebrities. (Declaration of Mark Roesler dated April 2, 2008 ("Roesler Decl."), ¶¶ 4-8). Indeed, CMG has over two thousand active licenses agreements on behalf of numerous clients. (*Id.* ¶ 8). Plaintiffs do not even attempt to argue that CMG lacks the ability to satisfy any fee award, instead arguing only that <u>MMLLC</u> "may not have the funds to satisfy a judgment for attorney's fees against it at the conclusion of this case." (Pl. Br. at 5). Thus, because Defendants would be jointly and severally liable on any fee award, and because CMG unquestionably has the ability to pay, no bond is merited.

Further, Plaintiffs fail to provide any support for their speculation regarding MMLLC's financial condition, other than to claim that, during settlement discussions that took place ten months ago, MMLLC's prior counsel supposedly said that MMLLC might not have funds to pay attorneys' fees. (Declaration of David Marcus dated March 12, 2008 ("Marcus Decl."), ¶ 11). Whatever MMLLC's prior counsel said, it obviously did not trouble Plaintiffs' counsel enough for them to seek a security bond at the time. Typically a bond is imposed only where a party "demonstrably lack[s] the means to satisfy an award," *Zen Music, Inc. v. CVS Corp.*, 98 Civ.

4246 (DLC), 1999 U.S. Dist. LEXIS 5414, at *4 (S.D.N.Y. Apr. 19, 1999), and Plaintiffs'

speculation here does not suffice.  *See, e.g., Zen Music,* 1999 U.S. Dist. LEXIS 5414, at *3

(rejecting bond application based on speculation as to party's financial condition); *Becker v.*

*DPC Acquisition Corp.*, 00 Civ. 1035 (WK), 2002 U.S. Dist. LEXIS 9605, at *44 (S.D.N.Y.

May 30, 2002) (same).

Plaintiffs' reliance on *RBFC One, LLC v. Zeeks, Inc.*, 02 Civ. 3231 (DFE), 2005 U.S.

Dist. LEXIS 19148 (S.D.N.Y. Sept. 2, 2005), is misplaced.  First, the plaintiff in *RBFC One* was

a shell company that had no income over the past three years, owned no assets other than the

lawsuit itself, and had zero capitalization – thus, its sole owner had "complete power to cause

[the shell company] to make payment or no payment of whichever of its debts he chooses." *Id.*

at *4-5.  Here, by contrast, neither CMG nor MMLLC is a "shell company," and MMLLC holds

valuable intellectual property assets (including trademarks and copyrights) and has had

substantial revenues in the past few years.  (*See* Def. Public Domain R. 56.1 Stmt., ¶¶ 57-71;

Roesler Decl. ¶¶ 2, 10 and Ex. B).[1]  And contrary to Plaintiffs' implication, Anna Strasberg is

not the sole owner of MMLLC – 25% of the company is owned by The Anna Freud Centre, a

charitable institution.  (Declaration of Paula Colbath dated April 2, 2008 ("Colbath Decl."), Ex.

A at ¶ 3).[2]  Second, *RBFC One* involved a motion for a bond pursuant to Rule 7 of the Federal

Rules of Civil Procedure, not Local Rule 54.2.  *Id.* at *2.

---

[1] Citations to "Def. Public Domain R. 56.1 Stmt." are to Defendants / Consolidated Plaintiffs'
Statement of Undisputed Facts in Support of Cross-Motion for Summary Judgment on Public
Domain Claim, dated February 12, 2008.

[2] Plaintiffs also cite *RLS Assocs., LLC v. United Bank of Kuwait*, 464 F. Supp 2d 206  (S.D.N.Y.
2006) for the proposition that a court may require a bond solely based on a party's inability to
pay potential litigation costs.  (Pl. Br. at 4).  But in *RLS Assocs.*, unlike here, the plaintiff's lack
of assets was undisputed.  *Id.* at 221.  In addition, the *RLS Assocs.* Court imposed a bond

Because Plaintiffs have presented no evidence that Defendants would not be able to satisfy any potential award of reasonable costs or fees, this factor weighs against the imposition of a bond.

### B.  No Security Bond is Necessary Because Defendants are Domestic Companies

Plaintiffs argue that the fact that Defendants are Indiana and Delaware residents favors imposition of a bond.  (Pl. Br. at 5).  But Plaintiffs miss the point.  Courts evaluating whether to impose a bond under Rule 54.2 are concerned with the difficulties that arise in enforcing awards when the non-moving party is a resident of a foreign <u>country</u>.  *See Minchala v. Terex Corp.*, 04-CV-3080 (NG) (RLM), 2006 U.S. Dist. LEXIS 66943, at *1-2 (E.D.N.Y. Sept. 19, 2006) (factors to be considered in deciding whether to require positing of security include "whether [the non-moving] party is present in the United States"); *Sinatra v. Gucci*, 05 Civ. 4444 (DC), 2005 U.S. Dist. LEXIS 12975, at *4 (S.D.N.Y. June 27, 2005) (same); *see also Sea Trade Co. v. Fleetboston Fin. Corp.*, 03 Civ. 10254, 2008 U.S. Dist. LEXIS 3227 at *5 (S.D.N.Y. Jan. 15, 2008) (imposing bond where, *inter alia*, plaintiffs, Bahamian and Argentinean companies, are "foreign corporations" that conduct no business and have no assets in the United States).  Thus, in *Minchala*, the Court refused to impose a bond requirement where, *inter alia*, the defendant did not "allege that plaintiff is not available in the United States."  2006 U.S. Dist. LEXIS 66943, at *3.  Similarly, in *RLS Assocs.*, 464 F. Supp. 2d at 220, 222, a case relied on by Plaintiffs, the Court held that this factor militated *against* requiring a bond because the plaintiff, a Connecticut entity, was "not a non-resident or foreign corporation."

---

because, in that case, under the governing law whichever party ultimately prevailed would have been entitled to the entirety of its legal fees, and thus one party's "inability to pay created an unfair asymmetry in the litigation" which "provide[d] a strong equitable justification for a bond requirement."  *Id.*  No such asymmetry exists here.

Moreover, Defendants have active and significant contacts in the State of New York. For example, CMG represents numerous clients and has numerous licensees based in New York, including the State of New York itself. (Roesler Decl. ¶¶ 7-8). Because Defendants are United States companies with New York contacts, Plaintiffs would face no difficulty enforcing an award against them. Accordingly, this factor weighs against the imposition of a bond.

## C. Legal Costs and Scope of Discovery

Plaintiffs argue that a bond is appropriate because discovery has already purportedly been "extensive" in this three year old case. First, Plaintiffs once again miss the purpose of Rule 54.2, which is to allow a party to seek a security bond before incurring costs, not after. *Zen Music* is exactly on point. In that case, the Court held that the "legal costs" and "scope of discovery" factors "provide no support" for the imposition of a bond where, as here, the defendant waited until after discovery was largely completed to bring a Rule 54.2 motion:

> Discovery has been largely, if not entirely, completed in this case. . . . Most importantly, the defendants have chosen to bring this motion after the bulk of discovery has been completed, thus rendering any hope of avoiding such costs by requiring the plaintiff to post a bond illusory.

 1999 U.S. Dist. LEXIS 5414, at *5; *see also, e.g., Pfizer, Inc. v. Y2K Shipping & trading Inc.*, 207 F.R.D. 23, 25 (E.D.N.Y. 2001) (denying bond application where "[d]iscovery [was] near completion," even though defendants did not have substantial assets and merits of dispute favored plaintiffs). Because discovery has already been completed in this case, and no substantial costs remain, this factor provides no basis for Plaintiffs' belated motion for a security bond.

Moreover, Plaintiffs have dramatically overstated the scope of discovery in this case, which has been by no means out of the ordinary, and certainly does not support Plaintiffs' request for a massive $4.5 million bond. Contrary to Plaintiffs' claims that "[b]oth sides have

taken numerous depositions," there have been a grand total of <u>four</u> depositions in the entire case, all taken over the course of a three-week period between December 17, 2007 and January 4, 2008. (Colbath Decl. ¶ 3). Of these, three were taken by Plaintiffs, and only one was taken by Defendants. (*Id.*).[3]

Plaintiffs also refer to "numerous discovery hearings" before Magistrate Judge Fox in White Plains. (Pl. Br. at 9). But Defendants' current counsel are aware of only two such in-person hearings, one in which Magistrate Judge Fox rejected Plaintiffs' request that Defendants be compelled to produce documents regarding their legislative lobbying efforts, and another in which Magistrate Judge Fox ordered Plaintiffs to make their Rule 30(b)(6) witness available for a second day of deposition testimony (after Plaintiffs' counsel had improperly instructed the witness not to answer numerous questions) and to make additional documents available for inspection. (Colbath Decl. ¶¶ 5-6; Ex. B at 4, 8).[4]

Thus, both the "legal cost" and "scope of discovery" factors favor denial of Plaintiffs' motion. *See RLS Assocs. v. United Bank of Kuwait*, 01 Civ. 1290 (CSH) (DF), 2006 U.S. Dist. LEXIS 91443, at *10-11 (S.D.N.Y. Dec. 19, 2006) (factor weighs against bond where discovery, while "extensive, is not particularly unusual in its magnitude"). In addition, as explained *infra* at 13, much of the discovery related to claims that Plaintiffs have withdrawn, or which provide no

---

[3] In their public domain motions, Plaintiffs have the audacity to accuse Defendants of "bad faith" for not taking <u>additional</u> depositions of Bradford Licensing Associates (Plaintiffs' Public Domain Summary Judgment Brief dated January 9, 2008, at 20-21) or Larry Shaw (who died on October 19, 2007 , before depositions even commenced in this case) (Plaintiffs' Public Domain Summary Judgment Reply Brief, dated March 4, 2008 at 20-21). Yet now, conversely, Plaintiffs complain that the "numerous" depositions taken by Defendants require Defendants to post a multi-million dollar security bond.

[4] Plaintiffs also claim that "[b]oth sides have . . . exchanged approximately 70,000 documents" (Pl. Br. at 9), but in fact Defendants themselves produced approximately 70,000 documents, and Plaintiffs produced only about 1,400 pages of document. (Colbath Decl. ¶ 4).

basis for statutory attorneys' fees. Obviously, discovery relating to these claims provides no basis for the imposition of a security bond. *See Mohamed v. Rajoub*, 05 Civ. 8335 (LAP), 2008 U.S. Dist. LEXIS 3631, at *11 (S.D.N.Y. Jan 17, 2008) ("legal costs" factor does not weigh in favor of requiring security bond where plaintiffs "presented no [statutory] basis for an award of fees in this case").

### D. <u>Compliance with Past Court Orders</u>

This factor weighs heavily against imposition of a bond because Plaintiffs do not even allege that Defendants have refused to comply with any orders of the Court. *See, e.g., Zen Music*, 1999 U.S. Dist. LEXIS 5414, at *5.

### E. <u>The Merits of Defendants' Claims</u>

Plaintiffs' arguments regarding the "merits" of Defendants' claims are also inapposite and misleading. First, Plaintiffs' claim that they are entitled to a bond because they were granted summary judgment on Defendants' claims under the Indiana right of publicity statute. (Pl. Br. at 7). But the Court rendered summary judgment on those claims almost a year ago, on May 2, 2007. Having failed to seek a bond <u>before</u> incurring the costs associated with that claim, there is simply no basis for Plaintiffs to do so now.

Second, Plaintiffs do not even attempt to explain how Defendants' positions regarding Marilyn Monroe's California domicile or the constitutionality of the California statute lack merit. (Pl. Br. at 7). In any event, as explained in more detail *infra* at 11-13, no bond may be imposed for any costs associated with these issues, because Plaintiffs have absolutely no conceivable basis to seek attorneys' fees in connection with their declaratory judgment claims or their constitutionality motion. *See Mohamed*, 2008 U.S. Dist. LEXIS 3631, at *11.

Nor do the "merits" favor a bond for any alleged costs associated with the public domain issue, because, as explained *infra* at 14, Defendants have overwhelmingly demonstrated that numerous photographs taken by Sam Shaw are in the public domain.

## II.  Plaintiffs Are Not Entitled to the Legal Fees They Claim

In addition to the fact that none of the traditional factors support the imposition of a security bond here, Plaintiffs' motion should also be rejected because there is no basis for their claim for $4.5 million in fees and costs, a figure that is wholly unsupported by any legitimate documentation, and is many multiples greater than the largest security bond imposed in any of the cases that Plaintiffs themselves cite.[5]  As explained in more detail below, Plaintiffs' bond request should be denied because (i) Plaintiffs' have no legal basis for seeking attorneys' fees from Defendants for the vast majority of claims in this litigation; (ii) Plaintiffs previously represented that their fees were only $900,00; and (iii) Plaintiffs' have provided no documentary support for their claimed attorneys' fees.

### A.  Plaintiffs' Have No Potential Entitlement to Attorneys' Fees for the Vast Majority of Claims in this Litigation

Plaintiffs' seek a $4.5 million bond for their purported fees and costs for this entire three-year litigation (Pl. Br. at 9-10).  However, "a court may include attorneys' fees in its calculation

---

[5] *See Beverly Hills Design Studio (N.Y.) Inc. v. Morris*, 126 F.R.D. 33 (S.D.N.Y. 1989) ($20,000 bond); *Herbstein v. Bruetman*, 141 F.R.D. 246, 247 (S.D.N.Y. 1992) ($75,000 bond); *RBFC One, LLC v. Zeeks, Inc.*, 02 Civ. 3231 (DFE), 2005 U.S. Dist. LEXIS 19148, at *8 (S.D.N.Y. Sept. 1, 2005) ($5,000 bond); *RLS Assoc. v. United Bank of Kuwait PLC*, 464 F. Supp. 2d 206, 226 (S.D.N.Y. 2006) ($75,000 bond); *Tri-Ex Enters., Inc. v. Morgan Guaranty Trust Co.*, 08 Civ. 3856 (WCC), 1985 U.S. Dist. LEXIS 23502, at *5 (S.D.N.Y. Jan. 11, 1985) ($34,000 bond); *Watson v. E.S. Sutton, Inc.*, 02 CV 2739 (KMW), 2006 U.S. Dist. LEXIS 88415, at *2, 8 (S.D.N.Y. Dec. 6, 2006) ($300,000 security during pendency of appeal, after Magistrate Judge issued Report and Recommendation recommending that plaintiff receive such attorneys' fees and costs).

of the appropriate amount of a security bond <u>only</u> if a party is potentially entitled to such an award by statute." *Mohamed*, 2008 U.S. Dist. LEXIS 3631, at \*11 (emphasis added).[6] Plaintiffs' request for a bond covering <u>all</u> of its purported fees in this case is improper because, at most, Plaintiffs are only potentially entitled to fees relating to Defendants' Indiana right of publicity claims  (which were dismissed on May 2, 2007), and Plaintiffs have no entitlement to attorneys' fees on any other claim in this case.

    1.   **Plaintiffs Are Not Entitled to Attorneys' Fees on Their Declaratory Judgment Claim**

On May 2, 2007, this Court dismissed Defendants claims against Plaintiffs under the Indiana right of publicity statute, 32 Ind. Code, Art. 36, Chap. 1, §§ 1-20.  Subsequently, in October, 2007**,** the California State legislature amended its right of publicity statute to clarify that a post-mortem right of publicity exists for California domiciliaries who pre-deceased the enactment of California's original right of publicity legislation.  However, Defendants have not asserted any new claims against Plaintiffs based on either the Indiana or amended California right of publicity statutes.  Nor have Defendants sought reconsideration of the Court's May 2, 2007 decision.

Nevertheless, on August 8, 2007, months before the new California legislation was even passed, Plaintiffs filed a Second Amended Complaint seeking, *inter alia*, a "DECLARATION THAT MARILYN MONROE DIED A DOMICILIARY OF THE STATE OF NEW YORK," pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.  (*See* Pls.' Second Amended

---

[6] Moreover, the bond amount may not exceed the potential fees and costs recoverable in the case, and even if a bond is appropriate "the court is not required to set the bond at the *full* amount of costs and fees at stake."  *RLS Assocs. v. United Bank of Kuwait*, 01 Civ. 1290 (CSH) (DF), 2006 U.S. Dist. LEXIS 91443, at \*5 (S.D.N.Y. Dec. 19, 2006).  Nor should the Court "impose a bond that a party is unable to pay, thereby depriving the party of its day in court."  *Id.*

Compl., dated August 8, 2007, at 9-10).  Plaintiffs later filed a motion asking this Court to

declare the amended California statute unconstitutional, even though Defendants never asserted a

claim under that statute.

Even if they were to ultimately prevail (which they should not), there is absolutely no

statutory basis for Plaintiffs to claim attorneys' fees in connection with their own affirmative

declaratory judgment action and/or efforts to have the California statute declared

unconstitutional.  Plaintiffs efforts to declare Marilyn Monroe a New York domiciliary do not

constitute a claim under the Indiana right of publicity statute (which is not even mentioned in

Plaintiffs' Second Amended Complaint), and thus that statute provides no basis for attorneys'

fees on Plaintiffs' declaratory judgment claim.  Indeed, Defendants have not asserted any

affirmative claims based on the amended California statute.[7]

It would be particularly improper to require Defendants to post a bond to cover fees that

Plaintiffs have incurred on their affirmative claim, because the general purpose of Rule 54.2 is to

protect <u>defendants</u>, not plaintiffs.  *See Pfizer, Inc. v. Y2K Shipping & Trading Inc.*, 207 F.R.D.

23, 25 (E.D.N.Y. 2001) (Refusing to require plaintiff to post bond "because it appears that in

virtually all of the cases where bonds were imposed the court's principal motivation . . . was to

protect *defendants* who were faced with claims of dubious merit made by plaintiffs with no

significant resources") (emphasis in original); *Atlanta Shipping Corp., Inc. v. Chemical Bank*,

631 F. Supp. 335, 352 (S.D.N.Y. 1986) (purpose of bond rule is to "assure[] that a defendant

who is sued will, if successful, at least be able to recoup its costs"), *aff'd*, 818 F.2d 240 (2d Cir.

---

[7] Plaintiffs' only argument appears to be that Defendants' choice to engage in Constitutionally-
protected lobbying efforts somehow renders them liable for Plaintiffs' legal fees.  (Pl. Br. at 1-2).
Not surprisingly, Plaintiffs cite no legal support for this theory.

1987). It was <u>Plaintiffs</u>' choice to file a declaratory judgment action, and to press the issue of Marilyn Monroe's domicile following this Court's May, 2007 decision, and it is their obligation to pay their own fees. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 248, 95 S. Ct. 1612, 1616 (1975) ("In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.").

### 2. Plaintiffs Are Not Entitled to Legal Fees on the Numerous Claims that Have Been Asserted in This Litigation But Subsequently Withdrawn

Plaintiffs' request for a security bond covering <u>all</u> their attorneys' fees in this litigation are further improper because there were numerous other claims asserted in this litigation for which Plaintiffs have no conceivable entitlement to attorneys' fees, including claims that Plaintiffs themselves have withdrawn. For example, Plaintiffs' Amended Complaint dated May 9, 2005 asserted four causes of action, none of which remain in this litigation, and Plaintiffs' Second Amended Complaint dated August 8, 2007 contained nine causes of action, all but one of which Plaintiffs have withdrawn.[8] Plaintiffs are certainly not entitled to legal fees for claims they have withdrawn or abandoned.

Many of Plaintiffs' document requests, and thus much of Defendants' large document production, relate to these since-abandoned claims. However, Plaintiffs have provided absolutely no records to allow the Court to determine what portion of their legal fees related to the Indiana right of publicity issue as opposed to the various other claims that were raised in this action over the past three years.

---

[8] In addition to the Indiana right of publicity claim, Defendants' Second Amended Complaint dated June 21, 2005 asserted nine (primarily common-law) causes of action, none of which remain in this litigation.

13

### 3.  **Plaintiffs Are Not Entitled to Legal Fees on the Public Domain Issue**

Nor should a bond be required for Plaintiffs' fees relating to the public domain issue because, in addition to the reasons set forth *supra* at 4-9, there is no likelihood that Plaintiffs will prevail on that issue, much less recover attorneys' fees.

As set forth in more detail in Defendants' memoranda of law in support of their cross-motion for summary judgment, Defendants will prevail on their public domain declaratory judgment motion because there is no genuine dispute that many photographs of Marilyn Monroe taken by Sam Shaw are in the public domain.  Plaintiffs could not even muster an argument that the photographs in question are <u>not</u> in the public domain, instead attempting merely to raise metaphysical doubts about the quality of Defendants' proofs, and to attempt to challenge Defendants' standing.  Thus, because Defendants' claims are objectively reasonable on the merits, Plaintiffs would not be entitled to attorneys' fees even if they prevailed on their "standing" claim.  *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 121-22 (2d Cir. 2001) ("[O]bjective reasonableness is a factor that should be given substantial weight in determining whether an award of attorneys' fees is warranted.").

Further, as explained in Defendants public domain briefs, the evidence conclusively demonstrates that Plaintiffs have refused to acknowledge that the photographs in question are in the public domain, and they have falsely claimed rights in photographs that they do not own.[9] Plaintiffs should not be rewarded for such behavior with a grant of attorneys' fees.  Indeed,

---

[9] In light of the substantial evidence put forward by Defendants in the public domain briefs, Plaintiffs' claim that Defendants' "fabricated" the allegations in the Third Amended Complaint (Pl. Br. at 8) is baseless.

Plaintiffs could have ended any litigation on the public domain issue long ago simply by acknowledging that they do not own the photographs in issue, and authorizing Defendants to use them – any legal fees that Plaintiffs have incurred are thus the result of their own efforts to assert rights in photographs that they do not own.[10]

### B. Plaintiffs' Counsel Previously Represented that Their Fees Were Far Less Than The $4.5 Million They Now Seek

The bond requested by Plaintiffs should denied because not only have Plaintiffs failed to provide any evidence or allocation of their purported attorneys' fees, they also previously represented that their fees were far less than they now claim.

Plaintiffs argue, without providing any time records for support, that they have already incurred $3,303,500 in costs and fees, and that they expect to incur an additional $1,000,000 in fees (even though discovery and summary judgment briefings are already complete). (Pl. Br. at 15; Marcus Decl. ¶ 13). Yet in October 2007, Plaintiffs' counsel claimed that their total fees were only $900,000, a portion of which they claimed had already been paid by SFA's insurance company. (Colbath Decl. ¶ 7). It strains credibility to think that Plaintiffs ran up an additional $2.4 million in fees and costs in five short months, with another $1 million to come.[11]

---

[10] *Selletti v. Carey*, 173 F.R.D. 96 (2d Cir. 1997), *aff'd*, 173 F.3d 104 (2d Cir. 1999) relied on by Plaintiffs, is inapposite, because in that case the plaintiffs' claims were "objectively without merit," *id.* at 101 – here, by contrast, Defendants' claims are meritorious, Further, in *Selleti*, unlike here, the moving party sought a security bond early in the proceedings, rather than waiting until after discovery was already concluded, and other traditional factors also favored the imposition of a bond (including the plaintiff's financial status and violation of court orders). *Id.* at 101-02. Finally, the *Selleti* Court imposed a bond of only $50,000, *id.* at 103, not the massive bond that Plaintiffs now seek.

[11] In their March 4, 2008 memorandum of law in further support of their public domain summary judgment claim, Plaintiffs stated (with no support), that their attorneys' fees on the public domain issue are only $460,900. (*Id.* at 31 n.4). Accepting *arguendo* this unsupported figure, and assuming that none of this amount was incorporated into the $900,000 that Plaintiffs' previously claimed as legal fees in October 2007, to accept Plaintiffs' current figure of $3.3

### C. **Plaintiffs Have Provided No Support for Their Claimed Fees**

"[C]ontemporaneous time records are a prerequisite for attorney's fees in this Circuit,"

*New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983),

and "[a]pplications for fee awards should generally be documented by contemporaneously

created time records that specify, for each attorney, the date, the hours expended, and the nature

of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). Not surprisingly,

Plaintiffs provide no time records or other evidence justifying their claimed fees (which

Plaintiffs themselves describe as "astronomical") (Pl. Br. at 6). Without such records, it is

impossible to determine whether Plaintiffs' claimed fees are reasonable, or what portion of such

fees, if any, are even attributable to claims that could conceivably give rise to an attorneys' fee

award.

For example, Plaintiffs have offered no contemporaneous time records setting forth their

actual legal fees relating to the Indiana right of publicity claim, even though this Court rendered

summary judgment on those claims almost one year ago. Nor did Plaintiffs submit such records

in connection with their previous Motion for Attorneys' Fees, Costs and Expenses dated May 22,

2007 ("Pl. Fee Br."). Plaintiffs' repeated failure to present any records pertaining to its fees

incurred on the Indiana right of publicity issue suggest that no contemporaneous time records

exist, and Plaintiffs should not be permitted to seek any security bond, much less a $4.5 million

bond, without showing that they can present any evidence the fees that they purportedly already

incurred.

---

million their counsel would have to have incurred $2 million in legal fees pertaining solely to
their declaratory judgment claim on domicile in the last five months.

More generally, contemporaneous time records are necessary to establish whether the $3.3 million that Plaintiffs have purportedly already incurred are based on a reasonable number of hours expended on this litigation and a reasonable hourly rate. *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763-64 (2d Cir. 1998).[12] Assuming an hourly rate of $400, for Plaintiffs to have already incurred $3.3 million in fees, David Marcus and Christopher Serbagi would have had to bill a combined 8250 hours to this case. Such hours appear particularly high given that Mr. Serbagi has only been involved in this litigation for a little over a year. (Marcus Decl. ¶ 13).

The amount of the purported fees is particularly concerning given that David Marcus is a part-owner of SFA, and the son and nephew of plaintiffs Edith Marcus and Meta Stevens, respectively. (Colbath Decl. Ex. C at 7, 18). Plaintiffs should not be permitted to use the present litigation as a mechanism for achieving a windfall on attorneys' fees that Plaintiffs would normally never have to pay. *See Ass'n for Retarded Children*, 711 F.2d at 1139 (attorneys' fees are to be awarded "with an eye to moderation," and should avoid "either the reality or the appearance of awarding 'windfall fees'") (citations and quotations omitted).

Finally, this Court has recognized that "the fees expended, to be *reasonable*, must bear a reasonable relationship to the amount in suit." *Am. Camping Ass'n v. Camp Shane*, 06 Civ. 0176 (CM), 2006, U.S. Dist. LEXIS 50379, at *9, 11 (S.D.N.Y. June 16, 2006) (Reducing fee award because "[i]n the world of commerce, people do not pay lawyers $108,000 to obtain $30,000 of value."); *see also, e.g., Farrar v. Hobby*, 506 U.S. 103, 114, 113 S. Ct. 566, 574 (1992) (degree

---

[12] Plaintiffs' claimed $21,668.50 in "paralegal fees" should be rejected out of hand. *See Am. Camping Ass'n v. Camp Shane*, 06 Civ. 0176 (CM), 2006, U.S. Dist. LEXIS 50379, at *11 (S.D.N.Y. June 16, 2006) (declining to award attorneys' fees for paralegals and other timekeepers, "as those are overhead costs that should be worked into a firm's billing rates for attorneys").

of the plaintiff's overall success is "the most critical factor" in determining the reasonableness of a fee award). Here, accepting Plaintiffs' representations as to the fee amount, the vast majority of their claimed $3.3 million in fees relates to their affirmative declaratory judgment claim. (*Supra* at 15 n.11). Even if Plaintiffs were somehow entitled to legal fees on this claim, it is not clear how a decision invalidating Marilyn Monroe's right of publicity is worth, to Plaintiffs, the well over $2 million that their counsel has purportedly expended on this claim in the past five months.

### III. Plaintiffs' Arguments Regarding "Bad Faith" Are Unsupported and Meritless

Finally, Plaintiffs recycle the same conclusory and unsupported allegations of "bad faith" that they have recited in all of their recent motions, claiming that this somehow entitles them to a security bond covering <u>all</u> of their (purportedly $4.5 million) legal fees. (Pl. Br. at 9-14). However, as stated previously, a court may only require a security bond for those attorneys' fees to which a party is potentially entitled by statute, and here Plaintiffs have no potential entitlement to fees on the vast majority of their claims. In particular, the bulk of Plaintiffs' legal fees apparently relate to <u>Plaintiffs' own claim</u> seeking a declaratory judgment that Marilyn Monroe was a New York domiciliary. Defendants did not initiate these claims at all, much less in "bad faith."

Plaintiffs rely on *Beverly Hills Design Studio (N.Y.) Inc. v. Morris*, 126 F.R.D. 33 (S.D.N.Y. 1989), arguing that the court in that case "based the bond on the attorneys' fees that the defendant was likely to expend over the course of the entire case." (Pl. Br. at 10). But, as the language that Plaintiffs themselves quote makes clear, the *Beverly Hills* court only included in the bond attorneys' fees to which the defendant was potentially statutorily entitled, *i.e.* fees expended in defending against Copyright and Lanham Act claims, *Beverly Hills*, 126 F.R.D. at

37, 39, and <u>did not</u> include attorneys' fees for the plaintiff's RICO and pendent state law claims. *Id.* at 35, 38.  Moreover, the security bond in *Beverly Hills* (which the defendant sought at the <u>outset</u> of the litigation), was granted only in the amount of <u>$20,000</u>.  *Id.* at 39.  The *Beverly Hills* case in no way supports Plaintiffs' request, made at the end of this litigation and with no evidence of the actual amount of their legal fees, for a $4.5 million security bond.

In any event, Plaintiffs' conclusory assertions fall far short of establishing any "bad faith" on Defendants' part.  First, Plaintiffs' suggestion that Defendants acted in bad faith simply by filing an action in Indiana, in front of a supposedly "CMG-friendly" court (Pl. Br. at 13-14), plainly does not suffice.  Moreover, while Plaintiffs' argue that Defendants' supposedly "knew" that they did not have a right of publicity because Marilyn Monroe was a New York domiciliary (Pl. Br. at 10), they ignore that Defendants sued under the Indiana right of publicity statute, arguing that this statute applied regardless of domicile.  While this Court ultimately disagreed with Defendants' position regarding the Indiana statute, this does not mean that Defendants made that argument in bad faith.  Indeed, Plaintiffs' inconsistently argue that Defendants' sued to "test case" the Indiana statute (Pl. Br. at 10) – obviously, if Defendants did not actually believe that they had rights under the Indiana statute, it would have made no sense for Defendants to risk their licensing revenue on such a "test" suit.

Plaintiffs also dramatically accuse Defendants' of "attempting to intimidate the Shaw Family into submission with threats of having to pay the Defendants' attorneys fees under the Indiana statute."  (Pl. Br. at 14).  But reference to the underlying document itself undermines Plaintiffs' accusations of sinister "threats".[13]  It is particularly ironic that Plaintiffs accuse

---

[13] Defendants' supposed "threat" consisted of the following statement, in an email from Mark Roesler to Larry Shaw regarding potential settlement:

Defendants of "threatening" them with attorneys' fees in the same motion that Plaintiffs seek an immense $4.5 million security bond, without even providing any evidence of their supposed fees.

Finally, Plaintiffs rely on statements by several third parties (none of whom had any actual knowledge of Marilyn Monroe's domicile) to argue that Defendants "<u>always knew</u> that they never had a right of publicity in Marilyn Monroe." (Pl. Br. at 10). First, <u>all</u> of the statements that Plaintiffs rely on were made prior to the enactment of the Indiana right of publicity statute in 2002 (Pl. Br. at 10-14; 32 Ind. Code, Art. 36, Chap. 1, §§ 1-20), and thus could not possibly demonstrate that Defendants acted in bad faith when they argued that the Indiana statute applied regardless of Marilyn Monroe's domicile. Second, none of these third-party statements in any way establish that Defendants believed Marilyn Monroe was a New York domiciliary, much less that they "knew" they did not own a right of publicity.[14]

---

"Larry . . . I am sorry that we are so far apart. I did report our discussions back to Anna and she concurred that future settlement discussions don't seem worthwhile and we are content proceeding until the end since who ever prevails will probably get their attorney fees back. I think we really missed our opportunity last summer, but I guess it was not to be. Anyway, I hope all is well and we will meet up sometime soon. Best, Mark"

(Declaration of Larry Shaw dated May 22, 2007 (filed with Plaintiffs' Brief), Exhibit A).

[14] For example, Plaintiffs rely on a 1990 letter from Roger Richman to Irving Seidman regarding a fee dispute, in which Richman noted that "papers in [Marilyn Monroe's] probate file, prepared by others" support the argument that she is a New York domiciliary. But neither Richman nor Seidman had any personal knowledge regarding Marilyn Monroe's domicile, neither of them are involved in this case, and, as explained in Defendants' memorandum of law in opposition to summary judgment on the domicile issue, nothing in Marilyn Monroe's New York probate file establishes that she was a New York domiciliary. Indeed, any claim that Defendants do not actually believe Marilyn Monroe to be a California domiciliary is undermined by the myriad documents supporting California domicile that Defendants submitted in opposition to Plaintiffs' domicile summary judgment motion.

Plaintiffs also rely, outrageously, on the fact that <u>Plaintiffs' attorney</u>, Martin Bressler, sent a letter arguing that Marilyn Monroe had no right of publicity. (Pl. Br. at 11-12). At most, this

For reasons explained in greater detail in at pages 19-23 of Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment on the Issue of Domicile, the fact that Irving Seidman filed a single document in New York Surrogate's Court that mistakenly referred to "domicile" rather than "residence" in no way suggests that Anna Strasberg "knew" that no right of publicity existed, and Plaintiffs' contention to the contrary (Pl. Br. at 11) is unsupported and frivolous. Indeed, the filing in question had absolutely <u>nothing</u> to do with the right of publicity. (Marcus Decl. Ex. A).[15]

For these reasons, Plaintiffs have failed to present any actual evidence of Defendants "bad faith," and Plaintiffs certainly have not presented any evidence that would entitled them to a $4.5 million security bond.

---

letter merely shows that Defendants were aware that <u>Plaintiffs</u> were making this argument, not that Plaintiffs agreed. The fact that Plaintiffs admit that they distributed a letter impugning Defendants' rights belies their claim that no dispute existed between the parties prior to the filing of this litigation. (Pl. Br. at 13-14). It is also ironic that Plaintiffs now give such credence to the actions of Bressler, given that Sam Shaw, Edith Marcus previously sued him for $100 million for, *inter alia*, misappropriating funds, stealing Sam Shaw's photographs, and falsely claiming rights therein. (Colbath Decl. Exs. D, E).

[15] Plaintiffs also argue, with absolutely no evidentiary support, that Defendants schemed to send out "hundreds" of cease and desist letters, but only to prosecute actions against entities that were not represented by established law firms. (Pl. Br. at 12-13). The <u>only</u> document that Plaintiffs cite as evidence of this purported scheme is a single letter that was sent to CMG by the law firm of Kenyon & Kenyon. (Marcus Decl. Ex. D). There are myriad reasons why CMG would have elected not to pursue litigation against any one particular infringer, and in fact CMG had conversations with Kenyon & Kenyon regarding the letter in question and subsequently entered into a non-adversarial business relationship with the client. (Colbath Decl. Ex. F at ¶¶ 5-7).

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion for the imposition of a security bond.


Dated:  New York, New York
        April 2, 2008


                              LOEB & LOEB LLP

                              By:  /s/ Jonathan Neil Strauss_____
                                   Paula K. Colbath
                                   Jonathan Neil Strauss
                                   345 Park Avenue
                                   New York, New York 10154-1895
                                   (212) 407-4000

                              *Attorneys for Marilyn Monroe LLC*


                              SOVICH MINCH, LLP

                              By:  /s/ Theodore J. Minch_____
                                   Theodore J. Minch
                                   10099 Chesapeake Drive, Suite 100
                                   McCordsville, Indiana 46055
                                   (317) 335-3601

                              *Attorneys for CMG Worldwide, Inc.*

22