# EXHIBIT D

1

2  SUPREME COURT OF THE STATE OF NEW YORK
   COUNTY OF NEW YORK:  CIVIL TERM
3  ------------------------------------------X
   EDITH SHAW MARCUS and META SHAW STEVENS,
4  as Temporary Administrators of the
   Estate of SAM SHAW,
5
                    Plaintiffs,
6
          - against -                    Index No.
7                                        123783/94
   MARTIN BRESSLER, LARRY SHAW,
8  SUSAN SHAW, BRESSLER & BRESSLER,
   VALERIE GOODMAN, 1912 PRODUCTIONS,
9  INC., MARC WEINSTEIN, individually
   and d/b/a COLOR GROUP,
10
                    Defendants.
11 ------------------------------------------X
                    80 Centre Street
12                  New York, New York 10007
                    June 5, 2002
13

14

15 B E F O R E :

16      HONORABLE MARTIN EVANS,
                    Judicial Hearing Officer
17

18 A P P E A R A N C E S :

19      MEYER, GREENWALT, TAUB & WILD, LLP
        Attorneys for the Plaintiffs
20      230 Park Avenue
        New York, New York 10169
21      BY:  WILLIAM GREENWALT, ESQ.
                    -and-
22          SAUL RUDES, ESQ.
            605 Third Avenue
23          New York, New York 10158

24

25

26

        DEBRA SALZMAN, RMR, Official Court Reporter

2

1                          Proceedings

2    A P P E A R A N C E S: (Cont'd)

3          JEFFREY P. TUNICK, ESQ.
            Attorneys for Defendants
4          150 Main Street
            Nyack, New York 10960
5              -and-
                MICHAEL J. MARINO, ESQ.
6
7    RUBIN & SHANG
      Attorneys for the Plaintiff
8    9 East 40th Street
      New York, New York 10016
9    BY:  JEFFREY RUBIN, ESQ.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

                DEBRA SALEMAN, RMR, Official Court Reporter

3

Proceedings

A F T E R N O O N   S E S S I O N

1
2
3      MR. MARINO:  It is hereby stipulated and
4   agreed by and between the parties to the within action
5   and their attorneys, all of which are present, that
6   the above entitled action is hereby settled on the
7   following terms and conditions:
8          Number 1.  An entity will be formed.
9   Whether that entity be a corporation, limited
10   liability partnership, joint venture, what type of
11   entity it will be will be determined by what is most
12   reasonably efficient with respect to making money, tax
13   consequences and the like.
14          The name of that entity will be the Shaw
15   Family Archives.  Whether it be Shaw Family Archives
16   Inc., LLC, partnership, "Shaw Family Archives" will be
17   the primary name.
18          Larry Shaw, Meta Shaw Stevens and Edith Shaw
19   Marcus shall be principals in that entity and their
20   respective interests in that entity will be the
21   following: Larry Shaw shall own 50 percent of that
22   entity.  Meta Shaw Stevens and Edith Shaw Marcus --
23   off the record.
24          (Discussion held off the record.)
25          MR. MARINO:  Meta Shaw Stevens shall own 25
26   percent of that entity and Edith Shaw Marcus shall own

DEBRA SALZMAN, RMR, Official Court Reporter

4

Proceedings

1

2  25 percent of that entity.

3          That entity shall own and take possession

4  of, in a manner set forth below, all of the

5  photographs involved in this litigation.  That

6  includes --

7          MR. RUBIN:  Off the record.

8          (Discussion held off the record.)

9          MR. MARINO:  That includes each and every

10  photograph shot by either Sam Shaw or Larry Shaw

11  during the course of their respective careers,

12  lifetimes --

13          JHO EVANS:  Excuse me.  Wait a minute.

14          There were some photographs that were

15  claimed by both Sam and Larry Shaw, but Sam Shaw's

16  attorneys weren't aware they were taken by her but

17  owned by Columbia pictures.  If you want to dispose of

18  those photographs, they're not a party to it.

19          MR. MARINO:  Your Honor, I don't think we

20  can dispose of them via stipulation.

21          JHO EVANS:  From the point of view of the

22  stipulation you can.

23          (Discussion held off the record.)

24          MR. MARINO:  The photographs included in the

25  collection to be owned by the Shaw family foundation

26  entity include -- Shaw Family Archives entity include

DEBRA SALZMAN, RMR, Official Court Reporter

5

                              Proceedings
1
2   all of those photographs now in the possession -- I
3   can't do that either.
4             (Discussion held off the record.)
5             MR. MARINO:   (Continuing) All of the
6   photographs taken -- snapped by Sam Shaw and/or Larry
7   Shaw during the course of their lifetimes, together
8   with those photographs taken by third parties which
9   either of them claim as being owned by them via some
10  gift or sale from a third party, all subject to claims
11  by said third parties.
12            There shall be appointed what we have termed
13  a "superagent."  The superagent shall have two roles:
14  number one, the primary role shall be the custodian of
15  all the photographs hereinbefore mentioned.  However,
16  it is in the interest of all the parties to keep that
17  group of photographs within the possession of the
18  superagent at a minimum in order to save costs.
19            Let me go back for a minute.  The primary or
20  one of the roles of the super agent shall be to
21  warehouse and maintain all of the photographs subject
22  to a reduction in that collection pursuant to the
23  agreement of the principals: Larry, Meta and Edith.
24            The second role for the super agent is to
25  determine the commercial reasonableness of each and
26  every deal brought to the Shaw Family Archive entity.


        DEBRA SALZMAN, RMR, Official Court Reporter

@007

6

Proceedings

2  Each and every deal brought to the Shaw Family entity

3  upon which there is not agreement between Larry, Edith

4  and Meta, and with respect to that their votes are 50

5  percent Larry, and 50 percent total for Edith and

6  Meta, 25 percent each.

7          In the event of a deadlock, 50/50 deadlock,

8  the super agent will determine whether or not a deal

9  shall go forward depending on its commercial

10  reasonableness.  The respective voting power is 50

11  percent Larry, no matter what the entity; 25 percent

12  Edith, 25 percent Meta.

13          Let me try to back up.  With respect to all

14  types of transactions other than outright sales of

15  photographs, the procedure is as follows: If the

16  parties agree either to do or to not do the

17  transaction, the super agent need not be involved.

18          If, however, there is a deadlock on whether

19  or not to do the transaction the transaction must go

20  to the super agent who will determine whether or not

21  it is commercially reasonable to do and his

22  determination shall be final.

23          However, with respect to the outright sale

24  of an image, photograph -- if with respect to the

25  outright sale of a photograph, negative or

26  transparency, photographic print, negative or

DEBRA SALZMAN, RMR, Official Court Reporter

7

1                          Proceedings

2      transparency, again, if the parties -- withdraw that.

3            If any of the parties wishes not to do the

4      transaction and even if it is a minority position,

5      then -- withdrawn.  That's not right.

6                  MR. RUBIN:  Keep going.

7                  MR. MARINO:  If it is a minority position,

8      and the super agent makes the determination that the

9      deal is commercially reasonable, the party, either

10     Larry, Edith or Meta, dissenting, or parties, will

11     have the right of first refusal to make that deal.

12                 JHO EVANS:  Off the record.

13                 (Discussion held off the record.)

14                 MR. MARINO:  Let's back up a little bit.

15                 In the event --

16                 MR. RUBIN:  Off the record.

17                 (Discussion held off the record.)

18                 MR. MARINO:  Let me back up.

19                 With respect to an outright sale as

20     previously stated, if any of the parties -- with

21     respect to the outright sale of a photographic print,

22     negative or transparency, if any of the parties -- let

23     me continue.

24                 With respect to the outright sale of a

25     photographic print, negative or transparency or

26     contact sheet, which is a print, in the event of


       DEBRA SALZMAN, RMR, Official Court Reporter

8

|  | Proceedings |
|---|---|
| 1 | |
| 2 | unanimity between the parties, the deal shall go |
| 3 | forward. |
| 4 | In the event that there is a majority in |
| 5 | favor of the deal, the dissenting party may |
| 6 | nonetheless match the deal presented within five days, |
| 7 | and if said deal is not matched by this dissenting |
| 8 | party within said five-day period the deal shall go |
| 9 | forward. |
| 10 | In the event there is a deadlock that the |
| 11 | decision as to whether or not to go forward with that |
| 12 | transaction shall be in the hands of the super agent, |
| 13 | and if the super agent makes the determination that |
| 14 | the deal should go forward because it is commercially |
| 15 | reasonable, then any of the dissenting parties to that |
| 16 | deal among the principals shall have the right, within |
| 17 | five days after the super agent makes determination, |
| 18 | to go forward to match the deal.  If they cannot match |
| 19 | the deal within that said five-day period the deal |
| 20 | goes forward. |
| 21 | Now, all of the principals, Larry, Edith and |
| 22 | Meta, may act as subagents for the collection, and |
| 23 | they shall be compensated by the entity for each deal |
| 24 | that is brought to the super agent -- excuse me -- |
| 25 | each deal that is brought to the entity via the super |
| 26 | agent in an amount which is commercially reasonable |

DEBRA SALZMAN, RMR, Official Court Reporter

@010

9

Proceedings

1
2   given industry standards.

3         To clarify, they shall be compensated an

4   agency commission in an amount which is reasonable in

5   accordance with industry standards for all deals

6   brought and consummated.  Said compensation upon

7   consummation shall only be paid in the event money is

8   received with respect to that transaction by the

9   entity.

10        With respect to any monies coming in, any

11  monies generated by the collection as described

12  previously, all monies shall be paid directly to the

13  entity, and any commissions or expenses as will be

14  laid out below will all be paid by the entity after

15  receipt of said -- off the record.

16        (Discussion held off the record.)

17        MR. MARINO:  In the event any income

18  generated by the collection is payable to anyone

19  other -- any one or any entity other than the Shaw

20  Family Archives, the person or entity receiving that

21  check or money or cash shall immediately endorse it

22  over and deliver it to the super agent on behalf of

23  the Shaw Family Archives.

24        The commission paid to the subagent shall be

25  a percentage based on the gross amount generated and

26  collected in connection with the transaction, and such

DEBRA SALZMAN, RMR, Official Court Reporter

Proceedings

1
2  commissions shall be paid by the entity to the agent
3  after said generated money is deposited and cleared in
4  the entity bank account.

5       All expenses incurred by agents, whether
6  they be Larry, Meta or Edith, or any other outside
7  agents shall be borne by the agent as the agent's cost
8  of doing business.

9       However, in the event either Larry, Meta or
10 Edith, or any other outside agent request that certain
11 expenses be borne by the entity because of
12 extraordinary circumstances, then if Meta, Larry and
13 Edith agree they will be borne by the entity.  If
14 there is a deadlock -- withdrawn.

15      A majority of the parties may agree to have
16 the entity bear such expenses, or a majority of the
17 parties may agree that the expenses should not be
18 borne by the entity.  In the event of a deadlock, the
19 super agent will determine the expenses sought to be
20 borne by the entity using a commercially reasonable
21 standard.

22      Any such expenses advanced by a subagent
23 without the prior written approval of the entity --
24 forget that.  Forget that.  It's assumed.

25      The parties herein, Larry, Meta and Edith,
26 shall each be entitled to a percentage of the net

DEBRA SALZMAN, RMR, Official Court Reporter

Proceedings

1    

2    proceeds of all income-generating transactions after

3    the payment of all reasonable and necessary expenses,

4    which shall include the agency commission, if any,

5    subagency commission, if any, and after the payment of

6    all expenses reasonable and necessary to house and

7    maintain the collection, including any and all fees,

8    reasonable and necessary fees paid to the super

9    agent.

10          JHO EVANS:  Off the record.

11          (Discussion held off the record.)

12          MR. MARINO:  Just by way of example only,

13    expenses shall include the super agent's fee, the cost

14    of housing and maintaining the collection -- by

15    "maintaining," I mean kept boxes, glassine envelopes,

16    folders, maintain -- but it shall also include the

17    administration of the entity's business affairs and

18    shall also include the scanning and inventorying of

19    all the images in the collection.

20          The net proceeds after the deduction of the

21    aforementioned expenses shall be split in the

22    following manner: 50 percent to Larry Shaw; 25 percent

23    to Meta Shaw Stevens; 25 percent to Edith Shaw

24    Marcus.

25          JHO EVANS:  Off the record.

26          (Discussion held off the record.)

DEBRA SALZMAN, RMR, Official Court Reporter

12

Proceedings

1

2      MR. MARINO:  Any reference herein to the

3  principals' ownership of a share in the entity -- I

4  said that wrong.  The principals of the entity shall

5  herein -- the next subject.

6          The parties, each of them individually,

7  Larry Shaw, Meta Shaw Stevens Edith Shaw Marcus

8  individually, indemnify and hold the other harmless,

9  including the entity, for any and all claims, losses

10  or liabilities incurred by any of the parties or the

11  entity.

12          Each of the individual parties agrees to

13  indemnify and hold harmless --

14          MR. RUBIN:  Each of the principals of the

15  entity agree to indemnify and hold harmless the entity

16  and each other from any claims made against them for

17  any transaction that they conducted in relation to the

18  subject of the entity prior to this date.

19          JHO EVANS:  Can you tell me what it is

20  you're referring to?

21          MR. RUBIN:  What we're referring to is in

22  the event one of the parties had done a transaction --

23  off the record.

24          (Discussion held off the record.)

25          MR. RUBIN:  From any claims including any

26  lawsuits, including but not limited to any lawsuits

DEBRA SALEMAN, RMR, Official Court Reporter

06/12/2002 10:51 FAX 212 651 8078                                        ☑014

13

| | Proceedings |
|---|---|
| 1 | |
| 2 | which are made against any of the principals for any |
| 3 | transaction conducted by such principals or their |
| 4 | agents, each respective principal or their agents in |
| 5 | relation to the corpus of the entity. |
| 6 | JHO EVANS:  I take it that what you're |
| 7 | referring to is if any claims are made against this |
| 8 | proposed entity, whatever it is, corporation or LLC, |
| 9 | by an  rd person arising out of any activities that |
| 10 | a       any of these three individuals who are |
| 11 |         before today, those individuals will |
| 12 |         rmless and indemnify the entity |
| 13 |         rising out of those claims.  Is |
| 14 | |
| 15 |        ect, your Honor. |
| 1f |        ntity and each other. |
| |    ∧  And the other principals. |
| |   ARINO:  Individually. |
| |   JHO EVANS:  Indemnify each other from the |
| |   made against them. |
| | MR. MARINO:  Exactly what you said, except |
| | the indemnity also extends to the individuals. |
| | MR. GREENAWALT:  And would also be, your |
| 24 | Honor, for acts of those parties if the parties have |
| 25 | agents and have done things in their name, then that |
| 26 | would also apply. |

DEBRA SALZMAN, RMR, Official Court Reporter

03/11/2008 10:41 FAX 212 881 5075    @015

14

                            Proceedings

 1
 2          MR. MARINO:  And I am saying it has to be
 3   authorized agents.
 4          MR. RUBIN:  Our problem is Darius, where
 5   there is a claim by Larry that he is acting without
 6   authority.
 7          JHO EVANS:  What you're saying is if he
 8   makes any claim against the entity, Larry Shaw will
 9   hold the entity harmless against them.  Is that
10   right?
11          MR. RUBIN:  That's what it should be.  We
12   didn't have any dealings with them.
13          JHO EVANS:  Is that true?
14          MR. MARINO:  That's what they are
15   suggesting.  All I'm saying is that the agent be an
16   authorized agent in order for the indemnity to take
17   effect, and then the issue of whether it was
18   authorized or not is --
19          MR. RUDES:  Just a second on that.
20          JHO EVANS:  If this fellow was not an
21   authorized agent and he makes some claim again the
22   entity, even though he was unauthorized, and suppose
23   somebody is from Australia and says they were
24   authorized by Meta Stevens to sell these photographs
25   and he wasn't, should there be an indemnity by Meta
26   Stevens against the entity?


            DEBRA SALZMAN, RMR, Official Court Reporter

15

Proceedings

1

2        MR. RUBIN:  No.  Our problem is with Darius

3  specifically because Darius was doing business with

4  Larry, and if Darius had done -- if Darius had done

5  business with another person, and that person comes

6  against the entity claiming that there was some

7  problem in the sale, we shouldn't have to pay for the

8  defense of that.

9        JHO-EVANS:  I fail to see how any person can

10  make a claim against an entity arising out of a past

11  action if the entity has not been in existence.

12        MR GREENAWALT:  Not just against the

13  entity.  The way Mr. Marino put it, it's also claims

14  against any one of the principals or their acts for

15  any of those transactions.

16        JHO EVANS:  Is there a possibility that

17  Darius will make claims against Stevens and Marcus?

18        MR. RUBIN:  I don't know.  There was a

19  contract that he signed with the receiver.  I have no

20  idea -- I haven't seen the contract -- I have no idea

21  who is responsible for that.

22        MR. TUNICK:  The receiver, he signed the

23  deal, he's responsible for it.

24        MR. RUBIN:  The receiver signs in his

25  representative capacity.

26        MR. GREENAWALT:  Darius and the receiver

DEBRA SALZMAN, RMR, Official Court Reporter

06/3  2002 10:52 FAX 212 851 8075    ☒017

16

Proceedings

1
2   signed a contract.

3       JHO EVANS:  But he was authorized to do so,

4   wasn't he?  If he was authorized to sign a contract

5   and based on that contract, that's an authorized

6   contract.

7       MR GREENAWALT:  Darius is only supposed to

8   do certain things under the contract.

9       JHO EVANS:  I don't know, if there's a claim

10  based on the contract that should be indemnified.

11      MR. GREENAWALT:  If somebody claims against

12  Darius outside of the contract or claims against Larry

13  or Meta, claims against them for acts up to now,

14  that's what we're trying to get into the indemnity.

15      MR. TUNICK:  Authorized agent.

16      JHO EVANS:  You want the entity indemnified

17  for claims against Larry.

18      MR GREENAWALT:  By a third person.

19      JHO EVANS:  I don't understand that but --

20      MR GREENAWALT:  If somebody claims Larry has

21  done something strange and Larry owes somebody a

22  hundred thousand dollars for some reason, okay --

23      MR. RUDES:  Not "for some reason," for work

24  he did on behalf of marketing the photos.

25      JHO EVANS:  That's not a claim against the

26  entity.

DEBRA SALZMAN, RMR, Official Court Reporter

17

Proceedings

1

2          MR GREENAWALT:  The point is --

3          JHO EVANS:  How can that be a claim against

4   the entity?

5          MR. MARINO:  This indemnity makes no sense.

6   This indemnity makes no sense.

7          JHO EVANS:  It doesn't make any sense.

8          MR. MARINO:  The indemnity makes no sense at

9   all.

10         JHO EVANS:  That doesn't make any sense.

11         MR. RUBIN:  Judge, there's another issue

12  that there is a claim --

13         JHO EVANS:  You're forming a corporation.

14  Somebody is making a claim against Larry for past

15  acts.  How is the corporation involved?

16         MR. MARINO:  The extent of the claim can

17  only be against Larry and Larry's interest in the

18  entity.

19         MR. RUBIN:  Here is the problem.  The

20  problem is that there is an issue that some pictures

21  which Larry has are also claimed by another party, a

22  photographer as being his.  If those become the

23  subject of --

24         JHO EVANS:  Wait a minute.  Tell me that

25  again.  Some third party makes a claim against what?

26         MR. RUBIN:  Larry has claimed that certain

DEBRA SALZMAN, RMR, Official Court Reporter

18

Proceedings

1

2  pictures are authored by himself.  There is another

3  photographer that made a claim that those pictures are

4  not Larry's but his.  Those then, however, will become

5  part of this entity and will be marketed as part of

6  the entity.

7        If that person, that photographer, sues the

8  entity in claiming that those pictures are his not

9  Larry's, we want Larry to defend it.

10        MR. MARINO:  There are a similar amount of

11  photographs on the other end.

12        JHO EVANS:  We know that there are claims by

13  third parties.

14        MR. TUNICK:  We already said that.

15        MR. RUBIN:  Who pays for the defense of the

16  lawsuit?

17        JHO EVANS:  We know there are claims by

18  third parties against some of these photographs.  Some

19  of these photographs were claimed by Larry Shaw and

20  also claimed by Sam Shaw.  Now, if this third party

21  comes in against the corporation and says those are

22  mine, who is going to indemnify the corporation?

23        MR. RUBIN:  I'm saying there are certain

24  pictures that Larry claims were taken.  There is a

25  pictures taken by Atami (phonetic) that he took.  If

26  in fact there is a lawsuit, Larry makes these part of

DEBRA SALZMAN, RMR, Official Court Reporter

FAX 212 881 6075                                                    ☎020

19

Proceedings

1 the corpus of the entity, if this person comes in and

2 brings a lawsuit, who pays for --

3          MR. TUNICK:  Don't take them as part of the

4 corpus.

5          MR. MARINO:  Turn them over.

6          MR. TUNICK:  Don't take them.

7          MR. RUBIN:  That's not the point.

8          MR. TUNICK:  Came them back to Atami.

9          JHO EVANS:  Is there any likelihood of that

10 happening?

11          MR GREENAWALT:  Well, your Honor, I think

12 two of the groups you were referring to, Maureen

13 Lambrey and Jessica Burstein, Jessica says so far as

14 she's concerned Sam, she feels, could have those.

15          JHO EVANS:  I don't care.  She testified

16 that she took them and the ownership of them is in

17 Columbia Pictures.  That's what she testified to.

18 What kind of a claim can she make?  She doesn't own

19 the photographs.

20          MR GREENAWALT:  I understand.

21          I suppose Columbia could make a claim, your

22 Honor.

23          JHO EVANS:  Don't look for something that

24 doesn't exist.

25          MR. RUBIN:  The women are concerned about

26

DEBRA SALZMAN, RMR, Official Court Reporter

@021

20

1                           Proceedings

2      being responsible or being responsible for something

3      that was done previously which may be wrong or have

4      some consequences against them and the entity, that's

5      all, so they just want to be held harmless for that

6      because they don't know what Larry was doing and

7      they're willing to do it reciprocally.

8                   MR. RUDES:  Each party here represents that

9      they have done nothing in any way which would expose

10     the individual or the entity to anymore suits or any

11     other suits or any attempts to recover in any fashion,

12     and they acknowledge that in entering into this

13     agreement they have been relying on the

14     representations and warranties.

15                  MR. MARINO:  That's fine.  I'm happy with

16     that.

17                  JHO EVANS:  What more do you need?  That's

18     all you need.

19                  Both sides agree to that?

20                  MR. MARINO:  Yes, we're fine, Judge.

21                  MR GREENAWALT:  Just a minute.

22                  JHO EVANS:  Next point.

23                  MR. MARINO:  Now we move on to attribution.

24                  All of the photographs involved in this

25     collection shall be the property -- shall be termed a

26     part of the Shaw Family Archives.


                 DEBRA SALEMAN, RMR, Official Court Reporter

21

Proceedings

With respect to the individual authorship of

an individual image, all of the Marilyn Monroes will

be -- I was about to state that all of the Marilyn

Monroes can be attributed to Sam Shaw, except that my

client just raised 72 photographs or 36 photographs --

are they printed or negatives?

(Discussion held off the record.)

MR. MARINO: The parties have agreed that

the attribution of the photographs involved in this

collection will be determined by Judge Evans based on

his findings, which will be based in turn on the

evidence adduced at trial over the past seven years.

MR GREENAWALT: I'm not willing to let

Marilyn Monroe be attributed to Larry Shaw.

MR. MARINO: Let me tell you, since we

didn't present any evidence on that during seven

years --

MR. GREENAWALT: No, no, no.

MR. RUBIN: Hold it. I don't know what the

problem is. I thought we agreed.

MR. MARINO: We did agree.

MR. TUNICK: Larry tells us two rolls are

Larry Shaw's photographs of Marilyn Monroe. If we can

agree that all Marilyn Monroe photographs can be

attributed to Sam Shaw except for a certain two rolls,

DEBRA SALZMAN, RMR, Official Court Reporter

23

Proceedings

Judge Evans based on the evidence adduced in this case

over the past seven years.

In the event any of the parties, Larry, Meta

or Edith, have marketed any photograph outside of the

parameters, a photograph, any image, any transparency

of any kind, have marketed any of those images outside

the parameters of this agreement, then that party

shall be penalized in the following manner --

start again.

In the event any of the parties herein from

this date forward, June 5, 2002, market,

commercialize, attempt to sell, attempt to make any

type of deal with respect to an image involved in this

transaction --

JHO EVANS:  What about gifts?

MR. MARINO:  Gifts are included, if they

attempt to gift -- off the record.

(Discussion held off the record.)

MR. MARINO:  (Continuing) Including gifts,

without the agreement of the other parties -- excuse

me -- without the majority agreement of the other

parties, then that person shall be penalized in the

following manner: they will be subject to treble

damages in the event monies are received.  In the

event of a gift they will be subject to treble damages

DEBRA SALZMAN, RMR, Official Court Reporter

24

Proceedings

1
2    on the value of the damages, on the value of the

3    photograph plus $10,000.

4           Off the record.

5           (Discussion held off the record.)

6           MR. LARRY SHAW:  I will not agree on that.

7           MR. TUNICK:  Strike that.

8           (Discussion held off the record.)

9           MR. MARINO:  No $10,000, just treble

10   damages.

11          In the event any of the parties market,

12   commercially exploit, sell or even gift one of the

13   images that should be a part of this collection but

14   has not been previously -- but has not been turned

15   over pursuant to this stipulation, that party will be

16   penalized in the following manner: they will be

17   subject to treble damages and they will be penalized,

18   in addition be penalized in the amount of $10,000 per

19   occurrence.

20          MR. TUNICK:  Also the value --

21          MR GREENAWALT:  Also you don't have to --

22          MR. TUNICK:  After discovered photographs,

23   images, transparencies, whatever was listed, turned in

24   by any principal to the super agent, any ones turned

25   in after this date, any photographs turned in -- any

26   photographs after discovered -- how about after

         DEBRA SALZMAN, RMR, Official Court Reporter

25

Proceedings

1
2    discovered photographs?  I'm giving everybody the

3    benefit of the doubt.

4                MR. LARRY SHAW:  After recovered.

5                MR. MARINO:  After discovered or after

6    recovered photographs, beautiful.

7                MR. RUDES:  Very good.

8                MR. TUNICK:  (Continuing) Turned over to the

9    super agent or the entity shall not be subject to the

10   aforementioned penalties.

11               MR. MARINO:  Fine.  Okay.

12               MR. RUDES:  One thing clarified, Madam

13   Reporter.  At the outset when Mr. Marino made

14   reference to images and all that stuff, could you put

15   "collectively known as photographs" so we don't have

16   to worry about anything cropping up if he left out a

17   word.

18               COURT REPORTER:  Your statement is now on

19   the record.

20               MR. MARINO:  In the event of any dispute

21   arising out of the terms and conditions of this

22   stipulation, said dispute shall be --

23               MR. RUDES:  No arbitration.  Leave it out.

24               MR. MARINO:  Judge, can you help us out

25   here?  All the parties agree, I think, that Myron

26   Beldock is an appropriate super agent.


                DEBRA SALZMAN, RMR, Official Court Reporter

☒027

26

| | Proceedings |
|---|---|
| 1 | |
| 2 | However, we are unclear on how to deal with |
| 3 | whether -- how he gets fired or how he gets renewed. |
| 4 | In the event of a deadlock there's no super agent to |
| 5 | make a determination. |
| 6 | MR. TUNICK:  That's the last point we had. |
| 7 | MR. RUDES:  Go back to court and get a new |
| 8 | receiver. |
| 9 | MR GREENAWALT:  Your Honor, let me explain |
| 10 | some of the reason for this.  There are many people |
| 11 | who would love to have some control of this |
| 12 | collection, who are experts in this field, who we |
| 13 | are -- we've been told on good source would really |
| 14 | market this collection tremendously.  Myron Beldock is |
| 15 | a fine guy but he's a very, very busy lawyer. |
| 16 | JHO EVANS:  In that case, use your people as |
| 17 | subagents. |
| 18 | MR GREENAWALT:  We want to have some |
| 19 | provisions for maybe cutting down the cost of the |
| 20 | super agent's administration, such as having True |
| 21 | Color -- |
| 22 | JHO EVANS:  What you're saying is you want |
| 23 | somebody else as a super agent? |
| 24 | MR GREENAWALT:  At some period. |
| 25 | JHO EVANS:  Is that what you're saying? |
| 26 | MR GREENAWALT:  We would like somebody else |

DEBRA SALZMAN, RMR, Official Court Reporter

27

Proceedings

1    now.  We are acceding to Beldock for the time being,

2    but we want to have another way to get another

3    superagent, or if True Color can take it over, the

4    pictures --

5          MR. MARINO:  I'm sorry.

6          (Discussion held off the record.)

7          JHO EVANS:  You have agreed on everything

8    now except whether Beldock will continue in some way.

9    Everything else is agreed?

10          MR. TUNICK:  Yes.

11          MR. MARINO:  Yes.

12          JHO EVANS:  Everything agreed except the

13    question of what happens if you don't like Beldock.

14          MR. RUBIN:  Right.

15          MR GREENAWALT:  We have one more thing.

16          JHO EVANS:  Is everything else agreed except

17    that?

18          MR. RUBIN:  The only other issue is what

19    lab, the place of storage.  Right now it's my

20    understanding that these are stored at True Color

21    Laboratories.

22          MR. LARRY SHAW:  A portion are stored there.

23          MR. RUBIN:  A portion stored there and a

24    portion stored at Edie's house.

25          Is that true?

26

DEBRA SALZMAN, RMR, Official Court Reporter

28

|  | Proceedings |
| --- | --- |
| 1 |  |
| 2 | MS. SHAW MARCUS:  Yes. |
| 3 | MR. RUBIN:  Is there a problem if you put |
| 4 | all the photos at True Color? |
| 5 | MR. MARINO:  The problem is the expense; it |
| 6 | seems to me a waste of money. |
| 7 | (Discussion held off the record.) |
| 8 | MR. MARINO:  Let's do that.  To start, at |
| 9 | some point get together and determine --   - |
| 10 | MR. TUNICK:  Just so they're in one place. |
| 11 | MR. RUDES:  We're going to store them all at |
| 12 | True Color and then decide what they're going to do? |
| 13 | MR. MARINO:  They can be scanned at True |
| 14 | Color. |
| 15 | MR. TUNICK:  They're going to be stored at |
| 16 | True Color Lab.  All photos have to be delivered to |
| 17 | True Color Lab. |
| 18 | JHO EVANS:  Let's say this.  If two-thirds |
| 19 | of the parties agree -- |
| 20 | MR. TUNICK:  That this is a deal -- |
| 21 | JHO EVANS:  -- that any photograph can be |
| 22 | taken out and given to any one of the parties, that |
| 23 | will be done. |
| 24 | MR. MARINO:  I'm happy with that. |
| 25 | MR. RUDES:  There's a problem now about |
| 26 | family photos that are in bins, which they say have to |

DEBRA SALZMAN, RMR, Official Court Reporter