UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

SHAW FAMILY ARCHIVES, LTD., EDITH     :
MARCUS and META STEVENS,

                                :

              Plaintiffs,          Case No. 05 Civ. 3939 (CM)

                                :

            -against-           Honorable Colleen McMahon

                                :

CMG WORLDWIDE, INC., an Indiana
Corporation and MARILYN MONROE, LLC,   :
a Delaware Limited Liability Company,

                                :

            Defendants.

-------------------------------------------------------- X

## DEFENDANTS / CONSOLIDATED PLAINTIFFS' MEMORANDUM IN FURTHER SUPPORT OF THEIR CROSS-MOTION TO STRIKE EVIDENCE FROM PLAINTIFFS' SUMMARY JUDGMENT MOTION ON DOMICILE

LOEB & LOEB LLP

345 Park Avenue
New York, New York 10154
Tel: 212-407-4000
Fax: 212-407-4990

*Attorneys for Marilyn Monroe LLC*

SOVICH MINCH, LLP

10099 Chesapeake Drive, Suite 100
McCordsville, Indiana 46055
Tel: 317-335-3601
Fax: 317-335-3602

*Attorneys for CMG Worldwide, Inc.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................................ii

PRELIMINARY STATEMENT ............................................................................1

I.    THE TAX AFFIDAVITS SHOULD BE STRICKEN ....................................3

    A.    The Tax Affidavits are Inadmissible Hearsay Offered to Prove Marilyn Monroe's Domicile ................................................................3

    B.    The Tax Affidavits Do Not Meet Any Hearsay Exception...................................3

    C.    The Tax Affidavits are Not Admissible Under the Residual Hearsay Exception ................................................................6

    D.    The Hearsay Statements in the Tax Affidavits are Not Admissible Under the Ancient Document Exception ................................8

II.    THE OUT-OF-COURT STATEMENTS ARE HEARSAY AND WERE NOT OFFERED FOR ANY PROPER PURPOSE....................................10

III.    PLAINTIFFS OFFER NO REASON WHY STATEMENTS OF ESTATE EXECUTORS SHOULD NOT BE STRICKEN.............................................12

IV.    PLAINTIFFS OFFER NO REASON WHY THE 1955 INTERVIEW SNIPPET SHOULD NOT BE STRICKEN....................................................13

V.    DOCUMENTS PRODUCED AFTER DISCOVERY...................................13

CONCLUSION..............................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Columbia First Bank FSB v. United States*,
    58 Fed. Cl. 333 (2003) ..................................................................................9

*Curtis v. Curtis*,
    185 A.D. 391, 173 N.Y.S. 103 (App. Div. 1st Dep't 1918) .....................6

*DeWeerth v. Baldinger*,,
    658 F. Supp. 688 (S.D.N.Y.), *rev'd*, 836 F.2d 103 (2d Cir. 1987) ...........9

*Hicks v. Charles Pfizer & Co. Inc.*,
    466 F. Supp. 2d 799 (E.D. Tex. 2005)...................................................10

*In re Cornfield*,
    365 F. Supp. 2d 271 (E.D.N.Y. 2004) .................................................4-6

*In re Harkness' Estate*,
    183 A.D. 396, 170 N.Y.S. 1024 (App. Div. 1st Dept. 1918).................6

*Phipps v. Comprehensive Cmty. Dev. Corp.*,
    No. 00 Civ. 6063 (RJH), 2005 WL 287413 (S.D.N.Y. Feb. 4, 2005) ...................11

*Texas v. Florida*,
    306 U.S. 398, 59 S. Ct. 563 (1939)........................................................6

*United States v Bryce*,
    208 F.3d 346 (2d Cir. 1999)...............................................................6, 8

*United States v. Hajda*,
    135 F.3d 439 (7th Cir. 1998) .................................................................9

*United States v. Stelmokas*,
    No. Civ. A. 92-3440, 1995 WL 464264 (E.D. Pa. Aug. 2, 1995), *aff'd*, 100 F.3d 302
    (3d Cir. 1996)........................................................................................9


OTHER AUTHORITIES

5 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 8:118
    (3d ed. 2007) ..........................................................................................5

5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* §803.18, at 8-3-118.4 (2d ed. 2008) ...........................................................................................10

5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 801.31[2], at 801-58.1 (2d ed. 2008)...........................................................................................11

5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 801.31[3][d], at 801-63 (2d ed. 2008)...........................................................................................12

11 James W.M. Moore, *Moore's Federal Practice* § 56.14[4][a], at 56-237 (3d ed. 2007) ...........2

Fed. R. Evid. 701(a) ............................................................................................................13

Fed. R. Evid. 801(d)(1)(A) ...................................................................................................5

Fed. R. Evid. 801(d)(2) ........................................................................................................4

Fed. R. Evid. 803(6) .........................................................................................................5-6

Fed. R. Evid. 803(16) .........................................................................................................10

Fed. R. Evid. 804(b)(1) ........................................................................................................5

Fed. R. Evid. 804(b)(3) ........................................................................................................6

Fed. R. Evid. 805 .................................................................................................................9

Fed. R. Evid. 807 ...........................................................................................................6, 8

## PRELIMINARY STATEMENT

Defendants' moving brief demonstrated that Plaintiffs' summary judgment motion improperly relies on inadmissible statements to prove that Marilyn Monroe died a New York domiciliary.  (Defendants' Memorandum of Law in Support of Cross-Motion to Strike, dated March 13, 2008 ("Defs.' Br.").)  These statements include, (i) hearsay affidavits submitted by Aaron Frosch to the California tax appraiser in 1966 ("Tax Affidavits"), (ii) statements made by or on behalf of estate executors in various probate proceedings and the Nancy Miracle litigation ("Executor Statements"), which are legally irrelevant to Monroe's actual domicile, (iii) out-of-court hearsay letters offered for no proper purpose ("Out-of-Court Statements"), and (iv) a purported radio interview of Marilyn Monroe from 1955 that is incomplete, unreliable and unauthentic ("Interview Snippet").

Plaintiffs all but concede that the Tax Affidavits and Executor Statements are hearsay, but now claim that they did not offer them to prove that Monroe died a New York domiciliary. Despite their protests to the contrary, Plaintiffs' own Statement of Facts cites these statements expressly to prove domicile.  (*See, e.g.*, Plaintiffs' Rule 56.1 Statement of Facts in Support of Motion for Summary Judgment, dated February 14, 2008 ("Pls.' 56.1 Stmt.") ¶ 1 ("Marilyn Monroe died a domiciliary of New York State."), ¶ 5 ("When Marilyn Monroe died, her permanent residence was 444 E. 57th Street, New York, New York."), ¶ 48 ("The [Tax Affidavits] established that Marilyn Monroe was a New York domiciliary at the time of her death.").)  Recognizing the vulnerability of their position (and their contrived "evidence"), Plaintiffs try to shoe horn these statements into an array of hearsay exceptions.  None of the exceptions apply here.

Plaintiffs also contend that they rely on the Out-of-Court Statements merely to show Defendants' subjective belief as to Monroe's domicile and why they supposedly cannot explain certain inconsistent statements. Yet none of the Out-of-Court Statements were made by anyone Plaintiffs claim made inconsistent statements.

In addition, rather than address the Executor Statements separately from the Tax Affidavits, Plaintiffs lump them together into what they call the "Monroe Probate Documents." (Plaintiffs' Opposition to Motion to Strike, dated March 27, 2008 ("Pls.' Opp. Br."), at 1-2.) As a result, Plaintiffs completely ignore well-settled law that an executors' statements are irrelevant to a determination of the decedents' true domicile. Plaintiffs also ignore the fact that the Interview Snippet is unreliable because it is only a small portion of a longer interview, and irrelevant because Monroe never actually resided in Brooklyn. There is therefore no reason the Court should not strike all of the above statements from Plaintiffs' summary judgment motion.

Lastly, Plaintiffs' decry Defendants' "repeated use of the cross-motion procedure" (Pls.' Opp. Br. 2), even though a cross-motion to strike inadmissible evidence on summary judgment is well-recognized as a legitimate procedural device. *See* 11 James W.M. Moore, *Moore's Federal Practice* ("*Moore's*") § 56.14[4][a], at 56-237 (3d ed. 2007).[1] Indeed, if Defendants had not moved to strike, Plaintiffs would surely argue that Defendants had waived any objections to Plaintiffs' evidence. *Id.* at § 56.14[4][b], at 56-239 to 240 (party that fails to move to strike or object to improper evidence on summary judgment is generally deemed to have waived any objections on appeal).

---

[1] Defendants' instant motion stands in stark contrast to Plaintiffs' recently filed cross-motion to preclude Defendants' public domain claim, which did not seek to preclude evidence, as Plaintiffs had represented to Defendants and to the Court, but was an improper attempt to file a second summary judgment motion. (*See* Defendants' Memorandum of Law in Opposition to Plaintiffs' Cross-Motion to Preclude Defendants' Public Domain Claim, dated March 25, 2008 29-30.)

## I.    THE TAX AFFIDAVITS SHOULD BE STRICKEN

### A.    The Tax Affidavits are Inadmissible Hearsay Offered to Prove Marilyn Monroe's Domicile

In their opening brief, Defendants explained why Aaron Frosch's Affidavit Concerning Residence and the supporting affidavits were inadmissible hearsay and should be stricken from Plaintiffs' summary judgment motion.  (Defs.' Br. 3-5.)  Plaintiffs now claim that they did not offer any of the disputed documents, including the Tax Affidavits, to prove Monroe's actual domicile.  (Pls.' Opp. Br. 3-4.)  However, Plaintiffs' own Rule 56.1 Statement of Facts cites the Tax Affidavits as proof of Monroe's domicile.  For example, Plaintiffs cite the Tax Affidavits as proof that "When Marilyn Monroe died, her permanent residence was 444 E. 57th Street, New York, New York." (Pls.' 56.1 Stmt. ¶ 5), and Plaintiffs assert that the Tax Affidavits "established that Marilyn Monroe was a New York domiciliary at the time of her death." (Pls.' 56.1 Stmt. ¶ 48).[2, 3]

### B.    The Tax Affidavits Do Not Meet Any Hearsay Exception

Recognizing that the Tax Affidavits were offered to prove Monroe's domicile, Plaintiffs argue that they may nevertheless be considered on summary judgment because the Tax Affidavits meet certain exceptions to the hearsay rule.  (Pls.' Opp. Br. 7-8.)  However, none of those exceptions apply.

---

[2] In any event, even if offered merely to prove that Frosch made certain statements, as explained in Defendants' March 13, 2008 Opposition to Plaintiffs' Summary Judgment Motion on Domicile, pp. 8-11, concepts of privity cannot be stretched so far as to judicially estop Defendants based on statements made by Frosch decades before MMLLC or CMG even existed.

[3] Plaintiffs also offer the Report of the Inheritance Tax Appraiser to prove that "When Marilyn Monroe died, she was a non-resident of California" (Pls.' 56.1 Stmt. ¶ 6), even though the Report itself states only that Monroe was a resident of New York, and says nothing about whether she was also a resident (much less a domiciliary) of California.  (*See* Defs.' Br. 6-7.)

First, Plaintiffs argue that the Tax Affidavits are adoptive admissions of Aaron Frosch under Rule 801(d)(2), and are therefore non-hearsay admissions of a party opponent.  But Plaintiffs do not explain how the affidavits, submitted by Frosch and four other third-parties, can be considered statements of *Defendants*, or how *Defendants* somehow adopted those statements. *See* Fed. R. Evid. 801(d)(2) ("A statement is not hearsay if . . . [it] is offered against a party and is (A) the *party's own statement*, in either an individual or a representative capacity or (B) a statement of which *the party* has manifested an adoption or belief in its truth . . . ") (emphasis added).  As explained in Defendants' opposition to Plaintiffs' summary judgment motion, pp. 8-11, Frosch is not in privity with either MMLLC or CMG, neither of which existed at the time the Tax Affidavits were submitted, and the affidavits therefore cannot be offered against Defendants.

Even if Frosch were considered to be in privity with MMLLC or CMG (which he is not), his statements or statements adopted by him are not admissible against Defendants.  Courts in the Second Circuit have recognized that Rule 801(d)(2)(A) abolished the common law rule that statements of a party's privy are admissible against the party as an admission.  *See In re Cornfield*, 365 F. Supp. 2d 271, 277 (E.D.N.Y. 2004), *aff'd*, 156 Fed. Appx. 343 (2d Cir. 2005) (holding that decedent's statement was inadmissible when offered against his estate, and stating "Rule 801(d)(2)(A) altered the common law rule by providing only for the admission of statements made by a party to the action.  Privity-based admissions were abolished.") (citing *Huff v. White Motor Corp.*, 609 F.2d 286, 290-91 (7th Cir. 1979)); *Matter of Teltronics Services, Inc.* 29 B.R. 139, 165 (Bankr. E.D.N.Y. 1983) ("[I]n order to be admissible, statements formerly

recognized as privity-based admissions must fall within another recognized hearsay exception.").[4]

Second, Plaintiffs suggest that the Tax Affidavits are admissible as former testimony of an unavailable witness, under Rule 804(b)(1).  In addition to offering no proof that the third-party affiants are unavailable, or that Defendants had an opportunity to cross-examine the affiants back in 1966, Plaintiffs fail to recognize that Rule 804(b)(1) applies only to "[t]estimony given as a witness at another hearing . . . or in a deposition taken in compliance with law" Fed. R. Evid. 804(b)(1), and does not apply to affidavits, *see* 5 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 8:118 (3d ed. 2007) ("[C]learly, the former testimony exception does not embrace affidavits, even those prepared for use in proceedings, since affidavits are not testimony that may be developed by examination.") (citing *N.L.R.B. v. McClure Assoc., Inc.*, 556 F.2d 725, 726 (4th Cir. 1977) ("affidavit did not comply with Rule 804(b)(1) . . . since it was not a deposition taken in compliance with law in the same or another proceeding; and . . . there was no opportunity for cross-examination.").

Third, Plaintiffs offer a variety of other hearsay exceptions (even carelessly repeating the admission of a party-opponent exception) (Pls.' Opp. Br. 7), none of which apply.  Prior inconsistent statements are admissible only against a witness testifying at trial subject to cross-examination, *see* Fed. R. Evid. 801(d)(1)(A), which is obviously not the case here.  The business records exception requires a showing that the statements were prepared as part of a regular business practice at or near the time of the events being recorded, *see* Fed. R. Evid. 803(6), yet the Tax Affidavits were prepared years after Monroe's death and certainly not as part of any

---

[4] Since statements of a party's privy offered to prove the truth are not even *admissible* against that party, it is extremely doubtful that such statements can judicially *bind* that party, as Plaintiffs seek to do here.

regular business practice.  And Plaintiffs do not even attempt to explain how the statements of

Monroe's residence were made against any of the affiants' interests, *see* Fed. R. Evid. 804(b)(3),

especially when Plaintiffs argue that the affidavits were submitted to obtain a tax *benefit*.

### C.   The Tax Affidavits are Not Admissible Under the Residual Hearsay Exception

Plaintiffs next argue that the Tax Affidavits are admissible under the residual hearsay

exception in Rule 807.  (Pls.' Br. 7-8.)  The Second Circuit has stated that a hearsay statement

may be admitted under the residual exception only if "(i) it is particularly trustworthy; (ii) it

bears on a material fact; (iii) it is the most probative evidence addressing that fact; (iv) its

admission is consistent with the rules of evidence and advances the interests of justice; and (v) its

proffer follows adequate notice to the adverse party."  *United States v Bryce*, 208 F.3d 346, 350-

51 (2d Cir. 1999).  "The test for admissibility under Rule 807 is onerous and the exception

should only be invoked in exceptional circumstances."  *In re Cornfield*, 365 F. Supp. 2d at 278

(citing *Schering Corp. v. Pfizer, Inc.*, 189 F.3d 218, 232 (2d Cir. 1999)).

The third-party Tax Affidavits are, in fact, far *less* probative of Marilyn Monroe's

domicile than the overwhelming evidence of Monroe's own actions showing her intent to make

California her home at the time of her death.  (*See, e.g.*, Defendants' Statement of Additional

Material Facts, dated March 13, 2008 ("Defs.' 56.1 Stmt.") ¶¶ 1-38, 57-76); *See Texas v.

Florida*, 306 U.S. 398, 425, 59 S. Ct. 563, 576 (1939) ("While one's statements may supply

evidence of the intention requisite to establish domicile at a given place of residence, they cannot

supply the fact of residence there; and they are of slight weight when they conflict with the

fact.") (citations omitted); *Curtis v. Curtis*, 185 A.D. 391, 396, 173 N.Y.S. 103, 105 (1st Dep't

1918) ("Little force attaches to such a declaration as against what may be called the acts of the

person, whose domicile is in question, going to make up the manner and conduct of life[.]"); *In

re Harkness' Estate*, 183 A.D. 396, 405, 170 N.Y.S. 1024, 1030 (1st Dep't 1918) ("little weight

is to be attached to declarations, as against acts constituting the conduct and manner of life, from the which intent is much more certainly inferred").

In addition, the Tax Affidavits, which were written by attorneys from Frosch's office, are particularly *untrustworthy* because they were designed to avoid inheritance tax.  (Defs.' 56.1 Stmt. ¶ 57.)  An attorney with the California law firm of Gang Tyre, who represented Frosch as the ancillary executor of Monroe's estate, told Frosch that the affidavits would be needed "to counteract the fact that Miss Monroe owned a home and actually was living in California at the time of her death, and that her mother is physically in California."  (Declaration of David Marcus dated February 14, 2008 ("Marcus Decl.") Ex. 10 at MMLLC (SHAW) 000466.)  Frosch was even warned that "should the State of California reject the contention that Miss Monroe was a non-resident of California, then of course, there would be a serious tax situation."  (*Id.*)  Indeed, Frosch later admitted that Gang Tyre attorneys "suggested . . . the types of evidence to be secured to substantiate this position [that Monroe died a nonresident of California.]"  (*Id.*, Ex. 26 at SFA10191.)

Consequently, it is no surprise that the Tax Affidavits conflict with the affiants' own prior statements to Frosch.   For example, in a memo to his associate, Frosch noted that May Reis told him that she "thought that [Monroe] possibly last voted in Connecticut where she resided with Arthur Miller" (*id.*, Ex. 14 at MM-0051631), that when Monroe was married to Miller she "deemed Conn[ecticut] to be her residence," and that after Monroe left New York "she did not return to the New York apartment except for a few days in or about May of 1962 when she returned to attend a political rally" (*id.*, Ex. 15 at MM-0057018).  Nevertheless, Frosch omitted all of those facts from Reis' Tax Affidavit.  Similarly, although Hattie Stephenson Amos told Frosch that she thought a Mrs. Rosten had called to ask her to go to California for a month

7

(*id.*), Amos's affidavit instead stated that it was Monroe who had called her (*id.*, Ex. 16 at MM-0009355.)

Plaintiffs' arguments that the Tax Affidavits were notarized, submitted by Frosch to the California tax appraiser, and later produced from Defendants' files, are all irrelevant to their admissibility.  (Pls.' Opp. Br. 3, 8.)  Defendants do not claim that the documents were forgeries, or that they were not submitted by Frosch, but rather that the statements contained in the affidavits are untrustworthy and of only slight probative value.  Moreover, although Plaintiffs claim the Tax Affidavits were signed by Monroe's long standing friends and employees, in fact, Monroe's close friend and business manager, Inez Melson, refused to provide an affidavit stating that Monroe was a New York resident.  (Defs.' 56.1 Stmt. ¶ 69.)

There is substantial evidence that the Tax Affidavits are untrustworthy, self-serving and less probative of Marilyn Monroe's domicile than her own acts, and therefore cannot be admitted under the residual hearsay exception.  *See Bryce*, 208 F.3d at 350-51; Fed. R. Evid. 807.

### D.  The Hearsay Statements in the Tax Affidavits are Not Admissible Under the Ancient Document Exception

Plaintiffs argue that because the parties have stipulated to the authenticity of documents produced during discovery (except some narrow categories), the Tax Affidavits are admissible under the ancient document exception to the hearsay rule.  (Pls.' Opp. Br. 6-7.)  However, the stipulation specifically states it would not "prevent any party from objecting to any document or piece of evidence on any grounds other than authenticity"  (Third Declaration of David Marcus, dated March 27, 2008, Ex. C), and therefore cannot be used to override Defendants' hearsay

objection.[5]  Again, Defendants do not object to the Tax Affidavits as unauthentic, but as unreliable hearsay because they were likely concocted to avoid taxation or were based on faulty perception and memory of Monroe's statements years earlier.

In any event, even if the Tax Affidavits themselves fall within the ancient document exception, the purported statements of Marilyn Monroe concerning her residence recounted in the affidavits constitute hearsay within hearsay.  *See* Fed. R. Evid. 805 ("Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules.").

Several courts have recognized that hearsay statements within ancient documents must meet a separate hearsay exception.  *See United States v. Hajda*, 135 F.3d 439, 444 (7th Cir. 1998) ("If the [ancient] document contains more than one level of hearsay, an appropriate exception must be found for each level."); *Columbia First Bank FSB v. United States*, 58 Fed. Cl. 333, 338 (2003) (stating that if the ancient document rule were read so as to inoculate multiple levels of hearsay, "Rule 805 would be superfluous"); *United States v. Stelmokas*, No. Civ. A. 92-3440, 1995 WL 464264, at *6 (E.D. Pa. Aug. 2, 1995), *aff'd*, 100 F.3d 302 (3d Cir. 1996) ("the hearsay statements within the [report admitted under the ancient document rule] are not admissible under Rule 805.").  As one court has explained:

> The rationale of Rule 803(16) in permitting the admission of statements in ancient documents where the author is the declarant does not justify the admission of double hearsay merely because of its presence in an ancient document.  The danger of faulty perception persists unabated because a narrator, such as a reporter, may not properly record the remarks of the speaker. More generally, the risk of deception or mistake is compounded with each additional layer of hearsay, as any error will inevitably

---

[5]  There is no indication that the admission of authenticity in *DeWeerth v. Baldinger*, 658 F. Supp. 688, 695 (S.D.N.Y.), *rev'd*, 836 F.2d 103 (2d Cir. 1987), cited by Plaintiffs, contained a similar reservation of rights.

> be passed on regardless of the accuracy or sincerity of the author of
> the ancient document or prior relators.

*Hicks v. Charles Pfizer & Co.*, 466 F. Supp. 2d 799, 806 (E.D. Tex. 2005) (citation omitted)

(holding that "Even if a document qualifies as ancient under Rule 803(16), other hearsay

exceptions must be used to render each individual layer of hearsay admissible.")

Here, Monroe's supposed statements that she was a New York resident recounted in the

Tax Affidavits are hearsay within hearsay, and are subject to the dangers of faulty perception and

sincerity, as well as memory.  As explained above, the Tax Affidavits were prepared years after

Monroe's death by attorneys seeking to avoid taxes, and, in fact, they conflict with the affiants'

prior statements as well as the objective evidence of Monroe's words and deeds.  Thus, the

policy underlying the ancient document hearsay exception – *i.e.*, that there was no motive to

misrepresent statements made more than 20 years before the litigation – does not apply here.  *Cf.*

5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* ("*Weinstein's*")

§803.18, at 8-3-118.4 (2d ed. 2008) ("Even if the document is of the requisite age and meets

authentication requirements, the judge may exclude it if, at the time the document was written, a

motive for misrepresentation already existed[.]").  Absent a separate exception for the hearsay

statements of Monroe contained in the Tax Affidavits, they are inadmissible and should be

stricken.

## II.    THE OUT-OF-COURT STATEMENTS ARE HEARSAY AND WERE NOT OFFERED FOR ANY PROPER PURPOSE

Defendants opening brief explained why the Out-of-Court Statements are hearsay, were

made without personal knowledge, and are irrelevant to a determination of Monroe's domicile.

(Defs.' Br. 10-13.)  Plaintiffs essentially admit that the Out-of-Court Statements were not offered

for any proper purpose when they argue that the "[t]he only documents the Court need address"

are the "Monroe Probate Documents"  (Pls.' Opp. Br. 1), which include only the Tax Affidavits
and Executor Statements.

      Plaintiffs nevertheless try to justify their reliance on the Out-of-Court Statements by
contending they are relevant to their claim that Defendants supposedly "believed" that Monroe
died a New York domiciliary, and therefore cannot explain prior judicial representations.  (Pls.'
Opp. Br. 4.)  However, none of the Out-of-Court Statements were made by someone Plaintiffs
claim made inconsistent judicial statements.  First, Plaintiffs claim to rely on Mark Roesler's
statement to Anna Strasberg to prove "CMG's belief that Marilyn Monroe died a New York
domiciliary" (Pls.' Br. 4) – but nowhere do Plaintiffs claim that CMG ever stated to any tribunal
that Marilyn Monroe died a New York domiciliary, let alone that a tribunal ever adopted such a
statement.  Moreover, that hearsay statement was made before CMG had any relationship with
the Monroe Estate or MMLLC, and without any knowledge of Monroe's actions establishing her
California domicile.  (Defs.' Br. 10-11.)

      Second, the letter by Roger Richman and its hearsay assertion that Irving Seidman
supposedly stated that Monroe was a New York domiciliary, has no bearing on what MMLLC or
CMG believed.  Plaintiffs do not event attempt to prove that Anna Strasberg actually reviewed
that letter, or that she somehow adopted its contents through silence.  *See Phipps v.
Comprehensive Cmty. Dev. Corp.*, No. 00 Civ. 6063 (RJH), 2005 WL 287413, at *13 (S.D.N.Y.
Feb. 4, 2005) ("The Second Circuit has stated that '[s]ilence is not evidence of an admission,
unless there are circumstances which render it more reasonably probable that a man would
answer the charge made against him than that he would not.'") (quoting *United States v. Flecha*,
539 F.2d 874, 877 (2d Cir. 1976)); 5 *Weinstein's* § 801.31[2], at 801-58.1 ("The proponent of the
admission has the burden of proving that the party's conduct manifested an intent to adopt the

statement."); *id.* § 801.31[3][d], at 801-63 ("In the case of written statements such as letters or other documents, mere nonresponse is generally considered insufficient to show that the recipient adopted its contents.").  That is especially true here where Ms. Strasberg was not the addressee of the letter, but was merely sent a copy, and the letter dealt almost entirely with a fee dispute with which she was not directly involved.

Third, the letter from Jonathan Reichman of Kenyon & Kenyon to CMG's counsel is irrelevant because, as noted above, Plaintiffs do not claim that CMG made any prior inconsistent judicial statements.  In any event, Plaintiffs do not, and cannot, show that CMG somehow adopted statements contained in the Kenyon & Kenyon letter through silence.  In fact, CMG's counsel, Christine Sovich, responded to the letter in a conversation with Mr. Reichman, which resolved any differences between Reichman's client and CMG.  (Declaration of Christine M. Sovich, dated March 13, 2008 ¶ 6.)

Lastly, Plaintiffs do not even attempt to justify their reliance on a letter written by Larry Shaw's own former attorney, Martin Bressler, (Defs.' Br. 13), which should therefore be stricken.

In sum, all of the Out-of-Court Statements are hearsay and were offered for an improper purpose, and should therefore be stricken.

## III.    PLAINTIFFS OFFER NO REASON WHY STATEMENTS OF ESTATE EXECUTORS SHOULD NOT BE STRICKEN

Plaintiffs completely ignore Defendants' arguments as to why the Executor Statements concerning Monroe's residence or domicile should be stricken.  (Defs.' Br. 8-9.)  In particular, Defendants cited numerous cases holding that statements of estate executors cannot affect a

decedent's true domicile.  (*Id.*)  Thus, there is no reason why the Court should not strike all of

the Executor Statements.[6]

## IV.    PLAINTIFFS OFFER NO REASON WHY THE 1955 INTERVIEW SNIPPET SHOULD NOT BE STRICKEN

Plaintiffs' also completely ignore Defendants' arguments that the Interview Snippet

should be stricken because it is only a tiny portion of a longer interview, because Monroe never

actually resided in Brooklyn, and because the overwhelming objective evidence shows that six

years later Monroe moved to California where she made her permanent home.  (Defs.' Br. 13-

19.)  Instead, Plaintiffs illogically argue that Marilyn Monroe's supposed statements in 1955 are

somehow evidence of Defendants' subjective beliefs.  (Pls.' Opp. Br. 6.)

Moreover, Edith Marcus' statement that she now recognizes Marilyn Monroe's voice on

the Interview Snippet as a result of spending time with Monroe over <u>fifty years ago</u>, when she

was <u>ten years old</u>, (Declaration of Edith Marcus, dated March 27, 2008 ¶¶ 6-7) is entirely

unreliable.  *See* Fed. R. Evid. 701(a) (testimony must be "rationally based on the perception of

the witness").  The interview snippet should therefore be stricken.

## V.    DOCUMENTS PRODUCED AFTER DISCOVERY

Plaintiffs claim that Defendants "misrepresent the facts" when they point out that

Plaintiffs rely upon documents produced after the discovery deadline, yet in the same paragraph

Plaintiffs admit that they did produce certain documents after the discovery deadline, such as

certified copies of court records and court transcripts.  (Pls.' Opp. Br. 8-9.)  But Defendants do

not argue that Plaintiffs should be precluded from relying upon those documents in their

domicile motion.  Defendants' point is only that Plaintiffs cannot rely on those documents and at

---

[6] Of course, that applies equally to the Affidavit Concerning Residence submitted by Aaron Frosch as Executor of Monroe's estate.

the same time argue that Defendants cannot rely on the very same type of publicly available documents in their public domain motion.  (*See* Plaintiffs' Memorandum of Law in Support of Cross-Motion to Preclude, dated March 4, 2008, at 8-11; Defendants' Memorandum of Law in Opposition to Plaintiffs' Cross-Motion to Preclude, dated March 25, 2008, at 38-41.)  Plaintiffs cannot have it both ways.

## CONCLUSION

For all the foregoing reasons, Defendants' respectfully ask the Court to enter an Order striking the documents identified in Defendants' moving brief from Plaintiffs' summary judgment motion on domicile, and to award Defendants such other and further relief as the Court deems just.

Dated: New York, New York
    April 3, 2008

        LOEB & LOEB LLP

        By: _____/s/ Paula K. Colbath_____
          Paula K. Colbath
          Barry I. Slotnick
          Tal Dickstein
          345 Park Avenue
          New York, New York 10154-1895
          (212) 407-4000

          *Attorneys for Marilyn Monroe LLC*

        SOVICH MINCH, LLP

        By: ___/s/ Theodore J. Minch_____
          Theodore J. Minch, Esq.
          10099 Chesapeake Drive, Suite 100
          McCordsville, Indiana 46055
          Tel: (317) 335-3601
          Fax: (317) 335-3602

          *Attorneys for CMG Worldwide, Inc.*