UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
SHAW FAMILY ARCHIVES, LTD., EDITH MARCUS,  :
and META STEVENS,
                                                                      :

                                                                      :

                                  Plaintiffs,         :   Index No. O5 CV 3939 (CM)

                                                                      :
              -against-                                       :

                                                                      :

CMG WORLDWIDE, INC., an Indiana Corporation     :
and MARILYN MONROE, LLC, a Delaware               :
Limited Liability Company,
                                                                      :

                                  Defendants.          :

                                                                      :
----------------------------------------------------------------------X


**THE SHAW FAMILY'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF ITS CROSS-MOTION FOR AN ORDER THAT DEFENDANTS ARE PRECLUDED
FROM ASSERTING COUNT 1 OF THEIR THRID AMENDED COMPLAINT ON
SUMMARY JUDGMENT OR AT TRIAL AND FOR SANCTIONS**


LAW OFFICES OF CHRISTOPHER SERBAGI
488 Madison Avenue, Suite 1120
New York, New York  10022
Tele: (212) 593-2112
Fax: (212) 308-8582

Attorneys for the Plainiffs

On the Brief:
Christopher Serbagi, Esq.
David Marcus, Esq.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT .......................................................................................................... 3

I.     THE SHAW FAMILY'S PRECLUSION MOTION IS NOT IMPROPER ................ 3

     A.  The Shaw Family's Preclusion Motion Is Not Duplicative Of Its Summary
        Judgment Motion ...................................................................................... 3

     B.  The Shaw Family's Preclusion Motion Does Not Violate Local Rule 37.2 or
        Magistrate Judge Fox's June 6, 2006 Discovery Order ........................... 4

II.    THE DEFENDANTS' RESPONSES TO THE SHAW FAMILY'S
     INTEROGATORIES ARE MAREKDLY DIFFERENT THAN THE
     "EVIDENCE" UPON WHICH THEY NOW RELY ...................................... 8.

     A.  The Defendants' Purported Response to the Shaw Family's Contention
        Interrogatory Is Markedly Diferent Than "Evidence" Upon Which ...................... 8

     B.  Defendants Could Not Answer The Shaw Family Contention Because The
        Claims Concerning a Justiciable Controversy Were Fabricated, As
        Evidenced By The Entirely New Allegations Now ............................................... 10

     C.  Deffendants' Failure To Answer An Interrogatory as to the Intellectual
        Property They Purportedly Own Iteself Requires Summary Judgment In
        The Shaw Family's Favor. ................................................................................. 11

III.   THE COURT SHOULD PRECLUDE DEFENDANTS FROM RELYING ON
     DOCUMENTS THAT THEY DID NOT PRODUCE DURING DISOVCERY,
     EVEN IF THEY ARE PUBLICLY AVAILABLE ...................................... 15

IV.   DEFEENDANTS' 30(B)(6) WITNESSES TOLD AN ENTIRELY DIFFERENT
     STORY THAN DEFENDANTS' PRESENT ATTORNEYS NOW ASSERT ......... 16

V.    THE COMPLAINT IS LIMITED TO RIZZOLI AND BALLANTINE AND
     JUDGE FOX NEVER ORDERED THE PRODUCTION OF A SINGLE
     DOCUMENT BEYOND THOSE WORKS .............................................. 17

CONCLUSION ....................................................................................................... 19

TABLE OF AUTHORITIES

**CASES:**

Airframe Sys., Inc. v. L-3 Communications Corp.,
     No. 05 CV 7638, 2006 U.S.Dist. LEXIS 64362 (S.D.N.Y. Sept. 6, 2006)..................17

Clean Earth Remediation and Construction Services, Inc. v. American Int'l Group. Inc.,
     05 Civ. 3651 (LTS) (HBP), 2007 U.S. Dist. LEXIS 62838 (S.D.N.Y. Aug. 23, 2007)....... 5

Franklin Electronic Publishers, Inc. v. Unisonic Corp.,
     No. 90 Civ. 6196 (RPP) 763 F. Supp. 1, 1991 U.S. Dist. LEXIS 5349 (S.D.N.Y. 1991)...18

Giladi V. Strauch
     94 Civ. 3976 (RMB) (HBP), 2007 U.S. Dist. LEXIS 8666 (S.D.N.Y. Feb. 6, 2007)........5

Hartford Life Insurance Co. v. Bank of America Corp.,
     No. 06 Civ. 3805 (LAK) (HBP), 2007 U.S. Dist. LEXIS 61668 (S.D.N.Y. 2007)...........5

Kolenc v. Bellizzi,
     No. 95 Civ. 4494 (LMM) (KNF), 1999 U.S.Dist. LEXIS 1794 (S.D.N.Y. Feb. 19, 1999)..5

Reilly v. Natwest Markets Group, Inc.,
     181 F.3d 253 (2d Cir. 1999)..................................................................17

Spring Valley Water Co. v. Cosco Industries, Inc.,
     No. 91 Civ. 0410 (PKL), 1998 U.S. Dist. LEXIS 12199 (S.D.N.Y. Aug. 9, 1998)...........6

Zahler v. Twin City Fire Ins. Co.,
     04 Civ. 10299 (LAP) 2007 U.S. Dist. LEXIS 94966 (S.D.N.Y. Dec. 21, 2007)..............4

STATUTES:

Fed. R. Civ. P. 8……………………………………………………………………………..18

Fed. R. Civ. P. 30(b)(b)(6)…………………………………………………………………..16

Fed. R. Civ. P. 33(d)………………………………………………………………………15

Fed. R. Civ. P. 37……………………………………………………………………….4, 17

S.D.N.Y. R.  37.2 ........................................................................................ 4, 5, 6

Shaw Family Archives, Ltd., Bradford Licensing Associates, LP., Meta Stevens, and Edith Marcus (the "Shaw Family") respectfully submit this reply memorandum of law in further support of the Shaw Family's motion to preclude all of the evidence upon which Defendants currently rely in support of their public domain claim, and for such other relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

One thing is absolutely clear: Defendants could not substantiate during discovery what their former attorneys alleged in the Third Amended Complaint concerning a justiciable controversy or the basis for their substantive claims, so their new attorneys concocted a conflicting story of their own. Defendants' allegations concerning a justiciable controversy are attorney driven; tactically inserted in the Third Amended Complaint by Defendants' former counsel, who knew exactly what they needed to plead to avoid a motion to dismiss. Even now, Messrs. Roesler and Strasberg do not even pretend to know about any of their attorneys' newfound justifications for a justiciable controversy. Indeed, they could not have known about it because the Defendants' attorneys rely entirely on documents that came from the Shaw Family's files. Attorney argument alone cannot overcome summary judgment.

Every allegation that Defendants' new attorneys assert in support of standing were absent in the Third Amended Complaint, where Defendants' prior attorneys relied on completely different arguments. When Messrs. Roesler and Strasberg could not substantiate during their depositions and interrogatories the arguments asserted by Defendants' prior attorneys, Defendants' new attorneys had to abandon those discredited allegations and construct an entirely new story. Defendants' new attorneys desperately attempt to garner all the facts they can currently muster and hope that the Court will not notice that they did not disclose this information during discovery, that they are different from what Defendants' former attorneys asserted before them, and that they contrast with what Defendants themselves stated during depositions and interrogatories. In the Third Amended Complaint, the justiciable controversy was purportedly based on the Shaw Family's representations to Defendants' licensees. Messrs. Roesler and Strasberg were unable to substantiate those allegations, so now the justiciable controversy is based on the

Shaw Family's attempt to re-register a copyright and Defendants' supposed reliance on letters that the Shaw Family sent to <u>third parties</u>, that did not even come from Defendants' files and Roesler and Strasberg do not claim to have seen. In the Third Amended Complaint, the purported controversy was based on Bradford's representations to Defendants' prospective licensees; Defendants have abandoned that fabrication and now claim it is based a Shaw Family web site image with a copyright registration symbol. Putting aside that Defendants' attorneys are obviously now engaged in a desperate scramble to concoct a justiciable controversy that never existed, Roesler and Strasberg do not recite one fact in their respective declarations that support the fable Defendants' attorneys now relate. That alone is sufficient for the Court to grant the Shaw Family's motion for summary judgment.

The Shaw Family always knew that Defendants' representations concerning a justiciable controversy were false, but it could not move to dismiss that claim because the Court would have assumed that Defendants' allegations were true in that procedural context. Thus, the end result of Defendants' fabricated facts concerning a justiciable controversy is that the Shaw Family had to spend many hundreds of thousands of dollars defending against those claims. It is this type of "win at any cost" behavior that forced Judge Morrow to characterize these Defendants as "fast and loose."

Defendants complain that the Shaw Family did not raise with Judge Fox that Defendants failed to disclose their theories in a contention interrogatory. Defendants miss the point. First, Defendants now expressly claim that they <u>did respond</u> to both Shaw Family contention interrogatories. But whether the Defendants responded or not is irrelevant because the Shaw Family knew there was no basis for a justiciable controversy and therefore had no conceivable reason to raise the issue with Judge Fox. The Shaw family could not very well ask Judge Fox to force the Defendants to disclose a theory concerning a justiciable controversy we knew did not exist. Defendants answered the contention interrogatory in the only way they could, which is not at all. But The Shaw Family had no way to know that Defendants would now raise completely different theories in support of their claims. Second, the Shaw Family's present motion is not the result of a discovery "dispute" that it needed to raise with Judge Fox. The Shaw

Family's preclusion motion seeks to limit Defendants to the claims they asserted and the information they provided during discovery, which was not an issue until they raised their novel theories in opposition to the Shaw Family's summary judgment motion. The Court is not required to accept attorney-driven argument concerning a justiciable controversy, especially when Messrs Strasberg and Roesler do not even pretend to support or have knowledge of them.

## ARGUMENT

### I.    THE SHAW FAMILY'S PRECLUSION MOTION IS NOT IMPROPER

#### A.    The Shaw Family's Prelusion Motion Is Not Duplicative Of Its Summary Judgment Motion

Defendants argue that the Court should strike the Shaw Family's preclusion motion because the Shaw Family formerly argued in its summary judgment motion that Defendants did not answer a contention interrogatory and that its 30(b)(6) witnesses did not provide the information upon which Defendants now rely. Defs' Mem., at 29-30. In short, the Shaw Family is purportedly attempting to avoid the Court's page limits.[1]

First, as the Court can readily see from the pages Defendants cite from the Shaw Family's summary judgment motion, the Shaw Family cited Defendants' failure to answer a contention interrogatory as evidence of their bad faith in support of the Shaw Family's motion for attorney's fees, not in support of a preclusion motion. Shaw Moving Mem., at 2, 20. Second, with respect to the Shaw Family's mention in its summary judgment brief of Defendants' failure to provide 30(b)(6) testimony, the Shaw Family formerly raised this argument as supplemental evidence that the Defendants failed to provide any evidence of standing and also in support for its motion for attorneys' fees. Shaw Moving Mem., at 6-8. The Shaw Family did not move to preclude any of that evidence in its summary judgment

---

[1] This argument is reminiscent of when Defendants formerly wrote to Judge Fox that the Shaw Family (a company composed of three elderly ladies and a young woman), falsely identified its 30(b)(6) deponent as "head of operations" as opposed to "operations manager."

motion.  Defendants' novel theory that it is improper for the Shaw Family to even mention Defendants'

discovery failures in support of two separate motions is baseless.

**B.    The Shaw Family's Preclusion Motion Does Not Violate Local Rule 37.2 or Magistrate Judge Fox's June 6, 2006 Discovery Order**

Defendants argue that the Shaw Family waived its right to object to Defendants new theory of a

justiciable controversy by failing to make a motion to compel before Judge Fox or with the Court.  Defs'

Mem., at 30-32.  But the Shaw Family's present preclusion motion is not based on a discovery "dispute"

between the parties, it is based on the simple and longstanding rule that a party cannot rely on evidence at

trial (or summary judgment) that she did not produce during discovery.  Zahler v. Twin City Fire Ins. Co.,

04 Civ. 10299 (LAP) 2007 U.S. Dist. LEXIS 94966, *4 (S.D.N.Y. Dec. 21, 2007) ("Rule 37 mandates

that a party is precluded from using evidence which was not properly disclosed during discovery.  This

result is self-executing and is an automatic sanction that is designed to provide a strong inducement for

disclosure of relevant material that the disclosing party expects to use as evidence.") (quotations and

citations omitted).  Thus, even assuming that Judge Fox's rules required the Shaw Family to object by

anticipating that they would raise new theories now, they cannot override basic precepts of law set forth in

the Federal Rules of Civil procedure.

There was no "dispute" to raise with Judge Fox or the Court because the Shaw Family had no

reason to believe that the information Defendants formerly provided did not constitute the basis of their

claim.  The Shaw Family had good reason for this belief because Defendants were unable to provide any

of the arguments they currently raise in interrogatory responses or in their respective 30(b)(6) depositions.

As far as the Shaw Family was concerned, there was no dispute to raise with Judge Fox because it always

knew the Defendants' allegations in the Third Amended Complaint were fabricated to overcome a motion

to dismiss and were attorney-driven.  It was not until the Defendants responded to the Shaw Family's

summary judgment motion on Count I that the Defendants raised these entirely new factual and legal

arguments that they never before disclosed.  It was then that the Shaw Family filed its motion to preclude,

4

which was in the nature of a <u>defensive objection to information that the Defendants did not provide before</u>. It is unfair of the Defendants to have expected the Shaw Family to magically anticipate that the Defendants would end up relying on claims and facts supporting a justiciable controversy and positions on their substantive claims that they declined to disclose in response to interrogatories, document requests, or by 30(b)(6) depositions.

Moreover, a Rule 37.2 conference was not required, especially because the Shaw Family's preclusion motion is in the nature of an evidentiary objection to the Defendants' briefing, as opposed to a discovery dispute that required the Court's intervention. It is not as if the Shaw Family is raising a discovery dispute, it just would like the Court to limit the Defendants to information they disclosed during discovery. It is hard to conceive of a federal rule more basic and longstanding. Even if the Shaw Family was somehow required to anticipate that the Defendants would raise these new theories now, courts have declined to apply Local Rule 37.2 where there is a lack of prejudice to the opposing party by failing to raise the issue to the Court. <u>Giladi v. Strauch</u>, 94 Civ. 3976 (RMB) (HBP), 2007 U.S. Dist. LEXIS 8666, *27 n. 12 (S.D.N.Y. Feb. 6, 2007) (declining to bar motion to preclude where "the parties' failure to engage in this conference has not resulted in any prejudice to defendants"). Courts have also declined to apply Local Rule 37.2 to bar a preclusion motion when it is more efficient to just address the motion, as is the case here. <u>Clean Earth Remediation and Construction Services, Inc. v. American Int'l Group, Inc.</u>, 05 Civ. 3651 (LTS) (HBP), 2007 U.S. Dist. LEXIS 62838, * 8 n.2 (S.D.N.Y. Aug. 23, 2007). <u>See</u> <u>Hartford Life Insurance Co. v. Bank of America Corp.</u>, No. 06 Civ. 3805 (LAK) (HBP), 2007 U.S. Dist. LEXIS 61668, *2 n.1 (S.D.N.Y. 2007) (holding that a rule 37.2 conference is not necessary and moved directly to the merits of the defendants' motion to compel and for protective order).

Moreover, on January 21, 2008, the Shaw Family raised with Judge Fox via teleconference the issue of the Defendants' production of documents after the discovery deadline. Serbagi Declaration dated April 9, 2008 ("Serbagi Decl."), at ¶ 2. Judge Fox clearly stated that, if true, the Defendants would be precluded and sanctioned as a result, but that we should raise the issue with the Court. <u>Id.</u> <u>See</u> <u>Kolenc v.</u>

<u>Bellizzi</u>, No. 95 Civ. 4494 (LMM) (KNF), 1999 U.S.Dist. LEXIS 1794, *7 (S.D.N.Y. Feb. 19, 1999)

(holding that status conference with the court satisfies the Rule 37.2 conference requirement); <u>Spring</u>

<u>Valley Water Co. v. Cosco Industries, Inc.</u>, No. 91 Civ. 0410 (PKL), 1998 U.S. Dist. LEXIS 12199, *4-*5

(S.D.N.Y. Aug. 9, 1998).  Accordingly, by the time that the Shaw Family realized that the Defendants

would not be providing their contention responses, i.e. after the close of discovery, Judge Fox had

referred all matters to this Court.  But again, based on the Defendants' 30(b)(6) witnesses, the Shaw

Family honestly believed that the Defendants' had no basis for a justiciable controversy to disclose.  In

fact, the Shaw Family was right.

Moreover, the Defendants stipulated to the Shaw Family's preclusion motion, which was "So

Ordered" by the Court. Defs' Mem., at 30.  The Defendants cannot now object to the same motion it

agreed to brief by stipulation.  Defendants attempt to avoid the obvious impact of that stipulation by

claiming that they thought the Shaw Family was only moving to preclude "evidence" and not the entire

claim. Defs' Mem., at 30.   First, the differences between the respective motions is merely one of

semantics.  The reason that the Shaw Family is moving to preclude Count I is because the Defendants

provided none of the evidence upon which they now rely, both as to the issue of a justiciable controversy

and to the substantive claim.  Had the Shaw Family entitled its papers "motion to preclude all evidence

upon which the Defendants rely in support of Count I," that would apparently satisfy the Defendants'

complaint.  But rather than just tell the Court that one of their associates mistakenly stipulated to briefing

his superiors now think he should have objected to, the Defendants accuse the Shaw Family of attempting

to "disguise" its motion and misrepresenting stipulations endorsed by this Court."  The Defendants do not

explain, nor can they, why the Shaw Family would not have to request a Rule 37.2 conference for

precluding all "evidence" as opposed to an entire claim, which is the very same thing.  What the

Defendants are really saying is that they did not realize that the Shaw Family intended to move to

preclude as much evidence as they thought.

The Defendants state that, despite their own inability to provide any of the discovery upon which they currently rely, it was actually the Shaw Family who acted improperly by moving for summary judgment on January 8, 2008, three days after depositions concluded on January 4, 2008. Defs' Mem., at 34. Why that would be improper is baffling. According to the Court's Case Management Plan, the Shaw Family was required to file its summary judgment motion before January 15, 2008, the date the pre-trial order was initially due. The Defendants promised that they would "supplement" their contentions after the Shaw Family's deposition, not the Defendants' final deposition. Second Marcus Decl., Ex. N, at 1-2. The final deposition of the Shaw Family took place on Dec. 27, 2008. The Defendants did not keep their word, but that is not because they were withholding information that required an immediate discovery motion to Judge Fox, it is because in order to answer the Shaw Family interrogatory, they would have to substantiate the statements in the Third Amended Complaint, which their 30(b)(6) witnesses already demonstrated could not be done. Instead, they asserted entirely new facts and argument in the summary judgment briefing – facts that they never disclosed before.

Finally, the Defendants restrictive reading of Judge Fox's rules is inconsistent with the spirit of the Federal Rules of Civil Procedure, which require full disclosure and seek to prevent trial by ambush. Even if the Defendants were correct, Judge Fox's rules do not mandate waiver, they say "failure to comply . . . may result in waiver of legal rights and privileges." The Court therefore has ample discretion to rule what is fair and just, and it is inherently fair to preclude the Defendants from relying on evidence that they never before disclosed. Incidentally, Defendants have repeatedly violated the Court's Individual Rule 2(C), which states: "More than minimal use of footnotes, or the printing of footnotes in a typeface smaller than that used in the text, will result in the brief's being stricken." Defendants included 39 footnotes in their March 13, 2008 response to the Shaw Family's domicile brief and 52 footnotes in its March 25, 2008 opposition to the Shaw Family's summary judgment motion and motion to preclude. The Court's language "will result in the brief being stricken" is far more mandatory than Judge Fox's "may result in waiver" language. In any event, in contrast to the Defendants' request to strike the Shaw

Family's preclusion motion, that type of unjust result is not what the Shaw Family seeks – the Shaw Family simply seeks the eminently fair ruling that Defendants not be permitted to rely on evidence that they did not provide during discovery.

## II.    THE DEFENDANTS' REPONSES TO THE SHAW FAMILY'S INTERROGATORIES ARE MARKEDLY DIFFERENT THAN THE "EVIDENCE" UPON WHICH THEY NOW RELY

### (A)    The Defendants' Purported Response to the Shaw Family's Contention Interrogatory Is Markedly Different Than the "Evidence" Upon Which They Now Rely

The Defendants state that they "responded" to the Shaw Family's sole contention interrogatory, which requested substantial detail surrounding Defendants' assertion of a justiciable controversy in the Third Amended Complaint. Defs' Opp. Mem., at 32. If the Defendants "responded" as they now claim, then the Shaw Family had no reason to raise any issues with Judge Fox. The only issue the Court need resolve is whether the evidence Defendants previously provided is sufficient to constitute a justiciable controversy. As the Court can see from what the Defendants characterize as their "response," their current assertions are entirely new and should be stricken for that reason alone.

Defendants now state that the Shaw Family's contention is so unclear and "rambling" that they did not understand what it meant. (Defs.' Mem., at 33). This assertion stands in stark contrast to the prior representation of the Loeb & Loeb associate who promised to answer the interrogatory after depositions. Second Marcus Decl., at Ex. N, at 1. The interrogatory begins by asking for "[T]he detailed factual and legal basis for Count I of the Third Amended Complaint . . ." and goes on to request their basis for a request for an injunction and then clearly requests the factual basis for their assertion of a justiciable controversy by quoting many of the phrases that the Defendants employed in the Third Amended Complaint. Id., at Ex J, at 5. The Shaw Family acknowledges that this interrogatory is not its most artful written work, but it obviously asks Defendants to explain the basis for Count I and the assertion of a justiciable controversy by asking the Defendants to explain the language they themselves employed in the Third Amended Complaint. If Defendants had a factual basis for Count I, there is no explanation for their

failure to provide that information. But Defendants could not provide that factual basis because it did not exist. That Defendants would represent that an electronic communication by a Loeb & Loeb associate constitutes a proper interrogatory response is unfathomable. But not even the electronic communication by a Loeb & Loeb associate provides any evidence of a justiciable controversy.

Defendants state that they answered the Shaw Family's contention interrogatory by asserting their trial contentions in the pre-trial order and drafts of the pre-trial order that the parties exchanged. Defs' Mem., at 34. First, as to the existence of a justiciable controversy, all the Defendants did in their pre-trial order was to list documents and letters (Serbagi Decl., at ¶ 3, Ex. A), which is a far cry from explaining the basis for a justiciable controversy. Second, Defendants' response to the contention interrogatory was due on December 4, 2008. Had they provided a response, it would have permitted the Shaw Family to test the basis of that response on Defendants' 30(b)(6) deponents Messrs. Strasberg and Roesler, which took place on December 20, 2008 and December 26, 2008, respectively. Instead, the Shaw Family asked Roesler and Strasberg for the basis of Defendants' representations concerning a justiciable controversy in the Third Amended Complaint, which they were unable to provide. Third, if Defendants did have a basis to assert a justiciable controversy, the Shaw Family was entitled to that information before the pre-trial order so that it could file its summary judgment motion based on full disclosure. The Court's Civil Case Management Plan prohibits the service of summary judgment motions after the date the pre-trial order is due. If Defendants pronouncement that it is relieved from answering a contention interrogatory because it provided that information in the pre-trial order were true, that would prevent the Shaw Family from using that information in support of its summary judgment motion. Moreover, if merely providing contentions in a pre-trial order obviated the need to respond to a contention interrogatory, no litigant would ever have to answer a contention interrogatory, they could simply assert that they provided the information in a pre-trial-order. Defendants' assertions do not make any sense.

**B.      Defendants Could Not Answer The Shaw Family Contention Because The Claims Concerning a Justiciable Controversy Were Fabricated, As Evidenced By The Entirely New Allegations Now**

By way of brief background, the Court should know that it was not until Defendants filed the Third Amended Complaint on August 9, 2007 that they identified <u>any Shaw Family</u> works to be in the public domain. Second Marcus Decl., at Ex. A, at 5-8. Not a single image. Serbagi Decl. at ¶¶ 4-6, Exs. B-D. Moreover, all three of Defendants' prior complaints contained no facts pertaining to a justiciable controversy. <u>Id.</u> And the claims that Defendants did add, at the very last minute, were the result of a broken promise by Defendants' counsel. In particular, the night the Third Amended Complaint was due, Defendants' counsel asked for a last minute extension. <u>Id.</u> at ¶ 7, Ex. E. The Shaw Family agreed, but only because Defendants' counsel agreed to only "cut claims and allegations." <u>Id.</u> But as the Court can see from the differences between the Second and Third Amended Complaints, the Defendants added <u>many allegations</u> at the last minute concerning both a justiciable controversy, and for the very first time, stated that Rizzoli and Ballantine were in the public domain.

But no matter what the Third Amended Complaint stated, the Shaw Family knew that Defendants had no basis for a justiciable controversy, which his exactly why they were unable to provide any substantive response to the Shaw Family's interrogatory on that issue. Shaw Mem., at 6-7. Defendants stated that it "would supplement the responses as applicable after your clients' depositions and other further discovery is completed." Second Marcus Decl., at Ex. N, at 1. While this lulled the Shaw Family into believing either that Defendants would be true to their word and provide a substantive response after further discovery, as they promised, the Shaw Family knew it would not be able to substantiate the allegations in the Third Amended Complaint regarding a justiciable controversy. The Shaw Family was right, as clearly evidenced by the entirely conflicting stories propounded by Defendants' former and new attorneys. The Shaw Family's knowledge that Defendants had no evidence of a justiciable controversy were fully substantiated when it took the 30(b)(6) depositions of CMG and MMLLC, both of whom

10

utterly failed to explain their attorneys' attempt to create a justiciable controversy where none existed. Shaw Mem., at 11-24.

What Judge Morrow characterized as Defendants' "fast and loose" behavior during the domicile briefing has infested their public domain claim as well. But rather than just admit that they perhaps overreached in the Third Amended Complaint, as can happen with any attorney, they vexatiously litigated the issue by fabricating the existence of a justiciable controversy with an entirely new set of facts that Roesler and Strasberg do not claim to support, let alone have actual knowledge of, in their present declarations. So what we are left with is two sets of attorney driven facts concerning a justiciable controversy, neither of which the Defendants purport to know about much less support. Attorney argument is insufficient to overcome the Shaw Family's summary judgment motion.

### C.    Defendants' Failure To Answer An Interrogatory as to the Intellectual Property They Purportedly Own Itself Requires Summary Judgment In The Shaw Family's Favor

Defendants argue that they have standing because they allegedly "wish" to include various public domain images of Marilyn Monroe in connection with the licensing of other purported intellectual property rights. Defs' Summ. Judg. Mem., at 14-15. However, the Court should preclude Defendants from making that representation because they not only declined to identify that purported intellectual property in response to an Interrogatory, but they expressly stated that their intellectual property is irrelevant to the Third Amended Complaint. Second Marcus Decl., Ex. F, at 5-6; Ex. H, at 4-5; Ex. L at 4-5; Ex. P at 190-192.

Defendants argue that they did not provide information concerning their purported intellectual property in discovery because it was mooted by the filing of the Third Amended Complaint. Defs' Mem., at 36-37. Defendants' claim that the Shaw Family's intellectual property interrogatory expressly refers to the Second Amended Complaint. Defs' Mem., at 36. While the beginning of the interrogatory does refer to the Second Amended Complaint, the rest of the interrogatory clearly seeks, *inter alia*, the identification of Defendants' "trademarks" and "copyrights." Id. If the Defendants purported trademarks and

copyrights are relevant to the Third Amended Complaint, then Defendants were obligated to produce that information, whether it was served prior to the filing of the Third Amended Complaint or not. In particular, Defendants now state:

> By the time Defendants responded to the interrogatory on August 13, 2007, that claim had been withdrawn by the filing of the Third Amended Complaint, which is why Defendants objected to it as irrelevant.

Id. Taking Defendants at their word, then they are saying that the purported intellectual property they own is irrelevant to the Third Amended Complaint. That position was resolutely confirmed by Defendants' counsel during the deposition of MMLLC's 30(b)(6) deposition witness, David Strasberg. When Shaw Family counsel began to question Mr. Strasberg about copyrights MMLLC purportedly owned, Defendants' counsel, Paula Colbath, directed the witness not to answer. Shaw Mem., at 15. But what is more significant is the colloquy that took place between Shaw Family counsel and Ms. Colbath, which revealed Defendants' position that their purported intellectual property was an irrelevant issue to their public domain claim. The following question and colloquy took place during the deposition of David Strasberg:

> Q: How many copyrights does MMLLC own in images of Marilyn Monroe
>
> MS. COLBATH: Object. I direct the witness not to answer. Now we're going far afield. What does this have to do with where she was domiciled at the time of her death. Or the works – your client's works that we are trying to put in the public domain? I see no relevance and I'd like you to explain it.
>
> MR. SERBAGI: The relevance is very clear. It's crystal clear. In the complaint you are alleging that we are harming you by asserting rights in public domain images. You can't possibly be harmed if you don't have any rights to the images yourself. So the issue of rights that you have or don't have in Marilyn Monroe is, front and center, relevant to your Count I. If you want to direct the witness not to answer, you can.
>
> MS. COLBATH: I stand on my objection. I'm directing you not to answer. That made no sense whatsoever.
>
> MR. SERBAGI: Maybe to you. But we'll see how it makes sense to anybody else.

Q: So you're not answering that question on the advice of your attorney?

A: Correct.

Second Marcus Decl., Ex. P, at 190-192. The Shaw Family admits that it could have raised this particular issue with Judge Fox and chose not to. But that is because it took Defendants' counsel at her word that the Defendants intellectual property was irrelevant to their claims. The Shaw Family had no way to know that Defendants would now spring that very same intellectual property on the Shaw Family in support of their public domain claim. Thus, the point is not that there was a discovery dispute that the Shaw Family waived – the point is that Defendants, through their attorney, took the clear position that Defendants' intellectual property was irrelevant to their Count I, a position markedly opposite to the one they now assert. This constitutes a judicial admission that the Court could, and should, use to estop them from asserting any of that intellectual property now. The Shaw Family reasonably relied on Defendants' position that their intellectual property was irrelevant to their public domain claim and saw no point in asking additional follow-up questions based on counsel's firm statements on the record. The Shaw Family should not be expected to anticipate the arguments their attorneys now present, especially when they formerly represented those positions were irrelevant.

Finally, Mark Roesler submits yet another declaration, dated March 25, 2008, which is in support of the Defendants' reply on its cross-motion for summary judgment. Defendants think the Court will not notice that this declaration is an improper reply affidavit submitting new evidence, so they tell the court it is in opposition to the Shaw Family's preclusion motion. But the March 25, 2008 Roesler declaration has nothing to do with the Shaw Family preclusion motion, it is his attempt to fix his prior threadbare affidavit he submitted on summary judgment. The Court should strike the new Roesler affidavit, because it is new evidence submitted on reply to Defendants cross-motion for summary judgment. Silverman v. Local 78, 958 F. Supp. 129 (S.D.N.Y. 1996) (refusing to consider new evidence submitted in reply).

Even if the Court considers Roesler's new declaration, dated March 25, 2008, it is even less effective than his prior affidavit. First, all the licensing agreements he submits as purported evidence of a

13

justiciable controversy are dated <u>after</u> Defendants filed the Third Amended Complaint, and are therefore irrelevant as a matter of law. It really is hard to understand how Defendants' could possibly think the Court would consider these post complaint agreements as evidence of a justiciable controversy, especially since the Shaw Family already cited Supreme Court and Second Circuit cases in its summary judgment opposition that held that the existence of federal jurisdiction depends on the facts that exist at the time the complaint is filed. Shaw Opp. Summ. Judg. Mem., at 6-7 (citing, e.g., <u>Newman-Green, Inc. v. Alfonzo-Larrain</u>, 490 US. 826, 830, 109 S.Ct. 2218, 104 L.Ed. 2d 893 (1989)); <u>Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace and Agric Implement Workers of Am., Int'l Union</u>, 523 U.S. 653, 660, 140 L.Ed. 2d 863, 118 S.Ct. 1626 (1998) ("the only question if whether the parties had any concrete dispute over the contract's voidability at the time the suit was filed")). Moreover, the license agreements attached to Roesler's new affidavit were not dated until discovery closed, which means that Defendants obviously did not produce them during discovery.

Finally, if the Court has any doubt on the pressing need to rule on the constitutionality of the newly passed California legislation, we respectfully refer the Court to the following statement in Roesler's March 25, 2008 declaration:

> In light of recent California legislation regarding the right of publicity, the license agreements also include Marilyn Monroe's publicity rights.

Roesler Decl., dated March 25, 2008. This Court and Judge Morrow have now ruled on three separate occasions that Defendants have no right of publicity in Marilyn Monroe. Mark Roesler admits that the California legislation has emboldened Defendants to license Marilyn Monroe's right of publicity, <u>even after Judge Morrow ruled on March 17, 2008 that Defendants have no right of publicity in Marilyn Monroe</u>. It appears that nothing can stop Defendants from asserting rights they do not have, who view litigation as simply as an inconvenient cost of doing business and could care less what federal judges rule. Roesler's statement is more reason than ever for the Court to decide the Constitutionality of the newly passed California legislation.

14

III.  **THE COURT SHOULD PRECLUDE DEFENDANTS FROM RELYING ON DOCUMENTS THAT THEY DID NOT PRODUCE DURING DISCOVERY, EVEN IF THEY ARE PUBLICLY AVAILABLE**

Defendants argue that they did not have to produce documents that were otherwise publicly available. Defs' Mem., at 38-40. But the Defendants had to at least direct the Shaw Family to those documents as required by Rule 33(d), instead of using them against the Shaw Family on summary judgment without any prior notice. The Shaw Family did not waive any objections to these documents because it had no conceivable basis to believe that Defendants would rely on these documents, which they admit to not having in their possession until January 2008, after the close of discovery. Id. That Defendants did not have in their possession until January 2008 documents that support a claim they asserted in August 2007, is all the evidence the Court needs to rule that Defendants never had evidence beyond Rizzoli and Ballantine when they filed the Third Amended Complaint. And this is exactly why Defendants repeated assertion that they were entitled to discovery beyond Rizzoli and Ballantine was frivolous and in bad faith.

Finally, Defendants state that the Shaw Family relied on documents that it did not produce during discovery in the domicile briefing. Defs' Mem., at 40. As Defendants know, the documents bearing the designation SFA1 that the Shaw Family produced are court certified copies of documents, most of which the Defendants formerly produced during discovery.[2] And the only reason the Shaw Family went to the expense of obtaining these certifications is because Defendants waited until recently to authenticate these documents, even though they mostly came from Defendants' files.

---

[2] There were two publicly available transcripts from the Hawaii proceeding that the Defendants did not produce, in which Anna Strasberg heavily litigated the issue of Ms. Monroe's New York Domicile. These documents are very helpful to the Shaw Family, and it is very surprising that the Defendants did not produce them during discovery.

## IV.  DEFEENDANTS' 30(B)(6) WITNESSES TOLD AN ENTIRELY DIFFERENT STORY THAN DEFENDANTS' PRESENT ATTORNEYS NOW ASSERT

Defendants argue assert that their 30(b)(6) witnesses did provide a basis for their public domain claim. Defs' Mem., at 41.  But if the Court reviews the transcript pages that Defendants and the Shaw Family have provided, it will see that Defendants' assertion is utterly baseless.  Roesler could not name a single image that had purportedly fallen into the public domain, other than Rizzoli.  Put frankly, he had no idea what he was talking about and could not substantiate any of the grounds for a justiciable controversy that his former attorneys asserted in the Third Amended Complaint.  Shaw Family Preclusion Mem., at 12-24.  But one thing is for sure – Defendants cannot now expand on facts and argument that it failed to formerly disclose.  If Defendants believe that Roesler provided a basis for their claim during CMG's 30(b)(6) deposition, that's fine, but then Defendants must be held to the basis he provided, not the greatly enlarged basis their present attorneys have concocted.  The Shaw Family had no reason to raise these issues with Judge Fox because it is not that Mr. Roesler was an "unprepared" witness, it is that he could not be expected to articulate a justiciable controversy that his attorneys concocted the night the Third Amended Complaint was due.  Even now, Defendants' attorneys cannot substantiate those former allegations concerning a justiciable controversy, and rely on an entirely different story.

Defendants also argue that the Shaw Family cites no authority for the proposition that a witness' inability to provide specific information by memory can operate to preclude a party's claim. Defs' Mem., at 43.  Defendants' assertion is, again, false.  The Shaw Family already cited law which states that a 30(b)(6) witness binds the entity and he is responsible for providing all the relevant information "known or reasonably available to the entity." Shaw Mem., at 11-12.  The Shaw Family seeks only to bind Defendants to the evidence they provided during their 30(b)(6) testimony and other discovery.  The rule is so basic that it hard to conceive how these Defendants would argue anything to the contrary.  As stated by the Second Circuit:

> To satisfy Rule 30(b)(6), the corporation deponent has an affirmative duty
> to make available such persons as will be able to give complete,

16

knowledgeable and **binding answers on its behalf**.  Rule 37 allows courts to impose various sanctions, including **preclusion of evidence**.

Reilly v. Natwest Markets Group, Inc., 181 F.3d 253, 268 (2d Cir. 1999) (citations and quotations omitted) (emphasis added).  The only reason that the Court should preclude Defendants' entire claim is because they provided no evidence in support of that claim during discovery.  Defendants should not be permitted to so ambush the Shaw Family now.

Finally, Defendants state that the Shaw Family's questioning of their 30(b)(6) witnesses misunderstands the aspect of Defendants' licensing business whereby they purportedly provide public domain images free of charge to third parties that license Defendants' Monroe related trademarks.  Defs' Mem., at 42.  Putting aside that it is hard to believe that there could be a justiciable controversy over purportedly public domain images that the Defendants do not even charge for, if Defendants "misunderstood" this aspect of Defendants' licensing business it is only because Defendants never provided that information in response to the Shaw Family's interrogatories.  Second Marcus Decl., at Ex. H.  And while Defendants argue that the Shaw Family did not place specific documents before their 30(b)(6) witnesses (Defs' Mem., at 42), that is also because Defendants formerly declined to provide the theory upon which their attorneys' now rely.  The Shaw Family had no idea of which of Defendants' 65,000 pages of documents they intended to rely upon.  By the Defendants' own admission, it was not until after discovery disclosed in January 2008 that they obtained the documents that they currently cite to support their claims.  Defs' Mem., at 38.

## V.     THE COMPLAINT IS LIMITED TO RIZZOLI AND BALLANTINE AND JUDGE FOX NEVER ORDERED THE PRODUCTION OF A SINGLE DOCUMENT BEYOND THOSE WORKS

It is elemental that Defendants were required to at least identify the specific works in the Third Amended Complaint that are at issue.  See Airframe Sys., Inc. v. L-3 Communications Corp., No. 05 CV 7638, 2006 U.S.Dist. LEXIS 64362, *8 (S.D.N.Y. Sept. 6, 2006) (holding that to state a claim for copyright infringement, the plaintiff must at least allege "which specific original works are the copyright

claim's subject"); <u>Franklin Electronic Publishers, Inc. v. Unisonic Corp.</u>, No. 90 Civ. 6196 (RPP) No. 90 Civ. 6196 (RPP) 763 F. Supp. 1, 1991 U.S. Dist. LEXIS 5349 (S.D.N.Y. 1991) ("That complaint was held to violate Rule 8 in that, instead of alleging the copyright materials infringed, it contained a broad claim of infringement by all other animated productions, paper products, dolls, toys, and any other merchandise and licensing products which have been granted by Hallmark Cards, Inc.") (citations and quotations omitted).

  While Judge Fox did say that "any attempt to narrow down the complaint" is long gone, the Shaw Family was not attempting to narrow anything. The complaint was already narrow and only identified Rizzoli and Ballantine. Judge Fox's substantive refusal to order the production of a single document outside of Rizzoli and Ballantine contradicts Defendants' representations. Defendants argue that Judge Fox <u>did</u> Order the production of documents outside of Rizzoli and Ballantine. Defs' Mem., at 5 n.2. All Judge Fox did was to permit the Defendants to review and question Ms. Stevens about the Shaw Family's registration binder, but he specifically refused to let Defendants copy that binder or to take it out of the Shaw Family's offices. Serbagi Decl, at ¶ 8, Ex. F, at Tr. at 16, 21-22. Moreover, the only reason Judge Fox permitted Defendants to question Ms. Stevens about that binder is because she testified that she reviewed it in preparation for her deposition. Defendants' argument that the Third Amended Complaint is broad enough to permit the assertion of their present claims is tantamount to a plaintiff claiming that "all a defendant's products that are covered by a patent infringe" or "all the defendants trademarks that are likely to be confused with the plaintiffs trademarks infringe." The Shaw Family had no conceivable notice what specific works Defendants thought were at issue nor did it have any notice of the basis for Defendants' present standing arguments. The Shaw Family spent many hundreds of thousands of dollars defending against this frivolous assertion, which is one of the many reasons attorney's fees are justified under the United States Copyright Act.

## CONCLUSION

For all the foregoing reasons, the Shaw Family respectfully requests that the Court hold that Defendants are precluded from relying on any of the evidence upon which they now rely in support of their public domain claim. The Court should also rule that because Defendants provided no evidence of a justiciable controversy during discovery, they have no standing to assert that any Sam Shaw images are in the public domain. In the alternative, the Shaw Family requests that the Court rule that even the evidence Defendants now present falls short of the constitutional standing requirements required to sustain a declaratory judgment action.

Dated:  New York, New York
      April 9, 2008

                    Respectfully Submitted,


                    LAW OFFICES OF CHRISTOPHER SERBAGI


By: _____
                    Christopher Serbagi, Esq.
                    David Marcus, Esq.
                    488 Madison Avenue, Suite 1120
                    New York, New York  10022
                    Tele: (212) 593-2112
                    Fax:  (212) 308-8582

                    Attorneys for Shaw Family Archives, Bradford Licensing,
                    Edith Marcus and Meta Stevens

19