# EX. A

**TO UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------- X
                                :

SHAW FAMILY ARCHIVES, LTD. EDITH
MARCUS and META STEVENS,         :

            Plaintiffs,       :

        -against-       :

CMG WORLDWIDE, INC., an Indiana    :
Corporation, and MARILYN MONROE, LLC,
a Delaware Limited Liability Company,   :

           Defendants.    :
-------------------------------------------------------X

05 Civ. 3939 (CM)

**JOINT PRETRIAL ORDER**

      The parties having conferred among themselves pursuant to Fed. R. Civ. Pr. 16, the following statements, directions and agreements are adopted as the Pretrial Order herein.

## I.  NATURE OF THE CASE

### A.  Plaintiffs / Consolidated Defendants' Version

      This lawsuit consists of two consolidated actions.  The first action was brought by Shaw Family Archives, Ltd. ("Shaw"), Edith Marcus and Meta Stevens (together, "Plaintiffs/Consolidated Defendants") against CMG Worldwide, Inc. ("CMG") and Marilyn Monroe, LLC ("MMLLC") (together, "Defendants / Consolidated Plaintiffs").  The second action was brought by Defendants / Consolidated Plaintiffs against Shaw Family Archives, Ltd. and Bradford Licensing Associates ("Bradford") (together "Consolidated Defendants").

      On May 2, 2007, this Court ruled that MMLLC owned no right of publicity in Marilyn Monroe's name, image or likeness because, *inter alia*, neither the law of New York nor of California, the two states where Monroe could possibly have been domiciled at the time of her death, recognized  a postmortem right of publicity when Ms. Monroe died in 1962.  On October

175.    When Lee Strasberg died, his 75% rights in Marilyn Monroe's intangible personal property, including, but not limited to, any rights of publicity, trademarks, and copyrights, were devised and passed by will to his wife, Anna Strasberg. **DX211.**

176.    In July 2001, Anna Strasberg formed MMLLC, and transferred to MMLLC all of her 75% rights and interests in the intangible personal property she held in the estate of Marilyn Monroe, including, but not limited to, any and all rights of publicity, trademarks, and copyrights. **E.g., DX209; DX210; DX213.**

177.    Also in July 2001, the Anna Freud Centre, the holder of the remaining 25% rights and interests in the intangible personal property of the estate of Marilyn Monroe (including, but not limited to, any and all rights of publicity, trademarks and copyrights), likewise transferred its interest to Marilyn Monroe LLC. **E.g., DX209; DX210; DX213.**

## PUBLIC DOMAIN ISSUE

1.    Sam Shaw Photographed Marilyn Monroe many times during the years 1952 through 1962.

2.    In 1954, Sam Shaw took photographs of Marilyn Monroe in connection with the film "The Seven Year Itch" at the request and expense of the film's producer. **DX 247**

3.    Shaw was required to be on the set of the film "The Seven Year Itch" to take and supervise photography to be used to publicize the film. **DX 247**

4.    Many of the photographs Sam Shaw took of Marilyn Monroe, including the Flying Skirt Profile photographs, are considered among the most famous photos of the 20th century, and have been seen by millions of people throughout the world. **DX 248**

5.    Shaw authorized the distribution of the photographs from "The Seven Year Itch" to newspapers and magazines in and around 1954. **DX 239, 241,**

6.      In numerous other instances, Sam Shaw authorized the distribution of his photographs of Marilyn Monroe.

### **Ownership to Purported Copyrights in Sam Shaw's Photos**

7.      Sam Shaw signed his Last Will and Testament on October 4, 1994. **DX 214**

8.      Sam Shaw died in 1999.

9.      Sam Shaw's residuary estate included a "collection of photographs, negatives, transparencies and any rights related to same." **DX 214**

10.      Shaw bequeathed his residuary estate to the Trustees of the Sam Shaw Family Trust dated October 4, 1994. **DX 214**

11.      Sam Shaw "deliberately excluded [his] son from participation in my estate and the Sam Shaw Family Trust." **DX 214**

12.      The Sam Shaw Family Trust was the assignee of certain photographs, negatives and transparencies including those photographs, negatives and transparencies taken by Sam Shaw of Marilyn Monroe. **DX 214, DX 215**

13.      The Trust was created for the benefit of Sam Shaw, Meta Stevens and Edith Marcus, their husbands, and Sam Shaw's grandchildren and more remote descendants.  **DX 215**

14.      Sam Shaw, Meta Stevens and Edith Marcus were appointed Trustees of the Trust. **DX 215**

15.      Upon Sam Shaw's death, the Trustees were directed to distribute income as follows:  5% to Harold Shaw; one-third of the balance to Meta Stevens; one-third of the balance to Edith Marcus; one-third of the balance to Sam's grandchildren who are at least 18 years of age. **DX 215**

16.    The Trust was to terminate 21 years after the death of the survivor of Meta Stevens, Edith Marcus, their respective spouses and Sam's grandchildren. **DX 215**

17.    Sam Shaw, as Settlor, deliberately excluded Larry Shaw from participation in the Sam Shaw Family Trust. **DX 215**

18.    On April 22, 1998 Sam Shaw, as grantor, and Sam Shaw, Edith Marcus and Meta Stevens as Trustees, executed an Indenture of Trust. **DX 216**

19.    Pursuant to the Indenture of Trust, Shaw transferred, assigned, set over and delivered to the Trustees Grantor's entire collection of photographs, negatives, transparencies, scripts, writings, books, works in progress and the copyrights and trademarks (if any) pertaining thereto created by the Grantor or by any other artist. The property described in Schedule A included photographs of Marilyn Monroe. **DX 216**

20.    The Indenture of Trust provided that Sam Shaw as Grantor intentionally made no provision for his son Larry Shaw. **DX 216**

21.    On or about November 8, 1985 Ian Woodner and Sam Shaw entered into a Partnership Agreement. **DX 217**

22.    The Partnership was formed for the purpose of promoting, marketing and publishing the "Shaw Photographs" which consist of all the negatives, photographs and copies of photographs ever taken or made by Shaw in his lifetime excluding only those personal photographs of family, friends and scenes which were taken as personal mementos. The Shaw Photographs included photographs of Marilyn Monroe. **DX 217**

23.    Woodner's cash contribution (equal to 60% of the value of the Shaw Photographs) was deemed to be 60% of the capital of the Partnership, and the Shaw Photographs were deemed to be 40% of the capital of the Partnership. The Profits and losses of the

Partnership were to be apportioned 60% to Woodner and 40% to Shaw. Shaw was to maintain supervision and control of the Shaw Photographs. **DX 217**.

24.    In a January 26, 1992 letter agreement the Estate of Ian Woodner, as successors in interest to Woodner's interest in the Woodner-Shaw Corporation, assigned, conveyed and transferred to Sam Shaw all of the Estate's right, title and interest in and to the Woodner shares of the Woodner-Shaw Corporation. **DX 218**

25.    The January 26, 1992 letter agreement, which was signed by Shaw on behalf of Woodner-Shaw Corporation as its president, confirmed that the Corporation "is the owner of, among other items, all copyrights in and to the various photographs taken by Shaw, including, without limitation, certain photographs of Marilyn Monroe." **DX 218**

26.    The letter agreement provides that the consideration for the assignment of rights to Shaw was that "in the event the Corporation and/or Shaw shall win or obtain any judgment, award or other monetary recovery (the Recovery) arising out of or related to any prosecution, settlement or compromise of any Copyright Action, the following shall apply with respect to the Corporation's and/or Shaw's obligations to the Estate in the distribution of the net proceeds thereof (i.e., after the payment of the reasonable legal fees and expenses incurred by the Corporation and/or Shaw in winning or obtaining the Recovery): (i) The Estate shall be entitled to the first $25,000 of the Net Proceeds of any Recovery; and (ii) the Estate shall be entitled to sixty percent (60%) of the next $291,567.00 of the new proceeds of any Recovery." **DX 218**

27.    In or about 1994, Sam Shaw commenced an action in the Supreme Court of the State of New York, County of New York against Martin Bressler, Larry Shaw, Susan Shaw, Bressler & Bressler, Valerie Goodman, 1912 Productions, Inc., Marc Weinstein, individually and d/b/a Color Group. After Sam Shaw's death in 1999, Edith Shaw Marcus and Meta Shaw

Stevens were substituted as plaintiffs as temporary administrators of the Estate of Sam Shaw.

**DX 219, DX 220, DX 248**

28.    On June 5, 2002, the parties settled the action upon the following terms and conditions:

i)    The Shaw Family Archives ("SFA") was to be formed with Larry Shaw, Meta Shaw Stevens and Edith Shaw Marcus as principals.

ii)    Larry Shaw was to own 50% of SFA; Meta Shaw Stevens and Edith Shaw Marcus would each own 25% of SFA.

iii)    SFA "was to "own and take possession of ... all of the photographs involved in the litigation."

iv)    The photographs in issue included "each and every photograph shot by either Sam Shaw or Larry Shaw during the course of their respective careers, lifetimes ..."

v)    The settlement provided that "all of the photographs involved in this collection shall be the property – shall be deemed a part of the Shaw Family Archives."

vi)    The settlement contemplated that SFA would engage in "income generating transactions" such as "marketing the photos."  **DX 219**

29.    On or about November 23, 2004, the Honorable Emily Jane Goodman, Justice of the Supreme Court entered an Order in the action entitled <u>Jeffrey P. Tunick v. Larry Shaw, Edith Shaw Marcus, Meta Shaw Stevens, Shaw Family Archives, et al.</u> holding that "Shaw Family Archives, Ltd., a domestic corporation, was formed to take possession and ownership of all of the photographs involved in the Shaw action." **DX 220**

30.    SFA is a family business. **Deposition of M. Stevens.**

31.     The owners of SFA are Melissa Stevens, Meta Stevens, Cindi Conti, Robert

Conti, Edith Marcus, David Marcus, Rebecca Marcus and the Estate of Larry Shaw. **Deposition**

**of M. Stevens.**

### Rizzoli Litigation

32.     On March 23, 1999, the United States District Court for the Southern District of

New York (Hon. J. Koeltl) decided the parties' motions for summary judgment in <u>Sam Shaw,</u>

<u>Edith Shaw Marcus, et al. v. Rizzoli International Publications, Inc., et al</u>.  The Court granted

summary judgment to Rizzoli, finding that the following Shaw Works were in the public

domain:  Shaw photographs found on Pages 146 through 147 (8 photographs) of "Marilyn

Monroe.  The Life.  The Myth.", Page 147 (1 photograph), Page 148 (1 photograph), Page 149 (1

photograph), Page 162 (1 photograph), Page 184 (3 photographs), and Page 248 (1 photograph).

In each instance, the Court found that the photographs were published prior to 1964 and that the

copyrights were not renewed in a timely fashion by Shaw.  **DX 222-225**

### Marilyn Monroe as The Girl (the Ballantine Book)

33.     On June 24, 1955, Ballantine Books, Inc. published "Marilyn Monroe as the Girl"

written by Stanley Kauffmann (text) and Sam Shaw (photographer). **DX 22, DX 227, DX 228,**

**PX 608**

34.     The Ballantine Book contains a copyright notice "copyright, 1955 by Sam Shaw."

**DX 22**

35.     On or about June 30, 1955, Sam Shaw filed an Application for Registration of a

claim to copyright and received from the Register of Copyrights a Copyright Registration

Certificate identified as A193450.  **DX 227**

36.    The original 28 year term of copyright for the photographs published in the Ballantine Book expired in 1983.

37.    The authors of the Ballantine Book did not renew the copyright prior to the expiration of the original term of copyright.

38.    Shaw's failure to renew the copyright prior to the end of the 28th year of the original copyright term placed the Ballantine Book, and each of the photographs published therein, into the public domain.

### Published Photographs of Marilyn Monroe

39.    The New York Journal American published three photographs of Marilyn Monroe on September 16, 1954.  **DX 230**

40.    The New York Herald Tribune published a photograph of Marilyn Monroe on September 16, 1954.  **DX 231**

41.    The New York Daily Mirror published a photograph of Marilyn Monroe on October 5, 1954.  **DX 232**

42.    The New York Daily Mirror published a photograph of Marilyn Monroe and a photograph of Marilyn Monroe and Joe DiMaggio on October 5, 1954.  **DX 233, DX 237**

43.    Tempo published a photograph of Marilyn Monroe on December 27, 1954.**DX 234**

44.    Modern Screen published three photographs of Marilyn Monroe in December, 1955. **DX 235**

45.    The New York Post published photographs of a billboard advertisement of Marilyn Monroe in "The Seven Year Itch" on May 29, 1955. **DX 236.**

46.    In 1955, the New York World – Telegram and The Sun published a photograph of Marilyn Monroe. **DX 242**

47.    The New York Herald Tribune published two photographs of Marilyn Monroe on May 27, 1955. **DX 236**

48.    The New York Daily News published a photograph of Marilyn Monroe on September 16, 1954. **DX 238**

49.    The World Telegram and Sun published a photograph of Marilyn Monroe from a scene of the film "Seven Year Itch" on January 22, 1955. **DX 239**

50.    American Weekly magazine published a photograph of Marilyn Monroe on October 23, 1955. **DX 240**

51.    The New York Mirror published a photograph of Marilyn Monroe from the Flying Skirt Series of photographs from the film "Seven Year Itch" on August 26, 1957. **DX 241**

52.    On October 1, 1957, Look magazine published an article entitled "Marilyn's new life" which included several photographs of Marilyn Monroe alone, and with Arthur Miller. **DX 31**

53.    The photographs published in these newspapers and magazines were either published without appropriate copyright notice or, if they were published with proper notice, their copyrights were not renewed at the end of their original 28 year term.

### **"Marilyn Among Friends" by Sam Shaw and Norman Rosten**

54.    On May 5, 1987, Henry Holt and Company, Inc. published the book "Marilyn Among Friends" by Sam Shaw and Norman Rosten. **DX 25, DX 243**

55.    The book contains the following copyright information:  "Photographs copyright © 1972, 1979, 1987 by Sam Shaw and Ian Woodner. **DX 25**

Text copyright © 1987 by Norman Rosten.

56.     On or about September 6, 1988, the Register of Copyrights issued Copyright Registration Certificate TX2-400-879 to Norman Rosten as the claimant of a copyright of the "entire text" of "Marilyn Among Friends." **DX 243**

57.     In November, 1977, Patricia Rosten as heir and successor in interest to Norman Rosten executed an Assignment of Copyright in Registration No. TX2-400-879 to Sam Shaw and such Assignment was recorded in the United States Copyright Office in Volume 3417, Page 745. **DX 244**

58.     On or about April 10, 1987, Sam Shaw sent a letter to Bloomsbury Publishing Limited and Norman Rosten in which Mr. Shaw states: "I only agree to the responsibility of my photographs." **DX 245**

59.     The photograph on Page 19 of "Marilyn Among Friends" was previously published in "Marilyn Monroe as the Girl" on Page 37. **DX 22, DX 25**

60.     The photograph on Page 23 of "Marilyn Among Friends" (far right) was previously published in "Marilyn Monroe as the Girl" on Page 95. **DX 22, DX 25**

61.     The photograph on the bottom right hand corner of page 26 of "Marilyn Among Friends" was previously published in "Marilyn Monroe as the Girl" on Page 48.

62.     The photograph on Page 27 of "Marilyn Among Friends" was previously published in "Marilyn Monroe as the Girl" on Page 55. **DX 22, DX 25**

63.     The photograph published on Page 40 of "Marilyn Among Friends" was previously published on Page 69 of "Marilyn Monroe as the Girl". **DX 22, DX 25**

64.     The photograph published on Page 41 of "Marilyn Among Friends" was previously published on Page 60 of "Marilyn Monroe as the Girl". **DX 22, DX 25**

65.    The photograph published in the center on Page 42 of "Marilyn Among Friends" was previously published on Page 64 of "Marilyn Monroe as the Girl". **DX 22, DX 25**

66.    The photograph published on Pages 42 and 43 of "Marilyn Among Friends" was previously published on Page 61 of "Marilyn Monroe as the Girl". **DX 22, DX 25**

67.    The four photographs published on Page 45 of "Marilyn Among Friends" were previously published on Pages 62 (left), 65 (right), 67 (right) and 69 (left) of "Marilyn Monroe as the Girl". **DX 22, DX 25**

68.    The photograph published on Page 46 of "Marilyn Among Friends" was previously published on Page 162 of the Rizzoli Book. **DX 22, DX 25**

69.    The photograph at the bottom of Page 49 of "Marilyn Among Friends" was previously published on Page 113 of "Marilyn Monroe as the Girl". **DX 22, DX 25**

70.    The photograph published on Page 57 of "Marilyn Among Friends" was previously published in "Marilyn Monroe as the Girl" on Page 117. **DX 22, DX 25**

71.    The photograph published on Page 60 of "Marilyn Among Friends" was previously published on Page 72 of "Marilyn Monroe as the Girl". **DX 22, DX 25**

72.    The photographs published on Page 82 of "Marilyn Among Friends" were previously published on Pages 123 (right) and 124 (left) of "Marilyn Monroe as the Girl". **DX 22, DX 25**

73.    The photograph published on Page 83 of "Marilyn Among Friends" was previously published on Page 121 of "Marilyn Monroe as the Girl." **DX 22, DX 25**

74.    The photograph published on Page 75 of "Marilyn Among Friends" was previously published on Page 126 of "Marilyn Monroe as the Girl." **DX 22, DX 25**

75.    The photograph published on Page 149 of "Marilyn Among Friends" was previously published on Page 89 of Marilyn Monroe as the Girl. **DX 22, DX 25**

### St. Martin's Press Litigation / "The Seven Year Itch" Photos

76.    In 1993, Sam Shaw commenced a copyright infringement action against St. Martin's Press in the U.S. District Court for the Southern District of New York. **DX 247**

77.    The Amended Complaint alleged that in 1953 Shaw "was retained by the Producer" of the "Seven Year Itch" as its "creative director" "Plaintiff's function was to act as a consultant to the Producer to develop publicity for the film, among other things to create appropriate still photography by others, and to promote the film." **DX 247**

78.    Plaintiff stated in the Amended Complaint that he "was required to be, and was, on the movie set at all times that Marilyn Monroe was on the set." **DX 247**

79.    Shaw took many photographs of Marilyn Monroe on the movie set in New York and in California, the most famous of which was the "Profile Flying Skirt" shot which depicts Ms. Monroe in Profile, her skirt blowing in the wind over a subway grate, with Tom Ewell, her co-actor in the movie, looking on. **DX 247**

80.    In addition, Shaw took photographs of Ms. Monroe nude in a bathtub. **DX 247**

81.    Shaw acknowledged that he had permitted "selected photos" of the "Flying Skirt Series" and "Profile Flying Skirt Photograph" to be reproduced during the production and first distribution of The Seven Year Itch. **DX 247**

82.    In 1972, Shaw authorized a poster of the "Profile Flying Skirt Photograph" to be reproduced for promoting a book and included a copyright notice © Sam Shaw 1972. The Registration Certificate was identified as TX51-061. A Supplemental Registration was filed on November 6, 1979 bearing Registration No. TX376-054. **DX 247**

83.    On April 27, 1993, Shaw filed a registration for certain photographs and received Registration Certificate VA250941. **DX 247**

84.    Shaw also filed a Copyright Registration for other photographs on May 5, 1993 and received a registration identified as VA251-671. **DX 247**

85.    Shaw claimed that the eleven photographs which were the subject of the action against St. Martin's Press were never published with Shaw's authority. **DX 247**

86.    In 1994, Sam Shaw commenced an action against Martin Bressler and others in New York State Supreme Court, County of New York. In his Complaint, Shaw claimed that his "photographic work includes some of the most well known images ever taken of many luminaries of the entertainment industry, including Marilyn Monroe." Shaw claimed that he was the designer and photographer of the famous and iconographic "Flying Skirt" photos taken on the set of "The Seven Year Itch" in which she is pictured standing on a subway grate with her white skirt being blown by the apparent rush of air from an oncoming subway train. **DX 248**

### **"Marilyn: A Biography" by Norman Mailer**

87.    On August 1, 1973, Alskog, Inc. and Norman Mailer published a book entitled "Marilyn: A Biography". Alskog, Inc. obtained a copyright registration certificate identified as TX51-061 as employer for hire for a compilation of photographs which were identified as previously published works of 24 photographers dating from 1960 through 1972. **DX 23, DX 249**

88.    On November 6, 1979, Alskog obtained Copyright Registration Form CA376-054 and provided amplified information indicating that some original photographs were first published in this book. **DX 250**

### "Marilyn Monroe in the Camera Eye"

89.     On July 14, 2001, David Marcus wrote the Copyright Office requesting special relief of the deposit requirement for the book entitled "Marilyn Monroe: In Camera Eye". **DX 251**

90.     Mr. Marcus represented that "this book was first published in 1979 and contained never before published photographs of Marilyn Monroe." **DX 251**

91.     Mr. Marcus submitted a Registration Certificate for Marilyn Monroe: In the Camera Eye identifying the author as Sam Shaw for photographs and text, the date of first publication as May 1, 1979, identified the copyright claimants as Edith Shaw Marcus and Meta Shaw Stevens as owners by virtue of a trust to the daughters of the author. **DX 251**

92.     The Registration Certificate, signed by Edith Shaw Marcus, represented that there were no prior registrations for this work or an earlier version of this work and stated "N/A" in response to a request to identify any pre-existing work or works on which this work is based on or incorporates. **DX 251**

93.     In a letter to the Copyright Office dated November 21, 2007, Ms. Marcus identified a book entitled "The Joy of Marilyn in the Camera Eye". The copyright notice in that book is 1979 by Peebles Press International, Inc. and gives photo credits to Sam Shaw for the cover page, title page, Pages 6, 7, 9 through 131, 152, 153 and back cover. **DX 252**

94.     The following photographs in Marilyn Monroe in the Camera Eye were previously published in the following materials:

         a.  Page 9 was previously published on the back cover of "Marilyn Monroe as the Girl";

    b. Page 19 was previously published on page 72 of "Marilyn Monroe as the Girl";

    c. Page 107 was previously published on page 112 of "Marilyn Monroe as the Girl". **DX 22, 24**

95.    The Copyright Office granted a copyright registration certificate for Marilyn Monroe in the Camera Eye and issued Registration Certificate TX5-342-425. **DX 253**

### Shaw Copyright Registrations

96.    On or about April 27, 1993, Sam Shaw filed a Copyright Registration Certificate for the Flying Skirt Profile received from the Copyright Office Certificate of Registration Form VA567-136. **DX 254**

97.    Shaw claimed that the Flying Skirt Profile was created in 1954 and first published in 1972. He also claimed prior registration TX-51-061 in 1978. **DX 254**

98.    On June 4, 1996, Sam Shaw obtained Copyright Registration From TX4-289-054 for work entitled "Marilyn & Sam" which was identified as a contribution to a collective work entitled "Marilyn Monroe the Life and the Myth, Pages 249-250. Shaw claimed the work was created in 1995 and first published in 1996. Shaw identified the nature of the work as an article. **DX 255**

99.    On June 4, 1996, Sam Shaw registered a work entitled Sam & Marilyn and received from the Register of Copyrights Registration Certificate VA880-127 for a work which he identified as a compilation of photo images and text previously published as a contribution to "Marilyn Monroe the Life and the Myth." Shaw claimed the work was created and first published in 1995. Shaw identified a previous registration TX4-289-054 and stated that some of the photographs and texts by Shaw had been previously registered. **DX 257**

100.    On May 6, 1993, Sam Shaw filed a Copyright Registration Application and received from the Register of Copyrights a Registration Certificate VAU251-871 for a work entitled "From the Flying Skirt Series of Seven Year Itch" comprised of two photographs. Shaw claimed the work was completed in 1954 and had never been previously registered. **DX 259**

101.    On April 27, 1993, Sam Shaw filed a Copyright Registration Certificate and received from the Register of Copyrights Form VAU250-941 for a work entitled "From the Flying Skirt Series and Bath Scene of Seven Year Itch" identified as nine photographs which Shaw claimed were completed in 1954 and not previously registered or published. **DX 260**

102.    The document produced by SFA as SFA00481 is a copy of the deposit copy of "Flying Skirt, Profile" registered under number VA567-136. **DX 261**

103.    SFA document SFA00470 through 472 constitutes a copy of the certified copy of the work "From the Flying Skirt Series of Seven Year Itch" registered under No. VAU251871. **DX 262**

104.    SFA document SFA00473 through 480 a copy of a certified copy of "From the Flying Skirt Series & Bath Scene of Seven Year Itch" registered under No. VAU250941. **DX 263**

105.    On June 11, 1996, Sam Shaw registered a work entitled "Sam Shaw Favorite Cards & Images" which was identified as one set of cards and received from the Register of Copyrights Form VA848-026. **DX 264**

106.    Shaw identified the work as completed in 1954 but not previously registered and first published on January 1, 1996. Shaw did claim that one image had been previously registered but that this was the first registration for all remaining images. **DX 264**

94

107.    On March 2, 1998, Shaw registered the work entitled "Marilyn at Window" and received from the Register of Copyrights Form VAU426-361 for a photograph which Shaw claimed was completed in 1954 and previously registered under Form TX51061 in 1978 and TX376-054 in 1979. **DX 265**

108.    SFA document SFA00452 through 0456 constitutes copies of the work "Marilyn at Window." **DX 265**

109.    On March 2, 1998 Sam Shaw registered the photograph "Marilyn at Window" and claimed it had not previously been registered or published. **DX 266**

110.    On July 20, 2001, Edith Shaw Marcus and Meta Shaw Stevens registered "Sam Shaw's Americana: Series 1" and received from the Register of Copyrights Form VAU520-380 for photographs which would claim to have been created and completed between 1938 and 1952 and never previously registered or published. **DX 267**

111.    On July 20, 2001, Edith Shaw Marcus and Meta Shaw Stevens filed a Copyright Registration Application for "Sam Shaw's People and Places: Series 1" and received from the Register of Copyrights Form VAU520-381 for photographs created and completed between 1954 and 1969 which had never previously been published or registered. **DX 268**

112.    On July 20, 2001, Edith Shaw Marcus and Meta Shaw Stevens registered "Sam Shaw's Cinema and Celebrities: Series 1" and received from the Register of Copyrights Form VAU520-382 for works created and completed by Sam Shaw between 1945 and 1983 and not previously registered or published. **DX 269**

### **Rights Claimed by Shaw Family Archives**

113.    Larry Shaw submitted an undated Notice of Claimed Infringement to Ebay, Inc. regarding items No. 3250580870 and 3250566671, identified as copyrighted registered photo of

Marilyn Monroe taken by Sam Shaw. Larry Shaw claimed to be the owner or agent authorized to act on behalf of the owner of IP rights. **DX 279**

114. Larry Shaw submitted an undated Notice of Claimed Infringement to Ebay, Inc. regarding item 3361709013, identified as a tin sign with copyrighted registered photo of Marilyn Monroe. SFA identified the Notice of Claimed Infringement and the allegedly infringing material in document SFA00349 through 352. **DX 280**

115. Larry Shaw sent a Notice of Claimed Infringement to Ebay, Inc. for items No. 3358657314 and 3358657051 identified as photos of Marilyn Monroe and copyrighted by Sam Shaw, Shaw Family Archives, Ltd. SFA has identified the Notice of Claimed Infringement and Alleged Infringement in documents SFA0356, 00367 through 00370. SFA has also identified other purportedly infringing materials under SFA00375 through 00387 and 00446 through 00448, and 00449 through 00451. **DX 281-286**

116. Larry Shaw sent a Notice of Claimed Infringement dated June 2, 2003 to Ebay, Inc. for items No. 3225801636, 3225800770 and 3226261002 identified as three photos of Marilyn Monroe copyrighted and registered in the United States Copyright Office. Shaw identified Larry Shaw (Shaw Family Archives, Ltd.) as the owner or agent authorized to act on behalf of the owner of the IP rights. **DX 287**

117. On June 3, 2003, Larry Shaw on Shaw Family Archives, Ltd. letterhead sent a letter to Ebay reaffirming his notice of prior claimed infringements. **DX 288**

118. On June 3, 2003, Larry Shaw sent a Notice of Claimed Infringement o Ebay for items No. 3226952680 and 3226261002. **DX 289**

119.    Larry Shaw sent an undated Notice of Claimed Infringement to Ebay for items no. 3359447495, 3358658048 and 3357928291 identified as copyrighted and registered photos of Marilyn Monroe taken by Sam Shaw.  **DX 290**

120.    On December 21, 2004, Larry Shaw sent a Notice of Claimed Infringement to Ebay for items numbered 6731257728, 2294969245, 3861323149, 6500024526, 6731199321, 6731055105, 6730592522, 6730176508, 3948258488, 3438965290, 3861269385, 6730592522, 6731055484, 6731257774, and 6140596546 identified as copyrighted photos of Marilyn Monroe for use without license or permission.  **DX 291**

121.    On January 19, 2005, Larry Shaw sent a Notice of Claimed Infringement to Ebay for Items No. 6737325372, 6737325069, 673324528, 673732442, 6737324246, 6737319818, 6737318099, 6737080263, 6505987531, 6506139015, 6506150463, 6506218015, 6506340113, 6506354164, 65064164089, 6506538037, and 650655187 which are identified as commercial products without license using copyrighted photos of Marilyn Monroe. **DX 292**

122.    On February 20, 2007, Michelle Minieri, Senior VP, Managing Director of Bradford Licensing Associates sent a letter to Eric Epstein, VP Licensing of Romar International stating that the "Shaw Family Archives owns the copyrights in the Marilyn Monroe photographs that are the subject of the Program." Ms. Minieri represented that both Bradford Licensing Associates and the Shaw Family Archives have conferred with our respective attorneys to verify that the Shaw Family Archive copyrighted Marilyn Monroe images and related rights are proper, and do not infringe on the rights/trademarks claimed by the Estate of Ms. Monroe and/or their licensing representatives.  **DX 293**

123.    Shaw Family Archives Ltd. entered into a License Agreement with Scandecor Marketing granting Scandecor the non-exclusive right to use the photo of Marilyn Monroe

identified in SFA document 00523 for a period from March 1, 2004 through February 28, 2006 in the United States and Europe. Shaw Family Archives required that Scandecor include a copyright notice as follows: "© Sam Shaw/Shaw Family Archives". **DX 294**

124. The work which is the subject of the Shaw Family Archives/Scandecor Licensor Agreement was first published in the Rizzoli book, "Marilyn Monroe. The Life. The Myth." **DX 294, DX 21**

125. On June 8, 2006, Larry Shaw sent a Notice of Claimed Infringement to Ebay for Items Numbered 7625531389, 7626267553, 7626268929, 7626809919, 7626811894, 7626815894, 7626817321, 7626820281, and 7626821775 which are identified as "this original vintage print was and is the property of Sam Shaw, now the Estate of Sam Shaw. It has been taken from the files of Look Magazine without authority and demand is hereby made for its return to Shaw Family Archives, Ltd. SFA has identified the Notice of Claimed Infringement and the Alleged Infringing Works in documents SFA00337 through 00340. **DX 295**

126. On June 2, 2003, Larry Shaw on behalf of Shaw Family Archives wrote to Karen Ewing at Mattel, Inc. regarding "Sam Shaw photographs of Marilyn Monroe used in packaging of Mattel Marilyn Collectible Doll." As alleged proof of ownership, Mr. Shaw included a copy of the book jacket cover of "Marilyn Among Friends" specifically identifying Page 46 of Bloomsbury Edition, a double page photo showing a full picture of photograph used in Mattel packaging used for Marilyn Doll and Page 49 Bathtub Scene from same shooting as photo used by Mattel. SFA also identified a Certificate of Registration for "Marilyn Among Friends", an Assignment of Copyright for Registration TX2-400-879 to Sam Shaw by Patricia Rosten, a copy of a Sam Shaw photograph from "The Seven Year Itch" of Marilyn Monroe and Tom Ewell showing the full and complete photograph of one of the photos used by Mattel and a copy of a

contact sheet from Sam Shaw's photographic coverage of that bathtub scene from "Seven Year Itch" and 12 4x6 copies of photos of that shot. **DX 296**

127.    On September 27, 2003, Larry Shaw on behalf of Shaw Family Archives sent a letter to Bonnie Bogin at Twentieth Century Fox regarding a Sam Shaw photograph of Marilyn Monroe used in packaging, promotion, sale and distribution of Twentieth Century Fox Diamond Collection Volume 1 – DVD Item 2001402. In SFA's letter, Mr. Shaw claims ownership of certain photographs taken by Sam Shaw "during the shooting of "The Seven Year Itch". **DX 297**

128.    On February 28, 2004, Len Reiter of Bradford Licensing Associates sent an email to A. Richmond at BSNYC.com. The email states: "Also, our client has just informed us that all of the images we will need to have a copyright notice referring to the photos owned by the Shaw Family Archives or Valhalla Productions, depending on which photos are used. He has told us that since Marilyn Monroe's name is in the public domain, we can use her name in association with these photographs, which is also excellent news." **DX 298**

129.    On July 28, 2005, David M. Marcus wrote to the New York Post regarding the use of Sam Shaw's Marilyn Monroe photograph in July 13, 2005 New York Post article. Mr. Marcus states that he represents Shaw Family Archives Ltd. and that "SFA owns the right to market/license all photographic images taken by the photographer Sam Shaw. Mr. Marcus continues by stating that Sam Shaw was hired by Charles Feldman the producer of "The Seven Year Itch" for the purpose of creating publicity for the film and that Sam Shaw's "Flying Skirt Series" from that film [has] become iconographic for Marilyn Monroe in the 1950's. Mr. Marcus identifies the photographic image by referring the New York Post to the image as it appeared in "Marilyn Among Friends". **DX 299**

130.    On January 30, 2006, Larry Shaw on behalf of Shaw Family Archives, Ltd. wrote to Kenneth R. Powell, Manager, Rights & Clearances at MSNBC regarding the use of Sam Shaw's Marilyn Monroe photographs by MSNBC in the Dan Abrahms Report and Scarborough Country on November 4, 2005. Mr. Shaw similarly claims ownership of such photographs. The Larry Shaw letter and the identification of the specific photographs found in SFA00563 through 00572. Mr. Shaw identifies "the exact same image used by MSNBC" as being first published in the book "Marilyn Monroe as the Girl." **DX 300**

131.    On November 8, 2005, Larry Shaw sent an email to Ken Powell of MSNBC again specifically identifying the photograph which he claims was infringed by MSNBC. A copy of the email and the photograph are identified on SFA document 00561 through 562. **DX 301, DX 305**

132.    On December 27, 2005, Michelle Minieri sent an email to R.M. Foerster regarding jewelry licensing stating that "our program, The Shaw Family Archives, licenses out Marilyn's images owned by Shaw Family." **DX 302**

133.    On September 18, 2007, Michelle Minieri, as President and Managing Director of Bradford Licensing Associates, wrote to Image Source International that "Bradford Licensing Associates, ("BLA") is the exclusive, worldwide agent for Marilyn imagery by Sam Shaw and Shaw Family Archives, owner of copyrighted Marilyn Monroe imagery." **DX 304**

134.    The Shaw Family Archive maintains a website which displays certain photographs of Marilyn Monroe. Each photograph is accompanied by a copyright notice © Shaw Family Archives 2002. **DX 307-323**

135.    Certain of the photographs depicted on the Shaw Family Archive website were previously published in "Marilyn Monroe as the Girl" and "Marilyn Monroe.  The Life.  The Myth."  **DX 307-327**

136.    On December 13, 2007, Gary Adelman, Esq. of Robinson Brog Leinwand Greene Genovese & Gluck wrote to Jeong-Ho Lee of CMG Worldwide stating that he is counsel to Shaw Family Archives Ltd. "the holder of all worldwide rights, including Korea, in the photos taken by Sam Shaw and Larry Shaw during the course of their professional careers as photographers."  Mr. Adelman continued:  "We hereby demand that you cease and desist any further attempts to restrain our clients from exercising their rights in the photographs in Korea or elsewhere.  Failure to comply with the demands herein will result in such action as is necessary for our client pursue the full scope of legal remedies available to them."  **DX 328.**

## V.  ISSUES TO BE TRIED

### A.  Plaintiffs / Consolidated Defendants' Version

1.   Whether Marilyn Monroe died a domiciliary of the State of New York.

2.   Whether certain unidentified photographs of Marilyn Monroe that comprise what the Defendants/Consolidated Plaintiffs have identified as part of the "Monroe/Shaw Collection" and/or the "Shaw Collection" are in the public domain because they were either "published prior to January 1, 1964, where no copyright renewals were obtained during the final year of the initial 28-year copyright term for such photographs; or (b) published prior to March 1, 1989, without the requisite copyright notice."

### B.  Defendants / Consolidated Plaintiffs' Version

The issues to be tried are:

EX. B

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

|  |  |  |
|---|---|---|
| CMG WORLDWIDE, INC., an Indiana Corporation and MARILYN MONROE, LLC, a Delaware Limited Liability Company, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Cause No.:_____ |
| | ) ) | |
| BRADFORD LICENSING ASSOCIATES, THE SHAW FAMILY ARCHIVES, Ltd., a New York Corporation, and JAMES E. DOUGHERTY, | ) ) ) ) ) | **1:05-cv-0423-DFH-WTL** |
| Defendants. | ) ) | |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs CMG Worldwide, Inc. ("CMG"), and Marilyn Monroe, LLC, by counsel, and for their Complaint for Damages and Injunctive Relief allege as follows:

1.    Plaintiff CMG is a corporation organized and existing pursuant to the laws of the State of Indiana, maintaining its principal place of business in Hamilton County, Indiana.

2.    Plaintiff Marilyn Monroe LLC is a business entity organized and existing pursuant to the laws of the State of Delaware, maintaining its principal place of business in Indiana through CMG, its exclusive licensing and business representative.

3.    Over the last twenty-five years, CMG has been in the business of representing certain famous individuals or the heirs, families, estates or business enterprises of deceased famous individuals ("CMG Clients") for the purpose of licensing to third parties the limited permission to commercially utilize the Intellectual Property rights belonging to said famous individuals or his or her heirs, families, estate, or business enterprise. These Intellectual Property

rights, both common law and statutory, typically include, but are not limited to, the name, image, likeness, voice, persona, and other identifying elements of a famous individual, commonly known as the Right of Publicity, as well as all common law and Federally registered trademarks and other Intellectual Property interests which may be associated with the persona of a famous personality.

4.    CMG has secured the right to manage and exploit the Intellectual Property interests of many of the properties and personalities considered to be among the most prestigious and valuable in the celebrity licensing industry, including, but not limited to, Marilyn Monroe, James Dean, Sophia Loren, Babe Ruth, Jackie Robinson, Buddy Holly, Ella Fitzgerald, Chuck Berry, and many others.    As part of its enumerated duties on behalf of its clients, CMG advertises, markets, and promotes the availability of its clients for licensing on a worldwide basis.

5.    CMG typically requires, as a material component to providing these services for its clients, that its clients grant CMG the exclusive, worldwide right to protect and promote a given client for purposes of licensing, commercial campaigns, and other opportunities. Because of this prerequisite, there can be no entity other than CMG with the authority to represent in a licensing context the Intellectual Property rights of a CMG client.

6.    Through CMG's efforts to manage and exploit the intellectual property rights of its clients, CMG generates income for its clients and operating revenue for itself.    CMG has various methods for promoting and pursuing commercial opportunities on behalf of its clients, which have been developed, honed, stylized, and refined by experience and success in the industry.    As such, CMG, as well its clients, have developed considerable goodwill within the

2

industry with companies such as leading advertising agencies and manufacturers throughout the world with whom CMG conducts regular and ongoing business.

7.    Marilyn Monroe, LLC, is the proprietor of various Intellectual Property rights, including certain trademarks, the rights of association and sponsorship and Right of Publicity and Privacy in and to the Marilyn Monroe name, image, and persona (hereinafter "Monroe Intellectual Property Rights").    Marilyn Monroe, LLC, and CMG have systematically and continuously invested considerable time, energy, and financial resources over the span of many years in developing critical and lucrative business relationships with licensees through the strategic management of the Monroe Intellectual Property Rights.

8.    Upon information and belief, Defendant Bradford Licensing Associates ("Bradford") is a business entity organized and existing pursuant to the laws of the State of New Jersey.

9.    Upon information and belief, Defendant Shaw Family Archives, Ltd. ("Shaw"), is a business entity organized and existing pursuant to the laws of the State of New York.

10.    Upon information and belief, Defendant James E. Dougherty is an individual and a citizen of the State of Maine.

11.    Upon information and belief, Bradford's business and commercial endeavors include activities conducted on behalf of Shaw and Dougherty for the benefit of all Defendants.

12.    Bradford is in the business of offering, marketing, and advertising to the public, on a worldwide basis, licensing services featuring various consumer brands and properties.

13.    Upon information and belief, Bradford represents certain third parties who allegedly own certain copyright interests in photographs of Marilyn Monroe *via* Shaw and Dougherty and who have produced an unauthorized film documentary of Marilyn Monroe

3

entitled "Marilyn's Man." However, even if a copyright interest in those photographs can be established as valid and enforceable, such an interest does not confer an unfettered right to use an aspect of a person's personality rights of publicity in connection with a product, merchandise, goods, services, commercial activity, advertisement, and/or solicitation. I.C. § 32-36-1-1 *et seq.*

  14. Bradford has engaged, and continues to engage, in unlawful and unauthorized use of the Monroe Intellectual Property Rights. See Exhibit A

  15. Bradford owns and operates a website through which it communicates the false impression to the public that it has the full authority to license the use of the Monroe Intellectual Property Rights for commercial purposes. In addition, Bradford's website contains intentionally misleading and false demonstrations which directly undermine CMG's business and business methodology. See Exhibit B.

  16. Bradford has also engaged in specific communications with existing business partners of Plaintiffs, advising those entities that Plaintiffs do not have enforceable interests in the Monroe Intellectual Property Rights.

  17. Defendants have intentionally solicited a number of existing licensees of Plaintiffs to enter into the unlawful and unauthorized requests for the use of the Monroe Intellectual Property Rights. In each case, upon information and belief Bradford, individually and as the agent of Shaw and Dougherty, falsely represented that Defendants possess the authority to license the use of the Monroe Intellectual Property Rights and falsely represented that permission from Plaintiffs was an unnecessary burden to current and potential licensees. As such, Defendants' solicitations contain intentionally misleading and false representations which directly undermine Plaintiffs' commercial activities, well-established goodwill, and reputation in

4

the celebrity licensing industry. These actions have caused confusion in the marketplace concerning Plaintiff's legitimate rights.

18.    Upon information and belief, Bradford is contacting Plaintiffs' licensees and potential licensees and is making representations similar to the following:

> *The Jim Dougherty and Norma Jeane Limited Edition Collection* and *The Shaw Limited Edition Marilyn/Norma Jeane Collection* licensing programs provide licensees **with a world known brand that will feature merchandise drawn upon the beauty and timelessness of Marilyn.**

(emphasis added). In so doing, Defendants are not just attempting to capitalize on their alleged copyrights, but also to trade illegally and without authority on the Marilyn Monroe brand and on the Monroe Intellectual Property Rights.

19.    Upon information and belief, Bradford, individually and as agent for Shaw and Dougherty, has been appearing at tradeshows at which it has prominently displayed Marilyn Monroe's name, identity, persona, and image without permission, consent, or license from Plaintiffs and which has generated press coverage concerning its ability to license the Monroe Intellectual Property Rights. As a result, Defendants have caused and are causing extensive confusion in the marketplace, are usurping valuable business opportunities belonging to Plaintiffs, and are further explicitly advising existing or potential business partners of Plaintiffs that a license from Plaintiffs is not required when those existing or potential business partners secure a license from one or more Defendants.

20.    Bradford, individually and on behalf of Shaw and Dougherty, has been seeking out and securing various licensing arrangements concerning the Monroe Intellectual Property Rights on a systematic and extensive basis which directly implicates and undermines the rights of publicity owned and administered by Plaintiffs.

5

## JURISDICTION AND VENUE

21.    This Court has subject matter jurisdiction because this suit involves a federal question. 28 U.S.C. § 1331; 28 U.S.C. § 1338. The Defendants are also completely diverse and the amount in controversy exceeds $75,000.00.

22.    This Court has personal jurisdiction based on Defendants' systematic contacts with Indiana and through the various damages caused to Plaintiffs in Indiana as a result of Defendants' conduct. Defendants have conducted business in Indiana through catalogue solicitations to retail establishments and through the availability of their products in the State of Indiana. See Exhibit A. In conducting this business in Indiana, Defendants have caused injury by an act and series of acts performed in Indiana. In addition, Defendants have caused injury in Indiana resulting from acts done outside of Indiana through Defendants' conducting and soliciting business in Indiana and by deriving substantial benefit from goods, services, and information rendered in Indiana, including transporting or causing to be transported into Indiana goods, merchandise, or other materials created or used in violation of Plaintiffs' interest in the Monroe Intellectual Property Rights. I.C. 32-36-1-9. Finally, Defendants have caused advertising or promotional material created or used in violation of Plaintiffs' interest in the Monroe Intellectual Property Rights to be published, distributed, exhibited, or disseminated within Indiana. Id.

23.    Venue in this judicial district is proper pursuant to 28 U.S.C. §§ 1391(b).

## COUNT I

## VIOLATION OF RIGHTS OF PUBLICITY

24.    Plaintiffs reassert and re-allege the allegations set forth in paragraphs one (1) through twenty-three (23) as if fully re-stated herein.

6

25.    Defendants are using and have used the Monroe Intellectual Property Rights without authorization or prior consent from Plaintiffs for a commercial purpose, in that Defendants are using and have used the Monroe Intellectual Property Rights on or in connection with a product, merchandise, goods, services, or commercial activities and are using or have used the Monroe Intellectual Property Rights for advertising or soliciting purchases of products, merchandise, goods, services, or for promoting a commercial activities. Defendants' conduct has been intentional.

26.    As a result of Defendants' unauthorized use of the Monroe Intellectual Property Rights for a commercial purpose, Defendants have violated and are violating the Plaintiffs' rights to and interest in the Monroe Intellectual Property Rights protected by the Indiana Right of Publicity statute. I.C. 32-36-1-1 *et seq*, and other applicable right of publicity laws.

27.    As a result of Defendants' past and continued violations of Plaintiffs' rights to and interest in the Monroe Intellectual Property Rights, Plaintiffs have suffered damages, including actual damages (including profits which Defendants have derived from the unauthorized use), treble or punitive damages, attorneys' fees, and costs of suit. Moreover, Plaintiffs are entitled to a turnover of all infringing goods and merchandise currently possessed by Defendants.

## COUNT II

### VIOLATIONS OF THE INDIANA CRIME VICTIMS ACT

28.    Plaintiffs reassert and re-allege the allegations set forth in paragraphs one (1) through twenty-seven (27) as if fully re-stated herein.

29.    Defendants' unlawful acts complained of herein constitute violations of the Indiana Crime Victims Act. I.C. 34-24-3-1.

30.    Defendants have violated I.C. 35-43 in the following particulars:

    a.  For "Criminal Mischief" as expressed in I.C. 35-43-1-2;

    b.  For "Conversion" as expressed in I.C. 35-43-4-3;

    c.  For "Deception" as expressed in I.C. 35-43-5-3(a) (6) and (9).

31.  Plaintiffs seek such damages, attorneys' fees, costs, treble and/or punitive damages for same as permitted by statute or otherwise at law.

## COUNT III

## UNFAIR COMPETITION

32.  Plaintiffs reassert and re-allege the allegations set forth in paragraphs one (1) through thirty-one (31) as if fully re-stated herein.

33.  Defendants' unlawful and unauthorized acts, as set forth above, constitute a violation of Plaintiffs' interest in and rights to the Monroe Intellectual Property Rights, at common law, and further constitute unfair competition.

34.  As a result of Defendants' unfair competition, Plaintiffs have suffered damages.

35.  Plaintiffs seek such damages, attorneys' fees, costs, treble and/or punitive damages for same as permitted by statute or otherwise at law.

## COUNT IV

## TRADE LIBEL/DISPARAGEMENT

36.  Plaintiffs reassert and re-allege the allegations set forth in paragraphs one (1) through thirty-five (35) as if fully re-stated herein.

37.  CMG is established as the premier company for representing celebrities and for marketing and licensing intellectual property rights for clients throughout the United States and worldwide.

38.    CMG has generated substantial goodwill with its clients, with advertisers, and within the industry.

39.    By representing, promoting, and informing CMG's licensees and potential licensees that Plaintiffs have no rights in the Monroe Intellectual Property Rights before marketing, promoting, and selling goods and services which infringe upon the Monroe Intellectual Property Rights, Defendants have libeled, slandered, and otherwise disparaged and defamed, for their own commercial advantage, CMG and Marilyn Monroe, LLC, and have caused them to lose reputation, goodwill and standing in the marketplace.  Further, such statements have been defamatory, *per se*, and made with malice.

## COUNT V

### INTERFERENCE WITH BUSINESS ADVANTAGE AND POTENTIAL BUSINESS ADVANTAGE

40.    Plaintiffs reassert and re-allege the allegations set forth in paragraphs (1) through thirty-nine (39) as if fully re-stated herein.

41.    Defendants are aware and otherwise have knowledge of Plaintiffs' business relationship with Plaintiffs' licensees.

42.    By representing, promoting, and informing CMG's licensees and potential licensees that Plaintiffs have no rights in the Monroe Intellectual Property Rights before marketing, promoting, and selling goods and services that infringe upon the Monroe Intellectual Property Rights, Defendants have intentionally and illegally interfered with Plaintiffs' business relationships with their licensees.

43.    Defendants' actions in interfering with Plaintiffs' business relationships are without justification.

9

44.     As a result of Defendants' unjustified and illegal interference with Plaintiffs' business relationships with their licensees, Plaintiffs have suffered damages.

## COUNT VI

### DECLARATION AS TO DOUGHERTY'S COPYRIGHTS IN THE DOUGHERTY COLLECTION

45.     Plaintiffs reassert and re-allege the allegations set forth in paragraphs (1) through forty-four (44) as if fully re-stated herein.

46.     Defendant Dougherty has asserted, either by itself or through Bradford, that it possesses valid and enforceable copyrights, pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq*, in each and every photograph that constitutes the *The Jim Dougherty and Norma Jeane Limited Edition Collection* (hereinafter the "Dougherty Collection").

47.     Upon information and belief, Dougherty does not possess a valid and enforceable copyright in one or more photographs that comprises the Dougherty Collection

48.     Without possessing a valid and enforceable copyright in one or more photographs included in the Dougherty Collection, Dougherty, individually and through Bradford, possesses no interest and/or right in those unprotected photographs in the Dougherty Collection, those photographs become part of the public domain, and Dougherty, Bradford and all other persons would need the prior permission and consent from Plaintiffs to use those photographs for a commercial purpose.

## COUNT VII

### DECLARATION AS TO SHAW'S COPYRIGHTS IN SHAW COLLECTION

49.     Plaintiffs reassert and re-allege the allegations set forth in paragraphs (1) through forty-eight (48) as if fully re-stated herein.

10

50.    Defendant Shaw has asserted, either by itself or through Bradford, that it possesses valid and enforceable copyrights, pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq*, in each and every photograph that constitutes the and *The Shaw Limited Edition Marilyn/Norma Jeane Collection* (hereinafter the "Shaw Collection").

51.    Upon information and belief, Shaw does not possess a valid and enforceable copyright in one or more photographs that comprises the Shaw Collection.

52.    Without possessing a valid and enforceable copyright in one or more photographs included the Shaw Collection, Shaw, individually and through Bradford, possesses no interest and/or right in any photograph in the Shaw Collection photographs that is otherwise unprotected by copyright, those photographs become part of the public domain, and Shaw, Bradford and all other persons would need the prior permission and consent from Plaintiffs to use those photographs for a commercial purpose.

## JURY DEMAND

53.    Plaintiffs request a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief in the following particulars:

A.    An award of damages, including treble, statutory and punitive damages against Defendants, and each of them, costs and attorneys' fees, including pre- and post-Judgment interest, as permitted under the applicable laws and authorities;

B.    A permanent injunction enjoining and restraining Defendants, and each of them, from conducting further commercial endeavors directly or indirectly utilizing the name, image, likeness, of Marilyn Monroe or any other of the Monroe Intellectual Property Rights, without consent from Plaintiffs;

11

  C.  A permanent injunction enjoining and restraining Defendants, and each of them, from engaging in any conduct or communication that is inconsistent with Plaintiff's rights in the Monroe Intellectual Property Rights, or otherwise operates to libel, slander, defame or disparage Plaintiffs or the Monroe Intellectual Property Rights;

  D.  Enter a Declaratory Judgment, pursuant to 28 U.S.C. § 2201, and to declare therein:

    1.  That CMG Worldwide, Inc. possesses the exclusive right to license the Monroe Intellectual Property Rights;

    2.  That Dougherty does not possess valid and enforceable copyrights in or more photographs in the James Dougherty Collection;

    3.  That Shaw does not possess valid and enforceable copyrights in one or more photographs in the Shaw Collection;

    4.  That none of Bradford, Shaw or Dougherty, jointly or severally, can sell, market, promote, and/or advertise the Dougherty Collection and/or the Shaw Collection in connection with any product, merchandise, goods, services, commercial activity, advertisement, and/or solicitation, without Plaintiffs' permission and consent;

    5.  That Defendants are and shall be permanently enjoined and restrained from conducting further activities inconsistent with Plaintiffs' declared interests and rights in the Monroe Intellectual Property Rights; and

6.    That Defendants are and shall be  permanently enjoined and restrained from engaging in any activities which interfere with Plaintiffs' business activities with respect to their legal and proprietary interests and rights in the Monroe Intellectual Property Rights; and

E.    Such other relief as may be just and proper in the premises.

Respectfully submitted,

DANN PECAR NEWMAN & KLEIMAN, P.C.

By:_____
    Jonathan G. Polak, No.  21954-49
    James B. Chapman II, No. 25214-32

One American Square, Suite 2300
Box 82008
Indianapolis, IN  46282
(317) 632-3232 – Telephone
(317) 632-2962 – Facsimile

13