# EX. E

christopher serbagi                                         Monday, April 7, 2008 5:16 PM
_____

**Subject:** Re:
**Date:** Wednesday, August 8, 2007 8:06 PM
**From:** Snyder, Orin <OSnyder@gibsondunn.com>
**To:** <c.serbagi@earthlink.net>
**Cc:** "\"Arato, Cynthia S.\"" <CArato@gibsondunn.com>, "\"Craven, Michelle M.\"" <MCraven@gibsondunn.com>

Thank you. Have a nice night.

--------------------------
Sent from my BlackBerry Wireless Device


-----Original Message-----
From: Christopher Serbagi <c.serbagi@earthlink.net>
To: Snyder, Orin
CC: Arato, Cynthia S.; Craven, Michelle M.
Sent: Wed Aug 08 19:19:01 2007
Subject: Re:

On the basis of this representation and your consistent representation to me
on the phone just now, Plaintiffs will consent to the additional day.  You
have agreed not to view our Amended Complaint until you file.  Please pass
that on to CMG counsel as well.


On 8/8/07 7:09 PM, "Snyder, Orin" <OSnyder@gibsondunn.com> wrote:

> OK?
>
> (Note: we are not asserting any new claims; we are cutting claims and
> allegations)
>
>
> _____
>
> From: Snyder, Orin
> Sent: Wed 8/8/2007 6:25 PM
> To: Christopher Serbagi
> Cc: Arato, Cynthia S.; Craven, Michelle M.
> Subject: RE:
>
>
> Cynthia's nanny is in the hospital, hospitalized last night.  As a result,
> Cynthia has been out-of-pocket all day, with kids at home.
>
> Michelle was delayed getting into the office due to train problems.
>
> As  result, we could not turn around the draft to get to client for approval.
>
> Please confirm that we can have the extra day.  We will not look at your
> pleading; you have my word.
>
> Thanks.
>

# EX. F

07cqshaMS.txt

```
                                                                        1
        07cqshaMS
   1    UNITED STATES DISTRICT COURT
   1    SOUTHERN DISTRICT OF NEW YORK
   2    ------------------------------x
   2
   3    SHAW FAMILY ARCHIVES, LTD.,
   3    et al.,
   4
   4                Plaintiffs,
   5
   5          v.                              05 Civ. 3939(KMK)(MDF)
   6
   6    CMG WORLDWIDE, INC., ET AL.,
   7
   7                Defendants.
   8
   8    ------------------------------x
   9
   9                                          White Plains, N.Y.
  10                                          December 26, 2007
  10
  11    Before:
  11
  12                    THE HONORABLE MARK D. FOX,
  12
  13                                      Magistrate Judge
  13
  14                         APPEARANCES
  14
  15    LAW OFFICES OF CHRISTOPHER SERBAGI
  15          Attorneys for Plaintiffs
  16    CHRISTOPHER SERBAGI
  16
  17
  17    LOEB & LOEB
  18          Attorneys for Defendant Marilyn Monroe, LLC
  18    BARRY I. SLOTNICK
  19    JONATHAN STRAUSS
  19
  20
  20    SOVICH, MINCH
  21          Attorneys for Defendant CMG Worldwide, Inc.
  21    CHRISTINE SOVICH (via telephone)
  22
  22
  23
  24
  24    Proceedings recorded by
  25    electronic sound recording.
                    MARY M. STATEN, CSR, RPR, RMR
                         (914) 390-4027
 0                                                                      2
        07cqshaMS
   1            THE DEPUTY CLERK:  This is the matter of Shaw Family
   2    against CMG Worldwide, et al.
   3            Counsel, please state your names for the record.
   4            MR. SLOTNICK:  Barry Slotnick for MM, LLC.
   5            MS. SOVICH:  Christine Sovich --
   6            THE COURT:  Just a moment, please.
   7            Go ahead.
   8            MR. SLOTNICK:  Barry Slotnick for MM, LLC, along with
   9    Jonathan Strauss.
                              Page 1
```

```
                              07cqshaMS.txt
10                MR. SERBAGI:  Good morning, your Honor.
11           Christopher Serbagi for Shaw Family Archives.
12                THE COURT:  Okay.  Thank you.
13           (Pause)
14                THE COURT:  Okay.  Now, somebody is on the phone
15      representing or on behalf of Mr. Minch, I believe.
16                Is that right?
17                MS. SOVICH:  Yes, that is correct.
18                THE COURT:  All right.  You'll be permitted to listen
19      in, but you can't argue.  I don't take argument over the phone.
20                All right.  Now, I have before me a whole series of
21      letter briefs, and the record should reflect each --
22      Mr. Serbagi, I guess, handed me about an inch and a half of
23      paper, or handed it to my Clerk, about ten minutes ago, which I
24      have not read.  I've read the letters, but not the attachments.
25                The discovery cutoff on this case is December 31st.
                    MARY M. STATEN, CSR, RPR, RMR
                           (914) 390-4027
                                                                     3
        07cqshaMS
1                 The issue that is before the Court --
2                 And I say that, Mr. Serbagi, so that if there is
3       anything in those attachments that you think is relevant, you
4       can mention it in your argument.
5                 All right.  The issue before the Court started in
6       Ms. Colbath's December 7th letter.  And then there was a
7       December 10th letter from Mr. Serbagi.  And then there was a
8       December 20th letter from Mr. Strauss.  And then there were the
9       two letters delivered this morning from Mr. Serbagi.
10                So, Mr. Slotnick, you can let me know what your
11      position is.  I'll take oral argument, and then I'm prepared to
12      make a ruling on this.
13                Go ahead, please.
14                MR. SLOTNICK:  Thank you, your Honor.
15                Before we get to the "he said she said" about whose
16      deposition should be taken when, I think we really need to talk
17      more about more basic issue in this case.
18                There has been a characterization of our third amended
19      complaint as being restricted to certain photographs, the
20      Risoli book and the Ballantine book.
21                The Risoli book has already been declared by the --
22                THE COURT:  You pointed that out in your letter.
23                MR. SLOTNICK:  Okay.  Absent a showing of ownership of
24      some copyright interest in a photograph of Marilyn Monroe by
25      the Shaw Family, they have no standing to seek any ruling with
                    MARY M. STATEN, CSR, RPR, RMR
                           (914) 390-4027
                                                                     4
        07cqshaMS
1       respect to Marilyn Monroe's domicile.
2                 The only -- the issue in this case from the beginning
3       is:  Who has the rights to utilize Marilyn Monroe's name and
4       likeness?
5                 Judge McMahon has ruled in a way that we respectfully,
6       you know, aren't happy with, of course, that there was no right
7       of publicity in Marilyn Monroe that MM, LLC currently has,
8       subject to a determination of domicile.
9                 The only basis for the Shaw Family to be able to
10      engage in the Marilyn Monroe business is owning copyrights in
11      photographs that Mr. Shaw took.
12                They are unwilling, and have refused so far, to
13      identify one single photograph in the Marilyn Monroe collection
14      that they actually own.  And if they don't own that, they have
                                Page 2
```

07cqshaMS.txt
15  no basis for challenging our right of publicity.
16          So, you know, this more Seinfeldian that Morovian.
17  This may well be a case about nothing.
18          Absent a showing that they own something -- and that's
19  what we've been asking for -- they have no standing to
20  challenge our right to Marilyn Monroe's right of publicity.
21  And that's what the case is about, your Honor.
22          MR. SERBAGI:  Good morning, your Honor.
23          Your Honor, as an initial matter, that's the very
24  first time they put forth that argument to the Court or to me.
25  It's not in any of the papers.
              MARY M. STATEN, CSR, RPR, RMR
                    (914) 390-4027

                                                                5
07cqshaMS
1           All the other arguments are on the papers, your Honor.
2   And since Mr. Slotnick didn't address them, I'll just address
3   the point that he raised.
4           The standing issue is very simple.  As Judge McMahon
5   has acknowledged, on the defendants' counsel's behalf,
6   California has recently passed a statute which purports to
7   provide a retroactive right of publicity on Marilyn Monroe.
8           The defendants are also arguing that Marilyn Monroe
9   was a California domiciliary, which, according to their
10  position, would put that statute front and center in this case
11  and potentially hold our clients liable under that statute.
12          That's the standing issue, your Honor.  They've
13  claimed a violation of the right to publicity.  If the
14  California statute is valid, as they say it is, then that's the
15  standard.
16          THE COURT:  It's before me right now.  What's before
17  me right now, according to these letters, would be governed by
18  the scope of the pleading, one side claiming that it's limited
19  to the Ballantine and Risoli books, the other side claiming
20  that it's particular photographs.
21          So why doesn't somebody show me the pleading and show
22  me where you think it goes your way.  I have a copy of the
23  third amended complaint in front of me.
24          MR. SERBAGI:  Your Honor, I'll address that, since I'm
25  already standing.
              MARY M. STATEN, CSR, RPR, RMR
                    (914) 390-4027

                                                                6
07cqshaMS
1           THE COURT:  All right.
2           MR. SERBAGI:  With the Court's permission, if you look
3   at the third amended complaint -- I'm pulling that out, your
4   Honor -- there is absolutely nothing in this third amended
5   complaint.  This is a pure fishing expedition.  They don't
6   request that -- they don't ask --
7           THE COURT:  I don't care whether it's a fishing
8   expedition or not.  The question is whether they pled it.
9           MR. SERBAGI:  No, they didn't.
10          THE COURT:  That's what I'm asking.
11          MR. SERBAGI:  All they pled -- excuse me, your Honor.
12  I'm sorry.
13          All they pled in the complaint is that the Risoli and
14  Ballantine books are in the public domain.
15          If the Court turns to Paragraph 23 on Page 5, that's
16  where they identify that the Risoli book is in the public
17  domain.
18          THE COURT:  Just one moment.
19          (Pause)
                        Page 3

```
                        07cqshaMS.txt
20              THE COURT:  All right.
21              MR. SERBAGI:  And then on Paragraph 25 -- excuse me.
22   That's not it.
23              THE COURT:  25 mentions the Ballantine book.
24              MR. SERBAGI:  Yes, 25.  Those are the only two
25   paragraphs where they request -- where they identify any book
                    MARY M. STATEN, CSR, RPR, RMR
                            (914) 390-4027
                                                                       7
     07cqshaMS
 1   that's in the public domain.
 2              If the Court turns to the prayer for relief, which is
 3   where they ask the Court to declare that a particular work is
 4   in the public domain, on Page 8, all they identify is the
 5   Risoli book as being in the public domain.
 6              THE COURT:  They say -- the prayer for relieve reads
 7   under A for declaratory judgment that "In addition to the
 8   Risoli works, defendants do not possess a valid -- do not
 9   possess valid and enforceable copyrights in those photographs
10   that compromise the Monroe/Shaw photographs and/or the Shaw
11   collection that were either published prior to January 1, 1964,
12   where no copyright renewals were obtained during the final year
13   of the initial 28-year copyright term for such photographs; or
14   B. published prior to March 1, 1989, without the requisite
15   copyright notice."
16              MR. SERBAGI:  That's correct, but all they identify in
17   there is one book.  If that argument were a bridge to get -- if
18   that argument were acceptable to look at our entire collection,
19   there would be no end to the discovery, your Honor.  They'd be
20   able to analyze every one of our books and every one of our
21   photographs.  There is no basis for that.  All they've -- all
22   they're asking the Court to declare is that the particular
23   Risoli and Ballantine is in the public domain.  They have no
24   basis to say anything else is in the public domain.  So --
25              THE COURT:  That's not what it says.  It says  "in
                    MARY M. STATEN, CSR, RPR, RMR
                            (914) 390-4027
                                                                       8
     07cqshaMS
 1   addition to the Risoli works."
 2              MR. SERBAGI:  I know that it says that, your Honor,
 3   but they're not entitled to view our entire collection, just
 4   because they say "in addition."  That's just language so that
 5   they can get to everything.  You know --
 6              THE COURT:  Okay.  I understand your position.
 7              Go ahead, please.
 8              MR. SLOTNICK:  Your Honor, this is a bit of a shell
 9   game.  They say we're not entitled to ask about any other
10   photographs, but they haven't identified any other photographs,
11   so we don't know what they are.  We asked specifically, even
12   with respect to those photographs, whether the photographs in
13   the book had been -- in two books, had ever been published
14   before, had ever been registered before.  And the witnesses --
15   the witness will not answer questions regarding even those
16   photographs.  But that --
17              THE COURT:  Let me just say this to everybody before
18   we go any further.
19              Under the Southern District rules, directing a witness
20   not to answer is sanctionable conduct, unless it falls within
21   one of the exceptions in Rule 30.  If it happens again, there
22   will be sanctions.  That's point one.
23              Point two is, I'm going to hear what everybody has to
24   say on this, and then I'm going to make rulings.  And any
                                Page 4
```

```
                               07cqshaMS.txt
       25    discovery that I order is going to take place today, tomorrow
                          MARY M. STATEN, CSR, RPR, RMR
                                 (914) 390-4027
                                                                           9
             07cqshaMS
        1    and Friday. December 31st is the cutoff. Judge McMahon has
        2    made clear she's not extending it.
        3             So go ahead, please.
        4             MR. SLOTNICK: Your Honor, what we want to see are the
        5    copyright registrations and the other documents that we've
        6    requested regarding the Marilyn Monroe collection. The one
        7    piece of information that we did get out of Shaw's 30(b)(6) was
        8    that there may be two binders of registrations dealing with the
        9    Marilyn Monroe photographs. While that is not insignificant,
       10    it's certainly not voluminous. If those documents are produced
       11    to us today, we're prepared to take a deposition tomorrow or
       12    Friday.
       13             THE COURT: Mr. Serbagi, let me ask you. Any attempt
       14    to narrow down the complaint is -- any opportunity to do that
       15    is long gone. I'm dealing with the pleadings as they now
       16    exist.
       17             What specific photographs are your clients claiming
       18    that they have an interest in? Because that's what we're --
       19    that's what this is going to be narrowed down to. So counsel
       20    says there's a folder of photographs. You haven't indicated to
       21    me what photographs. Certainly, the pleadings go beyond the
       22    Risoli and the Ballantine book. So are you in a position to
       23    tell me now what specific photographs you're claiming?
       24             MR. SERBAGI: Your Honor, there's over 3,000
       25    photographs in that collection. We're not asserting any of
                          MARY M. STATEN, CSR, RPR, RMR
                                 (914) 390-4027
                                                                          10
             07cqshaMS
        1    them in this case against these parties.
        2             THE COURT: I'm asking you what claims you're making.
        3             MR. SERBAGI: What claims are we making? I'm sorry.
        4    I don't understand the question.
        5             THE COURT: Claims as to which photographs -- which
        6    particular photographs fall within the scope of your claims?
        7    That's what I'm asking you.
        8             MR. SERBAGI: It's a difficult question to answer,
        9    your Honor, because the scope of our claim has nothing to do
       10    with the photographs that we have in our collection. It has
       11    absolutely nothing to do with anything. All we're
       12    requesting -- the only claim we have is a request that the
       13    Court declare that Marilyn Monroe died a New York domiciliary.
       14    That's the only claim we have.
       15             So in a sense, none of them. Because we're not
       16    asserting any of the photographs in this case against these
       17    clients.
       18             THE COURT: Okay. I think I understand your position.
       19             What are you talking about when you say there is a
       20    folder of photographs, Mr. Slotnick?
       21             MR. SLOTNICK: The Shaw witness identified two binders
       22    as being those -- as encompassing those documents which have
       23    copyright registration certificates for the Marilyn Monroe
       24    photographs.
       25             THE COURT: Which Shaw witness?
                          MARY M. STATEN, CSR, RPR, RMR
                                 (914) 390-4027
                                                                          11
             07cqshaMS
                                    Page 5
```

07cqshaMS.txt
```
 1              MR. SLOTNICK:  The 30(b)(6), Melissa Stevens.
 2              THE COURT:  And how specifically did she identify
 3     them?  What language did she use?
 4              MR. SLOTNICK:  I don't have the specific language.
 5     She said that there were two --
 6              THE COURT:  Doesn't help me.
 7              MR. SLOTNICK:  Okay.  She said there were two binders
 8     which contained copyright registration certificates.  She said
 9     there were at least two binders.  I asked if those were all of
10     the Shaw --
11              THE COURT:  Now, first, you said two binders.  Now
12     you're saying at least two binders.  Look at the deposition
13     transcript and tell me what she said.
14              MR. SLOTNICK:  One moment.
15              THE COURT:  Yes.  Take your time.
16              (Pause)
17              MR. SLOTNICK:  Okay.  Your Honor, on Page 138,
18     "Generally speaking, SFA keeps binders of our files.  I've seen
19     a binder with copyright registration-related documents."
20              Then I asked, "How many?"
21              She said, "I really don't know."
22              I said, "More than five?"
23              She said, "I'll say more than two, definitely."
24              I said, "Did you view these binders in preparation for
25     today's deposition?
                   MARY M. STATEN, CSR, RPR, RMR
                          (914) 390-4027
```
                                                                   12
```
07cqshaMS
 1     "Yes, I did."
 2              I requested that she review the files and produce to
 3     us any other registrations that FSA -- SFA has with respect to
 4     Marilyn Monroe as the girl, or any other specific individual
 5     photographs with Marilyn Monroe.
 6              And that's on Pages 138 through 141 of the deposition
 7     transcript.
 8              (Pause)
 9              MR. SERBAGI:  May I make an additional point, your
10     Honor?
11              THE COURT:  I'm going to hear from you in just a
12     moment.  I want to read this.
13              MR. SERBAGI:  Certainly.  I'm sorry.
14              (Pause)
15              THE COURT:  All right.  Go ahead, please.
16              MR. SERBAGI:  Okay.  Your Honor, there's a few points
17     I'd like to make by way of an analogy.
18              If this were an infringement case, and they were
19     arguing that we had infringed Product A, and in their
20     complaint, they said on information and belief other products
21     infringe, they certainly would not be entitled to discovery on
22     all the products that we would have in our repertoire.  That
23     kind of argument, it would open up discovery in incredible
24     ways.
25              Secondly, your Honor, we are not asserting any of
                   MARY M. STATEN, CSR, RPR, RMR
                          (914) 390-4027
```
                                                                   13
```
07cqshaMS
 1     these photographs in this case.  This is not about our
 2     photographs.  They have absolutely no standing to argue that
 3     these photographs are in the public domain, anyway.  The Court
 4     has already ruled that they don't have a right of publicity in
 5     Marilyn Monroe.  And that's going to be the subject of summary
```
Page 6

07cqshaMS.txt
```
 6   judgment briefing, your Honor.  They have no standing to argue
 7   that these are in the public domain, because the Court has
 8   already ruled they don't any rights to the photographs to begin
 9   with.
10            So for them to say on information and belief other
11   photographs are in the public domain, and then to get discovery
12   on every single photograph we have, which are thousands, would
13   open up the floodgates, your Honor.
14            THE COURT:  Well, they're not talking about
15   photographs here.  What they're talking about is registration
16   certificates.  That's different.
17            MR. SERBAGI:  Well, your Honor, it's photographs that
18   are in the public domain, not the registrations.  And so what
19   they're trying to --
20            THE COURT:  But the registrations would be at least
21   indicative or at least they would be relevant to the issue of
22   whether the photographs are in the public domain or not,
23   wouldn't they?
24            MR. SERBAGI:  That is true, your Honor.  But based on
25   their argument, they would open up the floodgates to things
```
MARY M. STATEN, CSR, RPR, RMR
(914) 390-4027

14

07cqshaMS
```
 1   they haven't even identified.  This is pure fishing.  They
 2   can't just say Risoli and Ballantine are in the public domain
 3   and get discovery on everything we have.  I mean, that
 4   argument, as I say with the infringement issue, your Honor, if
 5   it were an infringement claim, that would be the same exact
 6   issue.  If I were arguing that a pharmaceutical company's Drug
 7   A was -- patent was invalid, and on that argument, on
 8   information and belief, other patents are invalid, I'd get
 9   discovery an all their patents?  It's just baseless.
10            THE COURT:  Okay.  Anything further?
11            MR. SLOTNICK:  Yes, one thing, your Honor.
12            First of all, they never made a motion to dismiss this
13   claim or to limit it.
14            Secondly, and most importantly, let me get back to
15   what they are asserting against us, as well.  They're asserting
16   that they have certain rights to use the Marilyn Monroe image,
17   and that we have -- we, the Marilyn Monroe estate and LLC --
18   have no ability to limit, restrict that right.  And they are
19   now seeking from us a determination of Marilyn Monroe's
20   domicile to determine the right of publicity.
21            Well, if someone came off the street having no contact
22   whatsoever with the Marilyn Monroe estate, they'd be thrown out
23   of court if they were asked about domicile.
24            If the Shaw Estate does not own a copyright in a
25   photograph of Marilyn Monroe, they are in the same position as
```
MARY M. STATEN, CSR, RPR, RMR
(914) 390-4027

15

07cqshaMS
```
 1   anybody off the street.  If they want to be voyeurs of Marilyn
 2   Monroe's life, you know, we can address that, too.  But that's
 3   not what this is about.  We're in a court of law.  They
 4   allegedly have some basis for being in this court of law.  They
 5   originally did sue for copyright infringement.  We would like
 6   to have some repose when this case is over.  The parties really
 7   do needs to know --
 8            THE COURT:  You're only entitled to discovery on
 9   what's left in the case.
10            MR. SLOTNICK:  Your Honor, all we need -- if we see
```
Page 7

```
                  07cqshaMS.txt
11    the registration certificates, that's going to go a long way,
12    and obviously, at this stage of the game, all the way to
13    determining what the rights are of both of the parties.
14            THE COURT: All right. Anything further?
15            MR. SERBAGI: One final point, your Honor.
16            It's absolutely false to say that we are asserting
17    that we have rights to these images in this case anymore.
18    That's not the issue. Those were the issues maybe to begin
19    with when we were asserting various claims. Those issues are
20    out of the case. It has nothing to do with this case
21    whatsoever. They've claimed the two images are in the public
22    domain. That's all they're entitled to discovery on, your
23    Honor. This kind of -- this is blatant fishing expedition.
24            THE COURT: All right. Thank you.
25            I think it might be. However, I don't think I have to
                  MARY M. STATEN, CSR, RPR, RMR
                        (914) 390-4027
```

                                                                         16
```
      07cqshaMS
 1    get to that in order to decide this issue.
 2            It's pretty plain, from the deposition testimony of
 3    Melissa Stevens, that, in preparation for her deposition, she
 4    looked at these binders, and she describes them in detail as
 5    binders containing registration certificates.
 6            Anything that she looked at in preparation for her
 7    deposition, counsel would be entitled to inspect.
 8            So I'm going to direct that the Melissa Stevens
 9    deposition be reconvened tomorrow at 12:00 noon.
10            The folders to which she referred in her deposition
11    testimony will be made available to counsel for inspection.
12    That doesn't mean copying. That means inspection, and
13    inspection only. Starting at 8:00 a.m. tomorrow morning, and
14    that will be at Mr. Serbagi's office, unless counsel agree to
15    do it somewhere else.
16            (Pause)
17            THE COURT: And then that deposition will proceed
18    starting at 12:00 noon. It will proceed for a maximum of four
19    hours, which should be more than sufficient time.
20            Now, there is a second issue that was raised here
21    regarding the scope of the 30(b)(6) deposition.
22            I have to tell you, gentlemen, I'm kind of perplexed
23    in an '05 case why all this is happening within a week or two
24    of the close of discovery, but I'm not going to get into it.
25            You're claiming, Mr. Slotnick, that the witness who
                  MARY M. STATEN, CSR, RPR, RMR
                        (914) 390-4027
```

                                                                         17
```
      07cqshaMS
 1    was produced was not an appropriate 30(b)(6) deposition.
 2    You're claiming that she only worked for the company for two
 3    weeks. Counsel is telling me that she was involved with the
 4    company for a long time. This is not a company that is
 5    apparently a Fortune 500 company. It's a small operation.
 6            In any event, the rules are pretty clear with
 7    reference to 30(b)(6) deposition. You have the transcript.
 8    Point out to me any place in the transcript where she was
 9    unable to provide information that was covered by the scope of
10    the 30(b)(6) notice.
11            Does anybody have a copy of the 30(b)(6) notice?
12            (Pause)
13            MR. SLOTNICK: I'm not sure (unintelligible), your
14    Honor.
15            (Pause)
                        Page 8
```

```
                                  07cqshaMS.txt
16              MR. SERBAGI:  Your Honor, the greater issue for us,
17     really, was that she was limited to talking about two books.
18              THE COURT:  I'm not getting into what you think is the
19     greater issue.  I want to see the 30(b)(6) notice.  We're way
20     beyond the time we get into these philosophical discussions.
21              (Pause)
22              MR. SLOTNICK:  Your Honor, we don't have a copy, but
23     I'm looking through the transcript now.
24              (Pause)
25              THE COURT:  Do you have a copy?
                         MARY M. STATEN, CSR, RPR, RMR
                              (914) 390-4027
                                                                        18
       07cqshaMS
 1              MR. SERBAGI:  No, your Honor, I do not.
 2              (Pause)
 3              THE COURT:  Well, gentlemen, without a copy of the
 4     30(b)(6) notice, I'm really not in a position to give you
 5     anything on this.  So what I would suggest is that you go out
 6     and make a phone call and find out if somebody in your offices
 7     can messenger a copy up here.  If not, we'll reconvene at two
 8     o'clock this afternoon, when I'll see the 30(b)(6) notice, when
 9     you have a copy for me.  Because that's what this is going to
10     turn on.  I want to see the scope of the notice.  Then I want
11     to see the transcript.  And counsel can point out to me
12     specifically where in the transcript it's indicated that this
13     particular witness, Melissa Stevens, who apparently is the
14     niece of one of the three principals, did not comply -- was not
15     prepared to comply with the 30(b)(6) notice.
16              The arguments that she only worked there for two weeks
17     don't mean very much to me.  That is absolutely not what a
18     30(b)(6) witness turns on.  A 30(b)(6) witness can be anybody,
19     as long as they are properly prepared to provide factual
20     information on the issues which were raised in the notice.
21              So one of you gentlemen go out in the hall and use the
22     phone if you have to, and see if you can get somebody to get a
23     copy of the 30(b)(6) notice up here.  And as soon as you get
24     that information, you can let my Clerk know.
25              Okay.  Let's go ahead with the criminal calendar,
                         MARY M. STATEN, CSR, RPR, RMR
                              (914) 390-4027
                                                                        19
       07cqshaMS
 1     please.
 2              MR. SERBAGI:  Can I make one point, quick point, with
 3     your Honor?
 4              THE COURT:  Yes.
 5              MR. SERBAGI:  We do have scheduled today the final
 6     30(b)(6) deposition of CMG, just for the Court's information.
 7     Mr. Slotnick, if this is his issue, should have had this here
 8     today.
 9              THE COURT:  You both got a lot of lawyers working with
10     you.  Get somebody else to do one or the other.  Right now,
11     call down there and see if you can get it.
12              What time is that deposition set for?
13              MR. SERBAGI:  It's set for 10:00, your Honor.
14              THE COURT:  Well, if somebody in your office has a
15     copy and they can fax it up here, I'll permit -- I'll take a
16     fax for that limited purpose, even though I don't usually do
17     that.
18              It's incredible to me that you guys would come in here
19     to argue this issue and nobody has a copy of the notice.
20              In any event, see if you can get it.  If you can, the
                                   Page 9
```

```
                          07cqshaMS.txt
     21    Clerk will give you the fax number, and I'll have it faxed up.
     22         Okay.  Second call.
     23         (Recess)
     24                       -    -    -
     25            THE DEPUTY CLERK:  Your Honor, in the matter of the
                         MARY M. STATEN, CSR, RPR, RMR
                              (914) 390-4027
                                                                        20
          07cqshaMS
      1   Shaw Family, et al. against CMG Worldwide, et al.
      2        Second call.
      3        THE COURT:  Okay.  I understand from my Clerk that
      4   neither of you gentlemen, because of the holiday situation,
      5   were able to get anybody in your office who could obtain a copy
      6   of the 30(b)(6) deposition.  So there is not much I can do
      7   about that.
      8        All right.  The deposition of -- the renewed
      9   deposition of Melissa Stevens will take place, as I've
     10   indicated, tomorrow.
     11        Where did you want to do that?
     12        MR. SLOTNICK:  We'll do it at our office.
     13        THE COURT:  Okay.  The only problem -- the only reason
     14   I'm hesitating -- ordinarily, I'd say that's strictly a matter
     15   within, you know, the purview of you gentlemen -- is that I'm
     16   sure there are going to be further problems.  So make sure your
     17   court reporter is prepared to leave your offices and get up
     18   here, because if there are any disputes at all, I'm not going
     19   to do them over the phone.  You're going to have to up, and
     20   you'll resume your deposition here in the deposition room
     21   downstairs.
     22        MR. SLOTNICK:  Your Honor, I'm certainly prepared to
     23   take the deposition here.
     24        THE COURT:  What do you want to do, Mr. Serbagi?
     25        MR. SERBAGI:  That's fine with us, your Honor.
                         MARY M. STATEN, CSR, RPR, RMR
                              (914) 390-4027
                                                                        21
          07cqshaMS
      1        THE COURT:  All right.  Why don't you convene here
      2   then.  The boxes -- the only trouble with that is going to be,
      3   I think the document review should take place -- I think the
      4   document review should take place at your offices, because
      5   that's where the documents would be.  And then if there is some
      6   dispute about the relevancy of the documents, you can call me.
      7   Although what I'll tell you is, you're going to bring them up
      8   here.
      9        MR. SERBAGI:  I'm sorry.  When the Court said what do
     10   you want to do?  I thought you meant if there is a problem.  We
     11   would prefer to have the deposition in New York, your Honor;
     12   and if there is a problem, come up here, but --
     13        THE COURT:  All right.  That's fine.  I have no
     14   problem with that.  Except I think it ought to be at your
     15   office, since you have the documents.
     16        MR. SERBAGI:  That's fine.
     17        THE COURT:  That way, if documents -- you know, if
     18   there is some issue about them, the documents are going to be
     19   there and be available.
     20        You've only got until December 31st to do all this,
     21   and I will not be here on December 31st.  So that means
     22   whatever needs to be done is going to be done between now and
     23   Friday.
     24        MR. SLOTNICK:  Your Honor, just as a logistical issue,
     25   you've indicated we can examine the documents, but not copy
                                Page 10
```

07cqshaMS.txt
                    MARY M. STATEN, CSR, RPR, RMR
                            (914) 390-4027
                                                                        22
        07cqshaMS
 1    them. Obviously, for the purpose of taking the deposition --
 2              THE COURT: You can make notes on them. And you can
 3    mark with a post-it any document you think is relevant to the
 4    deposition so that it can be immediately available. But no
 5    copying, and you're not going to take anything with you. Okay?
 6              MR. SERBAGI: Just one final request, your Honor,
 7    which I made in my letter motion.
 8              The deposition of Anna Strassberg, the parties have
 9    consented, because of scheduling difficulties, to take her on
10    January 4th, if that's acceptable to the Court. It's after the
11    discovery deadline.
12              THE COURT: Yes, it is. All right. Since both sides
13    have agreed on that, I'll permit that. But that is a
14    so-ordered date, and may not be changed without on order of the
15    Court. The witness is directed to be available and to appear
16    on that day.
17              Anything else?
18              MR. SLOTNICK: Your Honor, does your Honor want us to
19    come back at two o'clock with respect to the --
20              THE COURT: No, I don't think it's necessary at this
21    point. If there are any further issues, I'll deal with them
22    when the disputes come up. But as far as the claim that the
23    30(b)(6) witness did not -- was not prepared to testify as
24    appropriate, that claim is gone.
25              Without the 30(b)(6) notice, I'm not in a position to
                    MARY M. STATEN, CSR, RPR, RMR
                            (914) 390-4027
                                                                        23
        07cqshaMS
 1    rule on it. So the application is denied.
 2              Okay. Thank you very much.
 3              You will not disappoint me if there are no problems
 4    and you can't come up. Don't get me wrong.
 5              All right. Thank you.
                              - - -

                    MARY M. STATEN, CSR, RPR, RMR
                            (914) 390-4027