# EX. A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- X
SHAW FAMILY ARCHIVES, LTD., EDITH :
MARCUS, and META STEVENS,
                                      :
                Plaintiffs,                     05 Civ. 3939 (CM)
                                      :
        -against-                                Honorable Colleen McMahon
                                      :
CMG WORLDWIDE, INC. and MARILYN
MONROE LLC,                           :
                                      :
                Defendants.           :
-------------------------------------------------------- X


**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION TO WITHDRAW COUNTS 1-8 OF PLAINTIFFS' SECOND AMENDED
COMPLAINT WITHOUT PREJUDICE AND IN SUPPORT OF DEFENDANTS'
CROSS-MOTION TO DISMISS COUNTS 1 AND 2 WITH PREJUDICE**


LOEB & LOEB LLP
345 Park Avenue
New York, New York, 10154
Tel: (212) 407-4000
Fax: (212) 308-8582
*Attorneys for Defendant Marilyn
Monroe LLC*


SOVICH MINCH LLP
10099 Chesapeake Drive
Suite 100
McCordsville, Indiana 46055
Tel: (317) 335-3601
Fax: (317) 335-3602
*Attorneys for Defendant CMG Worldwide,
Inc.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ..........................................................................................................2

    A.    The Indiana and New York Actions .................................................................2

    B.    Plaintiffs' Second Amended Complaint ............................................................3

    C.    Defendants' Motion to Dismiss Counts 3-8 of the SAC and the
        November 29, 2007 Order ...............................................................................5

    D.    Plaintiffs Agree to Dismissal of their Copyright Claims With Prejudice
        and Seek Reconsideration of The November 29, 2007 Order .............................6

    E.    Discovery .......................................................................................................7

ARGUMENT ............................................................................................................................9

I.    PLAINTIFFS' MOTION TO WITHDRAW COUNTS 1-8 OF THEIR
    SECOND AMENDED COMPLAINT WITHOUT PREJUDICE SHOULD BE
    DENIED ...........................................................................................................9

    A.    Plaintiffs' Motion Seeks Reconsideration of the November 29, 2007
        Order and is Therefore Untimely and Improperly Asserts New
        Arguments.......................................................................................................9

    B.    All Relevant Considerations Weigh Against Dismissal of Counts 1-8
        Without Prejudice ..........................................................................................11

        1.    Plaintiffs Did Not Act Diligently in Bringing Their Motion .................11

        2.    Plaintiffs Acted Vexatiously in Bringing Their Motion ........................13

        3.    The Extensive Discovery Precludes Dismissal Without
            Prejudice ............................................................................................15

        4.    Defendants Would Have to Duplicate the Expense of this
            Litigation............................................................................................18

        5.    Plaintiffs' Explanation Does Not Justify Dismissal Without
            Prejudice ............................................................................................20

    C.    Counts 1 and 2 are the Equivalent of Compulsory Counterclaims and
        Cannot be Withdrawn Without Prejudice ..........................................................20

II.     COUNTS 1 AND 2 OF THE SAC SHOULD BE DISMISSED WITH
        PREJUDICE BECAUSE PLAINTIFFS' COUNSEL AGREED TO
        WITHDRAW THEM WITH PREJUDICE ................................................................22

III.    CONCLUSION ..........................................................................................................23

# TABLE OF AUTHORITIES

CASES

*Arthur the Dog v. U.S. Merchandise Inc.*,
  No. 05 Civ. 0958 (JFB), 2007 WL 2493427 (E.D.N.Y. Aug. 29, 2007)..................................22

*Atlas v. Wood*,
  33 Misc. 2d 543, 226 N.Y.S.2d 43 (Sup. Ct. Nassau County)..................................................22

*Banco Central de Paraguay v. Paraguay Humanitarian Found., Inc.*,
  No. 01 Civ. 9649 (JFK), 2006 U.S. Dist. LEXIS 87093 (S.D.N.Y. Nov. 29, 2006)........13, 17

*BD ex. rel. Jean Doe v. DeBuono*,
  193 F.R.D. 123 (S.D.N.Y. 2000) ......................................................................................15, 19

*Bosteve Ltd. v. Murauszwki*,
  110 F.R.D. 257 (E.D.N.Y. 1986) ..............................................................................12, 16, 21

*Catanzano v. Wing*,
  277 F.3d 99 (2d Cir. 2001).......................................................................................................17

*Comunidad Autonoma del Pais Vasco v. Am. Bureau of Shipping, Inc.*,
  No. 04 Civ. 671 (LTS), 2006 U.S. Dist. LEXIS 55822 (S.D.N.Y. Aug. 4, 2006)............15, 18

*D'Alto v. Dahon California, Inc.*
  100 F.3d 281 (2d Cir. 1996)......................................................................................................13

*Deere & Co. v. MTD Holdings, Inc.*,
  No. 00 Civ. 5936 (LMM), 2004 U.S. Dist. LEXIS 11707 (S.D.N.Y. June 23, 2004).............19

*Del Greco v. CVS Corp.*,
  354 F. Supp. 2d 381 (S.D.N.Y. 2005)......................................................................................11

*Galasso v. Eisman, Zucker, Klein & Ruttenberg*,
  310 F. Supp. 2d 572 (S.D.N.Y. 2004)................................................................11, 13, 16, 20

*Guzman v. Hazemag U.S.A., Inc.*,
  145 F.R.D. 308 (E.D.N.Y. 1993) ............................................................................................12

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
  241 F.R.D. 182 (S.D.N.Y. 2007) .............................................................................................10

*In re Health Mgmt. Svs. Inc. Secs. Litg.*,
  113 F. Supp. 2d 613 (S.D.N.Y. 2000).......................................................................................9

*Maderia v. Affordable Housing Found. Inc.*,
  No. 01 Civ. 8779 (CM) (GAY), 2007 WL 4116580 (S.D.N.Y. Nov. 16, 2007) ...................10

*Manti Transp., Inc. v. Assoc. Commercial Corp.,*
  No. 00 Civ. 6807 (FB), 2002 WL 369807 (E.D.N.Y. March 8, 2002) ....................................13

*Minn. Mining & Mfg. Co. v. Barr Labs., Inc.,*
  289 F.3d 775 (Fed. Cir. 2002) ..........................................................................................13

*National Union Fire Ins. Co. of Pittsburgh, PA v. Stroh Cos., Inc.,*
  265 F.3d 97 (2d Cir. 2001) ...............................................................................................10

*On Line Power Techs., Inc. v. Square D Co.,*
  No. 03 Civ. 4860 (CM), 2004 U.S. Dist. LEXIS 9655 (S.D.N.Y. Apr. 30, 2004) ..................22

*Pac. Elec. Wire & Cable Co. v. Set Top Int'l Inc.,*
  No. 03 Civ. 9623 (JFK), 2005 WL 578916 (S.D.N.Y. March 11, 2005) ......................... 17-19

*Phillips USA, Inc., v. Allflex USA, Inc.,*
  77 F.3d 354 (10th Cir. 1996) ............................................................................................13

*Pizzulli v. The Northwestern Mut. Life Ins. Co.,*
  No. 05 Civ. 1889 (LAP), 2006 WL 490097 (S.D.N.Y. Feb. 28, 2006) ..................................21

*Smith v. Empire of Am. Realty Credit Corp.,*
  No. 94 Civ. 0786 (JTE), 1999 U.S. Dist. LEXIS 1444 (W.D.N.Y. Jan. 11, 1999) ................17

*Thomas v. New York State Dep't of Correctional Servs.,*
  No. 00 Civ. 7163 (NRB), 2004 WL 1871060 (S.D.N.Y. Aug. 20, 2004) ........................17, 19

*United States v. Aquavella,*
  615 F.2d 12 (2d Cir. 1979) .......................................................................................... 20-21

*Viada v. Osaka Health Spa, Inc.,*
  458 F. Supp. 2d 100 (S.D.N.Y. 2005) ................................................................................17

*Vlassis v. Corines,*
  247 A.D.2d 609, 669 N.Y.S.2d 361 (2d Dep't 1998) ...........................................................22

*Zagano v. Fordham University,*
  900 F.2d 12 (2d Cir. 1990) .......................................................................................... Passim


**STATUTES**

C.P.L.R. § 2104 ..........................................................................................................................22

Cal. Civ. Code § 3344.1 ..............................................................................................................10

N.Y. Gen. Bus. Law §§ 349-50 ............................................................................................... 4-5

**OTHER AUTHORITIES**

4 Richard A. Lord, *Williston on Contracts* § 8:43 (4th ed. 2007) ...................................................22

Fed. R. Civ. P. 13(a) .........................................................................................................................20

Fed. R. Civ. P. 41(a)(2) ...............................................................................................................7, 11

Fed. R. Civ. P. 26(a)(1).......................................................................................................................7

Local Rule 6.3 .........................................................................................................................9-10, 14

Defendants Marilyn Monroe LLC ("MMLLC") and CMG Worldwide, Inc. ("CMG")

respectfully submit this memorandum of law in opposition to Plaintiffs' Motion to Withdraw

Counts 1-8 of Their Second Amended Complaint Without Prejudice and in support of

Defendants' Cross-Motion to Dismiss Counts 1 and 2 of Plaintiffs' Second Amended Complaint

With Prejudice.

## PRELIMINARY STATEMENT

Defendants have spent hundreds of thousands of dollars and countless attorney and

paralegal hours preparing and responding to dozens of document requests and interrogatories,

reviewing and producing over sixty-five thousand pages of documents, reviewing over a

thousand pages of documents produced by Plaintiffs, preparing for depositions, appearing at

numerous pretrial conferences, and briefing a lengthy motion to dismiss.  Now, after two-and-a-

half years of litigation, Plaintiffs seek to withdraw eight of their nine causes of action *without*

*prejudice*, so they can be reasserted in some future litigation, thereby forcing Defendants to

duplicate their efforts spent in this action.

Moreover, after Defendants' September 2007 motion to dismiss demonstrated that

Plaintiffs' Counts 3-8 failed to state a claim or were otherwise barred by black-letter law, and

after Defendants agreed to withdraw that motion only if Plaintiffs dismissed those claims *with*

*prejudice*, the Court dismissed Counts 3-8 *with prejudice*.  Plaintiffs' present motion therefore

seeks reconsideration of that order, but woefully fails to meet the heightened standard required to

overturn a prior court order.  It is also clearly untimely under this Court's Local Rules.

Counts 1 and 2 should be dismissed with prejudice because Plaintiffs' counsel agreed in

writing to withdraw them *with prejudice*, and because they have been pending far too long, and

have been the subject of far too much discovery for Plaintiffs to withdraw them as if they were
never part of this case.

## STATEMENT OF FACTS

### A.  The Indiana and New York Actions

Defendants initiated this action on March 23, 2005 by filing a complaint in the Southern
District of Indiana (the "Indiana Action") against Plaintiff Shaw Family Archives, Ltd. ("SFA"),
SFA's licensing agent Bradford Licensing Associates ("Bradford"), and others.  In the Indiana
Action, MMLLC and CMG asserted claims for, among other things, violation of their right of
publicity in the name, image and likeness of the late actress Marilyn Monroe, and for a
declaratory judgment that Plaintiff SFA does not possess valid and enforceable copyrights to
photographs of Marilyn Monroe taken by Sam Shaw.  (Declaration of Christopher Serbagi, Esq.
dated Dec. 16, 2007 ("Serbagi Decl.") Ex. A, ¶¶ 24-27, 49-52; Ex. B, ¶¶ 37-40, 74-77.)

Shortly after Defendants commenced the Indiana Action, on April 19, 2005 Plaintiffs
filed a complaint in this Court (the "New York Action").  (Serbagi Decl., Ex. C.)  The Complaint
asserted a claim for copyright infringement based on Defendants' display of photographs of
Marilyn Monroe taken by Sam Shaw on a website and coffee mug, as well as other unspecified
infringements.  (*Id.* at ¶¶ 15-26.)  The Complaint also sought a judgment declaring that
Defendants own no right of publicity in Monroe's name and likeness and that Plaintiffs hold
valid copyrights to the Shaw photographs (*id.* at ¶¶ 27-38).

Plaintiffs filed an Amended Complaint dated May 9, 2005, which repeated the copyright
infringement claim and warned that Defendants displayed "other copies of plaintiffs' copyright
protected photographic works as part of defendants' advertising activities, or have otherwise
offered to or have licensed others to make copies of the Shaw Collection" and that "defendants
may be advertising, offering for sale, and are selling other copyright protected works of the Shaw

2

Collection in addition to those set forth above." (Serbagi Decl., Ex. D at ¶¶ 15-26.)  The

Amended Complaint also added claims for tortious interference with contractual relations and

tortious interference with prospective economic advantage ("Tortious Interference Claims")

based on Defendants' alleged representations to Plaintiffs' licensees and potential licensees that

Defendants owned the right of publicity in Marilyn Monroe's name and likeness and that

Plaintiffs could not license Shaw's photographs of Monroe without Defendants' permission. (*Id.*

at ¶¶ 39-48.)

On July 5, 2005 Plaintiff SFA moved to dismiss the Indiana Action or, in the alternative,

to transfer it to this Court, and the next day this Court stayed the New York Action pending a

determination of that motion (Order dated July 6, 2005, Dkt. No. 24).  In March 2006, the

Indiana Action was transferred to this Court, and the New York Action was removed from the

suspense calendar (Order dated March 37, 2006 Dkt. No. 25).  In May 2006, the Indiana Action

and the New York Action were consolidated for all purposes.  (Order dated May 2, 2006, Dkt.

No. 30.)

A year later, on May 2, 2007, the Court granted summary judgment dismissing

Defendants' claim for violation of Marilyn Monroe's right of publicity ("May 2, 2007 Order").

That decision did not address any of the parties' other claims, nor was discovery stayed while the

motion was being briefed.[1]

**B.   Plaintiffs' Second Amended Complaint**

More than *two years* after the May 9, 2005 Amended Complaint, Plaintiffs filed a Second

Amended Complaint ("SAC") dated August 8, 2007.  (Serbagi Decl., Ex. L.)  Count 1 of the

---

[1] On May 14, 2007, in a parallel litigation between Defendants and another entity
claiming interests in photographs of Monroe, Judge Morrow in the Central District of California
ruled that Defendants had no standing to assert Monroe's right of publicity. *The Milton H.
Greene Archives, Inc. v. CMG Worldwide, Inc.*, No. 05 Civ. 2200 (MMM), (C.D. Cal. May 15,
2007) ("California Order").

SAC repeats Plaintiffs' copyright infringement claim based on the alleged sale of a coffee mug

and a purse bearing Shaw's photographs of Marilyn Monroe. (*Id.* at ¶¶ 15-22, 36.) Count 2 of

the SAC alleges contributory copyright infringement based on Defendants' alleged authorization

of the display and sale of other consumer items bearing Shaw photos of Monroe. (*Id.* at ¶¶ 15-

22, 38.) (Counts 1 and 2 are referred to as the "Copyright Claims").

Count 3 repeats the claim for a declaration that Defendants own no intellectual property

rights in Monroe's image or likeness. (*Id.* at ¶ 40.)

Counts 4 and 5 repeat the Tortious Interference Claims from the May 9, 2005 Amended

Complaint (*id.* at ¶¶ 41-44), and are based on the same allegations, *i.e.,* that Defendants

represented to Plaintiffs' licensees and potential licensees that Defendants own Marilyn

Monroe's right of publicity (*id.* at ¶¶ 23-31).

Counts 6-8 purport to assert claims for false designation of origin, false description and

unfair competition under Section 43(a) of the Lanham Act, for unfair competition under New

York common law, and for unfair trade practices under N.Y. Gen. Bus. Law §§ 349-50,

respectively. (*Id.* at ¶¶ 45-53) (Counts 6-8 are referred to as the "Unfair Competition Claims").

In support of the Unfair Competition Claims, Plaintiffs allege that Defendants continued to

represent that they have rights to Marilyn Monroe's image despite the May 2, 2007 Order and

the California Order. (*Id.* at ¶¶ 25-34.)[2] The Unfair Competition Claims are therefore a mere

---

[2] The SAC also alleged that Defendants lobbied the New York and California legislatures
for laws that would "eviscerate the New York and California Orders" and that Defendants'
representations have caused Plaintiffs' licenses and prospective licensees "anxiety" that their
present and expected contracts would be nullified by new legislation. (Serbagi Decl., Ex. L ¶¶
32, 34.) However, Plaintiffs later acknowledged in their opposition to Defendants' September
2007 motion to dismiss that "Not a single cause of action (including the ones recently
withdrawn) is based on Defendants' legitimate lobbying efforts, which are obviously
constitutionally protected." (Dickstein Decl., Ex. B, pp. 2-3.) Moreover, on November 28,

slight expansion of the Tortious Interference Claims alleged in the May 9, 2005 Amended

Complaint.

Count 9 seeks a declaration that Monroe died a New York domiciliary (*id.* at ¶ 55) and

plays no part in the present motions.

### C. Defendants' Motion to Dismiss Counts 3-8 of the SAC and the November 29, 2007 Order

On September 4, 2007, Defendants moved to dismiss Counts 3-8 of the SAC.

(Defendants' Memorandum of Law in Support of Motion to Dismiss Plaintiffs' SAC and for a

Limited Stay of Discovery, Declaration of Tal Dickstein dated January 16, 2008 ("Dickstein

Decl."), Ex. A.)  The motion established that (i) the Tortious Interference Claims and the Unfair

Competition Claims are barred by the *Noerr-Pennington* Doctrine to the extent they are based on

Defendants' constitutionally protected lobbying and pre-litigation activities, (ii) the Tortious

Interference Claims fail to allege elements necessary to state a claim, (iii) the Unfair Competition

Claims fail to allege enough facts to state a claim, and (iv) Count 8 (for unfair trade practices

under N.Y. Gen. Bus. Law §§ 349-50) fails because Plaintiffs do not allege any impact on

consumers.  (*Id.* at 1-22.)

Plaintiffs requested and obtained three extensions of time to respond to Defendants'

motion to dismiss.  (Memorandum Endorsements dated September 14, 2007, September 28, 2007

and October 22, 2007, Dkt. Nos. 128, 130, 131.)  On November 6, 2007, when they finally

responded, Plaintiffs chose not to oppose the motion, instead stating "we have stipulated with the

Defendants to withdraw the third through eight causes of action in the Second Amended

Complaint."  (Memorandum in Support of Plaintiffs' Opposition to Defendants' Motion to

---

2007, Magistrate Judge Fox denied Plaintiffs' requests for documents related to Defendants' lobbying activities.  (Minute Order dated November 28, 2007.)

5

Dismiss, Dickstein Decl., Ex. B p. 1.)[3] MMLLC later confirmed that "Defendants have agreed

to stipulate to such withdrawal so long as it is <u>with prejudice</u> since, as established in MMLLC's

moving papers, black letter law requires the dismissal of the subject claims and further Plaintiffs

have received ample discovery in this matter and should be prepared to go forward with the

subject claims if there is any merit to them." (November 28, 2007 Letter from Paula Colbath to

Court, Dickstein Decl., Ex. C.)

The Court then ordered that "The Third through Eighth Causes of Action in the complaint

are dismissed with prejudice." ("November 29, 2007 Order") (Dickstein Decl., Ex. D.)

### D. Plaintiffs Agree to Dismissal of their Copyright Claims With Prejudice and Seek Reconsideration of The November 29, 2007 Order

On December 3, 2007, Plaintiffs' counsel wrote to MMLLC's counsel that "Plaintiffs are

withdrawing their copyright infringement claim and we will stipulate with prejudice." (Serbagi

Decl., Ex. bb p. 1) Plaintiffs later reversed course, however, and sought to withdraw their

Copyright Claims without prejudice in a letter dated December 6, 2007. (Serbagi Decl., Ex. cc p.

2.)

Plaintiffs' December 6 letter also noted that Plaintiffs would submit a letter brief asking

the Court to "reconsider" its decision to dismiss Counts 3-8 with prejudice. (*Id.*) On December

10, 2007, Plaintiffs submitted their letter brief, which was rejected by the Court,[4] and, along with

Plaintiffs' December 6 letter, was considered a nullity. (December 12, 2007 Memorandum

Endorsement, Dickstein Decl., Ex. E.)

---

[3] Plaintiffs did oppose dismissal of Count 9, which seeks a declaratory judgment that Monroe died a New York domiciliary. That claim plays no part in the pending motions.

[4] The Court's Individual Practices § 2.D. state that "The Court does not accept 'letter motions' unless that procedure has been authorized in advance."

Finally, on December 17, 2007, Plaintiffs served a Notice of Motion to Withdraw Counts

1-8 of the Plaintiffs' Second Amended Complaint Pursuant to Fed. R. Civ. P. 41(a)(2),

(Dickstein Decl. ¶ 7, Ex. BB), yet made no mention of the November 29, 2007 Order.

### E.  Discovery

Beginning in the summer of 2006 with the initial Rule 26(a)(1) disclosures (Dickstein

Decl., Exs. F, G), and continuing through the end of 2007, Defendants actively pursued, and

responded to, discovery regarding Counts 1-8 of Plaintiffs' SAC.

MMLLC propounded three sets of document requests, which included seventy-nine

separate requests.  (MMLLC's First Set of Document Requests to Plaintiffs dated December 28,

2006, Dickstein Decl., Ex. H; MMLLC's Second Set of Document Requests to Plaintiffs dated

July 17, 2007, Dickstein Decl., Ex. I; MMLLC's Third Set of Document Requests to Plaintiffs

dated October 30, 2007, Dickstein Decl., Ex. J.)  Plaintiffs indicated that they would produce

documents responsive to many of those requests that are relevant to Counts 1-8.  (Plaintiffs'

Responses and Objections to MMLLC's First Set of Document Requests dated February 19,

2007, Dickstein Decl., Ex. K, Nos. 19-22; Plaintiffs' Responses and Objections to MMLLC's

Second Set of Document Requests dated August 24, 2007, Dickstein Decl., Ex. L, Nos. 1, 2, 8,

10, 11; Plaintiffs' Responses and Objections to MMLLC's Third Set of Document Requests

dated November 29, 2007, Dickstein Decl., Ex. M, Nos. 11-22.)  Many other requests in

MMLLC's Third Set of Document Requests were also relevant to Counts 1-8, although Plaintiffs

refused to produce documents responsive to those requests.  (Dickstein Decl., Ex. M, Nos. 23-

32.)

As Plaintiffs' acknowledge, in response to Plaintiffs' document requests, Defendants

produced approximately 65,000 pages of documents.  (Serbagi Decl. ¶ 12.)  Many of those

documents were responsive to Plaintiffs' document requests targeted at Counts 1-8.  (Plaintiffs'

7

First Demand for Production of Documents dated October 8, 2006, Dickstein Decl., Ex. N, and

MMLLC's Responses and Objections dated December 26, 2006, Dickstein Decl., Ex. O, No. 21;

Plaintiffs' Second Set of Document Requests to Defendants dated July 16, 2007, Dickstein Decl.,

Ex. P, and Defendants' Responses and Objections dated August 27, 2007, Dickstein Decl., Ex.

Q, Nos. 1, 2, 6, 7.)

MMLLC also propounded two sets of interrogatories, which included twenty five

separate questions, many of which are relevant to Counts 1-8.  (MMLLC's First Set of

Interrogatories to Plaintiffs dated January 11, 2007, Dickstein Decl., Ex. R, Nos. 4, 9, 11, 12, 14;

MMLLC's Second Set of Interrogatories to Plaintiffs dated October 30, 2007, Dickstein Decl.,

Ex. S, Nos. 1-11.).  Plaintiffs identified hundreds of pages of documents as being responsive to

those interrogatories.  (Plaintiffs' Responses and Objections to MMLLC's First Set of

Interrogatories dated March 2, 2007, Dickstein Decl., Ex. T; Plaintiffs' Responses and

Objections to MMLLC's Second Set of Interrogatories dated November 30, 2007, Dickstein

Decl., Ex. U.)

MMLLC responded to several interrogatories propounded by Plaintiffs targeted at Counts

1-8.  (Plaintiffs' First Set of Interrogatories to Defendants dated February 1, 2007, Dickstein

Decl., Ex. V, and Defendants' Responses and Objections to Plaintiffs' First Set of Interrogatories

dated March 19, 2007, Dickstein Decl., Ex. W, Nos. 1-3, 6-8, 16-17).

All of the above discovery was conducted under Court-ordered discovery deadlines,[5] and

the parties appeared for seventeen separate pretrial conferences before Magistrate Judge Fox

(Dickstein Decl. ¶ 30.)

_____

[5] On May 29, 2006, the Court issued a Case Management Plan, which ordered that all
discovery be completed by October 27, 2006 and that the Joint Pre-Trial Order be submitted by
November 30, 2006.  (Dickstein Decl., Ex. X.).  Those dates were extended to February 27, 2007

In the relatively short period of time that MMLLC's present counsel has been involved in the case, MMLLC has spent hundreds of thousands of dollars, and hundreds of attorney and paralegal hours, preparing and responding to discovery, much of which concerned Counts 1-8 of the SAC.  (Dickstein Decl. ¶ 31.)

## ARGUMENT

I.    **PLAINTIFFS' MOTION TO WITHDRAW COUNTS 1-8 OF THEIR SECOND AMENDED COMPLAINT WITHOUT PREJUDICE SHOULD BE DENIED**

### A.  Plaintiffs' Motion Seeks Reconsideration of the November 29, 2007 Order and is Therefore Untimely and Improperly Asserts New Arguments

Following Plaintiffs' November 6, 2007 response to Defendants' motion to dismiss, in which Plaintiffs expressly withdrew Counts 3-8 (Dickstein Decl., Ex. B p. 1), the November 29, 2007 Order dismissed those claims *with prejudice* (Dickstein Decl., Ex. D).  Therefore, to the extent it seeks withdrawal of Counts 3-8 *without prejudice*, Plaintiffs' present motion is plainly a motion for reconsideration of the November 29, 2007 Order.  Indeed, Plaintiffs recognized that fact when they wrote that they would "ask the Court to *reconsider* its decision to dismiss Counts three through eight 'with prejudice.'"  (Serbagi Decl., Ex. cc p. 2) (emphasis added).

Reconsideration of a previous court order is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Svs. Inc. Secs. Litg.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citations and quotation omitted).  Local Rule 6.3 therefore requires that "[a] notice of motion for reconsideration or reargument of a court order determining a motion shall be served within ten (10) days after the entry of the court's determination of the original motion[.]"

---

and March 30, 2007, respectively, by Memo Endorsement dated August 3, 2006, (Dickstein Decl., Ex. Y), and again to November 30, 2007 and January 15, 2008, respectively, by Magistrate Judge Fox's June 15, 2007 Scheduling Order (Dickstein Decl., Ex. Z).  On November 5, 2007, the Court ordered that all discovery be completed by December 31, 2007, and set a trial date of March 2008.  (Dickstein Decl., Ex. AA.)

Local Rule 6.3 further requires that "[t]here shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." Hence, on a Local Rule 6.3 motion, "a party may not advance new facts, issues, or arguments not previously presented to the Court." *National Union Fire Ins. Co. of Pittsburgh, PA v. Stroh Cos., Inc.*, 265 F.3d 97, 115 (2d Cir. 2001) (quoting *Polsby v. St. Martin's Press*, No. 97 Civ. 690 (MBM), 2000 U.S. Dist. LEXIS 596, at *2 (S.D.N.Y. Jan.18, 2000)); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 241 F.R.D. 182, 183 (S.D.N.Y. 2007) (on a motion for reconsideration, "[t]he court's review 'is narrow and applies only to already-considered issues; new arguments and issues are not to be considered'") (quoting *Morales v. Quintiles Transnat'l Corp.*, 25 F. Supp. 2d 369, 372 (S.D.N.Y. 1998)).

Plaintiffs' Notice of Motion was not served until December 17, 2007 (Dickstein Decl. ¶ 7),[6] more than ten business days after entry of the November 29, 2007 Order. Plaintiffs' motion should therefore be denied. *See Maderia v. Affordable Housing Found. Inc.*, No. 01 Civ. 8779 (CM) (GAY), 2007 WL 4116580, at *2 (S.D.N.Y. Nov. 16, 2007) (denying a motion for reconsideration as "clearly untimely").

Furthermore, *all* of the arguments presented in Plaintiffs' present motion could have been raised prior to the November 29, 2007 Order in Plaintiffs' opposition to Defendants' motion to dismiss. All three events which supposedly compel Plaintiffs to seek withdrawal without prejudice – the August 2, 2007 death of Bradford's principal, the October 10, 2007 enactment of Cal. Civ. Code § 3344.1, and the October 19, 2007 death of Larry Shaw – occurred at least two weeks before Plaintiffs submitted their November 6, 2007 opposition papers, which expressly

---

[6] Plaintiffs cannot argue that their December 6, 2007 letter to the Court constitutes a timely Notice of Motion because the Court considered that letter a nullity. (Dickstein Decl., Ex. E.)

withdrew Counts 3-8 with no mention of withdrawal without prejudice.[7] If Plaintiffs truly

desired dismissal without prejudice, they would have argued for it in their November 6, 2007

opposition papers. Plaintiffs' motion for reconsideration of the November 29, 2007 Order's

dismissal of Counts 3-8 with prejudice should therefore be denied. *See Del Greco v. CVS Corp.*,

354 F. Supp. 2d 381, 385 (S.D.N.Y. 2005) ("[T]his is a *new* argument advanced only in the

Motion for Reconsideration. The new argument can provide no basis for review of my prior

decision."), *aff'd*, 164 Fed. Appx. 75 (2d Cir. 2006).

## B. All Relevant Considerations Weigh Against Dismissal of Counts 1-8 Without Prejudice

Rule 41(a)(2) provides that "an action may be dismissed at the plaintiff's request only by

court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). "Voluntary

dismissal without prejudice is thus not a matter of right" *Zagano v. Fordham University*, 900

F.2d 12, 14 (2d Cir. 1990), and "will be allowed only if the defendant will not be prejudiced

thereby" *Galasso v. Eisman, Zucker, Klein & Ruttenberg*, 310 F. Supp. 2d 572 (S.D.N.Y. 2004)

(citing *D'Alto v. Dahon California, Inc.* 100 F.3d 281, 283 (2d Cir. 1996)). Here, all five factors

identified in *Zagano*, 900 F.2d at 14, weigh against dismissal without prejudice.

### 1. Plaintiffs Did Not Act Diligently in Bringing Their Motion

Although Plaintiffs are *technically* correct that only three of the eight claims they seek to

withdraw were included in their prior complaint, *all* eight of the claims have either been pending

in substantially the same form since at least May 2005, or are based on the same facts as claims

that have been pending that long.

---

[7] Plaintiffs' September 27, 2007 letter did not, as Plaintiffs claim, request permission to amend the SAC "to withdraw counts three and four." (Pls. Br. at 4.) It stated only vaguely that "Plaintiffs intent to amend their Second Amended Complaint in a manner that will clarify the issues that remain for trial" and that Plaintiffs intended to "drop certain causes of action, add one cause of action, and to clarify the existing causes of action." (Serbagi Decl., Ex. N.)

11

The Copyright Claims, the Tortious Interference Claims, and the claim for a declaration that Defendants own no Marilyn Monroe intellectual property rights, have all been pending at least since the May 9, 2005 Amended Complaint. (Serbagi Decl., Ex. D ¶¶ 15-48.) Although the Copyright Claims were expanded slightly in the SAC to include contributory infringement and reference to other consumer goods bearing Monroe's image, the prior 2005 complaints alleged that Defendants had infringed Plaintiffs' copyrights in other ways. (Serbagi Decl., Exs. C, D ¶¶ 22-23.) Thus, Defendants' supposed infringements of Plaintiffs' copyrights have been front and center in this litigation since day one. The Unfair Competition Claims are based on the same allegations as the Tortious Interference Claims, *i.e.*, Defendants' alleged representations to Plaintiffs' licensees and potential licensees that they owned Monroe's right of publicity. (Serbagi Decl, Ex. D. ¶¶ 39-48, L ¶¶ 23-31.) Therefore, the facts underlying the Unfair Competition Claims have also been at issue since May 2005.

As a result, Plaintiffs have had more than two-and-a-half years to investigate and take discovery as to Counts 1-8. If there were any merit to them, Plaintiffs would not have sought their dismissal just prior to the close of discovery. Plaintiffs' eleventh-hour attempt to withdraw eight out of their nine causes of action without prejudice cannot be considered diligent. *See Guzman v. Hazemag U.S.A., Inc.*, 145 F.R.D. 308 (E.D.N.Y. 1993) (denying motion to dismiss without prejudice even though the case had been pending for only one year, plaintiff did not wait until the eve of trial to move to dismiss, and the parties appeared for only three discovery conferences); *Bosteve Ltd. v. Murauszwki*, 110 F.R.D. 257, 259 (E.D.N.Y. 1986) (Scheindlin, M.J.) (denying motion to dismiss without prejudice although action had been pending for less than two years) (cited in *Zagano*, 900 F.2d at 14).

### 2.    Plaintiffs Acted Vexatiously in Bringing Their Motion

In *Galasso*, 310 F. Supp. 2d at 572, this Court denied a motion for voluntary dismissal without prejudice where "defendant has brought on a motion for summary judgment, to which plaintiff has made a patently inadequate response and which is sub judice." The Court observed that "[i]t is quite clear that plaintiff's motive in bringing on this belated motion is to avoid an adverse decision that will forever bind him. But a party should not be permitted to avoid the prospect of an adverse decision on a dispositive motion by dismissing a claim without prejudice." *Id.* (citing *Zagano*, 900 F.2d at 14).

Numerous other courts have also recognized that a party cannot withdraw claims without prejudice in the face of a dispositive motion. *See, e.g., Minn. Mining & Mfg. Co. v. Barr Labs., Inc.*, 289 F.3d 775, 783-84 (Fed. Cir. 2002) (avoidance of an adverse judgment is not a legitimate justification for dismissal without prejudice); *Phillips USA, Inc., v. Allflex USA, Inc.*, 77 F.3d 354, 358 (10th Cir. 1996) ("We agree with the district court that a party should not be permitted to avoid an adverse decision on a dispositive motion by dismissing a claim without prejudice."); *Manti Transp., Inc. v. Assoc. Commercial Corp.*, No. 00 Civ. 6807 (FB), 2002 WL 369807, at *5 (E.D.N.Y. March 8, 2002) ("The principle announced in *Phillips* is particularly applicable here, where the issue before the Court on the dispositive motion is a clear matter of law."); *cf. D'Alto*, 100 F.3d at 283 ("[W]hen the cause has proceeded so far that the defendant is in a position to demand on the pleadings an opportunity to seek affirmative relief he would be prejudiced by being remitted to a separate action."); *Banco Central de Paraguay v. Paraguay Humanitarian Found., Inc.*, No. 01 Civ. 9649 (JFK), 2006 U.S. Dist. LEXIS 87093, at *20 (S.D.N.Y. Nov. 29, 2006) (quoting *Galasso*, 310 F. Supp. 2d at 572).

As in *Galasso*, the Plaintiffs here seek voluntary dismissal to avoid the effect of a decision on Defendants' dispositive motion. Defendants' September 4, 2007 Motion to Dismiss

demonstrated that Counts 3-8 completely failed to state a claim or were otherwise barred by

controlling black letter law (Dickstein Decl., Ex. A. pp.1-22),[8] and Defendants later agreed to

withdrawal of Counts 3-8 "so long as it is <u>with prejudice</u>" (November 28, 2007 letter from Paula

Colbath to Court, Dickstein Decl., Ex. C) (emphasis in original).

Plaintiffs' had over two months in which to prepare a meritorious response to

Defendants' September 2007 motion. However, recognizing that Counts 3-8 were unsupported

by law or fact, on November 6, 2007 Plaintiffs chose to withdraw those claims. (Dickstein

Decl., Ex. B.) Plaintiffs should not now be allowed to withdraw them without prejudice so as to

avoid a decision on their merits and to threaten Defendants with re-litigation in the future.

The Court should also consider Plaintiffs' attempt to circumvent Local Rule 6.3's

requirement that motions for reconsideration be served within 10 days after entry of the prior

order. Plaintiffs' December 6, 2007 letter acknowledged that their motion to withdraw Counts 3-

8 would ask the court to "*reconsider* its decision to dismiss Counts three through eight 'with

prejudice'" (Serbagi Decl., Ex. cc p. 2) (emphasis added), and MMLLC's December 11, 2007

letter called attention to the fact that Plaintiffs sought "*reconsideration* of Your Honor's

November 29, 2007 Order" (Serbagi Decl., Ex. dd p. 2) (emphasis added). Nevertheless,

Plaintiffs chose to disguise the fact that their present motion seeks reconsideration of a prior

court order. Indeed, there is not a *single* reference to the November 29, 2007 Order or to Local

Rule 6.3 anywhere in Plaintiffs' brief. Omission of such a recent, and obviously controlling

Court Order cannot be attributed to mere inadvertence.

---

[8] Defendants hereby reassert and incorporate by reference their arguments as to why
Counts 3-8 should be dismissed with prejudice. (Dickstein Decl., Ex. A. pp.1-22.)

### 3.    The Extensive Discovery Precludes Dismissal Without Prejudice

"Courts in the Second Circuit have placed primary importance on this factor, noting that

the primary purpose of a *Zagano* analysis is to 'determin[e] whether a case has proceeded so far

that dismissing it in order for the plaintiff to start a separate action would prejudice the

defendant.'" *Comunidad Autonoma del Pais Vasco v. Am. Bureau of Shipping, Inc.*, No. 04 Civ.

671 (LTS), 2006 U.S. Dist. LEXIS 55822, at *3 (S.D.N.Y. Aug. 4, 2006) (quoting *D'Alto*, 100

F.3d at 238)). "Thus, the focus of the analysis on a motion for voluntary dismissal is the

prejudice to the defendant." *BD ex. rel. Jean Doe v. DeBuono*, 193 F.R.D. 123 (S.D.N.Y. 2000).

Despite Plaintiffs' attempt to identify isolated time periods during the two-and-a-half

year history of this case where no discovery was exchanged, Defendants have, in fact, expended

substantial time, money and effort litigating and conducting discovery targeted at Counts 1-8.

Those efforts include the following:

- Briefing a comprehensive motion to dismiss Counts 3-9.  (Dickstein Decl., Ex. A.)

- Responding to three sets of document requests, including requests that are directly relevant to Counts 1-8 of the SAC.  (Dickstein Decl., Ex. O, No. 21; Ex. Q, Nos. 1, 2, 6, 7.)

- Producing approximately 65,000 documents in response to Plaintiffs' document requests. (Serbagi Decl. ¶ 12.)

- Propounding three sets of document requests, including at least thirty-one separate requests for documents that are directly relevant to Counts 1-8.  (Dickstein Decl., Ex. H, Nos. 19-22; Ex. I, Nos. 1, 2, 8, 10, 11; Ex. J, Nos. 11-32.)

- Responding to three sets of interrogatories, including eight interrogatories that are directly relevant to Counts 1-8.  (Dickstein Decl., Ex. W, Nos. 1-3, 6-8, 16, 17.)

- Propounding two sets of interrogatories, including sixteen interrogatories that are directly relevant to Counts 1-8, (Dickstein Decl., Ex. R, Nos. 4, 9, 11, 12, 14; Ex. S, Nos. 1-11), and reviewing hundreds of pages of documents Plaintiffs identified in response to those interrogatories (Dickstein Decl., Exs. T, U.)

- Conducting discovery and preparing to defend Counts 1-8 while a discovery deadline and a date for the submission of the Pre-Trial Order have been set since May 29,

15

2006, and a trial date has been set since November 5, 2007.  (Dickstein Decl., Exs. X, Y, Z, AA.)

- Appearing for seventeen pretrial status conferences before Magistrate Judge Fox. (Dickstein Decl. ¶ 30.)

In sum, although there may have been certain periods of time when no discovery took place and some of the discovery that did take place was focused on Count 9 of the SAC, over the course of this litigation Defendants have engaged in substantial discovery and motion practice as to Counts 1-8.  *See Zagano*, 900 F.2d at 14 ("Under any test, the motion was made far too late. The action had been pending for over four years, during which it was contested vigorously, *if sporadically*, and extensive discovery had taken place.") (emphasis added); *Comunidad Automona del Pais Vasco*, 2006 WL 2254958, at * 4 (S.D.N.Y. Aug. 4, 2006) (substantial prejudice found where defendants engaged in motion practice and prepared a summary judgment motion and "very substantial (*albeit largely overlapping*) discovery has progressed in these consolidated actions") (emphasis added).

Indeed, during just the past few months that MMLLC's present counsel has been involved in the case, it has spent hundreds of thousands of dollars, and hundreds of attorney and paralegal hours, preparing and responding to discovery.  (Dickstein Decl., ¶ 31.)  *See Galasso*, 310 F. Supp. 2d at 572 (denying motion to dismiss without prejudice where "Defendant has expended considerable time, money ($20,000 in legal fees to date) and effort litigating this action."); *Bosteve Ltd.*, 110 F.R.D. at 259 (Scheindlin, M.J.) (stating that "defendant has expended substantial sums on pretrial discovery and counsel fees" where defendant asserted that it incurred approximately $12,000 in legal fees) (cited in *Zagano*, 900 F.2d at 14).

"Furthermore, it is not necessary for a case to be on at the eve of the trial for this factor to be found prejudicial, and courts have determined that completion of substantial discovery is sufficient." *Comunidad Automona del Pais Vasco*, 2006 WL 2254958, at * 4 (S.D.N.Y. Aug. 4,

2006) (quotations omitted). Given all the resources MMLLC has spent litigating Counts 1-8, it

would be seriously prejudiced by withdrawal of those claims without prejudice now that they

have been pending for over two-and-a-half years, discovery is all but completed, and a trial date

has been set. *See Pac. Elec. Wire & Cable Co. v. Set Top Int'l Inc.*, No. 03 Civ. 9623 (JFK),

2005 WL 578916, at *6 (S.D.N.Y. March 11, 2005) (prejudice factor favored defendants where

the parties were only one-and-one-half weeks away from completing discovery, even though no

trial date had been set and the matter had been pending for less than a year and-a-half).

 This case stands in stark contrast to those cited by Plaintiffs where the action had not

progressed significantly, and where little or no discovery took place. *See Catanzano v. Wing*,

277 F.3d 99, 110 (2d Cir. 2001) (dismissing without prejudice where the claim at issue "has thus

far not been litigated and only halting discovery has taken place"); *Viada v. Osaka Health Spa,

Inc.*, 458 F. Supp. 2d 100, 103 (S.D.N.Y. 2005) (permitting voluntary withdrawal where "the

action is not near that point at which a date for trial might be fixed"); *Thomas v. New York State

Dep't of Correctional Servs.*, No. 00 Civ. 7163 (NRB), 2004 WL 1871060, at *3 (S.D.N.Y. Aug.

20, 2004) (*pro se* plaintiff's motion to dismiss without prejudice granted where the length of

discovery "represents but a minor fraction of time this action has been pending"); *Smith v.

Empire of Am. Realty Credit Corp.*, No. 94 Civ. 0786 (JTE), 1999 U.S. Dist. LEXIS 1444, at *5

(W.D.N.Y. Jan. 11, 1999) (granting *pro se* plaintiff dismissal without prejudice where "only one

document request and one deposition notice are referenced by the defendants"); *cf. Banco

Central De Paraguay*, 2006 U.S. Dist LEXIS 87093, at *17-18 (S.D.N.Y. Nov. 29, 2006)

("Defendants have made no attempt to show that they have spent significant resources in

discovery and preparing for trial").

In fact, this case is more like those cited in *Comunidad Autonoma del Pais Vasco* where

courts dismissed claims *with prejudice*: "Those courts that have granted dismissal only with

prejudice have done so in large part because the motion to dismiss was brought, if not at the eve

of trial, at a point after substantial discovery had been completed and trial was near certain."

2006 WL 2254958, at *3 (S.D.N.Y. Aug. 4, 2006) (collecting cases).

### 4.    Defendants Would Have to Duplicate the Expense of this Litigation

If Counts 1-8 were dismissed without prejudice and later reasserted in a subsequent

action, Plaintiffs could force Defendants to duplicate much of the discovery they have already

provided in this action. *See Pac. Elec. Wire & Cable Co.,*  2005 WL 578916, at *6 (S.D.N.Y.

Mar. 11, 2005) ("While some of the material discovered in this case might be usable, some might

not. . . . . It would be extremely prejudicial for the Court to saddle Defendants with the risk of

duplicative expenses now that Plaintiffs wish to discontinue with the option of re-filing either in

this jurisdiction or elsewhere."). Defendants would also be forced to duplicate their efforts spent

briefing the motion to dismiss, in order to adjust for any changes in the law or in Plaintiffs'

allegations.

In addition, Plaintiffs are not the only parties with elderly principals. (Declaration of

Edith Marcus dated December 14, 2007 ("Marcus Decl.") ¶ 3) ("SFA is owned by myself, my

sister Meta Stevens and my sister-in-law Susan Shaw; all senior citizens.") MMLLC's principal,

Anna Strasberg, is also a senior citizen. (Dickstein Decl. ¶ 32.) If Plaintiffs reasserted their

claims in the future, it would be that much more difficult for her to effectively participate in the

litigation. *See Zagano*, 900 F.2d at 14 (defendants would be prejudiced by dismissal without

prejudice where, after two witnesses died and two others encountered poor health during the

litigation, "the likelihood of additional substantial delays . . . might result in further loss of

pertinent testimony through illness or death.").

18

Furthermore, depending on the outcome of the claims remaining in this action,

Defendants may engage in much of the conduct at issue in Counts 1-8 of the SAC, *i.e.*,

displaying photographs of Marilyn Monroe on websites or merchandise, notifying third parties of

their rights in Marilyn Monroe's persona, and lobbying for legislative recognition of a

postmortem Right of Publicity. Allowing Plaintiffs to threaten reassertion of Counts 1-8 would

unreasonably chill those legitimate activities. *See Deere & Co. v. MTD Holdings Inc.*, No. 00

Civ. 5936 (LMM), 2004 U.S. Dist. LEXIS 11707, at *8-9 (S.D.N.Y. June 23, 2004) ("It is clear

that MTD would be prejudiced if every time it manufactured a new product using green and

yellow it was threatened with the revival of this litigation after defending its use of these colors

for four years."); *Pac. Elec. Wire & Cable Co.*, 2005 WL 578916, at *6 (S.D.N.Y. Mar. 11,

2005) ("While 'the prospect of starting litigation all over again does not constitute legal

prejudice,' there is no reason at this point to keep the threat of litigation hanging over

Defendants' heads.") (quoting *D'Alto*, 100 F.3d at 283). Indeed, there is even more danger of

prejudice here than in *Deere & Co.*, because Defendants' activities are constitutionally protected.

(Dickstein Decl., Ex. A. pp. 8-16)

This is not the usual case where courts discount the prejudice a defendant would incur

from re-litigation where claims are dropped by one plaintiff, but still asserted by others. *See,*

*e.g., Thomas*, 2004 WL 1871060, at *3 (S.D.N.Y. Aug. 20, 2004) ("assuming defendants

continue to expend resources defending against the remaining plaintiff's claim, any additional

expense resulting from Santos's refiling will be minimized if Santos can simply 'rejoin' the

action."); *BD ex. rel. Jean Doe*, 193 F.R.D. at 124 (granting dismissal without prejudice as to

one plaintiff and concluding that the resources defendants expended would not be wasted where

"discovery and pre-trial activity in this case has been more or less identical for all of the six

plaintiffs in this case") (citing *Allen v. Indeck Corinth Ltd. Partnership*, 161 F.R.D. 233, 236

(N.D.N.Y. 1995) for the proposition that "defendants' effort and expense in trial preparation

would not be wasted where several plaintiffs remained in action.").

         5.      **Plaintiffs' Explanation Does Not Justify Dismissal Without Prejudice**

         The recent deaths of Larry Shaw and Bradford's principal cannot justify withdrawal of

Plaintiffs claims without prejudice in light of the substantial resources Defendants have spent

litigating those claims over more than two-and-a-half years.  Indeed, the fact that Larry Shaw

had unique knowledge of the facts supporting Counts 1-8, and the possibility of death or illness

to other parties and witnesses, weighs in favor of dismissal *with prejudice*, not without.  *See*

*Zagano*, 900 F.2d at 14; (Marcus Decl. ¶ 3); (Dickstein Decl ¶ 31.)

         In addition, Plaintiffs did not even mention the October 10, 2007 enactment of the

California legislation as a reason for withdrawal of their claims without prejudice in their

November 6, 2007 opposition papers.  Defendants' ownership of Marilyn Monroe's right of

publicity was very much at issue in this case along with Counts 1-8 before the May 2, 2007

Order.  Now that it may be in dispute again, Plaintiffs should not be allowed to use it as a red-

herring to win dismissal of Counts 1-8 without prejudice.  In sum, Plaintiffs' stated reasons for

dismissal without prejudice should be disregarded as mere pretexts for avoiding a decision on

Defendants' motion to dismiss.  *See Galasso*, 310 F. Supp. 2d at 572.

    **C.  Counts 1 and 2 are the Equivalent of Compulsory Counterclaims and Cannot
         be Withdrawn Without Prejudice**

         Counterclaims are compulsory if they "arise[] out of the transaction or occurrence that is

the subject matter of the opposing party's claim[.]"  Fed. R. Civ. P. 13(a); *see United States v.*

*Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979) (two claims arise from the same transaction and

occurrence, where "essential facts of the various claims are so logically connected that

consideration of judicial economy and fairness dictate that all the issues be resolved in one

lawsuit."). Such determination does not require "an absolute identity of factual backgrounds . . .

but only a logical relationship between them." *Id.* (quoting *United Artists Corp. v. Masterpiece

Productions, Inc.*, 221 F.2d 213, 216 (2d Cir. 1955)).

Defendants' sole remaining claim seeks a declaration that Plaintiffs do not possess valid

and enforceable copyrights in Shaw's photographs of Marilyn Monroe. (Serbagi Decl., Ex. M ¶¶

28-34.) Plaintiffs' Copyright Claims allege that Defendants infringed certain of Plaintiffs'

copyrights in Shaw's photographs of Marilyn Monroe. (Serbagi Decl., Ex. L ¶¶ 15-22) In order

to prevail, Plaintiffs must prove that they possess valid and enforceable copyrights – precisely

what Defendants seek to *dis*prove in their declaratory judgment claim. Plaintiffs' Copyright

Claims are therefore the equivalent of compulsory counterclaims, which cannot be withdrawn

without prejudice. *See Pizzulli v. The Northwestern Mut. Life Ins. Co.*, No. 05 Civ. 1889 (LAP),

2006 WL 490097, at *2 (S.D.N.Y. Feb. 28, 2006) ("Northwestern's counterclaim for rescission

cannot be dismissed without prejudice, for the simple reason that rescission is a compulsory

counterclaim in this case."); *Bosteve Ltd.*, 110 F.R.D. at 259 (denying motion to dismiss

plaintiff's claims without prejudice where the court "must retain jurisdiction over defendant's

compulsory counterclaims" and stating "it would be an inefficient use of the court's resources to

adjudicate the defendant's claims only, when they are inextricably linked to plaintiffs'.") (cited

in *Zagano*, 900 F.2d at 14). Here, as in *Bosteve*, judicial resources would be wasted if Plaintiffs

were allowed to withdraw their Copyright Claims without prejudice and reassert them in a

subsequent litigation after this court adjudicates Defendants' declaratory judgment claim.

II.     **COUNTS 1 AND 2 OF THE SAC SHOULD BE DISMISSED WITH PREJUDICE BECAUSE PLAINTIFFS' COUNSEL AGREED TO WITHDRAW THEM WITH PREJUDICE**

On December 3, 2007, Plaintiffs' lead counsel wrote to Defendants' counsel: "Plaintiffs are withdrawing their copyright infringement claim and we will stipulate *with prejudice*." (Serbagi Decl., Ex. bb p.1) (emphasis added). That promise was in writing, and was manually subscribed by Plaintiffs' attorney. It is therefore binding on the Plaintiffs. *See Vlassis v. Corines*, 247 A.D.2d 609, 610, 669 N.Y.S.2d 361, 361 (2d Dep't 1998) ("CPLR 2104 provides, *inter alia*, that a stipulation is binding upon a party if it is in a writing subscribed by him or her or his or her attorney. . . . . 'Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation.'") (quoting *Hallock v. State of New York*, 485 N.Y.S.2d 510 (1984)).[9]

The fact that Plaintiffs' attorney's signature was electronic does not alter that conclusion. *See On Line Power Techs., Inc. v. Square D Co.*, No. 03 Civ. 4860 (CM), 2004 U.S. Dist. LEXIS 9655, at *27 (S.D.N.Y. Apr. 30, 2004) ("Both New York and federal statutes governing electronic signature recognize the validity and enforceability of electronic signatures.").[10]

Plaintiffs' Copyright Claims should therefore be dismissed with prejudice.

---

[9] In deciding whether a stipulation is binding, federal courts in New York apply New York law, including C.P.L.R. § 2104. *See Arthur the Dog v. U.S. Merchandise Inc.*, No. 05 Civ. 0958 (JFB), 2007 WL 2493427, at *4 (E.D.N.Y. Aug. 29, 2007).

[10] Furthermore, no consideration is needed for a stipulation to be binding. *See Atlas v. Wood*, 33 Misc. 2d 543, 545, 226 N.Y.S.2d 43, 46 (Sup. Ct. Nassau County), *aff'd*, 17 A.D.2d 821, 232 N.Y.S.2d 743 (2d Dep't 1962); 4 Richard A. Lord, *Williston on Contracts* § 8:43 (4th ed. 2007) ("There is a class of agreements, known as stipulations, made by adverse parties or their authorized attorneys with reference to legal proceedings pending before a court, which are generally upheld and enforced even in the absence of consideration.") (citing Restatement (Second) of Contracts § 94 (1981) ("A promise or agreement with reference to a pending judicial proceeding, made by a party to the proceeding or his attorney, is binding without consideration.")).

## III.    CONCLUSION

For all of the above reasons, Defendants respectfully ask the court to deny Plaintiffs'

Motion to Withdraw Counts 1-8 of the SAC Without Prejudice, and to grant Defendants' Cross-

Motion to Dismiss Counts 1 and 2 With Prejudice.

Dated: New York, New York
      January 16, 2008

LOEB & LOEB LLP

By: _____
    Paula K. Colbath (PC 9895)
    345 Park Avenue
    New York, New York 10154-1895
    (212) 407-4000

*Attorneys for Defendant*
*Marilyn Monroe LLC*

SOVICH MINCH, LLP

By: _____
    Theodore J. Minch
    10099 Chesapeake Drive
    Suite 100
    McCordsville, Indiana 46055

*Attorneys for Defendant CMG Worldwide,*
*Inc.*

23

# EX. B

From:Jeong-Ho Lee
To:jipark@hmall.com
Sent:Wednesday,November 21,2007 10:32am

Dear President Park Jong-In

I am an in-house attorney of CMG Worldwide and am in charge of international licensing affairs. CMG Worldwide Our company represents Marilyn Monroe LLC who owns publicity right and trademark rights for Marilyn Monroe in the States and owns trademark rights in the territory of Korea, China, Japan and EU.

Recently it came to our attention from our Korean licensee that a company named Y&P International tries to sell the products bearing Marilyn Monroe's name without a proper approval from Marilyn Monroe LLC through home shopping channel. This is a definite trademark rights infringement to the Korean TM law and International TM law. We treat that this act as a very serious matter infringing our rights. We will take any possible actions against Y&P International and Hyundai home shopping channel who distributes the products and will claim damages.

Please respond to this email within 48 hours on your receipt that you would not distribute the products of Y&P International. If there's any products already distributed, please present a detailed report on the sales etc.

I inform you that this letter or any content and remarks not stated in this letter would not limit the rights of Marilyn Monroe LLC.

Jeong-Ho Lee.Esq.
Indiana Legal Counsel/ International Licensing Executive
CMG Worldwide. Inc.
9229 W.Sunset Blvd.
Suite 820
West Hollywood.CA. 90069
Phone(310)854-0052
Fax(317)570-5500
Email    jeong-ho@cmgworldwide.com

EX. C

**MARKROESLER.COM**

"I represent a lot of people who have passed away, so when I speak for them in television interviews I keep it as professional as possible."

PRESS CENTER

## ABOUT MARK
Biography
Timeline
Curriculum Vitae
Published Works
Business Ventures
After Hours
Familiar Faces
Awards
Ask Mark
## SERVICES
Expert Witness Testimony
Consulting
Speaking Engagements
Valuation
## PRESS CENTER
Interviews
Press Kit
Current News
Weekly Webcasts
Articles Archive
Television Appearances
Radio Interviews
## CMG WORLDWIDE
About
Clients
Events
Services
Technology
## IP RESOURCES
Right of Publicity
Damages
State Statutes
Copyright
Trademark
Case Law
Famous Domain Names
Legal Battles

### CURRENT NEWS

**Statement by Mark Roesler concerning Recent Developement to Protect the Valuable Personality Rights of Deceased Celebrities**

03-21-2008

I am very pleased to report that this week the Governor of the State of Washington signed into law a revised right of publicity statute (SHB 2727) recognizing post mortem right of publicity regardless of whether the laws of the state of domicile of a living or deceased personality recognize publicity rights or not. This was in response to the recent case involving the rights of Jimi Hendrix, where the 9th Circuit Court of Appeals applied New York law instead of Washington law in determining whether the Estate of Jimi Hendrix could protect his post mortem rights. The 9th Circuit Appellate Court held that because Hendrix's domicile of New York did not currently protect post mortem rights, Washington law would not apply to protect Hendrix's rights in Washington. The court suggested that the legislature would have to address this issue, which the governor of Washington did this week. This follows the recent amendment that Governor Schwarzenegger signed this past October that clarified the rights of deceased celebrities in California.

CMG and its client, Marilyn Monroe LLC, received mixed news from California this past week. The good news was that the United States Court for the Central District of California granted summary judgment in favor of CMG and Marilyn Monroe LLC, dismissing claims against them filed by the family of photographers for alleged Lanham Act violations, common law unfair competition, statutory unfair competition, false advertising, and tortious interference with actual and prospective business relations. On a more challenging front is the finding by the court that Marilyn Monroe LLC was judicially estopped by statements of the Executor of Marilyn Monroe's Estate concerning Marilyn Monroe's New York residence at the time of her death. Because New York does not recognize a post-mortem right of publicity, the Court dismissed Marilyn Monroe LLC's right of publicity claims. This ruling will almost certainly be appealed to the Ninth Circuit Court of Appeals.

With both Indiana and newly revised Washington right of publicity statutes, however, Marilyn Monroe's right of publicity is firmly secured in at least these states and any acts that occur in those states are actionable under those state statutes. Marilyn Monroe's other intellectual property rights such as rights defined under the federal and international trademark laws, various copyrights, and her contractual rights with studios are unaffected by the recent finding by the California court.

Just as various states have legislatively addressed the rights of deceased personalities, New York is the next state that is under pressure to update its century old and outdated statute addressing personality rights. The New York law was enacted in 1905 to protect "living" personalities but has not been revised since then to include deceased personalities. The current New York law is clearly outdated and out of step with the majority of states and various

**MARCH CALENDAR**
Nothing scheduled at this time, please check back later

**RULES FOR SUCCESS**
*by Mark Roesler*
What does it take to be successful?
**Read the Rules >>**

✉ **E-ALERT SIGN UP**
HAVE MARKROESLER.COM NEWS SENT TO YOU VIA EMAIL OR TEXT MESSAGE!

♫ **Open Audio Player**

countries that protect the rights of the heirs of deceased celebrities.

I am proud to continue to be advancing and protecting the rights of deceased personalities. I began this effort 27 years ago, in 1981 and despite the aggressive opposition that these efforts have always brought out, we have made tremendous progress around the world. My company is headquartered in Indiana with offices also in California and we protect and market almost 200 famous deceased personalities around the world. We will focus our efforts on correcting this obvious shortcoming in New York and we are confident that the citizens and famous celebrities from the state of New York, will not want the fruits of their labor taken from them after their death.

EX. D

# COPY

1

1　UNITED STATES DISTRICT COURT

2　SOUTHERN DISTRICT OF NEW YORK

3　-----------------------------------x

4　SHAW FAMILY ARCHIVES, LTD.,
　　EDITH MARCUS, and META STEVENS

5
　　　　　　　　　　　　　　Plaintiffs,
6
　　　　　　　　- against -
7
　　CMG WORLDWIDE, Inc., an Indiana
8　corporation, and MARILYN MONROE,
　　Limited, a Delaware limited
9　liability company,

10　　　　　　　　　　　　　Defendants.
　　-----------------------------------x
11

12　　　　　　　Ellen Grauer Court Reporters
　　　　　　　　126 East 56th Street
13　　　　　　　New York, New York

14

15

16　　　　　　　December 26, 2007
　　　　　　　　12:01 p.m.
17

18

19　　　　　　　30(b)(6) deposition of MARK
　　ROESLER, before Marlene Lee, CSR, CRR, a Notary
20　Public of the State of New York.

21

22

23　　　　ELLEN GRAUER COURT REPORTING CO. LLC
　　　　　126 East 56th Street, Fifth Floor
24　　　　　　　New York, New York
　　　　　　　　212-750-6434
25　　　　　　　Ref: 86257

137

1                       ROESLER

2    marketplace.

3         Q.    Because my clients were

4    interfering with -- what you believed was

5    interfering with MMLLC and CMG's ability to

6    license images of Marilyn Monroe?

7                   MS. COLBATH:  Objection.

8                   MR. MINCH:  Objection.

9         A.    Well, no, I would not characterize

10   it that way.

11        Q.    How would you characterize it?

12                  MR. MINCH:  Objection.

13                  MS. COLBATH:  Objection.

14                  MR. SERBAGI:  How would you

15        characterize it is an objectionable

16        question?

17                  MR. MINCH:  I'm still --

18        Q.    Let's go on.  You answer.

19        A.    I would characterize it as an

20   interference with the licensing, marketing,

21   protecting of intellectual property rights of

22   Marilyn Monroe LLC.

23        Q.    Do you regret having filed this

24   action against my clients?

25                  MR. MINCH:  Objection.

138

1                           ROESLER
2               MS. COLBATH:  Objection.
3        A.    That's a difficult question to
4    answer because -- that's difficult --
5               MR. SERBAGI:  I don't think it's
6          funny at all, Mr. Minch.  This is a
7          serious matter involving $3 million
8          against three old ladies and a young
9          girl.  I don't see this as funny.
10              MR. MINCH:  I'm not laughing about
11         the question.  I take issue with you
12         making those remarks on the record.
13              MR. SERBAGI:  I saw what I saw.
14              MR. MINCH:  Absolutely.
15       Q.    You may answer.
16       A.    Well --
17              MS. COLBATH:  Objection.
18       A.    There are a lot of different
19   aspects of it.  I've been long-time friends
20   with Meta and Edie, and friends, towards the
21   end of his life, with Larry.  So I have regrets
22   about the way this whole thing has transpired.
23   So -- I don't know if that answers your
24   question.
25              Q.    It goes -- well, let me have a

139

ROESLER

2 follow-up question.  In what way do you regret

3 how this has transpired?

4             MR. MINCH:  Objection.

5      A.    Well, I think, as I said, I mean

6 consider -- I consider Meta and Edie friends of

7 mine.  And I -- I regret that this matter was

8 never -- was never resolved.

9      Q.    You regret losing the right of

10 publicity, too, don't you?

11             MR. MINCH:  Objection.

12             MS. COLBATH:  Objection.

13     A.    I don't know that I concur with

14 that assessment, that we lost the right of

15 publicity.  I mean, when you have litigation,

16 it goes for -- going on three years, and -- I

17 mean, there's probably a lot of things that you

18 don't like and regret things went one way or

19 the other.  So --

20     Q.    Okay.  Did you --

21             MS. COLBATH:  Are you finished with

22      your answer?

23             THE WITNESS:  I think so.  I think

24      so.

25     Q.    I didn't mean to cut you off.  Is

140

ROESLER

there anything else you want to add?  I thought
you were done.

     A.    No, I think that was it.

     Q.    You read this complaint that's
marked as Roesler before it was filed; correct?

     A.    The initial complaint?

     Q.    Yeah.

     A.    Yes.

     Q.    And you checked to make sure
everything in here was true and accurate;
correct?

     A.    I mean, I -- I read the complaint.
Yes.  And I believed it to be true and
accurate.

     Q.    Turning to page 10, Count 7.  Do
you see where it says, "Declaration As to
Shaw's Copyrights and Shaw Collection"?

     (Discussion off the record.)

     A.    I'm sorry.  What am I looking at?

     Q.    Let me ask you one question before
we talk about this.  You stated earlier that
Meta Stevens and Edith Marcus and Larry Shaw
were your friends; correct?

     A.    Correct.

EX. E

**Subject: <no subject>**
**Date:** Friday, November 2, 2007 3:42 PM
**From:** Christopher Serbagi <c.serbagi@earthlink.net>
**To:** Paula Colbath <pcolbath@loeb.com>, Barry Slotnick <bslotnick@loeb.com>

Dear Paula:

In light of the passing of the California right of publicity legislation,
Plaintiffs ask you to withdraw your motion to dismiss Count 9 of the
Second Amended Complaint.  Plaintiffs believe your continued opposition is
frivolous in light of the new California legislation and we will ask Judge
McMahon for attorney's fees if we prevail.  We request that you provide us
an answer tonight because we may file our opposition tonight.

Best,

Christopher Serbagi


Law Offices of Christopher Serbagi
488 Madison Avenue, Suite 1120
New York, New York  10022
Tele: 212-593-2112
Fax:  212-308-8582
Email: c.serbagi@earthlink.net
Web Site: www.serbagi.com

EX. F

**PAULA K. COLBATH**
Partner

345 Park Avenue
New York, NY 10154

Direct   212.407.4905
Main     212.497.4000
Fax      212.937.3189
pcolbath@loeb.com

Via Facsimile

November 28, 2007

Honorable Colleen McMahon
500 Pearl Street, Room 640
New York, New York 10007

Re:   Shaw Family Archives, Ltd., et al. v. CMG Worldwide, Inc., et ano., Index No. 05 Civ. 3939

Dear Judge McMahon:

We represent Defendant Marilyn Monroe, LLC ("MMLLC") and respectfully write to advise the Court that (1) in light of the recently enacted California Right of Publicity statute, Defendants hereby withdraw their motion to dismiss count nine of Plaintiffs' Second Amended Complaint, and (2) Plaintiffs also withdraw their motion for a limited stay of discovery of lobbying related documents, as that issue was decided this morning by Magistrate Judge Fox.

As your Honor is aware, Plaintiffs have agreed to withdraw the third through eighth causes of action of their Second Amended Complaint, which challenged (among other things) Defendants' constitutionally protected, lobbying activities. Defendants have agreed to stipulate to such withdrawal so long as it is with prejudice since, as established in MMLLC's moving papers, black letter law requires the dismissal of the subject claims and further Plaintiffs have received ample discovery in this matter and should be prepared to go forward with the subject claims if there is any merit to them.

Accordingly, for the reasons set forth in MMLLC's moving papers, MMLLC respectfully requests that the third through eighth causes of action of Plaintiffs' Second Amended Complaint be dismissed with prejudice.

Respectfully yours,

Paula K. Colbath

cc:   Christopher Serbagi, Esq. (via email)
      Theodore J. Minch, Esq. (via email)

Los Angeles   New York   Chicago   Nashville   www.loeb.com

NY687236.2

# EX. G

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/24/07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————————— x

SHAW FAMILY ARCHIVES, LTD., EDITH
MARCUS and META STEVENS,

       Plaintiffs,

    -against-                                05 Civ. 3939 (CM)(MDF)

CMG WORLDWIDE, INC., an Indiana Corporation
and MARILYN MONROE LLC, a Delaware
Corporation,

       Defendants.

——————————————————————————— x

## DISPOSITION OF VARIOUS PENDING MOTIONS

McMahon, J.:

       In view of correspondence received from the parties, the various pending motions are
disposed of as follows:

       1. The Third through Eighth Causes of Action in the complaint are dismissed with
prejudice.

       2. The motion for a stay of discovery concerning lobbying has been dealt with by
Magistrate Judge Fox, and so should be marked "decided."

       The following issues remain in this case:

       1. Plaintiffs' First and Second Causes of Action for copyright infringement

       2. Plaintiffs' Ninth Cause of Action, for a declaration that Marilyn Monroe died a
domiciliary of New York.

       3. Defendants' Counterclaim for a declaration that plaintiffs do not possess a valid and
enforceable copyright in various photographs of Marilyn Monroe.

       Plaintiffs' Ninth Cause of Action remains in the case because the State of California
recently passed a statute that purports to confer property rights on a dead person that were not
possessed by that dead person at the time of her demise. Obviously, if plaintiff died a domiciliary

of the State of New York, where her will was probated, the California statute is of no moment. The determination of Ms. Monroe's domicile is a question of fact, and the court intends to sever that issue and try it early next year. The parties will be contacted shortly concerning the trial date.

However, if there is going to be any attack against the California statute on any legal ground, I want to be told that now and I want to know what the ground of attack is going to be, so that we can set an appropriate briefing schedule. I want to resolve all issues surrounding the newly-passed California statute, including the issue of domicile, in the next 90 days.

Dated: November 29, 2007

_____
U.S.D.J.

BY ECF TO ALL COUNSEL