UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____x

SHAW FAMILY ARCHIVES, LTD., EDITH MARCUS,
and META STEVENS,

        Plaintiffs,

 -against-

CMG WORLDWIDE, INC., an Indiana Corporation
and MARILYN MONROE, LLC, a Delaware
Limited Liability Company

       Defendants.

_____x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _9/2/08_

05 CV 3939 (CM)

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO WITHDRAW COUNTS 1-8 OF THEIR SECOND AMENDED COMPLAINT WITHOUT PREJUDICE

McMahon, J.:

 Plaintiffs Shaw Family Archives, Ltd. ("Shaw"), Meta Stevens, and Edith Marcus

(collectively, "SFA") have moved to withdraw Counts 1-8 of their Second Amended complaint

without prejudice. SFA's suit arises out of an ongoing dispute with Defendants Marilyn

Monroe, LLC ("MMLLC") and CMG Worldwide, Inc. ("CMG") over the rights to use Marilyn

Monroe's image. SFA originally sought a declaratory judgment that MMLLC and CMG did not

possess a right of publicity in Marilyn Monroe's image, and further alleged that MMLLC and

CMG had infringed copyrights SFA owned in photographs of Monroe. SFA later added claims

for tortious interference with contractual relations and for tortious interference with prospective

economic advantage.

1

MMLLC and CMG argue that SFA's withdrawal of Counts 1-8 of their Second Amended Complaint must be with prejudice and have filed a cross-motion requesting the dismissal of Counts 1 and 2 with prejudice.

SFA's motion is granted in part and denied in part. Counts 3-8 are dismissed without prejudice.[1] If Counts 1 and 2 are withdrawn, it will be with prejudice. SFA has 10 days to decide whether or not to pursue these claims.

## FACTS

### A. History

#### i. Overview

The dispute between SFA and Defendants concerns the right to make use of several photographs taken by Sam Shaw of Marilyn Monroe, including some of the most famous photographs of the actress. The descendants of Shaw, SFA, claim that as holders of the copyrights to these images, they have the right to make use of these images. MMLLC and CMG claim that they have the right to use these images as holders of Ms. Monroe's, "right of publicity."

#### ii. The parties

Plaintiff Shaw is a New York Corporation whose principal place of business is in New York. (Pl. Compl. ¶ 3.) Plaintiffs Marcus and Stevens are individuals residing in New York. (Id. ¶ 4.) Marcus and Stevens are shareholders of the Shaw Family Archives, and daughters of Sam Shaw, the photographer whose works are at issue in this dispute. (Id.)

Defendant CMG is a corporation organized under the laws of Indiana with its principal place of business in Indiana. (Def. Compl. ¶ 1.) Defendant MMLLC is a business entity

---

[1] This Court will address Count 9 in a separate opinion.

organized under the laws of Delaware with its principal place of business in Indiana through

CMG. (Id. ¶ 2.) CMG is its exclusive licensing and business representative. (Id.)

### iii. SFA's Second Amended Complaint

The pleading at issue in this motion is SFA's Second Amended Complaint, filed on

August 8, 2007. (SAC ¶¶ 35-38.)[2] In Count 1, SFA asserts that CMG and MMLLC have

infringed on copyrights held by SFA. (Id. ¶¶ 35-36.) The copyrights are for three photographs

from the book Marilyn: Among Friends, by Sam Shaw and Norman Rosten, and two

photographs from the book, Marilyn Monroe in the Camera Eye by Sam Shaw. (Id.) Count 2 is

for contributory copyright infringement; the claim relates to the same images. (Id. ¶¶ 37-38.)

Count 3 seeks a declaration that CMG and MMLLC do not own any property rights in the image

of Ms. Monroe. (Id. ¶¶ 39-40.)[3] Counts 4 and 5 are claims for tortious interference with

contractual relations and prospective economic advantage. (Id. ¶¶ 41-44.) Counts 6 through 8

assert claims for unfair competition. (Id. ¶¶ 45-53.)

Count 9, which SFA does not withdraw, seeks a declaration that Ms. Monroe died a

domiciliary of the State of New York. (Id. ¶¶ 54-55.)

---

[2] The next day, MMLLC and CMG filed their Third Amended Complaint ("Third Amended Indiana Complaint"), seeking a declaratory judgment that certain photographs of Ms. Monroe are in the public domain.

[3] Count 3 was effectively disposed of by this Court's ruling on May 7, 2006. MMLLC and CMG moved for summary judgment on the right of publicity claims set forth in Count 2 of their Second Amended Complaint, filed in Indiana and transferred to this Court on March 23, 2006. In deciding that motion, I ruled that neither New York nor California (the only possible domiciles of Ms. Monroe at the time of her death) recognized descendible postmortem publicity rights at the time of her death in 1962. Therefore, she had no publicity right to bequeath or transfer to any heirs, and MMLLC could not succeed to the interest of these heirs, no matter what law Indiana (a state with no connection to Ms. Monroe) purported to pass. Shaw Family Archives et. al. v. CMG Worldwide, Inc., No. 05 Civ. 3939 (S.D.N.Y. May 7, 2006). Subsequent events relating to this opinion will be discussed in a separate opinion disposing of SFA's Motion for Summary Judgment on Count 9 of its Second Amended Complaint.

### *iv. The Instant Motions*

On September 4, 2007, MMLLC and CMG moved to dismiss Counts 3-8 of SFA's

Second Amended Complaint. (Def. Mem. Supp. Mot. to Dismiss and Limited Stay of

Discovery.) The motion to dismiss argued that the Tortious Interference and Unfair Competition

Claims were barred by the Noerr-Pennington Doctrine to the extent that they were based on

constitutionally protected activities, and that these claims also suffered from failure to state a

claim. (Id. 1-22.) Further, the Memorandum argued that Count 8 should be dismissed because

SFA failed to allege an impact on consumers. (Id.) SFA requested and was granted three

extensions to respond to CMG and MMLLC's motion to dismiss. (Mem. Endorsements

September 15, 2007, September 28, 2007, and October 22, 2007.)

The Bradford Principal died on August 2, 2007. (Serbagi Decl. ¶ 21.) On October 19,

2007, the Shaw Family Principal, Larry Shaw, died. (Id.) On October 10, 2007, California

passed an amendment to California Civil Code § 3344.1, which conferred a post-mortem right of

publicity posthumously on California domiciliaries, and purported to abrogate this Court's May

2, 2007 Order. (Marcus Decl. ¶ 19.)[4]

By letter dated to the Court on October 19, 2007—the very day that Larry Shaw died—

SFA stated that it was considering withdrawing its claims in light of these new events. (Id.)

According to Serbagi, the death of the two principals complicated the litigation, as "Mr. Shaw

had planned to finance this aspect of the litigation and he possessed some of the information that

would be necessary to prosecute those claims." (Id.) SFA also argued that enactment of the new

California legislation made it more efficient for SFA to redirect its efforts. (Id.)

---

[4] How the California legislature could have abrogated this Court's ruling about New York law is
something of a mystery.

In late October 2007, SFA informed MMLLC and CMG that they would withdraw Counts 3-8 of the SAC. (Serbagi Decl. ¶ 23.) MMLLC and CMG's counsel verbally agreed to allow SFA to withdraw these claims on or about November 1, 2007. (Id.) On November 2, 2007, MMLLC and CMG sent a stipulation to withdraw Counts 3-8. (Id.) SFA's counsel sent an email confirming MMLLC and CMG's agreement to permit SFA to withdraw Counts 3-8 on November 5, 2007. (Serbagi Decl., Ex. X.)

On November 7, 2007, MMLLC and CMG sent an email stating that they would permit SFA to withdraw its claims, but only "with prejudice." (Serbagi Decl. ¶ 24, Ex. Y.) SFA's counsel refused to withdraw "with prejudice." (Id.) SFA again asked MMLLC and CMG on November 16, 2007 whether MMLLC and CMG would stipulate to a "without prejudice" dismissal. (Id., Ex. Z.) MMLLC and CMG responded on November 27, 2007 by asking whether SFA would stipulate to a "with prejudice" withdrawal. (Id., Ex. aa.)

On November 29, 2007, this Court ordered that the third through eighth causes of action in the SAC be dismissed with prejudice. (November 29, 2007 Order.) This order was the result of the Court's mistaken impression that the parties had reached an agreement to withdraw the claims with prejudice.

SFA offered to withdraw Counts 1 and 2 with prejudice on December 3, 2007. (Serbagi Decl., Ex. bb.) The email sent by SFA's attorney stated, "Plaintiffs are withdrawing their copyright infringement claim and will stipulate with prejudice. Are you amenable to that stipulation?" (Id.) MMLLC and CMG did not respond to this offer.

On December 6, 2007, SFA asked the Court to dismiss Counts 1 and 2 without prejudice. (Id., Ex. cc.) MMLLC and CMG objected to the dismissal of Counts 1 and 2 without prejudice,

and argued that SFA's offer to stipulate to a withdrawal "with prejudice" (which they had never accepted) was binding. (Id. ¶ 28, Ex. dd.)

On December 10, SFA asked the Court to reexamine its November 29, 2007, ruling since SFA had not briefed the issue. (Dickstein Decl., Ex. E.) In the Court's Memo Endorsed Order dated December 12, 2007, the Court circled this language in the SFA letter, and stated, "I thought both sides agreed." The order dismissing the claim "with prejudice" has since been withdrawn.

SFA filed this motion to dismiss Counts 1-8 without prejudice on December 16, 2007, and MMLLC and CMG filed a memorandum in opposition to the Motion to Dismiss Counts 1-8 without prejudice and a cross-motion to dismiss Counts 1 and 2 with prejudice on January 16, 2008.

### C. Discovery Generated

Because it is relevant to the determination of this motion, I review the state of discovery.

The parties appeared for seventeen separate pretrial conferences before Magistrate Judge Fox, and conducted discovery under Court-ordered discovery deadlines. (Dickstein Decl. ¶ 30.) The Court issued a Case Management Plan on May 29, 2006, which ordered that discovery was to be completed by October 27, 2006, and that the Joint Pre-Trial Order was to be submitted by November 30, 2006. (Id., Ex. X.) Those dates were extended to February 27, 2007 and March 30, 2007, respectively, by Memo dated August 3, 2006. (Id., Ex. Y.) They were extended again to November 30, 2007 and January 15, 2008, respectively, by Judge Fox's June 15, 2007 Scheduling Order. (Id., Ex. Z.) On October 12, 2007, MMLLC and CMG requested a three-month extension of discovery. (Serbagi Decl. ¶ 20.) SFA objected to MMLLC and CMG's

request. (Id.) On November 5, 2007, the Court ordered that discovery be completed by December 31, 2007, and set a trial date of March 2008. (Id., Ex. AA.)

No depositions have been taken by either party in this matter to date. (Serbagi Decl. ¶ 29.) According to the Serbagi Declaration, MMLLC and CMG have answered virtually no interrogatories directed at Counts 3-8, and have provided very limited information on Counts 1 and 2. (Id.) Serbagi also states that MMLLC and CMG have not produced any documents specifically directed at Counts 1 through 8 that were not otherwise relevant to MMLLC and CMG's right of publicity claims and claims that MMLLC and CMG asserted against SFA in their amended complaints. (Id.) Further, no discovery was completed in the eleven months between the time when MMLLC and CMG first filed on the action in Indiana, and the time that they first produced documents in February 2007. (Id.)

Attorneys for MMLLC and CMG, Loeb & Loeb, LLC state that since they took over as attorneys on September 26, 2007, they have "spent hundreds of thousands of dollars and hundreds of attorney and paralegal hours, preparing and responding to discovery, much of which concerned Counts 1-8" of the SFA complaint. (Dickstein Decl. ¶ 31.)[5] Loeb & Loeb, LLC is also the counsel of record for MMLLC and CMG in a related action pending against MMLLC and CMG in the Central District of California (the "California Action"). (See Case No. CV 05-2200.) In this action, MMLLC and CMG also asserted claims for infringement of Ms. Monroe's right to publicity.

### i.    *SFA's First Interrogatories and Document Requests*

In November 2007, SFA served MMLLC and CMG with its first set of document demands. (Id. ¶ 10, Ex. E.) MMLLC and CMG responded to this set of document demands with objections, and did not produce any documents. (Id. ¶ 11, Ex. F.)

---

[5] If they have, they have wasted considerable client resources.

On or about February 14, 2007, MMLLC and CMG produced several disks containing approximately 65,000 pages of documents, each as a separate tiff file. (Id. ¶ 12.) MMLLC and CMG assert that some of these documents were responsive to SFA's document requests targeted at Counts 1-8. (Dickstein Decl., Ex. N, Ex. O, Ex. P, Ex. Q.)

On March 19, 2007, MMLLC and CMG responded to SFA's first set of interrogatories. (Id. ¶ 13, Ex. G.) MMLLC and CMG objected to the interrogatories, and provided little specific factual information, except in response to Interrogatory Number 18, which concerned Ms. Monroe's domicile. (Id.)

### ii.    *SFA's Second Interrogatories and Document Requests*

SFA served its second set of interrogatories on July 10, 2007, and served its second set of document demands on July 17, 2007. (Serbagi Decl., Ex. H and Ex. I.) MMLLC and CMG responded to the second set of interrogatories on August 13, 2007 with objections to each interrogatory. (Serbagi Decl., Ex. J.) MMLLC and CMG responded to the second set of document demands on August 27, 2007. (Serbagi Decl., Ex. K.) MMLLC and CMG again objected to nearly all of the document demands, but stated that they would produce attorney opinion letters on which they intended to rely in response to Request Number 10. (Id.)

### iii.    *SFA's Third Interrogatories and Document Requests*

SFA served its third set of interrogatories and document requests on November 1, 2007. (Id., Ex. S and Ex. T.) MMLLC and CMG responded to the interrogatories with general and specific objections to each, and provided only a few sentences of information. (Id., Ex. U.) They objected to the documents requested as well. (Id., Ex. V.)

8

### iv.    MMLLC and CMG's Document Requests

MMLLC and CMG served three sets of document requests, including seventy-nine separate requests. (Dickstein Decl. Ex. H, I, J.) SFA indicated that it would produce documents responsive to many requests relevant to Counts 1-8; however, SFA objected to producing other documents. (Dickstein Decl. Ex. K, Ex. L, Ex. M.)

### v.    MMLLC and CMG's Interrogatories

MMLLC and CMG served SFA with two sets of interrogatories, including twenty-five separate questions. (Dickstein Decl., Ex. R. and Ex. S.) Several of these questions were relevant to Counts 1-8. (Dickstein Decl., Ex. R. Nos. 4, 9, 11, 12, 14, Ex. S. Nos. 1-11.) SFA identified several documents as being responsive to these interrogatories. (Dickstein Decl., Ex. T and Ex. U.)

### vi.    Summary

Notwithstanding that it has taken me three pages to summarize the discovery that has taken place, the bottom line is that very little actual discovery has been exchanged: no depositions have been taken, some documents have been exchanged, and a few interrogatories have been briefly answered. Mostly the parties have objected and fenced.

## DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 41(a)(2), courts may permit a party to withdraw its claims. Fed. R. Civ. P. 41(a)(2). Dismissals under Rule 41(a)(2) are discretionary, and will be reviewed for abuse of discretion. Banco Central de Paraguay v. Paraguay Humanitarian Foundation, Inc., 2006 U.S. Dist. LEXIS 87093 (S.D.N.Y. Nov. 29, 2006). In Banco Central de Paraguay, the court explained, "Although voluntary dismissal without prejudice is not a matter

9

of right, the presumption in this circuit is that a court should grant a dismissal pursuant to Rule 41(a)(2) absent a showing that defendants will suffer substantial prejudice as a result." Id. at *6 (citations omitted). "Starting a litigation all over again does not constitute legal prejudice." Cantanzo v. Wing, 277 F.3d 99, 110 (2d Cir. 2000).

In Zagano v. Fordham University, 900 F.2d 12, 14. (2d Cir. 1990), the Second Circuit established five factors that a court should consider in determining whether a defendant will suffer legal prejudice. These include: 1) the plaintiff's diligence in bringing the motion; 2) any "undue vexatiousness" on the plaintiff's part; 3) the extent to which the suit has progressed including the defendant's effort and expense in preparation for trial; 4) the duplicative expense of relitigation; and 5) the adequacy of plaintiff's explanation for the need to dismiss. Id.

## B. The *Zagano* Factors Weigh in Favor of Dismissal Without Prejudice

### i. SFA Was Diligent in Bringing this Motion

SFA has demonstrated that it intended to pursue the claims it brought in its Second Amended Complaint, and that it sought timely dismissal of these claims when new circumstances made it more efficient to prosecute other claims first, while also rendering the prosecution of these previous claims more difficult.

When analyzing whether a party was diligent or not in bringing a motion, courts have focused on whether or not the moving party encouraged the non-moving party to continue discovery without any intention of pursuing its claims. Pac. Elec. Wire & Cable Co. v. Set Top Int'l Inc., 2005 U.S. Dist. LEXIS 3811 (S.D.N.Y. Mar. 11, 2005); Banco Central de Paraguay, 2006 U.S. Dist. LEXIS 87093, *11-*12. In addition, courts consider factors such as the length of time an action has been pending. Guzman v. Hazemag U.S.A., Inc., 145 F.R.D. 308 (E.D.N.Y. 1993); Bosteve Ltd. v. Murauszwki, 110 F.R.D. 257, 259 (E.D.N.Y. 1986) (cited in Zagano, 900

10

F.2d at 14). However, the length of time an action has been pending is not a dispositive factor. Thomas v. N.Y. Dept. of Corr. Services, 2004 WL 1871060 (S.D.N.Y. Aug. 20, 2004). Courts are concerned with whether the efforts of the party were "geared towards an efficient resolution." United States v. Underwriters Ins. Co. v. United Pacific Assocs., 2006 U.S. Dist. LEXIS 49617, *7-*8 (E.D.N.Y. July 19, 2006).

SFA did not encourage MMLLC and CMG to pursue litigation after they had decided to terminate Counts 3-8. This was a factor that the court in Banco Central de Paraguay, 2006 U.S. Dist. LEXIS 87093, at *12, used to find that the plaintiffs had acted diligently. In that case, the plaintiffs sent the court a letter stating that they wished to dismiss their claims following a denial of defendants' motion to alter the grant of summary judgment. Id. The court found that the defendants had not shown that they expended resources in preparing for trial in the interim between "the grant of summary judgment" and "Banco Central's notification that it wished to dismiss the remaining claims." Id. As in Banco Central de Paraguay, here SFA notified the court of their desire to dismiss Counts 3-8 by letter in a timely fashion. SFA's letter was dated the same day as the Shaw Family Principal's death, nine days after the passage of the California legislation, and shortly after MMLLC and CMG filed their motion to dismiss. (Serbagi Decl. ¶ 19, 21.) Additionally, MMLLC and CMG have not specifically demonstrated that any of the discovery conducted was aimed at the claims in SFA's Second Amended Complaint, which was filed in August.

SFA's actions were "geared towards an efficient resolution." Underwriters Ins. Co., 2006 U.S. Dist. LEXIS 49617, *7-*8. At the urging of MMLLC and CMG, California passed legislation, which abrogates this Court's 2007 decision. (Marcus Decl. ¶ 19.) As a result of this change, SFA now seeks to direct its efforts to the issue of whether California can bestow

11

publicity rights on a dead person. (Id.) The channeling of SFA's resources towards this issue and the issue of Ms. Monroe's domicile under these new circumstances is an attempt at efficient resolution. The litigation will be streamlined if SFA can withdraw Counts 1-8 of the Second Amended Complaint.

MMLLC and CMG assert that SFA has essentially had two-in-a-half years to litigate and investigate their claims, since all eight of the claims have been pending in similar form since May 2005, or are based on the same facts as claims pending for that long. (Def. Mem. Opp. 11.) However, this argument is misguided. The issue of diligence is not about whether SFA's claims have been pending for a certain length of time, but whether SFA has acted diligently in pursuing these claims. Even where litigation has been pending for four years, courts have not found that to be dispositive evidence that a party was not diligent. Thomas, 2004 WL 1871060. Because SFA's motion to dismiss was made shortly after a series of events that have made pursuit of the litigation far more difficult and inefficient, the Court finds that SFA acted diligently. This factor consequently weighs in SFA's favor.

### ii. SFA did not Exhibit "Undue Vexatiousness"

Defendants point to no concrete evidence of "undue vexatiousness."

In determining whether a party was unduly vexatious in pursuing its claim, courts consider whether the party had "ill-motive." Jewelers Vigilance Comm., Inc. v. Vitale, Inc., 1997 U.S. Dist. LEXIS 14386, at *7 (S.D.N.Y. Sept. 19, 1997). As with the diligence factor, courts find "ill-motive" where plaintiffs have assured the court and the defendants that they intended to pursue their claims prior to seeking a dismissal. Pac. Elec. Wire & Cable Co., 2005 U.S. Dist. LEXIS 3811, at *5.

MMLLC and CMG argue that SFA's actions exhibit vexatiousness since according to MMLLC and CMG, SFA seeks dismissal only because, "Counts 3-8 completely failed to state a claim or were otherwise barred by controlling black letter law." (Def. Mem. Opp. 14.) However, this Court has never made such a finding. SFA has provided numerous reasons why pursuit of these claims at this time would be inefficient and impractical, and MMLLC and CMG have pointed to no specific evidence of vexatious conduct as required by the court in <u>Jewelers Vigilance Committee</u>, 1997 U.S. Dist. LEXIS 14386, at *7-8. In <u>Jewelers Vigilance Committee</u>, the court did not approve of the plaintiff's litigation tactics: "Plaintiff proceeded with discovery and moved for summary judgment years after its claims became moot. But, absent concrete evidence of any ill-motive on Plaintiff's part, the Court declines to label Plaintiff's conduct 'vexatious.'" 1997 U.S. Dist LEXIS 14386, at *7-8.

Here, the Court finds that SFA has acted in a considerably less questionable manner. It notified the Court of its desire to dismiss Counts 3-8 as soon as pursuing them became unfeasible. Additionally, unlike the cases cited by MMLLC and CMG, SFA's motion to dismiss did not occur on the eve of trial or when presented with a summary judgment motion.

Finally, SFA's actions were not vexatious because it is seeking reconsideration of a previous court decision. (Def. Opp. Mot. 14.) This argument is plainly incorrect. (Def. Mem. Opp. 6.) The Court's November 29 Order was a result of the Court's mistaken impression that both sides had agreed to a dismissal with prejudice. Under these circumstances, it is difficult to see how MMLLC and CMG could argue that this is truly a motion for reconsideration, and therefore ought to be subject to a heightened level of scrutiny. (<u>Id.</u> 9.)

### *iii. The Suit has not Progressed to a Prejudicial Point*

The extent to which a suit has progressed is considered by many courts in the Second Circuit to be of "primary importance." Comunidad Autonoma del Pais Vasco v. Am. Bureau of Shipping, Inc., 2006 U.S. Dist. LEXIS 55822, *3 (S.D.N.Y. Aug. 4, 2006). "[T]he focus of the analysis on a motion for voluntary dismissal is the prejudice to the defendant." BD ex. Rel. Jean Doe v. DeBuono, 193. F.R.D. 117, 123 (S.D.N.Y. 2000).

Although litigation in this case has been ongoing for the past two-in-a-half years, very little discovery has been exchanged. Only Counts 1 and 4-5 were included in the prior complaint, and almost no discovery was conducted on those Counts. (Serbagi Decl. ¶ 30.) No depositions have been taken. MMLLC and CMG have not answered any interrogatories directed at Counts 3-8, and have provided extremely limited responses to interrogatories aimed at Counts 1-2. (Id.) MMLLC and CMG have propounded three sets of document requests, including around thirty-one requests relevant to Counts 1-8, and two sets of interrogatories, sixteen of which are relevant to Counts 1-8. (Dickstein Decl. Ex. H and Ex. W.) The Dickstein Declaration further asserts that the firm of Loeb & Loeb, LLP has "spent hundreds of thousands of dollars" since September 26, 2007, "preparing and responding to discovery, much of which concerned Counts 1-8 of the Plaintiffs' Second Amended Complaint." However, Dickstein does not specify how much money has been spent on discovery solely relevant to Counts 1-8 of this complaint and Loeb & Loeb, LLP has done very little in this court other than file motions since it came into the case less than a year ago.

These facts stand in contrast to cases where courts have found prejudice. For example, in Deere & Co. v. MTD Holdings, Inc., 2004 U.S. Dist. LEXIS 11707, *6 (S.D.N.Y. June 23, 2004) the court found there was substantial legal prejudice where the case had been pending for nearly

four years, there had been 62 depositions taken, thousands of documents had been produced by

both parties, numerous motions had been filed and disposed of, the defendant had incurred $6

million in legal fees, and discovery had been completed. That magnitude of discovery is clearly

not evidenced by the facts in this case. In fact, this case is more similar to Catanzano v. Wing,

277 F.3d 99, 109 (2d Cir. 2000), in which the Second Circuit held that the district court abused

its discretion by declining to dismiss the plaintiff's claim without prejudice since "only halting

discovery had taken place", it "had been litigated to such a limited extent," and the Plaintiff

brought the motion to dismiss to facilitate an end to the litigation. Id. at 110.

Where discovery has been limited, as here, courts will dismiss without prejudice if the

discovery that has occurred has not been targeted to the counts a party seeks to have dismissed.

In Banco Central de Paraguay, 2006 U.S. Dist. LEXIS 87093, at *16, the court explained,

"defendants still must show that they have expended resources in defending the claims that the

plaintiff now seeks to dismiss." The 65,000 pages of documents which MMLLC and CMG sent

to SFA, each as a separate tiff file, were provided several months before the SFA filed its Second

Amended Complaint. MMLLC and CMG have failed to demonstrate that these documents were

not relevant to its own pending causes of action, in New York, as well as California, and

consequently due to SFA anyway. As in The Stanley Works v. Alltrade, Inc., 2004 U.S. Dist.

LEXIS 2833, *5 (D. CT. Feb. 23, 2004), "the case most likely would have progressed to a

similar degree" based only on the causes of action asserted by MMLLC and CMG.

Largely because of the complicated issue of Ms. Monroe's domicile and the changing

legislative situation, discovery has proceeded very slowly in this case. In Viada v. Osaka Health

Spa, Inc., 458 F. Supp.2d 100, 103 (S.D.N.Y. 2005), the court dismissed a claim without

prejudice where "the pace at which the parties' pretrial discovery activities has progressed has

15

been slowed by amended pleadings, withdrawals from the action by defense counsel and the poor health of two defendants." The facts in this case are extremely similar: there have been numerous amendments of pleadings, replacement of counsel, and poor health of the Shaw Family principals, which delayed the progress of the case.

Although MMLLC and CMG have certainly spent some time and money in preparing to litigate Counts 1-8 for trial, it is certainly not clear from the record that any of the work they have done will not be relevant to the claims that are pending. I do not find that the discovery completed by MMLLC and CMG can rise to the level of legal prejudice.

### iv. There Would Be No Significant Duplicative Expense of Relitigation

The duplicative expense that MMLLC and CMG would face if this case were litigated later appears to be minimal.

"The mere prospect of a second litigation" is insufficient to rise to the level of legal prejudice. Jones v. Securities & Exchange Comm'n, 298 U.S. 1, 19 (1936); D'alto v. Dahon California, Inc., 100 F.3d 281, 283 (2d Cir. 1996). However, courts are concerned about imposing duplicative expenses on defendants and chilling the legitimate activities of defendants, especially where costs and discovery have been significant. Deere, 2004 U.S. Dist LEXIS 11707.

Given the relatively small amount of discovery that has taken place thus far, it would be easy for MMLLC and CMG to reuse that work should SFA later be in a position to reassert its claims. In Banco Central de Paraguay, the court found that, "whatever work defendants have done in preparing for trial can easily be used in a subsequent, similar action." 2006 U.S. Dist. LEXIS 87093, at * 18. Similarly, MMLLC and CMG's limited responses to depositions and interrogatories, along with the documents provided to SFA, could easily be reused at a later date.

16

As in Blaize-Sampeur v. McDowell, 2007 U.S. Dist. LEXIS 47408, *15 (S.D.N.Y. June 29, 2007) MMLLC and CMG have repeatedly argued, "that plaintiffs' claims are entirely without merit." The Blaize-Sampeur court explained that "if such is the case, defendants will again be able to set forth their same arguments on a motion to dismiss in any subsequent action." Id.; see also Harlem Team for Self-Help, Inc. v. Abssinian Baptist Church of the City of N.Y., 189 F.R.D. 284, 286 (S.D.N.Y. 1999). This argument applies with equal force to this case.

MMLLC and CMG have not discussed what expenses they might incur if they had to relitigate their claims, except to say that they would have to "duplicate much of the discovery they have already provided." (Def. Mem. Opp. 18.) As the court in Banco Central de Paraguay explained, "This assertion, standing alone, is not sufficient for the Court to find that dismissal of the remaining claims would probably cause the defendants to suffer the prejudicial result of duplicative expense in relitigation." 2006 U.S. dist. LEXIS 87093, at *19-*20.

MMLLC and CMG also assert that they "would . . . be forced to duplicate their efforts spent briefing the motion to dismiss, in order to adjust for any changes in the law or in Plaintiffs' allegations." (Def. Mem. Opp. 18.) This argument is unpersuasive because changes in the law may always occur, and in this case, MMLLC and CMG are themselves the primary instigators of changes in the law.

MMLLC and CMG do have an argument that litigation in the future would be more difficult due to the fact that their principals are also aging. (Marcus Decl. ¶ 3.) The Zagano court found that defendants would be prejudiced by dismissal where two witnesses had passed away, and two others had encountered poor health during the litigation. 900 F.2d at 14. In Zagano, however, the facts were substantially different from those here. The action had been pending for four years, during which "it was contested vigorously, if sporadically, and extensive discovery

had taken place." Id. at 14. Under these circumstances, the court did not want to impose further prejudice on the defendant through the loss of relevant testimony. Although the principals for MMLLC and CMG in this case are aging, there is no indication that they are in poor health. (Marcus Decl. ¶ 3.) Furthermore, the principals of MMLLC and CMG have little to add in the way of facts relevant to any of the withdrawn claims.

The duplicative expenses that MMLLC and CMG might face if these claims were raised at a later date appear to be minimal, and it is unclear that they would face a high likelihood of potential loss of testimony due to illness or poor health in their principals.

### v. SFA's Explanation is Adequate

Courts consider whether the moving party has provided a "reasonable explanation for why it wishes to have its remaining claims voluntarily dismissed without prejudice." Banco Central de Paraguay, 2006 U.S. Dist. LEXIS 87093, at *20. In Catanzano, 277 F.3d at 110, the court found that the plaintiffs' "explanation, that they have brought the motion in order to facilitate an end to the litigation but that they wish to avoid preclusive effects of the district court's ruling on this claim, is adequate." However, courts have not been persuaded where they believe that the plaintiff seeks dismissal to "avoid the prospect of an adverse decision on a dispositive motion." Galasso v. Eisman, Zucker, Klein & Ruttenberg, 310 F. Supp. 2d 569, 572 (S.D.N.Y. 2004).

Here, the explanations of SFA as to why it seeks a dismissal without prejudice appear reasonable. First, litigation has become more difficult for SFA due to the recent deaths of the Shaw Family and Bradford Principals. (Mem. Supp. Dismissal 15.) Second, MMLLC and CMG have recently lobbied California to pass new legislation that changes California law, making it reasonable for SFA to focus on the right of publicity claim before pursuing its other claims. (Id.)

18

The explanation provided by SFA seems similar to that in Catanzano, where the Second Circuit

found that the District Court erred in refusing to allow a dismissal without prejudice. 277 F.3d at

110. As in Catanzano, SFA's explanation is aimed at streamlining this litigation.

This case is clearly distinguishable from Galasso, where the Plaintiff's exlanation for

dismissal was "patently inadequate." 310 F. Supp. 2d at 573. In Galasso, the Plaintiff's

explanation for seeking a dismissal without prejudice was "in order to preserve plaintiff's right

to be heard, obtain discovery and obtain justice." Id. Here, the explanation is more acceptable

than that provided in Galasso.

This factor consequently weighs in SFA's favor.

### C. Counts 1 and 2 Can Only Be Withdrawn With Prejudice

#### i. SFA's Offer to Withdraw Counts 1 and 2 With Prejudice is not Binding

SFA's brief offer to MMLLC and CMG to withdraw Counts 1 and 2 with prejudice is not

binding because MMLLC and CMG never accepted this offer.

A stipulation between parties is "not binding upon a party unless it is in a writing

subscribed by him or his attorney or reduced to the form of an order and entered." Civil Practice

Law and Rules R. 2104. The other party must accept the offer of stipulation in order for the

stipulation to become binding. See Linder v. Am. Express Corp., 2007 U.S. Dist. LEXIS 41178,

*25 (S.D.N.Y. 2007). This is standard contracts practice: revocation of the offer prior to

acceptance terminates the offer. Restatement (Second) of Contracts § 36.

MMLLC and CMG's argument that the SFA's offer to withdraw Counts 1 and 2 with

prejudice is binding is without merit. On December 3, 2007, SFA's attorney emailed MMLLC

and CMG's attorney and stated that SFA would be willing to withdraw Counts 1 and 2 with

prejudice. (Serbagi Decl., Ex. bb.) MMLLC and CMG's attorney did not respond to this email.

Three days later, SFA withdrew this offer when it wrote to the Court and requested permission to withdraw all claims without prejudice. (Serbagi Decl., Ex. cc.) Because MMLLC and CMG never responded to the email, the stipulation was never accepted.

### ii. Counts 1 and 2 Are Compulsory Counterclaims

MMLLC and CMG are correct that Counts 1 and 2 are compulsory counterclaims to their claim seeking a declaration regarding Shaw's copyrights in the Shaw Collection. (Def. 2nd Amended Compl. Count 9; Def. 3rd Amended Compl. Count 1.)

Counterclaims are compulsory if they arise "out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a). Compulsory counterclaims cannot be withdrawn without prejudice. Pizulli v. The Northwestern Mut. Life Ins. Co., 2006 W.L. 490097, at *2 (S.D.N.Y. Feb. 28, 2006). Claims arise from the same transaction or occurrence if, "essential facts of the various claims are so logically connected that consideration of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." United States v. Aquavella, 615 F.2d 12, 22 (2d Cir. 1979).

MMLLC and CMG assert that there exist photographs in the Shaw Collection that have entered the public domain. (Def. 3rd Amended Coml. ¶ 24.) They specifically argue that images in the Rizzoli and Ballantine collections have entered the public domain. MMLLC and CMG also argue that SFA does not possess valid copyrights in images published prior to March 1, 1989, without the requisite copyright notice.

Counts 1 and 2 of SFA's Second Amended Complaint assert copyright claims for three images in the *Marilyn: Among Friends* book, and two images in the book *Marilyn Monroe in the Camera Eye.*

Although the images at issue in SFA's Second Amended Complaint are not the same as those specific images described in MMLLC and CMG's complaint as having entered the public domain, this Court finds that claims "are so logically related that consideration of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." Aquavella, 615 F.2d 12, 22. To prevail on Counts 1 and 2, SFA must prove that it possesses valid and enforceable copyrights for the five images in dispute. This is precisely what MMLLC and CMG seek to disprove in seeking declaratory judgment regarding Shaw's copyrights in the Shaw Collection. (Def. 3rd Amended Compl, Count 1.)

Counts 1 and 2 are consequently compulsory counterclaims, and cannot be dismissed without prejudice. SFA has 10 days to decide whether to pursue these claims or withdraw them with prejudice.

## CONCLUSION

For the foregoing reasons, SFA's motion to withdraw Counts 3-8 of their second amended complaint without prejudice is granted. Counts 1 and 2 will be dismissed with prejudice unless this Court receives notice from SFA that they will continue litigation on these claims.

This constitutes the decision and order of the court.

Dated: September 2, 2008

_____
U.S.D.J.

BY ECF TO ALL COUNSEL

21