UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————x

SHAW FAMILY ARCHIVES LTD.,
EDITH MARCUS, and META STEVENS,

      Plaintiffs/Consolidated Defendants,

    -against-

CMG WORLDWIDE, INC., an Indiana Corporation
and MARILYN MONROE, LLC, a Delaware
Limited Liability Company,

      Defendants/Consolidated Plaintiffs.

—————————————————————x

| USDS SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: _9/11/08_ |

05 Civ. 3939 (CM)

### DECISION AND ORDER RELATING TO THE SO-CALLED PUBLIC DOMAIN CLAIMS

McMahon, J.:

Familiarity with the background of this case is presumed, as the Court has issued numerous prior decisions.

On August 13, 2007, after this Court had granted summary judgment dismissing its other claims, CMG Worldwide and Marilyn Monroe LLC (who were originally styled as defendants in this action, but who, through consolidation with a related case, are known as "Consolidated Plaintiffs) filed a Third Amended Complaint. The Consolidated Plaintiffs seek a judgment declaring that many, if not all, of the photographs of Marilyn Monroe taken by photographer Sam Shaw are in the public domain, either because their copyrights have been allowed to expire or because they were "works for hire" and so could not have been copyrighted by Sam Shaw. The photographs that are the subject of this action include images that were originally published in the so-called

"Ballantine" and "Rizzoli" books, as well as photographs (not specifically identified) that appeared in newspapers and magazines prior to 1964 without attribution of Shaw's alleged copyright in the images – which, under the 1909 Copyright Act, would have forfeited copyright protection. Apparently, they also include all the photographs taken by Shaw on the set of the motion picture "The Seven Year Itch," the making of which he documented extensively with pictures that were used for publicity purposes by the producer of the film.

Consolidated Plaintiffs were formed by the Estate of Monroe to exploit whatever intellectual property rights the heirs might have inherited from Monroe, who killed herself in 1962. Consolidated Defendants are the heirs of Sam Shaw (now deceased) and the entity formed to exploit the intellectual property in Shaw's work. Consolidated Plaintiffs argue that Consolidated Defendants are falsely claiming ownership of the copyright in photographs of Monroe that have passed into the public domain – which, if true, means that the photographs can be used by anyone. Consolidated Plaintiffs assert that this false assertion of copyright – which includes threats to sue for copyright infringement – is inhibiting them from using the "public domain" photos in connection with their various licensing activities. Shaw had already asserted a claim for copyright infringement against Consolidated Plaintiffs, and sought a declaration that it owned the copyright in three images in a book entitled *Marilyn: Among Friends,* and two images in a book entitled *Marilyn Monroe in the Camera Eye.*

On December 17, 2007, Shaw filed a motion to withdraw these claims without prejudice. Because the Court found that the claims were in the nature of compulsory counterclaims, and so could not be withdrawn without prejudice, the Court told Shaw

that it had 10 days to notify the Court whether it wanted to pursue the claims or have them dismissed with prejudice. (*See* Order dated 9/2/08.) Shaw has decided to withdraw the claims with prejudice. (See Letter dated 9/10/08.)

The Consolidated Defendants (whom I will call "The Shaws") argue that they are entitled to summary judgment dismissing the so-called "public domain" declaratory judgment claim, because there is no justiciable controversy for the Court to decide.  In a companion motion, they contend that Consolidated Plaintiffs should be precluded from prosecuting this claim, or from using certain evidence that was not produced during discovery to support the claim, because of violations of discovery orders and refusals to produce.

Certain facts are not in dispute. In 1955, Sam Shaw published a book entitled "Marilyn Monroe as The Girl" (the "Ballantine Book"). The book contains photographs of Monroe taken by Shaw, including photos of Monroe's white dress blowing above a subway grate— one of Hollywood's most famous still images.

Shaw registered his copyright in the Ballantine Book on or about June 30, 1955. The registration identified June 24, 1955 as the date of first publication. Because the operative statute was the 1909 Copyright Act, the term of copyright was for 28 years, or until June 1983. It is undisputed that Shaw did not renew his copyright registration prior to the expiration of the original 28 year term— at least, no evidence of renewal exists in the Copyright Office's records, and none has been produced by the Shaw Family. The Shaw Family has recently attempted to re-register many of the photographs that originally appeared in the Ballantine Book, both individually and as part of newer books.

There has never been, as far as this Court knows, any adjudication as to whether the photographs in the Ballantine Book are or are not in the public domain.

In a case entitled Shaw v. Rizzoli Int'l Publications, Inc., 96 Civ. 4259 (JGK), 1999 WL 160084 (S.D.N.Y. March. 23, 1999), Shaw, his sister Edith Marcus, and others claimed that a book published by Rizzoli entitled "Marilyn Monroe. The Life. The Myth" (the "Rizzoli Book") infringed their copyrights in certain Shaw photographs of Monroe. Rizzoli countered with the argument that 105 of those photographs and images in the Rizzoli Book were actually in the public domain and could be used by anyone. Judge Keenan of this court sustained Rizzoli's argument, and ruled that all 105 photographs had fallen into the public domain, because they were all published prior to January 1, 1964, and Shaw and Marcus and the other copyright owners had failed to renew the copyrights within their 28 year term. These "public domain" photographs included 14 that were taken by Shaw on the set of "The Seven Year Itch."

There is absolutely no justiciable controversy with respect to the photographs in the Rizzoli Book, because Judge Keenan resolved the issue long ago. For the same reasons that CMG and MMLLC are here bound by the California court's ruling concerning Monroe's domicile, (see Order dated 9/2/08) – with all of its attendant consequences – the Shaws are bound by Judge Keenan's holding in Rizzoli. His writ needs no reinforcement from me.

The fundamental question, then, is whether there is any justiciable controversy concerning the other photographs— those in the Ballantine Book, and any other photographs of Monroe taken by Shaw that are specifically identified (this Court has better things to do than try to craft judgments that can apply to items not specifically

called to its attention). The answer turns on whether CMG and MMLLC have imminent

plans to produce products bearing these images. Absent evidence that defendants

have a "definite intent and apparent ability to commence use" of the public domain

images, they have failed to allege the most basic requirement for adjudication of a

dispute. Re-Alco Industries, Inc. v. National Center for Health Education, Inc., 812 F.

Supp. 387, 395 (S.D.N.Y. 1993).

    As the Shaws point out, Consolidated Plaintiffs do not manufacture products.

They have been, and as far as the Court is aware they intend to be, strictly in the

business of licensing the image of Marilyn Monroe to other people— people who would,

if licensed, manufacture products using Monroe's image. There is no evidence that

CMG and MMLLC have either a definite intent or the apparent ability to do anything

except give other people permission to use Monroe's image.

    And indeed, that is what they say they want to do. Consolidated Plaintiffs assert

that they would like to continue to "license" (which is to say, grant permission) to third

parties to use various Monroe-related items. Of course, Consolidated Plaintiffs cannot

"license" anyone to use photographs of Monroe that have fallen into the public domain.

Anyone can use a public domain photograph, without obtaining permission, unless the

person depicted therein has some other basis to restrict use of the picture. The only

such basis of which this Court is aware is the so-called "right of publicity." Now that two

courts have ruled that any such right, if it ever existed, died with Monroe, Consolidated

Plaintiffs have nothing whatever to license in connection with any photograph that Shaw

took of Monroe— unless, of course, they own a copyright in some Shaw photograph.

CMG and MMLLC make no such contention.

Consolidated Plaintiffs do state that they would like to *use* (not license) public domain photographs of Monroe that were taken by Shaw in connection with their ongoing licensing of other Monroe-related intellectual property that they claim to own, including the "trademark" to her name and her stylized signature. However, they do not identify precisely what it is that they plan to do, or specify what Shaw photographs they intend to use in connection with their endeavors. Consolidated Plaintiffs also mention licensing a "portfolio of images" that would include both photos taken by Shaw that are (allegedly) in the public domain and other pictures of Monroe as well. (*See* Consolidated Plaintiffs' Brief in Support of its Motion for Summary Judgment at p. 15.) Again, they do not identify which photographs or explain by what right they could "license" anything that is in the public domain.

In the absence of any specific allegation or evidence that Consolidated Plaintiffs intend to use a specific, identifiable photograph in a particular way but are being prevented from doing so by Consolidated Defendants, such that the Court could render a meaningful decision – one that takes into account CMG and MMLLC's authority or lack of authority to "license" some identifiable thing with respect to Monroe – there is nothing here for a court to decide. Since there is no such evidence presently before me, Count I of the Third Amended Complaint is dismissed.

The claim for declaratory judgment is the only claim asserted in the Third Amended Complaint. In my court we employ a baseball rule— three strikes and you're out. There will be no further leave to amend. If CMG and MMLLC are ever able to craft a justiciable claim for declaratory judgment, they will have to file a new lawsuit.

This is the last substantive issue before the Court. All substantive issues having been decided, plaintiffs' motion for a bond has become moot, and it is denied as moot. Plaintiffs have ten days to apply for any attorneys' fees to which they feel they are entitled.

The Clerk of the Court is directed to do the following:

(1) Enter an order granting the Shaws' motion to dismiss the Third Amended Complaint filed by MMLLC and CMG for lack of subject matter jurisdiction (Dkt. No. 147).

(2) Enter an order denying as moot the Shaws' motions (a) to preclude the prosecution of the Third Amended Complaint (Dkt. No. 216), and (b) to compel CMG and MMLLC to post a bond (Dkt. No. 222).

(3) Close the file in this matter.

This constitutes the decision and order of the Court.

Dated: September 11, 2008

_____
U.S.D.J.

BY ECF TO ALL COUNSEL